# EXHIBIT A

Legal Description of Property

### Tract I
Lot No. 7 on Lower Market Street in Plat No. 93 of the Floyd County, Indiana Records.

### Tract II
Being a part of Lot No. 16 Lower First Street of Plat No. 93, of the Floyd County Record of Plats and more fully described as follows: Beginning at the Northeast corner of Lot No. 16; thence South 27 degrees 24 minutes East along the Westerly line of Lower First Street 27.54 feet to a point; thence South 62 degrees 27 minutes West, 119.90 feet to a point on the easterly line of a 20 ft. alley and which is between two frame garages; thence North 27 degrees 44 minutes west along the Easterly line of said 20 ft. alley 26.60 feet to a point at the Northwest corner of said Lot No. 16; thence North 62 degrees 00 minutes East and parallel with the Southerly line of Lower Market Street, 120.05 feet to the place of beginning reserving the right to maintain and use a cistern which extends across the Southerly line of the above described land.

### Tract III
Being a part of Lot No. 16, Lower First Street of Plat No. 93 of the Floyd County Record of Plats, and more fully described as follows, to-wit: Commencing at the Northeast corner of said Lot No. 16; thence South 27 deg. 24' East along the Westerly line of Lower First Street 27.54 feet to a point which is the true place of beginning of the land to be herein described; thence continuing South 27 deg. 24' East along the Westerly line of Lower First Street 22.51 feet to a point at the Southeast corner of said Lot No. 16; thence South 62 deg. 00' West along the Southerly line of said Lot No. 16, and parallel with the Southerly line of Lower Market Street 119.76 feet to a point on the Easterly line of a 20 foot alley; thence North 27 deg. 44' West along the Easterly line of said 20 foot alley 23.45 feet to a point; thence North 62 deg. 27' East 119.90 feet to the place of beginning. Granting, however, the right to the owner of that portion of said No. 16 which lies North of the above described land, to maintain and use a cistern extending over and across the Northerly line of the above described land.

**Tract IV**

Also, a part of Lot No. 14 on the Lower First Street, of Plat No. 93 of the Floyd County Record of Plats, which is more fully described as follows, to-wit: Beginning at the Northeast corner of Lot No. 14; which is also the Southeast corner of Lot No. 16 of Lower First Street in Plat No. 93; thence South 27 deg. 24' East along the Westerly line of said Lower First Street, 1.25 feet to a point; thence South 62 deg. 32' West, 119.76 feet to a point on the Easterly line of a 20 foot alley and which is between two frame barns; thence North 27 deg. 44' west along the Easterly line of said 20 foot alley, 0.15 feet to a point at the Northwest corner of said Lot No. 14; thence North 62 deg. 00' East along the line dividing said Lots Nos. 14 and 16, 119.76 feet to the place of beginning.

COMMERCIAL PROMISSORY NOTE

Republic Bank & Trust Company
661 S. Hurstbourne Pkwy/PO Box 70749
Louisville, Kentucky 40222-5040
(502)584-3600

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| 7183 | October 16, 2006 | $661,000.00 | 120 months | October 16, 2016 |

**LOAN PURPOSE:** Refinance

**BORROWER INFORMATION**

Eastern Livestock Co,. LLC
135 W Market St
New Albany, IN 47150

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note".

