UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: § | |
| § | CASE NO. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC § | |
| § | |
| Debtor. § | |

### OBJECTION AND RESPONSE TO "EMERGENCY MOTION REGARDING PAYMENTS ON DEBTOR'S CATTLE SALES"

TO THE HONORABLE UNITED STATES BANKRUPTPCY JUDGE:

Interested Parties, Friona Industries, LP ("Friona"), Cactus Growers, Inc. ("Cactus"), and J & F Oklahoma Holdings, Inc. ("J&F"), collectively "Movants," file this Objection to the "Emergency Motion Regarding Payments on Debtor's Cattle Sales" filed by the Trustee herein on January 6, 2011 [Doc. #141], hereinafter referred to as "Trustee's Proceeds Control Motion".

### RELEVANT FACTUAL BACKGROUND

1. Debtor's primary line of business was to function as a "market agency" or "dealer" as defined in the Packers and Stockyards Act §201(c) and (d). That is to say, on a day-to-day basis, Debtor was engaged in the business of buying or selling cattle on a commission basis ("market agency") or was engaged in the business of buying or selling cattle on its own account ("dealer"). Movants expect final evidence in this matter to indicate that almost all of Debtor's sales activities were as a dealer.

2. To the extent that Debtor agreed to a sales transaction and identified cattle to such a transaction, and certainly after delivery, Debtor would no longer have an "ownership" interest in the cattle. See Uniform Commercial Code §§2.403 and 2.401. This would be true whether or not Debtor has yet received payment for such cattle.

3. Both with respect to its market agency activities and its dealer activities, Debtor agreed to purchase cattle from sale barns, video auctions and individual producers on a daily basis. Some purchases would include an agreement for a future delivery date and, in turn, would require Debtor to make a "down payment". Upon the arrival of the delivery date, Debtor would then be obligated to complete payment for the cattle ("Cash Future Delivery Contracts"). For other transactions, for example, from auction barns and video auctions, Debtor would be obligated to fully pay immediately at time of delivery ("Spot Contracts").

4. Also on a daily basis, Debtor agreed to sell cattle to livestock producers who would then further feed and develop the animals toward an ultimate slaughter weight. Debtor also sold cattle by Cash Future Delivery Contracts and would receive down payment monies for such transactions. Debtor's purchaser would be obligated to pay any remaining purchase price for the cattle at the time of delivery. Debtor would, as well, sell some cattle through Spot Contract transactions, in which case full payment would be made promptly following delivery.

5. Beginning approximately November 4, 2010, Debtor's financial difficulties began to come to light. Very quickly, the parties who had agreed to sell and deliver cattle to Debtor became aware that checks made payable to such sellers were bouncing or that no checks were forthcoming at all. Such sellers then began to attempt to collect the payment which would otherwise come from Eastern by contacting the various purchasers of cattle from Eastern claiming that such purchasers should now pay the sellers instead of Eastern.

6. Fifth Third Bank claims a lien on Eastern's livestock, inventory and receivables. According to documents filed by Fifth Third, its claim is in excess of $40 million.

7. Movants are feed yards located in Texas and Kansas. Friona is the initiating Plaintiff in a suit in the nature of interpleader bearing causing number 2:10-cv-00266-J on file in

the United States District Court for the Northern District of Texas, Amarillo Division, hereinafter referred to as (the "Texas Interpleader Suit").  Movants Cactus and J & F have additionally interpled funds in to that lawsuit.  The funds in question in that lawsuit theoretically are subject to claims by:

(a) Various parties named in the suits who are unpaid sellers to Eastern;

(b) Fifth Third Bank;

(c) Rights of offset or recoupment by the Movants with respect to (1) monies paid Eastern as down payments for Cash Future Delivery Contracts which Eastern will not be able to perform and (2) offsets or recoupment claims for damages by virtue of market price differential with respect to Cash Future Delivery Contracts that Eastern will not be able to perform.

8. Movants currently have pending a Motion to Lift Stay to allow the Texas Interpleader Suit to go forward in order to resolve the various priority disputes therein.

