UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-939049-BHL-11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | (Judge Basil H. Lorch III) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## OBJECTION OF THE FIRST BANK AND TRUST COMPANY TO APPLICATION TO EMPLOY BAKER & DANIELS LLP AS COUNSEL TO CHAPTER XI TRUSTEE

The First Bank and Trust Company ("First Bank"), by counsel for its Objection to

Application to Employ Baker & Daniels LLP as Counsel to Chapter XI Trustee ("Application"),

states as follows:

## THIS BANKRUPTCY WILL CONTINUE TO DRAW NATIONAL ATTENTION AND SCRUTINY

1.      The bankruptcy of Eastern Livestock Co., LLC is one of the largest in

Indiana and has been reported in industry journals as already having a significant potentially

adverse effect upon the fed cattle industry as a whole.  The proceeding has two major secured

creditors:  Fifth Third Bank ("Fifth Third") and Objector First Bank who was recently recognized

by the USDA as Rural Development Lender-of-the-Year for 2010.  The proceeding originated as

a state court receivership initiated by Fifth Third with its recommended receiver appointed ex

parte on the same day it filed the state court action.  The early reports of the receiver/custodian

are that the known liabilities far outweigh the identified assets, even well beyond what was

expected when the receivership commenced.  Thus, this proceeding is likely to result in national

attention and scrutiny particularly since the USDA has already taken interest and filed its own

separate action under the Packers and Stockyard Act, (1921) 7 U.S.C. § 181 et seq., styled In re

Eastern Livestock Co. LLC and Thomas P. Gibson, P & S No. D-11-0062, United States

Department of Agriculture (Nov. 19, 2010).

        2.      On December 30, 2010, the newly appointed Chapter XI Trustee in this

proceeding filed an application to employ the firm of Baker & Daniels LLP ("B&D") to serve as

Trustee's counsel.  For the reasons stated below, and as supported by the Affidavit of Daniel J.

Donnellon ("Donnellon Aff.") filed contemporaneously as Exhibit A, First Bank objects to the

appointment of B&D and believes that if the Trustee requires the assistance of outside counsel,

then such counsel must be truly "disinterested" under Bankruptcy Code § 327(a).  As detailed

below, and in the Donnellon Aff., B&D has previously declined to represent the First Bank in

this bankruptcy proceedings relating to Eastern Livestock due to its conflict with Fifth Third.  If

the conflict was enough to warrant abstention under the normal two-party litigation model, then

certainly more inquiry is required before B&D can serve as a fiduciary of the estate.

## THE APPOINTMENT OF PROFESSIONALS BY THE TRUSTEE
## REQUIRES A HIGH STANDARD

        3.      "Bankruptcy professionals are required to examine their relationship not

only based on the two-party litigation model, but also one guided by a stricter, fiduciary

standard." Century Indem Co. v. Congoleum Corp. (In re Congoleum Corp.), 426 F.3d 675, 688

(3rd Cir. 2005) (internal quotations and citation omitted).  "Rules governing professional conduct

are often viewed as even more necessary and applicable in bankruptcy cases than in other

contexts." Id. at 686.  "In addition to the standards established by professional ethics, attorneys

retained in bankruptcy proceedings are also required to meet the restrictions imposed by section

327 of the Bankruptcy Code.  Subsection (a) restricts retention of lawyers and other

2

professionals to those who do not hold or represent an interest adverse to the estate and who are disinterested." Id. at 688-89. See also Kravit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 835 (7th Cir. 1998).

4.    A "disinterested person" is defined, in relevant part, as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest, in the debtor, or . . . for any other reason." This definition of "disinterested person" is "sufficiently broad to include any professional with an 'interest or relationship that would even faintly color the independence and impartial attitude required by the Code.'" Crivello, 134 F.3d at 835 (citations omitted). In addition to the requirement of disinterestedness, a trustee's employment of a professional requires that the professional "not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). This phrase may include an instance where a professional "possess[es] a predisposition under circumstances that render such a bias against the estate." Crivello, 134 F.3d at 835 (citation omitted).

5.    "Together, the statutory requirements of disinterestedness and no interest adverse to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Id. at 836 (quoting Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994)).

6.    Although disqualification may not be appropriate if a conflict is solely due to the professional's prior representation of a creditor, a creditor's "deep involvement in [a] case" and a law firm's "dependence on [that creditor's] present and future law business" could involve a

conflict that is not exempted under 11 U.S.C. 327(c).  In re Am. Printers & Lithographers, Inc.,

148 B.R. 862 , 867 (Bankr. N.D. Ill. 1992).

## FIFTH THIRD BANK HAS CREATED ITS OWN PROBLEM IN FINDING "DISINTERESTED PERSONS"

7.       Many national corporations, including regional and national banks, utilize

the tactical strategy of engaging numerous large law firms with top talent in order to limit an

opponent's choice of counsel due to the creation of conflicts of interest.  Whether by design or

accident, Fifth Third is no stranger to this process and must live by its consequences.  The First

Bank has already encountered "conflict of interest" problems being potentially adverse to Fifth

Third as another secured creditor.  The First Bank should not continue to suffer from the myriad

conflicts Fifth Third has created while Fifth Third gains from its deep involvement in the case

and association with the many professionals.

