UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| EASTERN LIVESTOCK CO., LLC, ) | CASE NO. 10-93904-BHL-11 |
| ) | |
| Debtor. ) | |

**OBJECTION TO SECOND SUPPLEMENTAL MOTION FOR RELIEF FROM STAY FILED BY FRIONA INDUSTRIES, LP, CACTUS GROWERS, INC., AND J & F OKLAHOMA HOLDINGS, INC.**

The First Bank and Trust Company ("First Bank"), by counsel, for its Objection to Second Supplemental Motion for Relief from Stay filed by Friona Industries, L.P., Cactus Growers, Inc., and J & F Oklahoma Holdings, Inc., collectively "Movants", alleges and states as follows:

1. Movants filed their Motion for Relief from Stay with respect to a certain action filed in the United States District Court for the Northern District of Texas, more particularly described in Movants' Motion, which is in the nature of an interpleader (the "Interpleader Action").

2. Movants filed their Second Supplemental Motion for Relief from stay seeking to clarify the basis for their claims for relief from the stay in the Interpleader Action. For the first time, it is now clear that Movants are asserting that the Interpleader Action is not stayed by § 362(a)(1) due to the nature of an interpleader action.

3. Movants themselves admit that the case law is split insofar as it relates to application of the automatic stay under § 362(a)(1).

4.       For the reasons set forth below, First Bank asserts that those cases which hold that interpleader actions are subject to § 362(a)(1) correctly state the law. Moreover, even if the cases relied on by Movants correctly applied the law to the facts applicable to those cases, those cases are clearly distinguishable due to the fact that the Movants here seek relief in the Interpleader Action that extends far beyond a mere determination of whether the funds that are the subject the Interpleader Action constitute property of the bankruptcy estate under Section 541.

5.       *NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir. 1985) held that an interpleader action is subject to the stay under § 362(a)(1) notwithstanding that the Debtor had disclaimed any interest in the property that was the subject of the interpleader action. The Court nevertheless ruled that the interpleader action was stayed due, in part, to the fact the government was asserting its claim to funds under the provisions of the federal insolvency statute 31 U.S.C. § 3713, and that statute expressly provided that it does not apply in a case under Title 11.

6.       *NLT Computer Services Corp.* further noted that, when the Bankruptcy Act was passed, Congress modified thirty-six (36) other sections of the U.S. Code (including 31 U.S.C. § 3713) that otherwise provided preferential treatment to certain claims of creditors to provide that those statutes would not apply in bankruptcy. The Court quoted the legislative history which explained why Congress acted to amend these sections:

> These special priorities and preferences are inconsistent with bankruptcy policy, which prescribes equality of distribution for all creditors. When an insolvent estate is liquidated and the proceeds distributed under the bankruptcy laws, myriad other laws that reorder the priorities fixed in the bankruptcy code create confusion and unfairness. It is necessary to bring all of the competing claimants into the same form [sic] for a determination of the appropriate distribution of limited assets. Equality of distribution is the rule

in bankruptcy, and supported by long years of strong bankruptcy policy. The bankruptcy code makes exceptions for certain classes of claims, but these exceptions are based on a weighing of all competing interests in the bankruptcy arena. Other laws that grant priorities do so at the expense of other creditors and to the detriment of the orderly liquidation and distribution of a bankrupt estate. *Thus, the bill, in the interest of a coherent bankruptcy policy, eliminates special priorities.* H.R. Rep. No. 595, 95th Cong., 2d Sess. 285, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6241-42 (emphasis added). id. at 1260-1261.

7. While Congress had the foresight and the ability to modify numerous special priorities federal statutes that had the potential to result in distributions to creditors in a manner contrary to the priorities established in the Code in furtherance of the interest of a coherent bankruptcy policy, Congress unfortunately lacked that ability to directly modify the myriad of state laws that could likewise result in an incoherent bankruptcy policy.

