UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**MOTION TO APPROVE TRUSTEE'S BORROWING AND
USE OF CASH COLLATERAL, MODIFY THE AUTOMATIC STAY,
PROVIDE ADEQUATE PROTECTION PAYMENTS,
PROTECT CONFIDENTIAL INFORMATION,
AND SCHEDULE FINAL HEARING**

James A. Knauer, the trustee ("Trustee") for debtor Eastern Livestock Co., LLC ("ELC"), appointed in this chapter 11 case (the "Case") , by counsel, hereby files this motion (the "Financing Motion") respectfully requesting a final order (the "Financing Order") (a) authorizing the Trustee to obtain certain post petition loans (collectively the "Trustee Loan") made by Fifth Third Bank (hereafter, "Fifth Third"); (b) authorizing the use of Fifth Third's cash collateral ("Cash Collateral Use," sometimes together hereafter with the Trustee Loan, the "Chapter 11 Financing"); (c) authorizing adequate protection payments; and (d) scheduling a final hearing (the "Financing Hearing") pursuant to Bankruptcy Rules 4001(b), (c) and (d) and 6004(a)(2).  Also as part of this Financing Motion, the Trustee asks that the automatic stay be modified to the extent required by the other relief requested and that the Court enter a protective order with respect to certain sensitive confidential information regarding the Trustee's potential claims and litigation strategy.  In support of this Financing Motion, the Trustee respectfully represents the following:

-2-

**SUMMARY OF RELIEF REQUESTED AND TERMS OF AND
CONDITIONS TO THE CHAPTER 11 FINANCING (FRBP 4001(b) and (c)) AND
LOCAL BANKRUPTCY RULE B-4001-2**

1. The Trustee is seeking authority to provide adequate protection to Fifth Third for his Cash Collateral Use and security for repayment of the Trustee Loan to obtain financing to pay certain of the Trustee's ongoing administrative costs, professional fees and expenses, and operating costs and expenses. The proposed Chapter 11 Financing will facilitate the Trustee's proposed course of action intended to maximize recovery of estate assets and to administer the Case. After arms-length negotiations with Fifth Third, the Trustee has successfully negotiated an agreement for the Chapter 11 Financing, subject to the approval of the Court.[1] The Chapter 11 Financing is based on the Trustee's categorization of certain Trustee actions as either "Must Do" or "May Do" actions (collectively the "Actions"). The Trustee has performed or at least begun to perform some of the Actions and the Trustee anticipates that he may want to perform other Actions in the future to collect and liquidate estate assets and administer the chapter 11 estate. The "Must Do" actions are those that, in the judgment of the Trustee, he must take to fulfill duties in the Case. Those "Must Do" Actions shall be financed by the proposed Cash Collateral Use, with the exception of sub-paragraph 1.A.(vii) as described in further detail below. The "May Do" Actions are (as compared to the "Must Do" items) more discretionary (at least currently) and may or may not be fully performed by the Trustee as he becomes more conversant with facts and circumstances of the Case and ELC's transactional history and can better apply a cost/benefit analysis to such "May Do" actions. Those May Do actions that the Trustee decides to perform will be financed by the proposed Trustee Loan, as will the actions described in sub-paragraph 1.A.(vii) (below) of the "Must Do" actions.

---

[1] The terms of the Chapter 11 Financing are not set forth in a separate loan agreement; all terms are set forth herein and in the proposed Financing Order (as defined herein) and attached hereto.

-2-

Descriptions of the "Must Do" and "May Do" actions, most of which tasks have at least partially been commenced, respectively, are:

    A.    <u>"Must Do" Actions</u>

    (i)    Sell cattle and handle related claims; establish a bar date for persons asserting claims under the Packers and Stockyards Act or state liens against the sale proceeds; assess and take appropriate positions with respect to assertion of ownership or lien positions with regard to cattle or sale proceeds as warranted on behalf of ELC;

    (ii)    Re-open, and settle or assume and assign executory contracts under which ELC has agreed to buy cattle, recover down payments;

