UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EASTERN LIVESTOCK AUCTION, INC., | ) | CASE NO.  10-93904-BHL-11 |
| | ) | |
| DEBTOR. | ) | |

**OBJECTION TO TRUSTEE'S**
*MOTION TO APPROVE TRUSTEE'S BORROWING AND USE OF CASH COLLATERAL, MODIFY THE AUTOMATIC STAY, PROVIDE ADEQUATE PROTECTION PAYMENTS, PROTECT CONFIDENTIAL INFORMATION, AND SCHEDULE FINAL HEARING*

Superior Livestock Auction, Inc., a creditor in the above-entitled case, by counsel, for its Objection to the *Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing* ("the Motion") filed on February 11, 2011 as Docket No. 271 by James A. Knauer, trustee ("Trustee") for Chapter 11 debtor Eastern Livestock Co., LLC ("Debtor" or "ELC"), respectfully states:

**FACTS RELEVANT TO THE MOTION**

**The Parties and Events Prior to the Motion**

1. The Debtor was one of the largest private cattle brokerage companies in the United States, with operations and assets located in at least eleven states.  Revenue was generated through the purchase and sale of cattle, both on its own behalf and as a broker for others.

2. Superior Livestock Auction, Inc. ("Superior") conducts video auctions and operates as a third-party broker for ranchers, farmers and other producers of cattle, selling these

cattle on contracts for future delivery.[1] Under the Packers and Stockyards Act and related regulations ("P&S Act"), Superior acts as a "Market Agency" pursuant to 7 U.S.C. § 201(c).

3. Superior has done business with the Debtor for approximately twenty-four years. Throughout these years, the Debtor operated as a Dealer under the P&S Act, primarily buying and re-selling cattle, often from and through Superior, via its auctions. In all cases, Superior paid the original seller for the cattle that the Debtor intended to resell. The Debtor then paid Superior for the cattle, resold the cattle, and collected payment from the purchaser. Pursuant to the purchase contracts, the Debtor would place bids on the cattle at auctions held by Superior and arrange for the cattle to be picked up at a later date. When the cattle were picked up for delivery, an invoice was sent to the Debtor, who would then issue a check to Superior.

4. Through Superior's cattle auctions, the Debtor defaulted on approximately five hundred (500) contracts for purchase of cattle, and currently owes Superior in excess of $19,000,000. Superior has not received payment from the Debtor on numerous invoices, and numerous checks issued to Superior by the Debtor have either been returned, marked "Refer to Maker," or have been sent for collection and returned to Superior.

5. Fifth Third Bank ("Fifth Third") provided a substantial secured line of credit to the Debtor, and also served as the depository bank for the Debtor's accounts.

6. In late 2010 Fifth Third filed a verified complaint for conversion against the Debtor in the Court of Common Pleas in Hamilton County, Ohio, seeking injunctive relief and

---

[1] These contracts constitute both "Forward Contracts," as defined by 11 U.S.C. § 101(25) and "Swap Agreements," as defined by 11 U.S.C. § 101(53B(A)(i)(VII) and Superior qualifies both as a "Forward Contract Merchant," as defined by 11 U.S.C. § 101(26) and a "Swap Participant," as defined by 11 U.S.C. § 546(g).

appointment of a receiver based on allegations the Debtor had engaged in a massive "sophisticated check-kiting scheme" which took advantage of provisional banking credits, that the Debtor had converted funds provisionally credited by Fifth Third, and that Fifth Third had subsequently frozen the Debtor's bank accounts. A state court receiver ("Receiver") was appointed for the Debtor in November 2010.

7. Thereafter, an involuntary Chapter 11 petition was filed against the Debtor on December 6, 2010, which Superior joined as a Petitioning Creditor on December 8, 2010, and an Order for Relief was entered on December 28, 2010. From December 8, 2010 through December 27, 2010, the state-court Receiver served as interim custodian and began liquidation of the Debtor's assets through two emergency orders issued by this Court.

8. On December 27, 2010, this Court entered its order approving the appointment of the Trustee in this case pursuant to 11 U.S.C. §1104.

