UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO MOTION TO APPROVE TRUSTEE'S BORROWING
AND USE OF CASH COLLATERAL, MODIFY THE AUTOMATIC STAY,
PROVIDE ADEQUATE PROTECTION PAYMENTS, PROTECT
CONFIDENTIAL INFORMATION, AND SCHEDULE FINAL HEARING**

The First Bank and Trust Company ("First Bank"), by counsel, for its Objection to Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing (the "Motion") [Doc. No. 271], alleges and states as follows:

I.  INTRODUCTION AND BACKGROUND

1. Unsecured creditors of Eastern Livestock commenced this bankruptcy action involuntarily after Fifth Third Bank's actions led to the collapse of the world's largest cattle broker by freezing its bank accounts and obtaining an ex parte state court order appointing a receiver. Although Fifth Third apparently stood ready, willing, and able to fund the receivership it created, it subsequently retreated once this Court became involved. Now, however, Fifth Third is willing to "allow" the Trustee to use the cash on hand at Eastern Livestock -- with no new money being infused or lent -- but only in exchange for unwarranted preferential treatment. In exchange for allowing the Trustee to use the current cash of Eastern Livestock, the Proposed Order (revised Exhibit A to the Motion) [Doc. No. 306] would grant superpriority liens not only for the

cash used, but also for <u>all of Fifth Third's prepetition debt</u>.  As discussed more fully below, the "Motion" should not be granted and the Proposed Order should not be entered in its current form.

       2.      First Bank is a secured creditor of Thomas and Patsy Gibson (the "Gibsons").  Its collateral includes, inter alia, cattle owned by the Gibsons.  The Gibsons have failed to account for the whereabouts of approximately 8,000 head of cattle that collateralized the Gibson's indebtedness to First Bank.  Upon information and belief, some of the unaccounted for cattle may have been sold to the Debtor and First Bank may assert that it has a priority security interest in proceeds of such sale in the possession of the Debtor or with respect to amounts purported to be owing to the Debtor by third parties.  To the extent that First Bank does not have a security interest in proceeds of its cattle, the Debtor owes the Gibsons for cattle it sold on behalf the Gibsons and such payable owed by the Debtor to Gibsons is subject to First Bank's security interest.

       3.      Although First Bank recognizes that it is in the best interests of the estate that the Trustee obtain some form of post-petition financing, the Court should not presume that all the terms and conditions of the financing proposed in the Motion are in the best interests of the creditors of this estate.

## II. <u>THE PROPOSED ORDER MAKES UNNECESSARY AND UNSUPPORTED FACTUAL CONCLUSIONS</u>

       4.      The Proposed Order makes extensive factual findings and related conclusions of law, all to the benefit of Fifth Third, without a scintilla of evidentiary support.  Although the Trustee has submitted neither an Affidavit nor other testimony to support the Financing Motion, the Proposed Order makes at least the following significant factual findings:

- Paragraph N: "The Trustee represents and the Court expressly finds that the terms of the Chapter 11 Financing ... have been negotiated at arm's length and in good faith ... and are in the best interests of the Trustee, the ELC estate and creditors."

- Paragraph O: "The Trustee represents and the Court hereby finds (i) the Trustee has performed all necessary and appropriate analysis of the Prepetition Indebtedness of Fifth Third, the Fifth Third POC, the Prepetition Loan Documents and the prepetition liens and security interests of Fifth Third in and to substantially all of the ELC assets and properties, and (ii) the claims of Fifth Third shall be allowed 1) as a secured claim to the extent of the value of Fifth Third's Collateral pursuant to Bankruptcy Code § 506 and 2) as an unsecured claim to the extent Fifth Third's claim exceeds the value of its Collateral."

