IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**TRUSTEE'S AMENDED RESPONSE TO OBJECTIONS TO
TRUSTEE'S FINANCING MOTION**

On February 11, 2011, the Trustee filed his motion (the "Financing Motion") asking the Court to approve a cash collateral use and chapter 11 financing arrangement with Fifth Third Bank ("Fifth Third"). The financing arrangement has two components 1) the Trustee's proposed "use" of up to $2 million of Fifth Third's cash collateral (the "Cash Use") and 2) a loan of up to $2 million from Fifth Third to the Trustee (the "Trustee Loan"). The terms of the proposed Cash Use and Trustee Loan are set forth in a revised proposed "Financing Order" that the Trustee submitted to the Court on March 2, 2011.

On March 8, 2011, several parties (the "Objectors") filed objections (the "Objections") to the Financing Motion. The Objectors are Superior Livestock Auction Inc. ("Superior"); The First Bank & Trust Company ("First Bank"); Kathryn Pry, chapter 7 trustee for the bankruptcy estate of Thomas P. and Patsy M. Gibson (the "Gibson Trustee")[1]; Friona Industries, L.P. ("Friona"), Cactus Growers Inc. ("Cactus") and J&F Oklahoma Holdings Inc. ("J&F" and with Friona and Cactus collectively referred to as "Friona et al.")[2]; and Philip Taylor Reed ("Reed").

The Objections misconstrue the proposed Cash Use and Trustee Loan arrangement and present no reason for the Court to deny the Financing Motion.

---

[1] The Gibson Trustee filed a "limited" objection.
[2] Friona et al. filed a single objection that is denominated as a "Response" to the Financing Motion.

- 2 -

**Fifth Third's Claim.**

On February 4, 2011, Fifth Third filed its proof of claim (the "Fifth Third POC"). The Fifth Third POC asserts a claim for $35,833,415.02, based upon a pre-petition secured revolving loan arrangement (the "Fifth Third Revolver") between Fifth Third and the debtor, Eastern Livestock Co., LLC ("ELC"). Attached to the Fifth Third POC are various loan documents, security agreements and financing statements and other evidence that Fifth Third properly perfected its pre-petition security interest in substantially all personal property assets of ELC. With the Court's approval, the Trustee employed the law firm of Hoover Hull LP, as special counsel, to review the Fifth Third POC and advise the Trustee whether any legal or factual basis appears for the Trustee to object to the Fifth Third POC. Hoover Hull reviewed all of the loan documents and security documents attached to the Fifth Third POC and consulted with the financial advisor to the Trustee, Development Specialists, Inc. ("DSI"), about information reflected on ELC's books and records regarding amounts that ELC borrowed under the Fifth Third Revolver and the balance owing by ELC to Fifth Third as of the petition date. Hoover Hull has consulted with the Trustee regarding the Fifth Third POC. DSI and Hoover Hull concluded that the amount claimed by the Fifth Third POC correctly reflects the balance of the Fifth Third Revolver and monies owed to Fifth Third with respect to ELC's "check kiting scheme". Hoover Hull concluded that Fifth Third's loan and security documents are valid and sufficient and effective to grant to Fifth Third a perfected security interest in the collateral described in the Fifth Third security agreement. Fifth Third's collateral includes ELC's pre-petition inventory of cattle, accounts receivable, and general intangibles. As such, substantially all cash generated by the Trustee from the sale of ELC's inventory of cattle, the collection of ELC's pre-petition receivables, or the liquidation of other ELC pre-petition personal property assets would constitute Fifth Third's cash collateral under Bankruptcy Code § 363. It is the

Trustee's belief that most if not all of the cash generated to date and the cash that the Trustee will likely generate in the foreseeable future (before demanding repayment of preferences) will constitute Fifth Third's cash collateral.  However it is important to note that by the Financing Motion the Trustee is not asking the Court to determine that any particular cash in his possession or that may to come into his possession constitutes Fifth Third's cash collateral.  If some party successfully challenges the Trustee's ownership or rights in some claimed ELC pre-petition asset then of course cash generated from the sale of such asset cannot become Fifth Third's cash collateral.  Moreover, if some party (an "Other Secured Creditor") successfully asserts a prior superior lien in and against some pre-petition ELC asset then that Other Secured Creditor's lien rights in the cash collateral generated from that asset must be dealt with before the Trustee could use the Other Secured Creditor's cash collateral.  Any such Other Secured Creditor's rights will not be prejudiced by the Financing Order.

