UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR EXAMINATION AND PRODUCTION OF DOCUMENTS
PURSUANT TO FED. R. BANKR. P. 2004**

The First Bank and Trust Company ("First Bank"), by counsel, for its motion requests an order of the Court authorizing and directing the examination of Cactus Growers, Inc. ("Cactus"), Friona Industries, L.P. ("Friona"), and J&F Oklahoma Holdings, Inc.[1] ("J&F") (collectively, "Three Major Feedlots") and directing the Three Major Feedlots to produce documents pursuant to Fed. R. Bankr. P. 2004, and in support thereof alleges and states as follows:

I.   INTRODUCTION AND BACKGROUND OF THE PRESENT DISPUTE

1.   This is a motion to seek crucial information relating to the location and condition of mobile and perishable assets -- cattle -- from the Three Major Feedlots. After Eastern Livestock collapsed in November 2010, the Three Major Feedlots continued to thrive. In other words, after Eastern Livestock disappeared and stopped shipping cattle to the Three Major Feedlots, the Three Major Feedlots, as well as other feedlots, did not notice any decrease in the supply of cattle. Numerous lenders, including First Bank, lent millions of dollars to Eastern

Livestock and Thomas P. Gibson and took a security interest in millions of dollars of cattle. Some of these cattle have been slaughtered, while others are presumably still on feed at feedlots throughout the country.  First Bank has documented that approximately 8,000 head of cattle disappeared between First Bank's inspections in October 2010 and November 2010.  When contrasted against the uninterrupted supply of cattle to feedlots across the country, including the Three Major Feedlots, to the extent the cattle are still alive, it is only logical they are located at feedlots, including the Three Major Feedlots.  To the extent that the cattle have been slaughtered, the cattle likely were located for some time at feedlots, including the Three Major Feedlots.  First Bank is seeking information from the Three Major Feedlots that may lead to the identification of cattle (or proceeds) in which First Bank maintains a perfected purchase money security interest. First Bank's requests are neither burdensome nor require disclosure of proprietary information without assurances of strict confidentiality.

2. This motion under Fed. R. Bankr. P. 2004 follows numerous communications between counsel for First Bank and counsel for the Three Major Feedlots relating to First Bank's requests for information.  Since First Bank issued its requests for information to the Three Major Feedlots on January 31, 2011, thousands of cattle have been slaughtered (some of which could be subject to First Bank's lien), and First Bank has not yet received information from the Three Major Feedlots that may assist First Bank in locating more than $6 million in cattle that vanished between October and November 2010.

3. With regard to the Three Major Feedlots, Cactus and Friona are two of the largest feedlots in the country. J&F owns, pursuant to an ownership split agreement with JBS USA, up to 800,000 head of cattle that are fed exclusively by JBS Five Rivers (a subsidiary of

---

[1] For purposes of this motion, any accompanying order, or subpoena, J&F includes the affiliated entity JBS Five Rivers and any JBS-affiliated feedlots.

JBS USA) on at least 10 different feedlots. The Three Major Feedlots, therefore, are the final finishing locations for a significant number of the nation's cattle in the months just before slaughter. The records of the Three Major Feedlots are the last respite for locating the live (or formerly live) assets of this estate.

4. First Bank is a secured creditor of Thomas and Patsy Gibson (the "Gibsons"). Its collateral includes, inter alia, cattle owned by the Gibsons. The Gibsons have failed to account for the whereabouts of approximately 8,000 head of cattle that collateralized the Gibson's indebtedness to First Bank. Some of the unaccounted for cattle have been sold to feedlots, including Friona and J&F (and upon information and belief to Cactus), without proper recognition of First Bank's lien. The Three Major Feedlots likely purchased cattle from Eastern Livestock, an affiliated person or entity of Eastern Livestock, directly from the caretaker farms at which the Gibsons had their cattle fed, or from other unknown sources, without transferring these proceeds to Thomas P. Gibson, First Bank, or the estates for Eastern Livestock or the Gibsons.

