## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT AND JANE NICHOLS, d/b/a NICHOLS LIVESTOCK, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:11-cv-00114-F |
| CACTUS GROWERS, INC., a/k/a CACTUS FEEDERS, INC. | § § § | |
| Defendant. | § § | |

### DEFENDANT'S RULE 12(b)(2) and 12(b)(7) MOTION TO DISMISS AND, ALTERNATIVELY, MOTION FOR STAY WITH BRIEF IN SUPPORT

Respectfully submitted,

Sam L. Stein/OBA 12498
LAW OFFICE OF SAM L. STEIN, P.L.L.C.
305 S. Grand/P.O. Box 223
Cherokee, Oklahoma 73728
Telephone: (580) 596-3000
Facsimile: (580) 596-3004
E-mail: sstein@steinlaw-ok.com

LOCAL COUNSEL FOR DEFENDANTS

-and-

Tim D. Newsom/OBA No. 20017
John H. Lovell, Texas Bar No. 12609300
   (*Motion Pro Hac Vice Pending–Dkt. 7*)
LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176
Email: tim@lovell-law.net
Email: john@lovell-law.net

By: */s/ Tim Newsom*
    Tim Newsom
    ATTORNEYS FOR DEFENDANTS

EXHIBIT 4

Case 5:11-cv-00114-F Document 9 Filed 02/11/11 Page 2 of 22

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jack S. Dawson
MILLER DOLLARHIDE, P.C.
100 Park Avenue, Second Floor
Oklahoma City, Oklahoma 73102

**ATTORNEYS FOR PLAINTIFFS**

By: _/s/ Tim Newsom_____
      Tim Newsom

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-vi

      Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-vi

      Rules and Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     The Bankruptcy Stay Requires Dismissal of the Oklahoma Case. . . . . . . . . . . . . 4

            Bankruptcy Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            Rule 12(b)(7) Dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            First-to-File Abatement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.     Personal Jurisdiction over Cactus Fails Constitutional Scrutiny. . . . . . . . . . . . . 10

            Minimum Contact Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            Fair Play and Substantial Justice Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Burger King Corp. v. Rudzewicz,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13
    471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)

*Cessna Aircraft Co. v. Brown,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    348 F.2d 689 (10th Cir. 1965)

*Cherokee Nation v. Nash,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9
    724 F.Supp. 2d 1159 (N.D. Okla. 2010)

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier,.* . . . . . . . . . . . . . . . . . . . . . . . 6
    17 F.3d 1292 (10th Cir. 1994)

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    514 F.3d 1063 (10th Cir. 2008)

*In re: Eastern Livestock Co., LLC,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8-9
    Case No. 10-93904-BHL-11, United States Bankruptcy Court,
    Southern District of Indiana, New Albany Division

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13
    618 F.3d 1153 (10th Cir. 2010)

*Fifth Third Bank v. Eastern Livestock Co., LLC, et al.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Case No. A101-267; Court of Common Pleas, Hamilton County, Ohio

*Francis Oil & Gas, Inc. v. Exxon Corp.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    661 F.2d 873 (10th Cir. 1981)

*Friona Industries, LP, Plaintiff v. Eastern Livestock, et al., Defendants* . . . . . . . . . . . . . . . . 2, 5
    *v. Cactus Growers, Inc., Intervenors,*
    Case No. 2:10-cv-00266-J; United States District Court,
    Northern District of Texas, Amarillo Division

*Hanson v. Denckla,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)

*Hickey v. O'Connor & Drew, P.C.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    No. CIV-09-349-C; 2009 WL 2163499 (W.D. Okla. July 10, 2009)

**Cases, Con't.**

*Hospah Coal Co. v. Chaco Energy Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    673 F.2d 1161 (10th Cir. 1982)

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    205 F.3d 1244 (10th Cir. 2000)

*International Shoe Co., v. State of Washington,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)

*Jim Marrs Drilling Co., v. Woolard,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    629 P.2d 810 (Okla. Civ. App. 1981)

*Keeton v. Hustler Magazine, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)

*McCurtain County Prod. Corp. v. Cowett,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    482 F. Supp. 809 (D.C. Okla. 1978)

*O'Hare Int'l Bank v. Lambert,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    459 F.2d 328 (10th Cir. 1972)

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    149 F.3d 1086 (10th Cir. 1998)

*Ramsey v. Bomin Testing, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    68 F.R.D. 335 (W.D. Okla. 1975)

*Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    94 F.3d 1407 (10th Cir. 1996), *cert. denied,* 520 U.S. 1166 (1997)

*Shannon's Rainbow, LLC v. Supernova Media, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9
    683 F.Supp.2d 1261 (D. Utah 2010)

*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12
    488 F.3d 1282 (10th Cir. 2007)

*Trujillo v. Williams,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
465 F.3d 1210 (10th Cir. 2006)

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* . . . . . . . . . . . . . . . . . . . . 9
    679 F.Supp. 2d 1287 (D. Kan. 2010)

**Cases, Con't.**

*World-Wide Volkswagen Corp. v. Woodson,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13
       444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 12(b)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Fed. R. Civ. P. 19(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Okla. Stat. Ann. tit. 12 § 2004(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 U.S.C. § 362. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT AND JANE NICHOLS, d/b/a | § | |
| NICHOLS LIVESTOCK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 5:11-cv-00114-F |
| | § | |
| CACTUS GROWERS, INC., | § | |
| a/k/a CACTUS FEEDERS, INC. | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S RULE 12(b)(2) and 12(b)(7) MOTION TO DISMISS AND, ALTERNATIVELY, MOTION FOR STAY WITH BRIEF IN SUPPORT

**To The Honorable Stephen P. Friot, United States District Court Judge:**

Defendant Cactus Growers, Inc. and putative Defendant Cactus Feeders, Inc. (where collectively referenced "Cactus"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(7), files this Motion to Dismiss and, alternatively, Motion for Stay with Brief in Support:

### I. Introduction

1.    Ignoring court ordered stays by an Indiana bankruptcy court and a Texas federal district court, Nichols filed this lawsuit in state district court in Kiowa County, Oklahoma. Cactus removed the case to this Court on the basis of diversity jurisdiction. (Dkt. 1). Nichols consciously disregarded an interpled fund in a Texas federal court that constitutes the proceeds of the cattle in question, and then tactically filed this lawsuit attempting to get paid before all other creditors holding over $45 million dollars in claims against Eastern Livestock, a non-party to this case that is a Chapter 11 debtor in bankruptcy. The Court should dismiss this case thereby prohibiting Nichols from making an end-run around two federal court stay orders of which it had direct knowledge.

## II. BACKGROUND

2.      **Relationship between the Cattle Feeder, Cattle Dealer, and Cattle Producer.**

Cactus Feeders is a cattle feeder with feed yards in Texas and Kansas.  (Exhibit 1–Affidavit of Bradley W. Hastings, ¶ 6).  Cactus Growers purchased many of the cattle fed in Catus Feeders' feed yards.  Neither Cactus entity has any feed yards, facilities, offices, or employees in Oklahoma.  (*Id.* at ¶ 7).   Eastern Livestock Co., LLC, a very large cattle dealer, routinely contracted with Cactus Growers to sell cattle bought by Eastern.  At the time, Eastern was one of the largest, if not the largest, cattle dealer in the United States.  Eastern would obtain the cattle sent to Cactus from cattle producers throughout the United States.  Eastern paid the producer.  Eastern would deliver the cattle to a Cactus feed yard.  Cactus Growers would then pay Eastern for the cattle.  Nichols is a cattle producer.  Nichols never had any contract or agreement with Cactus.  (*Id.* at ¶ 9).  Nichols' business relationship was solely with the cattle dealer, Eastern.  (*Id.*).

3.      **Eastern Bounces Checks to Producers.**  Beginning on November 4, 2010, Eastern's lender, Fifth Third Bank, bounced checks to the producers from which Eastern purchased cattle.  Cactus Growers suspended payments to Eastern until the proper recipients and the purchase price could be determined.  On November 9, 2010, Cactus learned that a state court in Ohio appointed Elizabeth Lynch as the receiver for Eastern in Case No. A101-267; *Fifth Third Bank v. Eastern Livestock Co., LLC, et al.,* Court of Common Pleas, Hamilton County, Ohio.  An amended request for appointment of receiver was filed on November 19, 2010 naming Okie Farms, LLC as a defendant, which is affiliated with Eastern's principal, Tommy Gibson.  (Exhibit 2–Amended Request for Appointment of Receiver, p. 1-2, 6).  The registered agent for Okie Farms is Robert Nichols, the plaintiff in this case who is also an owner of Nichols Livestock.  (*Id.*).  Therefore, Mr. Nichols had knowledge of the receivership and is apparently in business with Eastern's principal.

