IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT AND JANE NICHOLS, d/b/a<br>NICHOLS LIVESTOCK, | § § § | |
| Plaintiffs/Counter-Defendants, | § § | |
| v. | § § | Civil Action No. 5:11-cv-00114-F |
| CACTUS GROWERS, INC.,<br>a/k/a CACTUS FEEDERS, INC. | § § § § | |
| Defendant/Counter-Plaintiff. | § | |

### DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(2) AND 12(b)(7) MOTION TO DISMISS AND, ALTERNATIVELY, MOTION FOR STAY

Defendant Cactus Growers, Inc. and putative Defendant Cactus Feeders, Inc. (sometimes collectively referred to as "Cactus"), file this Reply to Plaintiffs' Response to Defendant's Rule 12(b)(2) and 12(b)(7) Motion to Dismiss and, alternatively, Motion for Stay, and would show:

#### REPLY

1. Recent developments in the *Eastern* bankruptcy make it imperative for this case to be stayed pending further order from the Indiana Bankruptcy Court. On March 1, 2011, the Indiana Bankruptcy Court ordered the Amarillo Interpleader and interpled fund be transferred to Indiana. (Exhibit 1–Agreed Order to Permit Removal and Transfer of Interpleader). To accomplish this transfer, a motion will be filed in the Amarillo Interpleader on March 14, 2011 directing the interpled fund be transferred to the Bankruptcy Court for

the Northern District of Texas, which will then transfer the interpled fund to the Indiana Bankruptcy Court. It is imminent that the Indiana Bankruptcy Court will hold and then proceed to adjudicate the rights to the cash proceeds for the 125 steers involved in this case. (*Id.*; Dkt. 9–Defendant's Motion to Dismiss, Exhibit 4, exhibit A showing the cash from the 125 steers was interpled). According to the decision by the Indiana Bankruptcy Court, all claims involving the 125 steers and proceeds therefrom are within the jurisdiction of the bankruptcy court and subject to the bankruptcy stay. In addition, notwithstanding Mr. Nichols' personal preference to not be subject to the existing jurisdiction of the interpleader action, and the Indiana Bankruptcy Court, Nichols must assert its claim to the interpled fund in the Indiana Bankruptcy Court or Nichols' claim to the fund, if any, will be barred. *State Farm Mut. Auto. Ins. Co. v. Wagnon,* 959 F.2d 245, 245 (10th Cir. 1991)(holding the failure of a claimant to assert a claim to the *res* forfeits that party's interest in the fund).

2. Moreover, the *Eastern* bankruptcy trustee is examining a number of contract assignments by Eastern to determine if they constitute a fraudulent transfer or preferential transfer. (Exhibit 2–Trustee's Response to Objections to Trustee's Financing Motion, p. 5). The trustee has advised the bankruptcy court that over 500 contractual assignments by Eastern to Superior Livestock Auction, Inc. will be scrutinized. (*Id.*). Those assignments occurred on November 8, 2010. (*Id.*). Nichols admitted in its response to having discussions with Eastern on November 3, 2010 concerning Nichols' contract with Eastern, that Nichols should contact Cactus about the sale of 125 steers, and that *"Eastern actually assisted Nichols*

in drafting an Invoice for Nichols to submit to Cactus for the sale of the 125 steers directly to Cactus." (Dkt. 18, p. 3). The purported contract and sale of steers by Nichols to Cactus occurred on the same day the bankruptcy trustee is claiming Superior Livestock and Eastern engaged in improper conduct–November 8, 2010. (Exhibit 2, p. 5; Dkt. 18, p. 3). Cactus, while denying it ever entered a contract with Nichols, is not implying in this pleading that Eastern and Nichols engaged in improper conduct, but all of Eastern's conduct in the November 8 time period is now in the process of being critically examined by the bankruptcy trustee. The trustee's examination will most likely include whether Eastern improperly assigned contract rights on the 125 steers. Therefore, even if Nichols and Cactus had a contract (which Cactus denies), the bankruptcy trustee could unravel that agreement as being a fraudulent or preferential transfer of property belonging to the Eastern bankruptcy estate placing Nichols' claims in this case squarely within the ambits of the Indiana Bankruptcy Court.

3.    Presenting its claims against Cactus in the *Eastern* bankruptcy will not place a hardship on Nichols. Nichols Livestock and Robert Nichols are already creditors or parties in interest in the *Eastern* bankruptcy. (Exhibit 3–Excerpts from Summary of Schedules, p. 2-3; Exhibit 4–Excerpts from Statement of Financial Affairs, p. 5-8). The trustee has identified Robert Nichols as an "insider" and is examining the $10.6 million in payments to Mr. Nichols that occurred within the one year period prior to filing the petition. (Exhibit 4,

p. 5-6).[1] The trustee is also examining the $3.1 million in payments to Mr. Nichols as a creditor that occurred within the ninety-day preference period. (Exhibit 4, p. 7-8).[2] Nichols Livestock also received a payment within the ninety-day preference period, which is being reviewed by the trustee. (*Id.*).

4.      Finally, it is noteworthy that Nichols did not argue against application of the bankruptcy stay in his response, even though the bankruptcy stay was the first argument raised by Cactus. (Dkt. 9–Cactus Motion to Dismiss, p. 6 ¶ 10; *compare* Dkt. 18). In light of the recent rulings by the Indiana bankruptcy court, continuing with this case absent permission from the Indiana bankruptcy court runs a serious risk of violating the automatic stay.

### **PRAYER**

Defendant Cactus Growers, Inc. and putative Defendant Cactus Feeders, Inc. respectfully pray that the Court grant the motion to dismiss (Dkt. 9), dismiss this action with prejudice, enter a judgment that Plaintiffs take nothing by their action, and assess costs against Plaintiffs; alternatively, Cactus requests the Court to stay this case pending resolution of the interpleader.

---

[1]The trustee's designation of Mr. Nichols as an "insider" is shown in the top right hand corner of this exhibit just beneath the bankruptcy court file stamp. (Exhibit 4, p. 5-6).

[2]The trustee's designation of the listed payments as having been made within ninety days of the petition date is shown in the top right hand corner of this exhibit just beneath the bankruptcy court file stamp. (Exhibit 4, p. 7-8).

Respectfully submitted,

Sam L. Stein/OBA 12498
LAW OFFICE OF SAM L. STEIN, P.L.L.C.
305 S. Grand/P.O. Box 223
Cherokee, Oklahoma 73728
Telephone: (580) 596-3000
Facsimile: (580) 596-3004
E-mail: sstein@steinlaw-ok.com

**LOCAL COUNSEL FOR DEFENDANTS**

-and-

Tim D. Newsom/OBA No. 20017
John H. Lovell, Texas Bar No. 12609300
(*Admitted Pro Hac Vice-Dkt. 12*)
LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176
Email: tim@lovell-law.net
Email: john@lovell-law.net

By: */s/ Tim Newsom*
    Tim Newsom

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jack S. Dawson
Joseph H. Rogers, III
MILLER DOLLARHIDE, P.C.
100 Park Avenue, Second Floor
Oklahoma City, Oklahoma 73102
jdawson@millerdollarhide.com
jrogers@millerdollarhide.com

**ATTORNEYS FOR PLAINTIFFS**

By: /s/ Tim Newsom
      Tim Newsom