IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **EASTERN LIVESTOCK CO., LLC** | ) | |
| | ) | |
| | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| _____ | | |
| | | |
| **SUPERIOR LIVESTOCK AUCTION, INC.** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| | ) | |
| **V.** | ) | ADVERSARY PROCEEDING NO. 11- |
| | ) | |
| **EASTERN LIVESTOCK CO., LLC,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT OF SUPERIOR LIVESTOCK AUCTION, INC.
FOR DECLARATORY RELIEF**

Superior Livestock Auction, Inc. ("Superior Livestock"), through counsel, respectfully

submits this Complaint for Declaratory Relief ("Complaint").   Superior Livestock seeks a

Declaration of Superior Livestock's rights related to Eastern Livestock Co., LLC ("Debtor"),

including, but not limited to, a determination that, as a matter of law:  (1) Superior Livestock is

the rightful owner of five hundred (500) certain livestock forward contracts ("Superior Forward Contracts") and any proceeds thereof ("Superior Forward Contract Proceeds"), including but not limited to the funds  ("Interpleader Funds") currently held in *Friona Industries, L.P. v. Eastern Livestock Co., Inc.*, Case No. 10-CV-00266, which was transferred to this Court from the U.S. District Court for the Northern District of Texas ("Interpleader Action"); (2) Superior Livestock is a forward contract merchant as that term is defined by 11 U.S.C. §101 *et seq.* ("Bankruptcy Code"); (3) the Superior Forward Contracts entered into by the Debtor were forward contracts as defined by the Bankruptcy Code; (4) Superior Forward Contracts are swap agreements as defined by the Bankruptcy Code; (5) Superior Livestock is a swap participant as defined by the Bankruptcy Code; (6) all transfers made by the Debtor to Superior Livestock prior to the filing of the involuntary bankruptcy ("Pre-Bankruptcy Transfers") were transfers made under forward contracts to a forward contract merchant; (7) all Pre-Bankruptcy Transfers were settlement payments made to a forward contract merchant; (8) all Pre-Bankruptcy Transfers were transfers made to a swap participant in connection with a swap agreement; (9) the Debtor's assignment of the Superior Forward Contracts to Superior Livestock was a transfer to a forward contract merchant made in connection with the forward contracts; (10) the Debtor's assignment of the Superior Forward Contracts to Superior Livestock was a settlement payment made to a forward contract merchant; (11) the Debtor's assignment of the Superior Forward Contracts to Superior Livestock has a transfer made to a swap participant made in connection with a swap agreement; and (12) Superior Livestock's pre-petition termination of the Superior Forward Contracts was the termination of a forward contract because of a condition specified in 11 U.S.C. § 365(e).

## **NATURE OF THE ACTION**

1.    On January 4, 2011, Cactus Growers Inc., Friona Industries, LP and J&F Oklahoma Holdings, Inc. filed a motion seeking stay relief to allow the Interpleader Action to

proceed in the U.S. District Court for the Northern District of Texas ("Interpleader Stay Motion") (Doc. No. 78).

2.　　After significant litigation over the procedural posture of the Interpleader Stay Motion, this Court entered an Order setting an evidentiary hearing ("Hearing Notice") (Doc. No. 284), setting March 11, 2011 as the date it would hear testimony and argument on the single issue of "whether Eastern Livestock Co., LLC ("Debtor") has no claim to or interest in some or all of the [Interpleader Funds]."

3.　　On February 25, 2011, Superior Livestock filed its prehearing statement ("Prehearing Statement") addressing this issue (Doc. No. 294).

4.　　Superior Livestock files this adversary proceeding ("AP") in order to adjudicate its rights to the Superior Forward Contracts and Superior Forward Contract Proceeds, including the Interpleader Funds.

5.　　This is an adversary proceeding commenced pursuant to Federal Rule of Bankruptcy Procedure 7001(9), seeking declaratory relief of an actual controversy under 28 U.S.C. §2201.

6.　　This case involves an actual controversy between Superior Livestock and the Debtor named herein.

7.　　A declaration of the rights of Superior Livestock related to the Debtor would settle the controversy between the parties.

## THE PARTIES

8.      Superior Livestock Auction, Inc. is a corporation duly organized and incorporated under the laws of Nevada, with its principal place of business in Brush, Colorado.

9.      Eastern Livestock Co., LLC is a chapter 11 debtor in Case No. 10-93904.  James Knauer was appointed chapter 11 Trustee of the Debtor on December 27, 2010.

## JURISIDCTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 11 U.S.C. §§105 and 541, 28 U.S.C. §§1334 and 157.  The Motion concerns administration of bankruptcy estates and is, therefore, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

11.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL ALLEGATIONS

**A.      Superior Livestock And Its Business.**

12.      Superior Livestock conducts video auctions and operates as a third-party broker for ranchers, farmers and other producers (collectively "Farmers") of cattle.

