UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | (Judge Basil H. Lorch III) |
| | ) | |
| Debtor. | ) | **THE FIRST BANK AND TRUST** |
| | ) | **COMPANY'S OBJECTION TO** |
| | ) | **MOTION FOR PROTECTIVE** |
| | ) | **ORDER** _____ |
| | ) | |

I.    <u>INTRODUCTION</u>

1.      The instant "emergency" motion for a protective order [Doc. 447] is the latest

effort of the Three Major Feedlots[1] to sidestep producing highly relevant data, and potentially

documents, relating to millions of dollars of assets that went missing from these bankruptcy

estates.  They continue to treat legitimate discovery as a "sporting contest or a test of wills,"

which is "particularly (inappropriate) in a bankruptcy case."  <u>In re Spoonemore</u>, 370 B.R. 833,

844 (Bankr. D. Kan. 2007).  Despite the uncontroverted fact that these feedyards were a primary

source of cattle finishing for Eastern Livestock, Thomas Gibson, and his family members for

decades, they seek to conceal from this Court perhaps the most relevant information obtainable

in discovery:  who placed the Gibson and Eastern Livestock cattle on feed after the collapse of

the world's largest dealer.

2.      In the effort to conceal this information, the Three Major Feedlots have sought

complete protection from any subpoena for the following reasons:

_____

[1] Cactus Growers, Inc., Friona Industries, L.P., and J&F Oklahoma Holdings, Inc.

- The scope of the request is too broad and, therefore, unduly burdensome;

- First Bank has no nexus between the Gibson family cattle and these feedyards;

- First Bank is moving backwards in its efforts to track cattle as the requested data will likely involve cattle unrelated to Eastern Livestock or the Gibsons; and,

- Confidential information can never be revealed in discovery;

As shown below, each of these reasons fails, and given the millions of dollars in assets involved, the proposed comprehensive protective order offered by First Bank, Trustee Pry, and Intrust Bank adequately addresses all confidentiality concerns.

II.    THE SCOPE OF DISCOVERY IS ONLY SO BROAD AS TO ENSURE THE THREE MAJOR FEEDLOTS WILL IDENTIFY THE ASSETS

3.    The scope of the request and the phased discovery plan is only so broad as to assure that the Trustee and the creditors will find as many assets as possible from these feedyards.  Counsel for the feedyards has previously stated that it would be "idiotic" for persons to purchase cattle directly from the Gibson family members after the collapse of Eastern Livestock.  Perhaps nothing could be more true.  Therefore, it only stands to reason that if the Gibson family members are still raising and feeding cattle, then they are doing so under new names, from disguised locations, and placing the cattle directly on feed rather than selling to a feedyard or auction house.  Thus, the Three Major Feedlots fully understand, the offer to produce computer records and allow document inspections of cattle "purchased" by the feedyards after October 2010, will likely yield little, if any, information as to the Debtors' assets.

4.    The Three Major Feedlots continue to conflate the simple request for a computer-generated comprehensive report with the request for lot files or other data.  In order to develop any information to identify any of the missing assets of these Debtors, the Three Major Feedlots must produce the Phase 1 request in its entirety.  To the extent Phase 2 requests are

more than anticipated, then First Bank has no objection to the Three Major Feedlots reserving rights to object, within the reasonableness and good faith bounds of Fed. R. Civ. P. 26, to this second round.

5.     The Three Major Feedlots are focusing obsessively on the 8000 head of missing cattle previously identified in the affidavit of First Bank lending officer Gene Copenhaver.  Although at market level, this represents tens of millions of dollars in assets, it may be the tip of the iceberg for these bankruptcies.  To be sure, First Bank's purchase money security interest in 8000 head of cattle that were documented in October and then no longer part of the Gibson assets as of the petition date, is First Bank's primary interest.  The millions of dollars of assets of the billion-dollar Eastern Livestock and its bankrupt leader Thomas Gibson, however, warrant robust discovery efforts particularly from those in the industry well-known to have routinely transacted business with them.

III.    THE CONNECTION BETWEEN THE THREE MAJOR FEEDLOTS AND THE GIBSONS RUNS DEEP

6.     The suggestion that First Bank has targeted only these feedyards because they are "handy" misses the forest through the trees.  First Bank has, in fact, sought similar discovery from several other feedyards and, quite curiously, only these three who routinely did a great volume of business with the Gibsons have resisted such efforts.  First Bank has specifically tied over one half-million dollars of cattle to the Three Major Feedlots in just the small window of time Eastern Livestock's accounts were frozen before the receivership; this information came from documents produced as part of the Interpleader action.  The Three Major Feedlots have never contested, nor can they contest, that they did "business as usual" with the final finishing and kill plants (slaughter houses) despite the world's largest broker ceasing all of its operations. With the long history of business, the significant movement of cattle to these locations in just a

few days in early November, and the continued supply from pasture to feed to slaughter, there is more than enough nexus to have the Three Major Feedlots answer for their actions.

