IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 10-93904-BHL-11 |
| ) | |
| EASTERN LIVESTOCK CO., LLC ) | |
| ) | |
| ) | Chapter 11 |
| ) | |
| **Debtor** ) | |
| ) | |

**RESPONSE TO THE LIMITED OBJECTION TO REQUEST OF
GREENEBAUM DOLL & MCDONALD PLLC FOR PAYMENT OF FEES
AND EXPENSES PURSUANT TO 11 USC §§ 503(B)(3)(A) AND 503(B)(4)
AND RULE 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Greenebaum Doll & McDonald PLLC ("Greenebaum"), in its capacity as counsel for the creditors ("Petitioning Creditors") who filed an involuntary bankruptcy petition (the "Involuntary Petition") that resulted in the commencement of the above-referenced Debtor's bankruptcy case, hereby submits its response (the "Response") to the limited objection of the Trustee (Doc. No. 483) (the "Limited Objection") to the Request of Greenebaum Doll & McDonald PLLC for payment of fees and reimbursement of expenses (the "Petitioning Fees and Expenses") pursuant to 11 U.S.C. 503(b)(3)(A) and 503(b)(4) (Doc. No. 413) (the "Request"), which were incurred by Greenebaum for services rendered in connection with the preparation, filing and prosecution of the Involuntary Petition, the joinders to Involuntary Petition by additional creditors (the "Joinder Motions"), the motion to permit the State Court Receiver to administer Debtor's property (Doc. No. 11) (the "Receiver Motion") and the motion for appointment of a trustee (Doc. No. 27) (the "Trustee Motion"). In support of the Response, Greenebaum respectfully states as follows:

1

## BACKGROUND

1. The facts surrounding the involuntary Chapter 11 petition, the Receiver Motion and Trustee Motion filed by Greenebaum were extensively detailed in the Request and were not challenged in any way by the Trustee's Limited Objection and are incorporated herein by reference.

2. On May 6, 2011, the Trustee filed his Limited Objection which only raised two issues: (a) an objection to Greenebaum's request that its fees be paid within 14 days from the entry of the Order approving the Request; and (b) that the Court determine whether any of Greenebaum's requested fees and expenses were "duplicative" of services rendered by Dinsmore & Shohl, LLP, who were counsel to the State Court Receiver who was designated custodian of the Debtor's assets prior to the appointment of the Trustee in this case under the Receiver Order.

3. The Trustee, in Limited Objection, does not allege that any of Greenebaum's requested fees were not reasonable or duplicative of the Dinsmore & Shohl, LLP fees, but instead merely request that the Court exercise its duty to independently examine the reasonableness of fee requests. See e.g., Kenneth Leventhal & C.V. Spurgeon Holding Corp., 152 B.R. 511 (N.D. Ill. 1993).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a)(b)(1) and 1334(b) and the standing order of reference of the United States District Court for the Southern District of Indiana, dated July 11, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

2

**ARGUMENT**

5.     Pursuant to 11 USC §503(b)(4) and Rule 2016 of the Federal Rules of Bankruptcy Procedure, Greenebaum respectfully requests allowance and payment of the Petitioning Fees and Expenses as an administrative expense of the bankruptcy estate.  As the Petitioning Fees and Expenses represent the actual, reasonable and necessary professional services rendered, and expenses incurred, by Greenebaum from December 1, 2010, when Greenebaum commenced preparing the Involuntary Petition, through December 28, 2010, when the order of relief was entered in the Debtor's case, as well as for services rendered from March 2, 2011 through March 28, 2011 in connection with the drafting and preparation of the Request, the Court should classify the Petitioning Fees and Expenses as administrative expenses to be paid from the Debtor's bankruptcy estate.

**Applicable Standards**

6.     Section 503(b)(4) of the Bankruptcy Code allows a Petitioning Creditor's counsel, such as Greenebaum in this case, to recover, as administrative expenses, its fees spent in preparing and filing an involuntary petition.  *See In re Indian Motorcycle Apparel and Accessories Co.*, 174 B.R. 659, 662 (Bankr. D. Mass. 1994) (Section 503(b)(4) allows, as administrative expenses, a Petitioning Creditor's counsel's fees for preparing and filing the involuntary petition, contacting other potential Petitioning Creditors, researching the legal and factual basis for filing the case, and any litigation surrounding the entry of the order for relief); *see also In re Matter of Baldwin-United Corp., D. H.*, 79 B.R. 321, 337 (Bankr. S.D. Ohio 1987) (expenses and attorney fees arising from reasonable amount of research and investigation prior to preparing and filing involuntary petition were allowable under 11 U.S.C. §503(b)(4)).

