### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF INDIANA - NEW ALBANY

==============================

IN THE MATTER OF:          .   Case #10-93904-BHL-11

                              .

EASTERN LIVESTOCK CO., LLC   .   New Albany, Indiana

                              .   **May 11, 2011**

                Debtor    .

==============================

### TRANSCRIPT OF TELEPHONIC HEARING RE:
**(#413)   APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO §503 FOR GREENEBAUM, DOLL & McDONALD, PLLC IN THE AMOUNT OF $77,841.76; (#483) OBJECTION THERETO BY TRUSTEE KNAUER; (#487) RESPONSE TO [#483] BY GREENEBAUM, DOLL & McDONALD; CONTINUED FINAL HEARING ON: (#317) CORRECTED MOTION TO ABANDON, CORRECTED MOTION FOR RELIEF FROM STAY (REFUSAL TO WAIVE TIME REQUIREMENT FILED PREVIOUSLY) FILED BY CREDITOR PEOPLES BANK & TRUST COMPANY, PICKETT COUNTY; (#334) OBJECTION THERETO BY TRUSTEE KNAUER; (#337) RESPONSE IN SUPPORT OF [#334] BY PROFESSIONAL KATHRYN PRY; (#454) SUPPLEMENTAL OBJECTION TO [#317] BY TRUSTEE KNAUER; (#473)   MOTION TO EXTEND TIME TO FILE THE GIBSON TRUSTEE'S PURCHASE MONEY CLAIMS FILED BY PROFESSIONAL KATHRYN PRY; BEFORE THE HONORABLE BASIL H.  LORCH, III, J.U.S.B.C.**

**APPEARANCES:**

For Petitioning Creditors, Moseley Cattle     JOHN W. AMES, ESQ.
Auction, Moseley Cattle Auction, et al:     C.R. "CHIP" BOWLES, ESQ.
For Greenebaum, Doll & McDonald:     CHRISTIE A. MOORE, ESQ.
                                     Greenebaum, Doll & McDonald,  PLLC
                                     101 S. 5th Street   #3500 National City Tower
                                     Louisville, KY  40202
                                     -------------continued----------->

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service

### GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

**APPEARANCES: (continued)**

Chapter 11 Trustee:                    JAMES A. KNAUER, ESQ.
                                       Kroger Gardis & Regas, LLP
                                       111 Monument Circle, Suite 900
                                       Indianapolis, IN 46204

For the Chapter 11 Trustee:            ROBERT K. STANLEY, ESQ.
                                       KEVIN TONER, ESQ.
                                       TERRY HALL, ESQ.   *(Via phone)*
                                       Baker & Daniels, LLP
                                       300 North Meridian   Suite 2700
                                       Indianapolis, IN 46204

For the U.S. Trustee:                  CHARLES R. WHARTON, AUST *(Via phone)*
                                       Office of the U.S. Trustee
                                       101 W. Ohio Street    Suite 1000
                                       Indianapolis, IN   46204

For First Bank & Trust Company:        DANIEL J. DONNELLON, ESQ. *(Via phone)*
                                       Faruki, Ireland & Cox, PLL
                                       201 East Fifth Street   Suite 1420
                                       Cincinnati, OH 45202

                                       BRET S. CLEMENT, ESQ. *(Via phone)*
                                       Ayers, Carr & Sullivan, P.C.
                                       251 E. Ohio Street   Suite 500
                                       Indianapolis, IN   46204
                                       -- continued----------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 3 Cover
#10-93904
5-11-2011

**APPEARANCES: (continued)**

For Fifth Third Bank:                EDWARD M. KING, ESQ.
                                     Frost, Brown & Todd, LLC
                                     400 W. Market Street   3nd Fl.
                                     Louisville, KY 40202

                                     RANDALL D. LaTOUR, ESQ. *(Via phone)*
                                     Vorys, Sater, Seymour & Pease, LLP
                                     52 East Gay Street
                                     Columbus, OH   43216

Trustee for Thomas Gibson           KATHRYN L. PRY *(Via phone)*
Bankruptcy Estate:                  P.O. Box 6771
                                     New Albany, IN 47151

For Kathryn Pry RE: Gibson:         DEBORAH J. CARUSO, ESQ. *(Via phone)*
                                     Dale & Eke, P.C.
                                     9100 Keystone Crossing,   Suite 400
                                     Indianapolis, IN 46204

For Friona Industries:              JOHN FREDERICK MASSOUH, ESQ.
                                     Sprouse Shrader Smith, P.C. *(Via phone)*
                                     701 S. Taylor   Suite 500
                                     Amarillo, TX   79105

For Cactus Growers, Inc.:           JOHN HUNT LOVELL, ESQ. *(Via phone)*
                                     Lovell, Lovell, Newson & Isern, LLP
                                     112 W. 8th Avenue   Suite 1000
                                     Amarillo, TX 79101
                                        ---------continued---------------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

**APPEARANCES: (continued)**

For J&F Oklahoma Holdings, Inc.          DAVID L. LeBAS, ESQ.
                                         Namen, Howell, Smith & Lee, PLLC
                                         Suite 490
                                         8310 N. Capital of Texas Highway
                                         Austin, TX   78731

For Intrust:                             SARAH STITES FANZINI, ESQ.
                                         Hopper Blackwell, P.C.
                                         111 Monument Circle, Suite 452
                                         Indianapolis, IN 46204

For Eddie Eicke:                         JAMES BRYAN JOHNSON, ESQ. *(Via phone)*
                                         Easterwood, Boyd & Simmons, P.C.
                                         623 N. Main Street   PO Box 273
                                         Hereford, TX 79045

For Bluegrass Stockyards, LLC, and       LAURA DAY DELCOTTO, ESQ. *(Via phone)*
related entities:                        DelCotto Law Group, PLLC
                                         200 North Upper Street
                                         Lexington, KY 40507

For Gabriel Moreno:                      TIMOTHY T. PRIDMORE, ESQ.  *(Via phone)*
                                         McWhorter, Cobb & Johnson, LLP
                                         1722 Broadway
                                         Lubbock, TX   79401
                                         ------continued------------>

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 5 Cover
#10-93904
5-11-2011

**APPEARANCES: (continued)**

For CPC Livestock:                    JESSICA E. YATES, ESQ.   *(Via phone)*
                                      Snell & Wilmer, LLP
                                      1200 Seventeenth Street   Suite 1900
                                      Denver, CO   80202

For Cactus Growers, Inc.; Friona Indus-   MARK A. ROBINSON, ESQ.
tries, and J&F Oklahoma Holdings, Inc.:   Lovell, Lovell, Newson & Isern, LLP
                                      112 W. 8th Avenue   Suite 1000
                                      Amarillo, TX 79101

For William Downs:                    ANDREW D. STOSBERG, ESQ.
                                      Lloyd & McDaniel
                                      11405 Park Road, Suite 200
                                      Louisville, KY 40223

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299       FAX 1-609-927-9768       1-800-471-0299**
**e-mail - irwingloria@comcast.net**

1  (At 10:18:21 a.m.)

2          THE COURT:   Okay, we're on the record.  This is in

3  the matter of Eastern Livestock Company, LLC, and we're also

4  here on the Thomas and Patsy Gibson matter.

5          Would the attorneys present in court please state

6  your appearances, please.

7          MR. STANLEY:   I'll start, Your Honor.   This is

8  Robert Stanley from Baker & Daniels representing James Knauer,

9  Chapter 11 Trustee for Eastern Livestock Company, LLC., and

10 Mr. Knauer is seated immediately to my left.  And also with me

11 is Kevin Toner, also from Baker & Daniels, and also

12 representing Mr. Knauer.  And then I believe we would have

13 people on the phone that you will hear from, too.

