IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC | ) | |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor | ) | |
| | ) | |

**SUPPLEMENTAL OBJECTION OF JOPLIN REGIONAL
STOCKYARDS TO THE TRUSTEE'S PURCHASE MONEY
CLAIMS REPORT, MOTION TO TRANSFER FUNDS AND
NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT**

Comes now Joplin Regional Stockyards ("Joplin"), through counsel, and respectfully submits this Supplemental Objection ("Supplemental Objection") to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account ("Trustee Motion") (Doc. No. 501). This Supplemental Objection is filed in addition to the Objection raised by Joplin in its Objection to the Trustee's Purchase Money Claims Report (Doc. No. 515) ("Initial Objection") which was filed to prevent an immediate transfer of funds pursuant to the Financing Order.[1] In support of Objection, Joplin states as follows:

**A.    FACTUAL BACKGROUND**

1.     On December 6, 2010, an involuntary bankruptcy petition was filed against the Debtor. (Doc. No. 1.)

---

[1] Capitalized terms not defined herein shall have the meaning given them in the Initial Objection.

2. In connection with the involuntary petition, the petitioning creditors also filed an Emergency Motion for the appointment of a Trustee (Doc. No. 27) ("Trustee Motion"). As part of the Trustee Motion, the petitioning creditors alleged, based upon the complaints in the Ohio receivership action ("Receivership") that the Debtor was engaged in a check kite scheme involving at least between $80,000,000 and $130,000,000 of bad checks.

3. The Court, in an order entered December 16, 2010 (Doc. No. 77) ("Trustee Order"), approved the Trustee Motion and ordered the appointment of a Trustee. One of the two reasons given by the Court for appointing the Trustee in this case was the Debtor's purchasing of cattle by bad checks.

4. On March 8, 2011, the Debtor filed its Statement of Financial Affairs ("SOFA"). In its answer to Question 3b and 3c, Debtor disclosed that the Debtor transferred over $2.3 billion to related companies and individuals.

5. From these facts, it is clear that the Debtor was fraudulently purchasing cattle during all of calendar year 2010 with "kited" check funds.

6. Prior to the involuntary bankruptcy, the Debtor's "business model" involved the buying and selling of cattle, often under contracts for future delivery ("Forward Contracts"). See Emergency Motion for Order Authorizing Chapter 11 Trustee to Settle a Class of Contracts Pursuant to B.R. 9019(B) ("Settlement Motion") (Doc. No. 115).

7. On information and belief, the Debtor made or lost only a small fraction of the amounts to be paid to the cattle seller under the Forward Contracts in each transaction.

8. The Debtor also directly purchased cattle from ranchers, farmers and other cattle producers (collectively "Farmers") by "paying" for the cattle with checks ("Cattle Purchases"). On information and belief, the Debtors obtained several million dollars worth of cattle by providing worthless checks to Farmers in the weeks prior to the involuntary bankruptcy.

9. On January 6, 2011, the Trustee filed an Emergency Motion Regarding Payments on Debtor's Cattle Sales ("Cattle Payment Motion") (Docket No. 141). Under the Cattle Payment Motion, the Trustee sought an order allowing buyers of Cattle ("Buyers") to pay the Debtor for those cattle and giving the buyers some indemnification from potential claims of other parties to those cattle and/or their proceeds ("Purchase Money Claims").

10. The Cattle Payment Motion was approved by an Order of this Court on January 24, 2011) ("Cattle Payment Order"). The Cattle Payment Order required the Trustee to file a "Purchase Money Claim Report" within 90 days of the May 2, 2011 Bar Date for filing Purchase Money Claims. The Purchase Money Claim Report could also serve as an objection to Purchase Money Claims.

11. The Cattle Payment Motion Order also sought approval of a mechanism and deadline for parties with Purchase Money Claims to assert their claims (whatever

3

their basis may be) as "Purchase Money Claims" on or before May 2, 2011 ("Purchase Money Creditors").

12. Also under the Cattle Payment Motion, the Trustee requested that all payments from Buyers would be escrowed in a segregated account ("Account") pending further Order of this Court until all Purchase Money Claims of Purchase Money Creditors were resolved or reconciled. (See Cattle Payment Motion at para. 8.)

13. Paragraph V of the Cattle Payment Order also provides that "The Trustee, upon notice of the Court at any time after the Trustee files the first Purchase Money Claim Report, may release proceeds from the Account that the Trustee determines are not necessary for the payment of any Purchase Money Claim."

