UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Basil H. Lorch III |
| ) | |

**RESPONSE AND OBJECTION
OF STOCKMAN OKLAHOMA
LIVESTOCK MARKETING, INC.
TO THE TRUSTEE'S PURCHASE
MONEY CLAIMS REPORT, MOTION TO
TRANSFER FUNDS AND NOTICE OF
<u>RELEASE OF PROCEEDS FROM ACCOUNT</u>**

Stockman Oklahoma Livestock Marketing, Inc. ("SOLM") responds and objects to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account (the "Report") filed by James M. Knauer, chapter 11 trustee (the "Trustee"). In support hereof, SOLM states:

**<u>Introduction</u>**

1.  In the Report, the Trustee states that he "has concluded that no person other than [Fifth Third Bank, N.A.] can assert a valid perfected lien in or to the Cattle Sales Proceeds."

2.  SOLM filed a claim to certain proceeds from cattle sales by Eastern Livestock Co., Inc. ("Eastern"). SOLM asserted that certain cattle and consequently the proceeds from the sale of the cattle are subject to a constructive trust in favor of SOLM under Oklahoma law.

3.  The Trustee in his Report has offered no rationale or argument as to why SOLM allegedly is not entitled to a constructive trust on the cattle and the proceeds of the cattle.

**Factual Background**

4. SOLM operates as a third-party broker for ranchers and other producers of cattle in connection with the sale of their cattle.

5. SOLM acted as broker for the persons/entities listed on the attached Exhibit "A" in the column labeled "Seller" (the "Seller" or "Sellers"). In each case, the cattle were sold to Eastern, SOLM paid to the Seller the purchase price for which the cattle were sold, and SOLM is entitled to assert the rights of the Sellers.

6. With respect to each sale reflected on the attached Exhibit A, the cattle sold were shipped, at Eastern's direction, to the person or entity listed on the attached Exhibit A in the column labeled "Shipped To."

7. Eastern issued to SOLM three checks in payment of the cattle: (i) check number 33699 dated November 1, 2010 in the amount of $516,569.22, (ii) check number 33701 dated November 2, 2010 in the amount of $358,448.46, and (iii) check number 35363 dated November 8, 2010 in the amount of $151,170.88. Copies of the checks are attached hereto as Exhibits "B," "C," and "D." All three checks were subsequently returned unpaid and marked "Refer to maker."

**Constructive Trust**

8. At the time Eastern purchased the cattle from SOLM, Eastern was engaged in a massive fraud and check-kiting scheme. The details of the scheme have been the subject of numerous pleadings filed with this Court by Fifth Third Bank and also described in some detail by the Trustee in his March 7, 2011 entry to his internet blog. See Exhibit "E". The purchase of the cattle from SOLM and the issuance of its checks to SOLM was part of Eastern's fraud and check-kiting scheme. Furthermore, Eastern knew at the time it agreed to purchase the cattle

7040280_1.DOC

from SOLM that it lacked sufficient funds to pay SOLM and its representation that it would pay SOLM was fraudulent.

9. Eastern obtained the cattle from SOLM by means that constituted unconscionable conduct, artifice, concealment, and/or questionable means.

10. Upon obtaining the cattle from SOLM, Eastern held the legal title to the cattle contrary to equity and good conscience.

11. Eastern acquired the cattle from SOLM in Oklahoma, the cattle were delivered in Oklahoma, and Eastern resold the cattle in Oklahoma. Oklahoma law governs the characterization of Eastern's interest in the cattle at the time it acquired them from SOLM. *See, City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3rd Cir. 1994) ("we look to state law to determine whether the claimant has shown a trust relationship…").

12. Under Oklahoma law, Eastern acquired the cattle subject to a constructive trust in favor of SOLM. *See, Cacy v. Cacy*, 1980 OK 138, ¶ 7, 619 P.2d 200 ("A constructive trust is … imposed against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.").

13. Upon Eastern's sale of the cattle to its buyers, Eastern's right to the proceeds from the sale was subject to a constructive trust in favor of SOLM. *See*, Caryl A. Ysenbaard et al., The Law of Trust and Trustees § 471, pp. 3-5 (3rd ed. 2009) ("If the property has been sold, the trust attaches to the proceeds held by the defendant or to other property held by the defendant into which the original property or its proceeds can be traced.").

