UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Basil H. Lorch III |
| ) | |

**RESPONSE AND OBJECTION
OF CRUMPLER BROS.
TO THE TRUSTEE'S PURCHASE
MONEY CLAIMS REPORT, MOTION TO
TRANSFER FUNDS AND NOTICE OF
<u>RELEASE OF PROCEEDS FROM ACCOUNT</u>**

Crumpler Bros. ("CB") responds and objects to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account (the "Report") filed by James M. Knauer, chapter 11 trustee (the "Trustee"). In support hereof, CB states:

**Introduction**

1. In the Report, the Trustee states that he "has concluded that no person other than [Fifth Third Bank, N.A.] can assert a valid perfected lien in or to the Cattle Sales Proceeds."

2. CB filed a claim to certain proceeds from cattle sales by Eastern Livestock Co., Inc. ("Eastern"). CB asserted that certain cattle and consequently the proceeds from the sale of the cattle are subject to a constructive trust in favor of CB.

3. The Trustee in his Report has offered no rationale or argument as to why CB allegedly is not entitled to a constructive trust on the cattle and the proceeds of the cattle.

**Factual Background**

4.  On October 27, 2010 CB sold 150 heifers to Eastern for $106,691.01. *See* Exhibit "A." Eastern paid for the cattle with check number 35478 and took delivery of the cattle which were shipped to an undisclosed location. After shipment of the cattle, Eastern's check was returned to CB with a notation "Refer to Maker." *See* Exhibit "B."

5.  CB does not know where Eastern shipped the cattle, who Eastern resold the cattle to, or where the proceeds from Eastern's presumed resale of the cattle are located.

**Constructive Trust**

6.  At the time Eastern purchased the cattle from CB, Eastern was engaged in a massive fraud and check-kiting scheme. The details of the scheme have been the subject of numerous pleadings filed with this Court by Fifth Third Bank and also described in some detail by the Trustee in his March 7, 2011 entry to his internet blog. *See* Exhibit "C." The purchase of the cattle from CB and the issuance of its checks to CB was part of Eastern's fraud and check-kiting scheme. Furthermore, Eastern knew at the time it agreed to purchase the cattle from CB that it lacked sufficient funds to pay CB and its representation that it would pay CB was fraudulent.

7.  Eastern obtained the cattle from CB by means that constituted unconscionable conduct, artifice, concealment, and/or questionable means.

8.  Upon obtaining the cattle from CB, Eastern held the legal title to the cattle contrary to equity and good conscience.

9.  Either Texas or Oklahoma law governs the characterization of Eastern's interest in the cattle at the time it acquired them from SOLM. *See, City of Farrell v. Sharon Steel Corp.,*

7054515_1.DOC

41 F.3d 92, 95 (3rd Cir. 1994) ("we look to state law to determine whether the claimant has shown a trust relationship…").

10.     Under either Texas or Oklahoma law, Eastern acquired the cattle subject to a constructive trust in favor of CB. *See, Cacy v. Cacy*, 1980 OK 138, ¶ 7, 619 P.2d 200 ("A constructive trust is … imposed against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."); *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974)(Under Texas law, a constructive trust is an equitable remedy available to a party that has been defrauded.).

11.     Upon Eastern's sale of the cattle to its buyers, Eastern's right to the proceeds from the sale was subject to a constructive trust in favor of CB. *See*, Caryl A. Ysenbaard et al., The Law of Trust and Trustees § 471, pp. 3-5 (3rd ed. 2009) ("If the property has been sold, the trust attaches to the proceeds held by the defendant or to other property held by the defendant into which the original property or its proceeds can be traced.").

12.     Because the proceeds of the cattle are held subject to a constructive trust in favor of CB, the estate holds bare legal title and equitable title belongs to CB. 11 U.S.C. § 541(d).

