IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC ) | |
| ) | |
| ) | Chapter 11 |
| ) | |
| Debtor ) | |
| ) | |

**FURTHER SUPPLEMENTAL OBJECTION TO THE TRUSTEE'S PURCHASE
MONEY CLAIMS REPORT, MOTION TO TRANSFER FUNDS
AND NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT**

Come now Joplin Regional Stockyards ("Joplin") and Superior Livestock Auction, Inc. ("Superior Livestock"), through counsel, and respectfully submit this Further Supplemental Objection ("Further Supplemental Objection") to the *Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account* ("Trustee Motion") (Doc. No. 501). In support hereof, Joplin and Superior Livestock state:

1. On May 27, 2011 and May 31, 2011, respectively, Superior Livestock and Joplin filed preliminary objections to the Trustee Motion. Thereafter, on June 17, 2011, Superior Livestock and Joplin filed Supplemental Objections (Doc. Nos. 541 and 542) to the Trustee Motion.

2. In addition to the arguments set forth in the above-mentioned objections, Superior Livestock and Joplin also object to the Trustee Motion on the grounds there are issues relating to the asserted claims of Fifth Third Bank ("Fifth Third") which have not

been addressed, and which must be addressed, before some of the relief sought by the Trustee Motion would be appropriate.

3. In this regard, the Trustee Motion seeks two orders from the Court: (1) an order disallowing "Disputed Purchase Money Claims" as secured claims; and (2) an order authorizing the Trustee to transfer funds from the Holding Account set up for payment of valid Purchase Money Claims to the Trustee's general operating account "for use as cash collateral of Fifth Third . . . ."

4. The requested orders are solely premised on the assumption, set forth in the Trustee Motion, that "[t]he Cattle Sales Proceeds to be transferred to the Trustee's general operating account represent funds as to which no third party other than Fifth Third can assert a valid lien or claim," and the further assumptions that the funds are property of the estate, and "cash collateral" of Fifth Third.

5. Irrevocable release of funds to Fifth Third is certainly not contemplated by the pleading giving rise to the filing of the Trustee Motion – namely, the *Emergency Motion Regarding Payments on Debtor's Cattle Sal*es ("Cattle Payment Motion") approved by this Court on January 24, 2011 ("Cattle Payment Order"), pursuant to which the Trustee requested that payments from Buyers be escrowed in a segregated account ("Account") pending further Order of this Court until all Purchase Money Claims were "resolved or reconciled." *See* Cattle Payment Motion at para. 8. The Cattle Payment Motion and Cattle Payment Order simply anticipate that the Trustee would file a "Purchase Money Claim Report," which could also serve as an objection to Purchase Money Claims.

6. The proposed transfer and designation of the funds as "cash collateral" of Fifth Third would have broad and permanent legal effect. Pursuant to the Financing Order concerning use of cash collateral and DIP Financing entered by the Court on March 18, 2011, (Doc. No. 400) ("Financing Order"), "excess cash collateral" must be regularly surrendered by the Trustee to Fifth Third, whereupon Fifth Third receives the funds "free and clear of any claim by the Trustee or any party," including any claim for surcharge or disgorgement.

7. Given the potential finality of the relief requested by the Trustee, it should not be granted based on unproven conclusions regarding Fifth Third's assumed right to the funds as "cash collateral."

8. Among the issues ignored by the assumptions made in Trustee's Motion are whether fraud by the Debtor would cause some of the escrowed payments to be subject to a "constructive trust," or would prevent the funds from being considered property of the estate, either of which would make "release" of the funds to Fifth Third improper. *See, e.g., In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 544 (7th Cir. 1985) (noting the "well-established rule" that property obtained by the bankrupt through fraud is not part of the bankruptcy estate); *Zygulski v. Daugherty,* 236 B.R. 646 (N.D. Ind. 1999) (imposing constructive trust on property acquired by a Ponzi scheme); *Mervis Industries, Inc., v. Sams,* 866 F. Supp. 1143 (S.D. Ind. 1994) (constructive trust imposed under Indiana law on embezzled funds).

9. The prospect of fraud by the Debtor is hardly idle speculation. It is generally agreed that fraud on a massive scale lead to the receivership and involuntary

3

bankruptcy in this case; the Trustee, Fifth Third, and others[1] have all pointed to extensive evidence of the Debtor's fraud, including check-kiting, and re-sale of millions of dollars of cattle and contracts "purchased" by the Debtor with bad checks. With these facts, one cannot simply assume (without any possibility of future review) that funds now held by the Debtor are necessarily property of the estate and are proceeds of *bona fide* receivables so as to be "cash collateral" of Fifth Third.

10.     Furthermore, granting the relief requested in the Trustee Motion may as a practical matter insulate Fifth Third (at least to the extent of the funds the Trustee seeks to transfer) from liability for potential claims against the bank which have been expressly reserved by the estate. Although the Financing Order provides for allowance of Fifth Third's claim, it also provides, in Paragraph O, that such allowance "shall not act as a waiver or release of any other rights or claims that the Trustee or any other party in interest may have against Fifth Third." This express reservation of rights would be defeated if funds in possession of the Trustee are summarily assumed to be Fifth Third cash collateral, and surrendered "free and clear of any claim by the Trustee or any party."

11.     So far as Superior Livestock and Joplin are aware, there has been no discovery regarding potential claims against Fifth Third, other than whatever review has been conducted by the special counsel retained by the Trustee to investigate such claims, Hoover Hull, LLC ("Hoover"). No report or even an application for compensation has been filed by Hoover, and in any event the Trustee has indicated he does not intend to share their report with creditors.

---

[1] For example, the Trustee's "blog" entry on the internet website established for this case states on March 14, 2011 that "[w]e continue to review Eastern's books to find out the depth and breadth of the fraud as well as who was involved." The Trustee's consultant, Development Specialists, Inc., similarly notes evidence of fraudulent transactions in its First Interim Application for Compensation and Reimbursement of Expenses filed on June 2, 2011.

4

12.     It is certainly plausible, however, there may be grounds for disgorgement, equitable subordination, or other potential claims against Fifth Third, particularly if it was the beneficiary of funds obtained by the Debtor through fraud, before or during the state court receivership obtained by Fifth Third prior to the filing of the involuntary bankruptcy petition.

13.     For all of these reasons, the Court should deny the Trustee's premature request to transfer and "release" as "cash collateral" of Fifth Third the funds being held in the Holding Account, and should reserve such issues until the rights of all interested parties have been "resolved or reconciled."

WHEREFORE, Superior Livestock and Joplin respectfully pray that the Court deny the Trustee's request in the Trustee Motion to transfer and release funds, and for such other relief as is proper.

CO-COUNSEL FOR SUPERIOR
LIVESTOCK AUCTION, INC. and
JOPLIN REGIONAL STOCKYARDS

*/s/ John M. Rogers*
John M. Rogers
RUBIN & LEVIN, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN  46204-2161
Phone:  317-634-0300
Facsimile:  317-263-9411
e-mail:  JohnR@rubin-levin.net

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

I further certify that on June 17, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

David A. Domina  
ddomina@dominalaw.com

Ashley S. Rusher  
asr@blancolaw.com

*/s/ John M. Rogers*