## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA

IN RE:                    )     CASE NO.:  10–93904–BHL–11
)
EASTERN LIVESTOCK CO., LLC,   )
)     Chapter 11
)
       Debtor.         )
)
)

### OBJECTION AND JOINDER IN OBJECTION TO THE TRUSTEE'S PURCHASE MONEY CLAIMS REPORT, MOTION FOR RELEASE OF FUND ANDNOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT

COMES NOW Hilliard–McKettrick Investments, Inc. d/b/a Arcadia Stockyard; Cattlemen's Livestock Market, Inc.; Columbia Livestock Market, Inc.; Hardee Livestock Market, Inc.; North Florida Livestock Market, Inc.; Ocala Livestock Market, Inc.; Okeechobee Livestock Market, Inc.; Sumter County Farmers Market, Inc.; and Madison County Livestock Market, Inc. d/b/a Townsend Livestock Market (collectively "Florida Markets"); Ron Sizemore Trucking, Inc. ("Sizemore"); Oak Lake Cattle Co. ("Oak Lake"); Eagle Bay, Inc. ("Eagle"); and Daniel M. Byrd ("D. Byrd") (and collectively "Florida Creditors"), by and through undersigned counsel, and submits this Objection to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account ("Trustee Motion") (Doc. 501) and Joinder in the Objections and Supplemental Objections of Superior Livestock Auction, Inc. ("Superior Livestock") (Doc. 512 & 541) and of Joplin Regional Stockyards ("Joplin Stockyards") (Doc. 515 & 542). In support of their Objection and Joinder in Objection, Florida Creditors state as follows:

1

## JOINDER IN OBJECTION

1.     The Florida Creditors adopt all the arguments advanced by Superior Livestock in its Objection (Doc. 512) and Supplemental Objection (Doc. 541) as if fully set forth herein.

2.     The Florida Creditors adopt all the arguments advanced by Joplin Stockyards in its Objection (Doc. 515) and Supplemental Objection (Doc. 542) as if fully set forth herein.

## OBJECTION

3.     The Creditors herein consist of nine (9) Florida based livestock auction "market agencies" ("Florida Markets") as defined pursuant to the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181-229a (hereinafter "Stockyards Act") and governing regulations, together with a Florida based "livestock hauler" ("Sizemore") and Florida based "livestock order buyers" ("Oak Lake" and "D.Byrd") and their affiliated "livestock service company" ("Eagle"). The Stockyards Act and regulations governs virtually all aspects of the livestock market activity, including "Cash Sales" which are the nature of the transactions in Florida.[1]

4.     In virtually all cases the Florida Creditors are family owned small business operations where the owner operators and their employees and associates have been in the cattle business all of their lives. Creditor Okeechobee Livestock Market for instance, was acquired by the current owner/operator's Grandfather and Father in 1961. See Exhibit A, Affidavit Of Todd Clemons. The Office Manager of the Creditor Arcadia Stockyard started working in the cattle business in 1970 with her family, who owned and

---

[1]     A "Cash Sale" under the Stockyards Act means a sale in which "the seller does not expressly extend credit to the buyer." 7 U.S.C. §196(c).

operated the stockyard until their retirement 1993. She has continued to work for the stockyard under the new owner/operators who have also been in the cattle business all of their lives. See Exhibit B, Affidavit Of Kathy Tanner and Exhibit C, Affidavit Of Carlton McKettrick. This level of experience in and knowledge of the cattle business is unmatched by the current representatives of the Debtor, the Trustee, and the creditor banks, including Fifth Third.

5.      This critically important to this Court because the Trustee's Motion seeks to paint the three (3) primary methods of operation and transaction engaged in by Debtor Easter Livestock and the myriad of variations with the same wide swath of a paint brush in an apparent effort to gain control of funds that are not now and never were assets to which Debtor Eastern had claim to. This is certainly true for the unpaid amounts due on cattle sales at the Florida Market's facilities in October and November 2010 and no doubt true for other Creditors, as well. The Trustee's Motion in this regard is simply in error.

6.      The Florida Creditors strenuously object to this effort by the Trustee on behalf of Debtor and others filing in support of the Trustee's Motion to effectively disallow claims without determining fully the nature, timing, and amount of the subject claims. Here the Trustee is attempting to "resolve" Florida Creditors' claims through a summary proceeding, without affording Florida Creditors discovery or any of the protections granted to contested matters. This violates the provisions of the Cattle Payment Order, as well as Florida Creditors' rights as creditors under bankruptcy other law.

*Background*

7.      The cattle business is different—different in the sense that it involves both free market auction pricing for the purchase and sale of cattle but is regulated to the extent that the certain risk for non-payment and otherwise is transferred by operation of law away from the actual livestock producers and sellers to other market participants. As noted, "Cash Sales" of livestock at auction markets are governed by the "Stockyards Act" and governing regulations. Regulated participants in the market are performance bonded, but the required amount on the bonds is usually but a small fraction of the periodic sale volume to which the livestock market participants are exposed. 9 C.F.R. §201.29 Debtors' performance bond under the Stockyards Act is a classic and tragic example of the discrepancy between performance bond coverage and the risk exposure to market participants and others having dealing with Debtor. See 9 C.F.R. §§201.30(a)–(c).

8.      Under the Stockyards Act and regulations, Debtor Eastern operated as a "market agency," buying or selling livestock on commission and as a "dealer" buying or selling livestock on its own account or as agent of the purchaser. 7 U.S.C. §201. Debtor Eastern also acted as "Clearing Agency" providing back office services and bond coverage and being responsible for the payment obligations of others. 9 C.F.R. §201.31(c).

9.      In essence, Debtor Eastern Livestock Co., LLC operated in three (3) principal capacities which are described under the Stockyards Act and regulations as Clause No. 1, 2, and 3 conditions under Debtor's bond: (i) Clause No. 1: Buying and selling livestock on commission on account for others; (ii) Clause No. 2: Buying and selling livestock for its own account; and (iii) Clause No. 3: Clearing the transactions for

4

others. Only in the case of Clause No. 2 activity on its own account would Debtor Eastern actually acquire ownership and title to livestock assets for which Debtor Eastern could have a claim in the bankruptcy estate. For Clause Nos. 1 and 3 activities, Debtor Eastern acted simply agent for others where ownership, title, and entitlement to the payment for the livestock assets normally bypassed Debtor Eastern altogether.[2]

10.    The Florida Creditors, with the exception of Sizemore and Eagle, are engaged in the livestock business as livestock auction market "stockyards" or otherwise as "market agencies" selling on commission as defined pursuant to §201 of the Stockyards Act and are subject to the jurisdiction and protections afforded therein.

11.    The Florida Creditors assert ownership, title, and security interest in the funds and livestock assets from unpaid livestock "Cash Sales" in Florida between October 10, 2010 and November 3, 2010 for which Debtor Eastern acted solely as a Clause No. 3 "Clearing Agency" for I.E. "Jim" Byrd's Oak Lake Cattle Company, Inc. as "Clearee." See Exhibit D. I.E. "Jim" Byrd is a Florida Creditor through Oak Lake, Eagle, and his son, D. Byrd. (as used herein "I.E. "Jim" Byrd" refers to inclusively also to Oak Lake, Eagle, and D. Byrd). Beginning in 1993 and every year since until Eastern's insolvency, I.E. "Jim" Byrd registered with the U.S. Department Of Agriculture Packers And Stockyards Administration[3] as a "Clearee" of Debtor Eastern Livestock Company, LLC.

---

[2]    There is a limited circumstance where Debtor Eastern having already rendered payment to the Seller but been unpaid itself by the Buyer—Debtor Eastern would have a claim for the unpaid amount due from Buyer standing in the shoes of the Seller. However, this requires performance on the part of Debtor Eastern in rendering payment in the first place.

[3]    Also known by "Grain Inspection, Packers And Stockyards Administration ("GIPSA").

12.     The Trustee's Motion and Monthly Operating Reports (Docs. 347, 348 426, 494, 516) improperly attempt to paint the claims for unpaid funds due Florida principals in the transactions for which Debtor Eastern solely acted as "Clearing Agency" with same brush as Clause No. 2 activity where Debtor Eastern bought and sole on its own account. The Purchase Money Report and Monthly Operating Reports fails to distinguish the difference in nature and timing of livestock assets held or in the case of the Florida Creditors, withheld by the Trustee as "Purchase Money." **The claims of the Florida Creditors are not part of the bankruptcy estate, and the Trustee's Motion seeks to summarily deprive the Florida Creditors of their rights and protections afforded in this Court, under the Stockyards Act, and other law.**

13.     This wide brush would not be nearly so onerous were it not for the fact that the Receiver and the Trustee were placed on notice of the differing nature to Debtor's Clause Nos. 1, 2, and 3 activities under the Stockyards Act per conversations and communications last Fall with Mark Mackey and Ernest VanHooser, Esq., respectively General Manager and Counsel for the Livestock Marketing Association. See Exhibit E, Memorandum, Nov. 17, 2010. Mr. VanHooser legal expertise encompasses over thirty years (30) experience with the cattle business.

14.     To be clear, Debtor Eastern as a Clause No. 3 "Clearing Agency" under the Stockyards Act had a duty: (i) to render payment when due to the parties entitled to proceeds from purchases by the "Clearee" and (ii) to safely keep and properly disburse all funds held as "Clearing Agency" for the Clearee for the purpose paying for livestock purchased.

(c) Condition Clause No. 3:  When the principal
clears  other  registrants  buying  livestock  and  thus  is

6

responsible for the obligations of such other registrants. If the said principal, acting as a clearing agency responsible for the financial obligations of other registrants engaged in buying livestock, viz: (Insert here the names of such other registrants as they appear in the application for registration), or if such other registrants, shall (1) pay when due to the person or persons entitled thereto the purchase price of all livestock purchased by such other registrants for their own account or for the accounts of others; and (2) safely keep and properly disburse all funds coming into the hands of such principal or such other registrants for the purpose of paying for livestock purchased for the accounts of others.

9 C.F.R. §201.31(c).

15. This duty now falls to the Trustee of Chapter 11 Debtor Eastern Livestock Co., LLC. With respect to the claims of the Florida Creditors for amounts due from unpaid sales of livestock purchased by I.E "Jim" Byrd as "Clearee" for Debtor Eastern acting as "Clearing Agency"—Trustee's Motion which would deprive the Florida Creditors of livestock purchase proceeds due to be disbursed and kept safe for the Creditors benefit and further amount to a violation of the Trustee's duty.[4] *"An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious*

---

[4]     **§ 201.42 Custodial accounts for trust funds.**
        *(a) Payments for livestock are trust funds. Each payment that a livestock buyer makes to a market agency selling on commission is a trust fund. Funds deposited in custodial accounts are also trust funds.*
        (b) Custodial accounts for shippers' proceeds. Every market agency engaged in selling livestock on a commission or agency basis shall establish and maintain a separate bank account designated as "Custodial Account for Shippers' Proceeds," or some similar identifying designation, to disclose that the depositor is acting as a fiduciary and that the funds in the account are trust funds.

9 CFR §201.42, Regulations Under The Packers and Stockyards Act. [Emphasis added]

*act.*" *Matter of Snyder*, 184 B.R. 473, 475 (D.Md.1995); *Central Bank Of Mississippi v. Butler*, 517 So.2d 507 (Miss. 1987).

16.    As noted in the Supplemental Objections Superior Livestock (Doc. 541) and Joplin Stockyards (Doc. 542)

> [T]the Trustee Motion appears to be primarily an attempt to obtain Court approval of the Trustee's attempt to transfer funds to the Trustee's operating account and Fifth Third rather than an effort to resolve claims in a normal claim dispute process.

Supplemental Objections Of Superior Livestock and Joplin Stockyards, ¶¶ 30 and 31, respectively.

### Livestock Sales And Florida Creditors Claims History

17.    Between October 10, 2010 and November 3, 2010, I.E. "Jim" Byrd purchased as an Order Buyer for his clients (i.e. Clause No. 1 for account of others) with Debtor Eastern acting as Clearing Agency (i.e. Clause No. 3 for "Clearee" Byrd). The livestock purchases totaled approximately 1,500 head of cattle and sales proceeds of approximately $500,000.

18.    When Fifth Third Bank froze Eastern's accounts payment for the above purchases was interrupted causing most checks issued to be returned for insufficient funds—a violation of both the Stockyards Act and Florida law. The Florida Creditors receiving checks returned for insufficient funds have made claims against Debtor pursuant to Section 68.065, Florida Statutes, which governs collections on bad checks. These claims were filed Claims 225-230, 232, and 233. The Florida Creditors are currently investigating related claims against Fifth Third Bank for its knowing complicity in violations of the Stockyards Act and Florida law.

19.     This non-payment for livestock purchases and amounts due custodial accounts represented a failure in performance by Debtor which further underscores the point that the ownership and title claim to livestock or livestock sales proceeds never would have passed from Seller to Debtor Eastern as "Clearing Agency" had the transactions been completed and moreover could not possibly have passed to Debtor by virtue of failure in performance.

20.     Despite non-performance by Debtor, the Florida Markets rendered performance under the Stockyards Act, paying the consignors out their respective collateral accounts and shipping and delivering the livestock in question to the buyer clients of I.E. "Jim" Byrd.

21.     At this juncture and at the direction of I.E. "Jim" Byrd, all but two (2) of his buyer clients purchasing Florida livestock have remitted payment in full directly to the appropriate market agency. These transactions were completed at the principal's instructions, bypassing Debtor Clearing Agency—again emphasizing that livestock sale proceeds where Debtor acted as a Clause No. 3 Clearing Agency are not part of the bankruptcy estate despite assertions otherwise by the Trustee. Indeed, the Trustee's Monthly Operating Report incorrectly and improperly lists these completed sale transactions to I.E. "Jim" Byrd's buyer clients with amounts still owed on Debtor's receivables. Given Debtors failures in performance this is a preposterous position taken by Debtor.

