UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**TRUSTEE'S OMNIBUS REPLY TO OBJECTIONS TO
PURCHASE MONEY CLAIMS REPORT**

James M. Knauer, chapter 11 trustee ("Trustee") in the above-captioned case ("Chapter 11 Case"), filed the *Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account* [Dock. No. 501] (the "Purchase Money Claims Report")[1] on May 23, 2011 asking that the Court enter an order disallowing asserted Purchase Money Claims as secured claims against the Cattle Sales Proceeds[2], authorizing the Trustee to transfer the specific Cattle Sales Proceeds to the Trustee's general operating account, and granting the Trustee such other and further relief as the Court deems appropriate.

Various creditors and parties in interest (each, an "Objecting Party"; collectively, the "Objecting Parties") filed objections to the Purchase Money Claims Report (collectively, the "Objections").[3] None of the Objections assert valid objections to the relief requested by the Purchase Money Claims Report. The Objections overstate or misstate the relief requested by the Purchase Money Claims Report and/or incorrectly assert invalid claims to the Cattle Sales Proceeds.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to each in the Purchase Money Claims Report.

[2] The definition of the term "Cattle Sales Proceeds" was limited to "the funds described on attached Exhibit A [to the Purchase Money Claims Report]". It did not include funds not listed on Exhibit A to the Purchase Money Claims Report, including funds at issue in the various interpleader adversary proceedings, funds not yet paid to the Trustee, or any other funds not listed on Exhibit A.

[3] A table of the Objections listing docket number and objecting party is attached as Exhibit A to this response.

The Trustee files this reply ("Reply") to (1) clarify the relief requested by the Purchase Money Claims Report, (2) dispose of Objections that are not relevant to the relief requested in the Purchase Money Claims Report, (3) further explain the deficiencies in the Objecting Parties' arguments, and (4) suggest further proceedings to resolve the remaining contested matters with the June 24, 2011 hearing serving as a pretrial conference for final hearings if necessary at the August omnibus hearing or pursuant to scheduling orders in this Chapter 11 Case.

## I.   Background

Shortly after his appointment, the Trustee learned that buyers to whom Debtor contracted to sell cattle (generally, "Buyers") had not paid the Debtor or the Trustee with respect to the Debtor's delivery of such cattle. The Buyers were concerned that other parties ("Third Parties") might assert liens or claims to the cattle or the sales proceeds under section 196 of the Packers and Stockyards Act, 1921 ("PSA", 7 U.S.C. §§ 181 *et seq.*) or some other state law.

In order to sort through the myriad of inconsistent claims that might be asserted against the Cattle Sales Proceeds, on January 6, 2011, the Trustee filed a motion [Dock. No. 141] (the "Cattle Sales Motion") seeking entry of an order (the "Cattle Payments Order") establishing procedures by which the Trustee could complete the sales of cattle to the Buyers pursuant to Section 363 of the Bankruptcy Code, collect outstanding cattle sale receivables, hold the Cattle Sales Proceeds and establish a process for determining liens and other rights with respect to the Cattle Sales Proceeds.

The Court entered the Cattle Payments Order and established May 2, 2011 as the last date ("Purchase Money Claim Bar Date") by which creditors asserting liens in or claims to specific Cattle Sales Proceeds could file proofs of claim to assert liens or other claims in and against the Cattle Sales Proceeds (the "Purchase Money Claims"). The intent was to provide

2

Third Parties the opportunity to specify both the specific Cattle Sales Proceeds to which they claimed rights as well as the legal and factual basis for such claims. The Purchase Money Claim Bar Date has now passed, and the Trustee has been trying to sort through over 505[4] inconsistent proofs of claim filed in the Chapter 11 Case to determine those asserting Purchase Money Claims. Of the 505 filed proofs of claim, 86 allege secured status, although not necessarily on account of a Purchase Money Claim. Almost none of the claims assert rights to or liens in specific Cattle Sales Proceeds. Some claims appear to assert a Purchase Money Claim but do not allege secured status or assert any basis for a lien in or claim to specific Cattle Sales Proceeds.

