UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR EXAMINATION AND PRODUCTION OF DOCUMENTS
PURSUANT TO FED. R. BANKR. P. 2004**

The First Bank and Trust Company ("First Bank"), by counsel, for its motion requests an order of the Court authorizing and directing the examination of Irsik & Doll, including but not limited to its feed yard Royal Beef ("Irsik & Doll"), and directing it to produce documents pursuant to Fed. R. Bankr. P. 2004, and in support thereof alleges and states as follows:

I.     INTRODUCTION AND BACKGROUND OF THE PRESENT DISPUTE

1.     This is a motion to seek crucial information relating to the location and condition of mobile and perishable assets -- cattle -- from Irsik & Doll. After Eastern Livestock Co., LLC ("Eastern Livestock") collapsed in November 2010, many feedlots continued to thrive. In other words, after Eastern Livestock disappeared and stopped shipping cattle to feedlots, many feedlots did not notice any decrease in the supply of cattle. Numerous lenders, including First Bank, lent millions of dollars to Eastern Livestock and Thomas P. Gibson and took a security interest in millions of dollars of cattle. Many of these cattle have been slaughtered, while some are presumably still on feed at feedlots throughout the country. First Bank has documented that approximately 8,000 head of cattle disappeared between First Bank's inspections in October 2010 and November 2010. When contrasted against the uninterrupted supply of cattle to feedlots

across the country, like Irsik & Doll, to the extent the cattle are still alive, it is only logical they are or were located at feedlots like Irsik & Doll.  To the extent that the cattle have been slaughtered, the cattle likely were located for some time at feedlots, including Irsik & Doll.  First Bank is seeking information from Irsik & Doll that may lead to the identification of cattle (or proceeds) in which First Bank maintains a perfected purchase money security interest.  First Bank's requests are neither burdensome nor require disclosure of proprietary information without assurances of strict confidentiality.

        2.      This motion under Fed. R. Bankr. P. 2004 follows multiple communications between counsel for First Bank and counsel for Irsik & Doll relating to First Bank's requests for information.  First Bank has not yet received information from Irsik & Doll that may assist First Bank in locating more than $6 million in cattle that vanished between October and November 2010.

        3.      Irsik & Doll owns multiple feed yards, including Royal Beef, in Kansas.  Royal Beef has a feeding capacity of 40,000 head of cattle.  Irsik & Doll is a creditor of Eastern Livestock and filed a proof of claim on April 29, 2011 [Claim 164].

        4.      First Bank is a secured creditor of Thomas and Patsy Gibson (the "Gibsons").  Its collateral includes, inter alia, cattle owned by the Gibsons.  The Gibsons have failed to account for the whereabouts of approximately 8,000 head of cattle that collateralized the Gibson's indebtedness to First Bank.  Some of the unaccounted for cattle have been sold to feedlots, including, upon information and belief, to Irsik & Doll, without proper recognition of First Bank's lien.  Irsik & Doll likely purchased cattle from Eastern Livestock, an affiliated person or entity of Eastern Livestock, directly from the caretaker farms at which the Gibsons had their cattle fed, or from other unknown sources, without transferring these proceeds to Thomas P. Gibson, First Bank, or the estates for Eastern Livestock or the Gibsons.

5. First Bank presently lacks complete information regarding the current location or condition of the some of the 8,000 head of cattle that are now missing. Upon information and belief, at least some of the 8,000 head of cattle were shipped to Irsik & Doll, but First Bank has no information as to the exact number of cattle that the Irsik & Doll purchased or acquired subject to its liens. Thus, First Bank needs information from Irsik & Doll to determine the current location or condition of any missing cattle that may have been shipped to Irsik & Doll. In addition, this information will likely lead to the discovery of admissible evidence on behalf of creditors of the Eastern Livestock and Gibson bankruptcies even if the cattle identified were not subject to a First Bank lien.

II. THE INFORMATION REQUESTED BY FIRST BANK UNDER FED. R. BANKR. P. 2004 IS NECESSARY TO IDENTIFY ASSETS THAT ARE PART OF EASTERN LIVESTOCK'S AND THE GIBSONS' ESTATES

6. The documents sought by First Bank from Irsik & Doll are needed to determine (1) whether, and to what extent, property that belongs to Eastern Livestock's estate or Gibsons' estate was transferred or sold to Irsik & Doll without proper recognition of First Bank's lien; and (2) to permit First Bank to trace cattle and proceeds from the sale of cattle before the cattle are processed, or before the traceability of cattle and proceeds otherwise becomes increasingly difficult.

