# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA - NEW ALBANY

===============================

IN THE MATTER OF:       .   Case #10-93904-BHL-11
     .
EASTERN LIVESTOCK CO., LLC    .   New Albany, Indiana
     .   **June 24, 2011**
          Debtor   .   10:38:54 a.m. O'Clock

===============================

### TRANSCRIPT OF TELEPHONIC HEARING RE:
**(#317) - Page 4 - CONTINUED HEARING RE: CORRECTED MOTION TO ABANDON, CORRECTED MOTION FOR RELIEF FROM STAY, FILED BY PEOPLES BANK AND TRUST COMPANY OF PICKETT COUNTY;**
**(#489) - Page 7 - MOTION TO FILE CLAIM AFTER CLAIMS BAR DATE FILED BY CREDITOR LYTLE STREET DEVELOPMENT;**
**(#496) - Page 7 - MOTION TO ASSIGN INTEREST IN LAND SALE CONTRACT TO CHAD SCHUCHMANN FILED BY TRUSTEE JAMES KNAUER;**
**(#499) - Page 7 - MOTION TO FILE CLAIM AFTER CLAIMS BAR DATE AND EXTEND BAR DATE, FILED BY CREDITOR CULLMAN STOCKYARD, INC.;**
**(#501) MOTION FOR AUTHORITY, (TRUSTEE'S PURCHASE MONEY CLAIMS REPORT, MOTION TO TRANSFER FUNDS, AND NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT) FILED BY TRUSTEE JAMES KNAUER;**
**(#512) OBJECTION TO [#501] FILED BY SUPERIOR LIVESTOCK AUCTION, INC.;**
**(#515) OBJECTION TO [#501] FILED BY JOPLIN REGIONAL STOCKYARDS;**
**(#517) OBJECTION TO [#501] FILED BY CREDITORS NORTHWEST ALABAMA LIVESTOCK YARD, GLEN FRANKLIN, PHILLIP TAYLOR REED, AND PETITIONING CREDITOR, DAVID L. RINGS;**
**(#518) OBJECTION TO [#501] FILED BY CREDITOR RON P. REED;**
------------continued------------->
**BEFORE THE HONORABLE BASIL H. LORCH, III, J.U.S.B.C.**

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ 08234-5901**
**1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 2 Cover
#10-93904
6-24-2011

## CAPTION - continued

**(#519) OBJECTION TO [#501] FILED BY FIRST BANK & TRUST COMPANY;
(#520) APPLICATION FOR COMPENSATION AND/OR REIMBURSEMENT OF
EXPENSES PURSUANT TO §330 FOR JAMES M. CARR, TRUSTEE'S COUNSEL;-
(#525) APPLICATION FOR COMPENSATION AND/OR REIMBURSEMENT OF
EXPENSES PURSUANT TO §330 FOR TRUSTEE JAMES A. KNAUER, .;
(#536) RESPONSE IN OPPOSITION
(#536) RESPONSE IN OPPOSITION TO OBJECTION TO [#501] FILED BY PEOPLES
BANK OF COLDWATER, KANSAS;
(#539) OBJECTION TO [#501] FILED BY BLUE GRASS MAYSVILLE STOCKYARDS,
LLC, BLUE GRASS SOUTH LIVESTOCK MARKET, LLC, BLUE GRASS
STOCKYARDS EAST, LLC, BLUE GRASS STOCKYARDS OF CAMPBELLSVILLE,
LLC, BLUE GRASS STOCKYARDS OF RICHMOND, LLC, BLUE GRASS
STOCKYARDS, LLC, EAST TENNESSEE LIVESTOCK CENTER, INC., PIEDMONT
LIVESTOCK, INC., AND SOUTHEAST LIVESTOCK EXCHANGE, LLC;
(#541) SUPPLEMENTAL OBJECTION TO [#501] FILED BY SUPERIOR LIVESTOCK
AUCTION, INC.;
(#542) SUPPLEMENTAL OBJECTION TO [#501] FILED BY JOPLIN REGIONAL
STOCKYARDS;
(#543) OBJECTION TO [#501] FILED BY PROFESSIONAL KATHRYN PRY;
(#544) OBJECTION TO [#501] FILED BY THE BANK OF KREMLIN, BRENT
KUEHNY;
(#545) OBJECTION TO [#501] FILED BY STOCKMAN OKLAHOMA LIVESTOCK
MARKETING, INC.;
(#546) OBJECTION TO [#501] FILED BY CRUMPLER BROTHERS;
(#547) OBJECTION TO [#501] FILED BY FIRST CPC LIVESTOCK, LLC;**
----------continued---------->
**BEFORE THE HONORABLE BASIL H.  LORCH, III, J.U.S.B.C.**

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue
Egg Harbor Township, NJ  08234-5901
1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299
e-mail - irwingloria@comcast.net**

Page 3 Cover
#10-93904
6-24-2011

## CAPTION  - continued

**(#548) RESPONSE IN OPPOSITION TO  [#501] FILED BY COFFEYVILLE LIVESTOCK MARKET, LLC;**
**(#549) SUPPLEMENTAL OBJECTION TO [#501] FILED BY GLEN FRANKLIN, NORTHWEST ALABAMA LIVESTOCK YARD, PHILLIP TAYLOR REED, RON P. REED, AND PETITIONING CREDITOR DAVID L. RINGS;**
**(#552) OBJECTION TO [#501] BY RUSSELL DECORDOVA d/b/a deCORDOVA CATTLE COMPANY;**
**(#553) OBJECTION TO [#501] FILED BY JOPLIN REGIONAL STOCKYARDS, PETITIONING CREDITOR SUPERIOR LIVESTOCK AUCTION, INC.;**
**(#520) - Page 8 - APPLICATION FOR COMPENSATION AND/OR REIMBURSEMENT OF EXPENSES PURSUANT TO §330 FOR JAMES M. CARR, TRUSTEE'S COUNSEL;**
**(#554) SUPPLEMENTAL OBJECTION TO [#501] BY CREDITOR FIRST BANK AND TRUST COMPANY, INC.;**
**(#555) OBJECTION TO [#501] FILED BY CREDITOR REX ELMORE;**
**(#556)  OBJECTION TO [#501] FILED BY CREDITOR FLORIDA ASSOCIATION LIVESTOCK MARKETS;**
**(#564) REPLY TO [#501] BY TRUSTEE JAMES A. KNAUER**
**BEFORE THE HONORABLE BASIL H.  LORCH, III, J.U.S.B.C.**


**APPEARANCES:**

For Petitioning Creditors, Moseley Cattle          JOHN W. AMES, ESQ.
Auction, Moseley Cattle Auction, et al:            C.R. "CHIP" BOWLES, ESQ.
For Greenebaum, Doll & McDonald:                   CHRISTIE A. MOORE, ESQ.
                                                   Greenebaum, Doll & McDonald,  PLLC
                                                   101 S. 5th Street   #3500 National City Tower
                                                   Louisville, KY  40202

                                                          ---------continued--------->


Electronic Sound Recording Operator:      Amy Bruckert

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 4 Cover
#10-93904
6-24-2011

**APPEARANCES: - continued**

Chapter 11 Trustee:                    JAMES A. KNAUER, ESQ. *(Via phone)*
                                       Kroger Gardis & Regas, LLP
                                       111 Monument Circle, Suite 900
                                       Indianapolis, IN 46204


For the Chapter 11 Trustee:            KEVIN TONER, ESQ.
                                       TERRY HALL, ESQ.
                                       SHAWNA MEYER EIKENBERRY, ESQ.
                                       Baker & Daniels, LLP
                                       300 North Meridian   Suite 2700
                                       Indianapolis, IN 46204


For the U.S. Trustee:                  CHARLES R. WHARTON, AUST
                                       Office of the U.S. Trustee
                                       101 W. Ohio Street   Suite 1000
                                       Indianapolis, IN   46204


For First Bank & Trust Company:        DANIEL J. DONNELLON, ESQ.
                                       STEPHEN WEIGAND, ESQ.
                                       Faruki, Ireland & Cox, PLL
                                       201 East Fifth Street   Suite 1420
                                       Cincinnati, OH 45202

                                       BRET S. CLEMENT, ESQ. *(Via phone)*
                                       Ayers, Carr & Sullivan, P.C.
                                       251 E. Ohio Street   Suite 500
                                       Indianapolis, IN   46204
                                       ---------- continued------------>


Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

**APPEARANCES: (continued)**

For Fifth Third Bank:                           EDWARD M. KING, ESQ.
                                                Frost, Brown & Todd, LLC
                                                400 W. Market Street    3nd Fl.
                                                Louisville, KY 40202

                                                RANDALL D. LaTOUR, ESQ. *(Via phone)*
                                                Vorys, Sater, Seymour & Pease, LLP
                                                52 East Gay Street
                                                Columbus, OH   43216

For Kathryn Pry RE: Gibson:                     DEBORAH J. CARUSO, ESQ.
                                                Dale & Eke, P.C.
                                                9100 Keystone Crossing,   Suite 400
                                                Indianapolis, IN 46204

For Friona Industries:                          JOHN FREDERICK MASSOUH, ESQ.
                                                Sprouse Shrader Smith, P.C. *(Via phone)*
                                                701 S. Taylor   Suite 500
                                                Amarillo, TX   79105

For Friona Industries, Cactus Growers, Inc.     DANIEL ALBERS, ESQ.
And J&F Oklahoma Holdings:                       Valenti, Hanley & Robinson
                                                One Riverfront Plaza
                                                401 W. Main Street, Suite 1950
                                                Louisville, KY 40202

For J&F Oklahoma Holdings, Inc.                 DAVID L. LeBAS, ESQ. *(Via phone)*
                                                Namen, Howell, Smith & Lee, PLLC
                                                Suite 490
                                                8310 N. Capital of Texas Highway
                                                Austin, TX    78731
                                                ---------continued---------------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299**
**e-mail - irwingloria@comcast.net**

**APPEARANCES: (continued)**

For Eddie Eicke:                          JAMES BRYAN JOHNSON, ESQ. *(Via phone)*
                                          Easterwood, Boyd & Simmons, P.C.
                                          623 N. Main Street   PO Box 273
                                          Hereford, TX 79045


For Bluegrass Stockyards, LLC, and        LAURA DAY DELCOTTO, ESQ. *(Via phone)*
related entities:                         DelCotto Law Group, PLLC
                                          200 North Upper Street
                                          Lexington, KY 40507


For CPC Livestock:                        JESSICA E. YATES, ESQ.   *(Via phone)*
                                          Snell & Wilmer, LLP
                                          1200 Seventeenth Street   Suite 1900
                                          Denver, CO   80202


For William Downs:                        ANDREW D. STOSBERG, ESQ.
                                          Lloyd & McDaniel
                                          11405 Park Road, Suite 200
                                          Louisville, KY 40223


For Coffeyville Livestock Market, LLC:    WILLIAM E. SMITH, III, ESQ.
                                          Kightlinger & Gray, LLP
                                          Bonterra Building, Suite 200
                                          3620 Blackiston Boulevard
                                          New Albany, IN 47150


For Florida Livestock Markets and         W. SCOTT NEWBERN, ESQ. *(Via phone)*
Creditors:                                2982 E. Giverny
                                          Tallahassee, FL 32309
                                                ------continued------------->


Electronic Sound Recording Operator:    Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 7 Cover
#10-93904
6-24-2011

**APPEARANCES: (continued)**

For Superior Livestock Auction and              JOHN M. ROGERS, ESQ.
Joplin Regional Stockyards:                     ELLIOTT LEVIN, ESQ.
                                                Rubin & Levin, P.C.
                                                500 Marott Center
                                                342 Massachusetts Avenue
                                                Indianapolis, IN 46204-2161

                                                J. ODLE (no further information)

For Peoples Bank:                               ANTHONY RALUY, ESQ.
                                                Foley Bryant Holloway & Raluy
                                                500 West Jefferson Street   Suite 2450
                                                Louisville, KY   40202

                                                DAVID LAIRD, ESQ. *(Via phone)*
                                                1400 16th Street   6th Fl.
                                                Denver, CO   80202

For Russell deCordova d/b/a deCordova           JEFFREY J. GRAHAM, ESQ. *(Via phone)*
Cattle:                                         Taft, Stettinius & Hollister, LLP
                                                One Indiana Square, Suite 3500
                                                Indianapolis, IN   46204

                                                JEFFREY R. ERLER, ESQ. *(Via phone)*
                                                1500 One McKinney Plaza
                                                3232 Mc Kinney Avenue
                                                Dallas, TX 75204
                                                ------continued----------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 8 Cover
#10-93904
6-24-2011

**APPEARANCES: (continued)**

For Innovative Livestock:   MARK A. RONDEAU, ESQ. *(Via phone)*
           Watkins Calcara, Chtd.
           1321 Main Street
           Great Bend, KS   67530


For Wells Fargo Capital Finance:  JEFFREY T. WEGNER, ESQ. *(Via phone)*
           Kutak Rock, LLP
           The Omaha Building
           1650 Farnam Street
           Omaha, NE   68102


For Cullman Stockyards:    THOMAS C. SCHERER, ESQ. *(Via phone)*
           Bingham McHale, LLP
           2700 Market Tower
           10 West Market Street
           Indianapolis, IN 46204


For Rex Elmore:       KEVIN D. NICOSON, ESQ. *(Via phone)*
           Stuart & Branigin
           The Life Building
           300 Main Street,   Suite 900
           Lafayette, IN 47902


Electronic Sound Recording Operator: Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue
Egg Harbor Township, NJ  08234-5901
1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299
e-mail - irwingloria@comcast.net**

1  (At 10:38:02 a.m.)

2          THE COURT:   Okay, we're on the record in Eastern

3  Livestock.  We have a -- we've taken a list of the attorneys

4  that are appearing by phone, so I'm not going to through that

5  again.  I will just ask for those who are participating by

6  phone, first of all make sure you keep your phone on mute.

7  Don't put us on hold, especially if your phone system plays

8  music.  And when you do speak, make sure you identify yourself

9  for the record.

10          So let's take the appearances of the attorneys

11 appearing in Court.

12          MS. HALL:   Terry Hall for the Trustee, Jim Knauer,

13 for the debtor.

14          MR. TONER:   Kevin Toner for the Trustee, Jim Knauer.

15          MS. EIKENBERRY:   Shawna Eikenberry for the Trustee,

16 Jim Knauer.

17          MR. WHARTON:   Chuck Wharton for the U.S. Trustee.

18          MS. CARUSO:   Debbie Caruso for Kathy Pry, the

19 Trustee for the Gibson Estate.

20          MR. LaTOUR:   Good morning, Your Honor.   Randall

21 LaTour representing Fifth Third Bank.

22          MR. KING:   Judge, Ted King, counsel for Fifth Third

23 Bank.

24          MR. DONNELLON:   Good morning, Your Honor.   Dan

25 Donnellon for First Bank & Trust.

1        MS. MORRIS:   Your Honor, Christie Moore for

2    Superior Livestock Auction.

3        MR. BOWLES:   Chip Bowles for Superior Livestock

4    Auction, and several other people we've identified on the

5    record in this case.

6        MR. AMES:   John Ames for the same clients that

7    (unclear)

8        MR. NEWBERN:   Scott Newbern for Florida Livestock

9    Markets and Creditors.

10       MR. SMITH:   William Smith on behalf Coffeyville

11   Livestock Market, LLC.

12       MR. ROGERS:   John Rogers, Your Honor, also on

13   behalf of Superior Livestock Auction and Joplin Regional

14   Stockyards.

15       MR. ALBERS:   Daniel Albers, Your Honor, for Friona

16   Industries, Cactus Growers, Inc., and J&F Oklahoma Holdings.

17       MR. STOSBERG:   Andrew Stosberg on behalf of William

18   Downs.

19       THE COURT:   All right, and I would just ask all of

20   you before you leave today -- you said we have all those?   We

21   need to make sure we have all those -- okay. All right.   We

22   think we've got you all.

23       How do you want to -- ?   I've got a proposed agenda

24   here.   Are there some matters that we can dispose of quickly

25   before we get to the major issue?

1          MS. HALL:   I think we could, Your Honor.  Under

2    Item -- Roman Numeral II, continued matter of the Peoples Bank

3    and Trust motion for relief from automatic stay:   The debtor

4    and Peoples Bank are -- I mean, the Trustee and People's Bank

5    are negotiating over the terms, or the procedures for selling

6    the property and reserving the lien dispute related to the

7    mortgage, the validity of the mortgage for a later date; and

8    we should be filing an agreement to that effect soon.

