UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:

|                          |                      |
|--------------------------|----------------------|
|                          | CASE NO. 10-93904    |
| EASTERN LIVESTOCK CO., LLC |  CHAPTER 11        |
|         DEBTOR           |                      |

---

**SUPPLEMENTAL OBJECTIONS TO TRUSTEE'S
MOTION REGARDING PAYMENT OF CATTLE SALE PROCEEDS**

---

Come Bluegrass Stockyards, LLC, Bluegrass Stockyards East, LLC, Bluegrass Stockyards of Campbellsville, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Bluegrass-Maysville Stockyards, LLC, East Tennessee Livestock Center, Inc., Piedmont Livestock Company, Inc., and Southeast Livestock Exchange, LLC (collectively, the "Unpaid Sellers"), by counsel, and respectfully submit the following supplemental objections to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account [ECF No. 501] (the "Motion"):

**I.   General Information Regarding Unpaid Sellers and Cattle Proceeds**

1.      Upon information and belief, there are numerous unpaid sellers who have or will assert similar claims to these Unpaid Sellers.

2.      Upon information and belief obtained from the most recent monthly operating report (the "MOR") for June, 2011 [ECF No. 632], there remains roughly $23.7 million of cattle proceeds that have not yet been collected from the approximately 125 end-purchasers listed in the MOR. Upon further information and belief, this amount is in addition to:  (a) the $8.6 million collected since December 6, 2010 (the "Petition Date") which is the subject matter of the Trustee's Motion;

and (2) the approximately $10 million paid into and collected in Eastern Livestock Co., LLC's ("Eastern Livestock") bank account at Fifth Third Bank ("Fifth Third") from the time that Fifth Third closed the account on approximately November 2, 2010 up through the Petition Date (as reflected

by the difference in Fifth Third's state court receivership action complaint and its proof of claim).

3.      Upon information and belief, both through Eastern Livestock's ordinary-course books and records and additional documentation obtainable from other parties in interest, the Trustee and Development Specialists, Inc. ("DSI") have access to significant information detailing the exact cattle and unpaid sellers that are directly attributable to specific cattle proceeds payments (both those payments already received and those still outstanding).  It is not an unmanageable number of transactions.  Some of the parties in interest and cattle proceeds payments are currently involved in interpleader actions, and others are not yet involved in adversary proceedings.  This information is not yet fully available to all parties in interest.

4.      Many of the same factual and legal issues overlap a majority of the currently-pending adversary proceedings, in addition to being implicated in this Motion.  It is likely that similar issues will arise in what appear to be inevitable future adversary proceedings over monies owed to unpaid sellers.  Without the requirement and application of some type of overarching structure and process, it seems very likely that in excess of 100 adversary proceedings will be required for the Court to adequately determine the rights in cattle proceeds arising out of the multitude of cattle transactions involving Eastern Livestock and various unpaid sellers.

5.       Information on these Unpaid Sellers is briefly described in the attached Exhibit A by way of example.  For instance, East Tennessee Livestock Center, Inc. has a total claim of $415,930.45 arising out of six (6) separate transactions.  Three (3) of these six (6) transactions

totaling approximately $153,000.00 are involved in the Friona adversary proceeding, and the other

three totaling approximately $262,000.00 are not yet asserted in any adversary proceeding.

## II. **Rights in all Cattle Sales Proceeds must be Determined by Adversary Proceeding, not Contested Matter.**

6.     The Trustee asserts that all of the "Cattle Sales Proceeds" (as defined in the Motion and Omnibus Reply) are "property of the Estate" under 11 U.S.C. § 541. *See* Trustee's Omnibus Reply to Objections to Purchase Money Claims Report [ECF No. 564] (the "Omnibus Reply"). Assumedly, the Trustee will make similar assertions with respect to additional cattle sales proceeds that are collected in the future.

7.     The Trustee (and assumedly Fifth Third) further asserts that Fifth Third has a valid, perfected, and first-priority lien in all of the Cattle Sales Proceeds under Fifth Third's blanket UCC Article 9 security interest and its UCC-1 financing documents. *See* Motion and Omnibus Reply.  Assumedly, the Trustee and Fifth Third will make similar assertions with respect to additional cattle sales proceeds that are collected in the future.  Due to their "voluminous nature," the entirety of the lending documents between Fifth Third and Eastern Livestock are not of record and are not attached to Fifth Third's Proof of Claim [POC No. 13].

8.     These Unpaid Sellers assert that the cattle proceeds from their respective cattle are not property of the Estate under 11 U.S.C. § 541, as they are impressed with a statutory trust in accordance with the Packers and Stockyards Act, 7 U.S.C. §§ 181, *et. seq.* ("PSA"), to the extent that Eastern Livestock was acting as a "market agency" in their respective transactions.

9.     These Unpaid Sellers, as well as other unpaid sellers, assert that the cattle proceeds from their respective cattle are not property of the Estate under 11 U.S.C. § 541, as they are impressed with a prepetition constructive trust.

10.     These Unpaid Sellers, as well as other unpaid sellers, assert that the entirety of 100% of the cattle proceeds from their respective cattle are not property of the Estate because Eastern Livestock's interest in the proceeds is not 100% of the purchase price, but only its small fee or commission earned on the transaction, which is much less than the entire purchase price for any given transaction.

11.     It is fundamental bankruptcy law that the Trustee can take no greater rights than the Debtor, Eastern Livestock.  Further, it is fundamental UCC law that a secured creditor can take no greater rights than its borrower may be able to grant.

12.     It is also fundamental bankruptcy law that disputes such as those described above regarding whether cattle proceeds constitute "property of the estate," and the determinations of the validity, priority, and extent of liens or other interests in that property, must be brought by adversary proceeding unless agreed otherwise. Fed. R. Bankr. P. 7001.

**III.    The Trustee is a Fiduciary to all Parties in Interest.**

13.     It is fundamental bankruptcy law that a trustee appointed by any bankruptcy court is a fiduciary for the Estate and has obligations to treat all parties in interest fairly.  *See, e.g., In re Moulded Prod., Inc.,* 474 F.2d 220 (8th Cir. 1973) (*citing Wolf v. Weinstein*, 372 U.S. 633 (1963)).

14.     One of the most important functions of a fiduciary acting on behalf of a bankruptcy estate is to keep creditors informed.  *See, e.g., In re Modern Office Supply, Inc.*, 28 B.R. 943 (Bankr. W.D. Okla. 1983).  "Transparency" is a key ingredient to all Chapter 11 cases.

15.     The Chapter 11 process is created to facilitate economies, informal negotiations, and consensual arrangements.  *See, e.g., In re Barrington Oaks, Gen. P'ship*, 15 B.R. 952 (Bankr. D. Utah 1981).

16.     From the Petition Date through April 30, 2011, the Trustee's professionals have collectively billed the Estate approximately $1.5 million (roughly $650,000 to the Trustee's general counsel, and roughly $850,000 to the Trustee's financial consultants). These amounts have been allowed as administrative claims, on an interim basis, to be paid from unencumbered property of the Estate and from an agreed "carve-out" from Fifth Third's collateral of up to $4 million. *See, e.g.,* [ECF Nos. 604, 605]. It is anticipated that the accrued additional amounts from May 1, 2011 to the present are likewise significant. The MOR through June 30, 2011 filed on July 26, 2011 [ECF No. 632], states that professional fees to date are in excess of $2.5 million.

17.     While the Estate has been billed and now has an allowed claim for over $850,000 worth of work presumably for forensic accounting and other collection of fundamental factual information, this fundamental factual information is not yet informally available to parties in interest as of this date. Although the spreadsheet and background information that DSI has made available online with respect to the Trustee's Motion is helpful, it is not sufficient to allow these Unpaid Sellers to fully determine whether the sums collected by the Trustee and at issue in the Motion are proceeds of these Unpaid Sellers' cattle. The biggest problems with this information are that the documentation behind the various transactions listed in the spreadsheet is either not sufficient to allow these Unpaid Sellers to determine whether their cattle were in these transactions, and/or it is not organized in such a manner as to indicate which cattle were a part of a given transaction (e.g. an invoice for 120 cattle, when the load at issue is only 60, and the cattle came from multiple sellers—does not, alone, allow an unpaid seller to determine which of its cattle make up the shipment).

18.     For these Unpaid Sellers to be able to make a definitive decision with respect to the amounts at issue in the Motion, the Unpaid Sellers need additional information and/or an explanation of documents already provided by DSI. They will require similar information with regard to any

future amounts that the Trustee collects and intends to distribute by future motion.  Although the undersigned counsel notes that she has recently spoken to Trustee's counsel and a representative of DSI, who both indicated that they would work with these Unpaid Sellers in this regard to provide additional information, the additional information needed for the Unpaid Sellers to fully protect their rights in the Cattle Sales Proceeds at issue in the Motion will not be available before the deadline by which the Unpaid Sellers must file their Supplemental Objections.

