Exhibit A

## **LEASE**

THIS LEASE made and entered into this ___ day of July, 2011, by and between Republic Bank & Trust Company, a Kentucky chartered bank (hereinafter called "Landlord"), and Eastern Livestock Company, LLC (hereinafter called "Tenant"),

**W I T N E S S E T H:**

WHEREAS, Landlord is the owner of a certain parcel of ground with improvements located thereon commonly known as 135 West Market Street, New Albany, Indiana, which property is more fully described in Exhibit "A" hereto, and

WHEREAS, Tenant wishes to Lease the above-described real estate (hereinafter the "Leased Premises"), and

WHEREAS, Landlord has the full right, power and authority to enter into a Lease of said Leased Premises and being desirous of leasing said Leased Premises to the Tenant, and Tenant being desirous of leasing the Leased Premises from Landlord, it is now agreed by and between the parties hereto as follows:

1. <u>Term</u>.  It is the intention of the parties that this Lease be a month-to-month lease. The term "month" shall mean a calendar month.  The term of this Lease shall commence on the 21st of July, 2011.  Either party may terminate this Lease by giving thirty (30) days prior written notice to the other of its intention to terminate this Lease.  Unless notice of termination is given by either party, this Lease shall be automatically renewed for successive months.

2. <u>Rent</u>.  The Tenant covenants and agrees to pay Landlord for said Leased Premises a monthly rental of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500.00), payable in advance.  The rent for the partial month of July, 2011 shall be prorated and is due and payable on July 21, 2011.  Subsequent installments of rent shall be payable on the first day of each and

72763:2:JEFFERSONVILLE

- 2 -

every month thereafter during the term of this Lease. All rentals and charges due hereunder shall be payable without relief from valuation and appraisement laws.

3. <u>Alterations and Improvements</u>. Tenant agrees not to make any alterations or improvements to the Leased Premises without the written consent of the Landlord. Tenant will be responsible for the payment of any costs for any alterations and improvements, and Tenant shall not permit any liens to attach to the Leased Premises. Permitting a lien to attach to the Leased Premises shall be considered a default under this Lease. Any improvements added to the Leased Premises shall become the property of Landlord at the termination of this Lease and shall be left on the Leased Premises by Tenant.

4. <u>Repairs</u>. Tenant shall be responsible for all maintenance of HVAC, alarm system, interior and exterior of the existing building located on the Leased Premises. Tenant shall also be responsible for all maintenance and repair of its own fixtures and equipment. Tenant shall be responsible for the clearing of ice and snow from the sidewalks that service the Leased Premises.

5. <u>Quiet Enjoyment</u>. Landlord covenants and agrees that Tenant, subject to the terms and provisions of this Lease, on payment of the rent and observing, keeping and performing all of the Tenant's covenants, shall lawfully, peaceably and quietly have, hold, occupy and enjoy the Leased Premises and any appurtenant rights granted to Tenant under this Lease during the lease term without hindrance or ejection by any persons lawfully claiming under Landlord, subject to the other terms and conditions of this Lease.

6. <u>Insurance</u>. The Tenant shall, during the term of this Lease, at Tenant's expense:

(a) Maintain in full force and effect general liability and property insurance from an insurance company or companies authorized to do business in the State of Indiana, with the Landlord to be named as an additional insured. Such insurance shall be

- 2 -

- 3 -

of the type and amounts shown in the Insurance Binder #031111DM01 attached hereto as Exhibit B and made a part of this Lease

(b) Tenant shall be responsible for insuring any of the Tenant's property located on the Leased Premises.

(c) Tenant shall procure an endorsement which requires the insurance carrier providing liability insurance and providing fire and extended coverage insurance to provide Landlord with thirty (30) days prior written notice of cancellation of said policies of insurance.

7. <u>Property Taxes</u>.  Tenant shall pay all real estate taxes assessed against the Leased Premises.

Personal property taxes on the contents of the building which are the property of Tenant such as equipment, inventory, and other assets shall be the sole responsibility of Tenant. Tenant shall also be responsible for any and all license fees and any and all other assessments imposed by reason of the nature of the business conducted on the Leased Premises.

8. <u>Assignment or Subletting</u>.  Tenant shall not have the right to assign or sublet the Leased Premises without the prior written consent of Landlord.

9. <u>Hazardous Substances</u>.

