UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| EASTERN LIVESTOCK CO., LLC, ) | CASE NO. 10-93904-BHL-11 |
| ) | |
| Debtor. ) | |

**TRUSTEE'S OBJECTION TO THE SUPPLEMENTAL OBJECTIONS
FILED BY FIRST BANK AND THE FLORIDA CREDITORS**

_____

The Trustee[1] objects to the supplemental objections of First Bank[2] and the Florida Creditors[3] filed August 16 and August 17 (Docket Nos. 668 and 670) ("Objection(s)")[4] and asks the Court to overrule the Objections for the following reasons:[5]

The Objections are untimely. The last objection deadline to the Trustee's Motion[6] was August 1, 2011. *See* Order, Docket No. 587. The Objections were filed more than two weeks past the deadline. Late objections cost the estate time and money, especially as to these two objectors, as the Trustee has devoted considerable time and resources agreeing to reserve specific receivable payments identified by First Bank and the Florida Creditors in their earlier objections. These latest Objections should be stricken from the record and or overruled as untimely.

_____

[1] James M. Knauer, Trustee for the Chapter 11 Estate of Eastern Livestock Co., LLC ("Trustee").
[2] The First Bank and Trust Company ("First Bank").
[3] Hilliard–McKettrick Investments, Inc. d/b/a Arcadia Stockyard; Cattlemen's Livestock Market, Inc.; Columbia Livestock Market, Inc.; Hardee Livestock Market, Inc.; North Florida Livestock Market, Inc.; Ocala Livestock Market, Inc.; Okeechobee Livestock Market, Inc.; Sumter County Farmers Market, Inc.; and Madison County Livestock Market, Inc. d/b/a Townsend Livestock Market; Ron Sizemore Trucking, Inc.; Oak Lake Cattle Co.; Eagle Bay, Inc.; and Daniel M. Byrd (collectively "Florida Creditors").
[4] The Trustee also objects to the Supplemental Objection filed by First Bank on August 1, 2011 [Docket No. 653] to the extent it breaches the agreement with the Trustee.
[5] The Trustee incorporates by reference all its prior filed responses to the objections of First Bank and the Florida Creditors, as well as his objection to the timely filed Supplemental Objections filed concurrently herewith.
[6] Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds From Account (filed May 23, 2011, Docket No. 501) (the "Trustee's Motion").

The Trustee and the Florida Creditors have already jointly agreed to a September 1, 2011 deadline to submit a scheduling order with respect to proposed proceedings to resolve the claims to particular accounts (the "Forthcoming Agreed Scheduling Order"), and that the Florida Creditors' additional objections should be consolidated and resolved pursuant to the Forthcoming Agreed Scheduling Order.  *See* Joint Motion To Extend Deadline to File Scheduling Orders In Certain Contested Matters, Docket No. 595, and Order Granting Joint motion to Extend Deadline to file Scheduling Orders In Certain Contested Matters, Docket No. 606.  The Florida Creditors' "me-too" Objection joining First Bank is superfluous as their claims will be, by their own agreement, addressed by the procedure and schedule established in the Forthcoming Agreed Scheduling Order.

First Bank's Objection violates the agreement between the Trustee and First Bank filed August 1, 2011 [Docket No. 633].  As consideration for the Trustee not objecting to another extension of time for First Bank to determine if any of its collateral is mixed up in the Debtor's estate, First Bank agreed to identify those specific accounts to which it had colorable claim and waive its objections to the transfer of the remaining escrowed accounts, and the Trustee agreed to reserve the identified accounts for resolution with First Bank.  Instead First Bank now seeks to block the transfer of all the accounts.

First Bank is not a creditor of the ELC estate.  It never loaned money to nor sold anything to ELC.  First Bank's only interest in this case, as yet unproven or asserted with any particularity, is that some of its collateral cattle may have been be mixed up with the estate's cattle.  In other words, First Bank's only legal basis for appearing in this case is that specific property may not be estate property because of a possible physical mixing of cattle, not because of any legal theory or statutory right of recovery.  Notwithstanding these facts, First Bank asserts

a plethora of legal theories in its numerous objections to nearly every filing in this case, even though it does not have a claim that could share generally in any estate assets.  To get any recovery it must prove that <u>specific</u> property is not property of the estate because the estate never owned it in the first place.[7]  That type of claim is required to be brought by adversary proceeding, *see* FRBP 7001(1), and the Court should require First Bank to adhere to the rules.  First Bank's continued general participation in this case is consuming estate assets that could be distributed to actual creditors of the Debtor.   As to the Trustee's Motion, First Bank has agreed and admitted its only potential interest is in four accounts that the Trustee has agreed to not transfer pending First Bank, within a reasonable time, asserting the specific facts and law it believes supports its interest.

