UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**TRUSTEE'S RESPONSE TO CERTAIN SUPPLEMENTAL OBJECTIONS TO PURCHASE MONEY CLAIMS REPORT, MOTION TO TRANSFER FUNDS AND NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT[1]**

James A. Knauer, chapter 11 trustee (the "Trustee") in the above-captioned case (the "Chapter 11 Case") respectfully files this response to certain Supplemental Objections[2] to the Trustee's Motion (as defined herein) asking that the Supplemental Objections be overruled and the relief requested by the Trustee in the Trustee Motion be granted. The Trustee incorporates by reference herein the Trustee's First Response.[3] In support of this further Response the Trustee says:

### I.  Background

The Trustee filed the *Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account* [Dock. No. 501] (the "Trustee's

---

[1] The Trustee is responding separately to the multiple "Supplemental Objections" filed by The First Bank and Trust Company and the "Florida Creditors" as defined in the Trustee's Motion.

[2] The Supplemental Objections addressed in this Response are (i) Supplemental Objection of Coffeyville Livestock Market, LLC, filed August 1, 2011 [Dock. No. 650] ("the Coffeyville Supplemental Objection"); (ii) Supplemental Objection of Bluegrass Stockyards, LLC; Bluegrass Stockyards East, LLC; Bluegrass Stockyards of Campbellsville, LLC; Bluegrass Stockyards of Richmond, LLC; Bluegrass South Livestock Market, LLC; Bluegrass-Maysville Stockyards, LLC; East Tennessee Livestock Center, Inc.; Piedmont Livestock Company, Inc., and Southeast Livestock Exchange, LLC, filed August 1, 2011 [Dock. No. 651] (the "Bluegrass et al. Supplemental Objection"); and (iii) Supplemental Objection of Rex Elmore, filed August 1, 2011 [Dock. No. 652] ("the Elmore Supplemental Objection", and collectively, the "Supplemental Objections"). The entities making the Supplemental Objections may be referred to herein as the "Supplemental Objectors".

[3] *Trustee's Omnibus Reply To Objections To Purchase Money Claims Report* [Dock. No. 564] (the "Trustee First Response") filed on June 23, 2011.

BDDB01 6816727v5

Motion")[4] on May 23, 2011, asking that the Court enter an order finding that asserted Purchase Money Claims were not secured claims against the Cattle Sales Proceeds, authorizing the Trustee to release the Cattle Sales Proceeds from the escrow account and transfer them to the Trustee's general operating account, and granting the Trustee such other and further relief as the Court deems appropriate. Various creditors and parties in interest (each, an "Objecting Party"; collectively, the "Objectors") filed objections to the Trustee's Motion (collectively, the "Objections") on or around June 17, 2010.[5]

On July, 1, 2011, the Court entered its *First Order Regarding Trustee's Purchase Money Claims Report* [Dock. No. 587] (the "First Order"), (i) identifying each of the Objections, (ii) ordering specific actions and filings, including the requirements for any supplemental objections to the proposed transfer of the Transfer Funds (as defined in the First Order); (iii) ordering the Trustee to amend and file a replacement "Exhibit A" to the Trustee's Motion on or before July 8, 2011, providing to the extent such information is available to the Trustee: the identity of the seller of the cattle to the Debtor, and other material information such as the date of sale, the number, type, and weight of the cattle sold (the "Amended Exhibit A"); and (iv) permitting any Objector to supplement its Objection (regarding Cattle Sale Proceeds other than the Transfer Funds) by filing on or before August 1, 2011, a supplemental objection ("Supplemental Objection") asserting, to the extent such information is available to the Objector, which specific Cattle Sales Proceeds described on Amended Exhibit A are the subject of the objection, relevant facts giving rise to the objection, and the legal argument supporting the objection (collectively,

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to each in the Trustee's Motion.
[5] A table of the Objections listing docket number and objecting party is attached as Exhibit A to the Trustee First Response.

the "Supplemental Objection Requirements"). The Trustee filed the Amended Exhibit A on July 8, 2011 [Dock. No. 596].

