UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**FIFTH THIRD'S OBJECTION TO THE RESPONSE AND OBJECTION OF BRENT KUEHNY D/B/A DOLLAR K CATTLE CO., AND THE BANK OF KREMLIN TO THE TRUSTEE'S PURCHASE MONEY CLAIMS REPORT, MOTION TO TRANSFER FUNDS AND NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT**

Fifth Third Bank ("Fifth Third"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the Response and Objection of Brent Kuehny d/b/a Dollar K Cattle Co., and the Bank of Kremlin to the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account [Dkt. 544] (the "Kremlin Objection"). In support of this Objection, Fifth Third respectfully states as follows:

**Background**

On May 23, 2011, James M. Knauer, chapter 11 trustee ("Trustee") in the above-captioned case (the "Bankruptcy Case") filed the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account [Dkt. 501] (the "Purchase Money Claims Report").

Certain creditors and parties in interest objected to the relief sought by the Trustee in the Purchase Money Claims Report. Specifically, Brent Kuehny d/b/a Dollar K Cattle Co. ("Kuehny") and The Bank of Kremlin ("Kremlin"[1]) filed the Kremlin Objection alleging that: (a) cattle and proceeds from the sale of cattle are subject to a constructive trust in favor of Kuehny under Oklahoma law; and (b) cattle and proceeds from the sale of cattle are subject to Kremlin's valid perfected priority security interest created by Kuehny.

---
[1] To the extent necessary, references to "Kremlin" should also be construed so as to include Kuehny.

1

Attached to the Kremlin Objection are copies of (a) three documents (Exhibits A, B and C) identified by Kuehny and Kremlin as "Agricultural Security Agreements" dated as of January 21, 2010, and (b) three documents (Exhibits D, E and F) identified by Kuehny and Kremlin as "Promissory Notes" dated January 21, 2010 (collectively, the "Kremlin Exhibits"). No other documentation was attached to the Kremlin Objection.[2]

On June 23, 2011, the Trustee filed its Omnibus Reply to Objections to Purchase Money Claims Report [Dkt. 564] (the "Trustee's Objection"), noting that the constructive trust arguments asserted by a number of parties in interest, including Kuehny and Kremlin in the Kremlin Objection, fail as a matter of law.

Concurrent with the filing of this Objection, Fifth Third filed its Limited Statement and Memorandum in Support of Trustee's Omnibus Reply to Objections to Purchase Money Claims Report (the "Limited Statement"). In the Limited Statement, Fifth Third notes that objections which rely upon a theory of constructive trust must fail as a matter of law.

### Objection to Relief Requested in the Kremlin Objection

**I.   Kremlin has not asserted an interest in property which is the subject of the Purchase Money Claims Report.**

In the Purchase Money Claims Report, the Trustee identified 88 specific payments paid to the Trustee. See, Trustee's Objection, page 3. These 88 payments are payments received by the Trustee from the sales of certain identified cattle, in each case, as identified and indicated on Exhibit A to the Purchase Money Claims Report. The Kremlin Objection neither asserts nor alleges an interest in: (1) the cattle sold which gave rise to one or more of the 88 payments identified on Exhibit A to the Purchase Money Claims Report; or (2) the proceeds of sales identified on Exhibit A to the Purchase Money Claims Report. Instead, Kremlin seeks a

---

[2] Of course, despite such attachment, none of the documents have been admitted into evidence. Fifth Third hereby objects to such admission.

determination that Kremlin is vested in a prior perfected interest in cattle and cattle proceeds *not* the subject of the Purchase Money Claims Report.  Accordingly, the Kremlin Objection seeks novel relief not yet ripe for consideration, and which is of no relevance to a consideration of the relief requested by the Trustee in the Purchase Money Claims Report.

As the Kremlin Objection seeks novel, declaratory relief, Fifth Third asserts that the Kremlin Objection should have properly been filed as an adversary complaint[3] and served on all necessary parties in order to afford this Court and parties in interest a proper means of ascertaining the nature and extent of Kremlin and Kuehny's claims.  <u>Fed. Rule Bankr. Proc. 7001</u>.  Framing this novel request as an "objection" to relief presently before the court is an improper attempt to skip pleading requirements and evidentiary hurdles which Kremlin and Kuehny must clear to receive the relief they request.  In positing their position as "responsive" to the Trustee's current request, Kremlin and Kuehny seek to improperly shift the burden of proving the allegations contained its informal complaint (for a determination of a prior and/or continuing interest in certain cattle and/or proceeds thereof) to the Trustee to *disprove* such allegations. <u>See,</u> Kremlin Objection, ¶ 3 (after admitting in paragraph 2 that the funds Kremlin claims are not identified in Exhibit A to the Purchase Money Claims Report, stating "The Trustee in his Report has offered no rationale or argument as to why Kuehny allegedly is not entitled to a constructive trust on the cattle and the proceeds of the cattle, or why Kremlin allegedly does not have a valid perfected priority security interest in the cattle and the proceeds of the sale of the cattle");  and again at ¶¶ 23-24 ("The Trustee has offered no cogent basis for ignoring Kuehny's claim…and Kremlin's security interest").  The Trustee is not required to offer evidence "disproving" interests asserted by Kuehny or Kremlin in property of the estate which is

---

[3] Fifth Third notes that, in many respects, the Kremlin Objection reads as if it were intended to be a complaint.

not the subject of the current contested motions and pleadings. To the extent that Kuehny and Kremlin wish to be confirmed by court order in interests or claims asserted against the Debtor's estate, Kuehny and Kremlin must affirmatively bear the burden of demonstrating their own assertions, and must do so through the commencement of an independent adversary proceeding.

