IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**TRUSTEE'S MEMORANDUM OF LAW ON "KREMLIN ISSUE"[1]**

Brent Kuehny d/b/a Dollar K Cattle Co. ("Kuehny") and The Bank of Kremlin ("Kremlin" and collectively with Kuehny, the "Kremlin Parties") assert that Kremlin has a first priority perfected security interest in a $158,494.02 account receivable (the "Receivable") owed to Eastern Livestock Co., LLC ("ELC") by Mark Hohenberger ("Hohenberger") as a result of ELC's sale to Hohenberger of 200 head of cattle that ELC purchased from Kuehny (the "Purchased Cattle").[2]

The Kremlin Parties' assertion fails because Kremlin's security interest in the Purchased Cattle was released upon Kuehny's sale of the Purchased Cattle to ELC. In addition, even if Kremlin's security interest survived Kuehny's sale of the Purchased Cattle to ELC, Kremlin does not have a perfected security interest in the Receivable arising from ELC's sale of the Purchased Cattle to Hohenberger.[3] Under the applicable version of Section 9-315(d) of the Uniform Commercial Code ("UCC"), any security interest that Kuehny granted to Kremlin in the

---

[1] This is the "Kremlin Issue Memorandum" described in paragraph H of the *Order Granting Trustee Authority to 1) Collect Receivable, 2) Hold Receivable Proceeds in Segregated Account Pending Determination of Rights Therein, 3) Transfer Receivable Proceeds to Operating Account After Such Determination and 4)Continuing Briefing Schedule on the Foregoin* [Dock. No. 778].

[2] *See* the *Response And Objection Of Brent Kuehny d/b/a Dollar K Cattle Co., And The Bank Of Kremlin To The Trustee's Purchase Money Claims Report, Motion To Transfer Funds And Notice Of Release Of Proceeds From Account* [Dock. No. 544] (the "Kuehny/Kremlin Objection"), ¶¶ 18-24.

[3] The following states' versions of the UCC may be applicable to the continuing validity and perfection of any security interest asserted by Kremlin: Oklahoma and Kentucky.

Purchased Cattle and proceeds thereof that may have attached to the Receivable became unperfected in the Receivable twenty-one (21) days after ELC's sale and delivery of the Purchased Cattle to Hohenberger.  As a result, any security interest that Kremlin may assert in the Receivable is at best unperfected and subject to avoidance or priming by the Trustee's "strong-arm" powers and the prior perfected security interest held by Fifth Third Bank, N.A. ("Fifth Third") in and against ELC's Receivable.

## Background[4]

Kuehny is an individual who was allegedly engaged in ranching operations at all times relevant to this matter.[5]  On or around January 21, 2010, Kuehny executed three separate promissory notes evidencing his obligations to repay three loans that Kremlin made to Kuehny.[6] As security for Kuehny's obligations under the notes, Kuehny granted to Kremlin a security interest in the Purchased Cattle pursuant to three separate Agricultural Security Agreements (the "Kremlin Security Agreements") executed on or around January 21, 2010.[7]  Each of the Kremlin Security Agreements provides that "[e]xcept for inventory sold or accounts collected in the ordinary course of [Kuehny's] business, or as otherwise provided for in this Agreement, [Kuehny] shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral".[8]  The Kremlin Security Agreements also include a representation and warranty from Kuehny to

---

[4] This memorandum assumes, but does not concede, that 1) Kuehny granted to Kremlin a valid security interest in the Purchased Cattle that Kremlin perfected prior to Kuehny's sale of the Purchased Cattle to ELC and 2) Kremlin complied with the filing and notice requirements contained in 12A Okla. Stat. § 1-9-320.2. This memo further assumes, but does not concede, that ELC received the written notice required by 12A Okla. Stat. § 1-9-320.6(d) or (f).  Additional discovery is needed to determine the validity and extent of Kremlin's security interest in the Purchased Cattle.  For example, the Trustee has no information regarding the amount of the outstanding debt allegedly owed from Kuehny to Kremlin and secured by the Purchased Cattle or sufficient information to determine if Kremlin filed an "effective financing statement."

[5] Kuehny/Kremlin Objection, ¶ 4.

[6] *Id.*, ¶ 5.

[7] Copies of the Security Agreements are attached to the Kuehny/Kremlin Objection as Exhibits "A", "B" and "C".

[8] Kremlin Security Agreement, p. 2.

