## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF INDIANA - NEW ALBANY

```
===============================
IN THE MATTER OF:               .   Case #10-93904-BHL-11
                                .
EASTERN LIVESTOCK CO., LLC       .   New Albany, Indiana
                                .   October 25, 2011
                     Debtor      .   3:25:48 p.m.
===============================
```

### TRANSCRIPT OF TELEPHONIC HEARINGS RE:
### CONTINUED STATUS CONFERENCE ON:
### (#501) TRUSTEE JAMES KNAUER'S MOTION FOR AUTHORITY (TRUSTEE'S PURCHASE MONEY CLAIMS REPORT, MOTION TO TRANSFER FUNDS, AND NOTICE OF RELEASE OF PROCEEDS FROM ACCOUNT, WITH OBJECTIONS AND AMENDED OBJECTIONS AND RESPONSES THERETO FILED;
### CONTINUED TELEPHONIC HEARING ON:
### (#317) FINAL HEARING RE MOTION TO ABANDON, CORRECTED MOTION FOR RELIEF FRO STAY, FILED BY CREDITOR PEOPLES BANK & TRUST COMPANY OF PICKETT COUNTY;
### (#732) MOTION BY TRUSTEE JAMES A. KNAUER FOR ENTRY OF AN ORDER GRANTING TRUSTEE AUTHORITY TO (1) COLLECT RECEIVABLE, (2) HOLD RECEIVABLE PROCEEDS IN SEGREGATED ACCOUNT PENDING DETERMINATION OF RIGHTS THEREIN, (3) TRANSFER RECEIVABLE PROCEEDS TO OPERATING ACCOUNT AFTER SUCH DETERMINATION, (4) CONTINUING BRIEFING SCHEDULE ON THE FOREGOING;
### (#738) JOINT MOTION AND FIRST STIPULATION REGARDING DISCOVERY PROTOCOLS, FILED BY PETITIONING CREDITOR SUPERIOR LIVESTOCK AUCTION
### BEFORE THE HONORABLE BASIL H. LORCH, III, J.U.S.B.C.

**APPEARANCES: (See Next Page)**

Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ 08234-5901**
**1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 2 Cover
#10-93904
10-25-2011

**APPEARANCES:**

For Petitioning Creditors, Moseley Cattle
Auction, Moseley Cattle Auction, et al:

JOHN W. AMES, ESQ.
C.R. "CHIP" BOWLES, ESQ.
CHRISTIE A. MOORE, ESQ.
Greenebaum, Doll & McDonald,  PLLC
3500 National City Tower
101 S. 5th Street
Louisville, KY  40202


For Fifth Third Bank:

RANDALL D. LaTOUR, ESQ.
Vorys, Sater, Seymour & Pease, LLP
52 East Gay Street
Columbus, OH   43216

KENT A. BRITT, ESQ.  *(Via phone)*
Vorys, Sater, Seymour & Pease, LLP
221 E. 4th St.    Suite 2000   Atrium Two
Cincinnati, OH    45202


For First Bank & Trust Company:

STEPHEN A. WEIGAND, ESQ.  *(Phone)*
DANIEL J. DONNELLON, ESQ.
Faruki, Ireland & Cox, PLL
201 East Fifth Street   Suite 1420
Cincinnati, OH 45202


For Peoples Bank & Trust Co. Of Pickett County:

LISA KOCH BRYANT, ESQ.
Foley Bryant & Holloway
500 West Jefferson Street, Suite 2450
Louisville, KY    40202
------------ continued----------->


Electronic Sound Recording Operator:  Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
210 Bayberry Avenue
Egg Harbor Township, NJ  08234-5901
1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299
e-mail - irwingloria@comcast.net

Page 3 Cover
#10-93904
10-25-2011

**APPEARANCES: (continued)**

For First Bank & Trust Company:
    JOHN R. CARR, III, ESQ. *(Via phone)*
    BRET S. CLEMENT, ESQ. *(Via phone)*
    Ayers, Carr & Sullivan, P.C.
    251 E. Ohio Street   Suite 500
    Indianapolis, IN   46204

For Bluegrass Stockyards, LLC, and related entities:
    AMELIA MARTIN ADAMS, ESQ. *(Ph.)*
    DelCotto Law Group, PLLC
    200 North Upper Street
    Lexington, KY 40507

For Cactus Growers, Inc.:
    JOHN HUNT LOVELL, ESQ. *(Phone)*
    Lovell, Lovell, Newson & Isern, LLP
    112 W. 8th Avenue   Suite 1000
    Amarillo, TX 79101

For J&F Oklahoma Holdings, Inc.
    DAVID L. LeBAS, ESQ. *(Via phone)*
    Namen, Howell, Smith & Lee, PLLC
    Suite 490
    8310 N. Capital of Texas Highway
    Austin, TX   78731

For Stockman Oklahoma:
    ROSS PLOURDE, ESQ.    *(Via phone)*
    McAfee & Taft, P.C.
    211 N. Robinson Ave.
    Oklahoma City, OK 73102

    ---------continued ---------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 4 Cover
#10-93904
10-25-2011

**APPEARANCES - Continued**

For Chapter 11 Trustee, James Knauer:

TERRY E. HALL, ESQ.
KEVIN TONER, ESQ.
HARMONY MAPPES, ESQ.
Baker & Daniels
300 N. Meridian Street   Suite 2700
Indianapolis, IN 46204

Chapter 11 Trustee:

JAMES A. KNAUER, ESQ. *(Via phone)*
Kroger Gardis & Regas, LLP
111 Monument Circle   Suite 900
Indianapolis, IN   46204

For CPC Livestock:

JESSICA E. YATES, ESQ.   *(Via phone)*
Snell & Wilmer, LLP
1200 Seventeenth Street   Suite 1900
Denver, CO   80202

For Florida Livestock Markets and Creditors:

