IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| **In re** | § § | |
| **Eastern Livestock Co., LLC** | § § | Chapter 11 |
| | § § | Case No. 10-93904-BHL-11 |
| **Debtor.** | § § § | Hon. Basil H. Lorch III |

**J&F OKLAHOMA HOLDINGS, INC.'S BRIEF IN OPPOSITION
TO THE KREMLIN ISSUE**

J & F OKLAHOMA HOLDINGS, INC. ("J&F") submits this Brief supporting its Memorandum [Doc. no. 735] concerning the "Kremlin Issue," as defined in the Scheduling Order of July 25, 2011 [Doc. No. 622] (the "Scheduling Order").

**Summary of Memorandum**

1. The Scheduling Order required interested parties to state their positions concerning the "Kremlin Issue." As applicable to J&F, the Kremlin Issue is whether Brent Kuehny dba Dollar K Cattle Co. ("Kuehny") or his lender, the Bank of Kremlin ("Kremlin") has claims against J&F based on its purchase of 200 steers on November 1, 2010 from Mark Hohenberger ("Hohenberger"), who bought them from Eastern Livestock Co., LLC ("ELC"), which bought them from Kuehny.

2. In their Response and Objection [Doc. no. 544], Kuehny and the Bank of Kremlin assert a claim to funds held by Hohenberger but do not assert a claim for relief against J&F. However, in their "Purchase Money Proof of Claim" [Claim no. 242, paragraph 21], Kuehny and the Bank of Kremlin suggested that a claim does exist. This Brief shows that the claims of Kuehny against J&F fail on the pleadings under the shelter rules of the UCC, or cannot support recovery against J&F in this proceeding, and the claims of Kremlin either fail on the pleadings or cannot be asserted in this "Cattle Claims" proceeding.

3. This Brief also shows that even if Kremlin Bank succeeds in its attempt to impose a constructive trust, that remedy is not available against third parties who bought in good faith.

**Facts**

4. The Bank of Kremlin and Kuehny allege that Kuehny sold and delivered 200 steers to ELC on 11-01-10 for $158,636.31, that ELC then sold and delivered the cattle to Mark Hohenberger for $158,494.02, and that Hohenberger then sold and delivered the cattle to J&F for $167,308.93. They further allege that ELC paid Kuehny with a check that did not clear, and that although J&F paid Hohenberger, Hohenberger stopped payment on his check to ELC. [Doc. 544, paragraphs 7 – 10].

5. According to the "Purchase Money Proof of Claim" [Claim 242], to which Hohenberger is a party, Hohenberger stopped payment on his check to ELC and is now holding $158,494.02 in escrow.

**Kuehny's Claim against J&F is Barred by the UCC Shelter Rules**

6. Kuehny's claims as "owner" of the 200 steers fails as a matter of law on the facts he has alleged in his pleading. His delivery of the cattle to ELC under a contract of purchase resulted in his conveyance of title to ELC, whether or not ELC's check cleared, and as a result, ELC acquired the ability to convey the cattle free of Kuehny's claims to third parties such as Hohenberger.

7. The UCC addresses this in § 2.401 and § 2.403. The former says at subsection (b):

> Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference of the physical delivery of the goods, despite any reservation of a security interest, and even though a document of title is to be delivered at a different time or place.

8. Under this rule, Kuehny's delivery to ELC transferred title to ELC whether or not he was paid for them. *See Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1361 - 1362 (5th Cir. 1983).

9. After delivery, ELC acquired the ability to transfer good title to Hohenberger under § 2.403(b), which provides:

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the rights purchased. A person with voidable title has power to transfer a good title to a good-faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though
>
> (1) The transferor was deceived as to the identity of the purchaser, or

    (2)    The delivery was in exchange for a check which is later dishonored, or

    (3)    It was agreed that the transaction was to be a 'cash sale,' or

    (4)    The delivery was procured through fraud punishable as larcenous under the criminal law.

