UNITED STATES BANKRUPTY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**LIMITED RESPONSE OF FIFTH THIRD TO DISPOSITIVE MEMORANDUM OF STOCKMAN OKLAHOMA LIVESTOCK MARKETING, INC.**

Fifth Third Bank ("Fifth Third"), by and through undersigned counsel, hereby files this Limited Response to the Dispositive Memorandum of Stockman Oklahoma Livestock Marketing, Inc. [Dkt 796] (the "SOLM Memorandum"), and in support of such Limited Response, respectfully states as follows:

**I.     The Litigation Claimants bear the burden of proof in excluding property from the Debtor's Estate under 11 U.S.C. § 541(d), a burden which cannot be satisfied in the instant case.**

In the SOLM Memorandum, SOLM incorrectly states that "it is appropriate to look to applicable state law to determine what interest Eastern held in the cattle…and to determine *when Eastern's constructive trust obligation arose*" at page 2.  SOLM incorrectly presupposes that the Debtor *does*, in fact, have a constructive trust obligation. SOLM, by this statement, also seemingly implies that the composition of the Debtor's Estate is defined by *state law*, and that it is the Estate's burden to demonstrate that it does in fact hold an interest in property.

There is no question that 11 U.S.C. § 541, rather than "state law", defines what is and is not property of a debtor's estate.  While certain limited questions regarding the nature or extent of a property interest may be appropriately resolved by state law, the fundamental determination of whether property constitutes estate property is resolved by 11 U.S.C. § 541.  Further, "[w]hen

1

property in the possession of a debtor is alleged to be held in trust by the debtor for a nondebtor, and therefore not estate property under section 541, the burden rests upon the entity seeking to exclude the property from the estate to establish the existence of the claimed fiduciary relationship." Collier, ¶ 541.28, 541-103.  See, also: Connecticut General Life Insurance Company v. Universal Insurance Company, 838 F.2d 612, 618 (1st Cir. 1988) (claimant must prove existence and legal source of trust relationship); American Service Co. v. Henderson, 120 F.2d 525, 531 (4th Cir. 1941) (claimant must establish existence of trust relationship).  Eastern took delivery of the cattle (as a buyer of goods) from the Litigation Claimants (as sellers of such goods) pursuant to an agreement to purchase such goods.  To the extent that the Litigation Claimants now assert that the cattle are excluded from the Debtor's Estate pursuant to 11 U.S.C. § 541(d) for lack of equitable title to such cattle as of the commencement of the case, it is the burden of the Litigation Claimants to so demonstrate.

As discussed previously in Fifth Third's Limited Memorandum, a constructive trust, as asserted by the Litigation Claimants, is a remedy.  Not only have the Litigation Claimants failed to conclusively demonstrate the existence of an underlying claim which would justify imposition of such a remedy, the Bankruptcy Code prohibits a claimant from dictating the distributions received from a bankrupt estate – the Litigation Claimants are entitled to receive only such distributions as are provided for claims of like class and priority. Even presupposing that the Litigation Claimants could direct a specific remedy, in order to support imposition of a constructive trust, state law requires at a minimum that the Litigation Claimant demonstrate (1) some wrongdoing, and (2) unjust enrichment of the debtor. Assuming for the sake of argument

that a Litigation Claimant could make such showing[1], a Litigation Claimant must then *specifically identify* the property subject to such trust.  See, <u>Connecticut General Life Insurance Company v. Universal Insurance Company</u>, 838 F.2d 612, 618 (1st Cir. 1988) ("In order to establish such a right as trust beneficiary, a claimant must make two showings: first, the claimant must prove the existence and legal source of a trust relationship; second, the claimant *must identify the trust fund or property* and, where the trust fund has been commingled with general property of the bankrupt, sufficiently trace the property or funds"); <u>American Service Co. v. Henderson</u>, 120 F.2d 525, 531 (4th Cir. 1941) ("Clearly, the burden rests upon the claimant to establish the original trust relationship.  He must prove his title, *identify the trust fund* and, where the fund has been mingled with the general property of the debtor, sufficiently trace the trust property.").  In the instant case, the *res* at issue (the cattle which the Litigation Claimants assert were impressed with a constructive trust) has long since been resold and presumably slaughtered - *the res sought to be impressed with a constructive trust does not exist*.  No remedy can be imposed against a property which does not exist.

