IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                               )        Chapter 11

                                    )

EASTERN LIVESTOCK CO., LLC,        )        Case No. 10-93904-BHL-11

                                    )

          Debtor.                  )        Hon. Basil H. Lorch III

**TRUSTEE'S RESPONSE TO SOLM'S "DISPOSITIVE ISSUE MEMORANDUM"[1]**

SOLM argues that it can establish a convincing legal and factual basis for the Court to impose a constructive trust over proceeds arising from Eastern Livestock's sale of certain cattle because, absent the pendency of this chapter 11 case, SOLM could have obtained such a remedy under Oklahoma law. SOLM is wrong. The Oklahoma Court of Appeals, when presented with facts that were materially the same as those present here, held that the Uniform Commercial Code (the "UCC") "precludes all of an unpaid credit seller's equitable remedies for fraud except reclamation".[2] The Oklahoma Court of Appeals expressly held that where an unpaid seller of cattle was mislead regarding the solvency of the buyer, the seller may not obtain a constructive trust over proceeds of the sold cattle and is instead limited to UCC remedies. No applicable state law (including Oklahoma law) would support the imposition of a constructive

---

[1] Stockman Oklahoma Livestock Marketing, Inc. ("SOLM") filed the Dispositive Issue Memorandum (Constructive Trust) of Stockman Oklahoma Livestock Marketing, Inc. Regarding the Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account [Dock. No. 796] (the "Dispositive Issue Memorandum") on November 1, 2011 pursuant to paragraph I of the Order Granting Trustee Authority to 1) Collect Receivable, 2) Hold Receivable Proceeds in Segregated Account Pending Determination of Rights Therein, 3) Transfer Receivable Proceeds to Operating Account After Such Determination and 4) Continuing Briefing Schedule on the Foregoing [Dock. No. 778] (the "Scheduling Order). This is the response to the Dispositive Issue Memorandum contemplated by the Scheduling Order.

[2] *Kennett-Murray & Co. v. Pawnee Nat'l Bank*, 598 P.2d 274, 277 (Okla. Ct. App. 1979) (citing Oklahoma's version of Section 2-702(2) of the UCC and stating: "There are no Oklahoma cases construing this section, but the language of the statute could hardly be more explicit… we hold that section 2-702(2) precludes all of an unpaid credit seller's equitable remedies for fraud except reclamation. We further note that even if Kennett-Murray had pursued its rights under section 2-702 within ten days, it would nevertheless be subordinate to the two banks with perfected security interests and after-acquired property clauses."); *see also U.S. v. Wyoming Nat. Bank of Casper*, 505 F.2d 1064, 1068 (10th Cir. 1974) (seller of cattle who was paid with subsequently dishonored

trust under the facts and circumstances of this case.  SOLM has not cited a single case where a constructive trust was imposed as a remedy for an unpaid (even defrauded) seller of goods. Neither the UCC nor the Bankruptcy Code allows an unpaid seller of goods, such as SOLM, to benefit from a constructive trust to obtain priority for the seller's claim over the claims of other creditors.

In addition, the fundamental federal bankruptcy policy of equality of distribution for similar creditors provides sufficient "federal interest" to block the imposition of a constructive trust, even if state law might otherwise support that remedy, when (as here) the claimant failed to obtain a judgment imposing a constructive trust prepetition.  SOLM cites to *Travelers Casualty and Surety Co. v. Pacific Gas & Electric Co.* for the proposition that "'[p]roperty interests are created and defined by state law,' and '**[u]nless some federal interest requires a different result**, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'"[3]  However, fundamental principles and policies underlying federal bankruptcy law require a "different result" than a state court might order when an unsecured creditor such as SOLM requests the imposition of a constructive trust in a bankruptcy case in an effort to gain preferential treatment and priority over other creditors.[4]  The federal bankruptcy policy of equality of distribution for similar creditors is one of the foundation principles of the Bankruptcy Code and constitutes a "federal interest" that "requires a different result".[5]

---

checks had no claim to cattle or proceeds because the UCC "eliminates any common-law claim by a defrauded seller").

[3] 549 U.S. 443 (2007) (emphasis supplied), quoting *Butner v. United States*, 440 U.S. 48, 55 (1979).

