UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Basil H. Lorch III |
| ) | |

**<u>DISPOSITIVE MEMORANDUM (KREMLIN ISSUE)</u>**

Brent Kuehny d/b/a Dollar K Cattle Co. ("Kuehny") and The Bank of Kremlin ("Kremlin") state as follows for their Dispositive Memorandum with regard to Kremlin's security interest in cattle sold by Kuehny to Debtor, Eastern Livestock Co., LLC, and the subsequent cash proceeds from the sale of said cattle held by Mark Hohenberg (the "Kremlin Issue").

On June 17, 2011, Kremlin and Kuehny filed a response to Trustee's Purchase Money Claims Report (docket #544) which described the Kremlin Issue and Kremlin's prior right and security interest in 200 steers sold by Kuehny to Debtor on November 1, 2010 (the "Kuehny Steers") and the cash proceeds (the "Cattle Proceeds") currently held by Mark Hohenberger who purchased the Kuehny Steers from Debtor and then resold them to J&F Oklahoma Holdings, Inc. ("J&F").

Subsequently, the Debtor's secured party, Fifth Third Bank ("Fifth Third") filed an Objection to the Kremlin/Kuehny response (docket #786), the Trustee filed a Memorandum of Law on "Kremlin Issue" (docket #793), and J&F filed a brief in opposition to the Kremlin Issue (docket #815). Rather than dealing with the undisputed facts surrounding the cattle transactions involving the Kuehny Steers that make up the Kremlin Issue and allow the Court to resolve the issue based on applicable legal principals, the briefs of Fifth Third, the Trustee and J&F simply

1

9143848_1.DOC

seek to confuse the Court and delay a decision. Through this Dispositive Memorandum, Kremlin and Kuehny will set forth the facts and the law that are dispositive of the issue.

## THE DISPOSITIVE FACTS

1.  Kuehny is a cattle rancher from Elmore City, Oklahoma who is engaged in raising and grazing cattle. For several years prior to December 2010, Kuehny did business with Debtor. For example, Kuehny would often purchase 400-600 weight cattle from Debtor and raise and graze them on his ranch for several months before reselling them to Debtor as 800 weight cattle. (*See* Exhibit 1, Affidavit of Brent Kuehny at ¶ 1).

2.  In January 2010, Kuehny began his banking relationship with Kremlin and took out three (3) loans in the amounts of $475,000.00, $400,000.00, and $700,000.00 to refinance equipment and cow debt, for farm operating expenses, and for a line of credit to purchase cattle. These loans were secured by Promissory Note Nos. 341027, 341038, 341060 (the "Kremlin Notes") and corresponding Agriculture Security Agreements (the "Kremlin Security Agreements"). Among other things, the Kremlin Notes and Kremlin Security Agreements attached to Kuehny's livestock. (*See* Ex. 1, Affidavit of Brent Kuehny at ¶ 2 and Ex. 2, Affidavit of Gary Shaffer, Bank of Kremlin at ¶ 2; A true and correct copy of the Notes and Security Agreements are attached to the Kuehny and Shaffer affidavits at Exs. A-F).

3.  Pursuant to Section 1324 of the Food Security Act of 1985 (7 U.S.C. § 1631), the State of Oklahoma has established a central filing system, administered by the Oklahoma Secretary of State, which has been certified by the United States Department of Agriculture for the recording of "effective filing statement" that describes security interests held by secured parties in farm products located in Oklahoma. *See* 12A Okla. Stat. § 1-9-320.1 - 320.7; https://www.sos.ok.gov/cfs/filing/Default.aspx.

9143848_1.DOC

4.     On January 25, 2010, EFS No. 201000292 was filed at 2:15 p.m. with the Oklahoma Secretary of State describing the security interest that Kremlin held in Kuehny's cattle and calves. (*See* Ex. 2, Affidavit of Gary Schaefer, Bank of Kremlin at ¶ 3; A true and correct copy of the Certified Copy of EFS No. 201000292 filed with the Oklahoma Secretary of State is attached to the Schaefer Affidavit at Ex. G).

