**EXHIBIT A**

F00100328200010203A

BARBARA MATHES 12P
HARRISON COUNTY RECORDER
PAT Date 09/30/2008 Time 13:39:41
I 200805809 Page 1 of 12

## MORTGAGE AND SECURITY AGREEMENT

| Mortgagor (first name, last name): | Mortgagee: |
|---|---|
| Gibson, Thomas P. AND Gibson, Patsy | Peoples Bank & Trust Company Of Pickett County |
| 1457 Creeksons Dr | 19 Courthouse Square |
| Mailing Address | Mailing Address |
| Corydon  IN  47112 | Byrdstown  TN  38549 |
| City  State  Zip | City  State  Zip |

STATE OF INDIANA
COUNTY OF Harrison and Floyd

THIS MORTGAGE AND SECURITY AGREEMENT (herein referred to as the "Mortgage") is made and entered into this day by and between Mortgagor and Mortgagee.

KNOW ALL MEN BY THESE PRESENTS: THAT WHEREAS

Thomas P. Gibson AND SPOUSE, Patsy Gibson

has become indebted to Mortgagee in the principal sum of _____
One Million Five Hundred Thousand Two Hundred Fifty Two and 00/100
Dollars ($ 1,500,252.00 ) evidenced by ONE
promissory note of even date herewith in favor of Mortgagee, said note maturing on 03/02/2009 .

WHEREAS, Mortgagor desires to secure prompt payment of (a) the indebtedness described above according to its terms and any extensions, modifications or renewals thereof, (b) any additional and future advances with interest thereon that Mortgagee may make to Mortgagor as provided in Paragraph 2, (c) any other indebtedness that Mortgagor may now or hereafter owe to Mortgagee as provided in Paragraph 3, (d) any advances with interest that Mortgagee may make to protect the property herein conveyed as provided in Paragraph 5, 6, 7 and 8, and (e) any advance with interest that Mortgagee may make for attorneys' fees and other expenses as provided in Paragraph 19 (all being referred to herein as the "Indebtedness").

NOW THEREFORE, in consideration of the Indebtedness,

Thomas P. Gibson AND SPOUSE, Patsy M. Gibson AND
John F. Gibson AND SPOUSE, Debra Gibson AND
Eastern Livestock Company, LLC

does hereby grant, bargain, sell, mortgage, convey and warrant unto Mortgagee all of Mortgagor's right, title, and interest in and to and the real property described below situated in the County of Harrison and Floyd , State of Indiana.

See Exhibit "A"

GP - UI REV 12/1/05

Page 1 of 3

Together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all water, water rights, watercourses and ditch rights relating to the real property (all being herein referred to as the "Property"). Notwithstanding any provision in this Mortgage or in any other agreement with Mortgagee, Mortgagee shall not have a nonpossessory security interest in, and the Property shall not include, any household goods (as defined in Federal Reserve Board Regulation AA, Subpart B), unless the household goods are identified in a security instrument and are acquired as a result of a purchase money obligation. Such household goods shall only secure said purchase money obligation (including any renewal or refinancing thereof).

TO HAVE AND TO HOLD the same and every part thereof unto Mortgagee, its successors and assigns forever.

If Mortgagor shall pay all indebtedness promptly when due and shall perform all covenants made by Mortgagor, then this Mortgage shall be void and of no effect. If Mortgagor shall be in default as provided in Paragraph 12, then, in that event, the entire indebtedness, together with all interest accrued thereon, shall, at the option of Mortgagee, be and become at once due and payable without notice to Mortgagor, and Mortgagee, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

(a)    Mortgagee shall have all rights and remedies of a secured party under the Uniform Commercial Code to the extent any of the Property constitutes fixtures or other personal property.

(b)    Mortgagee shall have the right, without notice to Mortgagor, to take possession of the Property and collect all rents as provided in Paragraph 9 and apply the net proceeds, over and above Mortgagee's costs, against the indebtedness. In furtherance of this right, Mortgagee may require any tenant or other user of the Property to make payments of rent or use fees directly to Mortgagee. If the rents are collected by Mortgagee, then Mortgagor irrevocably designates Mortgagee as Mortgagor's attorney-in-fact to endorse instruments received in payment thereof in the name of Mortgagor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Mortgagee in response to Mortgagee's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Mortgagee may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

(c)    Mortgagee shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Mortgagee's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Mortgagee shall not disqualify a person from serving as a receiver.

(d)    Mortgagee shall have the right to obtain a judicial decree foreclosing Mortgagor's interest on the Property.

(e)    Following foreclosure Mortgagee shall be authorized to take possession of the Property, and, with or without taking such possession, after giving notice of the time, place and terms of sale pursuant to statute, together with a description of the Property to be sold and required publication to sell the Property.

(f)    If permitted by applicable law, Mortgagee may obtain a judgment for any deficiency remaining in the indebtedness due to Mortgagee after application of all amounts received from the exercise of the rights provided in this Mortgage.

(g)    If Mortgagor remains in possession of the Property after the Property is sold as provided above or Mortgagee otherwise becomes entitled to possession of the Property upon default of Mortgagor, Mortgagor shall become a tenant at sufferance of Mortgagee or the purchaser of the Property and shall, at Mortgagee's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Mortgagee.

