Exhibit A

# PARTNERSHIP INTEREST PURCHASE AGREEMENT

THIS PARTNERSHIP INTEREST PURCHASE AGREEMENT ("Agreement") is made and entered into as of December ___, 2011 by and between Okie Farms L.L.C., an Oklahoma limited liability company ("Seller"), and Cattlemen's Feedlot, Ltd., a Texas limited partnership or its designee ("Buyer"). The Seller and the Buyer are collectively referred to as the "Parties," or individually as a "Party."

## RECITALS

A.  Seller is the owner of 47.92425% of the issued and outstanding partnership interests of Cattlemen's Feedlot, Ltd., a Texas limited partnership (the "Partnership").

B.  Seller is also the owner of 25.00000% of the issued and outstanding membership interests of Cattlemen's Feedlot Management Company, LLC, a Texas limited liability company and the general partner of the Partnership (the "General Partner").

C.  Upon and subject to the terms and conditions set forth herein, Seller desires to sell to Buyer, and Buyer desires to buy from Seller, all of Seller's right, title and interest in the Partnership and the General Partner (the "Purchased Interest").

D.  Fifth Third Bank, an Ohio banking association, asserts a security interest in the membership interests in and representing the equity of Seller owned by Eastern Livestock Co., LLC ("ELC").

In consideration of the mutual representations, warranties, covenants and agreements set forth herein, including the releases and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and upon the terms and subject to the conditions hereinafter set forth, the Parties, intending to be legally bound, do hereby agree as follows:

## ARTICLE 1.
## DEFINITIONS

**1.1  Defined Terms.**  Except as otherwise expressly provided or unless the context otherwise requires, and in addition to terms defined in other provisions of this Agreement, the following terms have the meanings specified in this Section 1.1 when capitalized and used in this Agreement.

(a)  "Agreement" means this Partnership Interest Purchase Agreement as amended, supplemented, or otherwise modified from time to time.

(b)  "Allocable Income" has the meaning set forth in Article 6.

(c)  "Business Day" means any calendar day on which commercial banks are not authorized or required to close in the State of Texas.

(d)  "Buyer" has the meaning set forth in the introductory paragraph.

  (e)  "Cattle" has the meaning set forth in Article 6.

  (f)  "Claim or Claims" has the meaning set forth in Article 5.

  (g)  "Closing" has the meaning set forth in Section 2.3.

  (h)  "Closing Date" has the meaning set forth in Section 2.3

  (i)  "ELC" has the meaning set forth in the Recitals.

  (j)  "Encumbrances" means, without limitation, any encumbrance, lien, charge, hypothecation, pledge, mortgage, title retention agreement, security interest, adverse claim, exception, reservation, restriction, demand, easement, right of occupation, option, right of preemption, or pledge of any nature, kind or description whatsoever or any agreement to create any of the foregoing.

  (k)  "General Partner" has the meaning set forth in the Recitals.

  (l)  "Partnership" has the meaning set forth in the Recitals.

  (m)  "Partnership Agreement" has the meaning set forth in Article 6.

  (n)  "Person" means any individual, partnership, limited liability company, firm, corporation, association, trust, unincorporated organization, governmental authority or other entity.

  (o)  "Purchase Price" has the meaning set forth in Section 2.1(b).

  (p)  "Purchased Interest" has the meaning set forth in the Recitals.

  (q)  "Securities Act" has the meaning set forth in Section 4.3.

  (r)  "Seller" has the meaning set forth in the introductory paragraph.

  **1.2**  **Interpretive Provisions.**  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  All references herein to Articles and Sections shall be deemed to be references to Articles and Sections of this Agreement unless the context shall otherwise require.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The words "hereof," "herein," "hereunder," and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless otherwise expressly provided herein, any contract, agreement, instrument or statute defined or referred to herein or in any contract, agreement or instrument that is referred to herein means such contract, agreement, instrument or statute as from time to time amended, modified or supplemented, including (in the case of contracts, agreements or instruments) by waiver or consent and (in the case of statutes) by succession of comparable successor statutes and references to all attachments thereto and instruments incorporated therein.

