UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**TRUSTEE'S SUPPLEMENTAL OBJECTION TO PEOPLES BANK & TRUST COMPANY OF PICKETT COUNTY'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT OF PROPERTY**

James A. Knauer, the chapter 11 trustee (the "Trustee") appointed in this chapter 11 case for Eastern Livestock Co., LLC ("Debtor"), by counsel, supplements his previously filed objections [Docket Nos. 334 and 454] to the *Motion for Relief From Automatic Stay and Abandonment of Property* [Docket Nos. 300 and 317] (the "Motion") filed by Peoples Bank & Trust Company of Pickett County ("Bank") on February 28, 2011, as may have been modified on March 8, 2011. The Court should deny the Motion because the Trustee holds equity in the real estate that Bank contends is its collateral, and the Trustee has offered to adequately protect any interest that Bank may hold in the real estate. As further support for and to supplement his previously filed objections, the Trustee states as follows:

1. The Motion requests entry of an order under 11 U.S.C. § 362 terminating the automatic stay and abandoning from Debtor's bankruptcy estate certain real estate owned by Debtor in Harrison County, Indiana (as more particularly described in the Motion, the "Real Estate"). Bank alleges that Debtor granted Bank a mortgage against the Real Estate (the "Mortgage") on September 30, 2008 as security for a $1,500,000 loan that Bank made to Thomas and Patsy Gibson (the "Gibsons"). (*See* Motion ¶4.)

2. Bank has not and cannot show that it is entitled to relief from stay under 11 U.S.C. § 362, because Bank must first show that it possesses a valid non-avoidable lien in and against the Real Estate.[1] Bank cannot make such a showing.

3. Bank alleges that it holds a lien in and against the Real Estate pursuant to the Mortgage. As asserted in the *Complaint to Avoid Mortgage Pursuant to 11 U.S.C. § 544(b)(1) and Ind. Code §§ 32-18-2-14, 15 and 17* filed with the Court on November 30, 2011 (the "Complaint"), the Mortgage is avoidable pursuant to 11 U.S.C. § 544 and Ind. Code §§ 32-18-2-14, 15 and 17 because Debtor did not receive reasonably equivalent value for the grant of the Mortgage and Debtor was insolvent at the time Debtor purportedly executed the Mortgage. Because the Mortgage is avoidable, Bank does not have a valid lien in the Real Estate and Bank therefore cannot show "cause" required for stay relief under Section 362(d)(1) of the Bankruptcy Code or that the Trustee lacks equity in the Real Estate as required for stay relief under Section 362(d)(2) of the Bankruptcy Code.

4. Despite the foregoing, the Trustee continues to be willing to work with Bank to market and sell the Real Estate, either in conjunction with the sale of other contiguous properties owned by the Gibsons that are subject to mortgages in favor of Bank, or through a separate sale of the Real Estate. The Trustee proposed to hold any proceeds realized from the sale of the Real Estate with any lien which Bank may hold against the Real Estate to attach to the proceeds as such lien currently exists (subject to avoidance if and to the extent the Mortgage is avoidable). The Trustee would hold the sale proceeds pending a determination of the avoidability of the Mortgage and Bank's rights in and to the sale proceeds. The Trustee believes that this proposed framework for the sale of the Real Estate would adequately protect any

---

[1] Bank has not yet pled which grounds under 11 U.S.C. § 362(d) it relies on for relief from stay.

2

interest that Bank asserts. The proposal would help maximize the value of the Real Estate, insure that a buyer receives good title, and save the costs and expenses that would otherwise arise from stay relief litigation and the prosecution by Bank and defense by the Trustee of a mortgage foreclosure action. Bank has thus far been unwilling to accept the Trustee's proposal.

5. In the context of deciding a stay relief motion, the Court can and should consider any matter which bears on the relief requested, including whether the asserted security interest is subject to avoidance. *See In re Poughkeepsie Hotel Assocs.*, 132 B.R. 287 (Bankr. S.D.N.Y. 1991) (holding that affirmative defense of equitable subordination to motion for relief from stay properly could be considered by the court and denying motion to dismiss affirmative defense); *In re Davenport*, 34 B.R. 463, 466 (Bankr. M.D. Fla. 1983) (holding that the stay would not be lifted because debtor should have the opportunity to prove its fraudulent transfer and preference claims and stating, "when the affirmative defense contests the validity of the lien at issue, such affirmative defense should be considered in determining whether or not the automatic stay should be lifted or extended"); *In re Brantley*, 6 B.R. 178, 182-183 (Bankr. N.D. Fla. 1980).[2]

6. The Motion should be denied because Bank cannot show that the Trustee lacks equity in the Real Estate (as required for stay relief under Section 362(d)(2) of the Bankruptcy Code). First, Bank has not identified evidence that shows the Trustee lacks equity in the Real Estate. In fact, Bank has not produced any appraisal or other proof of the value of Bank's purported collateral. Bank bears this burden of proof under 11 U.S.C. § 362(g)(1).

