UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In re: EASTERN LIVESTOCK CO., LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Case No. 10-93904-BHL-11 |
| ) | |
| In re: OKIE FARMS, L.L.C., ) | Chapter 11 |
| ) | |
| Debtor. ) | Case No. 11-93144-BHL-11 |
| _____ ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE ) | |
| OF EASTERN LIVESTOCK CO., LLC, and ) | |
| OKIE FARMS, L.L.C., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 11-_____ |
| ) | |
| THOMAS P. GIBSON, PATSY M. GIBSON ) | |
| and THOMAS P. GIBSON IRREVOCABLE ) | |
| GENERATION SKIPPING TRUST, ) | |
| ) | |
| Defendants. ) | |

**VERIFIED COMPLAINT SEEKING DECLARATORY JUDGMENT AND
PRELIMINARY INJUNCTION**

James A. Knauer, as chapter 11 trustee (the "Trustee") for Eastern Livestock Co., LLC ("ELC") and Okie Farms, L.L.C. ("Okie" and together with ELC, "Debtors"), for their complaint ("Complaint") against Thomas P. Gibson ("Mr. Gibson"), Patsy M. Gibson ("Mrs. Gibson") and the Thomas P. Gibson Irrevocable Generation Skipping Trust (the "Gibson Trust" and together with Mr. Gibson and Mrs. Gibson, the "Gibsons") state as follows:

1. This is an adversary proceeding to obtain (1) a declaratory judgment that Debtors' federal and state tax classifications are property of the bankruptcy estates pursuant to 11 U.S.C. § 541, (2) enforcement of the automatic stay of 11 U.S.C. § 362, and (3) an injunction prohibiting the Gibsons from taking any action to attempt to change Debtors' tax classifications.

2.	Any attempt by the Gibsons to change Debtors' tax classifications would constitute an impermissible attempt to exercise control over property of the bankruptcy estates in violation of 11 U.S.C. § 362.

## Jurisdiction, Venue and Parties

3.	On December 6, 2010, certain petitioning creditors filed an involuntary petition for relief against ELC under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") commencing the above-captioned chapter 11 case (the "ELC Chapter 11 Case").  This Court entered the Order For Relief in an Involuntary Case and Order to Complete Filing [Dock. No. 110] on December 28, 2010.

4.	On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [Dock. No. 102], approving the United States Trustee's Application for an Order Approving the Appointment of James M. Knauer as Chapter 11 Trustee [Dock. No. 98] pursuant to 11 U.S.C. § 1104.

5.	On December 8, 2011, Okie filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court commencing a chapter 11 case (the "Okie Chapter 11 Case" and together with the ELC Chapter 11 Case, the "Chapter 11 Cases").

6.	Debtors filed a motion on December 8, 2011 requesting that the Chapter 11 Cases be jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b) and Rule B-1015-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana.

7.	Mr. Gibson is an individual residing at 7536 Tandy Road, Lanesville, IN 47136.

8. Mrs. Gibson is an individual residing at 7536 Tandy Road, Lanesville, IN 47136.

9. Upon information and belief, the Gibson Trust is a trust organized under the laws of the Commonwealth of Kentucky.

10. Upon information and belief, the co-trustees of the Gibson Trust are John F. Gibson and Nancy G. McDonald.

11. The Gibson Trust may be served c/o Nancy McDonald, Co-Trustee of Thomas P. Gibson Irrevocable Generation Skipping Trust, 8000 Shenandoah Lane, Lanesville, IN 47136 or c/o John F. Gibson, Co-Trustee of Thomas P. Gibson Irrevocable Generation Skipping Trust, 3975 Turley Road, Corydon, IN 47112.

12. At all times relevant to the matters asserted herein, ELC has been and is a limited liability company organized under the laws of the Commonwealth of Kentucky.

13. The Gibsons own all of the issued and outstanding membership interests in ELC.

14. At all relevant times, Okie has been and is a limited liability company organized under the laws of the State of Oklahoma.

15. ELC is the sole member of Okie, and the Trustee is the sole manager of Okie.

16. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

17. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A) and (O).

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

19. The statutory bases for the relief sought are 11 U.S.C. §§ 105, 362 and 541 and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure.

20. The Court has power to enter a final judgment on all claims asserted herein.

### General Allegations

21. On November 30, 2011, the Trustee filed the Motion to Approve Sale Agreement and Compromise of Claims [Dock. No. 865] (the "Sale Motion") in the ELC Chapter 11 Case.[1] The Sale Motion seeks authority to consummate the sale of Okie's direct and indirect ownership interests in Cattlemen's Feedlot, Ltd. and Cattlemen's Feedlot Management Company, LLC (the "Purchased Interests") for the purchase price of $3 million dollars. The Sale Motion and the Trustee's negotiation of the proposed sale rely on the fact that, as property of the Debtors' estates, the tax classifications of Okie and ELC will result in income arising from the sale and Okie's pre-sale ownership of the Purchased Interests to pass through Okie and ELC to the Gibsons for tax purposes. Therefore, it is critical to the bankruptcy estates that the tax classifications will remain as they are currently established.

