**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| IN RE: ) | CASE NO.: 10—93904-BHL-11 |
| ) | |
| EASTERN LIVESTOCK CO., LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

**SUPPLEMENTAL OBJECTION TO PURCHASE MONEY CLAIMS REPORT AND MOTION FOR RULE 7001 THRESHOLD DETERMINATION OF COMMON QUESTIONS OF LAW IMPACTING RIGHTS OF MULTIPLE CLAIMANTS IN BANKRUPTCY AND FOR BRIEFING SCHEDULE**

COMES NOW Hilliard–McKettrick Investments, Inc. d/b/a Arcadia Stockyard; Cattlemen's Livestock Market, Inc.; Columbia Livestock Market, Inc.; Hardee Livestock Market, Inc.; North Florida Livestock Market, Inc.; Ocala Livestock Market, Inc.; Okeechobee Livestock Market, Inc.; Sumter County Farmers Market, Inc.; and Madison County Livestock Market, Inc. d/b/a Townsend Livestock Market (collectively "Florida Markets"); Ron Sizemore Trucking, Inc. ("Sizemore"); Oak Lake Cattle Co. ("Oak Lake"); Eagle Bay, Inc. ("Eagle"); and Daniel M. Byrd ("D. Byrd") (and collectively "Florida Creditors"), by and through undersigned counsel and with the support of Superior Livestock Auction, Inc., Bluegrass Stockyards, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards East, LLC, Bluegrass Stockyards of Campbellsville, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Piedmont Livestock Company, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, LLC, East Tennessee Livestock Center, Inc., First Bank & Trust Company (collectively the proposed "Ad Hoc Committee"), and moves this Court for an Order for a Rule 7001 Threshold Determination of common questions of law concerning the rights and interests of the various parties to transactions in which Debtor Eastern Livestock Co.,

1

LLC acted variously in the role of "Market agency," "Dealer," and "Clearing agency" as defined under Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181-229 ("Stockyards Act") and governing regulations, and in support states as follows:

1. This matter arises in partial response to the Court's request for a method and process by which the Court can address common questions of law and fact in an effort to determine certain threshold issues impacting in one degree or another all of the parties to this proceeding. This is also in partial response to the lack of any "global issues process" that continues to plague this case and avoid the problem of global legal issues affecting multiple parties in interest in this and related proceedings fly under the radar. Finally, this is in further objection to the Trustee's Purchase Money Claims Report (Doc. 501).

2. While the ultimate question is certainly what assets belong to what parties, this question is directly influenced by the differing nature of the activities engaged in by Debtor and by the other parties to the transactions with Debtor. This differing nature of Debtor activity in the multitude of transactions giving rise to claims has created a nightmare of conflicting law and issues for the Court in what is ordinarily a much more straight forward process.

3. It is clear that the Trustee was simply wrong in globally concluding last May in the Purchase Money Claims Report "that no person other than Fifth Third can assert a valid perfected lien in or to the Cattle Sales Proceeds," Doc. 501, at 1. Recent disclosures have even brought into question the extent of "legal and factual research conducted" in arriving at this conclusion. *Id*. In avoidance of such unfounded blanket assertions, this Motion proposes a partial framework for fairly presenting to the Court

2

common issues of law and fact that seeks economies within the proceedings and also protects against concerns of all parties being bound by law of the case from a separate proceeding in which not all parties participated.

4.  The issue of multiple Debtor activity cuts across the main case and each of the multiple adversary proceedings and, at the same time, affects many more potential adversaries yet to be filed.. Although certainly multiple parties and claimants will seek to brief each of the proposed issues, this should be far more efficient in time and resources for the Court than a multitude of separate adversary proceedings.

5.  It should come as no surprise to the Court that the cattle business is different, and the task before the Court is complicated. The cattle business is archaic and sophisticated at the same time and populated by the largest and smallest of operations. It is a free market but is heavily regulated. And the paperwork does not always track the transactions or can be at least misleading. The Court's task is complicated by Debtor Eastern's own multiple and varied activities in the cattle business—each of which were themselves different and could differ from one transaction to the next. However, the Florida Creditors and the other members of the proposed "Ad Hoc Committee" that are actually in the cattle business supporting this Motion firmly believe the questions before the Court can be greatly simplified into three (3) main common sets of law and fact defined expressly by Debtor's activities.

