UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:

EASTERN LIVESTOCK CO., LLC            CASE NO. 10-93904
                                       CHAPTER 11
    DEBTOR

**OBJECTION TO PROFESSIONAL FEE APPLICATIONS OF
(1) JAMES A. KNAUER, CHAPTER 11 TRUSTEE; (2) HOOVER HULL LLP;
AND (3) BAKER & DANIELS LLP**

Come Bluegrass Stockyards, LLC, Bluegrass Stockyards of Campbellsville, LLC, Bluegrass Stockyards East, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards of Richmond, LLC, Alton Darnell, East Tennessee Livestock Center, Inc., Moseley Cattle Auction, LLC, Piedmont Livestock Company, Inc., and Southeast Livestock Exchange, LLC (collectively, the "Cattle Producers"), by counsel, and hereby object to the following interim professional fee applications (collectively, the "Interim Fee Applications"): (1) Second Interim Application of James A. Knauer for Compensation and Reimbursement of Expenses as Chapter 11 Trustee [ECF No. 816]; (2) First Interim Application of Hoover Hull LLP for Compensation and Reimbursement of Expenses as Special Counsel for James A. Knauer, Chapter 11 Trustee [ECF No. 819]; and (3) Second Interim Application of Baker & Daniels LLP for Compensation and Reimbursement of Expenses as Counsel for James A. Knauer, Chapter 11 Trustee [ECF No. 820]. In support of this Objection, the Cattle Producers respectfully state as follows:

**RELEVANT BACKGROUND**

1. Eastern Livestock Co., LLC (the "Debtor") was one of the largest cattle brokerage businesses in the United States until its closure in November, 2010, with its headquarters formerly located in New Albany, Indiana.

2. Fifth Third Bank ("Fifth Third") was the Debtor's major lender and the depository bank for the Debtor's bank accounts from 2004 to present.

3. On or about November 2, 2010, Fifth Third took control of the Debtor's four depository accounts, without notice to Debtor. *See* Deposition of Timothy S. Spurlock, 84:17, June 28, 2011, Case No. A1010267 (Ohio Ct. Claims). At that same time, Fifth Third began returning "all checks drawn on [the Debtor's] accounts [at Fifth Third]," which totaled millions of dollars. Complaint, Case No. A1010267 (Ohio Ct. Claims), ¶ 22. Fifth Third simultaneously collected deposited funds and applied $24.5 million to account overdrafts.

4. On November 9, 2010, Fifth Third commenced an emergency and *ex parte* state court receivership action against the Debtor in the Ohio Court of Claims, Case No. A1010267.

5. On December 6, 2010 (the "Petition Date"), three petitioning creditors filed an involuntary petition for relief against the Debtor [ECF No. 1], thereby commencing this Chapter 11 bankruptcy case (the "Bankruptcy Case").

6. On December 23, 2010, the Affidavit of Disinterest (the "Knauer Affidavit") given by James A. Knauer (the "Trustee") was filed in this Bankruptcy Case [ECF No. 98-2]. Among other things, the Knauer Affidavit stated that, although the Trustee had never personally represented Fifth Third, his law firm, Kroger, Gardis and Regas, LLP ("KGR"), then presently represented Fifth Third in several open cases. It also stated that the Trustee had "personally undertaken three matters which were adverse to Fifth Third Bank during the past twelve

2

months," but was no longer involved in any cases involving Fifth Third. While disclosing these "connections" with Fifth Third, the Trustee stated that he believed that he and KGR were "disinterested persons" as defined in 11 U.S.C. § 101(14). *See* Trustee's Verified Statement and Notice of Acceptance [ECF No. 98-1].

7. The Knauer Affidavit does not describe what if any efforts KGR took to obtain the consent of either Fifth Third or Wells Fargo to accept the Trustee appointment, or any limitations on the engagement of Mr. Knauer serving as Trustee that might be required to obtain either lender's consent, if any.

8. The Knauer Affidavit does not describe any "connections" with the Fifth Third loan participant Wells Fargo Bank. Wells Fargo is listed as a "representative client" of KGR on the KGR web page, as is Fifth Third. To the best of these parties knowledge, the only real mention of Wells Fargo in this case is contained in the Fifth Third proof of claim which was filed on February 4, 2011. The rights and role of Wells Fargo are unknown to these parties, although they appear to be involved in attending ongoing weekly informational calls with the Trustee and his professionals, as reflected in billing records.

