UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
FOR NEW ALBANY

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| **EASTERN LIVESTOCK CO., LLC** ) | |
| ) | CASE NO. 10-93904-BHL-11 |
| Debtor ) | |
| ) | Hon. Basil H. Lorch III |

**OBJECTION AND RESERVATION OF RIGHTS
TO FEE APPLICATION OF BAKER & DANIELS LLP**

Comes now Superior Livestock Co., LLC ("Superior"), by and through the undersigned counsel, and for its Objection and Reservation of Rights with respect to the Fee Application of Baker & Daniels LLP (Doc. No. 820) (the "Application"), states:

**BACKGROUND FACTS**

On January 18, 2011, Trustee James A. Knauer ("Trustee") properly sought the retention of special counsel Hoover Hull LLP ("HH") to "investigate and prosecute claims and objections against Fifth Third Bank ("Fifth Third") or claims asserted by Fifth Third in this case," because the Debtor's general bankruptcy counsel Baker & Daniels LLP ("B&D") and the Trustee's own law firm each represent Fifth Third in matters unrelated to the case.[1]

Thereafter, on March 18, 2011, pursuant to a motion filed by the Trustee, the Court entered a Financing Order ("Financing Order") which allowed Fifth Third's proof of claim and

---

[1] The Affidavit of Terry E. Hall in support of the Application to Employ B&D as counsel to Chapter 11 Trustee (Doc. 114) states that B&D currently represents Fifth Third in other matters, and that Fifth Third has not consented to the Firm's representation of the Trustee with respect to any adversary proceeding or other action that the Trustee may commence directly against Fifth Third. Mr. Knauer's Affidavit states he believes that despite his firm's representation of Fifth Third in unrelated matters, he and his firm were nonetheless "disinterested." See Affidavit of Disinterest, Doc. No. 98-20 of the Trustee. On February 10, 2011, HH's employment was approved by this Court (Doc. No. 267).

1

made other concessions to Fifth Third but preserved the Debtor's and all other parties' claims against Fifth Third. In return for a $2 million "Carve Out" for initial professional fees, and the potential that Fifth Third would "loan" the estate up to $2 million more from recoveries of Fifth Third collateral, the Financing Order provided that Fifth Third may not be surcharged for fees and expenses beyond the $2 million Carve Out and that any fees and expenses paid in excess of the Carve Out, up to an additional $2 million, would be repaid by the estate (the "Loan"). Other provisions required Fifth Third's approval of the Trustee's litigation budgets, that budgets be kept secret from all other parties in interest, the periodic surrender to Fifth Third of funds not required by the approved budgets, and prohibiting any use of funds from the Carve Out or the Loan to pay fees for any litigation against Fifth Third.

With the filing of the Application, the estate has now incurred all or virtually all of the professional fees permitted by either the $2 million "carve out" or potentially allowed by the $2 million Loan described in the Financing Order. It would appear that the principal beneficiary of the services covered by the $2 million Carve Out – for which numerous concessions were made to Fifth Third – has been Fifth Third itself, since the principal actions of the Trustee and counsel to date have been to (1) regularly confer with Fifth Third to formulate and implement case strategies; (2) to initiate litigation requiring parties to pay about $12 million into an escrow account subject to any "Purchase Money Claims," immediately followed by a Purchase Money Claims Report filed by the Trustee which asserts that no party other than Fifth Third can have any legitimate claim to the funds, and the transfer of the funds to the Trustee's operating account for use pursuant to the Financing Order; (3) to aggressively oppose any contentions that fraud or other conduct by the Debtor (or anyone else) gives rise to claims through constructive trust or otherwise that would be superior to those of Fifth Third; and (4) to remove to the Bankruptcy

Court interpleader actions filed by creditors, but not various state court actions filed by Fifth Third, including the Ohio receivership action initiated by Fifth Third, in which Fifth Third continued to assert claims during the bankruptcy case.

The Trustee's special counsel, HH, filed its First Interim Application for compensation and reimbursement of expenses ("HH Application") on November 11, 2011 (Docket No. 819). Until the filing of the HH Application, which sets forth all of HH's work from January 14, 2011 through August 31, 2011, creditors had *no information* regarding HH's investigations as special counsel for the Trustee.

