UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| EASTERN LIVESTOCK CO., LLC, et al.,[1] | Case No.: 10-93904-BHL-11 |
| Debtors. |  |

**FIFTH THIRD BANK, N.A.,'S OBJECTION TO THE TRUSTEE'S MOTION FOR RULE 2004 EXAMINATIONS**

Fifth Third Bank, N.A. ("Fifth Third"), by and through its undersigned counsel, submits this Objection to the Motion for Rule 2004 Examinations (the "2004 Motion") filed by special counsel for the Chapter 11 Trustee (the "Trustee") on February 7, 2012 [Doc. #1013]:

**I.     Introduction**

1.     In the 2004 Motion, the Trustee attempts to bypass the Motion of Fifth Third Bank, N.A. to Limit Discovery or, Alternatively, for a Protective Order [Doc. #1005] (the "Discovery Motion") and to circumvent Fed. R. Civ. P. 26-37, made applicable to these proceedings by Fed. R. Bankr. P. 7026-7037, by misconstruing and ignoring certain facts and by inappropriately styling the request for depositions as a motion for 2004 examinations.  The 2004 Motion merely highlights the importance of Fifth Third's Discovery Motion and the need for this Court's involvement in order to avoid costly and inefficient serial depositions.

**II.    Relevant Facts**

2.     At a hearing on December 14, 2011, the Court instructed the Trustee to provide the Court with a preliminary report on its position regarding equitable subordination within

---

[1]     The Debtor entities are Eastern Livestock Co., LLC and Okie Farms, L.L.C.

ninety days. The Court further explained, however, that the ninety-day period was based only on the Trustee's estimate that it would need 120 days to complete its investigation.[2]

3.     By letter to Fifth Third dated January 10, 2012, the Trustee inquired as to the availability of eleven current and former Fifth Third employees for depositions.[3] The letter proposed deposing all eleven witnesses in a four day period—from January 31 to February 3, 2012, or alternatively, from February 14-17, 2012. Fifth Third responded by telephone and informed the Trustee that the witnesses could not be available for the first set of dates, but that Fifth Third would work to try to make the witnesses available on or about the second suggested set of dates.

4.     On approximately January 25, after contacting several of the current and former employees on the Trustee's witness list, Fifth Third tentatively proposed a number of potential dates for depositions based on the witnesses' then-existing schedules for the weeks of February 13 and 20, but explained that it still needed to confirm the availability of some of the witnesses. The Trustee requested that the depositions occur on consecutive days to minimize travel time, and Fifth Third indicated it would attempt to accommodate the request.

5.     On January 26, 2012, Fifth Third contacted the Trustee by telephone to discuss the desired depositions and, specifically, to address Fifth Third's concerns as to how the Trustee intended to notice the depositions and in what cases, given the multiple adversary proceedings that are pending along with the main bankruptcy case. Fifth Third explained that it was concerned that its witnesses would be deposed multiple times on the same subject matter in each of the various adversary proceedings and in the main bankruptcy, resulting in serial depositions that would be duplicative, costly and burdensome for both Fifth Third, its employees and its

---

[2] See Excerpts from Transcript of December 14, 2011 Omnibus Hearing, attached hereto as Exhibit A.
[3] See January 10, 2012, Letter from Sean T. White to Kent A. Britt, attached hereto as Exhibit B.

3

former employees. Accordingly, Fifth Third suggested that the depositions should proceed in such a fashion so that all parties could appear and ask their questions of the witnesses in a single deposition. The Trustee indicated that it was inclined to notice the depositions only in the main bankruptcy proceeding, to which Fifth Third responded that such a limited notice would leave these witnesses vulnerable to serial depositions. Fifth Third requested that the depositions be noticed in the main bankruptcy as well as each of the adversary proceedings to put all parties on notice of the depositions and to allow all parties to fully participate. The Trustee indicated that it would consider this option and get back to Fifth Third.

