**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | CASE NO.:  10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch, III |
| | ) | |
| RUSH CREEK RANCH, LLLP, | ) | Adv. Pro. No. 11-59104 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EASTERN LIVESTOCK COMPANY, LLC, | ) | |
| ARCADIA STOCKYARD, CATTLEMEN'S | ) | |
| LIVESTOCK MARKET, COLUMBIA LIVESTOCK | ) | |
| MARKET OF LAKE CITY, INC., HARDEE | ) | |
| LIVESTOCK MARKET, INC., NORTH FLORIDA | ) | |
| LIVESTOCK MARKET, OCALA LIVESTOCK | ) | |
| MARKET, INC., OKEECHOBEE LIVESTOCK | ) | |
| MARKET, SUMTER COUNTY FARMER'S | ) | |
| MARKET, INC., TOWNSEND LIVESTOCK | ) | |
| MARKET, FIFTH THIRD BANK, JAMES BYRD, | ) | |
| a/k/a I.E. BYRD, OAK LAKE CATTLE COMPANY, | ) | |
| INC., D&R TRUCKING, RON SIZEMORE | ) | |
| TRUCKING, INC., BANKS 1-25, and | ) | |
| DOES 25-50, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FLORIDA CREDITORS SUPPLEMENTAL ATTACHMENT TO PROOF OF CLAIMS

COMES NOW Creditors HILLIARD-MCKETTRICK INVESTMENTS, INC. d/b/a

ARCADIA STOCKYARD, CATTLEMEN'S LIVESTOCK AUCTION MARKET, INC.;

COLUMBIA LIVESTOCK MARKET OF LAKE CITY, INC.; HARDEE LIVESTOCK

MARKET, INC.; NORTH FLORIDA LIVESTOCK MARKET, INC.; OCALA LIVESTOCK

MARKET, INC.; OKEECHOBEE LIVESTOCK MARKET, INC.; SUMTER COUNTY

FARMERS MARKET, INC.; and MADISON LIVESTOCK MARKET, INC. d/b/a

1

TOWNSEND LIVESTOCK MARKET, (collectively "Florida Markets"); RON SIZEMORE TRUCKING, INC. ("Sizemore"); OAK LAKE CATTLE CO. ("Oak Lake"); EAGLE BAY, INC. ("Eagle"); and DANIEL M. BYRD ("D. Byrd") (and collectively **"Florida Creditors"**) and submit this Supplement: (i) Claim Nos. 181, 182, 183, 184, 185, 186 with respect to paid in funds by Len Miller ("Miller"); (ii) Claim Nos. 191, 192, 193, 194, 195, 196, 197, 198, 199 with respect to funds interpled by Rush Creek Ranch, LLLP ("Rush Creek")(Adversary Case No. 10-93904-BHL-11); (iii) Claim No. 190 of Sizemore for hauling charges on the cattle shipped to Miller and Rush Creek; (vi) Claim Nos. 187, 188, and 189 of respectively Oak Lake, Eagle, and Byrd for a series of transactions including those in question of Miller and Rush Creek; and Claims Nos. 225, 226, 227, 228, 229, 230, 232, and 233 pursuant to Section 68.065, Florida Statute, governing dishonored checks and further state as follows:

## BACKGROUND

1.      The amounts due the Florida Markets and Sizemore result from transaction amounts due and unpaid on cash sales of livestock purchased at auction in Florida between October 11, 2010 and November 3, 2010 by I.E. "Jim" Byrd of Oak Lake as the "Order Buyer" for Len Miller and Rush Creek Ranch. The amounts claimed by Oak Lake, Eagle, and D. Byrd encompass 114 transactions in 2010 for which I.E. "Jim" Byrd also served as "Order Buyer." In all of these transactions, Debtor Eastern Livestock Co., LLC served as "Clearing Agency" for Oak Lake as "Clearee"—a relationship more particularly described in 9 C.F.R. §§201.10(d), 201.29(c), 201.30(c), and 201.31(c)—the regulations governing the Packers and Stockyards Act of 1921, 7 U.S.C. §§181 et seq. ("Stockyards Act"). Because Eastern acted only as a "Clearing Agency" in the transactions in question, the Florida Creditors continue to assert that the funds due and unpaid are and never were not part of the bankruptcy estate. In addition to the non-

2

payment of amounts due pursuant to contract and statute, the Florida Creditors have suffered

continuing damages in bank interest and legal fees and costs incurred.

2.       The livestock business in the United States is governed under Stockyards Act and

regulations. This particularly includes all "cash sales"[1] of livestock at auction markets which

describe the Florida transactions in question. The Stockyards Act and regulations are

administered by the U.S. Department of Agriculture, Grain Inspection, Packers and Stockyards

Administration ("GIPSA"). With respect to matters concerning title and failure for want of

consideration, fraudulent checks, and deceptive and unfair trade practices which are also

implicated in the present instance—these are governed by the law of the state where the sales

originated, in this case Florida, and federal bankruptcy law.

