UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| EASTERN LIVESTOCK CO., LLC, | : | Case No.: 10-93904-BHL-11 |
| Debtor. | : |  |

**PRELIMINARY REPORT OF SPECIAL COUNSEL FOR THE TRUSTEE, JAMES A. KNAUER REGARDING INVESTIGATION OF FIFTH THIRD BANK'S PROOF OF CLAIM AND POTENTIAL CLAIMS AGAINST FIFTH THIRD BANK**

**Introduction**

Hoover Hull LLP ("Hoover Hull" or "Special Counsel"), Special Counsel for the Trustee James A. Knauer respectfully submits this Preliminary Report of Special Counsel for the Trustee, James A. Knauer Regarding Investigation of Fifth Third Bank's Proof of Claim and Potential Claims Against Fifth Third Bank (the "Preliminary Report").  The Preliminary Report is as follows:

1.  On February 10, 2011, the Court entered its "Order Granting Application to Employ Hoover Hull LLP as Special Counsel" [Docket #267] (the "Special Counsel Order"). The Special Counsel Order approved the Trustee's employment of Hoover Hull to (a) investigate Fifth Third Bank's ("Fifth Third") proof of claim, including whether Fifth Third has a valid, perfected, first priority pre-petition claim as set forth in its proof of claim ("POC") and whether the amount of Fifth Third's claim is correct; and (b) investigate and represent the Trustee in the prosecution of claims, if any, against Fifth Third.

**Fifth Third's POC**

2.      In conjunction with the Trustee's "Financing Motion" [Docket #271], Special Counsel collected and reviewed various loan documents, including a credit agreement and twelve (12) amendments thereto; a promissory note and amendments thereto; security agreements and financing statements; and other evidence related to Fifth Third's claim.  It was determined that Fifth Third had a valid, perfected, first priority pre-petition secured claim as set forth in its POC claim.  A true and accurate copy of Special Counsel's memorandum dated March 3, 2011, to the Trustee is attached hereto as **Exhibit A**.  Working with DSI, Hoover Hull reviewed the amount of Fifth Third's POC and determined it was correct.  Special Counsel also reviewed documents including Fifth Third's loan history, bank statements, interest due on RLOC, Fifth Third's unused line fee, wire transfers to DSI, and invoices from Vorys, Sater, Seymour and Pease LLP, Durkin Group and Agribusiness Consulting Group, LLC.

**Overview Of Investigation**

3.      Hoover Hull's review of written evidence has been extensive and is ongoing. Special Counsel issued subpoenas duces tecum to Fifth Third; Wells Fargo Business Credit, Inc. ("Wells Fargo"); Agribusiness Consulting Group LLL ("ACG"); Stoffel Consulting Services, Inc. ("Stoffel Consulting") and Wayne Stoffel ("Stoffel").  In response to the subpoenas, Special Counsel received approximately 30,000 pages of documents and e-mails from Fifth Third; 7,000 pages of documents and e-mails from Wells Fargo; and 3,000 pages of documents and e-mails from Stoffel and ACG.  Fifth Third and Wells Fargo are still engaged in a rolling production of the requested documents and continue to supplement their respective productions.  In addition, Special Counsel received approximately 1,300 pages of documents from Middleton Reutlinger,

the Debtor's pre-petition counsel.  Special Counsel also reviewed audited financial statements prepared for Eastern Livestock LLC ("ELC" or "Debtor") and related work papers for ELC's fiscal years ending September 30, 2007, 2008, and 2009.  Those financial statements and work papers were provided by Buetow, Lemastus & Dick PLLC, ELC's pre-petition auditor.

4. The Trustee's financial advisor, Development Specialist, Inc. ("DSI") also assisted Special Counsel in obtaining, summarizing, and analyzing accounting information from the ELC books and records related to ELC's pre-petition business and bank transactions.

