

PERSONAL & CONFIDENTIAL - SUBJECT TO ATTORNEY-CLIENT PRIVILEGE
PROTECTED BY WORK PRODUCT DOCTRINE

## MEMORANDUM

TO: Jim Knauer, Trustee of Eastern Livestock Co., LLC

FROM: John David Hoover and Sean T. White

DATE: March 3, 2011

RE: Fifth Third Bank's Secured Claim

### QUESTION PRESENTED

Whether Fifth Third Bank has a valid, perfected pre-petition secured claim as set forth in the Fifth Third proof of claim?

### SHORT ANSWER

A court would most likely find that Fifth Third has a valid, perfected, first priority pre-petition secured claim as set forth in its Proof of Claim with respect to all pre-petition assets including without limitation, inventory, cattle, equipment, accounts receivable and proceeds with the possible exception of a 2009 Bobcat Skid Steer that may be subject to a purchase-money security interest in favor of Coactiv Capital Partners, Inc. and the Debtor's real estate.

### FACTUAL BACKGROUND

Fifth Third filed a Proof of Claim in the amount of $35,833,415.02. An itemized statement of the loan amount is attached to the Proof of Claim. The Proof of Claim has several attachments identified on the index to the Proof of Claim.

The Proof of Claim does not assert a security interest in real estate, only the "other" category was marked. Moreover, Fifth Third offers no mortgage in support of its claim. We understand that the Trustee agreed to allow Republic Bank relief from the stay with respect to the Debtor's real property in New Albany and that there was no equity in said property. *See* January 27, 2011 Amended Order on Motion for Relief from Automatic Stay and for Abandonment of Property.

I.    **Loan Documents.**

    A.    Credit Agreement dated as of August 9, 2004 between Fifth Third Bank ("Bank") and Eastern Livestock Co., LLC, a Kentucky limited liability company ("Borrower").

- Principal Amount: $22,500,000.00
- Due Date: July 31, 2006
- Interest Rate: See Pricing Grid

| Pricing Grid Level | Senior Debt to EBITDA Ratio | Applicable Prime Rate Margin | Applicable LIBOR Rate |
|---|---|---|---|
| I | >4.000 to 1.0 | 1.00% | 3.00% |
| II | >3.25 to 1.0 to ≤ 4.000 to 1.0 | 0.75% | 2.75% |
| III | ≤ 3.250 to 1.0 | 0.50% | 2.75% |

As of the closing date, the Applicable Prime Rate Margin was 1% per annum and the Applicable LIBOR Rate Margin was 3%. (*i.e.* Pricing Grid Level I).

        1.    First Amendment to Credit Agreement dated as of November 8, 2004

- Increased revolving commitment by $5,500,000 to $28,000,000
- Increased a portion of Borrowing Base that may be attributable to Eligible Inventory by $2,000,000
- Release

  – Borrower released Lender from any and all liabilities, damages and claims arising from or in any way related to the Obligations or the Loan Documents, other than such liabilities, damages and claims which arose after the execution of this Amendment ("Release")

- Reaffirmation of Guaranty by John, Pasty and Thomas Gibson
- Continuing Effect of Credit Agreement; Security Documents.

  – Except as expressly amended hereby, all of the provisions of the Credit Agreement are ratified and confirmed and remain in full force and effect. Borrower and Lender hereby expressly intend that this Amendment shall not in any manner (a) constitute the refinancing, refunding, payment or extinguishment of the Obligations evidenced by the existing Loan Documents; (b) be deemed to evidence a novation of the outstanding balance of the Obligations; or (c) affect, replace, impair, or extinguish the

2

creation, attachment, perfection or priority of the Liens on the Loan Collateral granted pursuant to the Security Documents. Borrower ratifies and reaffirms any and all grants of Liens to Lender in the Loan Collateral as security for the Obligations, and Borrower acknowledges and confirms that the grants of the Liens to Lender in the Loan Collateral: (i) represent continuing Liens on all of the Loan Collateral, (ii) secure all of the Obligations, and (iii) represent valid, first and best Liens on all of the Loan Collateral ("Continuing Effect of Credit Agreement; Security Documents")

