UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

IN RE:                          .    Case No. 10-93904-BHL-11
                                .
EASTERN LIVESTOCK CO., LLC,     .
                                .    110 U.S. Courthouse
                                .    121 West Spring Street
                                .    New Albany, IN  47150
            Debtor.             .
                                .    March 12, 2012
. . . . . . . . . . . . . . .   .    10:25 a.m.


TRANSCRIPT OF TELEPHONIC HEARING
BEFORE HONORABLE BASIL H. LORCH, III
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For Your Community        Reed, Weitkamp, Schell & Vice, PLLC
Bank:                     By:  MICHAEL WAYNE OYLER, ESQ.
                          500 West Jefferson Street, No. 2400
                          Louisville, KY  40202-2856


For Superior              Greenebaum, Doll & McDonald
Livestock, et al.:        By:  C.R. BOWLES, JR., ESQ.
                               JOHN W. AMES, ESQ.
                          101 South 5th Street
                          Louisville, KY  40202




Audio Operator:           Amy Bruckert




Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311      Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

```
For James A. Knauer:      Faegre, Baker, Daniels, LLP
                          By:  KEVIN M. TONER, ESQ.
                               SEAN WHITE, ESQ.
                          300 N. Meridian St., Suite 2700
                          Indianapolis, IN  46204-1750

                          Kroger Gardis & Regas, LLP
                          By:  JAMES A. KNAUER, ESQ.
                          111 Monument Circle, Suite 900
                          Indianapolis, IN 46204-5125

For Fifth Third Bank:     Vorys, Sater, Seymour and Pease, LLP
                          By:  RANDALL D. LaTOUR, ESQ.
                               MELISSA S. GIBERSON, ESQ.
                          52 East Gay Street, P.O. Box 1008
                          Columbus, OH  43216-1008

For Blue Grass            DelCotto Law Group, PLLC
Stockyards, et al.:       By:  LAURA DAY DelCOTTO, ESQ.
                          200 North Upper Street
                          Lexington, KY  40507-1017

For Joplin and Superior:  Rubin & Levin, P.C.
                          By:  ELLIOT D. LEVIN, ESQ.
                          500 Marott Center
                          342 Massachusetts Avenue
                          Indianapolis, IN  46204-2161

For First Bank:           Faruki, Ireland & Cox, P.L.L.
                          By:  DANIEL J. DONNELLON, ESQ.
                          201 East Fifth Street, Suite 1420
                          Cincinnati, OH  45202

For Rosenbaum Feeder      Stites & Harbison, PLLC
Cattle:                   By:  WILLIAM ROBERT MEYER, II, ESQ.
                          400 West Market Street
                          Louisville, KY  40202-3352

For People's Bank and     Foley, Bryant & Holloway
Trust Company:            By:  LISA KOCH BRYANT, ESQ.
                          500 West Jefferson Street, Suite 2450
                          Louisville, KY  40202

For Patsy and Thomas      O'Koon Hintermeister, PLLC
Gibson:                   By:  FRED R. SIMON, ESQ.
                          1100 PNC Plaza
                          500 West Jefferson Street
                          Louisville, KY  40202
```

```
TELEPHONIC APPEARANCES:

For Fifth Third Bank:    Vorys, Sater, Seymour and Pease, LLP
                         By:  KENT A. BRITT, ESQ.
                         52 East Gay Street, P.O. Box 1008
                         Columbus, OH  43216-1008

                         Vorys, Sater, Seymour and Pease, LLP
                         By:  ERIC RICHARDSON, ESQ.
                         221 East Fourth Street
                         Suite 2000, Atrium Two
                         Cincinnati, OH  45202

For Kathryn Pry:         Dale & Eke
                         By:  DEBORAH CARUSO, ESQ.
                         9100 Keystone Crossing, Suite 400
                         Indianapolis, IN  46240-2159

For Joplin and Superior: Rubin & Levin, P.C.
                         By:  JOHN M. ROGERS, ESQ.
                              CHRISTOPHER M. TRAPP, ESQ.
                         500 Marott Center
                         342 Massachusetts Avenue
                         Indianapolis, IN  46204-2161

For the Office of U.S.   Office of the U.S. Trustee
Trustee:                 By:  CHARLES R. WHARTON, ESQ.
                         101 West Ohio Street, Suite 1000
                         Indianapolis, IN  46204

For First Bank and       Ayres, Carr & Sullivan, P.C.
Trust Company:           By:  JOHN R. CARR, III, ESQ.
                              BRET S. CLEMENT, ESQ.
                         251 East Ohio Street, Suite 500
                         Indianapolis, IN  46204-2186

                         Faruki, Ireland & Cox, P.L.L.
                         By:  STEPHEN A. WEIGAND, ESQ.
                         201 East Fifth Street, Suite 1420
                         Cincinnati, OH  45202

For Rex Elmore:          Stuart & Branigin, LLP
                         By:  JASON W. COTTRELL, ESQ.
                         300 Main Street, Suite 900
                         Lafayette, IN  47902
```

```
TELEPHONIC APPEARANCES (Cont'd):

For J&F Oklahoma          Naman, Howell, Smith & Lee, PLLC
Holdings, Inc.:          By:  DAVID L. LeBAS, ESQ.
                         8310 N. Capital of Texas Highway
                         Suite 490
                         Austin, TX  78731

For CPC Livestock, LLC:  Snell & Wilmer, LLP
                         By:  JESSICA E. YATES, ESQ.
                         1200 Seventeenth Street, Suite 1900
                         Denver, CO  80202

For Brent Kuehny,        McAfee & Taft, A Professional
et al.:                  Corporation
                         By:  ROSS A. PLOURDE, ESQ.
                         10th Floor, Two Leadership Square
                         211 N. Robinson
                         Oklahoma City, OK  73102

For Arcadia Stockyard,   W. Scott Newbern, PL
et al.:                  By:  WALTER SCOTT NEWBERN, III, ESQ.
                         2982 East Gevemy
                         Tallahassee, FL  32309

For James A. Knauer:     Faegre, Baker, Daniels, LLP
                         By:  TERRY E. HALL, ESQ.
                         300 N. Meridian Street, Suite 2700
                         Indianapolis, IN  46204-1750

For Friona Industries,   Sprouse, Shrader, Smith, P.C.
LLP.:                    By:  JOHN FREDERICK MASSOUH, ESQ.
                         701 South Taylor, Suite 500
                         Amarillo, TX  79101

For Peoples Bank of      Moye, White, LLP
Coldwater Kansas:        By:  DAVID A. LAIRD, ESQ.
                         1400 16th Street, Sixth Floor
                         Denver, CO  80202

For Laurel:              Law Offices of Peter M. Gannott
                         By:  PETER M. GANNOTT, ESQ.
                         12910 Shelbyville Road, Suite 115
                         Louisville, KY  40243

For Gabriel Moreno:      McWhorter, Cobb & Johnson, LLP
                         By:  TODD J. JOHNSTON, ESQ.
                         1722 Broadway
                         Lubbock, TX  79401
```

