UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE | ) | |
| OF EASTERN LIVESTOCK CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. 11-59086 |
| v. | ) | |
| | ) | |
| WILLIE DOWNS; | ) | |
| BLUEGRASS STOCKYARDS, LLC; | ) | |
| BLUEGRASS STOCKYARDS EAST, LLC; | ) | |
| BLUEGRASS STOCKYARDS OF | ) | |
| RICHMOND, LLC; | ) | |
| and LAUREL LIVESTOCK MARKET, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| FRIONA INDUSTRIES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. 11-59093 |
| v. | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CACTUS GROWERS, INC., | ) | |
| | ) | |
| Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, et al., | | |

and                                            )
                                               )
J & F OKLAHOMA HOLDINGS, INC.,                 )
                                               )
   Intervenor,                  )
                                               )
  v.                                 )
                                               )
EASTERN LIVESTOCK CO., LLC, et al.,            )
                                               )
   Defendants.                   )

### TRUSTEE'S RESPONSE TO MOTIONS FOR EXTENSION OF TIME

Several parties, filed motions for extensions of time to complete discovery and file supplemental briefs in response to the Trustee's Motion for Partial Summary Judgment in Adversary Proceeding No. 11-59093 (the "Texas Interpleader").[1]  First Bank and Trust Company ("First Bank") filed a similar motion in Case No. 10-93904-BHL-11 (the "Main Case").  (*See* Doc. No. 1124.)  Three of the Bluegrass Companies[2] filed a motion in Adversary Proceeding No. 11-59086 (the "Downs Adversary") seeking to extend a similar deadline in that proceeding and also extend other case deadlines (i.e. dispositive motion and trial dates).  All four motions request the same relief and raise similar, if not identical, arguments.  Accordingly, the Trustee responds to all of these motions here and refers to the moving parties collectively as the "Movants."

The Trustee objects to the Movants' proposed extensions, because they would delay briefing of the pending summary judgment motions on custodial trust issues until long

---

[1] The parties who have filed motions for extension of time in the Texas Interpleader are CPC Livestock ("CPC") (Doc. No. 421, Texas Interpleader), and Bluegrass Stockyards, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards East, LLC, Bluegrass Stockyards of Campbellsville, LLC, Bluegrass-Maysville Stockyards, LLC, Alton Darnell, East Tennessee Livestock Center, Inc., Moseley Cattle Auction, LLC, Piedmont Livestock Company, Inc., and Southeast Livestock Exchange, LLC (Doc. No. 422, Texas Interpleader).

[2] These three entities are Bluegrass Stockyards, LLC, Bluegrass Stockyards East, LLC, and Bluegrass Stockyards of Richmond, LLC.  (Doc. No. 79, Downs Adversary.)

2

after the Trustee's special counsel files a final report regarding potential estate claims against Fifth Third.  Meanwhile, the Movants have conducted no discovery of their own on this summary judgment issue since February 10.  The Movants' requests, if granted, would unnecessarily delay resolution of the pending summary judgment motions until sometime in the fall.  Instead, if the Movants were to identify the discovery actually necessary to address the transactions at issue in the Court's February 10 order, then as an alternative, an enlargement of the current summary judgment briefing deadline by up to 60 days would be more appropriate and adequate for Movants' needs.

## The Summary Judgment Order

The Trustee moved for partial summary judgment regarding creditors' trust claims and defenses in both the Texas Interpleader and in the Downs Adversary.[3]  The Court granted the Trustee's motions with respect to constructive and resulting trust but deferred ruling on questions related to Eastern's status under the Packers and Stockyards Act ("PSA").  *See Order on Trustee's Motion for Partial Summary Judgment* ("SJ Order") at 20 (Doc. No. 379, Texas Interpleader); *Order on Trustee's Motion for Partial Summary Judgment* at 2 (Doc. No. 59, Downs Adversary).  The Court explained that "the capacity in which Eastern acted in particular transactions is factually sensitive" and "[p]otentially relevant documents are still being produced."  SJ Order at 20.  Accordingly, the Court gave the "objecting defendants" 90 days from the date of the February 10, 2012 order to submit designations of evidence and file additional briefs in opposition to the Trustee's motion.  This 90-day period will end on May 10 (the "PSA Deadline").

---

[3]   In the Texas Interpleader, the Trustee moved for partial summary judgment on constructive trust, statutory trust, and clearing agency issues.  In the Downs Adversary, the Trustee moved for partial summary judgment on issues of constructive trust, resulting trust, and statutory trust.

