UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

IN RE:                          .    Case No. 10-93904-BHL-11
                                .
EASTERN LIVESTOCK CO., LLC,     .
                                .    110 U.S. Courthouse
                                .    121 West Spring Street
                                .    New Albany, IN  47150
          Debtor.              .
                                .    April 23, 2012
. . . . . . . . . . . . . . .   .    9:55 a. m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE BASIL H. LORCH, III
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For Fifth Third Bank:     Vorys, Sater, Seymour and Pease, LLP
                          By:  RANDALL D. LaTour, ESQ.
                          52 East Gay Street, P.O Box 1008
                          Colombus, OH  43216-1008


For Blue Grass            DelCotto Law Group, PLLC
Stockyards, et al.,:      By:  LAURA DAY DEL COTTO, ESQ.
                          200 North Upper Street
                          Lexington, KY  40507-1017




Audio Operator:           Amy Bruckert




Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311      Fax No. (609) 587-3599**

```
APPEARANCES:  (Cont'd)

For First Bank:          Faruki, Ireland & Cox, P.L.L.
                         By:  DANIEL J. DONNELLON, ESQ.
                         201 East Fifth Street, Suite 1420
                         Cincinnati, OH  45202


For Arcadia Stockyard,   W. Scott Newbern, PL
et al.:                  By:  WALTER SCOTT NEWBERN, III, ESQ.
                         2982 East Gevemy
                         Tallahassee, FL  32309

For James A. Knauer:     Kroger Gardis & Regas, LLP
                         By:  JAMES A. KNAUER, ESQ.
                         111 Monument Circle, Suite 900
                         Indianapolis, IN  46204-5125


                         Faegre, Baker, Daniels, LLP
                         By:  KEVIN M. TONER, ESQ.
                              HARMONY A. MAPPES, ESQ.
                         300 N. Meridian St., Suite 2700
                         Indianapolis, IN  46204-1750

For Superior             Greenebaum, Doll & McDonald
Livestock, et al.:       By:  C.R. BOWLES, JR., ESQ.
                              JOHN W. AMES, ESQ.
                              IVANA B. SHALLCROSS, ESQ.
                         1010 South 5th Street
                         Louisville, KY  40202

For Joplin and Superior: Rubin & Levin, P.C.
                         By:  JOHN M. ROGERS, ESQ.
                              CHRISTOPHER M. TRAPP, ESQ.
                         500 Marott Center
                         342 Massachusetts Avenue
                         Indianapolis, IN  46204-2161

For Trustee Michael      Rubin & Levin, P.C.
Walro:                   By:  JAMES T. YOUNG, ESQ.
                         342 Massachusetts Avenue, Suite 500
                         Indianapolis, IN  46204


TELEPHONIC APPEARANCES:

For James A. Knauer:     Hoover Hull, LLP
                         By:  SEAN T. WHITE, ESQ.
                         111 Monument Cir Ste 4400
                         Indianapolis, IN  46244
```

3

```
TELEPHONIC APPEARANCES:   (Cont'd)

For Laurel:               Law Offices of Peter M. Gannott
                          By:  PETER M. GANNOTT
                          12910 Shelbyville Road, Suite 115
                          Louisville, KY  40243

For Joplin and Superior:  Rubin & Levin, P.C.
                          By:  ELLIOT D. LEVIN, ESQ.
                          500 Marott Center
                          342 Massachusetts Avenue
                          Indianapolis, IN  46204-2161

For Fifth Third Bank:     Vorys, Sater, Seymour and Pease, LLP
                          By:  ERIC RICHARDSON, ESQ.
                          221 East Fourth Street
                          Suite 2000, Atrium Two
                          Cincinnati, OH  45202

For Trustee Kathryn Pry:  Dale & Eke, P.C.
                          By:  MEREDITH R. THOMAS, ESQ.
                          9100 Keystone Crossing, Suite 400
                          Indianapolis, IN  46240

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  CHARLES R. WHARTON, ESQ.
                          101 W. Ohio St. Ste. 1000
                          Indianapolis, IN  46204

For First Bank and        Ayres, Carr & Sullivan, P.C.
Trust Company:            By:  JOHN R. CARR, III, ESQ.
                               BRET S. CLEMENT, ESQ.
                          251 East Ohio Street, Suite 500
                          Indianapolis, IN  46204-2186

                          Faruki, Ireland & Cox, P.L.L.
                          By:  STEPHEN A. WEIGAND, ESQ.
                          201 East Fifth Street, Suite 1420
                          Cincinnati, OH  45202

For J&F Oklahoma          Naman, Howell, Smith & Lee, PLLC
Holdings, Inc.:           By:  DAVID L. LeBAS, ESQ.
                          8310 N. Capital of Texas Highway
                          Suite 490
                          Austin, TX  78731

For CPC Livestock, LLC:   Snell & Wilmer, LLP
                          By:  JESSICA E. YATES, ESQ.
                          1200 Seventeenth Street, Suite 1900
                          Denver, CO  80202
```

4

```
TELEPHONIC APPEARANCES:  (Cont'd)

For Trustee James        Faegre, Baker, Daniels, LLP
Knauer:                  By:  TERRY E. HALL, ESQ.
                         300 N. Meridian St. Ste. 2700
                         Indianapolis, IN  46204

For Friona Industries    Sprouse, Shrader, Smith, P.C.
LLP.:                    By:  JOHN FREDERICK MASSOUH, ESQ.
                         701 South Taylor, Suite 500
                         Amarillo, TX  79101

For Willie Downs:        Lloyd & McDaniel, PLC
                         By:  ANDREW D. STOSBERG, ESQ.
                         11405 Park Road, Suite 200
                         Louisville, KY  40223-0200

For Anna Gayle Gibson:   Deitz & Freeburger, P.S.C.
                         By:  SANDRA D. FREEBURGER, ESQ.
                         101 First St., 2nd Fl(42420)
                         Henderson, KY  42419-0021

                         - - -
```

