**Exhibit 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| EASTERN LIVESTOCK CO., LLC, ) | Case No.:  10-93904-BHL-11 |
| ) | |
| Debtor. ) | Hon. Basil H. Lorch, III |
| _____ ) | |
| RUSH CREEK RANCH, LLLP, ) | |
| ) | Adv. Pro. No. 11-59104 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EASTERN LIVESTOCK COMPANY, LLC, ) | |
| HILLIARD–McKETTRICK INVESTMENTS, ) | |
| INC. d/b/a ARCADIA STOCKYARD; ) | |
| CATTLEMEN'S LIVESTOCK MARKET, INC.; ) | |
| COLUMBIA LIVESTOCK MARKET, INC.; ) | |
| HARDEE LIVESTOCK MARKET, INC.; ) | |
| NORTH FLORIDA LIVESTOCK MARKET, ) | |
| INC.; OCALA LIVESTOCK MARKET, INC.; ) | |
| OKEECHOBEE LIVESTOCK MARKET, INC.; ) | |
| SUMTER COUNTY FARMERS MARKET, ) | |
| INC.; MADISON COUNTY LIVESTOCK ) | |
| MARKET, INC. d/b/a TOWNSEND ) | |
| LIVESTOCK MARKET; RON SIZEMORE ) | |
| TRUCKING, INC.; OAK LAKE CATTLE CO.; ) | |
| EAGLE BAY, INC.; DANIEL M. BYRD; D&R ) | |
| TRUCKING; FIFTH THIRD BANK; ) | |
| BANKS 1-25, and DOES 25-50 ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This Settlement Agreement And Mutual Release is entered into as of this 17th day of

May, 2012, by and between: (i) JAMES A. KNAUER ("Trustee"), chapter 11 Trustee for Debtor

EASTERN LIVESTOCK CO., LLC,  ("Eastern" or "Debtor"); (ii) HILLIARD–MCKETTRICK

INVESTMENTS, INC. d/b/a ARCADIA STOCKYARD; CATTLEMEN'S LIVESTOCK

MARKET, INC.; COLUMBIA LIVESTOCK MARKET, INC.; HARDEE LIVESTOCK MARKET, INC.; NORTH FLORIDA LIVESTOCK MARKET, INC.; OCALA LIVESTOCK MARKET, INC.; OKEECHOBEE LIVESTOCK MARKET, INC.; SUMTER COUNTY FARMERS MARKET, INC.; and MADISON COUNTY LIVESTOCK MARKET, INC. d/b/a TOWNSEND LIVESTOCK MARKET; RON SIZEMORE TRUCKING, INC. OAK LAKE CATTLE CO.; EAGLE BAY, INC.; DANIEL M. BYRD; and I.E. "JIM" BYRD, (collectively "Florida Creditors"); and (iii) FIFTH THIRD BANK ("Fifth Third"); (collectively, the "Parties"), for the purpose of settling certain claims that have been asserted or could have been asserted by and between Florida Creditors, Debtor and Fifth Third.

## RECITALS

**WHEREAS**, on December 6, 2011 certain petitioning creditors commenced a chapter 11 case ("Chapter 11 Case") against Eastern  by filing in the United States Bankruptcy Court, Southern District of Indiana, New Albany Division (the "Court") an involuntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. The Court entered the *Order for Relief in an Involuntary Case and Order to Complete Filing* [Doc. No. 110] on December 28, 2010;

**WHEREAS,** on December 27, 2010, the Court entered the *Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee* [Doc. No. 102] approving the *United States Trustee's Application for an Order Approving the Appointment of James M. Knauer as Chapter 11 Trustee* [Doc. No. 98] pursuant to 11 U.S.C. § 1104;

**WHEREAS**, Rush Creek Ranch, LLP had purchased cattle in Florida during late October and early November 2010 in the total amount of $178,233.39, but upon learning that Eastern was having financial difficulties, withheld payment for the cattle and commenced a civil interpleader action against the Debtor, the Florida Creditors, and Fifth Third and others in the Circuit Court of

Vernon County, Wisconsin under Case No. 2010 cv 000317 ("Wisconsin Case"), depositing said funds with that court;

WHEREAS, Len Miller had purchased cattle in Florida during late October and early November 2010 in the total amount of $148,432.14, but upon learning that Eastern was having financial difficulties, withheld payment for the cattle and on or about January 30, 2011 made payment in said amount to the Trustee as "Purchase Money";

WHEREAS, in response to losses sustained in transactions with Eastern, on or about February 4, 2011 Fifth Third filed Claim No. 13 in the Chapter 11 Case seeking recovery from a first position lien on all of Eastern's receivables, inventory, and other assets;

