UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EASTERN LIVESTOCK CO., LLC, et al.,[1] | : | Case No.: 10-93904-BHL-11 |
| | : | |
| Debtor. | : | Judge Basil H. Lorch, III |
| | : | |
| | : | |

## FIFTH THIRD BANK'S MOTION FOR CONTEMPT

Pursuant to 18 U.S.C. § 401, Fifth Third Bank ("Fifth Third") respectfully moves this Court for an order holding The First Bank and Trust Company ("First Bank") and its counsel—Daniel J. Donnellon and Stephen A. Weigand of the law firm of Faruki, Ireland & Cox PLL (collectively, the "Faruki Attorneys")—in contempt for violating this Court's order ("Confidentiality Order") and the unambiguous terms of the stipulated confidentiality agreement ("Confidentiality Agreement") that the Court adopted and applied to these Chapter 11 proceedings.[2] A proposed order is attached for the Court's consideration.

## I.   PRELIMINARY STATEMENT

1.      First Bank and the Faruki Attorneys have intentionally disclosed to the public the contents of confidential documents and testimony, obtained from Fifth Third in these bankruptcy proceedings, in a complaint that they recently filed in the Hamilton County, Ohio Court of

---

[1]      The Debtor entities are Eastern Livestock Co., LLC and Okie Farms, L.L.C.
[2]      A copy of the Confidentiality Agreement, encompassed in Doc. 722 and referenced in Doc. 731, is attached as Exhibit A for the Court's convenience.

Common Pleas (the "Hamilton County Complaint").[3]   Upon receiving the Hamilton County Complaint, Fifth Third immediately attempted to mitigate the effects of First Bank and the Faruki Attorneys' violation by moving the Hamilton County Court of Common Pleas to seal the Hamilton County Complaint on the grounds that the complaint disclosed material protected by this Court's Confidentiality Order.  In response, First Bank and the Faruki Attorneys *opposed* Fifth Third's motion to seal, claimed that the information disclosed was not confidential, and further disclosed Fifth Third's confidential information in their opposition brief.

2.     Then, after Fifth Third asked First Bank and the Faruki Attorneys to withdraw the Hamilton County Complaint, First Bank and the Faruki Attorneys have responded by asking this Court instead to turn a blind eye to First Bank and Faruki Attorneys' violations and belatedly remove *some* of the confidential materials at issue from the strictures of this Court's Confidentiality Order.

3.     Because First Bank and the Faruki Attorneys' public filings quote, cite, and otherwise reveal the contents of Fifth Third's confidential documents and witness testimony in violation of the Confidentiality Order, the Court should hold in contempt First Bank and the Faruki Attorneys who have violated this Court's Confidentiality Order.

## II.    BACKGROUND

### A.     The Confidentiality Order

4.     On September 28, 2011, Superior Livestock Auction, Inc. and the trustee for Eastern Livestock Co., LLC ("Trustee") filed a joint motion for the entry of a stipulated confidentiality agreement.  (*See* Doc. 722).  The motion represented to the Court that the moving

---

[3]     The Confidential exhibits cited herein—including the Hamilton County Complaint and the documents disclosing Fifth Third's confidential information—are compiled as an Appendix to this motion and are being filed manually with the Court under seal, in accordance with the Court's Confidentiality Order.  (*See* Confidentiality Order, ¶11.)

parties, including First Bank and its counsel, had reviewed the proposed draft of the Confidentiality Agreement attached to the motion and had provided input on its terms, and further represented that the parties, including First Bank, had no objection to the Court's entering the Confidentiality Agreement as an order. (*Id.*) On September 30, 2011, this Court granted the joint motion and issued the Confidentiality Order, adopting the terms of the Confidentiality Agreement and formally entering them "in all matters related to this chapter 11 case to assist the parties with discovery and with the informal exchange of information and records." (Doc. 731).

5.      The Confidentiality Order and Agreement, which cover confidential information disclosed in either documents or oral testimony, mandate that the materials designated as confidential "***shall not be shown, described or otherwise revealed to any person or entity***" other than those individuals enumerated in the Confidentiality Agreement.   (Confidentiality Agreement, ¶ 4 (emphasis added)).  The list of approved recipients is essentialiy comprised of the Court, including its officers or employees, and the parties, including the parties' agents and representatives. (*Id.*) The list does not include any members of the press, other courts, or the general public. (*Id.*)

6.      The Confidentiality Order and Agreement also explicitly require parties receiving information designated as confidential to "***hold the Confidential Material in trust and confidence and…refrain from making such information available to others***." (Confidentiality Agreement, ¶ 5 (emphasis added)).  The Confidentiality Order and Agreement further provide that "posting [confidential] information on any website [or] using the Confidential Material to the competitive disadvantage of the Disclosing Party" is a prohibited use of the confidential information. (*Id.*) Moreover, the Confidentiality Order and Agreement eliminate any ambiguity as to the permitted uses of the material by requiring "that the use of Confidential Material shall

be restricted to this Chapter 11 Case Number 10-93904-11...alone[4] and that **no Confidential Material shall be provided to any third-party** for any purpose not expressly permitted herein without the prior written permission of the Disclosing Party." (*Id.*, ¶ 6 (emphasis added)).

7.     In addition, the Confidentiality Order and Agreement make it clear that all "parties and attorneys of record in this action, and all other persons and entities possessing or granted access to Confidential Material under this Agreement **shall be bound by this Agreement**." (Confidentiality Agreement, ¶ 16 (emphasis added)).  Indeed, in accordance with the Court ordered Discovery Protocols (Doc. 738 (proposing Discovery Protocols); Doc. 779 (adopting Discovery Protocols)), all parties were required to sign the written acknowledgment included as Exhibit A to the Confidentiality Agreement and confirm that they "have read and understood the Stipulated Confidentiality **Order entered by the Court** in this case and **agree to be bound by the provisions of that order**." (Confidentiality Agreement, Exh. A (emphasis added).

8.     Parties further confirmed that they "agree to subject [themselves] to the jurisdiction of this Court for purposes of any proceedings related to the performance under, compliance with, **or violation of that order**." (*Id.* (emphasis added)).  In the event of such a violation, "*[t]he Court may impose sanctions on any person* or entity possessing or granted access to Confidential Material under this Agreement **who discloses or uses the Confidential Material for any purpose other than as authorized by this agreement** or who otherwise violates the terms of this Agreement." (Confidentiality Agreement, ¶ 16 (emphasis added)).

---

[4]     The use of the Confidential Material is even restricted in these proceedings; parties are required to file any documents or testimony designated as "Confidential," as well as any pleadings referencing or revealing Confidential Materials, under seal. (Confidentiality Agreement, ¶ 11).  Other parties in this action have abided by these requirements, filing materials marked as "Confidential" under seal with the Court. (*See* Doc. 1027 (Florida Creditors' Motion to Seal Reply to Trustee's Response and Notice of Filing Evidentiary Materials in Support of Florida Creditors' Rule 7042 Motion to Consolidate and for Expedited Hearing); Adversary No. 11-59093, Doc. 376 (Cattle Producers' Motion for Determination as to Confidentiality of Documents Produced to Data Room, or Alternatively, to File Documents Under Seal as Required by Discovery Protocol and Confidentiality Agreement)).

**B.    Fifth Third's Production of Documents Designated as "Confidential" Under the Court's Order**

9.    Relying on, and in consideration of, the protections afforded by the Court's Confidentiality Order, Fifth Third has produced approximately 30,000 pages of documents to First Bank and the Faruki Attorneys (as well as other parties in these proceedings). (Declaration of Kent A. Britt, Esq. ("Britt Decl.") ¶¶ 2-3).[5]  Those documents have been designated as Confidential pursuant to the Court's Confidentiality Order. (*Id.* ¶ 4).  Before filing the Hamilton County Complaint, First Bank and the Faruki Attorneys *never* challenged the confidentiality of *any* of Fifth Third's documents in accordance with the Confidentiality Order and Agreement. Accordingly, until such time as a document designated "Confidential" was de-designated pursuant to the Court's Confidentiality Order, First Bank and the Faruki Attorneys were required to maintain the confidentiality of Fifth Third's Confidential documents, without exception. (*See* Confidentiality Order, ¶ 8).

10.    Fifth Third's employees have also submitted to sixteen Fed. R. Bankr. P. 2004 ("Rule 2004") examinations and offered approximately 85 hours of testimony, substantial portions of which were designated as Confidential in accordance with the Court's Confidentiality Order.  (Britt Decl. ¶¶ 5, 7).  While those Rule 2004 examinations were conducted by special counsel for the Trustee, the Faruki Attorneys attended the Rule 2004 examinations and asked questions of the Fifth Third witnesses with the Trustee's permission.  (Doc. 1066, Report of the Trustee, James A. Knauer Regarding Investigation and Analysis of Potential Claims Against Fifth Third ("Trustee's Report"), ¶ 7).  Notably, the Faruki Attorneys were only supposed to be asking questions at the Rule 2004 examinations to assist the Trustee in determining if the estate had any claims against Fifth Third, and were *not* permitted to use the Rule 2004 examinations to

---

[5]    The Declaration of Kent A. Britt, Esq., is attached hereto as Exhibit B.

advance First Bank's individual interests in the pursuit of an action in the Hamilton County, Ohio Court of Common Pleas. (*See* Doc. 1051, Order Granting in Part and Continuing in Part the Motion of Fifth Third Bank to Limit Discovery, or, Alternatively, for a Protective Order (stating that Daniel J. Donnellon was permitted to ask questions at the Trustee's discretion, "provided that the scope of the questions [was] limited to determining if the estate has any claims against Fifth Third.")).

11.     Because Fifth Third's witnesses were questioned about 172 exhibits designated as "Confidential," as well as other confidential matters (such as Fifth Third's field exam and underwriting procedures and its bank protection and investigation policies), Fifth Third properly designated portions of the Rule 2004 examination testimony as "Confidential" in accordance with the Confidentiality Order. (Britt Decl. ¶¶ 6-7). Further, Fifth Third notified the attending parties—including First Bank and the Faruki Attorneys—in writing of these Confidential designations within 30 days of receipt of the transcripts, as provided in Paragraph 3 of the Confidentiality Agreement. (*Id.* ¶¶ 7-11, Exhs. 1-4). Again, before filing their Hamilton County Complaint, First Bank and the Faruki Attorneys have ***never*** challenged ***any*** of Fifth Third's designations in accordance with the Confidentiality Order and Agreement.

**C.     First Bank and the Faruki Attorneys' Violation of the Confidentiality Order**

12.     On May 16, 2012, the day after special counsel for the Trustee completed the final Rule 2004 examination of Fifth Third's witnesses, First Bank—by and through the Faruki Attorneys—filed the Hamilton County Complaint in the Hamilton County, Ohio Court of Common Pleas against Fifth Third, alleging claims for conversion, unjust enrichment, fraud, aiding and abetting fraud, negligent misrepresentation, civil conspiracy, and a violation of O.R.C. § 2923.32 (Ohio's RICO statute). The Hamilton County Complaint quotes and cites

several confidential documents produced by Fifth Third, reveals the confidential contents of countless other Fifth Third documents, and even places data from confidential documents in charts and graphs to highlight their significance. (*See, e.g.*, Hamilton County Complaint, Figs. 1-2).

