UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION


IN RE:                          .       Case No. 10-93904-BHL-11
                                .
                                .
EASTERN LIVESTOCK CO., LLC,     .       110 U.S. Courthouse
                                .       121 West Spring Street
                                .       New Albany, IN 47150
                                .
                     Debtor.    .       June 11, 2012
. . . . . . . . . . . . . . .           9:03 a.m.


TRANSCRIPT OF TELEPHONIC HEARING
BEFORE HONORABLE BASIL H. LORCH, III
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For Your Community        Reed, Weitkamp, Schell & Vice, PLLC
Bank:                     By:  MICHAEL WAYNE OYLER, ESQ.
                          500 West Jefferson Street, Suite 2400
                          Louisville, KY 40202


For Superior Livestock    Rubin & Levin, P.C.
Auction:                  By:  JOHN M. ROGERS, ESQ.
                               ELLIOTT D. LEVIN, ESQ.
                               CHRISTOPHER M. TRAPP, ESQ.
                          342 Massachusetts Avenue, Suite 500
                          Indianapolis, IN 46204


For James A. Knauer:      Faegre, Baker, Daniels, LLP
                          By:  KEVIN M. TONER, ESQ.
                               SARAH BOWERS, ESQ.
                          300 N. Meridian Street, Suite 2700
                          Indianapolis, IN 46204



Audio Operator:           Amy Massey

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311   Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

For Fifth Third Bank:        Vorys, Sater, Seymour and Pease, LLP
                             By:  RANDALL D. LaTOUR, ESQ.
                                  MELISSA S. GIBERSON, ESQ.
                             52 East Gay Street
                             Columbus, OH 43216

                             Vorys, Sater, Seymour and Pease, LLP
                             By:  ERIC W. RICHARDSON, ESQ.
                             301 East Fourth Street, Suite 3500
                             Great American Tower
                             Cincinnati, OH 45202

For Superior Livestock,      Greenebaum, Doll & McDonald
et al:                       By:  JOHN W. AMES, ESQ.
                                  C.R. BOWLES, JR., ESQ.
                                  CHRISTIE A. MOORE, ESQ.
                             3500 National City Tower
                             101 South Fifth Street
                             Louisville, KY 40202

For First Bank & Trust:      Faruki, Ireland & Cox, P.L.L.
                             By:  DANIEL J. DONNELLON, ESQ.
                             201 East Fifth Street, Suite 1420
                             Cincinnati, OH 45202

TELEPHONIC APPEARANCES:

For First Bank & Trust:      Faruki, Ireland & Cox, P.L.L.
                             By:  STEVEN A.  WEIGAND, ESQ.
                             201 East Fifth Street, Suite 1420
                             Cincinnati, OH 45202

For the U.S. Trustee:        Office of the U.S. Trustee
                             By:  CHARLES R. WHARTON, ESQ.
                             101 West Ohio Street, Suite 1000
                             Indianapolis, IN 46204

For Arcadia, et al:          W. Scott Newbern, P.L.
                             By:  WALTER SCOTT NEWBERN, III, ESQ.
                             2982 East Gevemy
                             Tallahassee, FL 32309

For Alton Darnell, et        DelCotto Law Group, PLLC
al:                          By:  AMELIA MARTIN ADAMS, ESQ.
                             200 North Upper Street
                             Lexington, KY 40507

**WWW.JJCOURT.COM**

TELEPHONIC APPEARANCES (Cont'd):

For Friona:                    Sprouse, Shrader, Smith, PC
                               By:  JOHN FREDERICK MASSOUH, ESQ.
                               701 South Taylor, Suite 500
                               Amarillo, TX 79101

For First Bank & Trust:   Ayres, Carr & Sullivan, P.C.
                               By:  JOHN R. CARR, III, ESQ.
                                    BRET S. CLEMENT, ESQ.
                               251 East Ohio Street, Suite 500
                               Indianapolis, IN 46204

For CPC Livestock:             Snell & Wilmer, LLP
                               By:  JESSICA E. YATES, ESQ.
                               1200 Seventeenth St., Suite 1900
                               Denver, CO 80202

For J&F Oklahoma               Naman, Howell, Smith & Lee, PLLC
Holdings, Inc.:                By:  DAVID L. LeBAS, ESQ.
                               8310 N. Capital of Texas Highway
                               Suite 490
                               Austin, TX  78731

For James A. Knauer:           Kroger Gardis & Regas, LLP
                               By:  JAMES A. KNAUER, ESQ.
                                    JAY P. KENNEDY, ESQ.
                               111 Monument Circle, Suite 900
                               Indianapolis, IN  46204

For Allen Barry:               By:  DAVID A. SMITH, ESQ.

