UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Bankruptcy Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE OF EASTERN LIVESTOCK CO., LLC, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. _____ |
| -vs | ) | |
| | ) | |
| JAMES EDWARD EDENS, IV AND E4 CATTLE COMPANY, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## **ADVERSARY COMPLAINT**

James A. Knauer as Chapter 11 Trustee for Eastern Livestock Co., LLC for his Complaint against James Edward Edens, IV and E4 Cattle Company, states that:

### **Jurisdiction and Parties**

1. The above-captioned adversary proceeding (the "Adversary Proceeding") arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").

2. This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

- 2 -

3. This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), (e), (f), and (h).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6. Eastern Livestock Co., LLC ("Debtor" or "ELC") was one of the largest cattle dealers in the United States. ELC was headquartered in New Albany, Indiana, with branch locations across several states. Certain petitioning creditors commenced the Chapter 11 Case on December 6, 2010, (the "Petition Date") by filing an involuntary petition for relief under the Bankruptcy Code. The Bankruptcy Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

7. James A. Knauer ("Trustee") was appointed as the Chapter 11 Trustee for ELC.

8. Defendant James Edward Edens, IV ("Edens") is an individual residing in Okolona, Mississippi. Edens was the Manager of ELC Branch 24 located in Okolona, Mississippi ("Branch 24") that reported to Thomas P. Gibson. ELC's Marion, Indiana, office was primarily responsible for processing Branch 24 transactions.

9. Defendant E4 Cattle Company, LLC ("E4") is a limited liability company organized under Mississippi law and located in Okolona, Mississippi. Edens is the owner and sole member of E4.

10. Edens also owns and operates Eden's Land Company, LLC and Okolona Farms, LLC, both companies organized under Mississippi law.

11. In addition to E4, Eden's Land Company and Okolona Farms, Edens and his companies have also been known to go by the following names and DBAs: A&E Cattle, O Cattle, Eastwood Plantation, and Edens Farm. Hereinafter, "Edens" will collectively mean and refer to Edens personally as well as his companies.

12. Edens' cattle farm and operations in Okolona are adjacent to ELC's Branch 24 location.

### Background Facts Applicable to All Counts

13. In his capacity as branch manager for ELC Branch 24, Edens bought and sold cattle on ELC's behalf. He was compensated by payment of a commission on the cattle bought and sold on ELC's account. He was also compensated by a salary for his duties as Manager of Branch 24.

14. As a branch manager, Edens was entrusted by ELC with ELC checks that he could complete and sign on ELC's behalf. These checks were referred to as "Field Checks." Field Checks were primarily used to pay cattle producers for ELC's purchase of cattle. Edens owed fiduciary obligations to ELC in this proper use of Field Checks for ELC.

15. As a branch manager, Edens was entrusted by ELC with responsibility for buying and selling cattle on behalf of ELC. Edens owed fiduciary obligations to ELC in the proper exercise of the right to buy and sell cattle on behalf of ELC. Reconciliation of ELC's records and the Branch 24 accounts in particular show approximately $3,795,043.86 worth of real cattle in the Branch 24 inventory, for which Edens was responsible, that remain unaccounted for. (Exhibit A.)

16. Edens, personally and through his companies, also bought and sold cattle for himself, on his own account. These transactions included purchases from and sales to ELC.

17. From late September 2010 through the first week of November 2010, ELC and Edens entered into multiple business transactions, whereby Edens purchased cattle from ELC and agreed to pay for such cattle. Edens received delivery of these cattle, and ELC invoiced Edens for the amounts of the purchases. These outstanding accounts receivable billed to Edens total $2,786,819.29. (Exhibit B.)

18. On November 2, 2010, Fifth Third Bank ("Fifth Third") put a hold in place on ELC's accounts with Fifth Third and began returning all checks presented for payment on ELC's checking accounts. In connection with litigation initiated by Fifth Third against ELC and others in Ohio State Court, the court appointed a Receiver for ELC. The Receiver and her staff arrived at ELC's New Albany, Indiana headquarters on November 10, 2010.

19. Following the placement of the hold on ELC's Fifth Third account and upon the specific instructions of Edens, certain cattle purchasers remitted proceeds for the purchase of ELC's cattle directly to Edens, rather than to ELC. Edens then paid certain preferred creditors of ELC. These diverted accounts receivable paid to unsecured creditors total approximately $1,240,853.04, including approximately $355,536.62 (Exhibit D) paid by ELC creditors directly to ELC vendors at Edens' specific directions. (Exhibit C.)

