UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-93904 |
| EASTERN LIVESTOCK CO., LLC, | CHAPTER 11 |
| DEBTOR | JOINTLY ADMINISTERED |

**MOTION TO REMOVE TRUSTEE PURSUANT TO 11 U.S.C. §324**

Come Bluegrass Stockyards East, LLC, Bluegrass Stockyards, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards of Campbellsville, LLC, East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, Inc., Piedmont Livestock Company, Inc. and Alton Darnell ("Creditors"), creditors and parties in interest herein, by counsel, and respectfully request that the Court enter an order removing James A. Knauer as Chapter 11 Trustee (the "Trustee"), pursuant to 11 U.S.C. §§324 and 1104. In support of this Motion, the Creditors respectfully state as follows:

**STATEMENT OF FACTS**

**A.   Background**

1.   Eastern Livestock Co., LLC (the "Debtor") was one of the largest cattle brokerage businesses in the United States until its closure in November 2010, with its headquarters formerly located in New Albany, Indiana.

2.   Fifth Third Bank ("Fifth Third") was the Debtor's major lender and the depository bank for the Debtor's bank accounts from 2004 to present. Wells Fargo is a $10 million loan

1

participant with Fifth Third.

3.     On or about November 2, 2010, Fifth Third closed or froze the Debtor's four depository accounts, without notice to the Debtor. *See* Deposition of Timothy S. Spurlock, 84:17, June 28, 2011, Case No. A1010267 (Ohio Ct. Common Pleas). The Fifth Third loan documents had matured on October 18, 2010. Also on November 2, 2010, Fifth Third began returning "all checks drawn on [the Debtor's] accounts [at Fifth Third]," which totaled millions of dollars, as "refer to maker." Complaint, Case No. A1010267 (Ohio Ct. Common Pleas), ¶ 22. Fifth Third simultaneously collected and has retained possession of deposited funds somewhere in the range of $24 to $26 million. The exact amount is still unknown to the creditor body, as is the disposition of such funds internally within the Bank, and as between Fifth Third and Wells Fargo, although the Fifth Third Proof of Claim insinuates that the sum was applied to overdrafts and to cover selected outstanding checks written in excess of deposits prior to or after the closure of all the depository accounts.

4.     On November 9, 2010, Fifth Third commenced an emergency and an *ex parte* state court receivership action against the Debtor in the Ohio Ct. Common Pleas, Case No. A1010267 (the "Receivership Action"). The Complaint asserted large scale fraud had been perpetrated against Fifth Third. First Bank immediately moved to intervene and objected to the *ex parte* receivership, raising questions about the validity of Fifth Third's actions.

5.     On December 6, 2010 (the "Petition Date"), three petitioning creditors filed an involuntary petition for relief against the Debtor [ECF No. 1], thereby commencing this Chapter 11 bankruptcy case (the "Bankruptcy Case").

**B.      Appointment of Chapter 11 Trustee**

6.      On December 7, 2010, the petitioning creditors filed an Emergency Motion for an Order Appointing an Interim Trustee and Authorizing and Directing Interim Trustee to Operate Debtor's Business (the "Motion for Interim Trustee") [ECF No. 27]. The Motion for Interim Trustee requested that the Office of the United States Trustee ("UST") appoint either Elizabeth M. Lynch or Patrick O'Malley of the firm DSI, who had been appointed receiver in the Receivership Action and had been in place for approximately one month.

7.      On December 16, 2010, the Court entered an Order Approving the Motion for the Appointment of a Trustee (the "Order Approving Trustee") [ECF No. 77], which directed the UST to appoint a chapter 11 trustee.

8.      On December 23, 2010, the UST for Region 10 filed its Notice of Appointment and Application for Order Approving Appointment of Trustee (the "Trustee Application) [ECF No. 98], seeking to appoint James A. Knauer ("Mr. Knauer") as trustee. The Trustee Application provided in part:

> Mr. Knauer has no connection other than disclosed on the "Affidavit of Disinterest" with the debtors, creditors, any other parties in interest, their respective attorneys and accountants, the United States trustee and persons employed in the office of the United States trustee. A Verified Statement and Notice of Acceptance from Mr. Knauer is attached as Exhibit A.

