UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, et al., | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**BRIEF IN SUPPORT OF MOTION TO QUASH OR MODIFY THIRD AMENDED NOTICE OF DEPOSITION OF SEAN WHITE AND SUBPOENA *DUCES TECUM***

Hoover Hull LLP ("Special Counsel" or "Hoover Hull"), Special Counsel for James A. Knauer, Trustee of Eastern Livestock Co., LLC ("Eastern Livestock") pursuant to Rule 45 of the Federal Rules of Civil Procedure made applicable hereto by Rule 9016 of the Federal Rules of Bankruptcy Procedure, respectfully moves the Court for a protective order relating to the Third Amended Notice of Deposition of Sean White and Subpoena *Duces Tecum* filed by Superior Livestock Auction, Inc. ("Superior") and to quash or modify the Subpoena *Duces Tecum*. (A copy of which is attached hereto as **Exhibit** 1).

The Subpoena is improper for the following reasons. First, Mr. White's deposition is unnecessary, as any relevant, non-privileged information Mr. White might possess, if any, may be discovered from a variety of sources, including the transcripts and documents posted on the Trustee's online shared repository, or through alternative means, such as interrogatories or the deposition of the Trustee which Superior is in the process of taking. Second, the Subpoena almost exclusively seeks information protected from discovery via the work product doctrine and/or attorney/client privilege. As a result, the Court should enter an order quashing or modifying Superior's subpoena to Mr. White.

**FACTUAL BACKGROUND**

On July 2, 2012, less than an hour after the Court denied Superior's Motion for Expedited Hearing on its Motion to Strike the Trustee's Report, Superior, for the first time, requested dates on which Mr. White would be available for deposition. On July 5, 2012, Superior filed a Subpoena directing Special Counsel to appear for a deposition on July 23, 2012 at Rubin & Levin's offices. On July 17, 2012, Superior filed an Amended Subpoena directing Mr. White to appear for a deposition on July 24, 2012 at Rubin & Levin's offices. On July 19, 2012, Superior filed a Second Amended Subpoena directing Mr. White to appear for a deposition on August 3, 2012 at Rubin & Levin's offices. On July 30, 2012, Superior filed a Third Amended Subpoena directing Mr. White to appear for a deposition on August 1, 2012 at the offices of Faegre Baker & Daniels, LLP.

Pursuant to the Subpoena *Duces Tecum*, Mr. White and his counsel are requested to bring to the deposition each of the following to make available for inspection and copying:

> A. All drafts, memoranda, spreadsheets, correspondence, e-mails or other writings in your possession custody or control created by you, the Trustee, counsel for the Trustee, DSI or any representatives of such parties which relate to, are identified in or described in the *Report of the Trustee, James A. Knauer Regarding Investigation and Analysis of Potential Claims Against Fifth Third Bank* ("Report") or any draft thereof which relate directly or indirectly to (1) causes of actions against Fifth Third; or (2) the claim filed by Fifth Third in the Eastern Livestock bankruptcy case.

> B. The analysis prepared by DSI which is referenced in either the Trustee's Report and/or the *Comments and Adoption by Hoover Hull LLP of Report of the Trustee, James A. Knauer, Regarding Investigation and Analysis of Potential Claims Against Fifth Third Bank* ("Comments") filed by Hoover Hull, and all drafts thereof and supporting documentation relating thereto.

> C. All timesheets, statements, or other billing documentation relating to or evidencing work performed by you or your firm relating to the Trustee's Report and/or matters described or identified therein.

  D. All written communications in your possession custody or control, including but not limited to letters and e-mails, relating to the Trustee's Report or any draft thereof and/or any matter described therein.

  E. All documents and writings in your custody, possession or control relating to the settlement or settlement negotiations between the Trustee and any of his representations, Fifth Third Bank and any of its representatives, or Wells Fargo Bank and any of its representatives referenced in the Report.

  F. All documents, including but not limited to electronic documents, which are in your possession custody or control, relating to Eastern Livestock bankruptcy estate assets or projected or estimated recoveries which were provided at any time by you, the Trustee, or any representative of the Trustee to Fifth Third Bank, Wells Fargo, or any of their representatives.

  G. All writings, documents, and electronic data or information in your possession custody or control received by you, the Trustee, or any representative of the Trustee from Fifth Third Bank and/or Wells Fargo in response to or in connection with any formal or informal discovery request Or subpoena which have not been posted to the Trustee's repository in the Eastern Livestock Case.

