UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

**RESPONSE TO RENEWAL OF OBJECTION OF FIRST
BANK TO APPLICATION TO EMPLOY
BAKER & DANIELS LLP (NKA FAEGRE BAKER DANIELS LLP)
AS COUNSEL TO TRUSTEE AND THE BLUEGRASS JOINDER THERETO**

I.

Background and Summary

On July 10, 2012, the First Bank and Trust Company ("First Bank") filed its "Renewal Of Objection Of The First Bank And Trust Company To Application To Employ Baker & Daniels LLP (nka Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee" (the "Renewed Objection") [Docket No. 1238].  On July 30, Bluegrass Stockyards and various other entities ("Bluegrass et al.") represented by the Delcotto Law Group PLLC filed their "Creditors' Joinder in The First Bank and Trust Company's Objection to Employment of Baker & Daniels LLP (n/k/a Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee and First Bank's Request for Order Terminating Employment" (the "Bluegrass Joinder") [Docket No. 1279].  First Bank and Bluegrass et al. are referred to collectively sometimes herein as "Objectors".

The Renewed Objection and Bluegrass Joinder contend that an alleged relationship between Baker & Daniels LLP ("B & D"), and now Faegre Baker Daniels LLP (together with B & D "FBD") with Wells Fargo Business Credit, Inc. ("WFBC"), a former affiliate of Wells Fargo & Company and a participant in loans made by Fifth Third Bank ("Fifth Third") to Eastern Livestock Co., LLC ("ELC" or the "Debtor") required FBD to make a

Bankruptcy Rule 2014 disclosure of FBD's representation of WFBC and other "Wells Fargo"[1] affiliates in matters completely unrelated to the Debtor or this chapter 11 case.  The Objectors also contend that by virtue of those unrelated representations, FBD is not disinterested and should be removed as counsel for James A. Knauer, the chapter 11 trustee appointed in this case (the "<u>Trustee</u>").

There is a simple and straight forward basis for the Court to deny the Renewed Objection and Bluegrass Joinder.  On December 30, 2010, the Trustee filed his "Application To Employ Baker & Daniels LLP as Counsel For Trustee" (the "<u>Retention Application</u>") [Docket No. 113].  On January 10, 2011, First Bank filed its "Objection Of The First Bank and Trust Company To Application To Employ Baker & Daniels LLP As Counsel To Chapter XI Trustee" (the "<u>Original Objection</u>") [Docket No. 181].  On February 1, 2011, the Court entered its "Order Granting Application To Employ Baker & Daniels LLP As Counsel To Chapter 11 Trustee" (the "<u>Retention Order</u>") [Docket No. 248].  The Retention Order granted the Retention Application "on a final basis."  The Renewed Objection on its face "asks the Court to sustain the original Objection."  However, the Retention Application, to which the Original Objection was filed, was approved by a final order of the Court.  In order to seek relief from the Retention Order, First Bank must comply with Rule 9024 of the Federal Rules of Bankruptcy Procedure (hereinafter "<u>Bankruptcy Rule</u>") which incorporates Fed. R. Civ. P. 60.  Fed R. Civ. P. 60, as incorporated

---

[1] There are dozens, if not hundreds, of subsidiaries and affiliates of Wells Fargo & Company.  The term "Wells Fargo" has not been used precisely by First Bank or Bluegrass et al. in their pleadings.  Hereinafter, "Wells Fargo" will refer to Wells Fargo & Company, and its subsidiaries and affiliates collectively.  FBD recently learned that WFBC was merged into Wells Fargo Bank, N.A. at some unknown time but probably before December of 2010.  It is unclear where inside "Wells Fargo" the loan participation currently resides.  It may be that the participation is owned by Wells Fargo Capital Finance, Inc.  FBD has made inquiries of outside and inside counsel for Wells Fargo & Company regarding the ownership of the participation.  The foregoing reflects the information provided to date.  FBD intends to continue its inquiry to attempt to determine which Wells Fargo entity currently owns the participation.  The Trustee will refer to the current participant in the Fifth Third Loan to ELC as "WFBC's Assignee."  References to a specific Wells Fargo subsidiary or affiliate, such as WFBC, will be independently defined.

herein by Bankruptcy Rule 9024, requires that a motion under Rule 60(b) be made within a reasonable time -- and for reasons (1), (2) and (3) no more than one year after the entry of the judgment or order[2]. The Renewed Objection is not timely, having been filed more than 17 months after the entry of the Retention Order.

