UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| EASTERN LIVESTOCK CO., LLC ) | CASE NO. 10-93904-BHL-11 |
| ) | |
| Debtor. ) | |

**TRUSTEE'S RESPONSE TO MOTIONS TO REMOVE TRUSTEE**

James A. Knauer, Trustee, files this response to the Objectors' motions[1] seeking his removal as Trustee ("Removal Motions") for the estate of Eastern Livestock Co., LLC ("ELC"). The Trustee and his professionals are also filing by separate responses to objections and motions to strike the Trustee's Report (the "Report Objection Response"), and to the "renewed objection" to the employment of Baker & Daniels LLP, nka Faegre Baker Daniels LLP (referred to herein as "B&D" or "FBD"), filed by First Bank and the joinder to that renewed objection filed by Bluegrass *et al.* (the "Renewed Objection And Joinder Response"). The Objectors collectively with Superior and CPC Livestock LLC ("CPC") may be referred to as the "Objector Group".[2]

---

[1] The Objectors are Bluegrass Stockyards East, LLC, Bluegrass Stockyards, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Blue South Livestock Market, LLC, Bluegrass Stockyards of Campbellsville, LLC (these Bluegrass companies may be collectively referred to as the "Bluegrass Entities"), East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, LLC, Piedmont Livestock Company, Inc. and Alton Darnell (collectively with the Bluegrass Entities, the "Bluegrass *et. al*") and The First Bank and Trust Company ("First Bank").  Bluegrass *et. al* filed their Motion To Remove Trustee Pursuant To 11 U.S.C. § 324 on July 10, 2012 [Docket No. 1237] ("Bluegrass Motion") and First Bank filed its Motion Of The First Bank And Trust Company To Remove Trustee Pursuant To 11 U.S.C. § 324 also on July 10, 2012 ("First Bank Motion") [Docket No. 1239] .  On July 18, 2012, the Objectors, this time joined by Superior Livestock Auction, Inc. ("Superior") filed their  Joint Evidentiary Submission of Certain Creditors in Support of Motions to Remove Trustee and Renewal of Objection to Application to Employ Trustee Counsel ("Joint Submission") [Docket No. 1248]. Oddly, Superior has not filed a motion to remove the Trustee nor any "renewed" objection to employ Trustee's counsel, yet it joined in the Joint Submission pertaining to motions it has not filed nor joined.  For purposes of this response, the Trustee assumes that Superior supports the motions of its fellow travelers.

[2] On Friday, August 10, 2012, a lawyer representing the Kentucky Cattlemen's Association ("KCA") requested to appear in this case and filed a motion titled "Motion of the Kentucky Cattlemen's Association To Remove the Trustee and to Terminate Employment of Lead Counsel" (the "KCA Motion") [Docket Nos. 1323, 1324].  KCA is not a creditor nor a party in interest in this chapter 11 case and has no standing under Section 1109 to appear and be

Beneath the sound and fury,[3] the Objector Group just disagrees with the Trustee's professional and business judgment in this chapter 11 case. The basis for their disagreement is understanable – most of them are in litigation with the Trustee and are at risk of being forced to pay or repay substantial sums to the ELC estate for distribution to creditors.[4] They are especially unhappy with the Trustee's proposed settlement with Fifth Third Bank ("Fifth Third"). The Trustee's recently filed proposed chapter 11 plan ("Plan")[5] settles the estate's claims, if any, against Fifth Third for Fifth Third (1) contributing up to 20% of its collected collateral to "opt in" unsecured creditors, (2) waiving ownership claims to $4.7 million of seized funds making those funds available to unsecured creditors, and (3) paying a proportionate share of the administrative costs of investigating, prosecuting, collecting and distributing payments to the victims of ELC's demise and fraud.

---

heard. KCA did not contact the Trustee or his counsel prior to filing the KCA Motion, nor is it clear that KCA did any due diligence prior to filing the KCA Motion. The Trustee is filing an objection to the appearance and the KCA Motion and will seek all appropriate relief.

[3] Tomorrow and tomorrow and tomorrow,
Creeps in this petty pace from day to day
To the last syllable of recorded time,
And all our yesterdays have lighted fools
The way to dusty death. Out, out, brief candle!
Life's but a walking shadow, a poor player
That struts and frets his hour upon the stage
And then is heard no more: it is a tale
Told by an idiot, full of sound and fury,
Signifying nothing.
    --*William Shakespeare, Macbeth, Act 5, scene 5*.

