UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC, | : | (Judge Basil H. Lorch III) |
| Debtor. | : | |
| | : | **MOTION OF JOINT CREDITORS IN LIMINE AND TO COMPEL TESTIMONY AND PRODUCTION OF DOCUMENTS** |
| | : | |

_____

The First Bank and Trust Company, Bluegrass Stockyards East, LLC, Bluegrass Stockyards, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards of Campbellsville, LLC, East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, Inc., Piedmont Livestock Company, Inc., Alton Darnell, and CPC Livestock, LLC (collectively "Joint Creditors") move this Court:

(a)  for a determination prior to the commencement of the Omnibus Hearings on several motions scheduled for August 20, 2012 to make a threshold determination of the scope and extent to which the Trustee and his counsel may properly assert the attorney-client privilege to shield discussions among them about the nature and extent of disclosures required under Fed. R. Bankr. P. 2014 and 2007.1; and

(b)  to compel Trustee James A. Knauer to provide complete deposition testimony and to provide a complete production of documents on subjects

>of inquiry that are not privileged and cannot be shielded, notwithstanding objections of counsel during – and motion for protective order filed minutes before – the depositions conducted on July 27 and August 3, 2012.

The additional deposition testimony and documents sought are limited, narrow and unprivileged. The Joint Creditors have no other source from which to obtain this discovery on an issue that is of tremendous importance to the Estate as a whole, and of utmost importance to the integrity of the bankruptcy system as expressed in this case.

The issues of the intentional nondisclosures, and the written waiver agreements that fully disclose the lack of disinterestedness of the Trustee, and his counsel of choice, have only recently come to light in these proceedings. Although the Bankruptcy Code, and the caselaw interpreting it, do not require the bankruptcy court or creditors "to search the record for possible conflicts of interest" (In re B H & P, Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991)), now some eighteen (18) months into this process, after several creditors had raised questions about the ongoing seeming favoritism given to "the bank group," this is precisely what creditors were forced to do. Only in late June did the creditors discover the connection of the Trustee to a creditor holding a $10 million joint participant interest, a creditor whose rights are greatly affected by causes of action that belong only to this Estate.

Then, only in late July, after the Trustee proposed a Plan of Liquidation in which he offers a global release of Fifth Third Bank in exchange for little to no consideration, did the Joint Creditors finally obtain documents – which had been redacted from view in discovery – that established not only that creditor Wells Fargo entered into a written conflict waiver

2

agreement with the Trustee because of longstanding and ongoing representation of Wells Fargo for which the Trustee was lead counsel, but also that Wells Fargo was permitted to dictate requirements of the engagement of the Trustee's choice of counsel, Baker & Daniels.  The documents also state that Baker & Daniels had a "longstanding relationship" with Wells Fargo and significant current, active engagements.  Finally, only upon receipt of the actual Plan exhibits with the actual release documents, is it also clear that the Trustee is intending to release himself and all the Estate professionals as well from any and all claims against them.

   These documents, along with others showing the very active role of Wells Fargo in the proceedings, directly contradict the Disclosure Affidavits of not only the Trustee but also of his counsel.  Were it not for the professionalism of counsel for Wells Fargo in recognizing that the documents were inappropriately redacted, perhaps the creditors would be less aware of this relationship.  Nonetheless, the Trustee and Baker & Daniels continue to refuse to produce documents and email correspondence relating to their discussions about the connection of Wells Fargo, and the Trustee refused, upon advice of his counsel, to answer questions about this subject at his depositions on July 27 and August 3, 2012. Even if the Court cannot review the entire deposition transcript, even the first 25 pages or so will give the Court the full flavor of the testimony and the objections and instructions of the Trustee's counsel, both of whom, witness and counsel, owe fiduciary duties to these Joint Creditors and all the hundreds of creditors in this Estate.  As shown below, the subject matter of mandatory public disclosures prior to a professional's engagement in a bankruptcy, and for the purpose of determining connections to disclose, are not protected by the attorney-client privilege.  Particularly where, as here, the information has been actively concealed by lack of disclosure, on an ongoing day to day basis for well over a year and a half, substantive responses were not provided when the subjects were

raised, and crucial documents were inappropriately redacted, there must be full and complete discussion with no claim of privilege.

I.        THE NARROW MATTERS OF INQUIRY ARE NOT PRIVILEGED

A debtor has no expectation of confidentiality and thus no privilege to assert when communicated information is to be disclosed in bankruptcy filings. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991).  Where there is no reasonable expectation of confidentiality, the attorney-client privilege is unavailable.  This principle is no less applicable, and likely more so, with communications relating to mandatory disclosures that both a Trustee and his professionals are required to make under Fed. R. Bankr. P. 2007.1 and 2014.

