UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 10-93904-BHL-11 |
| EASTERN LIVESTOCK CO., LLC, | : | (Judge Basil H. Lorch III) |
| Debtor. | : | |
| | : | **REPLY MEMORANDUM IN SUPPORT OF MOTION OF THE FIRST BANK AND TRUST COMPANY TO REMOVE TRUSTEE PURSUANT TO 11 U.S.C. § 324** |
| | : | |
| | : | |
| | : | |
| | : | |

---

I.    INTRODUCTION

A.    With This Threshold Issue, the Trustee Has Asked This Court to Make New Law Departing From Well-Accepted Standards

In his response to the motions to remove him as Trustee, James A. Knauer places this Court in the precarious position of making law that could be cited for years to come for the proposition that a Trustee "DOES NOT" need to disclose in an Affidavit under Fed. R. Bankr. P. 2007.1 whether the Trustee has a "connection" with a party:

(a)    to whom he has given a "consent and conflict waiver" letter;[1]

(b)    when that party has appeared at multiple Court hearings;

---

[1] S.D.Ind. Local Rule B-2014-1 ("The Professional shall serve copies of all such waivers upon the Applicant and the Service List with the Employment Application or promptly following receipt by the Professional of a waiver." (emphasis added)); In re Jore Corp., 298 B.R. 703, 732 (Bankr. D. Mont. 2003).

(c)   with whom he has interacted frequently (approximately twice a month) in private meetings throughout the Chapter 11 proceedings; and

(d)   where the party owns more than thirty percent (30%) of the Debtor's $32.5 million of secured debt.[2]

As set forth below, individually courts have found that professionals cannot pick and choose[3] which connections to disclose and must disclose them under these circumstances. In the aggregate of all four circumstances noted above, this Court would be creating ground-breaking new law if it found that disclosure was not required.

      B.    Wells Fargo's Connection Was Apparent from the Original Docket Entries Upon Which The Trustee Testified He Relied

Although the Trustee erroneously wishes to cast these objections as an end run attack upon his proposed Plan to release Fifth Third, the timing is completely irrelevant. The error and deliberate non-disclosure began with the Trustee's original affidavit of disinterestedness. In his original affidavit, the Trustee plainly stated that he based his determination about potential conflicts in his representation upon the "the filed appearances and docket entries of the Debtor." Affidavit of Disinterest, p. 1 [Dkt. No. 98-2]; Deposition of James Knauer ("Knauer Dep."), T.p. 23, lns. 13-19. But, the docket entries plainly show, "Jeff Wegner

---

[2] In the Matter of James Wilson Associates, 965 F.2d 160, 169 (7th Cir. 1992) (stating that a party in interest has standing where the party "has a legally protected interest that could be affected by a bankruptcy proceeding . . . everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims."). Here, Wells Fargo's only source of recovery under the Participation Agreement would be from a recovery of the Debtor's res. The Trustee and FBD have conceded as much by virtue of their obtaining conflict waivers from Wells Fargo.

[3] United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999).

– Wells Fargo Capital" appeared via telephone at the very first and second major hearings in this proceeding.

It is apparent from the later-obtained waiver and consent which follows the "Wells Fargo & Company Policy Regarding Legal Conflicts of Interest"[4] that Wells Fargo draws no distinction or hairsplitting for conflicts purposes between representing the National Association of this mammoth bank, or one of its minor subsidiaries. It should have been clear to anyone reviewing the docket entries – much less a potential Trustee sanctioned by the U.S. Trustee's office, that "Jeff Wegner – Wells Fargo Capital," would not participate in the very first two threshold hearings in the proceeding out of an idle curiosity, but rather out of some "connection" to the case. At this point, the Trustee had reason, and even a duty, to disclose his representation of another Wells Fargo entity in his initial affidavit. He did not. Rather, when he allegedly subsequently learned of the role of Wells Fargo, he found it significant enough to seek a consent and waiver letter from his client.

C.    The Local Rules Mandate that the Trustee Produce a Copy of the Consent and Waiver Letter He Obtained from Wells Fargo

Not only did the Trustee fail to disclose his connection with Wells Fargo at the time he decided to seek the consent and waiver letter, he also failed to produce copies of his waiver letter with Wells Fargo as required by the **mandatory** language of Local Rule B-2014-1 of the United States Bankruptcy Court for the Southern District of Indiana:

> "If a Professional seeks to resolve any potential conflict of interest concerning any other client or former client, the Professional shall comply with applicable Rules of Professional Conduct. All

---

[4] The 2012 version of the Policy is available on Wells Fargo's website: https://www.wellsfargo.com/downloads/pdf/about/corporate/legal/conflicts_policy.pdf.

consents or waivers of conflicts of interest ('waivers') shall be in writing.  **The Professional shall serve copies of all such waivers upon the Applicant and the Service List**[5] **with the Employment Application or promptly following receipt by the Professional of a waiver**." (emphasis added).

