**SO ORDERED: August 31, 2012.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

### ORDER OVERRULING RENEWED OBJECTIONS TO EMPLOYMENT OF FAEGRE BAKER DANIELS LLP

This matter is before the Court on "renewed" objections and joinders thereto (the "Renewed Objections") opposing the continued employment of Faegre Baker Daniels LLP ("FBD")[1] as general bankruptcy counsel to the chapter 11 trustee, James A. Knauer (the "Trustee"). The Court held an omnibus hearing in this case on August 20, 2012 (the "Hearing"). As part of the matters addressed at the Hearing, the objectors and the Trustee presented evidence and arguments on the matters discussed in this Order and stipulated to the admission of deposition testimony and associated exhibits. On the facts and the law as found and concluded

---

[1] At the beginning of this chapter 11 case, the law firm was Baker & Daniels LLP. On January 1, 2012, the firm merged with another firm and the name was changed to Faegre Baker Daniels LLP. The Court will refer to the firm before and after the merger as FBD.

herein, the Court now **OVERRULES** the Renewed Objections, subject to the adjustment of fees for which FBD may apply in the future. The Court makes the following findings of fact and conclusions of law in support of its Order.

## Findings of Fact

A.    Eastern Livestock Co., LLC ("ELC" or "Debtor") was for many years until November of 2010 engaged in cattle transactions. ELC's principal owner, Thomas P. Gibson, and another employee of ELC were indicted by a federal grand jury and charged with mail fraud; they remain under indictment in the United States District Court for the Western District of Kentucky. Further, Mr. Gibson and others pled guilty to and were convicted of criminal syndication and many dozen counts of theft in the Metcalfe (Ky.) Circuit Court in connection with the check kiting scheme and other wrongful actions they caused ELC to commit.

B.    Prior to ELC's demise, ELC's principal lender was Fifth Third Bank ("Fifth Third"). Fifth Third extended credit to ELC by way of a secured revolving line of credit (the "Loan"). The Loan was and is evidenced by and secured pursuant to a promissory note, security agreement and certain other loan documents (the "Loan Documents"). The Loan was secured by ELC's grant to Fifth Third of security interests in ELC's inventory, accounts receivable and generally all of ELC's assets (the "Collateral"). Under the Loan Documents and as part of the Loan, Fifth Third had extended to ELC the maximum principal credit of $32.5 million as of the cessation of ELC's normal business operations in early November 2010.

C.    On February 9, 2005, Fifth Third and Wells Fargo Business Credit, Inc. ("WFBC") entered into the Participation Agreement By and Between Wells Fargo Business Credit, Inc. and Fifth Third dated as of February 9, 2005 (the "Participation Agreement"). This Court has reviewed the Participation Agreement. Under the Participation Agreement, WFBC

purchased from Fifth Third an "undivided fractional and continuing participation interest (the 'Participation') equal to…" a certain dollar amount.  That dollar amount is calculated by multiplying 30.76923% times the "Participated Credit Amount."  The dollar amount of the Participation was capped at $10 million.  The Court understands that, as of the petition date, the Participated Credit Amount was $32.5 million dollars; therefore, the amount of the Participation was, on that date, $10 million.  In the Participation Agreement, Fifth Third is denominated as the "Lead" and WFBC is denominated as the "Participant."  Fifth Third solely holds the Loan and, as the Lead, retains the exclusive right to decide how to service, administer and manage the Loan and is authorized to use its sole discretion in exercising or failing to exercise any right or in taking any action to enforce rights or remedies under the Loan Documents.  Fifth Third, as the Lead, is empowered to take all actions it deems necessary to collect any obligations of ELC, as borrower, including foreclosing against the Collateral.  The Participation Agreement does not include any assignment from Fifth Third to WFBC, as Participant, of any interest in any of the Loan Documents or the Collateral.  Fifth Third, as Lead, is not obligated to segregate any funds collected from ELC or to hold any such collections in trust for the Participant.  Instead, the Participation Agreement creates a contractual obligation by Fifth Third, as Lead, to pay to the Participant dollar amounts calculated by multiplying the Participation percentage by the amount of money collected by Fifth Third from ELC or realized by Fifth Third from the Collateral.  The Participant has no right to assert any claim against ELC or enforce any lien rights in or against any assets of ELC that serve as the Collateral.  The Participation Agreement expressly provides that,

> The Participant will have no standing with respect to the Participation in any proceeding involving Borrower [ELC] under the United States Bankruptcy Code, any state insolvency laws or which otherwise involve the Borrower, and no claim, dispute, accounting or other issue pertaining to the Participant's relationship with the Lead under this Agreement shall

be heard or disposed of in any such proceeding relating to the Borrower.

