**EXHIBIT A**

Case 10-93904-BHL-11   Doc 1431-1   Filed 09/19/12   EOD 09/19/12 17:17:37   Pg 1 of 7

# THE DATAVAULT

## Storage and Service Agreement

STANDARD TERMS AND CONDITIONS

The Data Vault (Company) hereby agrees to accept for storage and to service under its management system such materials (Stored Materials) as Client requests, subject to all terms and conditions herein, including those incorporated as attachments hereof. Client agrees to pay Company for its services according to Company's current rate schedule, or any revisions thereto. The attached schedule of rates (Schedule A) is incorporated herein and made a part hereof.

Unless modified by specific provisions set forth in Schedule A, the following terms and conditions shall apply to this Agreement.

**1. STORED MATERIAL** – From and after the effective date for a period of __1 year__ (automatically renewed for successive like periods unless cancelled by either party upon written notice given at least 30 days prior to the expiration of the existing term), the Company shall store and service the Stored Material identified on the attached Schedule. Client and Company may modify or add to the record materials included in the Schedule of Stored Materials. Such additional Stored Material shall, unless otherwise agreed in writing, be deemed to be held under the same terms and conditions as the Stored Material.

**2. ACCEPTANCE** – In the absence of an executed contract, the act of tendering said material for storage and/or other services by Company constitutes acceptance by Client to the terms, conditions and rates of this contract.

**3. RATES** – Client agrees to pay Company for its services according to Company's then current schedule of Rates and any revisions thereto. Monthly storage/retention charges shall be due in advance. ~~Rates may be changed upon thirty (30) days notice to the Client.~~ For Stored Material received during a month or stored for a portion of a month, charges will be assessed according to the Schedule of Rates. Additional Service Charges and late payment fees, if any, shall be paid simultaneously with the monthly storage/retention charges. If the Client fails to pay the charges when due, Client shall be liable for late charges at the rate of 15% per annum, and Client shall also be liable for all expenses incurred in collecting charges which are in arrears, including reasonable attorneys' fees. The Company shall have a lien on all Stored Material for charges and advances made under this agreement. All expenses incurred in collecting charges and advances which are in arrears, including reasonable attorneys' fees, shall be added to the arrearage. If Client fails to pay the charges of the Company for a period of 30 days, the Company may, after giving ten (10) days notice to Client, at its option: (a) re-deliver the Stored Material to the Client at its address stated in this agreement; (b) refuse access to Stored Material; and/or (c) destroy the Stored Material. In the event the Company takes any actions pursuant to this section, it shall have no liability to the Client or anyone else. Nothing herein shall preclude the Company from pursuing other remedies provided either by this agreement or by applicable law.

**4. ACCESS TO STORED MATERIALS**
a. Stored Material and information contained in said Stored Material shall be delivered only to Client's Authorized Representative. Client represents that the Authorized Representative has full authority to order any service for or removal of the Stored Material, and to deliver and receive such. Such order may be given via telephone, electronically, fax, in writing or in person.
b. When any Stored Material is ordered out, a reasonable time shall be given to the Company to carry out said instructions; and if it is unable to do so (or to provide any other service herein contemplated) because of acts of God or public enemy, seizure or legal process, strikes, lockouts, riots and civil commotions, or other reason beyond the Company's control, or because of loss or destruction of goods for which the Company is not liable, or because of any other excuse provided by law, the Company shall not be liable for failure to carry out such instructions or services.
c. The Company reserves the right to deny access to or delivery of Stored Material until such time as Client has cured any default under this Agreement.
d. Authorized Representatives of Client shall have the right at reasonable times and upon reasonable notice to examine the media and/or records and compilations of data of the Company which pertain to the performance of the provisions of this Agreement.

