# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                          :        CASE NO. 10-93904-BHL-11

    EASTERN LIVESTOCK CO., LLC,     :        (Judge Basil H. Lorch III)

      Debtor.                   :

                        :        **REPLY MEMORANDUM IN**
                        :        **SUPPORT OF MOTION OF THE**
                                **FIRST BANK AND TRUST**
                        :        **COMPANY TO REMOVE**
                                **TRUSTEE PURSUANT TO 11 U.S.C.**
                        :        **§ 324**

                        :

I.        <u>INTRODUCTION</u>

    A.        With This Threshold Issue, the Trustee Has Asked This Court to Make
          <u>New Law Departing From Well-Accepted Standards</u>

    In his response to the motions to remove him as Trustee, James A. Knauer places

this Court in the precarious position of making law that could be cited for years to come for the

proposition that a Trustee "DOES NOT" need to disclose in an Affidavit under Fed. R. Bankr. P.

2007.1 whether the Trustee has a "connection" with a party:

        (a)        to whom he has given a "consent and conflict waiver" letter;[1]

        (b)        when that party has appeared at multiple Court hearings;

---

[1] S.D.Ind. Local Rule B-2014-1 ("<u>The Professional shall serve copies of all such waivers upon the Applicant and the</u>
<u>Service List</u> with the Employment Application or promptly following receipt by the Professional of a waiver."
(emphasis added)); <u>In re Jore Corp.</u>, 298 B.R. 703, 732 (Bankr. D. Mont. 2003).

(c)    with whom he has interacted frequently (approximately twice a month) in private meetings throughout the Chapter 11 proceedings; and

(d)    where the party owns more than thirty percent (30%) of the Debtor's $32.5 million of secured debt.[2]

As set forth below, individually courts have found that professionals cannot pick and choose[3] which connections to disclose and must disclose them under these circumstances.  In the aggregate of all four circumstances noted above, this Court would be creating ground-breaking new law if it found that disclosure was not required.

B.    Wells Fargo's Connection Was Apparent from the Original Docket Entries Upon Which The Trustee Testified He Relied

Although the Trustee erroneously wishes to cast these objections as an end run attack upon his proposed Plan to release Fifth Third, the timing is completely irrelevant.  The error and deliberate non-disclosure began with the Trustee's original affidavit of disinterestedness.  In his original affidavit, the Trustee plainly stated that he based his determination about potential conflicts in his representation upon the "the filed appearances and docket entries of the Debtor."  Affidavit of Disinterest, p. 1 [Dkt. No. 98-2]; Deposition of James Knauer ("Knauer Dep."), T.p. 23, lns. 13-19.  But, the docket entries plainly show, "Jeff Wegner

---

[2] In the Matter of James Wilson Associates, 965 F.2d 160, 169 (7th Cir. 1992) (stating that a party in interest has standing where the party "has a legally protected interest that could be affected by a bankruptcy proceeding . . . everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims.").  Here, Wells Fargo's only source of recovery under the Participation Agreement would be from a recovery of the Debtor's res.  The Trustee and FBD have conceded as much by virtue of their obtaining conflict waivers from Wells Fargo.

[3] United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999).

– Wells Fargo Capital" appeared via telephone at the very first and second major hearings in this proceeding.

It is apparent from the later-obtained waiver and consent which follows the "Wells Fargo & Company Policy Regarding Legal Conflicts of Interest"[4] that Wells Fargo draws no distinction or hairsplitting for conflicts purposes between representing the National Association of this mammoth bank, or one of its minor subsidiaries. It should have been clear to anyone reviewing the docket entries – much less a potential Trustee sanctioned by the U.S. Trustee's office, that "Jeff Wegner – Wells Fargo Capital," would not participate in the very first two threshold hearings in the proceeding out of an idle curiosity, but rather out of some "connection" to the case. At this point, the Trustee had reason, and even a duty, to disclose his representation of another Wells Fargo entity in his initial affidavit. He did not. Rather, when he allegedly subsequently learned of the role of Wells Fargo, he found it significant enough to seek a consent and waiver letter from his client.

C.    The Local Rules Mandate that the Trustee Produce a Copy of the Consent and Waiver Letter He Obtained from Wells Fargo

Not only did the Trustee fail to disclose his connection with Wells Fargo at the time he decided to seek the consent and waiver letter, he also failed to produce copies of his waiver letter with Wells Fargo as required by the **mandatory** language of Local Rule B-2014-1 of the United States Bankruptcy Court for the Southern District of Indiana:

> "If a Professional seeks to resolve any potential conflict of interest concerning any other client or former client, the Professional shall comply with applicable Rules of Professional Conduct. All

---

[4] The 2012 version of the Policy is available on Wells Fargo's website: https://www.wellsfargo.com/downloads/pdf/about/corporate/legal/conflicts_policy.pdf.

consents or waivers of conflicts of interest ('waivers') shall be in writing. **The Professional shall serve copies of all such waivers upon the Applicant and the Service List[5] with the Employment Application or promptly following receipt by the Professional of a waiver**." (emphasis added).

Local Rule B-2014-1 contains no limitations or exceptions relating to whether a copy of any waiver must be provided to the creditors only when involving a connection to a debtor, creditor or other party in interest. If a waiver is obtained, then it must be disclosed. Since both the Trustee, and his primary counsel obtained such consent and conflict waivers, they both had duties to disclose and serve copies of the waivers with Wells Fargo regardless of whether Wells Fargo is a "party in interest" under Fed. R. Bankr. P. 2007.1 and 2014. None of the creditors, other than Wells Fargo and Fifth Third, obtained a copy of the Trustee's waiver until July 27, 2012. FBD uploaded a redacted form of the waiver letter produced by Wells Fargo, but the Objecting Parties did not receive an unredacted copy until July 26, 2012.[6]

> D.   The Trustee Made a Joint Decision with Primary Counsel that Neither Would Disclose the Connection to Wells Fargo

Rather than disclosing his connections to Wells Fargo, the Trustee testified he learned that Wells Fargo Business Credit was a "participant" in the Fifth Third loan to Eastern Livestock on or about December 27, 2012 – only four days after being appointed Trustee. Knauer Dep., T.p. 22, lns. 14-16. In response to questions that remain largely unanswered, the Trustee asserts he, and his counsel Faegre Baker Daniels LLP (f/k/a Baker & Daniels LLP)

---

[5] "Service List" is defined broadly under Local Rule B-1000-1(b)(4) to include: "Debtor, Debtor's counsel, the twenty largest unsecured creditors in a Chapter 11 case or, if applicable, the unsecured creditors' committee, the UST, all secured creditors, any indenture trustee, any other committee appointed under 11 U.S.C. § 1102 or 1114, and any counsel or party that has filed an appearance pursuant to S.D.Ind. B-9010-1." (emphasis added).

[6] Upon information and belief, the parties and counsel comprising the Service List as defined under Local Rule B-1000-1(b)(4) have still not been served with copies of the waiver letters from the Trustee and FBD.

("FBD"), jointly determined that Wells Fargo did not need to be disclosed as a party with a connection to the proceeding, BUT, both firms needed to obtain consent and waiver letters from Wells Fargo. The email exchange among Wells Fargo's in-house counsel and the language of the two consent and waiver agreements is quite telling.

Terry Hall's (a partner with FBD) consent and waiver letter references the Wells Fargo & Company Policy Regarding Legal Conflicts of Interest (2010 version attached as Exhibit 1) (filed under seal). The language of both the Trustee's consent and waiver email with Wells Fargo tracks the same language of Ms. Hall's consent and waiver letter – quite narrowly consenting to the representation while holding the attorneys to "all applicable rules of professional conduct," which includes the language of the "Wells Fargo & Company" sample waiver letter – with one important exception. In an email upon which the Trustee was copied, Mr. Heck of Wells Fargo mandates Ms. Hall include in her loyalty under the rules of professional responsibility, that she will maintain loyalty to Fifth Third Bank and promise not to be adverse to Fifth Third Bank because it could "directly impact[]" the interests of Wells Fargo. December 29, 2010 Email from Gary Heck, Senior Counsel, Wells Fargo Legal Department to Terry Hall, Partner with FBD [WF012639] (attached as Exhibit 2) (filed under seal). Thus, the Trustee was placed on notice by his client "Wells Fargo & Company" that he must maintain loyalty under the Rules of Professional Conduct to Wells Fargo, which, in turn, would extend to loyalties to Fifth Third.

Not only should the existence of the "connection" have been fully disclosed, but the Local Rules mandate that the creditors should have been made aware of the nature and extent of the exceedingly narrow conflict waiver letters that promise to maintain professional loyalty to Wells Fargo. This is not an issue as to whether the Trustee has, in fact, engaged in untoward

conduct or divided his loyalties to the creditors versus Wells Fargo; the caselaw does not require as much.  In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The scope of disclosure is much broader than the question of disqualification;" noting that a disclosure violation may exist even where the undisclosed connection does not amount to a conflict; "The existence of an arguable conflict must be disclosed if only to be explained away.").  Nor is this – as FBD and Trustee counsel would frame it – an objection to the Trustee's decision not to sue Fifth Third Bank.  In fact, First Bank has already sued Fifth Third Bank in an action that should proceed regardless of the Trustee's attempted and tainted global release of Fifth Third.  This is a threshold issue that the Trustee should have disclosed a connection with Wells Fargo Bank from the moment he reviewed the docket entries, at a minimum, and when he obtained an exceedingly narrow consent to representation from Wells Fargo – fully and promptly disclosing the nature of that waiver – to allow the Court and the creditors to evaluate whether that would serve as an impediment to his fiduciary role.

> E.    The Trustee Had Ample, Timely Opportunity to Cure His Errors Before Reaching This Critical Point

There was a separate occasion for the Trustee to have come forward with his Wells Fargo connection and explain to his fiduciaries that the bank was a mere $10 million participant and disclose this narrow conflict waiver.  At the Omnibus Hearing on December 14, 2011, Bluegrass raised a rhetorical question in the objection to the fee applications whether there was a potential conflict with Wells Fargo.[7]  At that point, Special Counsel had only recently re-started the Trustee's investigation into Fifth Third and had not taken a single deposition.  Had the

---

[7] However, this issue was neither briefed in formal papers nor orally argued at a hearing.  Therefore, the conflict cannot possibility have been tacitly approved by the Court's granting interim orders over numerous objections that included Bluegrass's rhetorical question

Trustee come forward and responded to this rhetorical question about which the creditors were unaware, and disclosed the connection to Wells Fargo, disclosed the narrow consent waiver, and offered his explanation, perhaps the investigation could have taken a different course and given the creditors more assurance of its independence.  But, the Trustee chose not to do so.  Later then, creditors: (a) discovered thousands of the Wells Fargo documents were mysteriously missing from the FBD's ftp website until July 2012, after First Bank and others notified Special Counsel to the Trustee about the missing documents; and (b) obtained the unredacted versions of the Wells Fargo documents and emails relating to conflict waiver and consent to representation (including the conflict waiver letter from FBD to Wells Fargo) only on July 26, 2012. Accordingly, the Objectors are left to speculate as to the reasons for these actions and are pilloried and attacked by being forced to raise them now.  The instant motions and objections are not an attack on the Trustee's business judgment – they present a question of whether this Court should break new ground in Bankruptcy law, which would become the hallmark of cited authority, that a Trustee "CAN," in fact, pick and choose what parties he needs to disclose a connection to, and which he does not.[8]

    F. The Belated Explanation that Wells Fargo Is a Mere Participant Does Not Cure The Non-Disclosure

    The Trustee and FBD now attempt to justify the failure to disclose the connection between their firms and a client significantly larger than Fifth Third because Wells Fargo was a "mere participant" in the Eastern Livestock loan.  FBD Response, p. 4; Trustee Response, p. 6.[9]

---

[8] Cf. United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999) (An applicant "cannot pick and choose which connections are irrelevant or trivial.") (internal quotation marks and citation omitted).

[9] Response to Renewal of Objection of First Bank to Application to Employ Baker & Daniels LLP (NKA Faegre Baker Daniels LLP) As Counsel to Trustee and the Bluegrass Joinder Thereto ("FBD Response") [Dkt. No. 1327],
                      (footnote cont'd…)

That rationale could only have been appropriate to establish that FBD and the Trustee met the disinterestedness standard if, in fact, the connection had been properly disclosed in 2010. In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts. . . . The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not.  The existence of an arguable conflict must be disclosed if only to be explained away.") (citations omitted).  The Motion to Remove[10] properly places before the Court a two part question:  (1) Did the Trustee have connections to Wells Fargo?  YES.[11]  (2) Were those connections disclosed?  NO.  This should end the inquiry under Fed. R. Bankr. P. 2007.1 and 2014 regardless of the hindsight explanations.

