# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                                   :       CASE NO. 10-93904-BHL-11

EASTERN LIVESTOCK CO., LLC,              :       (Judge Basil H. Lorch III)

Debtor.                          :

                                         :       **REPLY MEMORANDUM IN
                                                 SUPPORT OF RENEWAL OF**
                                         :       **OBJECTION OF THE FIRST BANK
                                                 AND TRUST COMPANY TO**
                                         :       **APPLICATION TO EMPLOY
                                                 BAKER & DANIELS, LLP (N/K/A**
                                         :       **FAEGRE BAKER DANIELS LLP)
                                                 AS COUNSEL TO CHAPTER 11**
                                         :       **TRUSTEE**

_____

The Responses to the instant motions and objections relating to undisclosed

conflicts of interest[1] of Faegre Baker Daniels LLP ("FBD") and the Trustee place this Court in

the precarious position of making law that could be cited for years to come for the proposition

that a Trustee and his counsel "DO NOT" need to disclose in Affidavits under Fed. R. Bankr. P.

2014 or 2007.1 whether the professionals have a "connection" with a party:  (a) to whom they

have given "consent and conflict waiver" letters;[2] (b) when that party has appeared at multiple

Court hearings; (c) with whom the professionals have interacted frequently (approximately twice

a month) in private meetings throughout the Chapter 11 proceedings; and (d) where the party

_____

[1] Response to Renewal of Objection of First Bank to Application to Employ Baker & Daniels LLP (NKA Faegre Baker Daniels LLP) As Counsel to Trustee and the Bluegrass Joinder Thereto ("FBD Response") [Dkt. No. 1327], and the Trustee's Response to Motions to Remove Trustee ("Trustee Response") [Dkt. No. 1329] (collectively, "Responses").

[2] In re Jore Corp., 298 B.R. 703, 732 (Bankr. D. Mont. 2003).

owns more than thirty percent (30%) of the Debtor's $32.5 million of secured debt.[3]  As set forth below, individually courts have found that parties cannot pick and choose[4] which connections to disclose and must disclose them under these circumstances.  In the aggregate of all four circumstances noted above, this Court would be creating ground-breaking new law if it found that disclosure was not required.

Despite the ad hominem attacks in the Responses,[5] the consequences of such a ruling are not the responsibility of the Objecting Parties, but are brought to this Court by the decision not to disclose the professionals' relationship with one of the largest banks in the country about whom the Objecting Parties would have no knowledge.

The Trustee urges the Court to believe that he based his Affidavit of Disinterest upon the "the filed appearances and docket entries of the Debtor," [Dkt. No. 98-2, p. 1] and he had no knowledge of the role of Wells Fargo until after he signed his "Affidavit."  Deposition of James Knauer ("Knauer Dep."), T.p. 23, lns. 13-19.  But, the record reveals otherwise. According to the docket entries, "Jeff Wegner – Wells Fargo Capital" appeared via telephone at the very first and second major hearings in this proceeding.  Thereafter, the Trustee testified he learned that Wells Fargo Business Credit was a "participant" in the Fifth Third loan to Eastern Livestock on or about December 27, 2012 – only four days after being appointed Trustee.

---

[3] In the Matter of James Wilson Associates, 965 F.2d 160, 169 (7th Cir. 1992) (stating that a party in interest has standing where the party "has a legally protected interest that could be affected by a bankruptcy proceeding . . . everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims.").  Here, Wells Fargo's only source of recovery under the Participation Agreement would be from a recovery of the Debtor's res.  The Trustee and FBD have conceded as much by virtue of their obtaining conflict waivers from Wells Fargo.

[4] United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999).

[5] Even with resort to quoting Shakespeare to refer to the Objecting Parties as "idiot(s)."

Knauer Dep., T.p. 22, lns. 14-16.  The original "Affidavit" of disinterestedness of Terry E. Hall then claims that she obtained all the information about apparent conflicts to check "identified to us by James A. Knauer, the chapter 11 trustee appointed in this case." [Dkt. No. 114, p. 1] Nonetheless, the day before Ms. Hall signed her statement on behalf of FBD, under penalty of perjury, that she was unaware of any "other parties in interest" who had any connection to the Eastern Livestock Estate, she requested a consent to representation and conflict waiver letter from "Wells Fargo & Company" that in-house counsel for Wells Fargo had mandated she change to include a promise not to be adverse to Fifth Third Bank because it could "directly impact[]" the interest of Wells Fargo.  December 29, 2010 Email from Gary Heck, Senior Counsel, Wells Fargo Legal Department to Terry Hall, Partner with FBD [WF012639].

Not only should the existence of the "connection" have been fully disclosed, but also the creditors should have been made aware of the nature and extent of the actual conflict waiver letters.  This issue is not – as FBD and Trustee counsel would frame it – an objection to the Trustee's decision not to sue Fifth Third Bank.  In fact, First Bank has already sued Fifth Third Bank in an action that should proceed regardless of the Trustee's attempted and tainted global release of Fifth Third.

The Trustee and FBD further point to the close proximity of the timing of the instant motions and objections with the Trustee's decision not to sue Fifth Third – announced July 23, 2012 – as a reason to question the motive of these motions and objections.  Nothing could be farther from the truth; any perceived delay in bringing these crucial conflicts to the attention of the Court was due only to the continued concealment of the role of Wells Fargo: (1) Bluegrass raised a rhetorical question in the objection to the fee applications whether there was a potential conflict with Wells Fargo; however, this issue was neither briefed in formal papers nor

orally argued at a hearing. Therefore, the conflict cannot possibility have been tacitly approved by the Court's granting interim orders over numerous objections that included Bluegrass's rhetorical question; (2) First Bank only discovered the Trustee's active representation of Wells Fargo in In re: Lauth Investment Properties, LLC, Case No. 09-06065-BHL-11, on June 26, 2012, which First Bank raised promptly in a filing on June 29, 2012 [Dkt. No. 1219] – a filing unrelated to the present motions;[6] (3) thousands of the Wells Fargo documents were mysteriously missing from the FBD's ftp website until July 2012, after First Bank and others notified Special Counsel to the Trustee about the missing documents; (4) the unredacted versions of the Wells Fargo documents and emails relating to conflict waiver and consent to representation (including the conflict waiver letter from FBD to Wells Fargo) were produced only on July 26, 2012. Accordingly, the timing of these motions as an attack on the Trustee's decision to not sue Fifth Third is a fiction created by the Trustee and FBD. The Trustee's and FBD's obligations to disclose existed since the beginning of the case, but the issues over conflicts and non-disclosure were discovered by the other creditors only recently. Rather than the instant motions and objections being an attack on the Trustee's business judgment – which they are not – they present a question of whether this Court should break new ground in Bankruptcy law, which would become the hallmark of cited authority, that a Trustee and his counsel "CAN," in fact, pick and choose what parties they need to disclose a connection to, and which they do not.[7]

