UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

MOTION TO APPROVE COMPROMISE OF CONTROVERSY
BETWEEN EASTERN LIVESTOCK CO., LLC AND HERITAGE FEEDERS, L.P.

James A. Knauer, the Chapter 11 Trustee appointed in this case ("Trustee"), by counsel, respectfully moves this Court for an Order approving a proposed compromise (the "Motion") with Heritage Feeders, L.P. ("Heritage"). Because the total amount due and owing between Heritage and the Eastern Livestock Co., LLC ("Debtor") is undisputed and liquidated,[1] the proposed compromise, set forth below, is a just and efficient means of settling the matters between the parties. In support of the Motion, the Trustee respectfully represents the following:

**PRELIMINARY BACKGROUND**

1.      Certain petitioning creditors commenced the above-captioned Chapter 11 case against the Debtor on December 6, 2010 (the "Petition Date") by filing an involuntary petition for relief under Chapter 11 of the Bankruptcy Code. This Court entered an Order For Relief in An Involuntary Case and Order to Complete Filing [Dkt. No. 110] on December 28, 2010.

2.      On December 27, 2010, the Court entered an Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [Dkt. No. 102] (the "Trustee Order") pursuant to 11 U.S.C. § 1104.

---

[1] This motion to compromise certain claims by and between Heritage and the Trustee includes the transactions occurring on or about November 8, 2010 in which Heritage paid MMB Cattle Co; directly for cattle the Trustee asserts were delivered by Debtor on or about November 3, 2010 through November 6, 2010 and for which the Debtor is owed payment. The Trustee reserves all claims, rights, and causes of action it may have against MMB Cattle Co. and this settlement with Heritage is not a waiver of any claims of the Trustee against MMB Cattle Co.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought herein are 11 U.S.C. § 105(a) and FED. R. BANKR. P. 9019.

## BACKGROUND

5. Debtor and Heritage entered into various contracts wherein Heritage agreed to purchase cattle from Debtor. In conjunction with these contracts, Heritage paid certain down payments to Debtor for application to invoices on future deliveries of cattle.

**A.    PO #03663S**

6. On or about July 30, 2010, Debtor and Heritage entered into a Cattle Sales Contract wherein Heritage agreed to purchase 2,500 heifers from the Debtor at $108.25 per head per 100 pounds. This contract was referred to by the parties as "PO #03663S".

7. Heritage paid $75,000.00 to Debtor as a down payment on PO #03663S.

8. Debtor delivered a total of 1,299 heifers to Heritage pursuant to PO #03663S (the "PO #03663S Deliveries"). Heritage paid Debtor for 755 of the heifers that were delivered pursuant to PO#03663S. Heritage has not paid Debtor for 544 heifers that were delivered on November 3 and 4, 2010, because Debtor's financial problems surfaced around the time that the 544 heifers were delivered and Heritage began receiving claims from certain third parties that claimed an interest in the proceeds.

9. After giving credit for all payments made to Debtor associated with the PO #03663S Deliveries and after applying the down payments made by Heritage for the PO #03663S Deliveries (including application of $16,320.00 of Heritage's down payment toward the

544 heifers delivered on November 3 and 4, 2010), Heritage still owes the Debtor $395,658.18 for the PO #03663S Deliveries.

10. The Debtor is currently in possession of $36,030.00 of Heritage's down payment on PO #03663S which has not been applied to the purchase of cattle from Debtor. Pursuant to PO #03663S, Debtor was required to deliver 2,500 heifers. Debtor only delivered 1,299 heifers. Thus, Debtor was required to deliver 1,201 more heifers to Heritage pursuant to PO #03663S. Debtor failed to deliver the remaining 1,201 heifers. Heritage made down payments to Debtor on PO #03663S totaling $75,000, or $30.00 per heifer. Debtor owes Heritage a total of $36,030.00 in down payments for the 1201 heifers that were not delivered ($30.00 down payment per heifer x 1,201 heifers not delivered).

