UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| EASTERN LIVESTOCK CO., LLC. | ) CASE NO. 10-93904-BHL-11 |
| | ) |
| DEBTOR. | ) CHAPTER 11 |
| | ) |

**OBJECTION TO DISCLOSURE STATEMENT FOR TRUSTEE'S CHAPTER 11
PLAN OF LIQUIDATION**

Superior Livestock Auction, Inc. ("Superior"), by and through counsel, hereby files its Objection to Disclosure Statement for Trustee's Chapter 11 Plan of Liquidation (the "Objection"). In support of the Objection, Superior states as follows:

**BACKGROUND**

1. On December 6, 2010, an involuntary petition was filed against Eastern Livestock Co. LLC (the "Debtor"). The Order for Relief was entered on December 28, 2010.

2. On December 16, 2010, this Court ordered the appointment of a Chapter 11 Trustee. On December 23, 2010, the Office of the United States Trustee ("UST") appointed James Knauer (the "Trustee") as Chapter 11 Trustee in this case. The Court approved Faegre Baker Daniels LLP ("FBD") as general bankruptcy counsel for the Debtor's estate[1] (the "Estate").

3. On July 10, 2012, certain parties filed Motions to Remove Trustee Pursuant to 11 U.S.C. § 324 and a Renewed Objection to Application to Employ general

---

[1] Although FBD has acted as Trustee's personal counsel, under Seventh Circuit law, FBD represents the Estate rather than the Trustee. *See In re Taxman Clothing* Co., 49 F.3d 310, 313-315 (7th Cir. 1995).

counsel for the Trustee as Docket Nos. 1237, 1238, and 1239 (the "Motions") based in part on alleged failure of the Trustee and FBD to disclose their conflicts of interest or potential conflicts of interest at the time of Trustee's appointment and FBD's employment and thereafter.

4. On August 31, 2012, the Motions were overruled by this Court (Doc. Nos. 1388 and 1389) (the "Orders"). Superior appealed the order overruling motions to remove the Trustee (the "Appeal").

5. On July 23, 2012, the Trustee filed Trustee's Chapter 11 Plan of Liquidation [Doc. No. 1255] (the "Plan") and the Disclosure Statement For Trustee's Chapter 11 Plan of Liquidation [Doc. No. 1256] (the "Disclosure Statement"). A hearing on the adequacy of the Disclosure Statement is scheduled for October 19, 2012 before this Court.

6. Superior objects to the Disclosure Statement because it is proposed by parties with fatal conflicts of interest and contains false, inaccurate and incomplete information, an inadequate disclosure of the settlement with Fifth Third Bank and Wells Fargo Bank (the "Bank Group") and does not disclose improper party releases of the Trustee and FBD as part of the Bank Group settlement.

## LEGAL ARGUMENT

A. **The Disclosure Statement is Inherently Tainted Because it was Drafted for the Benefit of the Bank Group Rather than to Provide Adequate Information to the Entire Creditor Body**

7. Numerous parties have made allegations that have called into question Trustee's and FBD's disinterestedness in administering this case. *See* Doc. Nos. 1197 and 1206 ("Motions to Strike" Report), 1201, 1209 and 1222 ("Objections to Trustee's

Report"), 1211 and 1216 ("Joint Objection and Motion to Strike"). *See also* Doc. Nos. 1237, 1238, 1239, 1248, 1278, 1279, 1324, 1357, 1361, 1377 ("Motions and Supplements Requesting Removal of the Trustee and FBD," and collectively with Motions to Strike Report, Objections to Trustee Report and Joint Objection and Motion to Strike, the "Objections and Removal Pleadings").

8.  Although the Court overruled the Motions and the Objection and Removal Pleadings[2] and found that the Trustee and FBD should not be removed, Superior and others have filed appeals, the outcome of which are unknown at this time.

