**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                              )        Chapter 11
                                    )
EASTERN LIVESTOCK CO., LLC,         )        Case No. 10-93904-BHL-11
                                    )
              Debtor.               )

**TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

Proposed by:  James A. Knauer, Chapter 11 Trustee for Eastern Livestock Co., LLC

Date:   October 26, 2012

Counsel for James A. Knauer, Chapter 11 Trustee:

FAEGRE BAKER DANIELS, LLP
James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)
Harmony Mappes (#27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com

Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

HOOVER HULL LLP
John David Hoover (#7945-49)
Sean T. White (#20428-49)
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400
Facsimile: (317) 822-0234
jdhoover@hooverhull.com
swhite@hooverhull.com

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

**ARTICLE I** Rules of Interpretation and Computation of Time ................................ 2

**ARTICLE II** Definitions ........................................................................................ 3

**ARTICLE III** Payment of Non-Voting Administrative Claims and Priority Tax Claims ...... 13

**ARTICLE IV** Classification and Treatment of Voting Claims and Interests ........................ 13

**ARTICLE V** Voting on the Plan .......................................................................... 15

**ARTICLE VI** Implementation of the Plan ............................................................ 15

**ARTICLE VII** Effects of Plan Confirmation and the Occurrence of the Effective Date ....... 21

**ARTICLE VIII** Treatment of Executory Contracts ................................................ 23

**ARTICLE IX** Retention of Jurisdiction ................................................................ 23

**ARTICLE X** Miscellaneous Issues ...................................................................... 24

## <u>INTRODUCTION</u>

James A. Knauer, as the chapter 11 trustee ("Trustee"), proposes this chapter 11 plan (the "Plan") providing for the liquidation of the assets of the estate of Eastern Livestock Co., LLC ("ELC" or "Debtor"), resolution of claims by and against ELC, and distributions to allowed claims.  The Trustee is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

~~The Plan provides for distributions to all allowed claims and further provides for all of the property of the Debtor (largely claims assertable by the Trustee against various parties) to be liquidated over time, and for the proceeds to be distributed to the holders of allowed claims.  The Plan also provides to those unsecured creditors who "opt in" a pro rata share of up to twenty percent (20%) of the senior secured creditor's net collateral recovery.~~

The Plan distributes to the holders of allowed claims the sum of (1) the liquidated value of the property of the estate and (2) monies paid by Fifth Third Bank in settlement of the estate's claims against it. The Plan further offers to the holders of allowed unsecured claims, the option of settling their individual claims, if any, against Fifth Third and sharing in a pro rata distribution of additional funds payable by Fifth Third to the settling creditors.  The Plan further provides for the payment of the administrative expenses to liquidate and distribute the assets of the Debtor's estate.

Since the filing of the first Disclosure Statement on July 23, 2012, the Trustee has negotiated settlements with certain parties that have asserted large claims in the chapter 11 case, specifically, Superior Livestock Auction LLC ("Superior"), The First Bank & Trust ("First Bank") and certain Texas feedlots ("Texas Feedlots").  These settlements result in the reduction of total claims against the estate as well as resolution of expensive litigation that will allow the chapter 11 case to move forward to distributions to creditors sooner.  These proposed settlements are described in more detail in the First Amended Disclosure Statement For Trustee's First Amended Chapter 11 Plan of Liquidation accompanying this Plan.    To the extent that the respective Settlement Agreements differ from the summaries herein or in the Disclosure Statement, the Settlement Agreements control.

The proposed settlement with Superior resolves Superior's claims against the Estate and the Trustee's claims against Superior.  In addition Superior and Fifth Third will mutually release each other. Under the settlement, the Trustee will release the Estate's claims against Superior and Superior shall be allowed to retain certain monies that Superior collected prior to the Petition Date that the Trustee disputed and shall receive a final payment of $279,000 from the collateral funds claimed by Fifth Third.  In consideration of the Trustee's release and payment, Superior shall withdraw all of its objections in the Chapter 11 Case and release and waive all of its claims and defenses asserted or assertable in the Chapter 11 Case and release and waive all of its claims against Fifth Third.  This settlement will allow significant monies held by the Trustee or that are subject of interpleader actions to become available for distribution as proposed in the Plan.  In further consideration, Superior shall also receive the benefit of the releases given by creditors that choose to "opt in".

1

The proposed settlement with First Bank resolves First Bank's claims against the Estate for a payment to First Bank of $350,000 and a mutual release of claims by the Trustee and First Bank.  Upon the approval of the proposed settlement, First Bank will assign its claims to the Trustee and will withdraw its objections and claims.  In addition, First Bank and the Trustee will work towards an agreement with the US Attorney's office to distribute the monies seized from a bank account of Tommy Gibson (see below) to the creditor/victims of the ELC Estate and the chapter 7 estate of Tommy Gibson.

The settlement with the Texas Feedlots allows the setoff of certain claims by the plaintiffs in the interpleader actions discounted by five percent against funds in the interpleaders and allows a general unsecured claim against the estate for the discount.

Some of the money projected to be distributed under the Plan is in the possession of the United States Attorney's Office for the District of Kentucky (the "US Attorney") under a seizure order issued against an account held in the name of Thomas and Patsy Gibson at Your Community Bank.  These funds total approximately $4.7 million.  The Trustee is in the process of securing an agreement with the bankruptcy trustee for the Gibsons and the US Attorney for the distribution of the seized funds to creditors of ELC and of Tommy Gibson that were victims of the fraud perpetrated by Tommy Gibson.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a claim until such time as the Disclosure Statement has been approved by the Court and distributed to holders of claims entitled to vote on the Plan.  ALL SUCH HOLDERS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Trustee reserves the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

## <u>ARTICLE I</u>

### <u>Rules of Interpretation and Computation of Time</u>

1.1     <u>General</u>.  For purposes of this Plan, except as expressly provided, all capitalized terms not otherwise defined shall have the meanings given them in Article II of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in

such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (f) all references in this Plan to Articles and Exhibits are references to Articles and Exhibits of or to this Plan; (g) the words "herein," "hereof," "hereunder" and "hereto" unless limited by further reference refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  A period described as a number of "days" (as opposed to "Business Days") means calendar days.

All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not attached hereto, such Exhibits shall be filed with the Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits may be obtained upon request to Trustee's counsel or by downloading such exhibits from the Court's website (http://www.insb.uscourts.gov) or the Trustee's Blog.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-Exhibit portion of the Plan shall control.

## **ARTICLE II**

### Definitions

2.1   "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to order of the Court or Section 507(a)(1), 507(b) or 1114 (e)(2) of the Bankruptcy Code and includes, without limitation, (a) Fifth Third's Claim for repayment of the Trustee Loan, (b) Professional Fee Claims, (c) the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate, liquidating assets and prosecuting causes of action, including without limitation wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case and (d) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

2.2   "Recovery Expenses Pro Rata Application" means the percentage charged to each of the Collateral Fund and the Recovery Fund for the payment of Allowed Recovery Expenses. Each such percentage is calculated by dividing each of the Collateral Fund and the Recovery

3

~~Fund by the sum of the Collateral Fund plus the Recovery Fund.~~ "Affiliates" has the meaning given such term by Section 101(2) of the Bankruptcy Code.

