# **EXHIBIT 1**

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is made as of November ___, 2012 by and among James A. Knauer, individually and in his capacity as chapter 11 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eastern Livestock Co., LLC ("Debtor"), and on behalf of his counsel ("Trustee's Counsel"); Fifth Third Bank ("Fifth Third"); and Superior Livestock Auction, Inc. ("Superior").  The Estate, the Trustee, Fifth Third and Superior are collectively referred to as the "Parties," and each, a "Party."

## Recitals

A.   Certain petitioning creditors commenced a chapter 11 case (the "Chapter 11 Case") against Debtor on December 6, 2010 ("Petition Date") by filing an involuntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").  The Court entered the *Order For Relief in An Involuntary Case and Order to Complete Filing* [Dock. No. 110] on December 28, 2010.

B.   On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [Dock. No. 102] approving the United States Trustee's Application for an Order Approving the Appointment of James M. Knauer as Chapter 11 Trustee [Dock. No. 98] pursuant to 11 U.S.C. § 1104.

C.   Fifth Third is the secured lender to Debtor, having extended credit both prior to and subsequent to the commencement of this Chapter 11 Case as set forth in that certain *Financing Order (I) Approving Chapter 11 Trustee Financing; (II) Authorizing Use of Cash Collateral and Obtaining Credit Pursuant to Sections 361, 363 and 364 of the Bankruptcy Code; (III) Modifying the Automatic Stay; (IV) Providing Adequate Protection; and (V) Sealing Certain Documents* [Dock. No. 400] and the proof of claim filed by Fifth Third [Claim No. 13].

D.   Superior joined as a petitioning creditor at the commencement of this Chapter 11 Case.  Superior historically engaged in certain livestock transactions involving the Debtor, for which Superior filed a proof of claim in this Chapter 11 Case in the amount of $13,621,110.24 [Claim No. 177] (the "Superior Proof of Claim") and for which Superior asserts a claim of approximately $19,270,617 (the "Bond Claim") against a bond with the United States Department of Agriculture, Grain Inspection Packers and Stockyards Administration (the "Bond").

E.   On or about April 12, 2011, Superior commenced adversary proceeding 11-59088 (the "Superior Adversary"), seeking a declaratory judgment as to legal issues involving potential avoidance actions of the Estate.  After the Trustee asserted claims against Fifth Third in the Superior Adversary, on or about October 28, 2011, Fifth Third asserted claims against Superior and the Estate (the "Counterclaim").  At various times in various matters and pleadings, Superior has asserted claims against Fifth Third regarding Fifth Third's relationship with the Debtor prior to the commencement of the Chapter 11 Case.

F.   The Parties all assert interests in: (1) approximately $721,000 in funds presently controlled by Superior relating to transactions involving the Debtor (the "Superior Escrow"); (2)

funds in the amount of $1,765,326.35 presently held in escrow by the Trustee (the "<u>Trustee Escrow</u>"); (3) $4,700,000 in funds (the "<u>Seized Funds</u>") in the process of being seized from a bank account controlled by Thomas P. Gibson at Your Community Bank by the Department of Justice/United States Attorney for the Western District of Kentucky; (4) approximately $1,505,880 interpleaded into the court registry in connection with Adversary Proceeding 11-59098 (the "<u>Kansas Interpleaded Funds</u>"); (5) approximately $7,237,810 interpleaded into the court registry in connection with Adversary Proceeding 11-59093 (the "<u>Texas Interpleaded Funds</u>", and together with the Kansas Interpleaded Funds, the "<u>Interpleaded Funds</u>"), and funds collected by Superior related in any way to Eastern Livestock Co., LLC and/or the Estate as of October 10, 2012 ("<u>Superior Collected Funds</u>") and funds not collected by Superior, the Debtor, or the Trustee and owed to the Estate for cattle sold and/or delivered that are not Interpleaded Funds nor the Trustee Escrow ("<u>Uncollected Funds</u>").  In the aggregate, Superior has asserted a claim of approximately $3,396,493 to the Interpleaded Funds.

