THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

**ANIMAL PROFILING INTERNATIONAL, INC.**
**UNSECURED CONVERTIBLE PROMISSORY NOTE**

$50,000                                                                 June 10, 2006
                                                                        Portland, Oregon

FOR VALUE RECEIVED, **Animal Profiling International, Inc.**, a Delaware corporation (the "Company"), promises to pay to **Eastern Livestock, 135 W Market St. New Albany, IN 47150** ("Lender"), or its assigns, in lawful money of the United States of America the principal sum of $50,000, or such lesser amount as shall equal the outstanding principal amount hereof, together with interest on the unpaid principal balance at a rate equal to ten percent (10%) per annum, computed on the basis of the actual number of days elapsed and a year of 365 days. Interest shall accrue from the date of the advance.

All unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable on the Maturity Date. The "Maturity Date" is the earliest of (i) June 10, 2007, or (ii) the date on which the Company receives an equity financing of at least $1,000,000 or (iii) when, upon or after the occurrence of an Event of Default (as defined below), such amounts are declared due and payable by Lender or made automatically due and payable in accordance with the terms hereof.

If the Company receives an equity financing of at least $1,000,000, the Company may require Lender to convert the Note (including all accrued interest, fees and principal as of the date of the closing of the equity financing) into equity of the Company at a twenty percent (20%) discount to the terms of such equity financing.

The following is a statement of the rights of Lender and the conditions to which this Note is subject, and to which Lender, by the acceptance of this Note, agrees:

1.  Definitions. As used in this Note, the following capitalized terms have the following meanings:

    "Company" includes Animal Profiling International, Inc. and any Person that succeeds to or assumes the obligations of the Company under this Note.

    "Obligations" shall mean and include all loans, advances, debts, liabilities and obligations, howsoever arising, owed by the Company to Lender of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), now existing or hereafter arising.

    "Person" shall mean and include an individual, a partnership, a corporation (including a business trust), a joint stock company, a limited liability company, an unincorporated association, a joint venture or other entity or a governmental authority.

2.  Interest. Accrued interest on this Note shall be payable at the Maturity Date.

1


EXHIBIT A

3. *Prepayment*. This Note may be prepaid in whole or in part without penalty at any time.

4. *Representations and Warranties*. The Company represents and warrants to Lender that:

(a) *Organization*. The Company is a corporation duly organized and validly existing under the laws of the state of Delaware and has all requisite corporate power and authority to carry on its business to execute and deliver this Note and to perform its obligations hereunder.

(b) *Authorization*. All corporate action on the part of the Company necessary for the authorization, execution, and delivery of this Note and the performance of all obligations of the Company hereunder and the authorization, issuance (or reservation for issuance), sale, and delivery of the Common Stock has been taken or will be taken prior to conversion, and the Note constitutes the valid and legally binding obligations of the Company, enforceable in accordance with their respective terms, except (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally and (b) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

(c) *Valid Issuance of Common Stock and Common Stock*. The shares of Common Stock when issued in accordance with the terms of this Note, will be duly and validly issued, fully paid, and nonassessable and will be free of restrictions on transfer other than restrictions on transfer under this Note, a Subscription Agreement executed at the time of conversion and under applicable state and federal securities laws.

(d) *Capitalization*. The authorized capital of the Company consists of:

(i) 1,000,000 shares of Preferred Stock of the Company, none of which are outstanding and none of which have been designated. The rights, privileges, and preferences of the Preferred Stock will as established by the Board of Directors from time to time in accordance with Delaware law and the Company's Certificate of Incorporation.

(ii) 19,000,000 shares of Common Stock of the Company (the "Common Stock"), of which 1,933,000 shares are issued and outstanding as of March 31, 2006 to twelve shareholders of record. The outstanding shares of Common Stock are all duly and validly authorized and issued, fully paid, and nonassessable and were issued in accordance with the registration or qualification provisions of the Securities Act of 1933, as amended (the "Act"), and any applicable federal and state securities laws or pursuant to valid exemptions therefrom. The Company has reserved 1,000,000 shares of Common Stock for issuance to officers, directors, employees and consultants of the Company pursuant to the Company's 2005 Stock Incentive Plan, 925,000 of which remain available for issuance to officers, directors, employees and consultants pursuant to the plan. Of such reserved shares of Common Stock, no shares have been issued and options to purchase 98,000 shares have been granted to seven individual employees and consultants with an exercise price of $1.00 per share. Except for the options described herein, there are no outstanding options, warrants, subscription rights, or other similar rights or agreements for the purchase or acquisition from the Company of any shares of its capital stock.

(e) *Registration Rights*. The Company has not granted or agreed to grant to any person or entity any rights with respect to the registration of the Company's securities under the Securities Act of 1933.