**LENDER.** "Lender" means Republic Bank & Trust Company whose address is 661 S. Hurstbourne Pkwy/PO Box 70749, Louisville, Kentucky 40222-5040, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Six Hundred Sixty-one Thousand and 00/100 Dollars ($661,000.00) and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 60 consecutive payments of principal and interest beginning on November 16, 2006 and continuing on the same day of each month thereafter. The initial payment will be in the amount of $5,240.36. This amount may change on October 16, 2011 and every year thereafter. This will be followed by 59 consecutive payments of principal and interest beginning on November 16, 2011 and continuing on the same day of each month thereafter. One final payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest. All payments received by the Lender from the Borrower for application to the Term Loan may be applied to the Borrower's obligations under the Term Loan in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The initial variable interest rate on this Note will be 7.190% per annum. This interest rate may change on October 16, 2011 and on the same day of each year thereafter. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on **Prime Rate (as published in the Wall Street Journal)** in effect on the Change Date (the "Index") plus 0.500 percentage points (the "Margin"). If the Index is not available at that time, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under this Note will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower. The interest rate on the first Change Date will not be greater than 10.190% or less than 7.190%. Thereafter, the interest rate will never increase or decrease on any Change Date by more than 3.000 percentage points from the rate applicable in the preceding period. The interest rate will never be greater than 14.190% or less than 7.190%.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rates will result in a higher payment amount. Interest on this Note is calculated on a 365/360 day basis. The unpaid balance of this loan shall, while any Event of Default exists under this Note or any other agreement related to the loan, be subject to a Default Rate of interest equal to the existing rate plus four percent (4.00%), and after Maturity, whether by acceleration or otherwise, shall be subject to a Post-Maturity Rate of interest equal to the same fixed or variable rate basis in effect before maturity.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of $50.00 or 5.000% of the amount past due, whichever is greater.

**PREPAYMENT PENALTY.** This Note is subject to a prepayment penalty. Payments submitted in partial payment of the obligation prior to the Maturity Date will result in a penalty if collateral is released within the first five (5) years, and the penalty shall be equal to: two percent (2.0%) of the partial pre-payment amount. Payment of all unpaid principal, accrued and unpaid interest and all other fees then outstanding within five (5) years of the origination date will result in a penalty that shall be equal to: two percent (2%) of the original principal amount.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- Mortgage in the amount of $661,000.00, dated October 16, 2006 evidencing security interest in the property located at 135 West Market St New Albany IN 47150.

© 2004-2005 Copyright Compliance Systems, Inc. A86E-C2D9 - 2005.10.169
Commercial Promissory Note - DL4006

Page 1 of 2

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868

EXHIBIT B

**RIGHT OF SET OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set off any amount due and payable under this Note against all Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of $20.00 will be charged.

**DEFAULT.** Upon the occurrence of any one of the following events of default, Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note, to be immediately due and payable: (a) Borrower's failure to make a payment on time or in the amount due; (b) any default by Borrower under any loan agreement, security agreement, mortgage, or other agreement executed in connection with this Note; (c) the death, dissolution, or termination of existence of Borrower; (d) Borrower is generally not paying Borrower's debts as such debts become due; (e) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or the appointment of a receiver; (f) any other indebtedness of Borrower to Lender or to any other creditor shall become due and remains unpaid after acceleration of the maturity or after maturity; (g) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any of Borrower's property; (h) Borrower's business is sold to or merged with any other business, individual, or entity; (i) Lender, in good faith, believes Borrower's ability to repay its indebtedness under this Note, or Lender's ability to recover on any Collateral, is or soon will be impaired, time being of the very essence.

**OTHER APPLICABLE AGREEMENTS.** If this Note is secured by a security agreement, mortgage, deed of trust, trust deed, security deed or loan agreement of even or previous date, it is subject to all the terms thereof.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Kentucky except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all of the costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS. The primary deposit account of Eastern Livestock Co., LLC must be maintained with Republic Bank & Trust Company for the life of the loan.**

**WAIVER OF JURY TRIAL. All parties to this Note hereby waive, to the fullest extent permitted by law, any right to trial by jury with respect to any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document, or agreement executed or delivered in connection herewith or the transaction related hereto.**

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt thereof.