9. Because the claim of Fifth Third Bank is so substantially in excess of the funds interpled in the Texas Interpleader Suit, there is no prospect that any of the funds in issue would accrue to the benefit of Eastern or its unsecured creditors.

## MOVANTS' OBJECTIONS

10. Movants object to the Trustee's "Relief Requested" as follows:

(a) In their Motion to Lift Stay and with Briefs submitted contemporaneously, Movants demonstrate to the Court that assets within a separate interpleader suit such as the monies in the Texas Interpleader Suit are not property of the estate, do not present efforts to obtain possession of such property or to enforce claims against the Debtor, and as a result this Honorable Bankruptcy

Court does not have authority to enjoin or displace the jurisdiction of the United States District Court for the Northern District of Texas with respect to such funds.

(b)  The Trustee's proposed scheme will simply route large sums of money to which the Estate has no practical claim through the Trustee's account for no purpose other than to generate Trustee's fees, to the detriment of cattle sellers who can prove claims.

(c)  The Trustee's proposed scheme presumably would create an extra judicial decision maker for the various priority claims and would, in the process, also generate substantial attorney fees payable to the Trustee's attorneys, further harming the cattle sellers who can prove claims.

(d)  Movants object to the "Relief Requested" to the extent the Trustee is vague and unclear as to what funds the Trustee proposes to administer. Specifically, in Trustee's Motion to Control Proceeds paragraph 11, the Trustee asks this Court to enter a vague order that "Buyers" pay the "Purchase Money" to the Trustee without any designation of what portions of the purchase money is intended for administration.  Specifically, Movants have rightfully claimed rights of offset or recoupment against the funds that they would otherwise have paid Eastern for cattle delivered.  The Trustee's Motion to Control Proceeds is non-specific as to whether or not the Trustee intends to ask the Court to require payments which would abrogate the Movant's right of offset for these liquidated damages.

11.     Movants object to paragraph 13 under "Relief Requested" in the Trustee's Motion to Control Proceeds to the extent it attempts to justify the Trustee's management of funds in order to reduce payments which allegedly may have already been received from the Debtor's Packers and Stockyards bond.  First, Movants state that it is extremely unlikely that the Packers and Stockyards' administration will have moved so quickly to make payments on the bond.  In all probability, the bond process will take many months if not years.  Further, the bond payout will be of such a small percentage as to be minuscule and irrelevant to the larger administration of purchase funds.

12.     Movants object to paragraph 15 of the Trustee's Motion to Control Proceeds and the procedure set forth therein because they are unnecessary and duplicative of procedures which will go forward in the interpleader suits.  Further, the proposed procedures do not provide any guidance on what standards or legal principals the Trustee would propose to apply in making and determining claims.

## CONCLUSION

For the reasons stated above, Movants request the Court to hear their objections and, granting same, deny the Trustee's Motion to Control Proceeds.

Respectfully submitted,

SPROUSE SHRADER SMITH P.C.

/s/ John Massouh
John Massouh, Texas SBN 24026866
John Huffaker, Texas SBN 10187600
701 S. Taylor, Suite 500
Amarillo, Texas 79101
(806) 468-3300
FAX (806) 373-3454
john.massouh@sprouselaw.com

David L. LeBas
NAMEN HOWELL SMITH & LEE, PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
(512) 474-0300; (512) 474-1901 FAX

John H. Lovell
LOVELL, LOVELL, NEWSON & ISERN, LLP
112 West 8th Avenue, Suite 1000
Eagle Center Building
Amarillo, Texas 79101-2314
(806) 373-1515; (806) 379-7176 FAX

Mark A. Robinson
VALENTI HANLEY & ROBINSON, PLLC
One Riverfront Plaza, Suite 1950
401 West Main Street
Louisville, KY 40202
(502) 568-2100; (502) 568 2101 FAX
mrobinson@vhrlaw.com

ATTORNEYS FOR MOVANTS.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic and/or U.S. Mail this 10th day of January, 2011 upon all parties entitled to such notice as provided by the ECF filing system.

/s/ John Massouh
John Massouh

616272.1
3554.31