8.       In early November, 2010, the First Bank retained Faruki Ireland & Cox

LLP (the "Faruki Firm") to represent it in relation to the state court receivership action in

Hamilton County, Ohio filed by Fifth Third.  Donnellon Aff., ¶ 2.  Before retaining the Faruki

Firm, First Bank contacted no less than five separate law firms in the region each of whom

claimed they could not represent First Bank due to active legal work for Fifth Third which

presented a conflict.  Donnellon Aff., ¶ 2.  The Faruki Firm, however, specializes only in

business litigation and, therefore, avoids many of the client conflicts that arise from other

practice areas having client relationships with opposing parties.  Thus, the Faruki Firm had no

allegiance to Fifth Third that would prevent such representation.  Donnellon Aff., ¶ 2.

9.       The Faruki Firm, immediately recognized the potential need for

bankruptcy counsel, likely in the central or southern Indiana area, before any such petitions were

4

filed and while actively seeking to have First Bank intervene in the state court action. Two partners from the Faruki Firm spoke to a total of eight to ten different law firms in an effort to secure representation for the First Bank. Donnellon Aff., ¶ 3. On each occasion, they were told the firms had irreconcilable conflicts due to active or significant representation of Fifth Third. Donnellon Aff., ¶ 3.

10.    John Burns of B&D was among the very first calls the Faruki Firm made in this process. Donnellon Aff., ¶ 4. Mr. Burns is a bankruptcy lawyer and listed as one of 12 partners in the B&D Bankruptcy Practice area listed on the firm's website. Donnellon Aff., ¶ 4. Mr. Burns did not immediately decline to represent First Bank; but rather stated he was aware of some work the firm did for Fifth Third and had to check with others to see whether a conflict existed which would prevent B&D from representing the First Bank in the normal two-party litigation model in which Fifth Third already had skilled counsel. Donnellon Aff., ¶ 4. Mr. Burns later reported that B&D could not represent the First Bank in any bankruptcy proceedings related to Eastern Livestock due to an actual conflict with B&D's representation of Fifth Third. Donnellon Aff., ¶ 4. Indeed, the B&D website actively lists Fifth Third Bank among a list of "Representative Clients" for its Banking & Finance practice area. See Exhibit 1, attached and Donnellon Aff., ¶ 4.

**THE EVIDENTIARY SUPPORT FOR THE TRUSTEE'S MOTION PROVIDES NO
DETAIL TO SUPPORT DISINTERESTEDNESS AND MAKES NO MENTION OF
TURNING DOWN FIRST BANK BASED UPON A CONFLICT THAT
MUST NOW BE GIVEN EVEN GREATER SCRUTINY**

11.    The Seventh Circuit has held, "Under Fed. R. Bankr. P. 2014, any applying professional must set forth 'to the best of the applicant's knowledge' all known connections of the applicant with the 'debtor, creditors, any other party in interest, their

respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee' in both the application for employment and an accompanying verified statement." Crivello, 134 F.3d at 836 (quoting Fed. R. Bankr. P. 2014). "[C]ounsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." Id.

12.     The Affidavit of Terry E. Hall in Support of Application to Employ Baker & Daniels LLP as Counsel to Chapter XI Trustee ("Hall Aff." or "Hall Affidavit") gives short shrift to what Mr. Burns described as an irreconcilable conflict when it came to representing the other secured creditor in these proceedings.  The Hall Affidavit states that B&D submitted through its "conflicts check system" the "names of the parties identified to us by [Mr. Knauer]. . . as the debtor's largest secured and unsecured creditors, contract parties and other parties in interest." Hall Aff., ¶ 2.  But, there is absolutely no mention of turning down the engagement by the First Bank due to the Fifth Third conflict.  Instead, now that the engagement will be for the Trustee and will involve the active work of six professionals whose combined billing rate exceeds $2,000/hour, B&D acknowledges its "current representations" of Fifth Third, but urges the Court to accept the simple conclusion that "the Firm believes (it) will not represent a conflict." Hall Aff., ¶ 5.

13.     The Trustee proposes to utilize a full 25 percent of the B&D partners in the Bankruptcy Practice Area (three of 12) to assist in this case after one of those 12 -- ostensibly with full knowledge of the disinterested person requirements of the Bankruptcy Code and after checking with others -- declined to represent the First Bank due to the Fifth Third conflict. Particularly given the high profile nature of this case and the outside scrutiny it will receive, the Court must have full disclosure of the nature of the B&D work for Fifth Third before approving

6

this application. The standards governing conflict of interest do not become flexible based upon the size of the engagement. If B&D did not believe it could represent the First Bank due to its conflict representing Fifth Third, then it must provide more than a conclusory statement that "the Firm believes (its current representation of Fifth Third) will not represent a conflict" for engagement as a professional under Section 327.