8. Accordingly, the case law holding that interpleader actions are stayed under § 361(a)(1) is grounded on a strong bankruptcy policy of equality of distribution among similarly situated competing claimants. These Courts recognize that allowing actions to continue independent of the bankruptcy proceedings may present a risk that similarly situated creditors may receive disparate distributions. As discussed below, the Interpleader Action includes state law claims that have the same potential to result in distributions to creditors in a manner contrary to the priorities established in the Code.

9. On the other hand, the cases cited by Movants are premised on the theory that an interpleader action does not actually involve the assertion of a claim against the debtor, but rather is the equivalent of a proceeding wherein the debtor is asserting a claim to the funds which would not be subject to the automatic stay. In other words, unless and until there is a determination of the debtor's entitlement to the stake in the interpleader action, one does not know whether there is any property of the estate for the bankruptcy

court to administer. While that may be true of some interpleader actions, it clearly is not true of all interpleader actions and it most certainly is not true of the instant Interpleader Action.

10. Here, the Interpleader Action alleges that the transactions with Eastern Livestock involve both completed sales and contracts where Eastern defaulted in its obligations to deliver cattle. As to the completed sales, the Interpleader Action (¶¶ 33, 35, 49) acknowledges that Eastern Livestock is owed money with respect to the completed sales and indeed the funds that are the subject of the Interpleader Action consist entirely of the funds that are owed to Eastern Livestock.

11. To the best of First Bank's knowledge and belief, Eastern Livestock performed all of its obligations entitling it to payment with respect to completed sales and there is no issue relating to whether or not the Movants owe Eastern Livestock the moneys from completed cattle sales that are the subject to the Interpleader Action. Rather, the issues in the Interpleader Action relate to the claims that the Movants and the parties named as defendants by Movants assert with respect to the moneys otherwise owed to Eastern Livestock. In the Movants case, they allege that they have damage claims with respect to other contracts that Eastern Livestock failed to perform in the form of down payments made for the purchase of the cattle, as well as the price differential between the contract price and the price paid to acquire replacement cattle that the Movants are entitled to setoff against the amounts otherwise due to Eastern Livestock. Thus, this is not a case where Eastern Livestock is but one of many claimants to a fund the ownership of which is subject to judicial determination; rather, Movants seek to assert a claim against monies which are otherwise clearly owed to Eastern Livestock.

12. The same appears to be true with respect to the claims of the other parties named as defendants by Movants in the Interpleader Action. Although, neither the Interpleader Action nor any of the multiple Motions for Relief from the Stay directly address the nature of the claims asserted by these parties, it appears that these defendants consist of persons who sold the cattle to Eastern Livestock which were subsequently sold by Eastern Livestock to Movants in connection with the completed sales, the proceeds of which are the subject of the Interpleader Actions. Moreover, Exhibit B to Cactus Grower Inc.'s Original Complaint in Intervention in the Nature of Interpleader describes these claims as reclamation claims.

13. Sellers of goods are granted reclamation claims under the Uniform Commercial Code provisions under state law. Under limited circumstances a seller of goods is given the right to recover goods that have been sold to a debtor upon discovery of the buyer's insolvency upon compliance with the relevant statutory provisions. However, reclamation rights in bankruptcy are governed by § 546(c)(1), which generally differ from the reclamation rights found in state law.

14. If Eastern Livestock still owned the cattle in question, there is no question that parties asserting reclamation rights to those cattle would be asserting claims to the property of the debtor and that those parties would be stayed if they attempted to assert those claims in a forum other than the bankruptcy court. Here, however, it appears that the Debtor has sold the cattle and the reclamation claims are being asserted against the proceeds of the sale of the cattle as opposed to the cattle. Had the Movants paid Eastern Livestock for the cattle in question, there would be not question that parties asserting reclamation rights against the proceeds paid to Eastern Livestock would be asserting

claims against property of the Debtor. The fact that, in the Interpleader Action, reclamation rights are being asserted against proceeds of those goods in the hands of third parties, as opposed to the goods themselves, does not alter the fact that the rights are being asserted against property of the Debtor.