    (iii)    Collect or settle as warranted receivables with regard to ELC's sale of cattle that ELC delivered to buyers pre-petition and provide limited protections to counterparty buyers, including possible limited indemnity with respect to claims by third parties in a non-bankruptcy forum in derogation of the prohibitions against commencement of such proceedings; and pursuit of actions and appropriate filings related to various interpleader actions filed by purchasers of cattle from ELC;

    (iv)    Collect receivables, marshal and sell or otherwise dispose of equipment and other assets;

    (v)    Pursuit of certain causes of action to recover any misappropriated funds and, as warranted, related claims for conversion and turnover in connection with such misappropriation of ELC funds;

    (vi)    Assertion and pursuit of turnover and other rights of the chapter 11 estate, together with, to the extent appropriate in the judgment of the Trustee, the chapter 7 trustee of Tom and Patsy Gibson, in an account maintained in the name of Tom and Patsy Gibson at Your Community Bank ("<u>YCB</u>") holding funds in excess of $4.5 Million, which account the United States Attorney (the "<u>USA</u>") for the Western District of Kentucky seized on January 19, 2011 pursuant to a seizure warrant issued by the United States District Court for the Western District of Kentucky that same day; and

    (vii)    Performance by the Trustee and his professionals of various administrative tasks, including the preparation of the Statement Of Financial Affairs and Schedules of Assets and Liabilities for ELC; dealing with a variety of claimants, responding to, resisting or negotiating resolutions with respect to motions for relief from stay that have been or may be filed, including without limitation, with Fifth Third's concurrence, an agreement with Republic Bank with respect to stay relief to permit the bank's efforts to foreclose the mortgage of the office building where ELC offices are located subject to certain terms and conditions; and assessment and assertion of any and all claims or other actions in the related bankruptcy cases of Tom and Patsy Gibson and East-West Trucking, LLC.

    B.  "May Do" Actions

  (i)  Investigation of causes of action under chapter 5 of the bankruptcy code and applicable state law (recovery of avoidable preferences, fraudulent transfers, and turnover actions) (collectively, the "Chapter 5 Actions"), and filing of such adversary proceedings that the evidence and likelihood of net recovery supports; and

  (ii)  The examination and investigation of not fewer than thirty-six (36) persons or entities the Trustee presently has identified and whom he may subpoena to produce documents and to be examined pursuant to Bankruptcy Rule 2004.

  2.  Pursuant to FBRP 4001(b) and (c) and Local Rule B-4001-2, the Debtor makes the following disclosures as to the terms and conditions of the proposed Chapter 11 Financing:

    (a)  Cash Collateral Use.

    (1)  Fifth Third will provide funding for actions listed in subparagraphs 1.A.(i) – (vi) above as "Must Do" actions (the "Items 1 - 6") by consenting to the Trustee's use of Fifth Third's cash collateral ("Cash Collateral Use") to pay the Trustee's fees and the professional fees and expenses for Baker & Daniels, DSI and other professionals retained by the Trustee that are incurred in connection with such actions and allowed by the Court (the "Items 1-6 Fees and Expenses"), subject to an initial aggregate cap of $2,000,000 (the "Carve Out"). Fifth Third's Cash Collateral that shall be subject to such Carve Out will be limited to certain monies currently in the possession of the Trustee that represent proceeds from Fifth Third's collateral. Projected Items 1-6 Fees and Expenses shall be included in the 13 week budgets to be provided to Fifth Third by the Trustee, as described below. Financing Order, page 9.

    (2)  Payment of Items 1-6 Fees and Expenses from the Carve Out shall not be subject to the same discretion as is provided to Fifth Third with respect to advances under the Trustee Loan described below. Financing Order, page 9.

    (3)  As a condition to the ongoing Cash Collateral Use, the Financing Order must provide as adequate protection for the Cash Collateral Use, a requirement that the Trustee make immediate payment to Fifth Third of "Excess Cash Collateral," free and clear of any claim or interest by the Trustee or any other party or successor in interest, including any successor trustee (whether in Chapter 7 or otherwise), including without limitation any asserted right to surcharge or seek disgorgement from Fifth Third of the Excess Cash Collateral paid to

-4-

Fifth Third. "Excess Cash Collateral" as used herein means and shall be calculated (from time to time as moneys are brought in to the estate by the Items 1-6 actions) as such amount of Fifth Third's Cash Collateral recovered and in possession of the Trustee in excess of (A) accrued Items 1-6 Fees and Expenses, plus (B) a reasonable reserve to be maintained by the Trustee for Items 1-6 Fees and Expenses that are likely to accrue during the remainder of the then current 13 week Budget. Financing Order, pages 9-10.