9. On February 4, 2011, Fifth Third filed Claim 13-1 (the "Claim") in the bankruptcy case, asserting a secured claim for more than $35 Million based on a "Promissory Note, Security/Credit Agreement" and "Losses from Check-Kiting Scheme." The Claim states the value of Fifth Third's collateral is "unknown."

10. The value of the assets of the Debtor (and hence the potential collateral of Fifth Third and other creditors) is largely unknown, although estimated at over $81 million in personal property in the Schedules filed by the Trustee on March 8, 2011, including $7 million in a depository bank account as of November 30, 2010. SCHEDULE B. The "unknown" asset values include the Debtor's operating bank account, real estate holdings, numerous receivables, and potential causes of action. According to the Trustee, the FBI has seized approximately $4.7

million in an individual's bank account believed to have come from the Debtor, and the Statement of Financial Affairs ("SOFA") filed March 8, 2011 indicates the Trustee "is aware of numerous instances of diverted payments, assets, and contract rights," and that an investigation of "account setoffs" has not been completed. SOFA, ¶13.  In addition, an interpleader action pending in the United States District Court for the Northern District of Texas, Amarillo Division, is in the process of being removed to this Court, where one of the issues is whether the Debtor has any interest in funds paid into that District Court.[2] With respect to liabilities, the Schedules list only $40 million, although many liabilities are also shown as "unknown."

        11.       The Schedules also show Fifth Third's claim as being "unknown" in amount, secured by "substantially all assets of the Debtor," with the value of the collateral also stated as "unknown." SCHEDULE D. The Trustee indicates that Fifth Third received approximately $1.36 million in payments from the Debtor in the 90 days preceding the bankruptcy filing. *See* SOFA, ¶3(B).

**The Motion**

        12.       The Trustee filed his Motion on February 11, 2011, seeking approval of "Chapter 11 Financing" with Fifth Third to "facilitate the Trustee's proposed course of action intended to maximize recovery of estate assets and to administer the case." The Trustee represents the Motion is in the best interests of all creditors and that without approval of the Motion he "will not have the funds necessary to timely pay administrative costs and expenses, his professional fees and the expenses, or operating costs necessary for the performance by the Trustee of his duties and

---

[2]Superior contends it has sole ownership of no less than $2,653,587.62 in the Interpleader Funds, for the reasons set forth in its Pre-Hearing Statement filed with this Court on February 25, 2011.

4

responsibilities for the operation, management, recovery and preservation of ELC's assets and property." PROPOSED ORDER, ¶M.

13.     The relief requested in the Motion is premised on the Trustee's statement that he "understands and believes that the [Fifth Third] Prepetition Indebtedness is secured by liens and security interests in and against substantially all of the ELC's pre-petition assets and proceeds thereof. . .,"[3] and the apparent assumption that any funds held by the Trustee or recovered by the Trustee are proceeds of Fifth Third collateral. MOTION, ¶10.

14.     Although the Motion states that it seeks approval of two forms of financing – use of cash collateral and "post-petition loans" – a careful reading of the Motion reveals that the "two" requests both involve use of alleged cash collateral, with no new funds. Specifically, Paragraph 2(a) of the Motion describes "Cash Collateral Use" and Paragraph 2(b) addresses a "Trustee Loan" which consists of *"[t]he additional Two Million Dollars of Cash Collateral that is authorized to be used by the Trustee. . . . ."* The Motion states in a footnote that, apart from the Trustee's Motion and proposed order, there is no "loan agreement."[4] MOTION, FOOTNOTE 1, PAGE 2.

15.     The Motion also fails to provide any facts relating to the alleged Cash Collateral, a capitalized term which is used throughout the document but is not defined in the Motion, and is only described as "certain monies currently in possession of the Trustee that represent proceeds

---

[3] The Trustee's blog linked to the official Bankruptcy Court website indicates that as of February 18, 2011 independent counsel was reviewing thousands of documents relating to Fifth Third's claim and potential claims against Fifth Third, and that "[w]e have to determine by March 11 whether there are claims against Fifth Third and our review will be completed by that date."