5. To date, there has been absolutely no final accounting of the work of Fifth Third's hand-picked receiver in connection with her prepetition work as receiver or her post-petition work as custodian. Details of this work are critical to any analysis of whether Fifth Third acted improperly in connection with the collapse of Eastern Livestock. Nor has the Trustee provided any accounting of the assets and liabilities during his tenure. Most importantly, however, there is absolutely no evidence, nor sufficient time to produce evidence, of the work of the Trustee's professional Hoover Hull, LLP which the Trustee specifically brought in to address the objection of First Bank that the Trustee's professional Baker & Daniels may encounter difficulty in "arm's length" negotiations with its client Fifth Third. Unless and until there is a complete and final investigation by Hoover Hull there is no basis whatsoever for the Trustee to make the representations of Paragraph O and no basis for the Court to make such "findings," much less the legal conclusions of Paragraph 9.

6. The Proposed Order provides for a blanket allowance of Fifth Third's pre-petition proof of claim. Shortly after Fifth Third filed the state court action, the receiver, who was then in possession of the Debtor's books, reported that many of the Debtor's books and records were missing and that a significant portion of the Debtor's computer data had been erased.

3

Although First Bank understands that the receiver (now consultant to the Trustee) and the Trustee have undertaken efforts to recover relevant data, they have shared nothing about success, or lack thereof, of such efforts. Moreover, to the extent a portion of Fifth Third's claim arises from the aftermath of a check kiting scheme perpetuated by the Debtor, as specifically alleged by Fifth Third in the state court action, the information on which that portion of the claim is based would likely be in the possession of Fifth Third as opposed to the Debtor. The Court has no evidence, nor could it at this early stage, about Hoover Hull's investigation of Fifth Third's conduct in this respect.

7. Under the foregoing circumstances, an independent review of Fifth Third's claim is of paramount concern to creditors in this case. Although the Trustee has appointed special counsel to review Fifth Third's claims, special counsel has not filed any report with the Court and has just begun its investigation. There is, therefore, no justification for any factual findings or legal conclusions on such matters and the Court cannot, at this stage, enter an order that fixes the amount of Fifth Third's claim.

8. The grant of a superpriority lien on all of the assets of the estate that cannot be challenged at a later date is premature. The Motion and Proposed Order assume that the cash collateral the Trustee seeks to use is entirely Fifth Third's cash collateral. Any grant of a superpriority lien should be conditional to allow for a sufficient time period to conduct necessary investigations to avoid the possibility of Fifth Third receiving a superpriority lien as adequate protection for the use of cash collateral that belongs to the estate or another secured creditor in the event Fifth Third's lien is avoided or otherwise determined not to be a secured claim.

4

### III. THE PROPOSED ORDER GOES FAR BEYOND THE "FAIR, REASONABLE AND ADEQUATE" STANDARD OF § 364 OF THE CODE

9.  Other than the unsupported factual findings relating to Fifth Third's prepetition conduct, the specific terms of the Financing Motion that the court should not approve are: (a) the unconditional grant of a superpriority roll up lien for Fifth Third's prepetition debt; (b) the unfair application of Chapter 5 recoveries to Fifth Third's prepetition debt; and (c) the inequitable surcharge provisions which immunize Fifth Third while the Trustee uses best efforts to surcharge other creditors.  Bankruptcy Courts considering financing motions reject such efforts that disproportionately favor one creditor over the estate.

10.  To obtain post-petition financing under Bankruptcy Code § 364(c), the Trustee, acting for Debtor Eastern Livestock Co., LLC, bears the burden of establishing that (1) he cannot obtain unsecured credit; (2) the proposed credit is necessary to preserve the estate's assets; and (3) the terms of the proposed financing are "fair, reasonable, and adequate under the circumstances."  In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990) (internal quotation marks and citation omitted).  Accord:  In re Crouse Group, Inc., 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987) (the proposed financing must be "fair, reasonable, and adequate"); In re Roblin Indus., Inc., 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (proposed financing should be approved only if it "is in the best interests of the general creditor body") (internal quotation marks and citation omitted).