The Trustee is faced with the need to finance an expensive administration of assets over many months that will include payment of his professionals for services performed as the Trustee attempts to reduce to cash the complicated pre-petition assets of ELC.  For many reasons, including the number and complexity of transactions that ELC entered into pre-petition and the dreadful state of ELC's books and records, the Trustee's efforts will involve hundreds (if not thousands) of hours of professional service by the Trustee, Baker & Daniels, DSI and Hoover Hull.  The Trustee's efforts have and will involve litigation with a number of parties.  To be able to pay administrative costs (including professional fees) on a regular ongoing basis the Trustee must either 1) reach an agreement with Fifth Third with respect to the use of its cash collateral or 2) ask the Court to impose a surcharge upon Fifth Third's cash collateral.

It is important to note that although the Financing Motion uses the term "use" of Fifth Third's cash collateral, what the Financing Motion really means is that up to $2 million of Fifth Third's cash collateral will be paid over to satisfy the Trustee's administrative expenses (including professional fees as allowed by the Court) and will be permanently lost to Fifth Third. The cash collateral that is "used" will not be repaid to Fifth Third. Therefore "use" in some sense means "take." Said another way by agreeing to allow the Trustee to "use" its cash collateral Fifth Third is forfeiting or donating the cash collateral to the chapter 11 estate to fund the Trustee's administrative costs, without the hope of repayment. In effect the provisions with regard to "use" of Fifth Third's cash collateral really amount to an agreed surcharge against Fifth Third's collateral under § 506(c) of the Bankruptcy Code.

The "adequate protection" being provided by the Trustee for this "use" (which is in effect a permanent taking) of up to $2 million of Fifth Third's cash collateral consists of:

1. allowance of the Fifth Third POC (without specifying against which specific assets or cash collateral Fifth Third holds a lien or whether Fifth Third's claim is fully or partially secured);

2. agreement to pay over to Fifth Third any "excess cash collateral";

3. providing rolling 13 week budgets showing the Trustee's proposed "use"; and

4. waiving any 506(c) surcharge.

There is no release by the Trustee of claims the estate may have against Fifth Third.

When the Financing Motion and Financing Order discuss the "Trustee Loan" to be made by Fifth Third to the Trustee, the funds that Fifth Third will loan to the Trustee are those

- 4 -

BDDB01 6577285v3

- 5 -

funds that have been or would be paid over to Fifth Third because the funds have been determined to be Fifth Third's "excess" cash collateral. Fifth Third will reloan up to $2 million of those funds to the Trustee. The Trustee Loan may be repaid only from and to the extent the Trustee is successful in making recoveries on "Chapter 5 Claims" (fraudulent transfer claims and preference recoveries). No interest or fees will be payable to Fifth Third as part of repayment of any Trustee Loan.

### The Objectors.

Most of the Objectors may not truly be creditors of the ELC chapter 11 estate.[3]

On November 8, 2010, Superior took from ELC, for no consideration or perhaps to repay unsecured obligations to Superior, an assignment of 500 contracts that the Trustee believes to be of value and by which ELC had contracted to buy cattle from third party sellers. The Trustee believes that the estate has claims assertable against Superior that may exceed the amount of Superior's claim against the estate.

First Bank loaned money to Tom and Patsy Gibson not to ELC. First Bank has shown no basis for any claim in the ELC chapter 11 case. First Bank asserts that maybe ELC owes money to Tom Gibson with respect to the sale of cattle by Gibson to ELC. However, ELC paid the cattle trading entity controlled by Tom Gibson, GP Cattle Co., over $250 million during the 90 day preference period in exchange for what the Trustee believes were fictitious sales of cattle by GP Cattle to ELC. The First Bank has a lien against a Tom Gibson receivable from ELC then First Bank is at best an unsecured creditor and the obligations of Tom Gibson to ELC more than offset any obligation from ELC to Gibson. First Bank has not filed a proof of claim.