5. First Bank presently lacks information regarding the current location or condition of the majority of the 8,000 head of cattle that are now missing. First Bank, however, has information that at least some of the 8,000 head of cattle were shipped to the Three Major Feedlots (including JBS Five Rivers), but it has no information as to the exact number of cattle that the Three Major Feedlots purchased subject to its liens. Thus, First Bank needs information from the Three Major Feedlots to determine the current location or condition of any missing cattle that may have been shipped to the Three Major Feedlots. In addition, this information will likely lead to the discovery of admissible evidence on behalf of creditors of the Eastern Livestock and Gibson bankruptcies even if the cattle identified were not subject to a First Bank lien.

6. Since serving its requests for information to the Three Major Feedlots on January 31, 2011, First Bank's counsel has used substantial extra-judicial efforts to obtain informally from the Three Major Feedlots certain documents that would assist First Bank in tracing cattle and proceeds subject to First Bank's lien. Although counsel for First Bank and counsel for the Three Major Feedlots have not reached an agreement regarding the production of documents, progress has been made recently (as indicated below). The Three Major Feedlots first stated that First Bank's requests were unduly burdensome and could be read broadly to require millions of pages of documents. This was, of course, never First Bank's goal. Therefore, counsel proposed a three-part document production and witness examination plan that would involve First Bank reviewing computer generated summary reports of the Three Major Feedlots' transactions within limited time periods, which the Three Major Feedlots readily admit they could generate. Then First Bank would identify a very limited number of transactions from the summary reports that potentially relate to cattle financed by First Bank for which First Bank would request additional documentation from the Three Major Feedlots. The Three Major Feedlots then expressed concerns that this would require the disclosure of confidential information to the public. Again, of course, this was never First Bank's goal; so it agreed to permit the Three Major Feedlots to mark documents as "Confidential," which would be reviewed only by attorneys and clients, until a stipulated protective order is submitted to this Court. On March 17, 2011, counsel for the Three Major Feedlots submitted a proposal by letter that was a concession to some of the information requested. Nonetheless, the intervention of this Court may be necessary to grant First Bank authority to issue subpoenas to the Three Major Feedlots to order the discovery.[2] The Three Major Feedlots have acceded in part, to First Bank's proposed

---

[2] The term "discovery" is used generally in this motion to refer to First Bank's request for production of documents and requests for examinations pursuant to Fed. R. Bank. P. 2004.

terms in its three-part plan (set forth below in Section III); however, additional discussion and negotiation are needed before an agreement could be reached between counsel for the Three Major Feedlots and counsel for First Bank.  Counsel for First Bank will discuss proposed terms of an agreement with counsel for the Three Major Feedlots in the hope that this Court will not have to involve itself in a discovery dispute.  This discovery is paramount, however, so in keeping with the representations to the Court during the March 11 Omnibus, First Bank files this formal motion.

II.     THE INFORMATION REQUESTED BY FIRST BANK UNDER FED. R. BANKR. P. 2004 IS NECESSARY TO IDENTIFY ASSETS THAT ARE PART OF EASTERN LIVESTOCK'S AND THE GIBSONS' ESTATES

7.      The documents sought by First Bank from the Three Major Feedlots are needed to determine (1) whether, and to what extent, property that belongs to Eastern Livestock's estate or Gibsons' estate was transferred or sold to the Three Major Feedlots without proper recognition of First Bank's lien; and (2) to permit First Bank to trace cattle and proceeds from the sale of cattle before the cattle are processed, or before the traceability of cattle and proceeds otherwise becomes increasingly difficult.

8.      Fed. R. Bankr. P. 2004(b) provides that an examination of an entity must relate "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  "It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted.  The scope of examination permitted pursuant to Rule 2004 . . . can legitimately be in the nature of a 'fishing expedition.'" In re Fearn, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989) (citations omitted).  "[S]uch examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor." Id at 138.