This is significant because all parties to the receivership also received notice of the Indiana bankruptcy stay discussed below meaning Mr. Nichols had knowledge of the bankruptcy stay prior to him filing his lawsuit in Kiowa County, Oklahoma. (Exhibit 3–Notice of Involuntary Petition Filed in the Eastern Receivership, p. 1, 3).

4. **Cactus Interpleads Money with Federal Court in Amarillo.** On November 19, 2010, Cactus faced numerous competing claims for the money Cactus owed for the cattle delivered to Cactus Growers against the Eastern contracts. Those claimants included Eastern's receiver, Eastern's secured lender (Fifth Third Bank), haulers, and producers. Cactus then interpled $1,767,599.37 into the federal district court in Amarillo in Case No. 2:10-cv-00266-J; *Friona Industries, LP, Plaintiff v. Eastern Livestock, et al., Defendants v. Cactus Growers, Inc., Intervenors,* United States District Court, Northern District of Texas, Amarillo Division. Cactus named Eastern, Fifth Third Bank, Nichols, and 24 other parties as Defendants in the Amarillo case. (Exhibit 4–Interpleader Petition, ¶ 9). Cactus mailed Nichols a "Notice of Lawsuit and Request for Waiver of Service for Summons" which was received by Nichols on December 2, 2010. (Exhibit 5–Notice of Lawsuit and Return Receipt). The waiver included a copy of the interpleader complaint. (*Id.*). The money for which Nichols has sued Cactus in Kiowa County, Oklahoma, has been held in the registry of the Amarillo federal district court since November 19, 2010.

5. In the Amarillo case, Cactus asserted its right under 28 U.S.C. § 2361 for a preliminary and permanent injunction and requested the Amarillo federal court to enter an injunction restraining all claimants to the interpled fund, such as Nichols, from instituting or prosecuting any proceeding in any federal or state court in the United States affecting the interpled fund or Cactus. (Exhibit 4, ¶¶ 81-82). By filing suit in Kiowa County, Oklahoma, Nichols is in direct violation of

Cactus' request for injunction authorized by 28 U.S.C. § 2361, and Nichols knew it because the complaint enclosed with the waiver of summons requested injunctive relief. (Exhibits 4-5).

6.      **Eastern Bankruptcy.** On December 6, 2010 an involuntary bankruptcy petition was filed against Eastern in the case styled: *In re: Eastern Livestock Co., LLC,* Case No. 10-93904-BHL-11, United States Bankruptcy Court, Southern District of Indiana, New Albany Division. On December 28, 2010, the Indiana bankruptcy court entered an order for relief, thereby invoking the automatic stay pursuant to 11 U.S.C. § 362. (Exhibit 6–Order for Relief).[1] On December 16, 2010, Cactus and the other interpleader plaintiffs (Friona Industries, LP and J & F Oklahoma Holdings, Inc.) filed a motion to lift stay in the *Eastern* bankruptcy court so the Amarillo case could proceed. The motion to lift stay is set for hearing in Indiana on March 11, 2011. Nichols was notified of the *Eastern* bankruptcy by letter dated December 22, 2010 from counsel for Cactus. (Exhibit 7–December 22, 2010 Letter to Nichols). The December 22 letter also provided background and documentary information on the pending Amarillo case. (*Id.*).

7.      **Stay of Amarillo Interpleader.** On December 28, 2010, because of the *Eastern* bankruptcy, the Amarillo federal court entered an order staying the interpleader. (Exhibit 8–Order of Stay in Amarillo Interpleader, p. 3). No further action has been taken in the Amarillo interpleader case pending an order from the Indiana bankruptcy court.