13.      Under the Packers and Stockyards Act and related regulations ("P&S Act"), Superior Livestock acts as a "Market Agency" pursuant to 7 U.S.C. § 201(c).

14.      As part of its business, Superior Livestock engages independent contractors ("Representatives") throughout the United States to solicit cattle (hereinafter referred to as "Lots") from Farmers to consign to Superior Livestock's auctions.

4

15.    When these Representatives obtain Lots for auction, they are responsible for completing a consignment contract with the selling Farmer ("Seller") that sets forth the terms and conditions of the sale (number of head, base weight, weighing conditions, delivery dates, etc.).

16.    When the Representatives obtain Lots for auction, they send the consignment contract to Superior Livestock's Brush, Colorado office, where it is entered into a computer database and a catalog is prepared for prospective buyers.    The Representatives are also responsible for video-taping the cattle at their current location for use on sale day.

17.    On sale day, the auction is conducted and the Lots are sold to the highest bidder.

18.    After each Lot is sold, a contract using the Superior Livestock contract form for future delivery of the cattle is executed.    *See* Sample Superior Livestock contract, attached as Exhibit A.

19.    Cattle are a commodity as defined by The Commodity Exchange Act 7 U.S.C. §1(a)(4).

20.    Cattle are a commodity as defined by 11 U.S.C. §761(8).

21.    All Superior Livestock contracts are contracts for the sale of a commodity.

22.    Except for certain auctions where a Lot is auctioned on Friday and delivered on Saturday, all delivery dates under Superior Livestock contracts are for dates more than two (2) days after the execution of the Superior Livestock contracts.

23.     Superior Livestock, in selling Lots through its auctions with delivery dates more than two (2) days after execution of the livestock contracts ("Forward Livestock Contracts"), enters into forward contracts, as defined by the Bankruptcy Code, as a merchant in a commodity.

24.     All of the Superior Forward Contracts had delivery dates more than two (2) days after the execution of each Superior Livestock contract.

25.     Superior Livestock, in selling Lots through its auctions under Forward Livestock contracts, enters into forward contracts, as defined by the Bankruptcy Code, with merchants in a commodity.

26.     Superior Livestock is a forward contract merchant as defined by 11 U.S.C. §101(26).

27.     Superior Livestock's Forward Livestock Contracts are not contracts that are subject to the rules of a contract board of trade.

28.     Superior Livestock's Forward Livestock Contracts contemplate actual physical delivery of the Lots sold under them.

29.     Superior Livestock's Forward Livestock Contracts are not "commodity contracts" as defined by 11 U.S.C. §761(4).

30.     The Forward Livestock Contracts constitute forward contracts as defined by 11 U.S.C. §101(25).

31.     Forward contracts, as defined by 11 U.S.C. §101(25), are also "swap agreements" as defined by 11 U.S.C. §101(53B)(i)(VII).

32.    The Forward Livestock Contracts are swap agreements as defined by 11 U.S.C. §101(53B)(i)(VII).

33.    Superior Livestock, by virtue of the Forward Livestock Contracts, is a swap participant as defined by 11 U.S.C. §101(53C).

34.    The Forward Livestock Contracts include the terms and conditions of the sale, along with the purchase price and the date for the future delivery of the Lots.

35.    The Forward Livestock Contracts were sent to the successful bidder ("Buyer") along with an invoice requiring a $40/head of cattle partial payment on each Lot purchased, which was paid to Superior Livestock ("Partial Payment").  *See* Exhibit A, "Payment of Consideration."

36.    The Partial Payment was ultimately deducted from the total amount paid by the Buyer upon delivery of the Lots.

37.    Under the P&S Act and the terms of the Forward Livestock Contracts, Superior Livestock is responsible for completing all of the financial transactions related to the auction (paying the Seller and collecting payments from the Buyer) and acts as agent for the Seller and charges a commission for its service.

38.    On or about the delivery dates set forth in each Forward Livestock Contract, a representative of Superior Livestock is present when the Lots are prepared for transport for delivery to the Buyer.

39.     The Representative oversees the weighing and loading of the cattle onto the Buyer's trucks and pays the Seller (less Superior Livestock's commission and any other fees) with a check written on Superior Livestock Auction's Custodial Account for Shipper's Proceeds ("Custodial Account").

40.     An invoice for each Lot is sent to the Buyer, who must then make his/her payment to Superior Livestock at the time the Lots are delivered.  *See* Exhibit A, "Payment of Consideration."

41.     As a Market Agency under the P&S Act, Superior Livestock is required to pay the Sellers "before the close of the next business day following the sale of livestock" the amount due the Seller under their Forward Livestock Contracts.  *See* 7 U.S.C. § 228(B).

42.     Superior Livestock is also required to maintain a trust account designated as a Custodial Account.  *See* 9 CFR § 201.42(b).