7.    Recently produced information provides an even deeper, more curious insight into the relationship.  As documented in the Reply Brief to the Three Major Feedlots' Objection to the Rule 2004 Examination and the Copenhaver Affidavit filed therewith, documents produced by Trustee Knauer show several shipments of cattle to the Three Major Feedlots for which the truckers and haulers received instructions from an unidentified source to change the name reported for the origin location.  In each of the instances where the truckers and haulers were given instructions to "say" or "write down" a location other than a known Thomas Gibson farm, the destination was one of the Three Major Feedlots.  This request is not, therefore, a blunderbuss attack on the only available "handy" target.  Rather, the only feedyards who have waged this war of obstreperous resistance are the ones directly tied to unusual transactions.

8.    Perhaps the Three Major Feedlots are correct that discovery directed at them, involving the final months of the life cycle of fed cattle, is retracing the steps from the end. It is no secret, however, that Trustee Knauer has found the record keeping at the beginning of the process to be incomplete and even misleading.  There are, however, two certainties:  all parties know that cattle assets went to feed and then slaughter and significant cattle assets that all parties expected to be part of these proceedings were not among the scheduled assets reported to the Court and creditors.  Thus, sometimes starting at the end of the maze is the most direct way to find the beginning.

IV.    SIMPLY CLAIMING INFORMATION IS CONFIDENTIAL DOES NOT SERVE TO COMPLETELY SHIELD IT FROM DISCOVERY

9.    The sheer fact that the computer-generated reports will disclose some percentage of "legitimate" transactions should not be a shield to conceal even the potential of other

transactions.  The computer reports are not burdensome.  The vast majority of legitimate

transactions will not be part of any additional phase.   And, the comprehensive protective order

proposed by a non-competitor, will not risk the innocent involvement of legitimate confidential

customers who certainly have due process rights.

10.     The suggestion that information that is "allegedly" confidential or proprietary can

never be subject to discovery in a federal action deserves short shrift.  First, the requesting

parties, who are not competitors, have taken at face value the concept that the Three Major

Feedlots have proprietary information that gives them a competitive advantage and that they

have taken adequate measures to protect it.  But, it only stands to reason that the disclosure in a

computer report of the name of John Doe Cattle Ranch who has 1100 head on feed that weighed

X and came from pasture Y, is hardly the equivalent of revealing the 11 secret herbs and spices

YUM Brands guards so carefully for its fried chicken.  Second, the comprehensive protective

order, proposed by First Bank, Trustee Pry, and Intrust Bank, gives careful regard to the alleged

proprietary nature of the information and risks nothing for the Three Major Feedlots.

11.     The extensive and costly efforts to which the Three Major Feedlots have gone to

prevent the disclosure of valuable information in a computer report (as opposed to the marginal

value "purchased cattle") belies any notion that the entry of keystrokes into a data server is of

such great burden and risk that it should not be permitted in federal court.

Respectfully submitted,


/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email:  ddonnellon@ficlaw.com

Attorneys for The First Bank and Trust
Company

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2011, a true and correct copy of the foregoing The First

Bank and Trust Company's Objection to Motion for Protective Order was filed electronically.

Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System.

Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

C. R. Bowles, Jr
crb@gdm.com

John Hunt Lovell
john@lovell-law.net

Mark A. Robinson
mrobinson@vhrlaw.com

Jesse Cook-Dubin
jcookdubin@vorys.com

Edward M King
tking@fbtlaw.com

Randall D. LaTour
rdlatour@vorys.com

John Frederick Massouh
john.massouh@sprouselaw.com

John W. Ames
jwa@gdm.com

James M. Carr
jim.carr@bakerd.com

Robert K. Stanley
robert.stanley@bakerd.com

Terry E. Hall
terry.hall@bakerd.com

Robert Hughes Foree
robertforee@bellsouth.net

Kim Martin Lewis
kim.lewis@dinslaw.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Ivana B. Shallcross
ibs@gdm.com

Deborah Caruso
dcaruso@daleeke.com

Meredith R. Thomas
mthomas@daleeke.com

William Robert Meyer, II
rmeyer@stites.com

Allen Morris
amorris@stites.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

James Bryan Johnston
bjtexas59@hotmail.com

James T. Young
james@rubin-levin.net

David L. LeBas
dlebas@namanhowell.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John M. Thompson

john.thompson@crowedunlevy.com

Jessica E. Yates
jyates@swlaw.com

John Huffaker
john.huffaker@sprouselaw.com

Matthew J. Ochs
matt.ochs@moyewhite.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Kelly Greene McConnell
lisahughes@givenspursley.com

T. Kent Barber
kbarber@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Jeffrey E. Ramsey
jramsey@hopperblackwell.com

Walter Scott Newbern
wsnewbern@msn.com

Kirk Crutcher
kcrutcher@mcs-law.com

Todd J. Johnston
tjohnston@mcjllp.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Karen L. Lobring
lobring@msn.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

Lisa Koch Bryant
courtmail@fbhlaw.net

Elliott D. Levin

robin@rubin-levin.net
edl@trustesolutions.com
John M. Rogers
johnr@rubin-levin.net

Cathy S. Pike
cpike@weberandrose.com

John David Hoover
jdhoover@hooverhull.com

Sean T. White
swhite@hooverhull.com

Robert H. Foree
robertforee@bellsouth.net

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Michael W. McClain
mike@kentuckytrial.com

David A. Domina
ddomina@dominalaw.com

/s/ Daniel J. Donnellon
Daniel J. Donnellon