7. 11 U.S.C. §503(b)(4) provides:

**(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

**(4)** reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

8. Therefore, Section 503(b)(4), by allowing the recovery of these fees and expenses, serves as an incentive for Petitioning Creditors to bring distressed debtors under the protection of the bankruptcy court in order to equitably distribute the debtors' assets. *See In re Hanson Industries, Inc.,* 90 B.R. 405, 410 (Bankr. D. Minn. 1988).

9. Although the cut off date for administrative expenses relating to filing of an involuntary bankruptcy petition bankruptcy is generally the date of the entry of the order for relief, *Indian Motorcycle Apparel and Accessories Co.*, 174 B.R. at 663, bankruptcy courts have construed Section 504(b)(4) to also allow counsel to recover fees incurred in preparing a fee application, *In re Nucorp Energy*, 764 F.2d 655, 657 (9th Cir. 1985) (time preparing a fee application is compensable under §503(b)(4)); *see also In re Wind N' Wave*, 509 F.3d 938, 945 (9th Cir. 2007).

10. All claimants under §503(b) have the burden of establishing their entitlement to an award by the preponderance of the evidence and awards are paid from a debtor's bankruptcy estate when a "commensurable benefit to the estate" is provided. *In re Stoecker*, 128 B.R. 205, 208, 210 (Bankr. N.D. Ill. 1991) (creditor was entitled to payment of attorney fees, as

4

administrative expense of the estate, upon showing that creditor's counsel had made substantial contribution in case concerning preparation and filing of involuntary petition and appointment of trustee).

11. The administrative claim amounts sought under Section 503(b)(4) are subject to a reasonableness review mirroring that of 11 U.S.C. §330. *Stoecker*, 128 B.R. at 209. *See also In re Key Auto Liquidation Center, Inc.*, 348 B.R. 599, 605-606 (Bankr. N.D. Fla. 2008). In fact, as observed by the *Stoecker* court:

> [T]o the extent that a creditor under section 503(b)(3)(A) is entitled to the recovery of the actual, necessary expenses incident to the filing of an involuntary petition under section 303, it follows that the professional services contemplated by section 503(b)(4) would be those leading to the entry of an order for relief in a liquidation case under chapter 7 or in the success of a reorganization case begun as an involuntary case under chapter 11. (footnote omitted). It is important to observe the integration in section 503(b)(4) of the standards of section 330(a)(1) applicable to professional services rendered to the trustee and for which compensation is sought. (footnote omitted). The legislative comments to section 330 are surely applicable here. (footnote omitted).

*Stoecker*, 128 B.R. at 209 (Bankr. N.D. Ill. 1991) (*quoting* 3 Collier on Bankruptcy, ¶ 503.04[4] at 503–51 (15th ed. 1991)).

12. Section 330(a)(1) authorizes a bankruptcy court to award to professionals who render services to a debtor's estate 'reasonable compensation for actual, necessary services rendered…based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services…' *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995)(*citing* 11 U.S.C. §330(a)(1)).

5

13. To determine reasonable compensation of bankruptcy professionals, bankruptcy court calculates "lodestar" by multiplying reasonable hourly rate times hours reasonably spent. *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 976 (Bankr. N.D. Ind. 1993). This method is commonly known as the "lodestar" method. Attorney's customary billing practices are presumptively correct for purposes of determining compensation. *Id.*

**Greenebaum's Services in This Case**

14. Unlike other involuntary bankruptcies, Greenebaum could not, on behalf of the Petitioning Creditors, merely file an involuntary petition and request appointment of a Trustee in order to properly represent its client's interest.

15. Here, Greenebaum had to: (a) place the Debtor into an involuntary bankruptcy to ensure a proper and orderly distribution of the Debtor's assets; (b) have the Court appoint a party to control the Debtor's operations in the gap period between the filing of the involuntary and the appointment of a trustee; (c) have the Court approve the controlling party's powers until a trustee was appointed, and (d) work to have a trustee appointed in light of the serious issues with management.

16. This matter posed very complex issues of fact and law and demanded substantial time from Greenebaum's attorneys. In addition, due to the fluid nature of the cattle industry and the urgency of preserving assets of the Debtor, including cattle which the Debtor contracted, Greenebaum was under an incredible time pressure to file the Involuntary Petition and the accompanying motions to ensure that the literally perishable property of the Debtor was not lost, stolen or died.