14          THE COURT:   Of course.

15          MS. BRYANT:   Your Honor, Lisa Bryant on behalf of

16 the Peoples Bank of Byrdstown, Tennessee.

17          MR. KING:   Good morning, Your Honor.  Ted King for

18 Fifth Third Bank.   Randy LaTour is on the phone as well, Your

19 Honor.

20          MR. AMES:   Your Honor, John Ames of Greenebaum,

21 Doll & McDonald for Greenebaum, Doll & McDonald today, as well

22 as Superior.   Chip Bowles and Christie Moore, also with

23 Greenebaum, are here, and we will also be representing other

24 clients as well.

25          THE COURT:   Good morning.  And appearing by phone.

1        MR. ROGERS:   Your Honor, John Rogers here on behalf

2  of Superior on addition to Mr. Ames and (unclear, low volume)

3        THE COURT:   Oh, I'm sorry.   We'll get you --

4        MS. HALL:   Terry Hall for the Trustee.

5        MR. LaTOUR:   Randall LaTour representing Fifth

6  Third Bank.

7        MS. CARUSO:   Debbie Caruso representing Kathy Pry,

8  the Trustee for the Gibsons.

9    (GARBLED TRANSMISSION)

10        MS. DELCOTTO:   (unclear, transmission static)

11  representing the Bluegrass Entities.

12        MR. WHARTON:   Chuck Wharton for the U.S. Trustee.

13        MR. LEBAS:   David LeBas for J&F Oklahoma Holdings,

14  Inc.

15        MR. DONNELLON:   Daniel Donnellon for First Bank &

16  Trust.

17        MR. CLEMENT:   Brett Clement for First Bank & Trust.

18        MR. MASSOUH:   John Massouh for Friona Industries.

19        MR. LOVELL:   John Lovell for Cactus Growers.

20        MR. JOHNSTON:   Bryan Johnston for Eddie Eicke.

21        MS. FANZINI:   Sarah Fanzini for Intrust.

22        MR. PRIDMORE:   Tim Pridmore for Gabriel Moreno.

23        MS. YATES:   Jessica Yates for CPC Livestock.

24        THE COURT:   All right, we've got a couple of other

25  attorneys appearing in person.

1          MR. ROBINSON:   Good morning, Your Honor.   Mark

2   Robinson for Cactus Growers, Friona Industries, and J&F

3   Holdings.

4          MR. STOSBERG:   Good morning, Judge.   Andrew

5   Stosberg, Lloyd & McDaniel, on behalf of William Downs.

6          THE COURT:   All right.   I think in the Gibson

7   matter and in Eastern, we've got a motion for relief from stay

8   filed by Peoples Bank --

9          MS. BRYANT:   Yes, Your Honor.   I'm happy to report,

10  and y'all correct me if I'm wrong, and, Ms. Caruso, correct me

11  if I'm wrong -- my understanding is that we are going to be

12  tendering an agreed entry terminating the automatic stay and

13  abandoning all of the property except for 22.9 acres, and also

14  26.33-acre tract, which may be Mr. King's and Mr. LaTour's

15  client's collateral.

16         But the agreed entry will provide that the stay will

17  be terminated, and the property will be abandoned as to the

18  rest of the -- all the other property described in my client's

19  mortgage, and we will also provide that if there are excess

20  sale proceeds available after the sale of the property, that

21  those would be remitted to the appropriate Trustees, either in

22  the Eastern case or the Peoples Bank -- or, excuse me, the

23  Gibsons' personal case.

24         And then we're going to reserve the issue of the

25  validity and enforceability of Peoples Bank's mortgage as to

1  the particular 22.9-acre tract, and we're going to -- you

2  know, you're going to try and see if we can negotiate

3  something with the Trustee on that one, and if not we'll have

4  to litigate the validity of the mortgage on that one.

5       But we will put that on the agreed entry, Your

6  Honor, and I will circulate it to counsel for their prior

7  approval.

8       THE COURT:  Very good.  Thank you.

9       MR. KING:  Your Honor, this is Ted King.  We just

10 learned of the resolution today, and we have no objection to a

11 relief from stay relating to the property in which we don't

12 have a mortgage.  We'd like clarification that this relief

13 from stay would not encumber -- does not go to the property in

14 which we do have a lien.  We've not been favored with a copy

15 of the -- of the mortgages in the motion for relief from stay,

16 so we would like to talk with Ms. Bryant about that, to

17 confirm things.

18      THE COURT:  Just put him in the loop when you

19 circulate the --

20      MS. BRYANT: I was going to say, Your Honor, I'll be

21 happy to add Mr. King --

22      MS. HALL:  Your Honor --

23      MS. BRYANT:  -- as a signatory on that.

24      THE COURT:  Just a moment, please.  Yes.

25      MS. HALL:  This is Terry Hall for the Trustee, and

1  I -- I'm sorry, Karen, (sic) I don't know about that

2  particular thing.   Are you -- are you exempting from the

3  relief from stay the property that's titled in the name of

4  Eastern Livestock?  Is that what -- what the -- what you're

5  stating?

6          THE COURT:   No.

7          MS. HALL:   Okay.

8          THE COURT:   Well, I don't think that's what you

9  were stating, was it?

10         MS. BRYANT:   Your Honor, as I understand it, the

11 Eastern Livestock property that was pledged to secure Mr.

12 Gibson's personal obligation, my understanding from speaking

13 with Meredith Thomas last week was that the stay would also be

14 terminated as to that particular tract, and that property

15 would be abandoned with the understanding that if there were

16 any excess sale proceeds those would be remitted to the

17 Eastern Trustee.   Was Meredith not authorized to say that for

18 you?

19         MR. KING?:   Who's Meredith?

20         MS. BRYANT:   She's one of the --

21         MS. HALL:   I'm sorry, Karen (sic) --

22         THE COURT:   It's Lisa Bryant that's speaking --

23         MS. HALL:   (unclear) or, I'm sorry, Lisa -- I'm

24 not-- unfortunately I'm not aware of that agreement.  So are

25 you saying that all of the properties would be sold, but there

1  would be a reserve as to the Trustee's right to avoid the

2  lien?

3          MS. BRYANT:   Umm --

4          MS. HALL:   My understanding is that the one piece

5  of property -- there's an 80-acre piece of property that's

6  titled in the name of Eastern Livestock that was pledged as

7  collateral for a personal loan by the Gibsons --

8          MS. BRYANT:   Correct.

9          MS. HALL:   -- that occurred in late October 2008,

10 and it's our position and our objection that the -- that lien

11 could either be a fraudulent transfer or avoided for lack of

12 consideration.  And I was not aware that we had -- we had

13 actually come to an agreement.  I'm not adverse to an

14 agreement, if we can reserve the issue that we  may, in fact,

15 avoid that lien through an adversary proceeding, but I'm not

16 sure what the 22.9 acres and the 26.3 acres refers to.

17         MS. CARUSO:   I think those refer to properties --

18 and, Lisa, you can correct me if I'm wrong-- this is Debbie

19 Caruso -- that weren't included in the motion.

20         MS. BRYANT:   Correct.  We did not --

21         MS. HALL:   That *weren't* included in the motion--?

22         MS. CARUSO:   Were not.  The 22.9 and the 26 acres

23 were not referenced in the motion for relief from stay.