14. On March 3, 2011, this Court entered the Financing Order concerning the use of cash collateral and DIP Financing (Doc. No. 400) ("Financing Order"). Under paragraph O of the Financing Order, the Court found as a matter of fact that:

> "The allowance of the Fifth Third POC and the claims asserted therein shall not act as a waiver or release of any other rights or claims that the Trustee or any other party in interest may have against Fifth Third, and Fifth Third shall retain all rights, claims, defenses it may have."

See also Financing Order at paragraph 10(c).

15. Under the terms of Paragraph 6 of the Financing Order, prior to any transfer of "excess cash collateral" to Fifth Third or any "use" of cash collateral by the Trustee, the Trustee must serve a Notice of Proposed Transfer or Use, identifying the amount and source of the funds, and proposed disposition, and must wait seven (7) days for the filing of any objections. Any objections to the proposed transfer to Fifth Third not

4

made within the seven (7) day-period are waived and the Trustee may transfer or use the funds as proposed.

16.  Further, under the Financing Order, any surrender of excess cash collateral to Fifth Third will be free and clear of any claim by any party.  See Financing Order at para. 4(d).

17.  On April 25, 2011 Joplin filed its Purchase Money Claim in the amount of $1,276,925.75 (Claim No. 150).

18.  On May 23, 2011, the Chapter 11 Trustee filed the Trustee Motion (Doc. No. 501).

19.  Under Exhibit A of the Trustee Motion, the Trustee received $97,868.78 from Harlan Feeders which constitutes proceeds from cattle under contracts which Joplin terminated with Eastern and in which by its Purchase Money Claim, Joplin claims ownership of.

20.  Under the Trustee Motion, the Debtor requested that the Court enter an order: "(1) disallowing the 'Disputed Purchase Money Claim' (defined in paragraph 6 below) as secured claims; and (2) authorizing the Trustee to transfer the funds [not subject to claims of Superior Livestock] described on attached Exhibit A (the 'Cattle Sales Proceeds') from the Holding Account (as defined in paragraph 4 below) to the Trustee's general operating account for use as cash collateral of Fifth Third . . ."

21. As there is no workable identification of which claims are considered Disputed Purchase Money Claims, no notice has been properly given to any party as to whether their claim is being objected to by the Debtor.

22. The primary relief the Debtor seeks in the Trustee Motion is found in paragraph 10 of the Trustee Motion, which provides:

> 10. The Cattle Sales Proceeds that the Trustee proposes to transfer from the Holding Account do not represent the balance of the Holding Account as, out of an abundance of caution, the Trustee will leave $1,438,147.97 in the Holding Account pending resolution of potential claims in and to those specific proceeds (such as the Superior Purchase Money Claim). The Cattle Sales Proceeds to be transferred to the Trustee's general operating account represent funds as to which no third party other than Fifth Third can assert a valid lien or claim.

**B.   LEGAL ARGUMENT**

23. Initially, Joplin adopts the objections made in its Initial Objection and incorporates them by reference as if fully restated herein.

24. Joplin also objects to the Trustee Motion for the following reasons:

> **A.   The Trustee Motion does not comply with the requirements of the Cattle Payment Order.**

25. In the Cattle Payment Order, the Court required the Debtor to file a listing of the asserted Purchase Money Claims, as well as a statement that the Trustee has determined that each claim is either: (1) valid and entitled to payment; (2) disputed or invalid; or (3) not yet reconciled. Cattle Payment Order at para Q.

6

26. In paragraph 6 of the Trustee Motion, the Trustee does not identify which claims it believes are Purchase Money Claims and notes that it had difficulty in determining which claims are Purchase Money Claims. This confusion, however, was primarily caused by the Debtor which after the Purchase Money Claim bar date of May 2, 2011 was established (Doc. No. 461), also established May 2, 2011 as the general bar date in this case.

27. The Cattle Payment Order also provides, in paragraph V that the Debtor may release proceeds from the escrow account "that the Trustee determines are not necessary for the payment of any Purchase Money Claim."

28. The Trustee Motion violates the terms of the Cattle Payment Order in four respects. First, the Debtor neither lists nor otherwise defines the Purchase Money Claims it is objecting to in the Trustee Motion and only indirectly states its position on the Purchase Money Claims in paragraph 6 by stating, "None of the claims that assert a Purchase Money Claim are valid claims to the Cattle Sales Proceed. <u>Because it is not clear which claims assert a Purchase Money Claim to specific Cattle Sales Proceeds</u> . . . the Trustee disputes the secured status of all filed Purchase Money Claims . . . ." [emphasis added]. This lack of any form of detail is contrary to the requirements of the Cattle Payment Order.

29. Second, the Debtor does not in any way articulate either the legal or factual basis for any objection to any Purchase Money Claim. The only statement the Debtor makes on this matter is the Trustee's opinion that only Fifth Third can assert a

7

secured claim against the Cattle Sale Proceeds and his conclusion that no party can hold "a valid lien in or claim against the Cattle Sale Proceeds . . ."