14.     Because the proceeds of the cattle are held subject to a constructive trust in favor of SOLM, the estate holds bare legal title and equitable title belongs to SOLM. 11 U.S.C. § 541(d).

**Identification of Funds Claimed by SOLM**

15.     Prior to the commencement of the bankruptcy case, SOLM sold a load of cattle to Eastern for the purchase price of $103,742.80. SOLM believes Eastern resold the cattle to Doug Sunderman for the purchase price of $107,660.36, identified as entry number 64 on Exhibit A to the Report.

16.     As to the other cattle subject to SOLM's claim, the information needed for SOLM to identify the payor/current holder of the funds as to which SOLM's constructive trust applies is in the possession of the Trustee (and not SOLM) and the Trustee has failed to furnish sufficient information to enable SOLM to identify which funds listed in Exhibit A to the Report are subject to such constructive trust. In particular, Exhibit A to the Report does not reflect the seller to Eastern so that the funds paid to the Trustee can be matched with the cattle sold to Eastern. To the extent the Trustee holds funds that are the proceeds of any of the other sales referred to in Exhibit A hereto, SOLM asserts that such proceeds are subject to a constructive trust in favor of SOLM. SOLM has issued discovery to the Trustee for the purpose (among others) of identifying whether proceeds held by the Trustee relate to sales by SOLM and SOLM requests time to complete that discovery and supplement its response to the Report to reflect the results of that discovery. In addition, the Court's order applies to all proceeds recovered and to be recovered by the Trustee. The Trustee has not indicated that he has recovered all cattle held by Eastern. Accordingly, it is impossible for SOLM to know whether the cattle or proceeds from the sale thereof listed on its exhibit A will eventually come into the hands of the Trustee.

4

17. SOLM asserts a constructive as to other funds not listed in Exhibit A to the Report. The Trustee in the Report does not appear to seek a determination as to such funds or to dispose of such funds. SOLM identifies such funds solely for the purpose of preserving its rights as to those funds:

a. Prior to the commencement of the bankruptcy case, SOLM sold two loads of cattle to Eastern for the purchase prices of $47,030.11 and $36,830.14. SOLM is aware of the fact that the cattle were delivered to Ward Feedyard and resold to a customer of Eastern. SOLM believes that the cattle were resold to a James Perschbacher of Austin, Texas and that the proceeds of the sale are tied up in the Eastern Bankruptcy. However, the proceeds cannot be identified on the Exhibit A to the Trustee's Report. Without discovery, SOLM cannot determine whether the proceeds from the sale of these cattle are listed on Exhibit A to the Report or, are otherwise subject to the bankruptcy.

b. Prior to the commencement of the bankruptcy case, SOLM sold a load of cattle to Eastern for the purchase price of $179,168.53. The cattle were sold by Eastern to William Bush. Bush has paid SOLM $179,168.53 directly for the cost of the cattle. SOLM asserts that the funds paid by Bush to SOLM were subject to a constructive trust in favor of SOLM and not property of the estate, and SOLM is entitled to keep those funds. It appears to SOLM that such amounts are not listed on Exhibit A to the Report.

c. Certain contracts for the sale of cattle by Eastern to others were assigned by Eastern to SOLM by Assignment dated November 8, 2010, and Eastern otherwise repudiated its contracts with SOLM for the purchase of the cattle subject to the assigned contracts. Pursuant to an agreed order entered by this Court, SOLM has paid or is paying a portion of the sales price

received by SOLM pursuant to the assigned contracts to the Trustee pending a determination as to ownership of those funds.

    d. Additionally, pursuant to one of the assigned contracts, SOLM is entitled to $42,893.19 held by Cactus Feedyard that is the subject of an interpleader claim asserted by Cactus Feedyard. SOLM believes that the proceeds of the assigned contracts do not represent "Purchase Money" funds subject to this Court's order governing the payment of and claims as to Purchase Money. However, to the extent this Court's bar order with respect to Purchase Money Claims is intended to govern those funds, SOLM asserts a purchase money claim to such funds.

    e. Prior to the commencement of the bankruptcy case, William Bush ("Bush") sold to Eastern certain cattle in exchange for Eastern's check number 35359 dated October 29, 2010 in the amount of $45,135.91. A copy of that check is attached as Exhibit "F." On December 9, 2010, Bush assigned to SOLM all of his rights, claims and causes of action with respect to the $45,135.91 check, the cattle sale to which it relates, and all related contracts and other rights associated therewith, and SOLM is entitled to assert all such rights of Bush. Without discovery, SOLM cannot determine whether the proceeds from these cattle are held by the Trustee.