**Identification of Funds Claimed by SOLM**

13.     The information needed for CB to identify the payor/current holder of the funds as to which CB's constructive trust applies is in the possession of the Trustee (and not CB) and the Trustee has failed to furnish sufficient information to enable CB to identify which funds listed in Exhibit A to the Report are subject to such constructive trust. In particular, Exhibit A to

the Report does not reflect the seller to Eastern so that the funds paid to the Trustee can be matched with the cattle sold to Eastern. To the extent the Trustee holds funds that are the proceeds of any of the other sales referred to in Exhibit A hereto, CB asserts that such proceeds are subject to a constructive trust in favor of CB. CB's counsel has issued discovery to the Trustee for the purpose (among others) of identifying whether proceeds held by the Trustee relate to sales by CB and CB requests time to complete that discovery and supplement its response to the Report to reflect the results of that discovery. In addition, the Court's order applies to all proceeds recovered and to be recovered by the Trustee. The Trustee has not indicated that he has recovered all cattle held by Eastern. Accordingly, it is impossible for CB to know whether the cattle or proceeds from the sale thereof listed on its exhibit A will eventually come into the hands of the Trustee.

Wherefore, CB objects to the Report and urges the Court to deny the relief sought by the Trustee in the Report.

Respectfully submitted,

*/s/ Ross A. Plourde*
ROSS A. PLOURDE, OBA #7213
MCAFEE & TAFT A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102
405/235-9621
405/235-0439 (FAX)
Ross.plourde@mcafeetaft.com
*Attorneys for Crumpler Bros.*

7054515_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr.<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M. King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S. Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com<br>Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | William Robert Meyer, II<br>rmeyer@stites.com<br>James Bryan Johnston<br>bjtexas59@hotmail.com | Allen Morris<br>amorris@stites.com<br>James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A. Konstantinopoulos<br>ndohbky@jbandr.com | Karen L. Lobring<br>lobring@msn.com |

| | | |
|---|---|---|
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net | Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com |
| John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com | Sean T. White<br>swhite@hooverhull.com |
| Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com | Michael W. McClain<br>mike@kentuckytrial.com |
| William E. Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com | Christopher E. Baker<br>cbaker@hklawfirm.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C. Scherer<br>tscherer@binghammchale.com | Dustin R. DeNeal<br>Dustin.deneal@bakerd.com |
| Kevin M. Toner<br>kevin.toner@bakerd.com | James M. Carr<br>Jim.carr@bakerd.com | Terry E. Hall<br>Terry.hall@bakerd.com |
| Wendy W. Ponader<br>Wendy.ponader@bakerd.com | | |

/s/ Ross A. Plourde
ROSS A. PLOURDE

135 West Market
Albany, IN 47150



**EASTERN LIVESTOCK CO., LLC**



EXHIBIT A

DATE _____

SELLER _____
ADDRESS _____
BUYER _____

| NO. HD. | DESCRIPTION | WEIGHT | SHRINK | NET WT. | AV.WT. | PRICE | AMOUNT |
|---------|-------------|--------|--------|---------|--------|-------|--------|
| 150 | Mymex | 106800 | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | |
|---|---|
| LESS PART PAYMENT | |
| BEEF CHECKOFF | |
| EARNEST MONEY | |
| TOTAL DEDUCTIONS | |
| NET PROCEEDS | |





12/30/1899
6219718126

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON-2
REFER TO MAKER

**EASTERN LIVESTOCK CO., LLC**
135 West Market
New Albany, IN 47150
812-948-9035

NO. F 35478

Date: 10-27-20__

PAY to the order of: [illegible] $ 106,691.__

[illegible] hundred and six thousand six hundred ninety one __/100 DOLLARS

Fifth Third Bank
Louisville Kentucky

Eastern Livestock Co., LLC

⑆035478⑆ ⑈042100272⑉ 7480493837⑈

⑆035478⑆ ⑈042100272⑉  7480493837⑈ ⑆001066910

EXHIBIT B

EXHIBIT

C

# Eastern Livestock Bankruptcy

**HOME    LITIGATION    TRUSTEE'S BLOG    CURRENT EVENTS    NEWS    CONTACT**

## Eastern's First Meeting of Creditors
03/30/2011                                           10 Comments

In every bankruptcy case, after the listing of the debtor's liabilities and assets is completed and filed with the Court, the law requires that creditors be sent notice of a meeting at which the debtor answers questions about their financial affairs and conduct. This meeting is called the *First Meeting of Creditors*. If you are a creditor of Eastern, you should have received such a notice. In Eastern's case, that meeting is scheduled to occur in New Albany, Indiana on April 5th at 10am EST.