22.     Of the two (2) buyers that did not remit payment to the Florida Markets, the amounts due have been interpled into the Wisconsin state court by the first buyer, Rush Creek Ranch, LLC, and paid into the Trustee by the second buyer, Len Miller, as

"Purchase Money." The transactions involved here total approximately 836 head and approximately $327,000. These assets represent the Purchase Money Claims disputed by the Florida Creditors. A detailed breakdown of the Florida Creditor Claim amounts appears in the actual filed claims but is summarized here as follows:

### Rush Creek Ranch, LLC

| Party | Description | No. Head | Rush Creek |
|-------|-------------|----------|-----------|
| ARCADIA STOCKYARD | Livestock Sales | 175 | $ 45,928.29 |
| CATTLEMENS L/S MKT | Livestock Sales | 87 | $ 23,055.28 |
| COLUMBIA L/S MKT | Livestock Sales | 23 | $ 5,265.77 |
| HARDEE L/S MKT | Livestock Sales | 56 | $ 13,254.70 |
| NORTH FLA L/S MKT | Livestock Sales | 18 | $ 4,759.70 |
| OCALA L/S MKT | Livestock Sales | 26 | $ 7,138.35 |
| OKEECHOBEE L/S MKT | Livestock Sales | 36 | $ 8,880.60 |
| SUMTER CO FARMS MK | Livestock Sales | 42 | $ 8,664.90 |
| TOWNSEND L/S MKT | Livestock Sales | 11 | $ 2,485.20 |
| **Florida Markets Total** | **Livestock Sales** | **474** | **$ 119,432.79** |
| | | | |
| **Ron Sizemore Trucking** | **Trucking** | **n/a** | **$ 1,422.69** |
| | | | |
| **Oak Lake Cattle Co.** | **Purch. Commiss.** | **n/a** | **$ 1,900.52** |
| | | | |
| D & R TRUCKING | Trucking | n/a | $ 139.04 |
| PACO ANUEZ | Trucking | n/a | $ 26.59 |
| | | | |
| EASTERN | Clearing Commiss. | n/a | $ 666.47 |
| EASTERN | Livestock Pmts. | 217 | $ 54,645.19 |
| **Total Due EASTERN** | | **217** | **$ 55,311.66** |
| | | | |
| **Total Payments Held In Interpleader** | | **691** | **$ 178,233.29** |

23.    Rush Creek took delivery of the livestock in questions but interpled the funds for payment totaling $178,233.29. Of this amount, $122,921.63 represents the amount the Florida Creditors assert are not part of the bankruptcy estate and are due and payable to the Florida Creditors without dimunition or charges by the Trustee. The Trustee's Motion seeks to summarily transfer these funds in violation of law as asserted herein. Of the remaining $55,31.66, Debtor can assert its own claims for Clearing

Commission (despite non-performance) and reimbursement of funds expended in payment on livestock sales for its own account or otherwise. See *Supra..*, Note 2.

### *Len Miller*

| | Party | Description | No. Head | | Miller |
|---|---|---|---|---|---|
| 24. | ARCADIA STOCKYARD | Livestock Sales | 79 | $ | 28,556.06 |
| 25. | CATTLEMENS L/S MKT | Livestock Sales | 99 | $ | 37,382.15 |
| | HARDEE L/S MKT | Livestock Sales | 32 | $ | 10,888.80 |
| 26. | OCALA L/S MKT | Livestock Sales | 23 | $ | 8,490.10 |
| | OKEECHOBEE L/S MKT | Livestock Sales | 65 | $ | 23,104.48 |
| 27. | SUMTER CO FARMS MK | Livestock Sales | 64 | $ | 22,280.16 |
| | **Florida Markets Total** | **Livestock Sales** | **362** | **$** | **130,701.75** |
| 28. | | | | | |
| | **Ron Sizemore Trucking** | **Trucking** | **n/a** | **$** | **13,956.91** |
| 29. | | | | | |
| | Eagle Bay, Inc. | Yardage, etc | n/a | $ | 2,265.40 |
| | Oak Lake | Purch. Commiss. | n/a | $ | 1,493.45 |
| | Less: Adjustment | Livestock Sales | (4) | $ | (636.32) |
| | **Oak Lake Cattle Co.** | | **(4)** | **$** | **857.13** |
| | | | | | |
| | EASTERN | Clearing Commiss. | n/a | $ | 650.95 |
| | EASTERN | Livestock Pmts. | n/a | $ | - |
| | **Total EASTERN** | | **n/a** | **$** | **650.95** |
| | | | | | |
| | **Total Payments To Trustee** | | **358** | **$** | **148,432.14** |

30.     Of the amounts paid to the Trustee by Len Miller, the entire amount is due the Florida Creditors and, again, are livestock sales proceeds for which Debtor has no claim and are assets outside of the bankruptcy estate, except for perhaps the $650.95 in Clearing Commission where this can be also disputed because of failure in performance by Debtor to "clear" the transaction.

31.     The combined totals for which the Florida Creditors assert are amounts due for unpaid livestock sales to Len Miller and Rush Creek Ranch, LLC and are not part of the bankruptcy estate and over which Debtor can assert no claims, together with amounts over which Debtor can assert claims are summarized as follows:

| Party | RC Head | Rush Creek | LM Head | Len Miller | Total Head | TOTAL |
|---|---|---|---|---|---|---|
| ARCADIA STOCKYARD | 175 | $    45,928.29 | 79 | $    28,556.06 | 254 | $    74,484.35 |
| CATTLEMENS L/S MKT | 87 | 23,055.28 | 99 | 37,382.15 | 186 | 60,437.43 |
| COLUMBIA L/S MKT | 23 | 5,265.77 | -- | | 23 | 5,265.77 |
| HARDEE L/S MKT | 56 | 13,254.70 | 32 | 10,888.80 | 88 | 24,143.50 |
| NORTH FLA L/S MKT | 18 | 4,759.70 | -- | -- | 18 | 4,759.70 |
| OCALA L/S MKT | 26 | 7,138.35 | 23 | 8,490.10 | 49 | 15,628.45 |
| OKEECHOBEE L/S MKT | 36 | 8,880.60 | 65 | 23,104.48 | 101 | 31,985.08 |
| SUMTER CO FARMS MK | 42 | 8,664.90 | 64 | 22,280.16 | 106 | 30,945.06 |
| TOWNSEND L/S MKT | 11 | 2,485.20 | -- | -- | 11 | 2,485.20 |
| **Florida Markets Total** | **474** | **$ 119,432.79** | **362** | **$ 130,701.75** | **836** | **$ 250,134.54** |
| | | | | | | |
| Oak Lake | | 1,900.52 | | 1,493.45 | | 3,393.97 |
| Eagle Bay, Inc. | | 0.00 | | 2,265.40 | | 2,265.40 |
| Less: Adjustment | | 0.00 | | (636.32) | | (636.32) |
| **Total Oak Lake** | | **$    1,900.52** | | **$    3,122.53** | | **$    5,023.05** |
| | | | | | | |
| **Total Sizemore Trucking** | | **$    1,422.69** | | **$    13,956.91** | | **$    15,379.60** |
| | | | | | | |
| D & R TRUCKING | | 139.04 | | -- | | 139.04 |
| PACO ANUEZ | | 26.59 | | -- | | 26.59 |
| **Total Other** | | **$    165.63** | | **--** | | **$    165.63** |
| | | | | | | |
| EASTERN | | 666.47 | | 650.95 | | 1,317.42 |
| EASTERN | 217 | 54,645.19 | -- | -- | 217 | 54,645.19 |
| **Total Due EASTERN** | **217** | **$    55,311.66** | | **$    650.95** | **217** | **$    55,962.61** |
| | | | | | | |
| **TOTAL TRANSACTIONS** | | **$    178,233.29** | | **$    148,432.14** | | **$    326,665.43** |
| **TOTALS Due Florida Markets Net Of EASTERN** | **257** | **$    122,921.63** | **362** | **$    147,781.19** | **619** | **$    270,702.82** |

32.    The 474 head of livestock that were the subject of the Rush Creek purchases above, were delivered to Quincy Cattle Co., Inc., Chiefland, Florida. The Florida Markets collective asserted and filed UCC security interest for unpaid livestock sold.

33.    Finally, it should also be noted that I.E. "Jim" Byrd has asserted Purchase Money Claims (Claim Nos. 187-189) for unpaid sales proceeds, commissions, mark-ups and livestock services rendered as follows:

| Party | Description | | Miller |
|---|---|---|---|
| Oak Lake Cattle Co. | Livestock Sales Commission | $ | 32,066.43 |
| Daniel M. Byrd | Livestock Sales Commission | $ | 10,056.87 |
| Eagle Bay, Inc. | Yard Services, etc. | $ | 26,616.93 |
| **TOTAL** | **Livestock Sales** | **$** | **68,740.23** |

34.     As noted, the Florida Creditors object to the assertions in the Trustee Motion that would suggest in any way there are superior claims to the sales proceeds from the above tabulated transactions and to those payments already rendered per I.E. "Jim" Byrd's instructions acting as Clearee principal in transactions where Debtor acted as Clearing Agency. No doubt there are other Purchase Money Claimants where Debtor acted as Clearing Agency who would assert claims that the Trustee Motion would improperly silence, as well.

35.     The Trustee's statement that that the Debtor believes there are no valid secured claims to the funds in the escrow account other than Fifth Third, is simply insufficient, inadequate, and flat wrong. Fifth Third's blanket lien on Debtors receivables and inventory can only reach to those assets which Debtor actually acquired through payment or performance. Absent payment or performance Debtor acquired nothing, took title to nothing, and provided collateral interest to Fifth Third's liens in nothing.

36.     Debtor Eastern has done nothing to establish that the funds sought by the Trustee "are not necessary for the payment of Purchase Money Claims" for purposes of the Cattle Payment Order, nor has the Debtor addressed any issues related to the overturning or resolving the Purchase Money Claims of the Florida Creditors' or any other parties. The Trustee Motion also fails to address whether the funds sought are "excess cash collateral." Indeed, the very substantial Receivables listing errors contained in the Debtors Monthly Operating Reports suggests that the underlying assumptions are

flawed. As noted, Fifth Thirds interest can only reach to assets actually acquired by Debtor Eastern and there is considerable dispute as to what this and the bankruptcy estate actually encompasses. Absent resolution of what Debtor owns, funds should not be release to the Trustee's operating account to become "excess cash collateral" for purposes of the Financing Order and could be transferred to Fifth Third Bank free and clear of claims.

## CONCLUSION

37.     As noted, Debtor Easter Livestock Co., LLC is attempting to "resolve" the Florida Creditor claims and those of others through a summary proceeding, effectively disallowing the claims without establishing even a minimal threshold basis in fact or law of Debtor's ownership or the bankruptcy estate's rights and interest in cattle sales proceeds.

WHEREFORE for the reasons set forth above, the Florida Creditors request that the Trustee Motion and all relief requested thereunder be DENIED.

Respectfully submitted this 17th day of June 2011:

s/ Wl Scott Newbern
W. Scott Newbern
W. SCOTT NEWBERN, P.L.
Florida Bar No. 0098108
2982 East Giverny Circle
Tallahassee, Florida 32309
(T)  850.591.1707
(F)  850.894.0824
wsnewbern@msn.com

COUNSEL FOR HILLIARD–McKETTRICK INVESTMENTS, INC. d/b/a ARCADIA STOCKYARD; CATTLEMEN'S LIVESTOCK MARKET, INC.; COLUMBIA LIVESTOCK MARKET, INC.; HARDEE LIVESTOCK MARKET, INC.; NORTH FLORIDA LIVESTOCK MARKET, INC.; OCALA LIVESTOCK MARKET, INC.; OKEECHOBEE LIVESTOCK MARKET, INC.; SUMTER COUNTY FARMERS MARKET, INC.; AND MADISON COUNTY LIVESTOCK MARKET, INC. D/B/A TOWNSEND LIVESTOCK MARKET; RON SIZEMORE TRUCKING, INC.; OAK LAKE CATTLE CO.; EAGLE BAY, INC.; and DANIEL M. BYRD

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

s/ Wl Scott Newbern
W. SCOTT NEWBERN

# Exhibit A

## **AFFIDAVIT OF TODD CLEMONS**

1.      My name is Todd Clemons, and I am over the age of 18. I have personal knowledge of the facts set forth herein.

2.      I am President of Okeechobee Livestock Market and North Florida Livestock Market. My Grandfather and Father purchased Okeechobee Livestock Market in 1961. I have been in the livestock market business and the cattle business all my life. I am 56 years old. My Dad is 84 and my brother is 60. I have a son who is also in the business. I have a B.A. degree in Business Administration from Troy State University, graduated in 1976.

3.      Our Market handles over $50,000,000 worth of cattle in a year. I am responsible for the operation in every aspect. I make sure that the money is being collected a timely manner and also take care of any problems that may occur.

4.      The "Grain Inspection, Packers and Stockyards Administration" ("GIPSA" or "P&S") is the government agency which regulates our business. Under GIPAS regulations, any payment for cattle has to be deposited in to the Custodial Account for Shippers Proceeds ("Custodial Account"). All animals sold through our sale ring by consignors are paid for on the day of the sale. The sellers are paid out of the P&S regulated Custodial Account. Within minutes of the sale of the cattle, the consignor can pick up his check. The "Buyers" of the cattle are predominately "Order Buyers." They are buying cattle for customers who have called them with a specific order for certain types of cattle. Such as: "Buy me a load of 400# steers, Angus or Charolais, #1 quality;' or "Buy me a load of 500# heifers that are replacement quality;" or "Buy me a load of 600# yearlings to work on my Cutting Horses." These "Order Buyers" are individuals that make a living buying cattle for other people. A truck load of cattle today typically costs around $50,000-$60,000. "Order Buyers" generally do not have that kind of money

1

because they may buy two (2) or three (3) loads of cattle a day at each livestock market. There are eight (8) livestock markets in the State of Florida. There are companies around the country that are called Order Buying Companies. They buy either: (i) for their own account, sometimes through Order Buyers; (ii) for the accounts of others on a commission or fee basis; or (iii) act as "Clearing Agency" for the transactions of "Order Buyers." Under GIPSA regulations, a Clearing Agency acts as a clearing house —receiving and issuing payment per instructions from the Order Buyer and providing bond coverage required under GIPSA regulations for parties buying and selling livestock. A Clearing Agency facilitates a larger volume of business for the "Order Buyer" than would otherwise typically be possible.