      This leaves the Trustee in a difficult situation as he attempts to move forward with the administration of the Chapter 11 Case. The Trustee could have filed individual objections to each proof of claim as a Purchase Money Claim because each and every claim was deficient in at least one of the following respects: 1) it failed to designate specific proceeds or receivables against which the claimant asserted a "Purchase Money Claim", 2) it failed to cite any law or basis for its alleged "Purchase Money Claim" and/or 3) it was unclear if the proof of claim actually asserted a "Purchase Money Claim". Litigating these individual objections would have wasted considerable estate assets and taken considerable time, while at the same time denying the estate funds necessary to carry on the Chapter 11 Case.

      The Trustee decided to leave individual claims objections for a later date and instead file a pleading that specifically identified the 88 payments (that constitute the Cattle Sales Proceeds) paid to the Trustee pursuant to the Cattle Sales Motion and Cattle Payments Order as to which the Trustee believes that no creditor other than Fifth Third can assert a valid lien or other claim. With that process, any creditor who disagrees and wants to assert a claim to one or

---

[4] May 2, 2011 was also established as the general bar date for all proofs of claim (other than governmental claims) for this Chapter 11 Case, see Dock. No. 416.

3

BDDB01 6738687v4

more of the 88 payments could speak up and assert their lien or other claim to specific Cattle Sales Proceeds.[5]  The "Notice of Hearing" that accompanied the Purchase Money Claims Report apprised all parties in interest (and was served on all creditors) that "[i]f you believe that you possess a valid Purchase Money Claim, you must file a written response to the Purchase Money Claims Report setting forth in detail both (1) the basis for your Purchase Money Claim and (2) the specific Cattle Sales Proceeds (both by "Payor" name and amount) that you assert a secured claim against." Only a handful of the Objections assert liens or claims against specific Cattle Sales Proceeds, as required by the notice.

### II.  Many of the Objections Misstate and/or Overstate the Relief Requested by the Purchase Money Claims Report

The Purchase Money Claims Report does not object to all "Purchase Money Claims," nor does it seek to transfer any funds to or preclude any claims against Fifth Third.  The Purchase Money Claims Report is the second step in the process begun by the Cattle Sales Motion seeking an *in rem* order determining liens and rights in proceeds of the sales of cattle received from the Trustee's § 363 sales of cattle.  The Purchase Money Claims Report asks the Court to enter an order finding that no creditor (other than Fifth Third) can assert a secured claim to, or rights in, the specific Cattle Sales Proceeds listed on Exhibit A attached to the Purchase Money Claims Report.  The Purchase Money Claims Report does not object to any individual

---

[5] Paragraph V. of the Cattle Payments Order arguably allows the Trustee to transfer the Cattle Sales Proceeds to his operating account without first obtaining leave of the Court: "[t]he Trustee, upon notice to the Court at any time after the Trustee files the first Purchase Money Claim Report, may release proceeds from the Account that the Trustee determines are not necessary for the payment of any Purchase Money Claim."  While the Trustee believes that the Cattle Sales Proceeds are not necessary for the payment of any Purchase Money Claim, he seeks affirmative Court authorization to transfer the Cattle Sales Proceeds to his operating account.  However, transferring the funds of the operating account does not relieve the Trustee of complying with the provisions of the *Financing Order (I) Approving Chapter 11 Trustee Financing; (II) Authorizing Use of Cash Collateral and Obtaining Credit Pursuant to Sections 361, 363 and 364 of the Bankruptcy Code; (III) Modifying the Automatic Stay; (IV) Providing Adequate Protection; and (V) Sealing Certain Documents* (the "Financing Order"). [Dock. No. 400]

4

proofs of claim except to the extent any claim alleges a specific security interest in or right to the specific Cattle Sales Proceeds listed on Exhibit A.[6]

Additionally, the portions of the Objections which argue that the Purchase Money Claims Report is procedurally deficient are without merit. The Trustee, by the Purchase Money Claims Report, is not objecting to specific proofs of claim and the arguments in the Objections that the Trustee failed to comply with Fed. R. Bankr. P. 3007 are neither relevant nor persuasive.[7]

### III. Objections Not Relevant to Relief Requested (transferring to Fifth Third Bank)

Many of the Objections solely took issue with any transfer of funds to, or waiver of claims against, Fifth Third. *See* Dock. Nos. 512, 515, 517, 518, 519 and 553 (collectively, the "Transfer Objections"). Any payment or transfer to Fifth Third will take place only upon separate motion to and order from the Court as provided by the Financing Order. In addition, no claims have been waived as a result of the relief requested by the Purchase Money Claims Report. When the Purchase Money Claims Report asserts that "the Trustee has concluded that no person other than Fifth Third can assert a valid perfected lien in or to the Cattle Sales Proceeds", it does not constitute an opinion as to Fifth Third's overall rights or priority, but instead a statement that Fifth Third, and no other party, has asserted a blanket lien against Debtor's receivables and cash. Since the Transfer Objections object to relief not sought by the Trustee under the Purchase Money Claims Report, the Trustee requests that they be overruled.