7. Fed. R. Bankr. P. 2004(b) provides that an examination of an entity must relate "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." "It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. The scope of examination permitted pursuant to Rule 2004 . . . can legitimately be in the nature of a 'fishing expedition.'" In re Fearn, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989) (citations omitted). "[S]uch examination is not limited to the debtor or his

agents, but may properly extend to creditors and third parties who have had dealings with the debtor." Id at 138.

8.  Fed. R. Bankr. P. 2004 is also designed to permit the prompt acquisition of information. "[T]he primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets . . . ." Id. at 138 (emphasis added) (citation omitted). Accord: Dynamic Fin. Corp. v. Kipperman (In re North Plaza, LLC), 395 B.R. 113, 125 (Bankr. S.D. Cal. 2008) ("Bankruptcy Rule 2004, however, reflects a strong federal interest in allowing a court to gain a clear picture of the condition and whereabouts of the estate and to examine witnesses having knowledge of a debtor's acts, conduct, liabilities, assets.").

9.  First Bank proposes a plan for discovery from Irsik & Doll that is reasonable, cost-effective, and within the parameters of Fed. R. Bankr. P. 2004. Even though caselaw provides that Fed. R. Bankr. P. 2004 examinations may properly be a "fishing expedition," First Bank's discovery under Fed. R. Bankr. P. 2004 is much narrower. First Bank requests a three-part document production and examination plan that minimizes, to the fullest extent possible, the burden and expense on all parties, while at the same time ensuring that First Bank obtains needed information. First Bank requests the same three-part plan, which has proved to be effective and cost-efficient, to which First Bank and several larger feedlots agreed [Doc Nos. 463, 464, 472, and 475].

III.  **FIRST BANK'S PROPOSED PLAN FOR PRODUCTION OF DOCUMENTS AND EXAMINATIONS UNDER FED. R. BANKR. P. 2004**

10.  First Bank requests that this Court authorize the issuance of a subpoena (attached as Exhibit A) and order the production of documents from and examination of Irsik & Doll in accordance with the following terms and schedule:

4

> PHASE 1: On or before August 1, 2011, Irsik & Doll shall produce at least two computer-generated reports from its cattle tracking software. First, Irsik & Doll shall produce one report that summarizes all cattle received from transactions with Eastern Livestock Co., LLC or Thomas P. Gibson or Patsy M. Gibson in the period from June 1, 2010 to December 31, 2010. Second, Irsik & Doll shall each produce a report summarizing <u>all cattle on feed</u> that entered any feedlots of Irsik & Doll from September 20, 2010 to March 31, 2011.
>
> Both of these reports shall include available information such as delivery date, lot number, in-weight, head count, sex, producer or seller, and origin location to the extent such information is readily available from the computer reports in the ordinary course of business.
>
> PHASE 2: On or before August 10, 2011, First Bank shall specify in writing specific transactions or specific lots of cattle from the reports produced by Irsik & Doll, for which Irsik & Doll shall produce additional information.
>
> On or before August 22, 2011, for each of the transactions or lots identified by First Bank, Irsik & Doll shall produce the entire lot file constituting or relating to transactions or lots identified by First Bank; as used herein "lot file" includes, but is not limited to receiving sheets, receiving notifications, receiving reports, processing records, purchase agreements for cattle, security agreements, promissory notes, financing statements, assignments, bills of sale, note histories, note summary analyses, hauling logs, bills of lading, documentation showing from where cattle were shipped, financial summaries, checks, check stubs, and invoices. If copying and production of these portions of lot files identified by First Bank would be unduly burdensome, then Irsik & Doll shall permit First Bank to inspect and copy such lot files as maintained in the ordinary course of business at mutually convenient times and places.
>
> PHASE 3: If First Bank states in writing that it intends to examine representatives of Irsik & Doll after First Bank has had adequate time to review documents produced by Irsik & Doll, then Irsik & Doll is directed to designate appropriate representatives who shall submit to examinations by First Bank. Such examinations shall begin at mutually convenient times and places and continue from day to day thereafter until completed.