9          I've spoken with the attorney whose name I cannot

10   remember at this point --

11          UNIDENTIFIED FEMALE:   Lisa Bryant --

12          MS. HALL:   -- hopefully he's on the phone.

13          UNIDENTIFIED FEMALE:   Lisa  Bryant?

14          MR. RALUY:   Yes, Your Honor.  Anthony Raluy here.

15          MS. HALL:   Anthony Raluy for Lisa Bryant.   And he

16   is drafting an agreed entry on that.

17          MR. KING:   Your Honor, Ted King for Fifth Third

18   Bank.  At the last hearing there was an agreement -- a

19   specific agreement made on the record and approved by the

20   Court that Fifth Third's mortgage was not going to be included

21   in that -- in that agreed order, or agreed entry for relief

22   from stay.  We have asked that Peoples Bank as well as the

23   Trustee include a specific statement in that agreed entry that

24   describes that mortgage and indicates that the property is

25   secured, or allegedly secured by that mortgage, is not

1  included in the stay relief order.   The Trustee has indicated

2  that that's fine.   We have not yet seen a draft of that -- or

3  a draft of that order incorporated in those provisions; but I

4  presume, since it was agreed to by the parties and ordered by

5  the Court that we will be seeing that.

6         MS. HALL:   Are you -- but you did agree that we

7  could sell the --

8         MR. KING:   As long as it's not our --

9         MS. HALL:   They would be able to sell the property.

10        MR. KING:   As long as it's not our collateral,

11 we've agreed that you can -- you can do -- you can sell it,

12 but it's our understanding -- and this is somewhat confusing

13 because the bank -- Peoples Bank didn't include collateral

14 descriptions in its initial motion for relief from stay.   It

15 was a little confusing as to what property was actually being

16 -- relief was actually being granted on.   We just want to

17 make it abundantly clear -- and it was agreed to earlier --

18 that the property secured by Fifth Third's mortgage is not

19 being -- there is not stay relief on that property.

20        MS. HALL OR MS. CARUSO:   Is that the house?

21        MR. KING:   Yes.

22        MS. CARUSO:   Yeah, I think that is clear, because

23 when we worked through the various properties that were

24 included in the motion for relief from the stay, and we have

25 an agreement with Peoples Bank that certain properties will

1  actually be abandoned from the estate.  It was specifically

2  discussed that the house, which is subject to your mortgage,

3  was being abandoned from the estate, but it wasn't going to be

4  part of the property you guys were selling.

5           MS. HALL:  No, I think the -- my -- what we were

6  talking about with Tony is the -- some bare land that is --

7           MR. KING:  I don't know if it's a house.  I don't

8  know if it's bare land.  It's property that is encumbered by

9  the mortgage that we provided you copies of --

10          MS. CARUSO:  It would be the house.  I believe that

11 (unclear) still living in it.

12          MR. KING:  Yeah, I just don't -- yeah, I don't --

13 that I don't know.

14          THE COURT:  That's fine.  Everybody's on the same

15 page.

16          MR. KING:  Yeah, I just want to attach that copy --

17          MS. CARUSO? MS. HALL?: We don't know what page that

18 is, but we're on the same page.

19          THE COURT:  Well, you're not -- you're not selling

20 their property.

21          MS. CARUSO?  MS. HALL?:  Right.

22          THE COURT:  And everybody make sure they don't sell

23 your property.

24          MR. KING?:  Perfect, Judge.  Thank you.

25          THE COURT:  And if they start to sell your property

1  you come in here and tell me about it, and I'll tell them *not*

2  to sell your property.

3          MR. KING:   Thanks, Your Honor.

4          THE COURT:   All right.   Then -- so I'll look for

5  an agreed entry and an order, proposed order.

6          MS. HALL:   Okay.   Roman Numeral III, Your Honor, on

7  the agenda is Item #2, Lytle Street Development.   That motion

8  has actually been withdrawn, so I think it should just be

9  removed from the agenda.

10          THE COURT:   All right.

11          MS. HALL:   Item #3 under Roman Numeral III, Motion

12  to Assign Interest:   This is the estate moving to assign an

13  interest in the land contract for which there was no value to

14  the estate, to the other party -- partner in the land

15  contract, who has agreed to take over that debt for the

16  estate.   No objections were filed, and we ask that that motion

17  be granted.

18          THE COURT:   I show the motion's granted.

19          MS. HALL:   Item #3 (sic) is a motion to extend a

20  bar date and authorize --

21          THE COURT:   4.

22          MS. HALL:   -- the filing of -- 4 -- authorize the

23  filing of a proof of claim by Cullman Stockyard.   Nobody filed

24  an objection to that, and we ask that the motion be granted.

25          THE COURT:   Show the motion's granted.

1          MS. HALL:    Item #5 is the primary matter that we've

2    got on today, and I believe that possibly the remaining items,

3    which are the fee applications may be part of that, even

4    though no objections were filed, but part of that discussion

5    that the parties here would like to talk about.  And then

6    we've got the two adversary proceedings, one of which is a

7    status conference and one of which is a pre-trial conference.

8    So at this point we'll -- we can go with how the Court would

9    like to proceed.

10         THE COURT:    Okay.   Well, let's get into the -- the

11   motion that drew all the objections.  I mean, I understand

12   what the Trustee is trying to accomplish here.  I'm not sure

13   we can accomplish it.   I mean, people have raised --

14         Let me see if I can summarize this without getting

15   real specific because I certainly can't remember everything

16   that was in every objection; but basically the Trustee has

17   said, "We don't think anybody other than the bank  -- any of

18   these sellers -- have a lien on the proceeds.   We don't think

19   they do by federal law, and we don't think they do by state

20   law.   And so we want to transfer that money to our operating

21   account."

22         And then a host of parties have disagreed, some of

23   whom have said, "Well, yes, by this law in Kansas, or this law

24   in Oklahoma, we do have such a lien."  Some of whom have said,

25   "You can't do this this way."  You know, the -- "It's not in

1  compliance with maybe previous court orders, or the bankruptcy

2  rules.   It may need to be an adversary to determine the

3  extent and priority of liens."

4          Is that -- is that overview of where we are?

5          MS. HALL:   I think that's a fairly good summary,

6  Your Honor.

7          THE COURT:   All right.   So how do we get out of

8  this?

9          MS. HALL:   Well --

10          THE COURT:   Do we have to have -- I mean, obviously

11  state law is relevant.   I mean, if a trans -- or unless you're

12  going to argue that it's not, it's going to be different laws

13  in different states as to whether or not -- it would be just

14  like the Indiana Garagemen's Law, or a mechanic's lien law, or

15  whatever might give rise to a lien; whereas, in Kentucky, you

16  might be outside the statute, or vice-versa.   I mean, these

17  kind of state laws that create liens are certainly unique and

18  different.   Don't we have to assess these claims in light of

19  their individual characteristics?

20          MS. HALL:   Well, Your Honor, we at -- we attempted

21  to do that with the cattle payments motion that we started

22  with in the beginning --

23          THE COURT:   Right.

24          MS. HALL:   -- where we said, "We'd like-- we know

25  that people believe they owes us -- they owe the estate money.

1  They're concerned about paying the estate money because

2  they've got competing claims." "If you pay us, we'll indemnify

3  you, and we will resolve those claims within the bankruptcy

4  case."

5         That worked okay.   Then we asked people to file

6  claims against those funds so that we could try to identify

7  who is claiming a lien in what funds, or who is claiming an

8  interest in what funds.   That *didn't* work so well because we

9  got all kinds of claims that were non-specific, some specific;

10 some just said, "You owe me money."

11        And so then it became, how do we -- how do we make

12 it so that we have funds that are usable by the Trustee to run

13 the case, and to ultimately determine that these funds are

14 paid over to the senior secured lender, if they become excess

15 cash collateral?

16        When it became obvious that we were not going to be

17 able to -- or this was not a forum that we could object to all

18 505 claims and try to get it resolved, because we couldn't

19 tell which claim was which, we said, "Well, these are monies

20 that have been paid in.  If you have a claim to any of these

21 proceeds, please file a pleading and tell us what claim you

22 have to these particular pleadings."