19.    At a minimum, the parties must have documentation to allow for tracing the origins of cattle and for determining which cattle make up what portion of a combined load.  These Unpaid Sellers further require information regarding Eastern Livestock's business operations so that a determination can be made with respect to Eastern Livestock's interests in the cattle, as a market agency, dealer, or in some other capacity.  By way of example, the items necessary to make this determination may include, but are not limited to:  contracts between Eastern Livestock and the end-buyers of cattle; invoices that Eastern Livestock billed to its customers relating to all cattle transactions which will show the fees or commissions that Eastern Livestock charged its customers; documentation as to the original source of the cattle on each such invoice; copies of invoices and all other documents relating to cattle that Eastern Livestock purchased on its own behalf, if any; trucking documents; and such other documents arising from both sides of a given transaction.

20.    There are now seven (7) pending adversary proceedings related to Eastern Livestock's bankruptcy, many of which involve the same or similar issues as are created by the Motion.  This is only the beginning, as there are numerous other cattle sale transactions to address that are not yet the subject of an adversary proceeding.  There are numerous unpaid sellers, many of whom are small farmers, ranchers, and livestock auction houses who cannot afford to spend $850,000, or $650,000, or other such similar sums to engage in protracted formal discovery.  There

is not yet any committee formed who might represent these Unpaid Sellers or other similar parties.

With all due respect to the Trustee and his professionals, much more is required than simple blanket

one-line                                             statements                                             that

the Trustee has decided that the bank has priority on 100% of all funds collected from cattle sales

[*See* Motion], and by filing motions that are so obviously fundamentally flawed under Fed. R.

Bankr. P. 7001.  Right or wrong, these types of actions are perceived by other parties in interest as

not being made by the type of trustee who is acting transparently and neutrally with respect to all

constituencies of the Estate as is required by the Bankruptcy Code.  The Motion should be denied

until factual information is made available to all parties in interest, necessary to make determinations

of Eastern Livestock's rights as described herein.

**IV.  The First Issue to be Addressed Should be a Determination Regarding which Sums are Property of the Estate.**

21.     To date, the Trustee has not been proactive in suggesting some overall "process" to

ease the burdens on the Court and the parties.  One suggestion has been to start first with making

factual and legal determinations about what amounts are or are not "property of the Estate."  The

issues involving Eastern Livestock's operations under the PSA must be addressed in some fashion,

as these are totally overarching issues which affect every single party in interest in this case.

**A.  Statutory Trust Funds for Cattle Proceeds where Eastern Livestock Acted as Market Agency.**

22.     It is undisputed that Eastern Livestock is required by law to comply with the PSA.

There has been little discussion to date of the PSA's impact on the issues in this case.

23.     Upon information and belief, Eastern Livestock acted as both a "market agency" and

as a "dealer" as those terms are defined in the PSA at 7 U.S.C. §§ 201(c) and (d).  This is a factually

intensive and extremely important distinction, and the Trustee has apparently intentionally glossed

over this key issue, summarily stating that Eastern Livestock acted as a "dealer" with respect to the many thousands of transactions that it conducted in its day-to-day affairs.  [*See* Motion, Omnibus Reply].   How an independent Trustee can make such a bald assertion is troubling in the face of all the PSA-related case law to date and the important factual distinctions which exist.

24.     Eastern Livestock is required by law to comply with the PSA, and the filing of its bankruptcy does not impact the applicability of the PSA on a continuing basis, prepetition and postpetition, to both Eastern Livestock and the Trustee.  *See* 28 U.S.C. § 959.

25.     The Trustee has no rights greater than those of Eastern Livestock, and he is likewise bound by the PSA in this particular Chapter 11 proceeding.

26.     The United States Department of Agriculture ("USDA"), acting by and through the Grain Inspection Packers and Stockyards Administration ("GIPSA"), has enacted regulations under the PSA which likewise are binding upon Eastern Livestock and the Trustee.  These regulations are found in 9 C.F.R. Chapters 201 and 203.

27.     All proceeds from cattle sales payable to Eastern Livestock while it acted as a "market agency" selling on commission are "trust funds" pursuant to the express language of  9 C.F.R.

§§ 201.39 and 201.42 and, therefore, do not constitute property of the Estate of Eastern Livestock in accordance with 11 U.S.C. § 541.  *See* 9 C.F.R. § 201.42(a) ("Payments for livestock are trust funds.  Each payment that a livestock buyer makes to a market agency selling on commission is a trust fund.  Funds deposited in custodial accounts are also trust funds.").

28.     The PSA is remedial legislation which is to be construed liberally so as to effectuate its purposes.  *Bowman v. U.S. Dept. of Agriculture*, 363 F.2d 81 (5th Cir. 1966).

29.     One of the primary purposes of the PSA and its accompanying regulations is to protect the welfare of the public by assuring that sellers who are customers of market agencies and dealers are not victims of unfair trade practices.  *See, e.g., In re Farmers & Ranchers Livestock Auction, Inc.*, 46 B.R. 781 (Bankr. E.D. Ark. 1984).

30.     Likewise, a purpose of the PSA is to ensure the proper handling of shippers' funds and proper transmission to sellers, including prompt payment.  The PSA is designed to prevent potential injury to sellers by stopping unlawful activities at their incipiency.  *Bowman v. USDA*, 363 F.2d 81 (5th Cir. 1966); *see also, Van Wyk v. Bergland*, 570 F.2d 701 (8th Cir. 1978) (One purpose of the PSA is to assure fair trade practices to safeguard farmers and ranchers against recovering less than the fair value of their livestock.  Timely payment in a livestock purchase prevents the seller from being forced, in effect, to finance the transactions); *In re Petersen*, 51 B.R. 486 (Bankr. D. Kan. 1985) (One purpose of the PSA is to ensure proper handling of livestock shippers' funds and their proper transmission to shippers); *Rowse v. Platte Valley Livestock*, *Inc.*, 604 F.Supp. 1463 (D. Neb. 1985) (citing *Donahue,* 59 F.2d 1019 (8th Cir. 1932) (one purpose of the PSA is to "protect the owner and shipper of livestock, and to free him from the fear that the channel through which his product passed, through discrimination, exploitation, overreaching, manipulation or other unfair practices, might not return to him a fair return for his product.").

31.     Furthermore, and most directly on point, one fundamental purpose of the PSA "is to prevent a market agency from using the trust account to finance its own operations."  *In re Mid-South Order Buyers, Inc.* 315 N.W.2d 229, 235 (Neb. 1982).

32.     It appears to be undisputed by all parties in interest that Eastern Livestock committed numerous violations of the PSA and numerous deceptive practices under the PSA.  The USDA instituted administrative proceedings to that effect in November, 2010.  *See* attached <u>Exhibit B</u>.  The

Secretary of Agriculture has alleged that Eastern Livestock engaged in business as a dealer and as a market agency.

33.    In addition to other "deceptive" violations under the PSA, a market agency or dealer can be suspended from operating if GIPSA determines that the covered party is insolvent.  7 U.S.C. § 204.  "Insolvency" is defined as a situation where current liabilities exceed current assets, as those terms are defined under the PSA and related regulations.  *Bowman v. U.S. Dept. of Agriculture*, 363 F.2d 81 (5th Cir. 1966); 9 C.F.R. § 203.10.

34.    A market agency which does not maintain custodial accounts for trust funds which are separate from its own accounts acts in violation of the PSA.  7 U.S.C. §§ 213, 221; *Bowman*, *supra* (market agency violated PSA by not maintaining custodial accounts separate from own accounts); *Rowse v. Platte Valley Livestock, Inc.*, 604 F.Supp. 1463 (D. Neb. 1985) (conversion or commingling of trusts funds is an unjust practice under the PSA, and proceeds of cattle sales are trust funds in the hands of a market agency under 9 C.F.R. § 201.42).

35.    Failure to maintain adequate and accurate books and records is also a ground for the USDA to seek to revoke operations under PSA.  7 U.S.C. § 221.

36.    The decided case law under the PSA and the accompanying regulations is abundantly clear that cattle sale proceeds payable to a market agency selling on commission are impressed with a "custodial" nature, are held in a fiduciary capacity, and are impressed with an express statutory trust for the payments for cattle passing through the market agency's hands.  *See, e.g.*, the following:

      a.    *Bowman v. U.S. Dept. of Agriculture*, 363 F.2d 81 (5th Cir. 1966) (funds which market agency received from sale of livestock were fiduciary accounts and constituted trust funds under the PSA).

      b.    *South Central Livestock Dealers, Inc. v. Sec. State Bank*, 551 F.2d 1346 (5th Cir. 1977) (without discussion of PSA, court held that funds from a feedlot account were held in a

fiduciary nature and overruled directed verdict in favor of a bank. Unpaid sellers had sued bank for wrongful offset of custodial funds).

c. *In re Matheson*, 10 B.R. 652 (Bankr. S.D. Ala. 1981) (9 C.F.R. § 201.42 "clearly expresses" the intent of the Secretary of Agriculture to place the stockyard owner, market agency and/or dealer in a fiduciary position by declaring that funds received as payment for livestock sold are a trust fund and such funds are to be maintained in an account designated as a custodial account. In accordance with 9 C.F.R. § 242.02 [sic] it is a direct violation to use the custodial funds for anything other than payments to sellers and costs associated with the sale).

d. *In re Farmers and Ranchers Livestock Auction, Inc.*, 46 B.R. 781 (Bankr. E.D. Ark. 1984) (in holding that 11 U.S.C. § 362(b) did not stay PSA administrative proceedings, court discussed 9 C.F.R. § 201.42, stating that "custodial account" is to be maintained to collect all proceeds of livestock to be paid to the consigner or seller of the livestock, and such amounts are custodial funds and are "trust" funds).

e. *In re Petersen* 51 B.R. 46 (Bankr. D. Kan. 1985) (custodial funds are trust funds designed to safeguard proceeds of livestock against losses suffered in instances of insolvency. Clearly the intent of the Secretary was to place the stockyard operator in a fiduciary position. A statutory trust was created by the Act).

f. *Rowse v. Platte Valley Livestock, Inc.* 604 F.Supp. 1463 (D. Neb. 1985) (proceeds from cattle sales are trust funds under 9 C.F.R. § 201.42. They may not be offset by a bank asserting a security interest because of the trust nature of the proceeds).