(a) Tenant shall not cause or permit any Hazardous Substance to be used, stored, generated or disposed of on or in the premises by Tenant, Tenant's agents, employees, contractors or invitees, without first obtaining Landlord's written consent. If Hazardous Substances are used, stored, generated or disposed of on or in the Leased Premises, or if the Leased Premises become contaminated in any manner for which Tenant is legally liable, Tenant shall indemnify and hold harmless the Landlord from any

and all claims, damages, fines, judgments, penalties, costs, liabilities or losses (including, without limitation, a decrease in the value of the premises, damages caused by loss or restriction of rentable or useable space, or any damages caused by adverse impact on marketing of the space, and any and all sums paid for settlement of claims, attorneys' fees, consultant, and expert fees) arising during or after the term of the Lease and arising as a result of that contamination by Tenant. This indemnification includes, without limitation, any and all costs incurred because of any investigation of the site or any cleanup, removal, or restoration mandated by a federal, state or local agency or political subdivision. Without limitation of the foregoing, if Tenant causes or permits the presence of any Hazardous Substance on the Leased Premises that results in contamination, Tenant shall promptly, at its sole expense, take any and all necessary actions to return the Leased Premises to the condition existing prior to the presence of any such Hazardous Substance on the Leased Premises. Tenant shall first obtain Landlord's approval for any such remedial action.

(b)   As used herein, "Hazardous Substance" means any substance that is toxic, ignitable, reactive, or corrosive and that is regulated by any local government, the State of Indiana, or the United States government. "Hazardous Substance" includes any and all material or substances that are defined as "hazardous waste," "extremely hazardous waste," or a "hazardous substance" pursuant to state, federal or local governmental law. "Hazardous Substance" includes, but is not restricted to, asbestos, polychlorobiphenyls ("PCBs"), and petroleum.

10.   <u>Notices</u>.   The rent provided for hereunder and all notices and other communications to Landlord shall be delivered to:

>Jerry Brockman
>Republic Bank & Trust Company
>661 South Hurstbourne Parkway
>Louisville, KY 40222

which address shall, for the purposes of this Lease, be deemed to be the address of Landlord. Notices and other communications to Tenant shall be delivered to:

>Eastern Livestock Company, LLC
>c/o James Knauer, Chapter 11 Trustee
>111 Monument Circle #900
>Indianapolis, IN 46204-5125

In the event either party should change address, then such party shall immediately notify the other of such change of address.

    11.    <u>Eminent Domain</u>.  If the entire Leased Premises, or such portion thereof as will make the remainder unsuitable for the use permitted by this Lease, is condemned by any legally-constituted authority, or if a conveyance or other acquisition in lieu of such condemnation is made, then this Lease shall terminate as of the date possession is required by the condemnor. If a portion of the Leased Premises is condemned but the remainder is still suitable for the use permitted by this Lease, this Lease shall not terminate but a portion of the rent for the rest of the term shall be abated in proportion to the amount of the Leased Premises taken. All compensation paid in connection with the condemnation shall belong to and be the sole property of Landlord, except Tenant shall be entitled to any compensation awarded for Tenant's moving expenses.

    12.    <u>Destruction</u>.  If the Leased Premises should be damaged or destroyed by fire or other cause to such an extent that the cost of repair and restoration would exceed thirty percent (30%) of the amount it would cost to replace the Leased Premises in their entirety at the time such damage or destruction took place, then Landlord shall have the right to cancel this Lease by giving Tenant notice of such election within thirty (30) days after the occurrence of such damage

or destruction and this Lease shall terminate fifteen (15) days after the date such notice is given. If Landlord fails to exercise this option to terminate, then Landlord shall, to the extent of available insurance proceeds, promptly repair and restore the Leased Premises to substantially the same condition they were in prior to the damage or destruction.

If the Leased Premises should be damaged or destroyed by fire or other cause to such an extent that the costs of repair and restoration would be less than thirty percent(30%) of the amount it would cost to replace the Leased Premises in their entirety at the time such damage or destruction took place, then this Lease shall not terminate and the Landlord shall to the extent of available insurance proceeds promptly repair and restore the Leased Premises to substantially the same condition they were in prior to the damage or destruction.

In the event the Leased Premises are damaged or destroyed, the rents herein provided for, or a fair and equitable portion thereof, shall be abated until such time as the Leased Premises are repaired and restored. The term of this Lease shall be extended for a period equal to the term during which there has been a complete abatement of rent. The opinion of an architect or registered engineer appointed by Landlord as to the costs of repair, restoration or replacement shall be controlling upon the parties. Landlord's obligation to restore or repair does not include fixtures or improvements installed or owned by Tenant. The provisions of this section are not intended to limit, modify or release Tenant from any liability it may have for damage or destruction.