        First Bank (and by their adoption, the Florida Creditors) misstate the facts associated with the Cattle Sales Proceeds Motion.[8]  The Cattle Sales Proceeds Motion and the procedures approved by the Court (not usurped by the Trustee as First Bank asserts) provided an indemnification by the estate to persons who owed the estate money for cattle.  The Court approved that procedure in order to liquidate those receivables and prevent yet more "other-forum" interpleader actions from being filed.  Then, parties who believed they had a claim that was superior to the estate's claim, had the opportunity to file a claim and assert with particularity the facts and the law which they believed trumped the estate's claim to particular receivables.  Those persons who did assert claims to particular accounts are moving forward with the Trustee in claim resolution contested matters (including the Florida Creditors and First Bank).

---

[7] Oddly, that is exactly the type of claim that Mr. Dietrich, an unpaid cattle seller, made and with which the Trustee agreed, but to which First Bank filed an objection though First Bank could not have had a claim to the monies at issue <u>through</u> the Debtor's estate.  Luckily for Mr. Dietrich, the Court allowed him to take his money and go home.  First Bank could sue Mr. Dietrich, but not by using this case.

[8] Filed by the Trustee on January 6, 2011, Docket No. 141 and approved by an order of this Court on January 24, 2011 (Docket No. 234)("<u>Cattle Sales Proceeds Motion</u>").

For those persons who complained that the information provided in the Trustee Motion was not sufficient to allow a determination as to the claims they might have against specific receivables, the Trustee agreed to provide additional information, and the Court ordered a process (that was agreed to by the objectors) whereby the Trustee would provide additional information and objectors were given specific deadlines (July 8, 2011 and August 1, 2011) to assert their claims or objections with particularity as to both the facts and the law.  No one did.  The objectors instead peppered the Trustee and the Court with generalized assertions and no specific facts or law that would support a claim to the Cattle Sales Proceeds superior to the estate's.  The purpose of the Cattle Sales Proceeds Motion was to conserve estate resources by avoiding the expense of filing and prosecuting turnover actions against the buyers of the Debtor's cattle.  The Court-approved process would likewise provide creditors an opportunity, without the expense of an adversary proceeding, to prove a claim superior to the estate's claim to specific property and to assert the facts and law supporting that claim.  At this point no objection has stated either facts or law that support a claim to the receivables or to any specific receivable better than the estate.[9]

First Bank (and by their adoption, the Florida Creditors) exhibits a misunderstanding of the law and misconstrues the law in their untimely Objections.  First Bank first asserts that the estate could not have a valid account receivable relating to cattle "for which it never paid and thus was in no position to sell." First Bank Objection, ¶ 1.  This is analogous to asserting that a debtor who did not pay its suppliers for goods could not collect from the customers who bought the goods from the debtor -- usually not a winning argument for refusing to pay the debtor's estate, or to recover proceeds from the Debtor's estate.

---

[9] The Trustee has agreed to go forward in structured contested matters with certain objectors who identified specific accounts, but this is not an admission by the Trustee as to the validity of the facts or the law asserted by those parties.

First Bank then quotes to this Court as if it is black letter law, that "Payments for livestock are trust funds." First Bank Objection, ¶ 4. This is just wrong.[10] First Bank is quoting the *heading* of 9 C.F.R. § 201.42(a) (attached in its entirety hereto as Exhibit 1). This heading is no more a statement of law than the heading of paragraph (b) of that section (*Custodial accounts for shipper proceeds*) or paragraph (e) of that section (*Accounts and records*).

The title of 9 C.F.R. §201.42 is "Custodial accounts for trust funds." The paragraph from which First Bank quotes the heading states in its entirety (without the heading): "Each payment that a livestock buyer makes to a market agency selling on commission is a trust fund. Funds deposited in custodial accounts are also trust funds." 9 C.F.R §201.42(a). No facts have been asserted to support that the Debtor was a "market agency selling on commission."[11] Neither did the Debtor maintain any custodial accounts, which it would have been required to do under the PSA if it had been a market agency selling on commission.