## II.     The Bluegrass et al Supplemental Objection

The Packers and Stockyards Act, 1921 (the "PSA," 7 U.S.C. §§ 181 *et seq.*) and the federal regulations under the Code of Federal Regulations that administer the PSA (the "PSA Regulations," 9 C.F.R. §§ 201 *et seq.*), among other things, distinguish among a "dealer," a "market agency buying on commission" and a "market agency selling on commission." There are material differences in the PSA and the PSA Regulations among these three entity designations, but many of the Objections and the Supplemental Objections obfuscate certain critical differences: (i) no provision under the PSA or the PSA Regulations provides that proceeds paid to a dealer for the sale of livestock constitute "trust funds," (ii) only payments deposited in a custodial account or payments that a livestock buyer makes to a market agency *selling on commission* are "trust funds," and (iii) only market agencies *selling on commission* are required to establish and maintain a separate custodial account. *See* 9 C.F.R. § 201.42 (copy attached as Exhibit A). General references to a "market agency," the requirement to maintain a "custodial account," or that payments for sales of livestock are "trust funds" without anchoring these terms to their statutory and regulatory provisions are misleading and wrong.

As described in more detail below, the Debtor was registered under the PSA as a dealer.[6] This kind of registrant is not required under the PSA to maintain a custodial account, nor are payments made to this kind of registrant for the sale of cattle either by statute or regulation determined to be "trust funds" under the PSA. The statutory remedy under the PSA for unpaid

---

[6] The Debtor's annual report to PSA was filed on the "Annual Report of Dealer or Market Agency Buying a Commission." There have been some as yet unproven allegations that the Debtor may have been at times a market agency buying on commission. Even assuming for purposes of this argument that that were true, there are no facts alleged that would characterize the Debtor as a market agency selling on commission.

3

sellers of cattle of the Debtor's registration is to file a claim against the registrant's bond and/or file a lawsuit. *See* 9 C.F.R. §§ 201.29, 201.33.

In addition to asserting a need for more factual information from the Trustee, but failing to allege facts in support of their own legal theory, the Bluegrass et al. Supplemental Objection argues that the Debtor operated as a "market agency" selling on commission, and accordingly the proceeds of such alleged commission sales are treated as "trust funds" under 9 C.F.R. §§201.39 and 201.42. But Bluegrass is well aware that Eastern did not conduct business as a "market agency selling on commission" required to maintain a custodial account. The position asserted by the Bluegrass Entities[7] is not accurate and directly contradicts how their Chief Operating Officer Jim Akers publicly described the Debtor's operations recently to the cattle markets community.

Earlier this year, Mr. Akers sought to explain the Debtor's failure and to educate farmers and others in the livestock industry on how to best avoid putting themselves at risk in the future. On January 5, 2011, The Farmer's Pride published an article by "Jim Akers, Chief Operating Officer of the Bluegrass Livestock Marketing Group" titled *"AKERS: Eastern and how the livestock industry works"* (the "Akers Article"), a copy of which is attached hereto as Exhibit B. In the article, Mr. Akers explains at length that the Debtor operated as a dealer, and as a dealer, was not a market agency selling on commission required to maintain custodial accounts. In part, Mr. Akers states:

> *The failure of Eastern Livestock, arguably the largest cattle dealer in the country, has caused many people to ask questions about how the marketing system works and what protections are in place for farmers and ranchers as well.* (Akers Article, p.5) ... *It is important to remember that not a single farmer or rancher lost a penny in this*

---

[7] Bluegrass Stockyards, LLC; Bluegrass Stockyards East, LLC; Bluegrass Stockyards of Campbellsville, LLC; Bluegrass Stockyards of Richmond, LLC; Bluegrass South Livestock Market, LLC; and Bluegrass-Maysville Stockyards, LLC (the "Bluegrass Entities").