## II.     Kremlin has offered no evidence in support of the Kremlin Objection.

Notwithstanding the fact that Kremlin and Kuehny improperly assert novel relief in response to a pleading addressing property in which Kremlin and Kuehny do not claim an interest, Kremlin has not offered evidence: (1) that any of the transactions alleged in the Kremlin Objection took place; (2) of the grant and perfection of a security interest in Kremlin's favor; or (3) a direct and traceable relationship between property in the possession of the Debtor and the as-yet unidentified steers allegedly at issue.

Kremlin asserts a priority, perfected security interest in cattle allegedly sold to the Debtor on or about November 1, 2010. Kremlin does not identify, by lot number or otherwise, the specific "steers" alleged to have been sold to the Debtor. Kremlin does not identify when, where or how such steers were alleged to have been delivered, either to the Debtor or to a third-party at the Debtor's instruction. Kremlin does not offer evidence in support of its contention that these same unidentified steers were sold to Mark Hohenberger, or that these same unidentified steers were sold by Hohenberger to J+F Oklahoma Holdings.

Kremlin relies solely upon the Exhibits to prove that Kremlin holds a prior perfected security interest in the unidentified steers. Fifth Third submits that the Exhibits have not been authenticated or submitted into evidence before the court and, accordingly, are not determinative of any fact or assertion at this juncture. Further, these Exhibits, consisting of a few alleged "Agricultural Security Agreements" and "Promissory Notes" are in large part illegible and difficult to decipher, neither proving nor providing evidence in support of Kremlin's assertions

4

that it holds a priority perfected security interest. Kremlin, therefore, has failed to offer any evidence: (1) a security interest was, in fact, granted by Kuehny to Kremlin; (2) such security interest was intended to cover and, in fact, did cover the unidentified steers at issue in the alleged November 2010 transaction; (3) such security interest was still in force and effect as of the date of the Order for Relief entered in this case; and (4) Kremlin took the necessary steps to properly perfect a lien in and to the collateral (the as-yet unidentified steers) at issue.

Kremlin has further failed to offer any evidence which conclusively establishes that property or proceeds in the Debtor's possession may be directly traced to the unidentified steers alleged to be the subject of the Kremlin Objection. Fifth Third submits that the significant evidentiary concerns related to Kremlin and Kuehny's assertions make the issues raised in the Kremlin Objection incapable of resolution in Kremlin or Kuehny's favor.

### III.     Kremlin seeks relief against a *res* which does not exist.

Neither Kremlin nor Kuehny assert that the Debtor is still in possession of the unidentified steers. See, Kremlin Objection at ¶ 7. Neither Kremlin nor Kuehny assert that any alleged subsequent purchaser is still in possession of the unidentified steers. Kremlin and Kuehny have affirmatively indicated that the Debtor never received any funds from the alleged resale of cattle purchased from Kuehny. See, Kremlin Objection at ¶¶ 2, 9. Kremlin and Kuehny do, however, assert an interest against the Debtor in the unidentified cattle and the cash proceeds of the unidentified cattle. See, Kremlin Objection at ¶ 2 ("The funds clams [sic] by Kuehny and Kremlin consist of $158,494.02 that Hohenberger agreed to pay to Eastern for the cattle"); ¶ 3 ("The Trustee…offered no rationale or argument as to why Kuehny allegedly is not entitled to a constructive trust *on the cattle* or the *proceeds of the cattle*…"); ¶ 24 ("To the extent the Trustee has or subsequently receives the $158,494.02…such funds belong to Kuehny…"). Fifth Third submits that, as a matter of law, no remedy impacting a *res* (here, the unidentified

cattle and/or the "funds" received on account of an alleged resale of the unidentified cattle) may be effected where such *res* is not in the possession of the party against whom such remedy is sought. Kremlin and Kuehny assert interests in and against property which they acknowledge is not held by the Debtor (cattle or funds). Accordingly, neither Kremlin nor Kuehny is entitled to the relief it requests.

### IV. Kremlin incorrectly relies upon the invalidated "farm products exception" as codified by Oklahoma law in support of Kuenhy's purported interest in and to property of the Debtor.