2

Kremlin that Kuehny will not sell or otherwise dispose of the collateral except to "buyers, commission merchants and selling agents" included on schedules to be provided to Kremlin.[9] The Kremlin Security Agreements further provide that "[n]o provisions in this Agreement shall be interpreted to authorize any sale or disposition of Collateral unless authorized by [Kremlin] in writing." Kremlin filed a UCC-1 Financing Statement with the County Clerk of Oklahoma County, Oklahoma on January 25, 2010.[10]

On November 1, 2010, in the ordinary course of his business, Kuehny sold and delivered the Purchased Cattle to ELC.[11] The Purchased Cattle constituted Kuehny's inventory prior to sale to ELC. ELC issued a check to Kuehny for the purchase price of the Purchased Cattle, but the check was later returned unpaid by ELC's bank, Fifth Third, because ELC lacked sufficient funds to cover the check. Fifth Third provided operating funds to ELC pursuant to the terms of a Credit Agreement originally dated August 9, 2004. ELC granted to Fifth Third a security interest in substantially all of ELC's assets, including all accounts and general intangibles, to secure ELC's obligations to Fifth Third. Fifth Third perfected its security interest by filing a UCC-1 Financing Statement with the Kentucky Secretary of State on August 6, 2004.

ELC sold the Purchased Cattle to Hohenberger on November 1, 2010 in exchange for Hohenberger's promise to pay ELC $158,494.02. Hohenberger then sold the Purchased Cattle to J&F Oklahoma Holdings, Inc. and received payment from J&F Oklahoma Holdings, Inc. Hohenberger has thus far refused to pay the Receivable to the Trustee.

---

[9] The Trustee believes that discovery will show that ELC was included as an authorized buyer on the schedules provided by Kuehny to Kremlin.

[10] Kuehny/Kremlin Objection, ¶ 6.

[11] Kuehny/Kremlin Objection, ¶ 7.

3

On December 6, 2010, certain petitioning creditors filed an involuntary petition for relief against ELC under chapter 11 of title 11 of the United States Code. The Court entered the *Order for Relief in an Involuntary Case and Order to Complete Filing* on December 28, 2010. On December 27, 2010, the Court entered the *Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee*.

## Argument

Any security interest that Kremlin claims in the Purchased Cattle did not continue in the Purchased Cattle after Kuehny sold the Purchased Cattle to ELC because Kremlin expressly and/or impliedly authorized the sale of the Purchased Cattle to ELC free and clear of its security interest. The Purchased Cattle were Kuehny's inventory prior to their sale to ELC in the ordinary course of Kuehny's business. The Kremlin Security Agreements expressly authorized the sale of the Purchased Cattle free and clear of the security interest granted to Kremlin.

Regardless of the continuing existence of Kremlin's security interest in the Purchased Cattle, Kremlin cannot claim a perfected security interest in the Receivable because Kremlin did not perfect any such interest within twenty-one (21) days as required by UCC § 9-315(d) and/or 12A Okla. Stat. § 1-9-315(d). To perfect a security interest in ELC's Receivable, Kremlin would have had to file a financing statement in Kentucky identifying that it claimed a security interest in an identified "Account" of ELC. This did not occur. Therefore, any security interest in the Receivable asserted by Kremlin, if it exists at all, is subordinate to Fifth Third's prior perfected security interest, as well as the Trustee's hypothetical execution lien provided by 11 U.S.C. § 544(a)(2).

4

> *I.   Consistent with the UCC and FSA, Kremlin consented to the sale of the Purchased Cattle to ELC free of its security interest.*

ELC purchased the Purchased Cattle free and clear of Kremlin's alleged security interest because Kremlin consented to and authorized the sale of the Purchased Cattle to ELC free and clear of any such security interest.

The general rule under the UCC, subject to certain exceptions, is that "a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof *unless the secured party authorized disposition free of the security interest or agricultural lien.*"[12] The UCC, however, exempts most "buyers in the ordinary course of business" from the general rule, allowing such buyers to take free and clear of a perfected security interest granted by the seller.[13] Until 1985, "a person buying farm products from a person engaged in farming operations" was excluded from the "buyer in the ordinary course" exemption and took delivery of farm products subject to prior perfected security interests (assuming the secured party had not waived its security interest).[14] In 1985, Congress passed the 1985 Farm Bill, popularly known as the Food Security Act, 7 U.S.C. § 1631 (the "FSA"), to "remove the burden on and obstruction to interstate commerce in farm products." The FSA generally provides that:

> Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security

---

[12] UCC § 9-315(a)(1) (emphasis supplied); *see also* 12A Okla. Stat. § 1-9-315(a)(1); Ind. Code § 26-1-9.1-315(a)(1).