W. SCOTT NEWBERN, ESQ. *(Via phone)*
2982 E. Giverny
Tallahassee, FL 32309

For Superior Livestock Auction and Joplin Regional Stockyards:

JOHN M. ROGERS, ESQ. *(Via phone)*
ELLIOTT D. LEVIN, ESQ.
Rubin & Levin, P.C.
342 Massachusetts Avenue
Indianapolis, IN 46204-2161

----------continued--------->

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 5 Cover
#10-93904
10-25-2011

**APPEARANCES: (continued)**

For Russell deCordova d/b/a deCordova          JEFFREY R. ERLER, ESQ. *(Via phone)*
Cattle Company:                                1500 One McKinney Plaza
                                               3232 Mc Kinney Avenue
                                               Dallas, TX 75204


For Kathryn Pry RE: Gibson:                    DEBORAH J. CARUSO, ESQ. *(Via phone)*
                                               Dale & Eke, P.C.
                                               9100 Keystone Crossing,   Suite 400
                                               Indianapolis, IN 46204


For Michael Walro Trust in East West          ELIZABETH M. LALLY, ESQ. *( Phone)*
Trucking:                                      Rubin & Levin, P.C.
                                               342 Massachusetts Avenue
                                               Indianapolis, IN 46204-2161


For William Downs:                             ANDREW D. STOSBERG, ESQ.
                                               Lloyd & McDaniel
                                               11405 Park Road, Suite 200
                                               Louisville, KY 40223


For Friona Industries, LP; J&F Oklahoma       MARK A. ROBINSON, ESQ.
Holdings, Inc., & Cactus Growers, Inc.:        Valenti, Hanley & Robinson, PLLC
                                               501 W. Main Street
                                               1950 Riverfront
                                               Louisville, KY 40202


For Bank First Financial Services and         ERIC REDMAN, ESQ.
Edward Strickland:

                                               --------continued---------->


Electronic Sound Recording Operator:     Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

**APPEARANCES: (continued)**

For Friona Industries, LP:

JOHN F. MASSOUH, ESQ. *(Via phone)*
Sprouse Shrader Smith, P.C.
701 S. Taylor, Suite 500
Amarillo, TX 79101

For Peoples Bank of Coldwater, Kansas:

DAVID LAIRD, ESQ. *(Via phone)*
1400 16th Street   6th Fl.
Denver, CO   80202

For Your Community Bank:

MICHAEL WAYNE OYLER, ESQ.
Reed Weitkamp Schell & Vice, PLLC
500 W. Jefferson Street   Suite 2400
Louisville, KY   40202

For Rex Elmore:

JASON W. COTTRELL, ESQ.
Stuart & Branigan, LLP
300 Main Street, Suite 900
Lafayette, IN 47902

For Gabriel Moreno:

TODD J. JOHNSTON, ESQ. *(Via phone)*
McWhorter, Cobb &U Johnson, LLP
1722 Broadway
Lubbock, TX   79401

For Gene Shipman:

JOSEPH M. PARSONS, ESQ.
Mayfield, Crutcher & Sharpee, LLP
320 S. Polk   Suite 400
Amarillo, TX   79101

Electronic Sound Recording Operator:   Amy Bruckert

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

GCI TRANSCRIPTION SERVICES
210 Bayberry Avenue
Egg Harbor Township, NJ  08234-5901
1-609-927-0299      FAX 1-609-927-9768      1-800-471-0299
e-mail - irwingloria@comcast.net

1  (At 3:51:20 p.m.)

2  NOTE: Telephone transmission reduces clarity and results in

3  "(unclear)" notations.

4              * * * * * * * * *

5          THE COURT:   All right, we're on the record in

6  Eastern Livestock.  Would the attorneys present in the

7  courtroom state the appearances, please?

8          MS. HALL:   Terry Hall for James Knauer, the

9  Trustee.

10          MR. TONER:   Kevin Toner for James Knauer.

11          MS. MAPPES:   Harmony Mappes for the Trustee.

12          MR. LaTOUR:   Randall LaTour for Fifth Third Bank.

13          MR. DONNELLON:   Dan Donnellon for First Bank &

14  Trust.

15          MR. AMES:   John Ames, Chip Bowles, and Christie

16  Moore for Superior and Joplin.

17          MR. OYLER:   Michael Oyler for Your Community Bank.

18          MS. LALLY:   Elizabeth Lally for Trustee Walro.

19          MR. ROBINSON:   Mark Robinson for Cactus Growers,

20  Friona, and others.

21          MS. BRYANT:   Lisa Bryant for Peoples Bank of

22  Pickett County.

23          THE COURT:   And appearing by phone. Are we --

24          MS. CARUSO:   Debbie Caruso, Your Honor  --

25          THE COURT:   All right, let -- let me interrupt you.

1  Kristen says she already has your -- your names, and so I

2  won't go through that again.  I will ask though that if you

3  speak, to identify yourself for the record.   And I'll ask

4  that the attorneys in the courtroom do the same.

5       All right, I'm going to work from a second amended

6  proposed agenda which was submitted by the Trustee counsel.

7  The first matter I see is the purchase money claims report.

8  Who wants to address that?

9       MS. HALL:   Your Honor, this is Terry Hall for the

10 people on the phone, and the entire continued matters, the

11 purchase money claims report, these are simply the items that

12 were reserved for resolution.   Under the purchase money

13 claims report we have either supplied a scheduling order,

14 uploaded a scheduling order, or it's been entered.  At this

15 point in time nothing under Item 1 under "Continued Matters"

16 is up for specific action at this time.   It's just for a

17 status conference.

18       THE COURT:   All right.

19       MS. HALL:   So as far as I know all of the -- we're

20 just in process related to going through discovery and

21 exchanging documents and coming up with what we're doing in

22 order to resolve those contested matters coming out of the

23 purchase money claims report.  So I'm not sure that there's

24 anything to  be --

25       THE COURT:   All right, does anyone --

1          MS. HALL:    -- done at this time.

2          THE COURT:    -- want to add anything, other than the

3   fact that all these matters will be covered by sched -- either

4   have been or will be covered by scheduling orders?