10. Kuehny alleges that ELC gave him a check which was later dishonored. [Doc. 544, at page 3, paragraph 8]. Kuehny also alleges that he delivered the cattle to ELC as a result of fraud. [Doc. 544, at page 3, paragraph 10] Both of these situations fall directly within the rule of § 2.403. In the words of the statute, "A person with voidable title [Eastern Livestock] has power to transfer a good title to a good-faith purchaser for value [Hohenberger] even though … (2) the delivery was in exchange for a check which [was] dishonored … or (4) the delivery was procured through fraud…"

11. Once Hohenberger acquired good title, he likewise had the ability to transfer good title to J&F. Kuehny's claim as "owner" was therefore cut off when he delivered them to Eastern Livestock and he cannot pursue a claim against later purchasers, including J&F. *See In re Samuels*, 526 F.2d 1238, 1242 (5th Cir. 1976), *cert. denied sub nom*, 429 U.S. 834 (1976); *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351 (5th Cir. 1983); and *Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198 (5th Cir. 1981), *cert. denied*, 455 U.S. 921 (1982).

**The Kremlin Bank's Claim against J&F is Barred by the One Satisfaction Rule**

12. Kremlin Bank relies on UCC § 9.315 to argue that its lien continued to encumber the steers even after Kuehny sold them. [Doc. 544, page 5, paragraph 19] In pertinent part § 9.315 says:

    (a) Except as otherwise provided in this chapter and Section 2.403(b):

        (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured part authorized the disposition free of the security interest or agricultural line; and

        (2) a security interest attaches to any identifiable proceeds of collateral.

13. Official Comment 2 notes "the general rule that a security interest survives disposition of the collateral." However, the same source says that a "secured party may claim both any proceeds and the

original collateral but, of course, may have only one satisfaction." In this instance, the Bank of Kremlin claims proceeds in the possession of Hohenberger. If its claim to these funds is successful it cannot also claim the 200 steers.

### Any Constructive Trust Claims are Not Enforceable against Good Faith Purchasers

14. The constructive trust that Bank of Kremlin attempts to impose cannot be enforced against a transferee who had no knowledge of the alleged trust.

15. Oklahoma courts hold that a trust of this nature, if it exists, may continue through a trustee's sale but only if the transferee from the trustee had knowledge of the trust character of the goods or property that it received. *See Turley v. Mahan & Rowsey, Inc. (In re Mahon & Rowsey, Inc.)*, 817 F.2d 682, 684 (10th Cir. 1987) ("Generally, when assets of a trust are improperly transferred by the trustee, the beneficiary may trace those assets and recover them from anyone but a bona fide purchaser for value."). The Kremlin Bank has not suggested this occurred either with respect to Hohenberger when he bought from ELC or with respect to J&F when it bought from Hohenberger. No recovery against J&F should therefore be permitted on this claim.

### Any Claims against J&F need Fact Discovery in an Adversary Proceeding

16. Neither Kuehny nor Kremlin Bank has filed an adversary proceeding in this Court or any state or federal court litigation against J&F seeking affirmative relief. Therefore, this Court's jurisdiction has not been invoked by them in a way that could support any award against J&F.

17. For the reasons stated above, J&F asserts that the claims of Kuehny and Kremlin Bank should be denied. However, if this matter is not disposed of, then J&F reserves it right to seek discovery pertaining to any such claims.

### Conclusion

For the reasons stated above, the claims of Brent Kuehny and Bank of Kremlin against J&F Oklahoma Holdings, Inc. related to the 200 steers delivered on November 1, 2010 should be denied.

Respectfully submitted,

David L. LeBas, SBN 12098600
NAMAN HOWELL SMITH & LEE, PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
(512) 479-0300
FAX (512) 474-1901

and

Mark A. Robinson
VALENTI HANLEY & ROBINSON, PLLC
1950 One Riverfront Plaza
401 West Main Street
Louisville, KY 40204
(502) 568-2100
FAX (502) 568-2101
mrobinson@brhlaw.com


By: /s/ David L. LeBas

**ATTORNEYS FOR J & F OKLAHOMA HOLDINGS, INC.**

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing was served on this the 8th day of November, 2011, via electronic and/or U.S. Mail, upon all parties entitled to receive such notice as provided by the electronic case filing system used by the court.

/s/ David L. LeBas