Even cases cited by SOLM in support of its contentions that a constructive trust is an available remedy in this case make clear that once the property sought to be impressed with a constructive trust is dissipated, the claimant is not entitled to the replacement of such property. <u>See:</u> <u>In re Seneca Oil</u>, 906 F.2d 1445 (10th Cir. 1990) (Where overcharges totaled more than was in the segregated account, appellant asserted a constructive trust only over the amount in the account and held a general unsecured claim for the remainder); <u>In re Columbia Gas Systems</u>, 997 F.2d 1039, 1063 (3rd Cir. 1993) ("Once trust money is removed, however, it is not replenished by subsequent deposits").  Yet, despite dissipation of the *res* in the instant case, the Litigation

---

[1] As indicated in Fifth Third's Limited Memorandum, no showing of unjust enrichment is here possible, where the Debtor does not have sufficient assets to pay all of its creditors in full.

Claimants assert that their theory that the cattle were impressed with a "constructive trust" entitles such claimant to receive a portion of the interpled funds equal in value to cattle delivered but as-yet unpaid. No Litigation Claimant has cited a single case in support of his or her assertion that such claimant is entitled to a *replacement res* once its initial *res* is dissipated.

There are simply too many hurdles which the Litigation Claimants cannot meet; too many gaps in their legal theory which the Litigation Claimants cannot fill. The Litigation Claimants: (1) assert, without support, a remedy as an independent claim; (2) fail to state a basis for asserting such remedy as is required by state law; (3) fail to identify any authority by which a bankruptcy court could impose such remedy in the face of the clearly delineated distribution scheme provided by the Bankruptcy Code; (4) have a *res* which is no longer in existence; and (5) can cite no authority which supports the giving of a replacement *res*. The burden borne by the Litigation Claimants to demonstrate that it is both possible and appropriate for a constructive trust to be imposed cannot be met in this case.

II. **The cases cited by SOLM in the SOLM Memorandum either counsel *against* imposition of a constructive trust in the instant case, or are inapposite.**

SOLM cites to a number of cases which SOLM asserts support its contention that a "constructive trust" remedy is both available and appropriate in the instant case. A careful reading of the cases cited by SOLM, however, reveals the opposite.

   A. <u>SOLM does not cite cases which establish that a constructive trust "springs" into being upon the commission of the wrongful act</u>.

SOLM cites to <u>In re Seneca Oil</u>[2] and the 1936 case of <u>Barnsdall State Bank v. Springer</u>[3] in support of its contention that "Eastern acquired the cattle subject to a constructive trust in

---

[2] 906 F.2d 1445 (10th Cir. 1990).
[3] While SOLM notes the citation as 1936 OK 314, 56 P.2d 1445, Fifth Third believes the correct citation is 176 Okla. 479, 56 P.2d 390.

4

favor of SOLM that arose as of the date Eastern acquired the cattle". Seneca Oil, it should be noted, does not *actually decide* the issue of when a constructive trust arises – whether it arises upon the adjudication of a court or arises at the time of the wrongdoing. Such distinction is irrelevant to the Seneca court, as under the facts of the case, there was no point in time wherein the debtor *could* have held equitable title to the monies which were the subject of this case. In Seneca, the debtor was a producer of crude oil, and at the time, was subject to federal regulations which placed a price ceiling on the sale of crude oil. The debtor violated this price ceiling, and overcharged for crude oil[4]. Under *federal law*, the debtor was not permitted to charge or collect the overcharge amounts. Accordingly, the court held that the debtor held the overcharge monies in constructive trust. As there was no point in time where the debtor *could* have held lawful equitable title to such monies, the court simply did not need to decide when the trust arose. Such analysis sheds no light upon the instant circumstance.