[4] "Just because something is so under state law does not necessarily make it so under the Bankruptcy Code." *XL/Datacomp, Inc. v. Wilson, (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1450 (6th Cir. 1994).

[5] *See In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985) (courts "necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution is one of the strongest policies behind the

2

The Seventh Circuit has not yet decided if and under what circumstances a bankruptcy court may impose a constructive trust if supported by applicable state law, but the Sixth Circuit's holding in *In re Omegas Group, Inc.*[6] as well as Judge Grant's decision in *In re Nova Tool & Engineering, Inc.*[7] are on point and correctly decided.[8] Courts that have properly decided this issue have held that irrespective of what the result might have been in an action governed exclusively by state law and equitable principles, a constructive trust cannot be imposed in bankruptcy to provide a priority for an otherwise unsecured claim absent a prepetition judgment imposing a constructive trust.

Finally, and to the extent this Court is unwilling to adopt a general rule prohibiting any post-petition imposition of a constructive trust under any circumstances when no judgment was obtained prepetition, it is nonetheless clear that a constructive trust cannot be imposed in favor of SOLM because SOLM cannot show that a constructive trust should be equitably imposed to prevent unjust enrichment of a wrongdoer.

Because 1) the UCC and the Bankruptcy Code eliminate the equitable remedy of a constructive trust for an unpaid (even defrauded) seller of goods, 2) SOLM did not obtain a judgment imposing a constructive trust prepetition and 3) imposition of any such constructive trust in this case would work an injustice on other creditors and would not prevent the unjust enrichment of a wrongdoer, SOLM cannot make any showing that would justify the imposition

---

bankruptcy laws"); *In re Baldwin–United Corporation, D.H.*, 43 B.R. 443, 457 (S.D.Ohio 1984) ("It is ... beyond travail that the most significant policy in bankruptcy jurisprudence is equality of treatment of like-situated creditors.").

[6] 16 F.3d 1443 (6th Cir. 1994).

[7] 228 B.R. 678 (Bankr. N.D. Ind. 1998).

[8] For further detailed analyses of the treatment of constructive trusts in bankruptcy, *see CRS Steam, Inc. v. Engineering Resources, Inc., (In re CRS Steam, Inc.)*, 225 B.R. 833 (Bankr. D. Mass. 1998) (finding that the Bankruptcy Code preempts state law on imposition of a constructive trust **even if** constructive trust has been imposed prepetition); ROBERT J. KEACH, *The Continued Unsettled State of Constructive Trusts in Bankruptcy: Of Butner, Federal Interests and the Need for Uniformity*, 103 COM. L.J. 411 (1998); EMILY L. SHERWIN, *Constructive Trusts in Bankruptcy*, 1989 U. ILL. L. Rev. 297 (1989).

of a constructive trust over any proceeds arising from Eastern Livestock's sale of cattle that Eastern Livestock purchased from SOLM.

## Background

Prior to this bankruptcy, Eastern operated as one of the largest private cattle dealers in the country. Typically Eastern purchased and sold cattle on a daily basis, relying for funding on its secured revolving line of credit with Fifth Third Bank, N.A. ("Fifth Third"). Eastern's secured revolving line of credit with Fifth Third matured in late October 2010. Fifth Third froze Eastern's bank accounts in early November 2010, resulting in the dishonor of millions of dollars of checks that Eastern had issued to pay for its purchases of cattle from a variety of cattle producers and auction houses (including SOLM).

On November 9, 2010, Fifth Third commenced an action against Eastern Livestock in the Court of Common Pleas in Hamilton County, Ohio. On November 9, 2010, the Ohio court appointed a receiver over Eastern Livestock and its assets. The Receiver was in the process of gathering and liquidating the assets of Eastern Livestock when petitioning creditors filed an involuntary petition initiating this chapter 11 case on December 6, 2010 ("Petition Date"). The petitioning creditors apparently believed that their interests would be better protected in a bankruptcy case than they would in a state-court receivership.