5.     Debtor was one of the largest cattle brokers in the United States. (*See* Ex. 3, Debtor website, http://easternlivestock.net/). Effective December 20, 2009 to November 20, 2010 (and several years prior), Debtor was registered with the Oklahoma Secretary of State "as a buyer to receive the Master List of agriculture lien information" distributed by the Oklahoma Secretary of State pursuant to the Food Security Act and 12A Okla. Stat. § 1-9-320.1 - 320.7. The Oklahoma Secretary of State has certified that Debtor was registered and received the EFS information on or before the last working day of each month. (*See* Ex. 4, Certificate from Oklahoma Secretary of State).

6.     In June and July 2010, Kuehny purchased 236 head of steers from Debtor and raised and grazed the cattle on his ranch in Oklahoma. On or about November 1, 2010, Kuehny sold 200 of these same steers, the Kuehny Steers (with a total weight of 152,640 pounds and a pay weight after 3% shrink of 148,061 pounds), to Debtor through Debtor's agent, Ed Edens IV for $158,636.31. (*See* Ex. 1, Affidavit of Brent Kuehny at ¶ 3; A copy of the Debtor's statement evidencing the sale and check from Debtor to Kuehny is attached to the Kuehny affidavit at Ex. G).

7.     Upon purchasing the Kuehny Steers, Debtor, through Ed Edens IV, immediately resold the same steers (total weight of 152,640 pounds/pay weight after 3% shrink of 148,061 pounds) to a cattle buyer named Mark Hohenberger of Stephenville, Texas for $158,494.02.

3

9143848_1.DOC

(*See* Ex. 5, Affidavit of Ed Edens IV; A copy of the Debtor's statement evidencing the sale from Debtor to Hohenberger is attached to the Edens affidavit at Ex. B).

8.  Upon purchasing the Kuehny Steers from Debtor, Mr. Hohenberger immediately resold the same steers (total weight of 152,640 pounds/pay weight after 3% shrink of 148,061) to JBS Five Rivers – Gilcrest for $167,308.93. (*See* Ex. 6, Hohenberger's statement evidencing the sale to JBS Five Rivers).[1]

9.  Debtor did not make its check for payment of the steers jointly payable to Kuehny and Kremlin or otherwise secure a waiver or release of Kremlin's security interest specified in the Kremlin EFS. Debtor's check to Kuehny for the Kuehny Steers was dishonored by Fifth Third. Accordingly, Kremlin has not been paid for its lien which was attached to the Kuehny Steers as a result of the Kuehny Notes, Kuehny Security Agreements and Kremlin EFS which secured Kuehny's indebtedness that far exceeded the sales price of the Kuehny Steer's. (*See* Ex. 2, Affidavit of Gary Shaffer at ¶ 6).

10.  The Bank was unaware that Kuehny was selling the steers to Eastern and did not authorize the sale. The Bank did not receive any sales schedules (as described on page two of the Kremlin Security Agreements – Sale of Collateral) or other notice from Kuehny of his proposed sale. (*See* Ex. 2, Affidavit of Gary Shaffer, ¶ 5).

11.  Hohenberger received payment from J&F for the cattle and is holding the cash proceeds from his sale of the Kuehny Steers pending a determination of the competing claims against the funds. (*See* Trustee's consistent representation and admission on page 3 of Trustee's Memorandum of Law on "Kremlin Issue.").

---

[1] By email dated February 3, 2011, J&F's attorney, David LeBas, represented to Kuehny's counsel that the steers were actually purchased by JBS affiliate, J&F.

4

9143848_1.DOC

## DIAGRAM OF THE TRANSACTION

The pivotal issue to be determined by the Court is whether Kremlin or Fifth Third have priority to the cash proceeds from the sale of the Kuehny Steers held by Hohenberger. The diagram on the following page depicts the transaction.