From the proceeds of any sale of the Property, Mortgagee shall first pay all costs of the sale (including but not limited to reasonable attorneys' fees incurred by Mortgagee in connection therewith or in connection with any proceeding whatsoever, whether bankruptcy or otherwise, seeking to enjoin or stay the foreclosure of this Mortgage, or otherwise challenging the right of Mortgagee to foreclose this Mortgage); then amounts due on other liens and mortgages having priority over this Mortgage; then the indebtedness due to Mortgagee; and then the balance, if any, to Mortgagor or to whomever then appears of record to be the owner of Mortgagor's interest in the Property, including but not limited to, any subordinate lienholder.

IT IS AGREED that this conveyance is made subject to the covenants, stipulations and conditions set forth below which shall be binding upon all parties hereto.

1.    Mortgagor is lawfully seized in fee simple and possessed of the Property and has a good right to convey the same as aforesaid. The Property is free and clear of all encumbrances, easements, and restrictions not herein specifically mentioned or set forth in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Mortgagee in connection with this Mortgage. Mortgagor will warrant and forever defend the title to the Property against the claims of all persons whomsoever.

2.    This Mortgage shall also secure all future and additional advances that Mortgagee may make to Mortgagor from time to time upon the security herein conveyed. Such advances shall be optional with Mortgagee and shall be on such terms as to amount, maturity and rate of interest as may be mutually agreeable to both Mortgagor and Mortgagee. Any such advance may be made to any one of the Mortgagors should there be more than one, and if so made, shall be secured by this Mortgage to the same extent as if made to all Mortgagors.

3.    This Mortgage shall also secure any and all other indebtedness of Mortgagor due to Mortgagee with interest thereon as specified, or of any of the Mortgagors should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter rising at any time before cancellation of this Mortgage. Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise.

4.    Notwithstanding the foregoing, if any disclosure required by 12 C.F.R. §§ 226.15,226.19(b) or 226.23, or 24 C.F.R. §§ 2500.6, 3500.7, or 3500.10, or any successor or regulations, has not been timely provided in connection with one or more loans, credit extensions or obligations of Mortgagor, or any other person whose obligations are secured hereby, then the security interest in the Property granted hereby shall not secure the obligation or obligations for which the required disclosure was not given.

5. Mortgagor shall keep all buildings, improvements and fixtures on the real property herein conveyed insured against fire, all hazards included within the term "extended coverage," flood in areas designated by the U.S. Department of Housing and Urban Development as being subject to overflow, and such other hazards as Mortgagee may reasonably required in an amount sufficient to avoid application of any coinsurance clause. All policies shall be written by reliable insurance companies acceptable to Mortgagee, shall include a standard mortgagee's clause in favor of Mortgagee providing at least 10 days notice to Mortgagee of cancellation, and shall be delivered to Mortgagee. Mortgagor shall promptly pay when due all premiums charged for such insurance and shall furnish Mortgagee the premium receipts for inspection. Upon Mortgagor's failure to pay the premiums, Mortgagee shall have the right, but not the obligation, to pay such premiums or obtain single interest insurance for the sole benefit of Mortgagee (with such coverages as determined by Mortgagee in its sole discretion), and/or to hold the Mortgagor in default and exercise its rights as a secured creditor and may make use of any other remedy available under this Mortgage or any other agreements with the Mortgagor, including, but not limited to, foreclosure of the Property or any other collateral that secures the indebtedness. In the event of a loss covered by the insurance in force, Mortgagor shall promptly notify Mortgagee, who may make proof of loss if timely proof is not made by Mortgagor. All loss payments shall be made directly to Mortgagee as loss payee, who may either apply the proceeds to the repair or restoration of the damaged improvements or to the indebtedness, or release such proceeds in whole or in part to Mortgagor.

6. Mortgagor shall pay all taxes and assessments, general or special, levied against the Property or upon the interest of Mortgagee therein, during the term of this Mortgage before such taxes or assessments become delinquent, and shall furnish Mortgagee the tax receipts for inspection. Should Mortgagor fail to pay all taxes and assessments when due, Mortgagee shall have the right, but not the obligation, to make these payments.

7. Mortgagor shall keep the Property in good repair and shall not permit or commit waste, impairment or deterioration thereof. Mortgagor shall use the Property for lawful purposes only. Mortgagee may make or arrange to be made entries upon and inspections of the Property after first giving Mortgagor notice prior to any inspection specifying a just cause related to Mortgagee's interest in the Property. Mortgagee shall have the right, but not the obligation, to cause needed repairs to be made to the Property after first affording Mortgagor a reasonable opportunity (not to exceed 30 days) to make the repairs. Any inspection or repair shall be for the benefit of Mortgagee only.

Should the purpose of the primary indebtedness for which this Mortgage is given as security be for construction of improvements on the real property herein conveyed, Mortgagee shall have the right to make or arrange to be made entries upon the Property and inspections of the construction in progress, which shall be for Mortgagee's sole benefit. Should Mortgagee determine that Mortgagor is failing to perform such construction in a timely and satisfactory manner, Mortgagee shall have the right, but not the obligation, to take charge of and proceed with the construction at the expense of Mortgagor after first affording Mortgagor a reasonable opportunity (not to exceed 30 days) to continue the construction in a manner agreeable to Mortgagee.

8. Any sums advanced by Mortgagee for insurance, taxes, repairs or construction as provided in Paragraphs 5, 6 and 7 shall be secured by this Mortgage as advances made to protect the Property and shall be payable by Mortgagor to Mortgagee, with interest at the rate specified in the instrument representing the primary indebtedness, within thirty days following written demand for payment sent by Mortgagee to Mortgagor by certified mail. Receipts for insurance premiums, taxes and repair or construction costs for which Mortgagee has made payment shall serve as conclusive evidence thereof.