This Agreement shall be deemed to have been drafted by each Party hereto and this Agreement shall not be construed against any Party as a principal draftsperson.

## ARTICLE 2.
## TERMS OF PURCHASE AND SALE

**2.1** **Sale of the Purchased Interest and Purchase Price.**

(a) At Closing, Seller shall convey, sell, transfer and assign to Buyer, and Buyer, shall purchase from Seller, the Purchased Interest.

(b) The purchase price for the Purchased Interest shall be an amount equal to $3.0 million (the "Purchase Price").

**2.2** **Payment of Purchase Price.** At the Closing, Buyer shall deliver the Purchase Price by wire transfer payable to Seller or its designee.

**2.3** **The Closing.** Subject to the terms and conditions of this Agreement, the consummation of the purchase of the Purchased Interest (the "Closing") shall take place at the offices of Sprouse Shrader Smith P.C., 701 S. Taylor, Suite 500, Amarillo, Texas 79101 at such time and on such date as agreed to in writing by the Parties. The Parties may mutually agree in writing to such other time, date or place for Closing; *provided*, that in no event shall the Closing occur prior to satisfaction or waiver of all of the conditions to Closing set forth in this Agreement. The date on which the Closing is to occur is referred to in this Agreement as the "Closing Date."

**2.4** **Closing Deliveries.**

(a) At the Closing, the Seller shall deliver or cause to be delivered to Buyer:

(i) an assignment of the Purchased Interest, in form and substance satisfactory to the Parties, executed by Seller;

(ii) any necessary approvals, waivers and consents required by the governing documents of the Partnership and General Partner necessary for consummation of the transactions contemplated by this Agreement; and

(iii) such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to the Parties, as may be required to give effect to this Agreement.

(b) At the Closing, Buyer shall deliver to Seller:

(i) the Purchase Price; and

(ii) such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to the Parties, as may be required to give effect to this Agreement.

# ARTICLE 3.
# REPRESENTATIONS AND WARRANTIES OF SELLER

Seller warrants and represents to Buyer as of the date hereof, as follows:

**3.1     Corporate Power and Authority.**  The Seller is a limited liability company duly formed, validly existing and in good standing under the laws of the State of Oklahoma.  The Seller has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  The Seller has previously delivered or made available to the Buyer true and complete copies of the organizational documents of the Seller.  This Agreement has been duly and validly executed and delivered by the Seller and constitutes the valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, except to the extent that such enforceability: (i) may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to creditors' rights generally, and (ii) is subject to general principles of equity.

**3.2     Effect of Agreement.**  The execution, delivery and performance by Seller of this Agreement and the consummation by the Seller of the transactions contemplated hereby will not, with or without the giving of notice or the lapse of time, or both, (i) result in a default, right to accelerate or loss of rights under, or result in, cause or create any liability, lien, charge or Encumbrance pursuant to, any mortgage, deed of trust, lease, agreement, or other contractual relationship to which the Seller is a party or by which their assets may be bound or affected; (ii) to the Seller's knowledge, violate any provision of any law, rule or regulation to which any of the Seller is subject; (iii) violate any order, judgment or decree applicable to the Seller; or (iv) violate any provision of the certificate of formation or the organizational documents of Seller.

**3.3     Title to Purchased Interest.**  As of the date of this Agreement, and as of the Closing Date, Seller owns the Purchased Interest free and clear of all Encumbrances; and the sale and delivery of the assignment of the Purchased Interest from Seller to Buyer pursuant to Article 2 will vest in Buyer legal and valid title to the Purchased Interest, free and clear of all Encumbrances.

# ARTICLE 4.
# REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby warrants and represents to Seller as of the date hereof as follows:

**4.1     Authority.**  This Agreement has been duly and validly executed and delivered by Buyer and constitutes the valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except to the extent that such enforceability (i) may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to creditors' rights generally, and (ii) is subject to general principles of equity.