---

[2] *In re Brantley* found that a bankruptcy court's failure to consider affirmative defenses and counterclaims, such as the avoidability of a mortgage, would undo the protections of the automatic stay: "In sum, then, when affirmative defenses or counterclaims are asserted and raised which strike at the heart of the amount of the creditor's claim or the validity of his lien, such defenses or counterclaims directly affect the issue of equity and thus harm and adequate protection, as well as the reasonable probability of any plan of reorganization. When such are asserted or raised, the court should give consideration to them in determining whether or not the stay should remain in effect." 6 B.R. at 188.

Regardless of Bank's failure to satisfy its burden of proof, there may be equity in the Real Estate because the Trustee has a reasonable likelihood of success on the Complaint. Further, the Trustee has offered to and can adequately protect any interest that Bank may have in the Real Estate.

7. The Trustee can show a reasonable likelihood of success on the Complaint. Under 11 U.S.C. § 544(b)(1), the Trustee may avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

8. Ind. Code §§ 32-18-2-14 and 15 allow creditors to avoid transfers of a debtor's interest in property if such transfer was made either with actual intent to defraud or without the debtor receiving "reasonably equivalent value" at a time when the debtor was insolvent, was about to become insolvent and/or reasonably should have known it was about to become insolvent.

9. The Trustee will introduce evidence to show that Debtor was insolvent as of September 30, 2008. The Trustee will introduce evidence to show that Debtor's audited financial statements for 2008 (the "2008 Financial Statement") and other records indicate that Debtor was not paying debts as they came due and that Debtor was balance sheet insolvent as of September 30, 2008, the date Debtor purportedly granted the Mortgage to Bank. A true and accurate copy of the 2008 Financial Statement is attached hereto as Exhibit A.

10. A grand jury convened by the United States came to the conclusion that Debtor was not able to pay its debts as they came due as of September 30, 2008, as evidenced by the Indictment issued by the United States on September 21, 2011 against Thomas P. Gibson and

4

Michael Steven McDonald (the "Federal Indictment").  A true and accurate copy of the Federal Indictment is attached hereto as <u>Exhibit B</u>.  In fact, in the Federal Indictment, the grand jury asserts that Debtor was engaged in fraudulently inflating its accounts receivable beginning as of August 9, 2004.  (Federal Indictment, ¶ 7.)  Of particular note, paragraph 12 of the Federal Indictment references fraudulent checks that were mailed on or around September 5, 2008 in furtherance of Debtor's fraudulent activities[3], further demonstrating that Debtor could not pay its debts as they came due when Debtor granted the Mortgage to Bank.

        11.     Debtor did not receive "reasonably equivalent value" for its grant of the Mortgage to Bank.[4]  Transfers made or obligations incurred for the benefit of third parties generally do not furnish reasonably equivalent value.  *In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 420 (D. Minn. 1990) (citing *In re Ear Nose & Throat Surgeons of Worcester, Inc.*, 49 B.R. 316 (Bankr. D. Mass. 1985) ("It may be said that, as a general rule, an insolvent debtor receives 'less than a reasonable equivalent value' where it transfers its property in exchange for a consideration which passes to a third party. In such a case, it ordinarily receives little or no value.")); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2nd Cir. 1981) (stating that proper inquiry should focus on net effect of transaction to debtor's estate and remanding for

---

[3] A grand jury convened by the Commonwealth of Kentucky heard evidence related to fraudulent activities orchestrated by Thomas Gibson, Steve McDonald, Grant Gibson and Darren Brangers during "at least 2009 and 2010".  As a result of the evidence, the grand jury concluded that those persons were "organizing a criminal syndicate" between at least January, 2009 and November 10, 2010.  The fact that the criminal syndicate was up and running at least as early as January 1, 2009 indicates that management of Debtor knew or should have known that Debtor would be unable to meet its obligations as they were anticipated to fall due following September 30, 2008.