22. The tax status and attributes of Okie and ELC are property of their bankruptcy estates pursuant to Section 541 of the Bankruptcy Code and therefore protected from change by the automatic stay provided by Section 363 of the Bankruptcy Code.

23. The tax classification of a limited liability company is governed by 26 C.F.R. § 301.7701-1 through 3. Section 301.7701-3(a) provides:

> An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under section 301.7701-2(b)(2)) or a partnership, and an eligible entity

---

[1] Okie will shortly file a joinder to the Sale Motion in the ELC Chapter 11 Case or a similar motion under 11 U.S.C. § 363 seeking approval of the sale of the Purchased Interests free and clear of liens and interests in the Okie Chapter 11 Case.

4

> with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner. Paragraph (b) of this section provides a default classification for an eligible entity that does not make an election. Thus, elections are necessary only when an eligible entity chooses to be classified initially as other than the default classification or when an eligible entity chooses to change its classification. An entity whose classification is determined under the default classification retains that classification (regardless of any changes in the members' liability that occurs at any time during the time that the entity's classification is relevant as defined in paragraph (d) of this section) until the entity makes an election to change that classification under paragraph (c)(1) of this section.

Section 301.7701-2(c)(2)(i) provides that "[a] business entity that has a single owner and is not a corporation under paragraph (b) of this section is disregarded as an entity separate from its owner," and 26 C.F.R. § 301.7701-3(b) provides that the default tax classification of a limited liability company is "a partnership if it has two or more members".

24. Accordingly, the default classifications for limited liability companies, such as the Debtors, provide that federal income taxes are passed through to and are payable by the members of the limited liability companies.

25. A limited liability company may "elect to be classified other than as provided under paragraph (b) of this section, or to change its classification, by filing Form 8832, Entity Classification Election, with the service center designated on Form 8832." 26 C.F.R. § 301.7701-3(c)(1)(i).

26. "An election made under paragraph (c)(1)(i) of this section must be signed by (A) Each member of the electing entity who is an owner at the time the election is filed; or (B) Any officer, manager, or member of the electing entity who is authorized (under local law or the entity's organizational documents) to make the election and who represents to having such authorization under penalties of perjury." 26 C.F.R. § 301.7701-3(c)(2).

5

27. As of their Petition Dates, and at all times relevant to the allegations contained herein, Debtors have been classified as pass-through tax entities as described in 26 C.F.R. §§ 301.7701-3. Debtors have never filed a Form 8832 with the Internal Revenue Service. At all times relevant to the allegations contained in this Complaint, Okie has been classified as a disregarded entity and ELC has been classified as a partnership for federal income tax purposes.

28. Debtors' federal and state income tax classifications are property of their bankruptcy estates pursuant to Section 541 of the Bankruptcy Code. *See, e.g.*, *In re Bakersfield Westar, Inc.*, 226 B.R. 227, 234 (9th Cir. B.A.P. 1998) (holding that right to elect or revoke election to be treated as an S corporation for federal income tax purposes is property of the bankruptcy estate under 11 U.S.C. § 541); *In re Prudential Lines, Inc.*, 928 F.2d 565, 569 (2nd Cir. 1991) (upholding order granting permanent injunction and finding that debtor's NOL carry-forward was property of the estate); *In re Walterman Implement, Inc.*, 2006 WL 1562401 (Bankr. N.D. Iowa 2006) (holding that right to revoke debtor's subchapter S election for federal income tax purposes was property of the estate and postpetition revocation by shareholder was void *ab initio* as a violation of 11 U.S.C. § 362); *In re Trans-Lines West, Inc.*, 203 B.R. 653 (Bankr. E.D. Tenn. 1996) (debtor's subchapter S status was property of the estate and prepetition revocation was therefore a fraudulent transfer avoidable under the Bankruptcy Code).

29. As property of the Debtors' estates, the automatic stay provided by Section 362 of the Bankruptcy Code prohibits the Gibsons from purporting to change the Debtors' federal income tax classifications.

30. Absent a determination that the tax classifications are property of Debtors' estates and the granting of a preliminary injunction on or before the end of 2011 prohibiting the Gibsons from taking any action to change Debtors' tax classifications, the Trustee will be forced

6

to withdraw the Sale Motion and Debtors' bankruptcy estates will not be able to realize $3 million in proceeds.

### Count I (Tax Classifications are Property of Debtors' Estates)

31. The Debtors hereby restate and reallege all allegations contained in paragraphs 1 through 30 of the Complaint as if fully set forth and pled herein.

32. An actual and genuine controversy exists as to whether Debtors' tax classifications are property of the estates under Section 541 of the Bankruptcy Code.

33. Debtors' tax classifications are property of their estates protected from change by the automatic stay of 11 U.S.C. § 362.