6.  At all times Debtor Eastern's activities in the cattle business were governed by the Stockyards Act and regulations. In most cases, the activities of parties with whom Debtor transacted business were similarly governed by the Stockyards Act and regulations. Accordingly, the threshold determination suggested for the Court is a

3

process for motion and briefing on the rights of the various parties in the transactions with Debtor in three (3) capacities authorized under the Stockyards Act and regulations in which Debtor Eastern engaged:[1]

> (i) "Market Agency," where Debtor bought and sold livestock on a commission basis or furnished stockyard services for others (7 U.S.C. §201(c));
>
> (ii) "Dealer," where Debtor bought and sold livestock on its own account or as employee or agent of the purchaser (7 U.S.C. §201(d)); and
>
> (iii) "Clearing Agency" where Debtor on a commission basis "cleared" the transactions for others that acted as the "Market Agency" or "Dealer" and was responsible for safekeeping and proper disbursement of funds received in payment of the livestock purchased for accounts of these other Market Agencies or Dealers (9 C.F.R. §201.31(c)).

7. These three (3) roles of Market Agency, Dealer, and Clearing Agency encompass most all of Debtor Eastern's various activities in the cattle business. Although there are subsets to this authorized activity which has been described in some detail to the Court in the August 22, 2011 letter from Bill Donald, President of the National Cattlemen's Beef Association[2]—the three (3) roles should uniformly cover the virtually

---

[1] The Stockyards Act and regulations certainly recognize other activities, including that of meat "Packer" which is not relevant to Eastern's activities.

[2] The National Cattlemen's Beef Association in its letter of August 22, 2011 (Doc. 680) to the Court described Eastern's livestock market activities as "Market Agency," "Dealer," "Stockyard Services," and "Clearing" payments. Of note Mr. Donald, together with his colleagues throughout the cattle industry take issue with the Trustee's conclusions in the Trustee's Purchase Money Claims Report:

> The Trustee has asserted in the Report that "the Trustee has concluded that no person other than Fifth Third can assert a valid perfected lien in or to the Cattle Sales proceeds ...(text omitted)". This conclusion fails to recognize that the multiple roles played by Eastern and its limited interest in cattle in which it was purchasing for its

Cont'd . . .

4

all of Eastern's activities in the cattle business and can present for the Court's determination three (3) sets of common questions of law and fact based on the legal interests of the parties to transactions for each of the three (3) different roles played by Debtor Eastern.

8.     As noted, the Trustee has in effect taken the posture that none of the claims of the livestock industry participants are superior to what the Trustee terms to be Fifth Third's "valid perfected lien" in livestock and proceeds from livestock sales. The cattle industry claimants take great issue with this position. The Trustee has challenged the cattle industry claimants to prove otherwise while using funds claimed by the cattle industry claimants to defend against the industry claims. In the meantime, the Trustee has been exceedingly slow to produce documents from Eastern's records that would support the industry positions and the Trustee's own position, as well. Hopefully the "discovery repository" and third party discovery efforts will rectify this.

9.     This Motion seeks to establish a procedure to shed light on general issues of law and fact surrounding Debtor Eastern's operations that are common to all parties to this proceeding. Frankly the industry seeks to avoid the huge time and expense for what will likely be an impending series of individual contested matters and separate lawsuits. The cattle industry does not want to have to spend new funds to chase their old funds

---

customers. ***In essence, the Trustee has either ignored Eastern's status as an agent of third parties or has concluded, without citation to either facts or law, that it held sufficient rights in all cattle which passed through its accounting records to encumber them to Fifth Third Bank.*** While this assertion may ease the administration of this case, it ignores the nature of cattle industry transactions and could have a devastating affect on the industry.