9. On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [ECF No. 102] in this Bankruptcy Case.

10. On December 30, 2010, the Trustee filed the Application to Employ Baker & Daniels LLP as Counsel to Chapter 11 Trustee [ECF No. 113] (the "B&D Employment Application"), together with an Affidavit given by Terry E. Hall, Esq. of Baker & Daniels LLP [ECF No. 114] (the "Original B&D Affidavit") in support of said Application.

11. The Original B&D Affidavit stated among other things that Baker & Daniels LLP ("B&D") currently represented Fifth Third in matters unrelated to the Bankruptcy Case or the

3

Debtor, and that Fifth Third had consented to B&D's general representation of the Trustee, but not with respect to any action that the Trustee might commence directly against Fifth Third. While disclosing this "connection" with Fifth Third, B&D stated that it "(i) does not hold or represent an interest adverse to the estate, and (ii) is a 'disinterested person' as that term is defined in § 101(14) of the Bankruptcy Code." Original B&D Affidavit, ¶ 9.

12. On January 10, 2011, creditor The First Bank and Trust Company ("First Bank") filed its Objection to the Employment of Baker & Daniels [ECF No. 181] (the "First Bank Objection"). The content of that Objection speaks for itself, and raised legitimate and clear concerns regarding the appearance of lack of disinterestedness and actual and potential conflicts.

13. Following the First Bank Objection, on January 18, 2011, the Trustee filed his Application to Employ Hoover Hull LLP as Special Counsel to Chapter 11 Trustee [ECF No. 219] (the "HH Employment Application"). The HH Employment Application did not disclose any connection with Fifth Third and stated that Hoover Hull LLP ("Hoover Hull") would "serve as Trustee's special counsel with respect to the investigation and prosecution of any and all claims or objections that may be asserted by the Trustee against Fifth Third . . . *or with respect to any claim that may be asserted herein by Fifth Third* . . . ." HH Employment Application, Intro. ¶ (emphasis added).

14. On January 24, 2011, B&D filed an Amended Affidavit of Terry E. Hall in Support of Application to Employ Baker & Daniels LLP [ECF No. 235] (the "Amended B&D Affidavit"), which provided additional "disclosures" relating to B&D's representation of Fifth Third in other matters and again stated that B&D "(i) does not hold or represent an interest adverse to the estate, and (ii) is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code." Amended B&D Affidavit, ¶ 14. To paraphrase the Amended B&D

4

Affidavit, when B&D was contacted by the Trustee to possibly serve as his counsel, B&D reached out to Fifth Third and was required to obtain Fifth Third's consent to the engagement. Fifth Third gave some unspecified limited consent but would not give broad consent to permit B&D to handle any matters "directly against Fifth Third." The Amended B&D Affidavit again stated that Hoover Hull was being employed by the Trustee "with respect to the investigation and prosecution of any claims or objections that may be asserted by the Trustee against Fifth Third *or to any claim that may be asserted in the case by Fifth Third*." (emphasis added, ¶ 10).

15. The Court entered an Order granting the B&D Employment Application [ECF No. 248] on February 1, 2011, and an Order granting the HH Employment Application [ECF No. 267] on February 10, 2011.

## RELIEF REQUESTED

By this Objection, the Cattle Producers respectfully request that the Court deny without prejudice the Interim Fee Applications and defer ruling on said Applications until further disclosures are made to this Court, either *in camera* or in the Court record, as the Court may determine is warranted.

## BASIS FOR RELIEF REQUESTED

**I.    Introduction**

The role of Fifth Third in relation to Eastern Livestock has been one of the major if not *the* most significant issue in this case since day one. The Court is familiar with the fundamentals of the story, but just like the vast majority of the parties in the case, the exact details and the actual facts continue to be unavailable. The events that set this Bankruptcy Case in motion began when the Fifth Third/ELC Line of Credit expired on October 18, 2010, after numerous short term extensions, and continued for two entire weeks when Fifth Third froze all of the

5

Debtor's bank accounts on November 2, 2010 and did not contemporaneously notify the Debtor. What happened during those crucial days and the days leading up to this time period is key. As a result, the Debtor continued to broker millions of dollars of cattle transactions from October 18 through November 3, 2010, with Fifth Third's knowledge, issuing checks that were ultimately returned by Fifth Third as "Refer to Maker."  Fifth Third then filed an emergency and *ex parte* state-court receivership action against the Debtor and its principal, Thomas Gibson, in the Ohio Court of Claims on November 9, 2010 (Case No. A1010267), alleging that the Debtor had committed a massive fraud, while offsetting over $24 million dollars against its long-term overdraft. Numerous small cattle producers who dealt with ELC during the crucial time period across the nation have remained unpaid for over a year now, and have asserted claims against Fifth Third and ownership/trust issues in a multitude of different cases.