It is now apparent from the HH Application, however, that the firm's investigation of Fifth Third and potential claims was extremely limited and untimely, that HH essentially abandoned further analysis of the Debtor's potential claims after April of 2011, and indeed only performed very limited services during that month. *See* HH Application showing less than 10 total hours of services in April, and no time spent on this case from April 28 through August 31, 2011. Only in late October of this year, after five months of total inactivity, and almost a year into this massive case, did HH belatedly request some documents from Fifth Third. *See* Notice of Discovery Request filed on November 4, 2011 as Docket No. 803. In the meantime, Fifth Third has continued to receive budgets and action plans from the Trustee that are not shared with other creditors, and the Trustee has regularly met with Fifth Third regarding the course of the case, has publicly given estimates of the range of potential distributions to unsecured creditors, and has engaged in "negotiations" with Fifth Third regarding a plan.

The Application filed by B&D seeks compensation and reimbursement of expenses for the period between May 1, 2011 and August 31, 2011. The Application includes numerous time entries for meetings and negotiations with Fifth Third relating to litigation matters, strategy and plan formulation, and for litigation in which Fifth Third is a party, all performed during times HH was no longer providing any services as special counsel.

## LEGAL ARGUMENT AND OBJECTION

Serious questions arise with respect to whether services performed by the Trustee and B&D involving Fifth Third were necessary and beneficial to the estate in light of the abject failure of HH to investigate the estate's potential claims against Fifth Third, its discontinuation of its limited investigation by April of 2011, and the fact HH was specifically retained as special counsel because the Trustee's law firm and B&D both represent Fifth Third Bank in other matters.

While the Application does not reveal what connection B&D may have had to HH's cessation of work in April, it is apparent that at a minimum, the services performed by B&D described in the Application were done without benefit of meaningful analysis of potential claims against Fifth Third, and without *any advice* or input from the special counsel retained for such purpose. As noted earlier the HH Application shows that HH performed *no* services during all of the months encompassed by the pending Application of B&D.

Many of the actions taken by B&D during the months covered by the Application should *only* have been undertaken with assistance of special counsel, and a thorough investigation of potential claims of the estate against Fifth Third. During the months that HH was doing nothing, B&D was meeting with Fifth Third to discuss case strategy, conducting a course of litigation

4

approved by Fifth Third and involving Fifth Third, and "negotiating" a proposed plan with Fifth Third. How could "negotiations" with Fifth Third be beneficial and necessary to the estate if performed by attorneys who were prohibited from taking action adverse to Fifth Third, under a Financing Order which provided they could not be paid for any litigation opposing Fifth Third, and with no input at all from special counsel?

At least some of the actions taken by B&D appear to have actually compromised potential claims of the estate. For example, the Trustee goes beyond the concessions made in the Financing Order to admit that Fifth Third has a "*first priority* blanket security interest and lien against all the personal property of ELC," and that "Fifth Third possessed a perfected first priority security interest on the Eastern Livestock Contracts, Cattle, Cattle Proceeds and Part Payments." *See* TRUSTEE'S REPLY TO FIFTH THIRD BANK'S COUNTERCLAIM FILED ON NOVEMBER 21, 2011 IN ADVERSARY NO. 11-59088, ¶¶13, 27. The Trustee also affirmatively alleges that Fifth Third has "a *prior* perfected security interest in the cattle, the Lots, and in any proceeds from the sale of the Lots identified in the Eastern Livestock Contracts," and that "[a]ny right of reclamation that did exist was subject to the rights of all *good-faith, ordinary-course, third-party purchasers who purchased the cattle from ELC, including the prior lien rights of Fifth Third*." TRUSTEE'S THIRD-PARTY COMPLAINT AND COUNTERCLAIM FILED ON SEPTEMBER 1, 2011 I ADVERSARY NO. 11-59088, ¶¶6, 30, 45, 64.(EMPHASIS ADDED). As noted earlier, Fifth Third has been the primary, if not the sole, beneficiary of the $2 million Carve Out which was the basis for substantial concessions made to Fifth Third in the Financing Order requested by the Trustee.