      6.     On January 30, 2012, Fifth Third emailed the Trustee and again explained Fifth Third's concern.[4] Specifically, Fifth Third identified the problem that it anticipated—namely, the creation of "a situation where creditors can conduct multiple depositions of each of Fifth Third's witnesses." (Exhibit C). Fifth Third further asked the Trustee to inform Fifth Third of its position so that the parties could proceed with scheduling the depositions, or, if the Trustee insisted on noticing the depositions only in the main bankruptcy case, so that Fifth Third could take appropriate action with the Court.

      7.     On February 1, 2012, the Trustee contacted Fifth Third by letter regarding a separate and unrelated discovery issue, but did not address how the depositions were going to be noticed or respond to Fifth Third's stated concerns regarding serial depositions. Despite Fifth Third's telephonic and email requests for clarification on how the Trustee intended to notice and proceed with the depositions, the Trustee offered no response. Instead, in its February 1, 2012 correspondence, the Trustee merely acknowledged that the tentative deposition dates proposed by Fifth Third were still under discussion, and stated that "we need to confirm the dates of

---

[4]    See January 30, 2012, Email from Kent A. Britt to Sean T. White, attached hereto as Exhibit C.

4

depositions for the Fifth Third employees otherwise, the Trustee will independently notice these depositions."

8.   In response, on February 2, 2012, Fifth Third once again wrote to the Trustee and again requested its position on the issue of depositions.[5] Fifth Third again inquired whether the Trustee would notice the depositions "in both the main bankruptcy case and in the related adversary proceedings *so as to avoid our witnesses being subjected to multiple depositions*." (Exhibit D) (emphasis added).  Finally, to attempt once more to resolve the issue with the Trustee extrajudicially, Fifth Third asked the Trustee to "advise as to your client's position and ***whether it will be necessary for us to seek an order from the court to protect our witnesses from serial depositions***."  (Exhibit D) (emphasis added).

9.   Despite Fifth Third's efforts to resolve the issue via telephone call, email and letter, Fifth Third received no response from the Trustee.  Having attempted several times to resolve the matter extrajudicially, in accordance with S.D. Ind. B-9014 (incorporating S.D. Ind. L.R. 37.1), Fifth Third filed the Discovery Motion on February 3, 2012, in the main bankruptcy proceeding as well as each of the adversary proceedings in which it is a party.  Fifth Third's intention was to place the matter of potential serial depositions before the Court in hope of obtaining some clarification on how to proceed without saddling certain parties and witnesses with costly and duplicative depositions.

10.  On February 6, 2012, the Trustee finally responded to Fifth Third on the pending question of how it intended to proceed with the depositions, indicating for the first time that "the Trustee agrees to notice the depositions in the bankruptcy case and each adversary proceeding,"

---

[5]   See February 2, 2012, Letter from David F. Hine to Sean T. White, attached hereto as Exhibit D.

5

and demanding that Fifth Third withdraw its motion.[6] The Trustee further stated its intention to notice the depositions of the eleven witnesses to begin one week later, on February 14, 2012, stating that it wished to proceed "on the dates [Fifth Third] previously provided to [the Trustee]." (Exhibit E). The proposed dates, however, were merely suggested dates—as the Trustee had previously acknowledged—and were never confirmed with any of the witnesses. Indeed, the schedule proposed by the Trustee in its February 6, 2012, letter reflects that no dates had been agreed upon or confirmed, as multiple dates were proposed for some witnesses whose availability was still being confirmed.[7]

11.    On February 7, 2012, Fifth Third responded to the Trustee by letter and thanked it for agreeing to issue the deposition notices in the adversary and main bankruptcy case in an effort to avoid serial depositions.[8] Further, Fifth Third suggested that, in order to give other parties adequate notice of the depositions and time to prepare for them, more than one week's notice would be necessary. Fifth Third also stated that, now that the motion had been filed, it was prudent to see what objections would be raised by the other parties and to obtain clarification from the Court as to how deposition discovery would proceed. Given that multiple parties would be affected and many of them may not be prepared to proceed in one week with depositions, Fifth Third requested that the Trustee work with Fifth Third to schedule dates that were convenient to all parties who wished to attend the depositions. Fifth Third also informed the Trustee that, because so much time had passed and no dates had been confirmed (indeed, the