### *Florida Market Agency Claimants*

3.       The Florida Creditors consist of: (a) nine (9) livestock auction markets selling

livestock at auction consigned by livestock producers in the state (collectively "Florida

Markets"); (b) one (1) livestock trucker or hauler ("Sizemore"); and (c) an individual Order

Buyer operating through his company ("Oak Lake") and affiliates which include his son, another

Order Buyer ("D.Byrd"), and a stockyard services company ("Eagle Bay"). Each of the Florida

Creditors participants in the livestock business and "market agencies" as defined pursuant to

§201 of the Stockyards Act and, as such, are each required to carry a surety bond in proscribed

---

[1]                                        (c) . . . a cash sale means a sale in which the seller does not
              expressly extend credit to the buyer.

7 U.S.C. §196(c)

amounts for the protection of unpaid sellers of livestock.[2] *See* 9 C.F.R §§201.10(a); 201.27-34;

**Exhibit A** (Bond Claims approved by GIPSA); **Exhibit B** (Eastern "Clearee" List).

      4.      Market Agencies selling on commission, which in the present instance includes

all of the Florida Markets, are also required under the Stockyards Act to maintain custodial

accounts for shippers proceeds.[3] When consigned livestock are sold at auction, the Florida

Markets render payment to the consignor producers immediately out of these custodial accounts.

The actual purchasers or buyers that bid on the livestock through their Order Buyers or directly

are required to render payment of the full purchase price to the auction markets before the close

---

[2]                 Section 301. "Stockyard owner"; "stockyard services"; "market agency"; "dealer"; defined.

          When used in this Act—

          (a) The term "stockyard owner" means any person engaged in the business of conducting or operating a stockyard;

          (b) The term "stockyard services" means services or facilities furnished at a stockyard in connection with the receiving, buying, or selling on a commission basis or otherwise, marketing, feeding, watering, holding, delivery, shipment, weighing, or handling in commerce, of livestock;

          **(c) The term "market agency" means any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services;** and

          (d) The term "dealer" means any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser.

7 U.S.C. §201 [Emphasis added]

[3]                 § 201.42 Custodial accounts for trust funds.

          (a) Payments for livestock are trust funds. Each payment that a livestock buyer makes to a market agency selling on commission is a trust fund. Funds deposited in custodial accounts are also trust funds.

          (b) Custodial accounts for shippers' proceeds. Every market agency engaged in selling livestock on a commission or agency basis shall establish and maintain a separate bank account designated as "Custodial Account for Shippers' Proceeds," or some similar identifying designation, to disclose that the depositor is acting as a fiduciary and that the funds in the account are trust funds.

9 CFR §201.42, Regulations Under The Packers and Stockyards Act. [Emphasis added]

of business the next business day. 7 U.S.C. §228b(a) These payments are deposited into the custodial account bringing it back into balance, theoretically within 24 hours. However, the "mailbox" rule applies to payments, so checks written in payment the next business day can take mail delivery time and funds clearing time before the custodial account is in balance. **The auction markets are required to deposit into the custodial account before close of business the next day after sale** "(1) the proceeds from the sale of livestock that have been collected;" and (2) the receivable amounts due from livestock purchased by the auction market or its owners, officers, or employees or a credit buyer. 9 C.F.R. §201.42(c) **The Stockyard Act and regulations require that the custodial account of the stockyards/auction markets be totally in balance within seven (7) days.** 9 C.F.R. §201.42 Consequently, the auction markets are required to deposit all amounts not collected, including dishonored check amounts, before the close of the seventh day until the account has been reimbursed in full. *Id.*

> . . . The market agency shall thereafter deposit in the custodial account all proceeds collected until the account has been reimbursed in full, and shall, before the close of the seventh day following the sale of livestock, deposit an amount equal to all the remaining proceeds receivable whether or not the proceeds have been collected by the market agency

9 C.F.R. §201.42(c)

     5.      Under the Stockyards Act all deposits into a custodial account are trust funds held for the protection of unpaid sellers. 9 C.F.R. §201.42(a)[4] This includes check deposits that are ultimately dishonored. See *Central Bank of Mississippi v. Butler*, 517 So.2d 507 (Miss. 1987).

---

[4]      This is distinguished from the "Packers Trust" under 7 U.S.C, 196.

### *Eastern As Dealer, Market Agency, And Clearing Agency*

6.      Depending on the transactions in question, Debtor Eastern acted as a "Dealer" for its own account or that of others as an employee or agent on commission or in other instances as a "Market Agency" or in Florida a "Clearing Agency." *See* 7 U.S.C. §201(c) and (d); 9 C.F.R. §§201.10(d), 201.29, 201.30(c), 201.31(c). The Stockyards Act regulations, specifically 9 C.F.R. §201.31 identifies four (4) separate capacities in which the a "dealer," "market agency," or "packer" may properly enagage under a surety bond. These capacities are termed bond *Condition Clause Nos. 1-4. Id.* In Florida only *Condition Clause No. 3* identifying the role of "Clearing Agency" is implicated. As noted previously, I.E "Jim" Byrd through Oak Lake served as "Order Buyer" for his livestock buyer clients and cleared all of Oak Lake's transactions as "Clearee" through Debtor Eastern as "Clearing Agency."[5] *See* **Exhibits B, C, D, E, and F**. As a *Condition Clause No. 3* "Clearing Agency" Debtor Eastern had a duty: (i) to render payment when due to the parties entitled to proceeds from purchases by the "Clearee" and (ii) to safely keep and properly disburse all funds held as "Clearing Agency" for the Clearee for the purpose paying for livestock purchased.