## 2004 Examinations

5. Special Counsel conducted 2004 examinations of certain former and current employees of Fifth Third in Cincinnati on the following dates:  (i) Sean Kelly, national field exam manager– February 23, 2012; (ii) Shannon Hughes, investigative analyst – February 24, 2012; (iii) Tim Spurlock, investigator – February 24, 2012; (iv) David Fuller, Team Lead Structured Finance Group – February 27, 2012; (v) Sara Chapman, fraud manager – February 28, 2012; (vi) Amber Whitehouse, former fraud detection and prevention manager – February 29, 2012; (vii) Darrin Steinmann, Director of Investigations – February 29, 2012; (vii) Anne Kelly, Relationship Manager – March 1, 2012; (ix) Lori Hart, manager of account coordinators – March 2, 2012; (x) Devon Morse, former loss mitigation investigator – March 5, 2012; and (xi) Patty Voss, field exam manager – March 6, 2012.

6. In addition, Special Counsel conducted a Rule 2004 examination of Wayne Stoffel, an agricultural business consultant who performed the May 2010 and October 2010 field exams of ELC for Fifth Third.

7. Dan Donnellon, counsel for First Bank and Trust, and John Rogers, counsel for Superior Livestock Auction, Inc. and several attorneys for other creditors, attended most of the

3

2004 examinations.[1]  Messrs. Donnellon and Rogers suggested questions prior to and throughout each deposition and were permitted to perform questioning of some witnesses when and to the extent time permitted.

8. As to three of these witnesses, their 2004 examinations were commenced but could not be completed due to scheduling and document production issues. Those witnesses are: (1) Anne Kelly, Fifth Third's business relationship manager for ELC; (2) Patty Voss ("Voss"), the Fifth Third field examiner who conducted a special audit of ELC in May 2009; and (3) Timothy Spurlock, the Fifth Third fraud investigator who recommended to Fifth Third that it take action to close the ELC accounts in 2010.

9. Special Counsel has identified an additional Fifth Third employee and a former Fifth Third employee who, based on the records and testimony collected so far, are likely to have information useful to this investigation. Special Counsel requested that Fifth Third provide dates for 2004 examinations of (1) Krista Rackley, a Fifth Third fraud analyst who coded check kiting software "focus reports" in 2010; and (2) Michael Herr, Ms. Rackley's former supervisor and the former head of Fifth Third's Fraud Prevention and Detection Team from April 2010 to February 2011. Special Counsel also wishes to examine Doug Hoffner, an ag lending officer for Fifth Third, who recommend Mr. Stoffel to Fifth Third and spoke to Mr. Stoffel regarding his concerns over Anne Kelly's response to the May 2010 field exam.

10. There continues to be disagreement between Special Counsel and counsel for Fifth Third about how much discovery is enough for the Trustee to complete its investigation. Special Counsel and counsel for Fifth Third continue to discuss this issue. If it cannot be resolved quickly, the Trustee will ask for the Court's help.

---

[1] Stephen Weigand and Christopher Trapp, colleagues of Messrs. Dan Donnellon and John Rogers respectively, attended certain 2004 examinations when Messrs. Donnellon and Rogers had scheduling conflicts.

4

**Indictments**

11.  On September 21, 2011, Thomas Gibson, President of ELC, and Michael Steven McDonald, office manager for ELC, were indicted by a federal grand jury for the Western District of Kentucky. In that indictment Messrs. Gibson and McDonald are alleged to have defrauded Fifth Third (a national bank) by engaging in a check kiting scheme. *Indictment* ¶8. Certain checks from Thomas Gibson and affiliates of ELC were deposited in ELC's collateral account and this artificially inflated the account balance. Fifth Third granted provisional credits to ELC with respect to the deposited checks and ELC wrote checks in excess of its revolving line of credit. *Id*. The indictment alleges that McDonald was responsible for management and oversight of the line of credit. McDonald permitted ELC to write checks for cattle purchases well in excess of the credit line. *Indictment* ¶3. McDonald, allegedly with the consent of Gibson, prepared fraudulent borrowing base certificates which contained falsely inflated accounts receivable figures to obtain additional funds from Fifth Third. *Indictment* ¶9. A copy of the federal indictment is attached hereto as **Exhibit B**.