2. Second Amendment to Credit Agreement dated as of February 9, 2005

- Increased revolving commitment by $10,000,000 to $32,500,000
- Increased a portion of Borrowing Base that may be attributable to Eligible Inventory by $2,000,000
- Wells Fargo participant to fund $10,000,000 increase in revolving commitment
- Schedule 1.1 to Credit Agreement identifies that New Albany office of Eastern Livestock is owned by Eastern Livestock
- Reaffirmation of Guaranty by John, Pasty and Thomas Gibson
- Release
- Continuing Effect of Credit Agreement; Security Documents

3. Third Amendment to Credit Agreement dated as of July 31, 2006

- Extend termination date to 10/30/2006 pending consideration of two (2) year extension of termination date requested by Borrower
- John Gibson died March 9, 2006 – event of default – Borrower to present plan for the transition of ownership of Borrower held by John Gibson
- Reaffirmation of Guaranty by John, Pasty and Thomas Gibson
- Release
- Continuing Effect of Credit Agreement; Security Documents

4. Fourth Amendment to Credit Agreement dated as of October 25, 2006

- Borrower requested Lender:
  - Waive certain existing events of default
  - Consent to Ownership Transition
  - Consent to the Real Estate Conveyance
  - Consent to the Initial Distribution and Note Payment Distributions
  - Consent to the release of guaranty of John Gibson
  - Amend Credit Agreement to extend termination date to October 31, 2008
  - Landlord waiver from Edmonton Cattle LLC

3

       Lender agreed subject to terms of Amendment

- Reaffirmation of Guaranty by Thomas and Pasty Gibson
- Release
- Continuing Effect of Credit Agreement; Security Documents

5. Fifth Amendment to Credit Agreement dated October 31, 2008

    - Extend termination date to January 30, 2009
    - Reservation of Rights re: existing defaults – suspended imposing default rate
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Increase in Applicable Prime Rate Margin to 4%
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

6. Sixth Amendment to Credit Agreement dated January 30, 2009

    - Extend termination date to March 2, 2009
    - Reservation of Rights on existing defaults
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

7. Seventh Amendment to Credit Agreement dated March 2, 2009

    - Extend termination date to May 4, 2009
    - Reservation of Rights on existing defaults
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

8. Eighth Amendment to Credit Agreement dated May 4, 2009

    - Extend termination date to May 26, 2009
    - Reservation of Rights on existing defaults
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

9. Ninth Amendment to Credit Agreement dated June 5, 2009 to be effective as of May 26, 2009

    - Borrower requests Lender to waive:

        – Continuing defaults (Fifth Third agreed to a waiver of continuing defaults)
        – Extend termination date to May 3, 2010
        – Changes to interest rates including implementation of a daily reset, one month LIBOR bank rate, and the unavailability of a prime-bank rate except in certain circumstances

- Reaffirmation of Guaranty by Thomas and Pasty Gibson
- Release
- Continuing Effect of Credit Agreement; Security Documents

10. Tenth Amendment to Credit Agreement dated May 14, 2010 to be effective as of May 3, 2010

    - Extend termination date to July 3, 2010
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

11. Eleventh Amendment to Credit Agreement dated July 9, 2010 to be effective as of July 3, 2010

    - Extend termination date to September 3, 2010
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

12. Twelfth Amendment to Credit Agreement date as of September 16, 2010 to be effective as of September 3, 2010

    - Extend termination date to October 18, 2010
    - Reaffirmation of Guaranty by Thomas and Pasty Gibson
    - Release
    - Continuing Effect of Credit Agreement; Security Documents

B. Promissory Note

C. General Security Documents

1. Security Agreement dated 8/9/04 together with Exhibits. Eastern Livestock granted Fifth Third a continuing security interest in and to and a lien on and hereby assigns to Fifth Third as collateral all "Collateral" as defined in Section 2 of this Agreement.