TELEPHONIC APPEARANCES (Cont'd):

For Bank First and          Redman Ludwig, P.C.
Edward Strickland:          By:  ERIC C. REDMAN, ESQ.
                            151 N. Delaware Street, Suite 1106
                            Indianapolis, IN  46204


- - -

1           COURTROOM DEPUTY:  Bankruptcy court is now in

2    session.

3           THE COURT:  Good morning.  Be seated.  All right,

4    we're on the record in Eastern Livestock.  I'm not going to ask

5    the parties on the phone to restate their appearances.  I have

6    a list here.  I would ask, though, that before you speak, that

7    you identify yourself.  Always remember keep your phone on mute

8    unless you're speaking, of course, and don't put us on hold

9    especially if your phone system plays music.  I would ask the

10   attorneys in the courtroom to state the appearances please.

11          MR. TONER:  Kevin Toner from Faegre, Baker, Daniels

12   for the trustee, Jim Knauer, who's also here with me.  Terry

13   Hall is on the telephone and Sean White, special counsel to the

14   trustee, is also present.

15          MR. LaTOUR:  Good morning, Your Honor.  Randall

16   LaTour from Vorys, Sater, Seymour and Pease, representing Fifth

17   Third Bank.  With me in the courtroom is my associate, Melissa

18   Giberson.

19          MR. DONNELLON:  Good morning, Your Honor.  Dan

20   Donnellon, Faruki, Ireland and Cox, for First Bank and Trust.

21          MR. LEVIN:  Good morning, Your Honor.  Elliot Levin,

22   Rubin and Levin, on behalf of Superior.

23          MR. BOWLES:  Good morning, Your Honor.  Chip Bowles,

24   Bingham, Greenebaum, Doll, for Superior Livestock and a list of

25   other creditors.

1          MR. AMES: Your Honor, John Ames, Bingham, Greenebaum,

2     Doll for Superior.  I just like to say it to just practice it.

3          MS. DelCOTTO:  Good morning, Your Honor.  Laura Day

4     DelCotto appearing for Blue Grass Stockyards and other unpaid

5     cattle producers.

6          THE COURT:  Is that their name or their status?

7                    (Laughter)

8          MS. DelCOTTO:  (indiscernible) save time.

9          THE COURT:  All right.

10         MR. OYLER:  Mike Oyler for Your Community Bank.

11         MS. BRYANT:  Your Honor, Lisa Bryant on behalf of

12    People's Bank and Trust Company of Pickett County Tennessee.

13         MR. MEYER:  Rob Meyer for Rosenbaum Feeder Cattle.

14         MR. SIMON:  Fred Simon on behalf of Patsy and Thomas

15    Gibson.

16         THE COURT:  All right.  I have a proposed agenda.

17    Who wants to take me through that?

18         MR. TONER:  I'm not sure if Terry Hall plans to do

19    that or not.  Kevin Toner again.

20         THE COURT:  Ms. Hall, do you want Mr. Toner to lead

21    the way?