**The PSA Issue and Status of PSA Discovery**

Multiple parties have asserted that Eastern, purportedly as a market agency, was obligated under the PSA regulations to hold payments it received from its cattle sales in trust for unpaid original cattle producers, their creditors and/or their subrogees.  The Trustee maintains that Eastern was acting in each of the transactions at issue as a dealer, buying and selling on its own account.

As explained in the summary judgment briefing, the PSA imposes trust obligations only on packers[4] and on market agencies selling on commission on behalf of a principal.  *See* 9 C.F.R. § 204.42.  "Market agency" is defined as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services." 7 U.S.C. § 701(c).  In contrast, "dealer" is defined as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either as his own account or as the employee or agent of the vendor or purchaser." 7 U.S.C. § 701(d).  The custodial trust requirement in the relevant regulation could apply only to the extent a party could show that as to its cattle, Eastern was selling to the feedyards on a commission basis on behalf of a principal.  The GIPSA regulation states:

> (a) Payments for livestock are trust funds. Each payment that a livestock buyer makes to a *market agency selling on commission* is a trust fund. Funds deposited in custodial accounts are also trust funds.
> (b) Custodial accounts for shippers' proceeds. Every *market agency engaged in selling livestock on a commission or agency basis* shall establish and maintain a separate bank account designated as "Custodial Account for Shippers' Proceeds," or some similar identifying designation, to disclose that the depositor is acting as a fiduciary and that the funds in the account are trust funds.

9 C.F.R. § 201.42 (a)-(b) (emphasis added).

---

4    There is no dispute that Eastern was not a packer.

A market agency in the cattle industry originates from an "agency" relationship whereby the market agency is acting on behalf of someone else (e.g., the cattle producers) to sell consigned cattle at auctions.  *See* 9 C.F.R. 201.56(a) ("Every market agency engaged in the business of selling livestock on a commission or agency basis shall sell the livestock consigned to it openly, at the highest available bid, and in such a manner as to best promote the interest of each consignor.").  Likewise, selling "on commission" intrinsically requires that a seller be acting on behalf of someone.  Black's Law Dictionary (9th ed. 2009) defines "commission" as follows: "2. The authority under which a person transacts business for another. … 5. A fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction." *See also* www.meriamwebster.com/dictionary/commission (defining "commission" as "authority to act for, on behalf of, or in place of another … a fee paid to an agent or employee for transacting a piece of business or performing a service").  Thus, in order for Eastern to have acted as a market agency selling on commission, Eastern would have to have been functioning as an agent to sell cattle on behalf of a cattle producer who consigned cattle to Eastern.  To date, the Trustee has seen no evidence that indicates Eastern acted in this capacity as to any transaction at issue in the pending summary judgment motions.

The Court deferred ruling on this aspect of the Trustee's motions "to allow the Defendants an adequate opportunity to complete discovery" expressly because the "capacity in which Eastern acted in particular transactions is factually sensitive."  SJ Order at 20.  During the many weeks following the Court's order, the objecting defendants have conducted no formal discovery in either the Texas Interpleader or in the Downs Adversary where the Trustee's motions are pending.

**Special Counsel's Investigation of Fifth Third**

Special Counsel to the Trustee has been conducting Rule 2004 examinations of Fifth Third Bank witnesses.  That discovery is intended to assist the Trustee's evaluation of potential estate claims against Fifth Third in connection with Eastern's demise.  As the Court noted when ruling on motions relating to the scope and extent of the examinations, "the scope of the Trustee's Rule 2004 examinations shall be limited to determining if the estate has any claims against Fifth Third Bank."  Doc. No. 1051, Main Case.  The Court ordered that Special Counsel would take the lead in the first phase of those examinations, while permitting attorneys Dan Donnellan (counsel to First Bank) and John Rogers (counsel to Superior) to participate at Special Counsel's discretion, "provided that the scope of the questions is limited to determining if the estate has any claims against Fifth Third."  *Id.*  With respect to other parties who may wish to depose bank representatives, the Court's order anticipated that the parties would agree on a deposition discovery protocol that would cut across the several contested matters and adversary proceedings in Eastern's bankruptcy to ensure that depositions were "as efficient and inexpensive as reasonably possible."  *Id.*

Special Counsel to the Trustee filed a preliminary report on March 16, 2012, but several Rule 2004 examinations are still pending, and the final report on the investigation ("Final Fifth Third Report") has not yet been completed.[5]

**Movants' Requested Extension**

Movants seek to extend the PSA Deadline 90 additional days beyond the Trustee's submission of a final report regarding the estate's claim.  This relief is not justified.  Aside from the limitations the Court imposed on the Trustee's Rule 2004 examinations of Fifth Third, no

---

[5]   As First Bank's motion indicates, it is unclear at this juncture how quickly the Final Fifth Third Report will be submitted, given the five remaining 2004 examinations.

party has been prevented from conducting discovery.  Discovery of other parties or non-parties

was never stayed.  Indeed, on February 10 the Court directed the objecting defendants to gather

evidence related to the arguments raised in their summary judgment briefs.