1          THE COURT:  ... on the phone?

2          UNIDENTIFIED SPEAKER:  We're getting them.

3          THE COURT:  We're getting them?

4          UNIDENTIFIED SPEAKER:  We're getting them –

5          THE COURT:  Anybody appearing by phone?

6               (No audible response)

7          THE COURT:  We're starting a little early, so we'll

8  take them as they connect.  All right, as I said, we're going

9  to have to finish by 11:30 or else if we don't we're going to

10 take a break and reconvene at 1:30, so let that be your

11 incentive to speak quickly.

12               (Audio off)

13         UNIDENTIFIED ATTORNEY:  If would make the most sense

14 to just start with the beginning and the East West Trucking

15 matter.

16         THE COURT:  All right.

17         UNIDENTIFIED ATTORNEY:  Your Honor, the Trustee has

18 resolved all but one of the objections and that is the one to

19 the claim of Fifth Third Bank.  Let's see, we have Fifth

20 Third's counsel here, as well.  We have been discussing the

21 possibility of settling the objection of the claim.  The

22 Trustee's preference, I guess, would be to get this matter set

23 for a final hearing maybe six weeks out, thereabouts, to give

24 parties a chance, we either get something resolved or just get

25 it -- just get the Court's resolution of it.  It's costing the

6

1  estate about $500 a month to keep the bank account open, and I

2  know in the other cases that's probably not much, but in the

3  Trucking case, we're the small one of the group and we have

4  everything else in the case resolved, but for this issue.

5           THE COURT:  Mr. LaTour?

6           MR. LaTOUR:  Your Honor, I would suggest that it be

7  set for a final hearing on June 11, which is the omnibus

8  hearing date of June --

9           THE COURT:  That's fine.

10          MR. LaTOUR:  -- and we'd like that all to be resolved

11 before that.

12          THE COURT:  All right, that's fine with me.  We'll

13 set it for June 11th at the end of the omnibus date, if

14 necessary.

15          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

16          THE COURT:  So, all other objections to claims have

17 been resolved?

18          UNIDENTIFIED ATTORNEY:  We have, Your Honor.  There's

19 a pending motion right now with the resolution of Trustee

20 Knauer's claim and the others have been -- but, basically,

21 there were no other responses other than Grant Gibson.  We

22 found a stipulation with Grant Gibson, so those were the three.

23          THE COURT:  All right, you're going to go ahead and

24 submit me an order then approving and denying claims with

25 everything included, except the Fifth Third matter?

1          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

2          THE COURT:  All right, very good.

3          UNIDENTIFIED ATTORNEY:  Thank you.

4          THE COURT:  All right, in the Thomas and Patsy Gibson

5   case, anybody here for the Trustee?

6                    (No audible response)

7          THE COURT:  They're probably not on the line yet.

8   All right, we'll come back to that.  Let's go on to the main

9   case.

10          UNIDENTIFIED ATTORNEY:  If we jump to Page 6, Item

11   13, Your Honor, there's a number of related similarly situated

12   cases that relate to newly filed collection claims on accounts

13   receivable of Eastern.  Those had been set for a status

14   conference today, but the fact of the matter is counsel for the

15   defendants are not really yet appearing and just starting to

16   get going, so if we could continue that?

17          THE COURT:  Are you starting with the Corey Kay and

18   --

19          UNIDENTIFIED ATTORNEY:  Correct.

20          THE COURT:  So, matters 13 through 18?

21          UNIDENTIFIED ATTORNEY:  Yes.

22          THE COURT:  All right, so you want all those extended

23   to June?

24          UNIDENTIFIED ATTORNEY:  Yes.  Is that the next

25   omnibus date?

**WWW.JJCOURT.COM**

1         UNIDENTIFIED SPEAKER:  They wanted an extension

2 (Indiscernible).

3         UNIDENTIFIED ATTORNEY:  May the 14th.

4         UNIDENTIFIED ATTORNEY:  There's one May, but these

5 folks haven't filed appearances yet.  I anticipate they won't

6 really be ready for initial disclosures and scheduling orders

7 until June.

8         THE COURT:  They've asked til June 15?

9         UNIDENTIFIED SPEAKER:  Well, our next omnibus date is

10 June 11th.

11         THE COURT:  All right.

12         UNIDENTIFIED SPEAKER:  They asked for an extension

13 beyond that.

14         THE COURT:  They've asked -- some of them have asked

15 for extensions to answer til June 15th, so that would even be

16 after the June -- but they'll be in the case by then.  We can

17 at least have a brief pretrial.

18         UNIDENTIFIED ATTORNEY:  It makes sense.

19         THE COURT:  So, I'll show matters -- those matters

20 are all continued to June 11th.  This goes a lot faster when we

21 don't have half the people on here, you know.

22                     (Laughter)

23         UNIDENTIFIED ATTORNEY:  You may be on to something.

24         THE COURT:  I think I'll just start having these with

25 individual attorneys.  We'll get a lot done, you know.