WHEREAS, on March 24, 2011, the Trustee removed the Wisconsin Case to the United States Bankruptcy Court, Western District of Wisconsin, Eau Claire Division and on May 4, 2011, the Hon. Thomas S. Utschig granted the *Order Transferring Venue and Interpleaded Funds* [Doc. No. 5] which transferred venue of the Wisconsin Case to the Court as Adversary Proceeding No. 11-59104 ("Rush Creek Adversary Proceeding");

WHEREAS, on or about April 30, 2011 in response to losses sustained in transactions with Eastern, the Florida Creditors filed Claim Nos. 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 225, 226, 227, 228, 229, 230, 232, and 233, as amended, seeking recovery on a series of unpaid invoices for livestock sales, hauling, yardage, commissions, and for dishonored checks;

WHEREAS, on May 23, 2011, the Trustee filed in the Chapter 11 Case the *Trustee's Purchase Money Claims Report, Motion To Transfer Funds And Notice Of Release Of Proceeds From Account* [Dock. No. 501] ("Purchase Money Claims Report") asking for authority to transfer specific funds from the sale of certain cattle lots to the Trustee's operating account free and clear of all liens, claims, interests and encumbrances and the Florida Creditors filed

objections, joinders, and supplemental objections [Doc. Nos. 556 and 670] claiming superior rights to certain of the cattle sale proceeds identified in the Purchase Money Claims Report;

WHEREAS, on September 1, 2011, the Court entered the *Final Order Regarding Trustee's Purchase Money Claims Report* [Doc. No. 691] and ordered the Trustee and Florida Creditors to prepare scheduling orders for contested matter proceedings to resolve the Florida Creditors' objections to the *Purchase Money Claims Report*;

WHEREAS, on March 16, 2012, the Court entered the *Order Granting Motion to Consolidate* [Doc. 1095] which granted the *Renewed Florida Creditors' Motion to Consolidate* [1081] and combined the Florida Creditors' claims and objections to the Purchase Money Claims Report with the Florida Creditors' claims in the *Rush Creek Adversary Proceeding;*

WHEREAS, the Florida Creditors have alleged that during late October and early November 2010 the Florida Creditors engaged in certain cattle transactions for which the Florida Creditors were not paid, either receiving no payment whatsoever or receiving payment from Eastern by checks that were allegedly wrongfully dishonored upon presentment;

WHEREAS, Tommy Berend ("Berend") has claimed that he purchased cattle in Florida during late October and early November 2010 in the total amount of $45,143.95 and that he delivered payment in the same amount to the alleged Order Buyer, Oak Lake Cattle Co., for benefit of the Florida Creditors;

WHEREAS, D.R. Daniels ("Daniels") has claimed that he purchased cattle in Florida during late October and early November 2010 in the total amount of $34,373.13 and that he delivered payment in the same amount to the alleged Order Buyer, Oak Lake Cattle Co., for benefit of the Florida Creditors;

WHEREAS, Tom Herrmann ("Herrmann") has claimed that he purchased cattle in Florida during late October and early November 2010 in the total amount of $22,884.04 and that

BDDB01 9270740v1                                                4

he delivered payment in the same amount to the alleged Order Buyer, Oak Lake Cattle Co., for benefit of the Florida Creditors;

**WHEREAS**, Jacob Larson ("Larson") has claimed that he purchased cattle in Florida during late October and early November 2010 in the total amount of $14,547.27 and that he delivered payment in the same amount to the alleged Order Buyer, Oak Lake Cattle Co., for benefit of the Florida Creditors;

**WHEREAS,** on or about March 25, 1993, Oak Lake Cattle Co., Inc. registered as a "Clearee" of Debtor as "Clearing Agency" pursuant to the Packers and Stockyards Act of 1921, 7 U.S.C. §§181 et seq. and regulations, 9 C.F.R. §§201.10 et seq. ("Stockyards Act") and continued through November 2, 2010 and for which account reconciliation has been sought pursuant to aforementioned Claim Nos. 187, 188, and 189, as amended;

**NOW THEREFORE**, in consideration of the foregoing recitals, and without admitting or denying each others' assertions regarding the aforementioned claims, and in consideration of the risks and costs of litigating and of collecting on any judgment rendered on said claims, and for other good and valuable consideration the sufficiency of which is hereby acknowledged, the Parties to this Settlement Agreement do covenant and agree as follows:

## DEFINITIONS

As used herein, the terms below are defined as follows:

a.      *"Settlement Agreement"* shall mean this Settlement Agreement and Mutual Release;

b.      *"Settlement Date"* shall mean the date first mentioned above as executed by the Parties to this "Settlement Agreement";

c.      "*Settlement Motion*" shall mean the motion filed by the Trustee within three (3) business days of the Settlement Date seeking Court approval of the Settlement Agreement;

d.       "*Effective Date*" shall mean the later of (i) the Court's final nonappealable order approving the Settlement Motion, and (ii) the Court's final nonappealable order approving the disbursement of the funds Rush Creek Ranch LLP interpleaded in the Wisconsin Case and awaiting transfer to the Court in connection with the *Rush Creek Adversary Proceeding*;

e.       "*Rush Creek Adversary Proceeding*" shall mean the consolidated proceeding (Case No. 4:11-ap-59104) encompassing any and all of the Florida Creditors' claims and the Trustee's and Fifth Third's objections to said claims to the *Purchase Money Claims Report* and all claims in the Rush Creek Ranch LLLP interpleader action and adversary proceeding originally known as the Wisconsin Case;

e.       "*Florida Claims*" shall mean any and all claims and objections the Florida Creditors asserted or could have asserted in the *Chapter 11 Case,* the consolidated *Rush Creek Adversary Proceeding* or in another court (whether state or federal) against the Trustee, Debtor, or Fifth Third;

f.       "*Fifth Third Claims*" shall mean any and all objections and claims Fifth Third asserted or could have asserted against the Florida Creditors in the *Chapter 11 Case,* the consolidated *Rush Creek Adversary Proceeding* or in another court (whether state or federal);

g.       "*Trustee Claims*" shall mean any and all objections and claims the Trustee asserted or could have asserted against the Florida Creditors in the *Chapter 11 Case,* the consolidated *Rush Creek Adversary Proceeding* or in another court (whether state or federal); and

h.       "*Released Claims*" shall mean collectively the *Florida Claims, Fifth Third Claims,* and *Trustee Claims.*

## AGREEMENT AND RELEASES

1.    **Settlement Amount**.  Subject to and conditioned upon the occurrence of the *Effective Date*, the Florida Creditors shall receive and/or retain TWO HUNDRED SEVENTY-SEVEN THOUSAND AND 82/100 DOLLARS ($277,702.82) (the **"Settlement Amount"**), said payment to be made to the "*W. Scott Newbern, PL Florida Bar Foundation IOTA f/b/o/ the Florida Creditors*" and the Trustee shall receive and/or retain ONE HUNDRED THOUSAND NINETY-EIGHT AND 51/100 DOLLARS ($100,098.51) (the **"Trustee Amount"**), said payment to be made to "*James A. Knauer as Trustee for Debtor Eastern Livestock Company, LLC.*" Unless otherwise agreed by the Parties, payments of the *Settlement Amount* and *Trustee Amount* shall be made and delivered in a manner acceptable to the Parties within five (5) business days of the *Effective Date* as provided herein.

2.    **Court Approval of Settlement*; Effective Date*.**  This Settlement Agreement is subject to Court approval under Federal Rule of Bankruptcy Procedure 9019.  Within three (3) business days following execution of this Settlement Agreement on behalf of all of the Parties, the Trustee shall file with the Court the Settlement Motion requesting the Court's approval of this Settlement Agreement, entry of final declaratory judgment in the Rush Creek Adversary Proceeding, and disbursement of the interpleaded funds.  The effectiveness of this Settlement Agreement is contingent upon the Court's final and nonappealable entry of the Settlement Order and the Disbursement Order releasing the interpleaded funds consistent with Section 1 above. The Parties shall file such additional information as the Court may request in an effort to obtain Court approval of the Settlement Motion.  The Parties shall, in good faith, use all reasonable efforts to obtain approval of the Settlement Motion.

3.    **Releases**.  In exchange for the promises contained herein, and conditioned upon entry of the Settlement Order and occurrence of the Effective Date, each of the Parties and their

parents, subsidiaries, affiliates, principals, officers, directors, employees, agents, heirs, and assigns hereto forever **RELEASE AND DISCHARGE** their claims as follows:

(i)      The Florida Creditors hereby release and forever discharge Eastern, the Trustee, and Fifth Third, including their respective parents, subsidiaries, affiliates, principals, officers, directors, employees, agents, attorneys, heirs, and assigns, from the *Florida Claims*, including any and all actions, suits, claims, causes of action, administrative proceedings, claims for debts, rights, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether known or unknown, discovered or discoverable, which have accrued between the Parties as of the *Effective Date* of this Settlement Agreement.

(ii)      Fifth Third hereby releases and forever discharges the Florida Creditors, including their respective parents, subsidiaries, affiliates, principals, officers, directors, employees, agents, attorneys, heirs, and assigns, from the *Fifth Third Claims*, including any and all actions, suits, claims, causes of action, administrative proceedings, claims for debts, rights, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether known or unknown, discovered or discoverable, which have accrued as of the Effective Date of this Settlement Agreement, and specifically including claims or potential claims against Berend, Daniels, Herrmann, and Larson.