13.     For example, the Hamilton County Complaint quotes directly from alerts generated by Fifth Third's proprietary[6] fraud prevention software. (Hamilton County Complaint, ¶ 61; *see* Fed. R. Bankr. P. 2004 Examinations ("Rule 2004 Examinations"), Exh. 44). Eight of Fifth Third's witnesses offered testimony directly on these alerts,[7] which were compiled and submitted as Exhibit 44 in the Rule 2004 Examinations.

14.     Likewise, the Hamilton County Complaint quotes from a document pertaining to an internal investigation conducted by Fifth Third's bank protection department, and reveals information contained in an internal Fifth Third email relating to that document.  (Hamilton County Complaint, ¶ 46; *see* Rule 2004 Examinations, Exhs. 10, 76).   At least ten of Fifth Third's witnesses offered testimony on the document itself,[8] submitted as Exhibit 10 in the Rule 2004 examinations, and six of those witnesses also discussed the related email,[9] submitted as Exhibit 76 in the Rule 2004 examinations.

---

[6]     First Bank and the Faruki Attorneys admit and affirmatively allege in the Hamilton County Complaint that these documents are "proprietary." (Hamilton County Complaint, ¶ 35).

[7]     *See, e.g.*, Feb. 28, 2012 Rule 2004 Examination of Sara Chapman ("Chapman Exam") at 15-16, 103-33, 139-41, 167-68, 196-99; Feb. 27, 2012 Rule 2004 Examination of David Fuller ("Fuller Exam") at 290-98; Feb. 24, 2012 Rule 2004 Examination of Shannon Hughes ("Hughes Exam") at 56-60; Mar. 5, 2012 Rule 2004 Examination of Devon Morse ("Morse Exam") at 188-201; Apr. 27, 2012 Rule 2004 Examination of Tim Spurlock ("Spurlock Exam II") at 211-16, 220-23; Feb. 29, 2012 Rule 2004 Examination of Darrin Steinmann ("Steinmann Exam") at 67-68; Mar. 6, 2012 Rule 2004 Examination of Patty Voss ("Voss Exam I") at 249; Feb. 29, 2012 Rule 2004 Examination of Amber Whitehouse ("Whitehouse Exam") at 156-69.

[8]     *See, e.g.*, Chapman Exam at 83-93, 122, 130, 173-77; Fuller Exam at 236-39, 243; Mar. 1, 2012 Rule 2004 Examination of Anne Kelly ("A. Kelly Exam I") at 213-218; Feb. 23, 2012 Rule 2004 Examination of Sean Kelly ("S. Kelly Exam") at 95-99; Morse Exam at 179-87, 192, 259; Feb. 24, 2010 Rule 2004 Examination of Tim Spurlock ("Spurlock Exam I") at 74-76; Steinmann Exam at 67-68; Mar. 9 2012 Rule 2004 Examination of Wayne Stoffel ("Stoffel Exam") at 223; Voss Exam I at 246-48; Whitehouse Exam at 136-45, 192-95.

[9]     *See, e.g.*, Chapman Exam at 88-90; Fuller Exam at 287-91; A. Kelly Exam I at 218-20; Morse Exam at 152-53, 161-65, 180; Voss Exam I at 247-48; Whitehouse Exam at 147-55.

15.     Further, the Hamilton County Complaint also reveals information which First Bank and the Faruki Attorneys admit and affirmatively allege comes from a "Fifth Third internal memorandum." (Hamilton County Complaint, ¶¶ 63, 66; *see* Rule 2004 Examinations, Exh. 156). The referenced document—an email revealing the bank's field exam and underwriting policies, procedures, and decision making processes—was submitted as Exhibit 156 and used in at least two of the Rule 2004 examinations.[10] All of these documents, and the corresponding testimony offered by Fifth Third's witnesses, were designated as Confidential. (*See* Britt Decl. ¶ 14).[11]

16.     First Bank's Hamilton County Complaint also quotes and reveals testimony on the same confidential documents and related confidential issues. Indeed, First Bank and the Faruki Attorneys publicly disclosed the contents of sixteen confidential Rule 2004 examinations given by twelve Fifth Third employees and an outside field examiner retained by Fifth Third. (*See, e.g.,* Hamilton County Complaint, ¶ 48 (revealing testimony from the Rule 2004 Examination of Anne Kelly); ¶ 56 (revealing testimony from the Rule 2004 Examination of Wayne Stoffel); ¶ 73 (revealing testimony from the Rule 2004 Examination of Tim Spurlock). First Bank and the Faruki Attorneys even identify by name five of those Rule 2004 witnesses— Anne Kelly, Dave Fuller, Tim Spurlock, Patty Voss, and Wayne Stoffel—whose testimony they are citing in their Hamilton County Complaint. (*See, e.g.,* Hamilton County Complaint, ¶ 37

---

[10]    *See, e.g.,* April 27, 2012 Rule 2004 Examination of Patty Voss ("Voss Exam II") at 313-16, 318-19, 322; May 4, 2012 Rule 2004 Examination of Anne Kelly ("A. Kelly Exam II") at 278-80;

[11]    There are numerous other examples of times when First Bank and the Faruki Attorneys violated the Court's Confidentiality Order by quoting or revealing information taken directly from Fifth Third's confidential materials in the Hamilton County Complaint. (*See, e.g.,* Hamilton County Complaint ¶¶ 34, 60 (revealing contents of internal Fifth Third email divulging underwriting and lending policies, submitted as Exhibit 64 in at least three Rule 2004 examinations); ¶¶ 41, 44-45, 47 (quoting from an internal Fifth Third email divulging bank protection and field exam policies and procedure, submitted as Exhibit 8 in at least six Rule 2004 examinations); ¶¶ 51-52 (quoting from a draft field exam report that divulges Fifth Third field exam and underwriting policies and procedures, submitted as Exhibit 136 in at least three Rule 2004 examinations); ¶ 71 (quoting from an internal Fifth Third document divulging field exam and underwriting policies and procedures, submitted as Exhibit 138 in at least one Rule 2004 examination).

(identifying Anne Kelly and David Fuller by name); ¶ 49 (identifying Wayne Stoffel by name); ¶ 66 (identifying Patty Voss by name); ¶ 72 (identifying Tim Spurlock by name)).

17.    First Bank and the Faruki Attorneys made no effort to file the Hamilton County Complaint under seal, but rather filed it so that it was available on the Court's website for review by the public.  Consequently, at least two newspapers and their related websites have already published stories further disseminating the confidential information that First Bank and the Faruki Attorneys publically disclosed in violation of the Confidentiality Agreement.  (Britt Decl. ¶¶ 12-14, Exhs. 5-6).[12]  Also, the Hamilton County Complaint has already been filed publicly as an exhibit in another lawsuit against Fifth Third.  (*Id.* ¶ 15).[13]

### D.    First Bank and the Faruki Attorney's Repeated Violations of the Court's Confidentiality Order

18.    On May 17, 2012, Fifth Third filed an emergency motion to seal the Hamilton County Complaint in an effort to minimize the damage caused by First Bank and the Faruki Attorney's disregard for this Court's Confidentiality Order.  (*See id.* ¶ 19).  Rather than showing any concern as a result of their violation, First Bank and the Faruki Attorneys *opposed* the sealing of the Hamilton County Complaint and violated the Confidentiality Order *again* by revealing Fifth Third's confidential information in their opposition memorandum.  Further, First Bank and the Faruki Attorneys boasted in their opposition about the growing number of media sources who had published elements of the Hamilton County Complaint, stating that the Hamilton County Complaint "had already garnered public attention in reports by . . . numerous industry publications."  (May 22, 2012 Memorandum of Plaintiff The First Bank and Trust

---

[12]    *See* Alexander Coolidge, *Fifth Third Faces Suit Over Cattle Broker*, THE CINCINNATI ENQUIRER, May 17, 2012, at B1 (also available at http://news.cincinnati.com/article/20120516/BIZ/305160095/Fifth-Third-faces-suit-over-cattle-broker); Steve Watkins, *Virginia Bank Sues Fifth Third Over Check-Kiting Scheme*, BUSINESS COURIER, May 17, 2012, available at http://www.bizjournals.com/cincinnati/news/2012/05/17/virginia-bank-sues-fifth-third-over.html?page=all.
[13]    *See Cloyd v. Fifth Third Bank*, Case No. 1:11-CV-160-JHM-HBB (W.D.Ky.) (Exhibit to Plaintiffs' Memorandum in Support of Objection to Defendant's Motion for Judgment on the Pleadings (Doc. 27-3)).

Company in Opposition to Defendants' Emergency Motion to Seal the Complaint, at 1). Despite their opposition, though, First Bank and the Faruki Attorneys ***acknowledged*** that the materials on which the entire Hamilton County Complaint was based were ***designated as Confidential***.[14]

**E.      First Bank and the Faruki Attorney's Belated Attempt to Avoid the Strictures of the Confidentiality Order**

19.      On June 1, 2012, Fifth Third sent a letter to First Bank and the Faruki Attorneys demanding that First Bank withdraw the Hamilton County Complaint. First Bank and the Faruki Attorneys once again refused to rectify the harm caused by their impermissible disclosure. Instead, on June 5, 2012, First Bank and the Faruki Attorneys filed a motion to have certain Fifth Third documents removed from the strictures of the Confidentiality Order ("De-Designation Motion"). (Doc. 1165). In doing so, though, First Bank and the Faruki Attorneys acknowledged they were bound by this Court's Confidentiality Order, that Fifth Third's documents had been designated in accordance with that Confidentiality Order, and that many of the documents that First Bank and the Faruki Attorneys publicly disclosed three weeks ago were—and remain— designated as Confidential. (*See id.*).

20.      While Fifth Third will fully brief the reasons why First Bank and the Faruki Attorneys' De-Designation Motion should be denied in a separate filing, there are two points worth noting in the context of this motion for contempt. First, First Bank and the Faruki Attorneys' argument that Fifth Third's documents were publicly disclosed by the Metcalfe

---

[14]      Fifth Third filed its reply in support of the emergency motion to seal the Hamilton County Complaint on May 24, 2012. Still without an order sealing the Hamilton County Complaint, First Bank and Fifth Third participated in a teleconference with the court in the Hamilton County litigation on May 30, 2012. By that time, though, the confidential information contained in the Hamilton County Complaint had already been widely disseminated for two weeks and Fifth Third's motion was essentially rendered moot. Accordingly, Fifth Third has voluntarily withdrawn its emergency motion to seal the complaint, maintaining that its materials were—and remain—properly designated as Confidential and reserving the right to seek recovery for any damages it incurred as a result of First Bank's impermissible disclosure.