For Peoples Bank:              Moye White, LLP
                               By:  DAVID A. LAIRD, ESQ.
                               16 Market Square, 6th Floor
                               1400 16th Street
                               Denver, CO 80202

For Bynum Ranch                Easterwood, Boyd & Simmons, PC
Group:                         By:  JAMES BRYAN JOHNSTON, ESQ.
                               623 N. Main Street
                               Hereford, TX 79045

For Cactus Growers:            Lovell, Lovell, Newsom & Isern, LLP
                               By:  JOHN LOVELL, ESQ.
                               112 W. 8th Avenue, Suite 1000
                               Amarillo, TX 79101

                               By:  SEARCY PEOPLES, ESQ.

**WWW.JJCOURT.COM**

4

TELEPHONIC APPEARANCES (Cont'd):

For CPC Livestock:        Polsinelli Shughart
                          By:  ROBERT J. SELSOR, ESQ.
                          100 S. Fourth Street, Suite 1000
                          St. Louis, MO 63102

                          **- - -**

1          THE COURT:  All right.  We're on the record in

2    Eastern Livestock.  I have already been given a list of the

3    attorneys who are appearing by phone.  I would just ask that if

4    you do speak that you identify yourself and of course keep us

5    on mute and don't put us on hold.  I would ask the attorneys in

6    the courtroom to state the appearances for the record, please.

7          MR. TONER:  Good morning, Your Honor, Kevin Toner

8    from Faegre, Baker, Daniels here for James Knauer, the Eastern

9    Trustee.  Also with me today is Sarah Bowers, a summer

10   associate in our Indianapolis office.

11         MR. LaTOUR:  Good morning, Your Honor, Randall LaTour

12   and Eric Richardson from Vorys, Sater, Seymour and Pease on

13   behalf of Fifth Third Bank.  With me in the courtroom is my

14   associate Melissa Giberson.

15         MR. DONNELLON:  Good morning, Your Honor, Dan

16   Donnellon of Faruki, Ireland & Cox here for First Bank & Trust.

17   I believe Steve Weigand is also on the telephone for First

18   Bank.

19         MR. ROGERS:  On behalf of Superior Livestock Auction

20   with Rubin & Levin, John Rogers, Elliott Levin and Chris Trapp.

21         MR. AMES:  Your Honor, John Ames, Chip Bowles, and

22   Christie Moore of Bingham, Greenebaum, Doll & McDonald on

23   behalf of Superior Livestock, Joplin and several others listed

24   in our 9,019 disclosures or about 16 disclosures.

25         UNIDENTIFIED SPEAKER:  Now Bingham, Greenebaum, Doll,

1  Your Honor.

2                          (Laughter)

3          THE COURT:  I'm glad you finally figured that out.

4          UNIDENTIFIED SPEAKER:  He's even got the new

5  briefcase.

6          THE COURT:  All right.

7          MR. OYLER:  Judge, I'm sorry I skipped.  It's Mike

8  Oyler for Your Community Bank.

9          THE COURT:  And you don't have two other lawyers with

10  you?

11          MR. OYLER:  No, I'm by myself.

12          THE COURT:  All right.

13          MR. OYLER:  I can call some in if you need me to.

14          THE COURT:  All right.  I'm looking at the proposed

15  agenda.  We'll work our way through that.

16          MR. TONER:  If I may, Your Honor, we tried a new

17  format which I think does a better job of letting the Court

18  know the status of things, but perhaps a poorer job letting the

19  Court know exactly what needs to be dealt with in court today.

20          By my calculation, the only things we need to do are

21  to talk about initial pretrial discussions in the new accounts

22  receivable cases, there are a half a dozen of those starting on

23  Page 3, and the other would be the confidentiality order.

24  Preliminary hearing has been noticed on that.  I don't know

25  which you'd like to address first.

1          THE COURT:  Let's do the --

2                (Attorney joining conference call)

3          THE COURT:  Let's talk about the accounts receivable

4    litigation, that should be fairly easy and maybe we can let

5    some of the lawyers that are on the phone get off the phone.

6          MR. TONER:  These are --

7                (Attorney joining conference call)

8          MR. TONER:  -- newly filed adversary proceedings to

9    collect certain accounts of the debtor.  I think Jay Kennedy

10   may be on the telephone from Mr. Knauer's office and he is the

11   attorney of record in those cases for the Trustee.  Jay, are

12   you there?

13         THE COURT:  Mr. Kennedy, are you there?

14         MR. KENNEDY:  Yes, Your Honor, I'm sorry, this is

15   Jay.

16         THE COURT:  All right.  You want to take me through

17   the accounts receivable litigation?

18         MR. KENNEDY:  Well, Your Honor, we are anticipating

19   two items.  First of all, the (indiscernible) litigation and

20   second the note litigation.  My understanding, Faegre & Daniels

21   is handling most of the receivables litigation.