20. During the same time period in early November, 2010 certain unsecured creditors seized ELC's cattle from Edens' farm(s) and/or Branch 24 in Okolona. Edens facilitated and consented to the wrongful taking of the cattle. The seized cattle are worth approximately $1,761,543.52 (Exhibit E.)

21. Thomas P. ("Tommy") Gibson and Grant P. Gibson were involved in a large-scale check-kiting scheme between each of their personal bank accounts and ELC's bank account. In addition, Thomas P. Gibson, Grant P. Gibson and Michael Steven ("Steve")

- 4 -

McDonald, along with other ELC insiders, orchestrated and participated in a large-scale accounts receivable and cattle-inventory accounting scheme designed to inflate Borrowing Base lending capacity with bogus purchases and sales of non-existent cattle. Thomas P. Gibson, McDonald, Grant Gibson and Darren Brangers have pled guilty to counts of criminal syndication, engaging in organized crime, and theft.

22. On information and belief, Edens' bank account was used to support false and intentionally inflated Borrowing Base transactions, and Branch 24 and/or personal cattle inventory were part of the inventory inflation. Attached as Exhibit F, is a document found at ELC's headquarters, which appears to be instructions on how to inflate the Borrowing Base with bogus transactions in order to increase borrowing capacity. The document refers to Edens.

23. When Fifth Third placed a hold on ELC's accounts, the check-kite and inflated Borrowing Base activity necessarily stopped. The ripple effect of the hold caused accounts of some participants in the check-kite to receive a windfall, while others suffered a shortfall. On information and belief, Edens' bank account suffered a shortfall. Edens diverted ELC proceeds for cattle transactions to himself to replenish the overdraft on his account as shown by Exhibit G. The value of these diverted proceeds is $599,892.37.

### Count I - Breach of Contract

24. Edens failed to remit to ELC the unpaid account receivable balance billed to Edens, but not paid to ELC as shown by the April 10, 2012, summary attached hereto as Exhibit B, the sum of $2,786,819.29.

### Count II – Breach of Contract

25. Edens failed to remit the unpaid accounts receivable balance billed at his direction to third parties during June through early November 2010 totaling $1,648,319.88.

(Exhibit H). These amounts represent the lost value to Eastern of feed expenses which were not paid by Edens, the loss on the value of cattle sold to third party customers with whom Edens maintained a relationship and equity shortfalls on cattle financed by Edens for which ELC was not compensated.

### Count III – Conversion of ELC Accounts Receivable

26. Edens knowingly and intentionally exerted unauthorized control over amounts paid to him at his specific request by ELC account debtors when he took, endorsed and negotiated checks originally made payable to ELC but later reissued to the order of Edens at his specific direction, and, thereafter, used all or part of the money to pay certain ELC creditors selected by Edens, thereby damaging ELC in an amount equal to the converted funds.

27. Edens converted the amount received by him from ELC creditors that was diverted at his direction to Edens and paid by him to certain preferred creditors of ELC in violation of Indiana Code § 35-43-4-3, in the amount of $1,240,853.04 (Exhibit C), trebled to $3,722,559.12 under Indiana's Civil Damages for Criminal Conduct Statute, § 34-24-3-1, *et seq.*, and under statutes in other states where applicable.

### Count IV – Conversion of Live Cattle

28. Edens knowingly and intentionally exerted unauthorized control over certain live cattle belonging to ELC that Edens allowed to be taken by several unsecured creditors of ELC, thereby damaging ELC by the value of the cattle.

29. Edens converted the value of live cattle seized or picked up from ELC with Edens' consent and assistance by ELC creditors where such creditors did not hold a validly perfected first priority security interest in the cattle in violation of Indiana Code § 35-43-4-3, in the amount of $1,761,543.52 (Exhibit E), trebled to $5,284,630.56 under Indiana's Civil

- 7 -

Damages for Criminal Conduct Statute, § 34-24-3-1, *et seq.*, and under similar statutes in other states where applicable.

### Count V – Conversion of ELC Receipts

30. Edens knowingly and intentionally exerted unauthorized control over certain amounts owing by ELC account debtors but diverted by Edens for his own purposes, thereby damaging ELC by the amount of the funds diverted.

31. Edens converted the amount of ELC accounts receivable payable to ELC, but used at Edens' direction to cover the shortfall in his checking account resulting from the check-kite in violation of Indiana Code § 35-43-4-1, in the amount of $599,892.37 (Exhibit G), trebled to $1,799,677.11 under Indiana's Civil Damages for Criminal Conduct Statute, 34-24-3-1, *et seq.*, and under similar statutes in other states where applicable.