[Trustee Application, p. 2]. The Application advised that the UST had conferred with counsel for several parties in interest.

9.      Mr. Knauer's Affidavit of Disinterest, dated December 23, 2010, (the "Knauer Affidavit") was filed with the Trustee Application [ECF No. 98-2]. Mr. Knauer affirmed that he had run a conflicts check on "the names of all of the persons or entities that I was able to identify

3

from the filed appearances and docket entries of the Debtor, given that no schedules have been filed and there is no list of twenty largest creditors." He did not indicate if he had spoken to anyone, received any information outside the "filed appearances and docket entries," or how he otherwise attempted to determine any possible conflicts or connections. Among other things, the Knauer Affidavit also stated that (1) while the Trustee had never personally represented Fifth Third, his law firm Kroger, Gardis and Regas, LLP ("KGR"), presently represented Fifth Third in five open cases; (ii) the Trustee had personally undertaken three matters which were adverse to Fifth Third Bank during the past twelve months; and (iii) income to KGR from Fifth Third during the prior twelve months was approximately 1% of the Firm's revenue. After disclosing these "connections" with Fifth Third, the Trustee stated that to the best of his knowledge, both he and KGR "are disinterested persons" as defined in 11 U.S.C. § 101(14). *See* Trustee's Verified Statement and Notice of Acceptance [ECF No. 98-1].

10. On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [ECF No. 102].

11. No other Affidavits or Verified Statements have ever been filed by the Trustee in relation to his appointment or his service as the Chapter 11 Trustee in this case, nor by any of his professionals. No further pleadings regarding the Trustee selection, appointment, or service in this matter have ever been filed by the UST.

## LEGAL AUTHORITIES

While this Court certainly has discretion in this matter as to the remedies to be invoked, under the facts and circumstances of this particular situation, there is unfortunately little choice other than to order the immediate removal of Mr. Knauer as Trustee. While other consequences

4

regarding fees, disgorgement, and other possible ramifications may be addressed in a timely fashion, the "threshold issues" can no longer continue to be ignored, disregarded, or downplayed. The case cannot progress from this point forward without the sanction of immediate removal, and time is of the essence due to the looming statutory deadline of December 6, 2012 for estate causes of actions to be brought, or otherwise globally resolved or consensually tolled.

### I.     Lack of Disclosure of All Connections

Federal Rule of Bankruptcy Procedure 2007.1 requires the filing of "a verified statement of any person seeking to be appointed trustee under § 1104 setting forth the person's connections with the debtor, creditors, [and] any other party in interest …." Fed. R. Bankr. P. 2007.1(c). The statement required is "in the interest of full disclosure and confidence in the appointment process and to give the court all information that may be relevant to the exercise of judicial discretion in approving the appointment of a trustee or examiner in a chapter 11 case." Fed. R. Bankr. P. 2007.1, Advisory Committee's Note.

The Rule also requires the application of the Office of the United States Trustee proposing a person selected by that Office to serve as trustee, to disclose, to the best of the UST's knowledge, all of the person's "connections" to any "parties in interest" in the case. The Rule 2007.1 full disclosure requirements coincide with 11 U.S.C. § 1104(b)(1), which statutorily mandates that a chapter 11 trustee must be "disinterested" as that term is defined in the Bankruptcy Code.

Full and complete disclosure is the cornerstone upon which the entire bankruptcy system rests. Full and complete disclosure is mandatory, broad, constant, and ongoing, all designed to protect the integrity of the process so that all parties in interest will have confidence in the

5

system. *See, e.g., United States of America vs. Gellene*, 182 F.3d 578 (7th Cir. 1999) ("The disclosure requirements [under FRBP 2014] apply to all professionals and are not discretionary. The professionals 'cannot pick and choose which connections are irrelevant or trivial.'") *Id.* at 588. Discussing its prior decision of *In re Crivello*, 134 F.3d 831 (7th Cir. 1998), the *Gellene* Court elaborated that the disclosure process is "designed to ensure that a disinterested person is chosen….This requirement goes to the heart of the integrity of the administration of the bankruptcy estate. The Code reflects Congress' concern that any person who might possess or assert an interest or have a predisposition that would reduce the value of the estate or delay its administration ought not have a professional relationship with the estate."