  H. All notes, correspondence, memoranda, documents or electronic data or information pertaining to, describing, or otherwise relating to former Fifth Third employee Michael Herr and any discussions or communications with Michael Herr involving you, the Trustee, or any representative of the Trustee.

*See* Exhibit 1.

  Pursuant to S.D.Ind.L.R. 37.1 made applicable hereto by S.D.Ind.B-9014-1, on July 18 and 19, 2012, John Hoover had a conference call with John Rogers, Dan Donnellon and Laura Day Delcotto, counsel for Superior, First Bank & Trust and the Blue Grass entities respectively, to attempt to resolve Superior's request to depose Special Counsel and the Subpoena but the parties were unable to resolve this dispute. *See also* July 9, 2012 letter from Special Counsel to Mr. Rogers; Mr. Rogers' July 12 letter to Special Counsel and Special Counsel's July 16, 2012 letter to Mr. Rogers which are attached hereto as **Exhibits 2, 3** and **4**.

**ARGUMENT**

A. **The Trustee's Report was rendered moot by the filing of the plan and disclosure statement, and therefore the deposition and document requests are pointless and wasteful.**

The Trustee recently filed a Chapter 11 plan and lengthy disclosure statement. *See* Doc. Nos. 1255 & 1256, Case No. 10-93904. The Trustee's Report Regarding Investigation and Analysis of Potential Claims Against Fifth Third Bank (the "Report") is now of little import in light of the plan and disclosure statement. The proper focus and the critical matters at issue are whether the plan (which incorporates a proposed settlement with Fifth Third) should be confirmed and whether the disclosure statement contains adequate information. The disclosure statement hearing has been set for September 4, 2012. (Doc. No. 1261.) Superior and others have filed motions to continue the hearing. The Estate should not be forced to expend its limited resources on this deposition and the resolution of extraneous issues such as whether it was more appropriate for the Trustee or his Special Counsel to report on the investigation to the Court. Superior's demands for far reaching, time consuming, and extraordinarily expensive document productions on such matters are unduly burdensome and far afield from what is important to the true creditors of this Estate.

Accordingly, Special Counsel respectfully requests a Protective Order eliminating altogether or, at a minimum, significantly narrowing the scope of the inquiry of the requested deposition of Mr. White and the Subpoena.

B. **The Subpoena seeks confidential documents and testimony that are protected from discovery.**

Superior's Subpoena and, likewise, the bulk of testimony Special Counsel anticipates Superior will seek to elicit during Mr. White's deposition are aimed at the legal analysis by the Trustee and his professionals and support for the Trustee's legal and professional opinions about

4

whether to litigate or settle the Estate's claims against Fifth Third Bank.  Such matters are core work product and also involve information protected by the attorney-client privilege.[1]  Superior also seeks budget information concerning the Trustee's claims assessments despite this Court's long-standing protective order.  *Compare* Subpoena ¶ D, p. 2 *with* Financing Order ¶25, p. 20 (Doc. 400).

According to Superior, the apparent impetus for the deposition of Mr. White and the Subpoena is the Trustee's Report and the Comments and Adoption by Hoover Hull LLP of the Report (the "Hoover Hull Comments") and the Motion to Strike the Report and the Objections thereto.  The Court has set August 13 as the deadline for the Trustee to brief these issues in advance of the August 20 omnibus hearing.  The Trustee and his counsel will provide briefs and will address at the hearing the points raised in the objections and motions to strike the Report.  This deposition, however, adds nothing to the Court's resolution of whether Faegre Baker Daniels ("FaegreBD") appropriately advised the Trustee or his Special Counsel in connection with the investigation or preparation of his Report.  Superior's attempts to obtain privileged information and work product in advance of the Trustee's briefing deadline is extraordinary and inappropriate.

Superior's discovery maneuver is akin to asking for all documents supporting or relating to an opponent's brief or legal position.  The requests for and inquiries about all of the lawyers' materials relating to the Report or to the Hoover Hull Comments invariably and inappropriately seek work product and privileged material.  The underlying factual documents have already been

---

[1] The attorney client privilege "protects confidential communications made by a client to his lawyer where legal advice [was] sought from a professional legal advisor in his capacity as such."  *See e.g.*, *Phillips v. Indianapolis Life Ins. Co.*, 2009 WL 1564384 *2 (S. D. Ind. June 3, 2009) (*quoting Long v. Anderson Univ.,* 204 F.R.D. 129, 134 (S.D. Ind. 2001) (citations omitted)).  The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *Phillips*, 2009 WL 1564384 at *2 (*quoting* Fed. R. Civ. Pro. 26(b)(3)(A), (B)).