A second straightforward basis for denying the Renewed Objection and the Bluegrass Joinder is that the issues they raise were previously raised by Bluegrass et al. in the "Objection to Professional Fee Applications of (1) James A. Knauer, Chapter 11 Trustee; (2) Hoover Hull LLP; and (3) Baker & Daniels LLP" filed December 8, 2011 [Docket No. 873] (the "<u>Bluegrass Fee Objection</u>"). The Bluegrass Fee Objection (in addition to the usual assertions about alleged widespread creditor concerns and the "refusal" of the Trustee and his professionals to "get all parties in a room") questioned the disinterestedness of the Trustee and FBD with respect to both Fifth Third and Wells Fargo[3] and asked as relief that the Court order the Trustee and FBD to make supplemental disclosures with respect to Fifth Third and Wells Fargo. *See* Bluegrass Fee Objection at pp. 7-10. The Bluegrass Fee Objection was overruled as to FBD in its entirety by a final order of this Court entered December 19, 2011 [Docket No. 917]. Therefore, the issues raised by the Removal Objection and Bluegrass Joinder were raised and disposed of by the Court nearly ten months ago.

The Renewed Objection and Bluegrass Joinder, however, deserve more than a technical legal response and disposition. The Renewed Objection and Bluegrass Joinder are continuations of a series of baseless snipings and uncivil pleadings from First Bank and

---

[2] "Reasons (1), (2) and (3)" in Fed. R. Civ. P. refer to grounds for granting relief from a final judgment and order. Their grounds are (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that with reasonable diligence, could not have been discoverable and (3) fraud, misrepresentation or misconduct by an opposing party.

[3] First Bank states in its Renewed Objection that it first learned on June 26, 2012 that the Trustee and FBD had been representing "Wells Fargo Bank". However, Bluegrass et al. challenged the relationships of the Trustee and FBD with "Wells Fargo" in the Bluegrass Fee Objection.

-3-

Bluegrass et al. that contain unwarranted and unseemly professional attacks on the Trustee, FBD, and the other professionals who represent the Trustee. Counsel for First Bank and Bluegrass et al. denigrate, impugn the integrity of, and attempt to embarrass the reputations of the Trustee and his professionals, who have devoted hundreds of hours to attempt to find a resolution that will be beneficial to all creditors in a very difficult case, while receiving current compensation for a fraction of their invested time.[4] The Renewed Objection and Bluegrass Joinder deserve a full response from FBD but they also merit inquiry into the agendas of First Bank and Bluegrass et al. in this case, and the reasons why they engage in seemingly endless and costly litigation tactics that distract the Trustee and his professionals from resolving this case on an economic basis that is in the best interest of the real creditors.

There are sound reasons why FBD disclosed at the outset of this case FBD's representations of Fifth Third in unrelated matters, but did not believe that disclosure of its relationship with Wells Fargo was necessary or appropriate, given the very limited rights of WFBC's Assignee as a mere participant in the Fifth Third loan. FBD also believes that, had the FBD/Wells Fargo representations been formally disclosed at the outset of the case, the disclosure

---

[4] There is no pleasing First Bank or Bluegrass et al. Aside from the numerous adversary proceedings and contested matters that do not involve them, the Trustee and his professionals have spent enormous amounts of time pursuing investigations into theories of recovery suggested or requested by them and their cohorts, including Superior Livestock ("<u>Superior</u>"). First Bank, Bluegrass et al. and Superior know that 1) Fifth Third holds a blanket security interest in and against virtually all of ELC's pre-petition assets, 2) almost all of the $16 million recovered by the Trustee to date either constitutes Fifth Third's cash collateral or is subject to an adverse claim of some party and 3) the Trustee, his professionals, and other administrative expense claimants months ago virtually exhausted the $4 million of financing provided by Fifth Third under the Court's "financing order" dated March 18, 2011 [Docket No. 400]. Despite the fact that the Trustee and the professionals have not been receiving compensation on a current basis, and are carrying on their backs the administrative burden of these investigations, First Bank, Bluegrass et al. and their cohorts constantly cry that the Trustee and his professionals are not doing enough to investigate and attack Fifth Third. Those complaints have been expressed in many pleadings, like the ones to which this responds, which require the Trustee and his professionals to devote yet additional and substantial investments of time to defend. This conduct is even more troubling because the Trustee does not believe that First Bank, Superior or some of Bluegrass et al. hold allowable unsecured claims against the Debtor and therefore are not true unsecured creditors in this case. The Trustee explains his position regarding the false "creditor" claims of First Bank, Superior, and some of Bluegrass et al. in his response (the "<u>Report Objection Response</u>") filed concurrently responding to the objections and motions to strike the "Trustee's Report" concerning investigation and analysis of potential claims against Fifth Third.