[4] On Friday, August 10, 2012, the Trustee concluded four days of depositions of Superior's principals. It is now known that Superior, in concert with Tommy Gibson, diverted payments on ELC's accounts receivable away from the collateral collection account at Fifth Third into Superior's accounts at the Bank of Colorado, by instructing purchasers of cattle from ELC to deal directly with Superior on their ELC contracts. To further facilitate this plan, Superior rewrote more than 250 contracts for which ELC had been the highest bidder at auction to (falsely) reflect Superior as the high bidder on the original auction date. Superior sometimes rewrote the contracts yet a third time to substitute yet another high bidder/buyer in ELC's place. Without the slightest regard to the interests of ELC's secured and unsecured creditors, Superior transferred and converted to its own use ELC's cattle, contracts, and accounts receivable totaling tens of millions of dollars in estate assets—likely over six times the $5.6 million that Superior acknowledged, under penalties of perjury, collecting in its filed proof of claim.

[5] See Disclosure Statement for Trustee's Chapter 11 Plan of Liquidation [Docket No. 1256] and Trustee's Chapter 11 Plan of Liquidation [Docket No. 1255].

2

The Objector Group believes that the Trustee should chuck the Plan and instead engage in scorched earth litigation with Fifth Third—without regard to the costs, the time, and, most importantly, the risks of losing. The facts and the law needed to objectively assess and compare the realizable value of the Plan versus litigation against Fifth Third exists, is available, and is known first hand by the Objector Group. Rather than engage on the facts and the law, they have instead decided as a first maneuver to try and remove the Trustee, as proponent of the Plan, and his counsel.[6]

The Removal Motions assert that the Trustee is not "disinterested" within the meaning of Section 324 of the Bankruptcy Code, and, from that, argue, *ipso facto,* that his professional and business judgment must be flawed and is not to be trusted regardless of any objective analysis of the Plan.[7]

The Objectors accuse the Trustee of not being disinterested, because, they assert, the Trustee was required to disclose, in connection with his appointment application, that he represented Wells Fargo Business Credit, Inc. ("WFBC")[8], an entity that purchased a $10 million

---

[6] "If the facts are with you, pound the facts. If the law is with you, pound the law. If you have neither the law nor the facts, pound the table." -- *Unknown* but referred to as Rule of Law No. 1 in various legal writings for nearly 100 years.

[7] The Objector Group has from the outset of this case opposed nearly every action of the Trustee and his professionals and the pleadings on the Court's docket are only a small portion of the story. The Trustee and his professionals have expended enormous amounts of time, energy, and resources responding to voice mails, emails, and other communications from the Objector Group on nearly every aspect of this case whether any of the Objector Group has a stake in the issue or not. The Objector Group has at times tried to appear in the function of an unsecured creditors' committee. The problem is that the overwhelming majority of the entities in the Objector Group are not unsecured creditors and their interests are not aligned with the unsecured creditors in this chapter 11 case.

[8] There are dozens, if not hundreds, of subsidiaries and affiliates of Wells Fargo & Company. The term "Wells Fargo" has not been used with any precision by First Bank and Bluegrass *et. al* in their pleadings. Hereinafter, "Wells Fargo" will refer to Wells Fargo & Company and its subsidiaries and affiliates collectively. The Trustee recently learned that WFBC was merged into Wells Fargo Bank, N.A. at some unknown time but probably before December of 2010. It is unclear where inside "Wells Fargo" the loan participation currently resides. It may be that the participation is owned by Wells Fargo Capital Finance, Inc. FBD has made inquiries of outside and inside counsel for Wells Fargo & Company regarding the ownership of the participation. The foregoing reflects the information provided to date. FBD intends to continue its inquiry to attempt to determine which Wells Fargo entity

3

participation[9] in the loan that Fifth Third had with ELC.[10] Neither the Trustee nor his law firm has ever represented WFBC. It is uncertain whether the Trustee or his firm has represented the Wells Fargo entity that became "WFBC's Assignee".