A Trustee must disclose "all [his] connections with the debtor, creditors, [and] any other parties in interest." Fed. R. Bankr. P. 2007.1(c).  Likewise, a Trustee's professionals must makes similar disclosures. Fed. R. Bankr. P. 2014.  The disclosure requirements under the Bankruptcy Code are not discretionary, and an applicant "cannot pick and choose which connections are irrelevant or trivial." United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999) (internal quotation marks and citation omitted).  A prospective chapter 11 trustee, along with his proposed counsel, who are required to disclose *all* "connections" to creditors or parties in interest have no reasonable expectation that any information relating to such proposed retention will be kept confidential.  Therefore, the communications pertaining to such *required* disclosures cannot be protected by the attorney-client privilege. In re Eddy, 304 B.R. 591, 597 (Bankr. D. Mass. 2004) ("The communications regarding retention and compensation between Attorney Lupan and the Debtor, conducted during the pendency of the Chapter 11 case, are not subject to the attorney-client privilege."  (Emphasis added.)).

4

The Seventh Circuit's opinion in <u>Gellene</u> case is particularly instructive on this subject. Although it goes without saying that under normal circumstances discussions among partners in a single law firm relating to subjects of the legal engagement would be sacrosanct under either attorney-client privilege or work product protection, the discussions of Mr. Gellene and his partner were introduced in evidence and discussed by the court:

> "At Milbank, one partner recognized that there might be a conflict of interest between Milbank's representation of Salovaara in the SalovaaraEckert dispute and its representation of Bucyrus in its bankruptcy proceedings. At a meeting on December 22, 1993, with Mr. Gellene, Lederman and Milbank partner Toni Lichstein, all of whom were working on the Bucyrus bankruptcy and the Salovaara-Eckert dispute, Lichstein raised the possibility of conflict. Both Lederman and Mr. Gellene stated it was not a problem. Lichstein raised the issue again in March 1994 after she, representing Salovaara, had attended a South Street investors' meeting at which South Street's investment in Bucyrus was discussed. At that time, Mr. Gellene responded that Salovaara was not a creditor of Bucyrus and that all disclosure obligations had been satisfied."

<u>Gellene</u>, 182 F.3d at 583. In addition to disclosure regarding the substantive discussions at certain meetings, even an internal memorandum at the law firm was introduced in evidence and discussed by the Seventh Circuit. <u>Id</u>. at 583-84 nn. 6-7. Even if the privilege issue were not directly raised by Mr. Gellene, as the Trustee and his counsel have done here, and overruled by the court, the Seventh Circuit opinion at least tacitly recognizes that no privilege would shield these crucial discussions relating to disclosure obligations.

II.     DEPOSITION TESTIMONY AND DOCUMENT PRODUCTION ARE INCOMPLETE

Although the Trustee produced a smattering of documents at the commencement of his July 27 deposition – most of which were communications with the Joint Creditors and already in their possession – the deposition was preceded by a motion for protective order, just

5

24 minutes before it began, refusing to produce the vast majority of the requested documents and refusing to provide a privilege log of the documents withheld.  The Joint Creditors requested documents, particularly email correspondence, between the Trustee and others relating to the lack of disclosure of his and his law firm's connection with Wells Fargo and what has now been sworn to as a  deliberate decision, reached collectively after discussions between the Trustee and his then proposed counsel, that each of them was correct to refrain from mentioning their respective  deep connections, and that each of them was correct in not mentioning at all any of the waiver agreements with the two secured lenders in the case.   To the extent such documents exist, they are not subject to attorney-client privilege or work product protection and must be produced prior to the August 20, 2012 hearing on the relevant pending motions.  As a matter of law, under <u>Gellene</u> in the Seventh Circuit, and joined by other Circuit Courts, intentional nondisclosures are required, by controlling law,  to demand the most severe of remedies.

       The Trustee offered a partial suggestion relating to his own lack of disclosure of Wells Fargo even though the potential conflict was significant enough for him to seek a consent to representation and waiver of conflicts of interest from Wells Fargo.  The Trustee's Affidavit of Disinterest states that he learned of the identity of persons about whom he needed to examine for potential conflicts from "the filed appearances and docket entries of the Debtor." Dkt. No. 98-2, p. 1.  But, the first two docket entries of telephonic conferences with the Court, December 7, 2010 (Dkt. No. 28) and December 13, 2010 (Dkt. No. 68) clearly identify "Jeff Wegner" attorney for "Wells Fargo Capital." Nonetheless, the Trustee claimed he did not know of the role of Wells Fargo until after he prepared and filed his affidavit.  Deposition of James Knauer ("Knauer Dep."), T. Vol. I, p. 23, lns. 13-19.  He claimed he only learned of the role of Wells Fargo after discussing the engagement with "his counsel" at Baker & Daniels – even though Baker &