Local Rule B-2014-1 contains no limitations or exceptions relating to whether a copy of any waiver must be provided to the creditors only when involving a connection to a debtor, creditor or other party in interest.  If a waiver is obtained, then it must be disclosed.  Since both the Trustee, and his primary counsel obtained such consent and conflict waivers, they both had duties to disclose and serve copies of the waivers with Wells Fargo regardless of whether Wells Fargo is a "party in interest" under Fed. R. Bankr. P. 2007.1 and 2014.  None of the creditors, other than Wells Fargo and Fifth Third, obtained a copy of the Trustee's waiver until July 27, 2012.  FBD uploaded a redacted form of the waiver letter produced by Wells Fargo, but the Objecting Parties did not receive an unredacted copy until July 26, 2012.[6]

> D.      The Trustee Made a Joint Decision with Primary Counsel that Neither Would Disclose the Connection to Wells Fargo

Rather than disclosing his connections to Wells Fargo, the Trustee testified he learned that Wells Fargo Business Credit was a "participant" in the Fifth Third loan to Eastern Livestock on or about December 27, 2012 – only four days after being appointed Trustee. Knauer Dep., T.p. 22, lns. 14-16.  In response to questions that remain largely unanswered, the Trustee asserts he, and his counsel Faegre Baker Daniels LLP (f/k/a Baker & Daniels LLP)

---

[5] "Service List" is defined broadly under Local Rule B-1000-1(b)(4) to include:  "Debtor, Debtor's counsel, the twenty largest unsecured creditors in a Chapter 11 case or, if applicable, the unsecured creditors' committee, the UST, all secured creditors, any indenture trustee, any other committee appointed under 11 U.S.C. § 1102 or 1114, and any counsel or party that has filed an appearance pursuant to S.D.Ind. B-9010-1." (emphasis added).

[6] Upon information and belief, the parties and counsel comprising the Service List as defined under Local Rule B-1000-1(b)(4) have still not been served with copies of the waiver letters from the Trustee and FBD.

("FBD"), jointly determined that Wells Fargo did not need to be disclosed as a party with a connection to the proceeding, BUT, both firms needed to obtain consent and waiver letters from Wells Fargo.  The email exchange among Wells Fargo's in-house counsel and the language of the two consent and waiver agreements is quite telling.

Terry Hall's (a partner with FBD) consent and waiver letter references the Wells Fargo & Company Policy Regarding Legal Conflicts of Interest (2010 version attached as Exhibit 1) (filed under seal). ███████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████ Thus, the Trustee was placed on notice by his client "Wells Fargo & Company" that he must maintain loyalty under the Rules of Professional Conduct to Wells Fargo, which, in turn, would extend to loyalties to Fifth Third.

Not only should the existence of the "connection" have been fully disclosed, but the Local Rules mandate that the creditors should have been made aware of the nature and extent of the exceedingly narrow conflict waiver letters that promise to maintain professional loyalty to Wells Fargo.  This is not an issue as to whether the Trustee has, in fact, engaged in untoward

conduct or divided his loyalties to the creditors versus Wells Fargo; the caselaw does not require as much. In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The scope of disclosure is much broader than the question of disqualification;" noting that a disclosure violation may exist even where the undisclosed connection does not amount to a conflict; "The existence of an arguable conflict must be disclosed if only to be explained away."). Nor is this – as FBD and Trustee counsel would frame it – an objection to the Trustee's decision not to sue Fifth Third Bank. In fact, First Bank has already sued Fifth Third Bank in an action that should proceed regardless of the Trustee's attempted and tainted global release of Fifth Third. This is a threshold issue that the Trustee should have disclosed a connection with Wells Fargo Bank from the moment he reviewed the docket entries, at a minimum, and when he obtained an exceedingly narrow consent to representation from Wells Fargo – fully and promptly disclosing the nature of that waiver – to allow the Court and the creditors to evaluate whether that would serve as an impediment to his fiduciary role.

> E.   The Trustee Had Ample, Timely Opportunity to Cure His Errors Before Reaching This Critical Point

There was a separate occasion for the Trustee to have come forward with his Wells Fargo connection and explain to his fiduciaries that the bank was a mere $10 million participant and disclose this narrow conflict waiver. At the Omnibus Hearing on December 14, 2011, Bluegrass raised a rhetorical question in the objection to the fee applications whether there was a potential conflict with Wells Fargo.[7] At that point, Special Counsel had only recently re-started the Trustee's investigation into Fifth Third and had not taken a single deposition. Had the

---

[7] However, this issue was neither briefed in formal papers nor orally argued at a hearing. Therefore, the conflict cannot possibility have been tacitly approved by the Court's granting interim orders over numerous objections that included Bluegrass's rhetorical question

Trustee come forward and responded to this rhetorical question about which the creditors were unaware, and disclosed the connection to Wells Fargo, disclosed the narrow consent waiver, and offered his explanation, perhaps the investigation could have taken a different course and given the creditors more assurance of its independence.  But, the Trustee chose not to do so.  Later then, creditors: (a) discovered thousands of the Wells Fargo documents were mysteriously missing from the FBD's ftp website until July 2012, after First Bank and others notified Special Counsel to the Trustee about the missing documents; and (b) obtained the unredacted versions of the Wells Fargo documents and emails relating to conflict waiver and consent to representation (including the conflict waiver letter from FBD to Wells Fargo) only on July 26, 2012.  Accordingly, the Objectors are left to speculate as to the reasons for these actions and are pilloried and attacked by being forced to raise them now.  The instant motions and objections are not an attack on the Trustee's business judgment – they present a question of whether this Court should break new ground in Bankruptcy law, which would become the hallmark of cited authority, that a Trustee "CAN," in fact, pick and choose what parties he needs to disclose a connection to, and which he does not.[8]

> F.    The Belated Explanation that Wells Fargo Is a Mere Participant Does Not Cure The Non-Disclosure

The Trustee and FBD now attempt to justify the failure to disclose the connection between their firms and a client significantly larger than Fifth Third because Wells Fargo was a "mere participant" in the Eastern Livestock loan.  FBD Response, p. 4; Trustee Response, p. 6.[9]

---

[8] Cf. United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999) (An applicant "cannot pick and choose which connections are irrelevant or trivial.") (internal quotation marks and citation omitted).