D.      This chapter 11 case ("Chapter 11 Case") was commenced some twenty months ago by the filing of an involuntary petition under § 303[2] against ELC on December 6, 2010.  Mr. Knauer was appointed Trustee of the Debtor's estate on December 27, 2010.  Prior to the filing, Mr. Gibson and all other officers of ELC had resigned, and ELC was controlled by a receiver appointed by an Ohio Court in an action commenced by Fifth Third.  On December 7, 2010, certain petitioning creditors filed an "Emergency Motion to Appoint Trustee and Authorizing and Directing a Trustee to Operate Business" [Doc. 27].  On December 16, 2010 the Court granted that motion and directed the United States Trustee for Region 10 ("UST") to appoint a trustee in the Chapter 11 Case pursuant to § 1104 [Doc. 77].  On December 23, 2010, the UST filed its Notice of Submission of Notice of Appointment and Application for Order Approving Appointment of Trustee [Doc. 98] ("UST Application").  ELC is no longer in business and the Trustee is in the process of collecting and liquidating assets.  A significant portion of the collection and liquidation involves litigation and the Trustee is a party to numerous actions including four interpleader actions originally filed in Texas, Wisconsin, Kansas, and Colorado, which were removed and transferred to this Court.  No unsecured creditors' committee has been appointed in this Chapter 11 Case.

E.      On or about December 26, 2010, the Trustee asked FBD to represent the Trustee in the Chapter 11 Case as general bankruptcy counsel.  FBD was then representing Fifth Third ("FBD/Fifth Third Representations") on matters unrelated to ELC or the Chapter 11 Case.  FBD sought and, on December 27, 2010, Fifth Third granted FBD a conflict waiver and consent to FBD's representation of the Trustee ("Fifth Third Conflict Waiver"), which was confirmed by an email from a Fifth Third employee.  The email excludes from the scope of the waiver FBD's

---

[2] All statutory citations herein are to the Bankruptcy Code.

representation of the Trustee in matters that are "adversarial or litigious."  In her testimony, the FBD partner who manages the firm's representation of the Trustee maintained that FBD understood the phrase to be redundant, and that Fifth Third withheld its consent to FBD's representation of the Trustee only in adversary proceedings or actions which pitted the Trustee directly against Fifth Third.  The objecting parties, in contrast, insist that the ambiguous phrase prohibits FBD from advising the Trustee in any manner that is not aligned with Fifth Third's interests.  FBD informed the Trustee that it had received the Fifth Third Conflict Waiver and that the Trustee would need to employ special conflicts counsel to represent the Trustee should he decide to sue Fifth Third.

F.    On or about December 28, 2010, a lawyer at Kutak Rock LLP emailed FBD regarding the Trustee's intended employment of FBD and advised that he represented "Wells Fargo" in connection with its participation interest in the Loan and that FBD should contact in-house counsel at Wells Fargo & Company to request a conflict waiver.  FBD then represented affiliates of Wells Fargo & Company ("FBD/Wells Representations").  FBD then sought and received a written conflict waiver ("Wells Conflict Waiver").[3]  FBD advised the Trustee of the FBD/Wells Representations, the Wells Conflict Waiver and that FBD did not intend to include a disclosure of the FBD/Wells Representations in the affidavit it would be required to file by Fed. Bankr. P. 2014 in support of its application to be employed by the Trustee.

G.    On December 30, 2010, the Trustee filed his Application to Employ Baker & Daniels LLP as Counsel for Trustee [Doc. 113] (the "Employment Application").  The

---

[3]  The Participation Agreement identifies WFBC as the owner of the Participation.  There are dozens, if not hundreds, of subsidiaries and affiliates of Wells Fargo & Company.  The term "Wells Fargo" is not used precisely in the Wells Conflict Waiver, which does not distinguish among Wells Fargo entities.  The evidence showed that it was Wells Fargo's policy to require such ambiguity in conflict waivers executed for the benefit of its outside counsel.  At some point, WFBC was either merged into another Wells Fargo entity or the participation was assigned or sold to another Wells Fargo affiliate.  Because it is not relevant to this Court's reasons for denying the relief sought by the Objectors, the Court will simply refer to the Participant as the "Wells Participant".