**5. LIMITATIONS OF LIABILITY**
5.1 The Company shall not be liable for any loss or damage to Stored Material, however caused, whether in transit to a storage facility or otherwise, unless such loss or damage resulted from the failure by the Company to exercise such care in regard thereto as a reasonably careful person would exercise in like circumstances. The Company is not liable for the repair, replacement or restoration of lost or damaged property, subject to the conditions and limitations imposed by this agreement. Company's liability, if any, for loss, damage, or destruction to part or all of the Stored Material stored shall be limited to $2.00 per carton, linear foot, container, tape or disk pack, which amount Client declares to be the value of Stored Materials, unless Client declares an excess valuation and pays an additional monthly charge for said excess valuation, as provided in section 6 below. In such case, The Data Vault's liability shall be limited to the amount of the excess valuation per carton, container, tape or disk pack. Such limitation of liability shall apply irrespective of the cause of loss, damage, or destruction of the Stored Material.
5.2 If Stored Materials consist of electronic based media, either digital or analog, Client will be solely responsible for encrypting the files, and Company will accept no liability under HIPAA, HITECH, FACTA, or other applicable rules for information contained on unencrypted media.
5.3 Company shall not be liable for any loss of profit or special, indirect, incidental or consequential damages of any kind.
5.4 Stored Materials are not insured by Company against loss or injury, however caused.
5.5 The Company shall not be liable for the deterioration of media in storage.
5.6 Claims by the Client for loss, damage or destruction must be presented in writing to the Company within a reasonable time and in no event longer than sixty (60) days after Client is notified by the Company or otherwise receives notice that loss, damage or destruction to

part or all of the Stored Material has occurred, whichever time is shorter. Time is of the essence and failure to present any such claim in writing within the foregoing time limit shall constitute a waiver of any such claim.

5.7 No action or suit may be maintained by the Client or others against the Company for loss, damage or destruction of the Stored Material, unless timely written notice has been given as provided in Section 5.6 of this Agreement, and unless such action or suit is commenced either within one year after date of delivery or return by the Company, or within one year after the Client is notified or otherwise receives notice that loss, damage or destruction to part of all of said Stored Material has occurred, whichever is shorter.

5.8 When Stored Material has been lost, damaged or destroyed and has not been delivered or returned to Client, notice may be given of said loss, damage or destruction by mailing or a registered or certified notice to Client at its address stated in this agreement. In the event such notice of loss, damage or destruction is given by Company, time limitations for presentation of any claim in writing and maintaining of any such action or suit after notice, begins on the date of mailing of said notice by the Company.

**6. DECLARATION OF EXCESS VALUATION** – Unless Client has declared in writing a valuation of its Stored Materials (deposits) as an optional excess valuation and pays an additional monthly charge for said excess valuation, Client agrees that the value of the Stored Material (deposits) is $2.00 per carton, container, tape or disk pack in accordance with section 5.1 above. The Company may, at its discretion, elect to repair, replace or restore lost or damaged property up to the aforesaid value or the excess valuation declared by the Client, if applicable, whether the property is lost in whole or in part.

**7. TERM**

7.1 Unless sooner terminated as provided herein, the term of this Agreement shall continue until the Authorized Representative gives Company at least 30 days advance written notice of a termination date in accordance with numerical paragraph 1 above, and an address for delivery of the Stored Material. Failure of Client to designate a delivery address constitutes authorization for Company to either (a) deliver the Stored Material to Client's address stated in this Agreement, or (b) destroy the Stored Material in the manner set forth in paragraph 9 below all at Company's option and Company shall have no liability for its action taken in accordance with this provision.

7.2 If either party materially breaches any of its obligations under this Agreement the other party shall provide the breaching party written notice identifying the breach. The breaching party shall have thirty (30) days within which to correct the breach specified in the notice. If the breach is not cured within the thirty (30) day period, the non-breaching party may at its option terminate this agreement immediately and shall give written notice of termination to the breaching party. If the breaching party is the Client, Client shall prepay all amounts for services hereunder, including but not limited to destruction charges, through the effective date of termination specified in the notice and in addition shall prepay to Company $2.00 per container for early removal of Stored Material from Company's storage facilities.