II.        UNDER THE EXTREMELY LIMITED CONFLICT WAIVER GIVEN THE TRUSTEE BY WELLS FARGO, THE TRUSTEE COULD HAVE NEVER TAKEN ACTION ADVERSE TO FIFTH THIRD OR WELLS FARGO

        To support his argument that he is disinterested, the Trustee claims that he is "unrestricted and may be directly adverse to Fifth Third." Trustee Response, p. 10.  He states further that "If the Trustee has concluded that suing Fifth Third was in the best interests of creditors he would do so and there would be no impediments."  Id.  These statements are

---

(...cont'd)
and the Trustee's Response to Motions to Remove Trustee ("Trustee Response") [Dkt. No. 1329] (collectively, "Responses").

[10] Motion of The First Bank and Trust Company to Remove Trustee Pursuant to 11 U.S.C. § 324 ("Motion to Remove") [Dkt. No. 1239].

[11] It is undisputed by the Trustee that revenues from Wells Fargo were between 1.5% of the gross income of Kroger Gardis & Regas in 2010.  Affidavit of James A. Knauer, Trustee as Supplemental Rule 2014 Disclosure [Dkt. No. 1330].  FBD had revenues from Wells Fargo of approximately $425,000 in 2010, and approximately 2.5% of the total revenues of FBD in 2010.  Even after the merger by FBD in January 2012, FBD failed to supplement its disclosures until August 13, 2012.

incorrect. Even if Special Counsel (Hoover Hull) were free of conflicts, Special Counsel could not take any adverse action against Fifth Third <u>on behalf of the Trustee under the constraints placed upon the Trustee by Wells Fargo and the Indiana Rules of Professional Conduct</u>.

Only four days after his appointment, the Trustee obtained a consent to representation and conflict waiver from Wells Fargo. In his conflict waiver, the Trustee acknowledges that "Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment, although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interest of Wells Fargo." December 28, 2010 Email from James Knauer to Gary Heck and Michael J. Watson [JAK 417] (attached as Exhibit 3). This statement is consistent with Mr. Heck's notifying the Trustee, via courtesy copy on an email to the Trustee's proposed counsel, that Wells Fargo would be "directly impacted" by an adverse action against Fifth Third.

The scope of the Trustee's conflict waiver with Wells Fargo, however, is narrow: "If you consent to my service as bankruptcy trustee in this matter, I acknowledge and agree that **the service will be subject to all applicable rules of professional conduct** and that I will not disclose any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), or (2) use such information in any matter or proceeding without Wells Fargo's consent." The language of this exceedingly limited waiver is mandated by Wells Fargo in its "Wells Fargo & Company Policy Regarding Conflicts of

Interest" referenced in the FBD conflict waiver.[12]  This policy is issued by in-house counsel to refer to the global umbrella of Wells Fargo Bank entities, and mandates uniformity with its Sample Waiver letter that tracks the language of the Trustee's conflict waiver email with precision.  It is readily apparent from the Wells Fargo & Company Policy, that Wells Fargo rejects the kind of hairsplitting with respect to its affiliate companies suggested by the Trustee and his counsel in their respective briefs.

By agreeing to abide by all applicable rules of professional conduct (which must be observed regardless of whether this language was expressly included in the conflict waiver email), the Trustee could <u>never</u> have maintained any adverse action against Wells Fargo or Fifth Third.  First, the letter to Wells Fargo is inadequate for purposes of providing informed consent as required under Indiana Rules of Professional Conduct 1.7(b).[13]  The Trustee could represent the Estate, while also maintaining representation of Wells Fargo, only if the four requirements of Rule 1.7(b) are met.  One of these four requirements is that "each affected client gives informed consent, confirmed in writing."  Although the Debtor did not provide any consent (meaning that one of the four requirements under Rule 1.7(b) was not met), the December 28, 2010 email between the Trustee and Wells Fargo does not meet the high standard for obtaining informed consent.

"'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Ind.

---

[12] See e.g., Wells Fargo & Company Policy Regarding Legal Conflicts of Interest (Revised June 22, 2012), https://www.wellsfargo.com/downloads/pdf/about/corporate/legal/conflicts_policy.pdf.

[13] Local Rule B-2014-1(b)(ii) ("Professional shall comply with applicable Rules of Professional Conduct"); S.D.Ind.L.R. 83.5(g).

R. Prof. Cond. 1.0(e).  Comment 6 to Rule 1.0, which discusses informed consent, states that "Ordinarily, [obtaining informed consent] will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives."  The information required under Rule 1.0(e) (and further explained in Comment 6 to Rule 1.0) is completely absent from the conflict wavier in the document labeled JAK 417.[14]

Second, the Trustee's concurrent representation of Wells Fargo in other matters raises concerns about his loyalty to the creditors in this Estate, particularly with respect to whether the Trustee could effectively consider whether to file and ultimately file a lawsuit against two clients of the Trustee's law firm.  "Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent.  Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."  Cmt. 6 to Rule 1.7.  Likewise, "a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."  Cmt. 7 to Rule 1.7.[15]

---

[14] The Trustee concludes that "Given its role as a loan participant, there appears to be no circumstances in which I, as a bankruptcy trustee, could initiate any adversary proceeding or other action against Wells Fargo."  This statement, however, is incorrect under In re Brooke Corp., 458 B.R. 579, 588 (Bankr. D. Kan. 2011), and Wells Fargo might be subject to a direct adversary proceeding.

[15] "The interest of clients 'actually conflict' . . . 'whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other.'  'The primary value at stake is cases of simultaneous or dual representation is the attorney's duty – and the client's legitimate expectation – of loyalty.'  A potential conflict exists whenever a lawyer's representation of one client might, in the future, become less effective by reason of his representation of the other."  Rodriguez v. Disner, No. 10-55309, 2012 U.S. App. LEXIS 16698, at *24 (9th Cir. Aug. 10, 2012) (citations omitted).

By logical extension, Wells Fargo promised Trustee Knauer that it would consent to his role as Trustee as long as he <u>still</u> agrees to comply with Rule 1.7 of the Indiana Rules of Professional Conduct (among other Rules) and will not "act as an advocate in [Eastern Livestock] against [Wells Fargo], even when the matters are totally unrelated." Having been put on notice by Wells Fargo that it considered actions against Fifth Third as "directly impacting" Wells Fargo, and still agreeing to client loyalty to Wells Fargo with this meaningless consent, the Trustee could never have proposed any Plan or settlement without absolute consent of both Fifth Third and Wells Fargo. A conflict of interest does exist because the Trustee's representation of Wells Fargo in unrelated matters created a significant risk that the Trustee's ability to consider, recommend or carry out an appropriate course of action in this Estate would be materially limited as a result of his other responsibilities or interests related to representing Wells Fargo. Moreover, the Trustee's conflict waiver does not rise to the level of obtaining "informed consent" of Wells Fargo; following form with a company's policy does not necessarily mean that an attorney has fully met the requirements of the Rules of Professional Conduct. Regardless of the Trustee's sentiments about informed consent, duties of loyalty to Wells Fargo, and duties of loyalty as Trustee, the Trustee's failure to disclose his connection with Wells Fargo and his failure to disclose the existence of and terms of his conflict waiver with Wells Fargo warrant removal. The Trustee's decision not to make these disclosure for approximately 19 months has tainted all transactions between the Trustee and Wells Fargo/Fifth Third, including but not limited to the "settlement" relating to the proposed Chapter 11 Plan.

III.     THE TRUSTEE ATTEMPTS TO BACKFILL REASONS FOR WHY HE DID
         <u>NOT DISCLOSE AND WHY HE BELIEVES HE IS DISINTERESTED</u>

The Trustee concedes on page 6 of his Response that he "wishes that he had made the additional disclosure [relating to Wells Fargo] and regrets that he did not do so." Following this

important admission, the Response attempts to backfill the gaping hole in the Disclosure

Affidavit by justifying the failure to disclose; but it is insufficient and too late.  In re BH&P, Inc.,

949 F.2d 1300, 1317-18 (3d Cir. 1991) (stating that a professional's duty to disclose "certainly

compels disclosure where, as here, the party had contemplated and discussed a specific situation

involving a potentiality for conflict. . . . This breach may have been the product of negligence,

but [n]egligence does not excuse the failure to disclose a possible conflict of interests.") (internal

quotation marks and citations omitted).

    The Trustee's law firm and FBD both have conceded that they have significant

relationships with Wells Fargo.  Prior to the Trustee's filing the application to employ FBD, the

Trustee and FBD discussed whether to disclose their connections to Wells Fargo.  Knauer Dep.,

p 27.  The details, however, of those communications are unknown.[16]  One critical detail that is

now known is that neither the Trustee nor FBD disclosed their connections with Wells Fargo to

this Court and the creditors prior to August 13, 2012.  Both the Trustee and FBD obtained

conflict waivers from Wells Fargo, and determined there was even an apparent need to inform

the United States Trustee of their connections to Wells Fargo recognizing the "possibility" that

Mr. Wharton may object to their non-disclosure.  Knauer Dep., T.p. 59.  Of course, disclosure to

the Office of the U.S. Trustee does not fulfill their disclosure requirements to the Court and the

creditor body.  In re Kappy Invs., Inc., 465 B.R. 839, 842 (D. Minn. 2012).  And, courts do not

permit backfill explanations to later justify a lack of disclosure.  In re Granite Partners, L.P., 219

---

[16] First Bank joined in filing the Motion of Joint Creditors in Limine and to Compel Testimony and Production of Documents [Dkt. No. 1339], which is incorporated fully by reference; the communications between the Trustee and his proposed counsel FBD regarding what information should be disclosed is not privileged information.

B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts.").

> A.   The Trustee and FBD Determined There Was a Need to Obtain Conflict Waivers, Which Should Have Been Disclosed

On December 28 and 29, 2010, Wells Fargo received conflict waiver letters from both FBD and the Trustee, for which Wells Fargo dictated the terms of the waiver letter and pointed out that Wells Fargo would be "directly impacted" by any action toward Fifth Third. After FBD shared a draft of the conflict waiver letter with Wells Fargo (copying the Trustee on the email), Senior Counsel at Wells Fargo wrote to FBD to request that Fifth Third Bank also be added to the conflict waiver letter. Mr. Heck, Senior Counsel for Wells Fargo, informed Terry Hall and David Foster of FBD, with the Trustee copied on the email, that Wells Fargo "could be directly impacted by such claims" against Fifth Third "to the extent they effect the loan/collateral rights in which we are a participant." Mr. Heck concluded, moreover, that he would "look favorably on agreeing to the waiver" if FBD was willing to include a prohibition on bringing any actions against Fifth Third. Mr. Heck wrote:

> "Terry and David,
>
> I have one issue with this request at present. While it is clear FBD would not bring any action against Wells Fargo, I believe we would also need that condition to include a prohibition on bringing any actions against 5th 3rd Bank as well, <u>since we could be directly impacted by such claims to the extent they effect the loan/collateral rights in which we are a participant</u>. In those instances, the trustee would need to retain alternate counsel. If you are willing to include that in the conditions as well, I would look favorably on agreeing to the waiver."

December 29, 2010 Email from Gary Heck, Senior Counsel, Wells Fargo Legal Department to Terry Hall, Partner with FBD, and Courtesy Copy to the Trustee [WF012639] (attached as

Exhibit 2) (filed under seal).  In response, FBD complied with Wells Fargo's request to include language that would prohibit FBD from taking action that would adverse to Fifth Third:

> "Gary,
>
> I have revised the letter (last sentence of the partial paragraph on page 2 of the letter) to include Fifth Third Bank.  We had earlier agreed with Fifth Third that we would not represent the Trustee in any action or adversary proceeding against it."

December 29, 2010 Email from Terry Hall, Partner with FBD to Gary Heck, Senior Counsel, Wells Fargo Legal Department, and Courtesy Copy to the Trustee [WF012639].  Wells Fargo consented to the waiver letter with the additional language that included Fifth Third.  The December 29, 2010 letter states, in part, that FBD "would not represent the Trustee in any adversary proceeding or other action that the Trustee may commence directly against Wells Fargo or against Fifth Third Bank."  [WF012639-WF12643] (attached as Exhibit 4) (filed under seal).  The Trustee is also copied on the December 29, 2010 letter.

In addition to FBD, the Trustee sought and obtained a conflict waiver from Wells Fargo on December 28, 2010.  The Trustee wrote: "I am writing to request your specific consent to my service as bankruptcy trustee in a bankruptcy proceeding which could result in an indirect conflict of interest. . . . Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment, although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interests of Wells Fargo."  December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] (attached as Exhibit 3) [marked in Knauer Dep. as Exhibit 3].  Mr. Knauer also agreed that as trustee his "[trustee]

service will be subject to all applicable rules of professional conduct."[17]  Mr. Heck responded,

stating: "I agree to waive the conflict subject to the terms described in your email."  Id.