---

[6] First Bank raised this issue in its Reply Memorandum in Support of Motion for Expedited Hearing because First Bank believed it had a duty to raise the conflict issue and considered the conflict a threshold matter that had to be addressed immediately.

[7] Cf. United States v. Gellene, 182 F.3d 578, 588 (7th Cir. 1999) (An applicant "cannot pick and choose which connections are irrelevant or trivial.") (internal quotation marks and citation omitted).

FBD and the Trustee now attempt to justify the failure to disclose the connection between their firms and a client significantly larger than Fifth Third because Wells Fargo was a "mere participant" in the Eastern Livestock loan.  FBD Response, p. 4; Trustee Response, p. 6. That rationale could only have been appropriate to establish that FBD and the Trustee met the disinterestedness standard if, in fact, the connection had been properly disclosed in 2010. In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts. . . . The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not.  The existence of an arguable conflict must be disclosed if only to be explained away.") (citations omitted).  The Renewed Objection[8] and the Motion to Remove[9] properly places before the Court a two part question:  (1) Did the FBD firm and the Trustee have connections to Wells Fargo?  YES.[10]  (2) Were those connections disclosed? NO.  This should end the inquiry under Fed. R. Bankr. P. 2007.1 and 2014 regardless of the hindsight explanations.

---

[8] Renewal of Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels, LLP (n/k/a Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee ("Renewed Objection") [Dkt. No. 1238].

[9] Motion of The First Bank and Trust Company to Remove Trustee Pursuant to 11 U.S.C. § 324 ("Motion to Remove") [Dkt. No. 1239].

[10] It is undisputed by the Trustee that revenues from Wells Fargo were between 1.5% of the gross income of Kroger Gardis & Regas in 2010.  Affidavit of James A. Knauer, Trustee as Supplemental Rule 2014 Disclosure [Dkt. No. 1330].  FBD had revenues from Wells Fargo of approximately $425,000 in 2010, and approximately 2.5% of the total revenues of FBD in 2010.  Even after the merger by FBD in January 2012, FBD failed to supplement its disclosures until August 13, 2012.

I.    FBD AND THE TRUSTEE ATTEMPT TO BACKFILL REASONS FOR WHY THEY DID NOT DISCLOSE AND WHY THEY BELIEVE THEY ARE DISINTERESTED

FBD makes an important concession on page 5 of their Response: "FBD wishes that it would have made the Rule 2014 disclosure of the Wells Fargo relationship in December 2010 and regrets that it did not do so." FBD Response, p. 5. Likewise, the Trustee makes a similar concession on page 6 of his Response. Following these important admissions, the briefs attempts to backfill the gaping hole in the Disclosure Affidavits by justifying their failure; but it is insufficient and too late. In re BH&P, Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991) (stating that a professional's duty to disclose "certainly compels disclosure where, as here, the party had contemplated and discussed a specific situation involving a potentiality for conflict. . . . This breach may have been the product of negligence, but [n]egligence does not excuse the failure to disclose a possible conflict of interests.") (internal quotation marks and citations omitted).

The Trustee's law firm and FBD both have conceded that they have significant relationships with Wells Fargo. Prior to the Trustee's filing the application to employ FBD, the Trustee and FBD discussed whether to disclose their connections to Wells Fargo. Knauer Dep., p 27. The details, however, of those communications are unknown.[11] One critical detail that is now known is that neither the Trustee nor FBD disclosed their connections with Wells Fargo prior to August 13, 2012. Both the Trustee and FBD obtained conflict waivers from Wells Fargo, and determined there was even an apparent need to inform the United States Trustee of their connections to Wells Fargo recognizing the "possibility" that Mr. Wharton may object to their non-disclosure. Knauer Dep., T.p. 59. Of course, disclosure to the Office of the U.S.

---

[11] First Bank joined in filing the Motion of Joint Creditors in Limine and to Compel Testimony and Production of Documents [Dkt. No. 1339], which is incorporated fully by reference; the communications between the Trustee and his proposed counsel FBD regarding what information should be disclosed is not privileged information.

Trustee does not fulfill their disclosure requirements to the Court and the creditor body.  In re Kappy Invs., Inc., 465 B.R. 839, 842 (D. Minn. 2012).  And, courts do not permit backfill explanations to later justify a lack of disclosure.  In re Granite Partners, L.P., 219 B.R. 22, 35 (S.D.N.Y. Bankr. 1998) ("The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts.").

A.     The Trustee and FBD Determined There Was a Need to Obtain Conflict Waivers, Which Should Have Been Disclosed

On December 28 and 29, 2010, Wells Fargo received conflict waiver letters from both FBD and the Trustee, for which Wells Fargo dictated the terms of the waiver letter and pointed out that Wells Fargo would be "directly impacted" by any action toward Fifth Third. After FBD shared a draft of the conflict waiver letter with Wells Fargo, Senior Counsel at Wells Fargo wrote to FBD to request that Fifth Third Bank also be added to the conflict waiver letter. Mr. Heck, Senior Counsel for Wells Fargo, informed Terry Hall and David Foster of FBD that Wells Fargo "could be directly impacted by such claims" against Fifth Third "to the extent they effect the loan/collateral rights in which we are a participant." Mr. Heck concluded, moreover, that he would "look favorably on agreeing to the waiver" if FBD was willing to include a prohibition on bringing any actions against Fifth Third. Mr. Heck wrote:

> "Terry and David,
>
> I have one issue with this request at present. While it is clear FBD would not bring any action against Wells Fargo, I believe we would also need that condition to include a prohibition on bringing any actions against 5th 3rd Bank as well, since we could be directly impacted by such claims to the extent they effect the loan/collateral rights in which we are a participant. In those instances, the trustee would need to retain alternate counsel. If you are willing to include that in the conditions as well, I would look favorably on agreeing to the waiver."