11. In light of Debtor's failure to deliver the remaining 1,201 heifers, Heritage was required to cover and purchased 1,201 heifers from different cattle brokers which resulted in an increased cost to Heritage in the amount of $30,081.45.

12. The transactions related to PO #03663S occurred prior to the Petition Date.

13. The "net" amount owed by Heritage to Debtor on PO #03663S totals $329,546.73, and is summarized as follows:

| | |
|---|---|
| Amount owed for 544 heifers delivered but not paid | |
|    Less down payment already paid at $30.00 per heifer | $395,658.18 |
| Less remaining down payment on 1201 heifers not delivered | ($ 36,030.00) |
| Less cost to replace 1201 heifers not delivered | ($ 30,081.45) |
| Net amount owed on PO #3663S | $329,546.73 |

**B.     PO #03693S**

14.     On or about August 19, 2010, the Debtor and Heritage entered into a Cattle Sales Contract wherein Heritage agreed to purchase 750 steer from the Debtor at $115.63 per head per 100 pounds.  This contract was referred to by the parties as "PO #03693S".

15.     Heritage paid $22,500.00 to the Debtor as a down payment on PO #03693S.

16.     The Debtor did not deliver any steers pursuant to PO #03693S.

17.     The Debtor is currently in possession of Heritage's $22,500.00 down payment on PO #03693S which has not been applied to the purchase of cattle from Debtor.

18.     The parties entered into PO #03693S and Heritage remitted the down payment to Debtor for PO #03693S prior to the Petition Date.

**C.     PO #03694S**

19.     On or about August 19, 2010, the Debtor and Heritage entered into a Cattle Sales Contract wherein Heritage agreed to purchase 750 heifers from the Debtor at $109.00 per head per 100 pounds.  This contract was referred to by the parties as "PO #03694S".

20.     Heritage paid $22,500.00 to the Debtor as a down payment on PO #03694S.

21.     The Debtor did not deliver any heifers pursuant to PO #03694S.

22.     The Debtor is currently in possession of Heritage's $22,500.00 down payment on PO #03694S which has not been applied to the purchase of cattle from Debtor.

23.     The parties entered into PO #03694S and Heritage remitted the down payment to Debtor for PO #03694S prior to the Petition Date.

**D.     Total Amount Due Under PO #03663S, PO #03693S and PO #03694S**

24.     The net amount owed from Heritage to Debtor under PO #03663S, PO #03693S and PO #03694S is summarized as follows:

<u>PO #3663S</u>
Amount owed for 544 heifers delivered but not paid
   Less down payment already paid at $30 per heifer           $395,658.18
Less remaining down payment on 1201 heifers not delivered    ($ 36,030.00)
Less cost to replace 1201 heifers not delivered                 <u>($ 30,081.45)</u>
Net amount owed on PO #3663S                              $329,546.73

<u>PO #03693S</u>
Remaining down payment on PO #03693S                  ($ 22,500.00)

<u>PO #03694S</u>
Remaining down payment on PO #03694S                  ($ 22,500.00)

Net due from Heritage                                               $284,546.73

25. After applying the rights of recoupment and setoff of the debts between Debtor and Heritage, there remains a balance due to Debtor from Heritage in the total amount of $284,546.73 (the "Heritage Balance"). The sales of cattle to Heritage by Debtor are governed by this Court's Order Granting Trustee's Emergency Motion Regarding Payments on Debtor's Cattle Sales entered on January 24, 2011 [Docket No. 234] (the "Cattle Sales Order") and the Heritage Balance constitutes "Purchase Money" as defined in the Cattle Sales Order.

26. All liens, claims, encumbrances and interests, if any, will attach to the Heritage Balance in the same manner as they existed in the cattle sold to Heritage or the account(s) receivable related to the cattle sold to Heritage as provided in the Cattle Sales Order.