9.  With respect to the adequacy of the Disclosure Statement, however, Superior submits that the Disclosure Statement as a whole is tainted because it was drafted for the benefit of the Bank Group rather than to provide adequate information to all of the creditors of the Estate. The contents (or lack thereof) of the Disclosure Statement provide a prime example of Trustee and FBD's failure to act as fiduciaries to the entire creditor body but only as fiduciaries to the Bank Group.

10. Instead of drafting a disclosure statement aimed at informing the creditors of both the strengths and weakness of Estate's claims and potential courses of action against all parties, the Disclosure Statement was clearly drafted either by or to solely favor the Bank Group as it fails to disclose any Court-rulings in favor of non-Bank Group parties and omits the extensive factual basis of the Estate's claims against Fifth Third Bank. In fact, the Disclosure Statement almost goes as far as to waive all Estate's claims against Fifth Third Bank.

---

[2] On August 31, 2012, the Court entered an Order Overruling Objections to the Trustee's Report and Order Denying Motion to Strike Trustee's Report on Claims [Doc. No. 1390].

3

11. The Disclosure Statement was also drafted to shield and insulate the Trustee and the professionals. The Disclosure Statement fails to even mention potential claims that the Estate could have against the Trustee and FBD if the Appeal is successful and fails to disclose in any meaningful way the benefits gained by the Trustee, FBD and the Estate as the result of the "opt-in" creditors' release of claims against Fifth Third Bank.

12. The Disclosure Statement also fails to note that under section 7.4 of the Plan, the Trustee and professionals are granted third-party releases <u>for no value</u>.  While third-party releases of professionals in bankruptcy are acceptable when consensual, *Townsquare Media Inc. v. Brill*, 652 F.3d 767 (7th Cir. 2011), contested and undisclosed releases are not, *see generally, In re Airadigm Communications Inc.*, 519 F.3d 640, 657-58 (7th Cir. 2008) (third-party release found appropriate where fully disclosed and where party receiving it gave value of over $221,000,000 in connection with the release).

13. As it is evident that the Disclosure Statement is inherently tainted because it was drafted for the benefit of the Bank Group only and as a shield to the Trustee and the professionals, the Court should not approve it.

**B.     The Disclosure Statement Fails to Meet the Disclosure Statement Standard of 11 U.S.C. § 1125 and Should Not Be Approved**

14. The Court should reject the Disclosure Statement because the Disclosure Statement does not provide sufficient information to allow creditors to make an informed decision as to whether to accept or reject the Plan. *See* 11 U.S.C. §1125.

15. Disclosure is a fundamental concept in Chapter 11 bankruptcy cases. Specifically, disclosure statements are the primary source upon which creditors rely to

make informed decisions regarding debtors' plans of reorganization/liquidation. In fact:

> If adequate disclosure is provided to all creditors and stock holders whose rights are to be affected, then they should be able to make an informed judgment on their own rather than having a court or the Securities and Exchange Commission inform them in advance whether the proposed plan is a good plan. Therefore the key to the consolidated chapter is the disclosure section.

7-1125 Collier on Bankruptcy ¶ 1125.02 (16th ed. 2012) (internal citations omitted).

16. 11 U.S.C. §1125 requires that a disclosure statement provide "adequate information," including information about litigation which will arise. *See Monroe County Oil Co., Inc. v. Amoco Oil Co.*, 75 B.R. 158, 162 (S.D. Ind. 1987) ("…the debtor must file a disclosure statement which contains 'adequate information'"). The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan...to allow a hypothetical investigation to make an informed judgment about a plan of reorganization.

11 U.S.C. §1125(a).

17. Here, the Disclosure Statement fails to satisfy the burden imposed by 11 U.S.C. §1125 because the Disclosure Statement contains false, inaccurate and incomplete information about most aspects of the Plan, an inadequate discussion of the terms of the settlement between the Bank Group and the Debtor and conceals improper releases of the Trustee and FBD.

18.     As these deficiencies, discussed more fully below,[3] violate the Bankruptcy Code's disclosure statement requirements, the Disclosure Statement should be rejected by this Court.