2.3     "Allowed" means, with respect to a Claim, any Claim, proof of which was timely and properly filed as to which no objection to allowance has been filed on or before any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Court, or as to which any objection has been determined by a Final Order determining the amount and characterization of the Claim.  If no objection to a Claim has been filed not less than five (5) business days before the Voting Deadline, then the Claim will be Allowed solely for purposes of voting on the Plan but without prejudice to any later filed objection.  Unless otherwise specified in the Plan, the Bankruptcy Code or by order of the Court, an "Allowed Claim" shall not, for purposes of computation and distributions under the Plan, include any interest on such Claim from and after the Petition Date.

2.4     "Allowed Class . . . Claim" or "Allowed Class . . . Interest" means an Allowed Claim or an Allowed Interest in the specified Class.

2.5     "Allowed Secured Claim of Fifth Third" means that portion of the Fifth Third Allowed Claim that is Allowed as Secured under paragraph 10.C of the Financing Order.

2.6     "Ballot" means the forms mailed to the Holders of Claims for the purpose of voting to accept or reject the Plan.

2.7     "Bank" means Fifth Third Bank.

2.8     "Bankruptcy Causes of Action" means all turnover, avoidance and/or preference actions arising under Sections 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

2.9     "Bankruptcy Code" means title 11 of the United States Code as amended from time to time and as applicable to the Chapter 11 Case.

2.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as amended from time to time as applicable to the Chapter 11 Case, including the local orders of the Court.

2.11    "Bar Date Order" means the order entered by the Court on March 31, 2011, establishing the Bar Date(s).

2.12    "Bar Date(s)" means the deadlines set by the Court under the Bar Date Order for filing proofs of Claim or Interests in the Chapter 11 Case.  The Bar Date for all non-governmental claims was May 2, 2011.  The Bar Date for governmental claims was June 30, 2011.

2.13    "Bond Monies" means the proceeds of that certain GIPSA bond administered by James A. Knauer as trustee on behalf of the United States.

4

2.14    "Business Day" means any day, excluding Saturdays, Sundays and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are generally open for business in New Albany, Indiana.

2.15    "Cash" means cash and cash equivalents and other readily marketable securities or instruments.

2.16    "Cattlemen's Purchased Interests" means the assets purchased by Cattlemen's Feedlot Ltd. from Okie Farms, LLC pursuant to that certain Partnership Interest Purchase Agreement executed on or around January 6, 2012.

2.17    "Causes of Action" means any and all claims, counter-claims, demands, rights, actions, suits obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever acquired by Debtor, the Estate and/or the Trustee, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on or after the Petition Date or in tort, in law or in equity, or under any theory of law and includes Bankruptcy Causes of Action.

2.18    "Chapter 11 Case" means the Chapter 11 Case of the Debtor pending in the Court and captioned as In re Eastern Livestock Co., LLC, Case No. 10-93904-BHL-11.

2.19    "Claim" has the definition given it in Section 101(5) of the Bankruptcy Code.

2.20    "Claims Objection Deadline" means the later of (a) one hundred twenty (120) days after the Effective Date and (b) within sixty (60) days after such Claim is deemed timely filed and served on counsel for Trustee.  The Trustee may request and the Court may order the extension of any Claims Objection Deadline.

2.21    "Class" means any group of substantially similar Claims or Interests classified by the Plan pursuant to Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

2.22    "Collateral Fund" means the proceeds of the Trustee's collection, sale or other disposition of all BankFifth Third Collateral.

2.23    "Confirmation" means the entry of the Confirmation Order.

2.24    "Confirmation Date" means the date of entry on the Court's docket of the Confirmation Order.

2.25    "Confirmation Hearing" means the hearing before the Court held to consider confirmation of the Plan and related matters under Section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.26    "Confirmation Order" means the order entered by the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.27    "Court means the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division.

5

2.28    "Debtor" means Eastern Livestock Co., LLC.

2.29    "Disallowed Claim" or "Disallowed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date applies but no proof of claim or interest was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Court, (c) is not Scheduled and as to which a Bar Date applies but no proof of claim or interest has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court, or (d) the Holder of the Claim has property that is recoverable or is the transferee of a transfer that is avoidable under Section 502(d).

2.30    "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, modified or supplemented from time to time.

2.31    "Disputed Claim" or "Disputed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest or a Disallowed Interest, as the case may be, and includes, without limitation, Claims or Interests that are the subject of an objection filed with the Court, which has not been withdrawn or overruled by a Final Order of the Court.

2.32    "Disputed Claims Reserve" means the account to be established by the Trustee as of the Effective Date to hold Cash reserved for the payment of Disputed Claims.

2.33    "Distribution Date(s)" means each of January 1, April 1, July 1 and October 1 on and after the Effective Date when there is no less than $500,000 in Distribution Funds in the Trustee's operating account.  The Final Distribution shall not be subject to the $500,000 floor.

2.34    "Distribution Funds" means the Net Collateral ~~Funds~~Fund and the Net Recovery ~~Funds~~Fund.

2.35    "Escrow Fund" means certain monies derived from the sale of cattle and held by the Trustee pursuant to an order of the Court that are subject to unresolved disputes asserted by Other Creditors.  When such disputes are resolved, the monies will be transferred to the Operating Account for Distribution.

~~2.35~~2.36    "Effective Date" means the date set forth in a ~~filed~~ "Notice of Effective Date" filed with the Court by the Trustee on or after the Confirmation Date.

~~2.36~~2.37    "ELC" means Eastern Livestock Company, LLC, the Debtor.

~~2.37~~2.38    "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

~~2.38~~2.39    "Estate" means the bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

2.39 2.40    "Executory Contracts" means all contracts and leases of both real and personal property existing as of the Petition Date which have not expired or been terminated by their own terms and performance, in whole or in part, remains by both parties.

2.40 2.41    "Exhibit Filing Date" means the date on which Exhibits to the Plan shall be filed with the Court, which date shall be no fewer than ten (10) days prior to the Voting Deadline, unless a later date is approved by the Court.

2.41 2.42    "Exhibit" means an exhibit annexed or to be annexed to this Plan, as it may be amended.

2.42 2.43    "Face Amount" means the amount of a filed Proof of Claim or if no Proof of Claim has been filed, the amount scheduled in the Schedules and is not marked contingent, unliquidated and/or disputed.

2.43 2.44    "Fifth Third" means Fifth Third Bank.

2.44 2.45    "Fifth Third Allowed Claim" means the Claim asserted by Fifth Third against the Estate in the amount of $35,833,415.02, as allowed in the Financing Order at paragraph 10.c.

2.45 2.46    "Fifth Third Collateral" means all property of the Estate determined to be subject to a valid security interest or lien securing the Allowed Secured Claim of Fifth Third and further including, without limitation, any Property, the cash proceeds thereof or the value thereof of any transfers avoided or recovered via Sections 542, 543, 544, or 548 of the Bankruptcy Code, but only as provided in paragraph 10 of the Financing Order.