G.      On or about July 10, 2012, several creditors ("<u>Bluegrass</u>") filed their *Motion to Remove Trustee Pursuant to 11 U.S.C. § 324* [Dock. No. 1237], and the First Bank and Trust Company ("<u>First Bank</u>") filed its *Renewal of Objection of the First Bank and Trust Company to Application to Employ Baker & Daniels LLP as Counsel to Chapter 11 Trustee* [Dock. No. 1238] (Dockets 1237 and 1238 and related pleadings, collectively, the "<u>Retention Objections</u>"). After substantive briefing by the Trustee, Bluegrass and First Bank, this Court held a hearing to consider the Retention Objections on August 20, 2012.  Subsequent to this hearing, on August 23, 2012 Superior filed its *Joinder in Motions by Superior Livestock Auction, Inc.* [Dock. No. 1377] (the "<u>Superior Objection</u>").  On August 31, 2012, the Court entered orders denying the relief sought by the Retention Objections and reiterated by the Superior Objection.  On or about September 7, 2012 [Dock. No. 1408], Superior appealed the order denying the motion to remove the Trustee and/or the Superior Objection, appealing the issues presented therein to the United States District Court (the "<u>Appeal</u>").

H.      The Trustee filed his proposed *Disclosure Statement For Trustee's Chapter 11 Plan of Liquidation* [Dock No. 1256] on July 23, 2012 and his *First Amended Disclosure Statement For Trustee's Chapter 11 Plan of Liquidation* on October 26, 2012 [Dock No.1489] (as it may be subsequently amended or modified, the "<u>Disclosure Statement</u>").  The Trustee filed his proposed *Trustee's Chapter 11 Plan of Liquidation* on July 23, 2012 [Docket No. 1255] and his Trustee's *First Amended Chapter 11 Plan of Liquidation* on October 26, 2012 [Dock. No. 1490] as it may be subsequently amended or modified, (the "Plan").  On or about October 15, 2012, Superior filed its *Objection to Disclosure Statement for Trustee's Chapter 11 Plan of Liquidation* [Dock. No. 1469] (the "<u>Disclosure Statement Objection</u>").  On October 30, 2012, Superior withdrew its Disclosure Statement Objection on the record, while reserving its right to bring the same or similar claims as objections ("<u>Reserved Objections</u>") to the Plan.

I.      The Parties to the Settlement Agreement and various other parties participated in a Court-authorized two-day mediation session on October 9 and October 10, 2012 in Louisville, Kentucky.  Subsequent to that mediation, the Parties have agreed to settle their disputes as more fully set forth below.

2

NOW THEREFORE, incorporating the foregoing Recitals and based upon the mutual promises contained in this Settlement Agreement and other valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. Court Approval of Settlement Agreement. This Settlement Agreement is subject to Court approval under Federal Rule of Bankruptcy Procedure 9019. Within three (3) business days following execution of this Settlement Agreement, the Trustee shall file with the Court a motion, in a form acceptable to the Parties, requesting the Court's approval of this Settlement Agreement (the "Settlement Motion") and a proposed order approving the Settlement Agreement and Settlement Motion in a form acceptable to the Parties ("Settlement Order"). The effectiveness of this Settlement Agreement is contingent upon the Court's entry of the Settlement Order, but, notwithstanding anything else in this Agreement, the effectiveness of this Agreement is not contingent upon confirmation of the Plan. The date the Settlement Order is entered by the Court, shall be referred to herein as the "Effective Date." The Parties shall file such additional information as the Court may request in an effort to obtain Court approval of the Settlement Motion. The Parties shall, in good faith, use all reasonable efforts to obtain approval of the Settlement Motion. Notice of the Settlement Motion shall be served as provided in Bankruptcy Rule 2002, except insofar as time is shortened by order of the Court as allowed under Bankruptcy Rule 9006(c)(1).

2. Modification of Plan and Disclosure Statement. With input from Superior, the Trustee has modified the Plan and the Disclosure Statement to describe this Settlement Agreement, the Settlement Motion and the proposed Settlement Order and has included a provision adding Superior as a released party in the Third Party Release identified in Article 7 of the Plan ("Superior Plan Release"). While the Trustee will seek to have the Plan confirmed with the Superior Plan Release, this Agreement is not contingent on the Plan being confirmed with or without the Superior Plan Release.

3. Transfer of Trustee Escrow Property. On the Effective Date, or within three (3) business days thereafter, the Trustee will pay $279,000.00 from the Trustee Escrow to Superior ("Superior Payment").

4. Release of Superior Escrow Fund. On the Effective Date, Superior will be entitled to draw and claim for its own use, all assets in the Superior Escrow.