(f) *Voting Agreements*. The Company is not a party to or subject to any agreement or understanding that affects or relates to the voting or giving of written consents with respect to any

2

security or by a director of the Company, and, to the Company's knowledge, no such agreement or understanding exists between any persons or entities.

(g) *No Subsidiaries*. The Company does not presently own or control, directly or indirectly, any interest in any other corporation, association, or other business entity. The Company is not a participant in any joint venture, partnership, or similar arrangement.

(h) *No Litigation*. There is no action, suit, proceeding, or investigation currently pending or, to the knowledge of the Company, currently threatened against the Company before any court or governmental agency. The Company is not a Party or subject to the provisions of any order, writ, injunction, judgment, or decree of any court or government agency or instrumentality. There is no action, suit, proceeding, or investigation by the Company currently pending or that the Company intends to initiate.

(i) *Compliance with Other Instruments*. The Company is not in violation or default in any material respect of any provision of its Certificate of Incorporation or Bylaws, nor, to its knowledge, is it in violation or default in any material respect of any instrument, judgment, order, writ, or decree or under any contract to which it is a party or by which it is bound. The execution, delivery, and performance of this Agreement, and the consummation of the transactions contemplated thereby will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree, or contract or an event that results in the creation of any lien, charge, or encumbrance upon any assets of the Company or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization, or approval applicable to the Company, its business or operations, or any of its assets or properties, except for such violations, defaults, or events that would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the Company, or otherwise materially impair the completion of the transactions contemplated by this Agreement.

(j) *Employees*. The Company is not bound by or subject to (and none of its assets or properties is bound by or subject to) any contract or commitment with any labor union, and no labor union has requested or, to the knowledge of the Company, has sought to represent any of the employees, representatives, or agents of the Company. The Company is not aware that any officer or key employee, or any group of key employees, intends to terminate their employment with the Company, nor does the Company have a present intention to terminate the employment of any of the foregoing.

5. <u>Events of Default</u>. The occurrence of any of the following shall constitute an "<u>Event of Default</u>" under this Note and the other Transaction Documents:

(a) <u>Failure to Pay</u>. The Company shall fail to pay on the date due any payment required under the terms of this Note, and such payment shall not have been made within five days of the Company's receipt of Lender's written notice to the Company of such failure to pay; or

(b) <u>Representations and Warranties</u>. The representations or warranties made by the Company to Lender in this Note shall, in any material respect, be false, incorrect, incomplete or misleading when made; or

(c) <u>Voluntary Bankruptcy or Insolvency Proceedings</u>. The Company shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property; (ii) make a general assignment for the benefit of its or any of its creditors; (iii) be dissolved or liquidated; (iv) commence a voluntary case or other proceeding seeking liquidation,

3

reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (v) take any action for the purpose of effecting any of the foregoing; or

(d) <u>Involuntary Bankruptcy or Insolvency Proceedings</u>. Proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company or any of its subsidiaries or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its subsidiaries or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement.

6. <u>Rights of Lender upon Default</u>. Upon the occurrence or existence of any Event of Default and at any time thereafter during the continuance of such Event of Default, Lender may by written notice to the Company, declare all outstanding Obligations payable by the Company hereunder to be immediately due and payable without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the other Transaction Documents to the contrary notwithstanding. In addition to the foregoing remedies, upon the occurrence or existence of any Event of Default, Lender may exercise any other right power or remedy otherwise permitted to it by law, either by suit in equity or by action at law, or both.

7. <u>Successors and Assigns</u>. The rights and obligations of the Company and Lender shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

8. <u>Waiver and Amendment</u>. Any provision of this Note may be amended, waived or modified upon the written consent of the Company and Lender.

9. <u>Notices</u>. All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party at the respective addresses of the parties.

10. <u>Default Rate; Usury</u>. During any period in which an Event of Default has occurred and is continuing, the Company shall pay interest on the unpaid principal balance hereof at a rate per annum equal to the rate otherwise applicable hereunder plus five percent (5%). In the event any interest is paid on this Note, which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

11. <u>Expenses; Waivers</u>. If an action is instituted to collect this Note, the Company promises to pay all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred in connection with such action. The Company hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

12. <u>Governing Law; Venue</u>. This Note and all actions arising out of or in connection with this Note shall be governed by and construed in accordance with the laws of the State of Oregon, without regard to the conflicts of law provisions of the State of Oregon, or of any other state. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the parties in Multnomah County Circuit Court of the State of Oregon, or, subject to applicable jurisdictional requirements, in the United States District Court for the District of

Oregon, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue.

The Company has caused this Note to be issued as of the date first written above.

**ANIMAL PROFILING INTERNATIONAL, INC.,**
a Delaware corporation

By: _/s/ Ray R. Rogers_
Name: Ray R. Rogers
Title: Chief Executive Officer

5