Eastern Livestock Co., LLC
X _____   _____
By: Thomas P Gibson            Date
Its: Manager

© 2004-2005 Copyright Compliance Systems, Inc. AB6E-C2D9 - 2005.10.169
Commercial Promissory Note - DL4006                    Page 2 of 2                    www.compliancesystems.com
                                                                                      800-968-8523 - Fax 616-956-1868

```
Floyd County Recorder
Linda L. Berger                    7P
JKM Date 10/18/2006  Time 08:11:25
I 200613689          Page 1 of 7
```

**RETURN TO/PREPARED BY**

John Talbott
**BARDENWERPER & TALBOTT, PLLC**
8311 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 426-6688

(Space Above This Line For Recording Data)

LOAN NUMBER: 011-8827183

## COMMERCIAL REAL ESTATE MORTGAGE
### FUTURE ADVANCES AND FUTURE OBLIGATIONS ARE SECURED BY THIS REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on October 16, 2006 between Eastern Livestock Co., LLC fka Eastern Livesctock Co., Reorganization LLC a Limited Liability Co., a Kentucky Limited Liability, whose address is 135 W Market St, New Albany, Indiana 47150 ; the "Mortgagor(s)" and Republic Bank & Trust Company whose address is 661 S. Hurstbourne Pkwy/PO Box 70749, Louisville, Kentucky 40222-5040 ("Lender"), which is organized and existing under the laws of the state of Kentucky. Mortgagor in consideration of loans extended by Lender up to a maximum principal amount of Six Hundred Sixty-one Thousand and 00/100 Dollars ($661,000.00) ("Maximum Principal Indebtedness"), and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants and conveys to Lender, its successors and assigns, forever, the following described property located in the Recorder of Floyd, State of Indiana:

Address: 135 West Market St, New Albany, Indiana 47150
Legal Description: See Exhibit A

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water, water wells, ditches, reservoirs, reservoir sites and dams located thereon and all riparian and water rights and water stock associated therewith, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Security Instrument whether now or hereafter existing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from Mortgagor and Eastern Livestock Co,. LLC to Lender, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness").

© 2004-2006 Copyright Compliance Systems, Inc. 6934-059B - 2006.02.146
Commercial Real Estate Security Instrument - DL4007    Page 1 of 6    www.compliancesystems.com
800-968-8522 - Fax 616-956-1868


EXHIBIT C

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due and payable on October 16, 2016.

**FUTURE ADVANCES.** To the extent permitted by law, this Security Instrument will secure future advances as if such advances were made on the date of this Security Instrument regardless of the fact that from time to time there may be no balance due under the note and regardless of whether the Lender is obligated to make such future advances.

**CROSS COLLATERALIZATION.** It is the expressed intent of Mortgagor to cross collateralize all of its Indebtedness and obligations to the Lender, howsoever arising and whensoever incurred.

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** The Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on the Property. Further, Mortgagor shall make no material alterations, additions or improvements of any type whatever to the Property, regardless of whether such alterations, additions or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the premises relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Mortgagor.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from any liability or expense of whatsoever nature incurred directly or indirectly as a result of Mortgagor's violation of applicable local, state and federal environmental laws and regulations or Mortgagor's involvement with hazardous or toxic materials.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records and files of Mortgagor.

**Lender's Right to Enter.** The Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which the Mortgagor has failed to provide, the Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on the Lender's demand by the Mortgagor.

**ASSIGNMENT OF LEASES AND RENTS.** As additional security for the payment of the Indebtedness and the performance of the covenants contained herein, Mortgagor hereby assigns and transfers over to Lender all rents, income and profits ("Rents") under any present or future leases, subleases or licenses of the Property, including any guaranties, extensions, amendments or renewals thereof, from the use of the Property. So long as Mortgagor is not in default, Mortgagor may receive, collect and enjoy all Rents accruing from the Property, but not more than one month in advance of the due date. Lender may also require Mortgagor, tenant and any other user of the Property to make payments of Rents directly to Lender. However, by receiving any such payments, Lender is not, and shall not be considered, an agent for any party or entity. Any amounts collected may, at the Lender's sole discretion, be applied to protect the Lender's interest in the Property, including but not limited to the payment of taxes and insurance premiums and to the Indebtedness. At Lender's sole discretion, all leases, subleases and licenses must first be approved by Lender.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to the Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