14.     Although B&D has claimed it cured the actual conflict with a waiver from Fifth Third, this waiver comes at a cost to other creditors in the estate. In re Am. Printers & Lithographers, Inc., 148 B.R. at 867 ("The consent by the clients [to waive a conflict] does not always create disinterestedness in bankruptcy, and does not do so here."). This limited waiver would not allow B&D to become adverse to Fifth Third in any avoidance proceeding; thus, either insulating Fifth Third from avoidance or shielding the person with potentially the greatest knowledge of the merits of such proceedings, the Trustee and his counsel, from assisting in pursuing Fifth Third.

## FIRST BANK HAS SOUGHT LIMITED NON-PRIVILEGED DISCOVERY TO ASSIST THE COURT'S FULL INQUIRY

15.     To assist the Court in this process, the First Bank has served three simple interrogatories to Fifth Third, a party to this action, and made a similar informal request to B&D for non-privileged information. The First Bank has asked for: (1) a simple identification of the matters for which Fifth Third has engaged B&D over the past 48 months with a brief description of the matter and whether the engagement is current; (2) identification of the Fifth Third officer or in-house counsel to whom B&D reported and who was the primary decision-maker for such engagements; and, (3) total billed and unbilled time and costs in the relationship between Fifth Third and B&D over the last 48 months. A copy of the interrogatories is attached as Exhibit B.

7

In addition, the informal request to B&D (attached as Exhibit C) includes a request for production of documents, including emails, relating to any conflict check performed by attorney John Burns in response to the inquiry of the Faruki Firm on behalf of the First Bank.

16.     It is essential that a bankruptcy court have full and complete disclosure relating to potential and actual conflicts before the retention of counsel by the Trustee.  The importance of prompt, complete, and detailed disclosure is discussed in In re Envirodyne Indus., Inc., 150 B.R. 1008 (Bankr. N.D. Ill. 1993).  The court vacated a prior order approving counsel for the debtor in possession, after learning that the law firm currently represented a significant creditor of the estate who was a shareholder in the reorganizing debtor. The court noted that the disclosure requirements mandate that the firm seeking appointment must affirmatively disclose all connections to the debtor, the creditors and others, no matter how trivial, at the earliest opportunity, because the court has neither the resources nor duty to conduct its own investigation.  Id. at 1020.  Moreover, because the "disinterestedness" and "adverse interest" inquiries did not arise "solely" by virtue of the law firm having an ongoing relationship with the debtor, Section 327(c) was not applicable.  The court noted that, at some point, to effectively represent the estate, the counsel would have to negotiate with the client of its law firm and this would not allow the firm to be "free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate."  Id. at 1017 (citing In re Am. Printers & Lithographers, Inc., 148 B.R. 862 (Bankr. N.D. Ill. 1992).  In addition, the initial affidavit of the Cahill, Gordon firm in In re Evirondyne, disclosing only what its firm "conflicts check system" found, is virtually identical to the conclusory statement from B&D in the Hall Affidavit.  Id. at 1014.  This Court should not make the same error regretted by the Environdyne court and must

8

require complete, thorough, detailed disclosure from B&D before ruling on the pending application.

17.     At present, we know nothing about B&D's representations of Fifth Third, **except** that it was enough for B&D to turn down an engagement that would not involve the fiduciary scrutiny of Section 327 disinterestedness. Only after fully evaluating the discovery sought from Fifth Third and B&D can this Court fully address the disinterested person requirements in connection with the application to appoint B&D.

Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0300
Telecopier: (513) 632-0319
Email: ddonnellon@ficlaw.com

Attorneys for The First Bank and Trust
Company

## CERTIFICATE OF SERVICE

I certify that on the 10th day of January, 2011, I electronically filed the foregoing
Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels LLP
as Counsel to Chapter XI Trustee with the Clerk of Courts using the CM/ECF system, which will
send notification of such filing to CM/ECF participants:

John R. Carr III
jrciii@acs-Iaw.com; sfinnerty@acs-Iaw.com

Deborah Caruso
dcaruso@daleeke.com; Iharves@daleeke.com; mthomas@daleeke.com

Terry E. Hall
terry.hall@bakerd.com; sarah.laughlin@bakerd.com; sharon.korn@bakerd.com

James A. Knauer
jak@kgrlaw.com; hns@kgrlaw.com

Kim Martin Lewis
kim.lewis@dinslaw.com; lisa.geeding@dinslaw.com

John Frederick Massouh
john.massouh@sprouselaw.com

Mark A. Robinson
mrobinson@vhrlaw.com; dalbers@vhrlaw.com

Richard A. Schwartz
ecfmailschwartz@gmail.com; april@ks-Iaws.com; kim@ks-Iaws.com;
suki@ks-Iaws.com

Fred R Simon
fredsimon09@gmail.com; pam3339@gmail.com

Meredith R. Thomas
mthomas@daleeke.com; kmark@daleeke.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Michael J Walro
mwalro@madi.twcbc.com; mwalro@ecf.epiqsystems.com

10

Charles R. Wharton
Charles. R. Wharton@usdoj.gov

James T. Young
james@rubin-Ievin.net; marie@rubin-levin.net; ATTY_JTY@trustesolutions.com

/s/ Daniel J. Donnellon
Daniel J. Donnellon

445059.2

11