15. In many respects, the situation is nearly identical to that before the Court in *Nortel Networks Inc. v. Traegde*, 2010 U.S. Dist. LEXIS 69438 (D. Colo. June 14, 2010). There, an interpleader action was filed in which an agreement was reached an agreement was reached determining who was entitled to funds held by the debtor. However, it was not until after the time the agreement had been reached regarding entitlement to the funds, that the debtor bothered to advise the District Court that it had previously filed a bankruptcy proceeding and requested that the Court stay any further action in the interpleader action. The Court noted that the remaining claims in the Interpleader Action consisted of counterclaims against the Debtor and the Court held that those claims were stayed.

16. *Nortel* distinguished several of the cases relied on by Movants. It distinguished *Nat'l Coop. Refinery Ass'n v. Rouse*, 60 B.R. 857 (D. Colo. 1986), by noting that "In *National Cooperative*, two bankrupt parties claimed interpled assets, therefore the true owner had to be decided in order to determine which bankruptcy court had jurisdiction over the assets." *Id*. at 10. It distinguished *Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y. 1985), noting that:

> Although Price was also an interpleader action, the court determined that while the bankrupt debtor was named as a defendant in the interpleader, the debtor was actually functioning as a plaintiff because he was making claim to the interpled assets. . . . Conversely, in this case, although Nortel was originally a plaintiff in the interpleader action, that action has been settled. With respect to Defendants' counterclaims, Nortel is in the status of a

defendant, i.e., the counterclaims are asserted against Nortel, a bankrupt debtor. *Id*. at 9-10.

17. In other words, while there may be cases where the automatic stay does not apply because a debtor is effectively functioning as a plaintiff, and the debtor is but one of many parties asserting claims to interpleaded funds, this is not such a case because here the Debtor is unquestionably entitled to payment, but for the fact that third parties are asserting claims to the funds.

18. The fundamental bankruptcy policy of equality of distribution among all similarly situated creditors relied on by *NLT Computer Services Corp.*, *supra*, as the basis for holding that the stay that automatic stay applies to interpleader actions generally is especially relevant to the reclamation claims included in the Interpleader Action. At the time it enacted the Bankruptcy Code, Congress could have simply provided that the trustee's avoidance powers do not apply to state law reclamation claims. Had Congress so provided, one would have had to look to state law to determine whether one met the requirements for asserting a reclamation claim in any particular case. However, Congress instead enacted specific requirements for asserting reclamation claims in bankruptcy that apply regardless of the requirements under any particular state's law. Congress presumably acted in this manner to promote uniform treatment of reclamation claimants in furtherance of the principle of equality among creditors. The denial of the Movant's Motion for Relief is consistent with that policy since it will result in the Bankruptcy Code provisions governing reclamation claims to determine the validity of those claims, rather than non-bankruptcy state law provisions.

19. Although insufficient information is before the Court to determine which state's Uniform Commercial Code may govern the transactions in question, First Bank notes that the Indiana reclamation provision, IC 26-1-2-702 provides that a seller of goods is entitled to reclaim the goods subject to rights of buyers in ordinary course or other good faith purchasers, whereas the Bankruptcy Code § 546(c)(1) is silent as to the rights of such parties. That difference may be relevant in determining whether a reclamation claims may be asserted against proceeds of goods, as opposed to the goods themselves. Thus, it appears that the grant of the relief sought by Movants may result in the application of state law in a manner that would result in an outcome at variance with the Bankruptcy Code outcome.

20. Regardless of whether an interpleader action brought to determine whether the Debtor has a property interest in funds that is property of the estate is subject to the automatic stay, it is clear that the Interpleader Action seeks to accomplish far more. Here, the primary purpose of the Interpleader is to determine the claims of third parties to funds that would unquestionably be due and owing to the debtor but for the assertion of those claims. Thus, the Interpleader Action seeks to continue actions, the purpose of which is to determine claims against the estate, and is subject to the stay.

WHEREFORE, The First Bank and Trust Company, by counsel, respectfully requests that the Court deny the Motion for Relief from Stay, the Supplemental Motion for Relief from Stay and the Second Supplemental Motion for Relief from Stay filed by Friona

Industries, L.P., Cactus Growers, Inc., and J & F Oklahoma Holdings, Inc. and for all other appropriate relief.