(b)   Trustee Loan. The additional Two Million Dollars ($2,000,000) of Cash Collateral that is authorized to be used by the Trustee constituting the Trustee Loan shall be a post-petition loan that is required to be repaid. Fifth Third shall make the Trustee Loan to the Trustee to finance the Trustee's operational expenses (including payroll for remaining ELC employees, rent, utilities, insurance etc.); United States Trustee statutory fees incurred in the Case; the Trustee's fees and expenses; and professional fees and expenses for Baker & Daniels, DSI and other professionals retained by the Trustee[2] incurred in connection with sub-paragraph 1.A.(vii) in the "Must Do" category and all of the "May Do" items (collectively, the "Operational Expenses and May Do Fees and Expenses"). Such Operational Expenses and May Do Fees and Expenses must be allowed by the Court before they are due and payable and Fifth Third shall have the right to object to such fees and expenses. The Trustee Loan shall not be permitted to exceed the maximum amount of $2,000,000. The Trustee Loan shall be secured by a super-priority administrative expense claim, and valid, binding, enforceable and first perfected liens and security interests given and granted to Fifth Third in and against the Chapter 5 Actions and shall be repayable from the first recoveries from the Chapter 5 Actions. Fifth Third's commitment to make the Trustee Loan shall be limited to the amount of net recoveries by Fifth Third from its collateral after deducting the amount of funds paid or that might be payable to Trustee from the Carve Out. Financing Order, pages 7-8.

(c)   Conditions Precedent to Chapter 11 Financing and Other Conditions. Fifth Third's agreement to the Cash Collateral Use and its commitment to make the Trustee Loan is conditioned upon the entry by the Court of a Financing Order entered by the Court approving the Trustee Loan and Cash Collateral Use in form and substance acceptable to Fifth Third and its counsel and setting forth customary terms and provisions, specifically to include the following:

(1)   As a condition precedent to the use of the Carve Out and to the funding of the Trustee Loan, and after completion of due diligence by the Trustee and his counsel in examining the Prepetition Indebtedness

---

[2] Neither the Trustee, nor his counsel, may use proceeds from the Carve Out or Trustee Loan to pay fees and expenses incurred in connection with claims or other litigation asserted by the Trustee against Fifth Third (see paragraph 2.(c)(6) below).

-5-

(defined below) owing to Fifth Third and the Fifth Third POC (defined below), the Trustee shall stipulate to and the Financing Order shall provide for the allowance of Fifth Third's pre-petition secured claim with respect to generally all pre-petition assets, including without limitation, all ELC inventory of cattle, equipment, accounts receivable and proceeds.  The Financing Order shall allow Fifth Third's claims as set forth in the Fifth Third POC 1) as a secured claim to the extent of the value of the Fifth Third collateral pursuant to Bankruptcy Code § 506 and 2) as an unsecured claim to the extent Fifth Third's claim exceeds the value of its collateral.  Financing Order, pages 13-14.

(2)     The Trustee's allowed Item 1-6 Fees and Expenses shall be payable only from recoveries from the Items 1- 6 Actions, and shall be subject to the Carve-Out.  The sum of the Carve-Out shall not be increased without Fifth Third's consent.  The Financing Order further shall provide that the Trustee use his best reasonable efforts to seek an order of surcharge pursuant to Bankruptcy Code § 506(c) with respect to any amounts payable to the holder of a secured claim other than Fifth Third from recoveries made pursuant to the "Must Do" actions.  Any such surcharge recovery shall be applied to defray a part of the Trustee's Item 1-6 Fees and Expenses, thereby diminishing the aggregate of Item 1-6 Fees and Expenses to be paid from the Carve Out.  If at the time of a surcharge recovery, the Carve Out is already fully drawn, such recovered surcharges shall be remitted to Fifth Third.  Financing Order, page 10.