[4] The Motion also provides no facts or reasoning to support or explain the "finding" in the proposed order that in addition to use of cash collateral, the proposed "financing" includes "other credit and financial accommodations." PROPOSED ORDER, ¶N.

5

from Fifth Third's collateral." MOTION, ¶2(A)(1). The Motion does not specify the amount, or a basis for the contention that the unspecified funds are proceeds of Fifth Third's collateral. Rather, the Motion apparently assumes that all funds in the Trustee's possession are Fifth Third's cash collateral, and that recoveries made by the Trustee in his proposed actions will also be proceeds of Fifth Third collateral, and hence cash collateral of Fifth Third.

16.     The proposed use of cash collateral is also limited, with little or no apparent risk to Fifth Third. For example, while the Motion states cash collateral may only be used to pay fees and expenses for items 1-6 of the Trustee's "Must Do" Actions, the Motion also makes the seemingly contradictory statement that "allowed Item 1-6 Fees and Expenses *shall be payable only from recoveries from the Items 1-6 Actions."* MOTION, ¶2(C)(2). Such "use" is further subject to allowance of the fees and expenses, and budgets to be approved by Fifth Third but not filed or shared with parties in interest.

17.     As "adequate protection" for use of alleged cash collateral, and as "conditions precedent" to such use and the "Trustee Loan," the Motion purports to rely on §364 of the Bankruptcy Code to propose extraordinary relief in favor of Fifth Third, including:

- Immediate payment to Fifth Third of all "excess" alleged cash collateral[5] on a periodic basis, "*free and clear of any claim or interest by the Trustee or any other party* or successor in interest" MOTION, ¶2(A)(3);

- that all budgets (and hence the amounts of "excess" cash collateral) be kept confidential, and filed with the Court, under seal, only "if the Trustee deems it advisable." PROPOSED ORDER, ¶24;

- *Allowance* of the secured Claim filed by Fifth Third with respect to all pre-petition

---

[5]Defined only as the amounts assumed to be Fifth Third's cash collateral held by the Trustee in excess of the Item 1-6 Fees and Expenses which have either accrued or are likely to accrue during the then-current 13-week budget.

6

- assets and waiver and release of all claims contesting the validity, perfection, or amounts of the claims and liens of Fifth Third. MOTION, ¶¶2(C)(1), 2(C)(8);

- A finding that the Trustee agrees not to contest or challenge that the liens and security interests granted to Fifth Third under the Chapter 11 Financing, "whether pre-petition or post-petition," [sic] or that such liens and security interests "are senior, valid, fully-perfected, non-voidable liens and security interests securing the Prepetition Indebtedness." PROPOSED ORDER, ¶9(C), PG. 13.

- Waiver of any claim for surcharge under §506(c) as to Fifth Third; MOTION, ¶2(C)(5);

- Mandatory efforts by the Trustee to seek surcharge of any amounts payable to the holder of secured claims *other than* Fifth Third from the Trustee's "Must Do" recoveries, with the amount of any such surcharge directly or indirectly paid to Fifth Third[6] MOTION, ¶2(C)(2);

- A "super-priority administrative expense claim" with respect to the "Trustee Loan" MOTION, ¶2(B);

- First perfected liens and security interests in all Chapter 5 avoidance and turnover actions with respect to the "Trustee Loan," to be "repayable from the first recoveries from the Chapter 5 Actions." MOTION, ¶2(B);

- Prohibitions against the grant or allowance of any claim or lien having a priority superior or in *pari passu* with the liens granted to Fifth Third by the Financing Order until the "Trustee Loan" has been paid in full. PROPOSED ORDER, ¶4, PG.8;

- Reservation of the right of Fifth Third "to seek further relief (including additional adequate protection) or modification or termination of the automatic stay for good cause shown," without any corresponding reservation for the Trustee and the estate. PROPOSED ORDER, ¶12, PG.16;

- Termination of cash collateral use (including the discretionary "Trustee Loan") if (1) any other super-priority claim or lien is granted; (2) the Trustee seeks or supports the grant of rights secured by a lien in collateral held by Fifth Third or entitled to administrative priority status which is *junior, equal or superior* to that granted to Fifth Third unless Fifth Third consents or all outstanding obligations to Fifth Third have been paid in full; or (3) the Trustee seeks or supports any other

---

[6]Surcharged amounts must either be directly paid to Fifth Third or applied to the Trustee's Item 1-6 Fees and Expenses, thereby increasing the "excess cash collateral" to be paid to Fifth Third. ¶2(c)(2).