11.  If the Trustee fails to meet this burden, then the court must reject the proposed financing.  "[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."  Ames, 115 B.R. at 39.  "[T]he general mandate of the Bankruptcy Code is clear.  The Debtor's pervading obligation is to

5

the Bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries." In re Tenney Village Co., 104 B.R. 562, 569 (Bankr. D.N.H. 1989) (denying overreaching post-petition financing arrangement).

13. Financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the [secured creditor]." Tenney, 104 B.R. at 568. Accord: In re Mid-State Raceway, Inc., 323 B.R. 40, 59 (N.D.N.Y. 2005) ("[B]ankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender.") (internal quotation marks and citation omitted).

13. In the Motion sub-judice, the Court should also particularly scrutinize the preferential treatment the Trustee gives Fifth Third because this is not a traditional reorganization process. The cases in which bankruptcy courts have approved roll up and superpriority treatment -- and even some in which such favoritism was rejected -- typically involve a debtor with a good faith opportunity to reorganize and continuation of debtor's management entrusted with business judgment. E.g., In re Equalnet Commc'ns Corp., 258 B.R. 368, 369 (Bankr. S.D. Tex. 2001) (acknowledging that, even where a debtor was engaged in "ongoing operations," "a secured creditor's prepetition loan balance could not be paid off and/or 'rolled into' a postpetition line of debtor in possession financing, with resultant enhancement of collateral position and administrative priority" (citing In re Saybrook Mfg Co., 963 F.2d 1490 (11th Cir. 1992))); In re Circuit City Stores, Inc., No. 08-35653, slip op. at ¶¶ A, F(i) (Bankr. E.D. Va. Nov. 10, 2008) ("The Debtors have continued in the management and operation of their business and property as debtors-in-possession . . . . No trustee or examiner has been appointed . . . . An immediate need

6

exists for the Debtors to obtain funds . . . [to maintain] the possibility for a successful reorganization or sale of the Debtors' assets as a going concern.").

16. The Proposed Order includes several provisions which in the aggregate grant Fifth Third lien rights beyond those necessary to secure the Trustee Loan. In addition, the Proposed Order may result in other potential secured creditors bearing an unfair burden of the costs of funding the administration of the Debtors' estate.

15. The terms and conditions of the Proposed Order involve a grant to the Trustee of the right to use existing cash collateral that is characterized as a "Trustee Loan" not to exceed $2 million (Paragraph 3 Proposed Order). Not only does the Proposed Order secure the "Trustee Loan" with a superpriority in Chapter 5 recovery actions, but it also "resets the clock" on Chapter 5 recoveries to liens in place at the time of transfer. Many of the Chapter 5 Actions described in Paragraph 4 of the Proposed Order (which do not involve fraudulent conveyances) are likely to involve claims for recovery of transfers in which the act of transfer extinguished the lien to which the transferred property was subject, i.e., the transferee received the property free and clear of any lien. For example, a cash transfer constituting a preference generally cuts off the lien rights of secured creditors and would have cut off any lien of Fifth Third once the transfer occurred. Thus, to provide that a recovered preference remain subject to the liens to which the property was subject at the time of transfer contravenes Section 551 of the Code which provides that an avoided transfer is preserved for the benefit of the estate. The effect of the Proposed Order gives Fifth Third not only a superpriority recovery in Chapter 5 actions for the $2 million, but also rolls up the entire $35 million prepetition indebtedness to Fifth Third into that superpriority. Under the Trustee's Proposed Order, the estate can only pay down the $2 million Trustee Loan from recoveries on Chapter 5 actions that were not subject to Fifth Third's

7

prepetition blanket lien until such time as Fifth Third's prepetition indebtedness has been satisfied in full. Moreover, under this construction, regardless of the work of Hoover Hull, any action for recovery against Fifth Third is moot as Fifth Third would have a superpriority lien in such a recovery.