---

[3] Although over 80 proofs of claim have been filed in this case to date, none of the Objectors has filed a proof of claim.

- 5 -

Friona et al. are the plaintiffs in an interpleader action in which they have paid into Court millions of dollars that are owing to ELC with respect to the purchase of cattle by Friona et al. from ELC. Friona et al. asserts setoff claims against the interpled funds. However it is clear that whatever setoffs might exist they are less than the amount owed by Friona et al. to ELC. Therefore Friona et al. are "net" debtors to, not creditors of, the ELC chapter 11 estate.

The Gibson Trustee does not contend that she holds a claim against ELC.

Reed may have a pre-petition claim against ELC and therefore may be a creditor of the ELC estate. Reed's claim apparently arises out of Reed's sale of livestock to ELC. Reed filed a "me too" objection simply adopting the objections asserted by the other Objectors.

### The Objections.

It is interesting to note that none of the Objectors has indicated any legal or factual basis for disallowing the Fifth Third POC.

The Objections misconstrue the relief requested by the motion. The Objections contend that in some way Fifth Third's pre-petition position is being wrongfully enhanced. However, if the Trustee is correct that Fifth Third holds an allowable claim against ELC (as asserted by the Fifth Third POC) that is secured by a valid security interest in virtually all of the ELC's pre-petition personal property, then there is no enhancement to Fifth Third's position under the proposed financing arrangement. The Trustee has not agreed to the amount of a Fifth Third "secured" claim because at this stage the value of Fifth Third's collateral is uncertain. As such, under Bankruptcy Code § 506, the Trustee cannot ascertain whether the Fifth Third POC asserts a fully secured or "under secured" claim. The Trustee's agreement with respect to Trustee Loan simply provides that with respect to funds that Fifth Third may reloan to the estate Fifth Third will hold a first priority administrative expense claim and security interest in Chapter 5 (fraudulent and preference) recoveries. The estate will repay such Trustee Loan only from such

Chapter 5 recoveries. Therefore, there is no enhancement to the Fifth Third position and no detriment to the creditors.

If the Trustee is successful in prosecuting preference and fraudulent transfer actions, then the Trustee and his professionals would be paid their allowed fees and expenses out of those gross recoveries as administrative expense claims. The fact that monies for such fees and expenses are first advanced by Fifth Third to the Trustee and then repaid to Fifth Third does not affect the ultimate "net" outcome for unsecured creditors with regard to such "net" recoveries.

The Trustee wants to put into place the Trustee Loan arrangement because the Trustee and his professionals will have to expend an immense amount of time and put at risk a great amount of fees in investigating and prosecuting fraudulent transfers, preferences and other litigation on behalf of the estate. The Trustee and his professionals will not be compensated at what would be much higher contingent fee rates because the Trustee Loan will reduce some of the risk of payment involved in prosecuting such litigation. The Trustee has identified in excess of 36 persons who will need to be deposed and there will be thousands of documents that will have to be produced and examined in determining which preference and fraudulent transfer claims should be prosecuted. It should be noted that DSI has uncovered payments made to a variety of persons including insiders of the debtor within the 90 day standard preference period date that total in excess of $800 million.

- 8 -

### Conclusion

The Court should respect the Trustee's business judgment, overrule the Objections, and grant the Financing Motion.

                        Respectfully submitted,

                        BAKER & DANIELS LLP

                        By:  /s/ James M. Carr

James M. Carr (#3128-49)     *Counsel for James A. Knauer, Chapter 11 Trustee*
Robert K. Stanley (#1745-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
robert.stanley@bakerd.com
terry.hall@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader (#14633-49)
Baker & Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@bakerd.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 11, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| Kirk Crutcher<br>kcrutcher@mcs-law.com | Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Theodore A Konstantinopoulos<br>ndohbky@jbandr.com | Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com |
| Lisa Koch Bryant<br>courtmail@fbhlaw.net | Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net |
| Cathy S. Pike<br>cpike@weberandrose.com | John David Hoover<br>jdhoover@hooverhull.com | Sean T. White<br>swhite@hooverhull.com |
| Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com | |

BDDB01 6577285v3

- 10 -

      I further certify that on March 11, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

David A. Domina
ddomina@dominalaw.com

                                                         /s/ James M. Carr