9.  Fed. R. Bankr. P. 2004 is also designed to permit the prompt acquisition of information. "[T]he primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets . . . ." Id. at 138 (emphasis added) (citation omitted). Accord: Dynamic Fin. Corp. v. Kipperman (In re North Plaza, LLC), 395 B.R. 113, 125 (Bankr. S.D. Cal. 2008) ("Bankruptcy Rule 2004, however, reflects a strong federal interest in allowing a court to gain a clear picture of the condition and whereabouts of the estate and to examine witnesses having knowledge of a debtor's acts, conduct, liabilities, assets.").

10. First Bank proposes a plan for discovery from the Three Major Feedlots that is reasonable, cost-effective, and within the parameters of Fed. R. Bankr. P. 2004. Even though caselaw provides that Fed. R. Bankr. P. 2004 examinations may properly be a "fishing expedition," First Bank's discovery under Fed. R. Bankr. P. 2004 is much narrower. First Bank requests a three-part document production and examination plan that minimizes, to the fullest extent possible, the burden and expense on all parties, while at the same time ensuring that First Bank obtains needed information.

III. FIRST BANK'S PROPOSED PLAN FOR PRODUCTION OF DOCUMENTS AND EXAMINATIONS UNDER FED. R. BANKR. P. 2004

11. First Bank requests that this Court authorize the issuance of subpoenas (attached as Exhibit A) and order the production of documents from and examination of the Three Major Feedlots in accordance with the following terms and schedule:

> PHASE 1: On or before April 22, 2011, the Three Major Feedlots shall each produce at least two computer-generated reports from their cattle tracking software. First, the Three Major Feedlots shall each produce one report that summarizes all cattle received from transactions with Eastern Livestock Co., LLC or Thomas P. Gibson or Patsy M. Gibson in the period from June 1, 2010 to December 31, 2010. Second, the Three Major Feedlots shall each produce a report summarizing all cattle on feed that entered their respective feedlots from October 1, 2010 to March 31, 2011.

- 6 -

> Both of these reports shall include available information such as delivery date, lot number, in-weight, head count, sex, producer or seller, and origin location to the extent such information is readily available from the computer reports in the ordinary course of business.
>
> PHASE 2:  On or before May 6, 2011, First Bank shall specify in writing specific transactions or specific lots of cattle from the reports produced by the Three Major Feedlots, for which the Three Major Feedlots shall produce additional information.
>
> On or before May 20, 2011, for each of the transactions or lots identified by First Bank, the Three Major Feedlots shall produce the entire lot file constituting or relating to transactions or lots identified by First Bank; as used herein "lot file" includes, but is not limited to receiving sheets, receiving notifications, receiving reports, processing records, purchase agreements for cattle, security agreements, promissory notes, financing statements, assignments, bills of sale, note histories, note summary analyses, hauling logs, bills of lading, documentation showing from where cattle were shipped, financial summaries, yard sheets, comprehensive yard sheets, checks, check stubs, invoices, and close out sheets.  If copying and production of these portions of lot files identified by First Bank would be unduly burdensome, then the Three Major Feedlots shall permit First Bank to inspect and copy such lot files as maintained in the ordinary course of business at mutually convenient times and places.
>
> PHASE 3:  If First Bank states in writing that it intends to examine representatives of the Three Major Feedlots after First Bank has had adequate time to review documents produced by the Three Major Feedlots, then the Three Major Feedlots are directed to designate appropriate representatives who shall submit to examinations by First Bank.  Such examinations shall begin at mutually convenient times and places and continue from day to day thereafter until completed.

12.   At first blush, at least the second portion of Phase 1, may appear to be broad-sweeping and require disclosure of transactions that have nothing to do with this controversy.  But, it is the least burdensome way for the Three Major Feedlots to produce the information and is the only way First Bank can assure it captures all relevant information.  At present, the Three Major Feedlots acknowledge that First Bank cannot narrow the request, other than by a time period, for a summary report for all cattle on feed that entered the Three Major Feedlots' respective feedlots from October 1, 2010 to March 31, 2011 without risking the loss of

potentially relevant transactions.  The effort to recover missing cattle will likely involve identifying persons who engaged in "self-help" to recover from their own losses from Gibson's and Eastern Livestock's activity.  Therefore, one should not expect that transactions outside the ordinary course of business would have the same readily identifiable tracings as previous transactions in the ordinary course before Eastern Livestock's demise.  In other words, the missing 8,000 cattle in November 2010 were sold or transferred largely from unknown locations, by and to unknown persons, who may or may not have used identifying information similar to the information possessed by First Bank.