8.      **Oklahoma State Court Lawsuit.** On January 18, 2011, despite direct knowledge of the Indiana bankruptcy and the Amarillo interpleader case, Nichols filed a one-page lawsuit

---

[1]

It is believed Mr. Nichols received notice of the bankruptcy stay by virtue of his status as registered agent for Okie Farms, LLC, which was a party in the Ohio receivership that was stayed by the order for relief entered in the bankruptcy court that applied retroactively to the date the involuntary petition was filed, December 6, 2010. (Exhibits 3 and 8).

against Cactus in Kiowa County, Oklahoma regarding the same cattle and same proceeds that are the subject of the Indiana bankruptcy and the Amarillo interpleader case. (Dkt. 1-1). Nichols attached to its petition an invoice dated November 8, 2010, which was received by Cactus on December 8, 2010 under cover letter from Nichols' attorney. (Dkt. 1-1, exhibit A to Nichols' State Court Petition). Nichols' exhibit to its state court petition confirms the Amarillo interpleader case and Oklahoma case involve the same 125 head of steers that were sent to the Cactus Feeders feed yard in Stratford, Texas on November 8, 2010 under Nichols' contract with Eastern and transported by a trucker named "Jane". (Dkt. 1–1, exhibit A to Nichols' State Court Petition; Exhibit 4, exhibit A to Amarillo interpleader case). Notably, Cactus received the Nichols invoice a month after the cattle had been delivered against an Eastern contract with Cactus Growers, long after Cactus filed the Amarillo interpleader case, and long after Nichols had notice of the involuntary bankruptcy petition filed against Eastern. (Exhibits 3, 8, 9–November 30, 2010 Letter from Nichols' lawyer to Cactus). Therefore, all claims made by Nichols in the Oklahoma case are part of the same transactions that are before the federal district court in Amarillo and Indiana bankruptcy court. [2]

## III. ARGUMENT AND AUTHORITIES

9.     Dismissal under Rule 12(b)(7) and abatement under the First-to-File rule will be argued together, because they both involve the implications of the Indiana bankruptcy stay and the

---

[2]

Nichols also pled for trucking fees in the Kiowa County case. Cactus contracted with Eastern to purchase the cattle on a "delivered basis", meaning trucking fees were not paid by Cactus, but by the seller. The livestock in question were hauled by Jane, LLC (an entity owned by Robert and Jane Nichols who are also the principals of Nichols Livestock) and delivered to a Cactus feed yard in Stratford, Texas. However, Jane, LLC is not a party to the Kiowa County case, but is a party to the Amarillo interpleader case. (Exhibit 4, ¶ 18). There is no contractual basis for Nichols to make a claim for trucking fees against Cactus. In the Amarillo interpleader case, Cactus joined haulers it could identify because some of the haulers asserted a right to make lien claims against the proceeds of the cattle.

abatement of the Texas interpleader case.  Dismissal under Rule 12(b)(2) will then be argued if the Court must reach that argument.

**A.    The Bankruptcy Stay Requires Dismissal of the Oklahoma Case.**

10.    **Bankruptcy Stay.**  This case is subject to a bankruptcy stay arising from *In re Eastern Livestock Co., LLC,* Case No. 10-93904-BHL-11, United States Bankruptcy Court, Southern District of Indiana, New Albany Division.  In addition, the cash proceeds from the sale of cattle forming the basis of Nichols' case are already on deposit in an interpleader action before a Texas federal court in Case No. 2:10-cv-00266-J; *Friona Industries, LP, Plaintiff v. Eastern Livestock, et al., Defendants v. Cactus Growers, Inc., Intervenors*, United States District Court, Northern District of Texas, Amarillo Division.  The Texas case has been abated pending an order lifting stay from the Indiana bankruptcy court.  Without an order lifting the bankruptcy stay, Nichols cannot prosecute this case or join indispensable parties that have asserted lien claims to the interpled fund including, Eastern's lender, Fifth Third Bank.  However, even if Nichols can persuade the Indiana bankruptcy court to lift the stay, this case stands in second position to the first-filed Texas case that involves the exact same cattle and cash proceeds from those cattle that form the basis of this case.  The Texas case predominates requiring a stay of this case.

11.    **Rule 12(b)(7) Dismissal.**  This case should be dismissed under Rule 12(b)(7), because Nichols Livestock failed to join two indispensable parties: Eastern and Fifth Third Bank. Fed. R. Civ. P. 12(b)(7).  Fifth Third Bank is asserting a lien on all of Eastern's cattle and proceeds from those cattle, which would include the cattle delivered to Cactus by Nichols Livestock.  This is evidenced by the proof of claim filed by Fifth Third Bank in the *Eastern* bankruptcy.  (Exhibit 10–Fifth Bank Proof of Claim).  Fifth Third Bank's proof of claim attaches a number of exhibits including a "Consent and Waiver of Liens" signed in July 2004 by Robert Nichols, one of the