43.     The regulations related to the P&S Act also require Superior Livestock to deposit into the Custodial Account proceeds it receives from a Buyer under Forward Livestock Contracts.

44.     Under the terms of the P&S Act, the Buyer must make his payment to Superior Livestock and if the Buyer's payment is not received before the close of the seventh day following the delivery of the Lots, Superior Livestock must deposit an amount equal to all of the remaining proceeds receivable into the Custodial Account.

45.     Under the terms of the Forward Livestock Contract, the Buyer grants Superior Livestock a security interest in the Lots covered by the particular Forward Livestock Contract.

46.     In the event a Buyer defaults under a Forward Livestock Contract, the Buyer forfeits the Partial Payment to Superior.

47.     In the event a Buyer defaults under a Forward Livestock Contract, if Superior Livestock pays the Seller in full for a Lot under the Forward Livestock Contract, Superior Livestock obtains ownership of the Lot and has the right to hold and resell the Lot in a commercially reasonable manner.

48.     In the event a Buyer defaults under a Forward Livestock Contract, Superior Livestock has the right to terminate the Forward Livestock Contract and take ownership of the Lot.  *See* Exhibit A.

49.     In the event a Buyer defaults under a Forward Livestock Contract, the Buyer may assign the Forward Livestock Contract to Superior Livestock.  *See* Exhibit A.

50.     In the event the Buyer defaults under a Forward Livestock Contract, Superior Livestock must deposit into the Custodial Account, from its own funds, an amount equal to all of the remaining proceeds receivable before the close of the seventh day.  *See* 9 CFR § 201.42.

**B.      The Contractual Relationship Between The Debtor and Superior Livestock**.

51.     Superior Livestock has done business with the Debtor for approximately twenty-four years.

52.     In all Forward Livestock Contracts where the Debtor was the Buyer of Lots, Superior Livestock paid the Seller for Lots that the Debtor purchased under Forward Livestock Contracts, as required by the P&S Act.

53.     In 2009, the Debtor's average time for its payments to Superior Livestock on its Forward Livestock Contracts was within 5.7 days of the date the payments were due under the Forward Livestock Contracts.

54.     In 2010, prior to October 29, 2010, the Debtor's average payment time on its Forward Livestock Contracts was again within approximately 5.7 days of the date the payments were due under the Forward Livestock Contracts.

**C.     The Debtor's Breach of The Forward Livestock Contracts**.

55.     Every Lot that Debtor purchased through Superior Livestock's auctions was sold using Superior Livestock's Forward Livestock Contracts.

56.     On Wednesday, November 3, 2010, the Bank of Colorado, Superior Livestock's depository bank, notified Superior Livestock that the Debtor's checks deposited on Friday, October 29, 2010, were being returned as "Refer to Maker."

57.     On Thursday, November 4, 2010, checks that Superior Livestock received and deposited from the Debtor on Monday, November 1, 2010, were returned "Refer to Maker."

58.     On Friday, November 5, 2010, the checks that Superior Livestock received and deposited from the Debtor on Tuesday, November 2, 2010, were returned "Refer to Maker."

59.     On Monday, November 8, 2010, the checks that Superior Livestock received and deposited from the Debtor on Wednesday, November 3, 2010, were returned "Refer to Maker."

60.    On November 4 and 5, 2010, Superior Livestock received checks from the Debtor via UPS overnight delivery.  The Bank of Colorado refused to allow Superior Livestock to deposit any more of the Debtor's checks (collectively, "Returned Checks").

61.    During the first week of November 2010, the Debtor represented to Superior Livestock that the Returned Checks had occurred due to short term credit issues.  These representations were false.

62.    During the first week of November 2010, the Debtor was insolvent.

63.    In compliance with P&S Act mandates, at the time it received the Returned Checks, Superior Livestock had already paid the Farmers for the Lots sold to Debtor under the Superior Forward Contracts from the Custodial Account.

64.    Under the P&S Act, Superior Livestock was required to pay into the Custodial Account, from its own funds, the amount due from the Debtor.

65.    Superior Livestock made all the required payments to the Farmers for the Lots sold to the Debtor from the Custodial Account arising from the Debtor's defaults under the Forward Livestock Contracts.

**D.    The Assignment and Termination of Contracts**.

66.    Late in first week of November, 2010, Superior Livestock requested, under the "No Assignment or Delegations" section of its Forward Livestock Contracts, that the Debtor assign all Superior Forward Contracts to Superior Livestock in light of the Debtor's insolvency and the Debtor's defaults under the Superior Forward Contracts.

67.     On or about November 8, 2010, pursuant to the terms of Superior Forward Contracts, the Debtor assigned the Superior Forward Contracts to Superior Livestock.  *See* Assignment of Superior Forward Contracts ("Debtor Assignment"), attached hereto as <u>Exhibit B</u>.

68.     The Debtor Assignment was an absolute transfer of all interests that the Debtor had in the Superior Forward Contracts and the underlying Lots.