17.     As a receivership was in place under the Ohio Litigation, Greenebaum, on behalf of the Petitioning Creditors, worked extensively with the state court receiver, and her counsel both on transition issues and issues related to the continued appropriate control and liquidation of the Debtor's assets.  Under 11 U.S.C. §543(a) provisions, the State Court Receiver's powers were extremely limited and without the Receiver Order, it is likely numerous state assets could have been lost.  Both Greenebaum and Dinsmore carefully worked to prevent needless duplication of effort.[1]

18.     Greenebaum also discussed the Involuntary Petition, and the issues related to it, with the Office of the United States Trustee.  As noted in the Request, pre-bankruptcy management of the Debtor had "left the building" and unless a Trustee or a custodian could be appointed, the Debtor and its thousands of cattle would have been powerless to act.  These discussions focused on the ability of the U.S. Trustee to appoint and interim trustee for the Debtor and the timing of such an appointment and due to the timing issues on the appointment of a Trustee lead to the emergency Receiver Motion.

19.     Based on its work with the Receiver and the United States Trustee, Greenebaum performed extensive factual and legal diligence in connection with both the Receiver Motion and the Trustee Motion.  Specifically, Greenebaum had a very short window to familiarize itself with the multifaceted intricacies of the cattle industry and to examine the complex relationships between the various participants in the trade, such as dealers, packers and producers.

---

[1] The Trustee did not object to receiver and receiver counsel's fees on duplicative grounds.

7

20. The most difficult of the initial pleadings was the Receiver Motion. When Greenebaum was preparing the Involuntary Petition, Greenebaum discussed the possibility that the Receiver could be appointed, on a temporary basis as an interim trustee and if that could not be done, the time period for appointing a trustee. After determining that the trustee selection would take several weeks, Greenebaum and the Petitioning Creditors determined that another legal mechanism was needed to ensure the cattle and Debtor's assets were properly maintained. Therefore, Greenebaum "invented" the Receiver Motion to allow the Receiver to continue to oversee the Debtor's assets and ensure that the cattle in the Debtor's care were properly cared for under a procedure that was appropriate under the Bankruptcy Code. The Receiver Motion, which allowed the state court receiver to oversee the Debtor's operations in bankruptcy under the control of the Bankruptcy Court until a trustee could be appointed, was an unusual and rare motion that presented complex issues of law and sought novel requests for relief.

21. Greenebaum also drafted the Trustee Motion as well as the declarations and other pleadings in support thereof, and prepared voluminous exhibits that were submitted in support of this motion. This motion was critical for the proper operation of the Debtor under the Bankruptcy Code and ultimately lead to James Knauer being appointed the Trustee and the Receiver being retained by the Trustee as the estate's financial professional.

22. The fees and expenses incurred by Greenebaum were necessary and reasonable not duplicative of the State Court Receiver's fees. In the short period preceding the filing of the Involuntary Petition and the extensive litigation and work that followed, Greenebaum was required to familiarize itself with the very complex nature of the cattle industry the Debtor's extensive fraud and the business relationship between the Debtor and the Petitioning Creditors,

8

as well as prepare and defend the Receiver Motion and the Trustee Motion, which eventually led to the appointment of the Trustee and preservation of Debtor's assets.

**Greenebaum is entitled to Immediate Payment**

23.     The only other issue the Trustee raises is that Greenebaum "should be paid at the same time and on the same terms as other allowed administrative expense claims in the Chapter 11 case." Greenebaum agrees with this position which supports Greenebaum's immediate payment of its allowed fees.

24.     On February 9, 2011, the Trustee moved to pay the administrative expense claims of the State Court Receiver and her counsel Dinsmore and Shohl from assets of the Debtor ("Receiver Administrative Expense Motion").

25.     On March 11, 2011, the Receiver Administrative Expense Motion was approved by the Court and the Trustee was authorized to pay the State Court Receiver and Dinsmore and Shohl immediately (Doc. No. 399).

26.     Although courts have discretion over when administrative expenses are to be paid by the Debtor, in this case, as the Debtor has already begun making payments to professionals which have filed and had approved administrative expense application. Therefore, despite the Trustee's stated, but unverified, concerns about potential administrative insolvency of the Debtor, in light of his payment of other professional administrative expense claims, as well as apparently all other administrative expense claims, Greenebaum respectfully requests that its fees be paid as other professionals' claims have already been paid.

9

27. Accordingly, Greenebaum respectfully requests the Court to overrule the Objection and grant the Request.

## CONCLUSION

WHEREFORE, for the reason set forth above, Greenebaum respectfully request that this Court enter an order, substantially in the form attached as Exhibit B to the Request: (1) overruling the Limited Objection in its entirety; (2) granting the Request, (3) allowing the Petitioning Fees and Expenses as administrative expenses; (4) directing the Debtor to pay the Petitioning Fees and Expenses in full to Greenebaum; and (5) granting any further relief it deems just and appropriate.