24         MS. BRYANT:   That is correct.

25         MS. CARUSO:   And we're not adverse, Terry, to

1  excluding that Eastern Tract.   We've exchanged appraisals

2  with Ms. Bryant and determ -- and reviewed all the mortgages,

3  and at least with the Gibson tract have determined that there

4  would be no equity in those properties for the Trustee top

5  sell.  But we're not adverse -- and, Lisa, I'm not adverse to

6  excluding the Eastern property from this agreed entry.

7          MS. BRYANT:   Well, maybe what I should do is get

8  the -- and I apologize, y'all -- Mr. Stanley,(unclear) because

9  I was recovering from ACL surgery, and I'm not -- I wasn't on

10  top of my game last week; but maybe -- maybe I can talk with

11  you all later.  Maybe we can sell that property and then

12  reserve the issue of whether our lien is avoidable --

13          THE COURT:   All right --

14          MS. BRYANT:   -- and why don't you all think about

15  that?

16          MR. KNAUER:   Cash is always better than land.

17          MR. BERMAN:   Yes.

18          MS. HALL:   Well, maybe I'm confused.  Are we --

19  have we called this motion, the Peoples Bank motion in both

20  cases, or just in  --

21          THE COURT:   Yes, I've called them in both cases.

22          MS. HALL:   Okay.

23          THE COURT:   And what it appears to me is that there

24  is a deal in the Gibson case, and there might be that there's

25  the prospects for a deal in the Eastern case.  So at least get

1  me an order on the Gibson matter, and then circulate and

2  negotiate if you all -- Mr. Knauer is indicating, Ms. Hall,

3  that he might be amenable to an arrangement that would call

4  for the sale of the property and reserve the issue as to the

5  lien.

6              MS. HALL:   Yes, that would probably be reasonable.

7              THE COURT:   Yes.

8              MR. LaTOUR:   Your Honor, this is Randall LaTour and

9  Fifth Third.   On the Gibson case, I am now thorough confused

10 whether the -- the parcel that is subject to Fifth Third's

11 mortgage is included in the deal or excluded in the deal?

12             THE COURT:   It's excluded.

13             MS. BRYANT:   It's excluded.

14             MR. LaTOUR:   I've never talked to anybody about

15 (unclear) deal.

16             THE COURT:   It's excluded, Mr. LaTour.

17             MR. LaTOUR:   Okay, thank you very much.

18             MR. ROBIN:   And, Mr. LaTour, we will circulate the

19 agreed entry in the Gibson case to Ted King, and I guess, do

20 we need to --

21             MR. KING:  I'll forward it to Mr. LaTour as well.

22             MR. LaTOUR:   Thank you, Your Honor.  I appreciate

23 that.

24             THE COURT:   Yeah, you'll see it before it's

25 entered, and we'll make sure that the real estate descriptions

1 are accurate.

2       So it's my understanding this morning then that we

3 have -- we have a deal whereby in the Gibson case the stay

4 will be lifted with the exception of two parcels, one of which

5 is 22 acres, one of which is 26 acres.

6       As to an 80-acre parcel that the Gibson -- owned by

7 Eastern Livestock but pledged by the Gibsons, there may or may

8 not be a deal.  Now if you don't have a deal on that, if it

9 turns out there's a sticking point, then just submit me the

10 Gibson order, and we'll reset the Eastern matter and resolve

11 whatever remaining issues there are.

12       MS. BRYANT:  Your Honor, I may just do two agreed

13 entries, because I know my client is champing at the bit --

14       THE COURT:  Oh, yeah, we should do two entries

15 anyway --

16       MS. BRYANT:  Yeah, I guess you're right.  Yeah.

17       THE COURT:  -- because they're -- we're in two --

18 we're in two separate (unclear)

19       MS. BRYANT:  So I'll do an agreed entry in the

20 Gibson case and probably get that done a little faster; and

21 then I will get with the Trustee in the Eastern case and see

22 what we can work out and hopefully submit another agreed entry

23 in that case.

24       THE COURT:  All right, and when's the next date in

25 Eastern?  And just to keep track of it, I'll set the Eastern

1  matter, continue it to June 24th.  Of course, if I get an

2  entry before then, we won't have it.

3           MS. BRYANT:   All right.  All right, thank you, Your

4  Honor.

5           THE COURT:   All right.

6           MS. BRYANT:   And thank you for calling this first--

7           THE COURT:   You're quite welcome.

8           MS. BRYANT:   -- because I had to be driven to Court

9  today, so (unclear)

10          THE COURT:   You're quite welcome.   Thank you.

11          MS. BRYANT:   Thank you, Your Honor.

12          THE COURT:   All right, in Eastern then -- I think

13  that's all we had on in Gibson.  Ms. Caruso, were you aware of

14  anything else in Gibson?

15          MS. CARUSO:   No, Your Honor.

16          THE COURT:   Okay.  In Eastern we have an

17  application for payment of administrative expenses filed by

18  Greenebaum, and objections thereto filed by the Trustee and a

19  response thereto.   Mr. Ames?

20          MR. AMES:   Yes, sir.  It's our application or our

21  request.   Judge, there was only one limited objection, and it

22  raised two points.  If I may address the second point first,

23  that having to do with duplication of effort between Dinsmore

24  & Shohl and Greenebaum, I think the most obvious thing is that

25  there are two very distinct matters that had taken place, one

1   involving a bank having to -- seeking a Receiver in Ohio, in

2   Hamilton County, Ohio under Ohio statute; and then this

3   action, which was seeking to have an involuntary Chapter 11 on

4   behalf of petitioning creditors.  These were different

5   parties, different remedies, different legal standards,

6   different everything, Your Honor.

7           And the -- take that into -- take in account of not

8   having to have any gap, we didn't want to have any gap.  This

9   thing came to me on Wednesday, December the 1st.  We filed our

10  involuntary on the 5th.  On the -- I guess it was the 7th we

11  had our hearing, and then on the 13th a hearing in chief; and

12  ultimately in about two weeks we went through -- completely

13  through the process.

14          The long and short of this, there was no

15  duplication, Your Honor.  I think if you looked at our

16  attachment A and our time sheets, because they're relatively

17  -- they're complete; and then what Dinsmore & Shohl had

18  previously applied for, there's no duplications.  We had not

19  been contacted.  Our fee -- this application was filed on

20  March the 30th, and it was only in the late afternoon of Derby

21  eve, last Friday, that I became aware that there was problems

22  with duplication or reasonableness of our fee.  In checking

23  with Dinsmore, they've not been contacted either.  Certainly

24  we feel that this ought to be summarily over -- overruled.

25          And secondly, the administrative expense, we seek to

1  be treated as professionals in this case, and as we understand

2  it there has been an administrative request by a professional,

3  and they, in fact, have been paid.  Thank you, Your Honor.

4          THE COURT:    Response?

5          MR. STANLEY:    I think Ms. Hall is the appropriate--

6          THE COURT:    Ms. Hall, are you going to address

7  that?

8          MS. HALL:    Yes, Your Honor.    The Trustee filed a

9  limited objection to the fees on the basis that they deserve a

10  look from the Court for the reasonableness of the fees and

11  what they benefited to the estate.

12          It -- we are not necessarily opposed to the

13  Greenebaum firm's being compensated for the benefits or

14  services they've provided in the -- and I completely

15  understand the very difficult circumstances under which they

16  tried to file an involuntary with the fact of a receivership

17  going.