30. These "objections," even if they had been made in compliance with the Court's Cattle Payment Order, are not sufficient to overcome the prima facia validity of filed proofs of claim. See e.g. Bankruptcy Rule 3001(f); Hood v. American Exp Centurion Bank, 2011 WL1519650 (S.D. Ill. April 20, 2011) (holding objecting party must support objections to claims with substantial evidence to rebut the proof of claim). See also In re Fidelity Holding Co., Ltd., 837 F.2d 696, 698 (5th Cir.1988) ("Under Bankruptcy Rule 301(b), a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets. The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail."); In re Hollars, 198 B.R. 270, 271 (Bankr. S.D. Ohio 1996) ("A bald assertion, a mere conclusory statement, is, in and of itself, insufficient to rebut the presumption of validity.").

31. Third, the Trustee Motion appears to be primarily an attempt to obtain Court approval of the Trustee's attempt to transfer funds to the Trustee's operating account and Fifth Third rather than an effort to resolve claims in a normal claim dispute process. See Trustee Motion of paragraph 10. The Trustee Motion therefore violates the provisions of the Cattle Payment Order as it ignores serious detailed claim objections and focuses on merely transferring funds.

32. Finally, the Trustee Motion misconstrues the terms of paragraph V. of the Cattle Payment Order which provides:

8

> "The Trustee, upon notice to the Court at any time after the Trustee files the first Purchase Money Claim Report, may release proceeds from the account that the Trustee determines are not necessary for the payment of any Purchase money claim."

33.     As noted below, there are numerous Purchase Money Claims, including Joplin's, which have been made to the Cattle Sales Proceeds which do not involve claims of a security interest and which could entitle the Purchase Money Creditor to a portion of the Cattle Sales Proceeds that would be superior to the claims of Fifth Third.  As noted above, at least $97,868.78 of the funds the Debtor proposes to transfer from its escrow account are funds Joplin has a direct claim against.  In the Trustee Motion, they only address security interest and priority issues.  The Trustee Motion ignores these other Purchase Money claims to the Cattle Sale Proceeds.  Therefore, the Debtor's request to "release proceeds" should be overruled until all claims, including Joplin's entire Purchase Money Claim, to the Cattle Sale Proceeds are resolved.

34.     In the Trustee Motion, other than the Trustee's "statement" that the Debtor believes there are no valid secured claims to the funds in the escrow account other than Fifth Third, the Debtor has done nothing to establish the funds "are not necessary for the payment of Purchase Money Claims" for purposes of the Cattle Payment Order, nor has the Debtor addressed any issues related to Joplin or any other parties' Purchase Money Claims.  Funds "necessary to pay" Purchase Money Claims would include all funds needed to pay any timely asserted Purchase Money Claims until the Trustee's objections have been fully resolved.  The definition of "Purchase Money Claims" in the Cattle Payment Order does not exclude "Disputed" Purchase Money Claims.

35. By the Trustee Motion the Debtor has failed to establish that any funds in the Trustee's escrow account are excess cash collateral for purposes of the Financing Order and therefore, the funds should not be released to the Trustee's operating account as if they are released and became "excess cash collateral" for purposes of the Financing Order they could be transferred to Fifth Third Bank free and clear of claims.

      **B.    The Trustee Motion, to the Extent it Constitutes an Objection to the Purchase Money Claims, Violates Bankruptcy Rule 3007.**

36. The Trustee Motion also is improper as an omnibus claim objection[2] because it fails to comply with Bankruptcy Rule of Procedure 3007 which provides in pertinent part:

> (c) Limitation on Joinder of Claims Objections
>
> Unless otherwise ordered by the Court or permitted by subdivision (d), objections to more than one claim shall not be joined in a single objection.
>
> (d) Omnibus Objection
>
> Subject to subdivision (e), objections to more than one claim may be joined in an omnibus objection if all the claims were filed by the same entity, or the objections are based solely on the grounds that the claims should be disallowed, in whole or in part, because:
>
> (1) they duplicate other claims;
>
> (2) they have been filed in the wrong case;
>
> (3) they have been amended by subsequently filed proofs of claim;
>
> (4) they were not timely filed;

---

[2] Assuming the Court, in the Cattle Payment Motion, permitted the Debtor to file an omnibus claim objection to the Purchase Money Claims, the Trustee was still required to comply with the provisions of Bankruptcy Rule 3007(d) and (e).