**Conclusion**

18. The Trustee has offered no cogent basis for ignoring SOLM's claim to a constructive trust.

19. Of the funds listed in Exhibit A to the Report, $103,742.80 is held by the Trustee subject to a constructive trust in favor of SOLM. Additional amounts might also be held by the Trustee subject to a constructive trust but SOLM requires additional time to conduct discovery in order to identify such funds.

7040280_1.DOC

Wherefore, SOLM objects to the Report and urges the Court to deny the relief sought by the Trustee in the Report and order the $103,742.80 paid to SOLM.

Respectfully submitted,

/s/ Ross A. Plourde
ROSS A. PLOURDE, OBA #7213
MCAFEE & TAFT A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102
405/235-9621
405/235-0439 (FAX)
Ross.plourde@mcafeetaft.com
*Attorneys for Stockman Oklahoma Livestock Marketing, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr.<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M. King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S. Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |

7

| | | |
|---|---|---|
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A. Konstantinopoulos<br>ndohbky@jbandr.com | Karen L. Lobring<br>lobring@msn.com |
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net | Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com |
| John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com | Sean T. White<br>swhite@hooverhull.com |
| Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com | Michael W. McClain<br>mike@kentuckytrial.com |
| William E. Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com | Christopher E. Baker<br>cbaker@hklawfirm.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C. Scherer<br>tscherer@binghammchale.com | Dustin R. DeNeal<br>Dustin.deneal@bakerd.com |
| Kevin M. Toner<br>kevin.toner@bakerd.com | James M. Carr<br>Jim.carr@bakerd.com | Terry E. Hall<br>Terry.hall@bakerd.com |
| Wendy W. Ponader<br>Wendy.ponader@bakerd.com | | |

/s/ *Ross A. Plourde*
ROSS A. PLOURDE

8

7040280_1.DOC

## November 1, 2010 Deposit

| Rep | Head Ct | Sex | Contract # | Loaded Date | Seller | Shipped To: | Original Sale Price Gross Total $ |
|---|---|---|---|---|---|---|---|
| Gage | 81 | Sts | C-484 | 10/19/2010 | Lowe Brs | Hale Center Cactus | $ 54,381.65 |
| Wollenberg | 67 | Sts | 4901 | 10/22/2010 | R. Wilberg | Cactus @Ulysses | $ 52,879.61 |
| Farmer | 206 | Sts | 4571 | 10/22/2010 | Little | Cactus @Hale Center | $ 161,307.46 |
| Gage | 83 | Hfs | 4910 | 10/25/2010 | McGilvray | Heritage Sublette | $ 49,115.30 |
| Gage | 57 | Sts | 4914 | 10/28/2010 | Schenk | Cactus @Ulysses | $ 53,144.92 |
| Stone | 34 | Hfs | 4526 | 10/28/2010 | Top Farms | 5 Rivers @ Yuma, CO | $ 26,480.00 |
| Stone | 26 | Sts | 4526 | 10/28/2010 | Top Farms | 5 Rivers @ Yuma, CO | $ 22,123.30 |
| Eddie | 60 | Sts | 4913 | 10/29/2010 | Wornat Land | Cactus @Stratford | $ 50,106.87 |
| Bartholomew | 76 | Hfs | C-455 | 10/29/2010 | Collins | Ward Fdrs@Larned,KS | $ 47,030.11 |
| | | | | | | | $ 516,569.22 |