In the case of Tom Gibson's voluntary bankruptcy, the First Meeting of Creditors has already occurred and we have posted a transcript of Gibson's testimony on the website which can be found here.

In a corporate bankruptcy, a representative of the debtor testifies at the First Meeting of Creditors. Normally, that is the president of the company, which would be Tom Gibson. Unfortunately since Eastern's bankruptcy was involuntary, Mr. Gibson will not be representing the Debtor, so that role falls to me as the Bankruptcy Trustee.

I am writing this in case some of you had planned to attend in the hope of questioning Mr. Gibson about Eastern matters, since that will not occur on April 5th.

That day will come soon, just not next week.

    1    Like

10 Comments

## Trustee Sues Willie Downs
03/22/2011                                            0 Comments

We filed suit today against Willie Downs, a former branch manager of Eastern Livestock. Our suit alleges that in the waning days of Eastern's operations, Downs

### James A. Knauer

Jim Knauer has substantial experience in all aspects of business transaction and lending litigation, including environmental matters, shareholder litigation; business fraud; secured creditor enforcement; guaranty litigation; RICO actions; lender liability defense and class action representation; non-compete covenants; Jim Knauer has represented secured and unsecured creditors, bankruptcy trustees, creditor's committees and business debtors in many of the most significant business bankruptcy cases that have been filed in Indiana during the past 30 years. More Informaiton on Jim can be found:
http://www.kgrlaw.com/bios/knauer.php

converted more than $1.2 million dollars of checks payable to Eastern by having them endorsed to him.

This is our first - there are many more lawsuits to come.

0   Like

Add Comment

Archives

March 2011
February 2011
January 2011
December 2010

RSS Feed

## Bond Claims...
03/21/2011                                                                         1 Comment

To those of you who made USDA Bond claims, the 60 day filing period expired at the beginning of March. We have made arrangements with the bonding company to turn over the bond funds and we are preparing a proceeding to address the claims process. Obviously the $875,000 bond that Eastern was required to post is far less than the total claims, so when we have completed the claims review process, those will claims that are allowed will receive a prorated payment based on the percentage that the amount of their claim bears to the total of all claims.

To speed up the process, we will likely handle this process outside of Eastern's bankruptcy proceedings, since the USDA bond money is not part of Eastern's bankruptcy estate.

0   Like

1 Comment

## When Did the Fraud Start? Part II
03/18/2011                                                                        2 Comments

On March 14th, I commented that our analysis of sales activities of Eastern seemed to indicate that the phony sales which were used to prop up the cash flow started occurring in at least 2009. As we have continued to investigate, it now seems apparent this was going on in 2008 as well, just not on the same scale as in later years.

0   Like

2 Comments

## When Did the Fraud Start?
03/14/2011                                                                        0 Comments

We continue to review Eastern's books to find out the depth and breadth of the fraud as well as who was involved. One of our initial questions has been answered. That is, did it start last year, or was it going on in 2009 too?

Our financial advisors prepared information reviewing sales by month in 2009 and then separated the sales by purchaser. We instantly saw a pattern in which sales to Gibson affiliates in 2009 were enormous, but then reduced dramatically at the end of Eastern's fiscal year. Eastern had a requirement in their bank financing that restricted credit for affiliated company receivables at year end, hence the need to get them paid (which was not possible since much of them were phony) or to create other receivables which would allow the affiliate receivables to be reduced. This appears to have been accomplished by booking year end sales to other Gibson affiliates whose connection was not known to Eastern's senior bank, so those amounts were counted and the level of account receivables was then maintained.

0   Like

Add Comment

## Check "Kite"
03/07/2011                                                                 0 Comments

One of the things that is done early in a bankruptcy case is to analyze transactions which occurred within 90 days preceding bankruptcy. In many instances payments that were made by an insolvent company can be recovered under bankruptcy laws which deem those payments to be preferential or "preferences."