5.      The independent cattle "Order Buyer" solicits potential orders for cattle from farmers, ranchers, feedlots, and whoever may want cattle for any reason. These are the actual "Buyers" and are the customers of the "Order Buyer." The "Order Buyer" will then attend the livestock auctions at markets of their choice. "Order Buyers" will buy cattle, deliver the cattle to THEIR shipping facility to be sorted, invoiced, loaded and shipped. Sales in Florida are Monday through Wednesday. Buyers will buy at the sales of their choice, bring all the cattle to their facility. And mostly on Thursday, they will load the cattle on trucks to be delivered to their clients. Cattle from Florida go primarily to the feeding states out west, mostly Texas. Some cattle go to "pre-conditioners" in Florida so the cattle can be "straightened out" and weaned before being shipped out west. It is solely up to the "buyer of the cattle," i.e. the customer who placed the order with the "Order Buyer" to determine what is to be done with the cattle. The "Order Buyer" makes trucking arrangements, makes out invoices, loads the truck and delivers the cattle. The Order Buying Company, acting a "Clearing Agency," simply writes the check for the cattle that were purchased from the livestock markets. When the cattle are invoiced out from

2

the markets to the actual "Buyer" or "End Customer," the invoice will not be from the livestock market, but from the "Order Buyer" directly or from the "Order Buying Company" acting at the direction of the "Order Buyer." This is because there are other charges that have to be added, including the feed charges, the vet expenses, the trucking, the "Order Buyer: commission, and the "Clearing Fee" charged by the "Order Buying Company."

6.      Under GIPAS regulations, the Order Buying Company when acting as a Clearing Agency is responsible to render payment to the livestock markets for the cattle purchased. GIPSA regulations require that the party responsible for payment be listed on the market invoices as "Buyer" even though the Order Buyer Company is only acting as "Clearing Agency" and that the "Order Buyer" be listed as "Agent" even though the "Order Buyer" is the actual buyer on site for his customers and the "Order Buyer Company" is the agent clearing the transaction. GIPSA regulations also require that the check be in the mail within 24 hours of the purchases. The livestock markets fax invoices to the "Order Buyer" directly or the "Order Buying Company per instructions from the "Order Buyer" from the livestock markets as soon as the sale is over. A check should be in the mail within 24 hours of that time, postmarked. If this happens the way it should, the livestock markets should receive their checks by the end of the week, or certainly before the next round of sales of the following week. The "Buyer" or "End Customer" who placed the order for the cattle will pay for the cattle when invoiced from the "Order Buyer" directly or from the "Order Buyer Company" at the direction of the Order Buyer.

7.      As noted above, most times cattle are shipped at least by Thursday, if not sooner. The "Order Buying Company" receives payment for the cattle from the Buyers before the livestock markets are in turn paid by the Order Buying Company. Livestock markets have been keeping envelopes that checks came in to document when payment

3

was actually mailed, to ensure that cattle are being paid for in the time specified by GIPSA regulations. At no time do the cattle being bought by the independent "Order Buyers" ever physically go to the "Order Buying Company acting a a Clearing Agency. This only typically occurs when the Order Buying Company is buying for its own account. The Order Buying Company acts as clearing house and charges a fee which is added on to the invoice paid by the End Customer, again at the direction of the "Order Buyer."

8.     In the case of Eastern Livestock, they are, or were, the largest "Order Buying Company" in the United States. There are others we do business with at Okeechobee Livestock Market and North Florida Livestock Market. D & S Cattle Co. in Zolfo Springs, FL; Foy Reynolds Cattle Co., Bonifay, FL; and Thomas Cattle Co., Williston, FL are some of the others. These companies are Florida based and buy mainly Florida cattle. Eastern Livestock was clearing house for Order Buyers in most of the states east of the Mississippi. The business model is the same for all of these companies. They deal in volume and for a clearing fee clear cattle purchase transactions of the Order Buyers that buy cattle for "End Customers" on commission.

9.     Eastern Livestock was the Clearing Agency for I.E. "Jim" Byrd, an "Order Buyer who bought cattle from our Okeechobee and North Florida Markets. I.E. "Jim" Byrd acted on orders for specific cattle from his customers, the "End Customer." I.E. "Jim" Byrd bought cattle and was invoiced directly from Okeechobee and North Florida livestock markets. Byrd would then invoice his "End Customers" and direct Eastern Livestock on how, for what amount, and to whom the checks were to be issued. Our Okeechobee and North Florida markets did not have a relationship with the "End Customer."

10.     When Eastern Livestock was charged cattle last year that were never paid for, Jim Byrd knew exactly who was the "End Customer," where the cattle had been shipped,

4

who was to pay the invoices he prepared (on an Eastern Livestock Invoice with Eastern
acting as "Clearing Agency"). Eastern Livestock was supposed to pay us for the cattle
and the "End Customer" was to pay Eastern. When Eastern failed to render payment last
Fall for the livestock purchased by Jim Byrd, the cattle had already been shipped to the
"End Customer." The "End Customer" took possession of the cattle and either paid
Eastern, or held the funds because of Eastern's Insolvency and they did not know what
to do.

11.     In the case of Rush Creek Ranch, LLC the funds were interpled with the court in
Wisconsin. In the case of Len Miller, the funds were paid into the Trustee. In both cases
Eastern only has a claim to the "clearing fee" and the bulk of the funds are due our
Okeechobee and North Florida livestock markets and the other Florida stockyards for
unpaid cattle purchases. For the cattle purchases at our Okeechobee and North Florida
markets, we paid the consignor or producer of the cattle the day the cattle were sold
from our "Custodial Account," and we never received payment for the cattle from
Eastern. We are "out" the money and funds are due our "Custodial Account" from
Eastern or the End Customer. The "End Customer" has taken possession of our cattle
and would owe Eastern if Eastern had rendered payment, but Eastern has not done so.
The Rush Creek Ranch, LLC and Len Miller funds held by the Trustee are due our
markets and the other Florida stockyards. Eastern only has a claim for its "clearing fee"
on the assumption that it cleared the transaction (which it did not). It is that simple.

12.     Eastern Livestock was simply a clearinghouse, who charged a clearing fee for
processing the transaction and being responsible for payment under GIPSA regulation—
payment Eastern did not make. Eastern would never have taken title in any way to the
"purchased" livestock even if payment had been made. Since payment was not made,
Eastern could not have taken title to livestock. The cattle were shipped to the proper

5

"purchased" livestock even if payment had been made. Since payment was not made, Eastern could not have taken title to livestock. The cattle were shipped to the proper buyers but the Florida markets have not been paid and title has not passed. Payment, therefore, is due, either from the End Customer or from Eastern or in the case of Len Miller and Rush Creek Ranch, LLC from the funds paid into the Trustee and interpled initially in Wisconsin. For our Okeechobee and North Florida Markets this amounts to approximately $37,000 for 119 head.

FURTHER, at this time, Affiant saith naught.

Todd Clemons
President, Okeechobee Livestock Market,
North Florida Livestock Market

STATE OF FLORIDA

COUNTY OF OKEECHOBEE

PERSONALLY APPEARED BEFORE ME, the undersigned authority, duly authorized to take acknowledgments and administer oaths, TODD CLEMONS, after first being duly sworn on oath, deposes and says: that he is the individual described in and who executed the above and foregoing document, the statements contained therein are true and correct. TODD CLEMONS, is personally known or provided identification as follows:_____,
and has taken an oath.

WITNESS my hand and official seal in the County and State last aforesaid this __16th__ day of June 2011.

                                        Notary Public

MARY M. RUCKS
MY COMMISSION # DD 801454
EXPIRES: June 28, 2012
Bonded Thru Notary Public Underwriters

Mary M. Rucks

Notary Public (Print Name)

6

# Exhibit B

# AFFIDAVIT OF KATHY K. TANNER

STATE OF FLORIDA

COUNTY OF DESOTO

1.  My name is Kathy K. Tanner. I am over the age of 18. I have personal knowledge of the facts set forth herein.

2.  I have been employed in the cattle auction marketing business all of my life. Starting in 1970, I was employed and worked with my family who operated the Arcadia State Livestock Market in DeSoto County. Upon their retirement in 1993 I remained an employee of the owners of Arcadia State Livestock Market, Inc. 1994-2000, Arcadia Livestock Market, Inc. 2001-September 2005, and I am currently employed by Hilliard-McKettrick Investments, Inc. d/b/a Arcadia Stockyard which started operation September 14th of 2005. I have 40 plus years' experience in the cattle auction business. I am currently the Office Manager of Arcadia Stockyard and responsible for the record keeping and daily operations of the office including sale days.

3.  I have known I.E. "Jim Byrd" as the operator/owner of Oak Lake Cattle Company. He has been a cattle buyer/dealer at the Arcadia Stockyard since it started operation in 2005. Eastern Livestock Company, LLC ("Eastern") was acting as a clearing agency for I. E. "Jim" Byrd. I. E. "Jim" Byrd bought the cattle from Arcadia Stockyard, and Arcadia Stockyard in turn submitted the invoices for the purchase of the cattle directly to I. E. "Jim" Byrd via fax of the recap or purchase summaries. I. E. "Jim" Byrd handled all aspects of the transaction from purchase to delivery of the cattle. The only involvement Eastern Livestock Company, LLC had, was to render payment by check as the clearing agency for I. E. "Jim" Byrd. Eastern did not take delivery of the cattle.

1

4.      Cattle purchased by I. E. "Jim" Byrd were invoiced to Eastern with I. E. "Jim" Byrd as the agent per the instructions and regulations of the Grain Inspection, Packer and Stockyards Administration ("GIPSA") in regards to bond coverage for this account. All livestock dealers are required by GIPSA regulations to carry a bond when engaged in the operation of purchasing cattle. As such, Arcadia Stockyard and the other markets are regulated per the GIPSA to list as the "buyer" on market invoices the company which will be "making payment" for the invoices. This makes known the responsible party for payment of the cattle as the dealer or clearing agency which in turn carries the principle bond coverage for the account. This is a misnomer because Eastern was not the actual buyer but simply carried the "bond" and cleared the transactions per instruction from I. E. "Jim" Byrd. The "agent" on the market invoices is the person or company present on sale day that actually bid and purchased the cattle. This was I. E. "Jim" Byrd, acting for himself or for his clients, like Len Miller and Rush Creek Ranch, LLLP.

5.      Eastern carried the bond required by GIPSA and acted as I. E. "Jim" Byrd's clearing agency only. A "clearing agency" is registered with GIPSA and for a fee agrees to pay the purchase price when due and safe keeps the funds received for the purpose of paying for purchased livestock. A clearing agency also completes reports each year as to their yearly transactions to calculate the required bond amount and to identify the parties whose transactions are cleared or the "clearees." Acting as a clearing house, Eastern was willing for a fee or commission to handle the prompt payment of the invoices presented by I. E. "Jim" Byrd. A "clearing agency" can be obtained to handle the bond coverage and payment streams, but the "clearing house," acting strictly in the capacity of a "clearing agency," does not ever receive, handle or physically take possession of the cattle for processing. This would only

2

occur when the "clearing house" was acting in a different capacity such as dealer buying and selling for its own account or accounts of other.

6.     As noted in the Custodial Account Instructions from USDA GIPSA Administration #3 states that the Arcadia Stockyards Custodial Account is a trust account and the bank must be informed that the depositor (market agency) is acting as a fiduciary and that the funds in the account are trust funds.  This account is maintained strictly for the payment of the many producers who have sold cattle with the market agency and as such are titled as a "custodial account for shippers' proceeds".  The market agency and GIPSA both notify the bank about these trust funds.

7.     As Office Manager, I, Kathy K. Tanner, never dealt with Eastern Livestock Company, LLC concerning the purchase of cattle by I. E. "Jim" Byrd.  Arcadia Stockyard's only connection with Eastern was receipt of Eastern's check in payment for cattle invoiced by I. E. "Jim" Byrd and per his instructions.  These cattle were shipped from the Arcadia Stockyard by I. E. "Jim" Byrd per his instructions and any issues concerning the purchase of these cattle were handled solely by I. E. "Jim" Byrd.

FURTHER, at this time, Affiant saith naught.

_Kathy K. Tanner_
_____
KATHY K. TANNER

3

STATE OF FLORIDA

COUNTY OF DESOTO

PERSONALLY APPEARED BEFORE ME, the undersigned authority, duly authorized to take acknowledgments and administer oaths, KATHY K. TANNER, after first being duly sworn on oath, deposes and says: that she is the individual described in and who executed the above and foregoing document, the statements contained therein are true and correct. KATHY K. TANNER, is personally known or provided identification as follows:_____, and has taken an oath.

WITNESS my hand and official seal in the County and State last aforesaid this ___16ᵗʰ___ day of June 2011.

_____
Notary Public

_____
Notary Public (Print Name)

My commission expires:
My commission number:

Notary Public State of Florida
Libby T McKettrick
My Commission EE057527
Expires 04/10/2015

4

# Exhibit C

## AFFIDAVIT OF CARLTON D. MCKETTRICK

STAE OF FLORIDA

COUNTY OF DeSoto

BEFORE ME, the undersigned authority, personally appeared, Carlton D. "Carl" McKettrick, to me well known to be the same, who, being by me first duly sworn, deposes and says:

1.   My name is Carlton D. "Carl" McKettrick. I am over the age of 18. I have personal knowledge of the facts set forth herein.

2.   I have been in the cattle business all of my life. Since 2005 I have been an owner and operator of Hilliard-McKettrick Investments, Inc., d/b/a Arcadia Stockyard, a Florida corporation with the principal office located at 2719 NE Earnest St., Arcadia, FL. 34266. I am the President of this corporation. My wife (Libby T. McKettrick) and I are 50% owner's along with Joe M. Hilliard II and his wife (Chelsa R. Hilliard) which own 50%.

3.   Prior to owning and operating the Arcadia Stockyard I was an order buyer for an order buying company in Florida starting in 1981. I have over 30 years of experience with buying and selling cattle both as an order buyer and as the manager of Arcadia Stockyard.

4.   Arcadia Stockyard is a market agency under the Packers and Stockyards Act of 1921, as amended and supplemented (7 U.S.C.§§ 181-229) as well as the regulations issued thereunder (9 CFR Part 201). Arcadia Stockyard is a livestock auction stockyard acting as an agent for the producers of cattle. As such we are responsible for selling a producer's cattle during our auction, paying the producer for the cattle that day, and collecting payment for those cattle from the buyers in a timely manner as regulated by the Grain Inspection, Packer and Stockyards Administration ("GIPSA").

1

5.    As the owner of the Arcadia Stockyard, I have a relationship with the order buyers that attend our sales each week. These order buyers represent order buying companies which in turn represent buyers from around the country who have placed orders for various types of cattle with them. As noted above, from 1981 to 2005 I was also an order buyer here in Florida. These order buying companies can: (i) buy cattle for their company or on their own account; (ii) buy cattle for other companies on a commission or fee basis; or (iii) act as a clearing agency for an order buying company. Order buyers register for each activity with GIPSA.