### IV. Objections to Monies Not Listed on Purchase Money Claims Report

---

[6] The Trustee reserves all rights to later object to any claim on all grounds.

[7] The Trustee understands the confusion regarding this issue as the Cattle Payments Order provided that the Purchase Money Claim Report would serve as an objection to any "Disputed Purchase Money Claim" and provided detail as to how the Purchase Money Claims Report was to list each disputed claim. However, the Trustee, given the vague nature of the 505 claims filed, determined by the Purchase Money Claims Report, to not object to individual claims and instead seeks only a ruling that, other than Fifth Third's blanket lien, there are no valid liens in or claims against the specific Cattle Sales Proceeds listed in the Purchase Money Claims Report, saving for a later day any determination as to the validity of the filed "Purchase Money Claims" as a whole.

5

Some of the Objections assert claims to funds that are not part of the Purchase Money Claims Report. *See*, i.e., Dock. Nos. 536 (claiming right to funds at issue in Colorado-based interpleader action), 544 (claiming rights to a receivable that has not been paid to Debtor or the Trustee and is not listed as Cattle Sales Proceeds), and 552 (claiming right to funds at issue in Texas-based interpleader action) (collectively, the "Not On Report Objections").  As a result, the portions of the Objections that assert liens in or rights against funds not listed as Cattle Sales Proceeds have no bearing on the relief requested by the Purchase Money Claims Report and should be overruled.  By asking that these Not On Report Objections be overruled, the Trustee is not seeking judicial determination on the validity or priority of the claims asserted in the Not On Report Objections, but simply seeking a recognition that the Not On Report Objections are not relevant to the relief requested by the Trustee on the Purchase Money Claims Report.

### V.  The Remaining Objections Fail to Cite a Legal Basis For Any Liens In or Claims Against Specific Cattle Sales Proceeds

The remaining Objections - the ones that assert or potentially assert liens or rights in or against part of the Cattle Sales Proceeds – generally assert the following arguments to support the Objecting Parties' claims to the Cattle Sales Proceeds: 1) the applicable proceeds are not part of the Debtor's bankruptcy estate because they are the subject of a constructive trust in favor of the Objecting Party (*see* Objections filed by Stockman Oklahoma Livestock Marketing, Inc. [Dock. No. 545], Crumpler Bros. [Dock. No. 546] and Rex Elmore [Dock. No. 555]); 2) the applicable proceeds are not part of the Debtor's bankruptcy estate because the Debtor acted as a "clearing agency" or "market agency" under PSA and therefore never acquired title to the cattle that were sold to create the proceeds (*see* Objection filed by "Florida Creditors" [Dock. No. 556]); 3) the applicable proceeds are not part of the Debtor's bankruptcy estate because the

6

Objecting Party terminated its contract with Debtor and therefore retained ownership of the cattle at issue (*see* Objection filed by Joplin Regional Stockyards [Dock. No. 542]); and/or 4) additional time is needed to trace the proceeds of cattle to which an Objecting Party may have at one time had ownership (*see* Dock. Nos. 539, 543, 545, 546, 547, 548, 549, and 554).

Both the Bankruptcy Code and Article 2 of the Uniform Commercial Code already provide a systematic and comprehensive statutory scheme for the protection of unpaid sellers of goods to a debtor. Sections 503(b)(9) of the Bankruptcy Code awards administrative expense status to certain unpaid sellers of goods to a debtor while Section 546(c)(1) of the Bankruptcy Code provide specific rights of reclamation to unpaid sellers of goods. These statutory frameworks were set up in conjunction with and in furtherance of the goals of the Bankruptcy Code. The Objecting Parties' assertions to distinguish their claims from those of general unsecured creditors appear to try and circumvent the existing commercial law and bankruptcy scheme without alleging a valid legal or factual basis for so doing.