11. At first blush, at least the second portion of Phase 1, may appear to be broad-sweeping and require disclosure of transactions that have nothing to do with this controversy. But, it is the least burdensome way for Irsik & Doll to produce the information and is the only way First Bank can assure it captures all relevant information. The effort to recover

missing cattle will likely involve identifying persons who engaged in "self-help" to recover from their own losses from Gibson's and Eastern Livestock's activity. Therefore, one should not expect that transactions outside the ordinary course of business would have the same readily identifiable tracings as previous transactions in the ordinary course before Eastern Livestock's demise. In other words, some of the missing 8,000 cattle in November 2010 were sold or transferred largely from unknown locations, by and to unknown persons, who may or may not have used identifying information similar to the information possessed by First Bank.

12. Moreover, First Bank's proposed first phase of production imposes less of a burden on Irsik & Doll, which would have to run only two queries of its database for the two reports -- the first of which identifies all transactions with Eastern Livestock or its affiliated persons or entities between June 1, 2010 and December 31, 2010, and the second of which identifies all transactions between September 20, 2010 and March 31, 2011.

13. The present form of the discovery is the only reasonable and confidential method, with the least burden on the producing party, to obtain the crucial evidence that is at the very crux of these bankruptcies. First Bank reserves its rights to seek additional information from Irsik & Doll, or to seek discovery through any adversary proceedings or contested matters.

WHEREFORE, First Bank requests that the Court issue an order (attached as Exhibit B):

(1) directing Irsik & Doll to produce documents, pursuant to Fed. R. Bankr. P. 2004, in accordance with the terms herein, at locations to be agreed to by the parties;

(2) directing Irsik & Doll to designate representatives who shall submit to examinations by First Bank, pursuant to Fed. R. Bankr. P. 2004, if First Bank states in writing that it intends to examine representatives of Irsik & Doll.

6

Respectfully submitted,


/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email:  ddonnellon@ficlaw.com

Attorneys for The First Bank and Trust Company

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2011, a true and correct copy of the foregoing Motion for Examination and Production of Documents Pursuant to Fed. R. Bankr. P. 2004 was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | Robert Hughes Foree<br>robertforee@bellsouth.net | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com |
| C. R. Bowles, Jr<br>crb@gdm.com | Kim Martin Lewis<br>kim.lewis@dinslaw.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| John Hunt Lovell<br>john@lovell-law.net | Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Jessica E. Yates<br>jyates@swlaw.com |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Ivana B. Shallcross<br>ibs@gdm.com | John Huffaker<br>john.huffaker@sprouselaw.com |
| Jesse Cook-Dubin<br>jcookdubin@vorys.com | Deborah Caruso<br>dcaruso@daleeke.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Edward M King<br>tking@fbtlaw.com | Meredith R. Thomas<br>mthomas@daleeke.com | Laura Day Delcotto<br>ldelcotto@dlgfirm.com |
| Randall D. LaTour<br>rdlatour@vorys.com | William Robert Meyer, II<br>rmeyer@stites.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| John Frederick Massouh<br>john.massouh@sprouselaw.com | Allen Morris<br>amorris@stites.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| John W. Ames<br>jwa@gdm.com | Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | Ross A. Plourde<br>ross.plourde@mcafeetaft.com |
| James M. Carr<br>jim.carr@bakerd.com | James Bryan Johnston<br>bjtexas59@hotmail.com | Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com |
| Robert K. Stanley<br>robert.stanley@bakerd.com | James T. Young<br>james@rubin-levin.net | Walter Scott Newbern<br>wsnewbern@msn.com |
| Terry E. Hall<br>terry.hall@bakerd.com | David L. LeBas<br>dlebas@namanhowell.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |

| | | |
|---|---|---|
| Todd J. Johnston<br>tjohnston@mcjllp.com | Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Timothy T. Pridmore<br>tpridmore@mcjllp.com | John M. Rogers<br>johnr@rubin-levin.net | Michael W. McClain<br>mike@kentuckytrial.com |
| Theodore A Konstantinopoulos<br>ndohbky@jbandr.com | Cathy S. Pike<br>cpike@weberandrose.com | David A. Domina<br>ddomina@dominalaw.com |
| Karen L. Lobring<br>lobring@msn.com | John David Hoover<br>jdhoover@hooverhull.com | Kent A Britt<br>kabritt@vorys.com |
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Sean T. White<br>swhite@hooverhull.com | Joshua N. Stine<br>jnstine@vorys.com |
| Lisa Koch Bryant<br>courtmail@fbhlaw.net | Robert H. Foree<br>robertforee@bellsouth.net | Ashley R. Rusher<br>asr@blancolaw.com |

                                              /s/ Daniel J. Donnellon
                                              Daniel J. Donnellon

502464.1