23        Some of the parties -- and we've discussed this

24 prior to the opening of the hearing today -- are concerned

25 that our --

1          TELEPHONE OPERATOR:   Joining the meeting.

2          MS. HALL:  -- that some of our language in the

3  notice and in the pleadings was not quite specific enough, and

4  that we said, "If you had a secured claim," which meant that

5  -- and some people interpreted that to mean that if you

6  thought -- if you didn't have a secured claim, if you just

7  thought it wasn't property of the estate but you didn't

8  necessarily need to raise that argument or make an objection.

9          I'm not sure that I agree with that.  If you have a

10  claim to any of the proceeds then I think you should have

11  raised it in an objection.

12          So what we were trying to do is to say, "Of all this

13  money that we've taken in, here's an opportunity for you to

14  claim part of it.  If you claim part of it and we don't

15  resolve it, we'll take that dispute and put it over here under

16  a scheduling order, and we'll resolve that dispute."

17          The monies that -- what we attempted to do this

18  morning was to identify those payments where the debtor had

19  actually paid the underlying producer.  So there wasn't an

20  unpaid producer out there, and the debtor paid the producer in

21  good funds -- not an NSF check -- and the producer paid the

22  debtor; and so in that particular situation, the 1.6 million

23  dollars we put on the pleading that we filed this morning,

24  those funds belonged to the estate without a competing claim;

25  and the only lien was the blanket lien established by the

1   Court in the financing order owned by Fifth Third.

2          So in our response last night we tried to take into

3   consideration the concerns that were raised in the objection

4   and if -- as you said, "How do we get out of this?"

5          THE COURT:   Right.

6          MS. HALL:   Try to put it in bites.   Some people

7   felt that they could not figure out if they had a claim

8   because they didn't know who the underlying cattle producer

9   was that was the subject of the cattle, from who we were

10  getting the payments, so we said that we would file by July --

11  we would provide by July the 8th to the objecting parties the

12  source of the cattle so that they could determine if they had

13  a claim; people who made a specific objection to specific

14  proceeds -- we'd set those aside and treat those as a full

15  contested matter with a scheduling order or whatever, and try

16  to resolve that in August.

17         And in the meantime we'd like to propose that we

18  won't -- we won't transfer any of the funds, except for this

19  1.6-- and I think we're -- we probably have agreed that people

20  are going to need a certain period of time to verify that 1.6

21  and those particular payments -- to move those over and not

22  move the rest of it over until it's actually resolved.

23         We've discussed briefly but I don't think we've

24  reached a consensus.

25         THE COURT:   All right, well, let's -- let's slow

1    down a little bit.   So your proposal would be to -- are you

2    going to -- are you going to -- how are you going to deal with

3    the objections to the adequacy of the notice issue?  Or you're

4    going to take the position that the notice was adequate and

5    all -- everybody who -- all the players are here ready to

6    assert their position?  Or do you think something had -- we

7    have to go back that far?

8           MS. HALL:   I think it's at least the Trustee's

9    position, Your Honor, that the notice was specific enough that

10   said, "Here are 88 payments that the debtor -- that the

11   Trustee has received.   If you have a claim to these funds,

12   you need to object, because we're going to move them."  And

13   the intent for moving them is to use them, or to send them to

14   Fifth Third.  We're not going to send them to Fifth Third

15   unless it goes through the financing order," but that was the

16   intent.

17           THE COURT:   All right.

18           MS. HALL:   So it went to all creditors.

19           THE COURT:   Okay.  So let's -- let's start with

20   that proposition, that if people have been alerted, notice has

21   been given to come forward and to state a claim, you think you

22   have identified, based upon your pleading of -- your recent

23   pleading, 1.6 million dollars in funds that you have on hand

24   that the supplier was paid for; and so there's no competing

25   claim to Fifth Third's -- the only lien on those proceeds

1  would be that of Fifth Third.

2          MS. HALL:   That is what -- that's our position,

3  Your Honor.

4          THE COURT:   That  -- you think you've identified

5  that 1.6.   And some of the parties want additional time to

6  make themselves comfortable that that 1.6 is not subject to

7  any claim that they might have.

8          MS. HALL:   That's correct, Your Honor.

9          THE COURT:   And how did you say that you might need

10 -- that you might need to do that?

11         MS. HALL:   We were considering fourteen days.

12         THE COURT:   All right.   Does anybody object to

13 that?  (No response) All right, let's do that.

14         MR. DONNELLON:   Your Honor --

15         THE COURT:   Go ahead.

16         MR. DONNELLON:   The only issue on the fourteen

17 days, that two weeks from today I'm going to be out of town,

18 and I've made that clear to Ms. Hall.  We've --

19         THE COURT:   Well, what do you want?

20         MR. DONNELLON:   -- said sixteen days or seventeen

21 days would be fine.

22         THE COURT:   Sixteen it is.  What -- did you have an

23 objection to that?

24         MR. NEWBERN:   Yes, Your Honor.   Scott Newbern for

25 Florida Markets.  I'm just unclear as to what the fourteen

1  days is for.

2          THE COURT:  Well, for anybody -- I mean -- for

3  anybody to contest the fact or to file some additional

4  pleadings saying "We don't agree that this 1.6 is the result."

5          MR. NEWBERN:  So just -- it's just with regard to

6  the 1.6 --

7          THE COURT:  Just the 1.6.  Just the 1.6.  All

8  right.

9          Step Two:  As to the additional monies that you

10  have on file that parties *have* asserted claims to, what -- I

11  notice -- you were talking about at some point moving --

12  moving those out into separate contested matters with -- and

13  then entering scheduling orders and allowing for discovery and

14  those kind of things we would do in a contested matter.  So

15  tell me how that process would begin.

16          MS. HALL:  Well, I think there is kind of a two

17  steps to it.  One is, some people said, "I may have a claim,

18  but I don't know."

19          THE COURT:  Right.

20          MS. HALL:  So we would provide by July the 8th I

21  think is what we are proposing, that DSI would construct on

22  that Exhibit A, where it says, "Here's who paid us, and here's

23  how much they paid us."  We would put the other side in that

24  says, "And here's where the cattle came from," so that the

25  parties who said, "I may have a claim, but I'm not sure,"

1    could identify that; and then by August 1st --

2           THE COURT:    Now wait a minute.  Slow down.  So I'm

3    looking at -- you're talking about Exhibit A to your most

4    recent motion?

5           MS. HALL:    The Exhibit A to the -- the --

6           THE COURT:    Your reply that you filed?

7           MS. HALL:    No.

8           UNIDENTIFIED MALE:    (unclear) declaration.

9           MS. HALL:    The Exhibit A -- no --

10          THE COURT:    Which Exhibit A?

11          MS. HALL:    The Exhibit A to the purchase money

12   claims report.  It was the Docket #501.

13          THE COURT:    Okay.  Exhibit A to your original

14   motion.

15          MS. HALL:    To the original motion.

16          THE COURT:    Okay.

17          MS. HALL:    Because people said, "I'm looking here,

18   but I don't know who you sold the cattle to.  I mean, I know

19   who you sold the cattle *to,* but I don't know who you took the

20   cattle from."

21          THE COURT:    All right, wait a minute.  Let me get

22   to Exhibit A.

23          MS. HALL:    So these were the 88 payments --

24          THE COURT:    Right.

25          MS. HALL:    -- that we received.

1          THE COURT:   Okay.

2          MS. HALL:   People want the source of those cattle--

3          THE COURT:   Okay.

4          MS. HALL:   -- because they may *be* the source of

5  those cattle, but they don't now.

6          CONFERENCE CALL OPERATOR:   Joining the meeting.

7          THE COURT:   All right.

8          TELEPHONE VOICE:   This is South WATS (unclear)

9  Center.

10          THE COURT:   Okay.

11          MS. HALL:   So --

12          CONFERENCE CALL OPERATOR:   Joining the meeting.

13          MR. ?? (on telephone):   This is (unclear) Yes, sir.

14          THE COURT:   Okay.   All right.   Go ahead.

15          MS. HALL:   So --

16          THE COURT:   So you're going -- by July the 8th

17  you're going to amend Exhibit A, and you'll add an additional

18  column, and in that additional column you will identify the

19  source of those cattle -- who sold you the cattle.