37.     Therefore, in accordance with the express statutory language, the express regulatory provisions, and the majority position of decided case law under the PSA, the cattle proceeds payable to Eastern Livestock, either received by Eastern Livestock prepetition, received by the Trustee postpetition, or still held by third parties for eventual payment, are "trust funds" held <u>solely</u> for the respective unpaid seller for those specific cattle proceeds, in those particular situations where

Eastern Livestock was operating as a "market agency" receiving a "commission" for its services. The Motion is premature, and it should be denied in its entirety until the facts are shown and the law established.

**B.**   **Eastern Livestock's "Rights" in the Cattle Sale Proceeds.**

38.   Both the Trustee and Fifth Third apparently take the position that Eastern Livestock is now entitled to 100% of the total purchase price for the many outstanding transactions still at issue, involving these and other unpaid sellers.  No one has provided any factual information to support this allegation, which has only been made in the most conclusory of fashions thus far.

39.   The factual differences in the many sales transactions are key, and they must be proven with respect to each separate transaction.  Where Eastern Livestock is indeed shown to have been acting as a "dealer," and it is PROVEN, by evidence, that Eastern Livestock was buying and selling cattle <u>on its own behalf</u>, then the arguments and rights will be different from those transactions where Eastern Livestock was buying and selling as a market agency, a clearing agency, a broker, and/or an order-buyer, acting on behalf of the ultimate end-buyer for a commission or fee. The invoicing from both sides of the transaction, the trucking records, and Eastern Livestock's internal books and records will begin to show how each transaction was conducted, as well as the historic dealings between Eastern Livestock and the given parties.  The Trustee cannot act as an independent fiduciary with respect to all parties and, at the same time, allege that Eastern Livestock acted solely on its own behalf in 100% of its cattle sales transactions, buying and selling cattle for its own account, because it is clear that this is simply not true.

40.   It is clear under established UCC Article 9 law that Fifth Third's lien cannot attach to assets in which Eastern Livestock has insufficient "rights in the collateral" to grant such a lien, in accordance with UCC Section 9-203.  *See, e.g, In re A&S Livestock, Inc,* 2011 WL 2144567 (Bankr.

W.D. Ky. 2011) (citing *Continental Grain v. Brandenburg*, 587 N.W.2d 196 (S.D. 1998) (a debtor who contracted to "background" cattle did not have "rights" in the cattle for bank's lien to attach).

41.     While the issues are going to be factually intensive, and will differ on a case by case basis, these are no grounds upon which to make blanket and bald assertions that solely favor Fifth Third's entitlement to 100% of cattle transaction proceeds, when the facts do not support this outcome. Eastern Livestock is not entitled to 100% of the sales proceeds when it was acting as a broker earning only a commission on the sale. Eastern Livestock cannot pledge assets that it does not have. The Motion is premature, and it should be denied in its entirety until the evidence is presented and these legal issues are decided. These Unpaid Sellers assert their respective rights to have evidence presented on their transactions to be able to determine the nature of Eastern Livestock's rights therein on a transaction by transaction basis.

**V.  Denial of Trustee's Motion Pursuant to 11 U.S.C. § 502(d).**

42.     Neither the Trustee nor Fifth Third has yet explained the portion of Fifth Third's claim which arises from its depository relationship as opposed to its lending relationship with Eastern Livestock. In its Complaint filed in the Ohio Court of Common Claims on November 9, 2010, Fifth Third alleged that as of November 2, 2010, when Fifth Third froze Eastern Livestock's depository accounts, Fifth Third had an outstanding claim of at least $13 million, if not more, arising from overdrafts in the accounts. [Case No. A1010267]. Thereafter, in its Proof of Claim [POC No. 13] filed to represent its balance due at the Petition Date, Fifth Third alleged that its claim arising from the overdraft was only approximately $2.7 million as of the Petition Date. Therefore, upon information and belief, Fifth Third appears to have collected and applied to its unsecured overdraft claims the funds which were deposited in Eastern Livestock's account in excess of $10 million between November 2, 2010, when it froze the account, and the Petition Date, December 6, 2010. No

accounting has ever been made of these funds, and whether these amounts are wrongfully applied "trust funds" or cash proceeds to which Eastern Livestock lacked an interest is also unknown at this time.

43.    If Fifth Third wrongfully offset custodial/trust funds or funds not owned by Eastern Livestock, or even rightfully offset non-custodial funds owned by Eastern Livestock on the eve of the filing, then it seems fundamental that there appear to be potential issues and avoidance claims against Fifth Third in excess of $10 million. This may be completely innocent, but it is a red flag that no one has addressed. Until these issues are sorted out, no proceeds can be distributed to Fifth Third or to the Trustee's operating account as Fifth Third's alleged cash collateral, pursuant to 11 U.S.C. § 502(d).

WHEREFORE, these Unpaid Sellers respectfully request that the Court:

(a)    Deny the Motion, without prejudice to being brought at such later time as the facts are proven on a transaction by transaction basis;

(b)    Order and compel the Trustee to propose simplified processes for informal factual information sharing, to and including proposed stipulations of fact which would be supported with informal information provided by the Trustee/DSI about each transaction at issue involving cattle proceeds. To date, insufficient information is available to the parties in interest with regard to Eastern Livestock's books and records and a rudimentary understanding of its day-to-day affairs. Parties in interest are entitled to fundamental financial information regarding Eastern Livestock's affairs, and it should not require Fed. R. Bank. P. 2004 exams to get access to same in a Chapter 11 proceeding, especially one with an independent Trustee;

(c)    Initially address the issues involving which sums are property of the Estate and which sums are not by addressing the factual issues involving Eastern Livestock's operations as a "market

agency" or broker acting on commission, as opposed to a "dealer" buying and selling on its own

behalf.  The amounts of money at issue will be dramatically affected by this fundamental factual

issue, as will the rights of Fifth Third and all other parties in interest.  There is no need to force small

parties in interest to engage in protracted litigation on esoteric legal issues  if cattle proceeds do not

belong to Eastern Livestock or the Estate; and

      (d)    Grant these Unpaid Sellers such other and further relief as the Court deems just and

proper.

      Respectfully submitted,

      DELCOTTO LAW GROUP PLLC

      /s/ Laura Day DelCotto, Esq.
      Amelia Martin Adams, Esq.
      200 North Upper Street
      Lexington, KY  40507
      Telephone:  (859) 231-5800
      Facsimile:  (859) 281-1179
      ldelcotto@dlgfirm.com
      aadams@dlgfirm.com
      COUNSEL FOR THESE UNPAID SELLERS

## CERTIFICATE OF SERVICE

      In addition to the parties who will be served electronically by the Court's ECF System, the

undersigned certifies that a true and accurate copy of the foregoing was served by first-class U.S. mail,

postage prepaid, and/or electronic mail on August 1, 2011 on the parties listed below:

| | |
|---|---|
| David L. Abt. | Jerald I. Ancel |
| davidabt@mwt.net | Jeffrey J. Graham |
| | jancel@taftlaw.com |
| John W. Ames | jgraham@taftlaw.com |
| jwa@gdm.com | krussell@taftlaw.com |
| shm@gdm.com | ecfclerk@taftlaw.com |
| tlm@gdm.com | |
| rtowbridge@kslaw.com | Christopher E. Baker |
| | cbaker@hklawfirm.com |