13. <u>Default</u>.  In the event there should be a default by the Tenant, then Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(a) Terminate this Lease, in which event Tenant shall immediately surrender the Leased Premises to Landlord, and if Tenant fails so to do, Landlord may, without prejudice to any other remedy which it may have for possession or arrearage in rent, enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying said Leased Premises or any part thereof, by force if necessary, without being liable for prosecution of any claim for damages therefor; and Tenant agrees to pay to Landlord on demand the amount of all loss and damage which Landlord may suffer by reason of such termination whether through inability to rent the Leased Premises on satisfactory terms or otherwise.

(b) Enter upon and take possession of the Leased Premises and expel or remove Tenant or any other person who may be occupying said Leased Premises or any part thereof, by force, if necessary, without being liable for prosecution of any claim for damages therefor, and without terminating this Lease, relet the Leased Premises and receive rent therefor; and Tenant agrees to pay Landlord on demand any deficiency that may arise by reason of such reletting.

(c) Enter upon the Leased Premises by force, if necessary, without being liable for prosecution or any claim for damages therefor, and without terminating this Lease, do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by the negligence of Landlord or otherwise.

- 7 -

Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided, or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions, and covenants herein contained.  Eviction or ejectment of the Tenant for a breach of this Lease shall not release the Tenant from liability for rent payments for the balance of the term of this Lease.

14. General Provisions.

(a) Tenant agrees to take good care of the Leased Premises and return the same at the expiration of this Lease to Landlord, ordinary wear and tear and natural decay excepted, unless the improvements should be destroyed by lightning or other natural cause, or fire not caused by its fault.

(b) No demand for rent need at any time be made on the Leased Premises or elsewhere, but it shall be the duty of the Tenant to pay the same within ten (10) days from the due date without demand. Failure to do so shall constitute a default under this Lease.

(c) The Tenant will surrender possession of the Leased Premises to Landlord at the expiration, or any prior termination, of the term of this Lease.  Failure by the Tenant to so surrender said Leased Premises and any holding over by Tenant shall not operate, except by express mutual agreement between the parties hereto, to extend or renew this Lease, and in the absence of such agreement, either party may thereafter terminate such occupancy at the end of any calendar month by first giving to the other party at least thirty(30) days notice of its intention to do so.

- 8 -

(d) The Tenant shall pay and discharge all costs and attorneys' fees and expenses that shall arise from enforcing the covenants of this Lease by Landlord. After service of notice or the commencement of a suit, or after final judgment for possession of said Leased Premises, the Landlord may receive and collect any rent due, or that may accrue, and the payment of said rent shall not waive or affect said notice, or said judgment or judgments.

(e) In the event of the violation of any covenant herein contained (excluding rental payments) and the failure of the Tenant to correct such violation within thirty (30) days after written notice, such failure shall constitute a default hereunder and the Landlord may pursue any remedy provided for in Paragraph 13 hereinabove.

(f) The Tenant hereby waives the right to claim any property exempt from execution, distress-warrant, and attachment or exemption by any law from the payments of debts, and all such properly shall be held and considered subject to and responsible for the payment of the money agreed to be paid to the Landlord and for the discharge of any liabilities created under this Lease.

(g) The Landlord, or its real estate broker, shall have free access to the Leased Premises herein leased for showings and inspections during normal business hours.  In addition, Tenant agrees to make good faith efforts to accommodate Landlord's efforts to market the Leased Premises including providing access to prospective buyers.

(h) Tenant covenants and agrees that it will not use or occupy said Leased Premises or permit the same to be used or occupied in violation of any laws, regulations or ordinances of appropriate governing bodies; that it will not allow the same to be used for any illegal or immoral purpose; that it will not suffer or permit them to be used in any

manner that will create a nuisance in the neighborhood or that will subject the Landlord to any penalties for the violation of any laws of the State of Indiana or ordinances of the City of New Albany, Indiana.

(i) Tenant agrees to pay when due all utilities, including the gas, water, electricity, telephone and sewer use charges.

(j) It is agreed that Landlord shall not be under any responsibility or liability to the Tenant or any other person in any way whatsoever for the quality, quantity, impairment, stoppage or other interference with service involving water, heat, gas, electric current for lights and power, telephone or any other service by any public utility.

(k) The Tenant agrees that all personal property of every kind or description that may at any time be in the Leased Premises shall be there at Tenant's sole risk, or at the risk of those claiming under the Tenant, and that the Landlord shall not be liable for any damage to said property or loss suffered by the business or occupation of the Tenant caused in any manner whatsoever, except as may result from and be caused by the negligence of the Landlord or its agents or employees.

(l) The Tenant covenants to at all times save the Landlord harmless from all loss, cost, injury, damages or death that may occur to, or be claimed by, or with respect to any person or persons, corporations, properly or chattels on or about the Leased Premises, or to the Leased Premises itself, resulting from any act done or omission by or through the Tenant or caused by or resulting from the Tenant's use, nonuse or possession of, condition of, or conduct of its business in said property. Tenant hereby agrees to pay, discharge or successfully defend Landlord against any and all such claims, liens and demands.