Persons in the live cattle industry who did business with the Debtor knew that the Debtor was a dealer, and that the remedy PSA provides to unpaid cattle sellers when a dealer fails is the bond required to be posted by the dealer. *See* "Akers: Eastern and how livestock industry works," *The Farmer's Pride*, page 5, Wednesday, January 5, 2011, attached hereto as Exhibit 2 ("Akers Article"). Jim Akers, the chief operating officer of Blue Grass Livestock Marketing Group (a market agency selling on commission and an entity that has objected to the Cattle Sales Proceeds Motion) explains that producers would be much better off if they had sold their cattle through a livestock auction (i.e. a market agency selling on commission like his),

---

[10] First Bank states that this quote is "plainly stated in the Act," but cites the federal regulations as the source. The Act is the Packers and Stockyards Act, 1921 (7 U.S.C. §§181 *et seq.*) ("PSA").

[11] Facts have been asserted that the Debtor was a "market agency buying on commission" and assuming for the purposes of this argument that were true, "market agencies buying on commission" do not hold payments to it in trust nor are they required to maintain custodial accounts. *See* 9 C.F.R §201.42(a). A "market agency selling on commission" is an entity like a livestock auction that is accepting consignments of cattle from producers and selling them as the agent of the producer and is required under PSA to establish a custodial account and to hold the payments it receives for selling the cattle of the producers in its custodial account as trust funds. *Id.*

because then they are protected from the failure of the livestock auction by the custodial trust fund accounts the livestock auction is required to maintain under PSA. Mr. Akers contrasts this scenario with what the Debtor was – a dealer – that was required to do nothing more to protect cattle producers under PSA than post a bond. *See* Akers Article.

First Bank then makes a strangled argument related to statutory interpretation and plain meaning. First Bank accuses the Trustee of making a "straw man argument" because the Trustee states that the Debtor is not a packer and "trust funds" under PSA only applies to packers. First Bank Objection, ¶ 5. First Bank quotes Justice Scalia for the proposition that courts are to presume that a legislature "says in a statute what it means and mean in a statute what it says there," and explains to this Court that this directive means that courts are to look to the plain meaning of statutes and not overlook sections or add sections that are not in the plain words of the statute. *Id.* However, that is exactly what First Bank is asking this Court to do – apply the trust funds and custodial account requirements that under PSA apply only to packers and to market agencies selling on commission to every cattle sale payment. That interpretation might surprise people in the live cattle trade.

Finally, not on its own behalf, but for the benefit of others, First Bank refers to the unsupported assertions of others that the Debtor is entitled only to "commissions." First Bank offers no facts to support this assertion and it is not relevant to any interest First Bank might have in the Cattle Sales Proceeds (except possibly to reduce it).

WHEREFORE, the Trustee requests that the Court overrule the late-filed objections of First Bank and the Florida Creditors, and overrule all other objections of First Bank and the Florida Creditors except as to those specific accounts that the Trustee has agreed to set aside for structured resolution and grant the Trustee all other necessary and needed relief.

Respectfully submitted,

BAKER & DANIELS LLP

By:  /s/Terry E. Hall

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Robert K. Stanley (#1745-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
robert.stanley@bakerd.com
terry.hall@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader (#14633-49)
Baker & Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@bakerd.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 19, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| Christopher E. Baker<br>cbaker@hklawfirm.com | James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com |
| David A. Laird<br>david.laird@moyewhite.com | Christopher E. Baker<br>cbaker@hklawfirm.com | Jerald I. Ancel<br>jancel@taftlaw.com |
| Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com | David Alan Domina<br>dad@dominalaw.com |

BDDB01 6820636v4

| | | |
|---|---|---|
| Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>jnstine@vorys.com | Jill Zengler Julian<br>Jill.Julian@usdoj.gov |
| Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com | Michael Wayne Oyler<br>moyler@rwsvlaw.com |
| Jason W. Cottrell<br>jwc@stuartlaw.com | | |

   I further certify that on August 19, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher
asr@blancolaw.com

                  /s/ Terry E. Hall

BDDB01 6820636v4