4

> *whole scenario if they did their business through a licensed and bonded auction livestock market. (Akers Article, p.5)...What makes the situation very different for customers doing business with an auction market is the custodial account. (Akers Article, p.5)... Broker/dealers do not maintain custodial accounts making it very difficult for the Packers and Stockyards Administration to audit their activities. (Akers Article, p.5)…Over the past several years there have been several situations where the big brokers/dealers have gone down and hurt many markets, farmers and ranchers in the process i.e. George Young, John Morgan and Eastern Livestock.  During the same period of time there have been very few instances where an auction market failed and hurt anyone. (Akers Article, p.5-6)…. There are many different scenarios under which cattle are purchased in Kentucky.  The safest for the farmer is when they take their animals to an auction market. (Akers Article, p.6)…. Be wary and very careful if you decide to do business on your own in any format other than consigning your animals to a licensed and bonded livestock auction market.  Remember, the farmers and ranchers that did this did not lose a penny when Eastern collapsed. (Akers Article, p.6)[8]*

The Bluegrass Entities' knowledge and acknowledgement that the Debtor did not operate as a market agency selling on commission required to maintain a custodial account is consistent with Debtor's registrations with the Grain Inspection, Packers and Stockyards Administration ("GIPSA") as required under the PSA.  Attached as Exhibit C is the GIPSA schedule "Marketing Agencies Buying On Commission and Dealers In The United States Current as of February 1, 2010." The Debtor appears on page 19 of the schedule, referencing the required dealer's bond at that time of $875,000.  Federal courts have recognized that where a bonded dealer and registrant on a market agency's bond was known as a bonded dealer and published by the Department of Agriculture as a bonded dealer, it would be presumed that purchases of cattle at a public stockyard occurred in such dealer's capacity as a dealer. *See Lewis v. Goldsborough*, 234 F. Supp 524 (E.D. Ark. 1964); *see also, Baldwin v. Hartford Acc. & Indem. Co.*, 168 F. Supp. 86 (D.C. Neb. 1958), *aff'd* 262 F.2d 202 (8th Cir. 1958) (In an action by trustee against surety on

---

[8] Mr. Akers' article also reveals that Tommy Gibson, the Debtor's chief executive, is also a shareholder in the Blue Grass Livestock Marketing Group.

5

general livestock bond given by livestock dealer as one "doing business as Desher Sales Company" pursuant to 7. U.S.C. § 204 to recover for the benefit of persons who had been paid by dealer with insufficient fund checks for livestock sold to dealer, it would be presumed that dealer, in purchasing livestock at stockyards and sales barns was lawfully doing so as one "doing business as "Desher Sales Company" and not in a manner forbidden and penalized by law).

Also, as noted above, the Bluegrass et al Supplemental Objection does not assert any facts (as required by the Supplemental Objection Requirements) to support a determination that the Debtor operated as a market agency selling on commission with respect to any particular cattle transactions at issue in the Trustee's motion, which is the fundamental prerequisite to advancing the argument that the Cattle Sale Proceeds constitute "trust funds."  Instead, the Bluegrass et al Supplemental Objection refers generally to a "market agency," the requirements of "custodial accounts," and rights arising thereunder without any facts supporting their contention that these terms apply to the operations of Debtor as a dealer (or perhaps a market agency <u>buying</u> on commission) under the PSA.

The Bluegrass et al Supplemental Objection next complains that their claims should only be determined by an adversary proceeding.  The Trustee is not aware of any order preventing the Bluegrass Objectors from filing an adversary proceeding.  However, the Trustee does believe that an adversary proceeding in Bluegrass' particular circumstances is unwarranted.

Bankruptcy Rule 7001 lists nine (9) discrete disputes identified as matters to be adjudicated by adversary proceeding, included among them "(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002; [and] (2)  a proceeding

6

to determine the validity, priority, or extent of a lien or other interest in property other than a proceeding under Rule 4003(d)…." Fed. R. Bankr. P. 7001. The parties to the Bluegrass et al. Supplemental Objection argue that the Debtor's estate is not entitled to administer the proceeds from the sales of the Debtor's cattle absent an adversary on the theory that such proceeds are impressed with a "constructive trust" based on the argument that the proceeds are the product of Debtor's sales as a purported "market agency." Though the specific demand that an adversary proceeding is required may be new, the Supplemental Objectors arguments are the same as those addressed in the Trustee's First Response at pages 6 – 12, *"V. The Remaining Objections Fail to Cite a Legal Basis For Any Liens In or Claims Against Specific Cattle Sales Proceeds,"* and the Trustee accordingly respectfully refers the Court to the Trustee's First Response. What is raised by the Supplemental Objectors falls short of what is required for an adversary under Bankruptcy Rule 7001(2) because no facts or law have yet been raised that supports a claim that any of them have a claim to any particular funds superior to any other creditor. As pointed out in the Trustee's First Response:

> ….. none of the Objecting Parties obtained a court order prepetition that operated to impress a constructive trust over Debtor's assets and because such alleged constructive trusts do not arise by operation of statute, the Cattle Sales Proceeds are property of Debtor's estate under 11 U.S.C. § 541…
>
> …..
>
> The Objecting Parties that claim rights to specific Cattle Sales Proceeds are in no different situation than any number of the hundreds of creditors in this Chapter 11 Case. By all appearances, it is likely that Debtor committed numerous acts of fraud prior to the Petition Date. This does not mean that a constructive trust should be impressed on Debtor's assets for the benefit of each and every creditor. Instead, the Bankruptcy Code provides a specific remedy to a creditor or creditors damaged by a debtor's prepetition fraud: the damaged creditor can object to the discharge of its debt under 11 U.S.C. § 523(a).

7

Trustee's First Response, pages 9-10. Interestingly (or oddly), despite being given an opportunity to respond to the Trustee's argument on the restriction of raising a "constructive trust" argument within the context of a bankruptcy case, none of the Objectors (excepting as to those parties with whom the Trustee has agreed to litigate within separate contested matters) responded to justify their legal assertions of constructive trust.

Moreover, where parties have had a full and fair opportunity to be heard on the merits of a dispute, as is the case on these matters evidenced by the fact that this filing is in fact the Trustee's Supplemental Response to Supplemental Objections, courts have declined to require the filing of an adversary complaint even if technically required under Bankruptcy Rule 7001(2).[9] *See In re Trico Marine Services, Inc. et al.*, 450 B.R. 474, 476 (Bankr. DE 2011) (Debtors were not required to bring an adversary proceeding to determine validity and priority of claim for make whole premium asserted by indenture trustee where all parties had full and fair opportunity to be heard on the merits and issue concerned construction and interpretation of court's prior order); s*ee also*, *In re Sea Catch, Inc.,* 36 B.R. 226, 229 (Bankr. Alaska 1983) (chapter 7 trustee not required to initiate an adversary proceeding to oppose motion by creditor of the estate to disburse monies in fund recovered on account of claimants' lien: "Given the similarities of proceedings under Bankruptcy Rule 9014 and Part VII of the Bankruptcy Rules, the failure of claimants to establish the validity of the claimed lien and the absence of apparent prejudice to the claimants, … no useful purpose would be served by requiring the trustee to file a complaint").

---

[9] However, the Trustee believes (as stated in his objection and motion to strike First Bank's late filed supplemental objection) that First Bank should be required to confine its participation in this case to an adversary proceeding as it is not a creditor of the Debtor and its only potential claim rests on a physical mixing of its collateral cattle with the Debtor's cattle.

**V.      Complaints of Inadequate Information Provided by the Trustee In Compliance With The First Order Are Unfounded**

The Bluegrass et al Supplemental Objection and the Elmore Supplemental Objection complain that the Trustee has failed to comply with the First Order.  However, the Trustee filed the Amended Exhibit A as required, attaching a spreadsheet that, where available, the Trustee lists with respect to the Cattle Sale Proceeds: (i) the Date of Receipt, (ii) the Debtor's Invoice Number; (iii) the Payor/Customer; (iv) specific sums at issue in the Superior Adversary;[10] (iv) the Total Sums Held in the Account; (vi) the sum transferred earlier as Unobjectionable Proceeds, if any; (vii) the sum remaining to be transferred as Cattle Sale Proceeds, if any; (viii) the Cattle Source/Producer State; (ix) Contract Number; (x) Contract Date; (xi) Number of Head per Original Price; (xi) Type (H/S); (xii) Weight; and (xiii) Shipment Date.  Anticipating that the Objectors would want to see the documents underlying the aggregated data on the Amended Exhibit A and though not ordered to do so, on July 6, 2011 and July 8, 2011, the Trustee, through counsel, further emailed every Objector (i) advising them of a database established by the Trustee containing the supporting documentation of the aggregated data reflected on Amended Exhibit A and regarding the Transfer Funds referenced in the First Order (the "Source Documents"), and (ii) providing every Objector access to that database.