Kremlin relies upon the "farm products exception" contained in Oklahoma's adoption of the Uniform Commercial Code ("UCC") in support of its assertions that proceeds from the alleged sale by the Debtor of the unidentified steers belong to Kuehny, subject to Kremlin's security interest. See, Kremlin Objection ¶ 18; ¶ 24[4]. The "farm products exception" is a departure from the general rule that a buyer in the ordinary course takes free of a security interest created by buyer's seller; under the "farm products exception", a person buying farm products from a person engaged in farming operations takes subject to a lien created by buyer's seller. See, 12A Okla. Stat. § 1-9320(a) ("a buyer in ordinary course of business, *other than a person buying farm products from a person engaged in farming operations*, takes free of a security interest created by the buyer's seller"). Fifth Third respectfully states that Kremlin's reliance on the Oklahoma farm products exception is misplaced, for two reasons: (1) the farm products exception does not provide *the seller* of farm products with any continuing interest in farm products once sold; and (2) the farm products exception is no longer a valid statement of law.

---

[4] The only indication that Kremlin may be attempting to assert, independently, an interest in the Debtor's property is contained in ¶ 22 – a vague assertion by Kremlin that "Kremlin" is entitled to the "proceeds" in satisfaction of its security interest. Proceeds is not defined, and it is not clear whether Kremlin is referring to the proceeds held by/allegedly owing to Kuehny or proceeds allegedly owing to Eastern. A review of ¶¶ s 19-20 do not clarify this confusion. In ¶ 20, the "sale" is not identified as any or all of the alleged sales between Kuehny/Eastern, Eastern/Hohenberger, or Hohenberger/J+F. As all other requests for relief contained in the Kremlin Objection reveal that Kremlin claims *through* Kuehny's asserted interests, rather than standing on any independent right or cause of action, Fifth Third is uncertain as to the ultimate grounds upon which Kremlin appears to seek relief – independently, as the holder of an asserted security interest which it asserts continued in the unidentified cattle subsequent to the alleged delivery to the Debtor, or as the holder of a security interest in property of Kuehny, where Kuehny retained some type of property interest in the unidentified cattle or proceeds notwithstanding an alleged delivery to the Debtor.

Kremlin appears to assert that *Kuehny* retained an interest in the unidentified cattle (and proceeds thereof) subsequent to the alleged delivery of the unidentified cattle to the Debtor, and that Kremlin's security interest attaches to this unidentified retained interest. See, Kremlin Objection at ¶ 24 ("To the extent the Trustee has or subsequently receives the $158,494.02 that Hohenberger agreed to pay to Eastern for the cattle, for the reasons stated above, *such funds belong to Kuehny* subject to the security interest of Kremlin") (emphasis added). No basis for this purported retention of a property interest by Kuehny is offered[5], and the farm products exception provides only that a security interest *created* by a seller (i.e., an interest held by a seller's secured creditor) may continue in a farm product. Kuehny retained no interest in the unidentified steers or their proceeds in the hands of the Debtor, and, accordingly, Kremlin cannot claim a security interest in property of the Debtor through Kuehny.

Even assuming that Kremlin does assert an independent claim against the Debtor by virtue of the Debtor's alleged purchase of the unidentified steers subject to Kremlin's alleged security interest, Kremlin has failed to disclose that the "farm products exception" has, in fact, been pre-empted by federal law. In 1985, Congress passed the Food Security Act of 1985[6] (the "FSA"), finding that:

> (1) Certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sale proceeds to repay the lender;
>
> (2) These laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;

---

[5] As discussed in detail herein below, a constructive trust is remedial and does not vest claimant with an interest in property absent a prior court order.

[6] Pub. L. 99-189, 99 Stat. 1535, 7 U.S.C. § 1631.

>   (3) The exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products and
>
>   (4) This exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

7 U.S.C. § 1631(a)(1)-(4). Finding specifically that these so called "farm products exceptions" constituted improper burdens on interstate commerce, Congress eliminated such exception as codified in the UCC and in individual state adoptions thereof. Instead, under the FSA, a buyer in the ordinary course of business[7] who buys farm product from a seller engaged in farming operations *takes free* of a security interest created by a seller – even where the security interest is perfected and the buyer knows of its existence. 7 U.S.C. § 1631(d).

Under the FSA, it is possible in certain limited circumstance that a buyer take subject to a security interest created by a seller. Such action is not, however, automatic (as it may have been under the "farm products" exception of the UCC) and requires that the seller's secured party take certain affirmative steps to provide notice of this asserted interest. See, 7 U.S.C. § 1631(e). These affirmative steps may require, among other things: (1) the provision to potential buyers of a detailed notice of the asserted interest prior to the sale (See, generally 7 U.S.C. § 1631(e)(1)); (2) compliance with registration requirements and the filing of a financing statement containing additional specified information (See, generally 7 U.S.C. § 1631(e)(2)); or (3) compliance with registration and notice distribution requirements, coupled with the absence of a waiver secured by buyer (See, generally 7 U.S.C. § 1631(e)(3)).

Kremlin has failed to cite any applicable legal basis for its assertion that Kuehny has a continued interest in any proceeds of the unidentified steers in the hands of the Debtor. To the extent that Kremlin independently seeks recovery from the Debtor on account of its alleged

---

[7] Under the FSA, a buyer in the ordinary course is defined as "a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is in the business of selling farm products." 7 U.S.C. § 1631(c)(1).