[13] UCC § 9-320(a); *see also* 12A Okla. Stat. § 1-9-320; Ind. Code § 26-1-9.1-320.

[14] UCC § 9-320(a) ("a buyer in ordinary course of business, *other than a person buying farm products from a person engaged in farming operations*, takes free of a security interest created by the buyer's seller…") (emphasis supplied).

5

interest is perfected; and the buyer knows of the existence of such interest.[15]

Subsection (e) of the FSA states that "[a] buyer of farm products takes subject to a security interest created by the seller," if certain filing and notice requirements are satisfied by the secured party *and* the buyer "does not secure a waiver or release of the security interest…by performing any payment obligation or otherwise."[16] Thus, both the UCC and FSA allow a secured party to authorize the sale of collateral and waive its security interest. Authorization to sell collateral free of a security interest may be express or implied.[17]

Kuehny had both express and implied consent to sell the Purchased Cattle to ELC free of Kremlin's security interest. The Kremlin Security Agreements themselves allowed Kuehny to sell the Purchased Cattle to ELC free of Kremlin' security interest, provided that ELC was an authorized buyer (included on the schedules provided to Kremlin) and the sale was in the ordinary course of business. The Trustee believes that discovery will show that ELC was an authorized buyer and that Kuehny's sale of the Purchased Cattle to ELC was made in the ordinary course of Kuehny's business.

In addition, the course of dealing between Kuehny, ELC and Kremlin supports the conclusion that Kremlin impliedly consented to the sale of the Purchased Cattle to ELC free of its security interest.[18]

---

[15] 7 U.S.C. § 1631(d); 12A Okla. Stat. § 1-9-320.4

[16] 7 U.S.C. § 1631(e)(1)(A)(3)(B); 12A Okla. Stat. § 1-9-320.4(a)(ii).

[17] *See Poteau State Bank v. Denwalt*, 597 P.2d 756, 760 (Okl. 1979) (a secured party will have impliedly authorized the sale of his collateral when, from the circumstances, general language and conduct of the parties, it is found that he intended to authorize the sale).

[18] The Trustee believes that discovery will show that Kremlin gave either express or implied consent to the sale of the Purchased Cattle to ELC, thereby cutting off Kremlin's security interest in the Purchased Cattle pursuant to 12A Okla. Stat. § 1-9-315(a).

> II. *Pursuant to UCC 9-315(d), Kremlin's claimed security interest in the Receivable is subordinate to the prior perfected security interests of the Trustee and Fifth Third.*

The applicable version of UCC § 9-315(d) unperfected Kremlin's security interest in the Receivable twenty-one (21) days after ELC's delivery of the Purchased Cattle to Hohenberger. As a result, Kremlin's asserted security interest in the Receivable is subject to the prior perfected rights of both Fifth Third and the Trustee.

UCC § 9-315(a)(2) provides that "a security interest attaches to any identifiable proceeds of collateral," and UCC § 9-315(c) provides for the automatic perfection of a security interest in proceeds "if the security interest in the original collateral was perfected."[19] However, UCC § 9-315(d) provides:

> A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless:
>
> (1) the following conditions are satisfied:
>
>   (A) a filed financing statement covers the original collateral;
>
>   (B) the proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and
>
>   (c) the proceeds are not acquired with cash proceeds.
>
> (2) the proceeds are identifiable cash proceeds; or
>
> (3) the security interest in the proceeds is perfected other than under subsection (c) when the security interest attaches to the proceeds or within 20 days thereafter.

In other words, a security interest in proceeds of collateral loses its automatic perfection unless 1) the financing statement covering the original collateral (here, the Purchased Cattle) is still

effective to perfect a security interest in the proceeds (ELC's Receivable), 2) the proceeds are "identifiable cash proceeds" (they are not) **or** 3) the secured party (Kremlin) takes appropriate action to perfect its security interest in the proceeds within 21 days.  Because the "proceeds" at issue here is an account receivable owing to ELC by Hohenberger, a secured creditor (Kremlin) would have needed to file a financing statement in Kentucky to perfect a security interest in ELC's account.  Kremlin did not do so within the 20 day period provided by the statute.  So, even if Kremlin's security interest in the Purchased Cattle continued after the sale of the Purchased Cattle to ELC, such interest became unperfected in the Receivable generated from ELC's sale of the Purchased Cattle by operation of UCC § 9-315(d) unless the security interest satisfies one of UCC § 9-315(d)'s  three exceptions.  It does not.