5      (No response)

6          THE COURT:    All right, hearing nothing, I'll move

7   on to Item #2 under "Continued Matters," and that's Peoples

8   Bank & Trust, a motion for relief of Peoples Bank & Trust of

9   Pickett County.

10          MS. BRYANT:    Lisa Bryant on behalf of Peoples Bank

11   & Trust of Pickett County.  I think we've agreed to have this

12   heard -- scheduled for an evidentiary hearing on November

13   15th, Your Honor.

14          THE COURT:    All right --

15          MS. BRYANT:    So happily that may conclude my

16   business this afternoon -- not that this isn't a great place

17   to be, but if I may be excused.

18          THE COURT:    I have -- I show Eastern on 1:30 on

19   that date, and you all have agreed to do, what?  An

20   evidentiary hearing?

21          MS. BRYANT:    Yes, Your Honor.

22          THE COURT:    How long do you anticipate -- is that

23   an omnibus day?  So are you going to do it at the end of the

24   omnibus date, then?

25          MS. BRYANT:    I guess so, Your Honor.

1           THE COURT:   So that probably won't be 1:30.   That

2  -- luckily, that's not a Chapter 13 day.

3           MS. BRYANT:   That's why we didn't want to do it

4  today.

5           THE COURT:   All right.   Okay.   So we'll have that

6  at the conclusion of the omnibus hearing on the 15th.   Yes.

7           MR. LaTOUR:   Your Honor, could I request that the

8  parties, or one of the parties, upload metes and bounds

9  descriptions of the real property in question?   There's four

10 different parcels, and for three or four months now we've not

11 known which property we're talking about, so if they could

12 just give us --

13          THE COURT:   Don't upload it on this docket, but

14 send it to Mr. LaTour within seven days.

15          ATTORNEY:   I will, Your Honor.

16          THE COURT:   The metes and bounds description.

17          MS. BRYANT:   A fairly short description.

18          MR. LaTOUR:   Thank you.

19          MS. BRYANT:   Thank you, Your Honor.

20          THE COURT:   Right.   Thank you.

21          New matters:   Roman Numeral III, #3.   Motion to

22 Collect Receivable.

23          MS. HALL:   Your Honor, this is a motion filed by

24 the Trustee to essentially put a matter in controversy so that

25 the Trustee can resolve an issue between it and one of the

1  creditors, certain creditors in the case.

2         It goes back to part of the money -- coming out of

3  the purchase money claims report, and we've agreed to place

4  this before the Court so there's actual dispute and

5  controversy before the Court so we can address the asserted

6  issues.  No objection's been filed.  We just ask that the

7  motion be granted that allows us to go ahead and collect the

8  receivable, hold it in escrow, and then put the dispute before

9  the Court so that we can resolve who owns the receivable.

10        THE COURT:  All right.  Does anybody want to be

11 hear on that?   I'll show that that motion was granted.

12 Upload an order.

13        #4, joint motion and first stipulation regarding

14 discovery protocols.

15        MR. TONER:  Kevin Toner, Your Honor.  This is a

16 product of negotiation of about a half a dozen lawyers to try

17 and come up with procedures across the matters in this case

18 for the handling of discovery.  It includes a way to give

19 notice to all parties that discovery has occurred and

20 documents are available; and it envisions setting up an

21 electronic site where materials could be given to the Trustee

22 and then uploaded for people to get, subject to a

23 confidentiality order.

24        That website procedure is going to cost about $1,600

25 a year to operate, and $2,500 for training; and we'll be

1  asking the make those administrative fees happen.

2          Because not every lawyer in the case was involved in

3  discussing the protocol, we thought it was appropriate to put

4  it out there to see if there were any comments today before it

5  goes forward.

6          MS. MOORE:  I think we noted, it's in the first--

7  on the first page that there were several lawyers that did

8  have an opportunity to vet this, and so it has been looked

9  over by quite a few parties.

10          THE COURT:  All right.  Does anybody have any

11  questions or comments about the proposed discovery protocol?

12  I'll grant the joint motion, if you upload it or --

13          MS. MOORE:  I think we did submit an order, but

14  we'll submit another order.

15          THE COURT:  Okay, well, no, you don't need to

16  submit another one if you have.  I just never know if you have

17  or haven't.  I sometimes do.

18          MR. BOWLES:  We will verify it's been uploaded.

19          MS. MOORE:  Yes, I sometimes submit them when I'm

20  not supposed to.

21          THE COURT:  I understand.  All right.  Roman

22  numeral IV, adversary proceedings.  Issue -- Matter #5,

23  Trustee vs. Willie Downs.

24          MR. TONER:  Yes, Your Honor.  Kevin Toner again.

25  In that case the Blue Grass entities and World Livestock have

1  until November 4 to appear and answer.  As soon as that

2  occurs, we're ready to have an attorneys' conference, and then

3  report to you in a pre-trial conference at the next omnibus.

4        THE COURT:  All right.  Anybody else have a comment

5  about that matter?  I'll show that's been continued for a

6  pre-trial conference on November 15th at 1:30.

7        Superior.

8        MR. BOWLES:  Yes, Your Honor.  Chip Bowles.  The

9  matter that we had was just simply a status conference on our

10  motion for partial judgment on the pleadings.

11        If you remember, at the September hearing you had

12  entered an order where the pleadings will be closed at the end

13  of October, and by November 28th all briefing on the motion

14  for partial summary judgment will be completed, and nothing

15  has changed on that.

16        There was a second matter that's appeared on the

17  Trustee's time line, but that I show being resolved back a

18  couple of hearings before about the defendants' joint motion

19  to consolidate or dismiss.