SOLM's reliance on Barnsdall is similarly misplaced. Barnsdall (aside from being more than 75 years old) does not occur in the context of a bankruptcy proceeding, and thus is not at all concerned about an interpretation of the provisions of 11 U.S.C. § 541(d). Further, as with Seneca, Barnsdall is premised upon a factual circumstance wherein the party in possession of the trust *res* was *never* in lawful, equitable possession of such res. Barnsdall is similarly inapplicable to the case at bar.

    B. <u>SOLM does not cite to cases which support a post-petition, retroactive imposition of a constructive trust</u>.

To counter Fifth Third and the Trustee's assertions that a constructive trust cannot be given effect in bankruptcy unless imposed pre-petition, SOLM purportedly cites to cases holding

---

[4] The debtor in Seneca also placed the overcharge portion of its revenues in a separate, interest-bearing account.

5

that a pre-petition judicial determination is unnecessary.  In reality, however, SOLM cites to cases which do *not* divest a debtor of equitable title once acquired subsequent to the petition date, but *merely confirm the debtor's pre-petition lack of independent and superior equitable title to the res*.  See: In re Poffenbarger, 281 B.R. 379 (Bankr. S.D. Ala. 2002)[5]; In re Unicom Computer Corp., 13 F.3d 321 (9th Cir. 1994)[6]; In re Howard's Appliance Corp., 874 F.2d 88 (2nd Cir. 1989)[7]; In re Columbia Gas, Inc., 997 F.2d 1039 (3rd Cir. 1993)[8]; In re Seneca Oil Co., 906 F.2d 1445[9]; In re Bake-Line Gourp, LLC, 359 B.R. 566 (Banrk. D. Del. 2007)[10].  In other words, these cases did not need to discuss whether a constructive trust must be imposed pre-petition for

---

[5] Ultimately holding that child support payments are held in constructive trust for the benefit of a minor child, and thus not included in the custodial parent's estate, stating: "[C]hild support is a fundamental right for the benefit of the minor child, and not for the benefit or support of the custodial parent" (at 386); "[C]hild support arrearages cannot be waived or forgiven by a custodial parent" (at 387); and "…a right to collect child support was created for and inures to the sole benefit of someone else" (at 392).

[6] Where debtor Unicom acted as broker between Pitney and Mitsui.  Prepetition, Unicom incorrectly instructed Pitney to send a payment to Unicom and not Mitsui.  Unicom redirected the misapplied payment to Mitsui within the 90 days prior to Unicom's bankruptcy petition.  The court held the redirected payment to Mitsui was not a recoverable preference, as "Unicom *never* had any right to accept Pitney's check on behalf of Mitsui" ( at 325) and such payment in Unicom's hands was held in constructive trust for Mitsui.

[7] Debtor was required to store collateral in New York under security agreement, but six months prior to bankruptcy began storing collateral in New Jersey.  Debtor did not notify the secured party of this shift in storage location, and thus (under the laws of perfection at the time) debtor's violation of the storage covenant resulted in a technical unperfection of the security interest held by his secured party (secured party had perfected by filing in New York, but not New Jersey).  The court held that the debtor was not entitled to use its strong arm powers under §544 to strip the collateral of the secured party's technically unperfected liens.

[8] Debtor sought authority to pay (1) refunds owed to customers the debtor had been refunded from upstream pipelines for overcharges; (2) surcharges collected from customers and owed to a research institute; and (3) to pay bills for pre-petition purchases of natural gas supplies and transportation services.  The court held that the refunds owed to customers and surcharges owed to the research institute were held in constructive trust, as federal regulations and orders placed the debtor in the role of a "mere conduit" for collection and distribution of such funds.  In short, under federal law, the debtor had no equitable interest in such monies.  Significantly, with respect to pre-petition suppliers, the court held that monies owed on account of the provision of goods and services were *not* held in constructive trust for the benefit of the supplier, as such obligations are "clearly debts", and the suppliers "in the same position as every other unsecured creditor." (at 1063).

[9] Pursuant to applicable federal regulations, debtor was barred from asserting an equitable interest in monies overcharged in violation of federally mandated price ceiling.