This Court entered the *Order For Relief in An Involuntary Case and Order to Complete Filing* [Dock. No. 110] on December 28, 2010. The Court appointed James A. Knauer as the chapter 11 trustee ("Trustee"). The Trustee and his professionals have continued the work of the state-court appointed receiver in collecting and liquidating assets of Eastern Livestock's bankruptcy estate. The Trustee sought and obtained authority to complete sales of Eastern Livestock's cattle and collect receivables owing to the Trustee with respect to the cattle sales. (*See* Dock. Nos. 233 and 234.)

BDDB01 6928197v7

On May 23, 2011, the Trustee filed the *Trustee's Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account* [Dock. No. 501] (the "Purchase Money Claims Report") asking that the Court 1) disallow certain "Purchase Money Claims" that were asserted as "secured" claims against the Cattle Sales Proceeds[9], 2) authorize the Trustee to transfer the Cattle Sales Proceeds to the Trustee's general operating account, and 3) grant the Trustee such other and further relief as the Court deemed appropriate.  SOLM, Brent Kuehny, The Bank of Kremlin and Crumpler Bros. (collectively, the "Constructive Trust Objectors") filed objections to the Purchase Money Claims Report, arguing that some of the Cattle Sales Proceeds are not part of Eastern's bankruptcy estate because those proceeds should be subjects of constructive trusts in favor of the Constructive Trust Objectors.[10]  The Trustee filed a reply to the objections asserting, among other things, that the constructive trust argument fails as a matter of law.  The Court entered the Scheduling Order setting a briefing and discovery schedule on various issues, including the issue of "whether applicable state law can operate to impose a constructive trust over proceeds of [Eastern]'s sale of cattle absent a prepetition judicial determination impressing such a constructive trust over [Eastern]'s assets" (the "Dispositive Issue").  Further factual and legal determinations between the parties were left for a later date pending the Court's determination of the Dispositive Issue.  SOLM filed its Dispositive Issue Memorandum on November 1, 2011.

---

[9] The definition of the term "Cattle Sales Proceeds" was limited to "the funds described on attached Exhibit A [to the Purchase Money Claims Report]".  It did not include funds not listed on Exhibit A to the Purchase Money Claims Report, including funds at issue in the various interpleader adversary proceedings, funds not yet paid to the Trustee, or any other funds not listed on Exhibit A to the Purchase Money Claims Report.

[10] Pursuant to paragraph K of the Scheduling Order, the Constructive Trust Objectors and the Trustee agreed to be bound by the Court's decision on this "Dispositive Issue".

5

## Argument

The UCC and Bankruptcy Code bar the imposition of a constructive trust in favor of an unpaid seller of goods such as SOLM.  None of the Cattle Sales Proceeds can be the subject of a constructive trust in favor of any of the Constructive Trust Objectors.

### I.      The UCC and the Bankruptcy Code preempt and eliminate as a possible equitable remedy the imposition of a constructive trust in favor of an unpaid and/or defrauded seller of goods.

The UCC, as modified by the Bankruptcy Code, provides a comprehensive and exclusive set of statutory remedies for an unpaid seller of goods to an insolvent debtor.  First, the unpaid seller holds a "claim" (as that term is defined in Section 101(5) of the Bankruptcy Code) against the bankruptcy estate.[11]  An unpaid seller can, under appropriate circumstances and subject to the rights of other creditors, exercise reclamation rights provided by UCC § 2-702 and Section 546(c)(1) of the Bankruptcy Code.  Consistent with Article 2 of the UCC and subject to the prior rights of a holder of a security interest or other good faith purchaser, Section 546(c)(1) of the Bankruptcy Code allows an unpaid seller of goods to reclaim goods delivered to a buyer/debtor if the buyer/debtor received such goods while insolvent within 45 days of the commencement of the bankruptcy and the seller timely provides the reclamation notice required by the Bankruptcy Code.  Section 546(c)(1) of the Bankruptcy Code preserves and extends the circumstances under and time frames within which a seller may reclaim goods or obtain a priority for the seller's claim under Article 2 of the UCC. [12]  The reclamation remedy provided by

---

[11] For an excellent discussion of the Bankruptcy Code's definition of "claim" in this context as well as the remedies provided by the Bankruptcy Code to a defrauded seller, *see In re CRS Steam, Inc.*, 225 B.R. at 840 (citing legislative history of the definition of "claim" for purposes of showing that Congress intended for requests for equitable remedies, such as a request for imposition of a constructive trust, to be included in the definition of and treated as a "claim" under the Bankruptcy Code).