9143848_1.DOC



9143848_1.DOC

# DISECTING THE KREMLIN ISSUE[2]

A.  **Kremlin's Security Interest In The Kuehny Steers**

The Kremlin Security Agreements clearly described Kuehny's livestock as collateral. (*See* Kuehny Notes and Security Agreements attached as Exhibits A - F to the Kuehny and Shaffer Affidavits, Exs. 1 and 2). 12A Okla. Stat. § 1-9-201 ("(a) Except as otherwise provided in this title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."); 7 U.S.C. § 1631(7)("The term "security interest" means an interest in farm products that secures payment or performance of an obligation.")

Kremlin's security interest attached to the Kuehny Steers when they were purchased by Kuehny in 2010 and raised and grazed on Kuehny's Oklahoma ranch. 12A Okla. Stat. § 1-9-203 ("(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment").

---

[2] Tracing Kremlin's security interest in the Kuenhy Steers is admittedly a somewhat complex task. For a concise review of the applicable statutes, undersigned counsel invites the Court to review the Minnesota Supreme Court's decision in *Fin Ag., Inc. v. Hufnagle, Inc.*, 720 N.W.2d 579 (Minn: 2006) wherein it is explained that:

> (1) "[U]nder 7 U.S.C. § 1631, a buyer of farm products in the ordinary course of business [such as Debtor] … takes free of security interests created by the seller, **unless**[, as happened here,] notice of the seller-created security interest has been given by one of three specific notice procedures, which include the … central filing system"; and
>
> (2) If, as here, "farm products" transition to "inventory" after their initial sale, "a subsequent sale … would be governed [UCC §] 9-307 … [a statute] which … provides no protection for security interests not 'created by the seller.'"

*Id.* at 583, 587; *see also* Keith G. Meyer, *A Garden Variety of UCC Issues Dealing with Agriculture*, 58 U. KAN. L. REV. 1119 (2010).

9143848_1.DOC

### B. Classification Of The Kuehny Steers While Owned By Kuehny

The Kuehny Steers were "farm products" while owned by Kuehny because they were (i) livestock, (ii) with respect to which Kuehny was engaged in a farming operation. 12A Okla. Stat. § 1-9-102(34)(definition of farm products); 12A Okla. Stat. § 1-9-320.2(e)(definition of farm product); 7 U.S.C. § 1631(c)(5)(definition of farm product).

The Trustee erroneously contends that the Kuehny Steers "constituted Kuehny's inventory prior to sale to [Debtor]." *See* Trustee's Brief (Docket 793) at 3. Notably, the Trustee failed to cite the UCC definition of "inventory" which provides that "'Inventory' means goods, **other than farm products**, . . ." 12A Okla. Stat. § 1-9-102(48)(emphasis added). Because the Kuehny Steers were farm products when owned by Kuehny, they could not legally be classified as Kuehny's inventory.

### C. Perfection By Kremlin

Kremlin perfected its security interest in the Kuehny Steers, complying with Section 1324 of the Food Security Act of 1985 (7 U.S.C. § 1631) by filing an "Effective Financing Statement" with the Oklahoma Secretary of State. *See also* 12A Okla. Stat. § 1-9-320.1 ("The purpose of Sections 1-9-320.1 through 1-9-320.7 of this title is to make the laws governing protection of buyers of farm products, commission merchants, and selling agents comply with the provisions of Section 1324 of the Food Security Act of 1985 as codified at Section 1631 of Title 7 of the United States Code.").

7 U.S.C. § 1631(d) provides that "except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and

9143848_1.DOC

the buyer knows of the existence of such interest." (emphasis added).  Section 1631(e) provides instances when a purchase is **"subject to security interest."**  The instance applicable to this discussion is:

> A buyer of farm products takes subject to a security interest created by the seller if . . .
> (3) in the case of a farm product produced in a State that has established a central filing system, the buyer – (A) receives from the Secretary of State of such State written notice as provided in subsection (c)(2)(E) or (c)(2)(F) that specifies both the seller and the farm product being sold by such seller as being subject to an effective financing statement or notice; and (B) does not secure a waiver or release of the security interest specified in such effective financing statement or notice from the secured party by performing any payment obligation or otherwise.