9. As additional security, Mortgagor hereby grants a security interest in and assigns to Mortgagee all of Mortgagee's right, title and interest in and to all leases of the Property and all rents (defined to include all present and future rents, revenues, income, issues, royalties, profits and other benefits) accruing on the Property. Mortgagor shall have the right to collect and retain any rents as long as Mortgagor is not in default as provided in Paragraph 12. In the event of default, Mortgagee in person, by an agent or by a judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and collect the rents. All rents so collected shall be applied first to the cost of managing the Property and collecting the rents, including fees for a receiver and an attorney, commissions to rental agents, repairs and other necessary related expenses, and then to payments on the indebtedness.

10. If all or any part of the Property, or an interest therein, is sold or transferred by Mortgagor, excluding (a) the creation of a lien subordinate to this Mortgage for which Mortgagee has given its written consent, (b) a transfer by devise, by descent or by operation of law upon the death of a joint owner or (c) the grant of a leasehold interest of three years or less not containing an option to purchase, Mortgagee may declare all the indebtedness to be immediately due and payable.

11. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Mortgagee may at its election require that all or any portion of the net proceeds of the award be applied to the indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Mortgagee in connection with the condemnation. If any proceeding in condemnation is filed, Mortgagor shall promptly notify Mortgagee in writing, and Mortgagor shall promptly take such steps as may be necessary to defend the action and obtain the award. Mortgagor may be the nominal party in such proceeding, but Mortgagee shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Mortgagor will deliver or cause to be delivered to Mortgagor such instruments as may be requested by it from time to time to permit such participation.

12. Mortgagor shall be in default under the provisions of this Mortgage at the option of Mortgagee if (a) Mortgagor shall fail to comply with any of Mortgagor's covenants or obligations contained herein, (b) Mortgagor shall fail to pay any of the indebtedness, or any installment thereof, or interest thereon, as such indebtedness, installment or interest shall be due by contractual agreement or by acceleration, (c) Mortgagor becomes bankrupt or insolvent or is placed in receivership, (d) Mortgagor shall, if a corporation, a partnership or other legal entity, be dissolved voluntarily or involuntarily, (e) any warranty, representation or statement made or furnished to Mortgagee by or on behalf of Mortgagor under this Mortgage or related documents is false or misleading in any material respect, either now or at the time made or furnished, (f) this Mortgage or any related document(s) ceases to be in full force and effect (including failure of any security instrument to create a valid and perfected security interest or lien) at any time and for any reason, (g) Mortgagor breaches the terms of any other agreement between Mortgagor and Mortgagee, including without limitation, any agreement concerning any indebtedness or other obligation of Mortgagor to Mortgagee, whether existing now or later, and does not remedy the breach within any grace period provided therein, or (h) Mortgagee in good faith deems itself insecure and its prospect of repayment seriously impaired.

GP - IN REV 12/7/05                                                                                      Page 3 of 8

3

13. This Instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures, accounts, chattel paper, documents, equipment, farm products, general intangibles, instruments, inventory, minerals, timber, investment property, deposit accounts, commercial tort claims of Borrower, letter-of-credit rights, and proceeds and products of any of the foregoing collateral, and Mortgagee shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time. Upon request by Mortgagee, Mortgagor shall execute financing statements and take whatever other action is requested by Mortgagee to perfect and continue Mortgagee's security interest in that part of the Property that constitutes personal property. In addition to recording this Mortgage in the real property records, Mortgagee may, at any time and without further authorization from Mortgagor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Mortgagor shall reimburse Mortgagee for all expenses incurred in perfecting or continuing this security interest. Upon default, Mortgagor shall assemble that part of the Property that constitutes personal property in a manner and at a place reasonably convenient to Mortgagor and Mortgagee and make it available to Mortgagee within three (3) days after receipt of written demand from Mortgagor. Notice of the time and place of any public sale or of the time after which any private sale or other intended disposition is to be made shall be deemed reasonable if given at least 10 days before the time of the sale or disposition. The mailing addresses of Mortgagor and Mortgagee, from which information concerning the security interest granted herein may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

14. At any time, and from time to time, upon request of Mortgagee, Mortgagor will make, execute and deliver, or will cause to be made executed and delivered, to Mortgagee or to Mortgagee's designee, and when requested by Mortgagee, caused to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Mortgagee may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Mortgagee, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Mortgagor under this Mortgage or the Instruments evidencing the indebtedness, and (b) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Mortgagor. Unless prohibited by law or agreed to the contrary by Mortgagee in writing, Mortgagor shall reimburse Mortgagee for all costs and expenses incurred in connection with the matters referred to in this paragraph. If Mortgagor fails to do any of the things referred to in this paragraph, Mortgagee may do so for and in the name of Mortgagor and at Mortgagor's expense. For such purposes, Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Mortgagee's sole opinion, to accomplish the matters referred to above.

15. Mortgagor shall notify Mortgagee at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Mortgagor will upon request of Mortgagee furnish to Mortgagee advance assurances satisfactory to Mortgagee that Mortgagor can and will pay the cost of such improvements. Any statement or claim of lien filed under applicable law shall be satisfied by Mortgagor or bonded to the satisfaction of Mortgagee within 14 days after filing.