**4.2     Effect of Agreement.**  The execution, delivery and performance by Buyer of this Agreement and the consummation by Buyer of the transactions contemplated hereby will not, with or without the giving of notice or the lapse of time, or both, (i) result in a default, right to accelerate or loss of rights under, or result in, cause or create any liability, lien, charge or Encumbrance pursuant to, any franchise, mortgage, deed of trust, lease, license, agreement, or

other contractual relationship to which Buyer is a party or by which it or its assets may be bound or affected, (ii) to Buyer's knowledge, violate any provision of any law, rule or regulation to which Buyer is subject, (iii) violate any order, judgment or decree applicable to Buyer, or (iv) violate any provision of the certificate of formation or the partnership agreement of Buyer.

**4.3    Purchase for Investment.**  Buyer is purchasing the Purchased Interest for investment and not with a view to any public resale or other distribution thereof, except in compliance with applicable securities laws.  Buyer acknowledges that it has received, or has had access to, all information which it considers necessary or advisable to enable it to make a decision concerning its purchase of the Purchased Interest.  Buyer acknowledges that the transfer hereunder of the Purchased Interest will be effected without registration under the Securities Act of 1933, as amended, (the "Securities Act") or any Blue Sky laws of any state which are applicable, in reliance upon the exemptions from registration afforded by the Securities Act and the appropriate provisions of such Blue Sky laws, respectively.  Buyer acknowledges that it has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of an investment in the Purchased Interest and is able to bear the economic risk and lack of liquidity inherent in holding the Purchased Interest.

## ARTICLE 5.
## RELEASE

Effective as of the Closing (and conditioned upon actual payment and receipt of the Purchase Price), the Seller and Fifth Third Bank, each on its own behalf and on behalf of its respective successors and assigns, irrevocably and unconditionally releases, waives and discharges the Buyer and its successors and assigns from any and all actions, causes of actions, suits, debts, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands of every type and nature whatsoever, known and unknown, in law or equity (each a "Claim" and collectively, the "Claims") relating to, arising out of or in connection with (i) Cattlemen's Feedlot, Ltd. Motion for Relief from Stay, in case no. 10-93799, in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, styled *In re: East West Trucking Co., LLC* concerning the proceeds from the sale of cattle fed by Cattlemen's Feedlot under the name East West Trucking Co., LLC, which proceeds are being held in escrow and total $626,563.05 (the "East West Proceeds"), (ii) the East West Proceeds, and (iii) any prior distributions or dividends made by the Partnership or any characterization related to such distributions or dividends.

Further, each of the Seller and Fifth Third Bank agrees effective as of the Approval not to object to the Motion to Compromise and Settle with Cattlemen's Feedlot, Ltd. filed by the Bankruptcy Trustee of East West Trucking Co., LLC, and agrees not to object to a motion (the "Approval Motion") submitted by the ELC bankruptcy trustee to approve this Agreement and sell the Purchased Interest free and clear of all claims and liens.  For purposes of the above, Approval means the entry by the bankruptcy court of an order granting the Approval Motion.

## ARTICLE 6.
## SPECIAL ALLOCATION

The Parties hereby agree to take any and all necessary actions and secure any necessary approvals, waivers and consents required by the governing documents of the Partnership in order to effectuate a certain "Fifth Amendment" to the Amended Agreement of Limited Partnership of Cattlemen's Feedlot, Ltd. (the "Partnership Agreement") substantially in the form attached hereto to be effective as of January 1, 2011 pursuant to which Article IV of the Partnership Agreement shall be amended, as appropriate. The amendment shall provide that for the 2011 fiscal year a special allocation of up to $8,865,542.00 in Partnership taxable income and gain, giving the same meaning to those terms as they have in the Internal Revenue Code (the "Allocable Income") be made to the Seller. The Allocable Income is or will be the first income or gain realized by the Partnership from the Partnership's sale or other disposition of certain livestock (the "Cattle") that have been fed and/or cared for using feed or other inputs or services whose cost the Partnership deducted as current expenses for purposes of determining the Partnership's income for one or more prior tax years. The mismatch of expenses with the corresponding income or gain thereby "rolled forward" to 2011 the realization of income or gain corresponding to the expenses. By doing so the Partnership created a certain "tax roll forward liability." The maximum amount of Allocable Income, $8,865,542, represents the product of 1) the percentage ownership of the Partnership represented by the Purchased Interest multiplied by 2) the dollar amount of the agreed "tax roll forward liability." After the special allocation of the Allocable Income to Seller, allocations of income, gain, profits and distributions of cash shall be made in accordance with the existing provisions of the Partnership Agreement, which otherwise remain unchanged except to the extent they are contrary to the special allocation of the Allocable Income to Seller.