[4] Indiana courts have not yet elaborated on what "reasonably equivalent value" is for purposes of Ind. Code § 32-18-2-15. However, the Indiana Uniform Fraudulent Transfer Act is drawn from a uniform act – the UFTA -  and it derived the phrase "reasonably equivalent value" from 11 U.S.C. § 548(a)(2). *See Bowers-Siemon Chems. Co. v. H.L. Blachford, Ltd. (In re Bowers-Siemon Chems. Co.)*, 139 B.R. 436, 445 (Bankr.N.D.Ill.1992) (UFTA parallels § 548). Thus, this Courts should look to interpretations of "reasonably equivalent value" from cases decided under Section 548 of the Bankruptcy Code, as well as cases from courts interpreting other states' versions of the UFTA for assistance in predicting what Indiana courts would do.

5

further proceedings the question of whether debtor received reasonably equivalent value for its guaranty of shareholders' debt).

12. In determining whether Debtor has received fair consideration for a transfer, the Court should consider the purpose underlying that element of a constructive fraudulent transfer claim, which is to conserve the debtor's estate for the benefit of creditors. *See, e.g., In re Bundles*, 856 F.2d 815, 824 (7th Cir. 1988) (superceded on other grounds by *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)); *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 992 (2d Cir.1981). Any significant disparity between the value received and the obligation assumed by a debtor will have significantly harmed innocent creditors. *Id.* at 994. The 7th Circuit has acknowledged that consideration to a third party which confers "economic benefit" on the transferor may establish fair consideration. *See In re Image Worldwide, Ltd.*, 139 F.3d 574 (7th Cir. 1998) (ultimately finding that transferee failed to show that debtor received reasonably equivalent value for guarantee of a loan to an affiliate). The cases finding indirect benefit, however, require that the benefit must be concrete. *In re Grabill Corp.*, 121 B.R. 983, 995 (Bankr. N.D. Ill. 1990).[5]

---

[5] *In re Grabill Corp.* provides an excellent explanation of the standard for determining whether the debtor received "reasonably equivalent value", explaining that: "'Reasonable equivalence' requires a comparison of the value of what went out with the value of what was received. *See e.g., In re Nacol,* 36 B.R. 566, 568 (Bankr.M.D.Fla.1983); *In re Euro–Swiss International Corp.,* 33 B.R. 872, 885 (Bankr.S.D.N.Y.1983) ("Reasonably equivalent value requires only a "full and adequate" consideration, not a penny-for-penny exchange"). Fair market value at the time of the transfer should control. *See In re Smith,* 24 B.R. 19, 23 (Bankr.W.D.N.C.1982); *see also* 1 Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 9.03[c] at 686 (2d ed. 1989 and 1990 Supp.). In *In re Minnesota Utility Contracting, Inc.,* 101 B.R. 72 (Bankr.D.Minn.1989), *aff'd in part, rev'd in part, In re Minnesota Utility Contracting, Inc.,* 110 B.R. 414 (D.Minn.1990), the court characterized the test regarding whether a debtor received reasonably equivalent value as a "balance sheet test" and stated: "[i]f a transfer adversely affects one side of the debtor's balance sheet, then the debtor's balance sheet must reflect a consideration already received of reasonably equivalent value or the transaction must result in a change to the other side of the balance sheet of reasonably equivalent value." 101 B.R. at 85. Whether a transfer is made for reasonably equivalent value is a question of fact to be determined in light of the facts presented in each particular case. *In re Ozark Restaurant Equipment Co.,* 850 F.2d 342, 344 (8th Cir.1988)." 121 B.R. at 994.

13. Debtor did not receive reasonably equivalent value for its purported grant of the Mortgage to the Bank. The Mortgage secures a loan that Bank made to the Gibsons, not to Debtor.