34. Pursuant to 28 U.S.C. § 2201, the Trustee requests and the Court may now declare the rights and other legal relations of the parties. The Court may grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

### Count II (Preliminary Injunction)

35. The Debtors hereby restate and reallege all allegations contained in paragraphs 1 through 34 of the Complaint as if fully set forth and pled herein.

36. These circumstances warrant the Court's issuance of a preliminary injunction prohibiting the Gibsons from taking any action purporting to change Debtors' tax classifications.

37. An application for preliminary injunction requires the Court to weigh the following factors: (1) whether the movant has a reasonable likelihood of success on the merits; (2) whether the movant's traditional remedies at law are inadequate, thus causing a threat of irreparable harm pending the resolution of the substantive action if the request for injunctive relief is denied; and if those threshold elements are established, (3) whether the threatened injury

to the movant outweighs the threatened harm the grant of an injunction may inflict on the respondent; and (4) whether the public interest would be disserved by the grant of an injunction. *See, e.g., Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008)). "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge,* 612 F.3d at 546. The crux of the test is "a comparison of the likelihood, and gravity of two types of error: erroneously granting a preliminary injunction, and erroneously denying it." *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 590 (7th Cir. 1984) (affirming injunction to prevent trucking association from expelling truck leasing company in violation of the Sherman Act).

38. When applying these factors and deciding whether to grant an injunction, the Court must "exercise its discretion to arrive at a decision based on the subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (reversing denial of injunction to local Girl Scout council seeking to avoid merger into regional Girl Scout organization). This process has been called the "sliding scale" approach, meaning that the court will compare either party's potential injury with the probability that the movant will prevail on the merits. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (reversing denial of injunctive relief requested to prevent Lanham Act violations). The more likely it is that the movant will prevail on the merits, the less harm the movant must suffer to justify an injunction. *Id.* This is not a precise mathematical inquiry but rather involves subjectivity and intuition of the trial court to weigh the competing interests. *Abbott Labs.,* 971 F.2d at 12; *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001).

8

Finally, the court must consider the effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the "public interest"). *Id.*

39. The Trustee has and will demonstrate that Debtors' tax classifications and tax attributes are property of their estates under Section 541 of the Bankruptcy Code.

40. The Trustee has no other adequate remedy at law because the transaction contemplated by the Sale Motion must be approved on or before December 31, 2011 in order to maximize the sale price, and the Trustee cannot close the transaction contemplated by the Sale Motion absent the relief requested herein.

41. Absent the relief requested herein, Debtors' estates will be irreparably harmed because an otherwise valuable asset – the Purchased Interests – may significantly decrease in value.

42. In contrast the grant of a preliminary injunction as requested herein will not harm the Gibsons because such an injunction would merely clarify existing law and maintain the status quo.

43. Granting a preliminary injunction prohibiting any actions by the Gibsons purporting to change Debtors' tax classifications will serve the public interests because such an injunction would maximize assets available for distribution to creditors in the Chapter 11 Cases.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Set this proceeding for an emergency hearing at the earliest available opportunity on the Court's calendar (a separate motion and brief requesting the same relief are being filed contemporaneously herewith);

B. Consolidate the hearing on the preliminary injunction with a trial on the merits of the Complaint;

  C. After the hearing, enter an order declaring that Debtors' tax classifications are property of the estates and granting a preliminary injunction prohibiting the Gibsons from taking any action purporting to change Debtors' tax classifications; and

  D. Grant the Trustee such other relief as is just and proper in the premises.

    Respectfully submitted,

    BAKER & DANIELS LLP

    By: /s/   James M. Carr

| | |
|---|---|
| James M. Carr (#3128-49) | *Counsel for Okie Farms, L.L.C. and James A.* |
| Kevin M. Toner (#11343-49) | *Knauer, Chapter 11 Trustee of Eastern Livestock* |
| Terry E. Hall (#22041-49) | *Co., LLC* |
| Harmony Mappes (# 27237-49) | |
| Dustin R. DeNeal (#27535-49) | |
| 300 N. Meridian Street, Suite 2700 | |
| Indianapolis, IN 46204-1782 | |
| Telephone: (317) 237-0300 | |
| Facsimile: (317) 237-1000 | |
| jim.carr@bakerd.com | |
| kevin.toner@bakerd.com | |
| terry.hall@bakerd.com | |
| harmony.mappes@bakerd.com | |
| dustin.deneal@bakerd.com | |

## **VERIFICATION**

I, James A. Knauer, as chapter 11 trustee for Eastern Livestock Co., LLC and sole manager of Okie Farms, L.L.C. do hereby affirm, under the penalties of perjury, that the facts alleged in the foregoing Verified Complaint Seeking Declaratory Judgment and Preliminary Injunction are true to best of my knowledge, information and belief.

_____
James A. Knauer
Trustee of Eastern Livestock Co., LLC and sole manager of Okie, Farms, L.L.C.