5

while their opponents are spending industry funds to fight them. From the beginning of Eastern's petition filing the cattle industry claimants have sought to inform the Receiver and the Trustee on common issues of law and fact concerning Eastern's operation to absolutely no avail. The Trustee has either ignored the different roles played by Debtor or believed the different capacities has no bearing on Fifth Third's claim to livestock proceeds. As previously stated, the Florida Creditors and the other industry claimants take strong exception to this posture. At this point, the industry seeks the Court's assistance to set a briefing and hearing schedule for the following threshold common issues of law and fact:

**I.    Whether or not Debtor acted in different capacities in the livestock transactions with claimants and others that are the subject of these proceedings, and, if so, are there uniform rules of law that govern the rights and interests of the parties and participants?**

**II.   What are the rights and interests of Debtor and the others to the livestock and proceeds from livestock sales in transactions in which Debtor served as:**

    A.    "Market Agency" pursuant to 7 U.S.C. §201(c), where Debtor bought and sold livestock on a commission basis or furnished stockyard services for others?

        1.    When on commission Debtor bought or sold livestock for others?

        2.    When Debtor furnished stockyard services for others?

    B.    "Dealer" pursuant 7 U.S.C. §201(d), where Debtor bought and sold livestock on its own account or as employee or agent of the purchaser?

        1.    When Debtor bought or sold livestock on its own account?

        2.    When Debtor bought or sold livestock as employee or agent of the purchaser?

    C.    "Clearing Agency" pursuant to 9 C.F.R. §201.31(c), where Debtor on a commission basis "cleared" the transactions for others that acted as the "Market Agency" or "Dealer"?

        1.    When Debtor on a commission basis as "Clearing Agency" received payment from purchaser but did not pay sellers for

6

        livestock?

2. When Debtor on a commission basis as "Clearing Agency" did not receive payment from purchaser but did pay sellers for livestock?

3. When Debtor on a commission basis as "Clearing Agency" did not receive payment from purchaser and did not pay sellers for livestock but claims an account receivable due from purchaser?

**III. When, under what circumstances, and in what capacity did Debtor acquire title to livestock and livestock proceeds in the transactions in question?**

**IV. What are the rights, interests, obligations, and liability of Fifth Third Bank or others to deposit proceeds from livestock sales when it dishonored checks for amounts due sellers?**

10. As a threshold matter, determination of the above issues will resolve in large part what assets are and are not part of the bankruptcy estate and facilitate resolution of claims against the segregated funds. It will also shed some light on the rights and obligations of Fifth Third Bank to livestock proceeds, as well as the impact of the Stockyards Act on the rights and obligations of all parties in interest.

11. For example, when Debtor acted as a "Market Agency" or agent, buying and selling cattle for the accounts of others as described in II.A. above, the question arises whether Debtor, as agent, ever acquired title to the livestock or proceeds from the sale of livestock. If Debtor never acquired title, then the livestock or proceeds from the sale of livestock were never part of the bankruptcy estate and Fifth Third's lien would have no effect on the interest of the parties to such transactions. Similarly, when Debtor acted as a "Clearing Agency" the question also arises whether or not Debtor again acting as agent in the transactions acquired title to the livestock or livestock purchase proceeds that were the subject of the transactions.

12. The resolution of these questions will certainly involve choice of law and application of law to common transaction fact patterns that absent some peculiarly

distinguishing issue should resolve large sets of claims. The parties in interest to this proceeding have asserted at one time or another that provisions of: (i) the Uniform Commercial Code ("UCC"); (ii) the Bankruptcy Code and Bankruptcy Rules; (iii) Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181-229 ("Stockyards Act") and governing regulations; and (iv) various other federal and state laws impact directly the rights and interests of the Debtor Eastern, Fifth Third Bank and other variously situated creditors. The one common link in all of this are the roles and activities authorized under the Stockyards Act that were played by Debtor Eastern in the livestock transactions the proceeds from which are the subject of the disputes before this Court.

WHEREFORE the Florida Creditors, with the support of the proposed Ad Hoc Committee, request the Court order all parties of interest in each of the above common questions of law and fact, and any other issues on which the Trustee and all parties in interest may agree. If the parties do not tender such agreed briefing schedule within fifteen (15) days of the date hereof, the Court will enter its own order setting briefing deadlines and issues to be briefed.

/s/ Walter Scott Newburn,
W. Scott Newbern, PL
2982 East Gevemy
Tallahassee, FL 32309
Telephone: 850-591-1707
Facsimile: 850-894-0871
wsnewbern@msn.com

COUNSEL FOR FLORIDA LIVESTOCK
MARKETS AND CREDITORS

8

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

/s/ W. Scott Newbern
W. SCOTT NEWBERN