Having now passed the one-year mark in this case, neither the Trustee nor his professionals have made any factual investigation into the actions of Fifth Third, despite incurring nearly $4 million in professional fees in one year. This Court must review what has really been accomplished "for the benefit of the Estate."  The inexplicable nature of the one-year trajectory of this particular Chapter 11 case and the number of related proceedings has now caused widespread concern that the Trustee and/or his professionals are not "disinterested persons" with respect to Fifth Third and Wells Fargo, and now, unfortunately, these concerns pervade every aspect of this Bankruptcy Case. For these reasons and those set forth below, the Cattle Producers hereby object to the Interim Fee Applications pending additional disclosures which the Court should direct, in order for the Court to be able to determine the propriety of the fee requests under these circumstances.

6

**II.     Concerns that the Trustee and B&D are Not "Disinterested Persons" and that Hoover Hull is not Fulfilling its Role as Special Counsel to the Trustee.**

  **A.     Legal Standard**

  11 USC § 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Among other things, "[t]he term 'disinterested person' means a person that . . . (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). The last clause of § 101(14)(C) has been called the "catch all" clause, to let courts consider a wide array of fact-specific circumstances. *See, e.g., In re Crivello,* 134 F.3d 831 (7th Cir. 1998) ('catch all clause' is sufficiently broad to include any professional with an interest or relationship that would even faintly color the independence and impartial attitude required by the Code). As noted by the Seventh Circuit in the *Crivello* case, the statutory requirements of disinterestedness and no adverse interest "serve the important policy of ensuring that all professionals appointed pursuant to § 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." (citations omitted).

  Likewise, the Trustee himself must also be a 'disinterested' party as he owes fiduciary duties to all parties in interest involved in the case. *See, e.g., Commodity Futures Trading Commission v. Weintraub*, 105 S. Ct. 1986 (1985) (fiduciary duty of trustee runs to shareholders as well as creditors); *In re Big Rivers Electric Corp.*, 355 F.3d 415 (6th Cir. 2004) (trustee has obligations of disinterestedness and prohibition against any materially adverse interest to any party to the bankruptcy for any reason, and Congress plainly compelled courts to construe these

7

obligations against a backdrop of the equitable duties that apply to positions of trust. Any agreement with a single creditor that links compensation to the creditor's recovery qualifies as an "interest" in violation of [examiner's] duty to remain disinterested, because it creates risks that examiner will favor one creditor at the expense of other creditors.); *In re Bowman,* 181 B.R. 836 (Bankr. D. Md. 1995) (trustee's fiduciary duties extend to all parties interested in the bankruptcy estate. Fiduciary duties include duty of impartiality. Fiduciaries must make informed decisions and use reasonable diligence in gathering information and considering material information. Fiduciaries have duties of loyalty to avoid self dealing, conflicts of interest and appearances of impropriety).

  **B.** **Questions as to the Disinterestedness of the Trustee and B&D and the Role of Hoover Hull Must Be Answered and Warrant Additional Mandatory Disclosures.**

  Both the Trustee and B&D have stated that they are "disinterested persons" and that they do not represent any interests adverse to the Estate, despite their connections with Fifth Third. To assuage creditors' concerns over these connections, and to specifically address the "limitations" on B&D's ability to act as counsel for the Trustee on certain matters, the Trustee employed Hoover Hull to "serve as Trustee's special counsel with respect to the investigation and prosecution of any and all claims or objections that may be asserted by the Trustee against Fifth Third . . . or *with respect to any claim that may be asserted herein by Fifth Third . . . .*" HH Employment Application, Intro. ¶ (emphasis added); Amended B&D Affidavit, ¶ 10.

  However, practically every pleading in the case underscores that B&D is handling all aspects of the case relative to Fifth Third's asserted claim, and with the recent filing of the Hoover Hull Interim Application, it is also only now apparent that HH has basically done nothing in its role as special counsel except to run a routine perfection analysis.

8

To lead this Court to every single example would make this Objection too burdensome, but the smell of something amiss is readily apparent to all who have even the faintest experience in Chapter 11 cases. The entire progress of the case, the litigation strategies, the feeling of hostility in informal discussions, the unwillingness to "get all the parties in a room" to try to build any consensus on anything, the matters which are placed on a front burner versus a back burner, and the other nuances and details of handling the case now clearly point in only one direction: the Trustee has directed the case in a fashion that has ignored and tried to bury the very real and legitimate factual and legal concerns involving Fifth Third. With experienced lawyers of this caliber, it defies logical explanation, other than to lead one to have serious reservations about some inherent conflict or limitation that is not yet adequately disclosed to this Court.