Indeed, under the Financing Order entered at the Trustee's request, it is certainly arguable the Trustee and his counsel could not be compensated for filing any pleadings which do

5

*not* support Fifth Third. In this regard, the Financing Order provides in Paragraph 7(c)[2] that "any fees and expenses incurred by the Trustee in connection with any claim *or other litigation asserted against Fifth Third* shall not be permitted to be paid from the Carve Out or the Trustee Loan."  (Emphasis added). According to HH's time records, the Trustee's motion giving rise to the Financing Order was only briefly reviewed by HH the day before it was filed on February 11, 2011.  In the following months, Fifth Third has filed pleadings asserting positions in virtually every litigation matter in the case, in many instances participating as a "party" because it intervened or was joined as such by the Trustee.  Under a broad reading, the Financing Order could certainly be interpreted to mean that B&D cannot be paid from the Carve Out or the Trustee Loan to the degree they assert any positions in litigation which contradict those of Fifth Third. Since the Carve Out and Trustee Loan are currently the only sources for payment of fees, there is an obvious and inherent disincentive to avoid taking litigation positions which oppose Fifth Third if counsel wants to be paid.

The Financing Order  also raises a related issue pertaining to how the requested fees *could* be paid, a matter not addressed by the Application. The Carve Out in the Financing Order provides for an initial $2 million of cash collateral to pay such fees:

> The Trustee is hereby authorized to use Fifth Third's Cash Collateral to fund the performance of subparagraphs 1.A.(i) – (vi) "Must Do" actions as described in the Financing Motion (the "Items 1 - 6") to pay the Trustee's fees and the professional fees and expenses for Baker & Daniels, DSI and other professionals retained by the Trustee that are incurred in connection with such actions and allowed by the Court (the "Items 1-6 Fees and Expenses"), subject to an initial aggregate cap of $2,000,000 (the "Carve Out").

---

[2] An identical provision appears in Paragraph 2(c)(6) of the proposed order accompanying the motion filed by the Trustee requesting the Financing Order.

6

FINANCING ORDER, ¶5(B), PG. 9.  This Carve Out was exhausted, however, by the first interim fees awarded prior to the filing of the Application. After such initial funding, the Financing Order allows payment of additional fees from a "loan" only on certain conditions:

> Without the consent of Fifth Third, the Trustee Loan shall not be permitted to exceed the maximum amount of $2,000,000. *Fifth Third's commitment to make the Trustee Loan shall be limited to the amount of net recoveries by Fifth Third from its collateral after deducting the amount of funds paid or that might be payable to the Trustee from the Carve Out.*

FINANCING ORDER, ¶3, PG. 8. (Emphasis added).

At present, it appears the fees requested by the Application could *only* be paid if Fifth Third agrees to another Carve Out, since the required "net recoveries" do not exist. If payment of the fees requested in the Application is premised on such an agreement by Fifth Third, the Application should disclose this fact as well as the substance of any discussions that may have taken place with Fifth Third regarding the matter.

The Application provides few if any details of the many conference calls, meetings, discussions and negotiations with Fifth Third regarding case status, strategies, and preparation of a proposed Plan for which compensation is sought, all of which plainly occurred without input from HH or a thorough review of potential claims.  At this point, it is impossible without further discovery to determine the full extent to which the failure to review potential claims against Fifth Third has affected the services performed by B&D, or the necessity or benefit to the estate of the Trustee's many dealings with Fifth Third. Creditors have nothing but the limited information provided in the Application itself. As noted, no information in the budgets has been shared with

7

any party other than Fifth Third, nor have creditors other than Fifth Third been privy to the many conferences between Fifth Third, the Trustee and his counsel.

While the Trustee and his counsel will likely claim the details of their discussions with Fifth Third are "confidential" under the Financing Order, they are not relieved by that order of their duty to show their services were necessary and beneficial. Stated differently, where parties prohibited from taking positions adverse to a lender have "negotiated" a Financing Order providing for "secret" budgets and discussions, they cannot then say they should be paid for "necessary" services which they cannot describe in detail because of the very order they drafted. Having chosen not to involve special counsel when the services were performed, the Trustee and his counsel assumed the risk they either would not be paid, or would be required to explain in detail the services they say were necessary.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated herein, Superior accordingly objects to the entirety of the Application and reserves its right to supplement this Objection, subject to further details and explanation of the services which were performed, and requests that the Application be denied.