---

[6]    February 6, 2012, Letter from Sean T. White to Randall D. LaTour, Kent A. Britt, and David F. Hine, attached hereto as Exhibit E.
[7]    The Trustee proposed multiple potential deposition dates for Lori Hart (February 14 or 15); Anne Kelly (February 14 or 15); Timothy Spurlock (February 21 or 22); Shannon Hughes (February 21 or 22); and Devon Morse (February 23 or 24). (Exhibit E).
[8]    See February 7, 2012, Letter from David F. Hine to Sean T. White, attached hereto as Exhibit F.

6

Trustee still had not noticed any depositions), at least some of the Fifth Third witnesses were no longer available on the dates discussed.

12.     Also on February 7, 2012, First Bank and Trust Co. ("First Bank"), emailed Fifth Third, copying only the Trustee and unsecured creditor Superior Livestock Auction, Inc. ("Superior Livestock"), and demanded that Fifth Third withdraw the Discovery Motion.[9] Fifth Third responded by informing the parties that it would not withdraw the Discovery Motion without some assurance that the parties—all interested parties, not just the select few who had responded at the purported aid of the Trustee—would not seek serial depositions of witnesses.[10] Because First Bank and Superior Livestock both responded by email, refusing to limit the number of depositions and reserving the right to conduct serial depositions, Fifth Third proposed a conference call for that afternoon.

13.     Based on the February 7, 2012, phone conference,[11] it became clear that while the Trustee had agreed to notice the depositions in the bankruptcy case and the various adversary proceedings, the parties participating in the call still intended to subject Fifth Third's witnesses to serial depositions. Indeed, First Bank suggested that if the various creditors wanted to depose Fifth Third's witnesses at different times, it would be Fifth Third's obligation to obtain separate protective orders from the Court to prevent each of those duplicative depositions. In other words, the parties were not only refusing to agree that serial depositions were inappropriate—they were unequivocally endorsing the notion of serially deposing Fifth Third's witnesses and creating a need for additional, and possibly multiple, discovery motions later in the case.

---

[9] See February 7, 2012, Email from Daniel J. Donnellon to Randall D. LaTour, Kent A. Britt, and David F. Hine, attached hereto as Exhibit G.

[10] See February 7, 2012, Email from Kent A. Britt to Daniel J. Donnellon, Sean T. White, Stephen A. Weigand, John M. Rogers, and Christopher M. Trapp, attached hereto as Exhibit H.

[11] First Bank indicated that counsel for the Florida Creditors and the Kentucky Stockyards were also invited to participate in the conference call; it is not clear, however, whether they actually were present for the call. It is also unclear why those creditors were selected to participate, or whether any of the other creditors with legitimate interests in the resolution of this matter were invited to participate.

7

14.     Later in the day on February 7, 2012, the Trustee filed the 2004 Motion, requesting that the Court enter an order authorizing it to begin deposing the witnesses less than a week after the motion was filed.  Even then, the Trustee could not verify the dates that it wanted to depose the various witnesses, still setting forth multiple potential deposition dates for nearly half of the requested deponents.

15.     Finally, it is worth noting that Superior Livestock, the Florida Creditors, and First Bank each filed objections to the Discovery Motion [Docs. #1021, 1024, and 1025, respectively]; these objections actually support the purpose of the Discovery Motion.  The various objections emphasize the parties' intention to conduct serial depositions of Fifth Third's witnesses. Superior Livestock points out that it has "yet to determine which Fifth Third employees they may depose," (Doc. #1021, at 2), thus corroborating Fifth Third's position that deposing its witnesses at this time would be premature and will almost certainly lead to serial depositions in the future.  Likewise, First Bank acknowledges that it has *already* deposed one of the eleven Fifth Third witnesses on matters that are identical to those at issue in these proceedings, but nevertheless insists that it should be able to take additional depositions even after the Trustee's proposed depositions are completed.  (Doc. #1025, ¶ 3, 10).