> (c) *Condition Clause No. 3: When the [bond] principal clears other registrants buying livestock and thus is responsible for the obligations of such other registrants.*  If the said [bond] principal, acting as a clearing agency responsible for the financial obligations of other registrants engaged in buying livestock, viz: (Insert here the names of such other registrants as they appear in the application for registration), or if such other registrants, shall ***(1) pay when due to the person or persons entitled thereto the***

---

[5]      I.E. "Jim" Byrd's arrangement with Eastern called for: (i) payment to Eastern of a clearing commission calculated at $.50 per 100 lbs wt. of livestock purchased; (ii) commission payment net of Eastern transaction expenses which could include losses or errors on livestock shipped, livestock losses or deaths in transit, buyer non-payment, and in some cases interest on livestock inventory held by Byrd; (iii) advice and direction by Byrd to Eastern for all purchases of livestock and distributions for commissions, yardage and other expenses—all of which evidence Eastern's agency relation to Oak Lake.

> *purchase price of all livestock purchased by such other registrants for their own account or for the accounts of others; and (2) safely keep and properly disburse all funds coming into the hands of such [bond] principal or such other registrants for the purpose of paying for livestock purchased for the accounts of others.*

9 C.F.R. §201.31(c). [Emphasis added]

7.      This duty has now fallen to the Trustee of Chapter 11 Debtor Eastern Livestock Co., LLC. The Florida Creditors claims are for amounts due from unpaid sales of livestock purchased by Oak Lake as Order Buyer for his clients and "Clearee" of Eastern acting as "Clearing Agency." The failure of the Trustee to render payment may be a violation of the Stockyards Act. ***"An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act."*** *Matter of Snyder*, 184 B.R. 473, 475 (D.Md.1995); *Central Bank Of Mississippi v. Butler*, 517 So.2d 507 (Miss. 1987).

8.      Acting as "Clearing Agency"—an agent for the Order Buyer/Clearee Oak Lake Cattle Co.—Debtor Eastern never took title in the livestock transactions in Florida. Title in these instances passed directly from livestock producers as sellers to the actual buyers for whom Oak Lake acted as Order Buyer and agent. The Florida Markets or sale barns were Market Agencies selling livestock on consignment. The Order Buyer, Oak Lake, was a Market Agency buying for his clients but clearing the transactions through Eastern as Clearing Agency.

9.      Eastern, the Trustee, Fifth Third Bank, and their counsel have on numerous occasions mistakenly referred to I.E. "Jim" Byrd and Oak Lake at a "Branch." This implies that Eastern "employed" Byrd or the Oak Lake was an "independent contractor" in some way or that Eastern somehow directed the activities of Byrd and Oak Lake. This was not the case. Just the reverse was true. First, Byrd and Oak Lake purchased for their livestock buyer clients—filling

orders, bidding, purchasing, and shipping cattle at auction as "Order Buyer." Second, the auction markets invoiced Byrd/Oak Lake directly for the purchases. Byrd/Oak Lake as "Clearee" would then advise Eastern as "Clearing Agency" of the payments due. Third, Byrd/Oak Lake would submit the accumulated invoices to the buyers, again directly, and advised Eastern of the invoiced amounts and the payees. Fourth and finally, Byrd/Oak Lake shouldered the risk in the transactions, essentially guaranteeing Eastern's clearing commission on a net, net, net basis. Byrd would be responsible for all transaction expenses, including losses from livestock errors or deaths in transit and non-payment by the buyer. Eastern was essentially Byrd/Oak Lake's back office. Eastern was in fact agent to Byrd/Oak Lake and Byrd/Oak Lake were agents to their buyer clients. See **Exhibits C, D, E, and F** (Affidavits of K.Tanner, C,McKettrick, T.Clemons, and I.E.Byrd).

10.     The failure to deliver payment of shippers' proceeds has long been recognized as proscribed deceptive practice under the Stockyards Act, which is designed to prevent potential injury by stopping unlawful practices in their incipiency. *Daniels v. United States*, 242 F.2d 39, 42 (7th Cir. 1957).  Indeed, proof of a particular injury is not required to establish a claim where payment has not been rendered, as here. *Id*; see also *Van Wyk v. Bergland*, 570 F.2d 701 (8th Cir. 1978)(Failure of corporation engaged in buying and selling of cattle to pay for livestock in a timely manner falls within regulatory scheme of the Stockyards Act. Fact that corporation's inability to meet its obligations might be characterized as debtor/creditor problem was irrelevant). Eastern's failure to render payment, much less timely payment, was a violation of the Stockyards Act. *Id.*; 7 U.S.C. §228b(c) This responsibility to render payment falls to the Trustee not only upon stepping into Eastern's shoes but also as a party in a position to control the trust assets. See *Snyder*, 184 B.R. 473, 475; *Central Bank Of Mississippi*, 517 So.2d 507, 510-11

Indeed, as a party in a position to control trust asset payments, the account hold and set-off causing numerous checks deposited to custodial accounts across the country to be dishonored for insufficient funds and return to maker are violations for which under *Snyder* and *Central Bank of Missippi* even Fifth Third Bank may be held personally liable. *Id.*