12.  The Commonwealth of Kentucky has also indicted Thomas Gibson and Steve McDonald, as well as Grant Gibson, Thomas Gibson's son and Vice President of ELC, and Darren Brangers, the controller for ELC. The Commonwealth of Kentucky charged all of the defendants with criminal syndication; engaging in organized crime Class B Felony (1 count); theft by deception over $10,000.00, Class C Felony (17 counts); theft by deception over $500.00 less than $10,000.00, Class D Felony (144 counts); and theft by deception under $500.00, Class A Misdemeanor (11 counts). A copy of the Kentucky indictment is attached hereto as **Exhibit C**. Special Counsel contacted counsel for the four indicted defendants seeking information, cooperation, and testimony. However, each indicted defendant's counsel informed Special

5

Counsel that his client would refuse to answer any questions posted by Special Counsel based on the client's rights under the Fifth and Fourteenth Amendments.

13.     The Metcalfe County Court where the criminal case commenced by the Kentucky indictment is pending ordered that certain discovery materials be made a matter of public record. Those materials include the following items:

- documents produced by Fifth Third to the Kentucky Attorney General;
- documents produced by Your Community Bank to the Kentucky Attorney General;
- audio recordings of interviews of non-defendants; and
- bank records from Fifth Third, Town & Country Bank and Your Community Bank.

Special Counsel was able to obtain and review copies of each of these items subject to the restrictions of a strict confidentiality order entered by that court.

## Focus of the Completed and Remaining Factual Investigation

14.     The ELC business records preserved by the Receiver have enabled Hoover Hull to develop a good understanding of ELC's basic business operations during 2009 and 2010. While ELC's former managers have been uncooperative, the remaining records set forth much of the day to day operations and bookkeeping practices of the business. Important questions remain concerning ELC's accounts and actions during the summer and fall of 2010. Hoover Hull intends to continue to work with DSI and to contact ELC's former CPAs to answer a few specific questions concerning the company's finances during that period.

15.     The Fifth Third records and witnesses have likewise permitted Special Counsel to form a good understanding of ELC's banking practices during 2009 and 2010. The investigation has detailed a clear picture of the additional lending that ELC was requesting, the credit extensions it received, and the maturity of its revolving line of credit during September 2010.

6

Hoover Hull has also determined how and when Fifth Third began suspecting that ELC was conducting a complex check kite operation and at the same time misrepresenting accounts receivable and cattle inventories. The Fifth Third witnesses have described actions concerning ELC's accounts that were both recommended and overruled by several different business units within Fifth Third. The three additional witness examinations discussed above are, in Special Counsel's and the Trustee's opinion, necessary to obtain a more complete picture of the bank's actions during ELC's final months. Additionally, it is necessary to resolve several outstanding document production issues and privilege log disputes with Fifth Third before a final report can be prepared.

16. Special Counsel's understanding of Wells Fargo's actions and participation is more limited. Some additional time is necessary to determine whether any 2004 examinations of Wells Fargo personnel likely would be fruitful and whether the documents produced to date are adequate to the current task.

## Potential Claims Against Fifth Third

17. Based upon the documents reviewed and examinations taken, Special Counsel is investigating potential claims against Fifth Third, including common law claims and claims under the Bankruptcy Code such as equitable subordination and preferences. A general outline of the causes of action under review follows below.

18. First, Special Counsel is investigating whether the Trustee has common law claims such as fraud, aiding and abetting, or conspiracy by Fifth Third to commit fraud or breach of fiduciary duty. Special Counsel is also investigating whether the failure to close ELC's accounts earlier causing ELC to run up additional debts that it would not have otherwise incurred is actionable (*i.e.* deepening insolvency). In analyzing these common law claims, the Trustee is

7

confronted with the equitable doctrine of *in pari delicto* which provides that one who is of equal fault cannot maintain a cause of action against others alleged to be involved in the same transaction. *See*, *e.g. Theye v. Bates*, 337 N.E.2d 837, 844 (Ind. Ct. App. 1975).