    2. Security Agreement Assignment of Hedging Account among Borrower, Bank and MAN Financial, Inc. dated as of August 9, 2004 together with Acknowledgement and Agreement.

    3. Trademark Security Agreement by Borrower to Bank dated as of August 9, 2004, together with Schedule.

- USPTO recordation

D. Life Insurance Documents

    1. Agreement regarding Life Insurance Policies as Collateral of Pacific Life Insurance Company on the life of Thomas P. Gibson.

    2. Acknowledge from Pacific Life Insurance Company with respect to Collateral Assignment of Life Insurance Policies in favor of Bank.

**II. Financing Statements.**

    1. UCC Financing Statement, Borrower and the Bank filed with the Kentucky Secretary of State on August 6, 2004, No. 2004-2031185-96, together with UCC continuation on following collateral.

- Whether now owned or existing or hereafter acquired or arising, all of Debtor's assets, including, without limitation, all accounts, equipment, farm products (including, without limitation, livestock), inventory, general intangibles, goods, deposit accounts, documents, instruments, fixtures, cash, investment property, letter-of-credit rights and chattel paper, and the products and proceeds thereof, and all of the property described on Exhibit A attached hereto and made a part hereof.

**III. Continuation Statement.**

Filed May 5, 2009.

**IV. The Debtor's Schedules.**

Draft Schedules A and B identify that Eastern Livestock, the Debtor, owns the following real property:

    135 W. Market St.
    New Albany, IN 47150;

    88.67 acres in Harrison County, Indiana. Capital contribution by Pasty Gibson on June 12, 2003; and

6

Belleau Woods LLC
721 N. Hite Ave.
Louisville, KY 40206

We understand that Republic Bank had a valid first mortgage on the New Albany property and the Debtor consented to relief from the stay to permit Republic Bank and Trust Company to enforce its security interest on the property since there was no equity in the property. *See* January 27, 2011 Amended Order on Motion for Relief from Automatic Stay and for Abandonment of Property. Fifth Third is not asserting a claim on the Debtor's other real property. *See* Fifth Third's proof of claim. Nor has it offered a mortgage in support of any claim on said property.

In addition to real property, the Debtor's draft Schedule B identified the following categories of personal property: (1) depository and operating accounts at Fifth Third; (2) stocks; (3) life insurance; (4) accounts receivable; (5) liquidated debts; (6) contingent and unliquidated claims; (7) office equipment and furnishings; (8) inventory; and (9) equipment.

**V.     Analysis of Fifth Third's Security Interest**

    A.     Perfection

A court would most likely find that Fifth Third's security interest in Eastern Livestock's collateral is properly perfected. Section 9.13 of the Credit Agreement provides that the Credit Agreement and all of the other Loan Documents are governed by Ohio law. Section 301 of Ohio's Revised Article 9, like Section 301 of Kentucky's Revised Article 9, provides: "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." OHIO REV. STAT. ANN. § 1309.301; KY. REV. STAT. ANN. § 355.9-301. Section 307 of Ohio's Revised Article 9, like Section 307 of Kentucky's Revised Article 9 provides that a "[a] registered organization that is organized under the law of a state is located in that state." OHIO REV. STAT. ANN. § 1309.307; KY. REV. STAT. ANN. § 355.9-307. Since Eastern Livestock is a Kentucky limited liability company and registered with the Kentucky Secretary of State, Kentucky law governs the perfection and priority of Fifth Third's security interest. Pursuant to Section 501 of Kentucky's Revised Article 9, Fifth Third Bank properly filed its financing statement with the Kentucky Secretary of State's Office. *Id.*; *see also* KY. REV. STAT. ANN. § 355.9-501 (if the local law of this Commonwealth governs perfection of a security interest, the financing statement to perfect the security interest is to be filed in the office of the Secretary of State).