22         MS. HALL:  Again, Your Honor, the first item under

23    the proposed agenda and there have been some pleadings -- a

24    pleading filed with regard to the agenda (indiscernible) but no

25    new matters, simply additional responses to your existing

1   matters.  First continued matter under Roman numeral II, the

2   motion to consolidate (indiscernible), to address that and it

3   may resolve additional items on the agenda.

4           THE COURT:  All right.

5           MR. NEWBERN:  Your Honor, this is Scott Newbern.

6   Would you like me to address that now?

7           THE COURT:  Yes, Mr. Newbern.

8           MR. NEWBERN:  We have been talking per the Court's

9   directions at the last omnibus hearing.  I've been speaking to

10  counsel for Fifth -- counsel for the trustee.  The trustee

11  asked that I compile a detailed accounting if you will on our

12  claims and we reached an agreement to consolidate all of the

13  various claims, as well.  I filed a supplemental attachment of

14  that for the trustee and also Fifth Third Bank.

15          Essentially, we've agreed to consolidate all of the

16  (indiscernible) claims within one proceeding.  There are -- in

17  the (indiscernible) adversary proceedings, there are some

18  ancillary claims involving dishonored checks that we really

19  haven't had the opportunity to discuss.  But other than that, I

20  think we understand where we're going.  I've tried to outline

21  the issues again for the Court in a review motion.

22          I note that the counsel for Fifth Third and counsel

23  for trustee generally agree to the consolidation.  I don't

24  think they have had the chance, or maybe they have at this

25  point, but they didn't have a chance prior to my filing to

1  review the actual motion paper although -- and I apologize to

2  the Court because I've been dealing with a very balky computer

3  in the last four to five days.  But I think we have reached an

4  agreement.

5          THE COURT:  All right, so go ahead, Mr. LaTour, you

6  can respond.

7          MR. LaTOUR:  Well, Your Honor, this is mostly in the

8  nature of housekeeping.  I think there are two motions to

9  consolidate in the air at this point.  One was Docket Number

10 975 filed by Mr. Newbern a couple of months ago, maybe longer.

11 I think that one is essentially moot at this point having been

12 superseded by the newer one that was filed Sunday night which

13 is entitled, The Unopposed Florida Creditors Rule 7042 Motion

14 to Consolidate.

15         Mr. Newbern is correct in terms of the procedural

16 relief requested.  Fifth Third does not object.  I would like

17 to note for the record that Fifth Third does not agree with all

18 of his fact characterizations that doesn't go to the procedural

19 motion.

20         I do think, however, that if he's going to

21 consolidate issues in his objections to the trustee's report

22 which deals with who gets what dollars with respect to

23 particular transactions, that the currently pending answers in

24 Rush Creek should be amended to include those counts so that

25 everybody understands exactly what causes of action and what

1  counts any particular discussion is dealing with.  Mr. Newbern

2  and I have discussed that previously.  I believe he's in

3  agreement with that, but he can speak to that himself.

4        MR. NEWBERN:  That's true, Your Honor.  I've

5  overlooked mentioning to the Court.  I believe it's in the

6  actual pleading and I did note that they did not have an

7  opportunity to review the document, as well.  So no, I would

8  agree to amend whatever pleadings are necessary and file

9  (indiscernible) papers as may be required.

10        MR. TONER:  The trustee is in agreement.  7042 seems

11  to be the right procedural technique and some amended

12  pleadings, I think, would help keep things on track in that

13  adversary.

14        THE COURT:  All right.  Well, as far as housekeeping

15  first, so the old motion, 975, we should show that as moot per

16  the revised motion.  Do you agree with that, Mr. Newbern?

17        MR. NEWBERN:  Yes, sir.

18        THE COURT:  All right, and then I guess -- I mean

19  I've read the things that Mr. Newbern has filed and I want to

20  talk about the other one also, the -- has to do with the

21  confidentiality of the documents, but we'll come to that in

22  just a moment.  But -- so the Rush Creek interpleader action

23  will now be expanded with the consent of the parties.  It will

24  no longer be strictly in the nature of an interpleader action,

25  but the parties will be seeking a judgment in that action which

1  not only will resolve the disposition of the interpled funds

2  but will also resolve the various claims set forth by Mr.

3  Newbern's clients against the estate.

4          MR. TONER:  I believe that's right, yes.

5          THE COURT:  Is that what everyone's understanding is?

6          MR. TONER:  There are contested objections to the

7  purchase money sales from cattle and those would be part of

8  that proceeding.  It seems like there's quite an overlap of

9  legal arguments and facts.

10         THE COURT:  There definitely seems to be an overlap.

11 I don't have any problem with that.  I'm just saying that it

12 changes the nature, which I think the rule allows you to do,

13 but it changes the nature of the proceedings.

14         MR. LaTOUR:  Yes, Your Honor, it does change the

15 nature of the proceedings. I think that the bulk of the issues

16 are whether or not the monies that are in contest are property

17 of the bankruptcy estate or not.  But, yes, it is strictly

18 speaking going to change it from being solely interpleader

19 action to a broader adversary proceeding covering more issues.

20 You are correct.

21         THE COURT:  All right, I thought that was where we

22 were all going and I think it makes sense in terms of judicial

23 economy.  And one of the issues we've been trying to deal with

24 in this case all along is how to consolidate some of these

25 issues for resolution.