The Movants now claim to seek "an opportunity to review the Trustee's [Final

Fifth Third Report] and consider whether they need to conduct any additional discovery before

being able to fully respond to the PSA issues raised" by the Trustee's summary judgment motion.

Doc. No. 422, ¶ 11, Texas Interpleader.  The Movants believe that "Fifth Third representatives

may have knowledge indicating the capacities in which Eastern conducted its business under the

PSA" and that "that depositions of Fifth Third representatives may be necessary to fully

understand how Eastern held itself out to third parties under the PSA, including its major lender,

Fifth Third."  *Id.*; *see also* Doc. No. 421 at 5, Texas Interpleader ("CPC believes Fifth Third may

be a valuable source of information about the nature of Eastern's business relationships."); *id.*

("CPC believes that Fifth Third may have information relevant to questions of how Eastern

conducted business that may bear on Eastern's intent to act as either a dealer or market

agency.").[6]  These statements, however, miss the mark.  The relevant question before the Court

is not a broad characterization of what capacity was Eastern sometimes acting, but more

narrowly whether Eastern was acting as a market agency selling on commission in the particular

transactions at issue in the Texas Interpleader and in the Downs Adversary.  *See* SJ Order at 20

("The capacity in which Eastern acted *in particular transactions* is factually sensitive.")

(emphasis added).

---

[6]   First Bank is among those that filed a motion for extension of the PSA Deadline.  First Bank, however, has no
proper basis for its request.  First Bank, a party in the Texas Interpleader, filed no response to the Trustee's
summary judgment motion in that case.  Having raised no arguments in response to the Trustee's motion, First
Bank was not an "objecting defendant" to which the Court's 90-day PSA deadline applied.  *See* SJ Order at 20.
First Bank's bald conclusion that the delays in Rule 2004 examinations "have made the ability to comply with
the 90-day period … impossible" is both unfounded and entirely irrelevant as to First Bank and the pending
summary judgment motions.

The cattle producers who sold the cattle in the transactions at issue in these adversary proceedings would presumably know whether or not Eastern was acting as their agent and receiving a commission from them.  These are also the very producers in whose shoes the objecting defendants now claim to stand.  Therefore, discovery relating to these transactions and the relationships between Eastern and the producers in the relevant transactions would be most readily accessible to the objecting defendants without resort to depositions of bank witnesses and perhaps without any formal discovery at all.

The Trustee's investigation into potential claims against Fifth Third is not directed to the PSA issues raised in the summary judgment motions.  What Fifth Third representatives may believe or understand regarding Eastern's general business or banking practices does not address whether Eastern was acting as any cattle producers' agents in the particular transactions in which the objecting defendants were involved.  Thus, waiting for the Trustee to complete his investigation of Fifth Third, submit his report, plus another 90 days is wholly unnecessary.  Adoption of such an extended briefing schedule would substantially delay these proceedings for no good reason.[7]  For instance, the Downs Adversary is entirely a fraudulent transfer and preference case stemming from approximately $1.2 million in checks made out to Eastern that were endorsed over to Willie Downs during the first week of November 2010.  Downs then wrote checks out of his personal account to the Bluegrass Companies and Laurel Livestock.  The Bluegrass Companies seek not only to extend the PSA Deadline in that proceeding, but also to push back the entire case schedule, including moving the trial date (currently set for August 1-3).  Delaying briefing and an order on the PSA issue in the Texas Interpleaders also likely would hold up the good progress that is being achieved in narrowing the number of parties and issues

---

[7]   Ironically, First Bank complains about "the slow pace of discovery in general" (Doc. No. 1124 at 1, Main Case) while at the same time seeking a several-month extension of time for objecting defendants in the Texas Interpleader.

necessary to resolve competing claims to the interpleaded funds..  Such a delay would not serve the best interests of the estate.