1          All right.  What about the main -- going back to the

2   main case?  The matter is continued from prior hearing?

3          MR. TONER:  Yes, Your Honor.  There are motions for a

4   protective order related to depositions, and you'll see this

5   has been filed in the main case, as well as several of the

6   adversary proceedings.

7          THE COURT:  You're right.

8          MR. TONER:  They're also similarly situated.  I think

9   it's Fifth Third's motion.

10          THE COURT:  Yes, we've dealt with this a few times.

11   So, what's the current status, Mr. LaTour?

12          MR. LaTOUR:  Your Honor, the motion was originally

13   filed to deal with the potential overlap between the special

14   counsel's investigation under Rule 2004 and the other

15   depositions.  The 2004 exams are not yet finished.

16   Consequently, the other protocol is not finished.

17          You'll see the next item down on the agenda was the

18   motion -- well, somewhere down in here was a motion filed by

19   First Bank with respect to that, tying it to a request for an

20   extension of time.  I think there are really three separate

21   pockets of issues.  There was the 2004 exam, there were the

22   interpleader actions, generally, and there was the Packers &

23   Stockyards issue, in particular.

24          An attempt has been made to create a linkage between

25   the completion of the 2004 depositions and the Packers &

1  Stockyards issue.  I believe, that linkage is erroneous,

2  because any particular packers and stockyards transaction has

3  to be looked at transaction by transaction, and Fifth Third was

4  not involved in each of those transactions and, therefore, as

5  to Packers & Stockyards issues, is not going to have relevant

6  information.

7       Now, the situation's different if you're talking

8  about the interpleader at large, because there are other claims

9  made that are broader than the Packers & Stockyards Act, and

10 that's where a deposition protocol would be helpful and is so

11 being developed.

12      So, I think the resolution for the motion for the

13 protective order is that we continue doing what we're -- what

14 the original plan was, which is to develop a deposition

15 protocol.

16      With respect to the various motions for extensions of

17 time on the Packers & Stockyards Act issue, Fifth Third is not

18 opposed to a 60-day extension from the date presently set in

19 May, so that would take them 60 days out to a date certain in

20 July.  I don't see a reason to tie it to a floating date or to

21 move it 90 days out and all that.

22      THE COURT:  Okay, I saw -- yes, I saw your pleadings

23 to that effect.  Let me hear somebody respond to that because

24 I've -- that -- I think I, at least initially, agree with the

25 heart of what you're saying, and that is, I thought those

1    matters are going to be separate from the matters that are

2    being explored in the 2004, and so I don't know that it -- when

3    I know one of the reasons for waiting is that you don't want to

4    duplicate discovery, but it does seem to me like the discovery

5    is going to have to be a lot more specific and tied to certain

6    transactions.  But -- go ahead?

7           MR. LaTOUR:  Well, if you grant 60 days from the

8    presently pending deadline, which is in May --

9           THE COURT:  That give you about 90 more days.

10          MR. LaTOUR:  -- that's 90 days, so if somebody wants

11   to propound discovery, they can, and there's time to get that

12   accomplished.

13          THE COURT:  Does anybody object to -- I know some

14   people I think had sought extensions and had been waiting to

15   conduct that discovery.  Does anybody think that that's not an

16   adequate period of time to do that?

17          MS. DEL COTTO:  Your Honor, I guess I'm just confused

18   --

19          THE COURT:  Join the crowd.

20          MS. DEL COTTO:  -- I have sort of been relying on

21   others more involved in the discovery to understand some game

22   plan that coordinates everything.  Apparently, that is very

23   difficult to achieve and it has not been achieved yet.

24          The estate has paid a lot of money for an

25   investigation that's not yet concluded, and my clients, for

1   one, would like to know the full result of that investigation

2   and all of the facts that the Trustee knows to complete that

3   investigation before they have to go forth and figure out what

4   additional targeted discovery they need to do.  And that is why

5   we, for one, ask that we be given additional time after we

6   receive the evidence that the Trustee is relying on, and that

7   our time run from that day.  I know Mr. White filed something

8   apparently very late last night, which I have not read, that

9   says at least now he will be completely finished and have his

10  report done by the end of May.

11          So, 60 days from that day may be enough, but, I mean,

12  I have to know that the report's going to be done.  So, now,

13  when I hear there's a lot more.  There's a privilege log that

14  hasn't been given yet.  There's additional depositions.

15  There's this.  There's that.  I mean, I'm just sort of lost in

16  the lack of protocol, I guess I'll call it.

17          THE COURT:  Okay.

18          MR. LaTOUR:  Your Honor, if I could respond to that

19  and can clear up some of the confusion?  The deposition

20  protocol is going to get worked out as soon as the first round

21  of depositions was finished with the 2004 examination.

22          The supposition that that report is going to shed

23  light on the individual transactions that are the subject of

24  the Friona interpleader and the other interpleader actions,

25  which are transaction specific, which Ms. DelCotto's client has

1 the records for the specific transactions in which they were

2 involved.  So, the information that's going to shed light on

3 Packers & Stockyards issues are already in the control of her

4 client, and my client doesn't have any information that is

5 transaction specific in those transactions.

6        Now, is there any possible word that might overlap

7 between two?  Yes, there is, because you could say the words

8 "Packers & Stockyards Act."  But, as far as useful information

9 to help understand the transaction, my client doesn't have that

10 information, so saying that we all have to wait until my client

11 produces information that does not exist and is not within its

12 control, is just wasting time.