(iii)      Eastern and the Trustee hereby release and forever discharge the *Florida Creditors,* including their respective parents, subsidiaries, affiliates, principals, officers, directors, employees, agents, attorneys, heirs, and assigns, from the *Trustee Claims*, including any and all actions, suits, claims, causes of action, administrative proceedings, claims for debts, rights, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether known or unknown, discovered or discoverable, which have

accrued between the Parties as of the Effective Date of this Settlement Agreement, and specifically including claims or potential claims against Berend, Daniels, Herrmann, and Larson.

(iv)    The *Released Claims* indentified above are not limited to but specifically include the Florida Creditors' proofs of claims filed in the *Chapter 11 Case,* any and all of the Florida Creditors' crossclaims and counterclaims asserted or assertable in the *Rush Creek Adversary Proceeding*, and any and all claims asserted or assertable by the Florida Creditors against Eastern's bankruptcy estate, the Trustee, or Fifth Third.

4.      **Dismissals.**  Within three (3) business days following the *Effective Date*, the parties shall file with the Court all joint motions, stipulations or other documents reasonably necessary to dismiss with prejudice their claims in the *Rush Creek Adversary Proceeding,* to release and pay out the interpleaded funds consistent with Section 1 of this Settlement Agreement, and for all other orders and relief necessary and appropriate to finally and fully conclude the *Rush Creek Adversary Proceeding.*

5.      **Qualification; Authority**.  Each individual executing this Settlement Agreement on behalf of a party represents and warrants that he or she is duly authorized to execute and deliver this Settlement Agreement on behalf of such party and that no additional consents or signatures on behalf of such party are required in order for this Settlement Agreement to be binding and enforceable upon and against said party.

6.      **Each of the Parties Bears Own Costs**.  Each of the Parties agrees that it or he shall bear its or his own attorneys' fees and other costs incurred in connection with the negotiation and preparation of this Settlement Agreement and the procurement of the Settlement Order, including the preparation and filing of, and hearings for, all related motions.

7.      **Successors and Assigns; Governing Law**.  This Settlement Agreement shall inure to the benefit of the Parties and their respective heirs, affiliates, assigns and successors in

interest. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana except to the extent superseded by the Federal bankruptcy law applicable to the Chapter 11 Case.

8.        **Merger of Prior Agreements**.  This Settlement Agreement constitutes the entire agreement between the Parties, and any and all prior or contemporaneous agreements, whether oral or written, related thereto are merged into this Settlement Agreement and are of no further force or effect.

9.        **Severability.**  The provisions of this Settlement Agreement are severable. If a court of competent jurisdiction rules that any portion of this Settlement Agreement is invalid or unenforceable, such ruling will not and shall not affect the validity and enforceability of other provisions of this Settlement Agreement.

10.      **No Presumption Against Drafter**.  This Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Settlement Agreement.

11.      **No Admission of Fault or Liability**.  This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of any of the Parties.

12.      **Counterparts; Facsimile or E-Mail Delivery.**  This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all Parties.  Signatures may be delivered by facsimile or e-mail and such signatures shall be binding upon the party delivering same as if they were originals.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the Settlement Date, the day and year first set forth above, as indicated below.

**[SIGNATURE PAGES FOLLOW]**

BDDB01 9270740v1                                                    10

**[SIGNATURE PAGES]**

Acknowledged and agreed as to *Fifth Third Bank*

_____
NAME                                                    Date

Acknowledged and agreed as to *James Knauer, as Chapter 11 Trustee for Eastern Livestock Co., LLC*

_____
NAME                                                    Date

Acknowledged and agreed on behalf of the Florida Creditors:

/s/ W. Scott Newbern
_____
W. Scott Newbern            May 17, 2012
By: NAME                                            Date

Acknowledged and agreed as to the individual Florida Creditors as follows:

Hilliard-McKettrick Investments, Inc. d/b/a Arcadia Stockyard

_____
By: NAME                                            Date

Cattlemen's Livestock Auction Market, Inc

_____
By: NAME                                            Date

Columbia Livestock Market Of Lake City, Inc.

_____

_____
By: NAME                              Date

Hardee Livestock Market, Inc.

_____

_____
By: NAME                              Date

North Florida Livestock Market, Inc.

_____

_____
By: NAME                              Date

Ocala Livestock Market, Inc.

_____

_____
By: NAME                              Date

Okeechobee Livestock Market, Inc.

_____

_____
By: NAME                              Date

Sumter County Farmers Market, Inc.

_____

By: NAME                          Date

Madison Livestock Market, Inc. d/b/a Townsend Livestock Market

_____

By: NAME                          Date

Ron Sizemore Trucking, Inc.

_____

By: NAME                          Date

Oak Lake Cattle Co.

_____

By: NAME                          Date

Eagle Bay, Inc.

_____

By: NAME                          Date

BDDB01 9270740v1                    13

Daniel M. Byrd

_____
Date

I.E. "Jim" Byrd

_____
Date