County Circuit Court without restriction is incorrect.[15]   Indeed, while the Metcalfe County Order states that Eastern Livestock's bank records (*e.g.*, checks) were to be made a matter of public record (Metcalfe County Order, ¶ 1), it also indicates that "discovery documents and all audio recordings of non-defendants . . . ***including all emails, other documents and records of Fifth Third Bank*** . . . shall be designated as confidential and . . . held by the Clerk under seal." (*Id.*, ¶ 4 (emphasis added)).   The Metcalfe County Order then lays out the terms of a restrictive protective order, explaining that Fifth Third's confidential materials "shall not be delivered or disclosed, ***specifically or in substance***, to anyone other than" the limited list of individuals set forth in the protective order.[16]   (*Id.*, ¶ 5(D) (emphasis added)).

21.    And second, even if the Court granted First Bank and the Faruki Attorneys' motion and removed every document identified in the motion from the strictures of the Confidentiality Order, First Bank and the Faruki Attorneys' would ***still*** be in contempt of the Court's Order.   Specifically, First Bank and the Faruki Attorneys (1) never sought relief from this Court's Confidentiality Order before disclosing those materials; (2) cite other Confidential documents in the Hamilton County Complaint that were never produced in the Metcalfe County proceedings;[17] and (3) the Rule 2004 testimony cited by First Bank and the Faruki Attorneys was designated Confidential and was never disclosed anywhere except by the actions of First Bank and the Faruki Attorneys.

---

[15]    A copy of the Order Designating Certain Discovery Materials a Matter of Public Record, Order Designating Certain Discovery Materials as Confidential and Protected by a Protective Order, and Order Designating Certain Discovery Materials as Confidential Pending Trial and Subject Only to a Disclosure by Counsel for Defendants Pursuant to RCr 5.24 ("Metcalfe County Order") is attached hereto as Exhibit C for the Court's convenience.

[16]    Notably, the Trustee acknowledged in the Trustee's Report that he, too, obtained documents from the Metcalfe County Circuit Court, but that those documents were "***subject to the restrictions of a strict confidentiality order entered by that court.***" (Doc. 1166, ¶ 12).

[17]    By way of example only, absent from the list of Rule 2004 exhibits that First Bank and the Faruki Attorneys erroneously claim to be matters of public record is Exhibit 44, a collection of documents that First Bank and the Faruki Attorneys' ***admit and affirmatively allege*** in their Hamilton County Complaint to be "proprietary" to Fifth Third (Hamilton County Complaint, ¶ 35) and nevertheless quote in the Hamilton County Complaint. (*Id.*, ¶ 61).

22.     Because First Bank and the Faruki Attorneys have willfully violated this Court's Confidentiality Order and have refused repeated efforts by Fifth Third to mitigate the effects of First Bank's and the Faruki Attorneys' violations, Fifth Third is forced to seek this Court's assistance to force First Bank and the Faruki Attorneys to comply with the Court's Confidentiality Order, to prevent the continued dissemination of Fifth Third's confidential information, and to punish First Bank and the Faruki Attorneys for their willful violations.

## III.    **ARGUMENT**

23.     "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority and none other as…disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3) "In addition, it is firmly established that 'the power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex Parte Robinson*, 86 U.S. 505, 510 (1873)). Moreover, the power to punish for contempt goes "beyond the court's confines, for 'the underlying concern that gave rise to the contempt power was not…merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary." *Id.* (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)).

24.     Courts have routinely found that confidentiality orders and agreements encourage efficient discovery in complex litigation matters. *See In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 357 (11th Cir. 1987) (explaining that orders to maintain confidentiality "encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment"); *Directory Concepts, Inc. v. Fox*, 2008 U.S. Dist. LEXIS 102192, at *17 (N.D. Ind. Dec. 16, 2008) ("Providing [a party] with some assurance that its trade secrets or other proprietary, confidential information will not fall into a

competitor's hands will certainly encourage it to more fully cooperate with the discovery process in this action."); *see also Mars, Inc. v. JCM Am. Corp.*, 2007 U.S. Dist. LEXIS 9819, at *5 (D.N.J. Feb. 13, 2007) ("Courts generally protect materials containing trade secret[s] or other confidential research, development, or commercial information to prevent harm to a litigant's standing in the marketplace." (quotation omitted)). Indeed, "[i]f the parties were free to disclose confidential information…protective orders would cease to fulfill their intended purpose which is to encourage full disclosure of all relevant information." *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 501 (S.D. Ohio 2002); *see Jochims v. Isuzu Motors*, 151 F.R.D. 338, 342 (S.D. Iowa 1993) ("Discovery, often a contentious and difficult process in complex cases, would become even more contentious and expensive, if there was no assurance of continued protection for confidential business information.").

25.    Accordingly, courts regularly impose sanctions for violations of confidentiality in order to "adequately ***admonish*** [the violating party] for his complete disregard for and willful violation of the confidentiality rule, ***deter similar conduct*** by others in the future, ***restore respect*** for the Court's authority, ***restore the damages*** caused by [the violating party] to the integrity of the Court's [order], and ***minimize prejudice*** to the [affected party]." *See Hand v. Walnut Valley Sailing Club*, 2012 U.S. App. LEXIS 6703, at *4 (10th Cir. Apr. 4, 2012) (affirming sanctions for violating a court order to maintain confidentiality of statements made during mediation) (emphasis added).[18]  With regard to the latter reason, parties are often prejudiced because they are unable to adequately respond to the inappropriate disclosures and fully defend themselves in

---

[18]    *See also U.S. v. United Mine Workers of America*, 330 U.S. 258, 303-304 (1947) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."); *EEOC v. Dial Corp.*, 2001 U.S. Dist. LEXIS 24522, at *9 (N.D. Ill. Nov. 29, 2001) ("[Sanctions for contempt] are designed to serve either or both of the following two purposes: (1) to compel compliance with a court order, and (2) to compensate the complainant for losses resulting from the opposing party's non-compliance with a court order.")

the public eye without using evidence protected by the very confidentiality order that the violating party completely disregarded. *Id.* at *3-4.

26.     One example of a court holding a party in contempt for violating an order of confidentiality can be seen in *Grove Fresh Distributors, Inc. v. John Labatt, Ltd.*, 1998 U.S. App. LEXIS 1836 (7th Cir. Feb. 5, 1998).  In that case, the Seventh Circuit affirmed a district court's decision to hold an attorney in contempt, because the attorney violated an order of confidentiality. *Id.* at *11.  Specifically, the attorney filed a motion with the court that disclosed confidential information, shared confidential information with third parties, and disseminated the confidential information to members of the media. *Id.* at *10.  As such, the court ordered the attorney to pay for the damages and attorneys' fees incurred by the parties he had harmed with his violation, and also applied an additional punitive fine. *Id.* at *7.

27.     Other federal courts have reached similar conclusions, holding parties in contempt and applying sanctions for violating orders of confidentiality. *See Hunter Eng'g Co. v. Hennessy Indus.*, 2010 U.S. Dist. LEXIS 29916, at *16 (E.D.Mo. Mar. 29, 2010) (holding party in contempt for using confidential materials in a separate action, in violation of protective order); *Flaherty v. Filardi*, 2009 U.S. Dist. LEXIS 104773, at *18-19 (S.D.N.Y. Nov. 10, 2009) (finding attorney in contempt for publicly filing and posting confidential material in violation of protective order); *EEOC v. Dial Corp.*, 2001 U.S. Dist. LEXIS 24522, at *27 (N.D. Ill. Nov. 29, 2001) (holding party in contempt as a result of its giving an unredacted copy of its response brief to a television station in violation of confidentiality order); *On Command Video Corp. v. Lodgenet Entertainment Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (holding party in contempt for using confidential materials as a basis for filing a separate state lawsuit in violation of a protective order).

-14-

28.     As in the foregoing cases, First Bank and the Faruki Attorneys have patently and willfully violated the Confidentiality Order, and are therefore subject to sanctions for their contempt of the Court's Order.  In publicly filing the Hamilton County Complaint and their memorandum in opposition to Fifth Third's motion to seal, First Bank and the Faruki Attorneys "show[ed], described and otherwise revealed" the contents of Fifth Third's confidential documents and testimony to other, unrelated courts, the media, and the public at large.  (*See* Confidentiality Agreement, ¶ 4).  First Bank and the Faruki Attorneys have refused to hold Fifth Third's "Confidential Material in trust and confidence" and, by opposing Fifth Third's motion to seal and refusing to withdraw the Hamilton County Complaint, have gone to great lengths to make "such information available to others."  (*See id.*, ¶ 5).  Indeed, they placed the confidential information on the court's website and made it available to a literally countless number of third-parties for purposes expressly prohibited in the Confidentiality Agreement.  First Bank and the Faruki Attorneys also caused the confidential information to be published in at least two newspapers to date—the Cincinnati Enquirer and the Business Courier—and to be posted on their respective websites.[19]   In short, First Bank and the Faruki Attorneys have abused their access to Fifth Third's confidential material for purposes other than these Chapter 11 proceedings.

29.     First Bank and the Faruki Attorneys have also improperly exploited the Rule 2004 examinations conducted by the Trustee for their own purposes by taking advantage of the prominent position that the Trustee afforded Messrs. Donnellon and Weigand in the Trustee's investigation.  The timing of the filing of the Hamilton County Complaint (*i.e.*, one day after the

---

[19]      *See* Alexander Coolidge, *Fifth Third Faces Suit Over Cattle Broker*, THE CINCINNATI ENQUIRER, May 17, 2012, at B1 (available at http://news.cincinnati.com/apps/pbcs.dll/article?AID=/AB/20120516/BIZ/305160095); Steve Watkins, *Virginia Bank Sues Fifth Third Over Check-Kiting Scheme*, BUSINESS COURIER, May 17, 2012, available at http://www.bizjournals.com/cincinnati/news/2012/05/17/virginia-bank-sues-fifth-third-over.html?page=all.

last Rule 2004 examination of Fifth Third concluded) makes it clear that First Bank and the Faruki Attorneys were merely mining the Trustee's investigation for confidential material that could be filed publicly in an attempt to injure Fifth Third, and to obtain some tactical advantage against Fifth Third by releasing as much confidential information and documentation as they saw fit to disseminate.  That tactical advantage is particularly apparent here, as Fifth Third cannot fully and publicly respond to any of the false accusations launched by First Bank and the Faruki Attorneys without further disclosing the contents of documents and testimony that have been designated "Confidential."

30.    It is also worth noting that First Bank and the Faruki Attorneys have attempted to thwart this Court's review of their actions in the Hamilton County action by expressly alleging that the action is not removable.  (*See* Hamilton County Complaint, ¶ 22).  This erroneous assertion, however, is merely a transparent attempt to avoid having to answer to this Court for their violation of the Confidentiality Order.  Both First Bank and the Faruki Attorneys have appeared before this Court and are subject to this Court's discipline for violation of the Confidentiality Order.