22         THE COURT:  All right.  Well, let's specifically talk

23   about -- I don't know what these are by the caption.  The

24   Schroeder Feeders Starter Yard, is that one that you're

25   handling, Mr. Kennedy?

1          MR. KENNEDY:  No, Your Honor, I believe that's Faegre

2  & Daniels.

3          MR. TONER:  All right.

4          THE COURT:  All right.

5          MR. TONER:  Confusion in the wiring.  My

6  understanding is that these have just started and folks have

7  started appearing and attorneys are preparing their initial

8  case management plans to present to the Court.

9          Some matters have disappeared as quickly as they were

10  launched with settlement discussions getting under way.  But I

11  will have to confess that I am not the attorney in the office

12  who has actually appeared in those adversary proceedings,, as

13  you can tell.

14          THE COURT:  I kind of already surmised that.  All

15  right.  Well, then, as to the matters listed on Page 3 of the

16  agenda entitled accounts receivable litigation, that's the

17  Schroeder Feeders, the Demaio Farms –

18              (Attorney joining conference call)

19          THE COURT:  -- Allen Barry, Kenny Ogden, and Pesetsky

20  Land and Cattle, as to those matters the Court's inclination is

21  to continue those to the next omnibus date which would be on

22  August the 20th at 10 a.m. and that I'll be looking for the

23  parties to submit some scheduling orders and preliminary

24  discussions to have taken place.  Are there any attorneys that

25  are appearing in any of those matters that would like to have

1  some input here this morning?

2        MR. TONER:  Just so the record's clear, Your Honor,

3  there is one other matter in that category that's on the top of

4  Page 4.

5        THE COURT:  Oh, yes.

6        MR. TONER:  With Ron Shephard.

7        THE COURT:  Yes.  All right.  So, as to those

8  matters, we'll show them continued to the August 20th omnibus

9  date at 10 a.m. and we'll hopefully know what's going on with

10  those lawsuits at that time.

11        MR. TONER:  While we're on Page 4 in the matter of In

12  Re East/West Trucking, I'm informed now that that matter has

13  been completely settled and we're waiting for the sufficient

14  period of time to run to --

15        THE COURT:  Yes, I saw that.

16        MR. TONER:  -- to wrap that up.

17        THE COURT:  That is out on notice I believe.

18        MR. TONER:  With that, I think we're back to the

19  confidentiality order.  I understand that Fifth Third has a

20  preliminary question that they wanted to raise with the Court

21  on that.

22        THE COURT:  What is -- is there anybody on here in

23  Thomas and Patsy Gibson?  Are either the Gibson lawyers or the

24  Trustee in Gibson on?

25

1          (No audible response)

2          THE COURT:  Probably not, there was nothing really

3   scheduled.  I was just a little curious about some of the

4   developments in Kentucky that I have seen in some of the

5   pleadings.  I'm sure some of you are up to speed on that also.

6   All right.  Yes, Mr. Toner, what were you saying?

7          MR. TONER:  The next item I guess would be back on

8   Page 1, the confidentiality order and related matters set for

9   preliminary hearing.  I'm told by counsel for Fifth Third that

10  they had a preliminary question they wanted to raise with Your

11  Honor first.

12         THE COURT:  All right.  Yes, Mr. LaTour?

13         MR. LaTOUR:  Good morning, Your Honor, Randall LaTour

14  from Fifth Third Bank.  I apologize for my scratchy throat, I'm

15  fighting a summer cold.

16         Your Honor, I would like the Court to consider before

17  we get into the merits of these issues, whether the matter is

18  ripe for determination today and the manner in which it is to

19  be determined.  I think there are five reasons why it is not

20  ripe for determination today and should not be considered in

21  this particular environment.

22         Number one, Paragraph 8 of the confidentiality

23  agreement that was incorporated into an order by this Court

24  requires that notice of documents that seek to be designated as

25  no longer confidential has to be given to Fifth Third Bank.

1  Fifth Third Bank is to be afforded an opportunity to respond to

2  that and until and unless either the parties agree or the Court

3  orders that they are no longer designated, they are to remain

4  confidential.  So this procedure is -- or not this procedure,

5  but the motion currently before the Court is not ripe because

6  that procedure has not been complied with.

7        Number two, Fifth Third Bank needs more than two

8  business days to brief the issues involved in this that are

9  much more involved than were presented in the initial motion.

10  Today, for example, at 9:00 which was about an hour and 15

11  minutes ago, another pleading was filed called objection of

12  First Bank and Trust to Fifth Third's motion to seal exhibits

13  that Fifth Third had appended to its own motion for contempt.

14  The motion for contempt is premised upon the premature release

15  of confidential information.

16        All three of these items are facets of the same

17  issue.  Whether the documents are to be de-designated, what the

18  consequences of a premature release of the information is, and

19  whether or not these documents should be submitted under seal

20  today.