### Count VI – Liability of Bailee (Edens) for Missing Cattle

32. Edens received actual ELC cattle at Branch 24 for which he failed to account in the amount of $3,795,043.86, as shown by Exhibit A attached hereto.

### Count VII – Breach of Fiduciary Duties Owed ELC by Ed Edens

33. Based upon (1) his position of trust as Manager of Branch 24, (2) his authority to issue Field Checks on behalf of ELC, and (3) his authority to buy and sell cattle on behalf of ELC, Edens owed fiduciary obligations to ELC.

34. Without authority, and contrary to his fiduciary obligations to ELC, Edens allowed certain preferred creditors to take cattle belonging to ELC in which the creditors did not have a secured claim in the amount of $1,761,543.52. (Exhibit E.)

35. Contrary to his fiduciary obligations to ELC, Edens diverted ELC accounts receivable owed to ELC, but paid to Edens by account debtors at Edens' direction in the amount of $1,240,853.04.  (Exhibit C.)

36. Contrary to his fiduciary obligations to ELC, Edens converted certain ELC accounts receivable and used the money himself to cover the shortfall in his checking account caused by the check-kite in the amount of $599,892.37.  (Exhibit G.)

### Count VIII – Fraudulent Transfer (Bankruptcy Code)

37. To the extent Edens received money or the value of cattle under Counts II, III, IV, V, and VI, he received property for less than reasonably equivalent value that the Trustee may recover under Bankruptcy Code §§ 548 and 550.

38. Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers that were made by the debtor with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

39. Acting with actual intent to hinder, delay or defraud, Edens caused ELC account debtors to pay the sum of $1,840,745.41 (Exhibit C plus Exhibit G), to him or to others at his direction.  Additionally, Edens directed the disposition of live cattle worth $1,761,543.52 (Exhibit E) and failed to account for another $3,795,043.86 (Exhibit A) of cattle.  The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  The transfer of the account receivable checks from ELC to Edens was a secret transaction that took place outside the usual mode of business and in a manner different than ordinary methods.  Upon information and belief, the transfer was made for no consideration.  Edens acted to conceal the true nature of the cattle transactions and to hide the benefit he received from them.

- 8 -

40. Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers made if the debtor received less than reasonably equivalent value in exchange for the transfers and (i) was insolvent at the time of the transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iii) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business

41. ELC received less than reasonably equivalent value in exchange for the diverted receivable and the diverted cattle.

### Count IX – Fraudulent Transfer (Indiana)

42. To the extent Edens received money or the value of cattle under Counts II, III, IV, V and VI, he received property for less than reasonably equivalent value under I.C. § 32-18-2-15 and potentially in violation of I.C. § 32-18-2-14 if received with the intent to hinder delay or defraud creditors.

43. Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

44. Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent

- 9 -

- 10 -

value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

45.  Acting with actual intent to hinder, delay or defraud, Eden caused ELC account debtors to pay the sum of $1,840,745.41 (Exhibit C plus Exhibit G) to him or to others at his direction.  Additionally, Edens directed the disposition of live cattle worth $1,761,543.52 (Exhibit E) and failed to account for another $3,795,043.86 (Exhibit A) of cattle.  The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  The transfer of the account receivable checks from account debtors to Edens was a secret transaction that took place outside the usual mode of business and in a manner different than ordinary methods.  Upon information and belief, the transfers were made for no consideration.

46.  ELC received less than reasonably equivalent value in exchange for the account receivable checks and cattle transfers.

47.  Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid this transfer and recover the value of the account receivable checks and cattle transfers.

WHEREFORE, the Trustee requests that the Court enter judgment in the Trustee's favor and against Edens and E4, and specifically award the Trustee:

(a)  a money judgment based upon Counts I through IX above;

(b)  prejudgment interest on the amounts determined to be owed under Counts I through VII above at the appropriate statutory rate;

(c)  attorneys' fees;

(d)  punitive or treble damages where appropriate; and

(e)  all other just and appropriate relief.

- 11 -

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

/s/ *John R Burns*

*Counsel for James A. Knauer, Chapter 11 Trustee*

John R Burns (#3016-02)
111 East Wayne Street, Suite 800
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
john.burns@faegrebd.com

- and -

James M. Carr (#3128-49)
Kevin M. Toner (#11343-49)
Harmony Mappes (#27237-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
james.carr@faegrebd.com
kevin.toner@faegrebd.com
harmony.mappes@faegrebd.com