In *In re AFI Holding, Inc.,* 530 F.3d 832 (9th Cir. 2008), the Ninth Circuit considered a trustee's nondisclosure of a material connection where the trustee's declaration of disinterestedness failed to reveal a prior representation of an insider and did not explain the connection between insiders or their connections to the Debtor. The Court held that "a fiduciary has a duty to disclose any connections with the debtor, creditors, or any other party in interest" and that the "[f]ailure to do so, even if inadvertent, can be a relevant factor for the bankruptcy court's consideration of 'cause' for a trustee's removal. Such nondisclosure could serve as a basis for the creditors to lose confidence in the trustee, which is precisely what the court found had occurred in this case." *Id.* at 852.

This Court takes judicial notice of its own record for all of its cases. Just a few of the facts from the Court record, in this case and the Lauth case record, are described in **Exhibit A** hereto. There are more facts both inside and outside the Court's record which are available, and even more subject to pending discovery. Without belaboring the full panoply of evidence, there

6

is a glaring non-disclosure of the Trustee's ongoing and significant relationships and connections with Wells Fargo, the $10 million dollar loan participant with Fifth Third. Mr. Knauer was actively involved in a major chapter 11 and related litigation matters as counsel for Wells Fargo, which held a $87 million dollar major claim in that case, during crucial time periods in this case which have greatly impacted the entire case as it exists today.

Regardless of the circumstances of this ongoing non-disclosure, it is material, substantial, and directly relevant to critical legal and factual issues which have and continue to pervade the merits of this case and its numerous adversary proceedings. The issues involving Wells Fargo are, and always have been, directly related to any resolution of this case. The long-running and continuing non-disclosure of both the Trustee's personal and his Firm's multiple representations of Wells Fargo, the $10 million dollar loan participant in the $32.5 million dollar Fifth Third loan, warrants immediate removal. *See, e.g., In re Crivello*, 134 F.3d (7th Cir. 1998) (failure to disclose, in and of itself, constitutes sufficient grounds to revoke employment, as well as other consequences. Any willful failures of disclosure require the severest of sanctions). Other consequences in this case may be addressed now or at a later time, and must be expressly preserved.

## II. Lack of Disinterestedness

The Bankruptcy Code defines "disinterested person" as a person that …

> "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

11 U.S.C. § 101(14)(c). The "catch-all" provision of § 101(14)(C) is "sufficiently broad" to create a lack of disinterestedness for all persons "with an 'interest or relationship that would even

7

faintly color the independence and impartial attitude required by the Code.'" *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998).

Case law and analysis interpreting the "disinterestedness" of professionals is applicable to determinations of "disinterestedness" regarding trustees. *In re Micro-Time Management Systems,* 102 B.R. 602 (Bankr. E.D. Mich. 1989); *see also In re AFI Holding Inc.*, 530 F.3d 832, 845 ( 9th Cir. 2002) (noting § 327(a) requirement that professionals be "disinterested persons" and stating, "It would be an odd rule, indeed, if a trustee's professional must be disinterested, while the trustee need not.").

The determination of whether any professional or any trustee is "disinterested" does not end upon their appointment. Any new connections that a professional or a trustee establishes, or discovers, after appointment, and at any time as a case progresses, must be brought to the immediate attention of the Court and the United States Trustee through the filing of supplemental disclosures. This is so the ongoing "disinterestedness" mandatory statutory obligation can continue to be monitored. *See, e.g.*, *In re Bennett Funding Group, Inc.*, 226 B.R. 331, 334 (Bankr. N.D.N.Y. 1998) (in considering disinterestedness of chapter 11 trustee, "it is critical to the integrity of the bankruptcy process that disclosure of material facts which relate to disinterestedness be timely and thorough."); *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (S.D.N.Y. 1998) ("disinterestedness" applies at time of retention and throughout the case). Failure to reveal connections that are later determined to have rendered the trustee not "disinterested" can not only result in removal, but also lead to denial and disgorgement of compensation. *In re Big Rivers Electric Corp.*, 355 F.3d 415 (6th Cir. 2004) (all fees denied to examiner who failed to disclose connections to creditors).