5

made available on the Trustee's online discovery repository. But Superior is not pursuing any narrowly targeted requests for some missing facts. Instead, Superior appears determined to explore in depth the thinking of the Trustee and his counsel with respect to the preparation of the Report,[2] and continues to attempt to engage in contentious motion practice on that basis. Thus, in every practical respect Superior is making direct requests for the Trustee's and his counsel's notes and litigation strategy. Such confidential material is protected from discovery. *See, e.g.*, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir.1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research.... We believe [counsel's] selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case."); *Amax Coal Co. v. Adams*, 597 N.E.2d 350, 355 (Ind. Ct. App. 1992) ("The requests at issue here ask [the responding party], obviously through its attorneys, to select from all the documents properly discoverable in this case those which [the responding party's] attorneys have determined contain, discuss, or relate to the various pleading responses it advanced on [their client's] behalf. Clearly, the selection process the group requests is inextricably interwoven and an inseparable part of the mental impressions, conclusions, opinions, [and] legal theories of [ ] attorneys which T.R. 26(B)(3) mandates we protect from forced disclosure.").

The case of *DeHart v. Enos*, 206 P.R. 85 (M.D. Pa. 1997) is instructive. In *DeHart*, creditors filed a motion to compel production of legal memorandum prepared by special counsel

---

[2] *See, e.g.*, Subpoena ¶ A, p. 1 (demanding) "All drafts, memoranda, spreadsheets, correspondence, e-mails or other writings in your possession, custody or control created by you, the Trustee, counsel for the Trustee, DSI or any representatives of such parties which relate to, are identified in or described in the *Report of the Trustee, James A. Knauer Regarding Investigation and Analysis of Potential Claims Against Fifth Third Bank* ("Report" or any draft thereof which relate directly or indirectly to (1) causes of actions against Fifth Third; or (2) the claim filed by Fifth Third in the Eastern Livestock bankruptcy case".

6

for the chapter 7 trustee setting forth counsel's opinion regarding the status of a certain IRS claim in the estate. The bankruptcy court denied the creditors' motion to compel production of the memorandum because the attorney/client privilege applied to the memorandum and no exception to the privilege required its disclosure. Like the memorandum in *DeHart*, the documents requested by Superior in its Subpoena *Duces Tecum* are protected by the attorney/client privilege and/or the attorney work product. *See* Exhibit 1.

The Court has already made clear in this case that certain documents sought by Superior are not discoverable. Many of the documents responsive to request E, for instance, relate to discussions with Fifth Third regarding settlement negotiations and estimated recoveries. These materials are inadmissible pursuant to Fed. R. Evid. 408. Many, if not all, of these discussions expressly and implicitly relate to budget issues. In the Financing Order, however, the Court ordered that "all subsequent Budgets submitted by the Trustee to Fifth Third for approval are hereby protected from disclosure to any person (other than the Trustee and his professionals, Fifth Third and its authorized employees, representatives and professionals and the United States Trustee) or discovery by any third parties from the Trustee or Fifth Third without a further authorizing order of this Court." *See* Financing Order, ¶ 25 (Doc. No. 400, Case No. 10-93904).

Therefore, Special Counsel requests a Protective Order foreclosing the above-described avenue of discovery—whether documentary or testimonial—including inquiry into any drafts, supporting documents, expert analysis, underlying mental impressions of counsel or the Trustee, estimations of recoveries, and any other information implicating the Trustee's strategy, legal analysis, or request for legal advice in any way pertaining to this Chapter 11 case. *See* Exhibit 1, categories A, B, C, D, E, F, and H. The underlying factual documentation has been made

7

available, and the Trustee's position, analysis, and legal authority have been outlined in his Report and incorporated into the Disclosure Statement. Superior is entitled to nothing more.

### C. Superior's attempt to depose counsel for the Trustee is unwarranted and improper.

This Court has found that when a party seeks to depose opposing counsel and obtain documents through a related subpoena duces tecum, "[r]arely will such discovery be appropriate." *Irving Materials, Inc. v. Zurich Am. Ins. Co.*, 2007 WL 4616917, *6 (S.D. Ind. 2007). Such discovery poses a number of serious dangers and concerns because (1) potential disclosure of attorney work product and privileged attorney-client communications disrupts the effective operation of the adversarial system; (2) depositions of opposing counsel present a unique opportunity for harassment; (3) the time involved in preparing for and undergoing counsel depositions disrupts preparation of the parties' cases and may decrease the quality of representation; (4) counsel depositions have a higher potential to spawn litigation over collateral issues such as privilege, immunity, and harassment, that impose additional delays and burdens on the parties and the court; (5) such depositions could lead to disqualification of counsel; and (6) such depositions could have a chilling effect on truthfulness in attorney-client communications. *Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 381 (S.D. Ind. 1994).