would have had no impact on this Court's conclusion that FBD is (with the involvement of Hoover Hull as the Trustee's "Special" conflicts counsel) "disinterested". It is equally apparent that FBD's disclosure of its unrelated representations of Wells Fargo at the time that FBD first learned of the WFBC participation in the Fifth Third loan may have avoided this latest sideshow by First Bank and Bluegrass et al. For that reason and in hindsight, FBD wishes that it would have made the Rule 2014 disclosure of the Wells Fargo relationship in December 2010 and regrets that it did not do so. In addition to the explanations contained in this response, FBD is contemporaneously filing its supplemental Rule 2014 affidavit of James M. Carr in support of FBD's continuing retention as counsel for the Trustee. That supplemental affidavit more fully describes the Wells Fargo relationship.

II.

<u>Why Are First Bank and Bluegrass et al. So Active In This Case?</u><br><u>First Bank</u>

In its Renewed Objection, First Bank asserts that the many unpaid sellers of livestock to ELC, including the "small American farmer who traded one 4-H Club prize winning steer", deserve to have the protection and confidence of a chapter 11 trustee and professionals who are serving only their interests. FBD and the Trustee agree wholeheartedly. These unpaid sellers are some of the real creditors of ELC. However, the term ELC "creditor" does not describe First Bank. First Bank is and has been since the outset of this case taking positions that would deprive the ELC estate of millions of dollars that would otherwise be available to the Trustee to pay a part of the claims of such unpaid sellers and other real creditors of ELC.

First Bank was a lender to Tommy Gibson, the principal of ELC. First Bank does not have a direct claim against the Debtor. In fact, the Trustee does not believe that First Bank

-5-

has any claim against the Debtor; its only possible claim is a lien claim against specific funds that First Bank asserts directly adverse to the ELC estate.

First Bank has advised the Trustee that First Bank "suspects" that Tommy Gibson may have sold to ELC cattle that were subject to a security interest in favor of First Bank, and that ELC may or may not have paid Gibson for the cattle. First Bank contends that it can trace its unsatisfied security interest into specific funds claimed by the Trustee that are cash proceeds of ELC's sales of cattle that Gibson sold to ELC. The Trustee has not received from First Bank any proof to support its contentions. First Bank has also asserted an interest in funds ($4.7 million) of the Debtor that were seized by the FBI from the account of Tommy Gibson at Your Community Bank. The Trustee is fighting with First Bank and others to secure and disburse those funds for the benefit of the Debtor's real unsecured creditors. The Trustee is also actively litigating with First Bank regarding funds held by the Trustee in escrow pending the determination of First Bank's lien claims and in an interpleader action where First Bank is seeking an unstated but substantial portion of approximately $6.7 million paid into the Court's registry which the Trustee claims for the Debtor's estate. Fifth Third contends that it has a security interest in the same funds claimed by First Bank that has priority over the First Bank claimed lien. First Bank has consistently taken the position in this case that the first, and perhaps only, priority of the Trustee must be to attack the interest of Fifth Third in order to subordinate or avoid its lien on, among other things, the funds sought by First Bank.[5] Also, it has recently come to the Trustee's attention that First Bank received several million dollars in payments made by Gibson to First Bank in 2010 that may well be traceable to fraudulent transfers from ELC to Gibson and therefore may become the subject of an action by the Trustee against First Bank under Bankruptcy Code § 550.

---

[5]  If the lien were avoided, the Trustee would preserve it for the benefit of ELC's estate, not for First Bank.

First Bank is participating in this bankruptcy case for the sole purpose of asserting a conflicting lien position and taking assets away from the ELC estate and away from possible recoveries by the real creditors of ELC. First Bank is understandably unhappy that the Trustee and his professionals are opposing First Bank's efforts.