A second straightforward basis for denying the Renewed Objection and Joinder is that the issues raised therein were previously raised by Bluegrass *et al.* in the Objection to Professional Fee Applications of (1) James A. Knauer, Chapter 11 Trustee; (2) Hoover Hull LLP; and (3) Baker & Daniels LLP filed December 8, 2011 [Docket No. 873] (the "Bluegrass Fee Objection"). The Bluegrass Fee Objection (in addition to oft repeated assertions about "widespread concerns" and the "refusal" of the Trustee and his professionals to "get all parties in a room") questioned the disinterestedness of the Trustee and FBD with respect to both Fifth Third and Wells Fargo[11] and sought as relief for the Court to order the Trustee and FBD to make supplemental disclosures with respect to Fifth Third and Wells Fargo. *See* Bluegrass Fee Objection, pp. 7-10. The Bluegrass Fee Objection was overruled in its entirety by order of this Court entered December 19, 2011 [Docket No. 917]. Therefore, the issues raised by the Renewed Objection and Joinder were disposed of by the Court nearly ten months ago.

---

currently owns the participation. The Trustee will refer to the current participant in the Fifth Third Loan to ELC as "WFBC's Assignee." References to a specific subsidiary or affiliate, such as WFBC, will be independently defined.

[9] The Participation Agreement was added to the evidentiary repository on July 13, 2012 and made available to the Objectors by means of the orders entered in this case governing the access to and use of documents marked confidential. Pursuant to those orders, the Participation Agreement has been filed herewith under seal.

[10] The Objectors at times also assert or imply that the Trustee is disinterested (or biased) due to his representation of Fifth Third Bank in unrelated matters. The Trustee fully disclosed his representation of Fifth Third and this Court approved the Trustee's employment. The continued accusations against the Trustee of implied and inferred ethical misconduct simply because the Objector Group disagrees with the Trustee's decisions is disrespectful of this Court's orders.

[11] First Bank states in its Renewed Objection that it first learned on June 26, 2012 that the Trustee and FBD had been representing "Wells Fargo Bank". However, Bluegrass et al. challenged the relationships of the Trustee and FBD with "Wells Fargo" (and Fifth Third) in the Bluegrass Fee Objection last December.

4

To the extent the Objectors may be asserting that the Trustee's representation of WFBC's Assignee or some "Wells Fargo" affiliate of WFBC's Assignee is enough to merit his removal, the Trustee has filed a supplemental affidavit ("Trustee's Supplemental Affidavit") concurrently with this response. The information disclosed in the affidavit confirms that there is no cause to remove the Trustee.

The Renewed Objection and Joinder, however, deserve more than the above responses. The Renewed Objection and Joinder are continuations of a series of uncivil pleadings from counsel for First Bank and Bluegrass *et al.* (and the entire Objector Group) that contain unwarranted and unprofessional attacks on the Trustee, FBD, and the other professionals representing the Trustee. Their actions have impeded the progress of this chapter 11 case as they have caused even the simplest matters to become lengthy contests, weighing in on matters that do not affect their clients, and even at times asserting positions that would actually be adverse to their specific client's interests seemingly for some academic exercise. Counsel for Bluegrass *et al.* has made it a habit in nearly every pleading to state there is great concern among the "creditor body," and then use those statements as supporting evidence of "great concern."

There are valid reasons why the Trustee disclosed his representations of Fifth Third in unrelated matters, but did not believe that disclosure of his relationship with Wells Fargo was necessary or appropriate. The Trustee believes that had he formally disclosed his unrelated representation of Wells Fargo Bank, the disclosure would not have caused this Court to find the Trustee was not "disinterested".[12] However, the Trustee also believes had he made such

---

[12] After becoming aware that WFBC's Assignee held a participation in the Fifth Third loan, the Trustee talked with the attorney for the US Trustee during the week of December 27, 2010 regarding his discovery and the reasons why he believed Wells Fargo was not a creditor nor a party in interest in this chapter 11 case. The Trustee's law firm has represented Wells Fargo Bank, N.A. in the "Lauth Cases" (see Trustee's Supplemental Affidavit). To foreclose the possibility of any interference from Wells Fargo, the Trustee sought and received a full unrestricted waiver from Wells Fargo.