6

Daniels were not his personal counsel, nor counsel for his law firm and had not yet been engaged to represent the Estate. Id. at 26, ln. 10 – 27, ln. 19; Id. at Vol. II, p. 198, ln. 2 – 199, ln. 10. He further claimed that he discussed whether he or his counsel should disclose any connection with Wells Fargo and affirmatively decided that neither had an obligation to do so. Id. at Vol. I, p. 26, ln.10 – 27, ln. 19. He claimed they collectively decided that "because [Wells Fargo was] a participant, that they were not a creditor, a party in interest" the connection did not rise to the level of disclosure. Id. at 27, lns. 14-19. But, even though he opened the door to an otherwise non-privileged communication, he nonetheless refused to answer further questions on the subject of those highly relevant discussions:

> "Q. Did you have any discussion relating – with Baker & Daniels – relating to, I've already signed my disclosure but you haven't signed yours yet, so why don't you include Wells Fargo in your disclosure statement?" *REFUSAL TO ANSWER ON ATTY-CLIENT PRIVILEGE.*
>
> Knauer Depo. T. Vol. I, p. 32, ln. 22 – 33, ln. 1.
>
> "Q. …Exhibit 3, which is your email to Gary Heck at Wells Fargo & Company?
>
> A. Yes.
>
> Q. The penultimate sentence states, 'If you consent to my service as bankruptcy trustee in this matter, I acknowledge and agree that the service will be subject to all applicable Rules of Professional Conduct, and that I will not disclose any confidential information concerning Wells Fargo or its businesses (including without limitation trade secrets, matters covered by the attorney-client privilege, and matters covered by the attorney work product privilege) or 2, use any such matter in any proceeding without Wells Fargo's consent.'
>
> Did I read that correctly, sir?
>
> A. Yes.

7

> Q. …[W]here did you come up with that language that you drafted for that email?" *REFUSAL TO ANSWER ATTY-CLIENT PRIVILEGE.*

Id. at Vol. II, p. 196, ln. 5- 197, ln. 5.

Although the affidavit of James M. Carr [Dkt. No. 1328] provides important, additional information (e.g., confirming Baker & Daniels' long-standing relationship with Wells Fargo), the Trustee and Baker & Daniels are attempting to draw a distinction among various Wells Fargo entities in the filings of August 13, 2012. However, both the Trustee's and Baker & Daniels' conflict waivers with Wells Fargo refer to "Wells Fargo & Company" consistent with the "Wells Fargo & Company Policy Regarding Legal Conflicts of Interest." It is apparent that Wells Fargo Bank, N.A., through its "Wells Fargo & Company" policy, draws no such distinction. Therefore, questions on the topics discussed above are not only important, but remain unanswered.

Regardless of whether "Wells Fargo & Company" or "Wells Fargo Business Credit, Inc." is the appropriate entity involved in these conflict waivers, the mutual decision not to disclose any connection with "Wells Fargo" is an appropriate subject of inquiry:

> "Q. In connection with your decision whether to amend your affidavit of disinterestedness after you learned of the role of Wells Fargo in the Eastern case, did you consult with and rely upon the advice of your counsel.
>
> A. Yes.
>
> Q. So I have this clear, you had a potential conflict by virtue of representing Wells Fargo and your counsel had a potential conflict by virtue of representing Wells Fargo, and you relied upon advice from counsel who had the same conflict, whether or not it should be disclosed in your affidavit?" *REFUSAL TO ANSWER ATTY-CLIENT PRIVILEGE.*

Id. at 202, ln. 5 – 203, ln. 4.

8

III.       CONCLUSION

       The subject matter of these inquiries could not be more crucial to the present status of this Estate.  Although the Trustee would prefer to describe the Joint Creditors as a cabal of malcontents with a separate agenda, several creditors and livestock organizations have simply questioned whether, in these specific circumstances, the Trustee and his counsel have administered this Estate for the benefit of "the bank group" to whom the Trustee has made promises of distribution, and with whom, the Trustee is ethically required not to "act adversely" towards.  Further concealment of these facts, improperly concealed for far too long, cannot be countenanced by this Court.

Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0300
Telecopier: (513) 632-0319
Email: ddonnellon@ficlaw.com
   sweigand@ficlaw.com

Attorneys for The First Bank and Trust Company

/s/ W. Scott Newbern
W. Scott Newbern
W. SCOTT NEWBERN, P.L.
2982 East Giverny Circle
Tallahassee, FL 32309
Telepohone: (850) 591-1707
Telecopier: (850) 894-0871
Email: wsnewbern@msn.com

Attorney for CPC Livestock, LLC

/s/ Laura Day DelCotto
Laura Day DelCotto
DELCOTTO LAW GROUP PLLC
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Telecopier: (859) 281-1179
Email: ldelcotto@dlgfirm.com
   wharned@dlgfirm.com