[9] Response to Renewal of Objection of First Bank to Application to Employ Baker & Daniels LLP (NKA Faegre Baker Daniels LLP) As Counsel to Trustee and the Bluegrass Joinder Thereto ("FBD Response") [Dkt. No. 1327],
(footnote cont'd…)

That rationale could only have been appropriate to establish that FBD and the Trustee met the disinterestedness standard if, in fact, the connection had been properly disclosed in 2010. In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts. . . . The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away.") (citations omitted). The Motion to Remove[10] properly places before the Court a two part question: (1) Did the Trustee have connections to Wells Fargo? YES.[11] (2) Were those connections disclosed? NO. This should end the inquiry under Fed. R. Bankr. P. 2007.1 and 2014 regardless of the hindsight explanations.

II.        UNDER THE EXTREMELY LIMITED CONFLICT WAIVER GIVEN THE
           TRUSTEE BY WELLS FARGO, THE TRUSTEE COULD HAVE NEVER
           TAKEN ACTION ADVERSE TO FIFTH THIRD OR WELLS FARGO

           To support his argument that he is disinterested, the Trustee claims that he is "unrestricted and may be directly adverse to Fifth Third." Trustee Response, p. 10. He states further that "If the Trustee has concluded that suing Fifth Third was in the best interests of creditors he would do so and there would be no impediments." Id. These statements are

_____

(…cont'd)
and the Trustee's Response to Motions to Remove Trustee ("Trustee Response") [Dkt. No. 1329] (collectively, "Responses").

[10] Motion of The First Bank and Trust Company to Remove Trustee Pursuant to 11 U.S.C. § 324 ("Motion to Remove") [Dkt. No. 1239].

[11] It is undisputed by the Trustee that revenues from Wells Fargo were between 1.5% of the gross income of Kroger Gardis & Regas in 2010. Affidavit of James A. Knauer, Trustee as Supplemental Rule 2014 Disclosure [Dkt. No. 1330]. FBD had revenues from Wells Fargo of approximately $425,000 in 2010, and approximately 2.5% of the total revenues of FBD in 2010. Even after the merger by FBD in January 2012, FBD failed to supplement its disclosures until August 13, 2012.

incorrect.  Even if Special Counsel (Hoover Hull) were free of conflicts, Special Counsel could not take any adverse action against Fifth Third <u>on behalf of the Trustee under the constraints placed upon the Trustee by Wells Fargo and the Indiana Rules of Professional Conduct</u>.

Only four days after his appointment, the Trustee obtained a consent to representation and conflict waiver from Wells Fargo.  In his conflict waiver, the Trustee acknowledges that "Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment, although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interest of Wells Fargo."  December 28, 2010 Email from James Knauer to Gary Heck and Michael J. Watson [JAK 417] (attached as Exhibit 3). This statement is ███████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████.

The scope of the Trustee's conflict waiver with Wells Fargo, however, is narrow: "If you consent to my service as bankruptcy trustee in this matter, I acknowledge and agree that **the service will be subject to all applicable rules of professional conduct** and that I will not disclose any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), or (2) use such information in any matter or proceeding without Wells Fargo's consent."  The language of this exceedingly limited waiver is mandated by Wells Fargo in its "Wells Fargo & Company Policy Regarding Conflicts of

Interest" referenced in the FBD conflict waiver.[12]  This policy is issued by in-house counsel to refer to the global umbrella of Wells Fargo Bank entities, and mandates uniformity with its Sample Waiver letter that tracks the language of the Trustee's conflict waiver email with precision.  It is readily apparent from the Wells Fargo & Company Policy, that Wells Fargo rejects the kind of hairsplitting with respect to its affiliate companies suggested by the Trustee and his counsel in their respective briefs.

By agreeing to abide by all applicable rules of professional conduct (which must be observed regardless of whether this language was expressly included in the conflict waiver email), the Trustee could <u>never</u> have maintained any adverse action against Wells Fargo or Fifth Third.  First, the letter to Wells Fargo is inadequate for purposes of providing informed consent as required under Indiana Rules of Professional Conduct 1.7(b).[13]  The Trustee could represent the Estate, while also maintaining representation of Wells Fargo, only if the four requirements of Rule 1.7(b) are met.  One of these four requirements is that "each affected client gives informed consent, confirmed in writing."  Although the Debtor did not provide any consent (meaning that one of the four requirements under Rule 1.7(b) was not met), the December 28, 2010 email between the Trustee and Wells Fargo does not meet the high standard for obtaining informed consent.