Employment Application sought to retain FBD to represent the Trustee with regard to a number of matters including "representation with regard to investigation and prosecution of demands, claims, and causes of action that the Trustee may hold."   To support the Employment Application, the FBD partner who manages the representation submitted an affidavit [Doc. 114] that disclosed the FBD/Fifth Third Representations and the Fifth Third Conflict Waiver as follows:

> The Firm [FBD] currently represents Fifth Third in matters unrelated to the chapter 11 case or the Debtor.  Fifth Third is a creditor of the estate and has consented to the Firm's representation of the Trustee.  However, Fifth Third has not consented to the Firm's representation of the Trustee with respect to any adversary proceeding or other action that the Trustee may commence directly against Fifth Third.  The Firm has advised the Trustee of this exception to the consent received from Fifth Third and the Trustee accepts this exception... In the event a conflict develops, the Firm will assist the Trustee in hiring conflicts counsel and notify the Court and the U.S. Trustee.

The affidavit was filed and served on all parties in the Chapter 11 Case, including counsel for Fifth Third.

      H.      On January 10, 2011, First Bank filed its Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels LLP as Counsel to Chapter XI Trustee [Doc. 181] (the "Original Objection").   The Original Objection challenged FBD's disinterestedness based on the FBD/Fifth Third Representations.

      I.      On January 18, 2011, the Trustee filed an application to employ the law firm of Hoover Hull LLP as special conflicts counsel ("Special Conflicts Counsel") [Doc. 219].  In that application the Trustee advised the Court that "Hoover Hull's primary role as special counsel to the Trustee will be to investigate and prosecute claims and objections against Fifth Third or claims asserted by Fifth Third in this case."  On February 10, 2011, the Court approved the employment of Hoover Hull as Special Conflicts Counsel [Doc. 267].

J.      On January 24, 2011, FBD filed an amended affidavit [Doc. 235] that disclosed that FBD had been contacted by First Bank for possible employment in this Chapter 11 Case but that the FBD had not been employed by First Bank.  The amended affidavit included for a second time the disclosures of the FBD/Fifth Third Representations and the Fifth Third Conflict Waiver.  The amended affidavit was filed and served on all counsel including counsel for Fifth Third.

K.      On January 27, 2010, apparently satisfied by the measures taken to redress FBD's conflict with Fifth Third, First Bank withdrew its Original Objection [Doc. 241].  First Bank explained in that paper that it acted "[i]n reliance upon the amended affidavit and the retention of special counsel."

L.      On February 1, 2011, in the absence of an objection, the Court entered its Order Granting Application to Employ Baker & Daniels LLP as Counsel to Chapter 11 Trustee [Doc 248] (the "Employment Order").  The Court determined that, by virtue of the engagement of Special Conflicts Counsel, FBD met the standard of disinterestedness established by § 327 notwithstanding the FBD/Fifth Third Representations.  The Employment Order granted the Employment Application "on a final basis."

M.      On February 4, 2011, Fifth Third filed its proof of claim [Claim No. 13] (the "Fifth Third POC") asserting a claim, as the sole and exclusive holder of the claim, with respect to the Loan and the Loan Documents.  The Fifth Third POC does not purport to assert any claim on behalf of the Wells Participant in any agency or other representative capacity.  The firm of Vorys, Sater, Seymour and Pease LLP has appeared for Fifth Third and has been continuously active in the Chapter 11 Case, representing Fifth Third as the sole holder of the claims asserted based on the Loan.

N.      On December 8, 2011, Bluegrass et al.[4] filed an Objection to Professional Fee Applications of (1) James A. Knauer, Chapter 11 Trustee; (2) Hoover Hull LLP; and (3) Baker & Daniels LLP on December 8, 2011 [Doc. 873] (the "Bluegrass Fee Objection").  The Bluegrass Fee Objection questioned the disinterestedness of the Trustee and FBD with respect to both Fifth Third and Wells Fargo and asked as relief for the Court to order the Trustee and FBD to make supplemental disclosures with respect to Fifth Third and Wells Fargo.[5]  The Bluegrass Fee Objection specifically referred to Wells Fargo as a "loan participant" and indicated that the information was contained in the Fifth Third POC.  The Bluegrass Fee Objection was heard on December 14, 2011, and was overruled as to FBD in its entirety by a final order of this Court entered December 19, 2011 [Doc. 917].