**8. DEFAULT**

8.1 The occurrence of any one or more of the following events shall constitute a default ("Events of Default"):

a. Failure to pay any sum due hereunder within fifteen (15) days of when due; or
b. Breach of any provisions of this Agreement; or
c. Client becomes insolvent or files, or has filed against it, any proceeding in Federal or State court seeking debtor relief.

8.2 Upon the occurrence of any of the Events of Default, Company, at its sole option, may exercise any or all of the following remedies with or without terminating the Agreement:

a. Demand payment in advance by certified check, cashier's check, money order, or wire transfer prior to the performance of any services on behalf of the Client.
b. Demand in writing that Client pick up the Stored Material;
c. Deliver the Stored Material to the Delivery Address, or if none specified, to the Client Address.
d. Upon thirty (30) days advance written notice to Client, Company may destroy Stored Material. In this regard, the Client recognizes that, since the Stored Material has little or no market value, that sale of the material would likely be impossible, and destruction of Client's materials is the only way for the Company to mitigate its damage.
e. If this Agreement shall not have been terminated, Client shall continue to pay all sums due under this Agreement up to and including the date of delivery of the Stored Material as provided in (b) above.
f. Terminate this Agreement, whereupon Company shall recover all damages suffered by reason of such termination, including reasonable attorneys' fees.

8.3 In the event Company takes any action pursuant to this Section, it shall have no liability to Client or anyone claiming through Client. The exercise by Company of any one or more of the remedies provided in this Agreement shall not prevent the subsequent exercise by Company of any one or more of the other remedies herein provided. All remedies provided for in this Agreement are cumulative and may, at the election of the Company, be exercised alternatively, successively or in any other manner and are in addition to any of the rights provided by law. Company shall be entitled to include all reasonable attorneys' fees and costs incurred in connection with the enforcement of this Agreement.

**9. DISPOSAL OF RECORDS**

9.1 This agreement adopts the standard of proper disposal set forth in the Federal Trade Commission's rule "Disposal of Consumer Report Information and Records" (16 CFR Part 682) hereinafter referred to as the "FTC Disposal Rule." Under the FTC Disposal Rule, "[a]ny person who maintains or otherwise possesses consumer information for a business purpose must properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal" (16 CFR Section 682.3(a)).

9.2 Upon written instructions from the Client or Authorized Representative, or upon thirty (30) days' advance written notice to Client regarding the occurrence of any of the Events of Default enumerated in this agreement, or as otherwise provided in this agreement, the

Company may dispose of all or any portion of the Stored Material. The Client releases the Company from all liability by reason of the disposal of such Stored Material pursuant to this agreement. Such disposal shall be at the cost and expense of Client.

9.3 Upon the initial transfer of Stored Materials to Company, an authorized representative of Client shall sign and deliver to Company the attached Fair and Accurate Credit Transactions Act (FACTA) affidavit which shall constitute Client's certification as to whether the Stored Materials constitute "consumer information" under the Act subject to the FTC Disposal Rule. In the event Client identifies the Stored Materials as containing such "consumer information," or in the event the Client indicates that it cannot determine whether such materials contain such "consumer information," the Company shall dispose of such materials in accordance with the FTC Disposal

Rule, as the same may from time to time be amended. It shall be presumed for purposes of this agreement that the aforesaid affidavit shall also constitute Client's certification as to the character and contents of all subsequent transfers of Stored Materials by Client to Company unless any such further transfer of Stored Materials is accompanied by a FACTA Affidavit to the contrary.

**10. TITLE WARRANTY** – The Client warrants that it is the owner or legal custodian of the Stored Material and has full authority to store said record material in accordance with the terms of this Agreement.

**11. INDEMNIFICATION** – Unless caused by the sole negligence of the Company, the Client agrees to fully indemnify and hold harmless the Company, its officers, employees and agents for any liability, cost or expense, including reasonable attorneys' fees, that the Company may suffer or incur as a result of claims, demands, costs or judgments against it arising out of its relations with the Client or third parties pursuant to this Agreement.