FBD's and the Trustee's seeking and obtaining conflict waivers in connection with

Wells Fargo was required to be disclosed.  Local Rule B-2014-1 ("The Professional shall serve

copies of all such waivers upon the Applicant and the Service List with the Employment

Application or promptly following receipt by the Professional of a waiver." (emphasis added));

In re Jore Corp., 298 B.R. 703, 732 (Bankr. D. Mont. 2003) (disqualifying counsel for debtor for

failure to disclose that conflicts waiver obtained from DIP lender prohibited debtor's counsel

from undertaking litigation adverse to it); In re GIT–N–GO, INC, 321 B.R. 54, 60 ("[T]he Court

finds that the written conflict waivers, while necessary in order to satisfy the rules of professional

conduct, do not aid the cause of eliminating the adversity of interests between Hale–Halsell and

the estate.").

      B.    Discussions with the United States Trustee Do Not Constitute Disclosure
          to the Court or Creditors, But Underscore the Need to Disclose

The Trustee and FBD, however, determined that the conflict issue was significant

enough that the Trustee contacted the United States Trustee, Charles Wharton.  The Trustee was

asked whether he contacted Mr. Wharton "because [the Trustee] thought it might possibly be

something that he said, 'I think you ought to disclose that?'" in reference to the Trustee's

relationship with Wells Fargo.  The Trustee acknowledged, "That was certainly a possibility."

Knauer Dep., T.p. 59, lns. 22-25.

---

[17] As the Indiana Rules of Professional Conduct prevent Mr. Knauer from representing an interest adverse to his client Wells Fargo (Ind. R. Prof. Cond. 1.0(e) and 1.7), the scope of this waiver is very limited.  It is certainly not the "full unrestricted waiver" described by the Trustee in his affidavit of August 13, 2012.  [Dkt. No. 1330].

Such a possibility, however, requires disclosure:

> "The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts. The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away. The professional's duty to disclose is self-policing." (Citations omitted.)

In re Granite Partners, L.P., 219 B.R. at 35; Kravit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 835 (7th Cir. 1998) (stating that the scope of a disinterested professional "is sufficiently broad to include any professional with an interest or relationship that would even faintly color the independence and impartial attitude required by the Code.") (internal quotation marks and citations omitted); In re Jore Corp., 298 B.R. at 725.

The Trustee's conversation with Mr. Wharton does not satisfy, as a matter of law, the Trustee's disclosure obligations. See e.g., In re Kappy Invs., Inc., 465 B.R. at 842 ("Discussions with the Trustee do not satisfy the disclosure requirements. Proper disclosure belongs in the application filed of record for the Court and all interested parties in the case to see."); In re BH&P, Inc., 949 F.2d at 1303-04 & n.6 (affirming disqualification of counsel, and attaching no relevance to law firm's conversation with United State Trustee regarding potential conflicts of interest). Instead, the Trustee's discussions with Mr. Wharton, along with the Trustee's discussions with FBD, regarding their connections with Wells Fargo "compels disclosure where, as here, the party had contemplated and discussed a specific situation involving a potentiality for conflict." Id. at 1317-18 ("[T]his Court can find no error in the bankruptcy court's determination that Maggio [and RGZ] breached the duty of disclosure. This breach may have been the product of negligence, but negligence does not excuse the failure to

17

disclose a possible conflict of interests.") (alteration in original) (internal quotation marks and citation omitted).

IV.    THE TRUSTEE CLAIMS THAT WELLS FARGO WAS NOT A PARTY IN INTEREST, EVEN THOUGH HE CONCEDES THAT HAD NOT EVEN SEEN THE PARTICIPATION AGREEMENT AT THE TIME HE REACHED THAT CONCLUSION

There is no legitimate way to "rule out" any connection with Wells Fargo as a participant before the Trustee reviewed the Participation Agreement. The Trustee has testified that he and his counsel determined that Wells Fargo was not a party in interest and could never become a party in interest because Wells Fargo (or its credit "Assignee") was a "mere participant;" but, this was based solely on third-hand hearsay because both the Trustee and FBD concede that at the time they made this determination, they had not seen the Participation Agreement. December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] [marked in Knauer Dep. as Exhibit 3]; Knauer Dep., T.p. 58; December 29, 2010 Letter from Terry Hall to Gary Heck [WF012639-WF12643]; FBD Response, p. 8 n.7. The Trustee's and FBD's understanding of Wells Fargo's role as a "participant," having not read the Participation Agreement, came through Fifth Third Bank. FBD Response, p. 8 n.7. It is perhaps most disconcerting to these Objecting Parties that Fifth Third was allowed to play any role in identifying whom the Estate's professionals must disclose under Fed. R. Bankr. P. 2014 and 2007.1.

For example, one of the primary duties of the Trustee, and certainly his counsel, is to evaluate potential preference payments made to parties, particularly the primary secured lender(s). The determination of who is the real party in interest in such transfers, to the extent they occurred, must include careful consideration of Participation Agreements. In <u>Northern</u>

Capital, Inc. v. Stockton National Bank (In re Brooke Corp.), 458 B.R. 579, 588 (Bankr. D. Kan. 2011), the Court followed the reasoning of the Seventh Circuit in Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890 (7th Cir. 1988), in determining whether the primary lender is a mere conduit of potential payments passed through to the participant(s). The Court in In re Brooke Corp. held that the primary lender was a mere conduit and upheld a grant of summary judgment to the primary lender which protected it from preference payment for anything beyond its percentage share. Therefore, Wells Fargo could be directly sued by the Trustee to the extent it received transfers from Fifth Third and Fifth Third was acting as a "mere conduit."[18]

The comparisons between the In re Brooke Corp. and the instant Participation Agreement are astonishing. Cf. In re Brooke Corp., 458 B.R. 579, with Participation Agreement, §§ 2.1, 2.7, 3.2, 3.3, 3.3(b), 5.1, and 5.8. Accordingly, even if the Trustee ever had any intention to pursue a preference claim against Fifth Third, and even if his Special Counsel were to pursue Fifth Third, the Trustee certainly had the obligation to consider whether Fifth Third would assert that it was a mere conduit requiring the addition of Wells Fargo. Thus, before the Trustee or FBD ever read the Participation Agreement prior to disclosures they made under Fed. R. Bankr. P. 2007.1 and 2014, there is no way to reach a conclusion that Wells Fargo was not, and never could be, an "other party in interest."

---

[18] In re Interwest Business Equip., Inc., 23 F.3d 311, 316 (10th Cir. 1994) ("The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict. The policy behind disqualification for representing potentially conflicting interests provides the key to its extent. The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor." (citations omitted)).

The Trustee further attempts to justify this "mere participant" theory based upon Section 8.1 of the Participation Agreement that gives Wells Fargo no rights in the bankruptcy. This logic fails for two reasons. First, there is no way the Trustee could have known of such rights or forfeiture of such rights, without ever having read the Participation Agreement when making the initial determination. Second, if Wells Fargo can play no role in the bankruptcy, then surely the Trustee would have rebuffed their efforts to participate in numerous meetings and would not have provided them frequent budget and liquidation analyses as the record shows. This argument is nothing more than a hindsight justification with no basis in fact.

V.        WELLS FARGO IS A PARTY IN INTEREST

The Trustee and FBD claim that they did not have to disclose Wells Fargo because Wells Fargo is purportedly not a party interest. FBD Response, pp. 7-11; Trustee Response, pp. 6-9. This argument, however, splits hairs and ignores both the broad meaning of "party in interest" and the requirements under the Code to disclose all known connections even if they do not rise to the level of a conflict. Wells Fargo is a "party in interest" that should have been disclosed in the Affidavits of Disinterest supporting the employment of FBD, as well as the Affidavit of Disinterest supporting the appointment of the Trustee.

"Although 'party in interest' is not defined under the Bankruptcy Code, it is construed broadly in order to effectuate the purpose of disclosure – 'to permit the court to determine whether the attorney is disqualified or whether further inquiry is needed before making that determination.'" In re Adam Furniture Indus., Inc., 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993) (quoting In re Rusty Jones, Inc., 134 B.R. 321, 345 (Bankr. N.D. Ill.1991)). "Section 327 is intended to prevent the estate from being represented by people who might have some interest or relationship that would color the independent and impartial attitude required by the

20

Code. Thus, attorneys are required to disclose connections which demonstrate a predisposition in favor of one of parties in interest." In re Rusty Jones, Inc., 134 B.R. 321, 345-46 (Bankr. N.D. Ill.1991) (internal quotation marks and citation omitted) ("This case is a vivid example of how the estate is hurt when it is represented by a firm that is partial to one or more parties in interest or control.").

"Even assuming [a company] is not a creditor of the debtor," such a company could "still be considered a 'party in interest' under Bankruptcy Rule 2014." Adam Furniture Indus., Inc., 158 B.R. at 299. A professional's connection to a "participant" lender should not only be disclosed, but may be a sufficient basis on which to disallow the professional's employment based on "potential conflicts [of interest] and the appearance of impropriety." In re Hub Bus. Forms, Inc., 146 B.R. 315, 322-23 (Bankr. D. Mass. 1992).

The Trustee cites to caselaw in his Response that does not discuss disclosure requirements under Fed. R. Bankr. P. 2014 or 2007.1. Instead, the Trustee cites to cases (e.g., In re Okura & Co., 249 B.R. 596 (Bankr. S.D.N.Y. 2000)) that address, to some degree, whether a participant lender has standing as a creditor. Trustee Response, pp. 6-9. Standing issues, however, are often complicated and may take years to resolve, as evidenced by FBD's and the Trustee's repeated allegations that the "Objecting Parties" like Superior Livestock, the Bluegrass entities, and First Bank lack standing. FBD Response, pp. 4-7; Trustee's Response to Objections to and Motions to Strike the Trustee's Report [Dkt. No. 1326], pp. 4-9. There is no provision under the disclosure requirements of Fed. R. Bankr. P. 2007.1 or 2014 that mandates (or permits) a Trustee or his professionals to make unilateral "standing" determinations about the parties with whom they have connections prior to disclosure. Nor do these rules (or the cases that actually interpret them, as cited in support of the Renewed Objection and this Reply) require (or permit)

the disclosing parties to "pick and choose" which entities to disclose.  As explained by the caselaw cited above, the term "party in interest" under the disclosure rules is "construed broadly" (In re Adam Furniture Indus., Inc., 158 B.R. at 299), and includes even entities that are not creditors.  Id.

The facts demonstrate that Wells Fargo was undeniably a "party in interest" under Fed. R. Bankr. P. 2014.  First, the first two docket entries of telephonic conferences with the Court, December 7, 2010 [Dkt. No. 28] and December 13, 2010 [Dkt. No. 68] clearly identify "Jeff Wegner" attorney for "Wells Fargo Capital."  Wells Fargo also participated in at least two additional hearings on March 11, 2011 and June 24, 2011.

Second, as discussed above, both the Trustee and FBD obtained conflict waivers from Wells Fargo, prior to the Trustee's filing the application to employ FBD as counsel.  Both were informed by Wells Fargo that Wells Fargo's interest would be "directly impacted" by any adverse action taken against Fifth Third.  Wells Fargo requested that FBD add Fifth Third to its waiver of conflict, and FBD agreed.  Not only did the Trustee's and FBD's retaining of conflict waivers in itself require disclosure, but the obtaining of conflict waivers further demonstrates that, based on the information available to the Trustee and FBD available in late December 2010, both acknowledged that Wells Fargo had interests in this bankruptcy proceeding.

Third, prior to the appointment of the Trustee, Wells Fargo participated in conference calls (on, but not limited to, December 14, 16, and 20, 2010) with the Custodian (formerly the state-court receiver), along with Fifth Third, to discuss the budget, asset recovery, a funding mechanism for the bankruptcy, and the selection of a Trustee.  Following the Trustee's appointment, and also the employment of FBD, the Trustee participated in numerous, private

conference calls with Wells Fargo and Fifth Third Bank on at least the following dates: January 10, 2011 [WF006415-16], January 18, 2011 [WF006417], January 26, 2011 [WF006418], February 1, 2011 [WF006419], February 9, 2011 [WF006420], February 23, 2011 [WF006421], March 7, 2011 [WF006422], March 22, 2011, March 31, 2011 [WF006406, WF006424], April 12, 2011 [WF006403-04], April 25, 2011 [WF006426], May 9, 2011 [WF006427], June 29, 2011 [WF006428], July 19, 2011 [WF006429-30], August 2, 2011 [WF006431], August 18, 2011 [WF006431], September 8, 2011 [WF006407], October 5, 2011 [WF006409-11]. The topics discussed on these private conference calls with the "bank group" were broad and, at least from the notes of the calls from Wells Fargo, included information that was not generally known to the creditor body, like budgets, asset recovery, money transfers to the "bank group," and updates on adversary proceedings (even, at times, before litigation was filed).

The Trustee also acknowledged Wells Fargo's and Fifth Third's shared an interest in obtaining a "money transfer" to the "bank group," which further demonstrates that Wells Fargo was (and is) a party in interest. The Trustee testified: "The, the bank group asked me in every call when they could get some of the money we, we had collected. I, I have a vivid recollection that was numero uno on Fifth Third's plate, or I'm sure Wells Fargo, if they were on the call had the same interest…. If you are asking me if I discussed the money transfer, I'm sure that I did because they always ask." Knauer Dep., T.p. 163, lns. 1-6, 20-22. This testimony related to a document that described a conference call with Wells Fargo in September or October 2011. Based on notes from a conference call one year into this bankruptcy proceeding, the Trustee acknowledges that Wells Fargo had "the same interest" as Fifth Third and asked him on every call when "they [plural] could get some of the money," referring to Fifth Third Bank and Wells Faro collectively as "the bank group."