December 29, 2010 Email from Gary Heck, Senior Counsel, Wells Fargo Legal Department to Terry Hall, Partner with FBD [WF012639] (attached as Exhibit 1) (filed under seal).  In response, FBD complied with Wells Fargo's request to include language that would prohibit FBD from taking action that would adverse to Fifth Third:

> "Gary,
>
> I have revised the letter (last sentence of the partial paragraph on page 2 of the letter) to include Fifth Third Bank.  We had earlier agreed with Fifth Third that we would not represent the Trustee in any action or adversary proceeding against it."

December 29, 2010 Email from Terry Hall, Partner with FBD to Gary Heck, Senior Counsel, Wells Fargo Legal Department [WF012639].  Wells Fargo consented to the waiver letter with the additional language that included Fifth Third.  The December 29, 2010 letter states, in part, that FBD "would not represent the Trustee in any adversary proceeding or other action that the Trustee may commence directly against Wells Fargo or against Fifth Third Bank."  [WF012639-WF12643] (attached as Exhibit 2) (filed under seal).

In addition to FBD, the Trustee sought and obtained a conflict waiver from Wells Fargo on December 28, 2010.  The Trustee wrote: "I am writing to request your specific consent to my service as bankruptcy trustee in a bankruptcy proceeding which could result in an indirect conflict of interest. . . . Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment, although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interests of Wells Fargo."  December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] (attached as Exhibit 3) [marked in Knauer Dep. as Exhibit 3].  Mr. Knauer also agreed that as trustee his "[trustee]

service will be subject to all applicable rules of professional conduct."[12]  Mr. Heck responded, stating: "I agree to waive the conflict subject to the terms described in your email."  Id.

FBD's and the Trustee's seeking and obtaining conflict waivers in connection with Wells Fargo was required to be disclosed.  See e.g., In re Jore Corp., 298 B.R. 703, 732 (Bankr. D. Mont. 2003) (disqualifying counsel for debtor for failure to disclose that conflicts waiver obtained from DIP lender prohibited debtor's counsel from undertaking litigation adverse to it); In re GIT–N–GO, INC, 321 B.R. 54, 60 ("[T]he Court finds that the written conflict waivers, while necessary in order to satisfy the rules of professional conduct, do not aid the cause of eliminating the adversity of interests between Hale–Halsell and the estate.").

The Trustee offered a partial suggestion relating to his own lack of disclosure of Wells Fargo even though the potential conflict was significant enough for him to seek a consent to representation and waiver of conflicts of interest from Wells Fargo.  The Trustee's Affidavit of Disinterest states that he learned of the identity of persons about whom he needed to examine for potential conflicts from "the filed appearances and docket entries of the Debtor." [Dkt. No. 98-2, p. 1].  But, the first two docket entries of telephonic conferences with the Court on December 7, 2010 [Dkt. No. 28] and December 13, 2010 [Dkt. No. 68], as noted above, include "Jeff Wegner" as the attorney for Wells Fargo; both hearings pre-date the Trustee's Affidavit of Disinterest. Nonetheless, the Trustee claimed he did not know of the role of Wells Fargo until after he prepared and filed his affidavit.  Deposition of James Knauer ("Knauer Dep."), T.p. 23, lns. 13-19.  He claimed he only learned of the role of Wells Fargo after discussing the engagement with

---

[12] As the Indiana Rules of Professional Conduct prevent Mr. Knauer from representing an interest adverse to his client Wells Fargo (Ind. R. Prof. Cond. 1.0(e) and 1.7), the scope of this waiver is very limited.  It is certainly not the "full unrestricted waiver" described by the Trustee in his affidavit of August 13, 2012.  [Dkt. No. 1330].

"his counsel" at FBD – even though FBD were not his personal counsel, nor counsel for his law firm and had not yet been engaged to represent the Estate. Knauer Dep. T.p. 26, ln.10 – 27, ln. 19; T.p. 198, ln. 2 – p.199, ln. 10. He further claimed that he discussed whether he or his counsel should disclose any connection with Wells Fargo and affirmatively decided that neither had an obligation to do so. Knauer Dep. T.p. 26, ln.10 – 27, ln. 19. He claimed they collectively decided that "because (Wells Fargo) [was] a participant, that they were not a creditor, a party in interest" the connection did not rise to the level of disclosure. Knauer Dep. T.p. 27, lns. 14-16.

> B.    Discussions with the United States Trustee Do Not Constitute Disclosure to the Court or Creditors, But Underscore the Need to Disclose

The Trustee and FBD, however, determined that the conflict issue was significant enough that the Trustee contacted the United States Trustee, Charles Wharton. The Trustee was asked whether he contacted Mr. Wharton "because [the Trustee] thought it might possibly be something that he said, 'I think you ought to disclose that?'" in reference to the Trustee's relationship with Wells Fargo. The Trustee acknowledged, "That was certainly a possibility." Knauer Dep., T.p. 59, lns. 22-25.

Such a possibility, however, requires disclosure:

> "The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts. The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away. The professional's duty to disclose is self-policing." (Citations omitted.)

In re Granite Partners, L.P., 219 B.R. at 35; Kravit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 835 (7th Cir. 1998) (stating that the scope of a disinterested professional

"is sufficiently broad to include any professional with an interest or relationship that would even faintly color the independence and impartial attitude required by the Code.") (internal quotation marks and citations omitted); In re Jore Corp., 298 B.R. at 725.