27. Heritage shall be indemnified by Debtor's bankruptcy estate up to the amount of the Heritage Balance as provided in the Cattle Sales Order.

28. Third parties claiming any liens, claims, encumbrances in the cattle sold to Heritage or the Debtor's account(s) receivable related to the cattle sold to Heritage pursuant to the contracts that are the subject of this motion will be enjoined and estopped from asserting claims against Heritage as provided in the Cattle Sales Order. Heritage acknowledges that the indemnification of the Debtor's estate to Heritage for the Heritage Balance shall not in any

instance exceed the Heritage Balance and that the indemnification relates only to the amounts at issue collectively under PO #03663S, PO #03693S and PO #03694S.

29.

30.     Trustee believes the proposed compromise is in the best interest of Debtor's estate and Debtor's creditors.

## BRIEF IN SUPPORT

**A.   The Settlement Is Fair and in the Best Interests of the Debtors' Estates and Should Be Authorized Pursuant to Bankruptcy Rule 9019(a).**

31.     Bankruptcy Rule 9019(a) authorizes a bankruptcy court, on motion by a trustee and after appropriate notice and a hearing, to approve a compromise or settlement so long as the proposed compromise or settlement is fair and equitable and in the best interest of the estate. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Depoister v. Mary M. Holloway Found., 36 F.3d 582, 586 (7th Cir. 1994) ("In conducting a hearing under Rule 9019(a), the bankruptcy court is to determine whether the proposed compromise is fair and equitable and in the best interests of the bankruptcy estate.") (internal citations omitted); In re Andreuccetti, 975 F.2d 413, 421 (7th Cir. 1992) (Bankruptcy Rule 9019(a) authorizes the court to approve a settlement if "the settlement is in the best interests of the estate."); In re Energy Co-op, Inc., 886 F.2d 921, 927 (7th Cir. 1989) ("[t]he benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate.").

32.     Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. See Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000) ("Judges naturally prefer to settle complex litigation than to see it litigated to the hilt, especially when it is litigation in a bankruptcy proceeding — the expenses of administering the

6

bankruptcy often consume most or even all of the bankrupt's assets."); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy").

33. It is well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Energy Co-op, 886 F.2d at 929.

34. As further guidance, the Seventh Circuit has offered the following guidelines:

> Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits. Among the factors the bankruptcy judge should consider in [the] analysis are the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay.

LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.), 841 F.2d 159, 161 (7th Cir. 1987) (citations omitted).

35. The Settlement, negotiated at arms-length and in good faith, achieves a result that is in the best interest of the Debtor and its estate. Specifically, the Settlement provides the Debtor with precisely what it is owed from Heritage under the Contracts – the balance due from cattle the Debtor has delivered less Heritage's remaining down payments and costs of cover. Such a result greatly enhances the prospects for success in a Chapter 11 case and reduces the overall administrative costs associated with this case, thereby preserving the value of the Debtor's estate, and likely represents the best negotiated outcome possible. Consequently, if the Settlement is not approved, the parties likely will litigate, resulting in greater administrative expenses, and may not ever achieve a resolution that is as fair and equitable as the Settlement. Therefore, the Trustee believes that the Settlement falls within the reasonable range of litigation possibilities given the expense and unknown outcome associated with further litigation.

36. The Settlement also is consistent with a creditor's right of set-off pursuant to the Bankruptcy Code. Section 553(a) requires three elements in order to assert set-off: (1) the creditor must hold a claim against the debtor that arose before the commencement of the case; (2) the creditor must owe a debt to the debtor that also arose before the commencement of the case; and (3) the claim and the debt must be mutual. 11 U.S.C. § 553(a); see also Meyer Med. Physicians Group, Ltd. v. Health Care Serv. Corp., 2003 WL 21960350 at *2 (N.D.Ill. 2003) ("With certain exceptions, the right of setoff is preserved in bankruptcy when two parties owe each other valid, mutual, prepetition debts."). Here, Heritage's claim for unused down payments and cover costs against Debtor and Debtor's claim for unpaid, but delivered, cattle against Heritage arose before the Petition Date. Further, the two debts are mutual – that is, the debts are between the same parties, Heritage and Debtor.