<u>False Disclosures</u>

19.     A disclosure statement that includes false information fails to provide adequate information for purposes of 11 U.S.C. § 1125(a) and cannot be approved. *See e.g., In re Ligon*, 50 B.R. 127 (Bkrtcy. M.D. Tenn. 1985). As the Disclosure Statement contains numerous false disclosures, the Court should reject it.

20.     Specifically:

    (a)     All references to an "independent investigation" by Trustee's Special Counsel should be removed. Instead, the Disclosure Statement should contain a clear statement that: (a) the Court directed the Trustee to employ Special Counsel to perform an investigation related to Fifth Third Bank as specifically requested by FBD's waiver letter from Fifth Third Bank, which prohibits FBD from being "adversarial or litigious" against Fifth Third Bank; (b) FBD deliberately failed to disclose the terms of the Fifth Third Bank waiver letter as required by the local rules of this Court; and (c) despite the limitation in the Fifth Third Bank's waiver letter, FBD played a major role in the investigation of Fifth Third Bank. Trustee also raised privilege objections to prevent parties from discovering the precise roles played by Special Counsel and FBD in the investigation of claims against Fifth Third Bank.

    (b)     The Disclosure Statement should clearly explain to everyone holding bad checks why Fifth Third dishonored these checks as "refer to maker." Generally, unlike "insufficient funds," a "refer to maker" designation connotes that a bank has an issue with the payor's account that the check cannot be re-deposited by the payee bank for

---

[3] The Disclosure Statement contains many technical flaws, misuse of defined terms and misstatements of facts, resulting in numerous grounds for objections. Superior has attempted to address the major violations in this Objection, however, Superior reserves the right to argue additional objections at oral argument.

6

any reason. Interestingly, Fifth Third Bank did not believe there were insufficient funds in the Debtor's account and could have only issued "refer to maker" designations on checks that were suspicious as part of the check kite scheme.

(c) The Background Section of the Disclosure Statement should be rewritten to indicate that the Debtor (since at least 2009) was defrauding all cattle settlers and not operating a legitimate business. Further, the Disclosure Statement should note that certain insiders of the Debtor were charged and convicted as the result of the check kiting scheme and that the Debtor is also guilty of such illegal activities.

(d) Any discussion of the Madoff case should be deleted from the Disclosure Statement as the analysis is factually and legally incorrect and irrelevant to the issues in this case.

(e) Disclosure Statement's "improvement in position" analysis is patently false and should be corrected. *See* Disclosure Statement at pp. 59-61. The Disclosure Statement should disclose in detail the factual basis of the Estate's claims against Fifth Third Bank in order to allow parties to truly evaluate the position taken by the Trustee with respect to this claim in negotiations with Fifth Third Bank and to determine whether resulting settlement was conducted in good faith.

(f) The Disclosure Statement contains a discussion of "voidable title" (Disclosure Statement at pp. 75-84) that favors Fifth Third Bank, which is false and one-sided. The Disclosure Statement should be rewritten to present both sides of the issue equally and without favoring one position over the other.

(g) Perhaps the most egregious misrepresentation in the Disclosure Statement concerns the statements made related to the $4,700,000 of cash subject to a forfeiture action styled *U.S.A. v. Contents of Accounts*, Case No. 3:11 CV-233-H (W.K. Ky. 2012) (the "Forfeiture Funds"). In the chart attached as part of paragraph 4 on page 13 of the Disclosure Statement, the Trustee projects having the Forfeiture Funds paid into the Estate and used primarily to repay the $2,000,000 DIP Loan the Debtor owes to Fifth Third for professional fees and other professional fees. The Trustee's "projection" on the Forfeited Funds is, however,

7

directly contradicted by the Trustee's testimony in his August 3, 2012, Deposition (Knauer Deposition, Part II, at pp. 61-70) where the Trustee testified that: (1) "The Estate will not distribute any of the Forfeiture Funds." Knauer Deposition at p. 63; (2) "The [Forfeiture Funds] is not going to come into the bankruptcy estate." Knauer Deposition at p. 65; (3) "The Plan does not control what will happen to the Forfeiture Funds." Knauer Deposition at p. 66; (4) "Based upon our negotiations with the Justice Department, they have not been willing to turn ownership of the money for direct distribution . . . " Knauer Deposition at p. 69. Therefore, there is no factual basis for the Trustee's claims that the Forfeiture Funds will be part of the Estate.