2.46 2.47    "Fifth Third Deficiency Claim" means that portion of the Fifth Third Allowed Claim that remains unpaid after crediting all distributions to Fifth Third of Net Collateral Funds Fund and all non-Estate Property recovered by Fifth Third from third parties on account of the Fifth Third Allowed Claim (including without limitation net insurance proceeds received by Fifth Third from policies on the life of Thomas Gibson or others collaterally assigned to Fifth Third).

2.47    "Fifth Third Claim Settlement Monies Fund" means that portion of the Net Collateral Fund payable Pro Rata to the Holders of Allowed Class 4 Claims who are Opt In Creditors pursuant to Section 6.1 of the Plan.

2.48    ". The Fifth Third Claim Settlement Fund is calculated by multiplying the Net Collateral Fund by the Fifth Third Claim Settlement Percentage" means (a) twenty percent (20.

2.49    "Fifth Third Estate Settlement Fund" means that portion of the Net Collateral Fund multiplied by the Fifth Third Estate Settlement Percentage and payable Pro Rata to the Holders of Allowed Class 4 Claims.

2.48 2.50    "Fifth Third Claim Settlement Percentage" means, (a) ten percent (10 %) multiplied by (b) a fraction (i) whose numerator is the total dollar amount of Allowed Opt In Claims and (ii) whose denominator is the total dollar amount of Allowed Class 4 Claims

excluding the Fifth Third Deficiency Claim. ~~The Fifth Third Settlement Percentage may be adjusted from time to time in accordance with the provisions of Section 6.5 of this Plan.~~

2.51    "Fifth Third Estate Settlement Percentage" means ten percent (10%).

~~2.49~~2.52    "Final Distribution" means the distribution of all remaining Property on the Termination Date pursuant to Section 6.4 of the Plan.

~~2.50~~2.53    "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing or move for a new trial has expired, and as to which no appeal or petition for review, reargument, rehearing or proceeding for a new trial was timely filed or, if timely filed, remains pending.

~~2.51~~2.54    "Financing Order" means the Financing Order (I) Approving Chapter 11 Trustee Financing; (II) Authorizing Use Of Cash Collateral And Obtaining Credit Pursuant To Sections 361, 363 and 364 Of The Bankruptcy Code; (III) Modifying The Automatic Stay; (IV) Providing Adequate Protection; And (V) Sealing Certain Documents entered by the Court as Docket Number 400 on March 18, 2011.

~~2.52~~2.55    "General Unsecured Claim" means a Claim against the Debtor that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Non-Tax Priority Claim.

~~2.53~~2.56    "GIPSA" means the Grain Inspection and Packers and Stockyards Administration of the United States Department of Agriculture.

~~2.54~~2.57    "Holder" means a Person or Entity having an Interest or Claim.

~~2.55~~2.58    "Impaired" refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

~~2.56~~2.59    "Initial Distribution" means a partial distribution to be made pursuant to and as provided by the Plan on or before first Distribution Date to occur after one hundred twenty (120) days following the Effective Date, in amounts as large as is reasonably feasible (within the Trustee's reasonable discretion)  while still maintaining adequate reserves to administer the remainder of the Chapter 11 Case, reserves for Disputed Claims, and allow for the "true up" of distributions as described in the Plan.

~~2.57~~2.60    "Initial Estimates" means the estimates filed with the Court by the Trustee no later than sixty (60) days after the Effective Date that estimate the total dollar amounts of the Allowed Opt In Claims, the Allowed Opt Out Claims, the Allowed Fifth Third Deficiency Claim, the Fifth Third Settlement Percentage, and the Recovery Expenses Pro Rata Application percentages, as such estimates may be updated and amended by subsequent filings.  The Initial Estimates shall be subject to the Disputed Claims Reserve.

~~2.58~~2.61    "Initial Recovery Expense Percentage" means the initial Recovery Expense Pro Rata Application percentage proposed by the Trustee as part of the Initial

Estimates.  The Initial Recovery Expense Percentage shall apply to calculate the percentage of Allowed Recovery Expenses to be charged to each of the Collateral Fund and Recovery Fund from and after the Effective Date until a change in percentage is proposed to the Court by the Trustee on a "true up" basis.  Changes may be proposed by the Trustee from time to time to reflect the updated projections and calculations of the relative pro rata shares to be charged to the Collateral Fund and the Recovery Fund.

2.62    "Interpleader Actions" means the adversary proceedings filed in the chapter 11 case under Adversary Proceeding Nos. 11-59093 (Texas), 11-59108 (Colorado), 11-59098 (Kansas), and 11-59104 (Wisconsin) that originated as interpleader actions in Texas, Colorado, Kansas, and Wisconsin and were the result of certain buyers of cattle from ELC interpleading the payments due on the cattle purchases on and after the cessation of business by ELC.

2.59 2.63    "Interest" means the rights and interests of the Holder of any equity security, including options or warrants to purchase equity securities, stock appreciation rights or other rights to purchase or deliver in exchange for equity securities, including preferred stock, options or warrants to purchase or otherwise acquire the same and any Claims arising out of the purchase and sale of any such securities.

2.60 2.64    "Net Collateral Funds Fund" means monies distributable from time to time from the Collateral Fund after payment of its portion of the Pro Rated Recovery Expenses.

2.61 2.65    "Net Recovery Funds Fund" means monies distributable from time to time from the Recovery Fund after the Recovery Fund has paid the Trustee Loan and its portion of Pro Rated Recovery Expenses.

2.62 2.66    "Non-Tax Priority Claim" means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than a Priority Tax Claim, a Professional Fee Claim, or an Administrative Claim.

2.63 2.67    "Okie Purchase Proceeds" means the sale proceeds received by Okie from the sale of the Cattlemen's Purchased Interests.

2.64 2.68    "Okie" means Okie Farms, LLC.

2.65 2.69    "Opt In Agreement" means the agreement in substantially the form attached to the Plan as Exhibit A that must be executed by an Other Creditor and delivered to the Trustee on or before the Opt In Deadline in order for the Other Creditor to become an Opt In Creditor and therefore eligible to receive distributions from the Fifth Third Settlement Monies. Pursuant to the Opt In Agreement, and as consideration for the Fifth Third Settlement Monies, the Other Creditor agrees to release Fifth Third as described in Section 7.3 of the Plan.

2.66 2.70    "Opt In Agreement Instructions" means the instructions to accompany the Opt In Agreement for mailing to all Class 4 Creditors and attached to the Plan as Exhibit B.

2.67 2.71    "Opt In Claims" means the total of the Allowed Claims of Opt In Creditors.  Opt In Claims will be reduced to the extent the applicable Opt In Creditor(s) has received Bond Monies or Restitution Payments.

2.68~~2.72~~     "Opt In Creditor" means each of the Other Creditors who executes and delivers an Opt In Agreement to the Trustee on or before the Opt In Deadline and thereby voluntarily elects to release, discharge and waive Third Party Claims against Fifth Third in exchange for the right to receive distributions from the Fifth Third Settlement Monies, all as described in Sections 5.1 and 6.2 of the Plan.