5. Dismissal/Withdrawal of all Adversary Proceedings, Appeals and Contested Matters. On the Effective Date, or within three (3) business days thereafter, the Parties shall file all pleadings necessary to dismiss or withdraw with prejudice any and all claims, appeals, pleadings, litigation and proceedings pending between the Parties, including but not limited to: (a) the Superior Objection and the Appeal; (b) the Superior Adversary; (c) the Counterclaim; (d) the Superior Proof of Claim; and (e) the Reserved Objections. Pending the Effective Date, the Parties will continue and request the Court to extend any and all pleading or other deadlines in the Superior Adversary and the Appeal.

6. Prosecution of Bond Claims. Superior shall not be deemed to release its Bond Claim pursuant to this Settlement Agreement. Further, the Parties specifically stipulate that no term or provision of this Settlement Agreement can be used by or against Superior in

3

connection with its Bond Claim. Notwithstanding anything herein to the contrary, this Settlement Agreement shall not prohibit or limit Superior's right to proceed solely as against the Bond nor the right of the Trustee, as the appointed bond trustee, to object thereto.

      7.      Mutual Releases. In exchange for the promises contained herein, and conditioned upon the occurrence of the Effective Date:

      (a)      Superior and its officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto (the "Superior Releasing Parties") forever **RELEASE AND DISCHARGE** each of the the Estate, the Trustee individually and in his capacity as chapter 11 trustee for the Estate, Trustee's Counsel, and Fifth Third, and the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, agents, past, present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of each of the the Estate, the Trustee individually and in his capacity as chapter 11 trustee for the Estate, Trustee's Counsel and Fifth Third (the "Superior Released Parties") from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement (the "Superior Released Claims"). The Superior Released Claims include, without limitation, any and all claims or objections asserted by Superior as to the Trustee and/or Trustee's Counsel's qualifications to serve and/or their conduct, actions, or non-actions as Trustee and/or Trustee's Counsel in the Chapter 11 Case, and any and all claims or objections asserted by Superior as to Fifth Third's conduct in its relationships with the Debtor. However, the Superior Released Claims do not and shall not be deemed to release the administrative claim that one of Superior's attorneys, Bingham Greenebaum Doll LLP, had against the Estate of the Debtor, approved by the Court on March 30, 2011 in Docket. No. 503.

      (b)      The, Estate, Trustee and Trustee's Counsel and their respective officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto (the "Trustee Releasing Parties") forever **RELEASE AND DISCHARGE** Superior and its respective officers, directors, employees, shareholders, attorneys, professionals insurers, agents, past, present and future parents (including, but not limited to, SLAI, LLC and Farm Credit West PCA), subsidiaries, affiliates, predecessors, successors and assigns (the "Trustee Released Parties") from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses

4

and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement (the "Trustee Released Claims"). The Trustee Released Claims include, without limitation, any and all claims, objections or other assertions made by the Estate, Trustee or Trustee's Counsel that Superior acted in any way improperly concerning or related to its relationship or transactions with the Debtor. However, the Trustee Released Claims do not include any claim of the Trustee or the Estate unrelated to the Superior Collected Funds, the Superior Escrow, or the actions or conduct of Superior in its relationship or transactions with the Debtor, the Estate, the Trustee, and Trustee's Counsel ("Not Released Claims"); and the Trustee Released Parties do not include any person or entity against whom the Trustee or the Estate may assert a Not Released Claim. Notwithstanding this paragraph, the Trustee Released Claims and the Trustee Released Parties do include Bingham, Greenbaum Doll, LLP and Rubin & Levin PC as counsel to Superior.

(c) Fifth Third and its officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto (the "Fifth Third Releasing Parties") forever **RELEASE AND DISCHARGE** Superior and its respective officers, directors, employees, shareholders, attorneys, professionals insurers, agents, past, present and future parents (including, but not limited to, SLAI, LLC and Farm Credit West PCA), subsidiaries, affiliates, predecessors, successors and assigns (the "Fifth Third Released Parties") from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement (the "Fifth Third Released Claims"). The Fifth Third Released Claims include, without limitation, any and all claims, objections or other assertions made by Fifth Third that Superior acted in any way improperly concerning or related to its relationship or transactions with the Debtor.