7 p0   CSI

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

(a) Failure to make required payments when due under Indebtedness;
(b) Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;
(c) The making of any oral or written statement or assertion to the Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness;
(d) The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness;
(e) Any assignment by the Mortgagor for the benefit of the Mortgagor's creditors;
(f) A material adverse change occurs in the financial condition, ownership or management of Mortgagor or any person obligated on the Indebtedness; or
(g) The Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of the Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT THE LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to sell or to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Mortgage in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time,



before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** The Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns and successors of the Mortgagor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective when it is deposited in the United States Mail with the appropriate postage, mailed to the address of the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Mortgagor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where the Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE LENDER EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Mortgagor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW AND JURISDICTION.** This Security Instrument will be governed by the laws of the State of Indiana.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL.** All parties to this Mortgage waive any right to trial by jury to the extent allowed by law. This jury trial waiver applies to any claims or disputes related or incidental to the relationship established between the parties to this Mortgage.

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood. Signed and sealed by Mortgagor (s):

© 2004-2006 Copyright Compliance Systems, Inc. 6934-059B - 2006.02.146
Commercial Real Estate Security Instrument - DL4007

Page 5 of 6

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868

CSI

Eastern Livestock Co., LLC fka Eastern Livestock Co., Reorganization LLC a Limited Liability Co.

X _____ 10/16/06
By: Thomas P Gibson      Date
Its: Manager

The above signatures have been Witnessed by:

X _____ 10/16/06         X _____ 10/16/06
Name:              Date                     Name:              Date

## BUSINESS ACKNOWLEDGMENT

STATE OF        KENTUCKY      )
                              ) ss
COUNTY OF       JEFFERSON     )

This instrument was acknowledged on the 16th of October, 2006, by:

Thomas P Gibson, Manager on behalf of Eastern Livestock Co., LLC fka Eastern Livestock Co., Reorganization LLC a Limited Liability Co., a Kentucky Limited Liability Company, who personally appeared before me.

In witness whereof, I hereunto set my hand and, if applicable, official seal.

My commission expires: 10/9/09

X _____
State at Large
Notary Public

(Official Seal)

THIS INSTRUMENT WAS PREPARED BY:           AFTER RECORDING RETURN TO:
Bardenwerper & Talbott                     Republic Bank & Trust Company
8311 Shelbyville Road                      661 S. Hurstbourne Pkwy
Louisville, KY 40222                       Louisville, KY 40222

File No.: 200609021

# EXHIBIT A

Tract I

Lot No. 7 on Lower Market Street in Plat No. 93 of the Floyd County, Indiana Records.

Tract II

Being a part of Lot No. 16 Lower First Street of Plat No. 93, of the Floyd County Record of Plats and more fully described as follows: Beginning at the Northeast corner of Lot No. 16; thence South 27 degrees 24 minutes East along the Westerly line of Lower First Street 27.54 feet to a point; thence South 62 degrees 27 minutes West, 119.90 feet to a point on the easterly line of a 20 ft. alley and which is between two frame garages; thence North 27 degrees 44 minutes west along the Easterly line of said 20 ft. alley 26.60 feet to a point at the Northwest corner of said Lot No. 16; thence North 62 degrees 00 minutes East and parallel with the Southerly line of Lower Market Street, 120.05 feet to the place of beginning reserving the right to maintain and use a cistern which extends across the Southerly line of the above described land.

BEING the same property conveyed to Eastern Livestock Company, Inc by deed dated October 23, 2000 of record in Instrument # 200014831, and conveyed to Eastern Livestock Co., Reorganization, LLC, a Kentucky limited liability company, by deed dated November 19, 2000, of record in Instrument # 200100808, all in the Office of the County Court Clerk of Floyd County, Indiana.