                                                        Respectfully submitted,

                                                        /s/ Bret S. Clement
                                                        Bret S. Clement  (#3708-49)
                                                        Ayres Carr & Sullivan, P.C.
                                                        251 East Ohio Street, Suite 500
                                                        Indianapolis, IN  46204-2184
                                                        Tel. 317-636-3471/Fax 317-636-6575
                                                        E-mail:  bclement@acs-law.com

## **CERTIFICATE OF SERVICE**

        I hereby certify that on January 11, 2011, a true and correct copy of the foregoing Objection to Second Supplemental Motion for Relief from Stay Filed by Friona Industries, LP, Cactus Growers, Inc., and J & F Oklahoma Holdings, Inc. was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

John W Ames
jwa@gdm.com, shm@gdm.com;tlm@gdm.com;rtrowbridge@kslaw.com

C. R. Bowles
crb@gdm.com, shm@gdm.com;lgw@gdm.com

James M. Carr
james.carr@bakerd.com, sarah.laughlin@bakerd.com;patricia.moffit@bakerd.com

John R. Carr
jrciii@acs-law.com, sfinnerty@acs-law.com

Deborah Caruso
dcaruso@daleeke.com, lharves@daleeke.com;mthomas@daleeke.com

Jesse Cook-Dubin
jcookdubin@vorys.com, cdfricke@vorys.com

Laura Day Delcotto
ldelcotto@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com

Daniel J. Donnellon
ddonnellon@ficlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Terry E. Hall
terry.hall@bakerd.com, sarah.laughlin@bakerd.com;sharon.korn@bakerd.com

John Huffaker
john.huffaker@sprouselaw.com, lynn.acton@sprouselaw.com, rhonda.rogers@sprouselaw.com

James Bryan Johnston
bjtexas59@hotmail.com, bryan@ebs-law.net

Edward M King
tking@fbtlaw.com, dgioffre@fbtlaw.com

James A. Knauer
jak@kgrlaw.com, hns@kgrlaw.com

Randall D. LaTour
rdlatour@vorys.com, cdfricke@vorys.com

David L. LeBas
dlebas@namanhowell.com, koswald@namanhowell.com

Kim Martin Lewis
kim.lewis@dinslaw.com, lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com

John Hunt Lovell
john@lovell-law.net, sabrina@lovell-law.net

John Frederick Massouh
john.massouh@sprouselaw.com

William Robert Meyer
rmeyer@stites.com

- 10 -

Allen Morris
amorris@stites.com, dgoodman@stites.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com, ecf@crowedunlevy.com,
donna.hinkle@crowedunlevy.com, karol.brown@crowedunlevy.com

Matthew J. Ochs
matt.ochs@moyewhite.com, kim.maynes@moyewhite.com

Mark A. Robinson
mrobinson@vhrlaw.com, dalbers@vhrlaw.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com

Ivana B. Shallcross
ibs@gdm.com

Meredith R. Thomas
mthomas@daleeke.com, kmark@daleeke.com

John M. Thompson
john.thompson@crowedunlevy.com, jody.moore@crowedunlevy.com,
donna.hinkle@crowedunlevy.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Stephen A. Weigand
sweigand@ficlaw.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov

Jessica E. Yates
jyates@swlaw.com, edufficy@swlaw.com

James T. Young
james@rubin-levin.net, marie@rubin-levin.net;ATTY_JTY@trustesolutions.com

   I further certify that on January 11, 2011, a copy of the foregoing Objection to

Second Supplemental Motion for Relief from Stay Filed by Friona Industries, LP,

Cactus Growers, Inc., and J & F Oklahoma Holdings, Inc. was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

Eastern Livestock Co., LLC
135 W. Market Street
New Albany, IN  47150

National Cattlemen's Beef Association
c/o Alice Devine
6031 SW 37th St.
Topeka, KA  66610

/s/ Bret S. Clement
Bret S. Clement