(3)     The Trustee periodically shall provide Fifth Third with rolling 13 week budgets (each a "<u>Budget</u>") that shall reflect anticipated Operational Expenses and May Do Fees and Expenses.  As a condition to making ongoing advances on the Trustee Loan, Fifth Third shall have the right to review and approve each Budget in advance.  No later than 45 days before the Trustee incurs certain costs and expenses included in any Budget as Operational Expenses and May Do Fees and Expenses, if Fifth Third determines in good faith that funding such costs and expenses is unlikely to lead to recoveries commensurate with such requested funding, Fifth Third may advise the Trustee of its objection to and refusal to finance all or some such costs and expenses included in the Budget.  Financing Order, pages 10-11.

(4)     If and to the extent Fifth Third advises the Trustee (in advance of the accrual of certain costs, fees, or expenses) that Fifth Third objects to the performance of Actions by the Trustee that will result in the accrual of certain Operational Expenses and May Do Fees and Expenses, Fifth Third expressly reserves the right to object to any request by the Trustee seeking the allowance by the Court of any such amounts. If Fifth Third and the Trustee cannot reach agreement regarding such funding or if the Trustee decides to discontinue his

-6-

efforts with respect to the prosecution of May Do actions, then the Trustee may advise Fifth Third that the Trustee intends to seek a dismissal of the Case or conversion of the Case to a case under chapter 7 of the Bankruptcy Code (a "Chapter 11 Shut Down"). Under such circumstances, the Trustee will present to Fifth Third a reasonable budget to fund the Chapter 11 Shut Down, not to exceed $100,000 without Fifth Third's consent (a "Shut Down Budget"). Fifth Third shall, as part of the Trustee Loan, allow the use of Cash Collateral for the Shut Down Budget. Financing Order, page 12.

(5) The Financing Order shall provide that the Trustee on behalf of the chapter 11 estate, and any successor thereto, will waive any claim of surcharge against Fifth Third or its collateral under Bankruptcy Code § 506(c) by the Trustee, any successor chapter 7 trustee or any other person. Financing Order, page 13.

(6) The Financing Order shall provide that (i) if the Trustee recovers cash or other property by a fraudulent transfer action, then any such cash or property recovered by the estate will return to the estate impressed with liens in and against the assets that were the subject of the fraudulent transfer with the same priority and effect as existed at the time of the fraudulent transfer; (ii) while the Trustee may include among his Operational Expenses and May Do Fees and Expenses the Trustee's fees and expenses for the "due diligence" review of Fifth Third's loan documents described above in paragraph 2 (c)(1), any fees and expenses incurred by Trustee in connection with any claim or other litigation asserted against Fifth Third may not be paid from the Carve Out or Trustee Loan; and (iii) if a material portion of monies or property recovered by the Trustee that are subject to Fifth Third's liens are seized pursuant to a federal seizure warrant of the kind described in paragraph 1(a)(vi) or other proceeding under either criminal forfeiture or civil forfeiture then (A) such monies or property shall no longer serve as a basis for the use by the Trustee or bankruptcy estate of Carve Out funding or Trustee Loan advances and (B) any obligations incurred in reliance upon the availability of such monies or property prior to seizure shall not be a liability of Fifth Third, whether by surcharge or otherwise. Financing Order, pages 11-12.

(7) As additional conditions precedent, the Chapter 11 Financing also requires: (i) the finding that the Fifth Third is a good faith lender under 364(e) of the Bankruptcy Code, (ii) pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code, authorizing and granting the security interests and liens upon the Chapter 5 Actions and otherwise described above, and (iii) the automatic perfection of all liens referred to herein, which terms all of which shall not have been reversed, modified, amended or stayed without the prior written consent of the Fifth Third. Financing Order, pages 4 and 14-15.

-7-

    (8) The Trustee and the ELC estate will waive and release all claims they may have contesting the validity, perfection or amounts of the claims and liens of Fifth Third. Financing Order, pages 13-14.

## BACKGROUND AND EVENTS LEADING TO FILING

  3. ELC was one of the largest private cattle brokerage companies in the United States, with operations and assets located in at least eleven states. ELC generated revenue through the purchase and sale of cattle, both on its own behalf and as a broker for others.