7

      financing under §§364. PROPOSED ORDER, ¶11, PG. 15.

- A bar against use of any of the funds to pursue any claims against Fifth Third. Proposed Order, ¶6(C), PG. 11.

- All the protections of a "good faith" lender pursuant to ¶364(e). PROPOSED ORDER, ¶15, PG. 16.

## SPECIFIC GROUNDS FOR OBJECTION

As specific grounds for its Objection, Superior states:

18. The relief requested in the Motion is contrary to law, not in the best interests of the estate, and has not been shown to be necessary for "the performance by the Trustee of his duties and responsibilities for the operation, management, recovery and preservation of ELC's assets and property."

19. The only "financing" contemplated by the Motion is use of Fifth Third's alleged cash collateral. Pursuant to §363(e), the Trustee is entitled to use cash collateral without a creditor's consent so long as the creditor is "adequately protected" under §361 to the extent the automatic stay "results in a decrease in the value" of the creditor's interest. The purpose of adequate protection is to provide protection against loss and to maintain the *status quo*, not to enhance the position of the creditor. Here, the "conditions precedent" set forth in the Motion *in addition to* adequate protection are contrary to §§363 and 361.

20. The Motion also provides insufficient information for the Court or any party to make a determination with regard to Fifth Third's collateral or its value (including alleged cash collateral), much less what would constitute adequate protection for a decrease in value as a result of the stay. As noted, the Motion merely alludes to "certain monies currently in the possession of the Trustee," without identifying the amount, or providing any factual support that the "monies"

8

in his possession, or any other property, are in fact "cash collateral" of Fifth Third. The Motion simply assumes that the unidentified cash and any recoveries made by the Trustee in his proposed actions will all be proceeds of Fifth Third collateral.

21.     It is not even clear that funds in possession of the Trustee or anticipated recoveries from actions contemplated by the Motion necessarily involve property of the estate. Accounts have been frozen, FBI investigations are ongoing, and in the Trustee's own words, the Debtor's books "are a mess and many of the records missing."[7] As noted, many assets and liabilities are unknown. Evidence of check-kiting, fraud and conversion led to a state court receivership, the involuntary bankruptcy filing, and the appointment of the Chapter 11 Trustee.

22.     Even assuming *arguendo* the assumptions made in the Motion regarding Fifth Third's collateral are correct, the relief proposed in the Motion is unsupported by the law, wholly unreasonable given the proposed limitations on "use" of cash collateral, contrary to express provisions of 11 U.S.C. §361 and §363, and essentially an improper attempt to "bootstrap" the remedies of §364 (and more) without any advance of new funds. As noted, the aim of adequate protection is simply to maintain the *status quo*.

23.     Pursuant to §§363 and 361, adequate protection for use of cash collateral may not include a "super-priority" lien, nor does §361 invoke the other extraordinary protections found in §364 for post-petition financing. 11 U.S.C. §361; *In re Fontainebleau Las Vegas Holdings LLC,* 434 B.R. 716 (S.D. Fla. 2010); *In re AMT Investment Corp.,* 53 B.R. 274 (Bkrtcy. E.D. Va. 1985); As stated by the District Court in *Fontainebleau Las Vegas Holdings,*

---

[7] Entry for February 18, 2011 from the Trustee's blog in this case linked with the official Bankruptcy Court internet website.