16.     Based on the State Court Receiver's testimony at the inception of this Case and the enumeration of items included in the Trustee's Must Do List included in the Motion, it appears that Fifth Third asserts a valid security interest in a substantial portion of the Debtor's assets. But, only a small portion of its secured claim consists of cash collateral presently in the Trustee's possession. Accordingly, a substantial portion of the Trustee's efforts in this case will involve the collection and liquidation of Fifth Third's collateral for the ultimate benefit of Fifth Third. Many of the costs that the Trustee will incur are the same costs that Fifth Third would have incurred had its collateral been abandoned to it or if the state court receivership had wound its course without the intervention of the involuntary petition.

17.     The Proposed Order immunizes Fifth Third from any surcharge under §506(c). In contrast, the Proposed Order **requires** the Trustee to use his best efforts to seek a surcharge order pursuant to §506(c) with respect to amounts recovered by other secured creditors. The Proposed Order further provides that any recovered surcharges from other secured creditors reduce the amount of the Trustee expenses payable from the $2 million of cash Fifth Third will allow the Trustee to use (the "Carve Out"). And, if at the time of surcharge recovery from a secured creditor other than Fifth Third, the Carve Out is already fully drawn, then such recovered surcharges shall be remitted to Fifth Third. In other words, the Trustee proposes to surcharge the other creditors for the $2 million Carve Out in essence requiring everyone but Fifth Third to pay for the Trustee's quest to recover money for Fifth Third.

8

18. The combined effect of these provisions is that secured and unsecured creditors of the estate may end up bearing all of the administrative expenses incurred by the Trustee, notwithstanding that a major portion of such expenses accrue to the benefit of Fifth Third and consist of expenses Fifth Third would have incurred in any event had its collateral been abandoned or had Fifth Third continued its state court receivership. Fifth Third only bears any portion of the expenses of administration of this estate if, at the end of the case, the Trustee Loan is not repaid in full. Even if the Trustee loan is partially repaid, other secured creditors will likely bear a disproportionate share of administrative expenses of this estate compared to the share borne by Fifth Third.

IV. <u>AN ORDER APPROVING FINANCING SHOULD NARROWLY LIMIT FIFTH THIRD'S SUPERPRIORITY TO ONLY WHAT IS ESSENTIAL</u>

19. While First Bank concedes that Fifth Third may have rights to the present cash collateral and its consent to use of that cash should entitle it to some priority protection, the preferential treatment of the Trustee's Proposed Order goes farther than the applicable law would allow. At present, if the Court gives any special treatment to Fifth Third for allowing the Trustee to use Eastern Livestock's available cash, then to accommodate all classes of creditors the order should go no further than is necessary. The essential elements of Trustee Knauer's Motion are: (a) allow the use of up to $2 million of Eastern Livestock's cash; (b) do not allow the cash to be used to fund Hoover Hull's investigation; (c) give Fifth Third conditional superpriority liens on the first $2 million recovered that are not subject to other valid liens or encumbrances as of the petition date; and (d) to the extent such $2 million is not recovered Fifth Third can share the shortfall pari passu through a surcharge.

9

20. Therefore, First Bank submits with this Objection a revised version of the Trustee's Proposed Order that removes all of the objectionable preferential treatment and sets forth a financing arrangement that does not convert the bankruptcy process "from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the [secured creditor]." <u>Tenney</u>, 104 B.R. at 568. <u>Accord</u>: <u>In re Mid-State Raceway, Inc.</u>, 323 B.R. at 59.

21. First Bank also reserves the right to challenge any other portions of the Proposed Order that may be subject to objection by other interested parties. And, First Bank reserves the right to move for a continuance of the scheduled March 11, 2011 hearing on the Motion if the Trustee intends to present live testimony to support the Motion so that First Bank may conduct limited depositions of the Trustee's witnesses on the issues relevant to the Motion prior to the evidentiary hearing.

WHEREFORE, The First Bank and Trust Company respectfully requests that the Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing be denied in its entirety and for all other appropriate relief.

Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0300
Telecopier: (513) 632-0319
Email: ddonnellon@ficlaw.com

Attorneys for The First Bank and Trust Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2011, a true and correct copy of the foregoing Objection to Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

John W Ames
jwa@gdm.com, shm@gdm.com;tlm@gdm.com;rtrowbridge@kslaw.com

T. Kent Barber
kbarber@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com

C. R. Bowles
crb@gdm.com, shm@gdm.com;lgw@gdm.com

Lisa Koch Bryant
courtmail@fbhlaw.net

James M. Carr
james.carr@bakerd.com, sarah.laughlin@bakerd.com;patricia.moffit@bakerd.com

John R. Carr
jrciii@acs-law.com, sfinnerty@acs-law.com

Deborah Caruso
dcaruso@daleeke.com, lharves@daleeke.com;mthomas@daleeke.com

Bret S. Clement
bclement@acs-law.com, sfinnerty@acs-law.com

Kirk Crutcher
kcrutcher@mcs-law.com, jparsons@mcs-law.com, cmarshall@mcs-law.com

Jesse Cook-Dubin
jcookdubin@vorys.com, cdfricke@vorys.com

Dustin R. DeNeal
dustin.deneal@bakerd.com, patricia.moffit@bakerd.com

Laura Day DelCotto
ldelcotto@dlgfirm.com, dlgecf@dlgfirm.com; dlgecfs@gmail.com

David Alan Domina
dad@dominalaw.com, kkw@dominalaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Sandra D. Freeburger
sfreeburger@dsf-atty.com, smattingtly@dsf-atty.com

Terry E. Hall
terry.hall@bakerd.com, sarah.laughlin@bakerd.com;sharon.korn@bakerd.com

John Huffaker
john.huffaker@sprouselaw.com, lynn.acton@sprouselaw.com;rhonda.rogers@sprouselaw.com

James Bryan Johnston
bjtexas59@hotmail.com, bryan@ebs-law.net

Todd J. Johnston
tjohnston@mcjllp.com

Edward M King
tking@fbtlaw.com, dgioffre@fbtlaw.com

James A. Knauer
jak@kgrlaw.com, hns@kgrlaw.com

Theodore A. Konstantinopoulos
ndohbky@jbandr.com

Randall D. LaTour
rdlatour@vorys.com, cdfricke@vorys.com

David L. LeBas
dlebas@namanhowell.com, koswald@namanhowell.com

Elliott D. Levin
edl@rubin-levin.net

Kim Martin Lewis
kim.lewis@dinslaw.com, lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com

Karen L. Lobring
lobring@msn.com

John Hunt Lovell
john@lovell-law.net, sabrina@lovell-law.net

John Frederick Massouh
john.massouh@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

William Robert Meyer
rmeyer@stites.com

Allen Morris
amorris@stites.com, dgoodman@stites.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

Walter Scott Newbern
wsnewbern@msn.com

Matthew J. Ochs
matt.ochs@moyewhite.com, kim.maynes@moyewhite.com

Ross A. Plourde
ross.plourde@mcafeetaft.com, erin.clogston@mcafeetaft.com

Timothy T. Pridmore
tpridmore@mcjllp.com, lskibell@mcjllp.com

Jeffrey E. Ramsey
jramsey@hopperblackwell.com, mhaught@hopperblackwell.com

Mark A. Robinson
mrobinson@vhrlaw.com, dalbers@vhrlaw.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com

Ivana B. Shallcross
ibs@gdm.com

Robert K Stanley
robert.stanley@bakerd.com

Meredith R. Thomas
mthomas@daleeke.com, kmark@daleeke.com

John M. Thompson
john.thompson@crowedunlevy.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Charles R. Wharton
Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov

Jessica E. Yates
jyates@swlaw.com, edufficy@swlaw.com

James T. Young
james@rubin-levin.net

/s/ Daniel J. Donnellon
Daniel J. Donnellon