        13.     Moreover, First Bank's proposed first phase of production imposes less of a burden on the Three Major Feedlots, which would have to run only two queries of their databases for the two reports -- the first of which identifies all transactions with Eastern Livestock or its affiliated persons or entities between June 1, 2010 and December 31, 2010, and the second of which identifies all transactions between October 1, 2010 and March 31, 2011.

        14.     The present form of the discovery is the only reasonable and confidential method, with the least burden on the producing parties, to obtain the crucial evidence that is at the very crux of these bankruptcies.  First Bank reserves its rights to seek additional information from the Three Major Feedlots, or to seek discovery through any adversary proceedings or contested matters.

        WHEREFORE, First Bank requests that the Court issue an order (attached as Exhibit B):

        (1)     directing the Three Major Feedlots to produce documents, pursuant to Fed. R. Bankr. P. 2004, in accordance with the terms herein, at locations to be agreed to by the parties;

- 9 -

(2)    directing the Three Major Feedlots to designate representatives who shall submit to examinations by First Bank, pursuant to Fed. R. Bankr. P. 2004, if First Bank states in writing that it intends to examine representatives of the Three Major Feedlots.

Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email:  ddonnellon@ficlaw.com

Attorneys for The First Bank and Trust Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2011, a true and correct copy of the foregoing Motion for Examination and Production of Documents Pursuant to Fed. R. Bankr. P. 2004 was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com | Jessica E. Yates<br>jyates@swlaw.com |
| C. R. Bowles, Jr<br>crb@gdm.com | Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | John Huffaker<br>john.huffaker@sprouselaw.com |
| John Hunt Lovell<br>john@lovell-law.net | Ivana B. Shallcross<br>ibs@gdm.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Deborah Caruso<br>dcaruso@daleeke.com | Laura Day Delcotto<br>ldelcotto@dlgfirm.com |
| Jesse Cook-Dubin<br>jcookdubin@vorys.com | Meredith R. Thomas<br>mthomas@daleeke.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| Edward M King<br>tking@fbtlaw.com | William Robert Meyer, II<br>rmeyer@stites.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Randall D. LaTour<br>rdlatour@vorys.com | Allen Morris<br>amorris@stites.com | Ross A. Plourde<br>ross.plourde@mcafeetaft.com |
| John Frederick Massouh<br>john.massouh@sprouselaw.com | Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com |
| John W. Ames<br>jwa@gdm.com | James Bryan Johnston<br>bjtexas59@hotmail.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| James M. Carr<br>jim.carr@bakerd.com | James T. Young<br>james@rubin-levin.net | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Robert K. Stanley<br>robert.stanley@bakerd.com | David L. LeBas<br>dlebas@namanhowell.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Terry E. Hall<br>terry.hall@bakerd.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Robert Hughes Foree<br>robertforee@bellsouth.net | John M. Thompson<br>john.thompson@crowedunlevy.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |

| | | |
|---|---|---|
| Karen L. Lobring<br>lobring@msn.com | John M. Rogers<br>johnr@rubin-levin.net | Robert H. Foree<br>robertforee@bellsouth.net |
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Cathy S. Pike<br>cpike@weberandrose.com | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Lisa Koch Bryant<br>courtmail@fbhlaw.net | John David Hoover<br>jdhoover@hooverhull.com | Michael W. McClain<br>mike@kentuckytrial.com |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | Sean T. White<br>swhite@hooverhull.com | David A. Domina<br>ddomina@dominalaw.com |

/s/ Daniel J. Donnellon
Daniel J. Donnellon

464400.5