plaintiffs in this case who is an owner of the sole proprietorship Nichols Livestock. The Consent and Waiver of Liens gave Fifth Third a security interest in all Eastern cattle and proceeds therefrom. (Exhibit 11–Nichols Waiver of Lien). This arguably places Fifth Third Bank first in line to recover any proceeds from the sale of the cattle forming the basis of Nichols' petition. Moreover, if Fifth Third Bank is correct on who owned the cattle, then the cattle were not Nichols' to sell, meaning Nichols had contracted to sell these cattle to Eastern, and constructively delivered those cattle to Eastern and, therefore, could not have entered a contract with Cactus to sell the 125 head of steers that it had previously sold to Eastern. This makes Fifth Third Bank an indispensable party to this case and subjects this case to the *Eastern* bankruptcy stay.

12.     Eastern is also an indispensable party to this case. In response to the motion to lift stay filed by Cactus and others requesting permission to proceed with the Amarillo case, the *Eastern* bankruptcy trustee objected and stated the interpled fund is an asset of *Eastern's* bankruptcy estate. (Exhibit 12–Trustee's Objection to Motion to Lift Stay, ¶ 7). This makes Eastern an indispensable party to this case and places Nichols' claims squarely within the parameters of the *Eastern* bankruptcy. Unless and until Nichols can obtain relief from the stay to join Eastern, this case is subject to the *Eastern* bankruptcy stay just like the Amarillo case.

13.     The evidence clearly shows the nature of the interests possessed by Eastern and Fifth Third Bank (who are both absent from this case) and that the protection of their interests will be impaired by their absence. *See Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier,* 17 F.3d 1292, 1293 (10th Cir. 1994). Rule 12(b)(7) requires a case to be dismissed if the movant demonstrates a party should be joined under Federal Rule of Civil Procedure 19. Rule 19 provides "[t]he court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if feasible. If the absent party is necessary but cannot be joined, the court must

then determine under Rule 19(b) whether the party is indispensable.  If so, the suit must be

dismissed." *Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.,* 94 F.3d 1407, 1411 (10th Cir. 1996),

*cert. denied,* 520 U.S. 1166 (1997).  A party is necessary and must be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already
> parties, or (2) the person claims an interest relating to the subject of the action and
> is so situated that the disposition of the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability to protect that interest or (ii)
> leave any of the persons already parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations by reason of the claimed
> interest.

Fed. R. Civ. P. 19(a).  There need only be substantial risk, not certain risk, for multiple liability

defined by Rule 19(a) to be invoked.  *Francis Oil & Gas, Inc. v. Exxon Corp.,* 661 F.2d 873, 877

(10th Cir. 1981).  Persisting in this case will subject Cactus and Nichols to multiple liability.  In fact,

the bankruptcy trustee warns of multiple liability to claimants of the interpled fund, which means

claimants to any money generated through the sale of Eastern cattle.  (Exhibit 12, ¶ 6).  *See, e.g.,*

*Ramsey v. Bomin Testing, Inc.,* 68 F.R.D. 335, 337 (W.D. Okla. 1975) (stating "multiplicity of

actions is a factor to be considered in determining whether a party is a person to be joined, if

feasible").  In addition, failing to join Fifth Third Bank will impair or impede the bank's ability to

protect its interest.  As shown above, Fifth Third Bank is claiming priority to all cattle and all

proceeds therefrom.  For this reason, Fifth Third Bank and Eastern must be joined if feasible.

Eastern, however, cannot be joined without permission of the Indiana bankruptcy court.  Therefore,

unless Nichols is granted a lift of the bankruptcy stay to proceed against Eastern, this case should

be dismissed pursuant to Rule 12(b)(7).

      14.    **First-to-File Abatement.**  "Where the jurisdiction of a federal district court has first

attached, that right cannot be arrested or taken away by proceedings in another federal district court."

*O'Hare Int'l Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir. 1972)(holding a district court erred by

denying a motion to stay the second-filed action until conclusion of the first-filed action); *Hickey v.
O'Connor & Drew, P.C.,* No. CIV-09-349-C; 2009 WL 2163499, *1 (W.D. Okla. July 10, 2009).
Instead, second courts "should decline consideration of the action until the proceedings before the
first court are terminated." *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir. 1965); *see
also Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982)(explaining the
general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction
attaches has priority to consider the case); *Hickey* at *1.[3] The threshold question is whether there
is sufficient overlap of parties and issues between the two cases. *Cherokee Nation v. Nash,* 724
F.Supp. 2d 1159, 1167 (N.D. Okla. 2010). If there is sufficient overlap, then the court must analyze:
(1) the chronology of actions, (2) the similarity of the parties, and (3) the similarity of issues. *Id.* The
overarching goal of the first-to-file rule is to avoid inconsistent rulings between the two cases. *Id.*
at 1168. Such is the case before this Court.