69.     The Debtor Assignment constituted a settlement payment for purposes of the Bankruptcy Code as the assignment of a defaulted Forward Livestock Contract is a payment method commonly used in the cattle forward contract trade.

70.     On November 9, 2010, Fifth Third Bank filed a complaint in the Hamilton County Court of Common Pleas requesting, among other things, the emergency appointment of a Receiver and an injunction to be entered requiring the Debtor and its owner to pay $13,000,000.00, which Fifth Third Bank claimed it lost as a result of a "check kiting scheme" ("Receiver Action").

71.     On that same date, Hamilton County Court entered an Order granting Fifth Third Bank's request for the appointment of a Receiver ("Receivership Order").

72.     The Debtor and Tommy Gibson were the only parties to the Receiver Action other than Fifth Third Bank.

73.     Superior Livestock was not given notice of the Receiver Action or the Receivership Order by Fifth Third Bank or by any other party to the Receiver Action.

74.     On November 10, 2010, without formal notice of either the Receiver Action or the Receivership Order, Superior Livestock exercised its rights under the Superior Forward Contracts and applicable law to terminate the Superior Forward Contracts.  *See* Notice of Rescindment of Cattle and Delivery of Cattle Under My Rights Thereto ("Termination Notice"), attached as Exhibit C.

75.     The Termination Notice extinguished all rights, claims and interests that the Debtor had in the Superior Forward Contracts, the underlying Lots and the Superior Forward Contract Proceeds.

(a)     The Termination Notice, which was based in part on the insolvency of the Debtor, was a termination of forward contracts because of a condition of the kind specified in 11 U.S.C. § 365(e)(1).

76.     On December 6, 2010, an Involuntary Chapter 11 Bankruptcy Petition was filed against the Debtor ("Involuntary Petition").

77.     On December 16, 2010, this Court entered an Order appointing a trustee in the Debtor's case (Doc. No. 77).

78.     On December 27, 2010, James A. Knauer was appointed as the Debtor's Trustee (Doc. No. 102).

79.     On December 28, 2010, an Order of relief was entered in the Debtor's case.

**E.     Superior Forward Contracts Covered by the Interpleader Action**.

80.     Several of the Superior Forward Contracts are covered by the Interpleader Action and therefore the sole property of Superior Livestock.

### i.     The Superior-Friona Lots.

81.     On November 11, 2010, Friona Industries, L.P. ("Friona") filed a complaint in the nature of interpleader ("Friona Complaint") in the Interpleader Action.

82.     Prior to the filing of the Involuntary Petition, Friona purchased Lots from the Debtor, which were the subject of Superior Forward Contracts.

83.     At the time of the filing of the Interpleader Action, Friona placed $2,542,846.79 into the registry of the U.S. District Court for the Northern District of Texas, which represented the contractual price for the Lots purchased from the Debtor, less certain down payments.

84.     Superior Livestock owns the Lots set forth in Exhibit D, which are the subject of Friona's Complaint ("Superior-Friona Lots") and the proceeds therefrom in the amount of $776,109.96, which proceeds constitute a portion of the $2,542,846.79 that Friona has interpled in the Interpleader Action ("Superior-Friona Lot Proceeds").  *See* Table of Superior-Friona Lots, attached as Exhibit D.

85.     In total, the Superior-Friona Lots contain approximately 1146 head of cattle, less past and continuing deads.  The corresponding amount of Superior-Friona Lot Proceeds that should be paid to Superior as owner is $776,109.96.

86.     With respect to all of the Superior-Friona Lots at issue in this case, except for Superior Lot 10630B described below, the Debtor was the high bidder at the Superior Livestock

auction, and Forward Livestock Contracts were entered into by the Farmers (as the seller) and the Debtor (as the buyer).

87.     When the Debtor failed to pay Superior Livestock, Superior Livestock paid all of the Farmers which sold the Superior-Friona Lots and, as described in detail above, took ownership of that Lots which made up the Superior-Friona Lots.

88.     Superior Livestock is the only party that can pass ownership of these cattle to Friona.

89.     Superior Livestock is entitled to payment of the Superior-Friona Lot Proceeds interpled with this court in the amount of $776,109.96.

90.     Superior Livestock Lot 10630B contained 80 head of cattle (one died prior to the filing of Friona's Complaint, and Friona reports 79 live animals in Superior Lot 10630B, which Friona has renamed Friona Lot 22292).

91.     Superior Livestock purchased Superior Lot 10630B directly from the seller, J&J Cattle Co. of Bryan, Texas, and Superior Livestock sold this lot to Friona.

92.     The Debtor was not involved in Superior Livestock Lot 10630B.

93.     Friona owes Superior Livestock the proceeds of Superior Livestock Lot 10630B in the amount of $50,929.66 from funds Friona interpled.   This amount is included in the $776,109.96 amount that Superior Livestock, as owner of the cattle, is entitled to from the funds interpled by Friona.