Respectfully submitted,

/s/ C.R. Bowles, Jr.
John W. Ames
C.R. Bowles, Jr.
Ivana B. Shallcross
GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40402
Phone: 502-587-3746
Facsimile: 502-540-2274
E-mail: crb@gdm.com

10

**CERTIFICATE OF SERVICE**

  This is to certify that on May 10, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System, parties may access this filing through the Court's system.

Charles R. Wharton
Office of U.S. Trustee
101 W. Ohio Street, Suite 1000
Indianapolis IN 46204
Charles.R.Wharton@usdoj.gov

Kim Martin Lewis
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati OH 45202
(513) 977-8259
Fax (513) 977-8141
Kim.lewis@dinslaw.com

Elizabeth M. Lynch
Development Specialists, Inc.
6375 Riverside Drive, Suite 200
Dublin, OH 43017-5045
Cell (216) 401-5642
Office (614) 734-2717
Fax (614) 734-2718
elynch@dsi.biz

Randall D. LaTour
Vorys, Sater, Seymour and Pease, LLP
Suite 2000, Atrium Two
221 East Fourth Street
Cincinnati, OH 45202
RDLlTour@vorys.com

Southeast Livestock Exchange, LLC
Attn: John M. Queen, III
PO Box 1306
Waynesville, NC 28786
(828) 454-0267
Fax (828) 454-0268
selex@bellsouth.net

Moseley Cattle Auction LLC
Attn: John F. Moseley, III
1044 Arlington Avenue
Blakely GA 39823
(229) 308-6355
Fax (888) 461-7919
cmoseley@swgafarmcredit.com

David L. Rings
1288 Frontage Road
Russell Springs, KY 42642
(270) 585-1824
bonnierings@spsfence.com

Jeffrey T. Wegner
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha NE 68102
(402) 346-6000
Jeffrey.Wegner@KutakRock.com

Jessee Cook-Dubin  
Vorys, Sater, Seymour and Pease LLP  
PO Box 1008  
52 Gray Street  
Columbus, OH 43216-1008  
(614) 464-6498  
Fax (614) 719-4752  
jcookdubin@vorys.com  

Counsel for Fifth Third Bank  

Richard A. Schwartz  
Kruger & Schwartz  
3339 Taylorsville Road  
Louisville, KY 40205  
(502) 485-9220  
ecfmailschwartz@gmail.com  

Counsel for Thomas & Patsy Gibson  

Eastern Livestock Co., LLC  
135 West Market Street  
New Albany, IN 47150  
(800) 634-2529  
Fax (812) 949-9060  
contact@easternlivestock.net  

Mark A. Rondeau  
Watkins Calcara, CHTD  
1321 Main – Suite 300  
P.O. Drawer 1110  
Great Bend Kansas 67530  
(620) 792-8231  
Fax (602) 792-8231  
mrondeau@wcrf.com  

Counsel for Innovative Livestock Services, Inc.  

John O'Brien  
Jessica E. Yates  
1200 17th Street, Suite 1900  
Denver, CO 80202  
(303) 634-2000  
Fax (303) 634-2020  
jobrien@swlaw.com  
jyates@swlaw.com  

Counsel for Fredin Brothers, Inc.  

David L. Abt  
ABT Law Office  
210 North Main Street, PO Box 128  
Westby, WI 54667  
(608) 634-2157  
Fax (608) 634-2159  
davidabt@mwt.net  

Counsel for Rush Creek Ranch, LLP  

John H. Lovell  
Courtney D. Miller  
Lovell, Lovell, Newsom & Isern, L.L.P.  
112 West 8th Avenue, Suite 1000  
Amarillo, TX 79101-2314  
(806) 373-1515  
Fax (806) 379-7176  
john@lovell-law.net  
Courtney@lovell-law.net  

Counsel for Cactus Growers, Inc.  

Bret S. Clement  
Ayres Carr & Sullivan, P.C.  
251 East Ohio Street, Suite 500  
Indianapolis, IN 46204  
(317) 636-3471  
Fax (317) 636-6575  
bclement@acs-law.com  

Counsel for First Bank & Trust Co.

| | |
|---|---|
| John R. Carr III<br>Ayres Carr & Sullivan, P.C.<br>251 East Ohio Street, Suite 500<br>Indianapolis, IN  46204-2184<br>(317) 636-3471<br>Fax (317) 636-6575<br>jrciii@acs-law.com<br><br>Counsel for First Bank & Trust Co. | Trustee<br>Kathryn L Pry<br>P O Box 6771<br>New Albany, IN 47151<br>812-944-2646<br>Email: kpry.trustee@insightbb.com |

                                                    */s/ C.R. Bowles, Jr.*

4377178_1.doc