18          The Trustee's primary objection goes to probably Mr.

19  Ames's second point, which is the requesting of immediate

20  payment of that, and Mr. Ames raises the issue that the

21  Dinsmore law firm, which is the Receiver's or financial

22  services' law firm, did request payment of their expenses for

23  the month of December, and the Trustee supported payment of

24  that; but those payments were made not necessarily from the

25  assets of the estate.  They were made from funds advanced by

1  Fifth Third in the receivership.  So there is a difference

2  between what Mr. Ames is saying how Dinsmore was paid and how

3  Mr. Ames wants to be paid immediately as an administrative

4  expense in a large amount.

5        So the Trustee's primary objection is, (1), that

6  there be a reasonableness standard on the fees themselves,

7  from the Court or the Trustee, and -- the U.S. Trustee; and

8  secondly, that if they are awarded fees, that those payments

9  be made in the -- along with all of their administrative

10 expenses, usually at the end of the case, unless it's an

11 expense incurred in the ordinary course.

12       MR. WHARTON:   Your Honor, this is Chuck Wharton for

13 the U.S. Trustee on the phone as well.  If I might -- and I

14 apologize to Mr. Ames for not mentioning this to him prior to

15 this phone conference -- if he would, before you make your

16 ruling today, would -- John, would you take a look at the

17 Exhibit A you attached?  I really don't think it has all of

18 the time that you're asking for in it, and as such, to the

19 extent you're able, if you could supplement that for me.

20       It shows me, on the exhibit I have, time entries

21 through December 28th, and then it starts again on March 2nd,

22 so I think there may be some gaps or there's something I don't

23 quite understand.

24       MR. AMES:   No, sir, I don't think that's so.  I

25 think that we only asked for that which we participate with

1  the involuntary, and then for that -- the preparation, which

2  we're also entitled to, and we've asked for and put in both

3  the memo and our briefs.

4          MR. WHARTON:   So the exhibit you've attached is the

5  extent and total of the fees you're requesting.

6          MR. AMES:   Correct.

7          MR. WHARTON:   Okay, thank you, John.   I --

8          MR. AMES:   If that --

9          MR. WHARTON:   -- appreciate that.  I didn't quite

10  understand it.

11          MR. AMES:   Okay, Chuck, if that's not -- if that's

12  not accurate I will be back with you, but I'm fairly certain

13  it is accurate.

14          MR. WHARTON:   Thank you.

15          THE COURT:   All right.   I'm going to approve the

16  fee app.  I am not going to order that it be paid at this time.

17  I'm not convinced that this -- this particular administrative

18  expense ought to wait until the end of the case, but I want to

19  get a little bit further into the situation here before I

20  determine if we ought to pay the petitioning counsel before we

21  pay the balance of the professional and administrative

22  expenses.   So I will approve the application, and if you'd

23  submit an order.

24          MR. AMES:   There should be one attached.

25          MR. BOWLES:   We'll modify for your Judge's ruling

1  (unclear).

2          THE COURT:   All right.   All right, we have a motion

3  to extend the time to file the Gibson Trustee's purchase money

4  claims.  And that was filed by Meredith Thomas on behalf of

5  Kathryn Pry?   Does anybody want to be heard on that?

6          MS. CARUSO:   Your Honor, Debbie Caruso.  We don't

7  believe there were any objections --

8          THE COURT:   There -- --

9          MS. CARUSO:   -- to our motion.

10          THE COURT:   There were none.

11          MS. CARUSO:   There were none.  Our motion merely

12  tracks the extension that was given to First Bank already, so

13  I don't believe it would cause any delay or undue hardship to

14  the Eastern estate in administering the purchase money claims

15  and paying the proceeds out.

16          THE COURT:   All right.   I'll show that that motion

17  is granted.

18          MS. CARUSO:   Thank you, Your Honor.

19          THE COURT:   All right, then in the adversary

20  proceedings I think we had set a pre-trial status in the

21  Superior Livestock Auction adversary, 11-59088, and the Friona

22  Industries, 11-59093.   Let's take the Superior matter first.

23  Who's -- you're here for Superior, Mr. Bowles and Mr. Ames?

24  What's the status -- where do we stand in this?

25          MR. BOWLES: In -- in --

 1          THE COURT:    Have we accomplished what we've talked
 2  about --
 3          MR. BOWLES:    Well, we --
 4          THE COURT:    Did you all ever come to an agreement
 5  in terms of separating off part of this, or --
 6          MR. BOWLES:    There are two things that we have,
 7  Your Honor, and the -- the first one is, we came to an
 8  agreement that regretfully we can't directly agree, and while
 9  the issue is from our joint pre-trial statement, mainly on the
10  factual issues, for a variety of reasons, including the fact
11  that the debtor primarily has no one who is actually there and
12  in a position of authority.  We are working through those.
13          What we have done so far on the Superior Livestock
14  auction case is to grant the Trustee a thirty-day extension to
15  answer or otherwise plead.  We did that at our conference on
16  your joint pre-trial statement.  After they file their answer
17  or whatever pleading they have, we are then going to move,
18  Your Honor, for a motion for a judgment on the pleadings on
19  two fairly narrow but important legal issues.
20          The two legal issues are the questions of whether
21  the underlying contract, which -- by which Eastern bought
22  cattle through the Superior options or forward contracts for
23  purposes of the Bankruptcy Code, whether a Superior Livestock
24  option constitutes a forward contract merchant.  The related
25  issues, which basically turn on the same legal matters, are

1  whether the four contracts are swap agreements, and whether

2  Superior is a swap participant for purposes of the Bankruptcy

3  Code.

4         Once we resolve those fairly -- these purely legal

5  issues we believe then most of the other issues, which may or

6  may not in various cases have factual questions, those we

7  think we can resolve.  That's what we've gone on further.  And

8  those are pretty much the issues we have.

9         On the -- on the related issue of the Friona, I wear

10 once again two hats today because we have two sets -- we have

11 both Superior and also Joplin.   On the Superior one, we think

12 probably -- and we're still talking with the debtor on it, and

13 at some time Christie Moore, who is our litigator on this

14 case, will answer the more detailed litigation questions.  I'm

15 just poor bankruptcy (unclear)-- but what we've talked about

16 that is severing out the part of the Texas interpleader action

17 that has to do with Superior, both -- and these are for fairly

18 discrete chunks of funds with Cactus, Friona, and J&F -- have

19 those severed out and just wait and have those issues

20 ultimately resolved in the Superior AP itself, so that the

21 rest of the interpleader action is not going to be held up.

22         So that's what we pretty much are.

23         THE COURT:   Okay, you lost me just a little bit

24 towards the end there.

25         MR. BOWLES: Okay.

```
 1              THE COURT:   I was following you as you were going

 2   through Superior, and you're going to move for summary

 3   judgment or a judgment on the pleadings as to the legal

 4   issues.

 5              THE COURT:   Yes, judgment on the pleadings, Your

 6   Honor.

 7              THE COURT:   And then did you switch to the other

 8   adversary --

 9              MR. BOWLES: Yes --

10              THE COURT:   -- the Friona adversary?

11              MR. BOWLES:  -- going to -- going then to -- because

12   you asked was about what is the -- there is, in fact, issues

13   in the Superior Livestock AP that relate to issues that were

14   brought up in the Texas interpleader.

15              THE COURT:   All right.

16              MR. BOWLES:   And what we have discussed so far is

17   basically severing out those portion (sic, did not say

18   "portions") in the Texas interpleader.

19              THE COURT:   Taking Superior issues out of the

20   Friona adversary.

21              MR. BOWLES:   Yeah, let them sit there and be

22   resolved in the Superior AP.  We are just --

23              THE COURT:   Well, that's what I was referring to

24   when I --

25              MR. BOWLES: Okay.
```

1        THE COURT:   -- first addressed this matter, have

2   you all agreed to separate out Superior?  But there is no

3   current agreement as to that.