10

> (5) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a Court order;
>
> (6) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;
>
> (7) they are interests, rather than claims; or
>
> (8) they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.
>
> (e) Requirements For Omnibus Objection
>
> An omnibus objection shall:
>
> (1) state in a conspicuous place that claimants receiving the objection should locate their names and claims in the objection;
>
> (2) list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;
>
> (3) state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds;
>
> (4) state in the title the identity of the objector and the grounds for the objections;
>
> (5) be numbered consecutively with other omnibus objections filed by the same objector; and
>
> (6) contain objections to no more than 100 claims.

37.     The Trustee Motion is improper as an omnibus claim as it does not object to the Purchase Money Claims on any grounds set forth in Bankruptcy Rule 3007(d).

38. Further, the Trustee Motion does not meet the technical requirements of an omnibus objection as it fails to meet even the basic informational requirements of Bankruptcy Rule 3007(e).

39. As the Debtor fails to comply with either the provisions of Bankruptcy Rule 3007(d) or 3007(e), the Trustee Motion is improper and must be denied.

### C. The June 24, 2011 Hearing is Premature as No Discovery has Been Undertaken

40. Claims objections are "contested matters" and subject to the provisions of Bankruptcy Rules 3007 and 9014. See e.g. In re Kmart Corp. 371 B.R. 823 (Bkrtcy N.D. Ill. 2007. Further, as noted in In re Nejedlo, 324 B.R. 697 (Bkrtcy. E.D. Wic 2005), "discovery rules apply to contested matters such as claim objections. Bankrutpcy Rule 9014(c)."

41. Here, without allowing any discovery, the Debtor is attempting to object to the Purchase Money Claims under a Bankruptcy Rule 7012 "Judgment on the Pleadings Standard.

42. A motion for judgment on the pleadings is properly granted only if the undisputed facts appearing in the pleadings, supplemented only by facts which the Court can take proper judicial notice, clearly entitle the moving party to judgment as a matter of law. National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 358 (7th Cir. 1987); Flora v. Home Federal Sav. & Loan Ass'n, 685 F.2d 209, 211 (7th Cir. 1982); In re Amica, Inc., 130 B.R. 792, 795 (Bankr.N.D.Ill. 1991). Therefore, a motion for judgment on the pleadings can be granted only when there are no material allegations of fact in

12

dispute and only questions of law remain. Flora, 685 F.2d at 211; National Fidelity, 811 F.2d at 358; Cagan v. Intervest Midwest Real Estate Corp., 774 F.Supp. 1089, 1091 n. 2 (N.D.Ill. 1991). A.D.E. Inc. v. Louis Joliet Bank & Trust Co., 742 F.2d 395, 396 (7th Cir. 1984).

43. In the present case, there are numerous facts which relate to Joplin's Purchase Money Claim, as well as other Purchase Money Claims, which will need to be investigated through discovery before the Trustee Motion and its claim objections can be resolved. As noted above, Joplin objects to and denies the conclusions of the Debtor in the Trustee Motion. Therefore to the extent the Trustee is seeking a final hearing on any portion of the merits of any Purchase Money Claim, at the June 24, 2011 hearing, such a request is improper and the June 24, 2011 hearing should only be treated as an initial status conference.

## CONCLUSION

Here, the Debtor is attempting to "resolve" Joplin's claim through a summary proceeding, without affording Joplin discovery or any of the protections granted to contested matters. This violates the provisions of the Cattle Payment Order, as well as Joplin's rights as creditor. Therefore, for the reasons set forth above, Joplin requests that the Trustee Motion and all relief requested thereunder be denied.

Respectfully submitted,

/s/ C.R. Bowles, Jr.
John W. Ames
C.R. Bowles, Jr.
Ivana B. Shallcross

13

GREENEBAUM DOLL & MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40402
Phone: 502-587-3746
Facsimile: 502-540-2274
e-mail: crb@gdm.com

COUNSEL FOR JOPLIN REGIONAL STOCKYARDS

*/s/ John Rogers*
John Rogers
RUBIN & LEVIN, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN  46204-2161
Phone:  317-634-0300
Facsimile:  317-263-9411
e-mail:  JohnR@rubin-levin.net

CO-COUNSEL FOR JOPLIN REGIONAL STOCKYARDS

## CERTIFICATE OF SERVICE

I hereby certify that on June ___, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

I further certify that on June ___, 2011, a copy of the foregoing pleadings was served via electronic mail transmission on the following:

| | |
|---|---|
| David A. Domina | Ashley S. Rusher |
| ddomina@dominalaw.com | asr@blancolaw.com |

*/s/ C.R. Bowles, Jr.*
COUNSEL FOR THE PETITIONING CREDITORS

lou_4422299_2 (2).doc

14