Total Count    690                              Eastern's returned check

## November 2, 2010 Deposit

| Rep | Head Ct | Sex | Contract # | Loaded Date | Seller | Shipped To: | Original Sale Price Gross Total $ |
|---|---|---|---|---|---|---|---|
| Hutchison | 62 | Sts | C-458/4575 | 10/29/2010 | Bar H | Cimmaron Fdrs Griggs, OK | $ 50,459.97 |
| Gage | 282 | Sts | 4718 | 10/29/2010 | Hilton Farms | Bush | $ 179,168.53 |
| Bartholomew | 58 | Hfs | C-456/4501 | 11/1/2010 | Collins | Ward Fdrs@Larned,KS | $ 36,830.14 |
| Hutchison | 58 | Hfs | 4859 | 11/1/2010 | Mitchell | Supreme @Liberal KS | $ 43,817.49 |
| Cody | 70 | Hfs | 4478 | 11/1/2010 | Crews | Heritage | $ 48,172.33 |
| | | | | | | | $ 358,448.46 |

Total Count    530                              Eastern's returned check

## November 8, 2010 Deposit

| Rep | Head Ct | Sex | Contract # | Loaded Date | Seller | Shipped To: | Original Sale Price Gross Total $ |
|---|---|---|---|---|---|---|---|
| Hutchison | 106 | Sts | 4915 | 11/2/2010 | Anderson | Norfolk Nebraska | $ 103,742.80 |
| Cody | 73 | Hfs | 4670 | 11/1/2010 | Jones | Heritage @Sublette KS | $ 47,428.08 |
| | | | | | | | $ 151,170.88 |

Total Count    179

Total of Eastern Checks returned "Refer To Maker"     $     1,026,188.56

**EXHIBIT A**

```
SpiritBank                    000    11    356  Page:              1
1800 S Baltimore                               Date:       11/05/2010
Tulsa, OK 74119                                Account:      11117207

Telephone: 918-712-9292
```

# EXHIBIT B

```
Stockman Oklahoma Livestock Mkting Inc
Dba Apache Auction Market
Custodial Acct
PO Box  939
Apache OK  73006-0939


    ***********************************************************
    *              NOTICE OF ITEMS CHARGED                     *
    *              BACK TO YOUR ACCOUNT                        *
    ***********************************************************

    THE FOLLOWING ITEMS HAVE BEEN RETURNED AND ARE BEING
    CHARGED BACK TO YOUR ACCOUNT

..............Payor................    .......Reason.......      Amount
Eastern Livestock                       Refer to Maker           516,569.22

Total Items Charged Back to your Account                         516,569.22
YOUR ACCOUNT BALANCE AFTER THIS ACTIVITY IS:                     938,019.90
```



```
*111000038*
11/04/2010
6117715233

This is a LEGAL COPY of
your check. You can use it
   the same way you would
use the original check.


RETURN REASON-S
 REFER TO MAKER
```

REFER TO MAKER

NO. F 33699
Nov. 1st 20 10
135 West Market
New Albany, IN 47150
812-949-9035
EASTERN LIVESTOCK CO., LLC
PAY to the order of  SOLM        $516,569.22
Five hundred sixteen thousand five hundred sixty nine dollars 322/100 DOLLARS
Fifth Third Bank
Northern Kentucky
Eastern Livestock Co., LLC

⑈033699⑈ ⑆042100272⑆ 7480493837⑈

⑈033699⑈   ⑆042100272⑆   7480493837⑈         ⑈0051656922⑈

```
SpiritBank                        000   11    356  Page:           1
1800 S Baltimore                              Date:         11/08/2010
Tulsa, OK 74119                               Account:        11117207

Telephone: 918-712-9292
```

# EXHIBIT C

```
Stockman Oklahoma Livestock Mkting Inc
Dba Apache Auction Market
Custodial Acct
PO Box  939
Apache OK  73006-0939


    ***********************************************************
    *                  NOTICE OF ITEMS CHARGED                 *
    *                  BACK TO YOUR ACCOUNT                    *
    ***********************************************************

    THE FOLLOWING ITEMS HAVE BEEN RETURNED AND ARE BEING
    CHARGED BACK TO YOUR ACCOUNT

..................Payor................... .......Reason.......      Amount
Eastern Livestock                           Refer to Maker         358,448.46

Total Items Charged Back to your Account                           358,448.46
YOUR ACCOUNT BALANCE AFTER THIS ACTIVITY IS:                     1,369,310.64
```

```
*111000038*
11/05/2010
6511717552

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.


RETURN REASON-S
REFER TO MAKER
```