As many of you have read, Eastern's finances were being pumped up by what is commonly called a check "kite." A check kite occurs when a check drawn on another bank is deposited into a checking account and the deposited check is no good. The banking system will provisionally clear this check for a couple of days which gives the maker of the check time to deposit another check into its own account equal in value to the check they just issued so the bad check presented for deposit appears to be covered by the new deposit.

A kite can occur between two banks where the holders of checking accounts issue NSF checks to each other, timing the deposits so that each check is covered by a check from another bank. Typically these deposits are required to be larger and larger hence the use of the term kite is applied to describe how the amounts involved get higher and higher.

In the case of Eastern, our preliminary analysis has identified a multi-party check kiting scheme. During the 90 days preceding bankruptcy, Eastern issued $8.8 million dollars of checks to Ed Edens, IV, $237 million worth of checks to GP Cattle, $7.7 million worth of checks to Gary Seals, $11.6 million worth of checks to J & L Cattle and $365 million worth of checks to Thomas Gibson. Obviously, each of these checks were drawn on Eastern's account and had to be covered by a legitimate check or a fictitious deposit before it was honored by Eastern's bank.

We are in the process of analyzing deposits to Eastern's accounts and once that process is completed we will have a better idea of which checks and deposits were legitimate and which checks and deposits were fiction. We have initially concluded that most of the

above described transactions were phony.

0    Like

Add Comment

## Apologies to all
02/18/2011                                                                                    0 Comments

We made a strategic error in sending out several hundred letters to persons listed on Eastern's books as owing the company money. Sending the letter was not the mistake, it was using my office number and address for responding since I do not have the records at my location. Since Eastern's books are a mess and many of the records are missing, letters were sent to people who don't owe the company money and have proof of that. Unfortunately, most everyone chose to call me instead of responding by mail and I have been overwhelmed with daily phone calls. We made a second large mailing to holders of forward contracts about the same time and also used my office phone and address for a response. Once again, almost everyone choose to call. The problem that resulted was my inability to respond to everyone which I am sure was frustrating to those who left messages, so to all of you who are still waiting for a call I apologize. The calls were transferred to the personnel we have in Eastern's office, even that number of folks cannot return the calls as timely as we would like because each one necessitates a hunt through masses of paper to confirm the facts relayed by the caller. Needless to say the upshot of all of this was my inability to update the blog recently.

0    Like

Add Comment

## Largest Creditor - Fifth Third
02/18/2011                                                                                    0 Comments

A number of creditors have asked me what is being done to investigate the claim of the largest creditor, Fifth Third Bank. We have hired independent counsel whose attention is devoted solely to this purpose. The Indianapolis Law firm of Hoover Hull is charged with this responsibility. We have subpoenaed about ten thousand records from Fifth Third, mostly checks and deposits as well as conducting a thorough review of the bank's loan documents. Additionally, we are talking with anyone who has knowledge that might effect allowance of the bank's claim. We have to determine by March 11 whether there are claims against Fifth Third and our review will be completed by that date. If you have information that you think may effect our review of the Bank's claim, please contact me or John Hoover at 317-822-4400.

0    Like

Add Comment

## FBI's Seizure of Funds
02/18/2011                                                              o Comments

I reported bank in January that the FBI had seized approximately $4.7 million from the bank account of Tom Gibson and that we believed this money came from Eastern. We meet with the FBI to discuss the government's plans for the money. As my earlier entry noted, under federal forfeiture laws, the government is not required to return any of the funds if they can prove that it was the proceeds of the commission of the crime. We were assured by the FBI that the government has no intention of keeping the money and plans to see that it is distributed to victims of Eastern's financial activities, they are just not certain at this point how that will occur. We have suggested that the Bankruptcy case presents the best vehicle to distribute the funds, since all of the creditors will file claims and the money can be properly allocated. We have scheduled a follow-up meeting with the FBI in March.

0     Like  1

Add Comment


## Law Suits by the Trustee
02/18/2011                                                              o Comments

Many of you have contacted me and provided information about individuals against whom Eastern could bring claims. We are working diligently on a number of law suits against persons who received improper transfers of funds or property from Eastern and will begin filing these over the next several weeks.

1     Like  1

Add Comment


<< Previous

James A. Knauer, Trustee for Eastern Livestock Bankruptcy