6.    During the entire time we were doing business with Eastern Livestock Company, LLC ("Eastern"), it was acting as a clearing agency for I. E. "Jim" Byrd, his company Oak Lake Cattle Company, and his son Daniel M. Byrd. As the clearing agency, Eastern was responsible for the prompt and timely payment for cattle bought by I. E. "Jim" Byrd from Arcadia Stockyard, but Eastern had no responsibility as to the receipt or delivery of the cattle. Eastern took direction from I.E. "Jim" Byrd regarding the timing and amount of receipts and payments. In effect, Eastern was the back office for I.E. "Jim" Byrd.

7.    I. E. "Jim" Byrd was responsible for getting his orders for cattle from his buyers, purchasing the cattle to be shipped to these buyers, receiving and reconciling the invoices from the stockyards, invoicing the purchases to Eastern as the clearing agency payable to the markets, and invoicing the purchases including expenses (such as trucking, commission, and clearing agency fees) to I. E. "Jim" Byrd's customers. I. E. "Jim" Byrd's customers in turn owed Eastern for the cattle purchased. At no time during our involvement with I.E. "Jim" Byrd did we ever deal directly with Eastern.

8.    The cattle purchased at Arcadia Stockyard and other Florida markets were shipped to I. E. "Jim" Byrd's customers directly and were never handled or received by Eastern.

2

Eastern's sole responsibility was to perform their job as the clearing agency receiving a fee for being the "clearing house" for clearing I. E. "Jim" Byrd's cattle purchases.

9.   Eastern has defaulted on their clearing agency performance for I. E. "Jim" Byrd.  Eastern did not ever have possession of the cattle purchased from Arcadia Stockyard.  I. E. "Jim" Byrd handled all the details concerning the purchase and delivery of the cattle to his customers.  Byrd's customers have received cattle for which payment has not been made to Arcadia Stockyard and other Florida markets.

10.   Any funds available to settle this account should rightly be made in accordance with Byrd's instruction to Eastern, as Eastern should have done last November. As a clearing agency Eastern never took possession of or title to the livestock purchased by I.E."Jim" Byrd as an Order Buyer for his customers across the country—customers which include Len Miller and Rush Creek Ranch, LLC.

11.   With respect to the Len Miller and Rush Creek Ranch, LLC accounts and on the assumption that Eastern rendered performance as clearing agency (which it did not), Eastern's sole claim on funds held by the Trustee for unpaid livestock sales is for the commission fees due for clearing the livestock purchase transactions at Arcadia Stockyard and other Florida stockyards where I.E. "Jim" Byrd operated as an Order Buyer. Only where Eastern has rendered payment to the auction markets and sellers would Eastern have a claim for the livestock sale proceeds. In this case, Eastern would be acting as cattle buyer for their own account or as cattle buyer for other companies on a commission, and not simply as a clearing agency.

12.    At this point, Arcadia Stockyard has been unpaid for livestock purchases of I.E. "Jim"

Byrd for approximately 254 head and some $75,000.00

FURTHER, at this time, Affiant saith naught.

_____

CARLTON D. McKETTRICK

STATE OF FLORIDA

COUNTY OF DESOTO

PERSONALLY APPEARED BEFORE ME, the undersigned authority, duly authorized to take
acknowledgments and administer oaths, CARLTON D. McKETTRICK, after first being duly sworn on oath,
deposes and says: that he is the individual described in and who executed the above and foregoing
document, the statements contained therein are true and correct. CARLTON D. McKETTRICK, is
personally known or provided identification as follows:_____, and has
taken an oath.

WITNESS my hand and official seal in the County and State last aforesaid this __16th__ day of June
2011.

_____

Notary Public

_____

Notary Public (Print Name)

My commission expires:

My commission number:

4

# Exhibit D

## AFFIDAVIT OF I. E. "JIM" BYRD

**STATE OF FLORIDA**

**COUNTY OF OKEECHOBEE**

BEFORE ME, the undersigned authority, personally appeared, I. E. "JIM" BYRD, to me well known to be the same, who, being by me first duly sworn, deposes and says:

1.    My name is I. E. BYRD. I am over the age of 18. I have personal knowledge of the facts set forth herein.

2.    I have been in the cattle business all of my life. Since 1991 I have been the owner and operator of Oak Lake Cattle Company, Inc. ("Oak Lake"), a Florida corporation with principal offices located at 1055 U.S. Highway 98 North, Okeechobee, FL 34974. I am President and Secretary/Treasurer and my son, Daniel M. Byrd, currently serves as Vice President. Prior to this time I operated as a sole proprietor I.E. Byrd d/b/a Oak Lake Cattle Company.

3.    Oak Lake is a market agency and dealer under the Packers And Stockyards Act of 1921, 7 U.S.C. §§ 181 et seq. My son and I buy and sell cattle through Oak Lake on a commission basis for clients in Florida and other states and for our own account. We operate almost exclusively in Florida, dealing with the Florida auction market stockyards.

4.    On March 25, 1993 I submitted an Application For Registration (Under Packers and Stockyards Act, 1921) on Form P&SA-116 (5-88) to operate: (i) "Buying On Commission;"(ii) "Dealer – Buying Or Selling;" and (iii) "Clearee Of Eastern Livestock."

See **Exhibit A** attached hereto. Eastern Livestock Company, LLC ("Eastern") is and was a registered "clearing agency" under the Packers And Stockyards Act and governing regulations, specifically 9 C.F.R. §201.10(d).

5.    Under my clearing arrangement with Eastern, payments for my livestock purchases and sales were "cleared" by Eastern. Typically, and in about 90% of the cases, Oak Lake would: (i) buy livestock at auction on commission for my clients, (ii) receive the Invoices from the Florida auction markets where the purchases originated, (iii) transmit these to Eastern for payment – together with detail identifying the transactions and the purchaser or purchasers from whom payment is to be received and the auction markets, trucking companies for hauling the livestock and others for feed and other incidentals, including buying commission for Oak Lake and the clearing commission for Eastern as "clearing agent," and (iv) transmit to my client buyers Eastern Invoices Oak Lake prepared for the amounts owed from the livestock purchased by my clients.

6.    The Eastern Invoices which Oak Lake prepared for Eastern and submitted to my client buyers included Eastern's commission for the clearing of the transactions at $.50 per 100 lbs. livestock weight purchased. As "clearing agent" Eastern acted as my back office on a clearing transaction commission. Eastern was not the buyer and unless Eastern was a buyer for its own account never took title to the livestock.

7.    Eastern served as my "clearing agency" on this basis from 1993 until this past November when Eastern failed to make payments for livestock I had purchased on account for other buyers, including Eastern, and checks issued by Eastern for payment of livestock I

2

had purchased for my clients on commission were dishonored. I have represented Eastern and Eastern has represented me as clearing agent for many years, and Eastern's failure to render payment for cattle purchased by my clients is a plain violation of the Packers And Stockyards Act and governing regulations.

8.      Since November 2010 this time, Oak Lake has not cleared livestock purchases through Eastern and has registered directly under the Packers And Stockyards Act and obtained its own bonding. Oak Lake has arranged for the buyers for whom I purchase livestock on commission to pay the Florida auction stockyards directly without the use of a clearing agency.

9.      On January 21, 2011 Oak Lake submitted the Annual Report Of Dealer Or Market Agency Buying On Commission (P&SP Form 3001) listing Eastern as clearing my livestock purchases during the reporting period of October 1, 2009 to September 2010. See **Exhibit B**.

10.     Between October 11, 2010 and November 3, 2010 my son and I through Oak Lake Cattle Co. engaged in purchasing livestock for Rush Creek Ranch, LLLP using Eastern as "clearing agent" from the following nine (9) Florida livestock auction markets:

> Hilliard-McKettrick Investments, Inc. d/b/a Arcadia Stockyard
> Cattlemen's Livestock Auction Market, Inc.
> Columbia Livestock Market Of Lake City, Inc.
> Hardee Livestock Market, Inc.
> North Florida Livestock Market, Inc.
> Ocala Livestock Market, Inc.
> Okeechobee Livestock Market, Inc.
> Sumter County Farmers Market, Inc.
> Madison Livestock Market, Inc. d/b/a Townsend Livestock Market,

3

There were a total of 84 transactions involving 691 head of livestock. The normal payment arrangement described above was interrupted midstream by Eastern's insolvency with the result that a number of checks issued for payment for the cattle purchased from Florida markets were returned for insufficient funds. Eastern did complete some of the transactions, however. The net result is that the above listed Florida markets did not receive payment for a total of 474 head out of the 691 in amounts totaling $119,432.79. The amount due on the Rush Creek purchases totals $178,233.49.

11.    On or about November 16, 2010, the purchaser, Rush Creek Ranch, LLLP, deposited in Interpleader the $178,233.49 total amount due on the transactions with the Vernon County Circuit Court, in Wisconsin, Case No. 10-CV-317. The following is a break down of the amounts due the parties to this Interpleader.

| Party | Description | | Amount |
|---|---|---|---|
| **Florida Markets** | **Livestock Sales** | **$** | **119,432.79** |
| | | | |
| D & R TRUCKING | Trucking | $ | 139.04 |
| RON SIZEMORE | Trucking | $ | 1,422.69 |
| PACO ANUEZ | Trucking | $ | 26.59 |
| OAK LAKE CATTLE | Purchase Commission | $ | 1,900.52 |
| | | | |
| EASTERN LIVESTOCK | Clearing Commission | $ | 666.47 |
| EASTERN LIVESTOCK | Livestock Purchases | $ | 54,645.19 |
| **Total Eastern** | | **$** | **55,311.66** |
| | | | |
| **Total Interpleader** | | **$** | **178,233.29** |

Detail supporting this series of transactions is attached hereto as **Exhibit C**.

12.    Between October 25, 2010 and November 3, 2010 is my son and I also engaged in purchasing livestock for another client, Len Miller of Portales, New Mexico. A total of

362 head of livestock were purchased in 16 transactions. The following six (6) Florida livestock auction markets participated in the sale of livestock to Miller:

> Hilliard-McKettrick Investments, Inc. d/b/a Arcadia Stockyard
> Hardee Livestock Market, Inc.
> Ocala Livestock Market, Inc.
> Okeechobee Livestock Market, Inc.
> Cattlemen's Livestock Auction Market, Inc.
> Sumter County Farmers Market, Inc.

13.    Again, the normal process for payment due the sellers and agents for the livestock purchases was interrupted by the insolvency of Eastern with the result that the payments totaling $130,701.75 for livestock sales was withheld by Miller from the above six (6) Florida livestock auction markets. On information and belief, this amount together with amounts due for hauling, yardage, purchase commissions, and clearing commission was deposited with the Trustee in January 2011. On information and belief, the total amount deposited with the Trustee is $148,432.14.

14.    The following is a summary of the amounts due the parties to the Miller purchases:

| Party | Description | Amount |
|-------|-------------|-------:|
| **Florida Markets** | **Livestock Sales** | **$ 130,701.75** |
| | | |
| RON SIZEMORE | Trucking | $   13,956.91 |
| EAGLE BAY, INC. | Yardage, etc. | $    2,265.40 |
| OAK LAKE CATTLE | Purchase Commision | $    1,493.45 |
| Less: Adjustment | | $     (636.32) |
| | | |
| **EASTERN LIVESTOCK** | **Clearing Commission** | **$    650.95** |
| | | |
| **Total Due From Miller/Trustee** | | **$  148,432.14** |

Detail supporting this series of transactions is attached hereto as **Exhibit D**.

15.     The livestock purchased by Oak Lake for Rush Creek were shipped to Chiefland, Florida f/b/o Rush Creek Ranch, LLLP. On information and belief the livestock remain in Chiefland. The livestock purchased by Oak Lake for Len Miller were shipped and delivered to Len Miller, Portales, New Mexico and on information an belief are still there. The livestock in possession of both Rush Creek Ranch, LLLP and Len Miller were not paid for, nor were the fees and other amounts due the parties to those transactions.

Under penalty of perjury, the above statements are true and correct.

FURTHER, at this time, Affiant saith naught.

I. E. BYRD, AFFIANT

6

STATE OF FLORIDA

COUNTY OF OKEECHOBEE

PERSONALLY APPEARED BEFORE ME, the undersigned authority, duly authorized to take acknowledgments and administer oaths, I. E. BYRD, after first being duly sworn on oath, deposes and says: that he is the individual described in and who executed the above and foregoing document, the statements contained therein are true and correct. I. E. BYRD, is personally known, and has taken an oath.

WITNESS my hand and official seal in the County and State last aforesaid this _29_ day of April 2011.