A.   *The Objecting Parties' constructive trust arguments fail as a matter of law.*

First, the general constructive trust argument raised by many of the Objections has been discredited in bankruptcy and does not provide a basis for any creditor to assert a claim to specific Cattle Sales Proceeds. In *In re Omegas Group, Inc.*,[8] the Sixth Circuit Court of Appeals reversed a decision impressing a constructive trust upon certain of the debtor's assets that were obtained through debtor's fraud. Stating that "constructive trusts are anathema to the equities of bankruptcy since they take from the estate…not the offending debtor" and that "constructive trusts are fundamentally at odds with the general goals of the Bankruptcy Code", the Sixth Circuit held:

---

[8] 16 F.3d 1443 (6th Cir. 1994).

> §541(d) simply does not permit a claimant in the position of [a defrauded creditor] to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee. Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a creditor's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under §541(d).
>
> … To permit a creditor, no matter how badly he was "had" by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent completely the Code's equitable system of distribution.
>
> In light of these provisions and in light of the overall purposes of the Code, § 541(d) cannot be properly invoked as an equitable panacea whenever the bankruptcy court thinks a claimant has been particularly burdened by a debtor's bad faith or bad acts.

*Omegas*, 15 F. 3d at 1452-1453.

Under *Omegas*, a creditor may only pursue a constructive trust theory if and to the extent the creditor obtained a judgment pre-petition that funds in the hands of the debtor were impressed with a constructive trust. None of the Objections took such action pre-petition or obtained a judgment.

While *Omegas* has not been universally adopted – *compare In re Jeter,* 171 B.R. 1015, 1021–24 (Bankr.W.D. Mo. 1994), *aff'd,* 73 F.3d 205 (8th Cir. 1996); *Matter of Paul J. Paradise & Associates, Inc.,* 217 B.R. 452, 455–56 (Bankr. Del. 1997); *Matter of United Imports,* 203 B.R. 162, 169–70 (Bankr. Neb. 1996) (all following *Omegas* ) *with In re Dameron,* 206 B.R. 394 (Bankr. E.D. Va. 1997), *aff'd,* 155 F.3d 718 (4th Cir. 1998); *In re Reider,* 177 B.R. 412 (Bankr. D. Me. 1994); *Curtis Mfr. Co. v. Plasti–Clip Corp.,* 933 F.Supp. 94 (D.N.H. 1995) (all rejecting *Omegas* ) – and the Seventh Circuit has not yet directly addressed the issue of the

8

treatment of constructive trusts in bankruptcy, a court in the Seventh Circuit has opined that the Seventh Circuit "would follow Omegas when it is called upon to decide the extent to which a bankruptcy court should recognize the right to a constructive trust which has not been imposed prior to a petition for relief under the Bankruptcy Code". *In re Nova Tool & Engineering, Inc.*, 228 B.R. 678, 677 (Bankr. N.D. Ind. 1998).[9] The *In re Nova Tool & Engineering, Inc.* court's opinion provides an excellent and thorough analysis of the issue of constructive trusts in bankruptcy and holds that a court must take into consideration both 1) whether imposition of the constructive trust will prevent unjust enrichment, and 2) the constructive trust's effect on other creditors of the debtor before determining whether a claimant is entitled to a constructive trust based on a debtor's fraud. *In re Nova Tool & Engineering, Inc.*, 228 B.R. at 685.

Because none of the Objecting Parties obtained a court order prepetition that operated to impress a constructive trust over Debtor's assets and because such alleged constructive trusts do not arise by operation of statute, the Cattle Sales Proceeds are property of Debtor's estate under 11 U.S.C. § 541 and the Objecting Parties' constructive trust arguments fail. *See In re Omegas Group, Inc,* 16 F.3d at 1452. This result is both fair and reasonable, as impression of a constructive trust in favor of certain of the Objecting Parties would not prevent unjust enrichment (Debtor's assets will not be sufficient to satisfy its debts) nor will it positively affect the other creditors of Debtor. Quite the contrary, such a finding would only harm Debtor's other creditors by reducing proceeds available for a pro rata distribution. The Objecting Parties that claim rights to specific Cattle Sales Proceeds are in no different situation than any number of

---

[9] "While not definitively answering the question, on balance, this review of the Seventh Circuit's decisions touching on the issue seems to reflect an antipathy toward recognizing equitable remedies that would diminish the bankruptcy estate. In particular, *Iowa Railroad* [840 F.2d 535 (7th Cir. 1988)] seems to suggest that, before imposing a constructive trust, the bankruptcy court should consider the purpose for doing so (whether it will prevent unjust enrichment) and the impact of doing so upon third parties (debtor's other creditors). These are the same propositions this court reads Omegas as espousing." *In re Nova Tool & Engineering, Inc.*, 228 B.R. at 684.