20          MS. HALL:   Yes.

21          THE COURT:   Is that right?

22          MS. HALL:   Yes, Your Honor.

23          THE COURT:   All right, and then parties -- and

24  you'll file that as a pleading in this Court.   And then

25  parties will have --

1          MS. HALL:    Until August 1st.

2          THE COURT:    -- until August 1st to --

3          CONFERENCE CALL OPERATOR: Joining the meeting.

4          THE COURT:    -- to -- to do what?    To assert?

5          MS. HALL:    To assert a claim.

6          THE COURT:    All right.  And then at that point we

7    will -- what we'll get from parties is a statement that, you

8    know, "I was -- my client was the supplier of cattle in

9    transaction #78 involving Nutritional Advances, Inc," -- or

10   whatever.  "And by virtue of Oklahoma Statute," or, "Kansas

11   statute," or whatever -- " -- we have a security interest in

12   those specific funds."

13         MS. HALL:    Yes.

14         THE COURT:    And once you receive such -- all right,

15   what about the ones that you *don't* receive any -- any claim

16   to?

17         MS. HALL:    Then I would --

18         THE COURT:    Those would be -- you would propose to

19   move those then to the operating account.

20         MS. HALL:    Yes.

21         THE COURT:    Yeah.  And then the ones that you *do*

22   have claims to, you would propose to set up a contested matter

23   for each of those.  Or can you lump them?  I guess if one

24   party is asserting that they sold cattle in several of these

25   things, you could lump those.

1    MS. HALL: Mr. -- Mr. Plourde, who represents --

2 Ross Plourde represents I think seven or eight people, and we

3 spoke yesterday, and he actually had an issue that may not

4 even be in one of these 88, and he said, "Can we just do them

5 all at once?"

6    THE COURT: Yes.

7    MS. HALL: It's the same issue on all of them.

8    THE COURT: Okay.

9    MS. HALL: And --

10    MR. PLOURDE (very loud on microphone for telephone

11 pick-up): Yes, Your Honor. Ross Plourde, and in the

12 customer in that case is Brent Kuehny, and the end purchaser,

13 Mark Hollenburger, (phonetic) has not yet paid for that -- for

14 those cattle; and, but we don't see any reason to sidetrack

15 the process just because he hasn't paid. We can still

16 continue to encourage him to pay the money over while we

17 determine whose money it is.

18    THE COURT: Okay.

19    MS. HALL: Because he's going to raise the same

20 issue for all of his clients, even though one of his clients

21 is not in these 88 payments.

22    THE COURT: All right.

23    MS. HALL: So we just agreed -- it's the same thing

24 (unclear)

25    THE COURT: Well -- and I don't have any problem

1  with -- if both sides --if both counsel agree that their

2  matters can be consolidated in any manner, I don't -- I don't

3  care.  But if anybody wants their -- thinks theirs is distinct

4  and separate and they happen to sell cattle from an estate

5  that nobody else did, for example, or whatever, that's fine.

6  I'm going to leave that initially to your discretion to

7  determine how to best lump these.

8          MS. HALL:   And --

9          THE COURT:   Or not to lump.

10          MS. HALL:   Lump or not.

11          UNIDENTIFIED MALE:   To herd.

12          MS. HALL:   To herd.

13          THE COURT:   To herd these, yeah.

14          MS. HALL:   For those parties who have already

15  raised a specific dispute to specific proceeds --

16          THE COURT:   Right.

17          MS. HALL:   -- we -- we don't want them to be

18  delayed further.

19          THE COURT:   All right.

20          MS. HALL:   So what we were going to ask, and that's

21  what I think Mr. Newbern's concern is, that he doesn't want to

22  be delayed longer by waiting until August 1st --

23          THE COURT:   Right.

24          MS. HALL:   -- so that we would set up a scheduling

25  order with him --

1          THE COURT:   You can set up a scheduling order

2    immediately on those that have already accomplished the first,

3    or passed the first stage of this process.   That sounds

4    reasonable.

5          MS. HALL:   And then the other -- the other

6    remaining issue, I believe, that Mr. Rogers and -- I'm sorry.

7    Excuse me.

8          (Pause, low-voiced conversation)

9          MS. HALL:   Mr. O'Malley from DSI tells me that in

10   some of these transactions we may not be able to identify the

11   specific producer that the cattle came from.   But we'll do our

12   best.   If we can't -- I don't -- if you think you have a claim

13   to it -- I see that you raise it anyway.

14          The last issue as Mr. Rogers and some of the other

15   parties in the case -- Mr. Donnellon -- that it will not just

16   be -- if you have a claim, it's not just through a lien or a

17   constructive trust, but you can also raise that these monies

18   are not property of the estate.   Is that --

19          MR. ROGERS:   That's certainly part of our claim,

20   too.

21          THE COURT:   Right.   But part of your claim; but

22   that was his concern, that our notice was not specific enough.

23          THE COURT:   That's fine, and I'll -- we'll -- we'll

24   incl --

25          MS. HALL:   He can raise any kind of claim, right?

```
 1            THE COURT:  We'll include that as --

 2            MR. ROGERS:   Well, any claim or interest or --

 3            MS. HALL:   Any claim or interest that you have to

 4    these proceeds.

 5            THE COURT:   Any claim or interest that you have as

 6    to these -- these monies, including the fact that the estate

 7    has no business having them, that's fine.   But not just

 8    limited to the validity of the liens.

 9            MR. DONNELLON:   I don't know if I'm out of order on

10    this, but I just think that there's one important part.  I

11    understand Mr. O'Malley is saying that in some instances of

12    the 88 producers can't be identified, which is understandable;

13    but instead of just adding one column for the producer, it

14    would be helpful, from what my industry folks tell me, to add

15    as much information as DSI has.   The number of head, whether

16    they're steers or heifers, the weights of those cattle, and

17    the location where the producer took them from.

18            If you don't have -- if DSI doesn't have the

19    information, that's certainly understandable, but to the

20    extent they have it, if that could be added in, it will

21    shortcut the process.

22            THE COURT:   All right, add an additional column on

23    those you don't have the producer, and put "Information

24    Available To The Debtor," "Known Information," or whatever,

25    that help -- that it may help the -- another party identify
```

1  them.

2         MR. DONNELLON:   And even where there are producers,

3  some producers will have three different locations of

4  pastures.  Some will have four weight, some will have six-

5  weights, some will have heifers, some will have steers.  If

6  there's -- whatever information is available we're going to

7  shortcut the process and we get involved at one time rather

8  than going back.

9         THE COURT:   Is that doable?

10        MS. HALL:   Yes, Your Honor.

11        UNIDENTIFIED MALE: Yes, Your Honor.

12        THE COURT:   That's doable?  All right.

13        MR. DONNELLON:    Thank you.

14        MR. NEWBERN:   Your Honor, on the question of

15 information with respect to helping resolve of these issues,

16 the Packers' & Stockyards' Administration, which operates

17 under federal law, has registration for Eastern's operation,

18 how they operate, what they operated in various capacities

19 that would be helpful to DSI, and it would be helpful to all

20 parties here; but we have not been able to get access to that.

21 Mr. Bowles suggested a 2004 order, but I'd like Your Honor to

22 be aware that that would be helpful for information purposes

23 for the parties present, and also for those on the phone.

24        THE COURT:   So how would we accomplish that then?

25 You say --

1          MR. NEWBERN:   I'll -- I guess I can file an order

2  -- a specific discovery order motion --

3          UNIDENTIFIED MALE:   We'll help -- (unclear)

4          MR. NEWBERN:   (unclear) with the proceeds.

5          THE COURT:   That'll be fine.

6          MR. NEWBERN:   Thank you, Judge.

7          THE COURT:   All right, so what is the time table

8  then for the parties who do not -- have already identified

9  their cattle?   And I remind those that are on the phone to

10 please put your phone on mute unless you need to address the

11 Court.

12         MS. HALL:   I don't think we've come up with a

13 specific time table, but I know that some parties would like

14 to move quickly, so I know Mr. Newbern's clients would.

15         MR. NEWBERN:   Certainly my clients are anxious to

16 move ahead.

17         MS. HALL:   We would -- we could probably either

18 develop --

19         THE COURT:   Why don't the parties just --

20         MS. HALL:   -- a scheduling order --

21         THE COURT:   -- work out a scheduling order --

22         MS. NEWBERN:   That would be fine --

23         THE COURT:   -- just communicate directly.   I'm sure

24 you'll be able to work out a reasonable scheduling order.

25         MR. BOWLES:   And just to remind, it's part of the

1 Trustee's motion (unclear) the Superior issues, (unclear)

2 taking care of Superior, and we'll talk about that separately

3 (unclear) Superior entities.