T. Kent Barber
kbarber@dlgfirm.com
dlgecf@dlgfirm.com
dlgecfs@gmail.com

C. R. Bowles, Jr.
crb@gdm.com
shm@gdm.com

Lisa Koch Bryant
courtmail@fbhlaw.com

James M. Carr
james.carr@bakerd.com
patricia.moffit@bakerd.com

John R. Carr, III
jrciii@acs-law.com
sfinnerty@acs-law.com

Deborah Caruso
dcaruso@daleeke.com
lharves@daleeke.com
mthomas@daleeke.com

Bret S. Clement
bclement@acs-law.com
sfinnerty@acs-law.com

Kirk Crutcher
kcrutcher@mcs-law.com
jparson@mcs-law.com
cmarshall@mcs-law.com

Laura Day DelCotto
ldelcotto@dlgfirm.com
dlgecf@dlgfirm.com
dlgecfs@gmail.com

Dustin R. DeNeal
Dustin.deneal@bakerd.com
Patricia.moffit@bakerd.com

David Alan Domina
dad@dominalaw.com

KKW@dominalaw.com
efiling@dominalaw.com

Daniel J. Donnellon
ddonnellon@ficlaw.com
knorwich@ficlaw.com

Jesse Cook-Dubin
jcookdubin@vorys.com
vdarmstrong@vorys.com

Trevor L. Earl
tearl@rwsvlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Sandra D. Freeburger
sfreeburger@dsf-atty.com
smattingly@dsf-atty.com

Terry E. Hall
terry.hall@bakerd.com
sharon.korn@bakerd.com
sarah.herendeem@bakerd.com

Joseph H. Hogsett
Jeffrey L. Hunter
Jill Z. Julian
Jill.Julian@usdoj.com
Jeff.Hunter@usdoj.com

John David Hoover
jdhoover@hooverhull.com

John Huffaker
john.huffaker@sprouselaw.com
lynn.acton@sprouselaw.com
rhonda.rogers@sprouselaw.com

James Bryan Johnston
bjtexas59@hotmail.com
bryan@ebs-law.net

Todd J. Johnston
tjohnston@mcjllp.com

Edward M. King
tking@fbtlaw.com
dgioffe@fbtlaw.com

James A. Knauer
jak@kgrlaw.com
hns@kgrlaw.com

Theodore A. Konstantinopoulos
ndohbky@jbandr.com

Randall D. LaTour
rdlatour@vorys.com
khedwards@vorys.com

David L. LeBas
dlebas@namanhowell.com
koswald@namanhowell.com

Elliott D. Levin
robin@rubin-levin.net
edl@trustesolutions.com
atty_edl@trustesolutions.com

Kim Martin Lewis
kim.lewis@dinslaw.com
lisa.geeding@dinslaw.com
patrick.burns@dinslaw.com

Karen L. Lobring
lobring@msn.com

John Hunt Lovell
john@lovell-law.net
sabrina@lovell-law.net

John Frederick Massouh
john.massouh@sprouselaw.com
Michael W. McClain
mike@kentuckytrial.com

Kelly Greene McConnell
lisahughes@givenspursley.com

William Robert Meyer, II
rmeyer@stites.com

James E. McGhee, III
mcghee@derbycitylaw.com

Allen Morris
amorris@stites.com
dgoodman@stites.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com
ecf@crowedunlevy.com
donna.hinkle@crowedunlevy.com
karol.brown@crowedunlevy.com

Walter Scott Newbern
wsnewbern@msn.com

Matthew J. Ochs
matt.ochs@moyewhite.com
kim.maynes@moyewhite.com

Ross A. Plourde
ross.plourde@mcafeetaft.com
erin.clogston@mcafeetaft.com

Wendy W. Ponader
Wendy.ponader@bakerd.com
Sarah.henderson@bakerd.com

Timothy T. Pridmore
tpridmore@mcjllp.com
lskibell@mcjllp.com

Susan K. Roberts
skr@stuartlaw.com
lbt@stuartlaw.com

Mark A. Robinson
mrobinson@vhrlaw.com
dalbers@vhrlaw.com

Jeremy S. Rogers
Jeremy.Rogers@dinslaw.com

Joyce.jenkins@dinslaw.com

John M. Rogers
johnr@rubin-levin.net
susan@rubin-levin.net

Ashley S. Rusher, Esq.
asr@blancolaw.com

Ivana B. Shallcross
ibs@gdm.com

Thomas C. Scherer, Esq.
tscherer@binghammchale.com

William E. Smith, III
wsmith@k-glaw.com

Robert K. Stanley
Robert.stanley@bakerd.com

Meredith R. Thomas
mthomas@daleeke.com
kmark@daleeke.com

John M. Thompson
john.thompson@crowedunlevy.com
jody.moore@crowedunlevy.com
donna.hinkle@crowedunlevy.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Stephen A. Weigand
sweigand@ficlaw.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

Sean T. White
swhite@hooverhull.com

Jessica E. Yates
jyates@swlaw.com
edufficy@swlaw.com

James T. Young
james@rubin-levin.net
ATTY_JTY@trusteesolutions.com
kim@rubin-levin.com
lemerson@rubin-levin.com

I further certify that on August 1, 2011, a copy of the foregoing was mailed by first-class U.S. mail, postage prepaid and properly addressed, to the following:

Bovine Medical Associates, LLC
1500 Soper Road
Carlisle, KY 40311

National Cattlemen's Beef Association
c/o Alice Devine
6031 SW 37th Street
Topeka, KS 66610

/s/ Laura Day DelCotto, Esq.
COUNSEL FOR THESE UNPAID SELLERS

Z:\Clients\ELC-Gibson\Eastern Livestock Bkcy IN 10-93904\Pleadings\Obj T'ee Mot to Dist Funds (Supp) 20110801.doc

# Exhibit A

## Bluegrass Stockyards, LLC - POC No. 219

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/19/2010 | TBD | 551 | 80 | 51,097 | $448.65 (short paid) | N/A | N/A | N/A | TBD | TBD | None |
| 11/1/2010 | TBD | TBD | 262 | 150,295 | $156,086.35 | N/A | N/A | N/A | TBD | TBD | None |
| 11/1/2010 | TBD | 544 | 95 | 51,372 | $55,635.88 | N/A | N/A | N/A | TBD | Friona Industries | None |
| 11/1/2010 | TBD | 69 | 50,064 | $50,179.14 | N/A | N/A | N/A | TBD | Friona Industries | None | None |
| 11/1/2010 | TBD | 548 | 78 | 47,363 | $43,920.18 | N/A | N/A | N/A | TBD | Friona AP | None |
| 11/1/2010 | TBD | 90 | 48,280 | $45,753.52 | N/A | N/A | N/A | TBD | Friona Industries (20 head of heifers) | None | None |
| 11/2/2010 | TBD | 549 | 128 | 75,255 | $75,003.45 | N/A | N/A | N/A | TBD | Friona AP | None |
| 11/2/2010 | TBD | 549 | 90 | 45,003.45 | $45,003.45 | N/A | N/A | N/A | TBD | Friona AP | None |
| 11/2/2010 | TBD | 72 | 47,883 | $49,176.37 | N/A | N/A | N/A | TBD | Friona AP | None | None |
| 11/2/2010 | TBD | 610 | 49,797 | $50,563.87 | N/A | N/A | N/A | TBD | TBD | None | None |
| 11/2/2010 | TBD | 616 | 56 | $60,563.87 | N/A | N/A | N/A | TBD | TBD | None | None |
| 11/3/2010 | TBD | N/A | Yardage | $3,750.00 | N/A | N/A | N/A | TBD | TBD | None | None |
| **TOTAL** | | | | | **$527,817.26** | | | | | | |

## Bluegrass South Livestock Market, LLC - POC No. 216

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/29/2010 | TBD | TBD | 4 | 2,386 | $2,149.21 | N/A | N/A | N/A | - | TBD | None |
| 10/29/2010 | TBD | TBD | 328 | 262,530 | $268,105.60 | 124990 | 11/1/2010 | $268,105.60 | - | Part to Doug Sunderman (?) | None |
| 11/1/2010 | TBD | TBD | 16 | 10,150 | $9,733.53 | 124873 | 10/29/2010 | $189,920.99 | - | - | None |
| **TOTAL** | | - | | | **$279,988.34** | | | **$268,105.60** | | | |

## Bluegrass Stockyards of Richmond, LLC - POC No. 217

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2010 | TBD | TBD | 201 | 172,795 | $181,440.99 | N/A | N/A | $520.00 | TBD | Part to Doug Sunderman (?) | None |
| **TOTAL** | | - | 201 | 172,795 | **$181,440.99** | - | - | **$181,440.99** | | | |

## Bluegrass Stockyards East, LLC - POC No. 220

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/28/2010 | TBD | TBD | 38 | 30,195 | $26,796.22 | N/A | N/A | N/A | TBD | Part to Broughton Cattle (?) | None |
| **TOTAL** | | - | 38 | 30,195 | **$26,796.22** | | | **$0.00** | | | |