    (m)    It is further mutually agreed between the parties that no assent, express or implied, by the Landlord to any breach of any of the Tenant's covenants shall be deemed to be a waiver of any succeeding breach of the same covenant.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

REPUBLIC BANK & TRUST COMPANY

By:_____

Its:_____

"Landlord"

_____

By:_____

Its:_____

"Tenant"

STATE OF _____ )
                              )
COUNTY OF _____ )

  Before me the undersigned, Notary Public in and for the above county and state, personally appeared _____, as _____ of Republic Bank & Trust Company, a Kentucky chartered bank, who acknowledge the execution of the foregoing Lease, and who, having been duly sworn, stated that representations therein contained are true.

  IN WITNESS WHEREOF, I have hereunto set my hand and seal this \_\_\_ day of July, 2011.

                    _____
                                Notary Public

                Printed:_____

My Commission Expires:_____

My County of Residence Is:_____

STATE OF _____ )
                              )
COUNTY OF _____ )

  Before me the undersigned, Notary Public in and for the above county and state, personally appeared _____, as _____ of _____, who acknowledge the execution of the foregoing Lease for and on behalf of said Tenant, and who, having been duly sworn, stated that representations therein contained are true.

  IN WITNESS WHEREOF, I have hereunto set my hand and seal this \_\_\_\_ day of July, 2011.

                     _____
                                Notary Public

                Printed:_____

My Commission Expires:_____

My County of Residence Is:_____

This Instrument Prepared By:
J. Spencer Harmon
Stites & Harbison, PLLC
323 East Court Avenue
P. O. Box 946
Jeffersonville, Indiana 47131
(812) 282-7566

# EXHIBIT A

135 West Market Street, New Albany, Indiana.

**Tract I**
Lot No.7 on Lower Market Street in Plat No. 93 of the Floyd County, Indiana Records.

**Tract II**
Being a part of Lot No. 16 Lower First Street of Plat No. 93, of the Floyd County Record of Plats and more fully described as follows: Beginning at the Northeast corner of Lot No. 16; thence South 27 degrees 24 minutes East along the Westerly line of Lower First Street 27.54 feet to a point; thence South 62 degrees 27 minutes West, 119.90 feet to a point on the easterly line of a 20 ft. alley and which is between two frame garages; thence North 27 degrees 44 minutes west along the Easterly line of said 20 ft. alley 26.60 feet to a point at the Northwest corner of said Lot No. 16; thence North 62 degrees 00 minutes East and parallel with the Southerly line of Lower Market Street, 120.05 feet to the place of beginning reserving the right to maintain and use a cistern which extends across the Southerly line of the above described land.

Tract III
Being a part of Lot No. 16, Lower First Street of Plat No. 93 of the Floyd County Record of Plats, and more fully described as follows, to-wit: Commencing at the Northeast corner of said Lot No. 16; thence South 27 deg. 24' East along the Westerly line of Lower First Street 27.54 feet to a point which is the true place of beginning of the land to be herein described; thence continuing South 27 deg. 24' East along the Westerly line of Lower First Street 22.51 feet to a point at the Southeast corner of said Lot No. 16; thence South 62 deg. 00' West along the Southerly line of said Lot No. 16, and parallel with the Southerly line of Lower Market Street 119.76 feet to a point on the Easterly line of a 20 foot alley; thence North 27 deg. 44' West along the Easterly line of said 20 foot alley 23.45 feet to a point; thence North 62 deg. 27' East 119.90 feet to the place of beginning. Granting, however, the right to the owner of that portion of said No. 16 which lies North of the above described land, to maintain and use a cistern extending over and across the Northerly line of the above described land.

**Tract IV**
Also, a part of Lot No. 14 on the Lower First Street, of Plat No. 93 of the Floyd County Record of Plats, which is more fully described as follows, to-wit: Beginning at the Northeast comer of Lot No. 14; which is also the Southeast comer of Lot No. 16 of Lower First Street in Plat No. 93; thence South 27 deg. 24' East along the Westerly line of said Lower First Street, 1.25 feet to a point; thence South 62 deg. 32' West, 119.76 feet to a point on the Easterly line of a 20 foot alley and which is between two frame bams; thence North 27 deg. 44' west along the Easterly line of said 20 foot alley, 0.15 feet to a point at the Northwest comer of said Lot No. 14; thence North 62 deg. 00' East along the line dividing said Lots Nos. 14 and 16,119.76 feet to the place of beginning, together with the rents, issues, income and profits thereof.

72763:2:JEFFERSONVILLE