The Trustee has also provided additional information in response to more requests from the Bluegrass Entities and others.  However, if there has been no legal theory advanced that would give the Bluegrass Entities or any other of the Objectors a claim superior to the estate's claim or to the claim of any other estate creditor in the Cattle Sales Proceeds, tracing the acquisition and disposition of every single heifer and steer through the Debtor's cattle business is pointless.  At some point, perhaps now, given the amount of the estate's resources being spent on

---

[10]  Superior Livestock Auction, Inc. v. Eastern Livestock Co., LLC, United States Bankruptcy Court, Southern District of Indiana, New Albany Division, Adversary No. 11-59088.

9

these cattle hunts, any further informational requests should be entertained only if a wining legal theory is first advanced that could afford the relief sought by the person seeking the information.

The Elmore Supplemental Objection suggests Elmore has reviewed the Source Documents, but is not satisfied with the specifics provided but has also not given the Trustee any information on what else it wants.  Other than the sums of $4,010.49 and $3,914.98 per the Debtor's returned checks # 016105 and #016135, Elmore's complaints do not identify what specific facts it would need to identify specific proceeds in which Elmore claims an interest. Moreover, Elmore fails altogether to identify any legal basis on which Elmore's purported interest in any portion of the Cattle Sale Proceeds "trumps" or is greater than the interest of the Debtor's estate as required by the Supplemental Objection Requirements.

## VI.     The Coffeyville Supplemental Fails to Cite a Legal Basis For Any Liens In or Claims Against Specific Cattle Sales Proceeds

Like a number of the Objections, the Coffeyville Supplemental Objection asserts generally liens or rights in or against part of the Cattle Sales Proceeds.  Coffeyville specifically claims a purchase money security interest in the amount of $19,889.50, and as support, references its proof of claim filed in the case.  Coffeyville, however, fails to cite facts or law sufficient to establish a valid lien in or specific and superior claims against the specific Cattle Sales Proceeds listed in the Trustee's Motion.

## VII.     Conclusion

None of the Supplemental Objections make valid objections to the relief requested by the Trustee Motion.  As set forth herein and in the Trustee's First Response incorporated herein, the Supplemental Objections assert invalid claims to the Cattle Sales Proceeds, failing in all cases to fully comply with the Supplemental Objection Requirements of specifying facts and law.

10

WHEREFORE, the Trustee requests that the Court enter an order (i) overruling the Objections and Supplemental Objections, except where the Trustee advises the Court that the Trustee and the Objectors and Supplemental Objectors have agreed to specific procedures for final resolution of the Objections and Supplemental Objections, (ii) authorizing the transfer of the remaining Cattle Sales Proceeds to the Trustee's general operating account, and (iii) granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ Wendy W. Ponader

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
terry.hall@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader (#14633-49)
Baker & Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@bakerd.com

11

## **CERTIFICATE OF SERVICE**

       I hereby certify that on August 19, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| Christopher E. Baker<br>cbaker@hklawfirm.com | James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com |
| David A. Laird<br>david.laird@moyewhite.com | Christopher E. Baker<br>cbaker@hklawfirm.com | Jerald I. Ancel<br>jancel@taftlaw.com |
| Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com | David Alan Domina<br>dad@dominalaw.com |

BDDB01 6816727v5

13

| | | |
|---|---|---|
| Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>jnstine@vorys.com | Jill Zengler Julian<br>Jill.Julian@usdoj.gov |
| Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com | Michael Wayne Oyler<br>moyler@rwsvlaw.com |
| Jason W. Cottrell<br>jwc@stuartlaw.com | | |

I further certify that on August 19, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher
asr@blancolaw.com

/s/ Wendy W. Ponader

BDDB01 6816727v5