8

security interest, Kremlin has failed to cite any applicable legal or factual basis for its assertion that the Debtor took the unidentified steers subject to any lien created by Kuehny.  Rather, Kremlin cites a statutory provision which was invalidated more than 25 years ago in support of its naked assertion that the Debtor took the unidentified steers subject to (1) Kuehny's alleged interest in funds owed to *the Debtor* as proceeds from the unidentified steers and/or (2) Kremlin's alleged continuing security interest in the unidentified steers.  Even assuming, for the sake of argument, that Kremlin were capable of remedying these grave legal and factual errors, Kremlin has offered no evidence that  Kuehny's hypothetical "retained interest" or Kremlin's alleged continuing lien is prior in right to the prior and properly perfected liens of Fifth Third.

**V.**     **Kremlin's argument that cattle and/or proceeds of cattle were impressed with a constructive trust under Oklahoma law fails as a matter of law.**

As Fifth Third states in its Limited Statement, filed concurrently with this Objection, any argument made by a claimant or party in interest premised upon a theory of "constructive trust" fails as a matter of law – including the constructive trust claims asserted by Kremlin and Kuehny in the Kremlin Objection.  As Kremlin and Kuehny premise claims contained in the Kremlin Objection upon a theory of constructive trust, Fifth Third incorporates the general objections raised in its Limited Statement herein, as follows and as is applicable to Kremlin and Kuehny.

A.  Where No Constructive Trust was Imposed Prior to the Petition Date, No Property Interest Exists Which May Survive the Filing of a Petition in Bankruptcy.

A constructive trust is an exclusively remedial creature – a constructive trust does not serve to confer or confirm *any* property interest (equitable or otherwise) on or in the alleged trust "beneficiary" unless and until a court has actually ordered such relief.  See, Nova Tool & Engineering, Inc. v. Slamin, 228 B.R. 678, 681; 687-688 (Bankr. N.D. Ind. 1998) (holding that imposition of a constructive trust postpetition is inappropriate where estate assets are insufficient to fully pay the claims of creditors) (internal citations omitted); Berger, Shapiro & Davis, P.A. v.

Haeling, 183 B.R. 149, 160 (Bankr. N.D. Ill. 1995) ("under Illinois law, constructive trust is a remedy for unjust enrichment, not the basis of a claim to ownership") (holding that imposition of a constructive trust postpetition is improper, as it impermissibly alters the priority and distribution rules of the Bankruptcy Code). Accordingly, without a prior court order imposing a constructive trust over specifically identified assets of the Debtor, no property interest vested in either Kuehny or Kremlin which would survive the filing of a bankruptcy petition.

Imposition of a constructive trust, where no court has ordered such relief, also runs contrary to the purpose of a constructive trust. As an equitable remedy, imposition of a constructive trust is disfavored, and imposed only in limited circumstances in an effort to right an otherwise inequitable result. See, generally: Fibre Form Corporation v. Slamin (In re Nova Tool & Engineering, Inc.), 228 B.R. 678, (Bankr. N.D. Ind. 1998) (Noting that "A constructive trust…may be imposed only in limited circumstances to prevent unjust enrichment.") (internal citations omitted). Imposing a constructive trust, without judicial determination of some equitable purpose served thereby, confers an extraordinary benefit upon a claimant who did not have to meet a single evidentiary burden. Such a result is clearly contrary to law and equity, and must not stand.

Further, imposition of a constructive trust absent an order granting such remedy creates what is effectively a hidden property interest. Hidden interests run directly contrary to the provisions and purposes of the uniform commercial code, favoring notice and open opportunity to assess title and other property interests. See, In re Keystone General, Inc., 135 B.R. 275, 279 ("The rationale behind the [UCC] and the caselaw is the prevention of 'hidden-title subterfuge' which would occur if such a reservation of title was permitted. A main purpose of the [UCC] is its overall scheme favoring notice filing; a hidden title provides no notice."). More specifically,

Section 2-401(1) of the Uniform Commercial Code provides that any attempt to retain title subsequent to delivery results merely in the retention of a security interest. Any assertion, postpetition, that Kuehny or Kremlin retained title to assets of the Estate by virtue of an un-adjudicated and un-ordered "constructive trust" constitutes an attempt to retain title in contravention of Section 2-401(1)[8]. To hold otherwise would require that this Court vitiate the provisions of the U.C.C. and adopt a position which recognizes hidden property interest in goods previously delivered to a bankrupt party. Such a result is inconsistent with the current body of law and, accordingly, must be rejected.

> B. "Constructive Trust" is a Remedy, Not an Independent Cause of Action which may be Asserted against the Estate.