      First, Kremlin's original financing statement was filed in Oklahoma against Kuehny and is therefore not effective to perfect a security interest in the Receivable owing to ELC.  In order to perfect a security interest in ELC's Receivable, Kremlin's financing statement would need to be filed in Kentucky, name ELC as "debtor", and claim a security interest in ELC's "Account".[20]  Otherwise, creditors of ELC would have no way of discovering that a prior security interest existed in the Receivable.  Because Kremlin's original financing statement does not operate to perfect a security interest in the Receivable, perfection of Kremlin's security interest in the Receivable was not continued beyond 21 days by the first exception found in UCC § 9-315(d).

---

[19] Because all potentially applicable states' versions of the UCC are identical to the sections of the UCC cited hereafter, citations will be solely to the applicable section of the UCC.

[20] *See* UCC §§ 9-307, 9-310 and 9-501.

BDDB01 6848396v5

Because the Receivable does not qualify as "identifiable cash proceeds", perfection of Kremlin's security interest in the Receivable was not continued beyond 21 days by the second exception found in UCC § 9-315(d).  The UCC defines "proceeds" as:

> (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
>
> (B) whatever is collected on, or distributed on account of, collateral;
>
> (C) rights arising out of collateral;
>
> (D) to the extent of the value of the collateral, claims arising out of the loss, noncomformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
>
> (E) to the extent of the value of the collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or noncomformity of, defects or infringement of rights in, or damage to, the collateral.[21]

"Cash proceeds" are defined as "proceeds that are money, checks, deposit accounts or the like."[22]

"Noncash proceeds" means "proceeds other than cash proceeds."[23]  The definition of "Cash Proceeds" does not include the Receivable, which qualifies as either an "Account"[24] or "Payment

---

[21] UCC § 9-102(a)(64).

[22] UCC § 9-102(a)(9).

[23] UCC § 9-102(a)(58).

[24] "'Account', except as used in 'account for', means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State. The term includes health-care-insurance receivables. The term does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letters of credit, or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card."  UCC § 9-102(a)(2).

9

Intangible"[25] under the UCC. Therefore, and because the Receivable is not "identifiable cash proceeds," perfection of Kremlin's security interest in the Receivable is not continued beyond 21 days by the second exception found in UCC § 9-315(d).

Finally, Kremlin did not take any action within 21 days to perfect any security interest in the Receivable,[26] and perfection of Kremlin's security interest in the Receivable was therefore not continued by the third exception found in UCC § 9-315(d).

Any security interest that Kremlin may assert against the Receivable became unperfected against the Receivable on November 22, 2010 (21 days after creation of the Receivable) pursuant to operation of UCC § 9-315(d). As between a perfected and unperfected security interest (i.e., Trustee and Fifth Third vs. Kremlin), the perfected security interest has priority.[27]

**Conclusion**

For the foregoing reasons, the Kremlin Parties' assertions fail, and the Court should therefore enter an order 1) declaring that any security interest asserted by Kremlin in or to the Receivable is subject and subordinate in priority to the Trustee's position as a hypothetical lien creditor and/or Fifth Third's perfected security interest, 2) authorizing the Trustee to collect the Receivable from Hohenberger and transfer the proceeds to his general operating account and 3) grant the Trustee all other just and appropriate relief.

---

[25] "'Payment intangible' means a general intangible under which the account debtor's principal obligation is a monetary obligation." UCC § 9-102(a)(61).

[26] A UCC search in both Kentucky and Indiana revealed no filings by the Kremlin Parties against ELC.

[27] UCC § 9-322(a)(2).

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ Dustin R. DeNeal

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Kevin Toner (#11343-49)
Terry E. Hall (#22041-49)
Harmony Mappes (# 27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
kevin.toner@bakerd.com
terry.hall@bakerd.com
harmony.mappes@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader, (14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@bakerd.com

11

BDDB01 6848396v5

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 31, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com | David A. Laird<br>david.laird@moyewhite.com |
| Jerald I. Ancel<br>jancel@taftlaw.com | Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com |
| David Alan Domina<br>dad@dominalaw.com | Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>jnstine@vorys.com |

| | | |
|---|---|---|
| Jill Zengler Julian<br>Jill.Julian@usdoj.gov | Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com |
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Robert A. Bell<br>rabell@vorys.com |
| James E. Rossow<br>jim@rubin-levin.net | James B. Lind<br>jblind@vorys.com | Melissa S. Giberson<br>msgiberson@vorys.com |

I further certify that on October 31, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher  
asr@blancolaw.com

Darla J. Gabbitas  
darla.gabbitas@moyewhite.com

/s/ Dustin R. DeNeal

13