20        THE COURT:  Well, I think it has reared its head

21  again, to put it politely.  It's certainly mentioned

22  prominently in a lot of pleadings, but, you know, we haven't

23  even -- I mean, I've -- we've looked at some of the pleadings

24  that have been filed, but not all of them; and obviously, as

25  you say, they haven't even closed yet.  They close in a few

1  days.

2          MR. BOWLES:   Yes, Your Honor.

3          THE COURT:   I mean, I am -- I am aware of the, you

4  know, the position taken by several parties that -- that I

5  shouldn't have allowed Superior to have their own lawsuit,

6  and, you know, that that issue is not as distinct as Superior

7  argues that it is.

8          I -- I'm still inclined to think that I don't see

9  any harm, since we've got this issue almost fully briefed now,

10  to at least determine this initial issue in Superior; and for

11  those who say, "Well, that's going to have an impact on other

12  parties," that question of law, my initial thinking is, well,

13  -- well, several things:   First of all, it's certainly going

14  to be fully briefed and opposed in this case, including by the

15  Trustee; and second of all, I don't now that once I reach -- I

16  mean, I think those who think once I reach a decision as to

17  what the law is on this issue -- and I'm not anywhere near

18  that at this point -- that I might not change that position

19  are probably right:   I probably won't.   But if there are

20  distinct facts in other disputes that are different from

21  Superior's facts, of course that will be taken into

22  consideration.

23          So I'm not going to rule on the motion to

24  consolidate or to dismiss today.   I can't say that once I've

25  gone through this and gone through everything and it's been

1  fully briefed and replied to, what the final outcome will be

2  in terms of how Superior interrelates with Friona.   But I'll

3  let you know.   Right now I'm going to stay on the path that I

4  started down a couple hearings ago, or several hearings ago.

5           All right.  Friona.

6           MR. BOWLES:   Your Honor, the one thing I think is

7  necessary on that is something very similar to what you had,

8  and that is Superior's motion for partial stay of the portion

9  of the Friona loss of the Texas interpleader lawsuit, and

10  relates only to specific funds claimed by Superior.  That's

11  been fully briefed, but in some respects --

12           THE COURT:   I haven't -- I haven't read those yet.

13           MR. BOWLES:   Okay.  Then would you like me to go

14  on, or are you --

15           FEMALE ATTORNEY:   We shouldn't do this after 13s.

16           THE COURT:   Well, it's not only 13s, but I also

17  taught today and yesterday, and I'm just not -- I haven't had

18  as much time before this hearing as in normally do before

19  these hearings.

20           MR. TONER:   There was a new brief filed yesterday,

21  Your Honor, that you may not have seen.

22           THE COURT:   I have not seen anything filed

23  yesterday, I'll guarantee you that.  But I know you oppose

24  that.  I did see the -- I mean, I've glanced at what's been

25  filed.

1        MR. TONER:  We do, and one point I think that might

2   not come out from the papers is the overlap between Superior's

3   position in the Friona case and some other parties in that

4   case, like Joplin and Blue Grass.  They're arguing the same

5   legal issues that Your Honor is starting to think about in the

6   motion for judgment on the pleadings in the Superior case.

7        THE COURT:  Right.  I understand.

8        MR. TONER:  There really is overlap, but there

9   really should not be the stay they ask.  And the briefs

10  address why.

11       THE COURT:  All right.  Mr. Bowles.

12       MR. BOWLES:  Your Honor, without going into great

13  detail, there really isn't much overlap in these cases.  In

14  fact, the only overlap goes to about a million five in the

15  Kansas -- in the Kansas interpleader there's an interpleader

16  for a million five total amounts at issue.  Superior has filed

17  an answer in that, seeking 742,000 of that.

18       In the Texas interpleader, six million eight

19  approximately is the amount in controversy.  We've filed

20  answers that have claimed two million 653 of that.

21       Your Honor, the interpleaders are basically, "Here

22  is a pot of money."  People have claims to the pot of money.

23  No more, no less.  The only issues that you have in the

24  overlap is Superior claims -- since it's already paid the

25  underlying producers under these particular contracts, we

1  claim those specific pots of money.

2         Now the issue they say is, "Oh, there are other

3  parties who have brought forward contract, forward contract

4  merchant swap agreements. and swap -- and swap participants."

5  That, Your Honor, you've already hit the nail on the head.

6         Your Honor, these are basically things in the

7  Superior AP.  They relate to Superior's dealings with Eastern.

8   A determination whether it's a forward contract, it depends

9  on the particular contract, (unclear) petition of whether the

10  (unclear) forward contract merchant, depends upon Superior's

11  status, the period of swaps and swap agreements for the same

12  issues.

13         So, Your Honor, while there are certain legal

14  principles of our applying the complex law there, they don't

15  have any overlap.  It's not like you're trying to say, "Gee,

16  if every preference two days past the due date is a

17  preference," there will be no such issues because you have to

18  look at each subcontract's and each party's position.

19         So really, Your Honor, except for the two monetary

20  overlaps we have, there's almost no overlap.

21         The other objections they raise, Your Honor, they

22  say there are overlaps.  They also argued -- and there aren't

23  that many overlaps -- they say, they argued originally this

24  interferes with discovery.   Back in September, under the

25  discovery protocols, that (unclear) doesn't interfere with

1   discovery in any way, shape, form, or fashion, given the way

2   we've worked to craft to find the discovery process that works

3   in every case, so there is no delay there.

4           They say that -- there seems to be an argument that

5   says that if Superior gets a resolution to the issues it

6   raised in its AP, that will not be binding on them, and they

7   will get another bite at the apple.  Your Honor it's been made

8   clear, and I know you haven't had a chance to read it, we are

9   bound by what comes out in the Superior AP, just like any

10   other party.  The doctrine of *res judicata* and collateral

11   estoppel has not been suspended, nor would a stay of the

12   underlying lawsuit have anything to do with it.

13          They also argue, Your Honor, that Fifth Third's

14   presence somehow prevents a limited stay; that, Your Honor,

15   doesn't hold water for a number of reasons.  If nothing else,

16   Fifth Third is also now in the Superior AP, and are the

17   (unclear) plaintiffs, as is the debtor.