[10] Debtor and preference defendant had no business relationship, but maintained offices in the same building.  A postman  inadvertently delivered a check intended for defendant to debtor.  Debtor cashed the check.  Defendant and debtor later discovered this mistake, and debtor wrote a check to defendant for the amount of the client check.  Four days later, debtor filed bankruptcy, and later sought to recover the payment to defendant as preferential.

purposes of § 541(d), as such property would have been excluded under an analysis of § 541(d) *without need to even invoke a constructive trust theory*.

In Southmark Corp. v. Gorsz (In re Southmark Corp.)[11], (also cited for the proposition that no pre-petition order is required) the court does not even impose a constructive trust. Rather, the court specifically holds that the district court erred in finding that an allegedly preferential transfer made by the debtor prior to the petition date was made with funds held in constructive trust for a third party (and thus not estate property). Id. at 1119. These cases are simply not instructive where, as here, Eastern *did* hold lawful expectation of equitable title as of the commencement of the case, and is only post-petition sought to be retroactively divested of such title.

    C. <u>SOLM fails to cite cases which would support imposition of a post-petition, retroactive constructive trust</u>.

The Litigation Claimants do not allege that Eastern crept onto their property in the dead of night and made off with the cattle, thus alleging that Eastern *never* held a lawful expectation to equitable title. Rather, the Litigation Claimants assert that some unidentified wrongdoing[12] demonstrates that it is unjust for Eastern to retain the benefit (the proceeds) of the cattle *subsequent* to the voluntary delivery of equitable title to the cattle to Eastern by such claimant.

---

[11] 49 F.3d 1111 (5th Cir. 1995).

[12] The basis by which any individual Litigation Claimant asserts a constructive trust is often unclear. As indicated and discussed in Fifth Third's Limited Memorandum, the Litigation Claimants often assert a "constructive trust" as an independent claim or cause of action, premised upon an unidentified wrong and with only bare allegations of unjust enrichment. Where a wrong is identified, Litigation Claimants merely cry "fraud" – which Fifth Third can only presume is a reference to the alleged check kiting scheme perpetrated by Eastern against Fifth Third. Fifth Third fails to understand how alleged wrongful conduct against *Fifth Third* can constitute a wrong against a cattle seller who had a significant and profitable transaction history with the Debtor. The only "wrong" perpetrated against any Litigation Claimant is the Debtor's alleged failure to pay and/or inability to pay - a "wrong" which every debtor commits on the eve of bankruptcy, and which would not rise to the level necessary for imposition of such a disfavored remedy as a "constructive trust".

  SOLM appears to assert that it was the acquisition of the cattle by Eastern that was "wrongful". See, SOLM Memorandum at page 3. Where SOLM voluntarily delivered cattle to Eastern under an agreement for the sale and purchase of such cattle, as part of a series of ongoing business transactions, Fifth Third fails to discern how such acquisition can possibly be "wrongful."

7

This is a critical distinction: in the instant case, both Eastern *and the Litigation Claimants* intended Eastern to acquire title to the cattle – the cattle were goods delivered by the Litigation Claimants to Eastern as a purchaser of those specific goods. The seller intended to lawfully vest full title in Eastern, and Eastern intended to lawfully vest full title in itself. Title to the cattle was, in fact, vested in Eastern upon delivery in accordance with UCC 2-401, notwithstanding Eastern's alleged subsequent failure to remit payment for such delivered cattle. As stated in a case which SOLM itself cites:

> At the outset, it is important to distinguish generally between two types of "equitable interests." In a contractual (or debtor-creditor) relationship, the creditor may possess an "equitable claim" to property actually owned by the debtor, but there is no division of ownership or title in the property at issue; the debtor is entirely free to dispose of the property as he sees fit. In a trust relationship, by contrast, the law actually divides the bundle of rights in the property; the trustee holds legal title while the beneficiary possesses an equitable title or property interest. Only in the latter instance – when legal title to the propery is held by the bankrupt in trust for the benefit of another – is the property properly excluded from the bankrupt's estate…

In re Southmark Corporation, 49 F.3d 1111, 1117-1118 (5th Cir. 1995). It is clear that in the instant circumstance, the Litigation Claimants are mere creditors of the Debtor.