[12]*See Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.)*, 964 F.2d 842, 847 (8th Cir. 1992) (citing S. Rep. No. 95-989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5787, 5873 to show that Section 546(c) was designed to preserve the protections of the UCC); *In re Phar-Mor, Inc.*, 301 B.R. 482, 494 (Bankr. N.D. Ohio 2003) (Section 546(c) was designed to preserve the protections of the UCC).

6

the UCC and § 546(c)(1) is specifically designed to deal with situations where a seller was defrauded into delivering goods to an insolvent buyer/debtor in connection with both cash and credit sales.[13]   An unpaid seller may also obtain an administrative expense claim under Section 503(b)(9) of the Bankruptcy Code for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."[14]   This priority claim was added to the Bankruptcy Code as part of BAPCPA to further protect unpaid sellers.  Section 503(b)(9) reflects express Congressional balancing of the rights and remedies of unpaid sellers of goods as against the competing claims of other creditors.  Finally, and in addition the rights and remedies described above, a defrauded unpaid seller can object to the discharge of its debt under 11 U.S.C. § 523(a).[15]

Several sections of the UCC specifically provide for rights and remedies when a debtor procures goods from a seller by tendering a check that is subsequently dishonored.[16] Section 2-403 of the UCC provides that a buyer/debtor has power upon the resale of the goods to transfer good title to the purchased goods to a good faith purchaser for value, even though the buyer/debtor purchased the goods with a check that was subsequently dishonored.  The UCC's rights and remedies for an unpaid seller of goods are the exclusive rights and remedies for a seller who has been defrauded or received a dishonored check.  UCC § 2-702(2) provides that, "[e]xcept as provided in this subsection, the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."  *See U.S. v.*

---

[13] *See In re Koro Corp.*, 20 B.R. 241 (1st Cir. B.A.P. 1981) (holding that Section 546 of the Bankruptcy Code was intended to include cash transactions and finding that seller who delivered goods to debtor prepetition based on a subsequently dishonored check had not properly preserved reclamation rights).  S*ee also Holiday Rambler Corp. v. First Nat. Bank and Trus*t, 723 F.2d 1449, 1452-1453 (10th Cir. 1983).

[14] 11 U.S.C. § 503(b)(9).

[15] *In re CRS Steam, Inc.*, 225 B.R. at 841.

7

*Wyoming Nat. Bank of Casper*, 505 F.2d 1064, 1068 (10th Cir. 1974) (seller of cattle who was paid with subsequently dishonored checks had no claim to cattle or proceeds because the UCC "eliminates any common-law claim by a defrauded seller").

Although recognizing that fraud may be present when an insolvent debtor/buyer accepts delivery of goods before bankruptcy, the UCC and the Bankruptcy Code restrict an arguably defrauded seller's remedies to a limited and conditional reclamation right and, in the event of an intervening perfected security interest or good faith purchaser, either an administrative expense claim under Section 503(b)(9) of the Bankruptcy Code or a general unsecured claim. These are the only remedies contemplated and specifically provided by the UCC and Bankruptcy Code. The remedies are exclusive and prohibit the imposition of a constructive trust.

Because they are unhappy with this result and the remedies afforded them by the UCC and the Bankruptcy Code, the Constructive Trust Objectors argue that a constructive trust is a form of equitable property interest that can predate the bankruptcy even when no state court has ordered the imposition of such a trust prepetition. However, the Constructive Trust Objectors have not cited a single case where a court has imposed a constructive trust for the benefit of an unpaid seller of goods to an insolvent buyer/debtor. Notwithstanding that dearth of authority, they assert that Cattle Sale Proceeds should be subjected to a constructive trust and thereby be excluded from the bankruptcy estate under Section 541 of the Bankruptcy Code.[17]

---

[16] *See, e.g.*, UCC §§ 2-401, 2-403, 2-507, 2-702 and 2-703.