The written notice contemplated by subsection (c)(2)(E) is receipt of a master list of EFS filings distributed monthly by the Oklahoma Secretary of State to buyers who are registered to receive such notices.  *See* 12A Okla. Stat. § 1-9-320.4(a)(ii) and 1-9-320.6(4)(d)("A copy of those portions of the master list covering the information requested by a registrant shall be distributed to such registrants by the Secretary of State on or before the last business day of each month and shall be presumed to have been received by the third business day of the following month.").  As evidenced by the Certificate by the Oklahoma Secretary of State, Debtor received this master list during the applicable period. (Ex. 4).

D.     **Debtor Bought The Kuehny Steers Subject To Kremlin's Security Interest**

As established above, Debtor was registered with the Oklahoma Secretary of State to receive notice of EFS filings in October and November 2010. (Dispositive Fact 5).  Kremlin's security interests in Kuehny's cattle was disclosed in the Kremlin EFS in January 2010. (Dispositive Fact 4).  Debtor received notice of the Kremlin EFS when it received the master list of liens prior to its purchase of the Kuehny Steers.  (Dispositive Fact 5).  Kuehny was a person engaged in farming operations when he sold his farm products (the Kuehny Steers) to Debtor on

9

9143848_1.DOC

November 1, 2010. (Dispositive Facts 1 and 6). Debtor did not secure a waiver or release of Kremlin's security interest from Kremlin. (Dispositive Fact 9).

Thus, Debtor Bought the Kuehny Steers Subject to Kremlin's prior perfected security interest:

> A buyer of farm products [Debtor] . . . who purchases . . . farm products [Kuehny Steers] in the ordinary course of business from . . . a person engaged in farming operations [Kuehny] takes subject to a security interest in the farm products [the Kremlin security interest] if:
> (a) (i) . . .; or
> (ii) the buyer of farm products[Debtor] . . . receives from the Secretary of State written notice as provided in paragraph (d) or (f) of subsection (4) of Section 1-9-320.6 of this title, and the buyer of farm products [Debtor] . . . does not secure a waiver or release of the security interest specified in an effective financing statement from the secured party [Kremlin] by performing any payment obligation or otherwise . . .

12A Okla. Stat. § 1-9-320.4; 7 U.S.C. § 1631(e)(2); *see also Fin. Ag, Inc. v. Hufnagle, Inc.*, 720 N.W.2d 579, 587 (Min. 2006) ("If the [first purchaser] took title to the corn and sold [it] on their own behalf, they would have taken subject to [the security interest created by the first seller] because [the lender] filed an effective financing statement with the Secretary of State ….").

E.  **Hohenberger Purchased The Kuehny Steers Subject To The Kremlin Security Interest But Free Of Any Security Interest Created By Debtor**

To constitute farm products, livestock must be in the "possession of a person engaged in farming operations." 12A Okla. Stat. § 1-9-320.2(e); 7 U.S.C. § 1631(c)(5). Thus, once Debtor, a cattle broker – not a farmer, took possession of the Kuehny Steers on November 1, 2010, the Kuehny Steers ceased being farm products. As such, 9-320 of the UCC applies:

> (a) . . . a buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.

12A Okla. Stat. § 1-9-320; *see also United States v. Hext*, 444 F.2d 804, 813-15 (5th Cir.1971) (holding that the sale of cotton by a farmer to his wholly owned ginning company meant that the

10

cotton became inventory and was no longer a farm product); *Baker Prod. Credit Ass'n v. Long Creek Meat Co., Inc.*, 513 P.2d 1129, 1132 (1973) (holding that, after slaughtering, cattle were no longer "farm products" but inventory); *First Bank of N.D. v. The Pillsbury Co.*, 801 F.2d 1036, 1038-39 (8th Cir.1986) (holding that the sale of grain by a farmer to his wholly owned elevator company converted the grain from a farm product to inventory). Thus, Hohenberger (the Debtor's buyer) took free of any security interest created by the buyer's seller (Debtor). *See* 12A Okla. Stat. § 9-320. Fifth Third (Debtor's secured lender) lost any brief security interest it had in the Kuehny Steers when Debtor resold them in the ordinary course of business. *Id.*

Significantly, the provision <u>does not</u> provide that Hohenberger takes free of the Kremlin security interest because it was created by Kuehny – who was not Hohenberger's seller.