16. Each privilege, option or remedy provided in this Mortgage to Mortgagee is distinct from every other privilege, option or remedy contained herein or in any related document, or afforded by law or equity, and may be exercised independently, concurrently, cumulatively or successively by Mortgagee or by any other owner or holder of the Indebtedness. Mortgagee shall not be deemed to have waived any rights under this Mortgage (or under the related documents) unless such waiver is in writing and signed by Mortgagee. No delay or omission on the part of the Mortgagee in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Mortgagee, nor any course of dealing between Mortgagor and Mortgagee, shall constitute a waiver of any of Mortgagee's rights or any of Mortgagor's obligations as to any future transactions. Whenever consent by Mortgagee is required in this Mortgage, the granting of such consent by Mortgagee in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

17. The words "Mortgagor" or "Mortgagee" shall each embrace one individual, two or more individuals, a corporation, a partnership or an unincorporated association or other legal entity, depending on the recital herein of the parties to this Mortgage. The covenants herein contained shall bind, and the benefits herein provided shall inure to, the respective legal or personal representatives, successors or assigns of the parties hereto subject to the provisions of Paragraph 10. If there be more than one Mortgagor, then Mortgagor's obligation shall be joint and several. Whenever in this Mortgage the context so requires, the singular shall include the plural and the plural the singular. Notices required herein from Mortgagee to Mortgagor shall be sent to the address of Mortgagor shown in this Mortgage.

18. Mortgagor covenants and agrees that the Mortgagor (a) has not stored and shall not store (except in compliance with all federal, state and local statutes, laws, ordinances, rules, regulations and common law now or hereafter in effect, and all amendments thereto, relating to the protection of the health of living organisms for the environment (collectively, "Environmental Requirements" )) and has not disposed and shall not dispose of any Hazardous Substances (as hereinafter defined) on the Property, (b) has not transported or arranged for the transportation of and shall not transport or arrange for the transportation of any Hazardous Substances, and (c) has not suffered or permitted, and shall not suffer or permit, any owner, lessee, tenant, invitee, occupant or operator of the Property or any other persons to do any of the foregoing.

Mortgagor has complied, and will comply, with the Indiana Responsible Property Transfer Law, IC 13-25-3-1 et seq. (the "Disclosure Law"), by: (A) (i) the completion and delivery to Mortgagee of a disclosure document in the form required by the Disclosure Law (the "Disclosure Document"), (ii) the timely recording in the Office of the Recorder of the County in which the Mortgaged Property is located of a Disclosure Document, and (iii) the timely filing the Disclosure Document in the Office of the Indiana Department of Environmental Management; or (B) Mortgagor has determined after diligent investigation, and Mortgagor hereby certifies to Mortgagee, that the Mortgaged Property does not constitute "property" under the Disclosure Law, and therefore, delivery, filing and recording of a Disclosure Document is not required, because:

the Mortgaged Property does not contain (1) or more facilities that are subject to reporting under Section 312 of the Federal Emergency Planning and Community Right-to-Know Act of 1986 (42 U.S.C. 11022);

the Mortgaged Property is not the site of one (1) or more underground storage tanks for which notification is required under: (A) 42 U.S.C. 6991(a) and (B) IC 13-23-1-2(o)(8)(A); or

the Mortgaged Property is not listed in the Comprehensive Environmental Response, Compensation and Liability Information System (CERCLIS) in accordance with Section 116 of CERCLA (42 U.S.C. 9616).

Mortgagor covenants and agrees to maintain the Property at all times (a) free of any Hazardous Substance (except in compliance with all Environmental Requirements) and (b) in compliance with all Environmental Requirements.

Mortgagor agrees promptly: (a) to notify Mortgagee in writing of any change in the nature or extent of Hazardous Substances maintained on or with respect to the Property, (b) to transmit to Mortgagee copies of any citations, orders, notices or other material governmental communications received with respect to Hazardous Substances upon, about or beneath the Property or the violation or breach of any Environmental Requirements, (c) to observe and comply with any and all Environmental Requirements relating to the use, maintenance and disposal of Hazardous Substances or transportation, generation and disposal of Hazardous Substances, (d) to pay, perform or otherwise satisfy any fine, charge, penalty, fee, damage, order, judgment, decree or imposition related thereto which, if unpaid, would constitute a lien on the Property, unless (i) the validity thereof shall be contested diligently and in good faith by appropriate proceedings and with counsel reasonably satisfactory to Mortgagee and (ii) so long as Mortgagor shall at all times have deposited with Mortgagee, or posted a bond satisfactory to Mortgagee in a sum equal to the amount necessary (in the reasonable discretion of Mortgagee) to comply with such order or directive (including, but not limited to, the amount of any fine, penalty, interest or costs that may become due thereon by reason of or during such contest); provided, however, that payment in full with respect to such fine, charge, penalty, fee, damage, order, judgment, decree or imposition shall be made not less than twenty (20) days before the first date upon which the Property, or any portion thereof, may be seized and sold in satisfaction thereof, and (e) to take all appropriate response actions, including any removal or remedial actions necessary in order for the Property to be or remain in compliance with all Environmental Requirements, in the event of a release, emission, discharge or disposal of any Hazardous Substances in, on, under or from the Property, (f) upon the request of Mortgagee, to permit Mortgagee, including its officers, agents, employees, contractors and representatives, to enter and inspect the Property for purposes of conducting an environmental assessment, (g) upon the request of Mortgagee, and at the Mortgagor's expense, to cause to be prepared for the Property such site assessment reports, including, without limitation, engineering studies, historical reviews and testing, as may be reasonably requested from time to time by the Mortgagee.