## ARTICLE 7.
## CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer hereunder shall be subject to the satisfaction (or waiver by Buyer) on or before the Closing Date of all of the following conditions:

**7.1    Representations, Warranties and Covenants of Seller.** All representations and warranties of Seller contained in this Agreement shall be true and accurate in all respects as of the Closing Date as if made on the Closing Date, and Seller shall have complied with its agreements and covenants contained herein to be performed on or before the Closing Date.

**7.2    No Action or Proceeding.** No legal or regulatory action or proceeding shall be pending or threatened by any Person to enjoin, or restrict or prohibit the transactions as contemplated herein.

**7.3    Releases.** Buyer shall have received all releases and associated documentation in accordance with Article 5 of this Agreement.

**7.4    Special Allocation.** The amendment to the Partnership Agreement and the special allocation of income for 2011 shall have been completed in accordance with Article 6 of this Agreement on or before December 31, 2011.

**7.5    Receipt of Closing Documentation.**  The Buyer shall have received all documentation required to be delivered by the Seller at or before the Closing in accordance with this Agreement.

**7.6    Bankruptcy Court Approval**.  This transaction shall have been approved and authorized by the United States Bankruptcy Court for the Southern District of Indiana, in the ELC chapter 11 case (Case No. 10-93904 BHL-11).

If any one or more of the conditions contained in this Article 7 is not fulfilled at or before the Closing, the Buyer may, at its election, either (i) terminate this Agreement by written notice to the Seller, and in such event, both Buyer and the Seller shall be released from all obligations hereunder; or (ii) waive any of the conditions in this Article 7 and effect a Closing hereunder.

## ARTICLE 8.
## CONDITIONS TO SELLER'S OBLIGATIONS

The obligations of the Seller to sell the Purchased Interest shall be subject to the satisfaction (or waiver by the Seller) on or before the Closing Date of all of the following conditions:

**8.1    Representations, Warranties and Covenants of Buyer.**  All representations and warranties of the Buyer contained in this Agreement shall be true and accurate in all respects as of the Closing Date as if made on the Closing Date, and the Buyer shall have complied with its agreements and covenants contained herein to be performed on or before the Closing Date.

**8.2    No Action or Proceeding.**  No legal or regulatory action or proceeding shall be pending or threatened by any Person to enjoin, or restrict or prohibit the transaction as contemplated herein.

**8.3    Receipt of Closing Documentation.**  The Seller shall have received all documentation required to be delivered by Buyer at or before the Closing in accordance with this Agreement.

**8.4    Bankruptcy Court Approval**.  This transaction shall have been approved and authorized by the United States Bankruptcy Court for the Southern District of Indiana, in the ELC chapter 11 case (Case No. 10-93904 BHL-11).

If any one or more of the conditions contained in this Article 8 is not fulfilled at or before the Closing, the Seller may at its election, either (i) terminate this Agreement by written notice to Buyer, and in such event, both Buyer and the Seller shall be released from all obligations hereunder; or (ii) waive any of the conditions in this Article 8 and effect a Closing hereunder.

# ARTICLE 9.
# MISCELLANEOUS

**9.1** **Entire Agreement.**  This Agreement and the documents executed in connection with the transactions contemplated hereby constitute the entire agreement of the Parties with respect to the subject matter hereof.