14. Bank has asserted to the Trustee that Debtor received an indirect benefit from the Gibsons' loan, asserting that the Gibsons may have subsequently used loan proceeds to pay a portion of a pre-existing obligation that the Gibsons owed to Debtor. Bank bases that assertion on the apparent fact the loan proceeds were deposited into the Gibsons' account at Your Community Bank and that the Gibsons issued checks drawn against that account to repay Debtor. This assertion fails because the argument ignores 1) the net result of the alleged transactions, 2) the course of dealing between the Gibsons and Debtor, and 3) the fact that funds from a variety of sources went into and out of the Gibsons' bank account around the time of the payments from the Gibsons to Debtor, meaning that the payment of any obligation by the Gibsons to Debtor cannot be sufficiently traced to the loan proceeds. Assuming that any portion of the loan proceeds were used by the Gibsons to make payments to Debtor, any payment did nothing to increase Debtor's net worth. At best, such payment converted a receivable owing from the Gibsons to Debtor into cash. Prior to the grant of the Mortgage, Debtor's assets included the value of the receivable from the Gibsons plus the value of the Real Estate since it had then become fully encumbered by the Mortgage. After the grant of the Mortgage, Debtor could claim the receivable (or cash paid to satisfy the receivable) as an asset but could not claim the value of the Real Estate. The result was a reduction in the value of assets available to satisfy creditors of Debtor. *See Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d at 992. As a result, Debtor did not receive reasonably equivalent value for its grant of the Mortgage.

7

15. Fifth Third Bank checking account statements show that Debtor issued over $16,000,000 in checks made payable to Thomas Gibson from October 1, 2008 to December 31, 2008 without receiving any payment from Thomas Gibson during that time period. Even if Bank can show that some portion of the loan proceeds were transferred to Debtor, such proceeds (and at least $14.5 million more) went right back to Thomas Gibson. Checks passing back and forth between the Gibsons' account and Debtor appear to have served the purpose of artificially inflating Debtor's assets in order to obtain advances from Fifth Third Bank that Debtor was otherwise not entitled to receive based on its true borrowing capacity (based on accurate borrowing base certificates). Without such activity, Fifth Third Bank would not have advanced funds and Debtor would not have been able to meet its obligations as they came due. Any allegation that Debtor benefitted from the loan to the Gibsons because the Gibsons paid some or all of the loan proceeds to Debtor ignores the fact that those proceeds went right back to the Gibsons.

16. Accordingly, there is equity in the Real Estate because the Mortgage is avoidable under to 11 U.S.C. § 544(b)(1) and Ind. Code § 32-18-2-15. Bank is not entitled to relief from stay under Section 362(d)(2) of the Bankruptcy Code.

17. Bank is not entitled to stay relief under Section 362(d)(1) of the Bankruptcy Code either. Section 362(d)(1) of the Bankruptcy Code provides for relief from stay for "cause", including lack of adequate protection. However, for the reasons stated above, Bank does not have a valid security interest in the Real Estate that must be protected. In addition, Bank is likely oversecured (when one considers the total value of the Gibson-owned properties), the Real Estate is not depreciating in value, and Bank is not entitled to any further adequate

8

protection. Finally, the Trustee's offer to cooperatively market and sell the Real Estate adequately protects Bank's alleged interests in the Real Estate.

18. For each of these reasons, the Court should deny the Motion.

WHEREFORE, the Trustee respectfully requests that the Court enter an order denying the Motion and granting the Trustee all other just and appropriate relief.

Respectfully submitted,

By: /s/ Dustin R. DeNeal

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Kevin M. Toner (#11343-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@bakerd.com
kevin.toner@bakerd.com
terry.hall@bakerd.com
dustin.deneal@bakerd.com

Wendy W. Ponader (#14633-49)
Baker & Daniels LLP
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@bakerd.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>crb@gdm.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>jwa@gdm.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ibs@gdm.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesolutions.com | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Robert H. Foree<br>robertforee@bellsouth.net | Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com |
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Susan K. Roberts<br>skr@stuartlaw.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@binghammchale.com | David A. Laird<br>david.laird@moyewhite.com |
| Jerald I. Ancel<br>jancel@taftlaw.com | Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com |
| David Alan Domina<br>dad@dominalaw.com | Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>jnstine@vorys.com |

BDDB01 6909949v7

| | | |
|---|---|---|
| Jill Zengler Julian<br>Jill.Julian@usdoj.gov | Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com |
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Robert A. Bell<br>rabell@vorys.com |
| James E. Rossow<br>jim@rubin-levin.net | James B. Lind<br>jblind@vorys.com | Melissa S. Giberson<br>msgiberson@vorys.com |
| Steven A. Brehm<br>sab@gdm.com | | |

I further certify that on November 30, 2011, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher  Darla J. Gabbitas
asr@blancolaw.com  darla.gabbitas@moyewhite.com


/s/ Dustin R. DeNeal