At minimum, this Court should mandate additional sworn disclosures including but not limited to the following, whether *in camera*, to the Court and the U.S. Trustee's Office, or in the record for all parties to review:

> (i) Disclosure of any written and verbal communications between Fifth Third and the Trustee, and Wells Fargo and the Trustee, regarding any limited waivers, limited consents, restrictions on the engagement, and any other details which might in any way affect the Trustee and his firm's ability to deal with and handle this case and all related proceedings relative to issues involving Fifth Third and Wells Fargo;
>
> (ii) Disclosure of any written and verbal communications between Fifth Third and B&D, and Wells Fargo and B&D, regarding any limited waivers, limited consents, restrictions on the engagement, and any other details which might in any way affect B&D's ability to deal with and handle this case and all related proceedings relative to issues involving Fifth Third and Wells Fargo;
>
> (iii) Disclosure of any written and verbal communications between Fifth Third and Hoover Hull, and Wells

9

Fargo and Hoover Hull, regarding any limited waivers, limited consents, restrictions on the engagement, and any other details which might in any way affect Hoover Hull's ability to deal with and handle this case and all related proceedings relative to issues involving Fifth Third and Wells Fargo;

(iv) The ongoing monthly budgets which have been shared between the Trustee and Fifth Third/Wells Fargo but never made available to the Court or any other parties in interest; and

(v) Any written or verbal limitations on cash collateral use from Fifth Third/Wells Fargo to the Trustee and any of his professionals and any other documents which might describe or disclose the control by Fifth Third over the funding of all work handled in this Chapter 11 case as well as related proceedings.

**C.** **Specific examples of actions which may evidence a lack of disinterestedness on the part of the Trustee and his professionals.**

In addition to the "hard landing" of this particular case into bankruptcy and the concerns over Fifth Third's actions, this Court is likewise familiar with how the case has unfolded from its inception to the present. Again without belaboring multiple examples, some of the concerns over the appearance of a lack of impartiality include the following:

**a.** **Lack of Disclosed Cash Collateral Budgets.** In a typical Chapter 11 case where a creditor asserts a lien on cash collateral, the trustee/debtor in possession is required to file in the record regular cash collateral budgets to show both the Court as well as all parties in interest the ongoing costs of administration. Despite repeated requests for copies of the budgets from the Trustee, no creditor other than Fifth Third has ever seen a cash collateral budget because the Trustee expressed his concern that doing so "would be prejudicial to the estate." *See* Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing [ECF No. 271], ¶ 14. The rest of the "Estate" would like to see the budgets, as has been expressed innumerable times. Considering the nearly $4 million in professional fees

10

incurred through October 31, 2011 (*See* Monthly Operating Report for October, 2011 [ECF No. 859]), the Trustee should at least be required to file budgets with the Court under seal for its review, if not to file budgets for all creditors to see. There is no basis for a trustee and a secured lender to assert that budgets that are being exchanged between the two of them are somehow confidential or not available to other parties in interest. Do the budgets contain something that the Trustee and Fifth Third do not want others to see? Have budgets been proposed and then rejected by Fifth Third? Has Fifth Third totally controlled the purse strings and has the Trustee gone along with Fifth Third's funding restrictions?

Additionally, the Trustee and B&D should be required to disclose exactly who has been negotiating these cash collateral budgets with Fifth Third on a month-to-month basis. From a review of time records in the Interim Fee Applications, it appears that B&D has handled all such discussions, despite its disclosed conflict and its limitation on scope of employment of being unable to act adversely to Fifth Third, and despite the multiple disclosures that Hoover Hull was the professional that would handle all issues involving Fifth Third and its claims. Why the Trustee, B&D, and Hoover Hull have acted in this manner must be explained.

      **b.**    **Removal of Pending Lawsuits.** Why did the Trustee remove every single lawsuit relating to the Debtor and its business operations that was filed prior to the Bankruptcy Case, *except* for the state-court action Fifth Third filed in the Ohio Court of Claims, Case No. A1010267? Although this case began as a receivership action against only the Debtor and Mr. Gibson, Fifth Third subsequently amended its complaint prior to the Petition Date to assert claims against numerous cattle sellers, including certain of these Cattle Producers, and continued to pursue those claims until just recently, when the state court action was finally stayed by order of the Ohio state court, upon Fifth Third's own Motion, on November 16, 2011.