CO-COUNSEL FOR SUPERIOR LIVESTOCK AUCTION, INC.

*/s/ John M. Rogers*
John M. Rogers
RUBIN & LEVIN, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN  46204-2161
Phone:  317-634-0300
Facsimile:  317-263-9411
e-mail:  JohnR@rubin-levin.net

## CERTIFICATE OF SERVICE

I certify that on the 13th day of December, 2011, I electronically filed the foregoing *Objection and Reservation of Rights to Fee Application of Baker & Daniels LLP* with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

David L. Abt
davidabt@mwt.net

C.R. Bowles, Jr
crb@gdm.com

John Hunt Lovell
john@lovell-law.net

Mark A. Robinson
mrobinson@vhrlaw.com

Jeffrey R Erler
jeffe@bellnunnally.com

Edward M King
tking@fbtlaw.com

Randall D. LaTour
rdlatour@vorys.com

John R. Carr, III
jrciii@acs-law.com

James M. Carr
jim.carr@bakerd.com

Robert K. Stanley
robert.stanley@bakerd.com

Terry E. Hall
terry.hall@bakerd.com

Dustin R. DeNeal
dustin.deneal@bakerd.com

John Frederick Massouh
john.massouh@sprouselaw.com

John W. Ames
jwa@gdm.com

Robert Hughes Foree
robertforee@bellsouth.net

Kim Martin Lewis
kim.lewis@dinslaw.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Ivana B. Shallcross
ibs@gdm.com

Deborah Caruso
decaruso@daleek.com

Meredith R. Thomas
mthomas@daleeke.com

William Robert Meyer, II
rmeyer@stites.com

Allen Morris
amorris@stites.com

Charles R. Warton
Charles.R.Wharton@usdoj.gov

James Bryan Johnston
bjtexas59@hotmail.com

James T. Young
james@rubin-levin.net

David L. LeBas
dlebas@namanhowell.com

Judy Hamilton Morse
judy.morese@crowedunlevy.com

John M. Thompson
john.thompson@crowedunlevy.com

Jessica E. Yates
jyates@swlaw.com

John Huffaker
john.huffaker@sprouselaw.com

Matthew J. Ochs
matt.ochs@moyewhite.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Kelly Greene McConnell
lisahughes@givenspursley.com

T. Kent Barber
kbarber@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Walter Scott Newbern
wsnewbern@msn.com

Kirk Crutcher
kcrutcher@mcs-law.com

Todd J. Johnston
tjohnston@mcjllp.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Karen L. Lobring
lobring@msn.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

Lisa Kock Bryant
courtmail@fbhlaw.net

Elliott D. Levin
edl@rubin-levin.net

John M. Rogers
johnr@rubin-levin.net

James E. Rossow, Jr.
jim@rubin-levin.net

John David Hoover
jdhoover@hovverhull.com

Sean T. White
swhite@hooverhull.com

Robert H. Foree
robertforee@bellsouth.net

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Michael W. McClain
mike@kentuckytrial.com

William E Smith
wsmith@k-glaw.com

Susan K. Roberts
skr@stuartlaw.com

James Edwin McGhee
mcghee@derbycitylaw.com

Thomas C Scherer
tscherer@binghammchale.com

David A. Laird
david.laird@moyewhite.com

Jerald I. Ancel
jancel@taftlaw.com

Jeffrey J. Graham
jgraham@taftlaw.com

Trevor L. Earl
tearl@rwsvlaw.com

David Alan Domina
dad@dominalaw.com

Kent A Britt
kabritt@vorys.com

Joshua N. Stine
jnstine@vorys.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Jeffrey L. Hunter
jeff.hunter@usdoj.gov

Amelia Martin Adams
aadams@gldfirm.com

Michael Wayne Oyler
moyler@rwsvlaw.com

Jason W. Cottrell
jwc@stuartlaw.com

Robert A. Bell
rabell@vorys.com

/s/ John M. Rogers
John M. Rogers

11