### III.    Argument

A. The 2004 Motion promotes the serial depositions that Fifth Third's Discovery Motion seeks to preclude.

16.     The intent of Fifth Third's Discovery Motion is to prevent serial depositions and to gain clarity on how deposition discovery will proceed, given that there are multiple adversary proceedings in addition to the main bankruptcy action and costly depositions of each other's witnesses.  The fact that the Trustee has filed a motion for 2004 examinations rather than simply

8

serving deposition notices pursuant to Fed. R. Bankr. P. 7030 only highlights the need for such an order.

17. Permitting depositions of the same witnesses in the bankruptcy case pursuant to Fed. R. Bank. P. 2004 and again in the various adversary proceedings—when the issues are virtually identical—will only lead to undue burden and harassment. The burden imposed by these repetitious depositions is significant:

> [E]ach new deposition requires the deponent to spend time preparing for the deposition, traveling to the deposition, and providing testimony. In addition, allowing for serial depositions, whether of an individual or organization, provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last.

State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc., 254 F.R.D. 227, 235 (E.D.Pa. 2008).

18. Because each witness's knowledge is limited to the same set of operative facts, it would be far more efficient to conduct a single deposition of each witness, thereby reducing costs and eliminating any unnecessary expenditure of resources. This benefit is true for all parties, not just Fifth Third. Indeed, when a "witness may be examined with respect to all relevant issues by being deposed once, the recall of a witness for further testimony may be obviated. ***It should thus be beneficial to all parties involved, saving both time and expense, not to require multiple depositions where one deposition per witness might suffice***." Tucker v. American Int'l Group, Inc., 2011 U.S. Dist. LEXIS 139086, at *32 (D. Conn. Dec. 2, 2011) (emphasis added).

19. By its Discovery Motion, Fifth Third is attempting to preempt the otherwise inevitable litany of motions for protective orders and motions to compel that will occur if serial depositions are permitted by attempting to establish a protocol regarding deposition discovery much like what exists for written discovery.

9

20. Fifth Third, therefore, asks that the Court deny the 2004 Motion, and instead provide an order—similar to the written discovery protocol set forth on October 5, 2011 [Doc. #738], and granted on October 26, 2011 [Doc. #779]—that streamlines the deposition discovery process in this bankruptcy case and the related adversary proceedings.

B. Fed R. Bankr. R. 2004 examinations are inappropriate at this point in litigation.

21. Because both Fifth Third and the Trustee are currently parties to five different adversary proceedings, all of which involve the same operative facts upon which the Trustee wishes to depose Fifth Third's current and former employees, all depositions should be conducted pursuant to Fed. R. Civ. P. 30, made applicable to these proceedings by Fed. R. Bankr. P. 7030.

22. It is accepted law that when an adversary proceeding has been initiated, or when parties are engaged in a contested matter, Fed. R. Bankr. P. 2004 ceases to be an appropriate means of seeking discovery. See Driggs Farms of Ind., Inc. v. Driggs Farms Investors, LLC (In re DFI Proceeds, Inc.), 2009 Bankr. LEXIS 2198, at *1-2 (Bankr. N.D. Ind., July 22, 2009) (stating that "[e]xaminations pursuant to Rule 2004 are not a substitute for discovery authorized in and adversary proceeding or in a contested matter," and denying a request for 2004 examinations after adversary proceedings had been commenced); Sweetland v. Szadkowski (In re Szadkowski), 198 B.R. 140, 141 (Bankr. D. Md. 1996) ("T]his court holds that once an adversary proceeding or contested matter has been commenced, the discovery of matters related to that adversary proceeding or contested matter must proceed in accordance with the discovery provisions of the Federal Rules of Civil Procedure."); In re Bennett Funding Group, Inc., 203 B.R. 24, 30 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Fed. R.