11.     Finally, with respect to the Rush Creek and Len Miller purchases and the dishonoring of checks written in payment for livestock—Eastern not only failed to clear the transactions in violation of the Stockyards Act but also violated Florida's fraudulent check law. , By delivering payment for the livestock purchased with dishonored checks, Eastern committed a per se fraudulent practice in Florida for which remedy is provided under *Section 68.065, Florida Statutes—Actions To Collect Worthless Checks, Drafts, Or Orders Of Payment; Attorney's Fees And Collection Costs*. Section 68.065 governs collection actions under Florida law for the dishonoring of checks. Upon demand for payment under the statute, Section 68.065 provides strict liability to the "payee for recovery of the face amount of the dishonored check plus up to a five percent (5%) service charge. If payment is not forthcoming within thirty (30) days in response to demand, the payee has a right of action for: (i) the face amount of the dishonored check, (ii) plus the service charge of up to five percent (5%) of the face amount, (iii) plus bank fees incurred by the payee, (iv) plus prejudgment statutory interest, (v) plus triple the face amount in damages, (vi) plus court costs and reasonable attorney fees. The Florida Markets have asserted claim nos. 226, 227, 228, 229, 230,232, and 233 for dishonored checks as outlined herein after making the statutory required demand on or about May 1, 2011.[6]

---

[6]     Separately and upon becoming aware of Fifth Third Bank's complicity in the dishonoring of the checks, the Florida Markets made the statutory demand upon Fifth Third Bank on or about January 9, 2012.

## CLAIM SUMMARIES

12.     The amount of the claims from all of the Florida livestock markets arising from the Rush Creek Ranch, LLC and Len Miller purchases between October 11, 2010 and November 3, 2010 are summarized below. Beginning with Rush Creek the claim payment and distribution summary follows below. Detail supporting the nature of the Rush Creek transactions, and the amounts due and payable to the transaction participants is attached hereto in **Exhibits C-F** (Affidavits);**Exhibit F**, Ex.C, at 44-50 (Rush Creek summaries), and **Exhibit G** (Rush Creek detail).

### *Rush Creek Ranch, LLLP*

| Party | Claim Nos. | Description | Total Weight | No. Head | Rush Creek |
|---|---|---|---|---|---|
| ARCADIA STOCKYARD | 191 | Livestock Sales | 33,615 | 175 | $ 45,928.29 |
| CATTLEMENS L/S MKT | 192 | Livestock Sales | 17,060 | 87 | $ 23,055.28 |
| COLUMBIA L/S MKT | 193 | Livestock Sales | 4,100 | 23 | $ 5,265.77 |
| HARDEE L/S MKT | 194 | Livestock Sales | 11,295 | 56 | $ 13,254.70 |
| NORTH FLA L/S MKT | 195 | Livestock Sales | 3,530 | 18 | $ 4,759.70 |
| OCALA L/S MKT | 196 | Livestock Sales | 5,195 | 26 | $ 7,138.35 |
| OKEECHOBEE L/S MKT | 197 | Livestock Sales | 7,020 | 36 | $ 8,880.60 |
| SUMTER CO FARMS MK | 198 | Livestock Sales | 8,325 | 42 | $ 8,664.90 |
| TOWNSEND L/S MKT | 199 | Livestock Sales | 2,035 | 11 | $ 2,485.20 |
| **Florida Markets Total** | | **Livestock Sales** | **92,175** | **474** | **$ 119,432.79** |
| | | | | | |
| **Ron Sizemore Trucking** | 190 | **Trucking** | | **n/a** | **$ 1,422.69** |
| | | | | | |
| **Oak Lake Cattle Co.** | 187-189 | **Purch. Commiss.** | | **n/a** | **$ 1,900.52** |
| | | | | | |
| D & R TRUCKING | | Trucking | | n/a | $ 139.04 |
| PACO ANUEZ | | Trucking | | n/a | $ 26.59 |
| | | | | | |
| EASTERN Clearing | | Clear. Commiss. | $.50/cwt | n/a | $ 666.47 |
| EASTERN Payments | | Livestock Pmts. | 41,120 | 217 | $ 54,645.19 |
| **Total EASTERN** | | | **41,120** | **217** | **$ 55,311.66** |
| | | | | | |
| **TOTALS** | | | **133,295** | **691** | **$ 178,233.29** |

10

13.     The nature of the Len Miller and the Rush Creek transactions was identical, except for where the buyer rendered payment. In Rush Creek the sale proceeds were interpled with the Wisconsin state court. The Len Miller payment was rendered to the Trustee as a Purchase Money and follows below. Detail supporting the nature of the Miller transactions and the amounts due and payable to participants is attached hereto in **Exhibits C-F** (Affidavits);**Exhibit F**, Ex.D, at 51-55 (Miller summaries), and **Exhibit H** (Miller detail).