19. Second, Special Counsel is analyzing whether it would be proper for the Court to equitably subordinate part or all of Fifth Third's claim. The Sixth and Seventh Circuits, like most courts, apply the equitable subordination standard set forth in *Matter of Mobile Steel Co.*, 563 F.2d 692 F.2d 692, 699-700 (5th Cir. 1977). *See In re Baker & Getty Financial Services*, 974 F.2d 712, 717 (6th Cir. 1992) (noting that "[m]ost courts have uniformly followed and applied the *Mobile Steel* test); *In re Lifschultz Fast Freight*, 132 F.3d 339, 344-45 (7th Cir. 1997) (applying *Mobile Steel* in Seventh Circuit). Under the *Mobile Steel* test, a party seeking equitable subordination must demonstrate, by a preponderance of the evidence, three conditions:

(1) The claimant must have engaged in some type of inequitable conduct.

(2) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(3) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Id.* at 718 (citing *Mobile Steel*, 563 F.2d at 699-700).

20. Third, Special Counsel is analyzing potential preference avoidance claims against Fifth Third. The improvement in position test under 11 U.S.C. § 547(c)(5) provides that a creditor with a security interest in a floating mass of collateral, such as inventory or accounts receivable, is subject to avoidance to the extent he improves his position during the 90-day period before bankruptcy. The test is a two-point test, and requires determination of the secured creditor's position 90 days before the petition (September 7, 2010) and on the date of the petition

8

(December 6, 2010).  To evaluate the improvement in position test, courts determine the amount of debt and appraise the collateral at two points in time:

> 1. "[D]etermine the amount of the loan outstanding 90 days prior to filing and the 'value' of the collateral on that day. The difference between these figures is then computed." *In re Ebbler Furniture*, 804 F.2d at 89-90.
>
> 2. "[T]he same determinations are made as of the date of filing the petition." *Id.* at 90. That is, calculate the amount of the loan outstanding and the value of the collateral on the date of filing the petition, and calculate the difference.
>
> 3. "A comparison is made, and, if there is a reduction during the 90 day period of the amount by which the initially existing debt exceeded the security, then a preference for section 547(c)(5) purposes exists." *Id.*

To avoid such a transfer, the transfer must be "to the prejudice of other creditors holding unsecured claims."  § 547(c)(5).

21. Special Counsel is also investigating (1) whether the application of cash proceeds from Fifth Third's collateral that was used to repay debt owed to Fifth Third constitutes a preference; and (2) whether an antecedent debt arose when Fifth Third granted provisional credit to ELC and if an antecedent debt arose at the time a provisional credit is granted, whether there was a transfer from ELC to Fifth Third on account of that antecedent debt when Fifth Third revoked the provisional credit.

22. Finally, Special Counsel is analyzing whether Fifth Third was a good faith purchaser for value if ELC's cattle purchases only transferred voidable title.

## Conclusion

23. Special Counsel expects that the additional discovery can be completed and a full and final report can be prepared within 30 days.  This schedule is contingent, however, on continued cooperation of the parties and non-parties from whom additional information is required.

Respectfully submitted,

/s/ *Sean T. White*
John David Hoover (#7945-49)
jdhoover@hooverhull.com
Sean T. White (#20428-49)
swhite@hooverhull.com
Hoover Hull LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400
Facsimile: (317) 822-0234
Special Counsel for James A. Knauer, Chapter 11 Trustee

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2012, a copy of the foregoing Motion was filed and served electronically through the Court's CM/ECF System.

/s/ *Sean T. White*
Sean T. White

619382_1.DOCX/8728-1