With respect to collateral, Section 502 of Kentucky's revised Article 9 provides that a financing statement is sufficient only if it (a) provides the name of the debtor; (b) provides the name of the secured party; and (c) indicates the collateral covered by the financing statement. KY. REV. STAT. ANN. § 355.9-502. Section 502(4) provides that the financing statement may be filed before a security agreement is made or a security interest is otherwise attached. KY. REV. STAT. ANN. § 355.9-502. Section 503 provides a financing statement sufficiently provides the name of the debtor, "if the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of

7

organization which shows the debtor to have been organized." KY. REV. STAT. ANN. 355.9-503. Section 504 of revised Article 9 provides that a financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to Section 108; or (2) an indication that the financing statement covers all assets or all personal property. KY. REV. STAT. ANN. § 355.9-504. Section 506 provides a financing statement substantially satisfying the requirements of this part of this article is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading. KY. REV. STET. ANN. § 355.9-506.

Fifth Third's financing statement properly identified Eastern Livestock Co., LLC as the debtor, Fifth Third Bank as the secured party and the collateral covered by the financing statement. *See* Fifth Third's financing statement which is attached hereto as **Exhibit A**. Section 515 of Kentucky's Revised Article 9 provides that a filed financing statement is effective for a period of 5 years from the date of filing. KY. REV. STAT. ANN. § 355.9-515. "A continuation statement may be filed only within six (6) months before the expiration of a five (5) year period specified in subsection 1 of this section." *Id.* Fifth Third filed its initial financing statement on August 6, 2004 and therefore it would have expired in August 2009. Fifth Third's continuation statement was timely filed on May 5, 2009 within the six (6) month period prior to expiration of the five (5) year period.

B. Priority

In additional to Fifth Third Bank's financing statement, we conducted a Revised Article 9 UCC search with the Kentucky Secretary of State' office (where the Debtor is located) and discovered the following financing statements:

| Date | File No. | Debtor | Secured Party | Collateral |
|---|---|---|---|---|
| 8/17/09 | 2009-2405181-82 | Eastern Livestock Company LLC | COACTIV Capital Partners, Inc. | 2009 Bobcat S220 Skid Steer Loader including all accessories and attachments SN # A5GK35182 |
| 11/10/10 | 2010-2486258-38 | Eastern Livestock Company LLC | McPhail Land and Cattle Co. | 68 head of steers weighing 743 branded MC on the right rib |
| 11/16/10 | 2010-2487176-68 | Eastern Livestock Company LLC/Thomas P. Gibson | Superior Livestock Auction, Inc. | All Livestock purchased from Superior Livestock Auction, Inc. sales, contracts and accounts receivable for said livestock |
| 11/24/10 | 2010-2488529-51 | Eastern Livestock Company LLC | Gary S. Bell | All feeder cattle sold to Eastern Livestock on 11/2/10 including 9 steers weighing average of 732 lbs, 1 weighing 595 lbs, 5 weighing 655 lbs, 1 weighing 540 lbs & 4 weighing 576. These |

| Date | File No. | Debtor | Secured Party | Collateral |
|---|---|---|---|---|
| | | | | calves tagged with small Y-Tek tags in the right ears in the color of red, yellow & green. 2 calves were red, 15 black, 1 red neck baldie 7 2 charolois crosses [sic]. Said debt was created as a result of a dishonored check issued upon delivery of calves. |
| 4/19/10 | 2010-2447931-73 | Eastern Livestock Company LLC/Thomas P. Gibson | Kubota Credit* Corp. U.S.A. | Kubota M95540HD-1 83717 4WD TRA w/ HYD Shuttle 8x8; Kubota LA1353 A9622 Quick Attach Front Loader |
| 5/15/01 | 2001-1607995-00 | Eastern Livestock Co. LLC | Intrust Bank, NA* | All cattle & feed now owned or hereafter acquired |

*Intrust Bank and Kubota Credit each filed Termination Statements (December 12, 2006 and February 11, 2011 respectively) terminating their liens.