1           All right, then the next matter is the trustee's --

2   excuse me, the Florida creditor's motion to seal reply to

3   trustee's response and notice of filing of evidentiary

4   materials.  And I was handed that envelope this -- or a couple

5   of envelopes this morning.  I think what I read this morning

6   was that the bank had not -- at least at the time you filed

7   that, had not finalized their position as to certain other

8   materials that you wish to submit, I mean whether or not they

9   wish for them to remain sealed and subject to the

10  confidentiality order.  Is that still the position or what's

11  your position, Mr. LaTour?

12          MR. LaTOUR:  Your Honor, Mr. Newbern and I have not

13  had the opportunity to go over those materials so, no, we have

14  not finalized that issue.  I'd like to continue that, if we

15  could.

16          THE COURT:  All right.  Do you have any problem with

17  continuing that, Mr. Newbern?

18          MR. NEWBERN:  Your Honor, I don't really have a

19  problem continuing.  I would note for the Court that these

20  documents and papers were submitted to the Court before the

21  last omnibus hearing and the end of February I e-mailed Mr.

22  LaTour and sent a letter to that effect asking for what the

23  basis for his objection to the confidentiality were.  And I

24  basically am trying to follow the (indiscernible) protective

25  order that requires us to take these steps.  But I don't see

1  any basis at this point in those documents being --

2          THE COURT:  All right, I'll ask that the parties in

3  the next week or so deal with that.  I think Mr. LaTour might

4  have been involved in a deposition or two in the last --

5          MR. NEWBERN:  No doubt, Your Honor.

6          THE COURT:  -- few days or maybe even longer.  So,

7  yes, I'd ask that you do that.  And obviously, the Court can

8  look at the documents either way so it's just a matter of

9  whether or not they're going to remain under seal, correct?

10          MR. NEWBERN:  Yes, sir.

11          THE COURT:  Yes, so it's not like it would in any way

12  hamper my opportunity to look at them if -- when that becomes

13  necessary.  I haven't yet, by the way.  All right.

14          UNIDENTIFIED SPEAKER:  (Indiscernible)

15          THE COURT:  The next -- yes, I'll continue that to

16  the next omnibus if it's not resolved on April 23rd.

17          MR. LaTOUR:  Your Honor, can I ask a question about

18  that?

19          THE COURT:  Yes.

20          MR. LaTOUR:  My understanding is these are papers in

21  support of the motion to consolidate that Mr. Newbern and I

22  just agreed to consolidate.

23          THE COURT:  Yes, they are papers in support of the

24  motion to consolidate, but I suppose that you'll want to use

25  them also in the -- as to the merits of your positions.  Is

1  that right, Mr. Newbern?

2          MR. NEWBERN:  It is indeed, Your Honor.

3          THE COURT:  That kind of was my assumption.

4          MR. NEWBERN:  (indiscernible)

5          THE COURT:  Yes, so we're not really talking about

6  the consolidation at this point, but you still want to use

7  them?

8          MR. NEWBERN:  Yes, sir.

9          THE COURT:  All right, okay.  April 23rd.

10          MR. NEWBERN:  Thank you, Your Honor.

11          THE COURT:  Motion for a protective order, that's

12  something that's been pending for some time.

13          MR. LaTOUR:  Your Honor, that particular motion is

14  going to occur throughout this agenda because it was filed in

15  each of the adversary proceedings.

16          THE COURT:  Right.

17          MR. LaTOUR:  It was initially how to deal with the

18  discovery contemplated by the Rule 2004 motion and then the

19  other adversary matters.  The 2004 motions have been largely

20  dealt with.  The remaining protocol Mr. Donnellon and I intend

21  to address in the next cycle here and we think we'll have

22  something for the April 23 omnibus, but we don't have that

23  ready yet.

24          THE COURT:  All right.  Well, there's already been an

25  order that granted in part -- left open other aspects as to the

1  successor deposition, so I think we'll leave all those matters

2  where they are unless someone has a suggestion as to any of

3  those that need to be further addressed this morning.

4          Okay, new matters.  Ms. Hall, you want to take over

5  again?

6          MS. HALL:  Yes, Your Honor.  Items 3, 4 and 5 under

7  new matters all have to deal with the trustee's settlement with

8  People's Bank of Pickett County.  I think Mr. Raluy, I thought

9  I heard his name.  There's certainly someone on the phone

10 representing –

11         MS. BRYANT:  Your Honor, Lisa Bryant on behalf of

12 People's Bank of Pickett County.

13         THE COURT:  I don't think they'll be able to hear

14 you, Ms. Bryant.

15         MS. HALL:  Essentially, Your Honor, the trustee and

16 the bank have reached an agreement related to a potential

17 settlement of a piece of real estate, part of some collateral

18 given by -- a loan to Mr. Gibson by People's Bank.  We had a

19 motion to approve the compromise and settlement.  No objections

20 were filed.  We had a motion allowing us to sell the property

21 and split the proceeds –

22         THE COURT:  And then a --

23         MS. HALL:  -- a settlement agreement and we have an

24 employment application to allow us to (indiscernible).