Movants overstate the burdens and supposed advantages of delaying summary judgment briefing until the Special Counsel's work is completed.  The Bluegrass defendants, for example, argue that conducting additional discovery "prior to the filing of the [Final Fifth Third Report] would be unduly burdensome on the Bluegrass Companies and would likely result in duplicative work."  Doc. No. 79, Downs Adversary.  CPC also claims Special Counsel is duplicating work it needs to complete.  *See* Doc. No. 421 at 5, Texas Interpleader ("[T]here simply is no need for CPC to duplicate the current efforts of the Special Counsel in obtaining discovery from Fifth Third.").  These arguments confuse the purpose of the 2004 examinations and the facts relevant to the PSA issues.  Special Counsel's Rule 2004 examinations of Fifth Third witnesses were limited, by Court order, to whether the estate has a claim against the bank.  To the extent an objecting defendant might believe that Fifth Third's records have any bearing on the PSA trust issue, those documents were produced by the bank and made freely available via the Trustee's electronic repository.  In truth, the objecting defendants do not actually need discovery from the bank on this issue.  This is underscored by the fact that during the last 90 days no objecting defendant in those adversary proceedings has served Fifth Third with any written discovery.

Tellingly, none of the objecting defendants have explained (a) what specific discovery they intend to propound to respond to the Trustee's motions, (b) who specifically at Fifth Third[8] they want to depose, (c) why they have not already proceeded with any PSA

---

[8]   Several Movants claim that "depositions of Fifth Third representatives *may* be necessary to fully understand how Eastern held itself out to third parties" and that "Fifth Third *may* have information relevant to questions of how Eastern conducted business that *may* bear on Eastern's *intent* to act as either a dealer or market agency." Doc. Nos. 422 & 421, Texas Interpleader (emphases added).  Such vague and speculative statements, however, hardly justify the long delay the Movants have requested, especially given the narrow PSA facts at issue.

discovery, (d) why PSA discovery could not be obtained from other sources (i.e. the cattle producers), (e) how they expect the Final Fifth Third Report actually to bear on the capacity in which Eastern was acting in the transactions at issue in these two adversary proceedings, or (f) why 90 days is a necessary and reasonable amount of time to do such work.  The long delay they have requested is nowhere justified with specifics.

Consistent with his responses to the many other requests to consent to enlargements of time in these proceedings, the Trustee would not seek to stand in the way of a short, necessary, and reasonable enlargement of the current briefing deadline.  But because the Movants have not presented any good reason to put these particular summary judgment motions on an extended hold throughout the summer and into the fall of 2012, their requests should be denied.  Movants argue that the relief they seek will provide efficiency, but in the Trustee's view, such a delay would only prolong and add to the costs of this litigation.

## Conclusion

The Trustee therefore respectfully requests that the Court deny the Movants' request for an 90-day floating extension of the PSA Deadline.  The objecting defendants have not been prohibited from conducting discovery into the transactions in which their clients were involved.  The Final Fifth Third Report will not address the PSA issues now awaiting ruling by the Court and the briefs should not be tied to its completion.  Alternatively, if the Movants were to identify at the April 23 hearing necessary discovery related to the actual transactions at issue in the Court's February 10 order, then the Trustee would not object to extend the current May 10 briefing deadline up to 60 additional days.

10

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By:   /s/ Harmony Mappes

Kevin M. Toner (#11343-49)                         *Counsel for James A. Knauer, Chapter 11 Trustee*
Harmony Mappes (#27237-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1750
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kevin.toner@faegrebd.com
harmony.mappes@faegrebd.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

Mark A. Robinson
mrobinson@vhrlaw.com

Randall D. LaTour
rdlatour@vorys.com

Daniel J. Donnellon
ddonnellon@ficlaw.com

John W. Ames
james@bgdlegal.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Meredith R. Thomas
mthomas@daleeke.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

David L. LeBas
dlebas@namanhowell.com

Jessica E. Yates
jyates@swlaw.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Todd J. Johnston
tjohnston@mcjllp.com

Karen L. Lobring
lobring@msn.com

Elliott D. Levin
edl@rubin-levin.net

Sean T. White
swhite@hooverhull.com

Michael W. McClain
mike@kentuckytrial.com

James Edwin McGhee
mcghee@derbycitylaw.com

Jerald I. Ancel
jancel@taftlaw.com

David Alan Domina
dad@dominalaw.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