13        Now, I thought 60 days -- we put this out far enough

14 that people could give it a try and if it works out that they

15 still need more time, then ask for more time then.

16        THE COURT:  All right.  Mr. Toner?

17        MR. TONER:  Thank you, Your Honor.  There was no

18 disagreement in any of the papers filed that these creditors

19 have done anything in the 90 days the Court granted since your

20 ruling in February.  It's unfortunate that they've chosen to

21 wait for the special counsel's questioning of bank witnesses,

22 because the amount of overlap between PASA issues and that

23 testimony is close to none.

24        The special counsel filled out a report last night

25 that said he was optimistic that he could complete the final

1 report by the end of May, but there is one witness who hasn't

2 been located.  He's involved in -- an ex-employee involved in

3 the fraud part of the bank, but there's no reason to believe he

4 would know anything about cattle transactions.

5          If creditors were allowed their relief to move

6 deadlines it will have quite an effect, putting us into the

7 fall.  Ms. DelCotto has asked to bump a trial date in August in

8 the Downs adversary proceeding.  It just seems to me that the

9 incentives would be right if they were told to complete this

10 discovery, get the briefs on file, by July as opposed to the

11 end of the summer.  I think it's a reasonable amount of time to

12 get going on the specific cattle transaction evidence.

13          THE COURT:  All right.

14          MS. DEL COTTO:  Your Honor, could I just give one

15 example that I'm aware of so you can have a little bit of

16 understanding?  Mr. Knauer has given an affidavit that he has

17 reviewed all the books and records of Eastern Livestock and he

18 is aware of no genuine issues of material fact that Eastern

19 ever acted as a market agency.

20          Now, one of the things that came out during the

21 discovery by the special counsel are documents of Fifth Third

22 where the ad consultant said the books and records of Eastern

23 are in such disarray we cannot tell how they acted, and Fifth

24 Third, you cannot really tell how they acted.  And, secondly,

25 we don't have all the records that Eastern filed with GIPSA for

1  their licensing and their bond, but what we do have and what we

2  can find says that they've got $14 million worth of market

3  agency transactions.

4         Now, none of those questions were asked in the first

5  round of depositions, but Mr. Knauer has given an affidavit

6  that he's not aware of any genuine issues of material fact and

7  he wants to go forward with a summary judgment motion, and he

8  now has those facts in his possession, which I believe, on

9  their very face, create a genuine issue of material fact.

10        So, I mean, to say that my clients are dilatory and

11 are not doing anything, when I thought we came to court a few

12 months ago and said we're going to have this coordinated effort

13 and we're going to let the Trustee finish, because Fifth

14 Third's witness would be whipsawed and have to do this

15 deposition and that deposition, and then come in here today and

16 say these people are being dilatory, again, I must not

17 understand what I thought we accomplished in February, which

18 was to say we're going to have a coordinated effort, we're

19 going to let the Trustee finish his job first, and then

20 everyone else can do their follow-up as necessary, and that,

21 unfortunately, now, is going to take more time because the

22 Trustee hasn't finished his (indiscernible) yet.

23        MR. TONER:  I don't want to leave a misunderstanding

24 about that affidavit on the record, Your Honor.  I believe, it

25 states that there is no reason to conclude that Eastern is a

1  market agency selling on commission on behalf of any cattle

2  producers.  And as Mr. LaTour said earlier, that is information

3  really uniquely in the possession of these cattle producers and

4  livestock auctions.

5        MR. DONNELLON:  Your Honor, I want to -- apparently,

6  part of the problem, because I volunteered to create this

7  protocol, which I regret at this point, because I did circulate

8  it a couple of months ago, but I had thought on Ms. DelCotto's

9  statements that this linkage or overlap was something that was

10 recognized back in February, because I was the one who stood up

11 and said, wait a minute, if we're having this 2004 go forward

12 and we still have this 90-day deadline on the Packers &

13 Stockyards issue, we may not be able to have Mr. White ask all

14 the appropriate questions.  And Your Honor said, as I quoted in

15 my brief, I'm not going to make him answer your questions and

16 I'm not going to make these go longer than we need to, we'll

17 take this in two rounds, he'll do round one, then you'll do

18 round two.

19        But, now, we're told, when you should have been doing

20 round two during the middle of round one, and there's no

21 overlap at all of no possibility because you should -- these

22 witnesses aren't going to have any information.

23        And I'll give you just one short example, as I know

24 we're pressed on time.  At the deposition of the field examiner

25 Patty Voss, she was asked, question, "What did you understand

1  Eastern Livestock's business to be?"  Answer, "They were a

2  cattle broker."  Question, "What did you understand that to

3  mean?"  Answer, "Purchasing and selling cattle on behalf of

4  others, on behalf of themselves at times."  Question, "Do you

5  know whether Eastern Livestock received a commission on the

6  sale of cattle?"  Witness, "I believe I saw commission accounts

7  in their general ledger."

8        We don't have the general ledger of Eastern

9  Livestock.  I've asked the Trustee's counsel on a couple of

10  occasions whether DSI, who preserved the forensic records of

11  Eastern in computers, has tried to reconstruct the general

12  ledger, and that's never been done.

13        But, here, we do have a Fifth Third witness who said

14  they sold cattle and received a commission, which would

15  indicate a market agent selling on commission, which is

16  different from what Mr. Toner just said, and that the witness

17  says it's in the general ledger that Eastern Livestock has that

18  I saw when I was at Eastern Livestock, I, a Fifth Third Bank

19  representative.  But, none of the cattle producers and cattle

20  sellers even have that information.  And, then, we're being

21  told, well, you should have been doing it earlier and you

22  shouldn't overlap these two rounds of discovery.