## IV.    CONCLUSION

31.    First Bank and the Faruki Attorneys have willfully violated this Court's Confidentiality Order and the unambiguous terms of the Confidentiality Agreement.  Fifth Third respectfully requests that this Court enter an order (1) holding First Bank and the Faruki Attorneys in contempt; (2) requiring First Bank and the Faruki Attorneys to identify all individuals and entities to whom they have forwarded the Hamilton County Complaint or any other documents or testimony of Fifth Third that have been designated Confidential; (3) requiring First Bank and the Faruki Attorneys to return to Fifth Third all documents containing

or referencing Confidential information or testimony of Fifth Third, including all copies thereof, and certifying the return of all such information; (4) imposing sanctions requiring First Bank and the Faruki Attorneys to compensate Fifth Third for its losses, including but not limited to its attorneys fees and costs in seeking to remedy the public disclosure of its confidential information and in litigating this motion for contempt; (5) awarding Fifth Third the recovery of any damages incurred as a result of First Bank and the Faruki Attorneys' violation of the Confidentiality Order; (6) imposing sanctions requiring First Bank and the Faruki Attorneys to pay additional fines in punishment for their willful disregard of this Court's authority and the Confidentiality Order; and (7) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Eric W. Richardson
Eric W. Richardson (*admitted pro hac vice*)
Kent A. Britt (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Telephone: (513) 723-4000
Facsimile:  (513) 723-4056
Email: ewrichardson@vorys.com
          kabritt@vorys.com

Randall D. LaTour (*admitted pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43216
Telephone: (614) 464-8290
Facsimile: (614) 719-4821
Email: rdlatour@vorys.com

*Attorneys for Fifth Third Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2012, a copy of the foregoing Motion was filed and served electronically through the Court's CM/ECF System to the following parties who are listed on the Court's Electronic Mail Notice List.

/s/ Eric W. Richardson
Eric W. Richardson

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **EASTERN LIVESTOCK CO., LLC.** | ) | **CASE NO. 10-93904-BHL-11** |
| | ) | |
| DEBTOR. | ) | **CHAPTER 11** |
| | ) | |
| | ) | |
| **SUPERIOR LIVESTOCK AUCTION, INC.** | ) | |
| | ) | |
| PLAINTIFF. | ) | |
| | ) | **A.P. NO. 11-59088** |
| v. | ) | |
| | ) | |
| **EASTERN LIVESTOCK CO., LLC** | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## STIPULATED CONFIDENTIALITY AGREEMENT

Plaintiff Superior Livestock Auction, Inc. and Defendant Eastern Livestock Co., LLC (the "Parties" and each a "Party"), and their respective counsel ("Counsel"), hereby agree that the following provisions of this Stipulated Confidentiality Agreement (the "Agreement") shall govern the designation and handling of information and documents produced or provided in the above-captioned action, including documents or other materials produced by an individual or entity not a party to this action (a "Disclosing Party"). Nothing in this Agreement shall be interpreted to prevent any person or entity from seeking further relief, including but not limited to restrictions on access to information and documents by parties to this litigation (as further described in Paragraph 14 within).

1.      The term "Confidential Material" means any trade secret or other confidential research, development agreement, financial information or commercial document, information or

1

Exhibit
A

other material as used in Rules 26(c)(1)(g) and 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure, which is produced in the course of this action by a Party, a non-party possessing a Party's proprietary and confidential information, or a non-party governed by this Agreement pursuant to paragraph 15?of this Agreement and which is designated as "Confidential" under this Agreement, whether contained in or constituting documents, things, materials, testimony, audio and video recordings, computer disks and data stored in other electronic storage media or devices, any copy, duplication, extract or summary of any document, information or other materials so designated. The term "Receiving Party" shall mean any person or entity who receives or is provided access to any Confidential Information by any Disclosing Party.

2.    A Disclosing Party providing documents under subpoena or in response to an order or written request for information, may designate material as "Confidential" by placing the word "Confidential" on each page of the document.

3.    Confidential Material disclosed at a deposition shall be designated by a Disclosing Party as "Confidential" by indicating on the record at the deposition, or by informing the Receiving Parties in writing within 30 days of receipt of the relevant transcript excerpt and/or exhibit, or 30 days after entry of this Agreement , whichever date is later, that the document or information is "Confidential" and subject to the provisions of this Agreement. The Receiving Parties shall treat each deposition transcript and all Confidential Material discussed or used as an exhibit at such deposition as "Confidential" until the period for designation of such transcript as Confidential Material has expired, after which time the Receiving Parties shall honor all designations of Confidential Material in such transcript unless the Court orders otherwise pursuant to paragraph 10. The Receiving Parties shall exclude from attendance at a deposition,

hearing or other proceeding, during such time as Confidential Material is to be disclosed, any person or entity not entitled to receive such information.

      4.      Except with the prior written consent of each Disclosing Party, or pursuant to further order of this Court entered after reasonable written notice and opportunity to each Disclosing Party to file objections thereto, Confidential Materials shall not be shown, described or otherwise revealed to any person or entity other than the following:

      (a)      Outside or in-house attorneys for the Parties in this action employed by the law firms of record in this action.

      (b)      Paralegals, office clerks, secretaries and clerical or support personnel employed or retained by outside counsel for a Party of record in this action, but only if (1) it is necessary to disclose the Confidential Material to them for purposes of this action.

      (c)      Consulting experts and testifying experts and their employees with the need to know who have been engaged by outside counsel for a Party in this action for the purpose of assisting in this action, but only if: (1) it is necessary to disclose the Confidential Material to them for purposes of this action; and (2) they have signed an agreement in a form substantially similar to Exhibit A attached hereto;

      (d)      Deposition court reporters and videographers who have signed an agreement in a form substantially similar to Exhibit A attached hereto;

      (e)      The Court, including judicial employees and all other necessary personnel, such as court reporters;

      (f)      The author, addressee, or any other person identified as a recipient of the specified Confidential Material who would otherwise be entitled to receive same; and

(g)     Corporate Affiliates, Majority Members and Majority Shareholders and their Corporate Affiliates, Trustees, Officers, Directors, Executives, or employees of each Party.

5.      In consideration of the disclosure of Confidential Material to the Receiving Party, the Receiving Party shall hold the Confidential Material in trust and confidence and shall refrain from making such information available to others, including posting such information on any website, using the Confidential Material to the competitive disadvantage of the Disclosing Party or for any other purpose other than expressly permitted herein.  Confidential Material shall not be used to adversely affect or compete with the business of the Disclosing Party.

6.      The Parties intend that the use of Confidential Material shall be restricted to this Chapter 11 Case Number 10-93904-BHL-11 ("ELC Chapter 11") alone and that no Confidential Material shall be provided to any third-party for any purpose not expressly permitted herein without the prior written permission of the Disclosing Party.

7.      Any of the Parties giving testimony at trial or during a hearing in this action may, directly or through Counsel, designate testimony or any portion thereof (including exhibits) as "Confidential" by advising the court reporter and the Receiving Party of such fact on the record during the testimony or in writing within ten (10) days following the receipt of the transcript.  All transcripts that contain Confidential Material shall be prominently marked "Confidential" on the cover thereof.

8.      Within 20 days of receipt of materials designated as "Confidential", the Receiving Party may apply to the Court for a ruling to determine whether a document designated as such is entitled to such status and protection.  The Receiving Party shall give written notice of the objection(s) to the Disclosing Party and shall provide the Disclosing Party with an opportunity to respond.  If unable to resolve the dispute, the Disclosing Party must file a motion for protective

4

order and demonstrate that there is good cause for the document to have such protection pursuant to the Federal Rules of Civil Procedure. After notice of objection has been given, no disclosure of the Confidential Material in question shall be made unless and until (a) the objection is resolved or (b) the Court authorizes such disclosure.

9.  If a Party subpoenas or the Court orders production of any Confidential Material in the possession of a Receiving Party, the Receiving Party shall promptly notify the Counsel for the Disclosing Party of the pendency of such subpoena or order.

10.  Subject to the Federal Rules of Evidence, Confidential Material may be offered in evidence at any court hearing and at trial provided that the proponent of the evidence gives advance notice to Counsel for the Disclosing Party (except in the case of an emergency or other exigent circumstances or otherwise upon good cause shown). The Disclosing Party may then request that the Court review the material in camera or under other conditions to prevent unnecessary disclosure.

11.  The Parties may use Confidential Material in support of any pleading filed with the Court, but such pleadings, as well as the Confidential Material, shall be filed under seal pursuant to the Local Rules for the Bankruptcy Court, Southern District of Indiana and applicable law.

12.  The Receiving Party's failure to challenge the classification of any material designated as Confidential Material shall not be deemed a waiver or admission that any such classification is proper. In addition, a Disclosing Party's failure to designate documents or testimony as "Confidential Information" does not waive that Party's right to later so designate that material.

13.    Upon the conclusion of the ELC Chapter 11, all documents marked "Confidential," including any copies of such material, shall be returned to the Disclosing Party within 30 days of the conclusion of the ELC Chapter 11 or destroyed by the Receiving Party accompanied by a certification of such destruction.  Counsel for any Receiving Party shall be entitled to retain in their files any material designated as Confidential Information and shall not disclose such Confidential Information without the written consent of the Disclosing Party.

14.    Nothing contained in this Agreement shall prejudice in any way or waive in any respect the right of any Disclosing Party to assert the attorney-client privilege, the attorney work product doctrine or Confidential Material status as to any documents, materials or information, and the inadvertent production of any Confidential Material without designation or any document, material or information protected by the attorney-client privilege or attorney work product doctrine shall not be deemed a waiver or an impairment of any claim of such privilege or protection.  In the event of any such inadvertent production, the following procedure shall be followed.  The Disclosing Party claiming privilege or protection shall make written demand upon the Receiving Party to return the document, material or information for which the privilege or protection is claimed, or in the case of Confidential Material, to designate it as requested.  Upon receipt of demand by the Disclosing Party, all such documents, material or information and any copies, duplications, extracts and summaries thereof shall be returned by the Receiving Party to the Disclosing Party within three (3) business days.  The Disclosing Party or entity shall maintain the specified documents, material or information for in camera inspection by the Court should a motion to compel production be filed.

15.    In addition to the procedure set forth in paragraph 4 of this Agreement, and upon agreement of the Parties and the producing non-party, the provisions of this Order shall apply to documents or other materials produced by an entity that is not a party to the ELC Chapter 11.

16.    All Parties and attorneys of record in this action, and all other persons and entities possessing or granted access to Confidential Material under this Agreement shall be bound by this Agreement.  The Court may impose sanctions on any person or entity possessing or granted access to Confidential Material under this Agreement who discloses or uses the Confidential Material for any purpose other than as authorized by this Agreement or who otherwise violates the terms of this Agreement.