21        There is extensive citations to authority in the

22  document that was filed a little more than an hour ago.  Fifth

23  Third Bank is entitled by rule and by common sense to an

24  opportunity to present in its briefing the law and argument

25  supporting Fifth Third's position with respect to all of these

1   issues, with respect to whether the document should be

2   de-designated as confidential, with respect to the issues

3   raised in the motion for contempt, and with respect to the

4   issues raised in this motion to seal.

5          Number three, the proceeding to consider those issues

6   needs to be conducted in an in camera presentation.  Fifth

7   Third Bank in order to explain to the Court its position needs

8   to talk about matters that it is maintaining must remain

9   confidential.  We can hardly do so in a public forum.

10         And until the Court determines that these items

11  should not be confidential, the existing confidentiality should

12  be maintained.  And we ought to be able to present our law and

13  our argument without being concerned that we are contributing

14  to the very problem that we are trying to prevent, which is the

15  misuse of the information.

16         Number four, this is a discussion about evidence.  It

17  is about initially 54 exhibits that were attached to First

18  Bank's motion to de-designate.  Now, that list has apparently

19  expanded because additional documents have been referred to in

20  the pleading that was mentioned today or filed today as

21  objection to Fifth Third's motion to seal its own exhibits.

22         So, until we have an understanding of what documents

23  are at issue, until we have an opportunity to examine for

24  ourselves what is going on with those documents so that we can

25  prepare an adequate argument to the Court, the Court can hardly

1  be expected to make a cogent ruling with respect to what the

2  documents are about, whether they're confidential or not.

3         And finally, Your Honor, as I mentioned a moment ago,

4  there are matters that relate to this motion to de-designate.

5  There is the motion for contempt filed by Fifth Third which I

6  assume First Bank is going to want to brief.  There is the

7  objection to Fifth Third's own motion to seal its own exhibits

8  which has raised several pages of authority that Fifth Third

9  would like the opportunity to brief.

10        I believe, Your Honor, that the appropriate response

11 to this would be to allow briefing in accordance with the rules

12 on the pleadings and let the parties brief these issues so that

13 we could present an in camera presentation of the issues, show

14 you exactly the documents that are at issue so that you can

15 make an informed decision about whether or not the various

16 positions of the parties have merit.

17        So, I think that as far as today goes, we should

18 stop, the briefing should be allowed to finish in its ordinary

19 course, and then a timely hearing set after the briefing is

20 concluded.

21        MR. DONNELLON:  Good morning, Your Honor, Dan

22 Donnellon on behalf of First Bank.  I'm going to try to address

23 that, I thought it was supposed to be a threshold question, but

24 I think I'm going to break it down into different parts is that

25 there are really three matters that are within the realm of the

1  protective order issue as described on the docket.

2         The one is the motion for contempt which we certainly

3  will want to brief and have a scheduled hearing on.  There are

4  questions whether under bankruptcy procedure and under Seventh

5  Circuit law that has to be served with summons, it's a

6  quasi-criminal proceeding, there is clear and convincing

7  evidence, there are numerous other issues that we'll need to

8  attach to the motion for contempt.

9         So, to put the brakes on that, I would suggest it

10  could be sua sponte dismissed on a plain reading of it.  But in

11  order to schedule a full hearing so that both parties have the

12  opportunity to be heard, I don't have any problem with that.

13         That relates also to this motion to seal.  On the one

14  hand, Fifth Third wants to hold First Bank, myself, and Mr.

15  Weigand in contempt of court, but on the other hand does not

16  want to show the public or even the alleged contemnors what the

17  documents are that are allegedly subject to the confidentiality

18  issue.  They have not even identified what it is about the

19  documents in question that are supposed to be some trade

20  secret.

21         The reason we filed a brief, admittedly at the last

22  minute, is this motion to seal came up just at the end of last

23  week and we think before there is any procedure at all to

24  address whether documents are filed under seal, the Court needs

25  to be cognizant of the laundry list of Seventh Circuit

1 authority that simply says stamping a document confidential,

2 even if we were to agree with Fifth Third it should be

3 confidential, doesn't answer the question. Your Honor has to

4 make the determination of whether Fifth Third has proven that

5 the information that's contained in this -- these documents or

6 testimony is, in fact, a trade secret of this bank that is

7 deserving of protection.

8          And that leads me to the third issue of the three

9 that we have in the -- Mr. LaTour's threshold question, and

10 that is our motion to release from the strictures of the

11 protective order the documents released into the public domain

12 by the Metcalfe Circuit Court.

13          I would submit that Mr. LaTour is correct that if we

14 were to challenge the confidential designation of particular

15 documents saying that Document 023589 should not be viewed

16 confidential, we can give notice of Fifth Third, they can come

17 back and tell us what it is that's supposed to be confidential,

18 and we can proceed in that fashion, similar to what Mr. Newbern

19 did with the documents that are submitted in camera.