Of course, at the heart of the requirement that a chapter 11 trustee (or a debtor in possession) be a "disinterested person" are the fiduciary duties owed by the trustee to all parties in interest involved in the case. *See, e.g., Commodity Futures Trading Commission v. Weintraub*, 105 S. Ct. 1986 (1985) (fiduciary duty of trustee runs to shareholders as well as creditors); *In re Big Rivers Electric Corp.*, *supra* (trustee has obligations of disinterestedness and prohibition against any materially adverse interest to any party to the bankruptcy for any reason. Congress plainly compelled courts to construe these obligations against a backdrop of the equitable duties that apply to positions of trust. Any agreement with a single creditor that links compensation to the creditor's recovery qualifies as an "interest" in violation of the duty to remain disinterested, because it creates risks that examiner will favor one creditor at the expense of other creditors.); *In re Bowman,* 181 B.R. 836 (Bankr. D. Md. 1995) (trustee's fiduciary duties extend to all parties interested in the bankruptcy estate. Fiduciary duties include duty of impartiality. Fiduciaries must make informed decisions and use reasonable diligence in gathering information and considering material information. Fiduciaries have duties of loyalty to avoid self-dealing, conflicts of interest, and appearances of impropriety). The cases go on and on, and are "bankruptcy 101" subject matter.

Just as non-disclosure alone is grounds for removal of a trustee, so is a lack of disinterestedness alone grounds for immediate removal, and in fact, is statutorily mandated under Section 1104. *See, e.g., In re AFI Holdings, Inc., supra* (lack of disinterestedness, including an appearance of impropriety, or the trustee's failure to make disclosures of connections, are factors which may warrant removal under Section 324 within a totality-of-circumstances approach).

9

Obviously in this case, had the true facts been known, this Trustee would never have been permitted to serve, and this entire case may have been vastly different from where it is today.

As a fiduciary to all the creditors and all the parties in interest of Eastern Livestock, the Trustee "must be free from any hint of bias." *See Id.* at 850. Mr. Knauer is not "free from any hint of bias." The Trustee's previous (and for all we know still ongoing) undisclosed representations of Wells Fargo raise at least the "hint of bias" and at least the "appearance of impropriety" and at least the "faint color" of a relationship that might impact the required impartiality. The very fact of the ongoing non-disclosure itself creates the full appearance of a lack of disinterestedness.

The choices made involving disclosures, combined with the numerous oddities in the case, combined with the choices made on the roles and services of the Trustee's general counsel vs. his conflicts counsel, combined with the Trustee's utter unwillingness and outright express refusal to have any "global" discussions about anything at all, combined with the one-sided and factually devoid "independent" report, combined with where this case still has to go to be resolved (consensually, through mandatory mediation, or otherwise), now put the situation beyond any question whatsoever. These are all matters which "tend to create disharmony and lack of confidence among the creditor body." *AFI Holdings* at 851, and as found throughout this case. Just as in *AFI Holdings*, removal is the only possible remedy, because nothing the Trustee can do or say at this point will ever be capable of remedying the situation, and in fact, will have ongoing negative implications to any future proceedings. In short, this Trustee has excluded all his constituents from any meaningful "participation in the process" for over a year and a half, and last-ditch efforts by him at this stage will not work. His ongoing lack of

disinterestedness and his ongoing non-disclosures are directly relevant to the future issues in the case, the adversaries, and to any ultimate resolutions, agreed or otherwise, in these proceedings.

As stated in the *Micro-Time* decision, *supra:*

> The question is not necessarily whether a conflict exists … but whether a potential conflict, or the perception of one, renders the [professional's] interest materially adverse to the estate or the creditors. Therefore, "[i]t is incumbent upon the professional to disclose to the court any material fact which may relate to disinterestedness."

*Id.* at 606 (internal citations omitted). This Court does not need to get into deciding whether any "actual conflict" or "potential conflict" exists. The perception alone is what matters. The perception in this case has been repeatedly expressed by many other constituents, but all material facts have never even been disclosed. It must end now.