These concerns led the Eighth Circuit Court of Appeals to develop the *Shelton* test, which requires a party seeking opposing counsel's deposition to establish that: "(1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir. 1986). While the Seventh Circuit has not adopted the *Shelton* test, this Court has agreed that "the unique character of counsel depositions requires special attention by the courts." *Kaiser*, 161 F.R.D. at 382. Accordingly,

8

this Court has imposed special requirements on parties seeking opposing counsel's deposition.

Parties seeking to depose opposing counsel must "make a preliminary showing of relevance." *Kaiser*, 161 F.R.D. at 382.  This Court has stressed there is no "open season on deposing opposing counsel" in this district and that "the Court will be vigilant in utilizing all available sanctions" if it becomes "apparent that the deponent has so little relevant non-privileged information that the deposition was no more than a waste of everyone's time." *Cook Inc. v. C R Bard Inc.*, 2003 WL 23009047, *2 (S.D. Ind. 2003).

This Court has also indicated that depositions of opposing counsel are only appropriate when "relevant information can be obtained no other way." *Irving*, 2007 WL 4616917, *6 (S.D. Ind. 2007).  The Trustee has posted all of the transcripts from the Rule 2004 Examinations and exhibits along with the documents produced by Fifth Third, Wells Fargo and Wayne Stoffel on the Trustee's shared repository.   Moreover, Superior is in process of taking the deposition of the Trustee.   It is very likely that whatever non-privileged information Superior seeks from Mr. White is already available to it from those transcripts and documents.

Courts have held that information sought through a deposition of opposing counsel should first be sought from the opposing party through discovery options like interrogatories. *WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*, 2009 WL 89935, *3 (N.D. Ill. 2009); *see Phillips v. Indianapolis Life Ins. Co.*, 2009 WL 1564384, *1 (S.D. Ind. 2009) (holding that information sought in proposed deposition of opposing counsel should be available from the opposing party and could be more readily obtained through interrogatories). The Northern District of Illinois quashed a subpoena for opposing counsel's deposition because the party seeking it had not yet conducted a 30(B)(6) deposition and, therefore, "cannot show that

9

[opposing counsel] has any unique knowledge" or that "it would be more difficult to obtain the information from a source other than [opposing counsel]." *WMH*, 2009 WL 89935 at *3.

Even when this Court has allowed a party to depose opposing counsel, it has substantially restricted the topics which can be covered in the deposition. *See Kaiser*, 161 F.R.D. at 383 (limiting the scope of the deposition to three specific topics); *Irving*, 2007 WL 4616917 at *6 (limiting the scope of the deposition to three topics and ordering that the deposition not delve into any legal advice provided by counsel). Superior's Subpoena proposes no restriction on the topics a deposition of Mr. White would cover. The Subpoena focuses almost exclusively on non-discoverable information. Superior has not shown a sufficient need to justify a deposition of Mr. White. Therefore, Superior's deposition of Mr. White should be quashed.

### D.  The Trustee has not waived any privilege by filing the Report nor has Hoover Hull by its Comments.

There is no viable argument that the Trustee has "waived" his attorney-client or work-product privileges as to the documents or information at issue. The requested documents and information Superior seeks include Special Counsel's analysis of potential claims against Fifth Third.

Conducting an investigation and crafting a report with findings and recommendations does not alter the applicability of the work-product doctrine or the attorney-client privilege in any respect. *See Allen v. Better Government Bureau, Inc.*, 106 F.3d 582, 605 (4th Cir. 1997) (holding that an outside attorney retained to conduct an investigation did not have to respond to questions regarding the substance of her communications with the client or produce notes or summaries of certain interviews or her draft report); *see also Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612, 622 (7th Cir. 2010) ("Work-product protection applies to

attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.").

The Court spoke to issues related to this controversy previously.[3]  At the December 2012 Omnibus Hearing, the Court addressed Special Counsel's concern regarding the privilege and the Report that the Court directed it to prepare.  The Court noted that the Trustee would not want to "give away … litigation strategies," and that the information the Court expected to be included and disclosed with the Report would be the "same kind of information that you would anticipate would be in your disclosure statement anyway."  *See* Transcript at 59-60, Omnibus Hearing 12/14/2012.  Special Counsel seeks now to enforce that understanding and disclose only the factual information necessary to permit the Court's consideration of the proposed Chapter 11 plan, while protecting what is rightly privileged work-product.