### Bluegrass Entities

The Trustee is asserting preference and fraudulent conveyance claims against some of Bluegrass et al. (referred to as the "<u>Bluegrass Entities</u>").[6] The Trustee is seeking to recover approximately $702,000 from the Bluegrass Entities collectively. Even though the Trustee has filed a plan which he believes may provide significant dividends to unsecured creditors, the Bluegrass Entities sued by the Trustee, if unsuccessful in defending the preference and fraudulent conveyance litigation, will be net payors to the ELC estate. This does not sit well with the Bluegrass Entities.

These are examples of the lengths to which the Trustee and FBD labor to protect the interests of the real creditors of the Debtor and its estate. This also suggests why it is so important to the Objectors that this Court remove the Trustee and disqualify FBD as his counsel.

### III.

### The FBD Relationship With Wells Fargo and WFBC's Assignee

Of the dozens, if not hundreds, of affiliates of Wells Fargo & Company, the only (indirect) connection between Wells Fargo on the one hand, and the Debtor on the other, of which FBD is aware, is that WFBC's Assignee is a participant in the loan from Fifth Third to the Debtor. WFBC's Assignee is a $10 million "true participant" in the Fifth Third secured

---

[6] The Trustee is troubled by the circumstance that Ms. DelCotto and her firm represent several Bluegrass Entities that the Trustee believes received several hundreds of thousands of dollars of voidable fraudulent transfers or preferences and that if disgorged would benefit the ELC creditors who are also represented by Ms. DelCotto and her firm. There appears to be inherent conflicts between the interests of Ms. Delcotto's Bluegrass Entities clients and her other clients that were not preference/fraudulent transfer recipients.

revolving loan arrangement with ELC that had a maximum principal debt limit of $32.5 million. Therefore, WFBC's Assignee is effectively a 30.76% participant in the Fifth Third loan.

As is typical in syndications or participated loans, the identity of a participant is not immediately apparent or transparent to third parties. When FBD was first asked whether it was available to represent the Trustee, the loan relationship with Fifth Third was disclosed. FBD later learned of the participation of WFBC in the Fifth Third loan, FBD determined that, as a loan participant, WFBC (and now WFBC's Assignee) has no privity with ELC and was and is <u>not</u> a creditor of the Debtor.[7] FBD acted appropriately to obtain Fifth Third's consent, and disclosed to the Court and all parties FBD's relationship with Fifth Third.[8]

Case law has uniformly established that a loan participant, such as WFBC's Assignee, is not a creditor of the borrower. <u>See</u> *In re Okura & Co*. 249 B.R. 596 (Bk. S.D.NY. 2000); <u>see also</u> I*n re AutoStyle Plastics, Inc*. 269 F.3d 726 (6th Cir. 2001).

*Okura* upheld a trustee's objection to a proof of claim asserted by a loan participant. The Okura court reviewed the history of loan participations as distinct and fundamentally different from co-lender arrangements. *Okura* cited as support for its holding the Seventh Circuit's decision in *First National Bank of Louisville v. Continental Ill. Nat'l. Bank and Trust of Chicago*. *Okura* explained, "The courts are generally in agreement that a transfer of an

---

[7]   Counsel for Fifth Third made representations to FBD regarding the participation which were consistent with FBD's general experience and understanding of participation agreements. FBD was later provided with a copy of the Fifth Third/WFBC Participation Agreement, which confirmed those representations and FBD's general experience with participation agreements. The Participation Agreement was produced and marked "confidential." FBD has filed the Participation Agreement under seal pursuant to the agreement governing the use of confidential documents in this case.

[8]   First Bank has consistently mislead the Court and the creditors regarding FBD's relationship to Fifth Third in this case. First, it is not true that FBD (then B&D) refused to represent First Bank due to FBD's relationship with Fifth Third. First Bank did not tender employment to FBD after FBD told First Bank that it had unrelated representations of Fifth Third. This is not surprising as First Bank's only means of recovery is to sue Fifth Third. Second, First Bank (and Bluegrass *et.al* and Superior) have consistently misrepresented FBD's restriction under the conflict waiver it received from Fifth Third. The fact that Hoover Hull LLP (a litigation firm) was hired to investigate and potentially litigate against Fifth Third does not mean that FBD may not analyze legal issues and advise the Trustee with or without Hoover Hull's involvement.