5

disclosure at the time he learned of the WFBC participation, this latest sideshow with its attendant loss of time and money may have been avoided.  For that reason, and in hindsight, the Trustee wishes that he had made the additional disclosure and regrets that he did not do so.

WFBC's Assignee is not a creditor nor a party in interest and has no standing to assert claims against or seek recovery from the ELC estate.  Because WFBC's Assignee has no standing in this chapter 11 case, and because the removal of the Trustee would result in severe harm to creditors and the ELC estate, no valid basis exists to remove the Trustee. The Motions should be denied.

## **WFBC Is Not a Creditor or a Party in Interest in the Chapter 11 Case**

Bankruptcy Rule 2007.1(c) establishes the disclosure requirements with regard to the appointment of a chapter 11 trustee:

> The application shall state the name of the person appointed and, to the best of the applicant's knowledge, all the person's connections with the debtor, creditors, and other parties in interest, their respective attorneys and accountants, the United States trustee, or persons employed in the office of the United States trustee… The application shall be accompanied by a verified statement of the person appointed setting forth the person's connections with the debtor, **creditors**, any **other party in interest**, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." (emphasis added)

WFBC's Assignee is not a creditor of ELC or the ELC estate.  In 2005 and pursuant to the Participation Agreement, WFBC purchased an undivided $10 million participation in the existing loan that Fifth Third made to ELC.  The Fifth Third secured loan had a maximum principal debt limit of $32.5 million.  Therefore, WFBC's Assignee is effectively a 30.76% participant in Fifth Third's loan.  WFBC's Assignee has no contractual privity with ELC.  The right of WFBC's Assignee to receive payment on its participation is a contractual right against only Fifth Third, and Fifth Third remains the <u>sole</u> holder of ELC's obligations under the loan.  The fact that a loan

6

participant is not a creditor in a chapter 11 case has been uniformly recognized. *See In re Okura & Co. (America), Inc.*, 249 B.R. 596 (S.D.N.Y. 2000). *See also In re Auto Style Plastics Inc.*, 269 F.3d 726 (6th Cir. 2001).

*Okura* disallowed a claim filed against the debtor by The Bank of Tokyo-Mitsubishi, Ltd. ("BTM") holding that under the participation that BTM purchased from the debtor's lender, BTM was not a creditor of the Debtor. *In re Okura*, 249 B.R. at 610. The *Okura* Court considered the following factors in reaching its conclusion: BTM had a right to proceeds of the loan not a right to payment from the debtor; the debtor was not a party to the participation agreement, the debtor had no obligation to BTM and BTM had no obligation to the debtor; and only the debtor's lender had the right to enforce any rights or remedies.

The *Okura* Court collected, considered and analyzed a history of how courts have considered the rights and roles of loan participants as opposed to co-lenders in chapter 11 cases. *See In re Okura*, 249 B.R. at 608-609. The cases collected and summarized there, including controlling 7th Circuit authority–*First Nat'l Bank of Louisville v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*, 933 F.2d 466, 467 (7th Cir. 1991)—all hold that a loan participant is not a creditor of the debtor.

WFBC's Assignee is not a party in interest in the chapter 11 case. The term "party in interest" is not separately defined in the Bankruptcy Code, but it may be understood by what a "party in interest" is allowed to do in a Chapter 11 case. Section 1109(b) of the Bankruptcy Code states: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

7

The Participation Agreement specifically provides that WFBC's Assignee has no right or standing in any case involving ELC under the Bankruptcy Code, any state insolvency laws or which otherwise involve ELC.  *See* para. 8.1 of the Participation Agreement.  Moreover, WFBC's Assignee may not seek to resolve any dispute it may have with Fifth Third related to the Participation Agreement in the bankruptcy case of ELC.  *Id.*  Since WFBC has no ability to appear and be heard in this chapter 11 case on any issue—a fundamental tenant of being a party in interest—it is not a party in interest in this chapter 11 case.

Judge Posner, in *In the Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992), stated that section 1109 simply means "that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims." *Id.* at 169.  The Participation Agreement specifically denies to WFBC's Assignee any claim to the assets of the ELC estate (the "*res*" referred to by Judge Posner) or any ability to enforce any claim or interest against ELC.  The Participation Agreement specifically denies to WFBC's Assignee any ability to bring or enforce any action it may have against Fifth Third related to the Participation Agreement in this chapter 11 case.  WFBC's Assignee has no legally protected interest that can be heard in the chapter 11 case.  WFBC's Assignee is not a party in interest.