Attorneys for Bluegrass Stockyards East, LLC, Bluegrass Stockyards, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards of Campbellsville, LLC, East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, Inc., Piedmont Livestock Company, Inc., and Alton Darnell

10

## **CERTIFICATE OF SERVICE**

I certify that on the 14th day of August, 2012, I electronically filed the foregoing Motion of Joint Creditors in Limine and to Compel Testimony and Production of Documents with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | John Frederick Massouh<br>john.massouh@sprouselaw.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com |
| C.R. Bowles, Jr<br>crb@gdm.com | John W. Ames<br>jwa@gdm.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| James A. Knauer<br>jak@kgrlaw.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Jessica E. Yates<br>jyates@swlaw.com |
| John Hunt Lovell<br>john@lovell-law.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Laura Day Delcotto<br>ldelcotto@dlgfirm.com |
| Jeffrey R Erler<br>jeffe@bellnunnally.com | Ivana B. Shallcross<br>ibs@gdm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| Edward M King<br>tking@fbtlaw.com | Deborah Caruso<br>decaruso@daleek.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Randall D. LaTour<br>rdlatour@vorys.com | Meredith R. Thomas<br>mthomas@daleeke.com | Ross A. Plourde<br>ross.plourde@mcafeetaft.com |
| Bret S. Clement<br>bclement@acs-law.com | William Robert Meyer, II<br>rmeyer@stites.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| John R. Carr, III<br>jrciii@acs-law.com | Christie A. Moore<br>cm@gdm.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| James M. Carr<br>jim.carr@bakerd.com | Allen Morris<br>amorris@stites.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Robert K. Stanley<br>robert.stanley@bakerd.com | James Bryan Johnston<br>bjtexas59@hotmail.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Terry E. Hall<br>terry.hall@bakerd.com | James T. Young<br>james@rubin-levin.net | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Dustin R. DeNeal<br>dustin.deneal@bakerd.com | David L. LeBas<br>dlebas@namanhowell.com | Karen L. Lobring<br>lobring@msn.com |

| | | |
|---|---|---|
| Sandra D. Freeburger<br>sfreeburger@dsf-atty.com | David A. Laird<br>david.laird@moyewhite.com | Andrea L. Wasson<br>andreawassonatty@gmail.com |
| Lisa Kock Bryant<br>courtmail@fbhlaw.net | Jerald I. Ancel<br>jancel@taftlaw.com | Anthony G. Raluy<br>traluy@fbhlaw.net |
| Elliott D. Levin<br>robin@rubin-levin.net<br>edl@trustesoultions.com | Jeffrey J. Graham<br>jgraham@taftlaw.com | Harmony A. Mappes<br>Harmony.mappes@faegrebd.com |
| John M. Rogers<br>johnr@rubin-levin.net | Trevor L. Earl<br>tearl@rwsvlaw.com | James B. Lind<br>jblind@vorys.com |
| Jeremy S. Rogers<br>Jeremy.rogers@dinslaw.com | Christopher E. Baker<br>cbaker@hklawfirm.com | James E. Rossow, Jr.<br>jim@rubin-levin.net |
| John David Hoover<br>jdhoover@hovverhull.com | David Alan Domina<br>dad@dominalaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com |
| Sean T. White<br>swhite@hooverhull.com | Kent A Britt<br>kabritt@vorys.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| Robert H. Foree<br>robertforee@bellsouth.net | Joshua N. Stine<br>jnstine@vorys.com | Kevin M. Toner<br>Kevin.toner@faegrebd.com |
| Sarah Stites Fanzini<br>sfanzini@hopperblackwell.com | Jill Zengler Julian<br>Jill.Julian@usdoj.gov | Kim Martin Lewis<br>Kim.lewis@dinslaw.com |
| Michael W. McClain<br>mike@kentuckytrial.com | Jeffrey L. Hunter<br>jeff.hunter@usdoj.gov | Melissa S. Giberson<br>msgiverson@vorys.com |
| William E. Smith<br>wsmith@k-glaw.com | Amelia Martin Adams<br>aadams@gldfirm.com | John Huffaker<br>John.huffaker@sprouselaw.com |
| Susan K. Roberts<br>skr@stuartlaw.com | Michael Wayne Oyler<br>moyler@rwsvlaw.com | Shawna M. Eikenberry<br>Shawna.eikenberry@faegrebd.com |
| James Edwin McGhee<br>mcghee@derbycitylaw.com | Jason W. Cottrell<br>jwc@stuartlaw.com | Wendy W. Ponader<br>Wendy.ponader@faegrebd.com |
| Thomas C. Scherer<br>tscherer@binghammchale.com | Robert A. Bell<br>rabell@vorys.com | W. Wesley Harned<br>wharned@dlgfirm.com |

/s/ Daniel J. Donnellon
Daniel J. Donnellon

12