"'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Ind.

---

[12] See e.g., Wells Fargo & Company Policy Regarding Legal Conflicts of Interest (Revised June 22, 2012), https://www.wellsfargo.com/downloads/pdf/about/corporate/legal/conflicts_policy.pdf.

[13] Local Rule B-2014-1(b)(ii) ("Professional shall comply with applicable Rules of Professional Conduct"); S.D.Ind.L.R. 83.5(g).

R. Prof. Cond. 1.0(e).  Comment 6 to Rule 1.0, which discusses informed consent, states that "Ordinarily, [obtaining informed consent] will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives."  The information required under Rule 1.0(e) (and further explained in Comment 6 to Rule 1.0) is completely absent from the conflict wavier in the document labeled JAK 417.[14]

Second, the Trustee's concurrent representation of Wells Fargo in other matters raises concerns about his loyalty to the creditors in this Estate, particularly with respect to whether the Trustee could effectively consider whether to file and ultimately file a lawsuit against two clients of the Trustee's law firm.  "Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent.  Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."  Cmt. 6 to Rule 1.7. Likewise, "a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."  Cmt. 7 to Rule 1.7.[15]

---

[14] The Trustee concludes that "Given its role as a loan participant, there appears to be no circumstances in which I, as a bankruptcy trustee, could initiate any adversary proceeding or other action against Wells Fargo."  This statement, however, is incorrect under In re Brooke Corp., 458 B.R. 579, 588 (Bankr. D. Kan. 2011), and Wells Fargo might be subject to a direct adversary proceeding.

[15] "The interest of clients 'actually conflict' . . . 'whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other.'  'The primary value at stake is cases of simultaneous or dual representation is the attorney's duty – and the client's legitimate expectation – of loyalty.'  A potential conflict exists whenever a lawyer's representation of one client might, in the future, become less effective by reason of his representation of the other."  Rodriguez v. Disner, No. 10-55309, 2012 U.S. App. LEXIS 16698, at *24 (9th Cir. Aug. 10, 2012) (citations omitted).

By logical extension, Wells Fargo promised Trustee Knauer that it would consent to his role as Trustee as long as he <u>still</u> agrees to comply with Rule 1.7 of the Indiana Rules of Professional Conduct (among other Rules) and will not "act as an advocate in [Eastern Livestock] against [Wells Fargo], even when the matters are totally unrelated."  Having been put on notice by Wells Fargo that it considered actions against Fifth Third ████████ Wells Fargo, and still agreeing to client loyalty to Wells Fargo with this meaningless consent, the Trustee could never have proposed any Plan or settlement without absolute consent of both Fifth Third and Wells Fargo.  A conflict of interest does exist because the Trustee's representation of Wells Fargo in unrelated matters created a significant risk that the Trustee's ability to consider, recommend or carry out an appropriate course of action in this Estate would be materially limited as a result of his other responsibilities or interests related to representing Wells Fargo.  Moreover, the Trustee's conflict waiver does not rise to the level of obtaining "informed consent" of Wells Fargo; following form with a company's policy does not necessarily mean that an attorney has fully met the requirements of the Rules of Professional Conduct.  Regardless of the Trustee's sentiments about informed consent, duties of loyalty to Wells Fargo, and duties of loyalty as Trustee, the Trustee's failure to disclose his connection with Wells Fargo and his failure to disclose the existence of and terms of his conflict waiver with Wells Fargo warrant removal.  The Trustee's decision not to make these disclosure for approximately 19 months has tainted all transactions between the Trustee and Wells Fargo/Fifth Third, including but not limited to the "settlement" relating to the proposed Chapter 11 Plan.

III.        THE TRUSTEE ATTEMPTS TO BACKFILL REASONS FOR WHY HE DID
            <u>NOT DISCLOSE AND WHY HE BELIEVES HE IS DISINTERESTED</u>

The Trustee concedes on page 6 of his Response that he "wishes that he had made the additional disclosure [relating to Wells Fargo] and regrets that he did not do so."  Following this

important admission, the Response attempts to backfill the gaping hole in the Disclosure
Affidavit by justifying the failure to disclose; but it is insufficient and too late.  In re BH&P, Inc.,
949 F.2d 1300, 1317-18 (3d Cir. 1991) (stating that a professional's duty to disclose "certainly
compels disclosure where, as here, the party had contemplated and discussed a specific situation
involving a potentiality for conflict. . . . This breach may have been the product of negligence,
but [n]egligence does not excuse the failure to disclose a possible conflict of interests.") (internal
quotation marks and citations omitted).