O.      On July 10, 2012, First Bank filed its Renewal of Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels LLP (nka Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee [Doc. 1238] (the "Renewed Objection").  On July 30, Bluegrass et al. filed their "Creditors' Joinder in The First Bank and Trust Company's Objection to Employment of Baker & Daniels LLP (n/k/a Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee and First Bank's Request for Order Terminating Employment" (the "Bluegrass Joinder") [Doc. 1279].  On August 23, 2012, Superior Livestock Auction, Inc. ("Superior") filed a Joinder in Motions by Superior Livestock Auction, Inc. [Doc. 1377],

---

[4]  Bluegrass et al. refers to the following parties represented by the DelCotto Law Group, LLC:  Bluegrass Stockyards East, LLC, Bluegrass Stockyards, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Bluegrass Stockyards of Campbellsville, LLC, East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, Inc., Piedmont Livestock Company, Inc. and Alton Darnell.

[5]  First Bank states in its Renewed Objection that it first learned on June 26, 2012 that the Trustee and FBD had been representing "Wells Fargo Bank".  However, Bluegrass et al. challenged the relationships of the Trustee and FBD with "Wells Fargo" in the Bluegrass Fee Objection.  Other parties, including First Bank, objected to the interim fee applications of the Trustee, FBD, and Special Counsel.  All of the objections were overruled and the interim fee applications were approved.

pursuant to which Superior joined in the Renewed Objection and the Bluegrass Joinder. First

Bank, Bluegrass et al., and Superior are referred to collectively herein as "Objectors".[6]

P.    On July 23, 2012, the Trustee filed his proposed Disclosure Statement [Doc.

1256] ("Disclosure Statement") and Chapter 11 Liquidating Plan [Doc. 1255] ("Plan"). The Plan

proposes to settle all of the estate's claims against Fifth Third in exchange for Fifth Third paying

up to 20% of the collected proceeds of its Collateral to "opt in" general unsecured creditors and

further allowing its Collateral to fund about two-thirds of the ongoing administrative costs of the

Chapter 11 Case (the remaining third to be assessed against chapter 5 recoveries). To receive

payment from the Fifth Third Collateral, creditors will be given the option to "opt in" to the

settlement by releasing their individual claims against Fifth Third.

Q.    Two Minute Entries on December 7 and 13, 2010 reflect the telephonic

attendance of a lawyer for Wells Fargo Capital, in two public hearings that took place early in

the Chapter 11 Case before the Trustee was appointed [Docs. 28 and 68]. No lawyer has filed a

formal appearance in the Chapter 11 Case on behalf of the Wells Participant or any Wells Fargo

entity. The Wells Participant has not filed a proof of claim and the Wells Participant has not

sought to raise or be heard on any matter in the Chapter 11 Case.

R.    Wells Fargo attorneys and employees participated in conference calls among the

Trustee; his financial advisors, DSI; FBD; and Fifth Third and its counsel. The Trustee testified

---

[6]  On August 10, 2012, a lawyer filed a *pro hac vice* motion [Doc. 1323] stating that he represented the Kentucky
Cattlemen's Association ("KCA"). He also filed on behalf of KCA a motion concurring in the Bluegrass Joinder and
requested the termination of FBD as counsel to the Trustee [Doc. 1324] ("KCA Motion"). Because the Court finds
and concludes that KCA is neither a creditor nor a party in interest in this Chapter 11 Case, KCA does not have
standing to seek relief and the Court now denies the KCA Motion. *See In re James Wilson Assocs.*, 965 F.2d 160,
169 (7th Cir. 1992); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844 (S.D.N.Y. 1989) (holding that interest asserted by
Consumers Union as the "protector of consumers" was not a legally protectable interest allowing it to intervene or
interfere in the debtor's bankruptcy case). However, the Court did allow counsel for KCA to address the Court
orally at the Hearing and will continue to allow him to be heard, which is consistent with the Court's usual practice
when concerned citizens wish to be heard in any chapter 11 case.

that Wells Fargo's participation was requested by Fifth Third as a matter of efficiency to avoid the necessity of repeating the information. FBD participated in such calls at the request of the Trustee to provide information to Fifth Third about the status of the litigation.