**12. RULES**
a. The Client agrees to comply with the Data Vault Standard Terms and Conditions and any operating procedures of the Company.
b. The Client shall not, at any time, store with the Company, any controlled substances, materials considered to be highly flammable, explosive, toxic, radioactive, organic material which may attract vermin or insects, or any other materials which are otherwise illegal, dangerous and unsafe to store or handle in an enclosed area. The Company reserves the right to open and inspect any materials tendered for or in storage and refuse acceptance of any materials which fail to comply with the Company's storage restrictions and guidelines. Client shall not store negotiable instruments, jewelry, check stock, ticket stock or other items which have intrinsic market value.
c. Unless the Company is contracted by the Client to inventory the contents of all materials stored, the Company shall not be liable for loss of goods due to inventory shortage or unexplained or mysterious disappearance of goods; and the Company shall not be liable for such loss unless the Client establishes such loss occurred because of the Company's failure to exercise the care required under section 5, above.

**13. CONFIDENTIALITY** – The Company shall exercise the same degree of care in safeguarding deposits entrusted to it by Client which a reasonable and careful company would exercise with respect in similar records of its own provided; however, that liability of the Company to Client shall be limited as set forth in Section 5 above. The Company may comply with any subpoena or similar order related to the Stored Material, provided that the Company notifies Client promptly upon receipt thereof, unless such notice is prohibited by law. Client shall pay Company's reasonable charges, including attorneys' fees, for such compliance.

**14. MISCELLANEOUS** – This instrument (together with any Schedules attached and documents incorporated herein) constitutes the entire Agreement between the parties, and supersedes any and all prior agreements, arrangements, understandings, and representations, whether oral or written, between the parties. No modification of this Agreement shall be binding unless in writing, attached hereto, and signed by the party against which it is sought to be enforced. No waiver of any right or remedy shall be effective unless in writing and nevertheless, shall not operate as a waiver of any other right or remedy on a future occasion. Every provision of this Agreement is intended to be severable. If any terms term or provision is illegal, invalid or unenforceable, there shall be added automatically as part of this Agreement, a provision as similar in terms as necessary to render such provision legal, valid and enforceable. This Agreement shall be construed in accordance with the laws of Kentucky without giving effect to its conflict of laws principles. In addition, the Company shall have, and may exercise, all rights granted to warehousemen by the Uniform Commercial Code as adopted in Kentucky. All scheduled, if any, attached hereto are hereby incorporated by reference and made a part hereof. The term "Agreement" as used herein shall be deemed to include all such schedules. All notices under this Agreement shall be in writing. Unless delivered personally, all notices shall be addressed to the appropriate addresses noted herein, or as otherwise noted in writing in accordance with this provision. Notices shall be effective upon receipt unless mailed by certified or registered mail, in which event notices shall be deemed to have been received as of the third business day after the date of posting. All words and phrases in this Agreement shall be construed to include the singular or plural number, and the masculine, feminine or neuter gender, as the context requires. Nothing in this Agreement shall be deemed or construed to constitute or create a partnership, association, joint venture, agency or fiduciary or employment relationship between the parties hereto. This agreement is binding upon the parties hereto, their heirs, executors, administrators, successors and assigns and cannot be changed orally. This Agreement may not be assigned by either party without the written consent of the other, which consent shall not be unreasonably withheld.

Attachments:

Schedule A      Price Schedule
Schedule B      FACTA Affidavit
_____    _____
_____    _____

**CLIENT**

ACCEPTED BY: _____

Signature: _____

_____
Street Address

_____
City            State           Zip

Date: _____

Effective Date: _____

**THE DATA VAULT**

By: _____

Date: _____

Effective Date: _____

Schedule A

-Storage Rate for James A Knauer, Trustee for Eastern Livestock LLC will not change from $0.22 per cf.
-Service rates will not increase over 5% of listed rate within 36 months.