VI.          <u>CONCLUSION</u>

For the reasons set forth above and in the Motion to Remove [Dkt. No. 1239],

First Bank requests that the Court grant the relief requested in the Motion to Remove.

Respectfully submitted,


/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email: ddonnellon@ficlaw.com
          sweigand@ficlaw.com

Attorneys for The First Bank and Trust
Company

## CERTIFICATE OF SERVICE

I certify that on the 18th day of August, 2012, I electronically filed the foregoing Reply Memorandum in Support of Motion of The First Bank and Trust Company to Remove Trustee Pursuant To 11 U.S.C. § 324 with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | John Frederick Massouh<br>john.massouh@sprouselaw.com | Judy Hamilton Morse<br>judy.morse@crowedunlevy.com |
| C.R. Bowles, Jr<br>crb@gdm.com | John W. Ames<br>jwa@gdm.com | John M. Thompson<br>john.thompson@crowedunlevy.com |
| James A. Knauer<br>jak@kgrlaw.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Jessica E. Yates<br>jyates@swlaw.com |
| John Hunt Lovell<br>john@lovell-law.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com | Matthew J. Ochs<br>matt.ochs@moyewhite.com |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeremy S Rogers<br>Jeremy.Rogers@dinslaw.com | Laura Day Delcotto<br>ldelcotto@dlgfirm.com |
| Jeffrey R Erler<br>jeffe@bellnunnally.com | Ivana B. Shallcross<br>ibs@gdm.com | Kelly Greene McConnell<br>lisahughes@givenspursley.com |
| Edward M King<br>tking@fbtlaw.com | Deborah Caruso<br>decaruso@daleek.com | T. Kent Barber<br>kbarber@dlgfirm.com |
| Randall D. LaTour<br>rdlatour@vorys.com | Meredith R. Thomas<br>mthomas@daleeke.com | Ross A. Plourde<br>ross.plourde@mcafeetaft.com |
| Bret S. Clement<br>bclement@acs-law.com | William Robert Meyer, II<br>rmeyer@stites.com | Walter Scott Newbern<br>wsnewbern@msn.com |
| John R. Carr, III<br>jrciii@acs-law.com | Christie A. Moore<br>cm@gdm.com | Kirk Crutcher<br>kcrutcher@mcs-law.com |
| James M. Carr<br>jim.carr@bakerd.com | Allen Morris<br>amorris@stites.com | Todd J. Johnston<br>tjohnston@mcjllp.com |
| Robert K. Stanley<br>robert.stanley@bakerd.com | James Bryan Johnston<br>bjtexas59@hotmail.com | Timothy T. Pridmore<br>tpridmore@mcjllp.com |
| Terry E. Hall<br>terry.hall@bakerd.com | James T. Young<br>james@rubin-levin.net | Theodore A Konstantinopoulos<br>ndohbky@jbandr.com |
| Dustin R. DeNeal<br>dustin.deneal@bakerd.com | David L. LeBas<br>dlebas@namanhowell.com | Karen L. Lobring<br>lobring@msn.com |

26

Sandra D. Freeburger
sfreeburger@dsf-atty.com

Lisa Kock Bryant
courtmail@fbhlaw.net

Elliott D. Levin
robin@rubin-levin.net
edl@trustesoultions.com

John M. Rogers
johnr@rubin-levin.net

Jeremy S. Rogers
Jeremy.rogers@dinslaw.com

John David Hoover
jdhoover@hovverhull.com

Sean T. White
swhite@hooverhull.com

Robert H. Foree
robertforee@bellsouth.net

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Michael W. McClain
mike@kentuckytrial.com

William E. Smith
wsmith@k-glaw.com

Susan K. Roberts
skr@stuartlaw.com

James Edwin McGhee
mcghee@derbycitylaw.com

Thomas C. Scherer
tscherer@binghammchale.com

David A. Laird
david.laird@moyewhite.com

Jerald I. Ancel
jancel@taftlaw.com

Jeffrey J. Graham
jgraham@taftlaw.com

Trevor L. Earl
tearl@rwsvlaw.com

Christopher E. Baker
cbaker@hklawfirm.com

David Alan Domina
dad@dominalaw.com

Kent A Britt
kabritt@vorys.com

Joshua N. Stine
jnstine@vorys.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Jeffrey L. Hunter
jeff.hunter@usdoj.gov

Amelia Martin Adams
aadams@gldfirm.com

Michael Wayne Oyler
moyler@rwsvlaw.com

Jason W. Cottrell
jwc@stuartlaw.com

Robert A. Bell
rabell@vorys.com

Andrea L. Wasson
andreawassonatty@gmail.com

Anthony G. Raluy
traluy@fbhlaw.net

Harmony A. Mappes
Harmony.mappes@faegrebd.com

James B. Lind
jblind@vorys.com

James E. Rossow, Jr.
jim@rubin-levin.net

Jeffrey R. Erler
jeffe@bellnunnally.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Kevin M. Toner
Kevin.toner@faegrebd.com

Kim Martin Lewis
Kim.lewis@dinslaw.com

Melissa S. Giberson
msgiverson@vorys.com

John Huffaker
John.huffaker@sprouselaw.com

Shawna M. Eikenberry
Shawna.eikenberry@faegrebd.com

Wendy W. Ponader
Wendy.ponader@faegrebd.com

W. Wesley Harned
wharned@dlgfirm.com

/s/ Stephen A. Weigand
Stephen A. Weigand

648280

# EXHIBIT 1

## WELLS FARGO & COMPANY

### POLICY REGARDING LEGAL CONFLICTS OF INTEREST
### Revision of October 14, 2010

### INTRODUCTION

The Wells Fargo Law Department has adopted the following policy regarding legal conflicts of interest resulting from a law firm's current or former representation of Wells Fargo, including the subsidiaries of Wachovia Corporation. The purpose of this policy is to provide Wells Fargo's general consent to some common conflicts of interest so that it will be unnecessary for outside counsel to obtain specific consents to such conflicts as they arise, to identify those conflicts to which Wells Fargo will not consent as a matter of policy, and to establish a process by which outside counsel may ask for specific consents to those conflicts to which Wells Fargo has not given a general consent but which are not prohibited as a matter of policy. All outside firms and lawyers who represent Wells Fargo must adhere to these policies.

**EVEN WHERE A CONTEMPLATED REPRESENTATION IS PERMISSIBLE UNDER APPLICABLE RULES OF PROFESSIONAL CONDUCT AND THIS POLICY, WELLS FARGO EXPECTS ALL OUTSIDE COUNSEL TO CONSIDER THE POTENTIAL EFFECT OF THE REPRESENTATION ON ITS RELATIONSHIP WITH WELLS FARGO, AND TO AVOID THE REPRESENTATION IF IT COULD DAMAGE THIS RELATIONSHIP OR HAVE AN ADVERSE EFFECT ON COUNSEL'S EXERCISE OF PROFESSIONAL JUDGMENT ON BEHALF OF WELLS FARGO.**

Wells Fargo may change this policy from time to time but no such change shall affect the validity of any general or specific consent given prior to such change.

Capitalized terms are defined in Exhibit A.

### POLICY

1.  General Rule: Outside Counsel Must Obtain Wells Fargo's Specific Consent to any Conflict of Interest

    Except as provided in Section 2, a law firm must obtain Wells Fargo's specific consent before commencing any representation which would result in a Conflict of Interest for the firm, whether the Conflict of Interest arises as the result of a Transaction or a Dispute. Any request for specific consent must be submitted by e-mail to the Wells Fargo Conflicts Counsel identified on Exhibit D for the Wells Fargo Line of Business which is involved in the Transaction or Dispute causing the Conflict of Interest, and be substantially in the form of Exhibit B.

    Wells Fargo Conflicts Counsel will respond to the request by e-mail, including additional conditions as may be deemed appropriate, and which response will constitute the final and exclusive understanding of the parties with respect to the

Conflict of Interest unless outside counsel requests a further change or modification to the terms and conditions of the specific consent, which must also be sent to Wells Fargo Conflicts Counsel by e-mail and, if acceptable, confirmed by Wells Fargo in a responsive e-mail.

2.    <u>Exceptions to General Rule: General Consents</u>

(a)    <u>Representation of Wells Fargo in a Transaction</u>.    Wells Fargo hereby consents to any Conflict of Interest arising out of a law firm's representation of a Wells Fargo Line of Business in a Transaction with an Adverse Party if the Conflict of Interest is caused solely by one or more of the following facts:

(i)    The firm's former representation of the Adverse Party in an unrelated Transaction; or

(ii)    The firm's concurrent representation of the Adverse Party in an unrelated Transaction not involving the same Wells Fargo Line of Business.

(b)    <u>Representation of Adverse Party in a Transaction</u>.    Wells Fargo hereby consents to any Conflict of Interest arising out of a law firm's representation of an Adverse Party in a Transaction with a Wells Fargo Line of Business if the Conflict of Interest is caused solely by one or more of the following facts:

(i)    The firm's concurrent or former representation of a different Wells Fargo Line of Business in an unrelated Transaction or Dispute, whether or not involving the Adverse Party; or

(ii)    The firm's concurrent or former representation of the same Wells Fargo Line of Business in an unrelated Transaction or Dispute, provided that the Transaction or Dispute did not involve the Adverse Party.

(c)    <u>Representation of Adverse Party in Dispute</u>.    Wells Fargo hereby consents to any Conflict of Interest arising out of a law firm's representation of an Adverse Party in a Dispute with Wells Fargo if the Conflict of Interest is caused solely by one or more of the following facts:

(i)    **Bankruptcy Matters.**    The firm's representation of Wells Fargo as creditor in a bankruptcy case and the firm's concurrent representation of another creditor in the same case, or the firm's representation of a debtor in a bankruptcy case involving a claim by Wells Fargo against the debtor, where (A) the amount claimed by Wells Fargo is less than $20,000, (B) the representation does not involve or give rise to a claim against Wells Fargo in the case or in any related litigation, and (C) the representation does not challenge the validity or priority of Wells Fargo indebtedness, or the validity of Wells Fargo's lien, if any;

(ii)    **Foreclosures.**    The firm's representation of a creditor in the judicial or non-judicial foreclosure of a lien on real or personal property which is also

encumbered by a Wells Fargo lien securing indebtedness of less than $20,000, where the representation does not challenge the validity or priority of Wells Fargo's lien or attempt to subordinate Wells Fargo's lien or the related indebtedness;

(iii)   **Garnishments and Levies.**  The firm's representation of a judgment creditor in a garnishment of or levy against the real or personal property of a Wells Fargo customer which is held or controlled by Wells Fargo where the representation does not challenge, either through litigation or motion, Wells Fargo's processing or enforcement of the garnishment or levy; or

(iv)   **Subpoenas and Legal Process.**  The firm's representation of a client seeking to obtain, by third-party subpoena or similar process, Wells Fargo documents, or information or testimony from a Wells Fargo employee concerning a Wells Fargo customer, where the representation does not involve the initiation of litigation, including, without limitation, motions to compel or for sanctions, against Wells Fargo.

(d)   <u>General Consent Conditions</u>.  Lawyers in a firm who utilize the general consents granted by Wells Fargo under this Section 2 in order to represent an Adverse Party against a Wells Fargo Line of Business expressly agree that they will <u>not</u> (i) represent the Wells Fargo Line of Business on any matter related to the Transaction or discuss the pending Transaction with other lawyers in the firm who represent the Wells Fargo Line of Business during the pendency of the firm's representation of the Adverse Party on the Transaction, (ii) have worked on any Transaction for the Wells Fargo Line of Business during the preceding three years, (iii) use, access or disclose confidential information concerning the Wells Fargo Line of Business (including without limitation, trade secrets, and matters covered by the attorney work product privilege) or use, access or disclose records established for the Wells Fargo Line of Business (whether maintained in hard copy or electronic form), or (iv) represent an Adverse Party in any subsequent Dispute with the Wells Fargo Line of Business arising out of the Transaction or any prior Dispute for which a general or specific consent has been given by Wells Fargo.

3.   <u>When Specific Consent Will Not Be Considered</u>

(a)   <u>Disputes that Arise from a Matter with Wells Fargo</u>.  Wells Fargo will <u>not</u> consider giving specific consent to a Conflict of Interest to any law firm seeking to represent an Adverse Party against Wells Fargo in a Dispute if the Conflict of Interest has arisen in the course of the law firm's representation of either the Adverse Party or Wells Fargo in the same or a related Transaction or Dispute.