The Trustee's conversation with Mr. Wharton does not satisfy, as a matter of law, the Trustee's disclosure obligations. See e.g., In re Kappy Invs., Inc., 465 B.R. at 842 ("Discussions with the Trustee do not satisfy the disclosure requirements. Proper disclosure belongs in the application filed of record for the Court and all interested parties in the case to see."); In re BH&P, Inc., 949 F.2d at 1303-04 & n.6 (affirming disqualification of counsel, and attaching no relevance to law firm's conversation with United State Trustee regarding potential conflicts of interest). Instead, the Trustee's discussions with Mr. Wharton, along with the Trustee's discussions with FBD, regarding their connections with Wells Fargo "compels disclosure where, as here, the party had contemplated and discussed a specific situation involving a potentiality for conflict." Id. at 1317-18 ("[T]his Court can find no error in the bankruptcy court's determination that Maggio [and RGZ] breached the duty of disclosure. This breach may have been the product of negligence, but negligence does not excuse the failure to disclose a possible conflict of interests.") (alteration in original) (internal quotation marks and citation omitted).

II.      FBD AND THE TRUSTEE CLAIM THAT WELLS FARGO WAS NOT A PARTY IN INTEREST, EVEN THOUGH FBD AND THE TRUSTEE HAD NOT SEEN THE PARTICIPATION AGREEMENT

There is no legitimate way to "rule out" any connection with Wells Fargo as a participant before the Trustee and FBD reviewed the Participation Agreement. The Trustee has testified and FBD's letter states that they determined that Wells Fargo was not a party in interest and could never become a party in interest because it was a "mere participant;" but, this was

based solely on third-hand hearsay because both the Trustee and FBD concede that at the time they made this determination, they had not seen the Participation Agreement. December 28, 2010 Email from James A. Knauer to Gary Heck and Michael Watson [JAK 417-418] [marked in Knauer Dep. as Exhibit 3]; Knauer Dep., T.p. 58; December 29, 2010 Letter from Terry Hall to Gary Heck [WF012639-WF12643]; FBD Response, p. 8 n.7. The Trustee's and FBD's understanding of Wells Fargo's role as a "participant," having not read the Participation Agreement, came through Fifth Third Bank. FBD Response, p. 8 n.7. It is perhaps most disconcerting to these Objecting Parties that Fifth Third was allowed to play any role in identifying whom the Estate's professionals must disclose under Fed. R. Bankr. P. 2014 and 2007.1.

    For example, one of the primary duties of the Trustee, and certainly his counsel, is to evaluate potential preference payments made to parties, particularly the primary secured lender(s). The determination of who is the real party in interest in such transfers, to the extent they occurred, must include careful consideration of Participation Agreements. In <u>Northern Capital, Inc. v. Stockton National Bank (In re Brooke Corp.)</u>, 458 B.R. 579, 588 (Bankr. D. Kan. 2011), the Court followed the reasoning of the Seventh Circuit in <u>Bonded Financial Services, Inc. v. European American Bank</u>, 838 F.2d 890 (7th Cir. 1988), in determining whether the primary lender is a mere conduit of potential payments passed through to the participant(s). The Court in <u>In re Brooke Corp.</u> held that the primary lender was a mere conduit and upheld a grant of summary judgment to the primary lender which protected it from preference payment for anything beyond its percentage share. Therefore, Wells Fargo could be directly sued by the

Trustee to the extent it received transfers from Fifth Third and Fifth Third was acting as a "mere conduit."[13]

The comparisons between the In re Brooke Corp. and the instant Participation Agreement are astonishing. Cf. In re Brooke Corp., 458 B.R. 579, with Participation Agreement, §§ 2.1, 2.7, 3.2, 3.3, 3.3(b), 5.1, and 5.8. Accordingly, even if the Trustee ever had any intention to pursue a preference claim against Fifth Third, and even if his Special Counsel were to pursue Fifth Third, the Trustee certainly had the obligation to consider whether Fifth Third would assert that it was a mere conduit requiring the addition of Wells Fargo. Thus, before the Trustee or FBD ever read the Participation Agreement prior to disclosures they made under Fed. R. Bankr. P. 2007.1 and 2014, there is no way to reach a conclusion that Wells Fargo was not, and never could be, an "other party in interest."

III.    WELLS FARGO IS A PARTY IN INTEREST

The Trustee and FBD claim that they did not have to disclose Wells Fargo because Wells Fargo is purportedly not a party interest. FBD Response, pp. 7-11; Trustee Response, pp. 6-9. This argument, however, splits hairs and ignores both the broad meaning of "party in interest" and the requirements under the Code to disclose all known connections even if they do not rise to the level of a conflict. Wells Fargo is a "party in interest" that should have been disclosed in the Affidavits of Disinterest supporting the employment of FBD, as well as the Affidavit of Disinterest supporting the appointment of the Trustee.

---

[13] In re Interwest Business Equip., Inc., 23 F.3d 311, 316 (10th Cir. 1994) ("The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict. The policy behind disqualification for representing potentially conflicting interests provides the key to its extent. The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor." (citations omitted)).

"Although 'party in interest' is not defined under the Bankruptcy Code, it is construed broadly in order to effectuate the purpose of disclosure – 'to permit the court to determine whether the attorney is disqualified or whether further inquiry is needed before making that determination.'" In re Adam Furniture Indus., Inc., 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993) (quoting In re Rusty Jones, Inc., 134 B.R. 321, 345 (Bankr. N.D. Ill.1991)). "Section 327 is intended to prevent the estate from being represented by people who might have some interest or relationship that would color the independent and impartial attitude required by the Code. Thus, attorneys are required to disclose connections which demonstrate a predisposition in favor of one of parties in interest." In re Rusty Jones, Inc., 134 B.R. 321, 345-46 (Bankr. N.D. Ill.1991) (internal quotation marks and citation omitted) ("This case is a vivid example of how the estate is hurt when it is represented by a firm that is partial to one or more parties in interest or control.").

"Even assuming [a company] is not a creditor of the debtor," such a company could "still be considered a 'party in interest' under Bankruptcy Rule 2014." Adam Furniture Indus., Inc., 158 B.R. at 299. A professional's connection to a "participant" lender should not only be disclosed, but may be a sufficient basis on which to disallow the professional's employment based on "potential conflicts [of interest] and the appearance of impropriety." In re Hub Bus. Forms, Inc., 146 B.R. 315, 322-23 (Bankr. D. Mass. 1992).