37. The Settlement resolves an easy contractual question – how much Heritage and Debtor owe one another. The amount of the two debts are undisputed and liquidated. Clearly, Heritage is entitled to the return of down payments that were not applied to Heritage's purchase of cattle from Debtor and Debtor is entitled to the balance owing from cattle already delivered to Heritage. Further, in light of Debtor's failure to deliver all of the cattle contemplated under the Contracts, Heritage was entitled to "'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller" and could recover any damages incurred by doing so. IND. CODE § 26-1-2-712.

38. The Settlement also accounts for Heritage's right of recoupment with respect to PO #03663S. While recoupment is neither mentioned nor defined by the Bankruptcy Code, it is an equitable remedy routinely applied by bankruptcy courts. *See* 5 *Collier on Bankruptcy,* ¶ 553.10 (16th ed. 2009). Recoupment applies where "the plaintiff's debt to the defendant arose

8

out of the same transaction as the defendant's liability to the plaintiff." *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1440 (7th Cir. 1993). Thus, recoupment is a party's right to reduce the amount of a claim asserted against it. 5 *Collier, supra,* at ¶ 553.10. Here, Heritage owes the Debtor $395,658.18 for PO #03663S for cattle delivered but not yet paid for and the Debtor owes Heritage $36,030.00 representing the balance of Heritage's down payment that has been unapplied and $30,081.45 for the cost to cover the purchase of heifers not delivered by the Debtor. As a result, Heritage is clearly entitled to recoup $66,111.45 against any claim of the Debtor based upon PO #03663S.

39. For these reasons, the Settlement maximizes the value of the Debtor's assets and minimizes the burden to its estate while providing Heritage relief for its rights of recoupment and setoff. The Settlement should be approved pursuant to Bankruptcy Rule 9019.

## NOTICE

40. The Trustee will provide notice of this Motion pursuant to FED. R. BANK. P. 2002(a)(3) or as otherwise directed by this Court. The Notice shall include a definitive time in which any party claiming an interest in the cattle, the transactions, or the Heritage Balance be required to file and serve an objection stating with specificity its objection and the basis for asserting a claim.

## NO PRIOR REQUEST

41. No prior motion for the relief requested herein has been made to the Court in this case.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully request that this Court enter an order approving the proposed compromise, as it is in the best interests of the Debtor and the estate.

                                Respectfully submitted,

                                FAEGRE BAKER DANIELS, LLP

                                By: /s/ Terry E. Hall

James M. Carr (#3128-49)         *Counsel for James A. Knauer, Chapter 11 Trustee*
Kevin Toner (#11343-49)
Terry E. Hall (#22041-49)
Harmony Mappes (# 27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com

Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>cbowles@ bgdlegal.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |

Daniel J. Donnellon
ddonnellon@ficlaw.com

John W. Ames
james@bgdlegal.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Meredith R. Thomas
mthomas@daleeke.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

David L. LeBas
dlebas@namanhowell.com

Jessica E. Yates
jyates@swlaw.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Todd J. Johnston
tjohnston@mcjllp.com

Karen L. Lobring
lobring@msn.com

Elliott D. Levin
edl@rubin-levin.net

Sean T. White
swhite@hooverhull.com

Michael W. McClain
mike@kentuckytrial.com

James Edwin McGhee
mcghee@derbycitylaw.com

Jerald I. Ancel
jancel@taftlaw.com

David Alan Domina
dad@dominalaw.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Michael Wayne Oyler
moyler@rwsvlaw.com