<u>Missing and Incomplete Disclosures</u>

21. "A disclosure statement that omits material facts cannot be approved." *In re Unichem Corp.,* 72 B.R. 95, 98-100 (Bankr. N.D. Ill. 1987) *aff'd* 80 B.R. 448 (N.D. Ill. 1987). As there are numerous instances of missing and incomplete information in the Disclosure Statement, the Court cannot approve it.

22. Specifically:

    (a) The Trustee and FBD's representation of the Bank Group that has adverse interests to the Estate must be fully disclosed in the Disclosure Statement in order to allow creditors to make informed decisions. The Disclosure Statement does not disclose that Wells Fargo was a significant client of Trustee's law firm at the time the Trustee was appointed in this case and that the Trustee did not disclose that fact to the Court. The Disclosure Statement also fails to disclose that Wells Fargo was a significant client of FBD, and that FBD did not disclose this representation until August, 2012. The Disclosure Statement also fails to fully disclose the terms of Fifth Third Bank's e-mail waiver.

    (b) The Disclosure Statement must disclose that Wells Fargo is a $10,000,000 participant in the Fifth Third allowed claim and will be significantly benefited by the Plan.

    (c) The Disclosure Statement does not fully disclose the

requests to remove the Trustee.

(d) The Disclosure Statement should also fully disclose objections to Trustee's Report and fully explain the grounds for those objections, and should disclose that the Court has ordered the Trustee and FBD not to seek compensation for all matters relating to the non-disclosure dispute.

(e) The Disclosure Statement should disclose the two-year statute of limitations on direct actions against Fifth Third Bank, which, due to the Trustee's delay in investigating the Estate's claims against Fifth Third Bank, has nearly expired.

(f) The Disclosure Statement is vague as to what "claims" are being released through the Plan and should be modified to clearly define and explain these released "claims," including, but not limited to, explaining the impact of *Matter of Energy Co-Op, Inc.*, 866 F.2d 921 (7th Cir. 1989)(definitions of what claims are property of the estate).

(g) The Disclosure Statement contains no disclosure or explanation as to how the Trustee and FBD arrived at the estimated projections of any amounts in the chart on page 13 of the Disclosure Statement, including the amount of Fifth Third Bank's "secured" claim and unsecured deficiency.

(h) The Disclosure Statement fails to fully disclose that, in the event the Trustee is allowed access to the Forfeited Funds, these funds would be used primarily to pay FBD and Trustee's fees, and that there is no promise by the Bank Group to give up claims to these funds, and whether there are any claims to Forfeited Funds.

(i) The Disclosure Statement should describe in detail the nature of any "claims" to the Forfeited Funds that have been or may be asserted by Fifth Third, and the estimated value of any such claims.

(j) The Disclosure Statement fails to describe to what extent (if any) alleged claims of the estate against Superior and other parties in interest have been included in the valuation of Fifth Third collateral for purposes of the Trustee's "improvement in position" analysis relating to Fifth Third.

(k) The Disclosure Statement must clearly indicate that

9

    $3.3MM of funds in the Recovery Fund will be used to repay the $2.0 million Fifth Third Bank loan (which was used to pay professionals) and another $1.3MM of funds to pay other professional fees rather than allocating all funds in the Recovery Fund for the benefit of all creditors of Debtor's estate. *See* Disclosure Statement at p. 13.