2.69~~2.73~~     "Opt In Deadline" means thirty (30) days following the Confirmation Date.

2.70~~2.74~~     "Opt Out Claims" means the total of Allowed Claims of Other Creditors who are not Opt In Creditors.  Opt Out Claims will be reduced if and to the extent the applicable Opt Out Creditor receives Bond Monies or Restitution Payments.

2.71~~2.75~~     "Opt Out Creditors" means each of the Other Creditors who are not Opt In Creditors.

2.72~~2.76~~     "Other Creditor" means each of the creditors that hold an unsecured Allowed Class 4 Claim against the Estate and/or Property of the Estate that is not Fifth Third.

2.73~~2.77~~     "Person" has the meaning ascribed to it by Section 101(41) of the Bankruptcy Code.

2.74~~2.78~~     "Petition Date" means December 6, 2010.

2.75~~2.79~~     "Plan" means this chapter 11 plan, including all Exhibits, supplements, amendments, appendices and schedules hereto, either in their present form or as the same may be later filed or further altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

2.76~~2.80~~     "Priority Tax Claim" means a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.77~~2.81~~     "Pro Rata" means, at any time, the proportion which the amount of an Allowed Claim bears to the sum of the amounts of all Allowed Claims in the relevant group.

2.78~~2.82~~     "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred, relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

2.79~~2.83~~     "Professional" means those Persons retained in the Chapter 11 Case by separate Court orders pursuant to Sections 327 and 1103 of the Bankruptcy Code or otherwise.

2.80~~2.84~~     "Property" subject to the Plan means all property of the Estate as contemplated by Section 541 of the Bankruptcy Code, including all Retained Actions. For purposes of determining distributions under the Plan, Property shall include, without limitation, the Okie Purchase Proceeds and YCB Monies.

2.81**2.85**        "Recovery Expenses" means all Administrative Claims net of the Trustee Loan and the Carve-Out.

2.82**2.86**        "Recovery Expenses Pro Rata Application" means the percentage charged to each of the Collateral Fund and the Recovery Fund for the payment of Allowed Recovery Expenses.  Each such percentage is calculated by dividing each of the Collateral Fund and the Recovery Fund by the sum of the Collateral Fund plus the Recovery Fund.

2.83**2.87**        "Recovery Fund" means any Property, cash proceeds thereof or value thereof of any Property that is not Collateral Fund property, including without limitation, YCB Monies and any transfers avoided or recovered via Sections 545, 547, or 553(b) of the Bankruptcy Code, and any recoveries that are not deemed to be part of the Bank Collateral pursuant to paragraphs 7c.(i) and 10.c. of the Financing Order.

2.84**2.88**        "Restitution Payments" means payments to certain Holders of Allowed Class 4 Claims from persons convicted of crimes and pursuant to restitution orders.

2.85**2.89**        "Retained Actions" means all Causes of Action which the Estate may hold against any Person (other than Fifth Third), including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (c) any Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, and (e) all Bankruptcy Causes of Action.

2.86**2.90**        "Schedules" means the schedule of assets and liabilities and the statement of financial affairs filed in the Chapter 11 Case by the Trustee as such schedule or statement has been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Court.

2.87**2.91**        "Secured Claim" means an Allowed Claim secured by a binding, enforceable, perfected security interest in or lien upon Property of the Estate to the extent of the value of such security interest or lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Trustee and the Holder of such Claim.

**2.92**     "Superior" means Superior Livestock Auction, LLC.

**2.93**     "Superior Settlement" means the agreement among Superior, the Trustee and Fifth Third, as approved by the Court, described in the Introduction and in the Disclosure Statement more particularly described in a formal Settlement Agreement.

2.88**2.94**        "Termination Date" means the date upon which the Trustee makes the Final Distribution pursuant to the terms of the Plan and files a notice of same.

2.89**2.95**        "Third Party Claim" is a claim held by an Other Creditor against Fifth Third, Superior and/or the Trustee that is independent of, and not held by, the Trustee or the Estate.  It does not include an asserted and filed claim that an asset is not property of the Estate.

2.902.96_____ "Third Party Release" means the written and fully executed release, discharge and waiver by an Other Creditor of any and all Third Parties Claims against the Trustee and Fifth Third., Fifth Third and Superior.  Any Opt In Creditor asserting that an asset is not property of the Estate shall formally assert such claim prior to the deadline for executing and delivering an Opt In Agreement.  If such claim is not timely and formally filed, any such claim is waived and released against the Estate.

2.912.97_____ "Trustee Blog" means the website established by the Trustee for the benefit of creditors and parties in interest of this Chapter 11 Case and maintained at www.easternlivestockbkinfo.com

2.922.98_____ "Trustee Carve-Out" means the payment of up to $2 million from the liens securing the Secured Claim of Fifth Third allowed to be used by the Trustee for costs of administering the Estate, including paying Professional Fee Claims, pursuant to the Financing Order.

2.932.99_____ "Trustee Loan" means the obligation of the Estate to repay from the Recovery Fund two million dollars ($2,000,000.00) to Fifth Third pursuant to the Financing Order.  Such repayment obligation is in addition to the payment obligations regarding the Fifth Third Allowed Claim.

2.942.100_____ "Trustee Release" means the release, discharge and waiver by the Trustee, for himself, as chapter 11 trustee, and on behalf of the Debtor and/or the Estate of any and all claims against Fifth Third.

2.952.101_____ "Unclaimed Distribution Reserve" means a paymentthe fund holding the returned Distribution(s) to an Allowed Claim under this Plan that is not negotiated or is unable to be delivered and as to which the proceduresadministered under Section 6.5 of the Plan.3(F).

2.962.102_____ "Voting Class" means a Class of Claims or Interests under this Plan that is entitled to vote to accept or reject the Plan.

2.972.103_____ "Voting Deadline" means _____ __, 2012, the date and time established by order of the Court for parties to submit their Ballots to accept or reject the Plan.

2.982.104_____ "YCB Monies" means Cash that is the subject of a civil forfeiture action commenced by the United States Attorney ("US Attorney") regarding funds in the Gibsons' account at Your Community Bank, Case No. 3:11CV-233-H, pending in the United States District Court, Western District of Kentucky at Louisville.  Under an agreement currently being negotiated with the United States Attorney, approximately $4 million of the YCB Monies will be cooperatively distributed to the Allowed Claims in Class 4 that are determined to be victim/creditors under the pending agreement.

# ARTICLE III

## Payment of Non-Voting Administrative Claims and Priority Tax Claims

3.1     Administrative Claims.  After repayment of the Trustee Loan from the Recovery Fund, each Holder of an unpaid Allowed Administrative Claim shall receive Cash from the Collateral Fund and the Recovery Fund according to the Recovery ~~Expense~~Expenses Pro Rata Application in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim.  If an Allowed Administrative Claim is a Professional Fee Claim, obligations of the Estate to pay such Allowed Professional Fee Claim shall not be released unless and until there is a Final Order determining all Professional Fee Claims of the professional.  On and after the Confirmation Order no Professional Fee Claims, Recovery Expenses, or Allowed Administrative Claims shall need to be classified in the "May Do/Must Do" categories required by the Financing Order.  Allowed Administrative Claims will be paid from the Trustee's operating account as authorized by the Court approving the Allowed Administrative Claim.