8. Effect of Releases and Satisfaction of Claims. Consistent with the releases set forth in Section 7 hereof, and in consideration of such releases and the payments contemplated pursuant to this Settlement Agreement, on the Effective Date, Superior shall be deemed to withdraw, waive and release, any and all claims or assertions of interest related to this Chapter 11 Case, the Debtor, and the Estate, including but not limited to: (a) the Trustee Escrow, except to the extent of the Superior Payment; (b) the Interpleaded Funds; (c) the Seized Funds, (d) property of the Estate, including without limitation the Uncollected Funds; (e) the Superior Proof of Claim; (f) the Superior Adversary, and (g) the Appeal. On the Effective Date, Fifth Third, the Trustee, Trustee's Counsel and the Estate shall be deemed to withdraw, waive and release any and all claims or assertions of interest in or to the Superior Escrow and the Superior Collected Funds. Such releases of, and payments to, Superior shall satisfy and discharge in full

5

all claims asserted by Superior Releasing Parties or which may be asserted by Superior Releasing Parties against the Superior Released Parties. Notwithstanding any of the releases set forth herein, nothing in the Settlement Agreement shall release the Parties from their obligations under the Settlement Agreement.

9. <u>Cooperation</u>. The Parties agree and covenant that they will cooperate and take all reasonable actions necessary to execute further documents that may be necessary to implement this Settlement Agreement.

10. <u>Qualification; Authority</u>. Each individual executing this Settlement Agreement on behalf of a Party represents and warrants that he or she is duly authorized to execute, deliver and perform this Settlement Agreement on behalf of such party, that no additional consents or signatures on behalf of such party are required in order for this Settlement Agreement to be binding and enforceable upon and against said party, and that no Party has sold, transferred, assigned, conveyed or otherwise disposed of any claims, demands or rights surrendered by virtue of this Settlement Agreement.

11. <u>Each of the Parties Bears Own Costs</u>. Each of the Parties agrees that it or he shall bear its or his own attorneys' fees and other costs incurred in connection with the negotiation and preparation of this Settlement Agreement, the procurement of the Settlement Order and any other or further orders or pleadings required under this Settlement Agreement, including the preparation and filing of, and hearings for, all related motions.

12. <u>Successors and Assigns</u>. This Settlement Agreement shall inure to the benefit of the Parties and their respective heirs, affiliates and successors in interest.

13. <u>Court Jurisdiction</u>. The Court shall retain exclusive jurisdiction to hear, decide and enter a final order on any and all claims or disputes arising out of the execution and performance of this Settlement Agreement.

14. <u>Governing Law</u>. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana, except to the extent superseded by the Federal bankruptcy law applicable to the Chapter 11 Case.

15. <u>Merger of Prior Agreements</u>. This Settlement Agreement constitutes the entire agreement between the Parties, and any and all prior or contemporaneous agreements, whether oral or written, related thereto are merged into this Settlement Agreement and are of no further force or effect.

16. <u>Counterparts; Facsimile Delivery</u>. This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all Parties. Signatures may be delivered by facsimile or electronic mail and such signatures shall be binding upon the party delivering same as if they were originals.

17. <u>Severability</u>. All provisions of this Settlement Agreement are to be read in conjunction with each other. Every provision contained in this Settlement Agreement is nonseverable and mutually dependent on all other provision contained herein. Provisions should be read together so as to harmonize the whole.

        18.     <u>Amendment</u>.  This Settlement Agreement may not be amended, changed, modified, released or discharged except by a writing executed by duly authorized representatives of each of the Parties and signatories hereto.

        19.     <u>No Admission of Fault or Liability</u>.  This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of any of the Parties.

        20.     <u>No Presumption Against Drafter</u>.  This Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Settlement Agreement.

    IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the ____ day of November, 2012.

        [Remainder of page intentionally left blank.  Signature page to follow.]

SUPERIOR LIVESTOCK AUCTION, INC.

By:_____

Printed Name:_____

Title: _____

COUNSEL FOR SUPERIOR LIVESTOCK AUCTION, INC.

TRUSTEE'S COUNSEL

By:_____

Printed Name:_____

Title: _____

JAMES A. KNAUER AS CHAPTER 11 TRUSTEE FOR EASTERN LIVESTOCK CO., LLC, AND INDIVIDUALLY

By:_____

Printed Name:_____

Title: _____

FIFTH THIRD BANK

By:_____

Printed Name:_____

Title: _____


COUNSEL FOR FIFTH THIRD BANK

By:_____

Printed Name:_____

Title: _____

4926476_2.docx