Tract III

Being a part of Lot No. 16 Lower First Street of Plat No. 93, of the Floyd County Record of Plats and more fully described as follows to-wit:

Commencing at the Northeast corner of Lot No. 16; thence South 27 deg. 24' East along the Westerly line of Lower First Street 27.54 feet to a point which is the true place of beginning of the land to be herein described, thence continuing South 27 deg. 24' East along the Westerly line of lower First Street 22.51 to a point at the Southeast corner of said Lot No. 16; thence South 62 deg. 00' West along the Southerly line of said Lot No. 16, and Parallel with the southerly line of Lower Market Street 119.76 feet to a point on the Easterly line of a 20 foot alley thence North 17' 44" West along the Easterly line of said 20 foot alley 23.45 feet to the place of beginning. Granting, however, the right to the owner of that portion of said No. 16 which lies North of the above described land, to maintain and use a cistern extending over and across the Northerly line of the above described land.

Tract IV

Also, a part of Lot No. 14 of Lower First Street, of Plat No. 93 of the Floyd County record of Plats, which is more fully described as follows, to-wit: Beginning at the Northeast corner of Lot No. 14 which is also the Southeast corner of Lot No. 16 of Lower First Street in Plat No. 93; thence South 27 deg. 24' East along the Westerly line of said Lower First Street, 1.25 feet to a point; thence South 62 deg. 32' West , 119.76 feet to a point on the Easterly line of a 20 foot alley and which is between two frame barns; thence North 27 deg. 44'west along the Easterly line of said 20 foot alley, 0.15 feet to a point at the Northwest corner of said Lot No. 14; thence North 62 deg. 00'East along the line dividing said Lots Nos. 14 and 16, 119.76 feet to the place of beginning.

BEING the same property conveyed to Eastern Livestock Company, Inc by deed dated October 23, 2000 of record in Instrument # 200014832 and conveyed to Eastern Livestock Co., Reorganization, LLC, a Kentucky limited liability company, by deed dated November 19, 2000, of record in Instrument # 200100809, all in the Office of the County Court Clerk of Floyd County, Indiana.

| HYPOTHECATION AGREEMENT | Republic Bank & Trust Company |
| --- | --- |
| SECURITY AGREEMENT-PLEDGE | 661 S. Hurstbourne Pkwy/PO Box 70749 |
| | Louisville, Kentucky 40222-5040 |
| | (502)584-3600 |

| LOAN NUMBER | AGREEMENT DATE | |
| --- | --- | --- |
| 7183 | October 16, 2006 | |

**PLEDGOR INFORMATION**

Eastern Livestock Co., LLC fka Eastern Livesctock Co.,
Reorganization LLC a Limited Liability Co.
135 W Market St
New Albany, IN 47150

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Kentucky

**BORROWER INFORMATION**

Eastern Livestock Co,. LLC
135 W Market St
New Albany, IN 47150

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Kentucky

**HYPOTHECATION AGREEMENT.** This Hypothecation Agreement will be referred to in this document as the "Agreement."

**LENDER.** "Lender" means Republic Bank & Trust Company whose address is 661 S. Hurstbourne Pkwy/PO Box 70749, Louisville, Kentucky 40222-5040 , it's successors and assigns.

**BORROWER.** For purposes of this Agreement, the term "Borrower" refers to any party, who with respect to an obligation secured by a security interest in the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation.

**HYPOTHECATOR.** "Pledgor" or "Hypothecator" means each person who signs this Agreement.

**COLLATERAL.** On the date above, and in consideration of loans granted by Lender to Borrower, the Hypothecator hereby assigns the Lender all its right, title and interest to, and grants Lender a security interest in, the property described in the following document:

- Mortgage in the amount of $661,000.00, dated **October 16, 2006** evidencing security interest in the property located at **135 West Market St New Albany IN 47150.**

**SCOPE OF PLEDGE.** The pledge and security interest granted herein shall secure Lender for all indebtedness of the Borrower to Lender, whether presently or hereafter owing, whether direct or indirect, liquidated or contingent, and whether or not evidenced by a writing, such as a promissory note or loan agreement. All such liability is sometimes referred to as the "Loans" in this Agreement.