  4. Certain petitioning creditors commenced the Case against ELC on December 6, 2010 by filing an involuntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code"). This Court entered the *Order For Relief In An Involuntary Case And Order To Complete Filing* [Dock. No. 110] on December 28, 2010.

  5. From December 8, 2010 through December 27, 2010, Elizabeth M. Lynch ("Receiver") served as an interim custodian and began liquidation of ELC's assets pursuant to two orders of this Court. Prior to the Petition Date, the Receiver served as receiver of ELC's assets pursuant to a November 10, 2010 Order for the Immediate Appointment of Receiver entered by the Court of Common Pleas in Hamilton County, Ohio (the "State Court").

  6. On December 27, 2010, the Court entered the *Order Approving The Appointment Of James A. Knauer As Chapter 11 Trustee* [Dock. No. 102], approving the United States Trustee's *Notice Of Appointment And Application For Order Approving Appointment Of Trustee* [Dock. No. 98] pursuant to 11 U.S.C. § 1104.

## JURISDICTION

  7. This Court has jurisdiction to consider this Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

-8-

8. The statutory predicates for the relief requested herein are sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 507 of the Bankruptcy Code and Rules 4001(c), 4001(d) and 6004 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>" or "<u>FRBP</u>") .

## PREPETITION INDEBTEDNESS

9. On February 4, 2011, Fifth Third filed a proof of claim (denominated in the claim docket as Claim # 13 and referred to hereafter as the "<u>Fifth Third POC</u>"). The Fifth Third POC is based upon a pre-petition secured borrowing arrangement between ELC, as borrower, and Fifth Third as lender (the "<u>Pre-Petition Credit Facilities</u>"). Various documents evidencing the Pre-Petition Credit Facilities are attached to the Fifth Third POC (collectively, the "<u>Loan Documents</u>"). The Fifth Third POC asserts a prepetition secured claim in the amount of $35,833,415.02. The indebtedness owed by ELC to Fifth Third evidenced by the Loan Documents shall be collectively referred to as the "<u>Prepetition Indebtedness</u>").

10. The Trustee understands and believes that the Prepetition Indebtedness is secured by liens and security interests in and against substantially all of the ELC's pre-petition assets and proceeds thereof (the "<u>Collateral</u>") pursuant to, *inter alia*, various UCC-1 financing statements and security agreements properly perfected and filed.

11. Prior to the Petition Date, Fifth Third declared or was entitled to declare events of default under the Loan Documents. As a result, Fifth Third could refuse any funding requests by the Trustee under the Pre-Petition Credit Facilities. The Trustee believes that the proposed provisions of the Financing Order will adequately protect Fifth Third's security interests and are appropriate to obtain the Chapter 11 Financing.

BDDB01 6517986v7

**RELIEF REQUESTED**

12. By this Financing Motion, the Trustee seeks, among other things, under Section 105, 362, 363, 364(c)(2)-(3), and (d) of the Bankruptcy Code, this Court's entry of the Financing Order substantially in the form of attached Exhibit A which has been negotiated with, and the Trustee believes is acceptable to, Fifth Third. The Financing Order approves Fifth Third's agreement to allow certain Cash Collateral Use by the Trustee and the Trustee Loan pursuant to an initial Budget to be approved by Fifth Third (the "Initial Approved Budget") and subsequent Budgets to be approved by Fifth Third consistent with the terms of the Financing Order.

13. The Initial Approved Budget will set forth actual and projected (i) Items 1-6 Fees and Expenses and the Operational Expenses and May Do Fees and Expenses, (ii) other anticipated expenses, if any, and (iii) receipts or recoveries, if any, on a weekly basis for the time period beginning on December 27, 2010 up through and including the week ending on March 25, 2011. The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering time periods already covered by prior budgets or covering additional time periods) to which Fifth Third and the Trustee agree in their respective discretion.