>By their express terms, sections 364(c) & (d) apply only to future — i.e., post-petition — extensions of credit." *In re Saybrook Mfg. Co.*, 963 F.2d at 1495; *accord id.* ("'Section 364(d) speaks only of the granting of liens as security for *new credit* authorized by the Court.'" (quoting *In re Tenney Vill. Co.*, 104 B.R. 562, 570 (Bkrtcy. D.N.H. 1989)). The reason for this is clear: "Section 364 provides certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate." *Tully Constr. Co. v. Cannonsburg Env'l Assocs., Ltd.* (*In re Cannonsburg Env'l Assocs., Ltd.*), 72 F.3d 1260, 1267 (6th Cir. 1996) (citing *Transam. Commercial Fin. Corp. v. Citibank, N.A.* (*In re Sun Runner Marine, Inc.*), 945 F.2d 1089, 1092 (9th Cir. 1991)). Here, the Term Lenders did not provide future or postpetition extensions of credit; the Debtors, rather, used cash collateral on which the Term Lenders hold a first-priority lien. Nor is the purpose of section 364(d) present in this case. The Debtors were not trying to induce the Term Lenders to undertake risks inherent in providing post-petition financing to the estate; the Debtors, rather, were trying to induce the Term Lenders to consent to the Debtors' use of the cash collateral, maintain the "status quo," or both.
>. . .
>Nothing in the Bankruptcy Code, however, appears to authorize a bankruptcy court to prime a secured creditor as a kind of adequate protection for the use of cash collateral.

434 B.R. 716, 757-8 (S.D. Fla. 2010).

24.     Use of cash collateral does not constitute "obtaining credit" or "incurring debt" within the meaning of §364. If it did, a*ll* lenders with cash collateral at the time of filing or anytime thereafter[8] would routinely be entitled to all the protections of §364, and not just replacement liens or similar adequate protection under §361. However, use of cash collateral is expressly governed by §363(c)(2), which authorizes such use "in accordance with the provisions *of this section,* namely, adequate protection under §361. *See* 11 U.S.C. §363(E). Section 361 does not provide for priming liens and specifically prohibits administrative claims as adequate protection. 11 U.S.C. §361(3).

---

[8]As defined by §363, cash collateral includes all cash or cash-like proceeds of collateral, whenever acquired by the debtor.

10

25. In rejecting a cash collateral stipulation providing for a super-priority lien pursuant to §364, the Court in *AMT Investment Corp.* held:

> Congress did not extend, either under §363 or §364 of the Code, the administrative priority provided under §364(c)(1) to the protection of a cash collateral creditor where no new credit has been extended.
> . . .
> Indeed, if §364(c)(1) were intended as a means of providing adequate protection to a cash collateral creditor, there would be no need for §507(b), which, again, was designed for such creditors, since it provides for a lower priority in distribution than does §364(c)(1). By virtue of mutual consent with the debtor, a cash collateral creditor, or any secured creditor, could obtain a §364(c)(1) priority and improve its distribution by virtue of the debtor's allegation it could not obtain alternative financing. That is precisely the situation in the case at bar, and it cannot be condoned.

53 B.R. at 276-7.

26. Without so much as a description of the debtor's assets, Fifth Third's collateral, or the amount or source of the funds in the Trustee's possession, the Motion in the present case seeks to significantly improve Fifth Third's position, and goes far beyond the relief criticized by the Court in *AMT Investment Corp.*, seeking not only the super-priority liens and *all* of the special protections of §364, but additional "remedies" which are *not* authorized by §364 or anywhere in the Bankruptcy Code, such as

   (1) Stipulated *allowance* of Fifth Third's filed claim for over $35 million, precluding objection not only by the Trustee, but by *any* creditor or party in interest[9];

   (2) That liens superior to that of Fifth Third, or claims or liens in *pari passu* with those of Fifth Third, cannot be allowed with respect to funds recovered through Chapter

---

[9] Such relief is requested notwithstanding the statement in the Claim itself that the "secured" claim is in part based on alleged "conversion," and notwithstanding the Trustee's statement in the Schedules filed on March 8, 2011 that the amount of Fifth Third's claim is "unknown."

11

     5 actions until the "Trustee Loan" is fully paid; and

 (3) That all "excess" funds assumed to be cash collateral would be periodically surrendered to Fifth Third and thereafter insulated from *any* claim by *any* party – which would obviously bar even a contention that the funds were never cash collateral of Fifth Third.