      15.    The Amarillo case was filed on November 19, 2010. The Oklahoma case was filed
on January 18, 2011. It should be undisputed that the Amarillo case was the first-filed case.[4]

---

[3]

      However, Cactus asserts that this Court does not have personal jurisdiction over either Cactus
entity. *See* Argument, Section III.B.

[4]

      Nichols may argue they have not been formally served in the Amarillo case, so the Amarillo
case cannot be the first-filed case. There is no authority for that proposition. Further, Cactus sent
Nichols a waiver of service, which was received on December 2, 2010. (Exhibit 5). Before the
expiration of the thirty-day period for waiving service, the Amarillo federal court entered a stay of
the interpleader due to the *Eastern* bankruptcy. (Exhibit 8, p. 3). If Cactus had then formally served
Nichols, Cactus would have risked violating the Amarillo federal court order and *Eastern* bankruptcy
stay. Cactus and others have filed a motion to lift the *Eastern* bankruptcy stay, which is set for
hearing on March 11, 2011. A lift of the Indiana bankruptcy stay will allow the Amarillo case to
proceed.

16.     The parties in the two cases are identical, although only similarity is required.
*Cherokee Nation,* 724 F.Supp.2d at 1168 (citing *Shannon's Rainbow, LLC v. Supernova Media, Inc.,*
683 F.Supp.2d 1261, 1279 (D. Utah 2010)(applying the first to file rule in a case involving similar
parties and issues and enjoining defendants from pursuing any further action in second-filed case).
Cactus Growers filed the Amarillo case naming Nichols as a defendant. (Exhibit 4, ¶ 19).  Nichols
filed the Oklahoma Case naming Cactus Growers and incorrectly naming Cactus Feeders as a d/b/a
of Cactus Growers. (Dkt. 1-1).[5]  It should be undisputed that the parties in the two cases are not only
similar, but are identical.

17.     The issues in the case need only be substantially similar, not identical.  *Cherokee*
*Nation,* 724 F.Supp.2d at 1168 (citing *Shannon's Rainbow,* 683 F.Supp.2d at 1278-79; *see e.g.,*
*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* 679 F.Supp. 2d 1287, 1298 (D.
Kan. 2010)(explaining the first-to-file rule does not require perfect identity of claims, only a
substantial overlap for the actions to be duplicative).  The Amarillo case involves the sale and
transportation of the very 125 head of steers that were sent to Cactus by Nichols on November 8,
2010 under Nichols' contract with Eastern and transported by a trucker named "Jane".  (Exhibits 1
and 4, exhibit A).  Cactus interpled $104,929.84 for that transaction with the Amarillo federal court.
(*Id.*).  The Oklahoma case involves the same 125 head of steers transported on November 8, 2010
by a trucker named "Jane".  (Dkt. 1–1, exhibit A to Nichols' State Court Petition).  Finally, it is
believed that Nichols  will claim it had a separate independent contract with Cactus in the desperate
hope to get paid ahead of everyone else that is owed money by Eastern, including those owed money

---

[5]

Cactus Feeders is a Nevada corporation, which owns feed yards.  Cactus Growers is a Texas
corporation which contracted with Eastern to purchase the cattle in question.  Cactus Feeders is not
a d/b/a of Cactus Growers.  (Exhibit 1).

from the interpled fund in Amarillo.  First, Cactus denies having a contract with Nichols.  (Exhibit 1, ¶ 9).  Second, as explained above, this case is also subject to the *Eastern* bankruptcy stay just like the Amarillo interpleader case, and this case requires the presence of Eastern and Fifth Third Bank as indispensable parties just like the Amarillo case.  Therefore, there is substantial similarity between the Amarillo case and the Oklahoma case.

18.     Defendants have satisfied the elements of the first-to-file rule requiring this Court to either dismiss this case or enter a stay pending resolution of the Amarillo case.