        **ii.**        **The Superior-Cactus Lots**.

94.    On November 19, 2010, Cactus Growers Inc. ("Cactus") filed a complaint in Intervention in the Interpleader Action ("Cactus Complaint").

95.    On November 12, 2010, Cactus terminated all of its purchase contracts with the Debtor due to the Debtor's inability to deliver title to the cattle free of claims and interests.  *See* Cactus Termination Letter, attached as <u>Exhibit E</u>.

96.    Prior to the filing of the Involuntary Petition, Cactus purchased Lots from the Debtor, which were the subject of Superior Forward Contracts.

97.    At the time of the filing of the Cactus Complaint, Cactus interplead $1,767,599.37 into the registry of the U.S. District Court for the Western District of Texas, which represented the contractual price for the Lots purchased from the Debtor, less certain down payments previously made by Cactus.

98.    Superior Livestock owns the Lots set forth in <u>Exhibit F</u>, which are the subject of the Cactus Complaint ("Superior-Cactus Lots") and the proceeds therefrom in the amount of $1,238,447.01, which constitutes a part of the $1,767,599.37 that Cactus has interpled in this case ("Superior-Cactus Lot Proceeds").  *See* Table of Superior-Cactus Lots, attached as <u>Exhibit F</u>.

99.    Cactus identified seventeen (17) lots of cattle in the Cactus Complaint in which Superior Livestock is identified as a Claimant.  Thirteen (13) of those Lots and the proceeds therefrom are the same Superior-Cactus Lots and are subject to Superior Forward Contracts.

100.    Four (4) of the Superior-Cactus Lots set forth in <u>Exhibit F</u> (Lots numbered 10555, 10568, 10556, and 10671) are in no way connected with the Debtor ("Non-Debtor Lots").

101.    In total, the Superior-Cactus Lots contain approximately 1614 head of cattle (less past and continuing deads).  The corresponding amount of the Superior-Cactus Lot Proceeds that should be paid to Superior Livestock, as owner, is $1,238,447.01.

102.    With respect to all of the Superior-Cactus Lots at issue in this case (not including the Non-Debtor Lots), the Debtor was the high bidder at the Superior Livestock auction, and Forward Livestock Contracts were entered into by the Farmers and the Debtor for future delivery of the cattle to the Debtor.

103.    When the Debtor failed to pay Superior Livestock, Superior Livestock paid all of the Farmers and, as described in detail above, took ownership of the Lots which made up the Superior-Cactus Lots.

104.    Superior Livestock is the only party that can pass ownership of these cattle to Cactus.

105.    The Non-Debtor Lots, which consisted of 386 head of cattle, were actually purchased by Superior Livestock from the Sellers listed on Exhibit F, and sold to Cactus, without participation by the Debtor.

106.    The value of these four (4) Non-Debtor Lots is $317,270.34, which amount was also deposited into the Interpleader Action by Cactus.  Superior Livestock is entitled to the proceeds of the Non-Debtor Lots as well as the funds related to the thirteen Lots described above.

107.    Superior Livestock is entitled to payment of the Superior-Cactus Lot Proceeds interpled with this court in the amount of $1,238,447.01, including the $317,270.34 for the Non-Debtor Lots.

### iii.    The Superior-J&F Lots.

108.    On November 30, 2010, J&F Oklahoma Holdings, Inc. ("J&F") filed an Intervention and Complaint in the nature of Interpleader ("J&F Complaint").

109.    Prior to the filing of the Debtor's bankruptcy, J&F purchased Lots from the Debtor, which were the subject of Superior Forward Contracts.  At the time of the filing of the J&F Complaint, J&F interplead $2,560,839.06 into the registry of the U.S. District Court for the Northern District of Texas, which represented the contractual price for the cattle, less certain deductions.

110.    As noted above, Superior Livestock owns the Lots that are the subject of the J&F Complaint ("Superior-J&F Lots," that collectively with the Superior-Friona Lots and the Superior-Cactus Lots are hereinafter referred to as the "Interpleader Lots") and the proceeds therefrom in the amount of $639,030.65, which proceeds constitute a part of the $2,560,839.06 that J&F has interpled in this case.  *See* Table of Superior-J&F Lots, attached as Exhibit G.

111.    J&F identified at least eight (8) Lots in Exhibit A to J&F's Complaint in which Superior Livestock is identified as a Claimant.

112.    Those eight Lots and the proceeds therefrom are the same Superior-J&F Lots in which Superior has or had ownership of the underlying cattle and the proceeds thereof.

113.    In total, the Superior-J&F Lots contain approximately 881 head of cattle (less past and continuing deads).  The corresponding amount of Superior-J&F Lot Proceeds that should be paid to Superior Livestock, as owner, is $639,030.65.