4        MR. BOWLES:   We're still discussing it.  There's no

5   agreement, but that's what we're -- at least that's what we

6   are trying to do, and I think that there is some work on how

7   to do that and how to accomplish that.

8        THE COURT:   All right, so take -- going back then

9   to strictly the Superior adversary, the Trustee's been granted

10  an extension of time to respond.  When's that -- when's that

11  run?

12       MR. AMES:   We gave an additional thirty days --

13       MR. STANLEY:   June 20th is it?

14       THE COURT:   So late June?

15       MR. STANLEY:   The status -- they -- we -- they

16  agreed graciously to the thirty-day extension, and we haven't

17  file the note -- a formal notice yet to do that, but I -- it's

18  -- is it June 20th?  It's the Mon -- whatever Monday is.

19       MR. BOWLES:   It's around June 20th, Your Honor, and

20  we'll file the formal pleadings in this case.

21       MR. STANLEY:   Something like that.

22       THE COURT:   And then you anticipate within thirty

23  days of that filing your dispositive motion --

24       MR. BOWLES:   Yes, Your Honor.

25       THE COURT:   Or partially dispositive motion I guess

1  it would be.

2          MR. BOWLES:   Yes.

3          THE COURT:   All right, and then the parties will

4  brief that.  Do we -- do we have dates after June 24th, Kristin?

5          MRS. GOSS:   (unclear)

6          MR. STANLEY:   I do have some things to say about

7  the motion at the appropriate time.

8          THE COURT:   Well, no time like the present.

9          MR. STANLEY:   Well, of course, they can file

10  anything they want to file.  It would be -- I would find it

11  highly unlikely that the Court on applying the appropriate

12  standard is going to -- that this case is going to get

13  resolved on the legal issues in a way that Mr. Bowles hopes it

14  is.  Hope springs eternal, I suppose.

15          But I -- I don't think that when we see  -- you see

16  our counterclaims and the way our answers are going to come in

17  that it's going to be neatly as framed as that.  I do believe

18  that we're going to need discovery, that there are factual

19  issues, at least discovery along the lines to determine out

20  what -- whether there are factual issues or not.

21          I think what Mr. Bowles is talking about is

22  essentially assuming the Court -- assuming the facts as

23  alleged by Superior and in making legal judgments based on

24  those facts, and I do not believe that we are going to agree

25  to many of the facts that he would predicate his motion on.

1    We could see how it comes out, but I think -- I

2  didn't want the Court to think by my silence that I'm

3  predicting that this going to go the course that he hopes for.

4         THE COURT:   Well, of course, I never would have

5  predicted that you would have thought he was going to prevail

6  on his motion.

7         MR. STANLEY:   Well, but even (unclear)

8         THE COURT:   But -- but I -- but you raise another

9  point, and that is you are saying that you don't see it as

10  strictly a question of law.   You see it as there being

11  contested facts.

12         MR. STANLEY:   Absol -- yes.

13         THE COURT:   So then I guess that -- just from this

14  pre-trial status, does that mean then that we should be

15  operating on a dual -- we certainly shouldn't hold off on all

16  discovery until the legal issue is resolved because there may

17  be factual elements that have to be resolved also?

18         MR. STANLEY:   I think -- I believe that we should

19  go forward with a normal discovery schedule, in the ordinary

20  course that we would in an adversary proceeding.   If they

21  still believe that they want to file a motion for judgment on

22  the evidence while that discovery is underway, then, of

23  course, they're free to do that.   I mean, there's -- the

24  Rules permit them to file anything they want.

25         THE COURT:   Do you have any problems with that

1  concept of proceeding with the discovery?

2          MS. MOORE:   Actually, only in part.  In speaking

3  with Mr. Stanley, as we've talked about how to proceed on

4  these very discrete two legal issues, as I understand he does

5  not have -- he does not believe that the contracts themselves,

6  the livestock contracts, create the type of concern --

7  although we did not attach them to the complaint because there

8  were just too many -- but we're going to get them to Mr.

9  Stanley as kind of an attachment to the complaint.  We -- he

10 should have them in about a week.

11         His concern was with the *assignments* which are a

12 completely different legal contract that do not re -- we don't

13 even need to consider the four corners or ambiguity or not of

14 *those* agreements to determine the two questions that we've

15 presented.   Certainly, if the Court wants to do some limited

16 discovery -- but it's our position that these two legal

17 questions, whether the livestock contracts are or are not

18 forward agreements, those can be raised without considering

19 all the issues that I think Mr. Stanley is concerned about.

20         Now what we've asked him to do is if he will give us

21 a very discrete list of things he needs very quickly, then

22 we'll certainly do that as a courtesy if he believes there's

23 something else he needs to see.   The original 500 contracts

24 were something that he said he would like to go ahead and

25 have, as opposed to just the example in the complaint.

1          THE COURT:   All right.

2          MS. MOORE:   So we're going to do that.

3          THE COURT:   Okay, here's what I'd like the parties

4    to do.  I want you to have a discovery conference.  I want you

5    to start setting some dates and deadlines for discovery, and a

6    deadline for the filing of a dispositive motion by the

7    plaintiffs.  I would like to see discovery limited in this

8    initial phase, but I'm not going to -- I'm not going to set

9    the parameters today.  You all understand better than I do.

10          I mean, obviously I think it should focus on the

11   issues to be raised by the dispositive motion.  That may draw

12   in factual issues that touch on other issues, and I understand

13   there is an overlap here as to what happens, so I'm not going

14   to say, you know, strictly it has to do with this or that.  I

15   would like the parties to attempt to limit it though, and not

16   get into full-blown discovery, and -- until we get past this

17   stage.

18          MR. LaTOUR:   Your Honor, this is Randall LaTour.

19          THE COURT:   Yes.

20          MR. LaTOUR:   If I may expand on the comments that

21   you just made about overlap.   Fifth Third Bank has a blanket

22   lien on the contract rights, on the inventory -- everything

23   that Eastern has.  And so to imagine that this is a simple

24   issue that does not have any factual inquiry as to the status

25   of Fifth Third's lien and its impact on the viability or

1  possibility of the assignments, I believe it's misguided.  And

2  to assume that we can narrowly draw discovery to focus on some

3  discrete facts may be very wide of the mark.

4         THE COURT:   Well, I'd like for you all to try, Mr.

5  LaTour.  I understand that you -- that there are -- there's a

6  variety of parties, and that there are different interests

7  here.  But I think you all have -- I mean, you've been around

8  long enough, you've litigated long enough to realize how --

9  what it *will* take to bring this at least initial issue before

10 the Court.   I'm not saying -- I mean, I've said a couple

11 times here today that I'm not setting the parameters.  You're

12 in a better position to know what might be needed.  I'll be

13 very surprised, though, if every issue between all the parties

14 has to be fully explored in order to get to this issue.  That

15 would -- that would be unusual.

16        So you participate in the discovery conference, Mr.

17 LaTour, and see if you all can't come to some agreement.

18        MR. LaTOUR:   Thank you, Your Honor.  At the

19 present, we're not named as a party in the proceeding, but I'd

20 appreciate the invitation to join.

21        THE COURT:   You're going to -- are you going to add

22 them?