**REFER TO MAKER**

Check No. F 33701, dated Nov 2 2010
Eastern Livestock Co., LLC
135 West Market, New Albany, IN 47150
812-948-9036
PAY to the order of: SOLLE
$358,448.46
Three hundred fifty eight thousand four hundred forty eight dollars 46/100
Fifth Third Bank, Northern Kentucky
⑆033701⑆ ⑉042100272⑉ 7480493837⑈

033701   042100272   7480493837   00358448468

```
SpiritBank              000    11    356   Page:            1
1800 S Baltimore                          Date:      11/15/2010
Tulsa, OK 74119                           Account:    11117207

Telephone: 918-712-9292
```

# EXHIBIT D

```
Stockman Oklahoma Livestock Mkting Inc
Dba Apache Auction Market
Custodial Acct
PO Box  939
Apache OK  73006-0939


       ***********************************************************
       *                                                          *
       *              NOTICE OF ITEMS CHARGED                     *
       *                BACK TO YOUR ACCOUNT                      *
       *                                                          *
       ***********************************************************

       THE FOLLOWING ITEMS HAVE BEEN RETURNED AND ARE BEING
       CHARGED BACK TO YOUR ACCOUNT

.................Payor.................  .......Reason........        Amount
35363/EASTERN LIVESTOCK CO                REFER TO MAKER             151,170.88

Total Items Charged Back to your Account                             151,170.88
YOUR ACCOUNT BALANCE AFTER THIS ACTIVITY IS:                       3,600,990.96
```

```
*111000038*
11/12/2010
6611595847

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.

RETURN REASON-S
REFER TO MAKER
```



REFER TO MAKER

EASTERN LIVESTOCK CO., LLC
135 West Market
New Albany, IN 47150
812-949-9035

NO. F 35363
11-8 2010

PAY to the order of ___SOLM___  $151,170.88

One hundred fifty one thousand one hundred seventy dollars 88/100 DOLLARS

Fifth Third Bank
Northern Kentucky

Eastern Livestock Co., LLC

⑈035363⑈ ⑆042100272⑆ 7480493837⑈

⑈035363⑈   ⑆042100272⑆   7480493837⑈     ⑈0015117088⑈

# Eastern Livestock Bankruptcy

HOME    LITIGATION    TRUSTEE'S BLOG    CURRENT EVENTS    NEWS    CONTACT

Eastern's First Meeting of Creditors
03/30/2011                                                                       10 Comments

In every bankruptcy case, after the listing of the debtor's liabilities and assets is completed and filed with the Court, the law requires that creditors be sent notice of a meeting at which the debtor answers questions about their financial affairs and conduct. This meeting is called the *First Meeting of Creditors*. If you are a creditor of Eastern, you should have received such a notice. In Eastern's case, that meeting is scheduled to occur in New Albany, Indiana on April 5th at 10am EST.

In the case of Tom Gibson's voluntary bankruptcy, the First Meeting of Creditors has already occurred and we have posted a transcript of Gibson's testimony on the website which can be found here.

In a corporate bankruptcy, a representative of the debtor testifies at the First Meeting of Creditors. Normally, that is the president of the company, which would be Tom Gibson. Unfortunately since Eastern's bankruptcy was involuntary, Mr. Gibson will not be representing the Debtor, so that role falls to me as the Bankruptcy Trustee.

I am writing this in case some of you had planned to attend in the hope of questioning Mr. Gibson about Eastern matters, since that will not occur on April 5th.

That day will come soon, just not next week.