*Personally Kno*

Notary Public

MILLY CREWS
Commission DD 633447
Expires April 13, 2011
Bonded Thru Troy Fain Insurance 800-385-7019

_____
Notary Public (Print Name)

My commission expires:
My commission number:

7

# Exhibit A

FORM APPROVED: OMB NO. 0590-0001

| U.S. DEPARTMENT OF AGRICULTURE<br>PACKERS AND STOCKYARDS ADMINISTRATION<br><br>**APPLICATON FOR REGISTRATION**<br>**(Under Packers and Stockyards Act, 1921)** | Public reporting burden for this collection of information is estimated to average .16 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the form. Send comments regarding this burden estimate or any other aspects of this collection of information, including suggestions for reducing the burden, to USDA, OIRM, Clearance Officer, Room 404-W, Washington, DC 20250. When replying refer to the OMB Number and Form Number in your letter. | Registration is required in order to operate as a market agency or dealer as defined in Section 301 of the Packers and Stockyards Act (9 CFR 201.10(a)). Information held confidential (9 CFR 201.96). |

**APPLICANT:** *Please print or type.*

| 1. NAME OF APPLICANT TO BE REGISTERED *(Individual or firm)*<br><br>OAK LAKE CATTLE COMPANY, INC. | 2. STREET ADDRESS<br><br>P. O. BOX 1284 | |
|---|---|---|
| 3. CITY<br><br>OKEECHOBEE | 4. STATE<br><br>FLORIDA | 5. ZIP CODE<br><br>34973 | 6. TELEPHONE NO. *(Include area code)*<br><br>813-763-5600 |

**7. SPECIES OF LIVESTOCK HANDLED** *(Check)*

XXXXX CATTLE   ☐ SHEEP AND GOATS

☐ SWINE   ☐ HORSES AND MULES

**8. CHARACTER OF BUSINESS** *(Check applicable operations)*
**a. MARKET AGENCY**

☐ SELLING ON COMMISSION    ☒ BUYING ON COMMISSION    ☐ CLEARING SERVICES

XXXX OTHER *(Specify)*  CLEAREE OF EASTERN LIVESTOCK

b.XXXX DEALER - BUYING OR SELLING

| 9. TYPE OF ORGANIZATION *(Check)*<br><br>☐ INDIVIDUAL   ☒ CORPORATION   ☐ PARTNERSHIP   ☐ ASSOCIATION<br><br>☐ OTHER *(Specify)* | 10. IF A CORPORATION OR ASSOCIATION, DESIGNATE STATE IN WHICH INCORPORATED<br><br>FLORIDA |
|---|---|
| | 10a. DATE INCORPORATED<br>✓ OCTOBER 1, 1991 |

| 11. | OWNERS, PARTNERS, OR OFFICERS<br>*(Name and Title)* | SOCIAL SECURITY NUMBER | HOME ADDRESS<br>*(Number, Street, City, State and Zip Code)* |
|---|---|---|---|
| | I. E. BYRD<br>PRESIDENT | 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 | P.O. BOX 1284 OKEECHOBEE, FL 34973 |
| ✓ | **Jeanee Byrd**<br>VP/Sec/Tres | **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** | **P.O. Box 1284, Okeechobee, Fl 3497:** |
| ✓ | | | |
| ✓ | | | |
| | | | |
| | | | |

12. NAMES AND LOCATIONS OF POSTED STOCKYARDS OR AUCTION MARKETS WHERE YOU WILL OPERATE

IN COMMERCE

12a. IF NOT ENGAGED IN BUSINESS AT A POSTED STOCKYARD, LIST PRINCIPAL PLACE OF BUSINESS

13. IF PREVIOUSLY REGISTERED, GIVE REGISTERED NAME AND ADDRESS
I. E. BYRD D/B/A OAK LAKE CATTLE COMPANY

14. DO YOU OWN OR LEASE A SCALE THAT IS USED IN THE PURCHASE AND SALE OF LIVESTOCK?

☐ YES *(Give location of scale(s): Number, Street, City, State, and ZIP Code)*   ☒ NO

| 15. MARKET AGENCY AND/OR DEALER<br><br>_____ Fiscal Year    X Calendar Year<br>_____ TO<br>Sale Day *(if applicable)*<br>☐ Mon  ☐ Tue  ☐ Wed  ☐ Th  ☐ Fri  ☐ Sat | 16. MARKET AGENCY SELLING ON COMMISSION<br>CUSTODIAL ACCOUNT<br><br>Bank:   N/A<br>Street:<br>City:   State:   ZIP: |
|---|---|

**CERTIFICATION:** I certify that the financial condition of the applicant meets the requirements of the Packers and Stockyards Act and the Application for Registration has been prepared by me or under my direction and that to the best of my knowledge and belief, is true and correct.

| SIGNATURE *(Owner, Partner, or Responsible Officer)*<br><br>Jeanee E Byrd | TITLE<br><br>~~PRESIDENT~~ V.P. | DATE<br><br>✓ 3/25/93 |
|---|---|---|

**SPACE BELOW NOT TO BE FILLED IN BY THE APPLICANT**

| REGISTRATION NUMBER | DATE OF ACCEPTANCE | REGISTERED AS *(Check one)*<br>☐ MARKET AGENCY  ☐ DEALER  ☐ MARKET AGENCY AND DEALER |
|---|---|---|

The Privacy Act of 1974 requires this agency to inform you that disclosures of your social security number is optional, and that authority for the information sought on this form is found in Secti 201.10 of the regulations issued under the Packers and Stockyards Act (9 CFR 201.10). The sole use of the social security number sought on this form is to distinguish between applicants a registrants that have identical or similar names. As this agency maintains a large volume of such applications and registrations, you are encouraged to supply your social security number.

FORM P&SA-116 (5-88) (Edition of 12-83 is obsolete)      ☆U.S. GOVERNMENT PRINTING OFFICE: 1989 - 619-157/00623

Exhibit A

OAK LAKE CATTLE COMPANY, INC.
PO BOX 1284
OKEECHOBEE, FL.  34973-1284


METHOD OF DOING BUSINESS WITH EASTERN LIVESTOCK COMPANY, LLC.:

1.  EASTERN ACTED AS A CLEARING AGENT ONLY FOR OAK LAKE CATTLE CO.(OLC # 22)

2.  THE PROCESS GOES AS FOLLOWS:
   A) OLC # 22 GOT ORDERS FOR CATTLE SOLD TO ITS CUSTOMERS
   B) OLC IN TURN BOUGHT CATTLE AT FLORIDA LIVESTOCK MARKETS

3.  I  WOULD FAX MARKET BILLS TO EASTERN FOR PAYMENT FOR EACH DAYS BUSINESS
   EASTERN ALWAYS PAID IN COMPLIANCE WITH P&S REGULATIONS.

4.  EXPENSES FOR TRUCKING,VETERNARY SERVICES,FEED,AND BUYER COMISSION INCLUDED ON
   PURCHASE ORDER (FORM) PROVIDED FROM EASTERN.

5.  ON COMPLETION OF ORDER OLC#22 WOULD BILL CATTLE TO CUSTOMER
   THIS BILL WOULD INCLUDE TRUCKING, VETERNARY EXPENSE, FEED, CLEARING TO EASTERN AND
   WE WOULD MARK UP (PROFIT) FOR OAK LAKE CATTLE CO.

6.  I THEN BILLED THE CUSTOMER ON EASTERN INVOICES(PROVIDED BY EASTERN)
   I SOLD & BILLED ALL THE CATTLE OUT OF MY BRANCH (OLC#22)

7.  THE CUSTOMER GOT THEIR INVOICE FROM OLC#22 BY FAX OR MAIL

8.  THE CUSTOMER IN TURN MAILED, FEDX, UPS,OR WIRED FUNDS TO EASTERN

9.  EASTERN CHARGED .50 CENTS / CWT FOR CLEARING

10.  EASTERN IN TURN PAID EACH EXPENSE ITEM (TRUCKING, FEED, VET., YARDAGE & MARK UP
   THESE WERE MAILED TO EACH VENDER AS LISTED ON WORK SHEET (EASTERN FORM PROVIDED)

11.  I WAS RESPONSIBLE FOR COLLECTING ALL OUT STANDING MONEYS NOT COLLECTED ON MY
   ACCOUNTS.  I RECEIVED AN ACCOUNTS RECIEVABLE DAILY OR ON A REGULAR BASIS FOR
   OLC#22.

# Exhibit B

**PACKERS & STOCKYARDS PROGRAM**

| For P&SP Use Only | P&SP Bar Code Only |
|---|---|
|  |  |

U.S. Department of Agriculture
Grain Inspection,
Packers and Stockyards
Administration

Packers and
Stockyards
Program

## ANNUAL REPORT OF DEALER OR MARKET AGENCY BUYING ON COMMISSION

**Instructions:** If an item's value is zero, enter "0". If an item does not apply, enter "NA". Upon compilation please verify that all items have been answered. Return completed form to the P&SP Central Reporting Unit. See separate instructions for complete information about this report.

### GENERAL INFORMATION - SECTION 1

| | | |
|---|---|---|
| 101 | Reporting Period (mm/dd/yy-mm/dd/yy) | a. from  10/1/09    b. to  9/30/10 |
| 102 | Legal Business Name | OAK LAKE COTTE CO. INC. |
| 103 | Business Name (dba) | |
| 104 | Mailing Address | PO Box 1284 |
| 105 | City, State, Zip | OKEECHOBEE, FL 34973 |
| 106 | Physical Address | 1055 Hwy 98N |
| 107 | City, State, Zip | OKEECHOBEE, FL 34972 |
| 108 | Contact Name | I. E. (Jim) Byrd |
| 109 | Telephone Number | 863.634.1005 |
| 110 | Fax Number | 863.763.7468 |

### ORGANIZATIONAL STRUCTURE - SECTION 2

List owners, officers, partners, and managing members in control of this business

| | a. Name | b. Title | c. Percentage Ownership |
|---|---|---|---|
| 201 | I. E. Byrd | Pres. | 100 |
| 202 | Dan Byrd | VP | — |
| 203 | | | |
| 204 | | | |
| 205 | | | |

| 206 | Type of organization: ☐ Individual  ☐ Partnership  ☐ Corporation  ☐ L.L.C.  ☐ L.L.P.  ☐ Co-op  ☐ Association  ☐ Other |
|---|---|
| 207 | Is this the same organization type reported last year?  ☒ Yes  ☐ No |
| 208 | Is this business owned or controlled by another business entity?  ☐ Yes  ☐ No |
| 209 | If line 208 is yes, identify the owner/controlling business name and address |
| 210 | Does this business own or control other businesses within the livestock-meat sector?  ☐ Yes  ☒ No |

If line 210 is yes, then provide the names of businesses that you own or control and percentage of control in items 211-214

| | a. Name of Business | b. Percentage of Control |
|---|---|---|
| 211 | | |
| 212 | | |
| 213 | | |
| 214 | | |

| 215 | Do you own or operate a scale on which you weigh livestock purchased?  ☐ Yes  ☒ No |
|---|---|
| 216 | What is the basis of payment made to you for most livestock you sale?  ☒ Liveweight  ☐ Dressed Weight or Carcass Basis |

Your response to this form is required under the Packers and Stockyards Act of 1921 (9 CFR 201.97 and 7 U.S.C. 181-229). According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information is 0580-0015. The time required to complete this information collection is estimated to average 2 hour per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection.

11/21/11

**Exhibit B**

## BOND INFORMATION - SECTION 3

| | Livestock Dealer Activity | a. Cattle & Calves | b. Hogs | c. Sheep & Goats | d. Horses & Mules | e. Total (a+b+c+d) |
|---|---|---|---|---|---|---|
| 301 | Cost of livestock purchased on a dealer basis for registrant's account | $ | $ | $ | $ | $ |
| 302 | Number of head of livestock purchased on a dealer basis for registrant's account | | | | | |

| | Livestock Bought on Commission | a. Cattle & Calves | b. Hogs | c. Sheep & Goats | d. Horses & Mules | e. Total (a+b+c+d) |
|---|---|---|---|---|---|---|
| 303 | Cost of livestock bought on commission for the account of others regardless of who paid for the livestock | $ 9,819.59 | $ | $ | $ | $ |
| 304 | Number of head of livestock bought on commission for the account of others regardless of who paid for the livestock | 13,444 | | | | |

| 305 | What was the dollar value of livestock dealer and BOC purchases in your highest fiscal year quarter? | $ |
|---|---|---|

## CLEAREE AND CLEAROR DESIGNATIONS - SECTION 4

| 401 | Are you a clearee (cleared by another business for your livestock purchases)? | ☒ Yes | ☐ No | |
|---|---|---|---|---|
| 402 | If you checked yes in item 401, provide the name of the clearing agent: | EASTERN LIVESTOCK COMPANY LLC | | |
| 403 | Are you a clearor (provide clearing services for clearees)? | ☐ Yes | ☒ No | If yes provide information for items 404-412 |

| | Clearee's Name as Registered | | Gross Value of Livestock Purchased |
|---|---|---|---|
| 404 | | 405 | $ |
| 406 | | 407 | $ |
| 408 | | 409 | $ |
| 410 | | 411 | $ |
| | Total Livestock Purchases of all Clearees | 412 | $ |

## BALANCE SHEET - SECTION 5

*All clearors and dealers whose line 301e plus 303e plus 412 total is below a specified $ amount (see instructions) do not need to complete Sections 5 and 6.*

**Assets**

**Current Assets**

| | | | |
|---|---|---|---|
| Cash (Enter overdrafts under Current Liabilities - line 515) | | 501 | $ |
| Temporary Cash Investments (Marketable Securities, Certificates | | | |
| of Deposit, Commercial Paper, etc.) | | 502 | $ |
| Accounts Receivable (Due in 1 Year or Less) | | 503 | $ |
| Notes and Loans Receivable (Portion due in 1 Year or Less) | | 504 | $ |
| Inventory | | | |
| Livestock | 505 $ | | |
| Other Inventory | 506 $ | | |
| Total Inventory | | 507 | $ |
| Other Current Assets | | 508 | $ |
| Total Current Assets | | 509 | $ |

| Long-Term Assets | | | |
|---|---|---|---|
| Investments | 510 $ | | |
| Property, Plant, & Equipment net of Depreciation and Amortization | 511 $ | | |
| Other Long-Term Assets | 512 $ | | |
| Total Long-Term Assets | | 513 | $ |
| Total Assets | | 514 | $ |

...

Continuation of Section 5 Balance Sheet.