9

the hundreds of creditors in this Chapter 11 Case.  By all appearances, it is likely that Debtor committed numerous acts of fraud prior to the Petition Date.  This does not mean that a constructive trust should be impressed on Debtor's assets for the benefit of each and every creditor.  Instead, the Bankruptcy Code provides a specific remedy to a creditor or creditors damaged by a debtor's prepetition fraud: the damaged creditor can object to the discharge of its debt under 11 U.S.C. § 523(a).  This is the remedy contemplated and specifically provided by the Bankruptcy Code, not imposition of a constructive trust (which is described nowhere in the Bankruptcy Code), especially when all parties have been damaged by a debtor's fraudulent actions.  To hold otherwise would be against the majority of precedent and catapult certain creditors over others in this Chapter 11 Case for no good reason.

B.     *The Cattle Sales Proceeds represent proceeds paid to Debtor on account of Debtor's operations as a "dealer" under the PSA, whereby Debtor bought and sold cattle on its own account.*

The Debtor's business model and contracts, despite the "Florida Creditors" assertions otherwise, evidence that Debtor bought and resold cattle on its own account and not for others as a "clearing agency" or "market agency".

Docket No. 556 asserts rights to funds involved in the Wisconsin-based interpleader as well as specific Cattle Sales Proceeds designated as payment number 41 on Exhibit A to the Purchase Money Claims Report.  Only the $148,172.53 payment is affected by the relief requested in the Purchase Money Claims Report.  The Objecting Parties argue that Debtor operated as a "clearing agency" for Oak Lake Cattle Company, Inc. and never took title to or rights in the cattle that were sold to Len Miller to produce the $148,172.53 payment.  This ignores the purchase and sale documents that specifically list Debtor as the buyer and seller of cattle and Oak Lake Cattle Company, Inc. merely as Debtor's agent.

10

C.  *An Objecting Party's alleged prepetition termination of contracts with Debtor cannot give that creditor any rights to the proceeds of cattle sales that were fully completed prior to such terminations.*

Joplin Regional Stockyards ("Joplin") makes a specific claim to $97,868.78 that Debtor received from Harlan Feeders, which is listed as No. 40 on Exhibit A to the Purchase Money Claims Report. Joplin argues that the payment from Harlan Feeders represents proceeds of the sale of cattle that Joplin asserts ownership of, seemingly because Joplin terminated its contracts with Debtor sometime around November 8, 2010 and that such termination vested title to the cattle back in Joplin. Joplin ignores that any alleged termination could not operate to give Joplin rights to the proceeds of cattle sales that were completed prior to the alleged termination. Debtor completed its sale of the cattle at issue by delivering such cattle to Harlan Feeders on November 2, 2010, prior to any alleged termination of contracts by Joplin. As the sale was complete, Joplin cannot retroactively commandeer Debtor's receivables, especially since Debtor's receivables were already pledged as security to other parties.

D.  *The Objecting Parties have had ample time to make claims to the Cattle Sales Proceeds.*

Kathleen Pry, in her capacity as chapter 7 trustee of the bankruptcy estate of Thomas and Patsy Gibson (the "Gibson Trustee"), and The First Bank and Trust Company ("First Bank"), received extensions of time to August 1, 2011 to file "Purchase Money Claims".[10] All remaining parties in interest were required to assert Purchase Money Claims on or before May 2, 2011. Because none of the Objecting Parties asserts a blanket or floating lien against all of Debtor's receivables and/or cash, the Objecting Parties were required to specifically identify the proceeds that they claim rights in and against when asserting a "Purchase Money Claim". To the extent the Objecting Parties have asserted an interest in specific Cattle Sales Proceeds, the

---

[10] The Gibson Trustee and/or First Bank may yet assert claims to specific Cattle Sales Proceeds presumably on the basis that Thomas and/or Patsy Gibson, and not Debtor, may have been the actual owner of the cattle that were sold to create the Cattle Sales Proceeds.

11

Trustee argues that such interests fail as a matter of law for the reasons explained above. All other parties (those not filing Objections) cannot and have not asserted an interest to the Cattle Sales Proceeds and should therefore have no further opportunity to do so. For those Objectors that seek additional time to identify specific proceeds, the Trustee is proposing further proceedings as outlined below.