4          THE COURT:   Yes.   Superior is still separate.

5          MS. HALL:   Yes.

6          THE COURT:   Right.  Yeah.   Okay, does that --

7 does that resolve  -- or not resolve, but determine how we're

8 going to try to resolve the issues raised by this motion then?

9 Does anyone have any additional questions or comments?   Mr.

10 LaTour?

11          MR. LaTOUR:   Thank you, Your Honor.   The only

12 concern I have is that some of the issues that are being

13 raised are more over-arching issues that may require a

14 contested matter to morph into an adversary proceeding of some

15 type.  I simply wanted to alert the Court to that possibility

16 and to reserve the right to ask that that be changed, because

17 some of the factual determinations may not be possible to be

18 made within a very short time frame.  We don't know until we

19 try, but once we try if it becomes apparent that it's going to

20 take an adversary, I wanted to alert you to the possibility

21 that that could happen.

22          THE COURT:   That's fine.   We'll keep open that

23 possibility.

24          Someone was going to address the Court by phone?

25          MR. PLOURDE:   Thank you, Your Honor.   Ross Plourde.

1  I anticipate that there will be an order entered authorizing

2  the Trustee at some point to transfer some or all of that 1.6

3  million dollars over to the Trustee's general operating

4  account; and I would request that the order provide, just as a

5  safeguard, that the Trustee is directed not to transfer any

6  funds that are claimed by any party as proceeds of their

7  cattle in this contested matter.

8          THE COURT:   Yes.  For those -- it's only after

9  everyone has -- I mean, if somebody comes forward, we're

10 giving sixteen days for somebody to come forward and say they

11 disagree that these -- this 1.6 is -- has no claims against

12 it, that's -- only then will it be transferred.  So we could

13 put some language in the order that says, "These are funds

14 that no party has made a claim to."

15         MR. PLOURDE:   Yes, Your Honor.  Thank you, and I

16 only raise that because we're just going on the Trustee's

17 representations to get to that point, so --

18         THE COURT:   Okay.

19         MS. HALL:   And if someone -- Your Honor, if someone

20 does raise an objection to a specific -- and can either

21 specify exactly the point of why, you know, you're concerned

22 about the 1.6 and which payment it is, if they do raise that,

23 would we just address that at the July omnibus hearing?

24         THE COURT:   Yeah, we can address it at the July

25 omnibus hearing, and I would say you'd transfer it over the --

1  if it's just a portion of that, just leave that portion where

2  it is and transfer over the balance.  So you can write the

3  order in a way that allows you to transfer over up to 1.6,

4  assuming there's no issue -- and we'll try to resolve quickly

5  any dispute about any portion of that 1.6.

6          Okay, let's move --

7          MR. LAIRD:  Your Honor, if I -- this is David Laird

8  on behalf of People's Bank out of Coldwater, Kansas.

9          THE COURT:  Yes.

10         MR. LAIRD:  My client has a security interest in

11 funds that appear not to be on the Exhibit A, but instead

12 they're part of the interpleader action which has been

13 transferred to this Court recently; and based on the way the

14 order -- or, I'm sorry, the motion -- the notices were

15 written, we filed a sort of a peremptory objection (unclear)

16 being that we didn't want an order to be written in such a

17 manner that any funds that may be subject to an interpleader

18 action when -- if that interpleader action was over with,

19 those funds would somehow be sort of drafted into --

20         THE COURT:  No --

21         MR. LAIRD:  (unclear)

22         THE COURT:  Well --

23         MR. LAIRD:  -- property --

24         THE COURT:  I und -- I understand --

25         MR. LAIRD:  --of the estate, or subject to the --

1  subject to the bank's security interest.

2          THE COURT:    Right.  I understand you're concerned

3  about that, and I'll -- and they can include language in the

4  order that makes it clear that we're not talking about any of

5  the interpleader funds.

6          MR. NEWBERN:    Your Honor, my clients also have a

7  specific claim to funds that have been interpled in the

8  Wisconsin matter.  I didn't hear the identification of the

9  party that was talking, and that may have been part of it.

10         THE COURT:    Where -- what interpleader action were

11 you involved in?  The attorney who spoke on the phone?  And

12 please identify yourself again.

13         MR. LAIRD:    That's the Colorado interpleader

14 action.

15         THE COURT:    Okay.  All right.  Mr. LaTour.

16         MR. LaTOUR:    Your Honor, I wanted to just make sure

17 that everybody's on the same page with respect to 1.6 million,

18 because there is a little bit of an ambiguity in the finance

19 order, and I thought rather than have us come back for another

20 round of trying to figure out, I would just put it out there.

21         Paragraph 2 of the finance order indicates that cash

22 collateral can be used by the Trustee within the confines of

23 the budget, and just to state it plainly, to pay

24 professionals, okay -- and other costs in the case.

25         Paragraph  -- (pause) -- I should have had it

1  marked.  It's the paragraph referring to transfer.  If

2  somebody can help me out --

3          MS. HALL?:    Paragraph 6?

4          MR. LaTOUR:    Is that 6?  (Pause) Paragraph 6 says,

5          "Prior to the transfer of any excess cash

6          collateral, defined term, to Fifth Third,"

7  -- an event that I look forward to with great anticipation --

8          " -- or the Trustee's use of Fifth Third cash

9          collateral the Trustee will file with the Court a

10         notice."

11 I -- I do not understand why that phrasing on that second part

12 is there.  I think paragraph 2's intention all along was that

13 they could operate within the confines of the budget; and I

14 wanted, while everybody was here today to put on the table --

15 and I don't like the results because it's burning up my

16 client's money -- the fact that when the 1.6 or whatever

17 portion of it ends up in the operating account, that the

18 Trustee will be free to use it without a further notice and a

19 further round of objections with respect to the 1.6 only, and

20 not any of the other monies, not any of the interpleader type

21 stuff, et cetera, so --

22         THE COURT:    That would be the Court's

23 understanding.

24         MS. HALL:    With the exception of disbursements to

25 Fifth Third Bank.

1          MR. LaTOUR:   Yes, a --

2          THE COURT:   If there's excess.

3          MS. HALL:   Excess.

4          MR. LaTOUR:   [reading]

5          "That disbursement to Fifth Third Bank would be

6          excess cash collateral,"

7   -- and that would trigger the notice requirement at the end

8   of paragraph 6.

9          THE COURT:   That's exactly the Court's

10  understanding.   All right, let's move on then.   That gets us

11  to the fee application.

12         MS. HALL:   It does, Your Honor.   There are Items

13  6, 7, and 8 are fee applications of the Trustee's

14  professionals.   No objections were filed, and we'd ask that

15  those fees be approved.   And these are subject to the 80/20

16  withholding and interim fee apps.

17         THE COURT:   Those will be approved.

18         MR. WHARTON:   Your Honor -- ?

19         THE COURT:   Yes.

20         MR. WHARTON:   The U.S. Trustee's Office has

21  reviewed the fee applications, all three, and I'll raise some

22  informal smaller concerns, but nothing that warranted

23  objections.   I did wish to ask both the Trustee and his

24  professionals if they could make a better effort to update

25  that web page a little bit, get a little more information out

1  to the parties that can access it that way.  I think it would

2  be helpful for those who have not yet formed a Committee of

3  Unsecured Creditors because it's, at least in large part, some

4  of the claimants aren't certain if they are creditors --

5  unsecured or had claims.  And so that would, I think, be

6  helpful for smaller creditors out there to get an update on

7  the blog -- those types of things.  And I think that would be

8  quite helpful.

9          THE COURT:  Can we do that?

10         MS. HALL:  We will do that, Your Honor.

11         THE COURT:  All right.  Thank you.

12         MS. HALL:  The other two items, Your Honor, are the

13  adversary proceedings, the status conference, and a pre-trial

14  conference, and my colleague would cover those.

15         ATTORNEY: Your Honor, the -- are we going to

16  (unclear)  --

17         THE COURT:  Yes, well, hold on one -- any -- we're

18  going to now go into a discussion of the two adversary

19  proceedings, one involving Superior, and one that's entitled

20  Innovative Livestock vs. Eastern.  All those that are

21  interested in these matters are welcome to stay on and monitor

22  this discussion.  Anyone who wants to get off now is free to

23  do so.