## Bluegrass Stockyards of Campbellsville, LLC - POC No. 221

| Sale Date | Ship Date | Lot or Invoice No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2010 | TBD | TBD | 174 | 111,895 | $120,742.01 | 124792 (part of pmt for below sale) | 10/28/2010 | $140,369.00 | TBD | Lueken Dairy Farm (Birdseye, IN - 59 head) | None |
| 10/30/2010 | TBD | Inv. 52910 | 92 | 62,600 | $60,383.82 | 124799 (part of pmt for above sale) | 11/1/2010 | $40,765.99 | TBD | TBD (part may be to Lueken Dairy-see above) | None |
| 11/3/2010 | TBD | 7 | 1,385 | $1,431.80 | 125026 | 11/1/2010 | $1,431.80 | TBD | Part to Gary Robinson (?) | None | None |
| 11/3/2010 | TBD | 129 | 75,130 | $76,173.87 | N/A | N/A | N/A | TBD | Part to Gary Robinson (?) | None | None |
| 11/3/2010 | TBD | 37 | 27,410 | $24,444.09 | N/A | N/A | N/A | TBD | Part to Broughton Cattle (?) | None | None |
| **TOTAL** | | | | | **$283,175.59** | | | **$182,566.79** | | | |

## Bluegrass-Maysville Stockyards, LLC - POC No. 218

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/26/2010 | TBD | TBD | 18 | 10,030 | $9,070.40 | 124660 | 10/27/2010 | $9,070.40 | TBD | TBD | None |
| 11/22/2010 | TBD | 45 | 27,830 | $26,761.59 | N/A | N/A | N/A | TBD | TBD | None | None |
| **TOTAL** | | | | | **$35,831.99** | | | **$9,070.40** | | | |

# Exhibit A (cont'd)

### East Tennessee Livestock Center, Inc. - POC No. 172

| Sale Date | Ship Date | Lot No. Invoice No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/20/2010 | 10/25/2010 | Video Lots 1,2 Inv. 295358 | 138 | 98,409 | $101,755.35 | 123391 | 10/26/2010 | $101,755.35 | TBD | TBD | None |
| 10/22/2010 | TBD | TBD | 200 | 145,230 | $145,824.73 | 123212 | 10/25/2010 | $145,749.73 | TBD | None | None |
| 10/27/2010 | TBD | TBD | 30 | 13,875 | $14,886.20 | 124745 | 10/28/2010 | $14,886.20 | TBD | None | None |
| 11/1/2010 | TBD | Inv. 295475 | 57 | 49,050 | $50,526.41 | N/A | N/A | N/A | East-West Trucking Co. | Cactus Feeders (Ulysses, KS) | Cactus AP |
| 10/27/2010 | 11/1/2010 | TBD Inv. 295475 Video Lot 6 Inv. 295476 | 66 | 48,417 | $52,600.23 | N/A | N/A | N/A | | Fiona Industries (Amarillo, TX) | Fiona AP |
| 10/28/2010 | 11/2/2010 | | 65 | 48,976 | $50,337.53 | N/A | N/A | N/A | | Fiona Industries (Amarillo, TX) | Fiona AP |
| **TOTAL** | | | | | **$415,930.45** | | | **$262,391.28** | | | |

### Piedmont Livestock Company, Inc. - BMC Group POC No. 317

| Sale Date | Ship Date | Invoice No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/22/2010 | 10/23/2010 | 7519 | 177 | 149,265 | $164,671.12 | 123191 | 10/25/2010 | $164,671.12 | Nathan T. Deaton Trucking, LLC | Kuner Feedlot (Kersey, CO) | None |
| 10/22/2010 | TBD | 7526 | 60 | 50,665 | $53,817.98 | 123197 | 10/25/2010 | $53,817.98 | Weiss Transport | Kuner Feedlot (Kersey, CO) | None |
| 10/23/2010 | TBD | 7528 | 81 | 50,615 | $53,386.63 | 123197 | 10/25/2010 | $53,386.63 | Ike's Trucking, Inc. | Lueken Dairy Farm (Birdseye, IN) | None |
| 10/27/2010 | 10/27/2010 | 7533 | 57 | 50,660 | $50,153.40 | 124906 | 10/28/2010 | $50,153.40 | Hollago Trucking | Five Rivers Feed Yard (Yuma, CO) | None |
| 10/27/2010 | - | 7535 | 59 | | $4,219.90 | N/A | N/A | N/A | freight cost for 57 head above | - | - |
| 10/28/2010 | 10/28/2010 | 7537 | 63 | 49,040 | $49,178.55 | N/A | N/A | N/A | Johnmeyer Cattle Co., Inc. | J & F Oklahoma Holdings, Inc. | J&F AP |
| **TOTAL** | | | | | **$365,407.48** | | | **$312,069.43** | | | |

### Southeast Livestock Exchange, LLC - POC No. 179

| Sale Date | Ship Date | Lot No. | No. of Head | Total Pay Weight | Sale Amount | Returned Check No. | Returned Check Date | Returned Check Amount | Trucking Company | Believed End Yard (if known) | Action Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/22/2010 | 11/1/2010 | 259 | 65 | 48,471 | $53,318.10 | 123183 | 10/25/2010 | $53,318.10 | TBD | Atkinson Livestock (IL) | None |
| 10/22/2010 | 11/2/2010 | 243 | 73 | 48,824 | $65,378.73 | 123195 | 10/25/2010 | $110,365.59 | Ike's Trucking, Inc. | Atkinson Livestock (IL) | None |
| 10/22/2010 | TBD | 240 | 81 | 47,716 | $54,433.75 | See check above | See check above | See check above | Ike's Trucking, Inc. | Atkinson Livestock (IL) | None |
| 10/25/2010 | TBD | 191 | 77 | 47,040 | $52,471.00 | 123586 | 10/26/2010 | $104,022.02 | TBD | Yuma Feedlot (CO) | None |
| 10/26/2010 | TBD | 284 | 71 | 50,392 | $51,551.02 | See check above | See check above | See check above | Eastern Trucking | Yuma Feedlot (CO) | None |
| 10/25/2010 | TBD | 371 | 115 | 99,485 | $96,649.68 | 123315 | 10/28/2010 | $96,649.68 | TBD | Kuner Feedlot (CO) | None |
| 10/29/2010 | TBD | 461 | 62 | 47,608 | $49,155.26 | 124651 | 10/27/2010 | $49,155.26 | Kuner Feedlot | Kuner Feedlot (CO) | None |
| 10/27/2010 | TBD | 370 | 124 | 95,650 | $97,767.00 | 124578 | 10/27/2010 | $97,767.00 | TBD | Kuner Feedlot (CO) | None |
| 11/1/2010 | 11/1/2010 | 251 | 136 | 99,372 | $109,567.57 | N/A | N/A | N/A | Buddy Head Livestock & Trucking, Inc. | Larry Zelen (Atkinson, IL) | None |
| 11/2/2010 | 11/2/2010 | 317 | 67 | 49,118 | $52,801.85 | N/A | N/A | N/A | Second Chance Trucking | J&F Oklahoma Holdings, Inc. | J&F AP |
| 11/1/2010 | 11/1/2010 | 318 | 57 | 48,471 | $50,773.37 | N/A | N/A | N/A | Second Chance Trucking | J&F Oklahoma Holdings, Inc. | J&F AP |
| 11/2/2010 | 11/2/2010 | 310 | 84 | 48,206 | $50,616.30 | N/A | N/A | N/A | Second Chance Trucking | Fiona Industries | Fiona AP |
| **TOTAL** | | | | | **$721,165.53** | | | **$457,959.35** | | | |

# EXHIBIT B

ORIGINAL

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| In re: | ) | P & S Docket No. D-11-0062 |
| | ) | |
| Eastern Livestock Company LLC and | ) | |
| Thomas P. Gibson, | ) | |
| | ) | |
| Respondents | ) | Complaint |

There is reason to believe that the Respondent named herein have willfully violated the

Packers and Stockyards Act, 1921, as amended and supplemented (7 U.S.C. § 181 *et seq.*)( the

Act) and the regulations promulgated thereunder by the Secretary of Agriculture (9 C.F.R.

§ 201.1 *et seq.*)(the regulations), and, therefore, this complaint is issued alleging the following:

I

(a)     Eastern Livestock Company LLC (hereinafter "Respondent LLC") is a limited

liability company with a physical address and mailing address of 135 West Market Street, New

Albany, Indiana 47150.

(b)     Respondent LLC, at all times material herein, was:

(1)     Engaged in the business of a dealer buying and selling livestock in

commerce for its own account and of a market agency providing clearing services; and

(2)     Registered with the Secretary of Agriculture as a dealer buying and selling

livestock in commerce for its own account and as a market agency providing clearing services.

(c)     Thomas P. Gibson (hereinafter  "Individual Respondent"), at all times material

herein was:

(1)     The 65% owner of Respondent LLC;

(2)     The President of Respondent LLC; and

(3)    Responsible for the day to day direction, management and control of Respondent LLC.

II

(a)    Respondent LLC., under the direction, management, and control of Individual Respondent, purchased livestock and failed to pay for such livestock purchases. As of the filing of this Complaint, the Packers and Stockyards Program had received sworn bond claims from 74 sellers for 2640 head of cattle sold to Respondent LLC in 96 transactions, in a total amount of $1,588,711.75. A schedule of these allegations of failure to pay for livestock is attached hereto as Appendix A.

(b)    As of November 8, 2010, Respondent LLC's records reflected a balance of accounts payable, for which no payment had been tendered, of $3,698,253.00.