A constructive trust is not a claim or an independent cause of action which a plaintiff may assert directly against an entity. See, Chosnek v. Rolley, 668 N.E.2d 202, 211 (Ind. Ct. App. 1997) ("[a] constructive trust…is more in the nature of an equitable remedy than an independent cause of action."); Fibre Form Corporation v. Slamin (In re Nova Tool & Engineering, Inc.), 228 B.R. 678, 685-686 (Bankr. N.D. Ind. 1998) (noting that a constructive trust is an equitable remedy) (internal citations omitted). As case law makes clear, a constructive trust is an equitable remedy which may be judicially imposed to redress a separate claim or cause of action. Berger,

---

[8] Confusion may often arise in the interpretation and application of UCC § 2-401(1) when this provision is read in conjunction with the subsequent provision of § 2-401(1), which states, seemingly contrarily, that: "Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed upon by the parties." While at first blush this second provision appears to grant parties the power to agree that title remains vested in the seller beyond delivery (and, thus, creating a hidden property interest), case law makes clear that "[w]hile the Uniform Commercial Code does permit the parties some power by allowing the parties to agree as to when title will transfer, the Code and the caselaw place a limitation on this power. In short, if the seller attempts to retain title after delivery, or until paid in full, all the seller gets is a security interest." In re Keystone General, Inc., 135 B.R. 275, 279 (Bankr. S.D. Ohio 1991). An appropriate reading of UCC § 2-401(1) gives effect to both provisions, such that parties may explicitly decide when, where and how title transfers *so long as the parties do not agree that title transfers after delivery to buyer.* See: In re Bosson, 432 F. Supp. 1013, 1020-1021 (D. Conn. 1977) (The Code "negates any attempt to forestall passage of title beyond the moment of final delivery; contract language purporting to do so merely results in a security interest being retained"); In re Continental Fire Trucks, Inc., 33 B.R. 713, 715 (Bankr. D. Mass. 1983) (explicit agreement of parties that title would not pass until payment in full and delivery of documents of title does not prevent title from passing); In re Tom Woods Used Cars, Inc., 21 B.R. 560, 565 (Bankr. E.D. Tenn. 1982) ("It is important to understand that the parties to a sale can agree on when title passes only to a degree. Any retention or reservation of title in seller after delivery to buyer amounts to retention of a security interest").

Shapiro & Davies, P.A. v. Haeling (In re Saul Foos), 183 B.R. 149, 157 (noting that a constructive trust is a "legal fiction, a common-law remedy in equity that may only exist by the grace of a judicial action.") (internal citations omitted). In the instant case, Kuehny and Kremlin have asserted a "constructive trust" as an independent cause of action against the estate and its assets, asking this Court to find that certain assets of the estate were, at all times, impressed with a constructive trust. In so doing, Kuehny and Kremlin seek to circumvent the need to prove an independent cause of action and, further, that such action justifies the imposition of such an extraordinary remedy. This is akin to a creditor asserting "specific performance" as an independent cause of action, rather than seeking specific performance *as a remedy for an underlying claim* for breach of contract – clearly, permitting a creditor to assert rights to specific performance absent judicial determination of an underlying contractual breach yields a ridiculous result. The same is true in the instant case.

It is unsurprising that this avenue is attractive to a creditor in the instant case: by asserting the remedy as a claim, a higher claim priority may be asserted than is otherwise possible. Were Kuehny and Kremlin to merely press forward on an underlying cause of action related to the alleged cattle sales and transactions with the Debtor, any fixed claim which may result would be an unsecured claim entitled only to the distribution which may be available for such class of creditors. Asserting a purported "claim" of constructive trust, however, enables Kuehny and Kremlin to create a separate pool of assets, outside of the Debtor's estate, potentially sufficient to satisfy their otherwise unsecured claim *in full*. In effect, asserting an independent claim for a "constructive trust" allows a creditor to receive what is in essence a priming priority status over all other creditors.

Such result is inconsistent with the orderly assemblage and distribution provisions and priorities detailed in the Bankruptcy Code. To the extent that Kuehny and Kremlin may hold claims or causes of action arising out of or related to any alleged cattle transactions, Fifth Third respectfully requests that such claims be presented and addressed on their own merit. Fifth Third further respectfully requests that Kremlin and Kuehny's "claim" premised upon a theory of constructive trust be denied, as such claim states no independent grounds for relief.

C. <u>Having Failed to Seek and Obtain the Remedy of Constructive Trust Prior to Entry of the Order for Relief, Kuehny and Kremlin May Not Now Seek Imposition of a Constructive Trust</u>.

Fifth Third is aware of no case which would support the post-petition imposition of a constructive trust in a case such as this. <u>See,</u> <u>The Oxford Organisation, Ltd. V. Peterson</u>, 144 B.R. 385, 387 (N.D. Ill. 1992) ("We note initially that we are unaware of any case law supporting the judicial establishment, absent a specific statutory mandate, of a constructive trust upon funds held by a trustee in bankruptcy." Examples of statutory mandates identified by the court include federal income and FICA taxes). Imposition of a post-petition constructive trust effectively takes property which is *presently* part of the estate pursuant to § 541 of the Bankruptcy Code (and thus subject to the automatic stay provisions of § 362 of the Bankruptcy Code), and *removes* such property from the estate without compensation to the estate for such loss, and without protection for any creditor whose lien has attached to such property by virtue of its inclusion in the estate. Property which has become part of the estate under § 541 is not subject to distribution outside the provisions of the Bankruptcy Code. No party in interest has cited any authority for the proposition that property, once considered part of an estate under § 541, can be forcibly divested by a creditor and removed from the reach of the Bankruptcy Code.