18          Basically, Your Honor, if the Superior AP with all

19   its various components is put into the rest of the APs, you're

20   going to both see elephants that will perhaps trample smaller

21   litigants; plus, you're going to have people who have nothing

22   to do with any of the complex issues related here having to

23   either sit by and wait, or have to participate, either

24   directly or indirectly in a fight that they have nothing to do

25   with it, because they're saying in the interpleader actions,

1  "We want this small pot of money, Your Honor.  Not that we

2  care about whether somebody is a forward contract merchant or

3  anything."

4          So, Your Honor, basically I think this is just

5  something so that we don't have to litigate -- both we and the

6  Trustee don't have to litigate on five different fronts.

7          THE COURT:  Well, what exactly do you -- what part

8  of it, exactly, do you want stayed?

9          MR. BOWLES:  The only thing we want stayed, Your

10 Honor, is simply the numbers that we talked about.  Superior

11 has claims of ownership to certain chunks of money.  We just

12 simply say those should be resolved in the Superior AP.  It's

13 not they're being stayed.  They're going to be resolved in

14 the Superior AP, but we believe that's the appropriate thing

15 rather than us having to do duplicate pleadings at double cost

16 on all issues.

17         THE COURT:  Well, see, there is the problem of

18 letting you have your own lawsuit.  I mean, that -- that's

19 where we're got -- well, what impact -- what impact does it

20 have on other parties if the Superior portion is done in

21 Superior and not in Friona?

22         MR. TONER:  One important impact I think is the

23 foot of the *res judicata* argument.  There are issues filing

24 forward in the Friona case that I predict Superior wants to be

25 heard on; and as I read the motion to stay, they're just

1  saying, "We don't want to be bound by any adverse outcomes in

2  the Friona case.   We'll go litigate our case privately with

3  just the Trustee.   We don't want anything to happen over here

4  on other issues that will bind us."

5         THE COURT:   Well, what if I -- what if I stay the

6  Friona -- anything against Superior in Friona, but they go

7  ahead and litigate with some other party who has what *they* say

8  is this kind of contract, and get some sort of resolution of

9  that issue?

10         I mean, you -- you -- are -- you don't want that

11  happen?  Or you want -- you *do* want that to happen?

12         MR. BOWLES:   The basic thing, Your Honor, is what

13  you -- is what they've hit upon, and that is the main issue in

14  this case.

15         The Trustee likes to apparently, or for whatever

16  reason, litigate on numerous fronts hoping if they win one

17  place they can win them all.   In other words, Your Honor,

18  what  -- this isn't really an argument about judicial economy.

19  It's an attempt to find some form somewhere when I win an

20  issue and therefore can try to bind everybody else.   And we

21  don't want to have multiple litigations -- most of us -- it

22  has no overlap.

23         But the one problem we did find a long time ago is

24  not so much even *res judicata* and collateral estoppel but more

25  of law of the case, and perhaps some forms of *res judicata* as

1  being applied against third parties.

2         No, Your Honor.  On the things that we have here, of

3  which we are going forward, by (unclear) --

4         THE COURT:   Do -- but do you want me to stop them

5  from litigating against other parties in -- in Friona?

6         MR. BOWLES:   Your Honor, what we are saying is

7  this:   And we can do -- use this as an example.  Let's say

8  they litigate in the other party and say they want to raise an

9  issue which would be (unclear) their pleadings they filed,

10 something on constructive trust.  Yes, we will be heard on the

11 constructive trust issue if it's being decided as a specific

12 issue that (unclear) everybody in the case.

13        If they're litigating on something like -- which is

14 more appropriate in these type of actions of who has a claim

15 to this money?  Is it Fred, the gentleman farmer, who gave

16 them 500 cows and says, "I have a security interest or

17 something else"?  If it has no general issue that overrides

18 every issue, we have no problem with that.  So (unclear)  Your

19 Honor says we can probably deal with that.

20        If they're trying to say, "I want to pick one small

21 person and litigate an overriding issue just with that small

22 person," then, yes, we have a problem with that.

23        MR. LeBAS:   Your Honor, David LeBas for J&F

24 Oklahoma.  May I be heard on this issue for a moment?

25        THE COURT:   You may.   Yes.

1           MR. LeBAS:   Thank you.  And I speak in opposition

2   to the motion to stay.   It's (unclear) the motion to

3   consolidate, which I understand you're not considering today;

4   but the motion to stay is going to have much of the same

5   effect, and if a piece of it he's carved out as is apparently

6   suggested here, I think it could certainly have a much larger

7   overall effect in what's been mentioned so far.

8           And, for example, one of the issues that's going to

9   have to be decided by the Court -- I believe identified in our

10  pleadings -- is what we call the critical issue, and the

11  critical issue being, what is the effect of someone who

12  delivers cattle to another party without requiring payment

13  upon the delivery?  That underlies almost every dispute that

14  exists in this case, and whether it gets decided as to

15  delivery by delivery or in large masses in deliveries, as in

16  the Superior case, the Court needs to hear briefing and fact

17  development on that issue from everybody.

18          Superior's claim is an effort to assert what claims

19  Eastern Livestock has under the same contract background that

20  all the other parties have.  And so it's really not a true

21  statement, I don't think, to carve out the Superior piece from

22  the rest, because they're simply saying by virtue of this

23  assignment or this rescindment document that's under

24  discussion they now have rights that Eastern has.  And if

25  those are the rights that we're talking about -- that is, what

1  happens when someone delivers and doesn't get paid, that's

2  exactly the same issue that every other supplier that's not

3  paid is going to assert in this case.

4         We don't want to have to try that twice.  We also

5  don't think it's fair to have it tried one time in the absence

6  of the ability of the parties who were also unpaid sellers,

7  without having been able to participate in the fact

8  development as well as the legal argument.