As demonstrated and discussed by Fifth Third in its Limited Memorandum and the Trustee in its Objection, a constructive trust is an equitable remedy and not an independent cause of action. Imposition of an equitable *remedy* cannot, almost by definition, constitute a "springing" property interest of the type effectively asserted by the Litigation Claimants – arising naturally and immediately upon the commission of an alleged wrongdoing. Instead, a remedy is imposed by a court *after* a claimant has made suitable evidentiary showings on an underlying cause of action. Imposition of this equitable remedy, therefore, *actually divests* a debtor of title based on a showing of (at a minimum) some wrongdoing *plus* unjust enrichment. In this context, "constructive trust" is no longer a mere preservation of status quo, but an action – where a party

has committed a wrongdoing and would be unjustly enriched by retaining the benefit of such wrong, the wrongdoer will be *divested of his or her titled interests*.

SOLM would have this court believe that, notwithstanding its sale and delivery to Eastern of the cattle and Eastern's acquisition of equitable title to the cattle upon their delivery, that imposition of the equitable remedy of a constructive trust either (1) prevents Eastern from ever acquiring equitable title to the delivered cattle, or (2) retroactively divests Eastern of equitable title to delivered cattle. A *remedial measure* cannot prevent transfer of title, as a remedial measure necessarily occurs *after* the act sought to be remedied. A subsequent event simply cannot preempt a prior event. Accordingly, title to cattle vested in Eastern at least as of the date of delivery in accordance with UCC 2-401.

As a remedy does not exist until requested, substantiated, and so adjudicated, Eastern's title remains intact unless and until it is ousted by court order. Between delivery and the date the order for relief was entered in this case, no order divesting title was ever sought or entered. As it is the debtor's interest *as of the commencement of the case* that is relevant in a consideration under 11 U.S.C. § 541[13], and no order divesting title had been entered, Eastern held equitable title to the cattle[14] for purposes of 11 U.S.C. § 541 as of the commencement of this case. Without even needing to discuss or decide whether a constructive trust may or may not be imposed "retroactively" or "post-petition", neither SOLM nor any other party in interest has cited a single case for the proposition that once property is part of an estate pursuant to 11 U.S.C.

---

[13] 11 U.S.C. § 541(a)(1) states, in relevant part:

> The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:..all legal or equitable interests of the debtor in property *as of the commencement of the case*.

[14] And any proceeds of such cattle. While purportedly the Litigation Claimants seek to impose a constructive trust over *cattle*, in reality, the Litigation Claimants are constructing an artifice by which to step over Eastern and its secured and priority creditors to reach *proceeds* of such cattle.

§ 541, a party in interest may *remove* such property from the estate by imposition of a constructive trust. A post-petition, retroactive constructive trust (such as the type advocated by SOLM) has the effect of divesting title, of removing property from the estate in a manner not countenanced or permitted by § 541 or by any other provision of the Bankruptcy Code, the imposition of which is not supported in the instant case by law.

### III. Application of a "constructive trust" theory in the manner advanced by the Litigation Claimants requires this Court to disregard fundamental tenants of commercial law and the Bankruptcy Code.

Taken together, the arguments of SOLM and other Litigation Claimants seek, impermissibly, to elevate claims of unpaid suppliers of pre-petition goods to those of priming, super-priority interests. No party in interest has cited any case which would support such a result. In fact, SOLM itself cites to <u>Official Committee of Unsecured Creditors v. Columbia Gas Systems (In re Columbia Gas Systems, Inc.)</u>, wherein the court expressly *declined* to impose a constructive trust for the benefit of upstream gas suppliers and transporters for pre-petition goods and services provided. 997 F.2d, 1039, 1062-1063 (3rd Cir. 1993) (stating that "The upstream pipelines are in the same position as every other unsecured creditor.").

A brief analysis of the Uniform Commercial Code and the Bankruptcy Code similarly underscore the lack of support for such an application. Application of a remedial equitable remedy to retroactively vest title in a seller of goods creates the *precise* hidden title problems prohibited by the Uniform Commercial Code in § 2-401. Permitting a re-vesting of title in seller creates a continuous and hidden title in seller subsequent to delivery to buyer. Permitting title to continue in seller subsequent to delivery to buyer simply is not possible under the Uniform Commercial Code. Re-vesting of title in such a manner also has the effect of stripping the *res* of

intervening liens and interests which have attached – yet another result not contemplated or countenanced by the Uniform Commercial Code.