[17] SOLM cites to legislative history for the proposition that Congress contemplated that property subject to a constructive trust is not part of the bankruptcy estate: "Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company has sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed." (Dispositive Issue Memorandum p. 5.) The trust relationship described in the legislative history is likely not a constructive trust, but instead an express trust by and between the debtor and its insurer whereby the debtor

8

This argument ignores the statutory scheme of exclusive remedies, the constructive trust's genesis as a potential equitable remedy (not a property interest) and the fact that a constructive trust is fundamentally different from an express trust resulting from an express or implied agreement.  A constructive trust is a remedy constructed by courts of equity to prevent the unjust enrichment of a wrongdoer.  Accordingly, a constructive trust cannot exist unless and until it is so ordered.  Because a debtor is replaced by a debtor-in-possession or trustee after the filing of a bankruptcy, it is impossible for a constructive trust claimant to then prove that the debtor would be unjustly enriched.  Any benefit resulting from the debtor's prepetition conduct will not inure to the wrongdoing debtor but instead to the bankruptcy estate (and, in turn, to creditors in general).  The real question is how should the loss be shared among the seller and other innocent creditors, and that question is answered by the exclusive remedies provided to unpaid sellers by the Bankruptcy Code and the UCC.[18]  Constructive trusts are therefore unavailable in bankruptcy absent a prepetition judgment imposing the constructive trust.

**II.      *This Court should follow the holdings of In re Omegas Group, Inc. and In re Nova Tool and Engineering, Inc. and find that a constructive trust will not be enforced in bankruptcy absent a prepetition judgment imposing such a constructive trust.***

In *In re Omegas Group, Inc.*,[19] the Sixth Circuit Court of Appeals reversed a decision imposing a constructive trust upon certain of the debtor's assets that the debtor obtained by fraud.  Stating that "constructive trusts are anathema to the equities of bankruptcy since they

---

was a mere payment conduit.  Regardless, that factual scenario is readily distinguishable from the facts in this chapter 11 case as there are no allegations that debtor was a mere conduit for payment to the Constructive Trust Objectors.  Per UCC § 2-403 Eastern received merchantable title to the cattle.

[18] "The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement." *In re Omegas Group, Inc.*, 16 F.3d at 1453.

[19] 16 F.3d 1443 (6th Cir. 1994).

9

take from the estate…not the offending debtor" and that "constructive trusts are fundamentally at

odds with the general goals of the Bankruptcy Code", the Sixth Circuit held:

> §541(d) simply does not permit a claimant in the position of [a
> defrauded creditor] to persuade the bankruptcy court to impose the
> remedy of constructive trust for alleged fraud committed against it
> by the debtor in the course of their business dealings, and thus to
> take ahead of all creditors, and indeed, ahead of the trustee.
> Because a constructive trust, unlike an express trust, is a remedy, it
> does not exist until a plaintiff obtains a judicial decision finding
> him to be entitled to a judgment "impressing" defendant's property
> or assets with a constructive trust.  Therefore, a creditor's claim of
> entitlement to a constructive trust is not an "equitable interest" in
> the debtor's estate existing prepetition, excluded from the estate
> under §541(d).
>
> … To permit a creditor, no matter how badly he was "had" by the
> debtor, to lop off a piece of the estate under a constructive trust
> theory is to permit that creditor to circumvent completely the
> Code's equitable system of distribution.
>
> In light of these provisions and in light of the overall purposes of
> the Code, § 541(d) cannot be properly invoked as an equitable
> panacea whenever the bankruptcy court thinks a claimant has been
> particularly burdened by a debtor's bad faith or bad acts.

*In re Omegas Group, Inc.*, 16 F. 3d at 1452-1453.

Under *In re Omegas Group, Inc.*, a creditor may pursue imposition of constructive trust in

bankruptcy only if and to the extent the creditor obtained a prepetition judgment imposing a

constructive trust on funds in the hands of the debtor.  None of the Constructive Trust Objectors

obtained such a prepetition judgment, and, under Oklahoma law, would not have been entitled to

one.