F.  **J&F Purchased The Kuehny Steers Subject To The Kremlin Security Interest But Free Of Any Security Interest Created By Debtor Or Hohenberger**

Like Debtor, Hohenberger simply brokered the immediate resale of the Kuehny Steers. Hohenberger, a cattle buyer, was not engaged in farming operations with regard to his brief possession of the cattle. Accordingly, when J&F bought the Kuehny Steers, it took them free of any security interest that may have been created by Hohenberger's brief ownership. 12A Okla. Stat. § 1-9-320. Likewise, because any security interest by Fifth Third (Debtor's lender) was extinguished by Hohenberger's ordinary course purchase of the cattle from Debtor, Fifth Third's brief interest in the cattle is even further removed. However, for the same reason that Hohenberger took the Kuehny Steers subject to the Kremlin security interest, so did J&F (the Kremlin security interest was not created by J&F's seller). *See Fin Ag,* 720 N.W.2d at 587 ("It is possible that the corn ceased being a 'farm product' and became 'inventory' after it was acquired from [the party that created the security interest] to the [first purchaser]. If so, a subsequent sale by the [first purchaser] to [the second purchaser] would be governed by [§ 9-320], not section

11

1631, which only applies to 'farm products.' But the result would be the same because [§ 9-320], like section 1631, provide no protection for security interests not 'created by the seller.'" (internal citation omitted)).

### G. Kremlin's Security Interest Remains Perfected In The Cash Proceeds Held By Hohenberger

In addition to following the cattle as they were sold, resold and resold, Kremlin's security interest in the Kuehny Steers attached and is perfected in the cash proceeds that Hohenberger received from his sale of the steers. Because Kremlin's security interest remained perfected through Hohenberger's purchase of the Kuehny Steers, the question is not, as the Trustee's brief suggests, whether Kremlin has a perfected security interest in Debtor's receivable, but rather, whether Kremlin has a perfected security interest in the proceeds of Hohenberger's sale of the cattle to J&F.

The question is answered by examining UCC § 9-315(d). As the Trustee correctly notes, this statute renders unperfected an otherwise perfected security interest in the proceeds of the sale of secured collateral twenty-one days of said sale, except in three (3) enumerated circumstances. The second of § 9-315(d)'s enumerated exceptions that allows a security interest in proceeds to remain perfected is when "the proceeds are identifiable cash proceeds." *See* 12A Okla. Stat. § 9-315(d)(2).

In this case, Hohenberger received $167,308.93 for his sale of the Kuehny Steers to J&F. (Dispositive Fact 11). As such, Kremlin's security interest in the proceeds of Hohenberger's sale fits comfortably within § 9-315(d)(2) and therefore, without the need for Kremlin to take any action, remain perfected. *See, e.g., Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F. Supp. 1237, 1244 (N.D. Iowa 1997) ("[A] secured creditor is entitled to the full amount of the proceeds of its collateral deposited to a commingled fund account if the balance of the account

12

9143848_1.DOC

remains at all times equal to or greater than that amount." (quotation omitted)); *Conagra, Inc. v. Farmers State Bank*, 602 N.W.2d 390, 400 (Mich. Ct. App. 1999) ("It suffices to say that cash proceeds do not lose their identity merely because the cash proceeds have been commingled with other cash, provided that there is some basis for the court to connect a specified amount of the commingled cash to the original collateral."); *General Motors Acceptance Corp. v. Norstar Bank, N.A.*, 532 N.Y.S.2d 685, 686 (N.Y. Sup. Ct. 1988) ("[T]he fact that Murphy commingled proceeds, or the fact that plaintiff may have permitted the commingling of proceeds, does not, in and of itself, defeat any security interest plaintiff may have in the proceeds deposited in defendant bank. Instead, plaintiff's security interest in such proceeds depends solely on whether or not they continue to be 'identifiable', even if commingled.").