In addition to all other indemnifications contained herein, Mortgagor agrees to indemnify, defend and reimburse and does hereby hold harmless Mortgagee, and its officers, directors, agents, shareholders, employees, contractors, representatives, successors and assigns, from and against any and all claims, judgments, damages, losses, penalties, fines, liabilities, encumbrances, liens, costs and expenses of investigation and defense of any claim, of whatever kind or nature, including, without limitation, reasonable attorneys' fees and consultants' fees, arising from the presence of Hazardous Substances upon, about or beneath the Property or migrating to or from the Property or arising in any manner whatsoever out of the violation of any Environmental Requirements pertaining to the Property and the activities thereon, or arising from the breach of any covenant or representation of Mortgagor contained in this Mortgage. The Mortgagor's obligations under this paragraph shall survive any foreclosure on the Property or repayment or extinguishment of the Indebtedness.

The provisions of this Mortgage are in addition to and supplement any other representations, warranties, covenants and other provisions contained in any other loan documents that Mortgagor has executed for the benefit of Mortgagee.

For purposes of this Mortgage, "Hazardous Substances" shall mean any substance

(a) The presence of which requires investigation, removal, remediation or any form of clean-up under any federal, state or local statute, regulation, ordinance, order, action, policy or common law now or hereafter in effect, or any amendments thereto; or
(b) Which is or becomes defined as a "hazardous waste", "hazardous substance", "pollutant" or "contaminant" under any federal, state or local statute, regulation, rule or ordinance or amendments thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 6601 et seq.) and/or the Resource Conservation and Recovery Act (42 U.S.C. §6801 et seq.); or
(c) Which is toxic, explosive, corrosive, flammable, infectious, radioactive, carcinogenic, mutagenic or otherwise hazardous and is regulated presently or in the future by any governmental authority, agency, department, commission, board, agency or instrumentality of the United States, the state where the Property is located or any political subdivision thereof; or
(d) The presence of which on the Property causes or threatens to cause a nuisance upon the Property or to adjacent properties or poses or threatens to pose a hazard to the health or safety of persons on or about the Property; or
(e) The presence of which on adjacent properties could constitute a trespass by the Mortgagor; or
(f) Which contains, without limitation, gasoline, diesel fuel or the constituents thereof, or other petroleum hydrocarbons; or
(g) Which contains, without limitation, polychlorinated biphenyls (PCBs), asbestos or urea formaldehyde foam insulation; or
(h) Which contains, without limitation, radon gas; or
(i) Which contains, without limitation, radioactive materials or isotopes.

19. If Mortgagee institutes any suit or action to enforce any of the terms of this Mortgage, Mortgagee shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Mortgagee that in the Mortgagee's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for the primary Indebtedness. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Mortgagor also will pay any court costs, in addition to all other sums provided by law.

20. This Mortgage, together with any related documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendments.

21. This Mortgage has been delivered to Mortgagee and accepted by Mortgagee in the State of Indiana. Subject to the provisions on arbitration, this Mortgage shall be governed by and construed in accordance with the laws of the State of Indiana.

22. Mortgagor hereby releases all rights and benefits of the homestead exemption laws of the State of Indiana as to the Property.

23. Time is of the essence in the performance of this Mortgage.

24. If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

25. To the extent the laws of the State of Indiana limit (i) the availability of the exercise of any of the remedies set forth in the Mortgage, including without limitation the remedies involving a power of sale on the part of Mortgagee and the right of Mortgagee to exercise self-help in connection with the enforcement of the terms of this Mortgage, or (ii) the enforcement of waivers and indemnities made by Mortgagor, such remedies, waivers, or indemnities shall be exercisable or enforceable, any provisions in this Mortgage to the contrary notwithstanding, if, and to the extent, permitted by the laws in force at the time of the exercise of such remedies or the enforcement of such waivers or indemnities without regard to whether such remedies, waivers or indemnities were enforceable at the time of the execution and delivery of this Mortgage.

26. Anything contained in IC 32-28-7-5 to the contrary notwithstanding, no waiver made by Mortgagor in this Mortgage or in any of the other terms and provisions of the Loan Documents shall constitute the consideration for or be deemed to be a waiver or release by Mortgagee or any judgment holder of the Obligations secured by the Mortgage of the right to seek a deficiency judgment against the Mortgagor or any other person or entity who may be personally liable for the Obligations hereby secured, which right to seek a deficiency judgment is hereby reserved, preserved and retained by Mortgagee for its own behalf and its successors and assigns.

27. Notwithstanding anything contained in this Mortgage to the contrary, Mortgagee shall be entitled to all rights and remedies that a mortgagee would have under Indiana law or in equity including, without limitation, IC 32-30-10, Mortgage Foreclosure Actions, IC 32-30-5, Receiverships, and the Revised Uniform Commercial Code IC 26-1-9.1 (the "UCC") (such laws, as amended, modified and/or recodified from time to time are collectively referred to herein as the "Applicable Law"). In the event of any inconsistency between the provisions of this Mortgage and the provisions of Applicable Law, the provisions of Applicable Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provisions of this Mortgage that can be construed in a manner consistent with Applicable Law. Conversely, if any provision of this Mortgage shall grant to Mortgagee any rights or remedies upon default of the Mortgagor which are more limited than the rights or remedies that would otherwise be vested in the Mortgage under Applicable Law in the absence of said provision, Mortgagee shall be vested with the rights and remedies granted under Applicable Law. Notwithstanding any provision in the Mortgage relating to a power-of-sale or other provision for sale of the Mortgaged Property upon default other than under a judicial proceeding, any sale of the Mortgaged Property pursuant to this Mortgage will be made through a judicial proceeding, except as otherwise may be permitted under the UCC.