**9.2** **Successors and Assigns.**  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the Parties hereto; provided, however, that this Agreement may not be assigned by any Party without the prior written consent of the other Parties, unless, with respect to Buyer only, such assignment is to an affiliate of such Party (it being understood, however, that no such assignment will release or otherwise limit such Party's obligations hereunder).

**9.3** **Headings.**  The headings of the articles, sections and subsections of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction hereof.

**9.4** **Amendment, Modification and Waiver.**  No amendment, modification or alteration of the terms or provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by the Parties hereto, except that any of the terms or provisions of this Agreement may be waived in writing at any time by the Party which is entitled to the benefits of such waived terms or provisions. No waiver of any of the provisions of this Agreement shall be deemed to or shall constitute a waiver of any other provision hereof (whether or not similar).  No delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

**9.5** **Rights of Third Parties.**  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give any Person, other than the Parties hereto, any rights or remedies under or by reason of any provision of this Agreement.

**9.6** **Expenses.**  Except as otherwise provided herein, Seller, on the one hand, and Buyer, on the other hand, shall each pay all costs and expenses incurred by it or on its behalf in connection with this Agreement and the transactions contemplated hereby, including, without limiting the generality of the foregoing, fees and expenses of its own financial consultants, accountants and counsel.

**9.7** **Notices.**  Any notice, request, instruction or other document to be given pursuant hereto by any Party hereto to any other Party shall be in writing and shall be given by delivery in person, by overnight courier or by registered or certified mail, postage prepaid,

| If to Seller to: | With a copy to: |
|---|---|
| Okie Farms, L.L.C. | James M. Carr |
| c/o James Knauer | Baker & Daniels, LLP |
| Kroger, Gardis & Regas, LLP | 300 N. Meridian Street, Suite 2700 |
| 111 Monument Circle, Suite 900 | Indianapolis, Indiana 46204 |

       Indianapolis, Indiana 46204-5125       T: (317) 237-1190
       T: (317) 692-9000       F: (317) 237-8490
       F: (317) 777-7440

       If to Buyer to:       With a copy to:

       Cattlemen's Feedlot, Ltd.       John Massouh
       c/o Roy Heitschmidt       Sprouse Shrader Smith, PC
       P.O. Box 676       701 S. Taylor, Suite 500
       Olton, Texas 79064       Amarillo, Texas 79101
       T: (806) 285-2616       T: (806) 468-3337
       F: (806) 285-7773       F: (806) 373-3454

or at such other address for a Party as shall be specified by like notice.  Any notice, request, instruction or other document to be given hereunder shall be deemed given upon delivery, if delivered in person, upon the next Business Day if delivered by overnight courier and on the third Business Day after mailing if mailed by registered or certified mail.

    **9.8**    **Governing Law.**  This Agreement shall be construed in accordance with and governed by the laws of the State of Texas without regard for the choice of law provisions thereof.

    **9.9**    **Severability.**  The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of any other provision hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (i) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision, and (ii) the remainder of this Agreement and the application of such provision to other Persons, entities or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

    **9.10**    **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall for all purposes be deemed an original and all of which shall constitute one and the same instrument.

    **9.11**    **Further Assurances.**  At any time or from time to time after the Closing, Seller shall, at the request of Buyer and at the expense of Buyer, execute and deliver any further instruments or documents and take all such further action as Buyer may reasonably request in order to evidence or effect the consummation of the transactions contemplated hereby.

[<em>Signature Page Follows</em>]

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf as of the date first above written.

SELLER:    Okie Farms,
           an Oklahoma limited liability company

           By:_____
           Name: James A. Knauer
           Title: Chapter 11 Trustee for Eastern Livestock Co., LLC,
                  Manager


BUYER:     Cattlemen's Feedlot, Ltd.

           By:_____
           Name:_____
           Title:_____


AGREED AND
ACKNOWLEDGED (AS TO ARTICLE 5 ONLY) BY:

Fifth Third Bank,
an Ohio banking association

By:_____
Name:_____
Title:_____