11

Why has the Fifth Third action in Ohio continued unabated and never even been mentioned to this Court by the Trustee? Why did the Trustee state to others that he was looking at removing the action but then fail to do so? Why has the Trustee permitted Fifth Third to continue to take actions in that lawsuit when it involves the very essence of identical issues in this Bankruptcy Case? Why did Fifth Third finally ask by its own motion to "stay" the Ohio action, only after it failed to meaningfully respond to First Bank discovery requests made in that action and First Bank was forced to file a motion to compel?

Why has the Trustee not mentioned to this Court the two pending identical lawsuits filed postpetition in Metcalfe Circuit Court (subject to Fifth Third's removal to W.D.K.Y. federal court and pending remand pleadings at present) by certain unpaid cattle producers against Fifth Third? See <u>Exhibit 1</u> attached hereto. Why has that action not been removed to this Court by the Trustee, or even mentioned at all to this Court? One might think that this Court would want to know about these cases. Why does the Trustee think that two (and only two) pending actions continuing to proceed outside the auspices of this Court that involve Fifth Third are so unimportant that they deserve no mention and certainly not removal?

    c.  **Trustee's Purchase Money Claims Report.** On May 23, 2011, the Trustee, acting by and through counsel B&D, filed his Purchase Money Claims Report, Motion to Transfer Funds and Notice of Release of Proceeds from Account [ECF No. 501] (the "PMC Report"), wherein *B&D* stated the following:

> (i) "After review of the timely filed 'Purchase Money Claims' and legal and factual research conducted regarding such claims, the Trustee has concluded that no person other than Fifth Third can assert a valid perfected lien in or to the Cattle Sales Proceeds . . . ." PMC Report, Intro. ¶.
>
> (ii) "Since the entry of the Cattle Payments Order, the Trustee has further researched the facts relating to Debtor's

12

> business operations, applicable state law and the PSA and determined that the only Third Party that holds a valid lien in or claim against the Cattle Sales Proceeds is Fifth Third. Other than Fifth Third, no Third Party can assert a valid perfected lien in or to the Cattle Sales Proceeds." *Id.*, ¶ 5.
>
> (iii)   "The Cattle Sales Proceeds to be transferred to the Trustee's general operating account represent funds as to which no third party other than Fifth Third can assert a valid lien or claim." *Id.*, ¶ 10.

The recently filed HH Fee Application now reveals that Hoover Hull did no work between April 29, 2011 and August 31, 2011, and that prior to that time, it spoke to a single witness regarding Fifth Third and conducted a perfection analysis. How could the Trustee, *through B&D*, make these definitive statements, and reach an 'informed' and 'impartial' conclusion, at a time when Hoover Hull had not begun much less completed any investigation of Fifth Third's actions, the facts that might affect the validity or priority of Fifth Third's alleged lien, the facts and legal issues regarding the scope and attachment of Fifth Third's asserted lien, and the facts regarding what the Debtor's property rights truly encompass?

> **d.**   **NCBA Annual Meeting.**   On August 3, 2011, the Trustee spoke at the

annual meeting of the National Cattlemen's Beef Association. As part of his presentation, the Trustee included a slide stating that the "sole job" of independent counsel Hoover Hull was to investigate "claims against 5/3" and that "negotiations with 5/3" were ongoing. How could the Trustee state that Hoover Hull's sole job was to investigate claims against Fifth Third, when it is now clear that on August 3rd he had already directed Hoover Hull to stand down and not conduct a normal factual investigation in a case such as this? Who was involved in these "negotiations" with Fifth Third this past summer, when the HH Fee Application now reveals that Hoover Hull took no action at all between April 28 and August 31, 2011? Why did HH wait until now to file its first interim fee application - did it not want parties to see its lack of time records?

13

e. **Constructive and Statutory Trusts.** On October 25, 2011, the Trustee, acting by and through B&D, elected to file his Motion for Partial Summary Judgment concerning Statutory Trusts, Constructive Trusts, and Clearing Agency Issues [ECF No. 248] in the adversary proceeding styled as *Friona Industries, L.P., et al. v. Eastern Livestock Co., LLC, et al.*, Adv. Proc. No. 11-59093. The Trustee, acting by and through B&D, has also filed similar motions in the main case and other adversary proceedings.