10

Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."); In re Sutera, 141 B..R. 539, 541 (Bankr. D. Conn. 1992) (stating that Rule 2004 is inapplicable when contested matters or adversary proceedings have been commenced and are pending); In re Lang, 107 B. R. 130, 132 (Bankr. N.D. Ohio 1989) ("Once an actual adversary proceeding has been initiated, 'the discovery devises proceed in Rules 7026-7037 . . . apply and Rule 2004 should not be used.'" (quoting 8 Collier on Bankruptcy ¶ 2004.03[1] at pp.2004-5–2004-6 (15th Ed. 1989))).

23.     In one particularly thorough opinion, In re 2435 Plainfield Avenue, Inc., 223 B.R. 440 (Bankr. D.N.J. 1998), a court addressed a party's motion to quash six Rule 2004 subpoenas on the basis that Rule 2004 examinations of matters which were the subject of pending adversary proceedings were inappropriate, and because Rule 2004 exams should not be used to abuse or harass parties or witnesses. Id. at 445. The court cited a wealth of case law from jurisdictions across the country in which courts prohibited the use of Rule 2004 examinations when the subject of the proposed examinations were also the subject of pending adversary proceedings or contested matters. Id. at 455-56 (citing more than a dozen cases with consistent language). The court further recognized that when Rule 2004 examinations are sought despite the existence of pending adversary proceedings, "the party requesting the exam is likely seeking to avoid the procedural safeguards of *Bankruptcy Rules* 7026-7037." Id. at 456 (quoting William L. Norton, Jr., 6 Norton Bankruptcy Law and Practice, § 141:35 (2d ed. 1998)). Accordingly, because "it is important to insure that the procedural safeguards of the discovery process provided in Fed. R. Civ. P. 26-37 are not avoided by permitting Rule 2004 examination while an adversary proceeding is pending," the court held that "where a party seeks to depose another party or a witness on an issue which is the subject of a pending adversary proceeding, the examination

11

cannot be conducted pursuant to Rule 2004, but must be conducted pursuant to the Federal Rules of Civil Procedure." Id.

24. Likewise, the Trustee should not be permitted to "circumvent the protections offered under the discovery rules" by conducting a broad fishing expedition–like examination of witnesses without affording the respective party any of the protections provided in the Federal Rules of Civil Procedure. First Financial Savings Assoc. v. Kipp (In re Kipp), 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988). The operative facts upon which the Trustee wishes to depose Fifth Third's eleven witnesses are the same operative facts at issue in Fredin Brothers, Inc. v. Bankers Bank, Case No. 10-93904-BHL-11, Adversary No. 11-59108; Rush Creek Ranch, LLP v. Knauer, Case No. 10-93904-BHL-11, Adversary No. 11-59104; Innovative Livestock Services, Inc. v. Eastern Livestock Co., LLC, Case No. 10-93904-BHL-11, Adversary No. 11-59098; Friona Industries, LP v. Eastern Livestock Co., LLC, Case No. 10-93904-BHL-11, Adversary No. 11-59093; and Superior Livestock Auction, Inc. v. Eastern Livestock Co., LLC, Case No. 10-93904-BHL-11, Adversary No. 11-59088. Both Fifth Third and the Trustee are parties to each of these proceedings.

C. The proposed deposition schedule creates an unfair burden.

25. To the extent that the Court is inclined to permit the Trustee to take the depositions of the eleven identified Fifth Third witnesses, the depositions should not proceed on the dates indicated in the 2004 Motion.