*Len Miller*

| Party | Claim Nos. | Description | Total Weight | No. Head | Miller |
|---|---|---|---|---|---|
| ARCADIA STOCKYARD | 181 | Livestock Sales | 28,655 | 79 | $ 28,556.06 |
| CATTLEMENS L/S MKT | 183 | Livestock Sales | 11,340 | 99 | $ 37,382.15 |
| HARDEE L/S MKT | 185 | Livestock Sales | 8,365 | 32 | $ 10,888.80 |
| OCALA L/S MKT | 184 | Livestock Sales | 23,275 | 23 | $ 8,490.10 |
| OKEECHOBEE L/S MKT | 182 | Livestock Sales | 36,515 | 65 | $ 23,104.48 |
| SUMTER CO FARMS MK | 186 | Livestock Sales | 22,040 | 64 | $ 22,280.16 |
| **Florida Markets Total** | | **Livestock Sales** | **130,190** | **362** | **$ 130,701.75** |
| | | | | | |
| **Ron Sizemore Trucking** | **190** | **Trucking** | | **n/a** | **$ 13,956.91** |
| | | | | | |
| Eagle Bay, Inc. | | Yardage, etc | | n/a | $ 2,265.40 |
| Oak Lake Cattle Co. | | Purch. Commiss. | | n/a | $ 1,493.45 |
| Less: Adjustment | | Livestock Sales | | (4) | $ (636.32) |
| **Total Oak Lake** | 187-189 | | | **(4)** | **$ 857.13** |
| | | | | | |
| EASTERN | | Clearing Commiss. | $.50/cwt | n/a | $ 650.95 |
| EASTERN | | Livestock Pmts. | | n/a | $ - |
| **Total EASTERN** | | | | **n/a** | **$ 650.95** |
| | | | | | |
| **TOTAL PAYMENTS** | | | **130,190** | **358** | **$ 148,432.14** |

14.     The combined Florida claims on the Rush Creek and Len Miller payments and distribution summary for the Florida Markets and Sizemore on claims 181, 182, 183, 184, 185, 186, 190, 191, 192, 193, 194, 195, 196, 197, 198, and 199 are below. See **Exhibits C-H.** Details for the Oak Lake, Eagle Bay, and Daniel Byrd claim nos. 187, 188, and 189 are to be found in **Exhibit I** discussed, *Infra*.

*Combined Rush Creek Ranch, LLLP and Len Miller Transactions*

| Party | Claim Nos. | RC Head | Rush Creek | Claim Nos. | LM Head | Len Miller | Total Head | TOTAL |
|---|---|---|---|---|---|---|---|---|
| ARCADIA STOCKYARD | 191 | 175 | $  45,928.29 | 181 | 79 | $  28,556.06 | 254 | $  74,484.35 |
| CATTLEMENS L/S MKT | 192 | 87 | 23,055.28 | 183 | 99 | 37,382.15 | 186 | 60,437.43 |
| COLUMBIA L/S MKT | 193 | 23 | 5,265.77 | | -- | -- | 23 | 5,265.77 |
| HARDEE L/S MKT | 194 | 56 | 13,254.70 | 185 | 32 | 10,888.80 | 88 | 24,143.50 |
| NORTH FLA L/S MKT | 195 | 18 | 4,759.70 | | -- | -- | 18 | 4,759.70 |
| OCALA L/S MKT | 196 | 26 | 7,138.35 | 184 | 23 | 8,490.10 | 49 | 15,628.45 |
| OKEECHOBEE L/S MKT | 197 | 36 | 8,880.60 | 182 | 65 | 23,104.48 | 101 | 31,985.08 |
| SUMTER CO FARMS MK | 198 | 42 | 8,664.90 | 186 | 64 | 22,280.16 | 106 | 30,945.06 |
| TOWNSEND L/S MKT | 199 | 11 | 2,485.20 | | -- | -- | 11 | 2,485.20 |
| **Florida Mkts. Total** | | **474** | **$119,432.79** | | **362** | **$130,701.75** | **836** | **$250,134.54** |
| | | | | | | | | |
| Oak Lake | | | 1,900.52 | | | 1,493.45 | | 3,393.97 |
| Eagle Bay, Inc. | | | 0.00 | | | 2,265.40 | | 2,265.40 |
| Less: Adjustment | | | 0.00 | | | (636.32) | | (636.32) |
| **Total Oak Lake** | 187-89 | | **$1,900.52** | 187-89 | | **$3,122.53** | | **$5,023.05** |
| | | | | | | | | |
| **Total Sizemore** | 190 | | **$1,422.69** | 190 | | **$13,956.91** | | **$15,379.60** |
| | | | | | | | | |
| D & R TRUCKING | | | 139.04 | | | -- | | 139.04 |
| PACO ANUEZ | | | 26.59 | | | -- | | 26.59 |
| **Total Other** | | | **$165.63** | | | **--** | | **$165.63** |
| | | | | | | | | |
| EASTERN | | | 666.47 | | | 650.95 | | 1,317.42 |
| EASTERN | | 217 | 54,645.19 | | -- | -- | 217 | 54,645.19 |
| **Total Due EASTERN** | | **217** | **$55,311.66** | | | **$650.95** | **217** | **$55,962.61** |
| | | | | | | | | |
| **TOTAL TRANSACTIONS** | | | **$178,233.29** | | | **$148,432.14** | | **$326,665.43** |
| | | | | | | | | |
| **TOTAL Net Due Florida Markets** | | **257** | **$122,921.63** | | **362** | **$147,781.19** | **619** | **$270,702.82** |