Pursuant to Section 322 of Kentucky's Revised Article 9, priority among conflicting security interests and agricultural liens in the same collateral is determined according to the following rules:

(a) *Conflicting perfected security interest and agricultural liens rank according to priority in time of filing or perfection.* Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

(b) A perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien.

(c) The first security interest or agricultural lien to attach or become effective has priority if conflicting security interest and agricultural liens are unperfected.

KY. REV. STAT. §355.9-322. (emphasis added) "The time of filing or perfection as to a security interest in collateral is also the time of filing or perfection as to security interest in proceeds.

Pursuant to Section 324 of Kentucky Revised Article 9, a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods and a perfected security interest in its identifiable proceeds also has, priority if the purchase-money security interest is perfected when the debtor receives possession of the collateral within 20 days thereafter.

9

A court would most likely find that Fifth Third's security interest has priority over all of the other liens except possibly Coactiv Capital's lien on the 2009 Bobcat Skid Steer (assuming Coactiv has a purchase-money security interest). We have asked DSI for the Debtor's documents relating to this transaction to verify if Coactiv does have a purchase-money security interest. With respect to all of the other purported liens, Fifth Third's financing statement was recorded on August 6, 2004, which is prior to all of the other financing statements and therefore it has priority over the other purported liens.

It is unclear if the other parties even have valid liens. Superior Livestock produced a copy of a Livestock Contract between Nate Cattle and Eastern Livestock that purports to state the purchase of livestock is subject to a lien, security interest ... in favor of FSA, Riverton and First Bank, Alton Wy. The Livestock Contract does not however set forth a security interest from Eastern Livestock in favor of Superior Livestock. Superior Livestock did file a pre-hearing statement on February 25, 2011, that contains the terms and conditions of a livestock contract on the reverse side. The terms and conditions purport to set forth a grant of a security interest from the Buyer (Eastern Livestock) to Superior Livestock.

We also contacted McPhail Land & Cattle (Dallas McPhail) and requested documentation of its security interest. Mr. McPhail has thus far failed to provide such documentation. Mr. McPhail states that he filed the financing statement because Eastern Livestock's check was dishonored. We have thus far been unable to locate Mr. Gary Bell.

Finally, assuming there are valid security interests, the Trustee could seek to avoid all of these purported liens on the grounds that the liens are preferences since all of them were filed within ninety (90) days of the Petition Date. 11 U.S.C.A. § 547.

C.   Life Insurance

Eastern Livestock owns two life insurance policies on the life of Thomas Gibson:

| Policy Number | Face Amount | Accumulated Cash Value |
|---|---|---|
| 1A22916930 | $1,000,000 | $174,236.21 |
| 1A22850690 | $1,000,000 | $536.71 |

As security of the obligations owed pursuant to the Credit Agreement, Eastern Livestock assigned all of its rights, title and interest to the Bank, including the right to collect, the right to proceeds and/or the right to surrender either or both of the policies. Eastern Livestock signed collateral assignments in favor of Fifth Third which Pacific Life acknowledged in writing. Thus the Bank has a lien on the policies.

D.   Deposit Account

According to Schedule B, Eastern Livestock has $7,247,822.46 in a Fifth Third Deposit Account No. 7140510731 as of November 30, 2010. Pursuant to Section 327 of Kentucky's

Revised Article 9, Fifth Third Bank has priority over Eastern Livestock's Deposit Account because it is maintained at Fifth Third. See KY. REV. STAT. ANN. § 355.9-327.

E. Costs

Section 4.9 of the Credit Agreement provides that the Borrower shall reimburse Lender for any and all fees, costs and expenses, including reasonable attorneys' fees, other professionals' fees, court costs for litigation, and other expenses which shall be in a reasonable amount, incurred or paid by Lender in connection with enforcing the Credit Agreement and any Loan Documents. Section 4.9 permits (assuming said fees are reasonable)[1] Fifth Third to recover the legal bills paid to its counsel, Vorys, the examiner fees paid to Agra Business Consulting and Durking Group, and fees paid to DSI Development Specialist who served as receiver prior to the involuntary bankruptcy.