25         THE COURT:  You're cutting out.  If you're on a

1 speaker, maybe you should get off the speaker phone. You're

2 cutting out quite a bit.

3          MS. HALL:   Sorry.  All right.  Essentially, Your

4 Honor, we've got a motion to settle between --

5          THE COURT:  Yes, I heard enough to know what the

6 three motions are.  So there's no objection by anyone, right?

7          MS. BRYANT:  Your Honor, there is one minor detail.

8 On Friday evening, Dustin DeNeal and my law partner Tony Raluy

9 worked out a minor amendment to the motion to compromise.  It

10 should not affect any creditors.  I don't know if this is --

11 Kevin, are you familiar with this?

12          MR. TONER:  Yes, yes.

13          MS. BRYANT:  All right.

14          MR. TONER:  That's all accurate.  We discovered

15 another note in Eastern's records and the settlement agreement

16 needed to make it clear that no one -- no director officer of

17 Pickett County Bank was been released in their official

18 capacity and claims against any individuals at the bank who may

19 -- who have notes to Mr. Gibson or Eastern are not part of this

20 release.  And so the new settlement agreement captures that.

21          THE COURT:  All right.

22          MS. BRYANT:  And, Your Honor, it just provides that

23 they are only being -- the bank officers are only being

24 released in their official capacity and they're -- I notice on

25 the certificate of service it does say this was served on

1    January 30th.  I guess we need to change the service date.  But

2    other than that, the amendment to the motion to approve the

3    compromise and settlement is accurate.

4              THE COURT:  All right.

5              MS. BRYANT:  So should we just file that today,

6    change the service date?  Or I guess Dustin is the one that

7    prepared it.

8              THE COURT:  Just put the corrected -- or the amended

9    form of the settlement agreement in the order or refer to it --

10   were you going to attach it or --

11             MS. BRYANT:  It was -- let's see, the amendment says

12   that, specifically, the trustee replaces Exhibit A attached to

13   the settlement motion, Exhibit A being the settlement agreement

14   --

15             THE COURT:  That's fine.  Just file --

16             MS. BRYANT:  -- with Exhibit A attached hereto.

17             THE COURT:  Just file it then and I'll show that the

18   motion is granted and the settlement agreement is approved as

19   amended by the parties.  I'll show the motion for the auction

20   sale is granted.  And the application to employ the auctioneer

21   is approved.

22             MS. BRYANT:  Your Honor, I think that that is all

23   that is before the Court with regard to my client, so is there

24   anything else with regard to Peoples Bank?

25             UNIDENTIFIED SPEAKER:  I'm not aware of anything.

1          THE COURT:  All right.

2          MS. BRYANT:  All right, I will see you some time.

3          THE COURT:  Thank you.

4          MS. BRYANT:  All right, thank you, Your Honor.

5          THE COURT:  Next, Ms. Hall?

6          MS. HALL:  Next, Your Honor, is an application to

7  employ Kroger, Gardis & Regas as special counsel for the

8  trustee to allow them to essentially (indiscernible) proposed

9  fee application, take over some of the (indiscernible)

10  litigation matters (indiscernible) reflection of the notes on

11  an hourly basis and/or contingency fee basis.  No objections

12  have been filed and asking to approve that application.

13          THE COURT:  Anybody want to be heard on that?

14          MR. KNAUER:  I could speak to that briefly, Judge.

15          THE COURT:  I mean anybody against it?

16                    (No audible response)

17          THE COURT:  I'll show it's approved.  Elmore matter,

18  trustee's motion to stay deadlines in the Elmore contested

19  matter.

20          MS. HALL:  Mr. Toner can address that --

21          MR. TONER:  Yes.

22          MS. HALL:  -- both that one and Coffeyville.

23          MR. TONER:  Right.  Kevin Toner for the trustee.

24  Your Honor, we have deadlines in those matters requiring the

25  parties to stipulate as to facts and set forth remaining issues

1    to be resolved as part of the contested matters.  Those were

2    right on the heels of Your Honor's ruling on constructive trust

3    issues.  We believe those are the only real defenses -- only

4    real objections asserted in those contested matters.  We're

5    waiting to hear from the objectors whether they're done or not

6    and so it seemed appropriate to -- for the attorneys to work

7    out a new schedule that move those deadlines off a bit so that

8    they could make up their mind about what happens next.

9         THE COURT:  All right, have you asked for new

10   deadlines or just to stay the deadlines?

11        MR. TONER:  To stay those deadlines that were just on

12   us this week and allow us to follow these new deadlines that we

13   proposed.

14        THE COURT:  All right, I'll grant both of those

15   motions.  All right, in the adversary proceedings, we'll start

16   with Downs.