C. R. Bowles, Jr
cbowles@ bgdlegal.com

Jeffrey R. Erler
jeffe@bellnunnally.com

John R. Carr, III
jrciii@acs-law.com

Stephen A. Weigand
sweigand@ficlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Ivana B. Shallcross
ishallcross@ bgdlegal.com

William Robert Meyer, II
rmeyer@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John Huffaker
john.huffaker@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Walter Scott Newbern
wsnewbern@msn.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

John M. Rogers
johnr@rubin-levin.net

Robert H. Foree
robertforee@bellsouth.net

William E Smith
wsmith@k-glaw.com

Thomas C Scherer
tscherer@binghammchale.com

Jeffrey J. Graham
jgraham@taftlaw.com

Kent A Britt
kabritt@vorys.com

Jeffrey L Hunter
jeff.hunter@usdoj.gov

John Hunt Lovell
john@lovell-law.net

Edward M King
tking@fbtlaw.com

Bret S. Clement
bclement@acs-law.com

John Frederick Massouh
john.massouh@sprouselaw.com

Kim Martin Lewis
kim.lewis@dinslaw.com

Deborah Caruso
dcaruso@daleeke.com

Allen Morris
amorris@stites.com

James T. Young
james@rubin-levin.net

John M. Thompson
john.thompson@crowedunlevy.com

Matthew J. Ochs
matt.ochs@moyewhite.com

T. Kent Barber
kbarber@dlgfirm.com

Kirk Crutcher
kcrutcher@mcs-law.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Lisa Koch Bryant
courtmail@fbhlaw.net

John David Hoover
jdhoover@hooverhull.com

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Susan K. Roberts
skr@stuartlaw.com

David A. Laird
david.laird@moyewhite.com

Trevor L. Earl
tearl@rwsvlaw.com

Joshua N. Stine
jnstine@vorys.com

Amelia Martin Adams
aadams@dlgfirm.com

| | | |
|---|---|---|
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Robert A. Bell<br>rabell@vorys.com |
| James E. Rossow<br>jim@rubin-levin.net | James B. Lind<br>jblind@vorys.com | Melissa S. Giberson<br>msgiberson@vorys.com |
| Steven A. Brehm<br>sbrehm@ bgdlegal.com | Anthony G. Raluy<br>traluy@fbhlaw.net | Christopher E. Baker<br>cbaker@hklawfirm.com |
| James M. Carr<br>james.carr@faegrebd.com | Jack S. Dawson<br>jdawson@millerdollarhide.com | Dustin R. DeNeal<br>dustin.deneal@faegrebd.com |
| Shawna M. Eikenberry<br>shawna.eikenberry@faegrebd.com | Terry E. Hall<br>terry.hall@faegrebd.com | Jay Jaffe<br>jay.jaffe@faegrebd.com |
| James A. Knauer<br>jak@kgrlaw.com | Erick P. Knoblock<br>eknoblock@daleeke.com | Harmony A. Mappes<br>harmony.mappes@faegrebd.com |
| Christie A. Moore<br>cmoore@ bgdlegal.com | Shiv Ghuman O'Neill<br>shiv.oneill@faegrebd.com | Wendy W. Ponader<br>wendy.ponader@faegrebd.com |
| Jeffrey E. Ramsey<br>jramsey@hopperblackwell.com | Eric C. Redman<br>ksmith@redmanludwig.com | Joe T. Roberts<br>jratty@windstream.net |
| Joseph H. Rogers<br>jrogers@millerdollarhide.com | James E. Smith<br>jsmith@smithakins.com | Robert K. Stanley<br>robert.stanley@faegrebd.com |
| Andrew D. Stosberg<br>astosberg@lloydmc.com | Kevin M. Toner<br>kevin.toner@faegrebd.com | U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov |
| Andrea L. Wasson<br>andreawassonatty@gmail.com | Christopher M. Trapp<br>ctrapp@rubin-levin.net | Eric W. Richardson<br>ewrichardson@vorys.com |

Peter M Gannott on behalf of Counter-Claimant Laurel Livestock Market, INC.
pgannott@gannottlaw.com, ahanover@gannottlaw.com;mkeane@gannottlaw.com


        I further certify that on April 18, 2012, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher                    Darla J. Gabbitas
asr@blancolaw.com                   darla.gabbitas@moyewhite.com


        I further certify that on April 19, 2012, a copy of the foregoing pleading was mailed by first-class U.S. Mail, postage prepaid and properly addressed, to the following:

David M. Jones
Sprouse, Shrader & Smith PC
PO Box 15008
Amarillo, TX 79105-5008

                                        /s/ Harmony Mappes