23        And, frankly, Your Honor, I'm just simply frustrated

24  that I volunteered to create a protocol that would help assist

25  the Court and protect Fifth Third from getting seven different

1  notices of deposition, and I've gotten no response on it,

2  except from Mr. White, and I want to be relieved of that

3  responsibility that I have to generate a protocol.  This was

4  being done to assist Fifth Third in response to their motion to

5  limit the depositions, and now we're still not even finished

6  with this round one.

7       Your Honor had even said when we had the telephonic

8  conference to Mr. White, you can do these three continuation

9  depositions, you can do two more of the five you'd like, and if

10 you still think you need to take more discovery of Fifth Third,

11 come present it to me at the next omnibus.

12      Certainly, one could reasonably conclude from that

13 that the three other depositions and two additional witnesses

14 would have been completed before the omnibus so Mr. White could

15 advise the Court of whether he needed more.  But, we don't even

16 have these scheduled until the middle of May at this point, so

17 simply saying, okay, 60 days from the current extension should

18 be enough for everyone is too narrow of a focus.

19      We had two rounds of discovery that was supposed to

20 happen.  After the second round, we were supposed to have, as

21 Your Honor said, on a simple motion, extend the Packers &

22 Stockyards deadline.  We've got testimony from the Fifth Third

23 witnesses about the market agents selling on commission and the

24 general ledger records.  None of that is in possession of the

25 cattle producers.  None of the cattle --

1          THE COURT:  All right.

2          MR. DONNELLON:  -- producers were in the position of

3  Fifth Third to see that.  And I will sit down.

4          THE COURT:  Okay.  I've heard enough on this.  I

5  think that -- I mean, there's a valid point.  Both sides have

6  some valid points.  The -- but, I think -- I mean, I think one

7  thing that's true is that the great majority of what's being

8  asked about now goes to I think what's being explored by the

9  Trustee is the banks role in all of this, and whether they have

10  -- the Trustee had claim against the bank.

11          So, obviously, there's some overlap with the -- and

12  there's some information that could be relevant to the claim of

13  the cattle producers, but that's not the thrust of what's being

14  explored in this round of discovery.  So, here's what I'm going

15  to do.  Mr. White is here now?

16          UNIDENTIFIED ATTORNEY:  He was going to participate

17  by phone.  I don't know if he's on the line.

18          THE COURT:  Is he on?  Mr. White?

19                    (No audible response)

20          THE COURT:  Is anybody on the phone?

21                    (No audible response)

22          THE COURT:  That's not good.  I suspect people are

23  trying to get on, don't you?

24          UNIDENTIFIED ATTORNEY:  Your Honor, I talked with Mr.

25  White yesterday evening and it was my understanding he was

1  going to participate by phone, so he may be having some

2  problems.  I don't know.

3          THE COURT:  And Terry Hall was going to participate?

4          UNIDENTIFIED ATTORNEY:  That's right.

5          UNIDENTIFIED SPEAKER:  (Indiscernible).

6          UNIDENTIFIED ATTORNEY:  And my co-counsel was going

7  to participate by phone.  I know that.

8          THE COURT:  So, go see if -- go see if the line's

9  open.  We opened the line, but maybe there's some glitch.

10 Well, here's what I want.  I want a -- Mr. White, in his

11 report, says that he thought he could have report by, what, May

12 the --

13         UNIDENTIFIED ATTORNEY:  31st.

14         THE COURT:  Naturally.  So, what we'll do is, we'll

15 extend the deadline to August 15th, and the parties can wait

16 for that report or not wait for that report.  I am going to

17 ask, when we get Mr. White on here, that what he does have be

18 filed by that date.  I don't want this thing held up because we

19 can't find a witness.  If, you know, that --

20         UNIDENTIFIED ATTORNEY:  Your Honor, Mr. Herr's

21 (phonetic) deposition, the one they can't find, I don't think

22 that will hold up the report.  Mr. White and I talked to him on

23 the phone and interviewed him many months ago.  We simply

24 wanted to solidify what he told us and get it on the record,

25 but we know what he -- basically, what he has to say.

1       THE COURT:  All right.  So, there's probably no

2  reason we won't have that report by the end of May?

3       UNIDENTIFIED ATTORNEY:  I don't think that would hold

4  it up.

5       THE COURT:  Okay.  Let me check out the phone status

6  here before we go forward.  Do you show the line open?

7       UNIDENTIFIED SPEAKER:  It won't show (indiscernible)

8  in the system, but as soon as she transfers, it will

9  (indiscernible) and so I'm just waiting now for her to transfer

10  them over.

11                        (Pause)

12       THE COURT:  Maybe this phone's not working.  All

13  right, we're going to take about a five minute break and see if

14  we can get the people on the phone and included.

15                        (Recess)

16       THE COURT:  Thank you, you can be seated.  All right,

17  we're back on the record.  I have a list now of the people that

18  are appearing by phone, so you don't have to state your

19  appearance.  If you do speak, please say your name at that

20  time.  I'd also ask that you not put us on hold and that you

21  keep your phones on mute.

22       We're discussing -- we've done something very briefly

23  in the East West Trucking case, which I don't think any of you

24  are interested in.  We're now in the main case.  The parties

25  have made some arguments concerning, or at least related to,

1   Fifth Third's original motion to limit discovery.

2           The Court has decided to extend the date.  What

3   matter is that actually in the -- is that in the Superior

4   adversary?