17.    Notwithstanding any provision of this Agreement, the Parties reserve the right to produce and to obtain documents and testimony revealing personal identifying information such as bank account numbers, social security numbers, individuals' physical and e-mail addresses and similar information ("Personal Information").  The Parties agree that all documents or testimony designated as Personal Information shall not be revealed to anyone other than those persons designated in Paragraph 4 above.  All Personal Information shall be redacted from documents filed, served or used during proceedings in the ELC Chapter 11, except in those instances where the Personal Information is placed under seal pursuant to the Local Rules for the Bankruptcy Court, Southern District of Indiana and applicable law.

IT IS SO AGREED.

7

| **COUNSEL FOR PLAINTIFF** **AGREED AND STIPULATED** | **COUNSEL FOR DEFENDANT** **AGREED AND STIPULATED** |
|---|---|
| This 28th day of September, 2011. | This 28th day of September, 2011 |
| /s/ *Christie A. Moore* | /s/ *Kevin Toner* |
| Christie A. Moore | Kevin Toner |
| Greenebaum Doll & McDonald, PLLC | Baker & Daniels, LLP |
| 101 S. Fifth Street | 300 N. Meridian Street |
| Suite 3500 | Suite 2700 |
| Louisville, KY 40202 | Indianapolis, IN 46204 |
| cm@gdm.com | Kevin.Toner@bakerd.com |

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| **EASTERN LIVESTOCK CO., LLC.** | )  **CASE NO. 10-93904-BHL-11** |
| | ) |
| **DEBTOR.** | )  **CHAPTER 11** |
| | ) |
| | ) |
| **SUPERIOR LIVESTOCK AUCTION, INC.** | ) |
| | ) |
| **PLAINTIFF.** | ) |
| | )  **A.P. NO.  11-59088** |
| **v.** | ) |
| | ) |
| **EASTERN LIVESTOCK CO., LLC** | ) |
| | ) |
| **DEFENDANT.** | ) |

I, _____, have read and understood the Stipulated Confidentiality Order entered by the Court in this case and agree to be bound by the provisions of that order.  I agree to subject myself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with or violation of that order.

Dated:_____          _____

4491904_1.doc

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| EASTERN LIVESTOCK CO., LLC, et al.,[1] | : | Case No.: 10-93904-BHL-11 |
|  | : |  |
| Debtor. | : | Judge Basil H. Lorch, III |
|  | : |  |
|  | : |  |

---

### DECLARATION OF KENT A. BRITT, ESQ.

---

I, Kent A. Britt, Esq., declare as follows:

1.        I am an attorney in the above-captioned matter for Fifth Third Bank ("Fifth Third"). I am licensed to practice in Ohio, am admitted *pro hac vice* in these proceedings, and have personal knowledge of the facts and matters set forth in this Declaration.

2.        With the understanding that its Confidential information would be protected in accordance with the order issued by this Court on September 30, 2011 (the "Confidentiality Order"), adopting the terms of the proposed stipulated confidentiality agreement ("Confidentiality Agreement") filed on September 28, 2011, Fifth Third produced approximately 30,000 pages of documents in the above-referenced Chapter 11 bankruptcy proceedings.

3.        All, or substantially all, of those documents have been produced to The First Bank and Trust Company ("First Bank") and its counsel—Daniel J. Donnellon and Stephen A. Weigand—at the law firm Faruki, Ireland, and Cox, LLP.

4.        Pursuant to the Confidentiality Order and Agreement, Fifth Third designated those documents as Confidential.

---

[1]        The Debtor entities are Eastern Livestock Co., LLC and Okie Farms, L.L.C.

Exhibit
B

5.     Thirteen Fifth Third witnesses have also offered approximately 85 hours of testimony in sixteen Fed. R. Bankr. P. 2004 ("Rule 2004") examinations conducted by special counsel for the trustee of the Eastern Livestock Co., LLC estate (the "Trustee").

6.     Fifth Third's witnesses were questioned about 181 exhibits, 172 of which had been designated as Confidential pursuant to the Confidentiality Order, and also testified regarding several other confidential matters such as Fifth Third's field exam, underwriting, and bank protection policies and procedures.

7.     Pursuant to the Confidentiality Order, within 30 days of receiving the transcripts of Fifth Third's witnesses' Rule 2004 examinations, Fifth Third notified the parties who attended the Rule 2004 examinations of the pages that were to be treated as Confidential.  Fifth Third also notified the Court Reporter of the confidentiality designations, so that if other parties requested copies of the transcripts at a later date, they too would be aware of the confidential nature of the testimony.

8.     A true and accurate copy of the March 19, 2012 Letter from David F. Hine, counsel for Fifth Third, designating as confidential certain pages in the transcripts of the Rule 2004 examinations of Sean Kelly, Shannon Hughes, Tim Spurlock (vol. I), David Fuller, Lori Hart, Sara Chapman, Amber Whitehouse, Darrin Steinmann, Anne Kelly (vol. I), Devon Morse, and Patty Voss (vol. I), is attached hereto as Exhibit 1.

9.     A true and accurate copy of the March 30, 2012 Letter from David F. Hine, counsel for Fifth Third, designating as confidential certain pages in the transcript of the Rule 2004 examination of Wayne Stoffel, is attached hereto as Exhibit 2.

10.     A true and accurate copy of the May 17, 2012 Letter from David F. Hine, counsel for Fifth Third, designating as confidential certain pages in the transcripts of the Rule 2004

examinations of Patty Voss (vol. II), Tim Spurlock (vol. II), and Anne Kelly (vol. II), is attached hereto as Exhibit 3.

11.    A true and accurate copy of the May 29, 2012 Letter from David F. Hine, counsel for Fifth Third, designating as confidential certain pages in the transcript of the Rule 2004 examination of Doug Hoffner, is attached hereto as Exhibit 4.

12.    At least two newspapers have published articles further revealing Fifth Third's confidential information.

13.    A true and accurate copy of the May 17, 2012 article *Fifth Third Faces Suit Over Cattle Broker* that was published by the Cincinnati Enquirer is attached hereto as Exhibit 5.

14.    A true and accurate copy of the May 17, 2012 article *Virginia Bank Sues Fifth Third Over Check-Kiting Scheme* that was published by the Cincinnati Business Courier is attached hereto as Exhibit 6.

15.    In addition, on May 24, 2012, the complaint filed by First Bank and its attorneys in Hamilton County, Ohio was attached as an exhibit to a publicly filed brief in another civil proceeding against Fifth Third, *Cloyd v. Fifth Third Bank*, Case No. 1:11-CV-160-JHM-HBB (W.D.Ky.) (Doc. 27-3).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6/6  2012 .

_____
Kent A. Britt

3



**Vorys, Sater, Seymour and Pease LLP**
Legal Counsel

221 East Fourth St.
Suite 2000, Atrium Two
PO Box 0236
Cincinnati, OH 45201-0236

513-723-4000 | www.vorys.com

Founded 1909

David F. Hine
Direct Dial   (513) 723-4078
Direct Fax   (513) 852-7833
Email dfhine@vorys.com

March 19, 2012

**VIA E-MAIL**

Sean T. White, Esq.
Hoover Hull LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244
swhite@hooverhull.com

James A. Knauer, Esq.
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
jak@kgrlaw.com

Kevin M. Toner, Esq.
Faegre Baker Daniels, LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
kevin.toner@faegrebd.com

John W. Ames, Esq.
Greenebaum, Doll & McDonald
101 South Fifth Street, Suite 3500
Louisville, KY 40202
james@bgdlegal.com

W. Scott Newbern, Esq.
W. Scott Newbern, PL
2982 East Gevemy Circle
Tallahassee, FL 32309
wsnewbern@msn.com

Michael W. Oyler, Esq.
Reed Weitkamp Schell & Vice, PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY 40202
moyler@rwsvlaw.com

John M. Rogers, Esq.
Rubin & Levin, P.C.
342 Massachusetts Ave.
Indianapolis, IN 46204
johnr@rubin-levin.net

Daniel J. Donnellon, Esq.
Faruki Ireland & Cox, P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
ddonnellon@ficlaw.com

Re:     *In re: Eastern Livestock Co., LLC*, Case No. 10-93904-BHL
         United States Bankruptcy Court; Southern District of Indiana

Dear Counsel:

Pursuant to Paragraph 3 of the Stipulated Confidentiality Agreement
("Agreement") filed September 28, 2011, and Paragraph 5(c) of the Discovery Protocol entered
on October 5, 2011, Fifth Third hereby designates the below-identified portions of the Rule 2004
examination transcripts as "Confidential Material" as defined in Paragraph 1 of the Agreement.

Columbus  |  Washington  |  Cleveland  |  Cincinnati  |  Akron  |  Houston

Exhibit
1



Legal Counsel

March 19, 2012
Page 2

The identified sections of the Rule 2004 examination transcripts concern confidential commercial information and, therefore, should be held confidential. *See* Agreement at ¶ 4 (providing that confidential materials "shall not be shown, described or otherwise revealed to any person or entity other" than those identified in Paragraph 4(a)-(g)).

The following transcript excerpts from the Rule 2004 examinations conducted between February 23, 2012, and March 2, 2012, are now designated as "Confidential Material":

- Sean Kelly:  Page 22, Line 16 through Page 277, Line 15

- Shannon Hughes:  Page 14, Line 18 through Page 139, Line 25

- Tim Spurlock:  Page 16, Line 15 through Page 120, Line 18

- David Fuller: Page 19, Line 12 through Page 337, Line 21

- Lori Hart: Page 13, Line 23 through Page 133, Line 15

- Sara Chapman: Page 13, Line 11 through Page 16, Line 25; Page 19, Line 5 through Page 218, Line 5

- Amber Whitehouse: Page 15, Line 20 through Page 205, Line 4

- Darrin Steinmann: Page 13, Line 24 through Page 103, Line 17

- Anne Kelly: Page 18, Line 8 through Page 34, Line 7; Page 43, Line 20 through Page 262, Line 7

- Devon Morse: Page 31, Line 23 through Page 262, Line 11

- Patty Voss: Page 14, Line 18 through Page 271, Line 17

We will inform you as to the confidentiality of the Rule 2004 examination transcript of Wayne Stoffel once we have received the transcript in final format from the court reporter.

If you have any questions, please do not hesitate to contact me.