20          This is quite different. This is not an issue of us

21 asking Fifth Third what is it that's confidential about that

22 document. The fact of the matter is, back to the 1970s, the

23 United States Supreme Court in the Cox Communication's case

24 said that it cannot be a trade secret if it's released into the

25 public domain. You cannot maintain that something is a trade

1   secret if the public has access to it.

2          And what we're demonstrating to Your Honor is in the

3   course of the criminal proceedings against the Gibsons and Mr.

4   McDonald, Judge Patton in the Metcalfe Circuit Court made a

5   very reasoned decision that certain documents are going to be

6   released to the public, that anyone in the public can obtain

7   the documents if they so want.

8          There is also audiotape of interviews of witnesses

9   and other information that was produced that Judge Patton said

10  that should be released but it still should remain subject to

11  some of these protections:  you have to be an attorney, you

12  have to say what your use of it is, and they actually make you

13  sign something before you can obtain the audio transcripts of

14  the Fifth Third witnesses and the victims and the others.

15         But the fact of the matter is, Judge Patton told the

16  Kentucky Attorney General, redact the privacy information off

17  of the 18,000 pages of documents, submit them to Laura Rigdon,

18  the Clerk of Courts, and once you do that, anyone who wants to

19  look at those documents can feel free to do so.

20         Rather than simply filing all of those documents and

21  further risking the ire of Fifth Third, we simply move the

22  Court to recognize that Judge Patton has said they're already

23  in the public, therefore they should not be in any way subject

24  to this order.

25         Not that we can ask Fifth Third what's confidential

1    about them and then remove the designation.  They simply are in

2    the public realm and therefore should not be subject to any

3    restrictions under any circumstances.

4           So that issue is quite different than the issues

5    under the protective order of what is the trade secrets that

6    Fifth Third must identify.

7           THE COURT:  I thought most of the documents in the

8    criminal matter were the debtor's documents and statements made

9    by the debtor.  Am I wrong?

10          MR. DONNELLON:  Yes.

11          THE COURT:  Am I wrong about that?

12          MR. DONNELLON:  Yes.  The order from Judge Patton

13   says there's documents from Your Community Bank, from Community

14   Bank and Trust.  They're what he called banking records of

15   Eastern Livestock.  Those include the Fifth Third documents,

16   one from 18,000 and something, that the Attorney General

17   tendered in March.

18          And the reason we identified on the schedule as we

19   did the ones that are relevant and were marked by Mr. White, is

20   to let the parties know what is in that record of 18,000

21   documents.  And I have a -- I have this with me and you can see

22   what's in the documents, what's been redacted by the Kentucky

23   Attorney General.  Some of them contain redactions from Fifth

24   Third.  But the fact of the matter is, once those are released

25   to the public there's no protection under any Court.

1           THE COURT:  What do you -- now but you keep -- is the

2   redacted part released to the public?

3           MR. DONNELLON:  No, sir.

4           THE COURT:  So, that's still confidential.

5           MR. DONNELLON:  Well, I'm sorry, the redacted part

6   released to the public.  Yes, but the public can't see what's

7   been redacted.

8           THE COURT:  Well, I know that.

9           MR. DONNELLON:  Okay.

10          THE COURT:  What I'm saying --

11          MR. DONNELLON:  That's what I didn't understand.

12          THE COURT:  -- if a document is released but part of

13  it is redacted, you're not saying that the part that's been

14  scratched out and not seen is part of the public --

15          MR. DONNELLON:  Absolutely not.

16          THE COURT:  Okay.

17          MR. DONNELLON:  And that's why we identify them on

18  the schedule pursuant to the way in which the Kentucky Attorney

19  General produced them.  And I give you an example without

20  trying to get into too much detail.

21          There's a key document executed by Fifth Third that

22  lists Eastern Livestock account numbers and how Fifth Third is

23  going to deal with this issue.  The Kentucky Attorney General

24  blacked out the account numbers of Eastern Livestock and kept

25  in its full the preprinted language of Fifth Third and the

1  handwritten language of Fifth Third and the signatures of the

2  Fifth Third persons.  That's in the public domain.  Anyone who

3  wants to call Clerk of Courts from Metcalfe County can obtain

4  that document.

5          THE COURT:  But one of their allegations is -- just a

6  moment, Mr. LaTour -- one of their allegations is that you

7  released a lot of information in the lawsuit that you filed in

8  Ohio prior to the release of the information in Kentucky.

9          MR. DONNELLON:  That's not true and I'll -- for two

10  reasons.  Number one, the information was released in Kentucky

11  in March.  We filed our lawsuit May 16th.  We are simply

12  bringing it to the Court's attention now because of the fact

13  that --

14          THE COURT:  All right.

15          MR. DONNELLON:  -- Fifth Third ran to the State Court

16  and asked to seal the complaint.