The disharmony created by the concerns over, and lack of confidence in, the Trustee's impartiality have run rampant in this case for long enough. The ongoing choices made over very simple disclosures and the lack of disinterestedness, which have been shown time and time again in many ways, have cost not only the Estate (subject to disgorgement) but all the creditors hundreds of thousands of extra dollars in unnecessary time, costs and fees, and of equal importance, if not more importance to many courts, have done significant damage to the integrity of the system. This case was known from the beginning to be of the utmost and critical importance to the entire national livestock industry, and to involve hundreds of small "mom and pop" creditors and livestock sellers, thus deserving of the utmost of care in the process. This case is a perfect law-school example of the principles addressed by courts on these fundamental points. The ongoing lack of disclosures combined with the appearance of impropriety disqualify this particular Trustee. Other consequences, which are certainly clearly laid out in controlling

11

case law, may be addressed at a later time, and should be ordered to be reserved for further orders of the Court.

WHEREFORE, the Creditors respectfully request that the Court enter an order (i) removing the Trustee; (ii) expressly preserving and reserving all parties rights' in relation to any further remedies; and (iii) for such further relief as the Court deems appropriate.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
ldelcotto@dlgfirm.com
COUNSEL FOR CREDITORS

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | |
|---|---|
| David L. Abt | davidabt@mwt.net |
| Amelia Martin Adams | aadams@dlgfirm.com |
| John W. Ames | james@bgdlegal.com |
| Jerald I. Ancel | jancel@taftlaw.com; krussell@taftlaw.com |
| | ecfclerk@taftlaw.com |
| T. Kent Barber | kbarber@dlgfirm.com;dlgecf@dlgfirm.com |
| | dlgecfs@gmail.com |
| Robert A. Bell | rabell@vorys.com |
| C. R. Bowles, Jr. | cbowles@bgdlegal.com |
| Lisa Koch Bryant | courtmail@fbhlaw.com |
| Steven A. Brehm | sbrehm@bgdlegal.com |
| Kent A. Britt | kabritt@vorys.com |

12

| | |
|---|---|
| James M. Carr | jim.carr@faegrebd.com |
| John R. Carr, III | jrciii@acs-law.com; sfinnerty@acs-law.com |
| Deborah Caruso | dcaruso@daleeke.com; lharves@daleeke.com |
| | mthomas@daleeke.com |
| Bret S. Clement | bclement@acs-law.com; sfinnerty@acs-law.com |
| Jason W. Cottrell | jwc@stuartlaw.com |
| Kirk Crutcher | kcrutcher@mcs-law.com;jparson@mcs-law.com |
| | cmarshall@mcs-aw.com |
| Laura Day DelCotto | ldelcotto@dlgfirm.com; dlgecf@dlgfirm.com |
| | dlgecfs@gmail.com |
| Dustin R. DeNeal | dustin.deneal@faegrebd.com |
| | Patricia.moffit@bakerd.com |
| David Alan Domina | dad@dominalaw.com; KKW@dominalaw.com |
| | efiling@dominalaw.com |
| Daniel J. Donnellon | ddonnellon@ficlaw.com; knorwich@ficlaw.com |
| Jesse Cook-Dubin | jcookdubin@vorys.com; vdarmstrong@vorys.com |
| Trevor L. Earl | tearl@rwsvlaw.com |
| Shawna M. Eikenberry | shawna.eikenberry@faegrebd.com |
| Jeffrey R. Erler | jeffe@bellnunnally.com |
| Robert Hughes Foree | robertforee@bellsouth.net |
| Sandra D. Freeburger | sfreeburger@dsf-atty.com; smattingly@dsf-atty.com |
| Darla J. Gabbitas | Darla.gabbitas@moyewhite.com |
| Melissa S. Giberson | msgiberson@vorys.com |
| Jeffrey J. Graham | jgraham@taftlaw.com |
| Terry E. Hall | terry.hall@faegrebd.com |
| John David Hoover | jdhoover@hooverhull.com |
| John Huffaker | john.huffaker@sprouselaw.com |
| | lynn.acton@sprouselaw.com |
| | rhonda.rogers@sprouselaw.com |
| Jeffrey L. Hunter | Jeff.Hunter@usdoj.com |
| Jay Jaffee | jay.jaffe@faegrebd.com |
| James Bryan Johnston | bjtexas59@hotmail.com; bryan@ebs-law.net |
| Todd J. Johnston | tjohnston@mcjllp.com |
| David Jones | david.jones@sprouselaw.com |
| Jill Z. Julian | Jill.Julian@usdoj.com |
| Edward M. King | tking@fbtlaw.com; dgioffe@fbtlaw.com |
| James A. Knauer | jak@kgrlaw.com; hns@kgrlaw.com |
| Erick P. Knoblock | eknoblock@daleeke.com |
| Theodore A. Konstantinopoulos | ndohbky@jbandr.com |
| David A. Laird | david.laird@moyewhite.com;lisa.oliver@moyewhite.com |
| | deanne.stoneking@moyewhite.com |
| Randall D. LaTour | rdlatour@vorys.com; khedwards@vorys.com |
| David L. LeBas | dlebas@namanhowell.com; koswald@namanhowell.com |
| Elliott D. Levin | robin@rubin-levin.net;edl@trustesolutions.com; |