### E.     The Subpoena improperly seeks discovery outside Special Counsel's possession, custody, or control.

The Subpoena is also overly and objectionably broad in that it appears to impose upon Special Counsel an obligation to locate, identify and/or produce documents that are not within his possession, custody or control.  The Subpoena specifically demands that Mr. White "and his counsel" bring to the deposition documents created by Special Counsel, the Trustee, counsel for the Trustee, DSI or any or any representatives of such parties.  Special Counsel objects specifically to the extent the Subpoena seeks production of documents in the possession of

---

[3] Consistent with the Court's comments, Trustee expressly preserved his attorney-client privilege and work-product protections in the first footnote of his Report:

> This Report is filed at the direction of the Court. Although this Report discusses topics on which advice was provided to the Trustee by his counsel and professional advisors, it is not the Trustee's intention to waive in full or in any part the attorney-client or other privileges or protections from disclosure provided to the Trustee regarding those communications or to waive or prejudice in any manner "work product" or other protections provided to the Trustee's counsel or other professional advisors.

11

Development Specialists, Inc. ("DSI"), the Trustee, FaegreBD, or any other person or entity other than Special Counsel.

Requesting documents in the possession, custody, or control of other entities improperly seeks to impose obligations on Special Counsel beyond those allowed by the applicable Rules.[4] *See, e.g.*, *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).  In *Hobley*, the Seventh Circuit reiterated that "[i]t is well-established that the work-product privilege may be invoked by either the client or the attorney."  The Court further explained that a subpoena under Rule 45 is the appropriate way to seek production from a nonparty, including "work product held by a nonparty attorney."  *See also Federal Practice and Procedure § 2208* (explaining that Rule 34 does "not … apply directly to counsel for a party").

Special Counsel seeks a Protective Order providing that he is not obligated to produce the requested documents or information of the Trustee, his other counsel and other advisors or retained experts.

### F.  No detailed privilege log should be required.

It is wholly unreasonable and an enormous waste of Estate funds to expect Special Counsel to collect, review, and log all privileged communications with the Trustee and his advisors over the course of this bankruptcy case.  The burdens of privilege logs are vividly illustrated by the fact that Superior itself produced its first privilege log in response to October 2011 written discovery requests just last Friday, July 20, 2012.

Given the volume of email generated in this case to date, it will require extraordinary attorney time to collect, review, and analyze these communications for relevancy and privilege.

---

[4] Superior has similarly objected, in response to the Trustee's Rule 34 requests, to producing pre-litigation documents in its outside lawyer's files as imposing an obligation to produce documents beyond Superior's possession, custody, or control.

The burden and expense of gathering, reviewing, and logging months worth of communications across multiple law firms and other professionals far outweighs the likely benefit under the considerations outlined in Fed. R. Civ. P. 26(b)(2)(C)(iii). At most Special Counsel should be required only to assert the privilege categorically and in the timeframe afforded by Rule 34. *See Cmts to 1993 Amendments to Rule 26* ("Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.").

Special Counsel therefore seeks a Protective Order exempting him from any obligation to produce a privilege log, especially in light of the impermissibly shortened time frame, the mootness of these issues, and the other objections raised above.

WHEREFORE, Special Counsel respectfully requests that the Court enter a Protective Order (1) precluding Superior or any other party from inquiring about any drafts, supporting documents, expert analysis, underlying mental impressions of counsel or the Trustee, estimations of recoveries, and any other information implicating Special Counsel or the Trustee's strategy, legal analysis, or request for legal advice in any way pertaining to this Chapter 11 case, including but not limited to information underlying the Report and Hoover Hull Comments, whether via document requests or deposition questions; (2) exempting Special Counsel from any demand to produce documents belonging to the Trustee or his other advisors/experts; (3) exempting Special Counsel from any obligation to produce a privilege log; and (4) all other appropriate relief.

13

Respectfully submitted,

/s/ *John David Hoover*
John David Hoover (#7945-49)
jdhoover@hooverhull.com
Hoover Hull LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN  46244-0989
Telephone: (317) 822-4400
Facsimile: (317) 822-0234

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to counsel of record through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

/s/ *John David Hoover*

630224_1/8728-1