-8-

undivided interest in and participation in the context of a true participation does not allow the participant to assert a claim against the borrower," 249 B.R. at 608; see also *First Natl. Bank of Louisville v. Continental Ill. Nat'l. Bank and Trust of Chicago*, 933 F.2d 466, 467 (7th Cir. 1991). ("In a typical [participation agreement]… only the lead bank has a direct contractual relationship with the borrower.")

From its first knowledge of the WFBC participation, FBD believed, and later confirmed, that WFBC's Assignee is a "true participant" in the Fifth Third loan to ELC and has no claim or right to take any action against the Debtor. WFBC's Assignee has a contractual claim only against Fifth Third to recover its share of payments and recoveries received by Fifth Third on its loan to ELC. Indeed, in the Participation Agreement, WFBC's Assignee is expressly prohibited from participating in any manner in an ELC bankruptcy case. (See Participation Agreement Section 8.1).

Not only is WFBC's Assignee not a creditor of the Debtor, WFBC's Assignee is not a "party in interest" in this chapter 11 case. The Bankruptcy Code does not specifically define "party in interest," but it does give guidance as to the rights and role of a party in interest in a chapter 11 case. Section 1109(b) of the Bankruptcy Code states that:

> "(b) A party in interest, including the debtor, the trustee, a creditors committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

A party in interest has an unrestricted right to appear and be heard. Therefore, logic compels the conclusion that a loan participant, such as WFBC's Assignee, that is expressly prohibited by the Participation Agreement from appearing in this ELC chapter 11 case or from being heard by the Court on any matter cannot be a party in interest in this chapter 11 case.

-9-

WFBC's Assignee, which is prohibited from appearing in this case or from taking any of the actions described in Section 1109(b) of the Bankruptcy Code, is not a "party in interest."

Judge Posner, in *In the Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992), stated that Bankruptcy Code § 1109 simply means "that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims." *Id.* at 169. The Participation Agreement specifically denies to WFBC's Assignee any claim to the assets of the ELC estate (the "*res*" referred to by Judge Posner) or any ability to enforce any claim or interest against the ELC estate. The Participation Agreement also specifically denies to WFBC's Assignee any ability to bring or enforce any action it may have against Fifth Third related to the Participation Agreement in this chapter 11 case. WFBC's Assignee has no legally protected interest that can be heard in the chapter 11 case.

The Third Circuit Court of Appeals adopted the Seventh Circuit's holding in *James Wilson* and further explained that standing under section 1109 of the Bankruptcy Code is co-extensive with Article III standing, neither broader nor more limited. *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 211 (3rd Cir. 2011). To have Article III standing, parties must demonstrate an injury in fact to them that is concrete, the injury can be traced to the challenged action, and the injury is able to be redressed by a favorable decision. *Id.* WFBC's Assignee has no injury that can be addressed by any action in this chapter 11 case. WFBC's Assignee has no Article III standing, is not a party in interest, and is not a creditor in this chapter 11 case.

Under Bankruptcy Rule 2014, in an application and supporting affidavit for the retention of professional persons the professional and applicant are required to disclose, to the best of their knowledge, all of the professional's connections with "the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee".  WFBC's Assignee does not fall under any of those categories.  WFBC's Assignee is not a creditor.  WFBC's Assignee is not a party in interest.  No other category requiring disclosure under Bankruptcy Rule 2014 applies.

FBD complied with Bankruptcy Rule 2014.

IV.

The FBD and Wells Fargo Connection

FBD has represented subsidiaries and affiliates of Wells Fargo & Company in matters wholly unrelated to the Debtor.  In 2010, FBD worked for more than ten different Wells Fargo entities, and the fees generated for those services totaled less than $425,000.  Tellingly, FBD did not represent WFBC in 2010, or at any time afterwards.  In fact, FBD last performed any services for WFBC in 2005.  Because FBD does not know the identity of "WFBC's Assignee"; FBD is uncertain regarding its representation of that entity.  The fees generated by all of the Wells Fargo clients of FBD combined, amounted to less than one fourth of 1% of FBD revenues in 2010.  Since the January 1, 2012 merger, the much larger FBD performs more work for Wells Fargo on an absolute fee dollar basis.  However, those fees on an annualized basis for 2012 will likely represent less than 2.5% of FBD's 2012 revenues.