The Third Circuit Court of Appeals adopted the Seventh Circuit's holding in *James Wilson* and further explained that standing under section 1109 of the Bankruptcy Code is co-extensive with Article III standing, neither broader nor more limited.  *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 211 (3rd Cir. 2011).  To have Article III standing, parties must

8

demonstrate an injury in fact to them that is concrete, the injury can be traced to the challenged action, and the injury is able to be redressed by a favorable decision. *Id.* WFBC's Assignee has no injury that can be addressed by any action in this chapter 11 case. WFBC's Assignee does not have Article III standing, section 1109 standing, and is not a creditor in this chapter 11 case.

The Trustee is required to disclose his connections with the debtor, creditors, and parties in interest in this chapter 11 case. The Trustee did that. His affidavit disclosed that his firm, Kroger Gardis & Regas, LLP ("KGR") represented Fifth Third in unrelated matters. The Trustee is unrestricted in his representation of the ELC estate and can be fully adverse to Fifth Third.[13] The Trustee has complied with the Bankruptcy Rules and the Bankruptcy Code.

## The Trustee is a Disinterested Person

The term "disinterested person" is defined as a person that "(A) is not a creditor, an equity security holder, or an insider; (B) is not and was not within 2 years before the date of filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). The Trustee meets the definition of disinterestedness in this chapter 11 case. The Trustee has no connection with ELC and holds no

---

[13] Certain of the Objectors periodically assert in both hearings and filed pleadings that the Trustee is "conflicted" or "restricted" by his firm's representations of Fifth Third. This is not true, and to continuously state it is a deliberate attempt to mislead the Court and other creditors. The Trustee is engaged in contentious litigation with First Bank, certain of the Bluegrass entities, and Superior. The Trustee is trying to recover from them or prevent them from taking and/or retaining millions of dollars that could be distributed to actual creditors of ELC. None of the Objectors represent the creditor body (though there was an aborted attempt to have the Court "recognize" their group as an "Ad Hoc Committee"). This kind of pleading, especially where there typically is a four domino filing on every issue, has been going on since the inception of this chapter 11 case. While taking up more than their share of the estate's resources and time, the Objector Group would periodically seek to discuss a "global" resolution. Numerous meetings and phone calls later, the Objector Group produced nothing individually and offered nothing as a group. Even after the Trustee engaged an experienced mediator and some of them expressed interest in mediating, they all failed to provide any material response to discovery that would allow any mediation to be effective. A more detailed discussion of the claims and litigation between the Trustee and the Objector Group is found in the Report Objection Response and the Renewed Objection and Joinder Response.

9

interests adverse to the estate or to any class of creditors or security holders. The Trustee fully disclosed his connections to Fifth Third. The Trustee is unrestricted and may be directly adverse to Fifth Third. If the Trustee had concluded that suing Fifth Third was in the best interests of creditors he would do so and there would be no impediments.[14] WFBC's Assignee is neither a creditor nor a party in interest in this Chapter 11 case. The Trustee is a disinterested person within the meaning of the Bankruptcy Code and this Chapter 11 case.

### The Proposed Plan, the Objectors and Litigation Tactics

The Objectors have consistently and insistently tried to hijack this chapter 11 case for their own benefits.[15] They have launched pleading after pleading contesting every act no matter how routine and consistently mischaracterize and spin the Trustee's acts and intent.[16] They have gone so far as to misconstrue orders of this Court. One example is their wrongful insistence that the financing order approving the use of cash collateral and authorizing DIP financing ("DIP Order") allowed Fifth Third's claim as a fully secured claim in the amount as filed.

---

[14] The Objector Group implies that the Trustee decided to settle with Fifth Third before completing his investigation into the facts and law related to Fifth Third's claim, because the Trustee entered into preliminary negotiations with Fifth Third during the investigation. This implication is silly. Negotiation and investigation often occur side by side as an efficient and effective method to resolve matters. The Trustee did not reach final agreement with Fifth Third on the proposed settlement until after the investigation was concluded and the Trustee was advised by Hoover Hull, LLP, the Trustee's "Special Counsel." The Objector Group also, falsely, periodically makes assertions that the Trustee "terminated" the investigation of Fifth Third by Special Counsel early in 2011. This is also not true, but that does not seem to prevent them from asserting it over and over. The complaints concerning the timeline of Special Counsel's investigation of Fifth Third were raised in the objections filed by the Objector Group to Special Counsel's first fee application and were overruled.