        The Trustee's law firm and FBD both have conceded that they have significant
relationships with Wells Fargo.  Prior to the Trustee's filing the application to employ FBD, the
Trustee and FBD discussed whether to disclose their connections to Wells Fargo.  Knauer Dep.,
p 27.  The details, however, of those communications are unknown.[16]  One critical detail that is
now known is that neither the Trustee nor FBD disclosed their connections with Wells Fargo to
this Court and the creditors prior to August 13, 2012.  Both the Trustee and FBD obtained
conflict waivers from Wells Fargo, and determined there was even an apparent need to inform
the United States Trustee of their connections to Wells Fargo recognizing the "possibility" that
Mr. Wharton may object to their non-disclosure.  Knauer Dep., T.p. 59.  Of course, disclosure to
the Office of the U.S. Trustee does not fulfill their disclosure requirements to the Court and the
creditor body.  In re Kappy Invs., Inc., 465 B.R. 839, 842 (D. Minn. 2012).  And, courts do not
permit backfill explanations to later justify a lack of disclosure.  In re Granite Partners, L.P., 219

---

[16] First Bank joined in filing the Motion of Joint Creditors in Limine and to Compel Testimony and Production of
Documents [Dkt. No. 1339], which is incorporated fully by reference; the communications between the Trustee and
his proposed counsel FBD regarding what information should be disclosed is not privileged information.

B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts.").

## A. The Trustee and FBD Determined There Was a Need to Obtain Conflict Waivers, Which Should Have Been Disclosed

On December 28 and 29, 2010, Wells Fargo received conflict waiver letters from both FBD and the Trustee, [redacted]

[redacted]

[redacted]

[redacted]





      In addition to FBD, the Trustee sought and obtained a conflict waiver from Wells Fargo on December 28, 2010.  The Trustee wrote: "I am writing to request your specific consent to my service as bankruptcy trustee in a bankruptcy proceeding which could result in an indirect conflict of interest. . . . Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment, although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interests of Wells Fargo."  December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] (attached as Exhibit 3) [marked in Knauer Dep. as Exhibit 3].  Mr. Knauer also agreed that as trustee his "[trustee]

service will be subject to all applicable rules of professional conduct."[17]  Mr. Heck responded,
stating: "I agree to waive the conflict subject to the terms described in your email."  Id.

        FBD's and the Trustee's seeking and obtaining conflict waivers in connection with
Wells Fargo was required to be disclosed.  Local Rule B-2014-1 ("The Professional shall serve
copies of all such waivers upon the Applicant and the Service List with the Employment
Application or promptly following receipt by the Professional of a waiver." (emphasis added));
In re Jore Corp., 298 B.R. 703, 732 (Bankr. D. Mont. 2003) (disqualifying counsel for debtor for
failure to disclose that conflicts waiver obtained from DIP lender prohibited debtor's counsel
from undertaking litigation adverse to it); In re GIT–N–GO, INC, 321 B.R. 54, 60 ("[T]he Court
finds that the written conflict waivers, while necessary in order to satisfy the rules of professional
conduct, do not aid the cause of eliminating the adversity of interests between Hale–Halsell and
the estate.").

        B.    Discussions with the United States Trustee Do Not Constitute Disclosure
                to the Court or Creditors, But Underscore the Need to Disclose

        The Trustee and FBD, however, determined that the conflict issue was significant
enough that the Trustee contacted the United States Trustee, Charles Wharton.  The Trustee was
asked whether he contacted Mr. Wharton "because [the Trustee] thought it might possibly be
something that he said, 'I think you ought to disclose that?'" in reference to the Trustee's
relationship with Wells Fargo.  The Trustee acknowledged, "That was certainly a possibility."
Knauer Dep., T.p. 59, lns. 22-25.

---

[17] As the Indiana Rules of Professional Conduct prevent Mr. Knauer from representing an interest adverse to his
client Wells Fargo (Ind. R. Prof. Cond. 1.0(e) and 1.7), the scope of this waiver is very limited.  It is certainly not the
"full unrestricted waiver" described by the Trustee in his affidavit of August 13, 2012.  [Dkt. No. 1330].

Such a possibility, however, requires disclosure:

> "The applicant and the professional must disclose all connections
> and not merely those that rise to the level of conflicts.  The
> professional must disclose all facts that bear on its
> disinterestedness and cannot usurp the court's function by
> choosing, <u>ipse dixit</u>, which connections impact disinterestedness
> and which do not.  The existence of an arguable conflict must be
> disclosed if only to be explained away.  The professional's duty to
> disclose is self-policing."  (Citations omitted.)

<u>In re Granite Partners, L.P.</u>, 219 B.R. at 35; <u>Kravit, Gass & Weber, S.C. v. Michel</u> (<u>In re</u>

<u>Crivello</u>), 134 F.3d 831, 835 (7th Cir. 1998) (stating that the scope of a disinterested professional

"is sufficiently broad to include any professional with an interest or relationship that would even

faintly color the independence and impartial attitude required by the Code.") (internal quotation

marks and citations omitted); <u>In re Jore Corp.</u>, 298 B.R. at 725.

The Trustee's conversation with Mr. Wharton does not satisfy, as a matter of law,

the Trustee's disclosure obligations. <u>See e.g.</u>, <u>In re Kappy Invs., Inc.</u>, 465 B.R. at 842

("Discussions with the Trustee do not satisfy the disclosure requirements.  Proper disclosure

belongs in the application filed of record for the Court and all interested parties in the case to

see."); <u>In re BH&P, Inc.</u>, 949 F.2d at 1303-04 & n.6 (affirming disqualification of counsel, and

attaching no relevance to law firm's conversation with United State Trustee regarding potential

conflicts of interest).  Instead, the Trustee's discussions with Mr. Wharton, along with the

Trustee's discussions with FBD, regarding their connections with Wells Fargo "compels

disclosure where, as here, the party had contemplated and discussed a specific situation

involving a potentiality for conflict."  <u>Id</u>. at 1317-18 ("[T]his Court can find no error in the

bankruptcy court's determination that Maggio [and RGZ] breached the duty of disclosure.  This

breach may have been the product of negligence, but negligence does not excuse the failure to

disclose a possible conflict of interests.") (alteration in original) (internal quotation marks and citation omitted).