S.      Each of the Objectors are or may become involved in litigation with the Trustee. First Bank, for instance, has filed two proofs of claim in the Chapter 11 Case asserting two secured claims. Because First Bank did not make any loan to or otherwise do business with ELC, however, the Trustee has taken the position that First Bank is not a secured creditor of ELC, and, in fact, the Trustee contends that First Bank is not a creditor of ELC at all.

T.      Bluegrass Stockyards and a variety of related entities (who are referred to as the "Bluegrass Entities") are some of the movants that filed the Bluegrass Joinder. The Bluegrass Entities are defendants in a pending adversary proceeding commenced by the Trustee seeking to avoid and recover from the Bluegrass Entities alleged fraudulent preferential transfers (the "Bluegrass Avoidance Action"). If the Trustee is successful with respect to the Bluegrass Avoidance Action, then the Bluegrass proof of claims will not be allowable unless and until the Bluegrass Entities disgorge the amounts adjudged to be owing to the ELC estate.

U.      Superior and the Trustee are engaged in at least four separate litigation matters before this Court. The Trustee believes that Superior, by assigning some 500 of the Debtor's cattle contracts to itself prepetition, holds significant assets of the estate that the Trustee is trying to recover. Superior contests this and claims that the assignments it received prepetition are not avoidable under applicable law.

V.      FBD has served as general bankruptcy counsel to the Trustee for more than nineteen months. The Trustee, with FBD's assistance, has commenced more than nineteen adversary proceedings by which the Trustee is seeking to recover millions of dollars on behalf of

the ELC estate.  The Trustee is now holding significant funds, constituting millions of dollars, as to which the rights of various parties are yet to be determined.

<u>**Conclusions of Law**</u>

Incorporating the foregoing findings of fact as if fully restated herein, the Court issues the following conclusions of law.

1.    This Court has jurisdiction over the matters raised and determined herein pursuant to 28 U.S.C. § 1334 and Local Rule 83-8(a).  This is a core proceeding under 28 U.S.C. § 157(2)(A), as it concerns the administration of the bankruptcy estate of the Debtor.

2.    The appearance of neutrality is very important to maintaining the public trust in bankruptcy cases and proceedings.  This is particularly true in this case, which arose out of a massive fraud and where creditors' suspicions are understandably heightened.  Counsel seeking to be employed to represent a debtor or a trustee should err on the side of caution in making disclosures of connections that could cause the appearance of impropriety.  *See*, *e.g.*, *United States v. Gellene*, 182 F.3d 578 (7th Cir. 1999).  The considerable consternation and effort occasioned by disclosure issues in this Chapter 11 Case are an object lesson on the wisdom of a forthcoming and openhanded approach to disclosures that goes beyond the minimum required by the law.  Even though the Court believes that had the disclosure of the Wells Conflict Waiver been made with the Employment Application it would not have affected FBD being employed, FBD made a poor choice not to disclose the FBD/Wells Representations and the Wells Conflict Waiver.

3.    The Renewed Objections are improper as they attempt to resurrect an objection that was finally determined by the Employment Order.  Neither the unilateral assertion of the right to renew an objection nor the inclusion of a qualification in a paper withdrawing an

objection has the effect of holding in suspense a final order of this Court. First Bank's Renewed

Objection on its face "asks the Court to sustain the original Objection." In order to seek relief

from the Employment Order, First Bank would need to comply with Fed. R. Bankr. P. 9024,

which incorporates Fed. R. Civ. P. 60. Under Fed. R. Civ. P. 60(b), a motion for relief from a

final order must be made within a reasonable time, and if, as here, it is made for certain reasons,[7]

it may be filed no later than one year after the entry of the judgment or order. The Renewed

Objections seek relief from a final order. They are untimely, having been filed more than

seventeen months after the entry of the Employment Order. As one court observed,

> Delay in bringing any motion to disqualify counsel is generally frowned
> on because of the disruption it would cause to the case. This is
> especially so in a bankruptcy reorganization in which a disruption, in
> addition to causing delay in getting a decision or a judgment or payment
> of money, causes a loss of value—value that cannot be regained.