**Records Center Pricing Summary**
as of December, 2011

**Records Center Pricing Summary**

**I. Storage Rates**
1. Per Cubic Foot — $ .22 per cf, per month
2. Standard Records Cartons, 1.2 cubic ft. — $ .30 per box, per month
3. Letter Transfer Cartons, 2.0 cubic ft. — $ .50 per box, per month
4. Legal Transfer Cartons, 2.4 cubic ft. — $ .60 per box, per month

**II. Courier Rates**
1. Standard, first 4 cartons — $13.40
2. Saturday, first 4 cartons — $24.50
3. Sunday or Holidays, first 4 cartons — $31.50
4. RUSH, first carton — $40.00
5. Each additional carton — $ 1.50

**III. Service Rates**
1. Carton Retrieval, Standard — $ 2.10
2. Carton Refile, Standard — $ 2.10
3. Carton Retrieval, RUSH — $ 7.50
4. File Retrieval, Standard — $ 2.60
5. File Refile, Standard — $ 2.60
6. File Retrieval, RUSH — $ 8.00
7. Labor — $ 6.50 per ¼ hour
8. Labor, Supervisor — $ 9.75 per ¼ hour
9. Labor, After Hours — $13.00 per ¼ hour
10. Faxing of retrieved documents up to 10 pages — $ 4.00
11. Faxing of retrieved documents after 10 pages — $ .35 per page
12. Stair carry/long carry — $ .50 per carton, per flight
13. After Hours Access — $55.00 per hour
    RUSH rates apply.
    2 hour minimum charge from 5 p.m – 8 p.m Monday – Friday.
    3 hour minimum charge from 8 p.m. - 8 a.m. Monday – Friday.
    3 hour minimum charge from 5 p.m. Friday - 8 a.m. Monday.
14. Holiday surcharge — $55.00 per hour
15. Document Destruction – Inventoried Items — $2.00 cf
16. Bulk Retrieval Palletization — $75.00
17. Bulk Retrieval Indexing — $ 2.00
18. Scan On Demand — $12.00

**IV. Initial Set-Up**
1. Data Entry/Box Placement- DOC — $ 1.50 per carton
2. Data Entry/Box Placement – Pre-labeled — $ 2.35 per carton
3. Data Entry/Box Placement- Standard — $ 2.65 per carton
4. Standard Records Carton Purchase — $ 1.75 per carton
5. Pickup — Standard Courier Rates Apply

**V. Billing**
1. Minimum monthly billing is $25.00.
2. Additional service codes and prices apply as warranted.

Schedule B



## Fair and Accurate Credit Transactions Act ("FACT Act" or "FACTA") Affidavit

This affidavit is designed to facilitate compliance with the rule of the Federal Trade Commission, "Disposal of Consumer Report Information and Records" (16 CFR Part 682), hereinafter referred to as the "FTC Disposal Rule." The initial FTC Disposal Rule is attached as an appendix to this affidavit. Any future amendments to this rule's duties and obligations are automatically incorporated in the definition of "FTC's Disposal Rule." The FTC Disposal Rule was promulgated pursuant to the FACT Act, and it sets for the standard for proper disposal as follows:

"Any person who maintains or otherwise possesses consumer information for a business purpose must properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal." 16 CFR § 682.3(a)

"'Consumer information' means any record about an individual, whether in paper, electronic, or other form, that is a consumer report or is derived from a consumer report. Consumer information also means a compilation of such records. Consumer information does not include information that does not identify individuals, such as aggregate information or blind data." 16 CFR § 682.1(b)

In signing this addendum, _____ ("THE CLIENT") acknowledges that (**The Data Vault**) ("THE COMPANY") has made THE CLIENT aware of its obligation to properly dispose of "consumer information."

In order to facilitate compliance with the FACT Act, THE CLIENT hereby certifies that its records and information materials provided to THE COMPANY for offsite information management on _____ ("Stored Material") comply with one of the following conditions indicated below:

_____ I hereby certify that **NO** Stored Material contains any "consumer information" as defined in 16 CFR § 682.1(b).

_____ I hereby certify that **all** Stored Material which contains "consumer information" as defined in 16 CFR § 682.1(b) has been identified clearly. THE CLIENT further directs THE COMPANY to facilitate proper disposal of all identified "consumer information" at its final disposition date, in accordance with the FTC Disposal Rule.