(b)   <u>Concurrent Representation in a Transaction</u>.  Wells Fargo will <u>not</u> consider giving specific consent to a Conflict of Interest which would result in a law firm's concurrent representation of a Wells Fargo Line of Business and an Adverse Party in the same or a related Transaction, unless the representation of the Adverse Party is for purposes of delivering a third party legal opinion regarding one or

more legal issues applicable to the Transaction or a particular aspect of the Transaction.

(c)     No Prospective Consents.  Except as provided in the general consents found in Section 2, Wells Fargo will not consent to any Conflict of Interest which has not yet arisen but which may arise in the future.

4.     Examples.  Examples of Conflicts of Interest that are covered by the general consents of Section 2 as well as those Conflicts of Interest that are prohibited as a matter of policy under Section 3 are listed in Exhibit C.

5.     Exhibits.   The following exhibits are attached to and form a part of these policies:

Exhibit A    Definitions
Exhibit B    Form of E-Mail Request for Specific Consent
Exhibit C    Some Examples of Conflicts of Interest and their Treatment
Exhibit D    Wells Fargo Lines of Business and Wells Fargo Conflicts Counsel

© 2010 Wells Fargo & Company. All rights reserved.

## EXHIBIT A

## DEFINITIONS

The following capitalized terms shall have the meanings indicated:

(a)     "Adverse Party" means a person or entity whose interests are sufficiently adverse to Wells Fargo's interests to create a Conflict of Interest.

(b)     "Conflict of Interest" means a conflict of interest arising under any applicable rules of professional conduct as a result of a law firm's past, present or proposed representation of Wells Fargo or an Adverse Party.

(c)     "Dispute"  means a pending, threatened, or likely litigation, arbitration, bankruptcy, adversary proceeding, contested motion, alternative dispute resolution process or loan workout, including, without limitation, any foreclosure or collection action.

(d)     "Transaction" means any matter which is not a Dispute.

(e)     "Wells Fargo" means Wells Fargo & Company and its subsidiaries and employees, including legacy Wachovia Corporation and its subsidiaries and employees, whether acting in their own capacities or as fiduciaries, servicers, agents or representatives of other persons or entities; provided, however, that such term shall only include employees when the representation involves a claim or potential claim against any such employees acting in their capacity as employees, fiduciaries, servicers, agents, or representatives of Wells Fargo.

(f)     "Wells Fargo Conflicts Counsel" means, as to a Conflict of Interest with any Wells Fargo Line of Business, the lawyer or lawyers identified on Exhibit D.

(g)     "Wells Fargo Line of Business" means a line of business shown on Exhibit D.

**EXHIBIT B**

**FORM OF E-MAIL REQUEST FOR SPECIFIC CONSENT**

From:  **[_Outside Law Firm_]**
To:    Wells Fargo Conflicts Counsel
Cc:    **[_Applicable Wells Fargo Relationship Manager, if applicable / known_]**
Subject: **[_Name of Adverse Party to Wells Fargo Line of Business_]**

Dear Wells Fargo Conflicts Counsel:

I am writing to request your specific consent to our representation of a party in a matter which would result in a Conflict of Interest that is not covered by any of the general consents contained in the current *Wells Fargo & Company Policy Regarding Legal Conflicts of Interest.*

**THIS INSERT FOR USE IF FIRM WISHES TO REPRESENT ADVERSE PARTY [_Name of Adverse Party_](the "Adverse Party") has asked [_name of law firm_](the "Firm") to represent [_it_][_him_][_her_] in connection with [_a detailed description of the proposed (a) Transaction or (b) Dispute that explains why there is a Conflict of Interest and why it is not covered by a general consent, and which identifies (1) the adverse Wells Fargo Line(s) of Business, (2) the name and contact information of the responsible relationship manager or account officer, if applicable, (3) the lawyers of the Firm who will represent the Adverse Party, and (4) a listing of each Wells Fargo Line of Business that the Firm has represented or is currently representing and a description of the extent of the representation_].**

**THIS INSERT FOR USE IF FIRM WISHES TO REPRESENT WELLS FARGO [_Wells Fargo [_name of Wells Fargo Line of Business_] has asked [_name of law firm_](the "Firm") to represent it in connection with [_a detailed description of the proposed (a) Transaction or (b) Dispute that explains why there is a Conflict of Interest and why it is not covered by a general consent, and which identifies (1) the [_Name of Adverse Party_] (the "Adverse Party") and the Firm's prior or concurrent relationship with the Adverse Party, (2) the responsible relationship manager or account officer, if applicable, and (3) the lawyers of Firm who will represent the Wells Fargo Line of Business_].**

If you consent to our representation of **[_[_insert name of Wells Fargo Line of Business_][_the Adverse Party_]_]** in this matter, we acknowledge and agree that the representation will be subject  to all applicable rules of professional conduct and that the Firm will not (1) disclose to an Adverse Party any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), (2) use such information in any matter or proceeding without Wells Fargo's consent, or (3) represent the Adverse Party in any subsequent Dispute with Wells Fargo arising out of the Transaction or any prior Dispute for which a general or specific consent has been given by Wells Fargo, as applicable.

B-1

If you agree that the Firm may conduct its proposed representation in the referenced matter subject to these conditions, or subject to such additional conditions as you may deem appropriate under the circumstances, please confirm this for me by return e-mail.

Sincerely,

**EXHIBIT C**

**EXAMPLES OF SOME CONFLICTS OF INTEREST AND THEIR TREATMENT UNDER THESE POLICIES**

I. Examples of Conflicts that are Covered by the General Consents in Section 2

Section 2(a)(i):

- The firm wishes to represent Wells Fargo's Commercial Banking Group in the negotiation of a commercial mortgage loan to Company A for the purpose of paying off a construction loan to Company A from Wells Fargo's Real Estate Group, but the firm formerly represented Company A in its purchase of the building from Company B or formerly represented Company A in the negotiation of the construction loan for the building.

Section 2(a)(ii):

- The firm wishes to represent Wells Fargo's Real Estate Group in the negotiation of a commercial mortgage loan to Company A for the purpose of acquiring a building from Company B but the firm is concurrently representing Company A on a sublease of space in a different building from Company B or from Wells Fargo's Corporate Properties Group.

Section 2(b)(i):

- The firm wishes to represent Company A in the negotiation of a commercial mortgage loan to Company A from Wells Fargo's Commercial Banking Group for the purpose of paying off a construction loan to Company A from Wells Fargo's Real Estate Group, but the firm formerly represented the Real Estate Group in the negotiation of the same construction loan with Company A.

- The firm wishes to represent Company A in the negotiation of a commercial mortgage loan to Company A from Wells Fargo's Real Estate Group, but the firm is currently representing Wells Fargo's Investment Management and Trust, which is acting in a fiduciary capacity in an unrelated matter (e.g. as a trustee or executor).

- The firm wishes to represent Company A in negotiating the terms of an investment management agreement with Wells Fargo Brokerage Services, LLC, while concurrently representing Wells Fargo's Real Estate Group on a series of ongoing commercial mortgage loan transactions.

- The firm wishes to represent Company A in the negotiation of a working capital line of credit from Wells Fargo Business Credit, but the firm is currently representing Wells Fargo's Commercial Banking Group in a bankruptcy case involving an unrelated third party debtor.

C-1

Section 2(b)(ii):

- The firm wishes to represent Company A in the negotiation of a commercial mortgage loan to Company A from Wells Fargo's Permanent Debt Finance for the purpose of acquiring a building from Company B, but the firm is concurrently representing Permanent Debt Finance in the negotiation of a commercial mortgage loan to Company B on a different building.

- The firm wishes to represent Company A in negotiating the prepayment of a commercial loan held in a securitization for which Wells Fargo's Corporate Trust Services serves as the trustee, but the firm is currently representing Wells Fargo's Corporate Trust Services in defending an unrelated lawsuit.

- The firm wishes to represent Company A in the negotiation of a working capital line of credit from Wells Fargo's Commercial Banking Group, but the firm is currently representing the same Commercial Banking Group in a bankruptcy case involving an unrelated third party debtor.

II.    Examples of Conflicts of Interest Which are Prohibited as a Matter of Policy

Section 3(b):

- The firm wishes to concurrently represent both Wells Fargo's Real Estate Group and Company A in the negotiation of a commercial mortgage loan to Company A from the Real Estate Group.

- The firm wishes to represent both Wells Fargo's Real Estate Group in the negotiation of a commercial mortgage loan to Company A and to concurrently represent Company A in the negotiation of a mezzanine loan to Company A from Wells Fargo's Real Estate Merchant Banking Group.

C-2

**EXHIBIT D**

| INDEX TO WELLS FARGO LINES OF BUSINESS (See page D-8 for Index to Wells Fargo Conflicts Counsel for Wells Fargo Bank CmBG and BBG Commercial Lending "Transaction" and "Dispute" matters, as well as employment related "Dispute" matters.) | | |
|---|---|---|
| **Line of Business Groups** | **Page** | **Description of Line of Business Groups** |
| Consumer Businesses | D-2 | These are consumer lending and deposit taking businesses |
| Commercial Businesses | D-3- D-4 | These are commercial lending and leasing businesses |
| Special Situations Group | D-4 | These units provide resolution management for portfolios of primarily legacy Wachovia Bank commercial mortgage and other assets |
| Investment Banking and Securities, Derivatives and Structured Finance Businesses | D-4- D-5 | These are investment banking and securities, derivatives and structured finance businesses |
| Commercial Real Estate Lending and Servicing Businesses | D-5 | These are commercial real estate lending and servicing businesses |
| Insurance Businesses | D-6 | These are insurance underwriting and distribution businesses |
| International Businesses | D-6 | These are foreign exchange, trade services, international treasury, trade finance and risk management businesses |
| Other Businesses | D-7 | These are internal "Enterprise Services" operations groups that support various Wells Fargo businesses |

| CONSUMER BUSINESSES | |
| --- | --- |
| **LINES OF BUSINESS** | **WELLS FARGO CONFLICTS COUNSEL** |
| Auto Finance (Consumer) | Chris Keiser \| 610.595.5395 \| chriskeiser@wellsfargo.com |
| Consumer Deposits | Shirley Thompson \| 415.222.5350 \| shirley.n.thompson@wellsfargo.com |
| Credit, Debit and Prepaid Cards (Consumer) | Michael Wood \| 515.222.8218 \| michael.d.wood@wellsfargo.com |
| Direct Deposit Advance | Lydia Crawford \| 612.667.9332 \| lydia.p.crawford@wellsfargo.com |
| Education Finance Services | Chris Keiser \| 610.595.5395 \| chriskeiser@wellsfargo.com |
| Enterprise Marketing | Carrie Hefte \| 612.667.2328 \| carrie.hefte@wellsfargo.com |
| Global Remittance Services | Shirley Thompson \| 415.222.5350 \| shirley.n.thompson@wellsfargo.com |
| Home Equity Lending (Originations) | Karen Jackson \| 515.213.4154 \| karen.s.jackson@wellsfargo.com |
| Home Equity Lending (Servicing and Collections) | David Traxler \| 515.327.4425 \| david.h.traxler@wellsfargo.com |
| Investment Management and Trust | Linda Dillow \| 215.670.6864\| linda.dillow@wellsfargo.com<br>Ghada Saliba-Malouf \| 415.396.7655 \| salibamg@wellsfargo.com |
| Internet Services Group / Online Bnkg. | David Whitaker \| 515.213.4517 \| david.whitaker@wellsfargo.com |
| Lowry Hill | Kip Steincross \| 612.667.2334 \| warren.steincross@wellfargo.com<br>Ghada Saliba-Malouf \| 415.396.7655 \| salibamg@wellsfargo.com |
| Personal Credit Management | Reed Ramsay \| 515.557.8866 \| reedramsay@wellsfargo.com |
| REliable Financial | Guy DuBose \| 949.727.1044 \| guy.dubose@wellsfargo.com |
| Retail Brokerage | Hal Clarke \| 704.383-0519 \| hal.clarke@wellsfargo.com |
| Wells Fargo Community Lending and Investment | Joel Hjelmaas \| 515.213.7141 \| joel.s.hjelmaas@wellfargo.com<br>Heidi Mason \| 515.213.4884\| heidi.mason@wellsfargo.com |
| Wells Fargo Dealer Services | Guy DuBose \| 949.727.1044 \| guy.dubose@wellsfargo.com |
| Wells Fargo Financial National Bank (Retailer Finance – private label credit cards and other consumer matters) | Michael Wood \| 515.222.8218 \| michael.d.wood@wellsfargo.com |
| Wells Fargo Financial Real Estate (Including Wells Fargo Financial Bank and Wells Fargo Financial National Bank real estate matters) | Karen Jackson \| 515.213.4154 \| karen.s.jackson@wellsfargo.com |
| Wells Fargo Financial U.S. Consumer | Karen Jackson \| 515.213.4154 \| karen.s.jackson@wellsfargo.com |
| Wells Fargo Home Mortgage | David Gorsche \| 515.213.5599 \| david.gorsche@wellsfargo.com |