FBD and the Trustee cite to caselaw in their Responses that do not discuss disclosure requirements under Fed. R. Bankr. P. 2014 or 2007.1. Instead, FBD and the Trustee cite to cases (e.g., In re Okura & Co., 249 B.R. 596 (Bankr. S.D.N.Y. 2000)) that address, to some degree, whether a participant lender has standing as a creditor. FBD Response, pp. 8-11; Trustee Response, pp. 6-9. Standing issues, however, are often complicated and may take years

to resolve, as evidenced by FBD's and the Trustee's repeated allegations that the "Objecting

Parties" like Superior Livestock, the Bluegrass entities, and First Bank lack standing.  FBD

Response, pp. 4-7; Trustee's Response to Objections to and Motions to Strike the Trustee's

Report [Dkt. No. 1326], pp. 4-9.  There is no provision under the disclosure requirements of Fed.

R. Bankr. P. 2007.1 or 2014 that mandates (or permits) a Trustee or his professionals to make

unilateral "standing" determinations about the parties with whom they have connections prior to

disclosure.  Nor do these rules (or the cases that actually interpret them, as cited in support of the

Renewed Objection and this Reply) require (or permit) the disclosing parties to "pick and

choose" which entities to disclose.  As explained by the caselaw cited above, the term "party in

interest" under the disclosure rules is "construed broadly" (In re Adam Furniture Indus., Inc., 158

B.R. at 299), and includes even entities that are not creditors.  Id.

      The facts demonstrate that Wells Fargo was undeniably a "party in interest" under

Fed. R. Bankr. P. 2014.  First, the first two docket entries of telephonic conferences with the

Court, December 7, 2010 [Dkt. No. 28] and December 13, 2010 [Dkt. No. 68] clearly identify

"Jeff Wegner" attorney for "Wells Fargo Capital."  Wells Fargo also participated in at least two

additional hearings on March 11, 2011 and June 24, 2011.

      Second, as discussed above, both the Trustee and FBD obtained conflict waivers

from Wells Fargo, prior to the Trustee's filing the application to employ FBD as counsel.  Both

were informed by Wells Fargo that Wells Fargo's interest would be "directly impacted" by any

adverse action taken against Fifth Third.  Wells Fargo requested that FBD add Fifth Third to its

waiver of conflict, and FBD agreed.  Not only did the Trustee's and FBD's retaining of conflict

waivers in itself require disclosure, but the obtaining of conflict waivers further demonstrates

that, based on the information available to the Trustee and FBD available in late December 2010,

both acknowledged that Wells Fargo had interests in this bankruptcy proceeding.

Third, prior to the appointment of the Trustee, Wells Fargo participated in

conference calls (on, but not limited to, December 14, 16, and 20, 2010) with the Custodian

(formerly the state-court receiver), along with Fifth Third, to discuss the budget, asset recovery, a

funding mechanism for the bankruptcy, and the selection of a Trustee.  Following the Trustee's

appointment, and also the employment of FBD, the Trustee participated in numerous, private

conference calls with Wells Fargo and Fifth Third Bank on at least the following dates:  January

10, 2011 [WF006415-16], January 18, 2011 [WF006417], January 26, 2011 [WF006418],

February 1, 2011 [WF006419], February 9, 2011 [WF006420], February 23, 2011 [WF006421],

March 7, 2011 [WF006422], March 22, 2011, March 31, 2011 [WF006406, WF006424], April

12, 2011 [WF006403-04], April 25, 2011 [WF006426], May 9, 2011 [WF006427], June 29,

2011 [WF006428], July 19, 2011 [WF006429-30], August 2, 2011 [WF006431], August 18,

2011 [WF006431], September 8, 2011 [WF006407], October 5, 2011 [WF006409-11].  The

topics discussed on these private conference calls with the "bank group" were broad and, at least

from the notes of the calls from Wells Fargo, included information that was not generally known

to the creditor body, like budgets, asset recovery, money transfers to the "bank group," and

updates on adversary proceedings (even, at times, before litigation was filed).

The Trustee also acknowledged Wells Fargo's and Fifth Third's shared an interest

in obtaining a "money transfer" to the "bank group," which further demonstrates that Wells

Fargo was (and is) a party in interest.  The Trustee testified:  "The, the bank group asked me in

every call when they could get some of the money we, we had collected.  I, I have a vivid

recollection that was numero uno on Fifth Third's plate, or I'm sure Wells Fargo, if they were on

the call had the same interest…. If you are asking me if I discussed the money transfer, I'm sure that I did because they always ask." Knauer Dep., T.p. 163, lns. 1-6, 20-22. This testimony related to a document that described a conference call with Wells Fargo in September or October 2011. Based on notes from a conference call one year into this bankruptcy proceeding, the Trustee acknowledges that Wells Fargo had "the same interest" as Fifth Third and asked him on every call when "they [plural] could get some of the money," referring to Fifth Third Bank and Wells Faro collectively as "the bank group."

IV. FBD'S "STRAIGHTFORWARD" TECHNICAL ARGUMENT SHOULD BE REJECTED

     FBD contends in the FBD Response (pp. 2-3) that the retention of FBD is a final order and "First Bank must comply with [Fed. R. Bankr. P.] 9024 . . . which incorporates Fed. R. Civ. P. 60." However, a decision regarding the employment of counsel is not a final order. In re Firstmark Corp. & Capitol Sec., 46 F.3d 653, 657-59 (7th Cir. 1995) ("The majority of courts confronted with this issue have held that orders relating to the appointment or disqualification of counsel are not final in the bankruptcy context.").

     Even if the employment of FBD is a final order, FBD is asking that this Court elevate form over substance based on an alleged failure to seek relief under Fed. R. Bankr. P. 9024. If Fed. R. Bankr. P. 9024 applied, this Court may and should provide relief under Fed. R. Bankr. P. 9024.[14] Failure to make adequate disclosures pursuant to Fed. R. Bankr. P. 2014 is a proper basis for relief under Fed. R. Civ. P. 60. In re Southmark Corp., 181 B.R. 291, 296 (Bankr. E.D. Tex. 1995) ("The professional person must disclose and continue to disclose all

---

[14] The one-year time limitations apply only to Fed. R. Civ. P. 60(b)(1)-(3).

connections that may affect employment eligibility.  Failure to do so constitutes a basis for relief from the compensation order under Rule 60(b)(6).").