James E. Rossow
jim@rubin-levin.net

Steven A. Brehm
sbrehm@ bgdlegal.com

James M. Carr
james.carr@faegrebd.com

Shawna M. Eikenberry
shawna.eikenberry@faegrebd.com

Stephen A. Weigand
sweigand@ficlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Ivana B. Shallcross
ishallcross@ bgdlegal.com

William Robert Meyer, II
rmeyer@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John Huffaker
john.huffaker@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Walter Scott Newbern
wsnewbern@msn.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

John M. Rogers
johnr@rubin-levin.net

Jay P. Kennedy
jpk@kgrlaw.com

William E Smith
wsmith@k-glaw.com

Thomas C Scherer
tscherer@bgdlegal.com

Jeffrey J. Graham
jgraham@taftlaw.com

Kent A Britt
kabritt@vorys.com

Jeffrey L Hunter
jeff.hunter@usdoj.gov

Jason W. Cottrell
jwc@stuartlaw.com

James B. Lind
jblind@vorys.com

Anthony G. Raluy
traluy@fbhlaw.net

Jack S. Dawson
jdawson@millerdollarhide.com

Terry E. Hall
terry.hall@faegrebd.com

John Frederick Massouh
john.massouh@sprouselaw.com

Kim Martin Lewis
kim.lewis@dinslaw.com

Deborah Caruso
dcaruso@daleeke.com

Allen Morris
amorris@stites.com

James T. Young
james@rubin-levin.net

John M. Thompson
john.thompson@crowedunlevy.com

Matthew J. Ochs
kim.maynes@moyewhite.com

T. Kent Barber
kbarber@dlgfirm.com

Kirk Crutcher
kcrutcher@mcs-law.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Lisa Koch Bryant
courtmail@fbhlaw.net

John David Hoover
jdhoover@hooverhull.com

John R. Burns
john.burns@faegrebd.com

Kayla D. Britton
kayla.britton@faegrebd.com

David A. Laird
david.laird@moyewhite.com

Trevor L. Earl
tearl@rwsvlaw.com

Joshua N. Stine
kabritt@vorys.com

Amelia Martin Adams
aadams@dlgfirm.com

Robert A. Bell
rabell@vorys.com

Melissa S. Giberson
msgiberson@vorys.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Dustin R. DeNeal
dustin.deneal@faegrebd.com

Jay Jaffe
jay.jaffe@faegrebd.com

11

| | | |
|---|---|---|
| James A. Knauer<br>jak@kgrlaw.com | Erick P. Knoblock<br>eknoblock@daleeke.com | Harmony A. Mappes<br>harmony.mappes@faegrebd.com |
| Christie A. Moore<br>cm@gdm.com | Shiv Ghuman O'Neill<br>shiv.oneill@faegrebd.com | Wendy W. Ponader<br>wendy.ponader@faegrebd.com |
| Peter M. Gannott<br>pgannott@gannottlaw.com | Eric C. Redman<br>ksmith@redmanludwig.com | Joe T. Roberts<br>jratty@windstream.net |
| Joseph H. Rogers<br>jrogers@millerdollarhide.com | James E. Smith<br>jsmith@smithakins.com | Robert K. Stanley<br>robert.stanley@faegrebd.com |
| Andrew D. Stosberg<br>astosberg@lloydmc.com | Kevin M. Toner<br>kevin.toner@faegrebd.com | Andrea L. Wasson<br>andrea@wassonthornhill.com |
| Christopher M. Trapp<br>ctrapp@rubin-levin.net | Eric W. Richardson<br>ewrichardson@vorys.com | Joshua Elliott Clubb<br>joshclubb@gmail.com |
| Jennifer Watt<br>jwatt@kgrlaw.com | | |

      I further certify that on October 12, 2012, a copy of the foregoing pleading was served via electronic mail transmission on the following:

| | |
|---|---|
| Ashley S. Rusher<br>asr@blancolaw.com | Darla J. Gabbitas<br>darla.gabbitas@moyewhite.com |

                                                             /s/ Terry E. Hall