(l) The Plan and Disclosure Statement are inconsistent. Under the Plan, "Opt In Claims" are defined in Section 2.68 as allowed claims of opt in creditors "reduced to the extent the applicable Opt In Creditor has received Bond Monies or Restitution Payments." However, the Disclosure Statement states on page 11 that total claims of all creditors will be reduced by any payment "from ELC's bond, the funds seized by the United States Attorney (the Gibson bank accounts), restitution monies from the settlement of criminal charges against officers of ELC, or lawsuits against third parties."

(m) The Disclosure Statement fails to clearly disclose that those creditors who choose to "opt-in" to the Fifth Third Bank settlement will be required to give up a part of their recovery from their independent claims against Fifth Third Bank, the Trustee and FBD to the Estate for administration expenses. "Opt-in" creditors will also be required to pay a portion of fees and expenses incurred during the receivership, even though the collateral received by the Bank Group during the receivership is not included in the "Collateral Fund."

(n) The Disclosure Statement does not clearly explain that there is no correlation between value of individual claims being released to "opt-in" and the benefits creditors may receive by opting in. The required release of the Bank Group, Trustee, FBD and other professionals is effective regardless of the amount of creditors' claims in the bankruptcy and regardless of whether creditors' bankruptcy claims are ever allowed by the Court.

(o) The Disclosure Statement should specifically disclose that estimates of percentage recoveries assume that well over half of the filed claims will be disallowed.

(p) The Disclosure Statement must clearly indicate that the Bank Group is the principal beneficiary under the Plan.

(q) The Disclosure Statement's characterization that the Debtor

10

only defrauded Fifth Third Bank is inaccurate and deeply flawed. Disclosure Statement at pp. 22-24. The Disclosure Statement must be modified and indicate that from late 2009 to early 2010, all Debtor transactions were a part of a kiting fraud criminal enterprise and that fraud was committed on numerous people in the cattle industry, including Fifth Third Bank and Wells Fargo Bank. Federal indictments, state court guilty pleas, and the Court's findings in connection with the constructive trust ruling support a conclusion of Debtor's fraud.

(r)  Footnote 12 of the Disclosure Statement states that "[a]ll of the loan documents related to Fifth Third's financing of ELC's operations are collected and available in a database maintained by the Trustee" and that access to these documents is available on a database maintained by the Trustee. Disclosure Statement at p. 20. The Disclosure Statement fails to disclose, however, that Fifth Third Bank is actively trying to prevent use of these discoverable documents by improperly claiming that they are confidential. The Disclosure Statement must be modified to reflect the truth about these documents.

(s)  Footnote 9 of the Disclosure Statement provides that "[t]he Trustee has not found any substantial evidence that, in the Trustee's opinion, would support a finding that Fifth Third was a participant in ELC's fraud." Disclosure Statement at p. 9. This footnote is not true and should be rewritten to note that the Trustee found significant evidence that Fifth Third Bank knew of and allowed the Debtor to continue with the check kite operation. Trustee's Report at ¶ 15. Further, there should be full disclosure of the "refer to maker" designation decision. In its current form, footnote 9 is nothing more than a gratuitous statement given for no consideration that could essentially prevent most actions by the Estate against the Bank Group.

(t)  The Disclosure Statement contains a misleading description of the Superior litigation. In order to comply with the disclosure statement standard in 11 U.S.C. §1125, the Disclosure Statement must clearly explain the forward contract summary judgment pleadings and the Court's order in favor of Superior on this issue, finding that Superior's contracts with the Debtor constituted forward contracts under the Bankruptcy Code. The Disclosure Statement must accurately assess the impact of such a ruling and state a realistic projection regarding each party's

11

<blockquote>

(u) The Disclosure Statement must clearly disclose the nature of the disputed cattle sale proceeds currently held in escrow and describe in detail the various claims of ownership to those proceeds. Disclosure Statement at pp. 38-39.