3.2     Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash on the Effective Date equal to the unpaid portion of such Allowed Priority Tax Claim, or (ii) such other treatment to which such Holder and the Trustee have agreed in writing.  The Trustee is not aware of any Priority Tax Claim that would become an Allowed Priority Tax Claim.

# ARTICLE IV

## Classification and Treatment of Voting Claims and Interests

4.1     Class 1:  Allowed Secured Claim of Fifth Third.  Class 1 consists of the Allowed Secured Claim of Fifth Third.

> Plan Treatment:  The Class 1 Allowed Secured Claim of Fifth Third shall be Allowed, settled, compromised and satisfied in full by payment to Fifth Third, as soon as reasonably practical and from time to time considering the Trustee's reasonable estimation of reserves, of all the Net Collateral ~~Funds~~Fund remaining after payment of the Fifth Third Settlement Monies to the Opt In Creditors through the Final Distribution.  Payment of the Allowed Class 1 Claim shall not exceed the Fifth Third Allowed Claim Amount less the Trustee Carve-Out.  The Holder of the Class 1 Claim shall retain its liens in the Fifth Third Collateral, other than Fifth Third Collateral liquidated and paid as part of the Fifth Third Settlement Monies and Allowed Administrative Expense Claims. Class 1 is Impaired under the Plan and the Holder of the Class 1 Claim is entitled to vote on the Plan.

13

    4.2   <u>Class 2:  Other Allowed Secured Claims</u>.  Class 2 consists of all Allowed Secured Claims other than the Allowed Secured Claim of Fifth Third.

> Plan Treatment:  In full and complete satisfaction and release of a Class 2 Claim, the Holder of an Allowed Class 2 Claim, shall receive, at the option of the Trustee, either  (i) the proceeds of the sale or disposition of the collateral securing the Allowed Class 2 Claim to the extent of the value of the Holder's Secured Claim in such collateral, net of the costs of disposition of such collateral, (ii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral, or (iii) such other treatment as the Trustee and the Holder of an Allowed Class 2 Claim may agree.  Class 2 is not Impaired under the Plan, is deemed to have accepted the Plan and is therefore not entitled to vote on the Plan.

    4.3   <u>Class 3:  Allowed Non-Tax Priority Claims</u>.  Class 3 consists of all Allowed Non-Tax Priority Claims.

> Plan Treatment: Each Holder of an Allowed Class 3 Non-Tax Priority Claim shall be paid in full by the Trustee from the Recovery Fund pursuant to Section 507(a) of the Bankruptcy Code, but without interest, as soon as practicable following the Effective Date or the date such Claim becomes an Allowed Class 3 Claim.  Class 3 is not Impaired under the Plan, is deemed to have accepted the Plan, and is therefore not entitled to vote on the Plan. The Trustee is not aware of any Class 3 Claims that may become an Allowed Class 3 Claim.

    4.4   <u>Class 4:  Allowed General Unsecured Claims</u>.  Class 4 consists of all Allowed General Unsecured Claims, including the Allowed Fifth Third Deficiency Claim, Allowed Opt In Claims and Allowed Opt Out Claims.

> Plan Treatment:  In full and complete satisfaction and release of a Class 4 Claim, the Holder of an Allowed Class 4 Claim shall receive its Pro Rata share of ~~the~~ Net Recovery ~~Funds.~~Fund and its Pro Rata share of the Fifth Third Estate Settlement Fund.  Each Holder of an Allowed Class 4 Claim (except Fifth Third) that chooses to have its Allowed Claim treated as an Opt In Claim by timely returning an executed Option Agreement by the Opt In Deadline, shall also receive a Pro Rata share of the Fifth Third Claim Settlement ~~Monies~~Fund.  Payments to Allowed Class 4 Claims (whether an Opt In Claim or not) shall be made on each Distribution Date, with the first payment to commence on the Distribution Date that is no less than one hundred twenty (120) days after the Effective Date.  Class 4 is impaired under the Plan

14

and Holders of Allowed Class 4 Claims are entitled to vote on the Plan.

4.5 <u>Class 5:  Allowed Interests</u>.  Class 5 consists of the Interests in the Debtor.

Plan Treatment:  Nothing shall be distributed to holders of Interests in the Debtor.  Holders of Class 5 Claims shall not receive any distribution on account of their Interests.  Class 5 is impaired under the Plan and is deemed to reject the Plan.

## ARTICLE V

### Voting on the Plan

5.1 <u>Classes Entitled to Vote</u>.  The Holders of Claims in Classes 1, 2, 4, and 5 are entitled to vote on the Plan.

5.2 <u>Delivery of Ballots</u>.  Each Holder of an Allowed Claim in a Voting Class shall receive by U.S. first class mail, postage prepaid, a copy of the Disclosure Statement, the Order Approving the Disclosure Statement, the Plan, and a Ballot within ten (10) days of the entry of an order approving the Disclosure Statement.

5.3 <u>Class Acceptance Requirement</u>.  A Voting Class of Claims shall have accepted the Plan if at least two-thirds in amount and more than one-half in number of the Allowed Claims of the Voting Class that actually timely returned a valid Ballot voted to accept the Plan.

5.4 <u>1129(b)</u>.  In the event that an Impaired Class eligible to vote does not accept the Plan, the Trustee reserves the right to request that the Court confirm the Plan in accordance with the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

### Implementation of the Plan

6.1 <u>Funding and Distribution</u>.

A. The Plan will be funded by the distribution of Net Collateral FundsFund, Fifth Third Estate Settlement MoniesFund, Fifth Third Claim Settlement Fund, and Net Recovery FundsFund to the Holders of the applicable Allowed Claims.

B. Within five business days of the entry of the Confirmation Order, the Trustee shall mail to the Holder of each Class 4 Claim (with a courtesy copy to counsel, if any) a copy of the Opt In Agreement, the Opt In Agreement Instructions and a return self-addressed stamped envelope.  Any Holder of a Class 4 Claim may choose to Opt In by returning the executed Opt In Agreement by the Opt In Deadline, whether such Holder voted to accept the Plan, voted to reject the Plan, or did not vote.

C.      Within sixty (60) days after the Effective Date, the Trustee shall file with the Court by "Notice of Submission" a list of all the Class 4 Claims, identifying them each Claim as Allowed or Disputed and as Opt In Claims or Opt Out Claims and setting forth the Trustee's Initial Estimates.   The Initial Estimates shall be updated from time to time in the Trustee's discretion and such updates will be filed with the Court.  The Notice of Submission may be amended from time to time as Disputed Claims become Allowed Claims or Disallowed Claims.