**CONSIDERATION.** The Pledgor hereby warrants and represents that the pledge and security interest in the Collateral arising out of this Agreement has been given and granted to induce the Lender to extend, or to continue to extend, credit accommodations to the Borrower.

**WARRANTIES.** Pledgor hereby warrants that the description of Pledgor's type of business as set forth above is a true and accurate description of said business, and that Pledgor will not change, alter or modify Pledgor's type of business or state of organization/formation without prior written notice to Lender, at the address of the Lender set forth above, or at such other address as Lender shall provide to Pledgor from time to time for purpose of providing Notice.

**LENDER ACTIONS.** Pledgor agrees to any extensions of time for payment of any Loans of the Borrower by Lender, without limit as to the number or the aggregate period of such extensions, and that Lender may make or consent to any type of modification or renewal with respect to any Loans of Borrower. Pledgor further agrees that Lender may make or consent to any substitution of collateral securing Loans of Borrower and may release any or all collateral securing such Loans.

**DEFAULT.** In the event of a default in any agreement herein; or in the event of a default in the terms of any agreement in the form of a note, mortgage, deed of trust, trust deed, security deed, security agreement, loan agreement, guarantee, or the like, between Lender and Borrower and/or the Pledgor (the terms of such being incorporated by reference herein); or in the event the Lender shall, in good faith, believe the Borrower's and/or Pledgor's ability to repay the Borrower's indebtedness to the Lender, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence, the Lender may, without notice to or demand upon either the Borrower or Pledgor, dispose of the Collateral as a secured party under the provisions of the Uniform Commercial Code, as adopted in the state of the Lender's address, as shown above. The Pledgor hereby expressly waives the right to request the Lender to marshal any other collateral security it may have received from the Borrower or any third party to secure Borrower's Loans from the Lender. Pledgor hereby appoints any officer of the Lender as its true and lawful attorney-in-fact to endorse, or otherwise execute any of the Collateral as such attorney-in-fact may deem appropriate to dispose of the Collateral.

© 2004-2005 Copyright Compliance Systems, Inc. A9A2-E80B - 2005.10.58
Hypothecation Agreement - Security Agreement - Pledge DL6033

Page 1 of 2

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868



EXHIBIT D

**NOTICES.** Any notice by Lender to the Borrower or Pledgor shall be deemed proper if sent by first class United States mail to the address of the Borrower and/or Pledgor shown above, unless either the Borrower or Pledgor shall have notified the Lender in writing to send notices to another address.

**FORBEARANCES.** No waiver or indulgence of the Lender in enforcing the terms of this Agreement or any other agreement between the Lender and the Borrower and/or the Pledgor, shall be considered a waiver of future performance of this Agreement or any such other agreement in strict accordance with their terms, and Lender shall not be required to give either the Borrower or Pledgor notice of its intent to enforce such terms in the future.

**BINDING EFFECT AND GOVERNING LAW.** This Agreement shall be binding upon the parties' heirs, successors and assigns. This Agreement is governed by the laws of the State of Kentucky to the extent that federal law controls.

**JOINT AND SEVERAL COVENANTS.** All covenants of the Borrower and/or the Pledgor shall be joint and several whether or not this Agreement has used such terms in the plural or singular. If permitted by law, each borrower executing this Agreement is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**GENERAL WAIVERS.** To the extent permitted by law, both the Borrower(s) and Pledgor(s) severally waive any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral.

**HEADINGS.** The headings preceding text in this Agreement are for the general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**By signing this Agreement, Pledgor acknowledges reading, understanding, and agreeing to all its provisions.**

Eastern Livestock Co., LLC fka Eastern Livesctock Co., Reorganization LLC a Limited Liability Co.

X _____ 21/6-06
By: Thomas P Gibson          Date
Its: Manager