14. Because the Initial Approved Budget and other 13 week "Budgets" that may be delivered to Fifth Third in connection with the Financing may disclose claims that the Trustee intends to assert, information about the work product of the Trustee's professionals, and other negotiating and collection strategies that the Trustee intends to utilize to collect and liquidate estate assets ("Strategies"), disclosure of the Budgets (and the Strategies contained therein) to third parties (including entities against which the Trustee may assert claims or litigate) would be prejudicial to the estate. Therefore the Trustee requests that as part of the Financing Order that the Court 1) authorize the Trustee to file any Budget under seal with the Court, if a

-10-

BDDB01 6517986v7

filing is required; 2) enter a protective order protecting the Trustee and Fifth Third (and any other person who receives all or part of a Budget) from any requirement to produce copies of any of the Budgets or provide discovery or other information regarding the contents of any Budget without a further order of the Court; and 3) if the Trustee determines that he should provide a copy of all or part of a Budget to any party, authorize the Trustee to require such party to execute a confidentiality agreement and to provide what the Trustee deems to be an appropriately redacted version of any Budget requested by any party blocking from view whatever information the Trustee believes to be confidential or sensitive or that would disclose any Strategies.  The type of protective order (the "Budget Protective Order") requested by the Trustee is set forth in paragraph 24 of the proposed Financing Order.

## BASIS FOR RELIEF

15. If a debtor or trustee is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Code, then the court, after notice and a hearing, may authorize the debtor or trustee to obtain credit or incur debt:

> (a) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Code;
> 
> (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> 
> (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364(c).

16. Further, if a debtor or trustee is unable to obtain credit under the provisions of Section 364(c) of the Code, the debtor or trustee may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien."  11 U.S.C. § 364(d).

17.     Rules 4001(b) and 4001(c) of the Bankruptcy Rules govern the procedures for approving use of cash collateral and obtaining authorization to obtain post-petition financing and provide, in relevant part:

> The court may commence a final hearing on a motion for [authorization to use cash collateral (4001(b)(2)] [authority to obtain (4001(c)(2)] credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

FRBP 4001(c). Accordingly, the Court is authorized to grant the relief requested herein.

18.     The terms and provisions of the Chapter 11 Financing have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the Chapter 11 Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Trustee could obtain the needed post-petition financing.

19.     Having determined that financing is available only under Section 364(c) and (d) of the Bankruptcy Code, the Trustee negotiated the Chapter 11 Financing pursuant to his business judgment and experience in the practice of business insolvency law and related areas. Provided that this type of judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor or trustee considerable deference in acting in accordance with its business judgment. See Bray. v. Shenandoah Fed. Say. & Loan Ass'n, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); see also In re Ames Department Stores, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing

agreement does not contain terms that leverage the bankruptcy process and powers or their purpose is not so much to benefit the estate as it is to benefit parties in interest").

20. The Chapter 11 Financing is not out-of-line with current chapter 11 financings in these difficult economic times. As credit has contracted, even in the non-insolvency world, the number of lenders in the insolvency world has decreased and the terms of any such lending have become more demanding. Recent cases in which debtor-in-possession lending included roll-up of prepetition debt into postpetition financing or other "extraordinary relief" include the bankruptcy cases of Linens Holding Co., Case No. 08-10832 (Bankr. D. Del.) (CSS) (roll-up of prepetition facility), Circuit City Stores, Inc., Case No. 08-35653 (Bankr. E.D.Va. Nov. 10, 2008) (KRH) (roll up of prepetition debt and priming liens on all property), Pilgrim's Pride Corporation, Case No. 08-45664 (Bankr. N.D.Tex. Dec. 30, 2008) (DML) (prepetition and postpetition loans borrowing base and priming lien on all postpetition property), and Lyondell Chemical Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 8, 2009) (REG) (priming lien on all assets).

21. The Chapter 11 Financing provides essential, sufficient liquidity to the Trustee to enable the Trustee, among other things, to undertake and perform the work required with respect to the "Must Do" and "May Do" actions over many months in order to maximize the value of ELC's estate for the benefit of all creditors and parties in interest. Accordingly, the Trustee believes that the approval of the Chapter 11 Financing is in the best interests of the estate, creditors and all parties-in-interest. Moreover, for the reasons hereinabove stated, Fifth Third should be accorded the benefits inuring under Sections 363 and 364 of the Bankruptcy Code.