 27. Superior objects to all relief set forth in the Motion or proposed order not specifically authorized by §§361 and 363 and shown by *appropriate evidence* to be necessary to provide adequate protection for Fifth Third collateral, including but not limited to any relief pursuant to §364, the "allowance" of Fifth Third's Claim, and the other extraordinary relief not authorized by §§361, 363 or 364 described in the preceding Paragraph 26.

 28. Other than Fifth Third and professionals, no creditor stands to benefit from the Motion. The proposed "financing" certainly is not in the "best interests" of all creditors, nor has the Trustee shown he could not use the alleged cash collateral without making the extraordinary concessions to Fifth Third. He has not even made an attempt. The proposed relief would essentially make the Trustee nothing more than a bankruptcy-law empowered collection agent for Fifth Third, and would virtually insure that:

- little or no funds would be paid to parties other than Fifth Third, the Trustee and professionals;
- there will be no funds to investigate or pursue any claims against Fifth Third;
- The special powers of the Trustee including avoidance actions and surcharge will only be used to benefit Fifth Third;
- alleged "cash collateral" will be surrendered to Fifth Third without due process;

and

- Fifth Third will control the future of the proceedings, by virtue of its required approval of unfiled budgets, discretionary power over cash use, the Trustee's periodic surrender of cash, and Fifth Third's super-priority administrative claim which would have to be paid in full ahead of all claims.

29.   Finally, Superior also objects to the Trustee's request that all budgets contemplated by the Motion be kept confidential. The only basis for such request is the assertion the budgets "may disclose" alleged confidential information about negotiating and collection strategies or "work product of the Trustee's professionals." Suffice it to say, the budgets would contain much information of interest to creditors which would *not* be confidential, and would be the only means for creditors to learn, among other things, the amounts of "excess" cash that would be "immediately" surrendered to Fifth Third on a periodic basis. The Trustee should be required to provide budgets to all parties, as well as periodic reports showing actual vs. projected expenditures. Although there would be no apparent reason to include privileged attorney work-product in budgets provided to Fifth Third,[10] truly confidential information could be redacted.

## CONCLUSION

For the foregoing reasons, the Trustee's Motion should be denied. Use of funds shown to be property of the estate and Fifth Third's cash collateral should, after appropriate notice and hearing, be limited to adequate protection as specified in §§363 and 361. Prior to such hearing, the Trustee should be required to disclose the amount of the alleged cash collateral and the basis for

---

[10] Indeed, privileged information from the Trustee's counsel would presumably no longer be privileged if shared with Fifth Third.

13

the conclusion that it *is* Fifth Third's collateral, and to provide projections showing the anticipated expenditures so the Court may appropriately tailor the adequate protection to protect – but not enhance -- Fifth Third's rights. Thereafter, the Trustee should be required to provide updated budgets to all parties in interest, along with disclosure of actual vs. projected expenditures, after which adequate protection may be adjusted as appropriate.

                RUBIN & LEVIN, P.C.

                By:  /s/ John M. Rogers
                Elliott D. Levin
                John M. Rogers
                RUBIN & LEVIN, P.C.
                342 Massachusetts Avenue
                Indianapolis, IN 46204
                (317) 634-0300; FAX (317) 453-8601
                johnr@rubin-levin.net

## CERTIFICATE OF SERVICE

I hereby certify that on March 8th, 2011, a copy of the foregoing *Objection* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| David L. Abt | davidabt@mwt.net |
| John W Ames | jwa@gdm.com, shm@gdm.com;tlm@gdm.com;rtrowbridge@kslaw.com |
| T. Kent Barber | kbarber@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com |
| C. R. Bowles | crb@gdm.com, shm@gdm.com;lgw@gdm.com |
| Lisa Koch Bryant | courtmail@fbhlaw.net |
| James M. Carr | james.carr@bakerd.com, patricia.moffit@bakerd.com |
| John R. Carr | jrciii@acs-law.com, sfinnerty@acs-law.com |
| Deborah Caruso | dcaruso@daleeke.com, lharves@daleeke.com;mthomas@daleeke.com |
| Bret S. Clement | bclement@acs-law.com, sfinnerty@acs-law.com |
| Jesse Cook-Dubin | jcookdubin@vorys.com, vdarmstrong@vorys.com |
| Kirk Crutcher | kcrutcher@mcs-law.com, jparsons@mcs-law.com;cmarshall@mcs- |