**B.     Personal Jurisdiction over Cactus Fails Constitutional Scrutiny.**

19.     Cactus timely removed Nichols' civil action to this Court reserving its right to challenge personal jurisdiction.  (Dkt. 1, ¶ 1); *McCurtain County Prod. Corp. v. Cowett*, 482 F. Supp. 809, 813 (D.C. Okla. 1978).  This case is in federal court solely on the basis of diversity.  Nichols alleged no basis for the Kiowa County District Court's jurisdiction in its petition, and there is none.[6]

20.     Cactus Growers, a foreign corporation, had a contract with non-party Eastern, a Kentucky company headquartered in Indiana, to purchase livestock that would be hauled and delivered to Texas.  (Exhibit 1).  In contracting with Eastern to purchase the cattle which were delivered to Cactus Feeders' feed yard in Stratford, Texas, Cactus had no communications or contacts with Oklahoma, only with Indiana.  (*Id.*).  Cactus did not know where the cattle which would be delivered against the Cactus Growers-Eastern contract would originate.  Cactus Growers

---

[6]

In its Kiowa County petition, Nichols did not specifically allege any basis for that Oklahoma state court's jurisdiction.  Under Oklahoma law, Nichols was required to affirmatively plead and, if challenged, prove that there are sufficient facts to confer jurisdiction on the court.  *Jim Marrs Drilling Co., v. Woolard,* 629 P.2d 810, 812 (Okla. Civ. App. 1981).

never had a contract or agreement with Nichols. (*Id.*). Cactus Feeders never had any contractual privity to the cattle in question. Cactus had no communications with Nichols until after the cattle in question had already been delivered to Cactus' feed yard in Texas and applied as a delivery by Eastern against an Eastern-Cactus Growers contract. (*Id.*). Cactus does not have any business operations in Oklahoma. (*Id.*). Cactus has no employees or offices in Oklahoma. (*Id.*). Therefore, Cactus does not have minimum contacts with the State of Oklahoma. The exercise of personal jurisdiction over Cactus would violate the Due Process Clause of the United States Constitution.

21.    The Due Process Clause of the United States Constitution protects an individual's liberty interests in not being subject to the binding judgment of a forum with which he has established no meaningful contacts, ties or, relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Accordingly, the Due Process Clause imposes limits on the power of a court to render a valid personal judgment against a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). To obtain personal jurisdiction over a nonresident defendant in a diversity action, such as this case, a plaintiff must also show that jurisdiction is legitimate under the laws of the forum state. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286-87 (10th Cir. 2007). The Oklahoma long-arm statute "permits the exercise of any jurisdiction that is consistent with the United States Constitution," collapsing the personal juridiction analysis into a due process inquiry. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000); Okla. Stat. Ann. tit. 12 § 2004(f). The plaintiff bears the burden of making a prima facie showing that the due process clause would be satisfied when personal jurisdiction is challenged pursuant to Federal

Rule of Civil Procedure 12(b)(2); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). This Nichols is unable to do.

22. **Minimum Contact Analysis.** The constitutional touchstone of the inquiry is whether a defendant purposefully established minimum contacts in the forum state such that he should reasonably anticipate being haled into court in that state. *Burger King,* 471 U.S. at 474; *International Shoe Co., v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Employers,* 618 F.3d at 1159-60. In defining when a potential defendant should "reasonably anticipate" involvement in out-of-state litigation, the Supreme Court has frequently drawn from its reasoning in *Hanson v. Denckla*:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Burger King,* 471 U.S. at 474-75. *Denckla's* "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Burger King,* 471 U.S. at 474; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779-80, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Neither will a defendant be subject to jurisdiction solely because of the unilateral activity of another party or third person. *Burger King,* 471 U.S. at 475; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Rather, jurisdiction will be proper where the contacts proximately result from *actions by the defendant himself* that create a substantial connection with the forum state, or in circumstances where the defendant has created "continuing obligations" between himself and residents of the forum and

where the defendant has manifestly availed himself of the privilege of conducting business in the forum state. *Burger King,* 471 U.S. at 475-76.