114.    With respect to all of the Superior-J&F Lots at issue in this case, the Debtor was the high bidder at the Superior Livestock auction, and Forward Livestock Contracts were entered into by the Farmers and the Debtor for future delivery of the cattle to the Debtor or the Debtor's successor (in this case, J&F with respect to the Superior-J&F Lots).

115.    On March 28, 2011, Friona Industries LP filed a "Notice of the Removal and Referral of the Texas Interpleader Action to Bankruptcy Court" (Doc. No. 411) in the Debtor's bankruptcy case.

116.    Superior Livestock believes that the issues raised in the AP will resolve the issues raised in the Interpleader Action.

## **COUNT I**

117.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

118.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether Superior Livestock has sole ownership of the Superior Forward Contracts, Superior Forward Contract Proceeds, and underlying Lots (collectively, "Superior Property").

119.    A declaration of the rights and legal relations of the parties with respect to the Superior Property is required to clarify and settle the legal issues involved and, in particular, to affirm that Superior Livestock has sole ownership of the Superior Property.

120.    Resolution of this issue will provide certainty to the parties to this action.

121.    The Debtor has no ownership in the Superior Property as Superior Livestock had full ownership of the Superior Property prior to the Involuntary Petition.

122.    The Superior Property is not property of the Debtor's bankruptcy estate under 11 U.S.C. §541.

123.    The Debtor properly assigned the Superior Forward Contracts to Superior Livestock under the terms of the Superior Forward Contracts.

124.    The Debtor has no interest in the Superior Property because Superior Livestock properly terminated the Superior Forward Contracts under their terms.

125.    The Debtor has no interest in the Superior Property because Superior Livestock effectively cancelled and terminated the Superior Forward Contracts under Colorado law.

## COUNT II

126.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

127.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Forward Livestock Contracts constitute forward contracts as defined by 11 U.S.C. §101(25).

128.    A declaration of the rights and legal relations of the parties with respect to whether the Forward Livestock Contracts are "forward contracts" as defined in 11 U.S.C.

§101(25) of the Bankruptcy Code is required to clarify and settle legal issues involved between the Debtor and Superior Livestock.

129.    Resolution of this issue will provide certainty to the parties to this action.

130.    The Forward Livestock Contracts involve the sale of cattle, which are a commodity as defined by the Bankruptcy Code.

131.    The Forward Livestock Contracts have a maturity date of more than two days after the date of the livestock contracts were executed.

132.    The Forward Livestock Contracts are not commodity contracts as defined by 11 U.S.C. §761 as they are not contracts which are subject to the rules of a contract board of trade. The Forward Livestock Contracts are settled by physical delivery of the underlying Lots.

133.    The Forward Livestock Contracts constitute forward contracts for purposes of the Bankruptcy Code.

## **COUNT III**

134.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

135.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether Superior Livestock is a forward contract merchant as defined by 11 U.S.C. §101(26).

136.    A declaration of the rights and legal relations of the parties with respect to whether Superior Livestock is a forward contract merchant is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

137.    Resolution of this issue will provide certainty to the parties to this action.

138.    Superior Livestock is an entity that engages in the business of selling cattle at auction under forward contracts as defined by 11 U.S.C. §101(25).

139.    Cattle are a commodity as defined under 11 U.S.C. §761.

140.    Superior Livestock, in selling Lots through its auctions, enters into forward contracts, as defined by the Bankruptcy Code, as a merchant in a commodity.

141.    Superior Livestock, in selling Lots through its auctions, enters into forward contracts, as defined by the Bankruptcy Code, with merchants in a commodity.

142.    Superior Livestock is a forward contract merchant as defined by 11 U.S.C. §101(26).

## COUNT IV

143.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

144.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Forward Livestock Contracts constitute swap agreements for purposes of 11 U.S.C. §101(53B).

145.     A declaration of the rights and legal relations of the parties with respect to whether the Forward Livestock Contracts are swap agreements is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

146.     Resolution of this issue will provide certainty to the parties to this action.

147.     The Forward Livestock Contracts are forward agreements for the sale of commodities for purposes of 11 U.S.C. §101(53B).

148.     The Forward Livestock Contracts are swap agreements for purposes of the Bankruptcy Code.

## COUNT V

149.     Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

150.     A substantial and actual controversy exists between Superior Livestock and Debtor as to whether Superior Livestock is a swap participant for purposes of 11 U.S.C. §101(53C).

151.     A declaration of the rights and legal relations of the parties with respect to whether Superior Livestock is a swap participant is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

152.     Resolution of this issue will provide certainty to the parties to this action.

153.     The Forward Livestock Contracts constitute swap agreements as defined by the Bankruptcy Code.

23

154.    Superior Livestock is an entity which had outstanding swap agreements with the Debtor.

155.    Superior Livestock is a swap participant on each Forward Livestock Contract with the Debtor.

## COUNT VI

156.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

157.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the transfer made by the Debtor to Superior Livestock prior to bankruptcy were transfers to a forward contract merchant for purposes of 11 U.S.C. §546(e).