23        MR. STANLEY:   Well, it is our position -- we stated

24 in the pre-trial that Fifth Third and the three feed lots in

25 the interpleader case and one of the other feed lots in the

1   state interpleader case are necessary parties because part of

2   the relief that's sought is this notion that this is all

3   Superior's property, which there are competing claims to.

4   There -- many of those are involved in the interpleaders.

5   Indeed, a good part in the complaint talks about the

6   interpleader cases.

7           Our plan is, as I stand here today, my plan is that

8   rather than file a motion to require their joinder, probably

9   the simplest thing to do is that we will join them all with

10  our counterclaim, and then they will be in the case.

11          THE COURT:   All right.

12          MR. LABONTE:   Your Honor, David LaBonte for J&F

13  Oklahoma, and one of the three what we're calling feed lots,

14  and the point just discussed raises an issue that needs to be

15  addressed, I think, with respect to the other adversary.

16  Technically, its predecessor was filed long before the current

17  adversary we're talking about, and so with the prior filed

18  piece of litigation that does involve all of the parties that

19  are now talking about being joined or not being joined; and it

20  seems to me that we ought to talk about both of those sets of

21  litigation together rather than create this distinction that

22  I'm not sure how it really gets resolved on a piece-by-piece

23  basis.  It's going to have decisions made, as to one, that

24  could certainly could affect another without parties in both

25  having a chance to participate in the discovery, participate

1   in the pleadings, to have their interest affected without

2   having a chance to know what's happening in the other case.

3           THE COURT:   How is it that -- I mean, I understand

4   the concept here that we're trying to separate off the dispute

5   with Superior, but -- you know, now the -- I mean, we are

6   running into the problem that the -- there are other parties

7   that have claims that relate directly to this --

8           MR. BOWLES:   But --

9           THE COURT:   -- even though they're not in this

10  adversary at this time.

11          MR. BOWLES:   But -- but if you'll notice, Your

12  Honor, the Superior adversary proceeding was drawn very

13  narrowly.  It has one objective, *vis-á-vis* Eastern and the

14  Trustee.  What we want to do is basically resolve all issues

15  with them.  That's why we narrowly tailored it.  We don't

16  think -- you know, if  -- you know, what we have said as part

17  of this is ownership.  We believe we own certain cap rights.

18  There are also a lot of other issues.  But all of our issues

19  are things *vis-á-vis* the Trustee.

20          On the two legal issues I had said -- forward

21  contract and forward contract merchant -- that has no impact

22  on any other creditor.  It only establishes Superior's rights

23  under the Bankruptcy Code.  It's a simple issue.

24          What we have here is just simply to go -- this is us

25  and the debtor.  And the main thing Your Honor noted, and I

1 think we had this in the very first one, which is why we

2 wanted to do it -- is there are a lot of people -- and while

3 they said there is an interpleader that has various rights,

4 the rights are generally people say either I own a part of the

5 funds that have been interpleaded in Texas, and those are not

6 just the entire funds.  Those are specific pots.

7       Some people like Fifth Third may say, "I have a lien

8 on that money," for whatever reason.  That's (unclear) issue

9 you have, but that's ones that basically say in there, "I want

10 to see if I have my pot of money.  I want to see if somebody

11 else has a security interest, a set-off right, an (unclear)

12 lien, whatever it is on that."

13       To have -- the (unclear -- "little"?)  people who

14 have forty or $50,000 worth of cattle, or whatever their

15 particular claims will be for trucking or whatever, wait to

16 the very end of the Superior AP, is going to multiply the

17 costs in this case and multiply the time.  Here we're dealing

18 with very specific issues, *vis-á-vis* the Trustee, and the

19 Eastern and Superior.

20       MR. LaTOUR:   Your Honor, this is Randall LaTour for

21 Fifth Third.   You've heard a number of times people in

22 (unclear) motion says it's a very simple story.  "It's Facts

23 1, 2, 3.  Give me my money, and I'd like to leave."  But the

24 reality is all of these things are inexorably connected, and

25 we don't have the way to simply slice and dice this.

1        If Superior's position is correct on their

2   apparently simple proposition, the set-off rights of the Texas

3   feed yards are going to be dramatically affected because there

4   won't be mutuality.   If they don't have those rights, then

5   the rights to the proceeds will be dramatically affected.   And

6   determining who has rights in those contracts is not a simple

7   matter of deciding what legal label to put on the contract,

8   because the efficacy of the assignments is the root issue, and

9   those are all fact-driven.

10        So like it or not, we're going to have to have a

11   trial on the facts.

12        MR. ROGERS:   Your Honor, John Rogers on the phone

13   and also on behalf of Superior.   And I -- I -- to supplement

14   what's been said, I mean, it seems to me that the real issue

15   here is whether it's property of the estate, whether these

16   contracts are property of the estate, or they aren't.   If they

17   are property of the estate then potentially it affects every

18   creditor of the debtor, but it doesn't follow from that that

19   every creditor of the debtor has to be joined, and I don't

20   really see where Fifth Third's in any different position.

21        You know, the -- there is a distinct legal issue as

22   to whether we're talking about property of the estate or we're

23   not.

24        MR. LaTOUR:   Well, Fifth Third has the lien on

25   those contracts, whether they're property of the estate or

1  not.

2         MR. ROGERS:   But this adversary doesn't speak to

3  and doesn't attempt to determine that.

4         MR. LeBAS:   David LeBas for J&F Oklahoma Holdings,

5  and I want to follow up on a point made by Mr. LaTour

6  concerning offset rights.   If the Court is to be asked to

7  make a decision that the assignment had a retroactive effect

8  of vesting the contracts in Superior and not in Eastern, then

9  presumably that could affect the argument on mutuality.  That

10 is, can you offset against Superior now or against Eastern.

11        I don't want that issue determined in some way that

12 I have no input on, and what we end up doing is going to

13 affect the rights of other suppliers, because if we have less

14 to offset the claim then those parties presumably -- other

15 cattle claimants -- have a better shot, or at least maybe a

16 shot at some more money.

17        THE COURT:  All right.

18        MR. LeBAS:  I don't see how you unwind it.

19        THE COURT:  Yeah.  Well, we may never, but we're

20 going to -- we're going to try.  Here's -- now let's talk

21 about a little bit about you all have been overlapping into

22 the Friona L -- LP adversary, which is the interpleader

23 removed from Texas adversary.

24        I assume everybody who has an interest is a party to

25 that lawsuit.

1          MR. DONNELLON:    That's not correct, Your Honor.

2    First Bank & Trust is not --

3          THE COURT:    Could --

4          MR. DONNELLON:    -- a party to the Friona --

5          THE COURT:    You're cutting out -- you're cutting

6    out pretty badly.  I don't know --

7          MR. DONNELLON:    I apologize.  Dan Donnellon on

8    behalf of First Bank.  Is that better?

9          THE COURT:    That's better.  Yes.

10          MR. DONNELLON:    First Bank is not a party to the

11    Friona interpleader, and nor are we a party to the J&F

12    Oklahoma Holdings interpleader, and we do believe we've got

13    interests in both of those.  We intended to file an inter --

14    an motion to intervene, unless they want to name us as a

15    party, or we can orally intervene on our -- intervene on an

16    oral (or, "normal?") motion, but we are not in that case yet

17    at this point.

18          THE COURT:    All right, and who -- and again, your

19    client is who?

20          MR. DONNELLON:    First Bank & Trust.

21          THE COURT:    First --

22          MR. MASSOUH:    Your Honor, this is John Massouh for

23    Friona Industries.  Mr. Donnellon is correct -- excuse me.

24    We -- with regard to the Friona interpleader, we -- there are

25    -- in addition to First Bank there are a few other claimants

1  that have arisen since the filing of the initial complaint in

2  Texas, and it is our intent to amend the complaint to add

3  additional parties to the interpleader action, and that's one

4  of the things we wanted to discuss with the Court this

5  morning.