1    Like

10 Comments

### James A. Knauer

Jim Knauer has substantial experience in all aspects of business transaction and lending litigation, including environmental matters, shareholder litigation; business fraud; secured creditor enforcement; guaranty litigation; RICO actions; lender liability defense and class action representation; non-compete covenants; Jim Knauer has represented secured and unsecured creditors, bankruptcy trustees, creditor's committees and business debtors in many of the most significant business bankruptcy cases that have been filed in Indiana during the past 30 years. More Informaiton on Jim can be found:
http://www.kgrlaw.com/bios/knauer.php

Trustee Sues Willie Downs
03/22/2011                                                                       0 Comments

We filed suit today against Willie Downs, a former branch manager of Eastern Livestock. Our suit alleges that in the waning days of Eastern's operations, Downs


EXHIBIT E

converted more than $1.2 million dollars of checks payable to Eastern by having them endorsed to him.

This is our first - there are many more lawsuits to come.

0    Like

Add Comment

**Archives**

March 2011
February 2011
January 2011
December 2010

RSS Feed

## Bond Claims. . .
03/21/2011                                                                                   1 Comment

To those of you who made USDA Bond claims, the 60 day filing period expired at the beginning of March. We have made arrangements with the bonding company to turn over the bond funds and we are preparing a proceeding to address the claims process. Obviously the $875,000 bond that Eastern was required to post is far less than the total claims, so when we have completed the claims review process, those will claims that are allowed will receive a prorated payment based on the percentage that the amount of their claim bears to the total of all claims.

To speed up the process, we will likely handle this process outside of Eastern's bankruptcy proceedings, since the USDA bond money is not part of Eastern's bankruptcy estate.

0    Like

1 Comment

## When Did the Fraud Start? Part II
03/18/2011                                                                                   2 Comments

On March 14th, I commented that our analysis of sales activities of Eastern seemed to indicate that the phony sales which were used to prop up the cash flow started occurring in at least 2009. As we have continued to investigate, it now seems apparent this was going on in 2008 as well, just not on the same scale as in later years.

0    Like

2 Comments

## When Did the Fraud Start?
03/14/2011                                                                                   0 Comments

We continue to review Eastern's books to find out the depth and breadth of the fraud as well as who was involved. One of our initial questions has been answered. That is, did it start last year, or was it going on in 2009 too?

Our financial advisors prepared information reviewing sales by month in 2009 and then separated the sales by purchaser. We instantly saw a pattern in which sales to Gibson affiliates in 2009 were enormous, but then reduced dramatically at the end of Eastern's fiscal year. Eastern had a requirement in their bank financing that restricted credit for affiliated company receivables at year end, hence the need to get them paid (which was not possible since much of them were phony) or to create other receivables which would allow the affiliate receivables to be reduced. This appears to have been accomplished by booking year end sales to other Gibson affiliates whose connection was not known to Eastern's senior bank, so those amounts were counted and the level of account receivables was then maintained.

0   Like

Add Comment

## Check "Kite"
03/07/2011                                                                          0 Comments

One of the things that is done early in a bankruptcy case is to analyze transactions which occurred within 90 days preceding bankruptcy. In many instances payments that were made by an insolvent company can be recovered under bankruptcy laws which deem those payments to be preferential or "preferences."

As many of you have read, Eastern's finances were being pumped up by what is commonly called a check "kite." A check kite occurs when a check drawn on another bank is deposited into a checking account and the deposited check is no good. The banking system will provisionally clear this check for a couple of days which gives the maker of the check time to deposit another check into its own account equal in value to the check they just issued so the bad check presented for deposit appears to be covered by the new deposit.

A kite can occur between two banks where the holders of checking accounts issue NSF checks to each other, timing the deposits so that each check is covered by a check from another bank. Typically these deposits are required to be larger and larger hence the use of the term kite is applied to describe how the amounts involved get higher and higher.

In the case of Eastern, our preliminary analysis has identified a multi-party check kiting scheme. During the 90 days preceding bankruptcy, Eastern issued $8.8 million dollars of checks to Ed Edens, IV, $237 million worth of checks to GP Cattle, $7.7 million worth of checks to Gary Seals, $11.6 million worth of checks to J & L Cattle and $365 million worth of checks to Thomas Gibson. Obviously, each of these checks were drawn on Eastern's account and had to be covered by a legitimate check or a fictitious deposit before it was honored by Eastern's bank.