**Liabilities and Net Worth**

**Liabilities**

  **Current Liabilities**

    **Bank Overdraft**

                                    515  $ _____

    **Accounts Payable**

      Livestock Payables           516  $ _____

      Other Payables             517  $ _____

      **Total Accounts Payable**                     518  $ _____

    Notes and Loans Payable (Demand Notes and Portion of

      Long-Term Notes due in One Year or Less)           519  $ _____

    **Other Current Liabilities**                  520  $ _____

    **Total Current Liabilities**                   521  $ _____

  **Long-Term Liabilities (Due after One Year)**        522  $ _____

**Total Liabilities**                          523  $ _____

**Total Net Worth**                          524  $ _____

**Total Liabilities and Net Worth (Equals Total Assets)**   525  $ _____

---

**INCOME STATEMENT - SECTION 6**

*All clearors and dealers whose line 301e plus 303e plus 412 total is below a specified $ amount (see instructions) do not need to complete Sections 5 and 6.*

**Income Statement**

Gross Dealer Profit (+) or Loss (-)          601  $ _____

**Buying Commission**                 602  $ _____

**Other Income**                    603  $ _____

  **Total Income**                   604  $ _____

  **Total Expenses**                605  $ _____

**Net Profit (+) or Loss (-) before Income Taxes**   606  $ _____

---

**CERTIFICATION - SECTION 7**

*Under the Packers and Stockyards Act any person who wilfully makes, or causes any false entry or statement of fact in this report shall be deemed guilty of offense against the United States, and be subject to a fine of $1,000 to $5,000, or to imprisonment for a term of not more than 3 years, or to both fine and imprisonment.*

I certify that this report has been prepared by me or under my direction, and to the best of my knowledge and belief correctly reflects reporting entity operations.

| 701 Print Name | 702 Signature (Must be signed by a person listed on 201-205) |
|---|---|
| I. E. Byrd | S. E. B. |

| 703 Phone Number | 704 Date | 705 Title |
|---|---|---|
| 863.634.1005 | 1/21/11 | Pres |

*Submitted information is confidential (9 CFR 201.96). Failure to report will result in forfeiture to the United States $110 per day until report receipt 7 (U.S.C. 222).*

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

# Exhibit C

## PAYABLES DUE FLORIDA MARKETS FROM RUSH CREEK/EASTERN          BY: Florida Livestock Market Agency

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Invoice Number 291244** | | | | | | | | | | |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 10/11/2010 | 9 | 1750 | $ 2,211.88 | $ 17.50 | $ - | | $ 2,229.38 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 10/11/2010 | 10 | 1970 | $ 2,508.38 | $ 19.70 | $ - | | $ 2,528.08 |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 10/13/2010 | 19 | 3645 | $ 5,327.21 | $ 36.45 | $ 5.00 | | $ 5,368.66 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 10/13/2010 | 14 | 2760 | $ 3,011.40 | $ 27.60 | $ 5.00 | | $ 3,044.00 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10 | 10/12/2010 | 7 | 1355 | $ 1,895.13 | $ 13.55 | | | $ 1,908.68 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10X | 10/12/2010 | 7 | 1405 | $ 1,632.70 | $ 14.05 | | | $ 1,646.75 |
| COLUMBIA L/S MKT | RUSH CREEK | 10 | 10/11/2010 | 5 | 865 | $ 919.63 | $ 17.30 | | | $ 936.93 |
| COLUMBIA L/S MKT | RUSH CREEK | 10X | 10/11/2010 | 7 | 1195 | $ 1,129.88 | $ 23.90 | | | $ 1,153.78 |
| HARDEE L/S MKT | RUSH CREEK | 10 | 10/11/2010 | 4 | 760 | $ 1,058.25 | $ 7.60 | $ 4.30 | | $ 1,070.15 |
| HARDEE L/S MKT | RUSH CREEK | 10X | 10/11/2010 | 9 | 1685 | $ 1,841.00 | $ 16.85 | $ 9.70 | | $ 1,867.55 |
| NORTH FLA L/S MKT | RUSH CREEK | 10 | 10/13/2010 | 10 | 1835 | $ 2,506.13 | $ 18.35 | | $ 18.35 | $ 2,542.83 |
| NORTH FLA L/S MKT | RUSH CREEK | 10X | 10/13/2010 | 6 | 1095 | $ 1,142.70 | $ 10.95 | | $ 10.95 | $ 1,164.60 |
| OCALA L/S MKT | RUSH CREEK | 10 | 10/11/2010 | 11 | 1980 | $ 3,182.75 | $ 19.80 | | $ 19.80 | $ 3,222.35 |
| OCALA L/S MKT | RUSH CREEK | 10X | 10/11/2010 | 7 | 1200 | $ 1,579.25 | $ 12.00 | | $ 12.00 | $ 1,603.25 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/11/2010 | 2 | 320 | $ 404.70 | | | | $ 404.70 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/11/2010 | 3 | 545 | $ 531.85 | | | | $ 531.85 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/12/2010 | 10 | 1900 | $ 2,699.50 | | | | $ 2,699.50 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/12/2010 | 10 | 1965 | $ 2,221.78 | | | | $ 2,221.78 |
| TOWNSEND L/S MKT | RUSH CREEK | 10 | 10/12/2010 | 1 | 175 | $ 231.00 | $ 3.30 | | | $ 234.30 |
| SUMTER CO FARMS MK | RUSH CREEK | 10 | 10/12/2010 | 4 | 665 | $ 760.70 | $ 6.65 | | | $ 767.35 |
| SUMTER CO FARMS MK | RUSH CREEK | 10X | 10/12/2010 | 10 | 1965 | $ 2,635.10 | $ 19.65 | | | $ 2,654.75 |
| | **VERIFIED TOTALS** | | **21 Transactions** | **165** | **31035** | **$ 39,430.92** | **$ 285.20** | **$ 24.00** | **$ 61.10** | **$ 39,801.22** |

**Other Expenses**

| | | | | | |
|---|---|---|---|---|---|
| RON SIZEMORE | TRUCKING | | | | $ 313.57 |
| PACO ANUEZ | TRUCKING | | | | $ 26.59 |
| EASTERN | CLEARING | | @ $.50 per 100 lbs. | | $ 155.18 |
| OAK LAKE CATTLE | P & L | | | | $ 912.20 |
| | **Total Other Expenses** | | | | **$ 1,407.54** |

## VERIFIED TOTALS INTERPLEADER - Invoice 291244                          $ 41,208.76

**PAYABLES DUE FLORIDA MARKETS FROM RUSH CREEK/EASTERN**          **BY: Florida Livestock Market Agency**

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Invoice Number 291246** | | | | | | | | | | |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 10/18/2010 | 4 | 795 | $ 1,100.13 | $ 7.95 | | | $ 1,108.08 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 10/18/2010 | 3 | 635 | $ 775.38 | $ 6.35 | | | $ 781.73 |
| COLUMBIA L/S MKT | RUSH CREEK | 10 | 10/18/2010 | 0 | 0 | $ - | $ - | | | $ - |
| COLUMBIA L/S MKT | RUSH CREEK | 10X | 10/18/2010 | 1 | 145 | $ 166.75 | $ 2.90 | | | $ 169.65 |
| HARDEE L/S MKT | RUSH CREEK | 10 | 10/19/2010 | 2 | 410 | $ 545.22 | | | | $ 545.22 |
| HARDEE L/S MKT | RUSH CREEK | 10X | 10/19/2010 | 4 | 835 | $ 978.73 | | | | $ 978.73 |
| OCALA L/S MKT | RUSH CREEK | 10 | 10/18/2010 | 5 | 890 | $ 1,160.45 | $ 8.90 | | $ 8.90 | $ 1,178.25 |
| OCALA L/S MKT | RUSH CREEK | 10X | 10/18/2010 | 5 | 920 | $ 1,110.75 | $ 9.20 | | $ 9.20 | $ 1,129.15 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/18/2010 | 8 | 1620 | $ 2,333.58 | | | | $ 2,333.58 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/18/2010 | 5 | 950 | $ 1,074.13 | | | | $ 1,074.13 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/19/2010 | 2 | 405 | $ 520.80 | | | | $ 520.80 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/19/2010 | 8 | 1525 | $ 1,790.75 | | | | $ 1,790.75 |
| SUMTER CO FARMS MK | RUSH CREEK | 10 | 10/19/2010 | 4 | 745 | $ 1,053.10 | $ 7.45 | | | $ 1,060.55 |
| SUMTER CO FARMS MK | RUSH CREEK | 10X | 10/19/2010 | 4 | 700 | $ 731.50 | $ 7.00 | | | $ 738.50 |
| TOWNSEND L.S MKT | RUSH CREEK | 10 | 10/19/2010 | 2 | 390 | $ 586.00 | $ 3.90 | | $ 3.90 | $ 593.80 |
| TOWNSEND L.S MKT | RUSH CREEK | 10X | 10/19/2010 | 3 | 565 | $ 829.75 | $ 5.65 | | $ 5.65 | $ 841.05 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10 | 10/19/2010 | 20 | 3875 | $ 5,531.11 | $ 38.75 | $ - | $ - | $ 5,569.86 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10X | 10/19/2010 | 12 | 2280 | $ 2,904.75 | $ 22.80 | $ - | $ - | $ 2,927.55 |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 10/20/2010 | 16 | 3305 | $ 5,138.26 | $ 33.05 | $ 5.00 | $ - | $ 5,176.31 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 10/20/2010 | 17 | 3240 | $ 3,919.23 | $ 32.40 | $ 5.00 | $ - | $ 3,956.63 |
| NORTH FLA L/S MKT | RUSH CREEK | 10 | 10/20/2010 | 2 | 375 | $ 527.60 | $ 3.75 | $ - | $ 3.75 | $ 535.10 |
| NORTH FLA L/S MKT | RUSH CREEK | 10X | 10/20/2010 | 5 | 890 | $ 1,138.85 | $ 8.90 | $ - | $ 8.90 | $ 1,156.65 |
| | **VERIFIED TOTALS** | | **22 Transactions** | **132** | **25495** | **$ 33,916.82** | **$ 198.95** | **$ 10.00** | **$ 40.30** | **$ 34,166.07** |

**Other Expenses**

| | | | | |
|---|---|---|---|---|
| RON SIZEMORE | TRUCKING | | | $ 285.88 |
| EASTERN | CLEARING | @ $.50 per 100 lbs. | | $ 127.46 |
| OAK LAKE CATTLE | P & L | | | $ 148.45 |
| | **Total Other Expenses** | | | **$ 561.79** |

**VERIFIED TOTALS INTERPLEADER - Invoice 291246**                              **$ 34,727.86**

**PAYABLES DUE FLORIDA MARKETS FROM RUSH CREEK/EASTERN**          **BY: Florida Livestock Market Agency**

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Invoice Number 291251** | | | | | | | | | | |
| HARDEE L/S MKT | RUSH CREEK | 10 | 10/25/2010 | 8 | 1505 | $ 1,929.75 | $ 15.05 | $ - | $ - | $ 1,944.80 |
| HARDEE L/S MKT | RUSH CREEK | 10X | 10/25/2010 | 9 | 1825 | $ 1,933.75 | $ 18.25 | $ - | $ - | $ 1,952.00 |
| ARCADIA L/S MKT | RUSH CREEK | 10 | 10/25/2010 | 12 | 2295 | $ 3,598.66 | $ 22.95 | $ - | $ - | $ 3,621.61 |
| ARCADIA L/S MKT | RUSH CREEK | 10X | 10/25/2010 | 10 | 1935 | $ 2,408.38 | $ 19.35 | $ - | $ - | $ 2,427.73 |
| OCALA L/S MKT | RUSH CREEK | 10 | 10/25/2010 | 9 | 1730 | $ 2,789.05 | $ 17.30 | $ 17.30 | $ - | $ 2,823.65 |
| OCALA L/S MKT | RUSH CREEK | 10X | 10/25/2010 | 8 | 1550 | $ 1,858.50 | $ 15.50 | $ 15.50 | $ - | $ 1,889.50 |
| COLUMBIA L/S MKT | RUSH CREEK | 10 | 10/25/2010 | 10 | 1815 | $ 2,484.63 | $ 18.15 | $ - | $ 18.15 | $ 2,520.93 |
| COLUMBIA L/S MKT | RUSH CREEK | 10X | 10/25/2010 | 9 | 1610 | $ 1,981.38 | $ 16.10 | $ - | $ 16.10 | $ 2,013.58 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/25/2010 | 1 | 190 | $ 353.40 | $ - | $ - | $ - | $ 353.40 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/25/2010 | 13 | 2575 | $ 2,998.52 | $ - | $ - | $ - | $ 2,998.52 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10 | 10/26/2010 | 10 | 1945 | $ 2,911.03 | $ 19.45 | $ - | $ - | $ 2,930.48 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10X | 10/26/2010 | 6 | 1160 | $ 1,450.70 | $ 11.60 | $ - | $ - | $ 1,462.30 |
| SUMTER CO FARMS MK | RUSH CREEK | 10 | 10/26/2010 | 2 | 395 | $ 614.00 | $ 3.95 | $ - | $ - | $ 617.95 |
| SUMTER CO FARMS MK | RUSH CREEK | 10X | 10/26/2010 | 9 | 1685 | $ 2,141.50 | $ 16.85 | $ - | $ - | $ 2,158.35 |
| TOWNSEND L/S MKT | RUSH CREEK | 10 | 10/26/2010 | 5 | 920 | $ 1,214.00 | $ 9.20 | $ - | $ 9.20 | $ 1,232.40 |
| TOWNSEND L/S MKT | RUSH CREEK | 10X | 10/26/2010 | 6 | 1115 | $ 1,230.50 | $ 11.15 | $ - | $ 11.15 | $ 1,252.80 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 10/26/2010 | 3 | 570 | $ 1,028.70 | $ - | $ - | $ - | $ 1,028.70 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 10/26/2010 | 6 | 1155 | $ 1,534.18 | $ - | $ - | $ - | $ 1,534.18 |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 10/27/2010 | 38 | 7025 | $ 10,460.09 | $ 70.25 | $ 2.50 | $ - | $ 10,532.84 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 10/27/2010 | 22 | 4070 | $ 4,873.10 | $ 40.70 | $ 2.50 | $ - | $ 4,916.30 |
| NORTH FLA L/S MKT | RUSH CREEK | 10 | 10/27/2010 | 2 | 410 | $ 594.50 | $ 4.10 | $ - | $ 4.10 | $ 602.70 |
| | **VERIFIED TOTALS** | | **21 Transactions** | **198** | **37480** | **$ 50,388.32** | **$ 329.90** | **$ 37.80** | **$ 58.70** | **$ 50,814.72** |

**Other Expenses**

| | | | | | | |
|---|---|---|---|---|---|---|
| RON SIZEMORE | TRUCKING | | | | | $ 424.95 |
| EASTERN | CLEARING | | | @ $.50 per 100 lbs. | | $ 187.40 |
| OAK LAKE CATTLE | P & L | | | | | $ 460.69 |
| | **Total Other Expenses** | | | | | $ 1,073.04 |