## VI. Suggested Further Proceedings

The Trustee understands that the Court and the Objecting Parties have not likely anticipated a full evidentiary hearing on the Purchase Money Claims Report on June 24, 2011 and that both the Gibson Trustee and First Bank still have additional time to assert "Purchase Money Claims". However, except with respect to the "Unobjectionable Proceeds" described below, the Trustee asks that the Court use the hearing scheduled for June 24, 2011 as a pre-trial hearing and schedule a final evidentiary hearing on the Purchase Money Claims Report for the next omnibus hearing date immediately following August 1, 2011 (the "Final Hearing").

To address the concerns of Objecting Parties that they are unable to determine if they have a claim to specific Cattle Sales Proceeds, the Trustee will provide to counsel for each Objecting Party on or before July 8, 2011 a listing of the cattle that were sold to create the Cattle Sales Proceeds. If any of the Objecting Parties – including the Gibson Trustee and First Bank - believe that it has rights to specific Cattle Sales Proceeds, such Objecting Party should then be required file a pleading on or before August 1, 2011 setting forth in detail 1) the specific Cattle Sales Proceeds to which its alleged lien or claim applies and 2) providing a legal and factual basis for such lien in or claim against the Cattle Sales Proceeds. The Court can then resolve any lien in or claims to the Cattle Sales Proceeds at the Final Hearing.

With regard to the Objections that did assert liens against or claims to specific Cattle Sales Proceeds – Dock. No. 542 filed by Joplin, Dock. No. 545 filed by Stockman Oklahoma Livestock Marketing, Inc., Dock. No. 539 filed by Piedmont Livestock, Inc., and Dock. No. 556 filed by the various "Florida Creditors" – the Trustee asks that the Court enter a scheduling order setting each contested matter for briefing and hearing.

On or before the June 24, 2011 hearing, the Trustee and/or his professionals will attempt to file an affidavit or other pleading that identifies any of the 88 payments that represent the Cattle Sales Proceeds to which no Objecting Party can assert a claim because Debtor already paid for the underlying cattle with good and sufficient funds (the "<u>Unobjectionable Proceeds</u>"). Because none of the Objecting Parties can assert liens in or claims against the Unobjectionable Proceeds, the Trustee asks that the Court enter an order authorizing the Trustee to transfer the Unobjectionable Proceeds to the Trustee's general operating account for use in the Chapter 11 Case. Other than the Unobjectionable Proceeds, the Trustee will continue to hold the Cattle Sales Proceeds in his escrow account until final determination of the Purchase Money Claims Report.

WHEREFORE, the Trustee requests that the Court enter an order (i) authorizing the transfer of the Unobjectionable Proceeds to the Trustee's general operating account for use in the Chapter 11 Case, (ii) set the four contested matters for hearing and issue scheduling orders thereon, (iii) adopt the Trustee's suggested procedures for final resolution of the Purchase Money Claims Report and, after a Final Hearing, (iv) enter an order disallowing any and all claims other than the claims of Fifth Third in and to the Cattle Sales Proceeds and authorizing the Trustee to transfer the Cattle Sales Proceeds listed on <u>Exhibit A</u> to his general operating account. The Trustee also asks for such other and further relief as the Court deems appropriate.

13

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ Dustin R. DeNeal

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Robert K. Stanley (#1745-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
robert.stanley@bakerd.com
terry.hall@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader (#14633-49)
Baker & Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2011, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |

14

BDDB01 6738687v4

| | | |
|---|---|---|
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com<br>Sean T. White<br>swhite@hooverhull.com | John M. Rogers<br>johnr@rubin-levin.net<br><br>Robert H. Foree<br>robertforee@bellsouth.net | John David Hoover<br>jdhoover@hooverhull.com<br><br>Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| Christopher E. Baker<br>cbaker@hklawfirm.com | James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com |
| David A. Laird<br>david.laird@moyewhite.com | Christopher E. Baker<br>cbaker@hklawfirm.com | Jerald I. Ancel<br>jancel@taftlaw.com |
| Jeffrey J. Graham<br>jgraham@taftlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | |

I further certify that on June 23, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

David A. Domina
ddomina@dominalaw.com

Ashley S. Rusher
asr@blancolaw.com


                /s/  Dustin R. DeNeal

15

BDDB01 6738687v4