24         MR. MASSOUGH:  Your Honor, this is John Massough

25  (unclear, beeping conference exit noise)

```
 1          THE COURT:   Wait one moment, please.  Okay.

 2          MR. MASSOUGH:   Your Honor, John Massough on behalf

 3   of Fiona Industries.   I think one -- one item that was

 4   possibly left off the agenda was a matter involving the Friona

 5   adversary proceeding and Texas interpleader that is not set

 6   for a status conference until -- until next month, but I had

 7   filed a motion to -- for the Clerk to accept the interpled

 8   funds and in that case there has been no objection to that

 9   motion.   I just wanted to (unclear) that with the Court.

10          THE COURT:   I'll grant that motion.   The -- I've

11   been informed by the Clerk's Office -- our Clerk's Office,

12   they now have the proper kind of account set up that I think

13   qualifies them to accept those funds.   So I'll be happy to

14   sign an order granting that motion.   Whether or not all the

15   Clerks in the -- who have had their fingers on this think

16   everything is in place to accomplish that, I can't promise you

17   that.   I can only do what a Judge can do, and sign orders, and

18   then it's -- goes to the higher power, the Clerks.

19          So, yes, I think we're ready to receive those funds.

20          MR. MASSOUGH:   I appreciate that, Judge.   I think

21   the one hiccup that we had conditioned to the proper account

22   being set up is the District Judge in Amarillo for the

23   Northern District of Texas entered an order because she was

24   concerned that she could not transfer funds from a District

25   Court to a Bankruptcy Court, and wanted to transfer the funds
```

1  from District Court to District Court -- it should be the

2  District Court in New Albany and then somehow get those funds

3  over to the Bankruptcy Court, and quite frankly (unclear) on

4  exactly how to do all that.

5           THE COURT:  Is that still her position or do you

6  know?

7           MR. MASSOUGH:  I'm sorry?

8           THE COURT:  Is that -- is that still her position,

9  or do you know?

10          MR. MASSOUGH:  That is still her position.  I will

11 give her an update with regard to the account.  I know she had

12 a concern about the type of account that was necessary, that

13 it wasn't set up yet.   I'll give her an update as to the

14 fact that the proper accounts are not -- are now ready to

15 receive the funds, but I still think she still has a concern

16 regarding whether or not a District Court can transfer funds

17 to the Bankruptcy Court.

18          THE COURT:  Well, now I can't -- you know, I can't

19 pretend to know whether they can or not, but I know that the

20 District Court here would probably not be real anxious to get

21 in the middle of this money transfer; but if that's the way it

22 has to be done, then I'm sure they'll figure out a way to do

23 it.

24          But I'll sign your -- I'll review your order.  I

25 mean, don't -- don't submit me an order that orders the

1   District Court Judge to transfer to the Bankruptcy Court.

2        (Laughter)

3            THE COURT:   Because I -- you know -- there's no

4   reason for me to get crossways with her, and I don't really

5   care--

6            MR. MASSOUGH:   (unclear) I think what's going to

7   happen -- what's going to probably have to happen is she's

8   going to transfer it to District Court in New Albany, and we

9   have to figure out a way to get it from there --

10           THE COURT:   All right.

11           MR. MASSOUGH:   -- (unclear) Court.

12           THE COURT:   All right, well, maybe they'll run it

13  downstairs and give it to us.  But we'll figure that out.  All

14  right.  Thank you.

15           MR. DONNELLON:   Your Honor, while we're on the

16  issue of the Friona, that interpleader -- if I may interject

17  -- there is an issue with respect to the summonses on the

18  three interpleader claims.   I'd agree to accept service of

19  process on behalf of First Bank & Trust; but it was unclear to

20  me whether there is a specific date, because we have not

21  received a certified mail service, which I'm not essentially

22  requiring, but so that we have it within a determination of

23  what the parties' answer dates are going to be.  It was my

24  understanding that our answer date was somewhere in the next

25  two weeks, but I want to make sure that while we're on the

1   record of that subject that we address that.

2           There was a motion to issue the summonses, and it

3   seems to be unclear as to actually what the procedural process

4   will be for all of the defendants in the Friona and the J&F

5   Oklahoma proceeding to have set forth their answer date.

6           MR. LeBAS:   This is David LeBas for J&M Oklahoma,

7   and I can speak as to a couple of the inquiries from the

8   vendors in this proceeding. (unclear, low level volume on

9   telephone transmission).   They've asked for, yesterday, a

10  proposal, so we (unclear) pull out the calendar and figure it

11  out.   We've all tentatively agreed on July 1 to intervene,

12  but to the extent that (unclear) debt service on other

13  parties, they have (continues talking while other speaking

14  going on)

15          THE COURT:   Is that fine with you?

16          MR. DONNELLON:   July 1 is fine for First Bank.   I

17  just wanted to make sure that we have a clear determination

18  and understanding from everyone what the date would be.

19          THE COURT:   All right.   We'll work with July 1.   I

20  mean, that's -- you know, in this current state of confusion,

21  you know, it's not likely that Court's going to default

22  anybody if they're not on the right page as to that answer

23  date; but I do want to keep it moving, so I'm happy to endorse

24  that.   Are we ready to move from Friona then, or --

25          All right, let's move into the Superior adversary.

1 | Mr. Ames.

2 | MR. AMES:   Yes, Your Honor.  If I may briefly

3 | address the status.   We filed a complaint on behalf of

4 | Superior on April 12th, and we -- the parties had agreed to a

5 | thirty-day extension.  The answer, a rather substantial

6 | answer, 69-page, was received or filed on June 20th -- just on

7 | Monday.  So we are in the process of evaluating and assessing

8 | it to see which -- how procedurally it will go forward; and

9 | frankly, today we're not prepared to discuss any substantive

10 | issues.

11 | We do anticipate there being, as part of the -- of

12 | our responsive pleadings, some form of motion for partial

13 | summary judgment which, if the Court does grant, it will

14 | eliminate some of the issues that are part of that agreement,

15 | or the -- of the answer.

16 | What I would like to do, Your Honor, is suggest that

17 | perhaps we take a couple of weeks and continue the status

18 | hearing to give us an opportunity to take a look at it and see

19 | which direction we're going to be going, because it certainly

20 | might eliminate a lot of the issues that are going to be in

21 | that very substantial pleading, and --

22 | THE COURT:   All right.

23 | MR. AMES:   And it basically follows the same

24 | direction we've been going from Day One and asking the Court

25 | to determine Superior's status as a forward contract holder,

1   swaps, derivatives, and basically the property in this case.

2   So it's not going to be anything magical or different.   It

3   will just be the procedural device that will be utilized to

4   try to bring that forward (unclear).

5           THE COURT:   All right.   Should we move this to the

6   next omnibus date then?

7           MR. TONER?:   I think that's -- makes abundance

8   sense.   And what I would say is that in that pleading you'll

9   find counterclaims that talk about our Texas interpleader, and

10  how legal issues overlap.   We agree that there are some

11  summary judgment type motions that present themselves, one of

12  which is the forward contract arguments that Your Honor is

13  familiar with.

14          Another is does the debtor have the property for

15  transactions that took place, deliveries of cattle prior to

16  this assignment of Superior?   And the other is, are there

17  legal arguments in allowing you to check over Fifth Third's

18  lien?  All three of those I think are going to end up being

19  presented in sort of a summary judgment fashion.

20          Last month Your Honor directed the folks in the

21  Friona Texas interpleader to get together in an attorneys'

22  conference on the 13th of July.   I think that's the perfect

23  opportunity to have us continue kicking around what can be

24  packaged in terms of legal issues, and then come back to you

25  at the omnibus with our recommendation.

1            THE COURT:   So you'll conference this at the

2  attorneys' conference on July the 13th.   And when's the

3  omnibus date after that?

4            MR. TONER?:   July twenty --

5            UNIDENTIFIED MALE:   July 27th, Your Honor.

6            THE COURT:   27?   Okay.

7            UNIDENTIFIED MALE:   Yes.

8            THE COURT:   So then we'll set it for the omnibus on

9  the 27th.   And I would like the parties then, at that

10 conference, as you indicate, to identify issues.   Probably you

11 can agree -- hopefully you can agree as to which are summary

12 judgment material.   And then you should -- so you should also

13 start talking about who's going to file the summary judgment,

14 or if you're going to file cross -- how are you going to

15 handle that?   And a scheduling order, a proposed scheduling

16 order as to the dispositive motions.