(c)    As of November 5, 2010, according to Respondent LLC's records, Respondent LLC had issued checks which were dishonored by the bank against which they were drawn in the total amount of $81,035,249.56.

(d)    The Packers and Stockyards Program has received from livestock sellers copies of checks which Respondent LLC issued in purported payment for cattle purchases and which were returned as dishonored by the bank against which they were drawn, in a total amount of $11,636,008.79. A schedule of such unpaid checks issued to livestock sellers by Respondent LLC is attached hereto as Appendix B.

(e)    Respondent LLC, under the direction, management, and control of Individual Respondent, during the period August 31, 2009 through January 22, 2010, failed to make prompt payment to four (4) sellers, in regard to 21 transactions, for 2,424 head of cattle in a total amount

2

of $1,121,888.88 when Respondent LLC failed to deposit checks therefor in the United States mail within the time limits specified in the Act.

III

Respondent LLC was notified by certified mail, received June 17, 2010, that it was necessary to increase its surety bond to $1,150,000.00 to secure its livestock operations under the Act before continuing in such operations. Further, Respondent LLC was notified that if it continued its livestock operations under the Act without adequate bond coverage or its equivalent, it would be in violation of section 312(a) of the Act (7 U.S.C. § 213(a) and sections 201.29 and 201.30 of the regulations (9 C.F.R. §§ 201.29, 201.30). Notwithstanding such notice, Respondent LLC continued to engage in the business of a dealer buying and selling livestock on its own account and as a market agency providing clearing services without maintaining an adequate bond or its equivalent.

IV

By reason of the facts alleged in paragraph I herein, Respondent LLC is the *alter ego* of Individual Respondent.

By reason of the facts alleged in paragraph II herein, Respondents have willfully violated sections 312(a) and 409 of the Act (7 U.S.C. §§ 213(a), 228b).

By reason of the facts alleged in paragraph III herein, Respondents have willfully violated section 312(a) of the Act (7 U.S.C. § 213(a)) and sections 201.29 and 201.30 of the regulations (9 C.F.R. § 201.29, 201.30).

3

WHEREFORE, it is hereby ordered that for the purpose of determining whether Respondents have in fact willfully violated the Act and the regulations thereunder, this complaint shall be served upon Respondents.  Respondents shall have twenty (20) days after receipt of this complaint in which to file an answer with the Hearing Clerk, United States Department of Agriculture, Washington, D.C. 20250, in accordance with the Rules of Practice governing proceedings under the Act (7 C.F.R. § 1.130 *et seq*.).  Failure to file an answer will constitute an admission of all the material allegations of this complaint.

Packers and Stockyards Program, GIPSA, requests:

1.  That unless Respondents fail to file an answer within the time allowed therefor, or file an answer admitting all the material allegations of this complaint, this proceeding be set for oral hearing in accordance with the Rules of Practice governing proceedings under the Act; and

2.  That such order or orders be issued, including an order requiring Respondents to cease and desist from the violations found to exist, and assessing such penalties as are authorized by the Act and warranted in the premises.

Done at Washington, D.C.

this _19_ day of _November 2010_

Alan R. Christian
Deputy Administrator
Packers and Stockyards Program

Charles L. Kendall
Attorney for Complainant
Telephone:  (202) 720-9405

4

APPENDIX A

| Seller | Sale Date | State | Amount Unpaid |
|---|---|---|---|
| Alabama Livestock Auction, Inc. | 10/23/2010 | 139 | $106,072.68 |
| Alabama Livestock Auction, Inc. | 10/29/2010 | 56 | $49,597.28 |
| Alvin Barbee | 10/26/2010 | 10 | $5,525.12 |
| Avalon Russell | 11/2/2010 | 2 | $1,179.24 |
| Ben H. Armstrong | 11/2/2010 | 4 | $2,173.32 |
| Bill Warren | 10/19/2010 | 8 | $4,732.39 |
| Billie W. Hurt | 11/2/2010 | 18 | $11,583.25 |
| Billy Wayne Price | 11/2/2010 | 2 | $787.52 |
| Bluegrass - Maysville Stockyard, LLC | 10/26/2010 | 18 | $9,070.40 |
| Bluegrass - Maysville Stockyard, LLC | 11/2/2010 | 45 | $26,761.59 |
| Bob Sawyers | 11/2/2010 | 12 | $7,874.23 |
| Boyd Copas | 11/2/2010 | 2 | $897.93 |
| Brack D. Briscoe | 11/1/2010 | 23 | $9,894.15 |
| Brad Flood | 9/15/2010 | 18 | $4,267.50 |
| Brad Flood | 9/15/2010 | 1 | $331.50 |
| Brystice Amanger Wright | 11/2/2010 | 1 | $656.72 |
| Burke Livestock Auction | 10/30/2010 | 19 | $14,097.27 |
| Butch Gibson | 11/1/2010 | 6 | $2,955.16 |
| Cattleman's Livestock | 10/19/2010 | 33 | $8,997.21 |
| Cattleman's Livestock | 10/26/2010 | 67 | $25,892.68 |
| Cattleman's Livestock | 10/26/2010 | 16 | $4,392.78 |
| Cattleman's Livestock | 11/2/2010 | 86 | $33,454.38 |
| Cattleman's Livestock | 11/2/2010 | 39 | $10,165.09 |
| Charles M. Rush | 11/2/2010 | 1 | $627.00 |
| Charlie T. Fisher | 11/2/2010 | 3 | $955.21 |
| Danny Clifton Billingsley | 11/2/2010 | 1 | $506.77 |
| Darrell Lynn Wood | 11/2/2010 | 8 | $4,825.90 |
| Delphia Ann Garrett | 10/19/2010 | 7 | $2,726.74 |
| Delphia Ann Garrett | 10/19/2010 | 8 | $3,371.44 |
| Delphia Ann Garrett | 10/26/2010 | 5 | $2,665.79 |
| Denwalt & Son Cattle Co. | 10/22/2010 | 66 | $51,413.40 |
| Donald Hawks | 11/2/2010 | 10 | $5,462.71 |
| Donald R. Alexander | 11/2/2010 | 40 | $26,717.77 |
| Donnie Coomer | 11/2/2010 | 3 | $1,192.39 |
| Eddie Claywell | 11/2/2010 | 1 | $1,478.59 |
| Floyd Haywood Marr | 11/2/2010 | 5 | $2,192.82 |
| Frederick David Thomas | 11/2/2010 | 5 | $2,326.85 |
| Gabriel Moreno Medina | 10/27/2010 | 160 | $99,321.86 |
| Gabriel Moreno Medina | 10/28/2010 | 137 | $97,162.65 |
| Garrett, Susan (Brilyn & Bailee) | 10/19/2010 | 2 | $1,304.06 |
| Gary Tate | 11/4/2010 | 203 | $159,268.50 |
| Homer Copeland | 11/2/2010 | 12 | $7,065.88 |
| James Robert Flickinger | 11/2/2010 | 15 | $5,854.20 |

APPENDIX A

| Seller | Sale Date | State | Amount Unpaid |
|---|---|---|---|
| James H. Gibson | 11/2/2010 | 8 | $3,986.79 |
| Jared Ross Smith | 11/2/2010 | 7 | $2,206.75 |
| JC Billingsley | 11/2/2010 | 2 | $1,083.52 |
| Jerel Smith | 11/2/2010 | 7 | $2,206.76 |
| Jerry Bagby | 11/2/2010 | 3 | $1,225.09 |
| Jerry Herald | 10/26/2010 | 6 | $2,920.66 |
| Jesse W. Simpson | 10/26/2010 | 1 | $514.10 |
| Jimmie Dale High | 11/2/2010 | 5 | $2,527.25 |
| Jimmie Dale High | 11/2/2010 | 4 | $1,515.90 |
| John D. Thompson | 11/2/2010 | 12 | $7,026.20 |
| Joshua Brian Loftis | 11/2/2010 | 7 | $5,469.41 |
| Junior Martin | 11/2/2010 | 9 | $6,514.31 |
| Junior Martin | 11/2/2010 | 9 | $4,889.59 |
| Kelly Jeffries | 11/2/2010 | 1 | $524.51 |
| Kenneth Cowles | 11/2/2010 | 7 | $3,640.03 |
| Kenneth Sanders | 11/2/2010 | 9 | $4,497.03 |
| L&F Cattle (Troy Lathan & Joe Foote) | 10/12/2010 | 194 | $160,121.56 |
| Larry Woody | 11/2/2010 | 4 | $2,917.49 |
| Leland Douglas Glass | 11/2/2010 | 14 | $9,241.06 |
| Lenice H. Gibson | 11/2/2010 | 2 | $901.27 |
| Long Farms (Keith Long) | 11/2/2010 | 9 | $6,880.08 |
| Lynn D. Hirsch | 11/3/2010 | 51 | $33,142.20 |
| Michael Emberton | 11/2/2010 | 10 | $4,564.01 |
| Natural Bridge Stockyard | 10/26/2010 | 24 | $12,634.17 |
| Natural Bridge Stockyard | 11/2/2010 | 29 | $13,958.01 |
| Okeechobee Livestock Market, Inc. | 10/25/2010 | 41 | $13,671.72 |
| Okeechobee Livestock Market, Inc. | 10/25/2010 | 16 | $4,404.03 |
| Okeechobee Livestock Market, Inc. | 10/26/2010 | 43 | $15,171.87 |
| Okeechobee Livestock Market, Inc. | 11/1/2010 | 18 | $5,623.55 |
| Okeechobee Livestock Market, Inc. | 11/2/2010 | 44 | $14,658.25 |
| Ozarks Regional Stockyards, Inc | 10/13/2010 | 21 | $11,503.15 |
| Ozarks Regional Stockyards, Inc | 10/26/2010 | 292 | $235,581.99 |
| Ozarks Regional Stockyards, Inc | 10/27/2010 | 22 | $12,176.01 |
| Rachel Phelps | 11/2/2010 | 2 | $876.65 |
| Randy Nelson | 11/1/2010 | 11 | $5,673.19 |
| RD Lane | 11/2/2010 | 16 | $9,067.10 |
| Richard Hope | 11/2/2010 | 6 | $3,543.24 |
| Rita Cravens | 11/2/2010 | 11 | $8,212.58 |
| Roger Turner | 10/26/2010 | 4 | $1,831.30 |
| Roy Dee Blythe | 11/2/2010 | 5 | $2,281.89 |
| Roy Kinslow | 11/2/2010 | 17 | $8,571.48 |
| Roy Pace | 11/2/2010 | 13 | $7,413.90 |
| Scott Christopher Cowles | 11/2/2010 | 12 | $4,990.07 |