Once the estate is created by the filing of a petition or the entry of an order for relief in an involuntary case, creditors of the estate are prohibited from "directing" the resolution of claims

13

against the estate by prosecuting actions for particular relief.  See, generally, 11 U.S.C. § 362. Once a bankruptcy proceeding is commenced, a creditor may no longer direct his or her remedy against the estate – this action is pre-empted by the distribution provisions of the Bankruptcy Code.  No longer is a creditor permitted to commence or continue litigation, obtain or perfect a judgment, seek specific performance as a remedy on a claim, exercise any self-help remedy on a claim, or engage in any other act to exercise control over property of the estate.  11 U.S.C. § 362. The very instant that this Court entered the Order for Relief in this Bankruptcy Case, creditors, including Kremlin and Kuehny, lost the ability to pursue independent remedies against the estate and its property.  Instead, Kremlin and Kuehny (and all other similarly situated creditors) may seek allowance of their claim(s) against the estate.  If allowed, such claims will be treated in accordance with the provisions for treatment of such class of claims and in accordance with the provisions of the Bankruptcy Code.

In fact, as the Trustee correctly states in the Trustee's Objection, the imposition of a constructive trust post-petition is "anathema" to the provisions of the Bankruptcy Code.  See: In re Omegas Group, Inc., 16 F.3d 1433 (6th Cir. 1994).  See, also, The Oxford Organisation, Ltd. V. Peterson, 144 B.R. 385, 388 (N.D. Ill. 1992) ("…a constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code…The reluctance of Bankruptcy Courts to impose constructive trusts without a substantial reason to do so stems from the recognition that each unsecured creditor desires to have his particular claim elevated above the others.  Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly.") (internal citations omitted).  In the instant case, a number of potential claimants assert claims or causes of action arising out of alleged cattle purchases and sales.  No claim is particularly unique, no creditor more "worthy" than any other.  Fifth Third knows of no party

which has asserted that the estate contains sufficient assets to satisfy in full all claims of all creditors in every class.  Multiple claimants assert a "constructive trust" over the same, limited pool of assets.  Setting aside a discussion of the prior-perfected security interests held by Fifth Third and assuming, *arguendo*, that the limited pool of estate assets was available to satisfy only those claims of the Litigation Claimants[9], the imposition of a constructive trust in favor of one claimant necessarily reduces the common pool available for distribution to *similarly* and even *identically* situated creditors.  Rather than serve as a remedy and guard *against* an inequitable result, imposition of a constructive trust would *create* an inequitable result.  See, Fibre Form Corporation, 228 B.R. at 685 (Where assets are insufficient to fully pay the claims of creditors, the debtor will not be unjustly enriched as no assets are available to distribute to the debtor as a reward for its misconduct.  "The only ones who would be deprived of anything will be debtor's other creditors, because their less than complete recovery would be reduced even further by setting aside a significant asset of the estate exclusively for [one creditor's] benefit.  This is not a situation in which the court should impose a constructive trust.").  Equitable remedies cannot be utilized in such a way as to create a result more inequitable than the wrong sought to be remedied.

As discussed herein above, imposition of a constructive trust post-petition also has the effect of impermissibly altering the distribution provisions of the Bankruptcy Code.  See: Berger, Shapiro & Davis, P.A. v. Haeling (In re Saul Foos), 183 B.R. at 161 ("Nothing in the bankruptcy code authorizes the super-priority treatment of creditors whose only claim to such treatment is that they would be entitled to the remedy of the imposition of a constructive trust outside of bankruptcy.  As a general rule, bankruptcy courts may not alter the statutory priorities.")

---

[9] As defined in the Limited Statement.

(internal citations omitted). Imposition of a constructive trust, by effectively creating a separate pool of assets to satisfy only the claims of a single creditor, elevates what would ordinarily be an unsecured claim (entitled to distribution only on the terms and from the assets available for distribution to such class) to that of a prior-perfected security interest (entitled to distribution equal to 100% of its claims). See: Berger, Shapiro & Davis, P.A. v. Haeling (In re Saul Foos), 183 B.R. at 161 ("Courts that understand the significance of the bankruptcy filing have refused to impose constructive trusts post-bankruptcy. These courts recognize that the imposition of a constructive trust creates a mechanism by which a creditor may attain a position roughly equivalent to a perfected security interest in proceeds without complying with the usual statutory formalities…and thus tends to undercut the statutory scheme.") (internal citations omitted). There is no basis in the Bankruptcy Code for such a reordering of priorities.