9         THE COURT:  Well, then let me follow up with you on

10 that.  If -- if I would grant the motion to consolidate, we

11 still have the briefs, even though it would be -- it would now

12 have a different cause number -- we still have the briefs on

13 file between Superior and the other parties asserting a claim

14 to the specific funds, the Court's still going to have to

15 determine that issue, right?  And that doesn't mean that

16 everybody who has claims to any funds are going to come

17 forward and file briefs in that case.  I mean, Mr. LaTour is

18 going to -- is already a party in interest for the bank.  The

19 Trustee's already a party in interest, and I forget who else

20 we names as parties in interest.

21        MR. TONER:  The three Texas interpleader --

22        THE COURT:  The Texas --

23        MR. TONER:  -- feed lots, yes.

24        THE COURT:  The three Texas -- I mean, you are

25 already parties in interest, so -- even if --

1          MR. LaTOUR:   Your Honor --

2          THE COURT:   -- Well, let me ask this question more

3  succinctly, and then someone give me an answer.  Even if I

4  consolidated them, could we not and would we not just go ahead

5  and resolve this legal question first?

6          MR. LaTOUR:   Your Honor, if I could weigh in, since

7  we are apparently giving the argument on this issue, I think

8  Rule 7042 gives you the answer on how to deal with this.

9  What it tells you is that you have the power to consolidate

10 the entire proceeding if you want to, but you also have the

11 power to join for hearing or trial any or all matters at issue

12 in the actions, which allows you to pick and choose.

13          Therefore, you don't need to stay anything to give

14 one side or the other the perceived or the actual advantage in

15 litigation.  You don't have to consolidate everything so that

16 somebody that has an argument about 179 steers are suddenly

17 faced with briefing 546(e).  But what you can do is when there

18 are issues that are common to both cases, somebody can file a

19 motion and say, "Your Honor, I would like you to hear this

20 under 7042(a)(1), with the other adversary, and give notice to

21 people so they can join, and cure it once and decide it once."

22 Then you don't have mysterious questions of collateral

23 estoppel to figure out; we don't have *res judicata*; we don't

24 have somebody taking two bites at the apple.

25          Now right now Superior is telling you inconsistent

1  things.  They're completely unrelated, but they're so related

2  that they ought to be stayed.  In the pleading that you

3  haven't had the opportunity to read, they reveal for the very

4  first time that it's not 500 contracts.  It is estimated to be

5  in the thousands, and that the amount in question is not the

6  unstated number of the adversary proceeding, but it's instead

7  19 million dollars.  These are completely new facts that are

8  raised; completely new sets of issues.

9           To then say, "Well, now let's stay all these other

10 proceedings and carry that through," is to continue on in the

11 effort to have a private litigation.  All they're really

12 asking you to stay is an adverse decision against them.  They

13 say, "Go forward with discovery with everybody," and

14 presumably including them.  "Go forward with every issue with

15 everybody," and if they like the issue they'll chime in and

16 litigate; but they're asking to stay anything that might be

17 adverse to them, and the answer is "Why?"   -- the question is

18 "Why?"   Why is it 19 million dollars suddenly shows up now.

19 Why is it thousands of contracts instead of the defined 500

20 contracts?

21          There's utterly no reason to give the extraordinary

22 relief of staying one adversary proceeding that is actually

23 starting to move forward and getting things accomplished

24 because they have one that they will tell you is unrelated in

25 any significant want, and yet they still want you to stay the

1 former one.

2          So you don't have to stay any of them.  You don't

3 have to consolidate any of them.  If there are issues that

4 overlap, Rule 7042 lets you pick and choose the particular

5 issue to join those two adversary proceedings for hearing.

6          MR. TONER:   I think 7042 --

7          MR. LaTOUR:   And that's what you --

8          MR. TONER:   -- is exactly right; and Mr. Bowles

9 mentioned a second ago constructive trust.  Well, the Trustee

10 yesterday filed a summary judgment motion to deal with

11 constructive trust and statutory trust issues in the Friona

12 case.  I suspect Superior wants to speak to those legal

13 issues, but if their stay were granted they would not be able

14 to.

15          I think -- because Mr. LaTour suggests the ability

16 to pick and choose what is going to have impact across these

17 cases is the right way to go --

18          THE COURT:   And what --

19          MR. TONER:   -- but a stay is not.

20          THE COURT:   -- what's the Trustee's suggestion as

21 to how that would unfold in this case?

22          MR. TONER:   I'm afraid it means no stay, and we go

23 forward with briefing where it makes sense.  There are these

24 overlaps, and so long as folks are generally aware of what's

25 being filed they can chime in to protect their own clients'

1  interests.

2          THE COURT:   I'm not sure that I understood your

3  answer.   Well, I understood the "no stay" part.   But in what

4  -- but tell me what you meant by the rest of that.

5          MR. TONER:   Well, I guess what I meant was if there

6  is a 546(e) brief, say, in the Superior case --

7          THE COURT:   Right.

8          MR. TONER:   -- I know Joplin who is interested in

9  that is represented by the same counsel -- they'll be

10 perfectly aware.   I know that Blue Grass is interested in

11 that, and their attorney was allowed to file an appearance to

12 monitor what's going on the Superior case.

13         So I think you'll hear from those who are interested

14 and want an opportunity to brief and be heard.

15         THE COURT:   If I do what?

16         MR. TONER:   If you don't grant a stay, and I'm

17 afraid probably don't grant consolidation.   The easiest way

18 to make sure everyone gets notice would be to consolidate it

19 back and have one proceeding.

20         THE COURT:   But absent --

21         MR. TONER:   To stay on path, as Your Honor

22 suggested, I -- I think what we need to do is not stay.

23         THE COURT:   Well, the one thing that I hate to do

24 is -- and I hate to do this in either case -- as I indicated

25 last time, I'm ready to start getting some things decided in

1   this case, and I know the lawyers are.  So I hate to take any

2   steps backwards.