In addition to violating the fundamental tenants of § 541 (property interests are determined as of the commencement of the case) and disregarding the distribution priorities of the Bankruptcy Code, permitting a re-vesting of title in a seller subsequent to delivery also vitiates the need for § 503(b)(9). After all, if an unpaid seller may simply assert a "constructive trust" as a means by which the seller either retained or was "re-vested" with title to goods subsequent to delivery to buyer, granting such seller an administrative priority claim for the value of such delivered goods under §503(b)(9) would serve no purpose. Applying the equitable remedy of "constructive trust" in this manner achieves a nonsensical result, and cannot be supported.

The Litigation Claimants are not innocent victims of a theft in the night, incapable of protecting themselves against the unforeseen and forcible taking of property by one who, without permission or discovery, stole onto the Litigation Claimants' land to rustle cattle. The Litigation Claimants are sellers whose business is to sell cattle, and who sold cattle to a buyer who allegedly failed to or was unable to pay. The Litigation Claimants had every opportunity to protect their interests by retaining and perfecting a security interest in the delivered but as-yet unpaid cattle, and chose not to exercise this right. Now, these same parties ask this Court to implement a convolution of common law to retroactively deliver to the Litigation Claimants the priority security interest they previously failed to take. It is only by ignoring the tenants of title and security ensconced in commercial law, the principles of equitable and ratable distribution contained in the Bankruptcy Code, the nature and purpose of a constructive trust and a conscious disregard of the equities of the instant case can such a result be countenanced.

**IV.     Application of Omegas yields a clear, consistent and enforceable result under the Bankruptcy Code.**

A vast majority of the cases cited by SOLM in support of its assertion that <u>Omegas</u> has been rejected by a majority of circuits were, in fact, decided prior to <u>Omegas</u>[15]. It is only by application of the principles advanced by <u>Omegas</u> and its kin that an internally consistent and enforceable result is achieved under commercial law and under the Bankruptcy Code: constructive trusts may not be imposed post-petition upon property of a bankruptcy estate.

It is critical that we recall the specific statutory text of 11 U.S.C. § 541(d):

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Nowhere does 541(d) state that property deemed subject to a "constructive trust" does not become property of the estate. It is only property in which *the debtor, as of the commencement of the case, does not hold equitable title* which is excluded under 11 U.S.C. § 541(d).

Having failed to obtain entry of an order divesting the Debtor of equitable title prior to the commencement of the case, and having cited no authority for the proposition that a debtor, having held equitable title as of case commencement, may be divested of equitable title post-petition, any claim raised by a Litigation Claimant premised upon a theory of "constructive trust" must fail.

---

[15] <u>See</u>: <u>In re General Coffe Corp.</u>, 828 F.2d 699 (11th Cir. 1987); <u>In re Unicom Computer Corp.</u>, 13 F.3d 321 (9th Cir. Jan. 5 1994); <u>Sanyo Electric, Inc. v. Howard's Appliance Corp.</u> 874 F.2d 88 (2d Cir. 1989); <u>Official Committee of Unsecured Creditors v. Columbia Gas Systems</u>, 997 F.2d 1039 ( 3rd Cir. 1993); <u>United States Department of Energy v. Seneca Oil Co.</u>, 906 F.2d 1445 (10th Cir. 1990).

Accordingly, Fifth Third supplements the request made in its Limited Memorandum, and respectfully requests that any Objection premised upon a theory of "constructive trust" be OVERRULED, and any relief requested thereby be DENIED.

November 11, 2011

Respectfully submitted,

/s/ Randall D. LaTour
Randall D. LaTour (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-8290
Facsimile: (614) 719-4821
Email: rdlatour@vorys.com

*Counsel for Fifth Third Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2011, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's ECF system.