The Seventh Circuit has not yet directly addressed constructive trust claims in

bankruptcy, but Bankruptcy Judge Grant of the Northern District of Indiana has opined that the

Seventh Circuit "would follow *Omegas* when it is called upon to decide the extent to which a

bankruptcy court should recognize the right to a constructive trust which has not been imposed

10

prior to a petition for relief under the Bankruptcy Code".[20]  *In re Nova Tool & Engineering, Inc.*

provides a thorough analysis of the impropriety of imposing constructive trusts in bankruptcy

and holds that a bankruptcy court must take into consideration both 1) whether imposition of a

constructive trust will prevent unjust enrichment of a wrongdoer and 2) the effect of imposing a

constructive trust on other creditors, before determining whether to impose a constructive trust

based on a debtor's fraud.[21]

      Both *In re Omegas Group, Inc.* and *In re Nova Tool & Engineering, Inc.*

recognize that the Bankruptcy Code provides a sufficient federal interest under *Butner* to deny

the imposition of a constructive trust over assets of a bankruptcy estate when such a remedy has

not been reduced to judgment prepetition, notwithstanding that a constructive trust <u>might</u> be

imposed in a hypothetical state court action.[22]  The cases and courts that conclude otherwise miss

the point that constructive trusts are "a restitutionary remedy developed in equity to give relief

against unjust enrichment"[23] that would benefit a wrongdoer.  A constructive trust is a "legal

fiction, a common-law remedy in equity that may only exist by judicial action."[24]  This Court

---

[20] "While not definitively answering the question, on balance, this review of the Seventh Circuit's decisions touching on the issue seems to reflect an antipathy toward recognizing equitable remedies that would diminish the bankruptcy estate.  In particular, *Iowa Railroad* [840 F.2d 535 (7th Cir. 1988)] seems to suggest that, before imposing a constructive trust, the bankruptcy court should consider the purpose for doing so (whether it will prevent unjust enrichment) and the impact of doing so upon third parties (debtor's other creditors).  These are the same propositions this court reads *Omegas* as espousing."  *In re Nova Tool & Engineering, Inc.*, 228 B.R. at 684.

[21] *In re Nova Tool & Engineering, Inc.*, 228 B.R. at 685.  This seems to be the approach favored by Sherwin.  See SHERWIN, *supra* Note 6, at 297.

[22] Many other courts have recognized that there is a sufficient federal interest to deny a constructive trust remedy and cited *In re Omegas Group, Inc.* favorably.  *See In re CRS Steam, Inc.*, 225 B.R. at 839, N. 29 (Bankr. D. Mass. 1998) (citing cases and providing excellent analysis of caselaw).

[23] SHERWIN, *supra* Note 6 at 297.

[24] *Berger, Shapiro & Davies, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 157 (Bankr. N.D. Ill. 1995) ("This Court is persuaded by the insightful reasoning of the Sixth Circuit in *In re Omegas Group* and Professor Emily L. Sherwin in Constructive Trusts in Bankruptcy, 1989 U.ILL.L.REV. 297 (hereinafter "Sherwin"). These authorities (and others cited below) demonstrate that a "constructive trust" is a remedy for unjust enrichment, not a real trust. Therefore, the existence of grounds for imposition of a constructive trust does not lead to the conclusion that the "beneficiary" has an equitable, or any other, interest in the property; rather, the "beneficiary" has a particular remedy for a legal wrong…But in a bankruptcy case filed before another court has imposed a constructive trust, the "beneficiary" is merely an unsecured creditor, with no interest in the disputed property.").

11

should adopt the *In re Omegas Group, Inc.* holding and find that the imposition of a constructive

trust in bankruptcy is improper absent a prepetition judgment imposing such a constructive trust.

**III.     *Regardless of whether a constructive trust can ever be imposed in the absence of a prepetition judgment, it is clear that no constructive trust can be imposed in this chapter 11 case.***

   All courts and cases agree that: the goal and sole reason for the imposition of a

constructive trust is to avoid unjust enrichment of a wrongdoer.[25]  *In re Nova Tool &*

*Engineering, Inc.* holds that a court must take into consideration both 1) whether imposition of a

constructive trust will prevent unjust enrichment of a wrongdoer and 2) the constructive trust's

effect on other creditors of the debtor, before determining whether a claimant is entitled to a

constructive trust based on a debtor's fraud.[26]  Consideration of both factors demonstrates that

none of the Constructive Trust Objectors are entitled to imposition of a constructive trust.