Kremlin has a first and prior lien (superior to any rights asserted by the Debtor, Trustee or Fifth Third) in the cash proceeds held by Hohenberger and is entitled to $158,636.31 from such proceeds to the exclusion of Debtor, the Trustee, Fifth Third or anyone else.

**H.     This Matter Is Properly Before The Court And Fifth Third Has Waived Any Objection To Proceeding On The Trustee's Motion.**

As Fifth Third has noted in its Objection, the genesis of the current issue was the Purchase Money Claims Report filed by the Trustee on May 23, 2011. In the Purchase Money Claims Report, the Trustee asserted that "[o]ther than Fifth Third, no Third Party can assert a valid perfected lien in or to the Cattle Proceeds." Fifth Third did not oppose the Trustee's attempt to award it by motion a first priority secured interest in the "Cattle Proceeds" and did not object to the failure of the Trustee to seek to expunge the lien and ownership claims of other parties to the "Cattle Proceeds" without filing an adversary proceeding.

Because the Purchase Money Claims Report identified the "Cattle Proceeds" by Eastern's purchaser and did not connect each Eastern purchaser with the entity who sold the cattle to

13

Eastern, Moreover, the Purchase Money Claims Report identified as part of the "Cattle Proceeds" funds received from Hohenberger, Eastern's customer with respect to the claims at issue here. Consequently, Kuehny and Kremlin filed an objection to the Purchase Money Claims Report asserting among other things the security interest and rights that are the subject of the Kremlin Issue.

On July 25, 2011, this Court entered its Scheduling Order Regarding Contested Matter Involving Trustee's Purchase Money Claims Report And Objections Filed By SOLM, Crumpler Bros., Kuehny And The Bank Of Kremlin, (the "Scheduling Order"), [docket #622], which, among other things, established the procedure and schedule for resolving the Kremlin Issue. The Scheduling Order provided for the resolution of the Kremlin Issue in the context of the Purchase Money Claims Report without the filing of a separate adversary proceeding. Once again, Fifth Third did not object to that procedure.

On September 30, 2011 the Trustee filed his Motion (docket #732) Requesting Entry of an Order Granting Trustee Authority to 1) Collect Receivable, 2) Hold Receivable Proceeds in Segregated Account Pending Determination of Rights Therein, 3) Transfer Receivable Proceeds to Operating Account After Such Determination and 4) Continuing Briefing Schedule on the Foregoing (the "9/30/11 Motion"). Pursuant to the 9/30/11 Motion, among other things, the Trustee asked the Court to determine the rights of the Trustee, Kremlin, Kuehny and other parties to the proceeds from the sale of cattle held by Hohenberger. Because the Trustee asserted that the Trustee's Purchase Money Claims Report was not intended to apply to the Cattle Proceeds, the 9/30/11 Motion was a precautionary measure to assure that the Kremlin Issue was squarely before the Court for determination, maintaining the existing briefing schedule imposed in connection with the Kremlin Issue.

9143848_1.DOC

Bankruptcy Rule 7001's scheme for determining what relief may be sought by adversary proceeding may be waived by proceeding in a manner inconsistent with such characterization. See, 10 *Collier on Bankruptcy* ¶7001.01, p. 7001-4 (16th Ed). Fifth Third did not object to the procedure set forth in the Trustee's Purchase Money Claims Report and adopted in the Scheduling Order. It was happy to receive the benefit of the procedure established by the Trustee's Purchase Money Claims Report. It should not be heard to complain about that procedure now, more than six months after the filing of the pleading that established the procedure.