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage on the 29th _____ day of September, 2008.

_____   9/30/08
Thomas P. Gibson                  Date

_____   9/30/08
Patsy M. Gibson                   Date

_____   9/29/08
John F. Gibson                    Date

_____   9/29/08
Debra Gibson                      Date

_____   9/30/08
Eastern Livestock Company, LLC    Date

_____
                                  Date

| Subdivision | | Lot | Plat Book | Page | SOURCE OF TITLE |
|---|---|---|---|---|---|
| QQ | Q | 8 | T | R | |
| | | | | | BOOK          PAGE |

GP-21 Rev. (12/07/05)

Page 6 of 8

INDIVIDUAL ACKNOWLEDGEMENT

STATE OF INDIANA      )
                     ) SS:
COUNTY OF Floyd      )

The foregoing instrument was subscribed, sworn to and acknowledged before me this 29th day of September 2008, who acknowledged the execution of the foregoing MORTGAGE.

WITNESS my hand and Notarial Seal this 29th day of September 2008.

Notary Public: _St Ch b lD_
Printed Name: STEVE McDONALD
My Commission Expires: 11/27/08
My County of Residence: Floyd

[AFFIX NOTARIAL SEAL]

INDIVIDUAL ACKNOWLEDGEMENT

STATE OF INDIANA      )
                     ) SS:
COUNTY OF Floyd      )

The foregoing instrument was subscribed, sworn to and acknowledged before me this 30th day of September 2008, who acknowledged the execution of the foregoing MORTGAGE.

WITNESS my hand and Notarial Seal this 30th day of September 2008.

Notary Public: _BC Kl___b_
Printed Name: STEVE McDONALD
My Commission Expires: 11/27/08
My County of Residence: Floyd

[AFFIX NOTARIAL SEAL]

INDIVIDUAL ACKNOWLEDGEMENT

STATE OF INDIANA      )
                     ) SS:
COUNTY OF Floyd      )

The foregoing instrument was subscribed, sworn to and acknowledged before me this 30th day of September 2008, who acknowledged the execution of the foregoing MORTGAGE.

WITNESS my hand and Notarial Seal this 30th day of September 2008.

Notary Public: _ __lh l lD_
Printed Name: STEVE McDonald
My Commission Expires: 11/27/08
My County of Residence: Floyd

[AFFIX NOTARIAL SEAL]

OP - UI REV 12/7/05                                   Page 7 of 8

7

INDIVIDUAL ACKNOWLEDGEMENT

STATE OF INDIANA  } SS:
COUNTY OF Floyd  }

The foregoing instrument was subscribed, sworn to and acknowledged before me this 30th day of September 2008, who acknowledged the execution of the foregoing MORTGAGE.

WITNESS my hand and Notarial Seal this 30th day of September 2008

Notary Public: STEVE McDONALD
Printed Name: S. McD
My Commission Expires: 11/27/08
My County of Residence: Floyd

[AFFIX NOTARIAL SEAL]

CORPORATE ACKNOWLEDGEMENT

STATE OF INDIANA  } SS:
COUNTY OF Floyd  }

The foregoing instrument was subscribed, sworn to and acknowledged before me this 30th day of September 2008, by Thomas P. Gibson as President, Manager of Eastern Livestock Company, LLC, a LLC corporation, on behalf of said corporation.

Notary Public: STEVE McDONALD
Printed Name: S. McD
My Commission Expires: 11/27/08
My County of Residence: Floyd

[AFFIX NOTARIAL SEAL]

This Instrument prepared by:

Peoples Bank & Trust Company Of Pickett County

19 Courthouse Square

Byrdstown, TN 38549

Ernest Elder, President

OP - IN Rev. (12/07/05)

Page 5 of 5

"I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT I HAVE TAKEN REASONABLE CARE TO REDACT EACH SOCIAL SECURITY NUMBER IN THIS DOCUMENT, UNLESS REQUIRED BY LAW."

NAME: [signature]

8

Exhibit "A"

The east half of the east half of the Northeast Quarter of Section Three (3), Township Four (4) South, Range Four (4) East, containing Forty (40) acres, more or less.
Based upon said examination, the last deed of record shows the fee simple title to the above
described real estate is now vested in:
Thomas P. Gibson and Patsy M. Gibson, tenants in common
(United States Marshal's Deed recorded December 15, 1983 at Deed Record F-8, Page 8, Instrument #20922)

The West half (½) of the East half (½) of the Northeast Quarter of Section Three (3), in Township Four (4) South, and in Range Four (4) East, containing Forty (40) acres, more or less, together with all appurtenances.
ALSO, a part of the West half (½) of the Northeast Quarter of Section Three (3) in Township Four (4) South, and in Range Four (4) East bounded as follows: Beginning at the Northeast corner of said west half (½) of the Northeast Quarter of said Section and being where the New Middletown Road crosses the north line of said section, thence West along the north line of said section to the road leading to Corydon, thence South and east along the meanderings of said road leading to Corydon to where it intersects the east line of said west half of the said Northeast Quarter, thence North to the place of beginning, containing Twenty (20) acres, more or less, together with all appurtenances.
EXCEPT, a part of the west one-half of the Northeast Quarter of Section 3, Township 4 South, Range 4 East, described as follows: Beginning at a point on the north side of Turley Road, said point being 81 feet east of the east boundary line of the Ivan Enlow 43 acre tract (Warranty Deed dated February 10, 1950) thence running North 296 feet more or less to a stake, thence running East 296 feet to a stake, thence running South 296 feet more or less to a stake on the said road; thence running west along said road a distance of 296 feet more or less to the place of beginning, containing 2 acres, more or less.