The clear importance of these particular issues is readily apparent, and is of the utmost importance to each and every unpaid cattle producer as well as to Fifth Third: if property is held in trust, it is not subject to Fifth Third's lien. Yet, the Trustee brings these motions prior to any discovery responses from Fifth Third, despite numerous pending and outstanding formal and informal requests. These motions are brought by the Trustee in a vacuum. These motions are made in the face of allegations of intentional tortious conversion, theft and fraud brought against Fifth Third by unpaid sellers who sold cattle during the time period of October 18, 2010 through November 3, 2010. These motions are *brought by B&D*, who has affirmed that they can not, *and will not*, handle matters adverse to Fifth Third and related to Fifth Third's claim. How can the Trustee and B&D take such a stance that plainly solely benefits Fifth Third, when Hoover Hull has not only not begun must less completed its investigation of Fifth Third's actions, and is not even involved in any of these proceedings?

f. **Superior Answer.** On November 21, 2011, the Trustee, acting by and through B&D, filed the Trustee's Reply to Fifth Third Bank's Counterclaim [ECF No. 97] in the adversary proceeding styled as *James A. Knauer, Chapter 11 Trustee for Eastern Livestock Co., LLC v. Superior Livestock Auction, Inc., et al.*, Adv Proc. No. 11-59088. Paragraph 13 of Fifth Third's Counterclaim [ECF No. 78] asserts that "Fifth Third possesses a first priority blanket

14

security interest and lien against all the personal property of [the Debtor], including, without limitation, all of the Eastern Livestock Contracts, Cattle, Lots, Cattle Proceeds and Part Payments that are claimed in this adversary proceeding." In Paragraph 13 of his Reply, the Trustee states, *by and through B&D*, that he "admits the allegations contained in Paragraph 13 of the Counterclaim." How can the Trustee, through B&D, make such a bold statement with respect to Fifth Third's claims in this Bankruptcy Case when Hoover Hull has not completed its investigation of Fifth Third's actions and is ostensibly not involved in these proceedings? How can the Trustee make this admission when there is a *Fifth Third deposition* (which the Trustee has never put of record) that clearly shows that Fifth Third (i) expressly knew and understood that Eastern Livestock was a "broker" and (ii) expressly knew and understood that Eastern Livestock's only interests were its own "small margins" out of transactions?

        g.    **Plan Formulation.**  The Trustee, acting by and through B&D, has for many months informally advised that there have been some ongoing "plan formulation discussions" with Fifth Third. Despite repeated requests over quite some time, no other party in interest has seen any drafts of this plan or been advised of the possible plan contents until very recently. No other parties have been included in any plan formulation discussions despite offers of assistance and willingness to participate. How can the Trustee, *acting by and through B&D*, negotiate a plan with Fifth Third which purports to "settle" claims with Fifth Third? How can the Trustee and B&D sufficiently represent all other parties in interests' rights relative to Fifth Third when they cannot take positions against Fifth Third and Hoover Hull is not involved in these discussions?

        h.    **Lack of Creditors Committee.**  The U.S. Trustee's Office solicited interest in a creditor's committee early in this case, but for whatever reason, no committee was

15

ever formed. Understandably, since a large majority of the unpaid creditors are unpaid cattle producers from transactions occurring after October 18, 2010 who assert trust claims, and who assert ownership of their respective cattle, there are some unique issues where a number of the interested parties claim that they are not your traditional "unsecured" creditors. Nonetheless, the lack of a committee has irreparably harmed the "three-legged stool" process of this Chapter 11. The normal checks and balances have not existed, and this case is the perfect example of why the "delicate balancing" is needed. For that reason alone, this particular Trustee had even higher duties of transparency, fairness, level playing field, impartiality, and all the other fiduciary duties which he owes to each and every party in interest in this case. B&D cannot act in any fashion adverse to Fifth Third, yet they have handled the vast majority of the bankruptcy as well as the interpleader adversary proceedings, all of which have specifically and pervasively involved challenges related to the validity, priority, scope and enforceability of the Fifth Third claims in these proceedings. Some explanation for these actions must be ordered by this Court because concerns expressed from the parties directly to the Trustee have been disregarded.

### III.     Conclusion

Whether the Trustee himself is a "disinterested person" under the Bankruptcy Code is unclear, as the course of actions he has taken tend to indicate at least some appearance of lack of disinterestedness, of a lack of impartiality, and of potential or actual conflicts of interest in relation to taking any position which might be considered to be adverse to Fifth Third and Wells Fargo, or to even conduct any factual investigation of same.

B&D was engaged by order of the Court with a significant and material limitation, which limitation has been completely ignored by the Trustee and by B&D itself. B&D cannot be compensated for services rendered that exceed its scope of employment.

16

Both the Trustee and B&D should be ordered to make supplemental disclosures of exactly what actions they are able to take and not take with respect to Fifth Third, Wells Fargo, and any other disclosures that the Court or the U.S. Trustee think are warranted, and to explain how they can be compensated under these circumstances.