26. When those dates were presented by Fifth Third as tentative options for the depositions several weeks ago, the Trustee indicated that it needed to confirm whether those possible dates were acceptable. No confirmation was provided by the Trustee until its letter of February 6, 2012, following the present dispute. Moreover, no deposition notices were ever

issued or filed pursuant to Fed. R. Bankr. P. 7030 and Fed. R. Civ. P. 30.  Indeed, the motion for 2004 examinations was not filed until February 7, 2012—four days *after* Fifth Third filed its Discovery Motion, and less than a week before when the Trustee now proposes that depositions should begin.

27. The Trustee inappropriately relies on the tentative dates that were discussed several weeks ago and which now need to be revised, and proceeds as if the eleven witnesses should have held those dates open indefinitely.  This supposition is highly prejudicial, as it will require these witnesses to ignore other professional responsibilities.  Indeed, two of the witnesses that Fifth Third has agreed to make available at the Trustee's request are no longer Fifth Third employees.

28. Notably, the Trustee's only stated reason for conducting these depositions on such short notice, is the apparent belief that they must be completed before it tenders a *preliminary* report on the progress of its investigation in March.  But as the Court explained in the December 14, 2011, omnibus hearing, the ninety-day window that the Court imposed was based solely on the Trustee's own estimate that it would take 120 days to complete its investigation.  (Exhibit A).  Accordingly, to the extent that the Trustee is expected to conduct depositions before providing its preliminary report—a point that Fifth Third contests—the Court should permit the Trustee additional time to make its preliminary report.

WHEREFORE, for the benefit of the parties to these proceedings, in fairness to the witnesses the Trustee wishes to depose, and in the interest of judicial economy and avoiding costly and duplicative discovery, Fifth Third respectfully requests that this Honorable Court deny the Motion for Rule 2004 Examinations filed by the Trustee; grant the Motion of Fifth Third Bank, N.A. to Limit Discovery or, Alternatively, for a Protective Order; issue a protocol for the

13

taking of depositions in these related proceedings so as to prevent serial depositions and the attendant burden and expense; and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Randall D. LaTour_____
Randall D. LaTour (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43216
Telephone: (614) 464-8290
Facsimile: (614) 719-4821
Email: rdlatour@vorys.com

Kent A. Britt (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
221 East Fourth Street
Suite 2000, Atrium Two
Cincinnati, Ohio 45202
Telephone: (513) 723-4488
Facsimile:  (513) 852-7818
Email: kabritt@vorys.com

*Attorneys for Fifth Third Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2012, a copy of the foregoing Response in Opposition to Motion for Expedited Hearing and Motion for Rule 2004 Examinations was filed and served electronically through the Court's CM/ECF System to the following parties who are listed on the Court's Electronic Mail Notice List:

- David L. Abt davidabt@mwt.net
- Amelia Martin Adams aadams@dlgfirm.com
- John W Ames james@bgdlegal.com, smays@bgdlegal.com;tmills@bgdlegal.com
- Jerald I. Ancel jancel@taftlaw.com, ecfclerk@taftlaw.com;krussell@taftlaw.com
- Christopher E. Baker cbaker@hklawfirm.com, thignight@hklawfirm.com
- T. Kent Barber kbarber@dlgfirm.com, dlgecf@dlgfirm.com;dlgecfs@gmail.com
- Robert A. Bell rabell@vorys.com, dmchilelli@vorys.com
- C. R. Bowles cbowles@bgdlegal.com, smays@bgdlegal.com;cjenkins@bgdlegal.com
- Steven A. Brehm sbrehm@bgdlegal.com,
- bbaumgardner@bgdlegal.com;smays@bgdlegal.com
- Kent A Britt kabritt@vorys.com, cbkappes@vorys.com
- Lisa Koch Bryant courtmail@fbhlaw.net
- James M. Carr jim.carr@faegrebd.com,
- sarah.herendeen@faegrebd.com;patricia.moffit@faegrebd.com
- John R. Carr jrciii@acs-law.com, sfinnerty@acs-law.com
- Deborah Caruso dcaruso@daleeke.com, mthomas@daleeke.com
- Bret S. Clement bclement@acs-law.com, sfinnerty@acs-law.com
- Jason W. Cottrell jwc@stuartlaw.com
- Kirk Crutcher kcrutcher@mcs-law.com, jparsons@mcs-law.com; cmarshall@mcslaw.com
- Jack S Dawson jdawson@millerdollarhide.com,
- jowens@millerdollarhide.com;receptionist@millerdollarhide.com
- Dustin R. DeNeal dustin.deneal@faegrebd.com,
- patricia.moffit@faegrebd.com;sarah.herendeen@faegrebd.com
- Laura Day DelCotto ldelcotto@dlgfirm.com,
- dlgecf@dlgfirm.com;dlgecfs@gmail.com
- David Alan Domina dad@dominalaw.com,
- KKW@dominalaw.com;efiling@dominalaw.com
- Daniel J. Donnellon ddonnellon@ficlaw.com, knorwick@ficlaw.com