15.     As noted previously, I.E. "Jim" Byrd through his company Oak Lake Cattle Co.
and together with his son, Daniel Byrd, served as Order Buyers for their clients that included
certainly the Rush Creek and Miller transactions outlined above but also included transactions
with D.R. Daniels, Jacob Larson, Cody Whitney, Tom Berend and Tom Herrmann among others.
All of these transactions were cleared by Eastern as "Clearing Agency" and Oak Lake as
"Clearee." The clearing arrangement with Eastern called for Eastern to receive a clearing

commission calculated at $.50 per 100 lbs wt. (also referred to as "hundred weight" or "/cwt") of livestock purchased and paid net of the transaction costs which Eastern recovered. In effect Oak Lake guaranteed the net clearing commission to Eastern. The transaction risk was all Oak Lake's. *See* Note 5, *Supra*. Oak Lake's account with Eastern consisted of the Oak Lake commissions after netting transaction expenses or losses from the ongoing series of transactions. *Id.* The transaction losses could potentially include livestock shipping errors and deaths in transit and buyer non-payment. *Id.*

EASTERN LIVESTOCK CO.
BRANCH # 22   TEL (863) 763-5600
P.O. Box 1284  FAX (863) 763-7468
OKEECHOBEE, FLORIDA 34973
FAX 608.675.3345/352.
CATTLE WORKSHEET

DATE _____ 8-Jan-10 _____  INVOICE # _____ 291141

RUSH CREEK RANCH
8121 LUDLOW AVE.
VIROQUA, WI. 54665

| SORT # | HEAD | WEIGHT | AMOUNT | COST OF CATTLE | |
|---|---|---|---|---|---|
| 10 | 79 | 17,982 | $23,354.25 | INVOICE AMOUNT | $46,079.68 |
| 10X | 76 | 17,583 | $19,455.49 | CATTLE | $42,809.74 |
| | | | | TRUCKING | $615.78 |
| | | | | COMM( /cwt) | |
| | | | | COMM( /cwt) | |
| | | | | MISC EXPENSE | |
| | | | | (YP)EAGBAY | $465.00 |
| | | | | (VP)EAGBAY | $465.00 |
| | | | | (FL)EAGBAY | $80.00 |
| | | | | (VP)EAGBAY | $1,000.00 |
| | | | | (CP)DANBYR | $150.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | CLEARING ( /cwt) | $177.83 |
| | 155 | 35,565 | $42,809.74 | P & L | $316.33 |

| MILES | RATE | TOTAL | | DELIVER: | DON QUINCEY |
|---|---|---|---|---|---|
| | | $615.78 | | | |

TRUCKER: ANDREWS

| Sort# | Head | Weight | Average | Total $ | Cost/# | Inv $/# | | New $ Total | Ave./hd |
|---|---|---|---|---|---|---|---|---|---|
| 10 | 79 | 17,982 | 228 | $23,354.25 | 1.2988 | 1.3879 | | $24,957.22 | $315.91 |
| 10X | 76 | 17,583 | 231 | $19,455.49 | 1.1065 | 1.2013 | | $21,122.46 | $277.93 |
| 0 | 0 | 0 | #DIV/0! | $0.00 | #DIV/0! | | | $0.00 | #DIV/0! |
| 0 | 0 | 0 | #DIV/0! | $0.00 | #DIV/0! | | | $0.00 | #DIV/0! |
| 0 | 0 | 0 | #DIV/0! | $0.00 | #DIV/0! | | | $0.00 | #DIV/0! |
| 0 | 0 | 0 | #DIV/0! | $0.00 | #DIV/0! | | | $0.00 | #DIV/0! |
| | 155 | 35,565 | | $42,809.74 | | | | $46,079.68 | |

16.    For each buyer invoice submitted by Oak Lake to its customers, Byrd/Oak Lake would accumulate the Florida Market livestock purchases for that customer with a "Cattle

Worksheet" identifying the (i) invoiced livestock amount, (ii) trucking expenses, (iii) yardage expenses, (iv) buying commissions, (v) clearing commission, and (vi) a final P&L to Oak Lake. The "Cattle Worksheet" for the transactions in question can be found in the attached detail. A Rush Creek "Cattle Worksheet" on Invoice No. 291141 that was cleared in January 2010 is represented above. See **Exhibits G**, at 59, 75, 91, 107 and **Exhibit H**, at 124, 136

17.     Below is the Amended Claim Summary for Claims 187, 188, and 189 taking into account the "Cleared" transactions in 2010 with Eastern for which Oak Lake, Eagle Bay, and Daniel Byrd did not receive payment, a dishonored check for yardage services to Eagle Bay, and the livestock for which Eastern paid but did not receive payment (exclusive of Rush Creek and Miller).