578213_1.DOCX/8728-1

---

[1] We have not been provided copies of the legal bills to Vorys, the examiner fees or the invoices from DSI Development Specialist and therefore we cannot draw any conclusions with respect to the reasonable of such fees.

11

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Bradley K. Johnston (513) 723-4602

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Filed by: Kentucky Secretary of State
Filing number: 2004-2031185-96 action: 01
Filing date: 8/6/2004 12:08:38 PM
Status: Active

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: Eastern Livestock Co., LLC

1c. MAILING ADDRESS: 135 West Market Street
CITY: New Albany
STATE: IN
POSTAL CODE: 47150
COUNTRY: USA

1d. SEE INSTRUCTIONS
1e. TYPE OF ORGANIZATION: limited liability co.
1f. JURISDICTION OF ORGANIZATION: Kentucky
1g. ORGANIZATIONAL ID #, if any: KY 0504359   ☐ NONE

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(blank)

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: Fifth Third Bank

3c. MAILING ADDRESS: 38 Fountain Square Plaza
CITY: Cincinnati
STATE: OH
POSTAL CODE: 45263
COUNTRY: USA

**4. This FINANCING STATEMENT covers the following collateral:**

Whether now owned or existing or hereafter acquired or arising, all of Debtor's assets, including, without limitation, all accounts, equipment, farm products (including, without limitation, livestock), inventory, general intangibles, goods, deposit accounts, documents, instruments, fixtures, cash, investment property, letter-of-credit rights and chattel paper, and the products and proceeds thereof, and all of the property described on Exhibit A attached hereto and made a part hereof.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)
7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
File with Kentucky Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

EXHIBIT A

| NAME OF FIRST DEBTOR (1A OR 1B) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| ORGANIZATION'S NAME | | |
| Eastern Livestock Co., LLC | | |
| INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

| NAME OF FIRST SECURED PARTY (3A OR 3B) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| ORGANIZATION'S NAME | | |
| Fifth Third Bank | | |
| INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

COLLATERAL DESCRIPTION:

All of the assets and property, real and personal, tangible and intangible, of Debtor, whether now owned or existing or hereafter arising or acquired, regardless of where any such assets and property are located, including, without limitation, all of Debtor's rights, titles and interests in and to the following, whether now owned or existing or hereafter arising or acquired, regardless of where any such assets and property are located (all of such assets and property and all of the below described assets and property being, collectively, the "Collateral"):

(a) all Accounts, all Inventory, all Equipment, all General Intangibles, and all Investment Property (each as defined below);

(b) without limiting the description of the property or any rights or interests in the assets and property described above in this definition of Collateral, all goods, deposit accounts, instruments, chattel paper (including, without limitation, tangible chattel paper and electronic chattel paper), documents, securities, money, cash, letters of credit, letter-of-credit rights, promissory notes, warrants, dividends, distributions, contracts, agreements, contract rights and other property owned by Debtor or in which Debtor has any rights or an interest, including, without limitation, those which are now or hereafter in the possession or control of Secured Party or in transit by mail or carrier to or in the possession of any third party acting on behalf of Secured Party, without regard to whether Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether Secured Party had conditionally released the same, all rights to payment from, and all claims against Secured Party, and any deposit accounts of Debtor with Secured Party, including, without limitation, all demand, time, savings, passbook or other accounts and all deposits therein, all as-extracted collateral, leases, lease contracts, lease agreements, and proceeds of a letter of credit;

(c) without limiting the description of the property or any rights or interests in the assets and property described above in this definition of Collateral, all supporting obligations;

(d) without limiting the description of the property or any rights or interests in the assets and property described above in this definition of Collateral, all farm products, including, without limitation, all livestock and the born and unborn offspring thereof; and

(e) all products and cash proceeds and noncash proceeds (including, without limitation, all rents, revenues, issues, and profits arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition of any and all of the assets and property described above in this definition of Collateral or any interest therein) of any and all of the assets and property described above in this definition of Collateral, and all additions, accessions, attachments, parts, appurtenances and improvements to, replacements and substitutions of, and all supporting obligations for, guaranties of, insurance or condemnation proceeds of, and documents covering, the assets and property described above in this definition of Collateral, all sales of accounts, all tort or other claims against third parties arising out of damage or destruction of property described above in this definition of Collateral, and all property received wholly or partly in trade or exchange for property described above in this definition of Collateral.