17        MR. TONER:  Again, Kevin Toner for the trustee.  In

18   the Downs matter, we were coming up on pretty much the same

19   deadlines so an attorneys' conference was held about a week

20   ago.  We agreed that it would be appropriate for Laurel

21   Livestock to do its voluntary disclosures under the rules and

22   for us to provide other documents that have been obtained

23   informally so that the attorneys could get together and if we

24   can't work out this case, move it to mediation if that makes

25   sense.  We're not proposing moving the deadline for dispositive

1  motions or the trial date in the case.  But some of these early

2  pretrial deadlines, we ask that those be rescheduled just a bit

3  to allow that to take place.

4          THE COURT:  All right.

5          MS. DelCOTTO:  Your Honor, the other matter that's

6  showing on the agenda in Downs is Blue Grass Stockyards' motion

7  about some documents that were sealed.  There's the identical

8  motion in Friona.  I've talked to Mr. LaTour and we would just

9  like to continue those to April 23 so we can have some

10 substantive discussions about those.

11         THE COURT:  All right, I'll show that's continued to

12 April 23rd.  The motion -- the matter that you spoke about, the

13 deadlines, I don't see that on the agenda, but that is -- is

14 that a pending motion or just something that you all --

15         MR. TONER:  That's a good question.  I believe there

16 was a joint motion that we submitted.

17         MS. DelCOTTO:  I don't know whether the order has

18 been entered.  There was an agreed entry and joint motion.

19         THE COURT:  Well, we'll check for it and make sure

20 that it is entered.

21         MR. TONER:  If not, we'll resubmit the order.

22         THE COURT:  Very good.  All right, Superior.

23         MR. LaTOUR:  Your Honor, the only item on the agenda

24 is that echoing –

25         THE COURT:  Yes.

1          MR. LaTOUR:  -- matter that we've already disposed

2   of.

3          THE COURT:  So every time that pops up, should we

4   just bump it to the 23rd?

5          MR. LaTOUR:  Yes, sir.

6          THE COURT:  All right.  Friona?  That's -- the first

7   is the matter we just discussed.  Then there is a --

8          MS. DelCOTTO:  I believe that's also continued, Your

9   Honor.

10          THE COURT:  That's also the confidentiality matter so

11   we'll bump that to the 23rd.  I think there's been some

12   discussion among the attorneys and maybe with my staff about

13   also showing on the agenda the matters that are under

14   advisement in the various adversaries.  I don't do that in an

15   attempt to embarrass the Court, but rather to -- just to make

16   sure that we're -- I mean, just keeping track of everything in

17   this case is a nightmare as I'm sure you all know.

18          MR. TONER:  I imagined they weren't included so as

19   not to embarrass the Court.  We'll get them on there.

20          THE COURT:  Well, I want them included.  I'm not

21   embarrassed.  The -- I mean not yet.  You know, these are some

22   interesting and complex matters that have been raised and

23   novel, to say the least.  So yes, I would want them.

24          MR. TONER:  Arranged by adversary proceeding?

25          THE COURT:  And if in any adversary proceeding

1  there's a summary judgment fully briefed that's under

2  consideration -- I think we know them all.  I sure hope none

3  have slipped under the radar, but our pending motions, I think

4  we know those also.  I guess we'll try to put pending motions

5  on already, yes.

6          Okay, moving on.  And then there was Mr. Newbern's

7  notice of appearance and motion to intervene.

8          MR. NEWBERN:  Yes, Your Honor.

9          THE COURT:  Do you still want to intervene in Friona?

10          MR. NEWBERN:  I've agreed with Fifth Third counsel

11  and with the trustee counsel to withdraw that motion --

12          THE COURT:  All right.

13          MR. NEWBERN:  -- on the proviso that we can

14  accomplish the same thing without so much attorney and legal

15  expenses associated with an intervention because I really don't

16  have a dog in the fight for those funds.  It may become

17  necessary to change that view later down the road, I'm not

18  sure.  I hope not.  But, for the time being, that motion has

19  been withdrawn.

20          THE COURT:  Okay, I'll show the motion is withdrawn

21  in open court.  I have a question and the clerk's office may

22  already know the answer to this question and the attorneys may

23  already know the answer to this question.  But as things are

24  now, if you're not in the Rush adversary, for example, like Mr.

25  Newbern -- he will be in the Rush adversary but not in the

1  Friona adversary -- if you wanted to receive notice of an -- of

2  the pleadings in the adversary, could you do so?

3      UNIDENTIFIED ATTORNEY:  By entering an appearance,

4  Your Honor.

5      UNIDENTIFIED ATTORNEY:  Only with an appearance, Your

6  Honor.  That's what happened to me --

7      THE COURT:  Right.  That's what I thought generated

8  this.  I wouldn't mind in this case because there are issues

9  that affect parties in going back and forth and in the interest

10  of due process to set something up with the clerk's office to

11  allow anybody that's entered an appearance in anything in

12  Eastern to enter an appearance.  Now, that does not mean

13  they'll be filing pleadings.  I'm not -- you know, they're

14  going to -- if they're going to be a party, that's a whole

15  different step.  I'm not talking about them being a party.

16      COURTROOM DEPUTY:  On the CM/ECF, you can set up your

17  utilities to have certain case numbers and receive all notices

18  of case activity but you have to put those specific cases into

19  your utilities under user name.