5           MR. TONER:  It's in the Friona of Texas

6   interpleaders.

7           THE COURT:  Friona, the interpleader adversary.  Yes.

8           MR. TONER:  As well as in the main case in several

9   contested matters.

10          THE COURT:  Yes, to August -- the current deadline

11  was, what, 90 days after the Court's order in February?

12          MR. TONER:  Or which was May 10.

13          THE COURT:  Which is May 10, so that I've now

14  extended that to August 15.  We've had some discussion about

15  the overlap and lack of overlap in that discovery.  Mr. White,

16  are you on?

17          MR. WHITE:  Yes, sir, Your Honor.

18          THE COURT:  And part of this timetable is based upon

19  the report that you filed I believe last evening indicating

20  that you're going to have your report on file by May 31st,

21  correct?

22          MR. WHITE:  That is correct, Your Honor.

23          THE COURT:  All right, and what I would like to say

24  to you is that if you're missing some small part of what you

25  would like to include in a final report, file a report anyway

1 and just indicate that you intend to supplement it with x, y,

2 or z, when available, because we want to get this -- we want to

3 keep this moving, if possible, okay?

4 　　　　　MR. WHITE:  Yes, sir.  I understand.

5 　　　　　THE COURT:  All right.

6 　　　　　MR. TONER:  Just, Your Honor, so that we're

7 comprehensive on those motions for enlargement of the time, we

8 would offer to tender orders on each of the contested matters

9 where the PASA issue has been raised.

10 　　　　　THE COURT:  That's fine.

11 　　　　　MR. TONER:  And in the Downs adversary matter, which

12 is next on our agenda, Ms. DelCotto and I will work out a new

13 trial schedule and associated deadlines and tender that order,

14 as well.

15 　　　　　THE COURT:  All right.  All right, now, let's talk

16 then -- let's go back to the agenda in the main case.  Does

17 that resolve -- all right, you've got small Roman numerals I

18 through -- one to four, under (A) --

19 　　　　　MR. TONER:  Those are all related to the same motion.

20 　　　　　THE COURT:  -- those are all related to the same

21 issue.  So, the motion extending those deadlines to August 15th

22 should resolve those matters, at least temporarily?

23 　　　　　MR. TONER:  Yes, and the discussion of the deposition

24 protocol is still being worked out.

25 　　　　　THE COURT:  And -- yes.  And you can't get out of the

1  protocol.  Once you volunteer you're in, you know.  Mr. Ames

2  could have told you that, never volunteer.  Motion for

3  extension of time, I'm on Page 2, Matter 5(A) --

4         MR. DONNELLON:  Just for clarification, Your Honor,

5  how would the protocol work if we're allowed to proceed with

6  discovery now.  Mr. LaTour has said he'll respond once Mr.

7  White's finished.  If we don't start discussing this protocol

8  until late May --

9         THE COURT:  Talk to Mr. LaTour, and if you guys can't

10  -- he has said here this morning that some of the stuff you

11  want to know about is not going to be included in these 2004

12  exams.  It's going to be more discreet.  It's going to be

13  transition -- transaction specific, so it seems to me like you

14  all could have a discussion whereas you can proceed on those

15  type of questions and information that you'd like.  If you run

16  into any trouble, I'll get on the phone with you and resolve

17  it.

18         MR. DONNELLON:  Great.  Thank you.

19         THE COURT:  Okay.

20         MR. TONER:  I believe that takes us to --

21         THE COURT:  Yes, that takes care of Matter 5(A) and

22  then the -- and 5(B), right?

23         MR. TONER:  Correct.

24         THE COURT:  Yes.  That's the deadlines issue.  All

25  right, let's talk about then these current contested proceeding

1  status.

2          MR. TONER:  When we were last together, Your Honor

3  asked us to include where things stand in each case and what we

4  think is briefed, and then --

5          THE COURT:  Yes, and I appreciate that.

6          MR. TONER:  I don't believe -- I think each of these

7  is affected by the rulings you made here this morning, and

8  there's nothing --

9          THE COURT:  So, none of these are fully briefed and

10 ready to go?

11         MR. TONER:  That's right.

12         THE COURT:  All right.  So --

13         MR. TONER:  If there's an exception, we'll

14 (indiscernible) the Court, but I think this Packers &

15 Stockyards issue's been raised in probably all of them.

16         THE COURT:  All right, then the Downs adversary, as

17 you just indicated, the -- you're going to set out a new

18 scheduling order which will bump that August bench trial, based

19 upon the Court's ruling this morning?

20         MR. TONER:  That's right.

21         THE COURT:  All right.

22         MR. TONER:  There is remaining on Downs, under C(2)

23 on Page 4, a motion for Laurel Livestock to file an amended

24 pleading.  The Trustee has no objection to that.  There's no

25 reason it shouldn't be granted.

1          THE COURT:  Is anybody on for Laurel Livestock?

2          MR. GANNOTT:  Yes, Judge, Peter Gannott here for

3  Laurel Livestock.  What we did, we just wanted to make sure

4  that our affirmative defenses were the same as all the other

5  defendant's affirmative defenses, and that we would be bound by

6  the Court's summary judgment, as previously entered.

7          THE COURT:  All right.

8          MR. GANNOTT:  So (indiscernible) amended to have the

9  affirmative defenses and we tendered an order that basically

10  said nobody (indiscernible) to our pleadings.  We're bound by

11  the summary judgment to the extent (indiscernible).