Legal Counsel

March 19, 2012
Page 3

Very truly yours,

David F. Hine

DFH/tbf

cc:    Randall D. LaTour, Esq.
       Eric W. Richardson, Esq.
       Kent A. Britt, Esq.
       John White



**VORYS**

Vorys, Sater, Seymour and Pease LLP
Legal Counsel

221 East Fourth St.
Suite 2000, Atrium Two
PO Box 0236
Cincinnati, OH 45201-0236

513-723-4000 | www.vorys.com

Founded 1909

David F. Hine
Direct Dial　(513) 723-4078
Direct Fax　(513) 852-7833
Email dfhine@vorys.com

March 30, 2012

## VIA E-MAIL

Sean T. White, Esq.
Hoover Hull LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244
swhite@hooverhull.com

James A. Knauer, Esq.
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
jak@kgrlaw.com

Kevin M. Toner, Esq.
Faegre Baker Daniels, LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
kevin.toner@faegrebd.com

John W. Ames, Esq.
Greenebaum, Doll & McDonald
101 South Fifth Street, Suite 3500
Louisville, KY 40202
james@bgdlegal.com

W. Scott Newbern, Esq.
W. Scott Newbern, PL
2982 East Gevemy Circle
Tallahassee, FL 32309
wsnewbern@msn.com

Michael W. Oyler, Esq.
Reed Weitkamp Schell & Vice, PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY 40202
moyler@rwsvlaw.com

John M. Rogers, Esq.
Rubin & Levin, P.C.
342 Massachusetts Ave.
Indianapolis, IN 46204
johnr@rubin-levin.net

Daniel J. Donnellon, Esq.
Faruki Ireland & Cox, P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
ddonnellon@ficlaw.com

Re:　*In re: Eastern Livestock Co., LLC*, Case No. 10-93904-BHL
United States Bankruptcy Court; Southern District of Indiana

Dear Counsel:

Pursuant to Paragraph 3 of the Stipulated Confidentiality Agreement ("Agreement") filed September 28, 2011, and Paragraph 5(c) of the Discovery Protocol entered on October 5, 2011, Fifth Third hereby designates the below-identified portions of the Rule 2004 examination transcripts as "Confidential Material" as defined in Paragraph 1 of the Agreement.

Columbus | Washington | Cleveland | Cincinnati | Akron | Houston

Exhibit
2



Legal Counsel

March 30, 2012
Page 2

The identified sections of the Rule 2004 examination transcripts concern confidential commercial information and, therefore, should be held confidential. *See* Agreement at ¶ 4 (providing that confidential materials "shall not be shown, described or otherwise revealed to any person or entity other" than those identified in Paragraph 4(a)-(g)).

In addition to the transcript excerpts from the Rule 2004 examinations identified in our letter to you dated March 19, 2012, the following excerpt from the 2004 examination of Wayne Stoffel is now designated as "Confidential Material":

- Wayne Stoffel: Page 23, Line 4 through Page 257, Line 20.

Also, any exhibits used at Wayne Stoffel or any of the other witnesses' Rule 2004 examinations which were previously marked as 'Confidential' remain confidential. If you have any questions, please do not hesitate to contact me.

Very truly yours,

David F. Hine

DFH/tbf

cc:    Randall D. LaTour, Esq.
       Eric W. Richardson, Esq.
       Kent A. Britt, Esq.
       John White


# VORYS

**Vorys, Sater, Seymour and Pease LLP**
Legal Counsel

301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202

513-723-4000 | www.vorys.com

Founded 1909

David F. Hine
Direct Dial  (513) 723-4078
Direct Fax  (513) 852-7833
Email dfhine@vorys.com

May 17, 2012

<u>**VIA E-MAIL**</u>

Sean T. White, Esq.
Hoover Hull LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244
swhite@hooverhull.com

James A. Knauer, Esq.
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
jak@kgrlaw.com

Kevin M. Toner, Esq.
Faegre Baker Daniels, LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
kevin.toner@faegrebd.com

John W. Ames, Esq.
Greenebaum, Doll & McDonald
101 South Fifth Street, Suite 3500
Louisville, KY 40202
james@bgdlegal.com

W. Scott Newbern, Esq.
W. Scott Newbern, PL
2982 East Gevemy Circle
Tallahassee, FL 32309
wsnewbern@msn.com

Michael W. Oyler, Esq.
Reed Weitkamp Schell & Vice, PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY 40202
moyler@rwsvlaw.com

John M. Rogers, Esq.
Rubin & Levin, P.C.
342 Massachusetts Ave.
Indianapolis, IN 46204
johnr@rubin-levin.net

Daniel J. Donnellon, Esq.
Faruki Ireland & Cox, P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
ddonnellon@ficlaw.com

Re:    *In re: Eastern Livestock Co., LLC,* Case No. 10-93904-BHL
United States Bankruptcy Court; Southern District of Indiana

Dear Counsel:

Pursuant to Paragraph 3 of the Stipulated Confidentiality Agreement ("Agreement") filed September 28, 2011, and Paragraph 5(c) of the Discovery Protocol entered on October 5, 2011, Fifth Third hereby designates the below-identified portions of the Rule 2004 examination transcripts as "Confidential Material" as defined in Paragraph 1 of the Agreement.

Columbus  |  Washington  |  Cleveland  |  Cincinnati  |  Akron  |  Houston

Exhibit
3


Legal Counsel

May 17, 2012
Page 2

The identified sections of the Rule 2004 examination transcripts concern confidential commercial information and, therefore, should be held confidential. *See* Agreement at ¶ 4 (providing that confidential materials "shall not be shown, described or otherwise revealed to any person or entity other" than those identified in Paragraph 4(a)-(g)).

  The following transcript excerpts from the Rule 2004 examinations conducted on April 27, 2012, and May 4, 2012, are now designated as "Confidential Material":

- Patty Voss, Vol. II: Page 273, Line 11 through Page 400, Line 3

- Tim Spurlock, Vol. II: Page 130, Line 7 through Page 234, Line 13

- Anne Kelly, Vol. II: Page 273, Line 1 through Page 421, Line 12

  We will inform you as to the confidentiality of the Rule 2004 examination transcript of Doug Hoffner once we have received the transcript in final format from the court reporter.

  If you have any questions, please do not hesitate to contact me.

Very truly yours,

David F. Hine

DFH/tbf

cc: Randall D. LaTour, Esq.
   Eric W. Richardson, Esq.
   Kent A. Britt, Esq.
   John White



**Vorys, Sater, Seymour and Pease LLP**
Legal Counsel

301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202

513-723-4000 | www.vorys.com

Founded 1909

David F. Hine
Direct Dial  (513) 723-4078
Direct Fax  (513) 852-7833
Email dfhine@vorys.com

May 29, 2012

<u>**VIA E-MAIL**</u>

Sean T. White, Esq.
Hoover Hull LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244
swhite@hooverhull.com

James A. Knauer, Esq.
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
jak@kgrlaw.com

Kevin M. Toner, Esq.
Faegre Baker Daniels, LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
kevin.toner@faegrebd.com

John W. Ames, Esq.
Greenebaum, Doll & McDonald
101 South Fifth Street, Suite 3500
Louisville, KY 40202
james@bgdlegal.com

W. Scott Newbern, Esq.
W. Scott Newbern, PL
2982 East Gevemy Circle
Tallahassee, FL 32309
wsnewbern@msn.com

Michael W. Oyler, Esq.
Reed Weitkamp Schell & Vice, PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY 40202
moyler@rwsvlaw.com

John M. Rogers, Esq.
Rubin & Levin, P.C.
342 Massachusetts Ave.
Indianapolis, IN 46204
johnr@rubin-levin.net

Daniel J. Donnellon, Esq.
Faruki Ireland & Cox, P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
ddonnellon@ficlaw.com

Re:     *In re: Eastern Livestock Co., LLC*, Case No. 10-93904-BHL
United States Bankruptcy Court; Southern District of Indiana

Dear Counsel:

Pursuant to Paragraph 3 of the Stipulated Confidentiality Agreement ("Agreement") filed September 28, 2011, and Paragraph 5(c) of the Discovery Protocol entered on October 5, 2011, Fifth Third hereby designates the below-identified portions of the Rule 2004 examination transcripts as "Confidential Material" as defined in Paragraph 1 of the Agreement.

Columbus  |  Washington  |  Cleveland  |  Cincinnati  |  Akron  |  Houston

Exhibit 4



**VORYS**
Legal Counsel

May 29, 2012
Page 2

The identified sections of the Rule 2004 examination transcripts concern confidential commercial information and, therefore, should be held confidential. *See* Agreement at ¶ 4 (providing that confidential materials "shall not be shown, described or otherwise revealed to any person or entity other" than those identified in Paragraph 4(a)-(g)).

      The following transcript excerpt from the Rule 2004 examination of Doug Hoffner, conducted on May 15, 2012, is now designated as "Confidential Material":

- Doug Hoffner: Page 37, Line 11 through Page 239, Line 7.

      If you have any questions, please do not hesitate to contact me.

Very truly yours,

David F. Hine

DFH/tbf

cc:    Randall D. LaTour, Esq.
       Eric W. Richardson, Esq.
       Kent A. Britt, Esq.
       John White

# Business

EDITOR: JOSH PICHLER, jpichler@enquirer.com

THURSDAY, MAY 17, 2012

**MARKET GLANCE**

More turmoil in Greece caused fallout across the financial markets as the Dow Jones industrial average fell for the fourth day in a row.

See Money & Markets, B3

| | | |
|---|---|---|
| DOW | 12,598.55 | -33.45 |
| NASDAQ | 2,874.04 | -19.72 |
| S&P | 1,324.80 | -5.86 |
| OIL | $92.81 | -1.17 |

## Fifth Third faces suit over cattle broker

**By Alexander Coolidge**
acoolidge@enquirer.com

DOWNTOWN — A Virginia bank is suing Fifth Third Bancorp over a fraud scheme carried out by a former commercial customer, a bankrupt cattle brokerage company.

Four former top executives of Eastern Livestock LLC pleaded guilty in March to involvement in a scheme in which the company's bank balances were falsely inflated, allowing it to purchase more than $800,000 worth of cattle from Kentucky farmers with non-existent funds.

The defunct company, based in suburban Louisville, collapsed in November 2010 after Fifth Third froze the company's accounts, according to the lawsuit.

Eastern Livestock, once one of the largest cattle brokerages in the country, filed bankruptcy a month later.

First Bank & Trust Co., a 21-branch bank based in Lebanon, Va., claims Fifth Third was aware of the check-kiting activity as early as 2009, the lawsuit said. The fraud was perpetuated by executives shifting money between personal and company accounts. Fifth Third decided to treat these six-figure transactions that sometimes occurred daily as short-term loans, the lawsuit said.

First Bank, which also had a lending relationship with one of the executives, claims Fifth Third took some of its money when the Cincinnati-based bank froze Eastern Livestock's accounts, the lawsuit said.

Fifth Third officials declined to comment on the lawsuit. Officials with First Bank did not return a call seeking comment.

Officials with the Kentucky Attorney General's office said the Eastern Livestock executives pleaded guilty in the scheme, but federal and officials in other states are still probing the company's demise. Kentucky officials secured $850,000 in restitution for cattle farmers.