17          The other issue is, we have not released any

18  confidential information.  We were careful not to.  Would I

19  like to attach documents that support the evidentiary

20  allegations made in my complaint?  Of course.  But I felt the

21  necessity to at least allow Fifth Third its day in court to say

22  keep that confidentiality protection on that particular

23  document or that document.

24          There's nothing within the four corners of the

25  complaint that alleges any trade secret of Fifth Third.

1   There's nothing that they could point to that says if this fell

2   into the hands of Chase or PNC we would lose our competitive

3   advantage.

4          Rather, they're embarrassed by the allegations, they

5   want to have a blanket thrown over everything, and the overly

6   broad definition of you can't use confidential information

7   essentially means that anyone who's part of that protective

8   order cannot sue Fifth Third because --

9          MR. LaTOUR:  Your Honor, now that we've descended

10   into character assassination and the attribution of motives, I

11   must insist and interrupt.  This is the uncontrolled, ad hoc,

12   unprepared for, no evidence hearing that I did not want to

13   have.  This needs to be in camera.

14          Almost everything that Mr. Donnellon has said is not

15   accurate.  These documents were served on his office.  His

16   statement that he doesn't know what they are, not accurate.

17   They were served on him.  It was --

18          MR. DONNELLON:  What are those documents?  You felt

19   free to interrupt me, I have to interrupt you.  What are these

20   documents you're (indiscernible)?

21          MR. LaTOUR:  These are the documents that are the

22   exhibits we sought to file under seal.

23          MR. DONNELLON:  Under seal.  Okay.  I wasn't aware of

24   that, Randy.

25          MR. LaTOUR:  Was that because --

1        MR. DONNELLON:  It said we want to seal everything,

2   we don't want anyone to see it.  It's one --

3        MR. LaTOUR:  My point, Your Honor, is that having an

4   evidentiary discussion without any evidence.  He had a long

5   recitation about what the order in the Kentucky Court said.

6   The order's not in evidence and it doesn't say anything that he

7   says it says.

8        MR. DONNELLON:  The Court can take judicial notice of

9   the State Court order and it is attached to our motion.

10        MR. LaTOUR:  Your Honor, if they're going to have a

11   discussion on the merits, Fifth Third is entitled to brief the

12   issues to present its position unfettered by the very

13   information that we're trying to protect.

14        THE COURT:  All right.  Here, look, why don't both of

15   you sit down.  Please.  I do think one of the issues that Mr.

16   LaTour raises is valid and that is -- I'm not saying only one

17   is valid, I'm just saying I don't know how we're going to get

18   to the bottom of this without going through some of these

19   documents.

20        I don't know how I could -- and I don't know that I

21   could spread those on the record until I make the

22   determination.  I mean that's why we do in camera review on

23   occasion and so -- but, on the other hand, I mean, really what

24   I think you need, I think you need someone to sit down with you

25   off the record and go through these things and maybe I should

1  appoint another judge to do that or ask another judge to serve

2  in that capacity.  I can think of several that I would like to

3  do that to.

4                    (Laughter)

5            MR. DONNELLON:  May I be heard on one issue, Your

6  Honor?

7            THE COURT:  No.  Okay.

8            MR. DONNELLON:  I was interrupted.

9            THE COURT:  All right.

10           MR. DONNELLON:  On the Metcalfe County issue, I think

11  you can do that without looking document by document, but let's

12  set that aside.  On the other ones, I did say Fifth Third is

13  entitled to a full briefing, everything else.

14           THE COURT:  All right.

15           MR. DONNELLON:  The problem is, you can look at the

16  complaint and determine there are no trade secrets revealed.

17  There is not one confidential document attached, there is not

18  one confidential trade secret alleged.  It is simply the use of

19  the information which is why the cart is before the horse.

20           They have not proven that it is confidential

21  material.  And even if they could say you can't use it to read

22  it and allege facts, would mean that no one could sue Fifth

23  Third.  You couldn't state a complaint that would rise to a

24  Iqbal-Twombly standard without using the information.

25           And that's an issue I think you can discuss without

1  looking at one single document except the four corners of that

2  complaint.

3          THE COURT:  I've looked at the complaint.  But I'm

4  sure that -- I don't think he's going to agree with you on that

5  issue.  Do --

6          MR. LaTOUR:  You can file it under seal and use it

7  all day.

8          THE COURT:  Has the judge -- the judge hasn't rule on

9  your motion to seal the complaint?