| | |
|---|---|
| | atty_edl@trustesolutions.com |
| Kim Martin Lewis | kim.lewis@dinslaw.com;lisa.geeding@dinslaw.com |
| | patrick.burns@dinslaw.com |
| James B. Lind | jblind@vorys.com |
| Karen L. Lobring | lobring@msn.com |
| John Hunt Lovell | john@lovell-law.net; sabrina@lovell-law.net |
| Harmony A. Mappes | harmony.mappes@faegrebd.com |
| John Frederick Massouh | john.massouh@sprouselaw.com |
| Michael W. McClain | mike@kentuckytrial.com |
| Kelly Greene McConnell | lisahughes@givenspursley.com |
| James E. McGhee, III | mcghee@derbycitylaw.com |
| William Robert Meyer, II | rmeyer@stites.com |
| Christie A. Moore | cmoore@bgdlegal.com |
| Allen Morris | amorris@stites.com; dgoodman@stites.com |
| Judy Hamilton Morse | judy.morse@crowedunlevy.com; ecf@crowedunlevy.com |
| | donna.hinkle@crowedunlevy.com; |
| | karol.brown@crowedunlevy.com |
| Walter Scott Newbern | wsnewbern@msn.com |
| Matthew J. Ochs | matt.ochs@moyewhite.com; kim.maynes@moyewhite.com |
| Shiv G. O'Neill | shiv.oneill@faegrebd.com |
| Michael W. Oyler, Esq. | moyler@rwsvlaw.com |
| Ross A. Plourde | ross.plourde@mcafeetaft.com |
| | erin.clogston@mcafeetaft.com |
| Wendy W. Ponader | wendy.ponader@faegrebd.com |
| | Sarah.henderson@bakerd.com |
| Timothy T. Pridmore | tpridmore@mcjllp.com; lskibell@mcjllp.com |
| Anthony Raluy | traluy@fbhlaw.net |
| Eric W. Richardson | ewrichardson@vorys.com |
| Susan K. Roberts | skr@stuartlaw.com; lbt@stuartlaw.com |
| Mark A. Robinson | mrobinson@vhrlaw.com; dalbers@vhrlaw.com |
| Jeremy S. Rogers | Jeremy.Rogers@dinslaw.com; Joyce.jenkins@dinslaw.com |
| John M. Rogers | johnr@rubin-levin.net; susan@rubin-levin.net |
| James E. Rossow, Jr | jim@rubin-levin.net |
| Ashley S. Rusher, Esq. | asr@blancolaw.com |
| Thomas C. Scherer, Esq. | tscherer@binghammchale.com |
| Ivana B. Shallcross | ishallcross@bgdlegal.com |
| James E. Smith | jsmith@smithakins.com |
| William E. Smith, III | wsmith@k-glaw.com |
| Robert K. Stanley | robert.stanley@faegrebd.com |
| Meredith R. Thomas | mthomas@daleeke.com; kmark@daleeke.com |
| John M. Thompson | john.thompson@crowedunlevy.com |
| | jody.moore@crowedunlevy.com |
| | donna.hinkle@crowedunlevy.com |
| Kevin Toner | kevin.toner@faegrebd.com |

| | |
|---|---|
| Christopher M. Trapp | ctrapp@rubin-levin.net |
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Stephen A. Weigand | sweigand@ficlaw.com |
| Charles R. Wharton | Charles.R.Wharton@usdoj.gov |
| Sean T. White | swhite@hooverhull.com |
| Jessica E. Yates | jyates@swlaw.com; edufficy@swlaw.com |
| James T. Young | james@rubin-levin.net; ATTY_JTY@trusteesolutions.com |
| | kim@rubin-levin.com; lemerson@rubin-levin.com |