The standard form of FBD engagement letter regularly used for new clients and matters in 2010 provided that FBD represents only the specific client(s) entity identified in the engagement letter, and not any affiliates, subsidiaries, or related parties.  Had that standard form

-11-

of engagement letter been utilized with the Wells Fargo affiliates who were B & D clients in December of 2010, FBD may not have been required to seek consent from Wells Fargo & Company in connection with FBD's representation of the Trustee. However, the pre-2010 version of the B & D engagement letter that had been used for B & D's Wells Fargo clients and that was still in effect in December 2010 did not contain the "no affiliate" representation limitation. As a result, FBD determined that even though WFBC (then thought to be the participant) was not then a firm client, and that the existing FBD representations of other Wells Fargo entities were in matters wholly unrelated to the Debtor or this case, the Wells Fargo policy with respect to retention of counsel required FBD to obtain a consent and waiver under the circumstances of the WFBC participation in the Fifth Third loan. Consistent with that policy (and not by compulsion of the Rules of Professional Conduct or mandates of the Bankruptcy Code or Bankruptcy Rules), FBD sought and obtained a consent and waiver from Wells Fargo & Company. The form of Wells Fargo consent and waiver provided, as its only meaningful restriction, that FBD could not represent the Trustee in direct litigation commenced by the Trustee <u>against</u> <u>WFBC</u> or Fifth Third. That restriction mirrored (and did not add to) the limitation in the consent and waiver obtained from Fifth Third by FBD and disclosed to the Court. Because at that time FBD thought that WFBC was the owner of the loan participation, FBD concluded that, based on the limited role of WFBC as participant, there was no possible way that FBD would ever have a "direct adversity" to WFBC in its representation of the Trustee. Any estate claim would be asserted against Fifth Third, not WFBC, and the terms of the FBD consent with Fifth Third already restricted FBD from prosecuting adverse direct actions by the Trustee against Fifth Third. The Trustee and FBD proposed, and the Court accepted, the engagement of Hoover Hull, as Special Counsel to the Trustee, to address that restriction.

FBD routinely represents parties in matters adverse to Wells Fargo under consents and waivers of the kind obtained in this chapter 11 case. This Court is aware that FBD represented the principals (the "Lauth Principals") of Lauth Investment Properties LLC and related entities ("LIP et al"), and LIP Lenders LLC, the "DIP" lender, in the LIP et al. chapter 11 cases (Case Nos. 09-06065-06067-BHL-11). The LIP et al. chapter 11 cases were commenced in this Court in May 2009. FBD represented the Lauth Principals and the DIP lender in this Court through to a "Global Settlement" with Wells Fargo National Association ("Wells Fargo Bank") that the Court approved in July of 2011. FBD's representation of the Lauth Principals and DIP Lender was adverse to Wells Fargo Bank during a large part (particularly the later part) of those chapter 11 cases.

Some of the Lauth Principals (the "Lauth Guarantors") guaranteed approximately $87 million of obligations of the LIP et al. chapter 11 debtors to Wells Fargo Bank (whose primary counsel was Sidley and Austin LLP). FBD represented the Lauth Guarantors in hotly contested related District Court litigation in Case #1:09-CV-00746-JMS-TAB (the "District Court Action"). The District Court Action included assertions by Wells Fargo Bank that FBD's clients, the Lauth Guarantors, had made fraudulent transfers. In the District Court Action, FBD was directly adverse to Wells Fargo Bank in defending against those assertions. In addition, FBD asserted counterclaims on behalf of the Lauth Guarantors against Wells Fargo Bank. FBD took those actions under a conflict consent and waiver provided by Wells Fargo & Company that was substantially similar to the one provided in this chapter 11 case. The District Court Action was settled and dismissed on July 25, 2011.

First Bank and Bluegrass et al. are aware of the LIP et al. chapter 11 cases and the District Action, and the roles played by FBD and the Trustee in those cases. In their motions to

remove the Trustee, they highlight the role of the Trustee in those cases as counsel for Wells Fargo Bank, although they fail to note that the Trustee served only as local counsel to Sidley Austin, LLP. However, they make no mention of FBD's direct adversity to Wells Fargo Bank in those cases. That is understandable. The fact that, coterminous with FBD's representation of the Trustee in this case, FBD was a vigorous adversary of Wells Fargo Bank undercuts the insinuations, implications and direct accusations of First Bank and Bluegrass et al. that FBD is compromised in its representation of the Trustee by the tenuous connection of WFBC as a participant in the Fifth Third loan.