[15] Superior was not one of the original petitioners filing the involuntary petition on ELC; it joined the petition after the fact. Superior and the original petitioners are all represented by the same law firm. Interestingly, the protections under 546(e) to certain parties who receive fraudulent transfers and preferences do not appear available outside of bankruptcy.

[16] The Objector Group finds fault even with matters outside the legal boundaries of the case. The Trustee started a blog and a twitter feed at the beginning of this case as a means to provide creditors with updates and with access to all the pleadings on the court docket without incurring Pacer fees. The Trustee did not legally have to create or maintain a blog and twitter feed. It was not long before the Objectors began criticizing the Trustee's use of the blog—he was not posting enough, his blog entries describing potential recoveries were harmful to the Objectors' clients, he was not posting on his blog what the Objectors wanted posted on the blog. In one memorable exchange, one of the Objectors threatened to go to the Court if the Trustee did not post on his blog the entire complaint filed by First Bank against Fifth Third, rather than just providing a link.

10

Notwithstanding the fact that the DIP Order was extensively negotiated by the Objector Group and fully reserves the rights of all parties, they seem to not understand (or willfully ignore) the reservation of rights in the DIP Order.[17]

The Objectors use these mischaracterizations as a means to attack the Trustee by citing them as evidence of the Trustee's bias toward Fifth Third. The Objectors' pleadings consistently include attacks or accusations against the Trustee and/or his professionals followed by the assertion that the Trustee and/or his professionals are causing great concern and confusion among the creditors. It is in fact, the wrong and misleading accusations of the Objectors that are causing concern and confusion, if widespread creditor concern and confusion in fact exist.

At the same time that they have burdened the estate and the Trustee with baseless attacks, they complain that the Trustee is not moving fast enough (though they have delayed discovery deadlines, agreed to provide information informally and then not provided it, caused the delay of discovery and deposition protocols and generally inserted themselves into every procedural aspect of this case no matter how small). The Trustee is managing the case efficiently and effectively for the benefit of the unsecured creditors of ELC, which is his job. It is not his job to manage the case for the benefit of the Objector Group, the majority of whom are adverse to and represent significant recoveries for the ELC estate. The Trustee has used his time to collect and liquidate collateral, investigate the business of ELC and identify potential recoveries, piece back together the books and records of ELC and research and analyze the law to determine the most efficient and effective means to securing and distributing monies to the creditors of ELC.

---

[17] First Bank, especially, seems to not understand this. First Bank asserts that the Trustee has admitted the validity and priority of Fifth Third's liens numerous times without any reservation of rights and released any claims to avoid the liens or to subordinate them. This is simply not true. To the extent that there is any confusion related to any pleading or answer filed by the Trustee (other than the offer in the proposed Plan) that the Trustee has waived his right to challenge the position of Fifth Third or to equitably subordinate or avoid a lien, the Trustee will seek to amend its pleading to clarify so that it is clear to First Bank.

11

In the Objectors' own words, the circumstances of the demise of ELC is one of the largest failures in the cattle industry business complicated by the massive fraud perpetrated by ELC that included falsifying records, making up transactions, kiting funds, erasing records, diverting payments, diverting cattle, all while certain principals of ELC tried to "take care" of certain preferred ELC customers (including some in the Objector Group) by handing over checks, cattle, and contracts to the direct and immediate harm of ELC's other creditors.  The Trustee is uncovering evidence that part of the difficulties of determining what happened may be traced directly to certain members of the Objector Group.  As the Trustee gets closer to understanding the missing pieces, the complaints from the Objector Group get louder.

## Removal of the Trustee Would Severely Harm Creditors and the Estate

The case law governing Bankruptcy Code §324 regarding removal of a trustee, establishes that a removal should occur only where there would be actual harm to creditors and the estate were the trustee to continue in service.  In considering removal a court should balance harm that might result from continuation versus prejudice to creditors that would result from removal.  *See In re Sheehan* 185 B.R. 819 (Bankruptcy D. Ariz 1995) and *Matter of REA Holdings* 2 B.R. 733(S.D.N.Y. 1980).