IV.    THE TRUSTEE CLAIMS THAT WELLS FARGO WAS NOT A PARTY IN INTEREST, EVEN THOUGH HE CONCEDES THAT HAD NOT EVEN SEEN THE PARTICIPATION AGREEMENT AT THE TIME HE REACHED THAT CONCLUSION

There is no legitimate way to "rule out" any connection with Wells Fargo as a participant before the Trustee reviewed the Participation Agreement.  The Trustee has testified that he and his counsel determined that Wells Fargo was not a party in interest and could never become a party in interest because Wells Fargo (or its credit "Assignee") was a "mere participant;" but, this was based solely on third-hand hearsay because both the Trustee and FBD concede that at the time they made this determination, they had not seen the Participation Agreement.  December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] [marked in Knauer Dep. as Exhibit 3]; Knauer Dep., T.p. 58; December 29, 2010 Letter from Terry Hall to Gary Heck [WF012639-WF12643]; FBD Response, p. 8 n.7. The Trustee's and FBD's understanding of Wells Fargo's role as a "participant," having not read the Participation Agreement, came through Fifth Third Bank.  FBD Response, p. 8 n.7.  It is perhaps most disconcerting to these Objecting Parties that Fifth Third was allowed to play any role in identifying whom the Estate's professionals must disclose under Fed. R. Bankr. P. 2014 and 2007.1.

For example, one of the primary duties of the Trustee, and certainly his counsel, is to evaluate potential preference payments made to parties, particularly the primary secured lender(s).  The determination of who is the real party in interest in such transfers, to the extent they occurred, must include careful consideration of Participation Agreements.  In Northern

Capital, Inc. v. Stockton National Bank (In re Brooke Corp.), 458 B.R. 579, 588 (Bankr. D. Kan. 2011), the Court followed the reasoning of the Seventh Circuit in Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890 (7th Cir. 1988), in determining whether the primary lender is a mere conduit of potential payments passed through to the participant(s).  The Court in In re Brooke Corp. held that the primary lender was a mere conduit and upheld a grant of summary judgment to the primary lender which protected it from preference payment for anything beyond its percentage share.  Therefore, Wells Fargo could be directly sued by the Trustee to the extent it received transfers from Fifth Third and Fifth Third was acting as a "mere conduit."[18]

The comparisons between the In re Brooke Corp. and the instant Participation Agreement are astonishing.  Cf. In re Brooke Corp., 458 B.R. 579, with Participation Agreement, §§ 2.1, 2.7, 3.2, 3.3, 3.3(b), 5.1, and 5.8.  Accordingly, even if the Trustee ever had any intention to pursue a preference claim against Fifth Third, and even if his Special Counsel were to pursue Fifth Third, the Trustee certainly had the obligation to consider whether Fifth Third would assert that it was a mere conduit requiring the addition of Wells Fargo.  Thus, before the Trustee or FBD ever read the Participation Agreement prior to disclosures they made under Fed. R. Bankr. P. 2007.1 and 2014, there is no way to reach a conclusion that Wells Fargo was not, and never could be, an "other party in interest."

---

[18] In re Interwest Business Equip., Inc., 23 F.3d 311, 316 (10th Cir. 1994) ("The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict.  The policy behind disqualification for representing potentially conflicting interests provides the key to its extent.  The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate.  The representation of any such party disqualifies counsel from representing a debtor." (citations omitted)).

The Trustee further attempts to justify this "mere participant" theory based upon Section 8.1 of the Participation Agreement that gives Wells Fargo no rights in the bankruptcy. This logic fails for two reasons. First, there is no way the Trustee could have known of such rights or forfeiture of such rights, without ever having read the Participation Agreement when making the initial determination. Second, if Wells Fargo can play no role in the bankruptcy, then surely the Trustee would have rebuffed their efforts to participate in numerous meetings and would not have provided them frequent budget and liquidation analyses as the record shows. This argument is nothing more than a hindsight justification with no basis in fact.

V.        WELLS FARGO IS A PARTY IN INTEREST

The Trustee and FBD claim that they did not have to disclose Wells Fargo because Wells Fargo is purportedly not a party interest. FBD Response, pp. 7-11; Trustee Response, pp. 6-9. This argument, however, splits hairs and ignores both the broad meaning of "party in interest" and the requirements under the Code to disclose all known connections even if they do not rise to the level of a conflict. Wells Fargo is a "party in interest" that should have been disclosed in the Affidavits of Disinterest supporting the employment of FBD, as well as the Affidavit of Disinterest supporting the appointment of the Trustee.