*In re Enron Corp.*, 2002 WL 32034346 at *4 (Bankr. S.D.N.Y. 2002).

4.    A second procedural reason to deny the Renewed Objections is that the issues

related to FBD's relationship with Wells Fargo were previously raised in 2011 by the Bluegrass

Fee Objection, which was overruled nearly ten months ago.

5.    Putting aside procedure, on the merits, the Objectors have not demonstrated that

FBD is not disinterested within the meaning of § 327, and the Court reaffirms its conclusion that

FBD is qualified to represent the Trustee in the capacity it has done so and will continue to do so.

6.    Convincing precedents, including case law from the Seventh Circuit, suggest that

a secondary participant in a loan like the Loan, where the rights of the secondary participant are

entirely derivative of the right of the lead participant, is neither a creditor nor a party in interest

in a bankruptcy case. *See, e.g.*, *In re Auto Style Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001); *In re*

---

[7]  A motion for relief from a final order is subject to the one-year rule if it is based on (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discoverable; and (3) fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b).

*James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992); *First Nat'l Bank of Louisville v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 933 F.2d 466 (7th Cir. 1991); *In re Okura & Co. (America), Inc.*, 249 B.R. 596 (Bankr. S.D.N.Y. 2000).

7.      Given (i) the advanced procedural posture of this Chapter 11 Case, (ii) the unique circumstance of the subsumption of Wells Fargo's interest in the Loan by Fifth Third's, (iii) the timely and adequate disclosure of FBD's relationship with Fifth Third, and (iv) the determination the Court made in the Employment Order that FBD is qualified to represent the Trustee despite its relationship with Fifth Third, it is unnecessary for the Court to determine whether FBD was required to disclose the FBD/Wells Representations and the Wells Conflict Waiver when it initially submitted its Employment Application.  Having considered the precedents interpreting Fed. R. Bankr. P. 2014, the Court concludes that the question is not explicitly controlled by binding precedent and sees no imperative to attempt to establish a bright-line rule at this juncture.

8.      Even if there was a violation of Fed. R. Bankr. P. 2014 by FBD, the requested relief is not warranted on the record in this case.  In these circumstances, the representation by FBD of Fifth Third, the debtor's sole lender, was disclosed.  The Trustee could not bring any action against the Participant that would not as a threshold matter have to be brought first against Fifth Third.

9.      The cases cited by the Objectors contain egregious facts that justified removal of the professionals.  No analogous facts exist in this Chapter 11 Case. In contrast, the Court has found no evidence of undue influence by Wells Fargo on the Trustee or FBD.  The Court has seen no evidence of bias by the Trustee or FBD in their handling of this Chapter 11 Case.[8]

---

[8]  Bluegrass et al. lists facts and circumstances that they assert imply or evidence bias on the part of FBD.  First Bank, for its part, stated at the Hearing that it is not asserting that FBD may have engaged in actual bias.  The

**Conclusion and Order**

The Court notes that the Objectors are or may be soon engaged in contentious lawsuits with the Trustee. The Objectors disagree with the legal conclusions reached by the Trustee in the Disclosure Statement. Such disagreements are matters better addressed by objections to the Disclosure Statement and Plan than by seeking to disqualify counsel. Granting the Renewed Objections would significantly delay the resolution of this case, entail massive administrative expenses and impair the ability of the Trustee to bring and prosecute recovery actions. Ultimately, the relief requested would significantly impair creditor recoveries. Removing FBD as the Trustee's counsel is not warranted.

Nevertheless, the Court is convinced that the estate should not bear the burden of FBD's deliberations over its disclosure requirements or FBD's efforts to defend itself in the disputes addressed in this Order. Accordingly, in its next fee application, FBD shall (i) seek no compensation for such matters, and (ii) shall deduct the amount equal to the compensation the Court has already approved for such matters from the fees it would otherwise be eligible to receive.

### 

---

evidence does not support such a finding. While the Objectors obviously disagree with the Trustee's business judgment in many respects, there has been no showing of bias or undue influence. Some of the facts or circumstances identified by the Objectors as evidence of bias, such as the DIP financing order [Doc. 400] in which Fifth Third is given a superpriority administrative claim, are old arguments recast. The Objectors negotiated and agreed to the DIP financing order. To assert now that they find it to be evidence of bias in favor of Fifth Third (or the Wells Participant) is not convincing.