_____ I hereby certify that, because it is not known whether all Stored Material does or does not contain "consumer information" as defined by 16 CFR § 682.1(b), THE CLIENT directs THE COMPANY to facilitate proper disposal of all information owned by THE CLIENT for which THE COMPANY is custodian at its final disposition date, in accordance with the FTC Disposal Rule.

I, the undersigned, certify that I have read the information contained in this addendum and have informed THE COMPANY of the true condition of the records owned by THE CLIENT.

Representing THE CLIENT,

_____      _____
Name                                                                    Date

©Prism International 2005

Appendix

16 CFR Part 682—Disposal of Consumer Report Information and Records

§ 682.1 Definitions.

(a) In general. Except as modified by this part or unless the context otherwise requires, the terms used in this part have the same meaning as set forth in the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq.
(b) "Consumer information" means any record about an individual, whether in paper, electronic, or other form, that is a consumer report or is derived from a consumer report. Consumer information also means a compilation of such records. Consumer information does not include information that does not identify individuals, such as aggregate information or blind data.
(c) "Dispose," "disposing," or "disposal" means:

(1) The discarding or abandonment of consumer information, or

(2) The sale, donation, or transfer of any medium, including computer equipment, upon which consumer information is stored.

§ 682.2 Purpose and scope.

(a) Purpose. This part ("rule") implements section 216 of the Fair and Accurate Credit Transactions Act of 2003, which is designed to reduce the risk of consumer fraud and related harms, including identity theft, created by improper disposal of consumer information.
(b) Scope. This rule applies to any person over which the Federal Trade Commission has jurisdiction, that, for a business purpose, maintains or otherwise possesses consumer information.

§ 682.3 Proper disposal of consumer information.

(a) Standard. Any person who maintains or otherwise possesses consumer information for a business purpose must properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal.
(b) Examples. Reasonable measures to protect against unauthorized access to or use of consumer information in connection with its disposal include the following examples. These examples are illustrative only and are not exclusive or exhaustive methods for complying with the rule in this part.

(1) Implementing and monitoring compliance with policies and procedures that require the burning, pulverizing, or shredding of papers containing consumer information so that the information cannot practicably be read or reconstructed.

(2) Implementing and monitoring compliance with policies and procedures that require the destruction or erasure of electronic media containing consumer information so that the information cannot practicably be read or reconstructed.

(3) After due diligence, entering into and monitoring compliance with a contract with another party engaged in the business of record destruction to dispose of material, specifically identified as consumer information, in a manner consistent with this rule. In this context, due diligence could include reviewing an independent audit of the disposal company's operations and/or its compliance with this rule, obtaining information about the disposal company from several references or other reliable sources, requiring that the disposal company be certified by a recognized trade association or similar third party, reviewing and evaluating the disposal company's information security policies or procedures, or taking other appropriate measures to determine the competency and integrity of the potential disposal company.

(4) For persons or entities who maintain or otherwise possess consumer information through their provision of services directly to a person subject to this part, implementing and monitoring compliance with policies and procedures that protect against unauthorized or unintentional disposal of consumer information, and disposing of such information in accordance with examples (b)(1) and (2) of this section.

(5) For persons subject to the Gramm-Leach-Bliley Act, 15 U.S.C. 6081 et seq., and the Federal Trade Commission's Standards for Safeguarding Customer Information, 16 CFR part 314 ("Safeguards Rule"), incorporating the proper disposal of consumer information as required by this rule into the information security program required by the Safeguards Rule.

§ 682.4 Relation to other laws.

Nothing in the rule in this part shall be construed:

(a) To require a person to maintain or destroy any record pertaining to a consumer that is not imposed under other law; or
(b) To alter or affect any requirement imposed under any other provision of law to maintain or destroy such a record.

§ 682.5 Effective date.

The rule in this part is effective on June 1, 2005.