| COMMERCIAL BUSINESSES | |
|---|---|
| **LINES OF BUSINESS** | **WELLS FARGO CONFLICTS COUNSEL** |
| Auto Finance (Commercial) | Julie Sovern \| 704.383.2554 \| julie.sovern@wellsfargo.com |
| Business / Commercial Deposits | Bonnie Turner \| 213.253.7444 \| bturner@wellsfargo.com |
| Business Direct | Michael Love \| 415.396.3971 \| lovem@wellsfargo.com |
| Commercial Lending (Wells Fargo Bank's Business Banking Group -- the "BBG", or the Wholesale Commercial Banking Group – the "CmBG") | Contact an appropriate Business & Community Banking, Wholesale Credit, Commercial Workout, or General Litigation Section Lawyer who is identified on pages D-8 through D-10 |
| Corporate Trust Services | Tim Carlin \| 612.667.7683 \| timothy.j.carlin@wellsfargo.com |
| Credit Cards (Commercial) | Michael Love \| 415.396.3971 \| lovem@wellsfargo.com<br>Kristine Norris \| 515.557.7735 \| kristinenorris@wellsfargo.com |
| Debit Cards (Commercial) | Michael Wood \| 515.222.8218 \| michael.d.wood@wellsfargo.com |
| Energy (Non Investment Banking) | Rueben Cásarez \| 713.284.5528 \| casarer@wellsfargo.com |
| Equipment Finance | Bob Goldberg \| 212.805.1683 \| bob.goldberg@wellsfargo.com<br>Stewart Abramson \| 212.805.1009 \| stewart.g.abramson@wellsfargo.com |
| Gaming (Non Investment Banking) | Miho Kubota \| 415.396.4244 \| miho.m.kubota@wellsfargo.com |
| Institutional Brokerage and Sales | Mark Reed \| 612.667.2087\| mark.s.reed@wellsfargo.com |
| Internet Services Group / CEO | David Whitaker \| 515.213.4517 \| david.whitaker@wellsfargo.com |
| Mutual Funds Management | Dave Messman \| 415.222.1140 \| messmand@wellsfargo.com |
| Norwest Equity Partners | Mary Schaffner \| 612.667.2367 \| mary.e.schaffner@wellsfargo.com |
| Norwest Venture Partners | Mary Schaffner \| 612.667.2367 \| mary.e.schaffner@wellsfargo.com |
| Peregrine Capital | Tim Carlin \| 612.667.7683 \| timothy.j.carlin@wellsfargo.com |
| Private Banking (Commercial) | Miho Kubota \| 415.396.4244 \| miho.m.kubota@wellsfargo.com |
| Private Banking (Consumer) | Lydia Crawford \| 612.667.9332 \| lydia.p.crawford@wellsfargo.com |
| Restaurant Finance (Non Investment Banking) | Bob Goldberg \| 212.805.1683 \| bob.goldberg@wellsfargo.com |
| Retirement Services | Ashleigh Morgan \| 704.374.6801 \| ashleigh.morgan@wellsfargo.com<br>Brad Schlichting \| 612.667.6235 \| bradley.j.schlichting@wellsfargo.com |
| SBA Lending | Isaac Johnson \| 713.284.5507 \| isaac.johnson@wellsfargo.com |
| Shareowner Services | Mary Schaffner \| 612-667-2367 \| mary.e.schaffner@wellsfargo.com<br>Sherri Gould \| 612.667.5003 \| sherri.h.gould@wellsfargo.com |
| U.S. Corporate Banking | Barbara Meeks \| 704.715.2413 \| barbara.meeks@wellsfargo.com<br>Karl Christiansen \| 415.396.4221 \| karl.h.christiansen@wellsfargo.com |
| Wells Fargo Financial Corp Canada | Paul Young \| 905.755.5927 \| paulyoung@wellsfargo.com |
| Wells Fargo Financial Leasing | Shayne Vander Esch \| 515.557.7739 \| shaynevanderesch@wellsfargo.com |
| Wells Fargo Financial National Bank (Retailer Finance -- non-real estate commercial and dealer contracts) | Reed Ramsay \| 515.557.8866 \| reedramsay@wellsfargo.com |
| Wells Fargo Merchant Services | Reed Ramsay \| 515.557.8866 \| reedramsay@wellsfargo.com |
| Wells Fargo Preferred Capital | Shayne Vander Esch \| 515.557.7739 \| shaynevanderesch@wellsfargo.com |
| Wells Fargo Capital Finance (Includes former Wells Fargo Foothill, Business Credit, Trade Capital, and domestic Supply Chain Finance) | Susan McClymonds \| 213.253.3582 \| susanmcc@wellsfargo.com<br>Kelly Thomas \| 704.374.3016 \| kelly.thomas1@wellsfargo.com<br>Gary Heck \| 612.667.3971 \| gary.a.heck@wellsfargo.com |

**COMMERCIAL BUSINESSES (Continued)**

| LINES OF BUSINESS | WELLS FARGO CONFLICTS COUNSEL |
|---|---|
| Wells Fargo Securities | Vince Altamura  |  704.383.4903  |  vince.altamura@wellsfargo.com |
| WFC Capital Markets Equity Investments | Mary Schaffner  |  612.667.2367  |  mary.e.schaffner@wellsfargo.com <br> Sherri Gould  |  612.667.5003  |  sherri.h.gould@wellsfargo.com |
| Wholesale Services Group / Treasury Management | Bonnie Turner  |  213.253.7444  |  bturner@wellsfargo.com |

**SPECIAL SITUATIONS GROUP (SSG)**

| LINES OF BUSINESS | WELLS FARGO CONFLICTS COUNSEL |
|---|---|
| SSG – CDOs and Repos | Nora Dahlman  |  212.214.6502  |  nora.dahlman@wellsfargo.com |
| SSG – Domestic Strategies (Resolutions and Transitions) | Joel Brighton |  704.383.5699  |  joel.brighton@wellsfargo.com |
| SSG – Homebuilder | Alilda Ferraro  |  415.396.1652   |  alilda.d.ferraro@wellsfargo.com <br> Chris Celio  |  704.374.4876   |  chris.celio@wellsfargo.com |
| SSG – Institutional Clients (Structured Transactions) | Bob Darling  |  415.396.3842  |  darling@wellsfargo.com |
| SSG – International | Raman Dinesh  |  011.44.20.7149.8118  |  raman.dinesh@wellsfargo.com |
| SSG – Non-Real Estate Assets (Managed by SIG Principal Investing) | Bob Darling  |  415.396.3842  |  darling@wellsfargo.com |
| SSG – ORE | Debbie Snyder  |  803.514.2327  |  snyderd@wellsfargo.com |

**INVESTMENT BANKING AND SECURITIES,  DERIVATIVES AND STRUCTURED FINANCE BUSINESSES**

| LINES OF BUSINESS | WELLS FARGO CONFLICTS COUNSEL |
|---|---|
| Asset Backed Finance (Wells Fargo Securities) | Nora Dahlman  |  212.214.6502  |  nora.dahlman@wellsfargo.com |
| Debt Capital Markets – Investment  Grade Securities | Laurie Watts |  704.383.6641  |  laurie.watts@wellsfargo.com |
| Debt Capital Markets –Agented Loan Syndications and High Yield | Suzanne Alwan  |  704.383.6298  |  suzanne.alwan@wellsfargo.com |
| Derivatives (Credit Default Swaps) | Scott VanHatten  |  704.383.5175  |  scott.vanhatten@wellsfargo.com |
| Derivatives (Commodity) | Michelle Cenis  |  212.214.8123  |  michelle.cenis@wellsfargo.com |
| Derivatives (Equity) | Mary Lou Guttmann  |  212.214.6060  |  marylou.guttmann@wellsfargo.com |
| Derivatives (Municipal) | Jennifer Canel  |  847-780-4880  |  jennifer.canel@wellsfargo.com |
| Derivatives  (All Other) | Barry Taylor Brill  |  704.383.0606  |  barry.taylorbrill@wellsfargo.com |
| Eastdil Securities (Non-real estate) | Ramey Barnett  |  415-396-1362  |  ramey.h.barnett@wellsfargo.com |
| Equity Capital Markets | Michael Golden  |  212.214.6063  |  m.golden@wellsfargo.com |
| Equity Linked Structured Products (Market Linked Notes and CDs) | John Beer  |  415-396-5826 |  john.m.beer@wellsfargo.com <br> James McMullin  |  212.214.6062 |  james.mcmullin@wellsfargo.com |
| Equity Private Placements | Megan Robson  |  704.715.2489  |  megan.robson@wellsfargo.com |

D-4

**INVESTMENT BANKING AND SECURITIES, DERIVATIVES AND STRUCTURED FINANCE BUSINESSES (Continued)**

| LINES OF BUSINESS | WELLS FARGO CONFLICTS COUNSEL |
|---|---|
| Equity Sales & Trading | Mary Lou Guttmann \| 212.214.6060 \| marylou.guttmann@wellsfargo.com<br>James McMullin \| 212.214.6062 \| james.mcmullin@wellsfargo.com<br>Michael Golden \| 212.214.6063 \| m.golden@wellsfargo.com |
| Financial Sponsors | Vince Altamura \| 704.383.4903 \| vince.altamura@wellsfargo.com |
| Fixed Income Sales and Trading | Vince Altamura \| 704.383.4903 \| vince.altamura@wellsfargo.com |
| International (Investment Banking) | See *International Businesses* |
| Investment Banking (General) | Mary Lou Guttmann \| 212.214.6060 \| marylou.guttmann@wellsfargo.com<br>Vince Altamura \| 704.383.4903 \| vince.altamura@wellsfargo.com |
| Mergers & Acquisitions | Megan Robson \| 704.715.2489 \| megan.robson@wellsfargo.com |
| Principal Debt Investing (Proprietary Portfolio managed by SIG) | Nora Dahlman \| 212.214.6502 \| nora.dahlman@wellsfargo.com |
| Private Equity Fund & Merchant Banking Investments | Carson Warden \| 415.222.5857 \| carson.warden@wellsfargo.com<br>Bob Darling \| 415.396.3842 \| darling@wellsfargo.com |
| Public Finance | Gerry Mayfield \| 704.383.0007 \| gerald.mayfield@wellsfargo.com |
| Securities Trading | Mary Lou Guttmann \| 212.214.6060 \| marylou.guttmann@wellsfargo.com |
| Securitizations (Wells Fargo – Originated Consumer Assets) | Larry Rubenstein \| 212.805.1042 \| larry.rubenstein@wellsfargo.com |
| Securitizations (Other) | Nora Dahlman \| 212.214.6502 \| nora.dahlman@wellsfargo.com |
| Structured Repurchase Agreements | Nora Dahlman \| 212.214.6502 \| nora.dahlman@wellsfargo.com |
| Other investment banking, derivatives structured finance or securities businesses not listed above | Nora Dahlman \| 212.214.6502 \| nora.dahlman@wellsfargo.com<br>Mary Lou Guttmann \| 212.214.6060 \| marylou.guttmann@wellsfargo.com<br>Barry Taylor Brill \| 704.383.0606 \| barry.taylorbrill@wellsfargo.com |

**COMMERCIAL REAL ESTATE LENDING AND SERVICING BUSINESSES**

| LINES OF BUSINESS | WELLS FARGO CONFLICTS COUNSEL |
|---|---|
| Commercial Mortgage Servicing | Mike O'Neill \| 415.396.4051 \| oneill@wellsfargo.com<br>Lars Carlsten \| 704.383.0385 \| lars.carlsten@wellsfargo.com |
| Commercial ORE | Alilda Ferraro \| 415.396.1652 \| alilda.d.ferraro@wellsfargo.com |
| Commercial Real Estate Services | Rob Coli \| 213.253.6542 \| rcoli@wellsfargo.com |
| Community Lending | Rob Coli \| 213.253.6542 \| rcoli@wellsfargo.com |
| Eastdil Securities (Commercial real estate brokerage only) | Mike O'Neill \| 415.396.4051 \| oneill@wellsfargo.com |
| Hospitality Finance Group | Chris Celio \| 704-374-4876 \| chris.celio@wellsfargo.com |
| Middle Market Real Estate | Rob Coli \| 213.253.6542 \| rcoli@wellsfargo.com |
| Real Estate Capital Markets (RECM) | Mike O'Neill \| 415.396.4051 \| oneill@wellsfargo.com |
| Real Estate Banking Group | Chris Celio \| 704-374-4876 \| chris.celio@wellsfargo.com<br>Rob Coli \| 213.253.6542 \| rcoli@wellsfargo.com<br>Alilda Ferraro \| 415.396.1652 \| alilda.d.ferraro@wellsfargo.com |
| Wells Fargo Multifamily Capital | Lars Carlsten \| 704.383.0385 \| lars.carlsten@wellsfargo.com |