V.        CONCLUSION

For the reasons set forth above and in the Renewed Objection [Dkt. No. 1238], First Bank requests that the Court grant the relief requested in the Renewed Objection.


Respectfully submitted,


/s/ Daniel J. Donnellon
Daniel J. Donnellon, pro hac vice
Stephen A. Weigand, pro hac vice
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0300
Telecopier:  (513) 632-0319
Email:  ddonnellon@ficlaw.com
        sweigand@ficlaw.com

Attorneys for The First Bank and Trust Company

## CERTIFICATE OF SERVICE

I certify that on the 17th day of August, 2012, I electronically filed the foregoing Reply Memorandum in Support of Renewal of Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels, LLP (N/K/A Faegre Baker Daniels LLP) as Counsel to Chapter 11 Trustee with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants:

David L. Abt
davidabt@mwt.net

C.R. Bowles, Jr
crb@gdm.com

James A. Knauer
jak@kgrlaw.com

John Hunt Lovell
john@lovell-law.net

Mark A. Robinson
mrobinson@vhrlaw.com

Jeffrey R Erler
jeffe@bellnunnally.com

Edward M King
tking@fbtlaw.com

Randall D. LaTour
rdlatour@vorys.com

Bret S. Clement
bclement@acs-law.com

John R. Carr, III
jrciii@acs-law.com

James M. Carr
jim.carr@bakerd.com

Robert K. Stanley
robert.stanley@bakerd.com

Terry E. Hall
terry.hall@bakerd.com

Dustin R. DeNeal
dustin.deneal@bakerd.com

John Frederick Massouh
john.massouh@sprouselaw.com

John W. Ames
jwa@gdm.com

Robert Hughes Foree
robertforee@bellsouth.net

Kim Martin Lewis
kim.lewis@dinslaw.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Ivana B. Shallcross
ibs@gdm.com

Deborah Caruso
decaruso@daleek.com

Meredith R. Thomas
mthomas@daleeke.com

William Robert Meyer, II
rmeyer@stites.com

Christie A. Moore
cm@gdm.com

Allen Morris
amorris@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

James T. Young
james@rubin-levin.net

David L. LeBas
dlebas@namanhowell.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John M. Thompson
john.thompson@crowedunlevy.com

Jessica E. Yates
jyates@swlaw.com

Matthew J. Ochs
matt.ochs@moyewhite.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Kelly Greene McConnell
lisahughes@givenspursley.com

T. Kent Barber
kbarber@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Walter Scott Newbern
wsnewbern@msn.com

Kirk Crutcher
kcrutcher@mcs-law.com

Todd J. Johnston
tjohnston@mcjllp.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Karen L. Lobring
lobring@msn.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

Lisa Kock Bryant
courtmail@fbhlaw.net

Elliott D. Levin
robin@rubin-levin.net
edl@trustesoultions.com

John M. Rogers
johnr@rubin-levin.net

Jeremy S. Rogers
Jeremy.rogers@dinslaw.com

John David Hoover
jdhoover@hovverhull.com

Sean T. White
swhite@hooverhull.com

Robert H. Foree
robertforee@bellsouth.net

Sarah Stites Fanzini
sfanzini@hopperblackwell.com

Michael W. McClain
mike@kentuckytrial.com

William E. Smith
wsmith@k-glaw.com

Susan K. Roberts
skr@stuartlaw.com

James Edwin McGhee
mcghee@derbycitylaw.com

Thomas C. Scherer
tscherer@binghammchale.com

David A. Laird
david.laird@moyewhite.com

Jerald I. Ancel
jancel@taftlaw.com

Jeffrey J. Graham
jgraham@taftlaw.com

Trevor L. Earl
tearl@rwsvlaw.com

Christopher E. Baker
cbaker@hklawfirm.com

David Alan Domina
dad@dominalaw.com

Kent A Britt
kabritt@vorys.com

Joshua N. Stine
jnstine@vorys.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Jeffrey L. Hunter
jeff.hunter@usdoj.gov

Amelia Martin Adams
aadams@gldfirm.com

Michael Wayne Oyler
moyler@rwsvlaw.com

Jason W. Cottrell
jwc@stuartlaw.com

Robert A. Bell
rabell@vorys.com

Andrea L. Wasson
andreawassonatty@gmail.com

Anthony G. Raluy
traluy@fbhlaw.net

Harmony A. Mappes
Harmony.mappes@faegrebd.com

James B. Lind
jblind@vorys.com

James E. Rossow, Jr.
jim@rubin-levin.net

Jeffrey R. Erler
jeffe@bellnunnally.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Kevin M. Toner
Kevin.toner@faegrebd.com

Kim Martin Lewis
Kim.lewis@dinslaw.com

Melissa S. Giberson
msgiverson@vorys.com

John Huffaker
John.huffaker@sprouselaw.com

Shawna M. Eikenberry
Shawna.eikenberry@faegrebd.com

Wendy W. Ponader
Wendy.ponader@faegrebd.com

W. Wesley Harned
wharned@dlgfirm.com

/s/ Stephen A. Weigand
Stephen A. Weigand

647774.1

# EXHIBIT 1

| | |
|---|---|
| **From:** | Heck, Gary A. |
| **Sent:** | Wednesday, December 29, 2010 10:02 AM |
| **To:** | Stewart, John M. (WFBC MIL); Stoeberl, Mark J. (WFBC MIL); Yandry, Ronald (WFBC MIL); Whitfield, Eric D.; Wegner, Jeffrey T.; Fitzpatrick, Brian F. (WFBC Mpls) |
| **Cc:** | Skinner, Hallie |
| **Subject:** | FW: Response to re: Eastern Livestock - Request for consent to conflict waiver |

REDACTED                    REDACTED                    REDACTED

-----Original Message-----
From: Hall, Terry E. [mailto:Terry.Hall@bakerd.com]
Sent: Wednesday, December 29, 2010 9:50 AM
To: Heck, Gary A.
Cc: JKnauer@kgrlaw.com; Jeffrey.Wegner@KutakRock.com; Carr, James M.; Foster, David A.; Hall, Terry E.
Subject: Response to re: Eastern Livestock - Request for consent to conflict waiver

Gary,

I have revised the letter (last sentence of the partial paragraph on page 2 of the letter) to include Fifth Third Bank. We had earlier agreed with Fifth Third that we would not represent the Trustee in any action or adversary
proceeding against it.