(v) The Disclosure Statement must correct its analysis of the consideration given to the Estate in exchange of its release of the Bank Group as the Bank Group is not giving any value for the Estate's release of its claims.

(w) The Disclosure Statement fails to provide an impartial discussion of all claims of Debtor's estate. The Disclosure Statement should be modified to either (1) state that the Debtor's estate "might" have a claim against the "Objectors;" or (2) state and provide significant factual details supporting that the Estate will bring all available causes of action against the Bank Group; and (3) detail the fraud, breach of fiduciary duty, and malpractice claims against the Trustee and FBD.

(x) The Disclosure Statement fails to disclose all claim objections the Estate intends to file against holders of claims. The Disclosure Statement should also identify these specific holders of "objectionable" claims as this disclosure will have an impact on whether these holders of claims will vote in favor of the Plan.

(y) The Disclosure Statement fails to disclose any suits the Estate intends to file against creditors of the Estate. The Disclosure Statement should also identify these creditors as this disclosure will have an impact on whether these creditors will vote in favor of the Plan.

</blockquote>

<u>Inadequate Disclosure of the Settlement with the Bank Group</u>

23. Neither the Plan nor the Disclosure Statement adequately explains all of the benefits granted to the Bank Group under the Plan.

24. The Plan appears to give the Bank Group: (a) a security interest in recoveries that are deemed to be part of the Bank Collateral (an undefined term under the Plan); (b) an ownership to all funds that do not fall under the definition of Recovery

Fund, including all recoveries through lawsuits other than those under 11 U.S.C. §§ 545, 547 and 553(b); (c) repayment of the Bank Group cash collateral use and DIP Loan; (d) an interest to the Forfeiture Funds seized by the Justice Department (despite the fact that the Trustee has separately indicated that the Bank Group would give up any interest these funds as part of the settlement) (collectively, the "Benefits"). From a review of applicable law, it appears to be extremely unlikely that Fifth Third Bank has any claim to the Forfeiture Funds.

25. Moreover, the Disclosure Statement does not disclose Trustee's and FBD's individual financial incentives for entering into the settlement with the Bank Group and proposing the Plan (the "Incentives"). Specifically, the likelihood that the fees incurred by the Trustee and FBD would be paid is close to zero absent some agreement by the Bank Group, and the fact that the Trustee and FBD are granted a waiver of Creditor and Estate claims against the Trustee and his professionals.

26. The Trustee and FBD have been paid over $2,000,000 in fees under the terms and conditions of a financing order among the Bank Group and the Estate, the Trustee and FBD. The financing order directly bars the Trustee and FBD from receiving any fees from in connection with any claim or other litigation asserted against Fifth Third Bank. *See* Doc. No. 400 at pp. 12-13.

27. Further, in the event that the Plan is not confirmed, the Estate may become administratively insolvent, making it difficult, if not impossible, for the Trustee, FBD and other professionals to recover $6,000,000 in professional fees incurred to date. *See e.g* Doc. No. 1327 at pp. 14, n. 9, Response of FBD to Renewed Objection to Application to Employ (Discussing the possibility of administrative insolvency if litigation is

commenced against Fifth Third Bank).

28.     Failure to openly disclose the benefits and the Incentives in the Disclosure Statement violates the disclosure statement standard set forth in 11 U.S.C. §1125. Without knowing the extent and nature of the benefits and the Incentives given to the Trustee and his professionals by the Bank Group in order to agree to the Plan, creditors cannot make informed decisions as to whether to accept or reject the Plan. Therefore, the Court should not approve the Disclosure Statement.

<u>Improper Party Releases</u>

29.     It is well-settled in the Seventh Circuit that non-consensual releases of third parties are only permitted in very limited circumstances. *See In re Airadigm Communications, Inc.*, 396 B.R. 747, 755 (W.D. Wis. 2007), *aff'd*, 519 F.3d 640 (7th Cir. 2008).