D.      The Trustee shall distribute the Net Collateral Funds Fund, the Fifth Third Estate Settlement Monies, Fund, the Fifth Third Claim Settlement Fund and the Net Recovery Funds Fund to the Holders of Allowed Claims pursuant to the Plan.  Unclaimed Distributions shall be reallocated to the Final Distribution.  Any unclaimed Distributions existing after the Final Distribution shall be paid disposed of as determined by further order of the Court., except that unclaimed Distributions of Fifth Third Claim Settlement Fund remaining after the Final Distribution shall be returned to Fifth Third.

E.      Interest on Claims.  Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, (i) post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, and (ii) interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

6.2     Calculation of Net Collateral Funds Fund, Fifth Third Estate Settlement Monies Fund, Fifth Third Claim Settlement Fund, and Recovery Funds Fund.

A.      The Trustee will identify all funds in the possession of the Trustee that are included in the Collateral Fund or the Recovery Fund and file this identification with the Initial Estimates.  Funds currently subject to contested matters and in the Trustee's escrow fund Escrow Fund shall be identified in the Initial Estimates.  Funds in the Trustee's escrow fund Escrow Fund that are not the subject of a specific objection shall be transferred to the Trustee's operating fund on the Effective Date.  From time to time in the Trustee's discretion, the Trustee will file with the Court an updated summary of proceeds monies collected from recovered assets or resolution of disputes and whether the Trustee has identified the proceeds monies as being included in the Collateral Fund or the Recovery Fund.  Any party in interest may file an objection to the Trustee's designation.  While an objection is unresolved the Trustee will treat the proceeds as not part of the Distribution Funds for calculation of any distributions from the Distribution Funds.  Any hearing on such an objection shall be set not more than sixty (60) days from the date the objection is filed.

B.      Subject to establishing reasonable reserves for Disputed Claims, the Trustee will calculate the Fifth Third Claim Settlement Monies Fund payable to Opt In Creditors by multiplying the Fifth Third Claim Settlement Percentage by the amount of the Net Collateral Funds Fund.

C.     Subject to establishing reasonable reserves for Disputed Claims, the Trustee will calculate the Fifth Third Estate Settlement Fund payable to the holders of Allowed Class 4 Claims.

6.3     Initial and Subsequent Distributions; Creation of Disputed Claims Reserve.

A.     Initial Estimates. Within sixty (60) days of the Effective Date, the Trustee shall file with the Court the Initial Estimates.  The Initial Estimates will be revised and adjusted as the amounts of Allowed Opt In Claims, Allowed Opt Out Claims, the Fifth Third Deficiency Claim, the Fifth Third Estate Settlement Percentage, the Fifth Third Claim Settlement Percentage and the Recovery Expense Pro Rata Application Percentages are refined and ultimately become final.

B.     Initial Distribution.  The Trustee shall make the Initial Distribution based on the Initial Estimates (as they may have been subsequently revised) on the first Distribution Date to occur more than one hundred twenty (120) days after the Effective Date.

C.     Disputed Claim Reserve.  Concurrently with the Initial Distribution and continuing for each distribution thereafter until the Disputed Claims become either Allowed Claims or Disallowed Claims, the Trustee shall deposit in the Disputed Claims Reserve sufficient Cash to pay each Disputed Claim's share of each distribution in full. When a Disputed Claim has become either an Allowed Claim or a Disallowed Claim, the Trustee shall, as applicable, either transfer the applicable portion of the Disputed Claims Reserve to the Holder of the Allowed Claim or transfer the applicable portion to the Trustee's operating account for distribution on the next Distribution Date.

D.     Final Distribution.  The Trustee shall make the Final Distribution when, in the reasonable judgment of the Trustee all assets of the Estate have been liquidated and there are no potential sources of additional Cash for distribution, there remain no Disputed Claims, and the Trustee is in a position to make the Final Distribution in accordance with applicable law.  The date on which the Final Distribution is made is referred to as the "Termination Date." The Trustee shall provide at least thirty (30) days prior notice of the Termination Date to Holders of all Claims, except to the extent such Claims have been disallowed, withdrawn or, paid or satisfied in full or otherwise settled as to payment as of the time such the notice is provided.  On the Termination Date, the Trustee shall distribute all remaining Cash to Holders of Allowed Claims in accordance with the Plan and promptly thereafter, request that the Court enter an order closing the Chapter 11 Case.  The order closing the Chapter 11 Case shall include a provision directing as to the final disposition of any Distributions returned following the Final Distribution.

E.     True-up of Distributions.  As a general matter the projection and calculations of various dollar amounts (including the Initial Estimates) that are material to the amounts payable to Holders of Allowed Claims under the Plan become more refined the Trustee will adjust distributions to achieve a "true up" of the amounts to be distributed and to account for perceived "over" and "under" distributions in the past.  The

goal of such "true up" will be to produce as of the Final Distribution total distributions to various Holders of Allowed Claims as provided in the Plan.  Even though certain monies distributed including the YCB Monies, Bond Monies and Restitution Payments may be distributed in accordance with the rules or orders of Courts or agencies other than the Court, such distributions will be credited to reduce the amount of Allowed Class 4 Claims (and will in the case of YCB Monies count toward a Holder's Class 4 pro rata distribution).  ~~In addition to this general "true up" principle, the following shall apply to distributions:~~

F.      ~~Delivery of~~Unclaimed Distributions.  Distributions ~~of assets~~ to Holders of Allowed Claims shall be made directly to the Holders of such Claims at the address of each such Holder as set forth on the proofs of claim filed by such Holders.  If any Holder's distribution is returned as undeliverable, the Trustee shall deposit the returned distribution into the Unclaimed Distributions Reserve and no further distributions to such Holder shall be made unless the Trustee is made aware of such Holder's then current address, at which time the undelivered distribution shall be made to such Holder, without interest.  Upon the expiration of ninety (90) days following the original mailing date of a distribution or the Termination Date, whichever is ~~sooner, the Trustee shall retain any unclaimed distribution for the benefit of the creditor who failed to claim such distribution.  At the end of that 90-day period, the creditor~~earlier, the Holder of the Allowed Claim entitled to such unclaimed distribution shall cease to be entitled thereto, such creditor's Claim shall be deemed a Disallowed Claim and the unclaimed distribution ~~shall thereupon~~will be transferred from the Unclaimed Distributions Reserve to the Trustee's general operating account and made available for distribution or disposal in accordance with the Plan.

G.      Procedures for Treating and Resolving Disputed Claims.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  All objections to Claims must be filed on or before the Claims Objection Deadline.

H.      De Minimis Distributions.  Any other provision of the Plan notwithstanding, the Trustee ~~shall~~may but is not ~~be~~required to make interim ~~or final~~ distributions to any Claim when the amount to be distributed is in an amount less than $50.00.  On the Final Distribution, the Trustee may but is not required to make any Final Distribution under the final true-up to the Holder of an Allowed Claim when the amount to be distributed is less than $25.00.  The ~~Estate funds~~payment that would have been distributed in the Final Distribution but for this subsection shall be reallocated Pro Rata to those Holders of Allowed Claims that are receiving a distribution of $~~50~~25 or more.