22.     The Trustee requests that the Court conduct a hearing on this Financing Motion at the earliest possible date after 14 days from the service of this Financing Motion (the "<u>Financing Hearing</u>") per Bankruptcy Rules 4001 (b)(2) and 4001 (c)(2).

### **NOTICE WITH RESPECT TO THIS FINANCING MOTION**

23.     The Trustee will provide notice of this Financing Motion and the Financing Hearing in accordance with Bankruptcy Rules 4001(b), (c) and (d) and 9014, or as otherwise directed by the Court.

### **NO PRIOR REQUEST**

24.     No previous request for the relief requested herein has been made to this Court in this Case.

WHEREFORE, the Trustee respectfully requests that the Court (i) set a final hearing to consider the approval of the Chapter 11 Financing and the entry of the Financing Order in the form and substance of <u>Exhibit A</u> attached hereto; (ii) enter the Financing Order substantially in the form and substance of <u>Exhibit A</u> attached hereto; and (iii) grant such other relief as is just and proper.

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ James M. Carr

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Wendy W. Ponader (#14633-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
terry.hall@bakerd.com
wendy.ponader@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |

BDDB01 6517986v7

| | | |
|---|---|---|
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| Kirk Crutcher<br>kcrutcher@mcs-law.com | Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Theodore A Konstantinopoulos<br>ndohbky@jbandr.com | | |

I further certify that on February 11, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

David A. Domina
ddomina@dominalaw.com

I further certify that on February 11, 2011, a copy of the foregoing pleading was served via First Class United States Mail, postage pre-paid, on those parties to be named in the "20 Largest Creditor" list per Bankruptcy Rule 1007(d) to the best of the Trustee's knowledge, on the following (except in those instances where such parties themselves or via counsel were served via the Court's Electronic Case Filing System):

| | | |
|---|---|---|
| Southland Haulers LLC.<br>Howard Compton<br>P.O. Box 142<br>Brantley, AL 36009 | G & C Trucking<br>P.O. Box 24<br>Munday, TX 76371 | Ike's Trucking Inc.<br>Ike Jacobs<br>P.O. Box 81<br>St. Paul, VA 24283 |
| G & G Trucking Inc<br>P.O.Box 335<br>Ecru, MS 38841 | Cook Trucking Inc<br>Bryan<br>RRT Box225-C<br>Stroud, OK 74075 | Scott Ledbetter Trucking LLC<br>P.O. Box 373<br>Bruce, MS 38915 |
| West Plains dba CT Livestock<br>14210 Hillsdale Circle<br>Omaha, NE 68137 | Buddy Head<br>1830 Safari Camp Road<br>Lebanon, TN 37087 | G&W/L.L.T. Trucking, Inc<br>2501 Exchange Ave Rm138<br>Oklahoma City, OK 73108 |
| Bomhak Trucking<br>5704 North Shephard<br>El Reno, OK 73036 | Humana Insurance Co<br>P.O. Box 533<br>Carol Stream, IL 60132-0533 | Dale Stull Trucking<br>Box 41<br>Nara Visa, NM 88430 |
| Buetow Lemastus & Dick, PLLC<br>Attn: Terry L. Stapp<br>1510 Cit. Plaza, 500 W. Jeff.<br>Louisville, KY 40202 | Crystal's Livestock Express<br>Dave Crystal<br>692 E 600 Ave<br>Pittsburg, KS 66762 | Bertram Cattle Hauling<br>P.O. Box 437<br>Vinita, OK 74301 |
| Reps Dispatch, LLC<br>16150 MCR19<br>Fort Morgan, CO 80701 | Walco International<br>Central Accounting Center<br>P O Box 911423<br>Dallas, TX 75391-1423 | Heath & Turpin, Inc.<br>P.O. Box 1078<br>Lamar, CO 81052 |
| Edmonton Collection<br>Edmonton Livestock<br>310 North Main<br>Edmonton, KY 42129 | Green Valley LLC<br>P.O. Box 65<br>Salvisa, KY 40372 | |

/s/ James M. Carr

-16-

BDDB01 6517986v7