| | |
|---|---|
| | law.com |
| Dustin R. DeNeal | dustin.deneal@bakerd.com, patricia.moffit@bakerd.com |
| Laura Day DelCotto | ldelcotto@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com |
| David Alan Domina | dad@dominalaw.com, KKW@dominalaw.com;efiling@dominalaw.com |
| Daniel J. Donnellon | ddonnellon@ficlaw.com, knorwick@ficlaw.com |
| Robert Hughes Foree | robertforee@bellsouth.net |
| Sandra D. Freeburger | sfreeburger@dsf-atty.com, smattingly@dsf-atty.com |
| Terry E. Hall | terry.hall@bakerd.com, sharon.korn@bakerd.com |
| John Huffaker | john.huffaker@sprouselaw.com, lynn.acton@sprouselaw.com;rhonda.rogers@sprouselaw.com |
| James Bryan Johnston | bjtexas59@hotmail.com, bryan@ebs-law.net |
| Todd J. Johnston | tjohnston@mcjllp.com |
| Edward M King | tking@fbtlaw.com, dgioffre@fbtlaw.com |
| James A. Knauer | jak@kgrlaw.com, hns@kgrlaw.com |
| Theodore A Konstantinopoulos | ndohbky@jbandr.com |
| Randall D. LaTour | rdlatour@vorys.com, khedwards@vorys.com |
| David L. LeBas | dlebas@namanhowell.com, koswald@namanhowell.com |
| Elliott D. Levin | edl@rubin-levin.net |
| Kim Martin Lewis | kim.lewis@dinslaw.com, lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com |
| Karen L. Lobring | lobring@msn.com |
| John Hunt Lovell | john@lovell-law.net, sabrina@lovell-law.net |
| John Frederick Massouh | john.massouh@sprouselaw.com |
| Kelly Greene McConnell | lisahughes@givenspursley.com |
| William Robert Meyer | rmeyer@stites.com |
| Allen Morris | amorris@stites.com, dgoodman@stites.com |
| Judy Hamilton Morse | judy.morse@crowedunlevy.com, ecf@crowedunlevy.com;donna.hinkle@crowedunlevy.com;karol.brown@crowedunlevy.com |
| Walter Scott Newbern | wsnewbern@msn.com |
| Matthew J. Ochs | matt.ochs@moyewhite.com, kim.maynes@moyewhite.com |
| Ross A. Plourde | ross.plourde@mcafeetaft.com, erin.clogston@mcafeetaft.com |
| Timothy T. Pridmore | tpridmore@mcjllp.com, lskibell@mcjllp.com |

| | |
|---|---|
| Jeffrey E. Ramsey | jramsey@hopperblackwell.com, mhaught@hopperblackwell.com |
| Mark A. Robinson | mrobinson@vhrlaw.com, dalbers@vhrlaw.com |
| Jeremy S Rogers | Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com |
| Ivana B. Shallcross | ibs@gdm.com |
| Robert K Stanley | robert.stanley@bakerd.com |
| Meredith R. Thomas | mthomas@daleeke.com, kmark@daleeke.com |
| John M. Thompson | john.thompson@crowedunlevy.com, jody.moore@crowedunlevy.com,donna.hinkle@crowedunlevy.com |
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Stephen A. Weigand | sweigand@ficlaw.com |
| Charles R. Wharton | Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov |
| Jessica E. Yates | jyates@swlaw.com, edufficy@swlaw.com |
| James T. Young | james@rubin-levin.net, ATTY_JTY@trustesolutions.com;kim@rubin-levin.net;lemerson@rubin-levin.net |

  I further certify that on March 8th, 2011, a copy of the foregoing *Objection* was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

National Cattlemen's Beef Association
c/o Alice Devine
6031 SW 37th St.
Topeka, KA 66610      /s/ John M. Rogers
               John M. Rogers