23.     The "purposeful availment" and "continuing obligations" analysis is also articulated as either general or specific jurisdiction. *Employers,* 618 F.3d at 1159-60.  General jurisdiction is established based on the defendant's continuous and systematic general business contacts with the forum state. *Employers,* 618 F.3d at 1160 n. 5; *Trujillo v. Williams,* 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006).  Specific jurisdiction requires that: (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," and (2) "the litigation results from alleged injuries that arise out of or relate to those activities.'" *Employers,* 618 F.3d at 1160 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008); *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007)(quoting *Burger King,* 471 U.S. at 472).  In this case, there is neither general or specific jurisdiction.  Cactus Feeders is a Nevada corporation with its principal office in Texas.  Cactus Feeders has feed yards in Texas and Kansas.  Cactus Feeders has no privity to the contract on the cattle in question.  Cactus Growers is a Texas corporation with its principal office in Texas.  Cactus does not have continuous or systematic contacts with the State of Oklahoma such to establish general jurisdiction. (Exhibit 1).

24.     Nor is there specific jurisdiction over Cactus in this case.  Cactus does not have a contract or any other type of agreement with Nichols.  (*Id.*).  Cactus had a contract with, and purchase orders from, Eastern.  It was Eastern, not Cactus, that was contractually obligated to pay Nichols.  Once Eastern started bouncing checks and several parties started asserting claims to the money that Cactus Growers was contractually obligated to pay Eastern, then Cactus Growers

interpled those funds as an innocent stakeholder. For these reasons, neither Cactus Growers or Cactus Feeders have minimum contacts with the state of Oklahoma.

25.     **Fair Play and Substantial Justice Analysis.** Assuming, arguendo, that the Court determines Cactus does have minimum contacts with Oklahoma, then Cactus will address the second prong of the due process analysis–the fairness test. If a court decides that a defendant has purposefully established minimum contacts with the forum state, then the court must consider these contacts in light of the circumstances to determine whether the court's assertion of personal jurisdiction over the nonresident defendant comports with fair play and substantial justice. *Burger King,* 471 U.S. at 476; *International Shoe,* 326 U.S. at 320; *Employers,* 618 F.3d at 1160. A court may consider the following factors as it evaluates whether jurisdiction exists: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief when that interest is not adequately protected by the plaintiff's power to choose the forum, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Employers,* 618 F.3d at 1161. Each of these factors weigh in favor of denying the exercise of personal jurisdiction over Cactus.

26.     One, requiring Cactus to defend this lawsuit will place a heavy burden on this foreign corporation. Cactus Growers is already a party to the Amarillo case and a party in interest which has appeared in Indiana in the *Eastern* bankruptcy. If Cactus is required to defend a lawsuit in Oklahoma on a matter already pending in Texas, then that would be three forums some distance from one another with the same 125 steers before them. Two, the state of Oklahoma does not have an interest

in adjudicating this dispute when it is already pending in Texas and subject to a bankruptcy stay in Indiana.  Three, the most convenient and effective relief can be obtained through the Amarillo case.  The funds owed to Nichols Livestock are already on deposit with the clerk of the Amarillo federal court.  Amarillo is less than 200 miles west on Interstate 40 from Kiowa County, Oklahoma, Nichols' chosen state court forum.   With electronic filing, the Amarillo forum will not present inconvenience to Nichols.  Four, it is in the best interest of the interstate judicial system to dismiss or stay this case so an efficient resolution can be reached through the Indiana bankruptcy and previously filed Amarillo interpleader case.  Otherwise, Nichols and numerous other potential claimants to the interpled fund will file separate and independent actions all over the United States, each seeking to obtain rights to the interpled fund, which is under the control of the Indiana bankruptcy court and Amarillo federal court.  This will result in satellite litigation where Cactus is a defendant in each case, and potentially conflicting rulings on the rights of respective parties to the interpled funds and underlying transactions.  Having the case adjudicated in Texas, subject to approval by the Indiana bankruptcy court, will further the fundamental social policies of the several states involved in this matter–Indiana, Texas, and Oklahoma.  For these reasons, the exercise of personal jurisdiction over Cactus fails the fair play and substantial justice test.

27.     Therefore, Defendant's 12(b)(2) motion should be granted and this case dismissed.

## IV. PRAYER

Cactus Growers, Inc. and putative defendant Cactus Feeders, Inc. request that the Court grant this motion to dismiss, dismiss this action with prejudice, enter a judgment that Plaintiffs take nothing by their action, and assess costs against Plaintiffs.  Alternatively, Cactus requests the Court to stay this case pending resolution of the Amarillo interpleader case.  Defendant requests all other and further relief, at law or in equity, to which it may be justly entitled.