158.    A declaration of the rights and legal relations of the parties with respect to whether all transfers made by the Debtor to Superior Livestock prior to bankruptcy were transfers to a forward contract merchant is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

159.    Resolution of this issue will provide certainty to the parties to this action.

160.    All transfers made by the Debtor to Superior Livestock prior to bankruptcy were made in connection with the Forward Livestock Contracts.

161.    The Forward Livestock Contracts are forward contracts for purposes of the Bankruptcy Code.

162.    Superior Livestock is a forward contract merchant for purposes of the Bankruptcy Code.

163.    All transfers made by the Debtor to Superior Livestock were transfers in connection with forward contracts to a forward contract merchant.

## COUNT VII

164.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

165.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the transfers made by the Debtor to Superior Livestock prior to bankruptcy were settlement payments to a forward contract merchant for purposes of 11 U.S.C. §546(e).

166.    A declaration of the rights and legal relations of the parties with respect to whether all transfers made by the Debtor to Superior Livestock prior to bankruptcy were settlement payments made to a forward contract merchant is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

167.    Resolution of this issue will provide certainty to the parties to this action.

168.    All transfers made by the Debtor to Superior Livestock prior to bankruptcy were settlement payments of the Forward Livestock Contracts.

169.    The Forward Livestock Contracts are forward contracts for purposes of the Bankruptcy Code.

170.    Superior Livestock is a forward contract merchant for purposes of the Bankruptcy Code.

171.    All transfers made by the Debtor to Superior Livestock were settlement payments of forward contracts made to a forward contract merchant.

## COUNT VIII

172.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

173.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the transfers made by the Debtor to Superior Livestock were transfers made to a swap participant in connection with a swap agreement for purposes of 11 U.S.C. §546(g).

174.    A declaration of the rights and legal relations of the parties with respect to whether the Debtor's transfers to Superior Livestock were transfers made to a swap participant is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

175.    Resolution of this issue will provide certainty to the parties to this action.

176.    The Forward Livestock Contracts are swap agreements for purposes of the Bankruptcy Code.

177.    Superior Livestock is a swap participant on all Forward Livestock Contracts with the Debtor.

178.    All transfers made by the Debtor to Superior Livestock prior to the filing of the involuntary bankruptcy were made on the Forward Livestock Contracts.

179.    All transfers made by the Debtor to Superior Livestock prior to the bankruptcy were transfers made to a swap participant in connection with a swap agreement.

## COUNT IX

180.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

181.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a transfer to a forward contract merchant made in connection with forward contracts.

182.    A declaration of the rights and legal relations of the parties with respect to the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a transfer to a forward contract merchant made in connection with forward contracts is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

183.    Resolution of this issue will provide certainty to the parties to this action.

184.    The Debtor Assignment of the Superior Forward Contracts was a transfer made by the Debtor to Superior Livestock under the terms of the Superior Forward Contracts.

185.    Superior Livestock is a forward contract merchant for purposes of the Bankruptcy Code.

186.    The Superior Forward Contracts are Forward Livestock Contracts and forward contracts for purposes of the Bankruptcy Code.

187.    The Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a transfer to a forward contract merchant made in connection with forward contracts for purposes of 11 U.S.C. §546(e).

## COUNT X

188.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

189.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a settlement payment made to a forward contract merchant made in connection with forward contracts.

190.    A declaration of the rights and legal relations of the parties with respect to whether the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a settlement payment made to a forward contract merchant made in connection with forward contracts is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

191.    Resolution of this issue will provide certainty to the parties to this action.

192.    The Debtor Assignment of the Superior Forward Contracts was a settlement payment made by the Debtor to Superior Livestock under the terms of the Superior Forward Contracts.

193.     Superior Livestock is a forward contract merchant for purposes of the Bankruptcy Code.

194.     The Superior Forward Contracts are Forward Livestock Contracts and forward contracts for purposes of the Bankruptcy Code.

195.     The Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a settlement payment made to a forward contract merchant for purposes of 11 U.S.C. §546(e).

## COUNT XI

196.     Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

197.     A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Debtor Assignment of the Superior Forward Contracts was a transfer made to a swap participant made in connection with a swap agreement for purposes of 11 U.S.C. §546(g).

198.     A declaration of the rights and legal relations of the parties with respect to whether the Debtor Assignment of the Superior Forward Contracts was a transfer made to a swap participant made in connection with a swap agreement for purposes of 11 U.S.C. §546(g) is required to clarify and settle the legal issues involved between the Debtor and Superior Livestock.

199.     Resolution of this issue will provide certainty to the parties to this action.

200.    The Debtor Assignment of the Superior Forward Contracts to Superior Livestock were made pursuant to the terms of the Superior Forward Contracts.