6          THE COURT:   That's good.  So what -- when do you --

7  how long do you need to do the -- to accomplish that?

8          MR. MASSOUH:   Well, we were thinking, I believe in

9  discussions with J&F's counsel, and Cactus counsel, among the

10 three interpleader plaintiffs we were going to ask the Court

11 for twenty days to amend the various complaints and to bring

12 in the proper party and then put all of the issues in front of

13 the Court.

14         THE COURT:   I'll grant that motion

15         MS. FANZINI:    And, Your Honor, this is Sarah

16 Fanzini for Intrust, and (unclear) we are similarly situated

17 to First Bank, and I would say to Mr. Donnellon (unclear) is

18 it your intention to add Intrust in as well then?

19         MR. DONNELLON:   It was not our intention to add

20 Intrust.  This is the first I've heard of any specific claim

21 of Intrust, quite frankly.

22         THE COURT:   Why don't you two talk after the

23 hearing, and if there are  -- if they are making a claim as to

24 any of the -- anything related to the interpleader, then --

25 action, then let's get them in here, too.  Let's get everybody

1 that we've identified that's making a claim, or who might

2 potentially have a lien or a claim in this litigation.  That's

3 your intention, I assume.

4       MR. MASSOUH:  That's correct, Your Honor.  If

5 anyone has a specific claim to specific cattle, First Bank &

6 Trust has articulated a claim to specific cattle, so it is our

7 intent to add them to the interpleader action as well as some

8 others, and if Intrust Bank has specific claims to specific

9 cattle proceeds, then we will -- we will add them as well.

10       MR. DONNELLON:  Your Honor, this is Dan Donnellon

11 for First Bank.  There is one other issue that perhaps Ms.

12 Caruso could weigh in on as well, but that after the filing of

13 the interpleader, First Bank identified some additional cattle

14 that were not part of the interpleader originally, and those

15 funds have been transferred to Indiana but are not -- we think

16 it's discrete and narrow enough that we don't need to have

17 those additional funds added to the interpleader and later

18 segregated out.  It's my understanding from Ms. Caruso, but

19 she could enlighten us on that, but I don't want to -- my

20 point is, simply by adding First Bank, I don't want to have to

21 expand what's in the interpleader for cattle purchases that

22 were never included originally.

23       MS. CARUSO:  I think -- believe -- this is Debbie

24 Caruso -- what Mr. Donnellon is speaking about is

25 approximately $355,000 of receivables from Friona, which

1  arguably are payable to the Gibson estate, may be subject to

2  the lien on First Bank.

3         Ms. Hall and I had discussed segregating those sums

4  out so they wouldn't be part of the big giant interpleader.

5  And I don't even know if those have been remitted by Mr.

6  Massouh or where they are.

7         MR. MASSOUH:   Your Honor, I can speak to that.

8  Those funds, in terms of amending our complaint to add First

9  Bank as well as the Gibson Trustee, there are some claims to

10 those specific 360 some odd thousand dollars of cattle by

11 First Bank, by the Gibson Trustee -- the Eastern Trustee, and

12 by Fifth Third Bank, so it appears that there are four

13 competing claimants as well as Friona's offset claim to those

14 funds as well.

15        Those funds were initially not interpled into the

16 case.  We intend, upon amending our complaint, to interplead

17 those funds into the case as well.

18        MS. CARUSO:   Mr. Massouh, Terry Hall and I had

19 discussed perhaps segregating those out so that -- and I --

20 first I should say it -- I don't know if it was your intention

21 to add the Gibson Trustee to the overall interpleader or just

22 with respect to these $355,000 and costs.

23        MR. MASSOUH:   Well, we intend to add the Gibson

24 Trustee as a defendant to the interpleader because they are

25 claiming a portion of the funds that will be interpled, just

1  like several of the other producers who claim anywhere from

2  $50,000 to $500,000 worth of the -- worth of the interpled

3  funds. They are part of the interpleader, so we think it all

4  needs to be in one place.   It doesn't make sense to have

5  several different little interpleader lawsuits out there, and

6  that's the whole purpose of the federal interpleader statute,

7  to keep it all in one place.

8           MS. CARUSO:   Well, would you be identifying the --

9  that amount as a separate Count to the complaint?

10          MR. MASSOUH:   Absolutely.

11          MS. CARUSO:   Okay.

12          MR. LeBAS:   (unclear) similar (unclear) our claim

13  would be the same.

14          THE COURT:   All right.   So here's what we're going

15  to do then.  I'm going to give you twenty days to amend your

16  complaint.  Then everybody will have to answer.  So twenty

17  days from now is around the first of June; and everybody will

18  have to answer.  That will take us up to close to the end of

19  June.  Then I'd like -- is there a lead -- is there a lead

20  plaintiff, or are you all sharing those responsibilities, or

21  how are you handling that?

22          MR. MASSOUH:   At this point, Your Honor, I guess

23  Friona was the initial plaintiff who filed the initial

24  interpleader, so if there is any lead plaintiff I guess it

25  would be Friona; but in terms of workload, we've been kind of

1   sharing it going forward a little bit.

2           THE COURT:   All right.

3           MR. LOVELL:   Judge?

4           THE COURT:   Yes.

5           MR. LOVELL:   This is John Lovell on behalf of

6   Cactus Growers.  One other issue in the interpleader is that

7   the Federal Judge in Amarillo abated the case due to the

8   Eastern Livestock bankruptcy filing before all the parties

9   were served, and the remaining defendants have never answered

10  due to the abatement order.

11          So one of the things that we need to do is make sure

12  that we serve a summons on all the defendants who have been

13  named but who have not yet appeared.

14          THE COURT:   All right.

15          MR. LOVELL:   And I think the time schedule we were

16  discussing, you know, takes that into account.  But I did want

17  the Court to understand there are many, many parties who have

18  officially been served.   Cactus, for example, had sent out

19  Requests for Waivers of Service under *Federal Rule 4*, and

20  those were being -- had been served, and some were responding,

21  but for the most part Cactus's defendants have not answered or

22  appeared.

23          THE COURT:   All right.   Yes.

24          MR. STANLEY:   While we have the plaintiffs' counsel

25  on the phone in the interpleader case, it's a little unclear

1  to me -- this is Bob Stanley speaking, everyone -- where the

2  money is that is --

3           THE COURT:   Well, the Clerk's Office has been

4  asking me about that, too.  Do we have the money now in

5  Indiana?

6           MR. MASSOUH:   Your Honor, this is John Massouh.

7  I've been trying to get a hold -- it's one of those things

8  where you have to have the Clerk's Office down here

9  communicate with the Clerk's Office up there, and I think

10 they're still communicating in terms of trying to get that

11 money transferred from the Northern District of Texas to the

12 Southern District of Indiana.

13          THE COURT:   Yeah, I think  -- I've been contacted

14 by our Clerk, and I do think that's in process.

15          MR. STANLEY:   In a related point, as the Court may

16 recall that there are three other interpleader cases that were

17 filed in the state court, and just as a -- a report, the

18 status of those is that all three have been removed to

19 Bankruptcy Courts in the jurisdictions where they were filed:

20 So Kansas, Colorado, and Wisconsin.   And we had filed, on

21 behalf of the Eastern Trustee, motions to transfer all of

22 those cases to this Court.  The time periods are running for

23 responses.  It's difficult to predict whether there are going

24 to be any objections, and what the time line is for those

25 cases.   But at least it is our intention that those cases are

1   similarly enroute here, and the money with them, is the

2   intention.