We are in the process of analyzing deposits to Eastern's accounts and once that process is completed we will have a better idea of which checks and deposits were legitimate and which checks and deposits were fiction. We have initially concluded that most of the

Case 10-93904-BHL-11   Doc 545   Filed 06/17/11   EOD 06/17/11 12:16:39   Pg 16 of 18

above described transactions were phony.

0   Like

Add Comment

## Apologies to all
02/18/2011                                                                          0 Comments

We made a strategic error in sending out several hundred letters to persons listed on Eastern's books as owing the company money. Sending the letter was not the mistake, it was using my office number and address for responding since I do not have the records at my location. Since Eastern's books are a mess and many of the records are missing, letters were sent to people who don't owe the company money and have proof of that. Unfortunately, most everyone chose to call me instead of responding by mail and I have been overwhelmed with daily phone calls. We made a second large mailing to holders of forward contracts about the same time and also used my office phone and address for a response. Once again, almost everyone choose to call. The problem that resulted was my inability to respond to everyone which I am sure was frustrating to those who left messages, so to all of you who are still waiting for a call I apologize. The calls were transferred to the personnel we have in Eastern's office, even that number of folks cannot return the calls as timely as we would like because each one necessitates a hunt through masses of paper to confirm the facts relayed by the caller. Needless to say the upshot of all of this was my inability to update the blog recently.

0   Like

Add Comment

## Largest Creditor – Fifth Third
02/18/2011                                                                          0 Comments

A number of creditors have asked me what is being done to investigate the claim of the largest creditor, Fifth Third Bank. We have hired independent counsel whose attention is devoted solely to this purpose. The Indianapolis Law firm of Hoover Hull is charged with this responsibility. We have subpoenaed about ten thousand records from Fifth Third, mostly checks and deposits as well as conducting a thorough review of the bank's loan documents. Additionally, we are talking with anyone who has knowledge that might effect allowance of the bank's claim. We have to determine by March 11 whether there are claims against Fifth Third and our review will be completed by that date. If you have information that you think may effect our review of the Bank's claim, please contact me or John Hoover at 317-822-4400.

0   Like

Add Comment

### FBI's Seizure of Funds
02/18/2011                                                                                    0 Comments

I reported bank in January that the FBI had seized approximately $4.7 million from the bank account of Tom Gibson and that we believed this money came from Eastern. We meet with the FBI to discuss the government's plans for the money. As my earlier entry noted, under federal forfeiture laws, the government is not required to return any of the funds if they can prove that it was the proceeds of the commission of the crime. We were assured by the FBI that the government has no intention of keeping the money and plans to see that it is distributed to victims of Eastern's financial activities, they are just not certain at this point how that will occur. We have suggested that the Bankruptcy case presents the best vehicle to distribute the funds, since all of the creditors will file claims and the money can be properly allocated. We have scheduled a follow-up meeting with the FBI in March.

0    Like  1

Add Comment


### Law Suits by the Trustee
02/18/2011                                                                                    0 Comments

Many of you have contacted me and provided information about individuals against whom Eastern could bring claims. We are working diligently on a number of law suits against persons who received improper transfers of funds or property from Eastern and will begin filing these over the next several weeks.

1    Like  1

Add Comment


<< Previous

James A. Knauer, Trustee for Eastern Livestock Bankruptcy

Lanig, Cathy

| | |
|---|---|
| From: | Ewing, Lisa |
| Sent: | Wednesday, November 10, 2010 2:49 PM |
| To: | Janssen, Janet; Perry, Carolyn S.; Randolph, Deborah; Engle, Bonita; Lanig, Cathy |
| Cc: | AgVantis Check21 |
| Subject: | Check21 Return -- REFER TO MAKER 2ND TIME |



The check above was returned due to Refer to Maker 2nd time.

It is from Eastern Livestock Co., LLC payable to William Bush & AgPreference (J21-01) applied to In#2455376 on 11/02/10 in the amount of $45,135.91

I have made the Assn and Bank entries. **Please post Batch #27**

Reverse the entries on the loan and offset the 340-35-000 CR.

Please let me know if you have any questions.

Thanks,

*Lisa A. Ewing*
*Sr. Accountant*
*U.S. AgBank*
*316.266.5230*

EXHIBIT E

1