**VERIFIED TOTALS INTERPLEADER - Invoice 291251**                                        **$ 51,887.76**

**PAYABLES DUE FLORIDA MARKETS FROM RUSH CREEK/EASTERN**          **BY: Florida Livestock Market Agency**

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Invoice Number 291253** | | | | | | | | | | |
| HARDEE L/S MKT | RUSH CREEK | 10 | 11/1/2010 | 14 | 2780 | $ 3,716.00 | $ 27.80 | $ 13.58 | $ 5.04 | $ 3,762.42 |
| HARDEE L/S MKT | RUSH CREEK | 10X | 11/1/2010 | 25 | 5185 | $ 5,510.75 | $ 51.85 | $ 23.92 | $ 8.96 | $ 5,595.48 |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 11/1/2010 | 10 | 1975 | $ 2,899.67 | $ 19.75 | $ - | $ - | $ 2,919.42 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 11/1/2010 | 9 | 1815 | $ 2,134.96 | $ 18.15 | $ - | $ - | $ 2,153.11 |
| OCALA L/S MKT | RUSH CREEK | 10 | 11/1/2010 | 6 | 1285 | $ 1,656.10 | $ 12.85 | $ - | $ 12.85 | $ 1,681.80 |
| OCALA L/S MKT | RUSH CREEK | 10X | 11/1/2010 | 3 | 630 | $ 730.80 | $ 6.30 | $ - | $ 6.30 | $ 743.40 |
| COLUMBIA L/S MKT | RUSH CREEK | 10 | 11/1/2010 | 2 | 305 | $ 312.63 | $ 3.05 | $ - | $ 3.05 | $ 318.73 |
| COLUMBIA L/S MKT | RUSH CREEK | 10X | 11/1/2010 | 2 | 370 | $ 405.13 | $ 3.70 | $ - | $ 3.70 | $ 412.53 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 11/1/2010 | 1 | 200 | $ 242.00 | $ - | $ - | $ - | $ 242.00 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 11/1/2010 | 4 | 760 | $ 560.10 | $ - | $ - | $ - | $ 560.10 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10 | 11/2/2010 | 21 | 4070 | $ 5,633.16 | $ 40.70 | $ - | $ - | $ 5,673.86 |
| CATTLEMENS L/S MKT | RUSH CREEK | 10X | 11/2/2010 | 18 | 3730 | $ 4,453.93 | $ 37.30 | $ - | $ - | $ 4,491.23 |
| SUMTER CO FARMS MK | RUSH CREEK | 10 | 11/2/2010 | 7 | 1480 | $ 2,179.30 | $ 14.80 | $ - | $ - | $ 2,194.10 |
| SUMTER CO FARMS MK | RUSH CREEK | 10X | 11/2/2010 | 16 | 3320 | $ 3,661.30 | $ 33.20 | $ - | $ - | $ 3,694.50 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10 | 11/2/2010 | 3 | 620 | $ 1,012.70 | $ - | $ - | $ - | $ 1,012.70 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 10X | 11/2/2010 | 5 | 950 | $ 1,151.00 | $ - | $ - | $ - | $ 1,151.00 |
| NORTH FL L/S MKT | RUSH CREEK | 10 | 11/3/2010 | 4 | 810 | $ 1,159.90 | $ 8.10 | $ - | $ 8.10 | $ 1,176.10 |
| NORTH FL L/S MKT | RUSH CREEK | 10X | 11/3/2010 | 5 | 1045 | $ 1,268.25 | $ 10.45 | $ - | $ 10.45 | $ 1,289.15 |
| ARCADIA STOCKYARD | RUSH CREEK | 10 | 11/3/2010 | 17 | 3190 | $ 4,800.01 | $ 31.90 | $ - | $ - | $ 4,831.91 |
| ARCADIA STOCKYARD | RUSH CREEK | 10X | 11/3/2010 | 24 | 4765 | $ 5,344.78 | $ 47.65 | $ - | $ - | $ 5,392.43 |
| | **VERIFIED TOTALS** | **20 Transactions** | | **196** | **39285** | **$ 48,832.47** | **$ 367.55** | **$ 37.50** | **$ 58.45** | **$ 49,295.97** |

**Other Expenses**

| | | | |
|---|---|---|---|
| RON SIZEMORE | TRUCKING | | $ 398.29 |
| D & R TRUCKING | TRUCKING | | $ 139.04 |
| EASTERN | CLEARING | @ $.50 per 100 lbs. | $ 196.43 |
| OAK LAKE CATTLE | P & L | | $ 379.18 |
| | **Total Other Expenses** | | **$ 1,112.94** |
| **VERIFIED TOTALS INTERPLEADER - Invoice 291253** | | | **$ 50,408.91** |

## RUSH CREEK INVOICE SUMMARY

Total Transactions 84
Total Head 691

| Florida Market Total Due By Invoice | | #291244 Florida Mkts | Eastern Paid | #291246 Florida Mkts | Eastern Paid | #291251 Florida Mkts | #291253 Florida Mkts | TOTAL INVOICES |
|---|---|---|---|---|---|---|---|---|
| ARCADIA STOCKYARD | RUSH CREEK | $ 13,170.12 | $ (13,170.12) | $ 11,022.75 | $ (1,889.81) | $ 21,498.48 | $ 15,296.87 | $ 45,928.29 |
| CATTLEMENS L/S MKT | RUSH CREEK | $ 3,555.43 | $ (3,555.43) | $ 8,497.41 | $ - | $ 4,392.78 | $ 10,165.09 | $ 23,055.28 |
| COLUMBIA L/S MKT | RUSH CREEK | $ 2,090.71 | $ (2,090.71) | $ 169.65 | $ (169.65) | $ 4,534.51 | $ 731.26 | $ 5,265.77 |
| HARDEE L/S MKT | RUSH CREEK | $ 2,937.70 | $ (2,937.70) | $ 1,523.95 | $ (1,523.95) | $ 3,896.80 | $ 9,357.90 | $ 13,254.70 |
| NORTH FLA L/S MKT | RUSH CREEK | $ 3,707.43 | $ (3,707.43) | $ 1,691.75 | $ - | $ 602.70 | $ 2,465.25 | $ 4,759.70 |
| OCALA L/S MKT | RUSH CREEK | $ 4,825.60 | $ (4,825.60) | $ 2,307.40 | $ (2,307.40) | $ 4,713.15 | $ 2,425.20 | $ 7,138.35 |
| OKEECHOBEE L/S MKT | RUSH CREEK | $ 5,857.83 | $ (5,857.83) | $ 5,719.26 | $ (5,719.26) | $ 5,914.80 | $ 2,965.80 | $ 8,880.60 |
| SUMTER CO FARMS MK | RUSH CREEK | $ 3,422.10 | $ (3,422.10) | $ 1,799.05 | $ (1,799.05) | $ 2,776.30 | $ 5,888.60 | $ 8,664.90 |
| TOWNSEND L/S MKT | RUSH CREEK | $ 234.30 | $ (234.30) | $ 1,434.85 | $ (1,434.85) | $ 2,485.20 | $ - | $ 2,485.20 |
| **Due Florida Markets - Rush Creek** | | **$ 39,801.22** | **$ (39,801.22)** | **$ 34,166.07** | **$ (14,843.97)** | **$ 50,814.72** | **$ 49,295.97** | **$ 119,432.79** |
| **Less: Amounts Paid By Eastern** | | **$ (39,801.22)** | | **$ (14,843.97)** | | **$ -** | **$ -** | |
| | | | | | | | | |
| **TOTAL DUE FLORIDA MARKETS** | | | | | | | | |
| **FROM RUSH CREEK INTERPLEADER** | | **$ -** | | **$ 19,322.10** | | **$ 50,814.72** | **$ 49,295.97** | **$ 119,432.79** |
| | | | | | | | | |
| **Other Expenses** | | | | | | | | |
| D & R TRUCKING | | $ - | | $ - | | $ - | $ 139.04 | $ 139.04 |
| RON SIZEMORE | | $ 313.57 | | $ 285.88 | | $ 424.95 | $ 398.29 | $ 1,422.69 |
| PACO ANUEZ | | $ 26.59 | | $ - | | $ - | $ - | $ 26.59 |
| OAK LAKE CATTLE | | $ 912.20 | | $ 148.45 | | $ 460.69 | $ 379.18 | $ 1,900.52 |
| **EASTERN LIVESTOCK** | Clearing Commis. | $ 155.18 | | $ 127.46 | | $ 187.40 | $ 196.43 | $ 666.47 |
| **TOTAL OTHER EXPENSES** | | **$ 1,407.54** | | **$ 561.79** | | **$ 1,073.04** | **$ 1,112.94** | **$ 4,155.31** |
| | | | | | | | | |
| **EASTERN LIVESTOCK** | Livestock Pmts. | **$ 39,801.22** | | **$ 14,843.97** | | **$ -** | **$ -** | **$ 54,645.19** |
| | | | | | | | | |
| **Interpled By Rush Creek By INVOICE** | | **$ 41,208.76** | | **$ 34,727.86** | | **$ 51,887.76** | **$ 50,408.91** | **$ 178,233.29** |

(1) **Total Due Eastern**

| | | |
|---|---|---|
| Clearing Commissions | $ 666.47 | @ $.50 per 100 lbs. for total lbs. of 133295 |
| Paid Out For Livestock | $ 54,645.19 | |
| **TOTAL AMOUNT DUE** | | |
| **EASTERN ON RUSH CREEK** | **$ 55,311.66** | |

### RUSH CREEK INVOICE SUMMARY

| Florida Market Total Due By Invoice | | #291244 No. Head Fla. Mkts. | Eastern | #291246 No. Head Fla. Mkts. | Eastern | #291251 No. Head Fla. Mkts. | #291253 No. Head Fla. Mkts. | TOTAL NO. HEAD LIVESTOCK | TOTAL NO. HEAD Florida Mkts. |
|---|---|---|---|---|---|---|---|---|---|
| ARCADIA STOCKYARD | RUSH CREEK | 52 | (52) | 40 | (7) | 82 | 60 | 234 | 175 |
| CATTLEMENS L/S MKT | RUSH CREEK | 14 | (14) | 32 | 0 | 16 | 39 | 101 | 87 |
| COLUMBIA L/S MKT | RUSH CREEK | 12 | (12) | 1 | (1) | 19 | 4 | 36 | 23 |
| HARDEE L/S MKT | RUSH CREEK | 13 | (13) | 6 | (6) | 17 | 39 | 75 | 56 |
| NORTH FLA L/S MKT | RUSH CREEK | 16 | (16) | 7 | 0 | 2 | 9 | 34 | 18 |
| OCALA L/S MKT | RUSH CREEK | 18 | (18) | 10 | (10) | 17 | 9 | 54 | 26 |
| OKEECHOBEE L/S MKT | RUSH CREEK | 25 | (25) | 23 | (23) | 23 | 13 | 84 | 36 |
| SUMTER CO FARMS MK | RUSH CREEK | 14 | (14) | 8 | 0 | 11 | 23 | 56 | 42 |
| TOWNSEND L/S MKT | RUSH CREEK | 1 | (1) | 5 | (5) | 11 | -- | 17 | 11 |
| **TOTAL LIVESTOCK PURCHASED - Rush Creek** | | **165** | **(165)** | **132** | **(52)** | **198** | **196** | **691** | **474** |
| | | | | | | | | | |
| **Less: LIVESTOCK PURCHASED BY EASTERN** | | (165) | | (52) | | | | (217) | |
| | | | | | | | | | |
| **NET TOTAL LIVESTOCK PURCHASED FROM FLORIDA MARKETS WITH PAYMENT DUE** | | **0** | | **80** | | **198** | **196** | **474** | |

# Exhibit D

## AMOUNTS DUE FLORIDA MARKETS FOR UNPAID CATTLE PURCHASES: LEN MILLER/Eastern

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|--------|----------|------------|------|------------|--------------|--------------|-------|------|-------|----------------|
| **I.E. "JIM" BYRD Invoice 291248** | | | | | | | | | | |
| ARCADIA STOCKYARD | MILLER | 32X | 10/25/2010 | 21 | 7715 | $ 7,662.50 | $ 77.15 | $ - | $ - | $ 7,739.65 |
| HARDEE L/S MKT | MILLER | 32X | 10/25/2010 | 10 | 3425 | $ 3,338.65 | $ 34.25 | $ - | $ - | $ 3,372.90 |
| OCALA L/S MKT | MILLER | 32X | 10/25/2010 | 15 | 5515 | $ 5,451.35 | $ 55.15 | $ - | $ - | $ 5,506.50 |
| OKEECHOBEE L/S MKT | MILLER | 32X | 10/25/2010 | 18 | 6340 | $ 6,182.80 | $ 63.40 | | $ 63.40 | $ 6,309.60 |
| CATTLEMANS L/S MKT | MILLER | 32X | 10/26/2010 | 56 | 20685 | $ 20,933.48 | $ 206.85 | $ - | $ - | $ 21,140.33 |
| SUMTER CO FARMS MK | MILLER | 32X | 10/26/2010 | 35 | 11850 | $ 12,025.80 | $ 118.50 | $ - | $ - | $ 12,144.30 |
| OKEECHOBEE L/S MKT | MILLER | 32X | 10/26/2010 | 23 | 8175 | $ 8,130.98 | $ 81.75 | | $ 81.75 | $ 8,294.48 |
| ARCADIA STOCKYARD | MILLER | 32X | 10/27/2010 | 42 | 15055 | $ 14,622.65 | $ 150.55 | $ 17.48 | $ 174.98 | $ 14,965.66 |
| **Verified** | **TOTAL DUE FLORIDA MARKETS** | | | **220** | **78760** | **$ 78,348.21** | **$ 787.60** | **$ 17.48** | **$ 320.13** | **$ 79,473.42** |
| | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | |
| RON SIZEMORE | TRUCKING | | | | | | | | | $ 8,275.45 |
| EAGLE BAY, INC. | TRUCKING | | | | | | | | | $ 1,181.40 |
| EAGLE BAY, INC. | FEED | | | | | | | | | $ 75.00 |
| EAGLE BAY, INC. | HEALTH PAPERS | | | | | | | | | $ 75.00 |
| EAGLE BAY, INC. | YARDAGE | | | | | | | | | $ 660.00 |
| EASTERN | CLEARING COMMISSION | | | | | | 78760 lbs. @ $.50 per 100 lbs. | | | $ 393.80 |
| OAK LAKE CATTLE | P & L | | | | | | | | | $ 739.22 |
| **Verified** | **Total Other Expenses** | | | | | | | | | $ 11,399.87 |
| | | | | | | | | | | |
| **Verified** | **TOTAL INVOICED & DUE FROM MILLER** | | | **220** | **78760** | **$ 78,348.21** | **$ 787.60** | **$ 17.48** | **$ 320.13** | **$ 90,873.29** |