17            MR. TONER?:   As well as what facts can we stipulate

18 to --

19            THE COURT:   As well as --

20            MR. TONER?:   -- and just how much discovery work is

21 required.

22            THE COURT:   You're way ahead of me.

23            MR. TONER?: Thank you, Your Honor.

24            THE COURT:   I agree.   Thank you.

25            MR. AMES:   And, Your Honor, we're happy, and we

1  have been engaging in informal discovery and giving documents;

2  and if they would -- whatever requests they'd have for

3  additional documents, they could just do it informally,

4  that'll be fine.

5          MR. TONER?:   Thank you.

6          THE COURT:   All right.

7      (low-voiced discussion with Clerk)

8          THE COURT:   I think there might be some unissued

9  summonses to the -- to your --

10          MR. TONER?:   I suppose there should be summonses

11  because we're bringing in these Texas parties into the

12  Superior adversary --

13          THE COURT:   All right --

14          MR. TONER?:   And avoiding the argument about

15  failure to join indispensable parties (unclear)

16          THE COURT:   All right, so we will issue those

17  summonses.

18          MR. AMES:   Your Honor, would be possible to wait?

19  We may ask that those be suspended pending -- there may not be

20  a need for them.   Perhaps until we get through with that, if

21  we could have a stay of the issuance of summonses.   Otherwise

22  we're going to have (unclear)

23          THE COURT:   You're willing to stay it to July and

24  see where you all are?

25          MR. TONER?:   Well, see where we are, but I -- I --

1

2          THE COURT:   You're just --

3          MR. TONER?:  -- I very much predict that the Texas

4  folks will want to be part of these legal issues.

5          THE COURT:   Okay.   Let's -- we'll wait until July

6  to make that determination.   You all talk about that.

7          MR. AMES:   Thank you, Your Honor.

8          MR. TONER?:   Thank you, Your Honor.

9          THE COURT:   So we'll hold the summonses down.

10          MR. TONER?:   Okay.

11          THE COURT:   We do have summonses that have been

12  filed but not issued, is that right?  Or --

13          (Low-voiced discussion with Clerk).

14          THE COURT:   Okay.   That's good.   All right.

15  Innovative Livestock Services, et al. vs. Eastern Livestock.

16  What'S the status?

17          MS. PONADER:   Thank you, Your Honor.   That was a

18  case that originally filed in the Kansas State Court, moved to

19  the Kansas Bankruptcy Court, and is now in transfer to the

20  Southern District of Indiana.

21          The plaintiffs in those matters have interpleaded

22  funds.   They are not claiming any right to those funds as a

23  strict interpleader.   I think other than the Trustee and

24  possibly Fifth Third, and I think Superior, has a claim to

25  some of those funds.   I think those are the only relevant

1  parties, and I do think that some of the claims in the

2  Superior adversary will have overlapping issues with respect

3  to the case that has just been transferred.

4         THE COURT:   So this interpleader action -- so the

5  only parties that remain that are -- have any claim to these

6  funds are Fifth Third, debtor, and Friona?

7         MS. PONADER:   I believe that's correct.

8         MR. BOWLES?:   And Superior.

9         MS. PONADER:    And Superior.

10        THE COURT:   I mean -- I mean -- I meant Superior.

11        MS. PONADER:   Yes.

12        THE COURT:   I meant Superior.

13        MS. PONADER:   I believe that's correct, possibly

14 with one or two exceptions.  It's sort of an odd case.  It was

15 filed on behalf on two different plaintiffs, or there were two

16 pots of money.  One of the plaintiffs specifically stated that

17 Superior and other producers had a claim to certain funds.

18 That's BMG Funds.   The producers has been dismissed because

19 Superior claimed them, and those claims were assigned.

20        So with respect to the BMG Funds, yes, I believe

21 Superior, the Trustee, and Fifth Third are the only ones with

22 the claim to those funds.

23        The other one -- the Innovative Funds, the

24 interpleader plaintiff didn't know who the producers were, so

25 they didn't name any other parties.  I do think there are two

1  other potential parties that we -- maybe Superior may be one

2  of them, but quite frankly -- and two other parties who we may

3  need to bring in to assert any interest they may have in those

4  funds.

5        THE COURT:   All right, so you want to put this on

6  the same time?  Should we conference this on that same date

7  and add it to the omnibus in July then?

8        MS. PONADER:   I think that makes sense.  One thing

9  I did want to -- did want to find out is if there's going to

10 be any amended pleadings, or if we have an answer; again, with

11 sort of the odd procedural history, if we can come to some

12 agreement as to whether Superior is going to file an amended

13 pleading, or if you have set a definitive deadline to answer--

14       THE COURT:   So who's the plaintiff in this?

15       MS. PONADER:   I don't -- it's BMG and Innovative

16 Livestock Services.   They may not even be on the phone with

17 this --

18       THE COURT:   I was going to say who's representing

19 the plaintiffs in this?

20       MS. PONADER:    Mark Rondeau.

21       MR. RONDEAU (via phone):   Yes, I'm here, Your

22 Honor.

23       THE COURT:   Okay.  Well, I guess the first question

24 is do you -- do you agree with the Trustee's assessment of

25 where this stands?

1          MR. RONDEAU:    I think that's accurate, Your Honor.

2    Frankly we're not -- and haven't been from the outset --

3    absolutely sure about whose money it was.  We just knew it

4    wasn't ours, and -- and wanted the Court to set -- straighten

5    it out.  So I think that's where we are.  Frankly, writing the

6    check, we felt like we've done all we need to do.

7          THE COURT:    All right, so you want out.  You don't

8    want to participate.

9          MR. RONDEAU:    That -- that would be fine.

10          THE COURT:    Well, how -- how are we going to

11    determine whether anybody other than Superior, the Trustee, or

12    the bank have any claims on these --

13          MS. PONADER:    I believe DSI has the information on

14    who sold the cattle that were ultimately sold to Innovative;

15    and we have that list.

16          THE COURT:    Shouldn't someone sue them?  Or somehow

17    join them?

18          MS. PONADER:    Yes, and I think that would be

19    probably our intent to do that; yes.

20          THE COURT:    All right.

21          MS. PONADER:    So why don't you do that.  Add

22    whoever else you think is a party in interest; and then we'll

23    -- we'll put this -- I mean, we'll put this on the similar

24    track as the other AP.

25          THE COURT:    Maybe an agreement to July 15th to

1  assert counterclaims, cross-claims, answers.

2          MS. MOORE:   If I might, Your Honor, for Superior.

3  Because it's such a small group, and because there appears to

4  perhaps be some overlap, maybe we can just talk about this on

5  the 13th.  We had hoped -- Mr. Toner and I have talked about

6  trying to carve out any of the Superior claims as the other

7  interpleaders, hold those in abeyance, let the other folks go

8  forward with their claims, and try and do this as simply as

9  possible, at least with respect to Superior; and this might be

10  another way to --

11          THE COURT:   All right.

12          MS. MOORE:   -- skin that cat.

13          THE COURT:   I'm fine with that.  Why don't you all

14  talk on the 13th -- what was it, 13th?

15          SPEAKER:  Yes.

16          THE COURT:   That's fine.

17          MS. MOORE:   Thank you, Judge.

18          THE COURT:   Very good.   Does anyone have anything

19  else, and anything to do with cows, this morning?  Yes, Mr.

20  LaTour.

21          MR. LaTOUR:   Your Honor, just a housekeeping

22  matter.  I had submitted a 2004 motion, and I wonder if I

23  could get that order entered by the end of today.

24          THE COURT:   I'll see that that's done.

25          MR. DONNELLON:   And we joined in that just late

1  yesterday.

2      (Low-voiced conversation)

3          THE COURT:   I'll see that that's entered.  Anything

4  further?  (No response)   We're adjourned.

5          ATTORNEYS: Thank you, Your Honor.

6  (End at 11:34:20 a.m.)

7                  * * * * * * * * * * *

8          I certify that the foregoing is a true and accurate

9  transcript from the digitally sound recorded record of the

10  proceedings.

/s/ *Gloria C. Irwin*                                    7/29/2011
**GLORIA C. IRWIN**
**Certified Transcriber NJ AOC200**                                    **Date**
     **Federal  CERT #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299  1-800-471-0299**
    **FAX  609-927-9768**
**e-mail  irwingloria@comcast.net**
✔

**#10-93904**                                    **6-24-2011**