APPENDIX A

| Seller | Sale Date | State | Amount Unpaid |
|---|---|---|---|
| Scotts Hill Stockyard c/o James Linville | 10/25/2010 | 51 | $23,288.98 |
| Scotts Hill Stockyard c/o James Linville | 11/1/2010 | 79 | $9,381.59 |
| Todd Lynn | 11/2/2010 | 19 | $10,583.44 |
| Wesley Kinslow | 11/2/2010 | 12 | $6,264.89 |
| Wetstone Creek | 11/2/2010 | 24 | $18,492.20 |
| Willard R. Odle | 11/2/2010 | 16 | $5,138.48 |
| William Rex Elmore | 10/26/2010 | 65 | $25,728.36 |
| William Rex Elmore | 11/2/2010 | 9 | $4,010.19 |
| William Rex Elmore | 11/2/2010 | 12 | $3,914.98 |
| William White | 11/2/2010 | 8 | $3,749.00 |
| **TOTAL** | | 2640 | $1,588,711.75 |

APPENDIX B

| Eastern Livestock Co., LLC Checks Not Honored | | | | |
|---|---|---|---|---|
| Check Number | Date | Payee | Amount | |
| 15882 | 10/19/2010 | Brilyn & Bailee Garrett | $ | 1,304.06 |
| 15883 | 10/19/2010 | Delphia Garrett | $ | 2,726.74 |
| 15900 | 10/19/2010 | Delphia Garrett | $ | 3,371.44 |
| 15915 | 10/19/2010 | Bill Warren | $ | 4,732.39 |
| 15974 | Unclear | Jerry Herald | $ | 2,920.66 |
| 15993 | 10/26/2010 | Alvin Barbee | $ | 5,525.12 |
| 15997 | 10/26/2010 | Delphia Garrett | $ | 2,665.79 |
| 16064 | 10/26/2010 | Rex Elmore | $ | 25,728.36 |
| 16078 | 10/26/2010 | Roger Turner | $ | 1,831.30 |
| 16083 | 10/26/2010 | Jessie Simpson | $ | 508.56 |
| 16105 | 11/2/2010 | Rex Elmore | $ | 4,010.19 |
| 16111 | 11/2/2010 | Rachael Phelps | $ | 876.65 |
| 16121 | 11/2/2010 | Butch Gibson | $ | 2,955.16 |
| 16126 | 11/2/2010 | Jared Smith | $ | 2,206.75 |
| 16128 | 11/2/2010 | Charles Rush | $ | 621.12 |
| 16132 | 11/2/2010 | Randy Nelson | $ | 5,673.19 |
| 16135 | 11/2/2010 | Rex Elmore | $ | 3,914.98 |
| 16138 | 11/2/2010 | Billy Hurt | $ | 5,663.04 |
| 16152 | 11/2/2010 | Todd Lynn | $ | 10,583.44 |
| 16154 | 11/2/2010 | Fred Thomas | $ | 2,326.85 |
| 16158 | 11/2/2010 | R.D. Lane | $ | 9,067.10 |
| 16159 | 11/2/2010 | Kelly Jeffries | $ | 524.51 |
| 16162 | 11/2/2010 | Long Farm | $ | 4,262.28 |
| 16163 | 11/2/2010 | Boyd Copas | $ | 897.93 |
| 16172 | 11/2/2010 | Scott Cowles | $ | 4,990.07 |
| 16173 | 11/2/2010 | Billy Wayne Price | $ | 787.52 |
| 16174 | 11/2/2010 | Haywood Marr | $ | 2,192.82 |
| 16184 | 11/2/2010 | Jim Flickinger | $ | 5,854.20 |
| 16185 | 11/2/2010 | Rita Cravens | $ | 8,212.58 |
| 16187 | 11/2/2010 | Billy Hurt | $ | 5,920.21 |
| 16188 | 11/2/2010 | Jerry Bagby | $ | 1,225.09 |
| 16191 | 11/2/2010 | Wesley Kinslow | $ | 6,264.89 |
| 16196 | 11/2/2010 | Bob Sawyers | $ | 7,874.23 |
| 16197 | 11/2/2010 | Charlie Fisher | $ | 955.21 |
| 16199 | 11/2/2010 | Larry Woody | $ | 2,917.49 |
| 16200 | 11/2/2010 | Roy Kinslow | $ | 8,571.48 |
| 16202 | 11/2/2010 | Donald Hawks | $ | 5,462.71 |
| 16203 | 11/2/2010 | Kenneth Sanders | $ | 4,382.03 |
| 16204 | 11/2/2010 | Kenneth Sanders | $ | 75.00 |
| 16216 | 11/2/2010 | Ben Armstrong | $ | 2,173.32 |
| 16219 | 11/2/2010 | Long Farm | $ | 2,617.80 |

APPENDIX B

| Eastern Livestock Co., LLC Checks Not Honored | | | | |
|---|---|---|---|---|
| Check Number | Date | Payee | | Amount |
| 16232 | 11/2/2010 | James Gibson | $ | 3,986.79 |
| 16241 | 11/2/2010 | Junior Martin | $ | 6,514.31 |
| 16244 | 11/2/2010 | Danny Billingsley | $ | 506.77 |
| 16245 | 11/2/2010 | JC Billingsley | $ | 1,083.52 |
| 16252 | 11/2/2010 | Richard Hope | $ | 3,543.24 |
| 16254 | 11/2/2010 | Avalon Russell | $ | 1,179.24 |
| 16257 | 11/2/2010 | LH Gibson | $ | 901.27 |
| 16264 | 11/2/2010 | Donnie Coomer | $ | 1,192.39 |
| 16265 | 11/2/2010 | Eddie Claywell | $ | 1,478.49 |
| 16269 | 11/2/2010 | Homer Copeland | $ | 7,065.88 |
| 16270 | 11/2/2010 | Darrell Wood | $ | 4,825.90 |
| 16271 | 11/2/2010 | John Thompson | $ | 7,026.20 |
| 16279 | 11/2/2010 | Leland Glass | $ | 9,241.06 |
| 16280 | 11/2/2010 | Donald Alexander | $ | 26,717.77 |
| 16283 | 11/2/2010 | Josh Loftis | $ | 5,469.41 |
| 16286 | 11/2/2010 | Roy Blythe | $ | 2,281.89 |
| 16288 | 11/2/2010 | W.R. Odle | $ | 5,138.48 |
| 16296 | 11/2/2010 | Junior Martin | $ | 4,889.59 |
| 31241 | 10/27/2010 | Gabriel Moreno | $ | 99,321.86 |
| 31245 | 10/28/2010 | Gabriel Moreno | $ | 97,162.65 |
| 32691 | 10/29/2010 | Dante Zago and Farm Credit | $ | 34,093.10 |
| 33557 | 10/23/2010 | Cullman Stockyard | $ | 42,708.02 |
| 35472 | Unclear | L&F Cattle | $ | 160,121.56 |
| 35476 | Unclear | Dick Wallace | $ | 49,363.43 |
| 35483 | Unclear | Gary Tate | $ | 159,268.50 |
| 122797 | 10/20/2010 | JC Bar Trucking | $ | 3,445.20 |
| 122880 | 10/20/2010 | Cattlemen's Livestock Auction | $ | 8,925.86 |
| 122926 | 10/21/2010 | Vanderbrink Trucking | $ | 4,218.00 |
| 122953 | 10/21/2010 | Jack Roth Trucking | $ | 9,626.50 |
| 123185 | 10/26/2010 | Mid-South Livestock Center | $ | 46,550.97 |
| 123197 | 10/25/2010 | Superior Livestock Auction | $ | 304,301.70 |
| 123199 | 10/25/2010 | Superior Livestock Auction | $ | 114,695.00 |
| 123201 | 10/25/2010 | Superior Livestock Auction | $ | 116,817.21 |
| 123203 | 10/25/2010 | Superior Livestock Auction | $ | 163,490.92 |
| 123205 | 10/25/2010 | Superior Livestock Auction | $ | 125,987.95 |
| 123208 | 10/26/2010 | Denwalt & Sons Cattle Co, LLC | $ | 51,413.40 |
| 123210 | 10/25/2010 | Superior Livestock Auction | $ | 142,314.43 |
| 123211 | 10/25/2010 | Superior Livestock Auction | $ | 165,749.84 |
| 123227 | 10/25/2010 | Superior Livestock Auction | $ | 159,303.28 |
| 123229 | 10/25/2010 | Superior Livestock Auction | $ | 153,241.09 |
| 123230 | 10/25/2010 | Alabama Livestock Auction | $ | 106,052.94 |