Assuming, *arguendo*, that there were a basis under federal law for the imposition of a constructive trust over assets of a bankruptcy estate post-petition, Kuehny and Kremlin must still fail. For imposition of a constructive trust to be an appropriate remedy, the claimant seeking such remedy must be able to readily and specifically identify the *res* over which the trust should be imposed. See, The Oxford Organisation, Ltd. V. Peterson (In re Stotler and Co.), 144 B.R. 385, 391 (N.D. Ill. 1992) ("a person seeking a constructive trust must trace the *res* of her property to the assets of the estate") (internal citations omitted). Kuehny and Kremlin, in the Kremlin Objection, admit that the Debtor does not hold the *res* at issue: here, certain as-yet unidentified cattle. See, Kremlin Objection at ¶ 7. Neither Kuehny nor Kremlin identify with any specificity the cattle allegedly transferred to the Debtor, nor do Kuehny and Kremlin provide any evidence that the subject cattle did indeed follow the path of ownership asserted by Kuehny and Kremlin. Further, Kuehny and Kremlin also allege that *the Debtor* was not paid for the

16

cattle allegedly delivered by Kuehny to the Debtor and resold. In the Kremlin Objection, Kuehny and Kremlin allege that the Debtor has possession or control of *neither* the alleged cattle *nor* the proceeds from such cattle. Precisely what property Kuehny and Kremlin seek to subject to a "constructive trust" is not identified. Even if the Debtor receives payment allegedly due and owing from Hohenberger, Kuehny and Kremlin have made no effort to trace such payment to any cattle allegedly delivered by Kuehny to the Debtor. As a result, even were Fifth Third to assume, for the sake of argument, that federal law permitted the imposition of a constructive trust in this circumstance, Kuehny and Kremlin have not and could not meet their burden, and trace the *res* over which such constructive trust might be imposed.

## Conclusion

For the reasons stated and identified herein above, Fifth Third respectfully requests that the relief requested by Kremlin and Kuehny in the Kremlin Objection be DENIED.


October 28, 2011

Respectfully submitted,
/s/ Randall D. LaTour
Randall D. LaTour (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-8290
Facsimile: (614) 719-4821
Email: rdlatour@vorys.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 28, 2011, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's ECF system.

- David L. Abt davidabt@mwt.net
- Amelia Martin Adams aadams@dlgfirm.com
- John W Ames jwa@gdm.com, shm@gdm.com;tlm@gdm.com;rtrowbridge@kslaw.com
- Jerald I. Ancel jancel@taftlaw.com, ecfclerk@taftlaw.com;krussell@taftlaw.com
- Christopher E. Baker cbaker@hklawfirm.com, thignight@hklawfirm.com
- T. Kent Barber kbarber@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com
- Robert A. Bell rabell@vorys.com, dmchilelli@vorys.com
- C. R. Bowles crb@gdm.com, shm@gdm.com
- Kent A Britt kabritt@vorys.com, cbkappes@vorys.com
- Lisa Koch Bryant courtmail@fbhlaw.net
- James M. Carr james.carr@bakerd.com, patricia.moffit@bakerd.com
- John R. Carr jrciii@acs-law.com, sfinnerty@acs-law.com
- Deborah Caruso dcaruso@daleeke.com, mthomas@daleeke.com
- Bret S. Clement bclement@acs-law.com, sfinnerty@acs-law.com
- Jason W. Cottrell jwc@stuartlaw.com
- Kirk Crutcher kcrutcher@mcs-law.com, jparsons@mcs-law.com;cmarshall@mcs-law.com
- Jack S Dawson jdawson@millerdollarhide.com, jowens@millerdollarhide.com
- Dustin R. DeNeal dustin.deneal@bakerd.com, patricia.moffit@bakerd.com
- Laura Day DelCotto ldelcotto@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com
- David Alan Domina dad@dominalaw.com, KKW@dominalaw.com;efiling@dominalaw.com
- Daniel J. Donnellon ddonnellon@ficlaw.com, knorwick@ficlaw.com
- Trevor L. Earl tearl@rwsvlaw.com
- Shawna M Eikenberry shawna.eikenberry@bakerd.com, sarah.herendeen@bakerd.com
- Jeffrey R. Erler jeffe@bellnunnally.com
- Sarah Stites Fanzini sfanzini@hopperblackwell.com, mroth@hopperblackwell.com
- Robert H. Foree robertforee@bellsouth.net
- Sandra D. Freeburger sfreeburger@dsf-atty.com, smattingly@dsf-atty.com
- Jeffrey J. Graham jgraham@taftlaw.com, ECFClerk@taftlaw.com;krussell@taftlaw.com;aolave@taftlaw.com
- Terry E. Hall terry.hall@bakerd.com, sharon.korn@bakerd.com;sarah.herendeen@bakerd.com
- John David Hoover jdhoover@hooverhull.com
- John Huffaker john.huffaker@sprouselaw.com, lynn.acton@sprouselaw.com;rhonda.rogers@sprouselaw.com