3          I mean, we've got an issue here in Superior that is

4   almost fully briefed -- well, not quite.  There will be a

5   reply brief.  But almost all the initial answers, briefs have

6   been filed.  So -- well, I know, but up to -- they will be by

7   Halloween, so we're almost there.

8          So -- and I tried to take the step last time, or the

9   time before, to -- by allowing other parties to be brought

10  into that, over the objection of Superior, to make sure that

11  defici -- that the issue would be fully explored and briefed

12  by parties in interest.  Anybody -- so what would -- what else

13  would the Court need to do to see that that issue can proceed

14  to be determined?

15         MR. TONER:  I think we've done it, but I don't want

16  to speak for the movants on the motion to consolidate or

17  dismiss.

18         THE COURT:  But they're in now, right?

19         MR. TONER:  They're in, and they can speak --

20  they're on the phone, too.

21         THE COURT:  Yeah, I mean, if you guys -- if you

22  guys are already in the Superior, what's the prejudice to you?

23  I mean, what's the need for consolidating under a different

24  cause number now?

25         MR. LeBAS:  This is Dave LeBas, and I'll just speak

1    first, and the others can chime in as needed.

2         The prejudice to -- at least as I see it -- will

3    involve that joint -- or duplicate the effort that will be

4    involved.  If it should turn out that the Court decides to

5    deny the effort by Superior to enforce its assignment or

6    rescindment claims.  At that point then Superior will be in

7    much the same position as we give these other unpaid parties,

8    in which case we'll have to go back and try to recreate what

9    those transactions (unclear) as they unfold.  We don't want

10   to have to go back, for example, and re-depose Mr. Gibson, re-

11   depose the truckers, and re-depose the principals, depending

12   on what the Court's ruling may be.

13        THE COURT:  I'm not sure why you would have to -- I

14   don't understand that.  I mean --

15        MR. LeBAS:  Would you like an example?

16        THE COURT:  Yeah, give me another -- give me an

17   example that --

18        MR. LeBAS:  Okay, as an example, as I understand

19   the Superior claim today, it seeks to enforce claims that

20   Eastern Livestock would have.

21        THE COURT:  Right.

22        MR. LeBAS:  And as a supplier through Eastern to,

23   for example, the feed yard companies -- if the Court does not

24   permit Superior to assert its own independent claim then those

25   claims would have to go through Eastern in much the same way

1  that supplier claims today must be asserted through Eastern.

2       THE COURT:   Okay.

3       MR. LeBAS:   The same issues would have to be

4  addressed on those transactions as would have to be addressed

5  with the ones that currently exist in the interpleader case.

6       THE COURT:   Okay.  But if I bring them into the

7  interpleader case now, consolidate them, they're still going

8  to want to get a preliminary determination on this point of

9  law, and I'm still going to have to determine that:   Yes or

10 No.

11      MR. LeBAS:   Oh, I agree with that.  Yes.

12      THE COURT:   And even if -- and if I say "No," like

13 you say, then they're still going to assert other claims,

14 other legal bases, like you say, much like other parties do to

15 some funds.  So I don't see how that changes things, other

16 than cause numbers.

17      MR. MASSOUH:   Your Honor, this is John Massouh for

18 Friona Industries.   Just to touch on that, practically, I

19 think if you consolidate the two matters, we can still stay on

20 the same briefing schedule that was ordered by the Court at

21 the last omnibus on the issue that you're talking about.   I

22 seems to me that your concern is to keep -- keep at issue

23 (unclear) brief going forward, I still think we can do that

24 notwithstanding consolidation of the case, and that issue

25 could still be determined; and once determined, you know, the

1   -- all the parties in interest will have notice of it and will

2   have a right to speak to it and things of that nature, and if

3   the answer is "No," (unclear)  Mr. LeBas (unclear)  -- then --

4   then there's -- there's numerous common issues that's between

5   Superior and the other defendants.

6          Another thing, Your Honor, that he touched on with

7   regard to the stay motion is Mr. Bowles mentioned that they

8   want to avoid multiple litigation.  (unclear) they're the ones

9   who created the multiple litigation.   There is already a

10  pending adversary proceeding or lawsuit that Friona filed.

11  And another thing is that I think it's practically virtually

12  impossible to stay (unclear) added to Superior, as they would

13  suggest, because all the claimants in the adversary proceeding

14  or the (unclear) adversary, that counterclaims, cross-claims

15  against all parties, including Superior; and Superior also has

16  claims against all of the defendants, and so to say the matter

17  just pertains to Superior is, in effect, (unclear) the entire

18  interpleader action which (unclear).

19          THE COURT:   Okay.  I want to move on.  I'll tell

20  you that I'm going to -- I'm not going to rule from the bench

21  because I've not read everything; and I want to make sure that

22  I'm fully apprised.

23          My gut reaction is probably to deny both motions;

24  but I have not -- it's not fair to the parties for me to do

25  that without having fully read everything that they've written

1  and filed, and I'll do that.

2         I do think Mr. LaTour's suggestion is valuable in

3  terms of how to proceed under the Rules, but I'll get you --

4  I'll get you short written orders on both of those within a

5  few days.

6         Let's move on.  Is there anything else in Friona?  I

7  know Mr. Bowles went directly to the stay matter.  Are there

8  any other issues in Friona that we need to deal with?

9         MR. TONER:   Not that I'm aware of, Your Honor.

10        THE COURT:   All right.  Innovative -- we've still

11 -- we have the motion to stay there, and a response, which

12 I'll deal with as indicated.

13        The Rush Creek Ranch --

14        MR. TONER:   There's been a stipulation to

15 consolidate arguments into that interpleader that came out of

16 Wisconsin to make things more efficient.  All the parties

17 agree.  I don't think there's anything to do there, Your

18 Honor.

19        THE COURT:   So that's Fredin Brothers?

20        MR. TONER:   No.  Rush Creek is what I was talking

21 about.