- David L. Abt   davidabt@mwt.net
- Amelia Martin Adams   aadams@dlgfirm.com
- John W Ames   jwa@gdm.com, shm@gdm.com;tlm@gdm.com;rtrowbridge@kslaw.com
- Jerald I. Ancel   jancel@taftlaw.com, ecfclerk@taftlaw.com;krussell@taftlaw.com
- Christopher E. Baker   cbaker@hklawfirm.com, thignight@hklawfirm.com
- T. Kent Barber   kbarber@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com
- Robert A. Bell   rabell@vorys.com, dmchilelli@vorys.com
- C. R. Bowles   crb@gdm.com, shm@gdm.com
- Kent A Britt   kabritt@vorys.com, cbkappes@vorys.com
- Lisa Koch Bryant   courtmail@fbhlaw.net
- James M. Carr   james.carr@bakerd.com, patricia.moffit@bakerd.com
- John R. Carr   jrciii@acs-law.com, sfinnerty@acs-law.com
- Deborah Caruso   dcaruso@daleeke.com, mthomas@daleeke.com
- Bret S. Clement   bclement@acs-law.com, sfinnerty@acs-law.com
- Jason W. Cottrell   jwc@stuartlaw.com
- Kirk Crutcher   kcrutcher@mcs-law.com, jparsons@mcs-law.com;cmarshall@mcs-law.com
- Jack S Dawson   jdawson@millerdollarhide.com, jowens@millerdollarhide.com

- Dustin R. DeNeal    dustin.deneal@bakerd.com, patricia.moffit@bakerd.com;sarah.herendeen@bakerd.com
- Laura Day DelCotto    ldelcotto@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com
- David Alan Domina    dad@dominalaw.com, KKW@dominalaw.com;efiling@dominalaw.com
- Daniel J. Donnellon    ddonnellon@ficlaw.com, knorwick@ficlaw.com
- Trevor L. Earl    tearl@rwsvlaw.com
- Shawna M Eikenberry    shawna.eikenberry@bakerd.com, sarah.herendeen@bakerd.com
- Jeffrey R. Erler    jeffe@bellnunnally.com
- Sarah Stites Fanzini    sfanzini@hopperblackwell.com, mroth@hopperblackwell.com
- Robert H. Foree    robertforee@bellsouth.net
- Sandra D. Freeburger    sfreeburger@dsf-atty.com, smattingly@dsf-atty.com
- Melissa S. Giberson    msgiberson@vorys.com
- Jeffrey J. Graham    jgraham@taftlaw.com, ECFClerk@taftlaw.com;krussell@taftlaw.com;aolave@taftlaw.com
- Terry E. Hall    terry.hall@bakerd.com, sharon.korn@bakerd.com;sarah.herendeen@bakerd.com
- John David Hoover    jdhoover@hooverhull.com
- John Huffaker    john.huffaker@sprouselaw.com, lynn.acton@sprouselaw.com;rhonda.rogers@sprouselaw.com
- Jeffrey L Hunter    jeff.hunter@usdoj.gov, USAINS.ECFBankruptcy@usdoj.gov
- Jay Jaffe    jay.jaffe@bakerd.com, tracy.whitman@bakerd.com;sarah.herendeen@bakerd.com
- James Bryan Johnston    bjtexas59@hotmail.com, bryan@ebs-law.net
- Todd J. Johnston    tjohnston@mcjllp.com
- Jill Zengler Julian    Jill.Julian@usdoj.gov
- Edward M King    tking@fbtlaw.com, dgioffre@fbtlaw.com
- James A. Knauer    jak@kgrlaw.com, hns@kgrlaw.com
- Erick P Knoblock    eknoblock@daleeke.com
- Theodore A Konstantinopoulos    ndohbky@jbandr.com
- Randall D. LaTour    RDLatour@vorys.com, khedwards@vorys.com;bjtobin@vorys.com
- David A. Laird    david.laird@moyewhite.com, lisa.oliver@moyewhite.com;deanne.stoneking@moyewhite.com
- David L. LeBas    dlebas@namanhowell.com, koswald@namanhowell.com
- Elliott D. Levin    robin@rubin-levin.net, edl@trustesolutions.com;edl@trustesolutions.net
- Elliott D. Levin    edl@rubin-levin.net, atty_edl@trustesolutions.com
- Kim Martin Lewis    kim.lewis@dinslaw.com, lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com
- James B. Lind    jblind@vorys.com
- Karen L. Lobring    lobring@msn.com