   Imposition of a constructive trust in this case would not prevent unjust enrichment

of any wrongdoer.[27]  Instead, such action would significantly harm other innocent creditors of

Eastern Livestock.  The Constructive Trust Objectors are in no different position than many

other general creditors in this chapter 11 case.  It appears that officers of Eastern Livestock

committed numerous wrongful acts prior to the Petition Date.  If a constructive trust were

imposed on Eastern's assets for the benefit of each and every creditor who may have been a

victim of wrongdoing, then there would be no need for this chapter 11 case.  All of Eastern's

---

[25] *See In re Seneca Oil Company*, 906 F.2d 1445, 1451 (10th Cir. 1990) ("As noted above, the primary purpose of a constructive trust in Oklahoma is to avoid unjust enrichment.") (*citing Easterling v. Ferris*, 651 P.2d 677, 680 (Okla. 1982); *Cacy v. Cacy*, 619 P.2d 200, 202 (Okla. 1980); and *G&M Motor Co. v. Thompson*, 567 P.2d 80, 83 (Okla. 1977)).

[26] *In re Nova Tool & Engineering, Inc.*, 228 B.R. at 685.  This seems to be the approach favored by Sherwin.  See SHERWIN, *supra* Note 6, at 297.

[27] To a party defrauded by the debtor, incorporating the proceeds of debtor's fraud in the debtor's estate may seem like unjust enrichment. But as the Seventh Circuit has pointed out, "allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title." *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir.1989).

BDDB01 6928197v7

assets would be subject to constructive trusts in favor of the many creditors who received dishonored checks.  The creditors who most aggressively prosecuted their constructive trust claims would strip the estate of all assets and leave nothing for other creditors who, despite being in the same factual position as the aggressive creditors, were not as quick or aggressive in seizing assets.  Such a result ignores the fundamental policies of the Bankruptcy Code to promote equality of distribution and to dissuade overly aggressive prepetition creditor action.

None of the Constructive Trust Objectors has any better or prior "claim" to Cattle Sale Proceeds than any other Eastern Livestock creditor holds.  As a result, none is entitled to the imposition of a constructive trust.[28]

## Conclusion

For the foregoing reasons, the Constructive Trust Objectors' arguments fail.  The Court should 1) resolve the Dispositive Issue in favor of the Trustee; and 2) enter an order declaring that applicable state law (the UCC) and the Bankruptcy Code prevent the imposition of a constructive trust over the Cattle Sales Proceeds and authorizing the Trustee to transfer the Cattle Sales Proceeds to his general operating account.

---

[28] "The result squares with the central bankruptcy policy of equality. It also reflects the reality of bankruptcy. The ermine robe of unjust enrichment is hardly a fitting adornment for creditors who are typically paid a pittance on their claims. And giving the constructive trust beneficiary an unsecured claim is not harsh in the context of bankruptcy. It is much like the treatment accorded a credit seller of goods, who is denied the return of his property and left with only a claim for its price." *In re CRS Steam, Inc.*, 225 B.R. at 842.

13

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ Dustin R. DeNeal

James M. Carr (#3128-49)
Kevin Toner (#11343-49)
Terry E. Hall (#22041-49)
Harmony Mappes (# 27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
kevin.toner@bakerd.com
terry.hall@bakerd.com
harmony.mappes@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader, (14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@bakerd.com

*Counsel for James A. Knauer, Chapter 11 Trustee*

14

BDDB01 6928197v7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2011, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com | David A. Laird<br>david.laird@moyewhite.com |
| Jerald I. Ancel<br>jancel@taftlaw.com | Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com |
| David Alan Domina<br>dad@dominalaw.com | Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>jnstine@vorys.com |

BDDB01 6928197v7

16

Jill Zengler Julian
Jill.Julian@usdoj.gov

Jeffrey L Hunter
jeff.hunter@usdoj.gov

Amelia Martin Adams
aadams@dlgfirm.com

Michael Wayne Oyler
moyler@rwsvlaw.com

Jason W. Cottrell
jwc@stuartlaw.com

Robert A. Bell
rabell@vorys.com

James E. Rossow
jim@rubin-levin.net

James B. Lind
jblind@vorys.com

Melissa S. Giberson
msgiberson@vorys.com

I further certify that on November 14, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher
asr@blancolaw.com

Darla J. Gabbitas
darla.gabbitas@moyewhite.com

/s/ Dustin R. DeNeal

16