## CONCLUSION

1. The Trustee has offered no cogent basis for ignoring Kremlin's security interest.

2. To the extent the Trustee has or subsequently receives the cash proceeds held by Hohenberger, such funds belong to Kuehny subject to the security interest of Kremlin.

Respectfully submitted,

/s/ Ross A. Plourde
ROSS A. PLOURDE, OBA #7213
MCAFEE & TAFT A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102
405/235-9621; 405/235-0439 (FAX)
Ross.plourde@mcafeetaft.com
*Attorneys for Brent Kuehny d/b/a Dollar K Cattle Co.*

/s/ Cliff Elliott
CLIFF ELLIOTT, OBA #02678
ELLIOTT, ENABNIT, SCHOVANEC & KELLY, P.L.L.C.
114 East Broadway Suite 500
P.O. Box 5589
Enid, OK 73702-5589
580/234-9300; 580/233-1177 (FAX)
elliott@enidtitlelaw.com
*Attorney for The Bank of Kremlin*

9143848_1.DOC

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 22, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr.<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jesse Cook-Dubin<br>jcookdubin@vorys.com | Edward M. King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S. Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A. Konstantinopoulos<br>ndohbky@jbandr.com | Karen L. Lobring<br>lobring@msn.com |

9143848_1.DOC

| | | |
|---|---|---|
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net | Elliott D. Levin<br>robin@rubin-levin.net |
| John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com | Sean T. White<br>swhite@hooverhull.com |
| Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com | Michael W. McClain<br>mike@kentuckytrial.com |
| William E. Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com | Christopher E. Baker<br>cbaker@hklawfirm.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C. Scherer<br>tscherer@binghammchale.com | Dustin R. DeNeal<br>Dustin.deneal@bakerd.com |
| Kevin M. Toner<br>kevin.toner@bakerd.com | James M. Carr<br>Jim.carr@bakerd.com | Terry E. Hall<br>Terry.hall@bakerd.com |
| Wendy W. Ponader<br>Wendy.ponader@bakerd.com | Amelia Martin<br>aadams@dlgfirm.com | Jerald I. Ancel<br>jancel@taftlaw.com |
| Robert A. Bell<br>rabell@vorys.com | Kent A Britt<br>kabritt@vorys.com | Jason W. Cottrell<br>jwc@stuartlaw.com |
| Jack S Dawson<br>jdawson@millerdollarhide.com | David Alan Domina<br>dad@dominalaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com |
| Shawna M Eikenberry<br>shawna.eikenberry@bakerd.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Melissa S. Giberson<br>msgiberson@vorys.com |
| Jeffrey J. Graham<br>jgraham@taftlaw.com | Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Jay Jaffe<br>jay.jaffe@bakerd.com |
| Jill Zengler Julian<br>Jill.Julian@usdoj.gov | James A. Knauer<br>jak@kgrlaw.com | Erick P Knoblock<br>eknoblock@daleeke.com |
| David A. Laird<br>david.laird@moyewhite.com | James B. Lind<br>jblind@vorys.com | Harmony A Mappes<br>harmony.mappes@bakerd.com |
| Christie A. Moore<br>cm@gdm.com | Allen Morris<br>amorris@stites.com | Shiv Ghuman O'Neill<br>shiv.oneill@bakerd.com |
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com | Eric C Redman<br>ksmith@redmanludwig.com |

9143848_1.DOC

| | | |
|---|---|---|
| Joseph H Rogers<br>jrogers@millerdollarhide.com | James E Rossow<br>jim@rubin-levin.net | James E. Smith<br>jsmith@smithakins.com |
| Robert K Stanley<br>robert.stanley@bakerd.com | Joshua N. Stine<br>jnstine@vorys.com | Andrew D Stosberg<br>astosberg@lloydmc.com |
| U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Andrea L Wasson<br>andreawassonatty@gmail.com | Harmony A Mappes<br>harmony.mappes@bakerd.com |

*/s/ Ross A. Plourde*
ROSS A. PLOURDE

18

9143848_1.DOC