ALSO EXCEPT, part of the West one-half of the Northeast Quarter of Section 3, Township Four South, Range Four East, to-wit: Beginning at a point on the Turley Road at the Southeast corner of the Two acre tract now owned by the Grantors, running thence East along Turley Road 110 feet, thence North 191 feet, thence West 110 feet, thence South 191 feet to the place of beginning. Containing 0.48 acre.
ALSO EXCEPTING part of the Northeast Quarter of Section #3, Township 4 South, Range 4 East, Harrison Township, Harrison County, Indiana, being depicted on a survey by Paul Primavera and Associates, Inc., Job #00-8235, more particularly described as follows: Commencing at the Northwest corner of the East half of the Northeast Quarter of Section #3, thence along the West line of said East half, South 00 deg. 00' 00" East 1995.11 feet to the point of beginning, thence leaving said West line South 87 deg. 37' 25" East 223.50 feet to a #5 reinforcing bar with a yellow plastic cap stamped, "Primavera S0131", this type of monument hereinafter referred to as a capped reinforcing bar, thence South 00 deg. 00' 09" West 188.69 feet to a capped reinforcing bar, thence South 89 deg. 06' 33" West 223.33 feet to a point in Pfrimmer Chapel Road on the West line of said East half, thence along said West line North 00 deg. 00' 00" West 202.25 feet, to the point of beginning, containing 1.000 acre, more or less.

9

A-1

Based upon said examination, the last deed of record shows the fee simple title to the above
described real estate is now vested in:
John F. Gibson and Debra Gibson, husband and wife
(Warranty Deed recorded February 16, 1988 at Deed Record R-8, Page 280)

Being a part of the West half of the Northwest quarter of Section 3, Township 4 South, Range 4 East, in Harrison Township, Harrison County, Indiana more particularly described as follows: Commencing at a point where a county road intersects the East line of Iven Enlow's 43 Acre tract, said point being 875.00 feet West of the East line of the West half of the Northwest quarter of said section, thence with a county road South 76 degrees 18' 0" East 61.00 feet, this being the point of beginning, thence North 19 degrees 17' 17" East 284.43 feet to a point found, thence South 77 degrees 22' 53" East 238.44 feet to a point found, thence South 5 degrees 33' 5" East 123.83 feet to a point found, thence South 76 degrees 6' 34" East 107.68 feet to a point found, thence South 16 degrees 59' 0" West 162.10 feet passing through a point found off the edge of a road to a point in the center of a county road, thence with said county road North 76 degrees 18' 0" West 404.84 feet, to the point of beginning, containing 2.269 Acres, more or less.
Based upon said examination, the last deed of record shows the fee simple title to the above
described real estate is now vested in:
John F. Gibson and Debra A. Gibson, husband and wife
(Quitclaim Deed recorded June 1, 1988 at Deed Record Q-8, Page 260)

Tract 1
Part of Section 15, Township 3 South, Range 5 East, Floyd County, Indiana, more particularly described as follows: Beginning at an iron pin in the Southwest corner of the Northwest Quarter of Section 15 and running thence North 2688.1 feet to an iron pin in the Northeast corner of Section 15; thence West 700 feet to an iron pin the true place of beginning of the tract herein described; thence South 019 degrees 32' West 2140.6 feet to an iron pin; thence East 34.5 feet to an iron pin; thence South 577.5 feet to an iron pin; thence East 693.0 feet to an iron pin; thence North 631.3 feet to a road nail in Tandy Road; thence North 27 degrees 40' East 132.25 feet to an iron pin; thence North 18 degrees 13' East 1918.2 feet to an iron pin; thence North 40 degrees 00' East 126.0 feet to an iron pin in the East bank of a creek' thence West 1078.6 feet to an iron pin, the true place of beginning, containing 52.31 acres, more or less, subject to the right-of-way of Tandy Road and all legal highways.
EXCEPTING THEREFROM, a part of the Northwest Quarter of Section 15, Township 3 South, Range 5 East, described as follows: Commencing at the Southwest corner of the Northwest Quarter of said Section 15, Township 3 south, Range 5 East; thence Eastwardly along the South line of said Northwest Quarter 379.5 feet, more or less, to an iron pin, the true place of beginning of the tract to be herein described; thence North 00 degrees 00' East 577.5 feet to an iron pin; thence North 85 degrees 34' East 695.08 feet, more or less, to a road nail in Tandy Road; thence South 00 degrees 00' East 631.3 feet to an iron pin; thence South 90 degrees 00' West 693.0 feet to the true place of beginning, containing 11 acres, more or less.