Hoover Hull should be ordered to make supplemental disclosures regarding its role in this Bankruptcy Case to date, including the nature of its investigations of Fifth Third's actions and the facts as they are known to exist, and why Hoover Hull has done nothing to investigate the facts relative to Fifth Third.

Until supplemental sworn disclosures are made to satisfy this Court, and to satisfy the requirements of 11 U.S.C. §§ 327 and 330, the Cattle Producers respectfully request that the Court deny the Interim Fee Applications without prejudice, and defer ruling on same at this time.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto, Esq.
Amelia Martin Adams, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
ldelcotto@dlgfirm.com
aadams@dlgfirm.com
COUNSEL FOR CATTLE PRODUCERS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2011 a copy of the foregoing Objection to Professional Fee Applications of (1) James A. Knauer, Chapter 11 Trustee; (2) Hoover Hull LLP; and (3) Baker & Daniels LLP was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

David L. Abt                davidabt@mwt.net
Amelia Martin Adams         aadams@dlgfirm.com

| | |
|---|---|
| John W. Ames | jwa@gdm.com; shm@gdm.com; tlm@gdm.com rtowbridge@kslaw.com |
| Jerald I. Ancel | jancel@taftlaw.com; krussell@taftlaw.com ecfclerk@taftlaw.com |
| T. Kent Barber | kbarber@dlgfirm.com;dlgecf@dlgfirm.com dlgecfs@gmail.com |
| Robert A. Bell | rabell@vorys.com |
| C. R. Bowles, Jr. | crb@gdm.com |
| Lisa Koch Bryant | courtmail@fbhlaw.com |
| Steven A. Brehm | sab@gdm.com |
| Kent A. Britt | kabritt@vorys.com |
| James M. Carr | james.carr@bakerd.com; patricia.moffit@bakerd.com |
| John R. Carr, III | jrciii@acs-law.com; sfinnerty@acs-law.com |
| Deborah Caruso | dcaruso@daleeke.com; lharves@daleeke.com mthomas@daleeke.com |
| Bret S. Clement | bclement@acs-law.com; sfinnerty@acs-law.com |
| Jason W. Cottrell | jwc@stuartlaw.com |
| Kirk Crutcher | kcrutcher@mcs-law.com;jparson@mcs-law.com cmarshall@mcs-aw.com |
| Laura Day DelCotto | ldelcotto@dlgfirm.com; dlgecf@dlgfirm.com dlgecfs@gmail.com |
| Dustin R. DeNeal | Dustin.deneal@bakerd.com Patricia.moffit@bakerd.com |
| David Alan Domina | dad@dominalaw.com; KKW@dominalaw.com efiling@dominalaw.com |
| Daniel J. Donnellon | ddonnellon@ficlaw.com; knorwich@ficlaw.com |
| Jesse Cook-Dubin | jcookdubin@vorys.com; vdarmstrong@vorys.com |
| Trevor L. Earl | tearl@rwsvlaw.com |
| Shawna M. Eikenberry | shawna.eikenberry@bakerd.com |
| Jeffrey R. Erler | jeffe@bellnunnally.com |
| Robert Hughes Foree | robertforee@bellsouth.net |
| Sandra D. Freeburger | sfreeburger@dsf-atty.com; smattingly@dsf-atty.com |
| Darla J. Gabbitas | Darla.gabbitas@moyewhite.com |
| Melissa S. Giberson | msgiberson@vorys.com |
| Jeffrey J. Graham | jgraham@taftlaw.com |
| Terry E. Hall | terry.hall@bakerd.com;sharon.korn@bakerd.com sarah.herendeem@bakerd.com |
| John David Hoover | jdhoover@hooverhull.com |
| John Huffaker | john.huffaker@sprouselaw.com lynn.acton@sprouselaw.com rhonda.rogers@sprouselaw.com |
| Jeffrey L. Hunter | Jeff.Hunter@usdoj.com |
| Jay Jaffee | jay.jaffe@bakerd.com |
| James Bryan Johnston | bjtexas59@hotmail.com; bryan@ebs-law.net |
| Todd J. Johnston | tjohnston@mcjllp.com |