15

- Trevor L. Earl tearl@rwsvlaw.com
- Shawna M. Eikenberry shawna.eikenberry@faegrebd.com,
- sarah.herendeen@faegrebd.com
- Jeffrey R. Erler jeffe@bellnunnally.com
- Sarah Stites Fanzini sfanzini@hopperblackwell.com, mroth@hopperblackwell.com
- Robert H. Foree robertforee@bellsouth.net
- Sandra D. Freeburger sfreeburger@dsf-atty.com, smattingly@dsf-atty.com
- Melissa S. Giberson msgiberson@vorys.com
- Jeffrey J. Graham jgraham@taftlaw.com,
- ECFClerk@taftlaw.com;krussell@taftlaw.com;aolave@taftlaw.com
- Terry E. Hall terry.hall@faegrebd.com,
- sharon.korn@faegrebd.com;sarah.herendeen@faegrebd.com
- John David Hoover jdhoover@hooverhull.com
- John Huffaker john.huffaker@sprouselaw.com,
- lynn.acton@sprouselaw.com;rhonda.rogers@sprouselaw.com
- Jeffrey L Hunter jeff.hunter@usdoj.gov, USAINS.ECFBankruptcy@usdoj.gov
- Jay Jaffe jay.jaffe@faegrebd.com, sarah.herendeen@faegrebd.com
- James Bryan Johnston bjtexas59@hotmail.com, bryan@ebs-law.net
- Todd J. Johnston tjohnston@mcjllp.com
- Jill Zengler Julian Jill.Julian@usdoj.gov
- Edward M King tking@fbtlaw.com, dgioffre@fbtlaw.com
- James A. Knauer jak@kgrlaw.com, hns@kgrlaw.com
- Erick P Knoblock eknoblock@daleeke.com
- Theodore A. Konstantinopoulos ndohbky@jbandr.com
- Randall D. LaTour RDLatour@vorys.com,
- khedwards@vorys.com;bjtobin@vorys.com
- David A. Laird david.laird@moyewhite.com,
- lisa.oliver@moyewhite.com;deanne.stoneking@moyewhite.com
- David L. LeBas dlebas@namanhowell.com, koswald@namanhowell.com
- Elliott D. Levin robin@rubin-levin.net,
- edl@trustesolutions.com;edl@trustesolutions.net
- Elliott D. Levin edl@rubin-levin.net, atty_edl@trustesolutions.com
- Kim Martin Lewis kim.lewis@dinslaw.com,
- lisa.geeding@dinslaw.com;patrick.burns@dinslaw.com
- James B. Lind jblind@vorys.com
- Karen L. Lobring lobring@msn.com