*Amended Oak Lake Cattle Co., Eagle Bay, and Daniel Byrd*

| DESCRIPTION | Oak Lake Claim 187 | Eagle Bay Claim 188 | D. Byrd Claim 189 | TOTAL |
|---|---|---|---|---|
| **Invoices 291141 to 291254 Inclusive Total Revised Claims 187, 188, 189** | $34,819.48 | $29,718.58 | $10,309.27 | $74,848.33 |
| | | | | |
| **1.  Transaction Invoice Claim Adjustments** | | | | |
| Collected From EASTERN in 2010 | ($4,599.42) | ($26,508.92) | ($10,309.27) | ($41,165.21) |
| Check No.122470 Return To Maker | | $1,057.90 | | $1,057.90 |
| | | | | |
| **TOTAL DUE OAK LAKE** | $30,220.06 | $4,268.56 | $0.00 | $34,488.62 |
| | | | | |
| **2.  Livestock Inventory Sold Adjustments** | | | | |
| **No. Head        Wt.** | | | | |
| Cattle #11 - No. Hd.      161      29490 | ($34,633.10) | | | ($34,633.10) |
| Cattle #11X - No. Hd.     209      38569 | ($40,991.42) | | | ($40,991.42) |
| Cattle #91X - No. Hd.      14      13300 | ($10,000.00) | | | ($10,000.00) |
| **TOTAL DUE (EASTERN)      384      81359** | ($85,624.52) | $0.00 | $0.00 | ($85,624.52) |
| | | | | |
| **NET DUE OAK LAKE / (EASTERN)** | ($55,404.46) | $4,268.56 | $0.00 | ($51,135.90) |

18.     Detail supporting the Oak Lake, Eagle Bay, and D. Byrd claims 187, 188, and 189 respectively is attached as **Exhibit I**.

14

19.     When Eastern failed to clear the transactions of several of Oak Lake's customers either with dishonored checks or non-payment, these customers paid Oak Lake directly and Oak Lake in turn paid the Florida Markets. The transaction invoices in question are identified below:

*Oak Lake Customer Direct Payment To Markets*

| Buyer | Invoice Nos. | Invoice Dates | No. Head | Total Wt. | Cattle | Total Invoice |
|-------|-------------|--------------|----------|-----------|--------|---------------|
| Tommy Berend | 291250 | 29-Oct-10 | 63 | 24,020 | $ 25,946.98 | $ 27,161.82 |
| Tommy Berend | 291255 | 05-Nov-10 | 42 | 15,960 | $ 17,161.35 | $ 17,982.13 |
| **Total Berend** | | | **105** | **39,980** | **$ 43,108.33** | **$ 45,143.95** |
| | | | | | | |
| D.R. Daniel | 291256 | 05-Nov-10 | 58 | 51,960 | $ 34,113.33 | $ 34,373.13 |
| **Total D.R. Daniel** | | | **58** | **51,960** | **$ 34,113.33** | **$ 34,373.13** |
| | | | | | | |
| Tom Herrmann | 29149 | 29-Oct-10 | 73 | 18,600 | $ 20,469.78 | $ 22,884.04 |
| **Total Herrmann** | | | **73** | **18,600** | **$ 20,469.78** | **$ 22,884.04** |
| | | | | | | |
| Jacob Larson | 291252 | 04-Nov-10 | 49 | 38,830 | $ 13,767.67 | $ 14,547.27 |
| **Total Larson** | | | **49** | **38,830** | **$ 13,767.67** | **$ 14,547.27** |

20.     Again, these are transactions which Eastern would normally have cleared and may have attempted to clear without success. When the Clearing Agency failed to perform, the Buyers paid the Florida Markets directly.

21.     Finally, there are the Florida Market claims for nineteen (19) dishonored checks pursuant to Section 68.065, Florida Statutes. All of the checks were delivered by Debtor Eastern as "Clearing Agency" in payment for livestock purchased by Oak Lake as Order Buyer for its purchaser clients and as "Clearee" of Eastern. The checks were deposited into the custodial accounts of the Florida Markets and subsequently dishonored. Demand upon the maker of the checks pursuant to the Section 68.065(3), Florida Statutes, was made on or about May 1, 2011. A summary of the checks and the claims under Florida law is below. Detail for these transactions including copies of the demand letters and cancelled checks can be found in Claims 225, 226, 227, 228, 229, 230, 232, and 233.