As used herein:

(1) "Accounts" means all accounts, accounts receivable, health-care-insurance receivables, credit card receivables, contract rights, instruments, documents, chattel paper, tax refunds from foreign, federal, state or local governments and all obligations in any form including, without limitation, those arising out of the sale or lease of goods or the rendition of services by Debtor; all guaranties, letters of credit and other security and supporting obligations for any of the above; all merchandise returned to or reclaimed by Debtor; and all books and records (including, without limitation, computer programs, tapes and data processing software) evidencing an interest in or relating to the above; all winnings in a lottery or other game of chance operated by a governmental unit or Person licensed to operate such game by a governmental unit and all rights to payment therefrom; and all "accounts" as the same is now or hereinafter defined in the Ohio UCC (as hereafter defined).

(2) "Equipment" means all goods (other than Inventory, farm products or consumer goods), machinery, machine tools, equipment, fixtures, office equipment, furniture, furnishings, motors, motor vehicles, tools, dies, parts, jigs, and all attachments, accessories, accessions, replacements, substitutions, additions and improvements thereto, all supplies used or useful in connection therewith, and all "equipment" as the same is now or hereinafter defined in the Ohio UCC.

(3) "General Intangibles" means all general intangibles, choses in action, causes of action, obligations or indebtedness owed to Debtor from any source whatsoever, payment intangibles, software and all other intangible personal property of every kind and nature (other than Accounts) including, without limitation, patents, trademarks, trade names, service marks, copyrights, patent applications, trademark or service mark applications, copyright applications and goodwill, trade secrets, licenses,

2 of 3

franchises, rights under agreements, tax refund claims, insurance refunds, insurance refund claims, pension plan refunds, pension plan reversions, and all books and records including, without limitation, all computer programs, disks, tapes, printouts, customer lists, credit files and other business and financial records, the equipment containing any such information, and all "general intangibles" as the same is now or hereinafter defined in the Ohio UCC.

(4)     "Inventory" means all goods (other than Equipment, farm products or consumer goods), supplies, wares, merchandises and other tangible personal property, including, without limitation, all livestock, raw materials, work in process, supplies and components, and finished goods, whether held for sale or lease, or furnished or to be furnished under any contract for service, or used or consumed in business, and also including, without limitation, products of and accessions to inventory, packing and shipping materials, all documents of title, whether negotiable or non-negotiable, representing any of the foregoing, and all "inventory" as the same is now or hereinafter defined in the Ohio UCC.

(5)     "Investment Property" means all securities, whether certificated or uncertificated, financial assets, security entitlements, securities accounts, commodity contracts or commodity accounts; and all "investment property" as the same is now or hereafter defined in the Ohio UCC.

(6)     "Person" means any individual, partnership, joint venture, trust, limited liability company, business trust, joint stock company, unincorporated association, corporation, institution, entity, or any governmental authority.

(7)     "Uniform Commercial Code" means the Uniform Commercial Code as adopted in each applicable jurisdiction, as amended or superceded from time to time. The "Ohio UCC" means the Uniform Commercial Code, as adopted in Ohio, as amended or superceded from time to time.

All of the uncapitalized terms contained in this Agreement which are now or hereafter defined in the Ohio UCC will, unless the context expressly indicates otherwise, have the meanings provided for now or hereafter in the Ohio UCC, as such definitions may be enlarged or expanded from time to time by amendment or judicial decision.