20      THE COURT:  All right.  I'm informed that under

21  CM/ECF, you can -- under your utilities --

22      COURTROOM DEPUTY:  Yes.

23      THE COURT:  -- you can list every adversary number

24  that you want to receive notice -- that you want to be noticed

25  in, but -

1          COURTROOM DEPUTY:  Yes, enter account information,

2  user information.

3          THE COURT:  Send her account information, user

4  information.  So, apparently, we have the electronic ability to

5  do that.  And if any of you encounter a problem doing that, let

6  us know and we'll try to take down any electronic barriers that

7  might exist.  Yes, Mr. LaTour?

8          MR. LaTOUR:  Your Honor, just one more housekeeping

9  thing.  Mr. Newbern did file a written withdrawal of the motion

10  Docket Number 411 in the Friona adversary.

11          THE COURT:  Oh, he's already done that?

12          MR. LaTOUR:  Yes, filed it today on the 12th.

13          THE COURT:  All right, well --

14          MR. LaTOUR:  -- so that has been taken care of.

15          THE COURT:  -- we'll show it's withdrawn -- his

16  motion is withdrawn.  All right, in Innovative.  Motion of

17  Fifth Third.  That's the same motion.  We'll show that's

18  continued to 4/23.  Anything else about the status of that that

19  we need to know, Mr. Toner?  No?

20          MR. TONER:  I'm not aware of anything.

21          THE COURT:  Rush Creek.  The Florida Creditors Rule

22  7042 motion, that is -- has been -- that's going to be

23  submitted on an agreed entry which the Court will enter an

24  order granting, is that correct?

25          UNIDENTIFIED ATTORNEY:  That's correct.

1        THE COURT:  The motion of Fifth Third, that's going

2  to be continued 4/23 and the trustee's response to Mr.

3  Newbern's motion is resolved by the agreement that's being

4  submitted.

5        UNIDENTIFIED ATTORNEY:  That's right.

6        THE COURT:  In Fredin Brothers, same on the Fifth

7  Third's motion, 4/23.  All right.  Anything else before we move

8  to the related cases that anyone wants to bring to the Court in

9  the Eastern matter?

10              (No audible response)

11        THE COURT:  East-West Trucking, trustee's first

12  omnibus objection to claims and notice of response deadline.

13        COURTROOM DEPUTY:  That was continued this morning to

14  4/23.

15        THE COURT:  That's been continued this morning to

16  4/23.  Who's on for East-West?  Is anybody on for East-West?

17              (No audible response)

18        THE COURT:  That's the case that Mr. Walro's trustee

19  in?

20        COURTROOM DEPUTY:  (indiscernible).

21        THE COURT:  Everything has been continued?

22        COURTROOM DEPUTY:  Yes, it's all (indiscernible).

23        THE COURT:  All right, then I won't go any further

24  into East-West.  We'll show everything continued to 4/23.  In

25  the matter of Thomas and Patsy Gibson, I show trustee's motion

26

1   for third extension of time to file complaint objecting to

2   discharge with the debtor's objection.

3          MR. SIMON:  Yes, Judge.  Fred Simon appearing for the

4   Gibsons.  And the motion -- or the objection has been filed to

5   six such motions for continuance.  And I think for the record

6   it was just a matter of putting that objection in.  I'm not

7   here to argue strenuously in favor of the objection, Judge, but

8   they -- it's been a year and they'd like to reach the end of

9   this.  But for the record, we filed six objections to similar

10  motions.

11         THE COURT:  Yes, those are in.  Yes, I think all

12  those motions are set forth.  I mean, I've denied these

13  objections before because it is a big complicated matter but I

14  think you're right.  At some point, everyone is going to have

15  to make their determination.  How far out are we going on these

16  extensions?  I don't recall.  How far out are they seeking,

17  most people ?

18         MR. SIMON:  Six months, Your Honor.

19         THE COURT:  All right.

20         MR. SIMON:  The change in circumstance is that Mr.

21  Gibson has been criminally indicted --

22         THE COURT:  I know that.

23         MR. SIMON:  -- and we're waiting on those proceedings

24  so we're kind of at the mercy of that process before we can

25  really dig in very deeply on these issues.

1          THE COURT:  Why is that?  Because he can't answer --

2  he won't answer questions or I mean, is he taking the Fifth or

3  why -- I mean I don't -- I mean it would seem to me like if he

4  was criminally indicted and you've read the indictment, that

5  that might, in fact, supply a basis for non-dischargeability

6  that someone might want to raise.  Oftentimes, those coincide.

7          MR. SIMON:  Your Honor, I'd agree that that would get

8  us past the colorable basis to file the complaint in the Rule

9  11 issue, but it certainly doesn't answer the question whether

10 he committed the criminal conduct or not until he's convicted.

11 And some of the bases for objection of discharge is going to

12 depend on that determination.

13         Now, in a case that's already starving for resources,

14 if the government is going to do the heavy lifting, many of us

15 are inclined to let them do it and then file a shorter

16 complaint objecting to discharge rather than a lengthier one

17 complete with the discovery cost.  But, you know, if you want

18 to tell us this is the last extension, I understand.