12          THE COURT:  All right, I'll show that that motion is

13  granted and --

14          MR. GANNOTT:  Thank you.

15          THE COURT:  -- you can file your amended plea.  That

16  brings us to the Superior adversary.  Obviously, we know where

17  that stands based upon this morning's discussion, all right.

18  We're waiting for --

19          UNIDENTIFIED ATTORNEY:  No, Your Honor --

20          THE COURT:  Well, I guess, we'll still have --

21          UNIDENTIFIED ATTORNEY:  All motions.

22          THE COURT:  No.  No, we don't have that.

23          UNIDENTIFIED ATTORNEY:  All motions have been ruled

24  on there.  The other trailing summary judgment motions you're

25  probably thinking of are in the Texas interpleader matter.

1         THE COURT:  Yes.  Okay, so there's nothing pending in

2 Superior at this time?

3         UNIDENTIFIED ATTORNEY:  At this time, no, Your Honor.

4         THE COURT:  All right.  Friona, the first matter

5 there is something that I'm aware of.  That's another motion

6 related to a specific cattle, a lot of cattle, right, that --

7         MR. TONER:  Five lots.  Yes.

8         THE COURT:  Five lots.  Yes, five lots of cattle --

9 that raises issues similar to the Cactus Grower's motion that's

10 with --

11         UNIDENTIFIED ATTORNEY:  Nichols and Cactus.

12         THE COURT:  -- Nichols and Cactus, yes -- which we

13 should have order on that very soon, in Nichols and Cactus.

14 But, I'll address that next or move it up the list, the other

15 specific one.  Then we have deferred consideration of Trustee's

16 motion for partial -- Well, that's PASA issues.

17         MR. TONER:  So, there'll presumably be more briefs

18 August 15 and replies after that?

19         THE COURT:  Right.

20         MR. TONER:  Hearing in September or October, I would

21 imagine, if necessary?

22         THE COURT:  Yes.  Then we have Nichols and Cactus, as

23 I said, that's about ready.  That order is about finished, then

24 it will be issued very shortly.  The motion to Fifth Third to

25 limit -- or that's the protective order motion --

1          UNIDENTIFIED ATTORNEY:  That's the (indiscernible).

2          THE COURT:  The same thing.  Yes, the -- in the Blue

3    Grass, does this relate to the matters that were -- the

4    confidentiality agreement, et cetera?

5          UNIDENTIFIED ATTORNEY:  Yes.

6          UNIDENTIFIED ATTORNEY:  (Indiscernible).

7          THE COURT:  What's the status of that now?  I think

8    we laid that over from the last hearing?

9          MS. DEL COTTO:  Why don't you ask the bank to come

10   forward and say why they believe the documents were

11   confidential late Friday and they filed something that

12   (indiscernible) that says that they believe the documents

13   contain any confidential information about the bank's policies,

14   loan terms, and things, so I guess we just agree to disagree on

15   the matter of confidential.  I don't know that it's really

16   pressing because it has to do with Packers & Stockyards

17   responses.  But, at some point, it will have to be decided.

18         THE COURT:  All right, if -- when do you want -- how

19   do you want it resolved?  Do you want me to review something in

20   camera?  Do you want to have a hearing?  Do you want to have a

21   phone conference?  Do you all want to meet?  Or do you want to

22   wait until you're further down the road in terms of discovery?

23   Yes?

24         MR. NEWBERN:  Your Honor, the -- Florida is involved

25   in this also, and Mr. LaTour and I reviewed the documents

1  earlier last week.  And again, we're in the same situation, we

2  agree to disagree.  It's a procedural matter as to how the

3  documents that Fifth Third has produced and claims to be

4  confidential are to be handled in the court, what is to be and

5  what is not to be confidential?  As well as, I suggest that it

6  may not be terribly pressing at this moment, but it will need

7  to be addressed at some point.

8          THE COURT:  All right.  well, I don't want this -- I

9  don't want this to hold up matters, so I --

10          MR. LaTOUR:  Your Honor, if I could address that

11  please?

12          THE COURT:  All right.

13          MR. LaTOUR:  The documents have been produced.  The

14  documents have been used in depositions.  I anticipate the

15  documents will be used in further depositions.  I anticipate

16  the documents will be attached to pleadings.  All of which, I

17  have no problem with.  I simply want them filed under seal.

18  It's proprietary information of the internal workings of the

19  bank.  You give unfair business competitors an unfair

20  advantage.

21          THE COURT:  You all have them?

22          MR. LaTOUR:  They have them.  They've had them for

23  months.

24          THE COURT:  Yes.  Well, do you care if you file them

25  under seal?

1          MS. DEL COTTO:  I care when I care about the

2    transparency of a Chapter 11 process and what we're going do

3    when we get the disclosure statement say that people are

4    supposed to vote on things and he has to release things, I

5    think.

6          THE COURT:  I mean, do you care in a less

7    philosophical manner?  Do you care --

8                         (Laughter)

9          MS. DEL COTTO:  Yes, I do, because it adds burden on

10   my client to mail you things and it's just -- and they're not

11   confidential.

12         THE COURT:  All right.

13         MS. DEL COTTO:  That's the point.  I understand why

14   Fifth Third doesn't want them in the record.  I wouldn't want

15   them in the record either, but to say that they're documents

16   about interest rates and --

17         THE COURT:  All right, are these the documents that I

18   have in --

19         MS. DEL COTTO:  Yes, Your Honor.

20         THE COURT:  -- the envelope that --

21         MS. DEL COTTO:  I have -- we could have a call with

22   you where you have them?