Exhibit
5

CUSTOMER SERVICE   SHARE CONTENT   SUBSCRIBE   ADVERTISE                    CLASSIFIEDS   JOBS   CARS   HOMES   APARTMENTS   SHOPPING

# CINCINNATI.com
A GANNETT COMPANY

News   Sports   Entertainment   Living   **Business**   Communities   Opinion   Obituaries   Blogs

Sign up   Log in      MORE:   NKY.Com   Cincinnati USA   Metromix   CincyMoms   DealChicken      ● Our Sites ● The Web



Raise the bar by upgrading to a
**GOLD MEMBERSHIP.**
Cincinnati USA
Regional Chamber

# Fifth Third faces suit over cattle broker

1:29 AM, May 17, 2012  |  Comments

🖒 Recommend    👍 Be the first of your friends to recommend this.

👍 Recommend    🐦 Tweet  0    �’+1  0               A A



Written by
**Alexander Coolidge**

FILED UNDER

Business

**DOWNTOWN** — A Virginia bank is suing Fifth Third Bancorp over a fraud scheme carried out by a former commercial customer, a bankrupt cattle brokerage company.

Four former top executives of Eastern Livestock LLC pleaded guilty in March to involvement in a scheme in which the company's bank balances were falsely inflated, allowing it to purchase more than $800,000 worth of cattle from Kentucky farmers with non-existent funds.

The defunct company, based in suburban Louisville, collapsed in November 2010 after Fifth Third froze the company's accounts, according to the lawsuit.

ADS BY PULSE 360

**7 Unusual veggies that KILL belly fat**
Surprising foods that boost your metabolism for a flat stomach

**Flat Belly Diet 'EXPOSED'**
Columbus: Woman Exposes Weight Loss Miracle Her $5 Trick To Lose 27lbs

**Rare Fruit Burns Fat**
Learn How This Strange 62-Cent Exotic Fruit Is Making Americans Skinny

Eastern Livestock, once one of the largest cattle brokerages in the country, filed bankruptcy a month later.

First Bank & Trust Co., a 21-branch bank based in Lebanon, Va., claims Fifth Third was aware of the check-kiting activity as early as 2009, the lawsuit said. The fraud was perpetuated by executives shifting money between personal and company accounts. Fifth Third decided to treat these six-figure transactions that sometimes occurred daily as short-term loans, the lawsuit said.

First Bank, which also had a lending relationship with one of the executives, claims Fifth Third took some of its money when the Cincinnati-based bank froze Eastern Livestock's accounts, the lawsuit said.

Fifth Third officials declined to comment on the lawsuit. Officials with First Bank did not return a call seeking comment.

Officials with the Kentucky Attorney General's office said the Eastern Livestock executives pleaded guilty in the scheme, but



**Make the switch before your cable company does.**

Most Popular    Most Commented    More Headlines

1   Ex-La Salle star Reid Rizzo wasn't afraid to die

2   Doc: Reds pick brings bad memories

3   Teacher claims he didn't get job because he's gay

4   Driver hits Kroger store, woman, 4 cars

5   Prosecutor, family try to save woman who died 7 times

**Most Viewed**

 

RAW VIDEO: Problem Qantas Plane Returns Home
Apr 29, 2012

federal and officials in other states are still probing the company's demise. Kentucky officials secured $850,000 in restitution for cattle farmers.

**PHOTO GALLERIES**


They're off: 8 UpTech startups


Transit of Venus

**View Comments**   **Share your thoughts »**

**TOP VIDEO PICKS**


Mt. Healthy 2012 High School Graduation


RAW VIDEO: Problem Qantas Plane Returns ...


Investors 'Dislike' Facebook on Day 2

**YOU MIGHT BE INTERESTED IN**

Former La Salle baseball star Reid Rizzo dies at 21

Man who died in Beechmont crash identified

New stadium fund plan: Borrow more, defer payment

Ex-La Salle star Reid Rizzo wasn't afraid to die

Prosecutor, family try to save woman who died 7 times

Bodybuilding champ busted for steroids

**SPONSORED LINKS**

13 Things the Funeral Director Won't Tell You

8 Restaurant Meals That Are Bad for Your Heart

Mom robbed after daughter posts photo of cash on Facebook

Woman Kills Children as Revenge

Six Car Names You Won't Ever See Again

Who Adopts Mobile Technology First?

[?]

**Independent Broker**
See how going independent with us can maximize profits and success
LPLletterindependence.com

AdChoices ▷

**Scottrade Brokerage**
$7 Online Trades - No Share Limit. Free Research. Open An Account
www.Scottrade.com            AdChoices ▷


Bringing  To the Table

---

**METROMIX**


Photos: Bad Veins on the Square

More from Metromix

**CUSTOMER SERVICE**

Advertise
Submit a Story
Submit a Letter to the Editor
Submit an Event
Send Your Feedback
Newspapers in Education
Reprints
Newsroom Staffs

Subscribe Today
Manage Your Account
Change Address
Delivery Problem
Pay Your Bill
Billing Questions
NIE Adopt a Class
E-Edition

**SHARE**


**Share Stories** Submit your stories to our site!


**Share Photos** Share your photos in our community photo galleries.

**Share Events** Get your upcoming event listed in our free calendar listings.

**MOBILE**

Use our mobile site and iPhone apps to keep updated with what's going on around Cincinnati

Mobile Site
Mobile App
Baseball Report App
Football Report App
Porkappolis
CinStages App



**Raise the bar by upgrading to a GOLD MEMBERSHIP.**   Cincinnati USA Regional Chamber



Site Map | Back to Top

**NEWS**
Latest Headlines
Crime & Courts
Education
Government
Elections

**SPORTS**
Bengals
Reds
UC
Xavier
High School

**ENTERTAINMENT**
Metromix
Movies
Eat & Drink
Music
Calendar

**LIVING**
Home & Garden
Food
Health
Moms
Dating

**BLOGS**
News & Opinion
Sports
Entertainment
Living
Moms

**FOLLOW US**
 Twitter
Facebook
Mobile
RSS

Virginia Bank Sues Fifth Third over check-kiting scheme - Business Courier    Page 1 of 2

**From the Business Courier
:http://www.bizjournals.com/cincinnati/news/2012/05/17/virginia-bank-sues-fifth-third-over.html**

# Virginia bank sues Fifth Third over check-kiting scheme

**Business Courier by Steve Watkins, Staff Reporter**

Date: Thursday, May 17, 2012, 2:53pm EDT

**Related:**

Banking & Financial Services, Crime



Steve Watkins
Staff Reporter- *Business Courier*
Email | Twitter

A Virginia bank filed a lawsuit alleging Fifth Third Bank was involved in a fraudulent check-kiting scheme.

Abingdon, Va.-based **First Bank and Trust** Co. filed the case in Hamilton County Common Pleas Court. It claimed Fifth Third knew about and took part in the scheme used by one of its borrowers, New Albany, Ind.-based Eastern Livestock.

First Bank, a major agricultural lender that had done business with Eastern Livestock, is seeking millions of dollars in damages, as well as punitive damages and a trial by jury.

First Bank claims in the complaint that Eastern Livestock CEO Thomas Gibson told bank examiners in 2009 he cycled checks between himself and his company on the same day for six-figure amounts. He told Fifth Third the money was for short-term loan purposes. Fifth Third allegedly treated those transactions as short-term loans, even though they involved millions of dollars and never actually resulted in putting cash into the business, according to the lawsuit.

First Bank claimed Fifth Third knew that Eastern Livestock's CEO was taking advantage of the banking system's "float" by cycling the checks back and forth, and that it knew Eastern Livestock was generating fictitious revenue, according to the lawsuit. It also claims that Fifth

Exhibit
6

Case 10-93904-BHL-11   Doc 1171   Filed 06/06/12   EOD 06/06/12 18:53:58   Pg 44 of 54

Third decided in 2009 to take part in the check-kiting scheme, with credit officers acknowledging in writing what Eastern Livestock was doing and stating that it was in Fifth Third's interests to look the other way.

Eastern Livestock generated about $2 million a year for Fifth Third, according to the lawsuit.

First Bank also claims an independent auditor had deemed Fifth Third's loans to Eastern Livestock as unsatisfactory and said it should eliminate the float the company was using. But it alleges in the lawsuit that Fifth Third ignored that auditor's recommendations.

First Bank claims that Fifth Third extended Eastern Livestock's revolving credit three times in 2010. The Cincinnati-based bank later realized Eastern Livestock's collateral wasn't enough to support a $32.5 million loan, so Fifth Third kept $25 million in cash that belonged to the company and should have gone in part to other lenders, First Bank alleged.

Ultimately, First Bank claims, Fifth Third's actions led to the collapse of the nation's largest cattle dealer, the lawsuit argues. That left no money behind for other creditors, including First Bank.

Fifth Third filed a lawsuit in Hamilton County Common Pleas Court in 2010 against Eastern Livestock, claiming the company defrauded it out of millions of dollars through the check-kiting scheme.

Gibson and Eastern Livestock CFO Steve McDonald have already pleaded guilty in Kentucky to criminal conspiracy and engaging in organized crime, according to a First Bank and Trust news release.

Fifth Third doesn't comment on litigation matters, spokeswoman Debra DeCourcy said.

Watkins covers banking and finance, insurance and sports business

COMMONWEALTH OF KENTUCKY
METCALFE CIRCUIT COURT
CASE NOS: 11-CR-00048
11-CR-00049
11-CR-00050
11-CR-00051

COMMONWEALTH OF KENTUCKY                                    PLAINTIFF

ORDER DESIGNATING CERTAIN DISCOVERY MATERIALS
A MATTER OF PUBLIC RECORD;
ORDER DESIGNATING CERTAIN DISCOVERY MATERIALS AS CONFIDENTIAL
AND PROTECTED BY A PROTECTIVE ORDER;
vs.                              AND
ORDER DESIGNATING CERTAIN DISCOVERY MATERIALS AS CONFIDENTIAL
PENDING TRIAL AND SUBJECT ONLY TO DISCLOSURE BY COUNSEL FOR
DEFENDANTS PURSUANT TO RCr 5.24

THOMAS GIBSON
STEPHEN MCDONALD
GRANT GIBSON
DARREN BRANGER                                            DEFENDANTS

This matter came before the Court on December 13, 2011 with regard to making

certain discovery documents a matter of public record.   It has been the customary

practice of this Court in both Barren and Metcalfe Counties for the Commonwealth to file

all discovery documents with the Circuit Clerk.   Pursuant to the recent adoption of CR

7.03, it appears that records made a matter of public record should redacted to exclude

the social-security number, taxpayer-   identification number, birth date and

financial-account number or an individual or other entity.   Information protected by 18

U.S.C. ' 5318 should also be redacted.