10          MR. DONNELLON:  It was withdrawn by Fifth Third.  We

11 asked for an evidentiary hearing on it under the Rules of

12 Superintendence in Ohio that they have to come forward and

13 identify specifically what paragraph or word in that complaint

14 is a trade secret of theirs.  And the day we filed a request to

15 hold them to that clear and convincing proof, they withdrew the

16 motion so there's nothing pending in front of the State Court

17 judge.

18          MR. LaTOUR:  Which simply means there is no urgent

19 emergency today to decide.  Once the bell has been rung, it's

20 very difficult to unring it and so we did give up on trying to

21 seal it.  After it had been picked up by newspapers, after it

22 had been published on websites, there was no longer much point

23 in trying to seal that event.

24          Fifth Third Bank is trying to prevent further ringing

25 of the bell and is trying to deal with the consequences of the

1 misconduct the first time.  So, to say that Fifth Third

2 recognized the reality that they had already disseminated the

3 information wrongfully does not suddenly anoint the information

4 with the correct attribution.

5          Similarly, the idea that this Metcalfe County

6 decision guides everything and then depends upon his summary of

7 it is misleading to the Court.  If you read what the Metcalfe

8 County order says, it says that if you sign a confidentiality

9 agreement, you can have access to the information.  Paragraph

10 4.

11          When you read the confidentiality agreement, it says

12 use of this documentation is limited to people who sold cattle

13 in the sale -- cattle sale in Metcalfe County.  And it further

14 says they're bound by what the confidentiality agreement says.

15          THE COURT:  I don't want to hear any more about this.

16 All right.  Here's what I'm going to do.  I'm going to allow

17 you to file your briefs.  I'm going to appoint a judge to

18 mediate this for one reason, or for several reasons, but one is

19 if I have to make this determination, I'm going to make it on

20 evidence that's admissible in court on all of these matters.

21 And I want you to be able to talk freely to someone about

22 things that maybe are not admissible in court and to show them

23 whatever you want to show them and to make your various

24 positions clear.

25          And the best reason is, also, I think this ought to

1   be resolved.  I mean, you're talking about two banks here that
2   are very sophisticated and have very sophisticated lawyers
3   representing them.
4          So, let -- you know, I do think there's a frustration
5   on the part of the one side that Fifth Third is being overly
6   protective and, like you say, trying to avoid embarrassment.  I
7   don't -- I mean, I do think they're not entitled to not
8   disclose information that's embarrassing to them.
9          They are entitled to certain protections of certain
10  types of documents.  But where those -- where that line is
11  drawn is something that if ultimately you can't -- it seems to
12  me like you all ought to be able to realize where that line is
13  drawn.  And I think if a judge is sitting in the room with you
14  and having a very frank discussion with you about those
15  matters, you should be able to do that.
16         The other thing is, you know, I don't know how much
17  money the banks -- I would suggest you even do this mediation
18  before you do the briefing because I really don't know that
19  that's going to help a judge very much.
20         You might want to do short memos in support of your
21  positions or mediation memos but, you know, how many more tens
22  of thousands of dollars are you going to use fighting about
23  documents?  And I'm sure both banks have the money if that's
24  the way they want to spend it, but it would seem to me like it
25  would be better to get to the heart of the matter.

1          All right.  So I'll do that.  I'll issue an order.

2   Now, you know, there are -- I can get some judges that will do

3   it for free because they owe me because I've done this for

4   other courts before.  If you all would rather choose another

5   mediator, there's former judges in Chicago that do this sort of

6   thing, there's --

7          MR. LaTOUR:  Your Honor, Fifth Third Bank's quite

8   comfortable with your choice.

9          THE COURT:  All right.  I'll --

10          MR. DONNELLON:  I'm quite comfortable with your

11   choice, as well, Your Honor.  We have a State Court judge who

12   was planning to hear a motion to seal in Ohio and --

13          THE COURT:  Well, I --

14          MR. DONNELLON:  -- I don't understand why we --

15          THE COURT:  -- I think it's -- there's a lot more at

16   -- I mean, it is an order of this Court, I can't dodge it

17   completely, although I'm working on it.

18                    (Laughter)

19          THE COURT:  There is an order -- I mean, you all

20   stipulated as to confidentiality.  I mean, it really wasn't my

21   handiwork.  I signed off and approved your stipulation and made

22   it an order of this Court so I'm not willing just to totally --

23   to wash my hands of it.  Now, let me --

24          MR. DONNELLON:  I'm comfortable with whomever you --

25          THE COURT:  -- let me also say this.  I'm not -- you

1  know, that's obviously not stayed in Ohio.  This fight between

2  the banks has a life of its own and I don't know what's going

3  to happen in Ohio and how active that judge wants to be.  You

4  can tell him or her what we're going to do here and let Ohio

5  make its own decisions.

6        MR. DONNELLON:  We'll do that, Your Honor.  One other

7  issue that I want to point out because it is your order and it

8  is something that I was involved in the original drafting of

9  and turned that over to Ms. Moore of Bingham Greenebaum and

10  didn't review the final order.