    I further certify that on July 10, 2012, a copy of the foregoing pleading was mailed by first-class U.S. mail, postage prepaid and properly addressed, to the following:

Bovine Medical Associates, LLC
1500 Soper Road
Carlisle, KY 40311

National Cattlemen's Beef Association
c/o Alice Devine
Devine & Donley, LLC
534 S Ks Avenue, Ste 1420
Topeka, KS 66603

/s/ Laura Day DelCotto, Esq.
COUNSEL FOR CREDITORS

Z:\Clients\ELC-Gibson\Bankr 10-93904 Eastern Livestock\Pleadings\Remove Trustee\Remove Trustee Mot 20120710 FV.doc

15

**EXHIBIT A**
**PARTIAL FACT CHRONOLOGY FROM COURT RECORD**

| DATE | ECF NO. | PLEADING | STATEMENTS |
|---|---|---|---|
| 12/06/10 | 1[1] | Involuntary Petition | |
| 12/07/10 | 27 | Petitioning Creditors Emergency Motion to Appoint Trustee | |
| 12/07/10 | Lauth[2] 1604 | Minute Orders from 12/7/10 continued hearings | Continued hearing of Wells Fargo and Wachovia Borrowers to approve Term Sheet with Wells Fargo Bank; Disclosure Statement hearing continued to February 9, 2011; Wells Fargo Bank motion for relief from stay or alternatively to dismiss cases continued to February 9, 2011 |
| 12/16/10 | 77 | Order Directing Trustee Appointment | |
| 12/21/10 | Lauth 1643 | Joint Motion to Continue Hearings by Debtors and Wells Fargo | ECF signature of James A. Knauer, Co-Counsel for Wells Fargo Bank, N.A. |
| 12/23/10 | 98 | UST Application to Appoint J. Knauer as Trustee | |
| 12/23/10 | 98-1 | Verified Knauer Statement | |
| 12/23/10 | 98-2 | Knauer Affidavit | |
| 12/27/10 | 102 | Order Approving Appointment of Knauer as Trustee | |
| 12/28/10 | 523-1 (pg. 96 of 121) | DSI First Interim Fee Application | "Telephone conference call with J. Knauer, ELC Trustee, J. Bosco of Fifth Third and F. O'Connor, R. Yandree, E. Whitfield, J. Stewart of Wells Fargo regarding case update and introduction of J. Knauer,"   .50 |
| 12/28/10 | 520-1 (pg. 24 of 59) | B&D First Interim Fee Application | "Draft letter to obtain consent from Wells Fargo regarding loan participant with Fifth Third and coordinate conflict waiver," 2.0; "Telephone call with J. Knauer regarding Wells Fargo's role in case," .30; "Coordinate obtaining consent from Wells Fargo for B&D engagement," 1.60 |
| 12/30/10 | 113 | Trustee Application to Employ B&D | "No actual conflict of interest exists with respect to B&D's proposed representation of the Trustee and B&D's representation of any other clients" |
| 12/30/10 | 114 | Affidavit of T. Hall | Description of limitations on engagement regarding Fifth Third |

---

[1] All ECF numbers are for Eastern Livestock docket, Case No. 10-93904, unless noted.

[2] In re Lauth Investment Properties, LLC, et al., Case No. 09-06065 (jointly administered), filed May 1, 2009.