V.

The Estate Would Not Benefit By Disqualification of FBD

First Bank and Bluegrass et al. are engaged and committed to sharp litigation tactics in connection with their attack on the qualifications of FBD. It is their intent to further their own interests at the expense of the real creditors of the Debtor's estate.

While they seek to delay, distract, and direct the case for their own benefits, the Trustee has made substantial progress. The Trustee has analyzed, and through his counsel, including FBD, commenced prosecution of multiple claims against parties who received avoidable transfers prior to the petition date. The Trustee (with the help of Special Counsel and other professionals) investigated and analyzed potential claims against Fifth Third, which created leverage that resulted in the formulation of a chapter 11 plan under which Fifth Third would surrender its rights to material assets in order to create with certainty a pot for unsecured creditors.[9] The Trustee has, by his actions, attempted to address the Court's concern that this

---

[9] The Objectors seek scorched-earth litigation against Fifth Third, which is a zero sum game. A successful action against Fifth Third may or may not lead to greater recoveries than that proposed by the Trustee's plan, depending upon the time and expense of litigation, and ultimate determination. On the other hand, if the Trustee were to fight Fifth Third and lose, the estate would most likely be very much administratively insolvent. That would

-14-

case might be administered solely for the benefit of Fifth Third; under the Trustee's proposed chapter 11 plan it will not.

Granting the motions filed by the Objectors would lead to delay in the resolution of this case, impairment of the ability of the Trustee and his retained professionals to bring and prosecute recovery actions, particularly as to the Objectors themselves, increased cost and expense to administer this case to its ultimate resolution, and ultimately, impaired creditor recoveries. The Court should not permit the Objectors to subvert the bankruptcy process for their own benefits. Granting their motions, including their requests to disqualify FBD, would serve only their own selfish agendas, and seriously harm, rather than benefit, the real unsecured creditors in this case.

## VI.

## Conclusion

For all of the foregoing reasons, the Trustee and FBD respectfully request that the Court deny the Renewed Objection, and grant the Trustee and FBD all other proper relief.

---

have no effect on the Objectors, who are in all likelihood not creditors. The prospect of certain and prompt recovery versus possibility of no recovery probably has much greater meaning to the small unpaid cattle sellers who are creditors of the Debtor and this estate.

-15-

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/* James A. Knauer |
| James A. Knauer | *Chapter 11 Trustee* |
| 111 Monument Circle, Suite 900 |  |
| Indianapolis, Indiana 46204-5125 |  |
| Telephone: 317-692-9000 |  |
| Facsimile: 317-777-7451 |  |
| jak@kgrlaw.com |  |
|  | FAEGRE BAKER DANIELS LLP |
|  | By:   /s/ James M. Carr |
| James M. Carr (#3128-49) | *Counsel for James A. Knauer, Chapter 11 Trustee* |
| Kevin M. Toner (#11343-49) |  |
| Terry E. Hall (#22041-49) |  |
| Dustin R. DeNeal (#27535-49) |  |
| 300 N. Meridian Street, Suite 2700 |  |
| Indianapolis, IN 46204-1782 |  |
| Telephone: (317) 237-0300 |  |
| Facsimile: (317) 237-1000 |  |
| jim.carr@faegrebd.com |  |
| kevin.toner@faegrebd.com |  |
| terry.hall@faegrebd.com |  |
| dustin.deneal@faegrebd.com |  |
|  |  |
| Wendy W. Ponader (#14633-49) |  |
| 600 East 96th Street, Suite 600 |  |
| Indianapolis, IN 46240 |  |
| Telephone: (317) 569-9600 |  |
| Facsimile:  (317) 569-4800 |  |
| wendy.ponader@faegrebd.com |  |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

Mark A. Robinson
mrobinson@vhrlaw.com

Randall D. LaTour
rdlatour@vorys.com

Daniel J. Donnellon
ddonnellon@ficlaw.com

John W. Ames
james@bgdlegal.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Meredith R. Thomas
mthomas@daleeke.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

David L. LeBas
dlebas@namanhowell.com

Jessica E. Yates
jyates@swlaw.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Todd J. Johnston
tjohnston@mcjllp.com