During the 19 months that the Trustee has served in this chapter 11 case, he has recovered over $16 million.  There are some twenty pending adversary proceedings, not counting the interpleader actions, where the Trustee is seeking to recover on behalf of the ELC estate at least twice that amount again. The Trustee is serving as the USDA Bond Trustee for the purpose of distributing the proceeds on the Bond to claimants outside the ELC bankruptcy through a proceeding in the Federal Court in the New Albany division of the Southern District of Indiana (*Knauer v. Martin, et al.*, 4:11-cv-00144-SEB-WGH).  The Trustee is actively involved in

negotiations with the U.S. Attorney Office for the Western District of Kentucky in a civil forfeiture action concerning the $4.7 million dollars seized by the FBI from Your Community Bank. The negotiations involve the coordination and cooperation in seeing that the seized funds are distributed to ELC "victims", understanding that other sources of recovery such as the ELC bankruptcy, the USDA Bond and the Kentucky restitution proceedings will make a fair and equitable distribution difficult without a central coordination point for comparing claims with payments derived from the various recovery sources. The Trustee is proposing that the Plan and this case provide that centralizing point.

Removal of the Trustee would cause severe harm to the ELC estate and its creditors. Any successor would have to come up to speed on many complex litigation and negotiation matters. To even be able to attempt such a feat a successor trustee would need counsel with deep and widespread bankruptcy and commercial law and litigation strength. It is difficult to imagine when such counsel could be found that either 1) is not already involved in this case, 2) has no conflicts with Wells Fargo and/or Fifth Third, and 3) is not located in Chicago, New York, or some other market with a materially higher fee structure. There are currently no funds available that are not Fifth Third's cash collateral or funds claimed by some other party or interest to pay ongoing litigation and accrued and accruing administrative expenses. While the Objectors <u>may</u> assert that they would be able to take over this case for the purpose of suing Fifth Third, one has to wonder what they would do with the estate's claims against them.

## **Conclusion**

The Objector Group is involved in sharp litigation tactics with the Trustee. They have started fires, yelled "smoke," and pointed at the Trustee. Their latest complaints related to WFBC's Assignee are in the same pattern. WFBC's Assignee is not a creditor. WFBC's

13

Assignee is not a party in interest.  The Trustee's disclosures complied with the Bankruptcy Rules and the Bankruptcy Code.  The Trustee has conducted this case efficiently and effectively and has proposed a Plan that provides an option for unsecured creditors to receive an estimated 40 cents on the dollar.  The Trustee's investigations into creditor shenanigans are uncovering concealed facts and actions that could significantly increase that return.  The Trustee is currently prosecuting over twenty adversary proceedings.  There is no good reason to remove the Trustee and many sufficient reasons to deny the Renewed Objection and Joinder.

WHEREFORE, the Trustee requests that the Renewed Objection and Joinder be denied, and the Trustee afforded all just and proper relief for himself and for the Estate.

Respectfully submitted,

James A. Knauer
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
Telephone: 317-692-9000
Facsimile: 317-777-7451
jak@kgrlaw.com

*/s/* James A. Knauer
*Chapter 11 Trustee*

FAEGRE BAKER DANIELS LLP

By:   /s/ Terry E. Hall

*Counsel for James A. Knauer, Chapter 11 Trustee*

James M. Carr (#3128-49)
Kevin M. Toner (#11343-49)
Terry E. Hall (#22041-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
dustin.deneal@faegrebd.com

Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 13, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>cbowles@bgdlegal.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>james@bgdlegal.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |
| Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Ivana B. Shallcross<br>ishallcross@bgdlegal.com | Deborah Caruso<br>dcaruso@daleeke.com |
| Meredith R. Thomas<br>mthomas@daleeke.com | William Robert Meyer, II<br>rmeyer@stites.com | Allen Morris<br>amorris@stites.com |
| Charles R. Wharton<br>Charles.R.Wharton@usdoj.gov | James Bryan Johnston<br>bjtexas59@hotmail.com | James T. Young<br>james@rubin-levin.net |
| David L. LeBas<br>dlebas@namanhowell.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| Jessica E. Yates<br>jyates@swlaw.com | John Huffaker<br>john.huffaker@sprouselaw.com | Matthew J. Ochs<br>kim.maynes@moyewhite.com |
| Laura Day Delcotto<br>ldelcotto@dlgfirm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Ross A. Plourde<br>ross.plourde@mcafeetaft.com | Walter Scott Newbern<br>wsnewbern@msn.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| Todd J. Johnston<br>tjohnston@mcjllp.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Karen L. Lobring<br>lobring@msn.com | Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | Lisa Koch Bryant<br>courtmail@fbhlaw.net |
| Elliott D. Levin<br>edl@rubin-levin.net | John M. Rogers<br>johnr@rubin-levin.net | John David Hoover<br>jdhoover@hooverhull.com |
| Sean T. White<br>swhite@hooverhull.com | Jay P. Kennedy<br>jpk@kgrlaw.com | John R. Burns<br>john.burns@faegrebd.com |

15

| | | |
|---|---|---|
| Michael W. McClain<br>mike@kentuckytrial.com | William E Smith<br>wsmith@k-glaw.com | Kayla D. Britton<br>kayla.britton@faegrebd.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Thomas C Scherer<br>tscherer@bgdlegal.com | David A. Laird<br>david.laird@moyewhite.com |
| Jerald I. Ancel<br>jancel@taftlaw.com | Jeffrey J. Graham<br>jgraham@taftlaw.com | Trevor L. Earl<br>tearl@rwsvlaw.com |
| David Alan Domina<br>dad@dominalaw.com | Kent A Britt<br>kabritt@vorys.com | Joshua N. Stine<br>kabritt@vorys.com |
| Jill Zengler Julian<br>Jill.Julian@usdoj.gov | Jeffrey L Hunter<br>jeff.hunter@usdoj.gov | Amelia Martin Adams<br>aadams@dlgfirm.com |
| Michael Wayne Oyler<br>moyler@rwsvlaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Robert A. Bell<br>rabell@vorys.com |
| James E. Rossow<br>jim@rubin-levin.net | James B. Lind<br>jblind@vorys.com | Melissa S. Giberson<br>msgiberson@vorys.com |
| Steven A. Brehm<br>sbrehm@ bgdlegal.com | Anthony G. Raluy<br>traluy@fbhlaw.net | U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov |
| James M. Carr<br>james.carr@faegrebd.com | Jack S. Dawson<br>jdawson@millerdollarhide.com | Dustin R. DeNeal<br>dustin.deneal@faegrebd.com |
| Shawna M. Eikenberry<br>shawna.eikenberry@faegrebd.com | Terry E. Hall<br>terry.hall@faegrebd.com | Jay Jaffe<br>jay.jaffe@faegrebd.com |
| James A. Knauer<br>jak@kgrlaw.com | Erick P. Knoblock<br>eknoblock@daleeke.com | Harmony A. Mappes<br>harmony.mappes@faegrebd.com |
| Christie A. Moore<br>cm@gdm.com | Shiv Ghuman O'Neill<br>shiv.oneill@faegrebd.com | Wendy W. Ponader<br>wendy.ponader@faegrebd.com |
| Peter M. Gannott<br>pgannott@gannottlaw.com | Eric C. Redman<br>ksmith@redmanludwig.com | Joe T. Roberts<br>jratty@windstream.net |
| Joseph H. Rogers<br>jrogers@millerdollarhide.com | James E. Smith<br>jsmith@smithakins.com | Robert K. Stanley<br>robert.stanley@faegrebd.com |
| Andrew D. Stosberg<br>astosberg@lloydmc.com | Kevin M. Toner<br>kevin.toner@faegrebd.com | Andrea L. Wasson<br>andrea@wassonthornhill.com |
| Christopher M. Trapp<br>ctrapp@rubin-levin.net | Eric W. Richardson<br>ewrichardson@vorys.com | Joshua Elliott Clubb<br>joshclubb@gmail.com |

I further certify that on August 13, 2012, a copy of the foregoing pleading was served via electronic mail transmission on the following:

| | |
|---|---|
| Ashley S. Rusher<br>asr@blancolaw.com | Darla J. Gabbitas<br>darla.gabbitas@moyewhite.com |

/s/  Terry E. Hall