"Although 'party in interest' is not defined under the Bankruptcy Code, it is construed broadly in order to effectuate the purpose of disclosure – 'to permit the court to determine whether the attorney is disqualified or whether further inquiry is needed before making that determination.'" In re Adam Furniture Indus., Inc., 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993) (quoting In re Rusty Jones, Inc., 134 B.R. 321, 345 (Bankr. N.D. Ill.1991)). "Section 327 is intended to prevent the estate from being represented by people who might have some interest or relationship that would color the independent and impartial attitude required by the

Code.  Thus, attorneys are required to disclose connections which demonstrate a predisposition in favor of one of parties in interest."  In re Rusty Jones, Inc., 134 B.R. 321, 345-46 (Bankr. N.D. Ill.1991) (internal quotation marks and citation omitted) ("This case is a vivid example of how the estate is hurt when it is represented by a firm that is partial to one or more parties in interest or control.").

      "Even assuming [a company] is not a creditor of the debtor," such a company could "still be considered a 'party in interest' under Bankruptcy Rule 2014."  Adam Furniture Indus., Inc., 158 B.R. at 299.  A professional's connection to a "participant" lender should not only be disclosed, but may be a sufficient basis on which to disallow the professional's employment based on "potential conflicts [of interest] and the appearance of impropriety."  In re Hub Bus. Forms, Inc., 146 B.R. 315, 322-23 (Bankr. D. Mass. 1992).

      The Trustee cites to caselaw in his Response that does not discuss disclosure requirements under Fed. R. Bankr. P. 2014 or 2007.1.  Instead, the Trustee cites to cases (e.g., In re Okura & Co., 249 B.R. 596 (Bankr. S.D.N.Y. 2000)) that address, to some degree, whether a participant lender has standing as a creditor.  Trustee Response, pp. 6-9.  Standing issues, however, are often complicated and may take years to resolve, as evidenced by FBD's and the Trustee's repeated allegations that the "Objecting Parties" like Superior Livestock, the Bluegrass entities, and First Bank lack standing.  FBD Response, pp. 4-7; Trustee's Response to Objections to and Motions to Strike the Trustee's Report [Dkt. No. 1326], pp. 4-9.  There is no provision under the disclosure requirements of Fed. R. Bankr. P. 2007.1 or 2014 that mandates (or permits) a Trustee or his professionals to make unilateral "standing" determinations about the parties with whom they have connections prior to disclosure.  Nor do these rules (or the cases that actually interpret them, as cited in support of the Renewed Objection and this Reply) require (or permit)

the disclosing parties to "pick and choose" which entities to disclose.  As explained by the

caselaw cited above, the term "party in interest" under the disclosure rules is "construed broadly"

(In re Adam Furniture Indus., Inc., 158 B.R. at 299), and includes even entities that are not

creditors.  Id.

The facts demonstrate that Wells Fargo was undeniably a "party in interest" under

Fed. R. Bankr. P. 2014.  First, the first two docket entries of telephonic conferences with the

Court, December 7, 2010 [Dkt. No. 28] and December 13, 2010 [Dkt. No. 68] clearly identify

"Jeff Wegner" attorney for "Wells Fargo Capital."  Wells Fargo also participated in at least two

additional hearings on March 11, 2011 and June 24, 2011.

Second, as discussed above, both the Trustee and FBD obtained conflict waivers

from Wells Fargo, prior to the Trustee's filing the application to employ FBD as counsel.  ██████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

██████████████████████████████  Not only did the Trustee's and FBD's retaining of conflict

waivers in itself require disclosure, but the obtaining of conflict waivers further demonstrates

that, based on the information available to the Trustee and FBD available in late December 2010,

both acknowledged that Wells Fargo had interests in this bankruptcy proceeding.

Third, prior to the appointment of the Trustee, Wells Fargo participated in

conference calls (on, but not limited to, December 14, 16, and 20, 2010) with the Custodian

(formerly the state-court receiver), along with Fifth Third, to discuss the budget, asset recovery, a

funding mechanism for the bankruptcy, and the selection of a Trustee.  Following the Trustee's

appointment, and also the employment of FBD, the Trustee participated in numerous, private

conference calls with Wells Fargo and Fifth Third Bank on at least the following dates: January 10, 2011 [WF006415-16], January 18, 2011 [WF006417], January 26, 2011 [WF006418], February 1, 2011 [WF006419], February 9, 2011 [WF006420], February 23, 2011 [WF006421], March 7, 2011 [WF006422], March 22, 2011, March 31, 2011 [WF006406, WF006424], April 12, 2011 [WF006403-04], April 25, 2011 [WF006426], May 9, 2011 [WF006427], June 29, 2011 [WF006428], July 19, 2011 [WF006429-30], August 2, 2011 [WF006431], August 18, 2011 [WF006431], September 8, 2011 [WF006407], October 5, 2011 [WF006409-11]. The topics discussed on these private conference calls with the "bank group" were broad and, at least from the notes of the calls from Wells Fargo, included information that was not generally known to the creditor body, like budgets, asset recovery, money transfers to the "bank group," and updates on adversary proceedings (even, at times, before litigation was filed).