| INSURANCE BUSINESSES | |
|---|---|
| **LINES OF BUSINESS** | **WELLS FARGO CONFLICTS COUNSEL** |
| **Wells Fargo & Company Indirect Subsidiaries** | |
| Centurion Casualty Company<br>Centurion Life Insurance Company<br>Rural Community Insurance<br>Wells Fargo Insurance Services<br>Wells Fargo Insurance, Inc.<br>Union Hamilton Reinsurance, Ltd<br>Wachovia Warranty Corporation<br>Wachovia Administrative Services, Inc.<br>Heritage Mechanical Breakdown Corporation<br>Heritage Indemnity Company<br>Westlake Insurance Company, Ltd. | Wayne Robinson  \|  612.667.5887  \|  wayne.a.robinson@wellsfargo.com |
| **Wells Fargo Bank, National Association Operating Divisions** | |
| Flatiron Capital | Wayne Robinson  \|  612.667.5887  \|  wayne.a.robinson@wellsfargo.com |

| INTERNATIONAL BUSINESSES | |
|---|---|
| **LINES OF BUSINESS** | **WELLS FARGO CONFLICTS COUNSEL** |
| Americas | Darek DeFreece  \|  415.396.4364  \|  defreece@wellsfargo.com<br>Bonnie Turner  \|  213.253.7444  \|  bturner@wellsfargo.com |
| Asia | Ian Hardee  \|  011.852.3650.8831  \|  ian.hardee@wellsfargo.com<br>Bonnie Turner  \|  213.253.7444  \|  bturner@wellsfargo.com |
| Europe & Middle East | Raman Dinesh  \|  011.44.20.7149.8118  \|  raman.dinesh@wellsfargo.com<br>Bonnie Turner  \|  213.253.7444  \|  bturner@wellsfargo.com |
| Foreign Exchange | Darek DeFreece  \|  415.396.4364  \|  defreece@wellsfargo.com |
| Global Financial Institutions | Peter Pinnow  \|  612.667.2474  \|  peter.e.pinnow@wellsfargo.com<br>Bonnie Turner  \|  213.253.7444  \|  bturner@wellsfargo.com |
| Global Banking | Jenie Oh  \|  213.253.3480  \|  jenie.oh@wellsfargo.com |
| International Personal Banking | Shirley Thompson  \|  415.222.5350  \|  shirley.n.thompson@wellsfargo.com |
| International Treasury Management | Bonnie Turner  \|  213.253.7444  \|  bturner@wellsfargo.com |
| Supply Chain Finance (For domestic supply chain finance, see Wells Fargo Capital Finance in *Commercial Businesses*) | Carla Axelrod  \|  213.253.6245  \|  axelrod@wellsfargo.com |
| Trade Services and Trade Finance | Darek DeFreece  \|  415.396.4364  \|  defreece@wellsfargo.com<br>Peter Pinnow  \|  612.667.2474  \|  peter.e.pinnow@wellsfargo.com |

| OTHER BUSINESSES | |
| --- | --- |
| **LINES OF BUSINESS** | **WELLS FARGO CONFLICTS COUNSEL** |
| Corporate Properties Group | Jordan Cohen | 213.253.7441 | jordan.s.cohen@wellsfargo.com |
| Customer Service & Sales Operations | Shirley Thompson | 415.222.5350 | shirley.n.thompson@wellsfargo.com |
| Human Resources | Any Employment Section Lawyer who is identified on page D-10 |
| Intellectual Property | Joe Long | 704.383.7081 | joe.long@wellsfargo.com |
| Technology & Operations Group | David Whitaker | 515.213.4517 | david.whitaker@wellsfargo.com |

| \ | \ | \ |
|---|---|---|
| **INDEX TO LAW DEPARTMENT SECTIONS ACTING AS WELLS FARGO CONFLICTS COUNSEL**<br>**(These lawyers are Wells Fargo Conflicts Counsel for purposes of Wells Fargo Bank CmBG and BBG Commercial Lending "Transaction" and "Dispute" matters; Also see pages D-3 and D-4, *Commercial Businesses*.)** | | |
| **Law Department Sections** | **Page** | **Description of Sections** |
| Business & Community Banking Section | D-8 | These commercial lawyers work on loan related matters for the Business Banking Group ("BBG"), Wells Fargo Bank's community banking line of business, and are the persons best situated to assist with any BBG "Transaction" related Conflict of Interest |
| Wholesale Credit Section | D-9 | These commercial lawyers work on loan related matters for the Commercial Banking Group ("CmBG"), Wells Fargo Bank's Wholesale middle market lending line of business, and are the persons best situated to assist with any CmBG "Transaction" related Conflict of Interest |
| Commercial Workout Section | D-9 | These commercial lending workout lawyers work with both the CmBG and BBG lending businesses, and are the persons best situated to assist with any CmBG or BBG related Conflict of Interest arising with respect to any loan workout, bankruptcy, foreclosure or collection "Dispute" |
| General Litigation Section | D-10 | These litigation lawyers work with both the CmBG and BBG commercial lending businesses, and are the persons best situated to assist with any "Dispute" related Conflict of Interest (other than those more appropriately handled by Commercial Workout Section lawyers) |
| Employment Section | D-10 | These lawyers are best situated to assist with any Conflict of Interest that arises with respect to employment and human resource related "Disputes" |

| **BUSINESS & COMMUNITY BANKING SECTION** | |
|---|---|
| **WELLS FARGO CONFLICTS COUNSEL** | **PHONE NUMBER AND E-MAIL ADDRESS** |
| Ball, Allan | 713.284.5526 | ball.allan@wellsfargo.com |
| Gold, Mark | 415.396.3868 | goldms@wellsfargo.com |
| Johnson, Isaac | 713.284.5507 | isaac.johnson@wellsfargo.com |
| Ketron, Phil | 602.378.7638 | ketronp@wellsfargo.com |
| Killian, Meg | 612.667.7981 | meg.m.killian@wellsfargo.com |
| Kim, Anward | 213.253.7428 | anward.l.kim@wellsfargo.com |
| Love, Michael | 415.396.3971 | lovem@wellsfargo.com |
| Norris, Kristine | 515.557.7735 | kristinenorris@wellsfargo.com |
| Reed, Randy | 602.378.7698 | reedr@wellsfargo.com |
| Sovern, Julie | 704.383.2554 | julie.sovern@wellsfargo.com |

**WHOLESALE CREDIT SECTION**

| WELLS FARGO CONFLICTS COUNSEL | PHONE NUMBER AND E-MAIL ADDRESS |
|---|---|
| Baker, Anita | 212.805.1103 \| anita.g.baker@wellsfargo.com |
| Carrier, George | 213.253.7333 \| carrier@wellsfargo.com |
| Cásarez, Rueben | 713.284.5528 \| casarer@wellsfargo.com |
| Chalfant, David | 612.667.4607 \| david.chalfant@wellsfargo.com |
| Christiansen, Karl | 415.396.4221 \| karl.h.christiansen@wellsfargo.com |
| Graniez, Laurie | 213.253.3359 \| graniezl@wellsfargo.com |
| Kubota, Miho | 415.396.4244 \| miho.m.kubota@wellsfargo.com |
| Lamberson, Pam | 704.383.6628 \| pamela.lamberson@wellsfargo.com |
| Meeks, Barbara | 704.715.2413 \| barbara.meeks@wellsfargo.com |
| Metz, Mark | 704.383.0053 \| mark.metz@wellsfargo.com |
| Palaniappan, Metchi | 602.378.4661 \| metchi.palaniappan@wellsfargo.com |
| Peckel, Stevan | 215.670.6891 \| steve.peckel@wellsfargo.com |
| Petroff, Rose Caroline | 704.383.6721 \| rose.petroff@wellsfargo.com |
| Thomas, Kelly | 704.374.3016 \| kelly.thomas1@wellsfargo.com |
| Wikfors, Marsha | 704.383.7022 \| marsha.wikfors@wellsfargo.com |
| Yee, David | 415.396.4035 \| davidyee@wellsfargo.com |

**COMMERCIAL WORKOUT SECTION**

| WELLS FARGO CONFLICTS COUNSEL | PHONE NUMBER AND E-MAIL ADDRESS |
|---|---|
| Agosto, Lou | 704.383.7380 \| lou.agosto@wellsfargo.com |
| Andrews, Marc | 909.612.1373 \| andrewma@wellsfargo.com |
| Arant, Tim | 704.374.6701 \| tim.arant@wellsfargo.com |
| Brighton, Joel | 704.383.5699 \| joel.brighton@wellsfargo.com |
| Brown, Sue | 303.863.2732 \| susan.e.brown@wellsfargo.com |
| Buchanan, Nancy | 303.863.2727 \| nancy.buchanan@wellsfargo.com |
| Ferrell, Rick | 704.374.4753 \| richard.l.ferrell@wellsfargo.com |
| Heck, Gary | 612.667.3971 \| gary.a.heck@wellsfargo.com |
| Heiser, Kevin J. | 704.374.4987 \| kevin.heiser@wellsfargo.com |
| Hineman, Linda | 602.378.6905 \| dumarsl@wellsfargo.com |
| Iossa, Susan W. | 908.598.3224 \| susan.iossa@wellsfargo.com |
| Jaber, Joyce | 415.396.3815 \| jaberjs@wellsfargo.com |
| Kanwischer, Gary | 612.667.2407 \| gary.d.kanwischer@wellsfargo.com |
| Ramirez-Browning, Yvonne | 909.612.1301 \| ramibroy@wellsfargo.com |
| Rauch, David | 213.253.6569 \| david.s.rauch@wellsfargo.com |
| Reynolds, Roger | 909.612.1314 \| rogerr@wellsfargo.com |
| Schauerman, Anne | 909.612.1338 \| schaueam@wellsfargo.com |
| Watson, Michael | 713.284.5525 \| watsonm1@wellsfargo.com |
| Wunsch, John | 510.297.6809 \| wunschjh@wellsfargo.com |

**GENERAL LITIGATION SECTION**

| WELLS FARGO CONFLICTS COUNSEL | PHONE NUMBER AND E-MAIL ADDRESS |
|---|---|
| Archie, Carla | 704.374.4902 │ carla.archie@wellsfargo.com |
| Buechner, Mark | 704.715.2343 │ mark.buechner@wellsfargo.com |
| Edwards, Doug | 704.374.4475 │ douglas.edwards@wellsfargo.com |
| Gould, Sherri | 612.667.5003 │ sherri.h.gould@wellsfargo.com |
| Holmes, Bret | 704.374.6521 │ bret.holmes@wellsfargo.com |
| Jacob, Tom | 415.396.4425 │ tojacob@wellsfargo.com |
| Leney, Herbert | 415.396.4492 │ leneyh@wellsfargo.com |
| Pearson, Pamela | 704.715.2411 │ pamela.pearson@wellsfargo.com |
| Reichert, William | 213.253.3906 │ reichert@wellsfargo.com |
| Rice, David | 704.383.4448 │ david.j.rice@wellsfargo.com |
| Scafe, Jennifer | 415.222.6540 │ jennifer.l.scafe@wellsfargo.com |
| Selle, Mike | 704.374.4602 │ michael.selle@wellsfargo.com |
| Swan, Cynthia | 612.667.5831 │ cynthia.swan@wellsfargo.com |
| Wright, Barbara | 704.383.1326 │ barbara.wright@wellsfargo.com |

**EMPLOYMENT SECTION**

| WELLS FARGO CONFLICTS COUNSEL | PHONE NUMBER AND E-MAIL ADDRESS |
|---|---|
| Anderson, John | 704.374.2577 │ john.b.anderson@wellsfargo.com |
| Arneson, Kristin | 612.667.0392 │ kristin.arneson@wellsfargo.com |
| Franklin, Michael | 314.955.2364 │ michael.franklin@wellsfargo.com |
| Grubb, Timothy | 213.253.7121 │ timothy.n.grubb@wellsfargo.com |
| Harris, Joan | 612.667.7880 │ joan.c.harris@wellsfargo.com |
| Hooper, Todd J. | 704.715.2399 │ todd.j.hooper@wellsfargo.com |
| Hunnicutt, William | 515.327.4360 │ william.j.hunnicutt@wellsfargo.com |
| Lee, Tamila | 704.374.4660 │ tamila.lee@wellsfargo.com |
| Lindquist, Deanna | 704.374.4926 │ deanna.lindquist@wellsfargo.com |
| Meuers, Christine | 612.667.2596 │ christine.l.meuers@wellsfargo.com |
| Moorehead, Rochelle | 704.374.3499 │ rochelle.moorehead@wellsfargo.com |
| Otsuka, David | 415.222.4951 │ otsukady@wellsfargo.com |
| Sheih, Gene | 612.667.3103 │ gene.sheih@wellsfargo.com |
| Silva, Crystal | 415.222.9105 │ crystal.silva@wellsfargo.com |
| Sung, Jackie | 415.396.0103 │ sungjah@wellsfargo.com |
| Tayborn, Nancy | 314.955.6080 │ nancy.tayborn@wellsfargoadvisors.com |
| Valencia, Lupe | 213.253.6564 │ valenga@wellsfargo.com |
| Wright, Molly | 612.667.5097 │ molly.p.wright@wellsfargo.com |

# EXHIBIT 2

**From:** Heck, Gary A.
**Sent:** Wednesday, December 29, 2010 10:02 AM
**To:** Stewart, John M. (WFBC MIL); Stoeberl, Mark J. (WFBC MIL); Yandry, Ronald (WFBC MIL); Whitfield, Eric D.; Wegner, Jeffrey T.; Fitzpatrick, Brian F. (WFBC Mpls)
**Cc:** Skinner, Hallie
**Subject:** FW: Response to re: Eastern Livestock - Request for consent to conflict waiver

REDACTED                REDACTED                                REDACTED

-----Original Message-----
From: Hall, Terry E. [mailto:Terry.Hall@bakerd.com]
Sent: Wednesday, December 29, 2010 9:50 AM
To: Heck, Gary A.
Cc: JKnauer@kgrlaw.com; Jeffrey.Wegner@KutakRock.com; Carr, James M.; Foster, David A.; Hall, Terry E.
Subject: Response to re: Eastern Livestock - Request for consent to conflict waiver

Gary,

I have revised the letter (last sentence of the partial paragraph on page 2 of the letter) to include Fifth Third Bank.  We had earlier agreed with Fifth Third that we would not represent the Trustee in any action or adversary
proceeding against it.