We appreciate your favorable consideration of our request. Again, if you have any questions please call me at your convenience.

Terry E. Hall |Partner| T: 317.237.1230 | F: 317.237.8418 | C: 317.370.7583 Baker & Daniels LLP | www.bakerdaniels.com | 300 N. Meridian Street, Suite 2700 | Indianapolis, IN 46204

-----Original Message-----
From: Gary.A.Heck@wellsfargo.com [mailto:Gary.A.Heck@wellsfargo.com]
Sent: Wednesday, December 29, 2010 10:34 AM
To: Hall, Terry E.; Foster, David A.
Cc: JKnauer@kgrlaw.com; Jeffrey.Wegner@KutakRock.com; Carr, James M.
Subject: RE: Eastern Livestock - Request for consent to conflict waiver

Terry and David,
I have one issue with this request at present. While it is clear Baker & Daniels would not bring any action against Wells Fargo, I believe we would also need that condition to include a prohibition on bringing any actions against 5th 3rd Bank as well, since we could be directly impacted by such claims to the extent they effect the loan/collateral rights in which we are a participant. In those instances, the trustee would need to retain alternate counsel. If you are willing to include that in the conditions as well, I would look favorably on agreeing to the waiver.

CONFIDENTIAL

WF012639

Gary Heck, Senior Counsel
Wells Fargo Legal Department
(612) 667-3971

-----Original Message-----
From: Hall, Terry E. [mailto:Terry.Hall@bakerd.com]
Sent: Tuesday, December 28, 2010 4:59 PM
To: Heck, Gary A.
Cc: JKnauer@kgrlaw.com; Wegner, Jeffrey T.; Carr, James M.
Subject: Eastern Livestock - Request for consent to conflict waiver

Dear Mr. Heck:

Please find attached our request to Wells Fargo to consent to and /or waive conflicts related to the request of James Knauer, in his capacity as chapter
11 trustee in the chapter 11 case of Eastern Livestock Co. LLC, to employ Baker & Daniels LLP as counsel.

Please feel free to call me with any questions you may have.  My cell phone is 317-370-7583.

Terry E. Hall |Partner| T: 317.237.1230 | F: 317.237.8418 | C: 317.370.7583 Baker & Daniels LLP |
www.bakerdaniels.com | 300 N. Meridian Street, Suite 2700 | Indianapolis, IN 46204


-----Original Message-----
From: Wegner, Jeffrey T. [mailto:Jeffrey.Wegner@KutakRock.com]
Sent: Tuesday, December 28, 2010 3:00 PM
To: Hall, Terry E.
Cc: 'Gary.A.Heck@wellsfargo.com'; 'JKnauer@kgrlaw.com'; 'Bedree, Melvin A.'; 'LaTour, Randall D.'
Subject: Eastern Livestock

Ms. Hall,

We are representing Wells Fargo in connection with its participation interest in the Credit Agreement dated as of August 9, 2004, as amended, between Fifth Third Bank and Eastern Livestock Co., LLC.  It is my understanding that: (i) the Trustee, James Knauer, is in process of engaging your firm in the Eastern Livestock matter and has apprised you of Wells Fargo's interests in the case;
(ii) your firm has a longstanding relationship with Wells Fargo and has current, active engagements with Wells Fargo; and (iii) you or one of your partners is pursuing a written conflict waiver from Wells Fargo.

To expedite the conflict waiver communications, I respectfully suggest that you contact Gary Heck at Wells Fargo.  Gary is Senior Counsel with Wells Fargo and has been actively involved in the Eastern Livestock matter.

Gary's contact information is:

Gary Heck, Senior Counsel
Wells Fargo Legal Department
(612) 667-3971
Gary.A.Heck@wellsfargo.com

Thank you.


Jeff Wegner
Kutak Rock LLP
CONFIDENTIAL

WF012640

The Omaha Building
1650 Farnam Street
Omaha, NE 68102
402.231.8814 (Telephone)
402.346.1148 (Facsimile)
jeffrey.wegner@kutakrock.com<mailto:jeffrey.wegner@kutakrock.com>

################################################################################
################################
ANY FEDERAL TAX ADVICE CONTAINED IN THIS MESSAGE SHOULD NOT BE USED OR
REFERRED TO IN THE PROMOTING, MARKETING OR RECOMMENDING OF ANY ENTITY,
INVESTMENT PLAN OR ARRANGEMENT, AND SUCH ADVICE IS NOT INTENDED OR WRITTEN TO
BE USED, AND CANNOT BE USED, BY A TAXPAYER FOR THE PURPOSE OF AVOIDING
PENALTIES UNDER THE INTERNAL REVENUE CODE.
################################################################################
################################
This E-mail message is confidential, is intended only for the named
recipient(s) above and may contain information that is privileged, attorney work product or otherwise
protected by applicable law. If you have received this message in error, please notify the sender at 402-
346-6000 and delete this E-mail message.
Thank you.
################################################################################
####################################

----------------------------
ATTENTION:

To ensure compliance with applicable Internal Revenue Service Regulations, we inform you that any tax
advice contained in this electronic message was not intended or written to be used, and cannot be used,
for the purpose of avoiding penalties under the Internal Revenue Code.


This message and all its attachments are PRIVATE and may contain information that is CONFIDENTIAL
and PRIVILEGED.

If you received this message in error, please notify the sender by reply e-mail and delete the message
immediately.

----------------------------
ATTENTION:

To ensure compliance with applicable Internal Revenue Service Regulations, we inform you that any tax
advice contained in this electronic message was not intended or written to be used, and cannot be used,
for the purpose of avoiding penalties under the Internal Revenue Code.


This message and all its attachments are PRIVATE and may contain information that is CONFIDENTIAL
and PRIVILEGED.

If you received this message in error, please notify the sender by reply e-mail and delete the message

Letter to Gary
Heck.pdf

immediately.