30.     The Plan provides a broad release of the Bank Group by the Debtor (the "Debtor's Release of Bank Group").  The Plan, however, fails to expressly prevent the Bank Group from asserting Debtor's Release of Bank Group as a defense to any claim against it brought by third parties, which constitutes an improper non-consensual release.

31.     Moreover, the exculpation provisions of the Plan grant full releases to the Trustee, FBD and other professionals for no consideration, which are also impermissible under the Bankruptcy Code. Trustee cites no case law that allows these blanket releases. Moreover, the Disclosure Statement provides no discussion about Trustee's ability to "release" claims that he states he is barred from bringing. At the very least, the release language must be drafted very narrowly and contain a carve-out exception for the "opt-out" creditors.

14

32. As there are no limited circumstances that would warrant non-consensual third party release being granted in this case, the Disclosure Statement as written should not be approved by this Court as the true extent of the Debtor's Release of the Bank Group is unknown.

## RESERVATION OF RIGHTS

33. Superior has numerous objections to the Plan, including but not limited to, that the Plan is not confirmable.

34. Though the issue of whether a plan is confirmable is generally addressed at confirmation, bankruptcy courts have refused to approve a disclosure statement when it becomes evident that the plan is not confirmable. *See In re Allied Gaming Management, Inc.,* 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("…notwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed."). Understandably, "…the estate should not be burdened (both in terms of time and expense) with going through the printing, mailing, noticing, balloting, and other exercises in the confirmation process where inability to attain confirmation is *fait accompli.*" *Id.*

35. The Plan in this case contains significant fatal defects. To name a just few, the Plan was not proposed in good faith, its distribution scheme is based on an incorrect analysis of the "improvement in position" test and the Plan distribution to holders of claims is less than the distribution these holders would receive in a Chapter 7 liquidation scenario. As the Plan violates 11 U.S.C. § 1129, the Plan cannot be confirmed.

36. The Court should, therefore, heed Trustee's advice advanced in several pleadings filed with the Court and prevent the waste of Debtor's estate's resources and

Trustee's valuable time and refuse to approve the Disclosure Statement. By refusing to approve the Disclosure Statement, the Court would "avoid engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

37. As stated above, the fact the Plan is not confirmable is just one of many objections that Superior has to the Plan. Superior hereby reserves the right to raise and address these and other objections at confirmation.

## CONCLUSION

38. Based on the foregoing, it is clear that the Court should not approve the Disclosure Statement because the Disclosure Statement (1) is inherently tainted because it was drafted for the benefit of the Bank Group rather than to provide adequate information to the entire creditor body; and (2) violates 11 U.S.C §1125 by failing to provide sufficient information to creditors to make informed decisions as to whether to accept or reject the Plan. Unless these fatal errors are corrected, the Court should not and cannot approve a tainted Disclosure Statement and allow the Plan process to continue.

WHEREFORE, Superior respectfully requests that the Court: (1) reject the Disclosure Statement; and (2) grant such further and additional relief as is just and proper under the circumstances.

Respectfully submitted,

/s/ *John W. Ames*
John W. Ames
C.R. Bowles, Jr.
Ivana B. Shallcross
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40402
Phone: 502-587-3656
Facsimile: 502-540-2211
E-mail: james@bgdlegal.com
          cbowles@bgdlegal.com
          ishallcross@bgdlegal.com

-AND-

/s/ *John M. Rogers*
John M. Rogers
Elliott Levin
Christopher M. Trapp
RUBIN & LEVIN, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN 46204
Phone: 317-634-0300
Email:  johnr@rubin-levin.net
          edl@rubin-levin.net
          ctrapp@rubin-levin.net

COUNSEL FOR SUPERIOR LIVESTOCK AUCTION, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2012 the foregoing was filed electronically. Notice of this filing was sent to all counsel of record through the Court's Electronic Case Filing System. Parties may access this filing through the Court's System.

/s/ *John W. Ames*
John W. Ames

4899956_2.docx