I.      Preconditions to Distribution.  Notwithstanding any provision of this Plan specifying a date or time for distribution ~~of consideration hereunder~~, distributions in respect of any Claim, (i) that at such time is subject to a pending objection, (ii) for which the Holder of such Claim is subject to a pending Cause of Action in favor of the Estate, or (iii) for which the Holder of such Claim has outstanding an unsatisfied judgment or

order from a Cause of Action in favor of the Estate, shall not be made until all such objections or pending actions have been resolved and all judgments or payment orders against such Holder have been satisfied.  Upon such resolution or satisfaction, the Trustee shall promptly make such distribution to the Holder of such Claim as would provide that Holder with a total distribution based upon the amount of that Holder's Allowed Claim that is equal to the Pro Rata distribution made to Holders of other Claims of the same Class or priority.  If any distribution is made on a Claim prior to the timely filing of an objection or a Cause of Action, and the Court subsequently grants the objection, in whole or in part, or enters judgment against the creditor in the Cause of Action, the Trustee may take appropriate actions to recover the overpayment portion of such distribution or to net such overpayment against any further distribution or distributions to the creditor from the Trustee under the Plan.

6.4     <u>Trustee as Plan Agent</u>.

A.     <u>Continuation of Trustee's duties post-Effective Date</u>.  The principal function of the Trustee after the Effective Date is to liquidate and collect the Property (including the prosecution of Retained Actions) and make distributions in respect of Allowed Claims in accordance with the terms of this Plan.  The Trustee shall perform this purpose in a manner consistent with the nature of the assets to be administered, obligations to be satisfied, claims to be disputed, and Causes of Action to be pursued.  The Trustee will comply with all of his obligations, including, but not limited to, obligations arising by operation of the Bankruptcy Code, Bankruptcy Rules and the terms of the Plan.

B.     <u>Effectuating Documents; Further Transactions</u>.  The Trustee shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

C.     <u>Powers and Duties of Trustee</u>.  Pursuant to the terms and provisions of this Plan, the Trustee (utilizing his Professionals) shall be the sole and official distribution agent for to make distributions to the Holders of Allowed Claims.  The Trustee shall carry out the implementation of this Plan and shall have all duties, powers, and standing and authority necessary to implement the Plan and to administer and liquidate the assets of the Estate for the benefit of Holders of Allowed Claims.  The Trustee's powers shall include, without limitation, the following:

i)     Maintaining the books and records of the Estate and providing for storage and destruction of records as deemed appropriate;

ii)     Liquidating any remaining unliquidated assets of the Estate and selling or otherwise transferring for value any non-cash Property;

iii)     Litigating or settling any Claims or, Causes of Action and Retained Actions asserted by or against the Debtor or the Trustee, subject to approval from

19

the Court using all commercially reasonable efforts to cooperate with other parties in such litigation, and retaining such Professionals with the approval of the Court as the Trustee may in his discretion deem necessary with respect to the Trustee's prosecution of various Causes of Action: (including Retained Actions);

iv)    Abandoning any Property that cannot be sold or otherwise disposed of for value and whose distribution to Holders of Allowed Claims would not be feasible or cost-effective in the reasonable judgment of the Trustee, and subject to approval from the Court;

v)    Administering the Disputed Claims Reserve, which shall be maintained as a separate, segregated fund;

vi)    Administering the Distribution Funds;

vii)    Making interim and final distributions of Estate funds as provided in this Plan;

viii)    Filing with the Court the reports and other documents required by the Plan or otherwise required to close the Chapter 11 Case and preparing and filing any tax or informational returns that may be required;

ix)    Incurring, at the expense of the Estate, such charges, costs and fees as are necessary and appropriate in connection with the performance of its duties;

x)    Taking any other actions that the Trustee determines to be in the best interests of the Debtor's creditors and consistent with the purposes of this Plan.

D.    <u>Reporting Requirements</u>.  The Trustee shall prepare and file with the Court quarterly reports, as soon as practicable after the end of each calendar quarter showing in reasonable detail all amounts received by the Trustee and all distributions and the amounts and recipients thereof during the period of time covered in the report.

E.    <u>Retained Actions</u>.  In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Trustee will retain and may (but is not required to) prosecute and enforce all Retained Actions and all other similar Causes of Action or claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee andor a debtor-in-possession under the Bankruptcy Code. except any that are expressly released hereunder.  Exhibit ——C to the Disclosure Statement Plan sets forth, without limitation, a more detailed description of the Retained Actions.  The Estate is not reorganizing and the post confirmation estate shall continue to be the Estate.  None of the Causes of Action that is not listed on Exhibit C shall be lost or waived by reason of the entry of the Confirmation Order or the occurrence of the Effective Date.

F.    <u>Retention of Professionals</u>.  The Trustee may rely upon any Professional appointed in this Chapter 11 Case for guidance in the performance of his duties and may

20

employ other Professionals as he deems appropriate and as approved by the Court.  All Professionals who perform services for the Trustee from and after the Confirmation Date shall continue to have the right to file fee applications and expense reimbursement requests and obtain payment of such allowed fees and expenses from the Estate promptly upon their approval by the Court.

G.    Final Report.  Within thirty (30) days of the Termination Date, the Trustee shall file with the Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Trustee shall have no further duties under the Plan.

## ARTICLE VII

### Effects of Plan Confirmation and the Occurrence of the Effective Date

7.1    Continuance of Estate.  As of and after the Effective Date and through the Final Distribution, the Estate will remain in existence and all Property (including Retained Actions) will remain Property of the Estate.  There will be no vesting of property of the Estate in the Debtor as would otherwise be provided by Bankruptcy Code Section 1141(b).  All Causes of Action that are not expressly released pursuant to the Plan will vest in, be retained by, and be assertable by the Trustee as Retained Actions.  None of the Causes of Action shall be lost solely by reason of the entry of the Confirmation Order or the occurrence of the Effective Date.  The Estate shall remain and retain all of its Property, including all Causes of Action not expressly released hereunder from and after the Effective Date.  The failure to expressly described any of the Causes of Action on Exhibit C shall not constitute a waiver by the Trustee or estop the Trustee from prosecuting such Cause of Action.

7.2    Trustee Release.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, and in consideration for the obligations of Fifth Third set forth in this Plan and, if applicable, the Cash and other agreements or documents to be delivered in connection with this Plan, the Trustee and his successors and assigns for and on behalf of himself and the Estate, shall be deemed to have forever waived, released and discharged Fifth Third and its officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise arising on or prior to the Effective Date relating to the Debtor or any Affiliates of the Debtor, the Chapter 11 Case or this Plan.  The foregoing Trustee Release does not release or discharge any claim of a creditor who fails to opt-in or of any non-creditor.