201.    The Superior Forward Contracts were swap agreements for purposes of the Bankruptcy Code.

202.    Superior Livestock is a swap participant under the Superior Forward Contracts.

203.    The Debtor's assignment of the Superior Forward Contracts to Superior Livestock were made to a swap participant in connection with a swap agreement for purposes of 11 U.S.C. §546(g).

## COUNT XII

204.    Superior Livestock incorporates by reference all of the preceding paragraphs of this Complaint as through fully set forth herein.

205.    A substantial and actual controversy exists between Superior Livestock and Debtor as to whether the Termination Notice given by Superior Livestock to the Debtor was the termination of a forward contract because of a condition of the kind specified in 11 U.S.C. § 365(e)(1) for purposes of 11 U.S.C. §556.

206.    A declaration of the rights and legal relations of the parties with respect to whether the Termination Notice given by Superior Livestock to the Debtor was the termination of a forward contract because of a condition of the kind specified in 11 U.S.C. § 365(e)(1) for purposes of 11 U.S.C. §556.

207.    Resolution of this issue will provide certainty to the parties to this action.

208.    All transfers made by the Debtor to Superior Livestock prior to bankruptcy were made in connection with the Forward Livestock Contracts.

209.    The Forward Livestock Contracts are forward contracts for purposes of the Bankruptcy Code.

210.    Superior Livestock is a forward contract merchant for purposes of the Bankruptcy Code.

211.    Under the terms of the Forward Livestock Contracts, Superior Livestock has the right to terminate the Forward Livestock Contracts due to the insolvency of the Buyer.

212.    Superior Livestock terminated all of the Superior Forward Contracts which are all Forward Livestock Contracts, due to the insolvency of the Debtor.

213.    Insolvency of a Debtor is a "condition of the kind specified in [11 U.S.C. §365(e)(i)]" for purposes of 11 U.S.C. § 556.

214.    Superior Livestock also terminated all of the Superior Forward Contracts for Debtor defaults other than insolvency of the Debtor, under the Superior Forward Contracts.

WHEREFORE, Superior Livestock requests that the following relief be granted in this Adversary Proceeding:

A.    As to Count I, entry of a Final Order finding and ruling that the Superior Property is the sole property of Superior Livestock and that the Debtor has no interest in the Superior Property.

B.      As to Count II, entry of a Final Order finding and ruling that all Forward Livestock Contracts, including but not limited to, the Superior Forward Contracts, are forward contracts as defined by 11 U.S.C. § 101(25).

C.      As to Count III, entry of a Final Order finding and ruling that Superior Livestock is a forward contract merchant as defined by 11 U.S.C. § 101(26).

D.      As to Count IV, entry of a Final Order finding and ruling that the Forward Livestock Contracts, including but not limited to, the Superior Forward Contracts, are swap agreements as defined by 11 U.S.C. § 101(53B).

E.      As to Count V, entry of a Final Order finding and ruling that Superior Livestock is a swap participant as defined by 11 U.S.C. § 101(53C).

F.      As to Count VI, entry of a Final Order finding and ruling that all Pre-Bankruptcy Transfers were transfers made in connection with a forward contract merchant for purposes of 11 U.S.C. § 546(e).

G.      As to Count VII, entry of a Final Order finding and ruling that all Pre-Bankruptcy Transfers were settlement payments made to a forward contract merchant for purposes of 11 U.S.C. § 546(e).

H.      As to Count VIII, entry of a Final Order finding and ruling that all Pre-Bankruptcy Transfers were transfers made to a swap participant for purposes of 11 U.S.C. § 546(g).

I.      As to Count IX, entry of a Final Order finding and ruling that the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a transfer to a forward

contract merchant, made in connection with forward contracts for purposes of 11 U.S.C. § 546(e).

J.      As to Count X, entry of a Final Order finding and ruling that the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a settlement payment made to a forward contract merchant made in connection with forward contracts for purposes of 11 U.S.C. §546(e).

K.      As to Count XI, entry of a Final Order finding and ruling that the Debtor Assignment of the Superior Forward Contracts to Superior Livestock was a transfer made to a swap participant made in connection with a swap agreement for purposes of 11 U.S.C. §546(g).

L.      As to Count XII, entry of a Final Order finding and ruling that the Termination Notice given by Superior Livestock to the Debtor as to the Superior Forward Contracts was the termination of forward contracts because of a condition of the kind specified in 11 U.S.C. § 365(e)(1) for purposes of 11 U.S.C. §556.

M.      As to the Complaint, the entry of a Final Order granting any further relief that the Court deems just and proper under the circumstances.

Respectfully submitted,


*/s/ John W. Ames.*
John W. Ames
C.R. Bowles, Jr.
Ivana B. Shallcross
GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40402
Phone: 502-587-3746
Facsimile: 502-540-2274
e-mail:

COUNSEL FOR SUPERIOR LIVESTOCK
AUCTION, INC.

4313923_5.doc