3           THE COURT:   Well, the Clerk's going to be thrilled

4   to hear that.

5           MR. STANLEY:   Tell them to contact Kevin Toner.

6           THE COURT:   Know what --

7           MR. BOWLES:   In a non-Superior issue, for

8   (unclear), one of our other clients is also a party to one of

9   the counterclaims in the interpleader, and I think this is

10  what the representative of Cactus was saying.  If they're

11  amended, there were -- like I said, there were people waiting

12  for service.  There are people who had extensions of time, but

13  because the automatic stay (unclear) in this, I think almost

14  all of them have run.  What I was wondering is could this

15  Court either set a say to establish -- or set a time table for

16  people who had to either answer a counterclaim, a original

17  complaint, a cross-claim, to file an answer or otherwise

18  plead, because I think probably most of the times have

19  technically run for the people who were served and who

20  otherwise had agreements --

21          MR. STANLEY:   Well, won't --

22          MR. BOWLES:   -- and I was just wondering how to do

23  that.

24          MR. STANLEY:   Well, won't the amendment re-start

25  everything with the amended complaint?

1          THE COURT:    (unclear) file an amended complaint --

2          MR. BOWLES:    If all three of them are, then that

3  would probably re-start -- and I just wanted to make sure of

4  that.

5          THE COURT:    I think we are.

6          MR. BOWLES:    Okay.

7          THE COURT:    Yes. All right, here's what -- let's do

8  this then:    In -- in this adversary I'm going to order that a

9  Rule 16 conference take place in July.  I'm going to let-- I'm

10 going to ask that the plaintiffs' counsel and the Trustee's

11 counsel decide who's going to establish a dial-in.  We can do

12 it telephonically.  I would like a spokesman for the three

13 plaintiffs' counsel and a spokesman for the Trustee to take

14 the lead positions in -- in -- in that conference, in terms of

15 -- I mean, everybody has their own interests, I understand

16 that.  But in terms of establishing deadlines and working out

17 dates -- and I'd like them to talk before -- before the

18 conference, let's start determining what the scope and length

19 of discovery is going to have to be, and any of the other

20 matters that are pertinent under a Rule 16 conference.

21         I'm going to status this matter for the end of July,

22 and I -- that -- let's say the 27th at ten a.m.  And we'll

23 make that an omnibus date in this case also.  I mean, in the

24 -- in the case in chief as well as the Gibson case, if there's

25 any motions that need -- that fall within that time period.

1            MRS. GOSS:    And the East West Trucking case.

2            THE COURT:    And the East West Trucking case.  Yes.

3            MR. STANLEY:    On the Rule 16 conference, is that --

4  do you contemplate an attorneys' conference?

5            THE COURT:    Yes.

6            MR. STANLEY:    Not the Court involved.

7            THE COURT:    I contemplate only an attorneys'

8  conference, so it's not strictly what you would think of as a

9  District Court Chapter -- I mean Rule 16 conference.    Now I

10 contemplate this being a preliminary meeting of the attorneys,

11 and then we'll have something akin to a Rule 16 conference on

12 July 27th with.  I just don't want -- when we get in here on

13 the 27th -- for that to be the first time the parties have

14 talked about these issues and talked about dates, talked about

15 discovery.  I do think you all are going to have to talk about

16 issues like consolidating discovery requests -- you know,

17 everybody doesn't necessarily have to do their own set of

18 interrogatories, for example.    Everybody --

19            And if you have parties that you share common

20 interests with, I hope that those kind of conversations and

21 negotiations will be ongoing because we're going to try to

22 find a way to do this efficiently.

23            Now going back to the Superior dispute, at this

24 point I'm not going to interject myself to the extent that I'm

25 going to tell the parties how to litigate this.    The

1  plaintiffs have made a decision as to -- that they think they

2  want to move forward on a point of law.   The Trustee has made

3  a decision that they may add -- they may file a third-party

4  complaint, or join some other parties.   That may bring Mr.

5  LaTour's client in here as the lienholder.   It may not.

6  Parties can make a determination as to whether they want to

7  intervene.

8          So at this point I'm going to leave it to the

9  lawyers.   At some point, you know, I -- I'll get more involved

10 either obviously through dispositive motions, and maybe in

11 terms of pre-trial maneuvers.

12         So let's -- also we'll status -- let's status that

13 on the 27th of July also.   That will give you time to file

14 your answer; that will give you time to file your motions;

15 that will give them time to determine if they're going to add

16 third parties; or it will give parties time to determine

17 whether they need to come forward and try to protect the

18 interests that they have.

19         I'm perfectly willing at this time to consider the

20 concept and to move forward with the concept of trying to

21 separate this out, but I'm also very cognizant of the fact

22 that everybody -- or, not everybody -- a lot of people have

23 raised issues today as to the potential overlap and how that

24 might or might not work at the end of the day.   And I'm making

25 no -- I'm making no call on that at this preliminary stage.

1          Okay.  Is there anything else that we can

2   accomplish.  I'd like for the plaintiffs and Friona to do an

3   order, to submit an order which continues -- well, first of

4   all grants their twenty-day request to file an amended

5   complaint.  You know, one of the things I was thinking -- the

6   parties that you haven't served that are already represented

7   by lawyers in this case, maybe you can get an arrangement that

8   they'll accept service on behalf of their clients.  I don't

9   want this thing delayed by summons issues if we've already got

10  counsel involved.

11          I don't know if that's the case or not, but that's

12  the kind of cooperation that I would anticipate between

13  counsel.  And giving us -- and in that case also I would like

14  you, before you submit the order, to talk to -- to circulate

15  some possible dates for your initial Rule 16 conference.  And

16  I understand, not everybody might be able to agree on a date

17  when you've got this many parties involved; but you find a

18  date that accommodates as many as possible, and plug that into

19  your order.  And talk to debtor's counsel about maybe putting

20  some description of the items to be discussed in that order,

21  to give some parties some notice as to the kind of things

22  you're going to try to accomplish, and then say that the Court

23  will conduct a Rule 16 conference also on July the 27th.

24          So, Friona counsel, have you got that?

25          MR. MASSOUH:  Yes, Your Honor.  I've got it down.

1          THE COURT:   Okay.   And then in Superior, I'd like

2   you to submit an order that schedules your next pre-trial

3   conference for July 27th.   I'm not going to put a deadline

4   today on dispositive motions because you don't know yet what

5   they're going to raise in their counterclaim, or who they're

6   going to add, if anyone.

7          So I'm going to let you look at that before you make

8   the determination as to whether your strategy is going to stay

9   the same or be changed.

10          Okay, anything else today?   From anyone?   All

11   right, we're adjourned.

12          ATTORNEYS:   Thank you, Your Honor.

13   (End at 11:19:26 a.m.)

14                * * * * * * * * * * *

15          I certify that the foregoing is a true and accurate

16   transcript from the digitally sound recorded record of the

17   proceedings.

/s/  *Gloria C. Irwin*                                    5/23/2011
**GLORIA C. IRWIN**
**Certified Transcriber NJ AOC200**                                    **Date**
    **Federal  CERT #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299  1-800-471-0299**
    **FAX  609-927-9768**
**e-mail  irwingloria@comcast.net**
✔

**#10-93904-BHL-11        AP# 11-59088   #11-59093                5-11-2011**