## AMOUNTS DUE FLORIDA MARKETS FOR UNPAID CATTLE PURCHASES: LEN MILLER/Eastern

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **I.E. "JIM" BYRD Invoice 291254** | | | | | | | | | | |
| ARCADIA STOCKYARD | MILLER | 32X | 11/1/2010 | 11 | 4060 | $ 3,956.75 | $ 40.60 | $ - | $ 21.35 | $ 4,018.70 |
| HARDEE L/S MKT | MILLER | 32X | 11/1/2010 | 22 | 7915 | $ 7,436.75 | $ 79.15 | $ - | $ - | $ 7,515.90 |
| OCALA L/S MKT | MILLER | 32X | 11/1/2010 | 8 | 2850 | $ 2,915.10 | $ 28.50 | $ 40.00 | $ - | $ 2,983.60 |
| OKEECHOBEE L/S MKT | MILLER | 32X | 11/1/2010 | 8 | 2885 | $ 2,738.85 | $ 28.85 | | | $ 2,767.70 |
| CATTLEMANS L/S MKT | MILLER | 32X | 11/2/2010 | 43 | 15830 | $ 16,063.70 | $ 158.30 | $ 19.82 | $ - | $ 16,241.82 |
| SUMTER CO FARMS MK | MILLER | 32X | 11/2/2010 | 29 | 10190 | $ 10,026.00 | $ 101.90 | $ 7.96 | $ - | $ 10,135.86 |
| OKEECHOBEE L/S MKT | MILLER | 32X | 11/2/2010 | 16 | 5875 | $ 5,673.95 | $ 58.75 | | | $ 5,732.70 |
| ARCADIA STOCKYARD | MILLER | 32X | 11/3/2010 | 5 | 1825 | $ 1,813.80 | $ 18.25 | $ - | $ - | $ 1,832.05 |
| **Verified** | **TOTAL DUE FLORIDA MARKETS** | | | **142** | **51430** | **$ 50,624.90** | **$ 514.30** | **$ 67.78** | **$ 21.35** | **$ 51,228.33** |
| | | | | | | | | | | |
| Adjustment To Final Invoice | | | | **(4)** | **(1375)** | **$ (32.89)** | | | | **$ (636.32)** |
| | **TOTAL DUE FLA. MKTS. FROM MILLER** | | | **138** | **50055** | **$ 50,592.01** | | | | **$ 50,592.01** |
| | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | |
| RON SIZEMORE | TRUCKING | | | | | | | | | $ 5,681.46 |
| EAGLE BAY, INC. | YARDAGE | | | | | | | | | $ 274.00 |
| EASTERN | CLEARING COMMISSION | | | | | | 51430 lbs. @ $.50 per 100 lbs. | | | $ 257.15 |
| OAK LAKE CATTLE | P & L | | | | | | | | | $ 754.23 |
| **Verified** | **Total Other Expenses** | | | | | | | | | $ 6,966.84 |
| | | | | | | | | | | |
| **Verified** | **TOTAL INVOICED & DUE FROM MILLER** | | | **138** | **50055** | **$ 50,592.01** | | | | **$ 57,558.85** |

## AMOUNTS DUE FLORIDA MARKETS FOR UNPAID CATTLE PURCHASES: LEN MILLER/Eastern

| MARKET | CUSTOMER | BUY NUMBER | DATE | HEAD COUNT | TOTAL WEIGHT | TOTAL CATTLE | COMM. | FEED | TRUCK | TOTAL INVOICED |
|---|---|---|---|---|---|---|---|---|---|---|
| **TOTALS** | | | | | | | | | | |
| **I.E. "JIM" BYRD Invoices 291248 & 291254** | | | | | | | | | | |
| ARCADIA STOCKYARD | MILLER | 32X | 10/25-11/1/10 | 79 | 28655 | $ 28,055.70 | $ 286.55 | $ 17.48 | $ 196.33 | $ 28,556.06 |
| HARDEE L/S MKT | MILLER | 32X | 10/25-11/1/10 | 32 | 11340 | $ 10,775.40 | $ 113.40 | $ - | $ - | $ 10,888.80 |
| OCALA L/S MKT | MILLER | 32X | 10/25-11/1/10 | 23 | 8365 | $ 8,366.45 | $ 83.65 | $ 40.00 | $ - | $ 8,490.10 |
| OKEECHOBEE L/S MKT | MILLER | 32X | 10/25-11/1/10 | 65 | 23275 | $ 22,726.58 | $ 232.75 | $ - | $ 145.15 | $ 23,104.48 |
| CATTLEMANS L/S MKT | MILLER | 32X | 10/25-11/1/10 | 99 | 36515 | $ 36,997.18 | $ 365.15 | $ 19.82 | $ - | $ 37,382.15 |
| SUMTER CO FARMS MK | MILLER | 32X | 10/25-11/1/10 | 64 | 22040 | $ 22,051.80 | $ 220.40 | $ 7.96 | $ - | $ 22,280.16 |
| **Verified** | **TOTAL DUE FLORIDA MARKETS** | | | **362** | **130190** | **$ 128,973.11** | **$ 1,301.90** | **$ 85.26** | **$ 341.48** | **$ 130,701.75** |
| | | | | | | | | | | |
| Adjustment To Final Invoice | | | | **(4)** | **(1375)** | $ (32.89) | | | | $ (636.32) |
| | **TOTAL DUE FLA. MKTS. FROM MILLER** | | | **358** | **128815** | **$ 128,940.22** | | | | **$ 130,065.43** |
| | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | |
| RON SIZEMORE | TRUCKING | | | | | | | | | $ 13,956.91 |
| EAGLE BAY, INC. | YARDAGE | | | | | | | | | $ 2,265.40 |
| EASTERN | CLEARING COMMISSION | | | | | | 130190  lbs. @ $.50 per 100 lbs. | | | $ 650.95 |
| OAK LAKE CATTLE | P & L | | | | | | | | | $ 1,493.45 |
| **Verified** | **Total Other Expenses** | | | | | | | | | $ 18,366.71 |
| | | | | | | | | | | |
| **Verified** | **TOTAL INVOICED & DUE FROM MILLER** | | | **358** | **128815** | **$ 128,940.22** | | | | **$ 148,432.14** |

| Florida Market Total Due By Invoice | | Head | Weight | #291248 Fla. Mkts. | East. Pmt. | Head | Weight | #291254 Fla. Mkts. | East. Pmt. | TOTAL INVOICE AMOUNTS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| ARCADIA STOCKYARD | MILLER | 63 | 22770 | $ 22,705.31 | $ - | 16 | 5885 | $ 5,850.75 | $ - | $ 28,556.06 |
| HARDEE L/S MKT | MILLER | 10 | 3425 | $ 3,372.90 | $ - | 22 | 7915 | $ 7,515.90 | $ - | $ 10,888.80 |
| OCALA L/S MKT | MILLER | 15 | 5515 | $ 5,506.50 | $ - | 8 | 2850 | $ 2,983.60 | $ - | $ 8,490.10 |
| OKEECHOBEE L/S MKT | MILLER | 41 | 14515 | $ 14,604.08 | $ - | 24 | 8760 | $ 8,500.40 | $ - | $ 23,104.48 |
| CATTLEMANS L/S MKT | MILLER | 56 | 20685 | $ 21,140.33 | $ - | 43 | 15830 | $ 16,241.82 | $ - | $ 37,382.15 |
| SUMTER CO FARMS MK | MILLER | 35 | 11850 | $ 12,144.30 | $ - | 29 | 10190 | $ 10,135.86 | $ - | $ 22,280.16 |
| **TOTAL DUE FLORIDA MARKETS** | | **220** | **78760** | **$ 79,473.42** | **$ -** | **142** | **51430** | **$ 51,228.33** | **$ -** | **$ 130,701.75** |
| | | | | | | | | | | |
| **TOTAL FLORIDA MKTS. DUE From OAK LAKE** | | | | **$ -** | | **(4)** | **(1375)** | **$ (636.32)** | | **$ (636.32)** |
| | | | | | | | | | | |
| **TOTAL FLORIDA MKTS. DUE From MILLER/TRUSTEE** | | | | **$ 79,473.42** | | **138** | **50055** | **$ 50,592.01** | | **$ 130,065.43** |
| | | | | | | | | | | |
| **Other Expenses** | | | | | | | | | | |
| RON SIZEMORE | TRUCKING | | | $ 8,275.45 | | | | $ 5,681.46 | | $ 13,956.91 |
| EAGLE BAY, INC. | YARDAGE | | | $ 1,991.40 | | | | $ 274.00 | | $ 2,265.40 |
| EASTERN | CLEARING COMMISSION | | | $ 393.80 | | | | $ 257.15 | | $ 650.95 |
| OAK LAKE CATTLE | P & L | | | $ 739.22 | | | | $ 754.23 | | $ 1,493.45 |
| **TOTAL DUE OTHERS** | | | | **$ 11,399.87** | | | | **$ 6,966.84** | | **$ 18,366.71** |
| | | | | | | | | | | |
| **TOTAL DUE From MILLER/TRUSTEE** | | | | **$ 90,873.29** | | **0** | **0** | **$ 57,558.85** | | **$ 148,432.14** |
| | | | | | | | | | | |
| **Eastern Livestock** | | | | | | | | | | |
| Due Eastern Clearing Commission | | | | $ 393.80 | | | | $ 257.15 | | $ 650.95 |
| Amounts Due For Purchased Livestock | | | | $ - | | | | $ - | | $ - |
| **TOTALS DUE EASTERN From MILLER/TRUSTEE** | | | | **$ 393.80** | | | | **$ 257.15** | | **$ 650.95** |

# Exhibit E

# MEMORANDUM

**Date:**  November 17, 2010

**To:**    Mark Mackey, General Manager
           Livestock Marketing Association
**From:** Ernest H. VanHooser
           VanHooser & Eftink, P.C.

**Subj:**  Eastern Livestock Company, LLC

**As we have discussed, there are a couple of overarching facts that present both problems and opportunities.**  First, is the fact that Eastern was "buying" cattle in three different ways: (1) it was buying for itself, (2) it was buying on commission for others, and (3) it was clearing buyers who were paying Eastern a "clearing fee" for providing clearing services. Second, Eastern was operating as a cattle dealer and as an order buyer, as well as buying cattle for itself that were being back grounded or fed out at a feedyard.

In this memo I will attempt to lay out an overview of what I see as the major problem areas caused by the Eastern Livestock situation and, in some instances, offer suggestions regarding steps that the receiver could or should take to help rectify the problem.

**The first problem area involves sellers (including markets, dealers, order buyers and farmers/ranchers) who have not been paid for livestock.  There are actually two subcategories in this group: (1) sellers who received checks that were returned "refer to maker" or "insufficient funds" and (2) sellers who have not received a payment instrument at all.**
As you know, livestock markets and dealers are required by federal law and regulation to pay for livestock whether they get paid or not.  Consequently, when the checks that were issued by Eastern were returned unpaid the livestock markets and dealers were left with shortages.  Where those markets and dealers do not have enough cash or liquid assets available or are not able to borrow enough money quickly enough, those markets and dealers will "fail". This in turn leads to their customers not getting paid.   When that happens claims will be filed against the "failed" market's or dealer's bond or bond equivalents.  If this problem becomes widespread, surety companies that provide bonds and banks that provide letters of credit will be adversely affected.  And, as you know bonds and bond equivalents are seldom large enough for all claimants to receive the full amount owed.  Thus, when Fifth Third Bank froze Eastern's bank accounts and returned checks unpaid, the bank set in motion a series of events that could adversely affect producers, markets, dealers, order buyers, surety companies and banks.
In those instances where Eastern bought cattle on order for others or was simply clearing a buyer, I do not believe the bank would legitimately have a claim to all of the funds

that were deposited into Eastern's bank account at Fifth Third Bank.  Especially in those instances where the seller's have not received any payment instrument, where Eastern was acting simply as an order buyer or as a clearor and where the ultimate buyers have not already paid Eastern, the receiver could alleviate a lot of problems getting authority to let the person who Eastern was buying for or the person who Eastern was clearing for pay the selling markets, dealers and producers directly and send to Eastern only the commission or the clearing fee that it was to have earned as a result of the transaction.

**The second problem area involves sellers with contracts for future delivery of cattle.**

In those cases where sellers have contracts for future delivery of cattle, the receiver could resolve a lot of problems by getting authority to let those persons go ahead and sell the cattle and simply send to Eastern the profit, if any, that Eastern would have received together with any down money that Eastern had already paid. If this does not happen, I anticipate that a lot of sellers will demand adequate assurance of performance and when it is not forthcoming resell the cattle and look to Eastern for any damages that result.

**The third problem area involves buyers who have received cattle but do not know which party or parties to pay.**

Where buyers have received cattle ostensibly from Eastern but that Eastern has not paid for and the buyer receives a claim from the seller that either the cattle should be returned to the seller or the proceeds should be paid to the seller, those buyers will either refuse to pay anyone until everyone has agreed how payment is to be issued or the buyers will interplead the funds into their local court and name all potential claimants as defendants.  We have already seen one interpleader suit filed by Friona feedyard and I expect we will see many more unless this problem is resolved quickly.  Lawsuits such as these will require all the defendants (which will include sellers, possibly sellers' banks, Eastern and Fifth Third Bank) to hire attorneys and engage in litigation in multiple jurisdictions, which will be costly for all the defendants.  If the receiver does not deal with this problem quickly, the cost could be staggering.

**The fourth area involves feedyards that have been feeding Eastern cattle where the cattle are ready (or almost ready) for sale but packers are reluctant to buy because they do not know which party or parties to pay.**

As long as potential buyers of livestock are fearful that they will get dragged into lawsuits as a result of buying cattle that Eastern has, or claims to have, an ownership interest, they will refuse to purchase those cattle or will do so only at deep discounts to account for the additional risk involved.  This creates serious problems – for the feedyards and for the cattle, not to mention Eastern's asset base.  The receiver could resolve this problem by prevailing upon Fifth Third Bank to abandon all claims to security interests in cattle proceeds beyond the profit, if any, that Eastern would have received from the sale of the cattle.

**The fifth area involves farmer/feeders who are back grounding/feeding cattle where the cattle are ready (or almost ready) for sale and the farmer/feeders have not been paid for feed, vet bills, etc.**

Most of the farmer/feeders that are back grounding cattle for Eastern are relatively small. They cannot afford to feed and care for the cattle without reimbursement for those expenses. Moreover, they cannot usually provide long term feeding facilities for those cattle, especially without payment for their services. Consequently, when the cattle are ready to transition to feedyards the farmer/feeders will start to sell those cattle either by way of claimed feed liens or on the sly out of desperation. This creates potential loss for Eastern, for the sellers and for the buyers. It would behoove the receiver to prevail upon Fifth Third Bank to authorize the farmer/feeders to sell the cattle, collect payment for feed and care from the sales proceeds and send the remainder of the net sales proceeds to Eastern.

**The sixth area involves truckers who have hauled cattle for Eastern and have not been paid.**

I have listed this problem area even though it does not directly affect markets and dealers because it will have an indirect affect on the availability and cost of livestock transportation. A number of the trucking firms that haul livestock are very small. They will not be able to survive if they do not receive payment for their hauling services.

**The seventh area involves truckers who will be asked to haul Eastern cattle that are to be delivered in the near future.**

This is an obvious problem. No trucking firm will agree to haul Eastern cattle in the future unless it gets payment up front. The receiver will have to deal with this issue or deal with the ramifications.

I realize this is nothing more than a "bare bones" overview of some of the problems and potential problems that have arisen and will arise as a result of the Eastern shut down. I hope it will be of assistance in providing a starting point for your discussions with the receiver. If you have any questions, please let me know.