APPENDIX B

| Eastern Livestock Co., LLC Checks Not Honored | | | |
|---|---|---|---|
| Check Number | Date | Payee | Amount |
| 123263 | 10/25/2010 | Superior Livestock Auction | $ 147,869.44 |
| 123300 | 10/26/2010 | Fousek Farm | $ 5,384.84 |
| 123319 | 10/26/2010 | Mid-South Livestock Center | $ 32,396.85 |
| 123325 | 10/26/2010 | Charles Graham | $ 111,358.49 |
| 123331 | 10/26/2010 | Athens Stockyard | $ 189,621.35 |
| 123334 | 10/26/2010 | Athens Stockyard | $ 48,594.57 |
| 123351 | 10/26/2010 | Okeechobee Livestock Mkt. | $ 13,671.72 |
| 123351 | 10/26/2010 | Okeechobee Livestock Mkt. | $ 13,671.72 |
| 123371 | 10/26/2010 | Superior Livestock Auction | $ 113,689.82 |
| 123373 | 10/26/2010 | Superior Livestock Auction | $ 108,785.44 |
| 123375 | 10/26/2010 | Superior Livestock Auction | $ 118,122.59 |
| 123377 | 10/26/2010 | Superior Livestock Auction | $ 147,043.87 |
| 123379 | 10/26/2010 | Superior Livestock Auction | $ 143,594.90 |
| 123381 | 10/26/2010 | Superior Livestock Auction | $ 138,682.84 |
| 123383 | 10/26/2010 | Superior Livestock Auction | $ 108,812.08 |
| 123385 | 10/26/2010 | Superior Livestock Auction | $ 140,734.55 |
| 123387 | 10/26/2010 | Superior Livestock Auction | $ 151,922.60 |
| 123389 | 10/26/2010 | Superior Livestock Auction | $ 156,945.84 |
| 123395 | 10/26/2010 | Mid-South Livestock Center | $ 156,292.63 |
| 123405 | 10/26/2010 | Scotts Hill Stockyard | $ 23,288.98 |
| 123421 | 10/26/2010 | Northwest Alabama Livestock | $ 100,301.47 |
| 124580 | 10/27/2010 | Superior Livestock Auction | $ 118,593.88 |
| 124581 | 10/27/2010 | Superior Livestock Auction | $ 160,030.78 |
| 124583 | 10/27/2010 | Superior Livestock Auction | $ 113,147.97 |
| 124584 | 10/27/2010 | Superior Livestock Auction | $ 151,021.59 |
| 124589 | 10/27/2010 | Ozark Regional Stockyard, Inc. | $ 235,581.99 |
| 124600 | 10/27/2010 | Athens Stockyard | $ 26,503.30 |
| 124604 | 10/27/2010 | Cattlemen's Livestock Auction | $ 30,285.46 |
| 124613 | 10/27/2010 | Natural Bridge Stockyard | $ 12,634.17 |
| 124633 | 10/27/2010 | Superior Livestock Auction | $ 141,110.24 |
| 124634 | 10/27/2010 | Superior Livestock Auction | $ 114,025.63 |
| 124636 | 10/27/2010 | Superior Livestock Auction | $ 142,339.20 |
| 124637 | 10/27/2010 | Superior Livestock Auction | $ 146,802.47 |
| 124638 | 10/27/2010 | Superior Livestock Auction | $ 128,786.30 |
| 124640 | 10/27/2010 | Superior Livestock Auction | $ 123,397.38 |
| 124641 | 10/27/2010 | Superior Livestock Auction | $ 166,928.09 |
| 124642 | 10/27/2010 | Superior Livestock Auction | $ 170,360.58 |
| 124644 | 10/27/2010 | Superior Livestock Auction | $ 231,853.65 |
| 124645 | 10/27/2010 | Athens Stockyard | $ 46,221.25 |
| 124648 | 10/27/2010 | Charles Graham | $ 110,988.60 |
| 124660 | 10/27/2010 | Bluegrass - Marysville | $ 9,070.40 |

APPENDIX B

| Eastern Livestock Co., LLC Checks Not Honored | | | | |
|---|---|---|---|---|
| Check Number | Date | Payee | \$ | Amount |
| 124717 | 10/28/2010 | Superior Livestock Auction | \$ | 103,431.19 |
| 124719 | 10/28/2010 | Ozark Regional Stockyard, Inc. | \$ | 11,503.15 |
| 124730 | 10/28/2010 | Charles Graham | \$ | 108,783.00 |
| 124733 | 10/28/2010 | Northwest Alabama Livestock | \$ | 136,675.59 |
| 124739 | 10/28/2010 | Superior Livestock Auction | \$ | 115,339.22 |
| 124741 | 10/28/2010 | Superior Livestock Auction | \$ | 116,504.05 |
| 124744 | 10/28/2010 | Ozark Regional Stockyard, Inc. | \$ | 7,815.21 |
| 124758 | 10/28/2010 | Sand Mountain Stockyard | \$ | 35,080.78 |
| 124772 | 10/28/2010 | Superior Livestock Auction | \$ | 66,893.48 |
| 124774 | 10/28/2010 | Superior Livestock Auction | \$ | 137,942.95 |
| 124776 | 10/28/2010 | Superior Livestock Auction | \$ | 144,276.51 |
| 124778 | 10/28/2010 | Superior Livestock Auction | \$ | 163,487.92 |
| 124780 | 10/28/2010 | Superior Livestock Auction | \$ | 152,660.71 |
| 124782 | 10/28/2010 | Superior Livestock Auction | \$ | 145,922.28 |
| 124784 | 10/28/2010 | Superior Livestock Auction | \$ | 245,071.26 |
| 124786 | 10/28/2010 | Superior Livestock Auction | \$ | 204,742.68 |
| 124788 | 10/28/2010 | Superior Livestock Auction | \$ | 108,235.56 |
| 124883 | 10/29/2010 | Superior Livestock Auction | \$ | 159,007.67 |
| 124885 | 10/29/2010 | Superior Livestock Auction | \$ | 96,084.65 |
| 124887 | 10/29/2010 | Superior Livestock Auction | \$ | 99,237.00 |
| 124889 | 10/29/2010 | Superior Livestock Auction | \$ | 108,027.27 |
| 124891 | Unclear | Superior Livestock Auction | \$ | 100,089.53 |
| 124893 | Unclear | Superior Livestock Auction | \$ | 107,339.44 |
| 124895 | Unclear | Superior Livestock Auction | \$ | 95,736.19 |
| 124897 | Unclear | Superior Livestock Auction | \$ | 150,323.53 |
| 124899 | Unclear | Superior Livestock Auction | \$ | 204,310.02 |
| 124901 | Unclear | Superior Livestock Auction | \$ | 100,876.87 |
| 124903 | Unclear | Superior Livestock Auction | \$ | 103,893.98 |
| 124905 | Unclear | Superior Livestock Auction | \$ | 131,607.34 |
| 124907 | Unclear | Superior Livestock Auction | \$ | 140,447.61 |
| 124913 | Unclear | Superior Livestock Auction | \$ | 154,990.76 |
| 124914 | Unclear | Superior Livestock Auction | \$ | 145,706.50 |
| 124915 | Unclear | Superior Livestock Auction | \$ | 137,461.57 |
| 124916 | Unclear | Superior Livestock Auction | \$ | 148,869.39 |
| 124917 | Unclear | Superior Livestock Auction | \$ | 98,300.22 |
| 124918 | Unclear | Superior Livestock Auction | \$ | 150,354.69 |
| 124980 | Unclear | Alabama Livestock Auction | \$ | 49,597.28 |
| 125003 | 11/1/2010 | Jessie Simpson | \$ | 2,428.20 |
| 125022 | 11/1/2010 | Brack Briscoe | \$ | 9,894.15 |
| Total Dishonored Checks  for which P&SP has a Copy | | | \$ | 11,636,008.79 |