- Jeffrey L Hunter     jeff.hunter@usdoj.gov, USAINS.ECFBankruptcy@usdoj.gov
- Jay Jaffe     jay.jaffe@bakerd.com, tracy.whitman@bakerd.com;sarah.herendeen@bakerd.com
- James Bryan Johnston     bjtexas59@hotmail.com, bryan@ebs-law.net
- Todd J. Johnston     tjohnston@mcjllp.com
- Jill Zengler Julian     Jill.Julian@usdoj.gov
- Edward M King     tking@fbtlaw.com, dgioffre@fbtlaw.com
- James A. Knauer     jak@kgrlaw.com, hns@kgrlaw.com
- Erick P Knoblock     eknoblock@daleeke.com
- Theodore A Konstantinopoulos     ndohbky@jbandr.com
- Randall D. LaTour     RDLatour@vorys.com, khedwards@vorys.com;bjtobin@vorys.com
- David A. Laird     david.laird@moyewhite.com, lisa.oliver@moyewhite.com;deanne.stoneking@moyewhite.com
- David L. LeBas     dlebas@namanhowell.com, koswald@namanhowell.com
- Elliott D. Levin     robin@rubin-levin.net, edl@trustesolutions.com;edl@trustesolutions.net
- Elliott D. Levin     edl@rubin-levin.net, atty_edl@trustesolutions.com
- Kim Martin Lewis     kim.lewis@dinslaw.com, lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com
- Karen L. Lobring     lobring@msn.com
- John Hunt Lovell     john@lovell-law.net, sabrina@lovell-law.net;shannon@lovell-law.net;paula@lovell-law.net
- Harmony A Mappes     harmony.mappes@bakerd.com, betsy.smith@bakerd.com;sarah.herendeen@bakerd.com
- John Frederick Massouh     john.massouh@sprouselaw.com
- Michael W. McClain     mike@kentuckytrial.com, laura@kentuckytrial.com
- Kelly Greene McConnell     lisahughes@givenspursley.com
- James Edwin McGhee     mcghee@derbycitylaw.com, belliott@derbycitylaw.com
- William Robert Meyer     rmeyer@stites.com
- Christie A. Moore     cm@gdm.com, ljs2@gdm.com
- Allen Morris     amorris@stites.com, dgoodman@stites.com
- Judy Hamilton Morse     judy.morse@crowedunlevy.com, ecf@crowedunlevy.com;donna.hinkle@crowedunlevy.com;karol.brown@crowedunlevy.com
- Walter Scott Newbern     wsnewbern@msn.com
- Shiv Ghuman O'Neill     shiv.oneill@bakerd.com
- Matthew J. Ochs     kim.maynes@moyewhite.com
- Michael Wayne Oyler     moyler@rwsvlaw.com
- Ross A. Plourde     ross.plourde@mcafeetaft.com, erin.clogston@mcafeetaft.com
- Wendy W Ponader     wendy.ponader@bakerd.com, sarah.herendeen@bakerd.com
- Timothy T. Pridmore     tpridmore@mcjllp.com, lskibell@mcjllp.com
- Jeffrey E. Ramsey     jramsey@hopperblackwell.com, mhaught@hopperblackwell.com
- Eric C Redman     ksmith@redmanludwig.com, kzwickel@redmanludwig.com

- Susan K. Roberts    skr@stuartlaw.com, lbt@stuartlaw.com
- Mark A. Robinson    mrobinson@vhrlaw.com, dalbers@vhrlaw.com
- Jeremy S Rogers    Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com
- John M. Rogers    johnr@rubin-levin.net, susan@rubin-levin.net
- Joseph H Rogers    jrogers@millerdollarhide.com, cdow@millerdollarhide.com
- James E Rossow    jim@rubin-levin.net, susan@rubin-levin.net;ATTY_JER@trustesolutions.com
- Thomas C Scherer    tscherer@binghammchale.com, mmcclain@binghammchale.com
- Ivana B. Shallcross    ibs@gdm.com
- James E. Smith    jsmith@smithakins.com, legalassistant@smithakins.com
- William E Smith    wsmith@k-glaw.com, pballard@k-glaw.com
- Robert K Stanley    robert.stanley@bakerd.com
- Joshua N. Stine    jnstine@vorys.com
- Andrew D Stosberg    astosberg@lloydmc.com, bmarks@lloydmc.com
- Meredith R. Thomas    mthomas@daleeke.com
- John M. Thompson    john.thompson@crowedunlevy.com, jody.moore@crowedunlevy.com,donna.hinkle@crowedunlevy.com
- Kevin M. Toner    kevin.toner@bakerd.com, crystal.hansen@bakerd.com;judy.ferber@bakerd.com
- U.S. Trustee    ustpregion10.in.ecf@usdoj.gov
- Andrea L Wasson    andreawassonatty@gmail.com
- Stephen A. Weigand    sweigand@ficlaw.com
- Charles R. Wharton    Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov
- Sean T. White    swhite@hooverhull.com, vwilliams@hooverhull.com
- Jessica E. Yates    jyates@swlaw.com, jmilelli@swlaw.com;cswagerty@swlaw.com
- James T Young    james@rubin-levin.net, ATTY_JTY@trustesolutions.com;lemerson@rubin-levin.net;carmen@rubin-levin.net

/s/ Randall D. LaTour