22        THE COURT:   Oh, yes.  Rush Creek.  Okay.  So

23 that'll be -- there's an agreement to consolidate?

24        MR. TONER:   The purchase money dispute has the same

25 legal issues as are pleaded in the Rush Creek case, and the

1  parties have agreed to bring those on in and deal with them in

2  that one matter -- that one adversary proceeding.

3          THE COURT:    And which adversary proceeding is that?

4          MR. TONER:    The Rush Creek adversary proceeding.

5          THE COURT:    Well, I know, but which one are you

6  going to combine it with.

7          MS. HALL:    Oh, 1(a), Your Honor -- the Florida

8  objections.

9          MR. TONER:    The Florida objections.

10          THE COURT:    Oh.  Yes.

11          MR. TONER:    It's Florida and Wisconsin.  Hard to

12  think of them together, in my mind.

13          THE COURT:    I understand.  Did someone else want

14  to be heard on that?

15          MR. NEWBERN:    Your Honor, this is Scott Newbern.

16  We're just consolidating, and the parties have agreed to it.

17  I represent the Florida creditors.

18          THE COURT:    Okay.  Very good.  All right, and then

19  Fredin Brothers.

20          MR. TONER:    There is a summary judgment motion,

21  Your Honor.  Our response is due November 21st.

22          THE COURT:    All right.

23          MS. YATES:    Your Honor, this is Jessica Yates for

24  Fredin Brothers.  May I be heard briefly on our two pending

25  unopposed motions?

1          THE COURT:   Yes, ma'am.  Go ahead.

2          MS. YATES:   Yes, Your Honor.   We have an unopposed

3    motion for discharge, and really this is to get back, Your

4    Honor, to our comment on our last hearing that this -- we are

5    a typical interpleading plaintiff, a disinterested

6    interpleading plaintiff --

7          THE COURT:   Right.

8          MS. YATES:   -- and we'd like to just go ahead and

9    get out of this case; and we did consult with all of the

10   parties.  They were fine with that, and so that is something

11   I'm not sure if the Court is expecting (unclear) responses,

12   but they all represented to us that, you know, this was -- it

13   would be unopposed.

14         THE COURT:   Apparently that's in my -- my box for

15   review and signature; and I'll see that that gets signed by

16   tomorrow.

17         MS. YATES:   Thank you very much, Your Honor, and

18   that's also -- it relates as well to a pending counterclaim

19   that we've just sought to have dismissed as moot.   The

20   (unclear first part of word) -ponents of the counterclaim also

21   represented they were unopposed, which again, we are simply

22   just getting out of the case.

23         THE COURT:   I'll sign that als--

24         MS. YATES:   So hopefully we make clean break.

25         THE COURT:   I'll sign that also and bid you *adieu*.

1          MS. YATES:    Thank you very much, Your Honor.

2          THE COURT:    All right.  All right, in the -- that's

3  all I had in Eastern.  In Thomas and Patsy Gibson we had a

4  First Bank & Trust Company's motion for examination, 2004

5  exam.

6          MR. DONNELLON:    Yes, Your Honor.  Dan Donnellon for

7  First Bank & Trust, and we're here from the last omnibus.   I

8  had indicated that we wanted to continue this over to today

9  because I'm waiting to hear what the Trustee in the Gibson

10 case has been able to obtain from Community Bank to see if

11 there is anything else we need.  I tried to catch up with Ms.

12 Caruso this past week, and unfortunately my schedule didn't

13 allow it.  We traded voice mails, but I'm simply waiting to

14 see where -- what Mr. Oyler has been producing to the Trustee

15 to see if there's any reason that we need additional

16 information.  I'm hoping that we will not, but I simply don't

17 have an answer for the Court right now, and would ask that we

18 continue this over again.

19         THE COURT:    All right.  I'll show that's continued

20 to the next omnibus, 11-15.

21         East West Trucking.  Trustee Michael Walro's motion

22 for authority to destroy records, with objections.  Well,

23 there was an objection by Eastern's Trustee, and an agreed

24 entry resolving the objection.

25         MS. LALLY:    Yes, Your Honor.  I'm Elizabeth Lally

**#10-93904-BHL-11**                                    **10-25-2011**

1   for (unclear) Walro.  We have an order approving agreed entry

2   (unclear) I believe (unclear)

3              THE COURT:   I think it was entered, actually.

4              MS. LALLY:   We also have the motion to pay a

5   priority claim.

6              THE COURT:   You have a motion to pay priority claim

7   of David Sells, and I don't believe they're -- that's a small

8   wage claim?

9              MS. LALLY:   Yes, Your Honor.  It's $1,500, and

10  there have been no objections filed to that second amended

11  application.  We believe there's enough money in the Trustee's

12  account to pay this, considering the contested funds as well

13  as (unclear).

14             THE COURT:   All right, I'll show that motion is

15  granted, and I'll sign an order if you've uploaded one, or if

16  not, please do so.

17             MS. LALLY:   I'd be happy to, Your Honor.

18             THE COURT:   All right, very good.  That's all I

19  have.  Does anybody have anything else they wish to bring

20  before the Court in any of these matters?   Speak now or

21  forever hold your peace -- or at least until November 15th.

22             MR. BOWLES:   Go I-U.

23             THE COURT:   Well, that -- yeah, it's too late for

24  that.  All right, we're adjourned.

25             ATTORNEY:   Thank you, Your Honor.

1  (End at 4:34:26 p.m.)

2                    *  *  *  *  *  *  *  *  *  *  *  *

3          I certify that the foregoing is a true and accurate

4  transcript from the digitally sound recorded record of the

5  proceedings.


/s/ *Gloria C. Irwin*                                    11/5/2011
**GLORIA C. IRWIN**                                                            **Date**
**Certified Transcriber NJ AOC200**
    **Federal  CERT #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299  1-800-471-0299**
    **FAX  609-927-9768**
**e-mail  irwingloria@comcast.net**
✔