14

- John Hunt Lovell    john@lovell-law.net, sabrina@lovell-law.net;shannon@lovell-law.net;paula@lovell-law.net
- Harmony A Mappes    harmony.mappes@bakerd.com, betsy.smith@bakerd.com;sarah.herendeen@bakerd.com
- John Frederick Massouh    john.massouh@sprouselaw.com
- Michael W. McClain    mike@kentuckytrial.com, laura@kentuckytrial.com
- Kelly Greene McConnell    lisahughes@givenspursley.com
- James Edwin McGhee    mcghee@derbycitylaw.com, belliott@derbycitylaw.com;patenaude@derbycitylaw.com
- William Robert Meyer    rmeyer@stites.com
- Christie A. Moore    cm@gdm.com, ljs2@gdm.com
- Allen Morris    amorris@stites.com, dgoodman@stites.com
- Judy Hamilton Morse    judy.morse@crowedunlevy.com, ecf@crowedunlevy.com;donna.hinkle@crowedunlevy.com;karol.brown@crowedunlevy.com
- Walter Scott Newbern    wsnewbern@msn.com
- Shiv Ghuman O'Neill    shiv.oneill@bakerd.com
- Matthew J. Ochs    kim.maynes@moyewhite.com
- Michael Wayne Oyler    moyler@rwsvlaw.com
- Ross A. Plourde    ross.plourde@mcafeetaft.com, erin.clogston@mcafeetaft.com
- Wendy W Ponader    wendy.ponader@bakerd.com, sarah.herendeen@bakerd.com
- Timothy T. Pridmore    tpridmore@mcjllp.com, lskibell@mcjllp.com
- Jeffrey E. Ramsey    jramsey@hopperblackwell.com, mhaught@hopperblackwell.com
- Eric C Redman    ksmith@redmanludwig.com, kzwickel@redmanludwig.com
- Joe T. Roberts    jratty@windstream.net
- Susan K. Roberts    skr@stuartlaw.com, lbt@stuartlaw.com
- Mark A. Robinson    mrobinson@vhrlaw.com, dalbers@vhrlaw.com
- Jeremy S Rogers    Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com
- John M. Rogers    johnr@rubin-levin.net, susan@rubin-levin.net
- Joseph H Rogers    jrogers@millerdollarhide.com, cdow@millerdollarhide.com
- James E Rossow    jim@rubin-levin.net, susan@rubin-levin.net;ATTY_JER@trustesolutions.com
- Thomas C Scherer    tscherer@binghammchale.com, mmcclain@binghammchale.com
- Ivana B. Shallcross    ibs@gdm.com
- James E. Smith    jsmith@smithakins.com, legalassistant@smithakins.com
- William E Smith    wsmith@k-glaw.com, pballard@k-glaw.com
- Robert K Stanley    robert.stanley@bakerd.com
- Joshua N. Stine    jnstine@vorys.com
- Andrew D Stosberg    astosberg@lloydmc.com, bmarks@lloydmc.com
- Meredith R. Thomas    mthomas@daleeke.com
- John M. Thompson    john.thompson@crowedunlevy.com, jody.moore@crowedunlevy.com,donna.hinkle@crowedunlevy.com

- Kevin M. Toner    kevin.toner@bakerd.com, crystal.hansen@bakerd.com;judy.ferber@bakerd.com
- U.S. Trustee    ustpregion10.in.ecf@usdoj.gov
- Andrea L Wasson    andreawassonatty@gmail.com
- Stephen A. Weigand    sweigand@ficlaw.com
- Charles R. Wharton    Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov
- Sean T. White    swhite@hooverhull.com, vwilliams@hooverhull.com
- Jessica E. Yates    jyates@swlaw.com, jmilelli@swlaw.com;docket_den@swlaw.com
- James T Young    james@rubin-levin.net, ATTY_JTY@trustesolutions.com;lemerson@rubin-levin.net;carmen@rubin-levin.net

    /s/ Randall D. LaTour_____
    Randall D. LaTour

11/11/2011 12522735 V.2