10
A-2

Tract 2
4 ½ acres more or less, in Floyd County, Indiana, commencing at the Northwest corner of the West half of the Southwest quarter of Section 15, Township 3 south of Range 5 East, running thence South 32 rods and 9 feet (with the county line), running thence East 22 rods and 2 feet to a rock planted in the ground, running thence North 32 rods and 9 feet to the half section line, thence West with the ½ section line 22 rods and 2 feet to the place of beginning.
ALSO, a part of the Northwest quarter of Section Fifteen (15), Township Three (3) South, Range Five (5) East, described as follows: Beginning at the Southwest corner of said Northwest quarter thence running East 379.5 feet; thence running North 577.5 feet to a point in the centerline of the Tandy Road 379.5 feet to a point on the West line of said Northwest quarter; thence running South 550 feet, more or less, to the place of beginning; containing five (5) acres, more or less, EXCEPTING THEREFROM, however, the following described tract of land: Beginning at the Southwest corner of said Northwest quarter, thence running East 379.5 feet; thence running North 445.5 feet to a point designated as The True Place of Beginning; Thence running North 132 feet to a point in the center line of the Tandy Road thence running West along and with the centerline of the Tandy Road 379.5 feet to a point on the West line of said Northwest quarter; thence running South 116.5 feet; thence running East 379.5 feet; containing one (1) acre and twelve and one-half (12 ½) square rods more or less.
ALSO, the following real estate in Harrison County, Indiana described as follows, to-wit: Beginning at the Northwest corner of the following described tract of land which is the North part of the East half of the Southeast quarter of Section 16, in Township 3 South, Range 5 East, and the Southeast corner of East half of the Northeast quarter, Section, Township, and range aforesaid. From the Northwest corner it runs south 29 rods and 1 1/4 feet to a rock, thence East 80 rods 9 7/12 feet to the county line dividing Harrison and Floyd Counties, thence North with the center of the creek, thence 23 rods to an elm tree 30 inches in diameter, thence 18 rods and 10 feet to a hole drilled in the center of the creek, containing 19 acres, more or less.
EXCEPTING THEREFROM, Being a 2.433 acre parcel of land lying in the Northeast and Southeast quarters of Section 16, Township 3 South, Range 5 East, Franklin Township, Harrison County, Indiana, same being a part of those same lands conveyed to Thomas P. & Patsy Gibson (U-7, 26), same being more particularly described as follows: Beginning at a fence corner, said corner being S 89 degrees 26' W, a distance of 514.67 feet from a ½ inch steel pin at the Southeast corner of said Northeast quarter; thence S 00 degrees 49' 10" E, with a fence 72.72 feet to a fence corner, thence N 89 degrees 21' 26" W, with a fence 30.94 feet to a fence corner, thence S 01 degrees 03' W with a fence 27.45 feet to a fence corner; thence S 10 degrees 22' 14" W, a distance of 105.66 feet to a ½ inch steel pin; thence S 87 degrees 16' 53" W, a distance of 266.91 feet to a ½ inch steel pin on top of a small dam; thence N 02 degrees 08' 03" W, a distance of 295.77 feet to a ½ inch steel pin on the North line of a 30 foot ingress & egress easement, continuing N 02 degrees 08' 03" W, 35 feet to a point in a branch of Indian Creek, thence N 83 degrees 39' 42" E, with said creek 101.73 feet to a point, thence N 71 degrees 22' 23" E, with said creek 177.60 feet to a point, thence S 19 degrees 01' 28" E, passing a ½ inch steel pin at 120.00 feet on the North line of said 30 foot

A-3

easement, a total distance of 192.76 feet to the beginning. Subject to said 30 foot ingress & egress easement from Old Salem Road thru this tract all as shown on a Survey by D.J. Ruckman, LS #S-0393, dated June 6, 1989.
Based upon said examination, the last deed of record shows the fee simple title to the above described real estate is now vested in:
Thomas P. Gibson and Patsy M. Gibson, husband and wife, by Warranty Deed recorded on December 31, 1987, at Deed Drawer 14, Instrument #12365 (Floyd County) and by Warranty Deed recorded on June 14, 1979, at Deed Record #U-7, Page 26, Instrument #20544, (Harrison County) and June 19, 1979, at Deed Drawer C, Instrument #4608, (Floyd County).

The East half of the Northwest Quarter of Section 16, Township 3 south, Range 5 East, and a part of the North end of the East half of the Southwest quarter of Section 16, Township 3 South, Range 5 East, and more fully described as follows: Beginning at the Northeast corner of the Northwest quarter of said Section 16, thence South along the East line of said quarter section 171 rods and 15 links to a hole drilled in a rock; thence South 78 ½ degrees West 27 rods and 5 links to a hole drilled in a rock, which hole is 177 rods and 1 link South of the North line of said section; thence South to an arm of Little Indian Creek; thence Southwestwardly along the arm of Little Indian Creek to the West line of the East half of the Southwest quarter of said Section 16; thence North along the West line of the East half of the Southwest and Northwest quarters of Section 16; 182 rods and 32 links to the North line of said section; thence East along the North line of said Section 80 rods, more or less to the place of beginning, containing 88.67 acres, more or less and being Lots 4 and 5 of said Section 16. (Being shown in the Franklin Township Transfer Book as 53.67 acres, 6 acres and 29.67 acres).
Based upon said examination, the last deed of record shows the fee simple title to the above described real estate is now vested in:
Eastern Livestock Co., LLC, a Kentucky Limited Liability Company, by Warranty Deed recorded on June 13, 2003, as Instrument #200306824.

12

A-4