| | |
|---|---|
| David Jones | david.jones@sprouselaw.com |
| Jill Z. Julian | Jill.Julian@usdoj.com |
| Edward M. King | tking@fbtlaw.com; dgioffe@fbtlaw.com |
| James A. Knauer | jak@kgrlaw.com; hns@kgrlaw.com |
| Erick P. Knoblock | eknoblock@daleeke.com |
| Theodore A. Konstantinopoulos | ndohbky@jbandr.com |
| David A. Laird | david.laird@moyewhite.com;lisa.oliver@moyewhite.com |
| | deanne.stoneking@moyewhite.com |
| Randall D. LaTour | rdlatour@vorys.com; khedwards@vorys.com |
| David L. LeBas | dlebas@namanhowell.com; koswald@namanhowell.com |
| Elliott D. Levin | robin@rubin-levin.net;edl@trustesolutions.com; |
| | atty_edl@trustesolutions.com |
| Kim Martin Lewis | kim.lewis@dinslaw.com;lisa.geeding@dinslaw.com |
| | patrick.burns@dinslaw.com |
| James B. Lind | jblind@vorys.com |
| Karen L. Lobring | lobring@msn.com |
| John Hunt Lovell | john@lovell-law.net; sabrina@lovell-law.net |
| Harmony A. Mappes | harmony.mappes@bakerd.com |
| John Frederick Massouh | john.massouh@sprouselaw.com |
| Michael W. McClain | mike@kentuckytrial.com |
| Kelly Greene McConnell | lisahughes@givenspursley.com |
| James E. McGhee, III | mcghee@derbycitylaw.com |
| William Robert Meyer, II | rmeyer@stites.com |
| Christie A. Moore | cm@gdm.com |
| Allen Morris | amorris@stites.com; dgoodman@stites.com |
| Judy Hamilton Morse | judy.morse@crowedunlevy.com; ecf@crowedunlevy.com |
| | donna.hinkle@crowedunlevy.com; |
| | karol.brown@crowedunlevy.com |
| Walter Scott Newbern | wsnewbern@msn.com |
| Matthew J. Ochs | matt.ochs@moyewhite.com; kim.maynes@moyewhite.com |
| Michael W. Oyler, Esq. | moyler@rwsvlaw.com |
| Ross A. Plourde | ross.plourde@mcafeetaft.com |
| | erin.clogston@mcafeetaft.com |
| Wendy W. Ponader | Wendy.ponader@bakerd.com |
| | Sarah.henderson@bakerd.com |
| Timothy T. Pridmore | tpridmore@mcjllp.com; lskibell@mcjllp.com |
| Susan K. Roberts | skr@stuartlaw.com; lbt@stuartlaw.com |
| Mark A. Robinson | mrobinson@vhrlaw.com; dalbers@vhrlaw.com |
| Jeremy S. Rogers | Jeremy.Rogers@dinslaw.com; Joyce.jenkins@dinslaw.com |
| John M. Rogers | johnr@rubin-levin.net; susan@rubin-levin.net |
| James E. Rossow, Jr. | jim@rubin-levin.net |
| Ashley S. Rusher, Esq. | asr@blancolaw.com |
| Thomas C. Scherer, Esq. | tscherer@binghammchale.com |
| Ivana B. Shallcross | ibs@gdm.com |
| James E. Smith | jsmith@smithakins.com |
| William E. Smith, III | wsmith@k-glaw.com |

| | |
|---|---|
| Robert K. Stanley | Robert.stanley@bakerd.com |
| Meredith R. Thomas | mthomas@daleeke.com; kmark@daleeke.com |
| John M. Thompson | john.thompson@crowedunlevy.com |
| | jody.moore@crowedunlevy.com |
| | donna.hinkle@crowedunlevy.com |
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Stephen A. Weigand | sweigand@ficlaw.com |
| Charles R. Wharton | Charles.R.Wharton@usdoj.gov |
| Sean T. White | swhite@hooverhull.com |
| Jessica E. Yates | jyates@swlaw.com; edufficy@swlaw.com |
| James T. Young | james@rubin-levin.net; ATTY_JTY@trusteesolutions.com |
| | kim@rubin-levin.com; lemerson@rubin-levin.com |

I further certify that on December 8, 2011, a copy of the foregoing Objection to Professional Fee Applications of (1) James A. Knauer, Chapter 11 Trustee; (2) Hoover Hull LLP; and (3) Baker & Daniels LLP was mailed by first-class U.S. mail, postage prepaid and properly addressed, to the following:

Bovine Medical Associates, LLC
1500 Soper Road
Carlisle, KY 40311

National Cattlemen's Beef Association
c/o Alice Devine
6031 SW 37th Street
Topeka, KS 66610

/s/ Laura Day DelCotto, Esq.
COUNSEL FOR CATTLE PRODUCERS

Z:\Clients\ELC-Gibson\Bankr 10-93904 Eastern Livestock\Pleadings\Fee App Obj 20111208.doc