16

- John Hunt Lovell john@lovell-law.net, sabrina@lovell-law.net;shannon@lovelllaw.
- net;paula@lovell-law.net
- Harmony A. Mappes harmony.mappes@faegrebd.com,
- judith.gilliam@faegrebd.com;sarah.herendeen@faegrebd.com
- John Frederick Massouh john.massouh@sprouselaw.com
- Michael W. McClain mike@kentuckytrial.com, laura@kentuckytrial.com
- Kelly Greene McConnell lisahughes@givenspursley.com
- James Edwin McGhee mcghee@derbycitylaw.com,
- belliott@derbycitylaw.com;patenaude@derbycitylaw.com
- William Robert Meyer rmeyer@stites.com
- Christie A. Moore cm@gdm.com, ljs2@gdm.com
- Allen Morris amorris@stites.com, dgoodman@stites.com
- Judy Hamilton Morse judy.morse@crowedunlevy.com,
- ecf@crowedunlevy.com;donna.hinkle@crowedunlevy.com; karol.brown@crowedunlevy.com
- Walter Scott Newbern wsnewbern@msn.com
- Shiv Ghuman O'Neill shiv.oneill@faegrebd.com
- Matthew J. Ochs kim.maynes@moyewhite.com
- Michael Wayne Oyler moyler@rwsvlaw.com
- Ross A. Plourde ross.plourde@mcafeetaft.com, erin.clogston@mcafeetaft.com
- Wendy W. Ponader wendy.ponader@faegrebd.com, sarah.herendeen@faegrebd.com
- Timothy T. Pridmore tpridmore@mcjllp.com, lskibell@mcjllp.com
- Anthony G. Raluy traluy@fbhlaw.net
- Jeffrey E. Ramsey jramsey@hopperblackwell.com, mhaught@hopperblackwell.com
- Eric C Redman ksmith@redmanludwig.com, kzwickel@redmanludwig.com
- Joe T. Roberts jratty@windstream.net
- Susan K. Roberts skr@stuartlaw.com, lbt@stuartlaw.com
- Mark A. Robinson mrobinson@vhrlaw.com, dalbers@vhrlaw.com
- Jeremy S Rogers Jeremy.Rogers@dinslaw.com, joyce.jenkins@dinslaw.com
- John M. Rogers johnr@rubin-levin.net, susan@rubin-levin.net
- Joseph H. Rogers jrogers@millerdollarhide.com, cdow@millerdollarhide.com
- James E. Rossow jim@rubin-levin.net, susan@rubinlevin.net
- ATTY_JER@trustesolutions.com
- Thomas C Scherer tscherer@bgdlegal.com, mmcclain@bgdlegal.com
- Ivana B. Shallcross ishallcross@bgdlegal.com,
- smays@bgdlegal.com;tmills@bgdlegal.com

17

- James E. Smith jsmith@smithakins.com, legalassistant@smithakins.com
- William E Smith wsmith@k-glaw.com, pballard@k-glaw.com
- Robert K Stanley robert.stanley@FaegreBD.com
- Joshua N. Stine kabritt@vorys.com
- Andrew D Stosberg astosberg@lloydmc.com, bmarks@lloydmc.com
- Meredith R. Thomas mthomas@daleeke.com
- John M. Thompson john.thompson@crowedunlevy.com,
- jody.moore@crowedunlevy.com,donna.hinkle@crowedunlevy.com
- Kevin M. Toner kevin.toner@faegrebd.com,
- judy.ferber@faegrebd.com;crystal.hansen@faegrebd.com
- Christopher M. Trapp ctrapp@rubin-levin.net
- U.S. Trustee ustpregion10.in.ecf@usdoj.gov
- Andrea L Wasson andrea@wassonthornhill.com
- Stephen A. Weigand sweigand@ficlaw.com
- Charles R. Wharton Charles.R.Wharton@usdoj.gov, Charles.R.Wharton@usdoj.gov
- Sean T. White swhite@hooverhull.com, vwilliams@hooverhull.com
- Jessica E. Yates jyates@swlaw.com,
- jmilelli@swlaw.com;docket_den@swlaw.com;mmccleery@swlaw.com
- James T Young james@rubin-levin.net,
- ATTY_JTY@trustesolutions.com;lemerson@rubin-levin.net;carmen@rubin-levin.net

    /s/ Randall D. LaTour_____
    Randall D. LaTour