*Florida Markets Claims Under Section 68.065, Florida Statutes*

| Date | Eastern Ck. No. | Payee | Face Amount | 5% Face Collection | Demand Amount | Multiple 3X Face Amt. | Excl. Of Fees & Costs TOTAL DUE |
|---|---|---|---|---|---|---|---|
| 26-Oct-10 | 123349 | Arcadia | $15,220.99 | $761.05 | $15,982.04 | $45,662.97 | $60,883.96 |
| 21-Oct-10 | 122977 | Arcadia | $21,470.37 | $1,073.52 | $22,543.89 | $64,411.11 | $85,881.48 |
| 28-Oct-10 | 124749 | Arcadia | $42,078.29 | $2,103.91 | $44,182.20 | $126,234.87 | $168,313.16 |
| 29-Oct-10 | 124923 | Arcadia | $1,586.95 | $79.35 | $1,666.30 | $4,760.85 | $6,347.80 |
| **Claim No. 225 (4 cks)** | | **Total Arcadia** | **$80,356.60** | **$4,017.83** | **$84,374.43** | **$241,069.80** | **$321,426.40** |
| | | | | | | | |
| 20-Oct-10 | 122880 | Cattlemen's | $8,925.86 | $446.29 | $9,372.15 | $26,777.58 | $35,703.44 |
| 27-Oct-10 | 123604 | Cattlemen's | $30,286.46 | $1,514.32 | $31,800.78 | $90,859.38 | $121,145.84 |
| **Claim No. 226 (2cks)** | | **Total Cattlemen's** | **$39,212.32** | **$1,960.62** | **$41,172.94** | **$117,636.96** | **$156,849.28** |
| | | | | | | | |
| 20-Oct-10 | 123345 | Columbia | $4,534.51 | $226.73 | $4,761.24 | $13,603.53 | $18,138.04 |
| **Claim No. 227 (1 ck)** | | **Total Columbia** | **$4,534.51** | **$226.73** | **$4,761.24** | **$13,603.53** | **$18,138.04** |
| | | | | | | | |
| 29-Oct-10 | 124922 | Hardee | $2,700.10 | $135.01 | $2,835.11 | $8,100.30 | $10,800.40 |
| 26-Oct-10 | 123347 | Hardee | $9,360.30 | $468.02 | $9,828.32 | $28,080.90 | $37,441.20 |
| **Claim No. 228 (2 cks)** | | **Total Hardee** | **$12,060.40** | **$603.02** | **$12,663.42** | **$36,181.20** | **$48,241.60** |
| | | | | | | | |
| 10/26/10 | 123343 | Ocala Livestock | $6,691.70 | $334.59 | $7,026.29 | $20,075.10 | $26,766.80 |
| 10/27/10 | 124657 | Ocala Livestock | $4,713.15 | $235.66 | $4,948.81 | $14,139.45 | $18,852.60 |
| 10/29/10 | 125925 | Ocala Livestock | $11,778.70 | $588.94 | $12,367.64 | $35,336.10 | $47,114.80 |
| 11/2/10 | 125124 | Ocala Livestock | $3,687.15 | $184.36 | $3,871.51 | $11,061.45 | $14,748.60 |
| 11/2/10 | 125146 | Ocala Livestock | $2,425.20 | $121.26 | $2,546.46 | $7,275.60 | $9,700.80 |
| **Claim No. 229 (5 cks)** | | **Total Ocala** | **$29,295.90** | **$1,464.80** | **$30,760.70** | **$87,887.70** | **$117,183.60** |
| | | | | | | | |
| 27-Oct-10 | 124607 | Okeechobee | $15,171.87 | $758.59 | $15,930.46 | $45,515.61 | $60,687.48 |
| 29-Oct-10 | 124924 | Okeechobee | $4,404.03 | $220.20 | $4,624.23 | $13,212.09 | $17,616.12 |
| 26-Oct-10 | 123351 | Okeechobee | $13,671.72 | $683.59 | $14,355.31 | $41,015.16 | $54,686.88 |
| **Claim No. 230 (3 cks)** | | **Total Okeechobee** | **$33,247.62** | **$1,662.38** | **$34,910.00** | **$99,742.86** | **$132,990.48** |
| | | | | | | | |
| 27-Oct-10 | 124606 | Sumter | $26,775.75 | $1,338.79 | $28,114.54 | $80,327.25 | $107,103.00 |
| **Claim No. 232 (1 ck)** | | **Total Sumter** | **$26,775.75** | **$1,338.79** | **$28,114.54** | **$80,327.25** | **$107,103.00** |
| | | | | | | | |
| 27-Oct-10 | 124609 | Townsendt | $2,485.20 | $124.26 | $2,609.46 | $7,455.60 | $9,940.80 |
| **Claim No. 233 (1 ck)** | | **Total Townsend** | **$2,485.20** | **$124.26** | **$2,609.46** | **$7,455.60** | **$9,940.80** |
| | | | | | | | |
| **No. Checks** | **19** | **TOTAL MARKETS** | **$227,968.30** | **$11,398.42** | **$239,366.72** | **$683,904.90** | **$911,873.20** |

16

Respectfully submitted this 9th day of March 2012,

W. SCOTT NEWBERN, P. L

/s/ W. Scott Newbern

W. SCOTT NEWBERN
Florida Bar No. 0098108
2982 East Giverny Circle
Tallahassee, Florida 32309
(T)  850.591.1707
(F)  850.894.0824
wsnewbern@msn.com

COUNSEL FOR CLAIMANTS HILLIARD-MCKETTRICK INVESTMENTS, INC. d/b/a ARCADIA STOCKYARD, CATTLEMEN'S LIVESTOCK AUCTION MARKET, INC.; COLUMBIA LIVESTOCK MARKET OF LAKE CITY, INC.; HARDEE LIVESTOCK MARKET, INC.; NORTH FLORIDA LIVESTOCK MARKET, INC.; OCALA LIVESTOCK MARKET, INC.; OKEECHOBEE LIVESTOCK MARKET, INC.; SUMTER COUNTY FARMERS MARKET, INC.; MADISON LIVESTOCK MARKET, INC. d/b/a TOWNSEND LIVESTOCK MARKET; RON SIZEMORE TRUCKING, INC.; OAK LAKE CATTLE CO.; EAGLE BAY, INC.; and DANIEL M. BYRD

### AFFIRMATION

I, W. SCOTT NEWBERN, declare that I have personal knowledge of the facts set forth hereinabove, except as indicated, and declare under penalty of perjury of the laws of the United States of America that such facts are true and correct.  Executed at 2982 East Giverny, Tallahassee, Florida 32309 this 9th day of March, 2012.

By: /s/ W. Scott Newbern, Esq.

W. Scott Newbern, Esq.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of March, a copy of the foregoing was filed

electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case

Filing System. Parties may access this filing through the Court's system.

/s/ W. Scott Newbern
W. SCOTT NEWBERN