19         THE COURT:  No, I'm not going to say it's the last

20 extension.  I'm going to say when this six months is up, I'm

21 going to look at it.  I'm going to want a little more

22 information and not be inclined to just summarily grant the

23 extensions at that time.  That's not to say there won't be good

24 reasons.  And I understand your concern about the expense, but,

25 you know, the summary judgment motions reflect -- and all the

1  facts that have been stipulated to so far, go into a course of

2  activity that everybody seems to be pretty much aware of.

3          Now, we haven't heard Mr. Gibson's side of these

4  issues.  In fact, I don't think I've ever even seen Mr. Gibson

5  and that may remain true throughout this case.  I don't know.

6  But I'm going to show those motions for extension are granted

7  over objection and that would apply to trustee's

8  (indiscernible) objection, the First Bank's objection, trustee

9  Knauer's motion, U.S. trustee's motion, Fifth Third's motion

10 and Blue Grass Company's motion.  Those are all granted and a

11 six-month extension is entered.

12         COURTROOM DEPUTY:  Put them on the same day?

13         THE COURT:  Yes.  Let's just set a date.  Now, have

14 you all submitted orders?  I mean, I don't think it's fair to

15 the Gibsons -- I think it would be fair to have one date that

16 everything is extended to.  Was that what was sought?

17         UNIDENTIFIED ATTORNEY:  I believe they were all

18 separate, Judge.

19         THE COURT:  So when did they run now?

20         MS. HALL:  The requested date, Your Honor, was August

21 28th, 2012.

22         THE COURT:  I'm sorry, I can barely hear you.

23         MS. HALL:  The phone connection is bad.  August 28th

24 of this year is 180 days from the current extension.

25         THE COURT:  Okay, I see.  Okay, I've just been handed

1  something that had the dates for every motion.  Some just said

2  -- it looks like 9/4 was the most common date picked so let's

3  say they're all extended to September 4th at this point.  So if

4  you need to resubmit an order with that date in it -- some of

5  them just said 180 days, some said the 28th.  Let's say --

6        COURTROOM DEPUTY:  I can do the order.

7        THE COURT:  Oh, never mind.  We don't need orders.

8  Kristin will do the orders and we'll make them all September

9  4th.  Thank you.  All right.  Anything further today?

10       MR. WHITE:  Yes, Your Honor.  Sean White, special

11 counsel.

12       THE COURT:  Yes.

13       MR. WHITE:  At the December omnibus hearing, the

14 Court ordered special counsel to submit a preliminary report

15 within 90 days.  Our report is due tomorrow.  We would ask the

16 Court's indulgence to have a short extension of time until

17 Friday of this week.  We were in a 2004 examination until 6

18 p.m. in Cincinnati on Friday and have conducted twelve 2004

19 examinations over the last three weeks and we would ask the

20 Court's indulgence to have a short extension of time to submit

21 that preliminary report to the Court until Friday.

22       THE COURT:  Yes, those took longer than I think maybe

23 anybody anticipated so I'll give you to a week from Friday to

24 submit that.

25       MR. WHITE:  I should probably add, Judge, that the

1  report we're going to file is not a final report --

2            THE COURT:  I understand.

3            MR. WHITE:  -- because we're still awaiting some

4  documents and we still have some examinations to complete.

5            THE COURT:  Well then, you really don't need any

6  additional time to do the preliminary submission then?

7            MR. WHITE:  To Friday would be sufficient to do the

8  preliminary.

9            THE COURT:  All right.  Yes, Mr. LaTour?

10           MR. LaTOUR:  Out of abundance of caution to make sure

11  we're all on the same understanding, I hear Mr. White

12  indicating when he's going to tender a report to the Court.  I

13  don't want people to walk away assuming that that means I have

14  agreed to everything he's asked for.

15           THE COURT:  Oh, no, I understand that completely.

16           MR. LaTOUR:  Okay, thank you, Your Honor.

17           THE COURT:  This was your -- no, I understand that.

18           MR. LaTOUR:  Thank you, Your Honor.

19           THE COURT:  All right, anything further this morning?

20  Mr. Bowles, you're not going to try to further complicate

21  matters?

22           MR. BOWLES:  For once, Your Honor, no.

23           THE COURT:  I appreciate that.

24           MR. BOWLES:  Judge, we can talk about the NCAA.

25           THE COURT:  We can talk about that.  We're just happy

1  to be there.  I'd rather be in Louisville like Kentucky is, but

2  we're in Portland.  Although I don't think they did Kentucky

3  any huge favors giving them UConn in the second round.  That's

4  interesting.  All right, we are adjourned.  Thank you, all.

5                          *  *  *  *  *

6

7

8                    **C E R T I F I C A T I O N**

9          I, MARY POLITO, court approved transcriber, certify

10  that the foregoing is a correct transcript from the official

11  electronic sound recording of the proceedings in the

12  above-entitled matter, and to the best of my ability.

13

14

15  /s/ Mary Polito

16  MARY POLITO

17  J&J COURT TRANSCRIBERS, INC.        DATE:  March 26, 2012

18

19

20

21

22

23

24

25