23         THE COURT:  All right.  I'm going to have to review

24   them.  I'll review and then we'll have a call, because I've

25   just been happy to keep that envelope closed up until now.

1  But, I'll take a look at them and then we'll have a phone

2  conference some time in a few weeks after I've had a chance to

3  look at them.

4          MS. DEL COTTO:  And I think maybe we should all have

5  the same call, because Mr. Newbern and I basically --

6          THE COURT:  Yes, we'll have the same call.

7          MR. NEWBERN:  Very good, sir.  That'd be fine, Your

8  honor.

9          THE COURT:  We'll all be there together.  Yes, okay.

10          MS. DEL COTTO:  Thanks, Your Honor.

11          MR. NEWBERN:  Thanks, very much.

12          THE COURT:  All right, new matters, Page 5 --

13          MR. TONER:  The same motion for time we've already

14  dealt with, Your Honor.

15          THE COURT:  All right.  In the Innovative matter,

16  that's the same thing, right?  There's nothing --

17          MR. TONER:  That's right.

18          THE COURT:  Rush Creek, same?

19          MR. TONER:  Same thing.  And then Fredin Brothers,

20  the same thing.

21          THE COURT:  Fredin Brothers, the same thing.  For

22  those of you on the phone, also before you got on, Matters 13,

23  14, 15, 16, 17 and 18, we continued to the June omnibus date

24  because the parties are just now appearing and starting to ask

25  for continuances to file answers and the matters are not yet

1  ripe for pretrial protocols to be established.  Let's go back

2  to Thomas and Patsy Gibson matter.  Who's on for the Trustee?

3          MS. THOMAS:  Your Honor, it's Meredith Thomas for the

4  Trustee.  We filed a motion for an enlargement of time to

5  (indiscernible).  It is our sixth motion.  We're requesting an

6  additional 90 days, based on the fact that we are still

7  receiving information from the debtor that could potentially

8  include information about a contract that we're not aware of at

9  the time.

10          THE COURT:  All right, I'll show that that's granted

11  without objection.

12          MS. THOMAS:  Thank you, Your Honor.  And then our

13  second issue is an application for allowing (indiscernible)

14  Auctions, LLC, an order approving their employment with

15  (indiscernible).  We've been working with them to get

16  appraisals of certain real estate and also some personal

17  property of the debtor, and he recently has sent us an invoice

18  for his fees of $1800, and we are requesting that his fees be

19  paid out of the sale proceeds for the (indiscernible) and

20  through the (indiscernible).

21          THE COURT:  That motion will be granted without

22  objection.

23          MS. THOMAS:  Thank you, Your Honor.

24          THE COURT:  All right, is there anything further?

25          UNIDENTIFIED ATTORNEY:  Nothing from the Trustee,

1  Your Honor.

2           THE COURT:  From anyone?

3           UNIDENTIFIED SPEAKER:  Omnibus dates?

4           THE COURT:  Oh, yes.  Let's talk about omnibus dates.

5  We have May and June, correct?  So, we need to go beyond then.

6  We don't necessarily have to have these every month.  As much

7  as I enjoy your all company, and, you know, it is possible on

8  occasion to -- as these cases developed, sometimes it's been my

9  experience that we can accomplish just as much telephonically

10 on just one matter and get parties just that are involved in

11 that one matter involved, and so we don't always have to do it

12 this way throughout the rest of this case.  What about -- I

13 mean, we've extended a lot of this to August.  Is there any

14 reason to have a July omnibus date?

15                   (No audible response)

16          THE COURT:  Why don't we just go to August omnibus

17 date and then if anybody has something they want heard in July,

18 just file a motion and we'll do it either telephonically or if

19 it requires a live hearing, we'll do a live hearing, but only

20 with those parties that are actually involved in the motion.

21 So, having said that, I've got -- how about August 13th, on

22 Monday, because that will be after the August 11th -- or the --

23          UNIDENTIFIED ATTORNEY:  You said August 15th.

24          THE COURT:  Excuse me, we said August 15th.  Or we

25 -- we could do the 20th?  Anybody have any preference?  Let's

1    do August 20th.  And, now I think we should definitely have the

2    June 11th omnibus because we've continued some things to that

3    today, but about the May omnibus, is --

4              UNIDENTIFIED SPEAKER:  (Indiscernible) is already

5    set.

6              THE COURT:  All right, why don't you review the

7    matter that are set and see if they need to be heard in May,

8    and, if so, whether they need to be heard in the context of an

9    omnibus hearing, and we may be able either bump them to June or

10   just have a smaller hearing so that we don't have as many gray

11   suits involved.

12             UNIDENTIFIED ATTORNEY:  We'll do that.  Thank you.

13             THE COURT:  Or black dresses.  I didn't mean to

14   discriminate.  Yes?

15             UNIDENTIFIED ATTORNEY:  Your Honor, is the August 20

16   10 a.m. in the morning?

17             THE COURT:  Yes, 10 a.m.  Anything further this

18   morning?

19                  (No audible response)

20             THE COURT:  All right, we're adjourned.

21                      *  *  *  *  *

22

23

24

25

# **C E R T I F I C A T I O N**

        I, WENDY ANTOSIEWICZ, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Wendy Antosiewicz

WENDY ANTOSIEWICZ

J&J COURT TRANSCRIBERS, INC.   DATE:  May 10, 2012