The Court recognizes that a number of individuals may have sustained losses on

November 2, 2010 as a result of checks issued for the purchase of cattle on behalf of

Eastern Livestock Co., LLC.   A significant public interest exists with regard to the

Exhibit
C

A TRUE COPY ATTEST
THIS _22 Dec 2011_
_Tommy a Garrett_ _DC_
METCALFE CIRCUIT CLERK

ENTERED IN MY OFFICE
THIS _22_ DAY OF _Dec 2011_
TOMMY A. GARRETT, CLERK
BY _Laura Riggle_ _DC_

discovery materials identified by the Commonwealth.   The Court has carefully weighed the public's right to know and the right of the defendants to receive a fair trial.   The Court being otherwise sufficiently advised,

Pursuant to RCr 5.24(1), **IT IS HEREBY ORDERED**, sua sponte, as follows:

1.   All bank records of Eastern Livestock Co., LLC at Fifth Third Bank contained in the discovery materials identified by the Commonwealth herein shall be redacted as soon as practical by the Commonwealth pursuant to CR 7.03, and three copies thereof shall be filed with the Metcalfe Circuit Court on CDs or DVDs, and made a matter of public record. Three copies of the un-redacted bank records along with the un-redacted records, materials and audio recordings identified in paragraph 4 herein shall within 20 days be filed by the Commonwealth with the Metcalfe Circuit Court Clerk on CDs or DVDs, the said records to be held under seal pursuant to CR 7.03(3) and released only subject to the terms and conditions set forth in this Order.

2.   A copy of the bank records of Eastern Livestock Co., LLC at Fifth Third Bank may be accessed by any member of the public at such time as redaction is completed by the Commonwealth.   An un-redacted copy of the bank records, materials and recordings identified in paragraph 4 may be secured by a licensed attorney who subjects himself to the jurisdiction of this Court and executes the Protective Order entered by this Court with regard thereto.   Any attorney who secures a copy of any un-redacted records, materials or recordings shall redact said records in compliance with CR 7.03.   Further, any material protected by 18 U.S.C. ' 5318 shall also be redacted by any attorney receiving these records.   Failure to comply with this Order shall subject the offending attorney to sanctions for contempt or other sanctions deemed appropriate by the Court.

2

2011-12-22 03:50   circuit judge div.1          2706517051 >>   1 270 432 4437   P 3/8

3.   The discovery materials, including the Grand Jury recordings on 08-16-11 and

09-22-11, audio or transcribed statements of defendants, witness summaries, law

enforcement reports and three CDs containing proprietary software of Fifth Third Bank to

search checks, shall remain confidential, except that counsel for the defendants in the

above styled action may divulge such information as may be necessary in preparing their

case for trial or other disposition.   The Court notes that while the case is pending these

items are not considered subject to open record requests.

4.   The remaining discovery documents and all audio recordings of

non-defendants referenced in the Commonwealth=s Response to the Court=s Order of

Discovery filed in the above styled actions on November 7, 2011, including all emails,

other documents and records of Fifth Third Bank, Community Trust, Town and Country,

Your Community and applicable passwords to access said documents, shall be

designated as confidential and three copies thereof filed by the office of the Kentucky

Attorney General with the Metcalfe Circuit Clerk on CDs or DVDs, the said materials and

audio recordings to be held by the Clerk under seal.   A copy of these documents, records

and audio recordings may be secured by a member of the public by and through their

attorney who acknowledges and executes the Protective Order set forth herein.

5.   The discovery materials identified as confidential in paragraph 4 of this Order

shall be subject to the following Protective Order:

A.   Access to and disclosure of information and/or documents designated as

confidential shall be limited to:

(1)   An attorney representing an individual or other legal entity that alleges a loss

from the sale of livestock on or about November 2, 2011 at the Edmonton Buying Station

3

2011-12-22 03:50    circuit judge div.1          2706517051 >>   1 270 432 4437   P 4/8

of Eastern Livestock Co., LLC.

(2)   Outside experts or outside consultants of the Receiving Party whose advice and consultation are being or will be used in connection with preparation for the litigation or the litigation of an action to collect claimed damages referenced herein;

(3)   A witness, deponent, or potential witness or deponent, and his/her counsel, during the course of or in preparation for this litigation;

(4)   The Court, court reporters, or other Court personnel involved in the adjudicative process; and

(5)   Copy or computer services for the purpose of copying or indexing documents, provided that all documents are retrieved by the Receiving Party upon completion of service.

B.   Experts or other witnesses who are granted access to this confidential information shall be required to execute a copy of this Protective Order.   Counsel shall retain the signed Protective Order, and, upon reasonable demand, shall permit opposing counsel to have a copy thereof.

C.   Any confidential materials so designated pursuant to this Order are to be used only for the specific purpose of rendering advice or prosecuting an action or actions against any potential defendants to recover alleged losses arising from the sale of livestock to Eastern Livestock Co., LLC.   Any disclosure of these records for any other purpose shall subject the disclosing party to sanctions by this Court.

D.   All confidential documents, audio recordings or other information received by counsel shall be retained by such counsel and shall not be delivered or disclosed, specifically or in substance, to anyone other than the individuals set forth in paragraph A

4

of this Protective Order.

E.   When documents or audio recordings are used at depositions, hearings or other public or quasi-public proceedings, the documents, recordings or information shall be identified as confidential in accordance with the applicable provisions of this Protective Order, in terms sufficient to apprise those present of their protected status and of the protective conditions which apply to them.   To the extent that any of those present are not designated persons as defined herein, or are designated persons who have not previously been shown this Order, the applicable provisions of this Order shall be carried out.

F.   Confidential documents, audio recordings and information used at depositions, hearings or other public or quasi-public proceedings, other than a trial, shall not be attached to transcripts or other documents memorializing such proceedings, except as follows:   They shall be collectively maintained in an envelope or other protective covering which bears on its front and back the following label:

> CONTAINS CONFIDENTIAL INFORMATION
> SUBJECT TO A PROTECTIVE ORDER.   TO
> BE OPENED ONLY BY OR AS DIRECTED BY
> THE COURT OR BY WRITTEN AGREEMENT
> OF THE PARTIES.

Any party that seeks to use confidential documents and information at depositions, hearings, or other public or quasi-public proceedings or to append confidential documents or information to any transcripts, memoranda, briefs or other pleadings, shall bear the burden of satisfying the foregoing conditions.

G.   The terms of this Order shall govern the disclosure and handling of the confidential documents or information identified by this Order by any individual or entity

5

that comes into possession of these confidential documents or information by virtue of this Order.

    H.   Any attorney who receives a copy of records and confidential materials pursuant to this Order shall execute the Acknowledgment appended hereto and pay a reasonable fee reimbursing the Commonwealth for the costs incurred for providing a copy of said materials.

    I.   Any member of the public who receives a copy of records pursuant to this Order shall pay a reasonable fee reimbursing the Commonwealth for the costs incurred in providing a copy of said materials.

    This the 22 day of December, 2011.

HON. PHIL PATTON
JUDGE, METCALFE CIRCUIT COURT


## ACKNOWLEDGMENT


6

I, _____, a licensed attorney admitted to practice in the Commonwealth of Kentucky, Bar # _____, residing at _____, hereby acknowledge that I have carefully read the foregoing Protective Order and further certify as follows:

1.  I submit myself to the jurisdiction of the Metcalfe Circuit Court.

2.  I acknowledge my professional obligation to redact all records received pursuant to CR 7.03 and to further redact any information protected by 18 U.S.C. ' 5318.

3.  I agree to honor the terms and conditions of this Protective Order and render myself subject to the sanctions imposed by the Court for any violation of this Order.

Witness my signature hereto this the _____.

_____

COMMONWEALTH OF KENTUCKY

COUNTY OF _____

ACKNOWLEDGED to before me by _____ this the ___ day of _____, 20___.

_____
Notary Public
State at Large Kentucky
My Comm Exp: _____

DISTRIBUTION:

Hon. F. Todd Lewis
Assistant Attorney General
Office of Attorney General
1024 Capital Center Drive

7

2011-12-22 05:51   circuit judge div.1                    2706517051 >>   1 270 432 4437   P 8/8

Frankfort, Kentucky 40601

Hon. Benjamin G. Dusing
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074

Hon. Scott C. Cox
600 West Main Street
Suite 300
Louisville, Kentucky 40202

Hon. Steven Romines
600 West Main Street
Suite 100
Louisville, Kentucky 40202

Hon. Brian Butler
600 West Main Street, Suite 500
Louisville, Kentucky 40202

Hon. Thomas W. Davis
The Times Building
135 West Public Square
Glasgow, Kentucky 42141

Hon. Eric W. Richardson
Hon. J.B. Lind
VORYS, SATER, SEYMOUR AND PEASE LLP
Suite 2000, Atrium Two
221 East Fourth Street
Cincinnati, Ohio 45202

Hon. Marisa Ford
Asst. U.S. Attorney
510 W. Broadway, 10th Floor
Louisville, KY 40202

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EASTERN LIVESTOCK CO., LLC, et al.,[1] | : | Case No.: 10-93904-BHL-11 |
| | : | |
| Debtors. | : | |

## <u>ORDER GRANTING FIFTH THIRD BANK'S MOTION FOR CONTEMPT</u>

This matter came before the Court upon *Fifth Third Bank's Motion for Contempt* ("the Motion for Contempt"). The Court, after considering the Motion for Contempt, now finds that the First Bank and Trust Company ("First Bank"), by and through its attorneys Daniel J. Donnellon and Stephen A. Weigand of the law firm Faruki, Ireland, and Cox, PPL (the "Faruki Attorneys"), publicly quoted, cited, or otherwise revealed Fifth Third's confidential documents and witness testimony in a complaint publicly filed in the Hamilton County, Ohio Court of Common Pleas ("Hamilton County Complaint"). The Court also finds that, by filing the Hamilton County Complaint, First Bank and the Faruki Attorneys violated this Court's order ("Confidentiality Order") (Doc. 731) entering the stipulated confidentiality agreement (Doc. 722) in these Chapter 11 proceedings. Further, the Court finds that by opposing Fifth Third's efforts

---

[1] The Debtor entities are Eastern Livestock Co., LLC and Okie Farms, L.L.C.

to mitigate the damages caused by their violation of the Confidentiality Order, First Bank and the Faruki Attorneys demonstrated a willful disregard of this Court's authority. Accordingly, the Court finds that First Bank and the Faruki Attorneys are in contempt of this Court and GRANTS Fifth Third's Motion for Contempt. It is therefore,

ORDERED (1) that First Bank and the Faruki Attorneys are to pay damages in an amount to be determined at a later date; (2) that First Bank and the Faruki Attorneys shall return to Fifth Third all documents containing or referencing Confidential information or testimony of Fifth Third, including all copies thereof, and certifying the return of all such information; (3) that First Bank and the Faruki Attorneys shall identify all individuals and entities to whom they have forwarded the Hamilton County Complaint or any other documents or testimony of Fifth Third that have been designated as Confidential; and (4) that Fifth Third shall submit by affidavit a calculation of the damages it has incurred as a result of First Bank and the Faruki Attorney's violation of the Confidentiality Order within two weeks of the date of this Order.

# # #