11        And I am subject to the extraordinary motion for the

12  first time in 26 years to hold me in contempt and I can assure

13  you we were cognizant of what Your Honor had signed and made

14  very careful reading of the complaint to be certain that there

15  were no trade secrets.  And as I said, although we would have

16  liked to attach documents that we disagree with Fifth Third on

17  --

18        THE COURT:  I noticed there --

19        MR. DONNELLON:  -- we chose not to.

20        THE COURT:  -- I noticed there were no documents

21  attached to the complaint.  I did notice that.  But of course

22  that's --

23        MR. DONNELLON:  And I think we need, if we're going

24  to send this to the judge, a procedural determination, whether

25  you'll make that or the other judge will, but -- for example --

1          THE COURT:  The other judge is not going to be a

2     judge in this -- oh, you mean Ohio or here?

3          MR. DONNELLON:  No, no, no.  How are they going to

4     handle it?  There are some procedural issues.  And it's our

5     position that the order says confidential material as a

6     conjunctive, it means under Rule --

7          THE COURT:  All right.

8          MR. DONNELLON:  -- 26(c) protected and stamped.

9          THE COURT:  No, the other judge is going to be a

10    mediator.  He or she is not going to make any rulings.  He's

11    going to try to bring you all together and try to resolve it.

12    If there's any rulings that need to be made, it will come back

13    to me.

14          MR. DONNELLON:  Will there be any briefing or

15    hearings scheduled?  As I said --

16          THE COURT:  I think he'll --

17          MR. DONNELLON:  -- I'm subject to a motion of

18    contempt --

19          THE COURT:  -- I think he'll get you --

20          MR. DONNELLON:  -- that I've had to, you know,

21    disclose to my carrier.  Other extraordinary issues are

22    involved in this, that I'm happy to mediate and follow the

23    path, but we need to have something set procedurally and

24    evidentiary --

25          THE COURT:  I think --

1          MR. DONNELLON:  -- on this extraordinary motion Fifth

2    Third is filing.

3          THE COURT:  I think he'll get you on the phone and

4    set up a scheduling -- and talk to you about scheduling.

5          MR. DONNELLON:  Scheduling the mediation or

6    scheduling a hearing before Your Honor?

7          THE COURT:  Scheduling the mediation.  I'm not going

8    to take up the contempt matter until after the mediation

9    because I'm hoping that's something you'll be able to resolve

10   with the mediation also.

11         MR. DONNELLON:  I am, as well.  So we wouldn't have

12   to file any brief or opposition to that until --

13         THE COURT:  I would not file any brief in opposition

14   to that.  I would not file any briefs, at all.  As I said

15   earlier, one of the advantages -- it may turn out to be an

16   advantage of going this way is that you can cover what you want

17   to tell the mediator in terms of a mediation statement, which

18   I'm sure you're all very familiar with, and it doesn't have to

19   be a full blown brief, but it can be an outline of your

20   position.  And -- because we're going to look for a practical

21   solution here that allows the things that can be made public to

22   be made public expeditiously and prohibits anything that should

23   be confidential from being made public.

24         And so, I would think this is something that would

25   save your clients money and resolve this in a prompt manner so

1  that we can get on to other matters in this case such as a plan

2  and a more global resolution of a lot of issues.  I mean,

3  everybody likes to see banks fight, but it's not going to be

4  the centerpiece of what happens in this case.

5          MR. DONNELLON:  Nor should it, Your Honor, I

6  appreciate that.

7          THE COURT:  Nor should it, right.  And I'm being

8  facetious with some of these remarks, I hope you understand

9  that.  All right.  What else, Mr. Toner?

10         MR. TONER:  Nothing further, Your Honor.

11         THE COURT:  Does anybody else want to bring anything

12 before the Court this morning?  Now, who needs to be involved?

13 Is it just the two banks that need to be involved in this?  I

14 believe that's --

15         MR. DONNELLON:  I don't see anything else.

16         THE COURT:  I mean, when I have the judge -- when I

17 tell the judge who's going to be involved and try to -- it's

18 just the two banks, right?

19         MR. LaTOUR:  Just the two banks, Your Honor, yes.

20         THE COURT:  That's what I thought, yes.  The Trustee

21 doesn't need to be involved nor any other party.

22         MR. TONER:  No, Your Honor.

23         THE COURT:  All right.  Anything else?

24         MR. TONER:  No.

25         THE COURT:  All right.  We're adjourned.

* * * * *

**C E R T I F I C A T I O N**

          I, JANET D. PERSONS, court approved transcriber,

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter, and to the best of my ability.


/s/ Janet D. Persons

JANET D. PERSONS

J&J COURT TRANSCRIBERS, INC.     DATE:  June 15, 2012