**EXHIBIT A**

**PARTIAL FACT CHRONOLOGY FROM COURT RECORD**

| DATE | ECF NO. | PLEADING | STATEMENTS |
|---|---|---|---|
| 01/10/11 | 181 | First Bank Objection to Employment of B&D with Exhibits | |
| 01/18/11 | 219 | Trustee Application to Employ Hoover Hull | Representations re: scope of engagement. "At this point in time, the Trustee has no reason to believe that there is any dispute or actual conflict of interest between the Trustee and Fifth Third …" |
| 01/24/11 | 235 | First Amended Affidavit of Terry Hall | Additional representations regarding limits on engagement regarding Fifth Third |
| 01/27/11 | 241 | First Bank Withdrawal of Objection to Trustee's Application to Employ Baker & Daniels | |
| 02/01/11 | 248 | Order Granting Application to Employ Baker & Daniels | |
| 02/09/11 | 259 | Trustee's Motion to Pay DSI and Dinsmore for Post Petition Attorney and Receiver Fees with Exhibits | |
| 02/09/11 | 260 | DSI and Dinsmore Application for Prepetition Attorney and Receiver Fees with Exhibits | |
| 02/10/11 | 267 | Order Employing Hoover Hull | |
| 02/11/11 | 271 | Trustee's Motion Regarding Cash Collateral Use and to Approve Borrowing | Extensive agreements between Estate and Fifth Third Bank, and proposed allowance of Fifth Third claim |
| 02/18/11 | 525-1 | Trustee's First Interim Fee Application | "Lengthy conference call with Hoover Hull and Michael Herr, former 5th Third employee,"   1.0 |
| 02/28/11 | Lauth 1736 | Debtor's Motion for Entry of Order Approving Global Settlement Between Debtors, Wells Fargo Bank and Certain Guarantors | "After many months of active negotiations, the Debtors and Wells Fargo have entered into a confidential Term Sheet …" "Debtor's negotiations with Wells Fargo stretch for more than a year … including "re-commenced negotiations" and "several months of mediation" |
| 02/28/11 | Lauth 1737 | Debtor's Motion to File Confidential Settlement Term Sheet Under Seal | After "well over a year" of "active confidential negotiations," Debtor and Wells Fargo "have finally reached an agreement" |

**EXHIBIT A**

**PARTIAL FACT CHRONOLOGY FROM COURT RECORD**

| DATE | ECF NO. | PLEADING | STATEMENTS |
|---|---|---|---|
| 03/02/11 | 306 | Trustee's Notice of Submission of Revised Proposed Cash Collateral Order | |
| 03/08/11 | 319 | Superior Objection to Cash Collateral Order | |
| 03/08/11 | 324 | First Bank Objection to Cash Collateral Order | |
| 03/08/11 | 326, 327, 328 | Additional Objections to Cash Collateral Order | |
| 03/10/11 | 340 | Trustee's Response to Cash Collateral Objections | "None of the objectors has indicated any legal or factual basis for disallowing the Fifth Third POC."  None of objectors are "creditors." |
| 03/10/11 | 349 | Fifth Third Response in Support of Cash Collateral Order | |
| 03/11/11 | 353 | Trustee's Amended Response to Cash Collateral Objections | |
| 03/11/11 | Lauth 1760 | Certificate of No Objection to Wells Fargo Term Sheet | |
| 03/11/11 | Lauth 1761 | Order Authorizing Wells Fargo Term Sheet to be filed under seal, with copies to Court, Court Clerk, U.S. Trustee and Wells Fargo only | |
| 03/14/11 | Lauth 1768 and 1769 | Debtors' Second Amended Disclosure Statement and Second Amended Joint Plan | |
| 03/18/11 | 400 | Cash Collateral Order | |
| 03/22/11 | 406 | Trustee's Motion to Extend Plan Exclusivity | Case is very complex and more time for Trustee to have exclusivity is warranted |
| 04/19/11 | Lauth 1871 | Findings of Fact and Conclusions of Law Approving Confidential Settlement Agreement with Wells Fargo | |
| 05/13/11 | Lauth 1988 | Response of Wells Fargo to Second Amended Joint Plan of Reorganization | ECF signature of James A. Knauer, Co-Counsel for Wells Fargo Bank, N.A. |

**EXHIBIT A**

**PARTIAL FACT CHRONOLOGY FROM COURT RECORD**

| DATE | ECF NO. | PLEADING | STATEMENTS |
|---|---|---|---|
|  |  | All Fee applications with exhibits are further evidence | Various time entries |