Karen L. Lobring
lobring@msn.com

Elliott D. Levin
edl@rubin-levin.net

Sean T. White
swhite@hooverhull.com

Michael W. McClain
mike@kentuckytrial.com

James Edwin McGhee
mcghee@derbycitylaw.com

Jerald I. Ancel
jancel@taftlaw.com

David Alan Domina
dad@dominalaw.com

C. R. Bowles, Jr
cbowles@bgdlegal.com

Jeffrey R. Erler
jeffe@bellnunnally.com

John R. Carr, III
jrciii@acs-law.com

Stephen A. Weigand
sweigand@ficlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Ivana B. Shallcross
ishallcross@bgdlegal.com

William Robert Meyer, II
rmeyer@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John Huffaker
john.huffaker@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Walter Scott Newbern
wsnewbern@msn.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

John M. Rogers
johnr@rubin-levin.net

Jay P. Kennedy
jpk@kgrlaw.com

William E Smith
wsmith@k-glaw.com

Thomas C Scherer
tscherer@bgdlegal.com

Jeffrey J. Graham
jgraham@taftlaw.com

Kent A Britt
kabritt@vorys.com

John Hunt Lovell
john@lovell-law.net

Edward M King
tking@fbtlaw.com

Bret S. Clement
bclement@acs-law.com

John Frederick Massouh
john.massouh@sprouselaw.com

Kim Martin Lewis
kim.lewis@dinslaw.com

Deborah Caruso
dcaruso@daleeke.com

Allen Morris
amorris@stites.com

James T. Young
james@rubin-levin.net

John M. Thompson
john.thompson@crowedunlevy.com

Matthew J. Ochs
kim.maynes@moyewhite.com

T. Kent Barber
kbarber@dlgfirm.com

Kirk Crutcher
kcrutcher@mcs-law.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Lisa Koch Bryant
courtmail@fbhlaw.net

John David Hoover
jdhoover@hooverhull.com

John R. Burns
john.burns@faegrebd.com

Kayla D. Britton
kayla.britton@faegrebd.com

David A. Laird
david.laird@moyewhite.com

Trevor L. Earl
tearl@rwsvlaw.com

Joshua N. Stine
kabritt@vorys.com

| | | |
|---|---|---|
| Jill Zengler Julian<br>Jill.Julian@usdoj.gov | Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com |
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Robert A. Bell<br>rabell@vorys.com |
| James E. Rossow<br>jim@rubin-levin.net | James B. Lind<br>jblind@vorys.com | Melissa S. Giberson<br>msgiberson@vorys.com |
| Steven A. Brehm<br>sbrehm@ bgdlegal.com | Anthony G. Raluy<br>traluy@fbhlaw.net | U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov |
| James M. Carr<br>james.carr@faegrebd.com | Jack S. Dawson<br>jdawson@millerdollarhide.com | Dustin R. DeNeal<br>dustin.deneal@faegrebd.com |
| Shawna M. Eikenberry<br>shawna.eikenberry@faegrebd.com | Terry E. Hall<br>terry.hall@faegrebd.com | Jay Jaffe<br>jay.jaffe@faegrebd.com |
| James A. Knauer<br>jak@kgrlaw.com | Erick P. Knoblock<br>eknoblock@daleeke.com | Harmony A. Mappes<br>harmony.mappes@faegrebd.com |
| Christie A. Moore<br>cm@gdm.com | Shiv Ghuman O'Neill<br>shiv.oneill@faegrebd.com | Wendy W. Ponader<br>wendy.ponader@faegrebd.com |
| Peter M. Gannott<br>pgannott@gannottlaw.com | Eric C. Redman<br>ksmith@redmanludwig.com | Joe T. Roberts<br>jratty@windstream.net |
| Joseph H. Rogers<br>jrogers@millerdollarhide.com | James E. Smith<br>jsmith@smithakins.com | Robert K. Stanley<br>robert.stanley@faegrebd.com |
| Andrew D. Stosberg<br>astosberg@lloydmc.com | Kevin M. Toner<br>kevin.toner@faegrebd.com | Andrea L. Wasson<br>andrea@wassonthornhill.com |
| Christopher M. Trapp<br>ctrapp@rubin-levin.net | Eric W. Richardson<br>ewrichardson@vorys.com | Joshua Elliott Clubb<br>joshclubb@gmail.com |

I further certify that on August 13, 2012, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher  
asr@blancolaw.com

Darla J. Gabbitas  
darla.gabbitas@moyewhite.com

/s/ James M. Carr