The Trustee also acknowledged Wells Fargo's and Fifth Third's shared an interest in obtaining a "money transfer" to the "bank group," which further demonstrates that Wells Fargo was (and is) a party in interest. The Trustee testified: "The, the bank group asked me in every call when they could get some of the money we, we had collected. I, I have a vivid recollection that was numero uno on Fifth Third's plate, or I'm sure Wells Fargo, if they were on the call had the same interest…. If you are asking me if I discussed the money transfer, I'm sure that I did because they always ask." Knauer Dep., T.p. 163, lns. 1-6, 20-22. This testimony related to a document that described a conference call with Wells Fargo in September or October 2011. Based on notes from a conference call one year into this bankruptcy proceeding, the Trustee acknowledges that Wells Fargo had "the same interest" as Fifth Third and asked him on every call when "they [plural] could get some of the money," referring to Fifth Third Bank and Wells Faro collectively as "the bank group."

VI.        <u>CONCLUSION</u>

For the reasons set forth above and in the Motion to Remove [Dkt. No. 1239],

First Bank requests that the Court grant the relief requested in the Motion to Remove.

Respectfully submitted,


/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email:  ddonnellon@ficlaw.com
          sweigand@ficlaw.com

Attorneys for The First Bank and Trust
Company

## CERTIFICATE OF SERVICE

I certify that on the 18th day of August, 2012, I electronically filed the foregoing Reply Memorandum in Support of Motion of The First Bank and Trust Company to Remove Trustee Pursuant To 11 U.S.C. § 324 with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | John Frederick Massouh<br>john.massouh@sprouselaw.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com |
| C.R. Bowles, Jr<br>crb@gdm.com | John W. Ames<br>jwa@gdm.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| James A. Knauer<br>jak@kgrlaw.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Jessica E. Yates<br>jyates@swlaw.com |
| John Hunt Lovell<br>john@lovell-law.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Laura Day Delcotto<br>ldelcotto@dlgfirm.com |
| Jeffrey R Erler<br>jeffe@bellnunnally.com | Ivana B. Shallcross<br>ibs@gdm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| Edward M King<br>tking@fbtlaw.com | Deborah Caruso<br>decaruso@daleek.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Randall D. LaTour<br>rdlatour@vorys.com | Meredith R. Thomas<br>mthomas@daleeke.com | Ross A. Plourde<br>ross.plourde@mcafeetaft.com |
| Bret S. Clement<br>bclement@acs-law.com | William Robert Meyer, II<br>rmeyer@stites.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| John R. Carr, III<br>jrciii@acs-law.com | Christie A. Moore<br>cm@gdm.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| James M. Carr<br>jim.carr@bakerd.com | Allen Morris<br>amorris@stites.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Robert K. Stanley<br>robert.stanley@bakerd.com | James Bryan Johnston<br>bjtexas59@hotmail.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Terry E. Hall<br>terry.hall@bakerd.com | James T. Young<br>james@rubin-levin.net | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Dustin R. DeNeal<br>dustin.deneal@bakerd.com | David L. LeBas<br>dlebas@namanhowell.com | Karen L. Lobring<br>lobring@msn.com |

Sandra D. Freeburger
sfreeburger@dsf-atty.com

Lisa Kock Bryant
courtmail@fbhlaw.net

Elliott D. Levin
robin@rubin-levin.net
edl@trustesoultions.com

John M. Rogers
johnr@rubin-levin.net

Jeremy S. Rogers
Jeremy.rogers@dinslaw.com

John David Hoover
jdhoover@hovverhull.com

Sean T. White
swhite@hooverhull.com

Robert H. Foree
robertforee@bellsouth.net

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Michael W. McClain
mike@kentuckytrial.com

William E. Smith
wsmith@k-glaw.com

Susan K. Roberts
skr@stuartlaw.com

James Edwin McGhee
mcghee@derbycitylaw.com

Thomas C. Scherer
tscherer@binghammchale.com

David A. Laird
david.laird@moyewhite.com

Jerald I. Ancel
jancel@taftlaw.com

Jeffrey J. Graham
jgraham@taftlaw.com

Trevor L. Earl
tearl@rwsvlaw.com

Christopher E. Baker
cbaker@hklawfirm.com

David Alan Domina
dad@dominalaw.com

Kent A Britt
kabritt@vorys.com

Joshua N. Stine
jnstine@vorys.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Jeffrey L. Hunter
jeff.hunter@usdoj.gov

Amelia Martin Adams
aadams@gldfirm.com

Michael Wayne Oyler
moyler@rwsvlaw.com

Jason W. Cottrell
jwc@stuartlaw.com

Robert A. Bell
rabell@vorys.com

Andrea L. Wasson
andreawassonatty@gmail.com

Anthony G. Raluy
traluy@fbhlaw.com

Harmony A. Mappes
Harmony.mappes@faegrebd.com

James B. Lind
jblind@vorys.com

James E. Rossow, Jr.
jim@rubin-levin.net

Jeffrey R. Erler
jeffe@bellnunnally.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Kevin M. Toner
Kevin.toner@faegrebd.com

Kim Martin Lewis
Kim.lewis@dinslaw.com

Melissa S. Giberson
msgiverson@vorys.com

John Huffaker
John.huffaker@sprouselaw.com

Shawna M. Eikenberry
Shawna.eikenberry@faegrebd.com

Wendy W. Ponader
Wendy.ponader@faegrebd.com

W. Wesley Harned
wharned@dlgfirm.com

/s/ Stephen A. Weigand
Stephen A. Weigand

648280