We appreciate your favorable consideration of our request.  Again, if you have any questions please call me at your convenience.

Terry E. Hall |Partner| T: 317.237.1230 | F: 317.237.8418 | C: 317.370.7583 Baker & Daniels LLP | www.bakerdaniels.com | 300 N. Meridian Street, Suite 2700 | Indianapolis, IN 46204

-----Original Message-----
From: Gary.A.Heck@wellsfargo.com [mailto:Gary.A.Heck@wellsfargo.com]
Sent: Wednesday, December 29, 2010 10:34 AM
To: Hall, Terry E.; Foster, David A.
Cc: JKnauer@kgrlaw.com; Jeffrey.Wegner@KutakRock.com; Carr, James M.
Subject: RE: Eastern Livestock - Request for consent to conflict waiver

Terry and David,
I have one issue with this request at present.  While it is clear Baker & Daniels would not bring any action against Wells Fargo, I believe we would also need that condition to include a prohibition on bringing any actions against 5th 3rd Bank as well, since we could be directly impacted by such claims to the extent they effect the loan/collateral rights in which we are a participant.  In those instances, the trustee would need to retain alternate counsel.  If you are willing to include that in the conditions as well, I would look favorably on agreeing to the waiver.

CONFIDENTIAL                                                WF012639

Gary Heck, Senior Counsel
Wells Fargo Legal Department
(612) 667-3971

-----Original Message-----
From: Hall, Terry E. [mailto:Terry.Hall@bakerd.com]
Sent: Tuesday, December 28, 2010 4:59 PM
To: Heck, Gary A.
Cc: JKnauer@kgrlaw.com; Wegner, Jeffrey T.; Carr, James M.
Subject: Eastern Livestock - Request for consent to conflict waiver

Dear Mr. Heck:

Please find attached our request to Wells Fargo to consent to and /or waive conflicts related to the request
of James Knauer, in his capacity as chapter
11 trustee in the chapter 11 case of Eastern Livestock Co. LLC, to employ Baker & Daniels LLP as
counsel.

Please feel free to call me with any questions you may have.  My cell phone is 317-370-7583.

Terry E. Hall |Partner| T: 317.237.1230 | F: 317.237.8418 | C: 317.370.7583 Baker & Daniels LLP |
www.bakerdaniels.com | 300 N. Meridian Street, Suite 2700 | Indianapolis, IN 46204


-----Original Message-----
From: Wegner, Jeffrey T. [mailto:Jeffrey.Wegner@KutakRock.com]
Sent: Tuesday, December 28, 2010 3:00 PM
To: Hall, Terry E.
Cc: 'Gary.A.Heck@wellsfargo.com'; 'JKnauer@kgrlaw.com'; 'Bedree, Melvin A.'; 'LaTour, Randall D.'
Subject: Eastern Livestock

Ms. Hall,

We are representing Wells Fargo in connection with its participation interest in the Credit Agreement
dated as of August 9, 2004, as amended, between Fifth Third Bank and Eastern Livestock Co., LLC.  It is
my understanding that: (i) the Trustee, James Knauer, is in process of engaging your firm in the Eastern
Livestock matter and has apprised you of Wells Fargo's interests in the case;
(ii) your firm has a longstanding relationship with Wells Fargo and has current, active engagements with
Wells Fargo; and (iii) you or one of your partners is pursuing a written conflict waiver from Wells Fargo.

To expedite the conflict waiver communications, I respectfully suggest that you contact Gary Heck at
Wells Fargo.  Gary is Senior Counsel with Wells Fargo and has been actively involved in the Eastern
Livestock matter.

Gary's contact information is:

Gary Heck, Senior Counsel
Wells Fargo Legal Department
(612) 667-3971
Gary.A.Heck@wellsfargo.com

Thank you.


Jeff Wegner
Kutak Rock LLP
CONFIDENTIAL                                                                WF012640

The Omaha Building
1650 Farnam Street
Omaha, NE 68102
402.231.8814 (Telephone)
402.346.1148 (Facsimile)
jeffrey.wegner@kutakrock.com<mailto:jeffrey.wegner@kutakrock.com>


###############################################################################
################################
ANY FEDERAL TAX ADVICE CONTAINED IN THIS MESSAGE SHOULD NOT BE USED OR
REFERRED TO IN THE PROMOTING, MARKETING OR RECOMMENDING OF ANY ENTITY,
INVESTMENT PLAN OR ARRANGEMENT, AND SUCH ADVICE IS NOT INTENDED OR WRITTEN TO
BE USED, AND CANNOT BE USED, BY A TAXPAYER FOR THE PURPOSE OF AVOIDING
PENALTIES UNDER THE INTERNAL REVENUE CODE.
###############################################################################
################################
This E-mail message is confidential, is intended only for the named
recipient(s) above and may contain information that is privileged, attorney work product or otherwise
protected by applicable law. If you have received this message in error, please notify the sender at 402-
346-6000 and delete this E-mail message.
Thank you.
###############################################################################
################################

--------------------------
ATTENTION:

To ensure compliance with applicable Internal Revenue Service Regulations, we inform you that any tax
advice contained in this electronic message was not intended or written to be used, and cannot be used,
for the purpose of avoiding penalties under the Internal Revenue Code.


This message and all its attachments are PRIVATE and may contain information that is CONFIDENTIAL
and PRIVILEGED.

If you received this message in error, please notify the sender by reply e-mail and delete the message
immediately.


--------------------------
ATTENTION:

To ensure compliance with applicable Internal Revenue Service Regulations, we inform you that any tax
advice contained in this electronic message was not intended or written to be used, and cannot be used,
for the purpose of avoiding penalties under the Internal Revenue Code.


This message and all its attachments are PRIVATE and may contain information that is CONFIDENTIAL
and PRIVILEGED.

If you received this message in error, please notify the sender by reply e-mail and delete the message

Letter to Gary
Heck.pdf
immediately.

CONFIDENTIAL                                                                        WF012641

# EXHIBIT 3

## James Knauer

| | |
|---|---|
| **From:** | Gary.A.Heck@wellsfargo.com |
| **Sent:** | Tuesday, December 28, 2010 5:43 PM |
| **To:** | James Knauer |
| **Cc:** | watsonm1@wellsfargo.com |
| **Subject:** | RE: Eastern Livestock, LLC Bankruptcy |

Jim,

Thank you for calling me on this.  On behalf of Wells Fargo I agree to waive the conflict subject to the terms described in your email below.

*Gary Heck, Senior Counsel*
*Wells Fargo Legal Department*
*(612) 667-3971*

---

**From:** James Knauer [mailto:JAK@kgrlaw.com]
**Sent:** Tuesday, December 28, 2010 4:05 PM
**To:** Heck, Gary A.; Watson, J. Michael
**Subject:** Eastern Livestock, LLC Bankruptcy

Gentlemen;

I am writing to request your specific consent to my service as a bankruptcy trustee in a bankruptcy proceeding which could result in an indirect conflict of interest.  The debtor in the case is a borrower under certain loans held by Fifth Third Bank, N.A. I have been become aware that Wells Fargo & Co. has a participatory interest, though I am not presently informed concerning specifics of the participation agreement.  More particular details are below.

I was appointed Trustee last Friday, December 24, 2010 for Eastern Livestock Co., LLC ("Debtor"), the debtor in a chapter 11 case pending before the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, Case No. 10-93904-BHL-11("Chapter 11 Case").  My review of the pleadings and available information did not disclose to me the involvement of Wells Fargo. I learned of it yesterday.

The debtor is a producer/broker of cattle.  The Chapter 11 Case was originally filed as an involuntary case by certain creditors following the earlier appointment of a state court receiver.  Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment , although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interests of Wells Fargo.

If you consent to my service as bankruptcy trustee in this matter, I acknowledge and agree that the service will be subject to all applicable rules of professional conduct and that I will not disclose any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), or (2) use such information in any matter or proceeding without Wells Fargo's consent. Given its role as a loan participant, there appears to be no circumstance in which I, as a bankruptcy trustee, could initiate any adversary proceeding or other action against Wells Fargo.

If you agree to waive any conflict for my service as Trustee, subject to the foregoing conditions, please send me a confirmation by e-mail.

Sincerely,

1

JAK 417

James A. Knauer



**KROGER**
**GARDIS**
**& REGAS**
ATTORNEYS AT LAW

**James Knauer**
Attorney at Law

**Kroger, Gardis & Regas, LLP**
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000 · Fax (317) 777-7440
jak@kgrlaw.com   www.kgrlaw.com

---

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail transmissions attached to it, contain information that is confidential and may be legally privileged. If you are not the intended recipient of this transmission, or a person responsible for delivering it to the intended recipient, you are notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving or forwarding it in any manner. Thank you for your consideration.

JAK 418

# EXHIBIT 4

# BAKER & DANIELS

EST. 1863

**TERRY E. HALL**
Partner
Direct 317.237.1230
terry.hall@bakerd.com

**BAKER & DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Tel 317.237.0300   Fax 317.237.1000
www.bakerdaniels.com

December 29, 2010

**Via Email (Gary.A.Heck@wellsfargo.com)**

Mr. Gary Heck
Senior Counsel
Wells Fargo Legal Department

Dear Mr. Heck:

      I am writing to request your specific consent to our representation of a party in a matter which could result in a conflict of interest that is not covered by any of the general consents contained in the current *Wells Fargo & Company Policy Regarding Legal Conflicts of Interest* (the "Policy"*).* Baker & Daniels LLP has been approached to serve as counsel to an appointed chapter 11 trustee in a liquidating chapter 11 case. The debtor in the case is a borrower under certain loans held by Fifth Third Bank, N.A. in which we have been made aware that Wells Fargo Capital Finance ("Wells Fargo") has a participatory interest, though we are not informed as to the specifics of the participation agreement. More particular details are below.

      James Knauer is the appointed Chapter 11 Trustee ("Trustee" or "Adverse Party") for Eastern Livestock Co., LLC ("Debtor"), the debtor in a chapter 11 case pending before the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, Case No. 10-93904-BHL-11("Chapter 11 Case"). Our initial understanding is that the debtor is a producer/broker of cattle. The Chapter 11 Case was originally filed as an involuntary case by certain creditors following the earlier appointment of a state court receiver. The Trustee is seeking to engage Baker &Daniels LLP to represent his interests as Trustee in the Chapter 11 Case. Based upon information the Trustee provided today, Wells Fargo is a participant in the Fifth Third loan to the Debtor or an affiliated entity. Thus, such an engagement by the Trustee, although not directly adversarial in nature, would constitute a Dispute under the Policy.

      It is anticipated that the following attorneys would handle the engagement within the firm: Jim Carr, Terry Hall, Dustin DeNeal, Harmony Mappes and Robert Stanley. None of those attorneys is actively involved in the representation of any Wells Fargo Line of Business in any current engagements.

      If you consent to our representation of the Adverse Party in this matter, we acknowledge and agree that the representation will be subject to all applicable rules of professional conduct and that the Firm will not (1) disclose to an Adverse Party any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade

Mr. Gary Heck                        2                    December 29, 2010

secrets, matters covered by the attorney-client privilege and matters covered by the attorney
work product privilege), or (2) use such information in any matter or proceeding without Wells
Fargo's consent.  Further, and specifically for this representation, the Firm would not represent
the Trustee in any adversary proceeding or other action that the Trustee may commence directly
against Wells Fargo or against Fifth Third Bank.

        If you agree that the Firm may represent the Adverse Party in the referenced
matter subject to these conditions, please send me a confirmation by e-mail.

                          Sincerely,

                          Terry E. Hall

cc:    Jeffrey Wegner <jeffrey.wegner@kutakrock.com>
       David Foster <david.foster@bakerd.com>
       Jim Carr <james.carr@bakerd.com>
       James Knauer <JKnauer@kgrlaw.com'>

CONFIDENTIAL

WF012643

BDDB01 6476540v2