CONFIDENTIAL                                                                WF012641

# EXHIBIT 2

# BAKER & DANIELS
EST. 1863

**TERRY E. HALL**
Partner
Direct 317.237.1230
terry.hall@bakerd.com

**BAKER & DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Tel 317.237.0300   Fax 317.237.1000
www.bakerdaniels.com

December 29, 2010

**Via Email (Gary.A.Heck@wellsfargo.com)**

Mr. Gary Heck
Senior Counsel
Wells Fargo Legal Department

Dear Mr. Heck:

   I am writing to request your specific consent to our representation of a party in a matter which could result in a conflict of interest that is not covered by any of the general consents contained in the current *Wells Fargo & Company Policy Regarding Legal Conflicts of Interest* (the "Policy"). Baker & Daniels LLP has been approached to serve as counsel to an appointed chapter 11 trustee in a liquidating chapter 11 case. The debtor in the case is a borrower under certain loans held by Fifth Third Bank, N.A. in which we have been made aware that Wells Fargo Capital Finance ('Wells Fargo") has a participatory interest, though we are not informed as to the specifics of the participation agreement. More particular details are below.

   James Knauer is the appointed Chapter 11 Trustee ("Trustee" or "Adverse Party") for Eastern Livestock Co., LLC ("Debtor"), the debtor in a chapter 11 case pending before the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, Case No. 10-93904-BHL-11("Chapter 11 Case"). Our initial understanding is that the debtor is a producer/broker of cattle. The Chapter 11 Case was originally filed as an involuntary case by certain creditors following the earlier appointment of a state court receiver. The Trustee is seeking to engage Baker &Daniels LLP to represent his interests as Trustee in the Chapter 11 Case. Based upon information the Trustee provided today, Wells Fargo is a participant in the Fifth Third loan to the Debtor or an affiliated entity. Thus, such an engagement by the Trustee, although not directly adversarial in nature, would constitute a Dispute under the Policy.

   It is anticipated that the following attorneys would handle the engagement within the firm: Jim Carr, Terry Hall, Dustin DeNeal, Harmony Mappes and Robert Stanley. None of those attorneys is actively involved in the representation of any Wells Fargo Line of Business in any current engagements.

   If you consent to our representation of the Adverse Party in this matter, we acknowledge and agree that the representation will be subject to all applicable rules of professional conduct and that the Firm will not (1) disclose to an Adverse Party any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade

BDDB01 6476540v2
CONFIDENTIAL

WF012642

Mr. Gary Heck                              2                        December 29, 2010

secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), or (2) use such information in any matter or proceeding without Wells Fargo's consent.  Further, and specifically for this representation, the Firm would not represent the Trustee in any adversary proceeding or other action that the Trustee may commence directly against Wells Fargo or against Fifth Third Bank.

        If you agree that the Firm may represent the Adverse Party in the referenced matter subject to these conditions, please send me a confirmation by e-mail.

                    Sincerely,

                    Terry E. Hall

cc:     Jeffrey Wegner <jeffrey.wegner@kutakrock.com>
        David Foster <david.foster@bakerd.com>
        Jim Carr <james.carr@bakerd.com>
        James Knauer <JKnauer@kgrlaw.com'>

CONFIDENTIAL                                                        WF012643

BDDB01 6476540v2

# EXHIBIT 3

**James Knauer**

| | |
|---|---|
| **From:** | Gary.A.Heck@wellsfargo.com |
| **Sent:** | Tuesday, December 28, 2010 5:43 PM |
| **To:** | James Knauer |
| **Cc:** | watsonm1@wellsfargo.com |
| **Subject:** | RE: Eastern Livestock, LLC Bankruptcy |

Jim,

Thank you for calling me on this. On behalf of Wells Fargo I agree to waive the conflict subject to the terms described in your email below.

**Gary Heck, Senior Counsel**
**Wells Fargo Legal Department**
**(612) 667-3971**

**From:** James Knauer [mailto:JAK@kgrlaw.com]
**Sent:** Tuesday, December 28, 2010 4:05 PM
**To:** Heck, Gary A.; Watson, J. Michael
**Subject:** Eastern Livestock, LLC Bankruptcy

Gentlemen;

I am writing to request your specific consent to my service as a bankruptcy trustee in a bankruptcy proceeding which could result in an indirect conflict of interest. The debtor in the case is a borrower under certain loans held by Fifth Third Bank, N.A. I have been become aware that Wells Fargo & Co. has a participatory interest, though I am not presently informed concerning specifics of the participation agreement. More particular details are below.

I was appointed Trustee last Friday, December 24, 2010 for Eastern Livestock Co., LLC ("Debtor"), the debtor in a chapter 11 case pending before the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, Case No. 10-93904-BHL-11("Chapter 11 Case"). My review of the pleadings and available information did not disclose to me the involvement of Wells Fargo. I learned of it yesterday.

The debtor is a producer/broker of cattle. The Chapter 11 Case was originally filed as an involuntary case by certain creditors following the earlier appointment of a state court receiver. Since Wells Fargo is a participant in the secured loan to the Debtor, my appointment , although not directly adversarial in nature, could ultimately result in my being adverse to Fifth Third and in turn to the interests of Wells Fargo.

If you consent to my service as bankruptcy trustee in this matter, I acknowledge and agree that the service will be subject to all applicable rules of professional conduct and that I will not disclose any confidential information concerning Wells Fargo or its businesses (including, without limitation, trade secrets, matters covered by the attorney-client privilege and matters covered by the attorney work product privilege), or (2) use such information in any matter or proceeding without Wells Fargo's consent. Given its role as a loan participant, there appears to be no circumstance in which I, as a bankruptcy trustee, could initiate any adversary proceeding or other action against Wells Fargo.

If you agree to waive any conflict for my service as Trustee, subject to the foregoing conditions, please send me a confirmation by e-mail.

Sincerely,

1

JAK 417

James A. Knauer



**James Knauer**
Attorney at Law

**Kroger, Gardis & Regas, LLP**
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000 · Fax (317) 777-7440
jak@kgrlaw.com  www.kgrlaw.com

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail transmissions attached to it, contain information that is confidential and may be legally privileged. If you are not the intended recipient of this transmission, or a person responsible for delivering it to the intended recipient, you are notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving or forwarding it in any manner. Thank you for your consideration.

JAK 418