7.3    Third Party Release.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of Fifth Third and the Trustee set forth in this Plan and, if applicable, the Cash and

other agreements or documents to be delivered in connection with this Plan, and the waiver and release of Claims by Superior pursuant to the Superior Settlement, each Holder of an Opt In Claim and any affiliate of such Holder shall be deemed to have forever waived, released and discharged Fifth Third, the Trustee, and each's Superior and each of their respective officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise held by such Holder arising on or prior to the Effective Date relating to the Debtor or any Affiliates of the Debtor, the Chapter 11 Case, Property of the Estate or this Plan.  This release shall not affect any claim held by the Holder of an Opt In Claim that certain property is not Property of the Estate if such claim is formally asserted and filed in the Interpleader Actions or otherwise prior to the deadline for the execution and delivery of the Opt In Agreement.  The foregoing Third Party Release does not release or discharge any claim of a creditor who fails to opt-in or of any non-creditor.

       7.4     <u>Exculpation</u>.  The Trustee and his agents and Professionals (acting in such capacity) shall neither have nor incur any liability to any Person or Entity for any prepetition or postpetition act taken, or omitted to be taken, in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, release or any other agreement or document created, or entered into, in connection with the Plan, or any other prepetition or postpetition act taken, or omitted to be taken, in connection with, or in contemplation of the Chapter 11 Case.

       7.5     <u>Injunction</u>.  On and after the Effective Date, and except as otherwise provided in this Plan or the Confirmation Order, all Persons and/or Entities are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, interest or right of Debtor as well as on account of or respecting and any Cause of Action or Bankruptcy Cause of Action which that the Trustee retains sole and exclusive authority to pursue in accordance with this Plan. This injunction applies to any action or proceeding that affects or seeks possession of Property of the Estate.  If there is a dispute that any particular asset is Property of the Estate, such dispute is not affected by this injunction until such dispute is resolved.  However, any dispute over whether an asset is Property of the Estate shall be brought and prosecuted only in the Bankruptcy Court, subject to any jurisdictional limitations.

       7.6     <u>Term of Injunction or Stays</u>.  Unless otherwise provided herein or by an order of the Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all distributions required to be made under this Plan have been made.  The injunction provided in Section 7.5 of this Plan shall not terminate and shall continue in existence notwithstanding this Section 7.6.

       7.7     <u>Binding Effect</u>.  On and after the Confirmation Date and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against Debtor,

the Trustee or the Estate and each's respective successors and assigns, whether or not the Claim was filed, deemed filed, or impaired under the Plan and whether or not such Holder has accepted the Plan.

7.8    <u>Exemption From Certain Transfer Taxes and Recording Fees</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor or the Trustee to any other Person or entity pursuant to the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or recording fee or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.9    <u>Conditions Precedent to the Effective Date</u>.  The occurrence of the Effective Date shall be conditioned on the following prerequisites:

A.    The Confirmation Order, in form and substance acceptable to the Trustee, shall have become a Final Order.

B.    The Trustee has filed a Notice of Effective Date with the Court.

## ARTICLE VIII

<u>Treatment of Executory Contracts</u>

8.1    <u>Rejection of all Executory Contracts</u>.  As of the Effective Date, all Executory Contracts of Debtor that have not been assumed or are the subject of a pending motion to assume, shall be deemed rejected.  Any contract, to the extent it may be determined to have been executory on the Petition Date and is the subject of a contested matter or adversary proceeding (including any of the Interpleader Actions) shall not be deemed rejected by this Section 8.1 if so doing would prejudice the Estate.

8.2    <u>Effect of Rejection</u>.  Claims arising from the rejection of Debtor's Executory Contracts shall be included in Class 4 General Unsecured Claims.  Holders of such Claims shall file ~~proofs~~a proof of claim ~~as required by~~within thirty (30) days of the ~~Court,~~later of the ~~Bankruptcy Code~~Claims Bar Date and ~~Bankruptcy Rules.~~the date on which such contract is rejected.

## ARTICLE IX

<u>Retention of Jurisdiction</u>

9.1    The Court shall retain jurisdiction over the Estate and this Chapter 11 Case for all purposes under the Bankruptcy Code, including matters under the Plan, until the Chapter 11 Case is closed by the entry of a final decree.

# ARTICLE X

## Miscellaneous Issues

10.1    Payment of U.S. Trustee's Fees.  All fees payable to pursuant to 28 U.S.C. Section 1930 shall be paid by the Trustee when due until the ~~closing of the Chapter 11 Case~~entry of a final decree.  Any delay after the entry of the final decree in administratively closing the Chapter 11 Case shall not cause the Estate to incur any fees payable under 28 U.S.C. Section 1930.

10.2    No Admission Against Error.  Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, shall be or be deemed an admission against interest.  In the event the Plan is not consummated, neither the Plan, the Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Court involving the Debtor and/or the Trustee.  Nothing in this Plan or the Disclosure Statement shall be automatically deemed a waiver of any attorney-client privilege of any fact or conclusion simply by its inclusion in the Plan or Disclosure Statement.

10.3    No Waiver.  Nothing set forth in the Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than except as set forth specifically in the Plan.

10.4    Post-Effective Date Service and Notice.  Pursuant to Bankruptcy Rule 2002 and any other applicable Bankruptcy Rules, notice or service of all post- Effective Date matters and actions for which notice or service is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Trustee, and all persons on the service list maintained by the Trustee in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  With the exception of the Trustee, Fifth Third, and the U.S. Trustee, any Person desiring to remain on the Trustee's Bankruptcy Rule 2002 service list shall be required to file a request for continued service within ninety (90) days after the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list.

10.5    Plan Modification.  The Plan may be altered, amended or modified before or after the Confirmation Date in accordance with Section 1127 of the Bankruptcy Code.

10.6    Further Action.  The Trustee is authorized to take any action necessary or appropriate to execute and effectuate the provisions of the Plan.

10.7    Compliance with Tax Requirements.  In connection with the Plan, the Trustee shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

10.8    Compliance with All Applicable Laws.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its businesses, the Trustee shall comply with such law, rule, regulation, or

order; provided that nothing contained herein shall require such compliance by the Trustee if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings by the Trustee, and, if and where appropriate, an adequate reserve has been set aside on the books of the Trustee.

10.9    <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

10.10    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Indiana shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

10.11    <u>Notices</u>.  Any notice required or permitted to be provided to the Trustee or shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

> James A. Knauer
> Chapter 11 Trustee of Eastern Livestock Co., LLC
> Kroger, Gardis & Regas, LLP
> 111 Monument Circle, Suite 900
> Indianapolis, Indiana 46204-5125

with a copy to:

> Faegre Baker Daniels, LLP
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana 46204
> Attention:  ~~James M. Carr,~~ Terry E. Hall

> Hoover Hull LLP
> 111 Monument Circle, Suite 4400
> P.O. Box 44989
> Indianapolis, IN 46244-0989
> Attention:  Sean T. White

Dated: Indianapolis, Indiana
        ~~July 23~~October 26, 2012

                                    JAMES A. KNAUER, CHAPTER 11 TRUSTEE OF
                                    EASTERN LIVESTOCK CO., LLC as PLAN
                                    PROPONENT


                                    /s/ James A. Knauer
                                    James A. Knauer, Chapter 11 Trustee of Eastern Livestock
                                    Co., LLC