UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |

**BRIEF IN SUPPORT OF CONFIRMATION OF
TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

James A. Knauer, as chapter 11 trustee for Eastern Livestock Co., LLC (the "Trustee"),

files this Brief in Support of Confirmation of the Trustee's First Amended Chapter 11 Plan of

Liquidation (the "Brief").  The facts set forth in this Brief are supported in part by the "Affidavit

of James A. Knauer In Support of Confirmation of the Trustee's First Amended Chapter 11 Plan

of Liquidation" (the "Knauer Affidavit"). A copy of the Knauer Affidavit is attached to this Brief

as Exhibit A.

**INTRODUCTORY STATEMENT**

The Trustee has proposed the First Amended Chapter 11 Plan of Liquidation [Docket No.

1490] (the "Plan")[1].  The Plan complies with all applicable requirements of Bankruptcy Code

§ 1129 and should be confirmed.  As tabulated in accordance with the Order Approving

Disclosure Statement, Scheduling Confirmation Hearing, and Fixing Filing Deadlines [Docket

No. 1516] (the "Disclosure Statement Order") all classes of Claims in which votes were cast

voted in sufficient dollar amount and number of votes to accept the Plan.  Holders of claims in

Class 4 (Allowed General Unsecured Claims) voted to accept the Plan in excess of two-thirds of

the dollar amount and well over one-half in number of the Class 4 claims that voted.

---

[1]     All capitalized terms not defined herein have the meaning ascribed to them in the Plan.  If a capitalized
term is not defined in either this Brief or the Plan, then it has the meaning ascribed to such term in the Bankruptcy
Code or Bankruptcy Rules, whichever is applicable.

What may be considered to be objections (the "Objections") to confirmation of the Plan were filed by a handful of parties (the "Objectors"). The Objections by and large do not appear to be objections to confirmation of the Plan but are instead efforts to preserve litigation positions of the Objectors. As discussed herein, to the extent the Objections are in fact plan confirmation objections, they are without merit and should be denied.

The Trustee respectfully submits this brief to address the plan confirmation standards enumerated in Bankruptcy Code Section 1129. All applicable requirements for confirmation have been satisfied, and the Plan should be confirmed.

## BACKGROUND

### A.    The Bankruptcy Case

On December 6, 2010 (the "Petition Date") certain creditors filed an involuntary chapter 11 bankruptcy petition against Eastern Livestock Co., LLC ("ELC" or "Debtor"). The Court granted that petition and entered the order for relief on December 28, 2010. The Trustee was appointed and assumed his duties on December 27, 2010.

On November 2, 2012, the Court entered the Disclosure Statement Order approving the Disclosure Statement for Trustee's First Amended Chapter 11 Plan of Liquidation [Docket No. 1489] (the "Disclosure Statement"). An extensive history of the Debtor and the major events in the chapter 11 case are set forth in the approved Disclosure Statement (*see* Sections III and IV of the Disclosure Statement) and will not be repeated here.

The Disclosure Statement Order (a) approved the adequacy of the information contained in the Disclosure Statement; (b) required the Trustee to transmit the Solicitation Packet[2] by November 7, 2012 to the United States Trustee, all holders of Claims and Interests entitled to

---

[2]    The "Solicitation Packet" consists of copies of 1) the Disclosure Statement; 2) The Plan; 3) a ballot in form substantially similar to Official Form No. 14; and 4) the Disclosure Statement Order.

2

vote on the Plan, and the Internal Revenue Service in accordance with Bankruptcy Rule 3017(d);

(c) established procedures for sending the Solicitation Packet or a notice of confirmation hearing

to certain persons appearing in the case; (d) established November 28, 2012 at 5:00 p.m.

prevailing Eastern time as the deadline for submitting ballots to vote on the Plan; (e) established

December 4, 2012 as the deadline for filing and serving objections to confirmation of the Plan;

(f) scheduled December 7, 2012 at 10:00 a.m. prevailing Eastern time as the hearing on

confirmation of the Plan; and (g) granted other miscellaneous relief concerning the solicitation

and confirmation of the Plan.

### B.      Service of the Solicitation Packet and Results of Voting on the Plan

On November 6, 2012 and November 7, 2012, and in compliance with the Disclosure

Statement Order, the Trustee and/or his notice, claims, and balloting agent (BMC Group) mailed

the Solicitation Packet or other notice to all parties required to receive such documents.[3]

Additionally, the Plan, Disclosure Statement, and Disclosure Statement Order were each posted

on the website maintained by the Trustee.  The notice provided by the Trustee complies with the

Disclosure Statement Order and is adequate under the Bankruptcy Code, the Federal Rules of

Bankruptcy Procedure, and the Local Rules and orders of this Court.

Approximately 67 valid votes regarding the Plan were received by BMC Group.  The

BMC Group tabulated each of the received votes in compliance with the Disclosure Statement

Order and the Bankruptcy Rules and the Local Rules of this Court.  The results of the voting are

reflected in the Agent Declaration.  Based on that tabulation and as reflected in the Agent

Declaration, each of the impaired classes of Claims (Classes 1 and 4) voted to accept the Plan.

---

[3]      Certificates of Service and Certificates of Mailing [Docket Nos. 1521, 1544, 1553, 1554 and 1568] were filed regarding service of the Solicitation Packet under the Disclosure Statement Order.  An Amended Certificate of Supplemental Mailing was filed on December 5, 2012 [Docket No. 1580].  The Declaration of Noticing and Ballot Agent Regarding Solicitation and Tabulation of Votes in Connection With the Trustee's First Amended Chapter 11 Plan of Liquidation [Doc. No. 1582] (the "Agent Declaration") also confirms that the Trustee complied with the Disclosure Statement Order.

In short, the Plan has received strong support from all classes of creditors.  The Trustee received fourteen (14) "provisional ballots" that were sent to creditors who filed proofs of claim asserting secured or priority status and as to whom there was no pending objection or claim asserted under § 502 as to their claim.  The Trustee filed his Report of Provisional Ballots [Docket No. 1581].  If the provisional ballots were to be added to the votes as reported in the Agent Declaration, the Plan remains accepted by more than half in number and two-thirds in amount of the valid ballots returned.

## LAW AND ARGUMENT

### I.    RESPONSE TO OBJECTIONS

Several parties filed Objections.  By and large, those Objections do not appear to be actual objections to confirmation of the Plan.  To the extent they do contain plan objections, each of the Objections is unfounded and should be denied.  The following describes and responds to each of these Objections[4]:

Parties sometimes referred to as the "Bluegrass Creditors" and represented by Ms. Laura Day DelCotto filed a "Reservation of Rights in Connection With Trustee's First Amended Chapter 11 Plan of Liquidation" [Docket No. 1575] (the "Bluegrass et al. Reservation").  The Bluegrass et al. Reservation does not appear to make any objection to confirmation of the Plan except that in paragraph 19 it argues that the Exculpation provision relating to the Trustee and his professionals in Article 7.4 of the Plan "violates" Seventh Circuit authority.  That argument and similar arguments made by other Objectors is unfounded as explained below.

---

[4]    In addition to the Objections, a non-party, the Livestock Marketing Association (the "LMA"), sent a letter to the Court dated December 3, 2012.  The LMA complained about what the LMA assumed may be uses of certain YCB Monies under the Plan.  The Trustee remains in final negotiation with the Department of Justice over the YCB monies and any such final agreement (including the uses of the funds) will be submitted to this Court for consideration.

DMS_US 51188577v3

Joplin Regional Stockyards, Inc. ("Joplin") filed its "Reservation of Rights Related to Trustee's First Amended Chapter 11 Plan of Liquidation" [Docket No. 1576] (the "Joplin Reservation"). The Trustee believes that he has arrived at a settlement with Joplin that will lead to withdrawal of the Joplin Reservation and a vote by Joplin to accept the Plan.

Taylor Reed and Ron Reed (the "Reeds") filed their "Objection to Confirmation of Trustee's Chapter 11 Plan of Liquidation" [Docket No. 1574] (the "Reed Objection"). The Reeds have filed two proofs of claim asserting fully secured claims (the "Reed POCs"). If the Reed POCs were fully allowed as secured claims under Sections 502 and 506 of the Bankruptcy Code, the Reed POCs would be paid in full as Class 2 Claims under the Plan. The Reeds object that the Plan makes no provision for payment with respect to any "unsecured portion" or deficiency that may result if the Reeds are not determined to have valid and enforceable liens in and against collateral of sufficient value to fully satisfy their Class 2 Claims. The Reeds are mistaken. If and to the extent the Reeds are only partially secured and they hold valid and allowable unsecured claims for any deficiency under Bankruptcy Code §§ 502 and 506 (because any collateral that may partially secure their claims has insufficient value to fully satisfy their claims), the Reeds would then hold allowable unsecured claims as to which they would receive payment under Class 4 of the Plan. The Reed Objection therefore raises at most a claim allowance issue (including issues as to the existence and value of any lien that may secure the Reeds' claims) that will need to be determined more appropriately later as part of the claims resolution process.

The Trustee has agreed with the Reeds to make two immaterial modifications to the Plan to resolve the Reed Objection. First in Article 4.4 of the Plan after the words "Allowed Fifth Third Deficiency Claim," the words "any other Allowed deficiency Claims allowable as

5

unsecured claims under Bankruptcy Code §§ 502 and 506".  Second at the end of Article 4.2 of the Plan, the following words will be added:  "To the extent a Class 2 Allowed Claim is determined under Bankruptcy Code §§ 502 and 506 to be only partially secured, any unsecured portion of the Claim shall be Allowable as a Claim 4 Claim."

Finally, various parties who call themselves the "Livestock Creditors" (and who are referred to herein as "Alabama Livestock et al.") filed the "Objection and Joinder in Reservation of Rights Related to the Trustee's First Amended Chapter 11 Plan of Liquidation" [Docket No. 1577] (the "Alabama Livestock et al. Objection").  Alabama et al. are represented by Mr. W. Scott Newbern.  Some or all of Alabama et al. are or may become involved in litigation with the Trustee with respect to interpleader actions or avoidance claims asserted or assertable by the Trustee.  The Alabama Livestock et al. Objection largely seeks only to preserve litigation positions.  To the extent the Alabama Livestock et al. Objection can be read to assert any objection to confirmation of the Plan it appears to 1) question the validity of the proposed Fifth Third Settlement (discussed below) and 2) make an argument similar to the argument made in the Bluegrass et al. Reservation against the Exculpation provision of the Plan.  These arguments are without merit and are addressed below.

## II.     THE PLAN CAN AND SHOULD BE CONFIRMED

### A.     The Plan Meets Each Requirement for Confirmation Under Section 1129(a) of the Bankruptcy Code

To confirm the Plan, the Court must find that both the Plan and the Trustee, as Plan proponent, are in compliance with each of the requirements of section 1129(a) of the Bankruptcy Code.  *See In re 203 N. LaSalle St. P'ship,* 126 F.3d 955, 960-61 (7th Cir. 1997), *rev'd on other grounds*, 526 U.S. 434 (1999); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988).

6

As set forth below, both the Plan and the Trustee, as proponent of the Plan, meet all of the requirements of section 1129(a) of the Bankruptcy Code.

> 1.    **Section 1129(a)(1) – The Plan Complies with all the Applicable Provisions of Title 11**

Section 1129(a)(1) of the Bankruptcy Code provides that chapter 11 plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title."   11 U.S.C. § 1129(a)(1).  *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D. N.Y. 1984)  ("In order for a plan of reorganization to pass muster for confirmation purposes it must it must comply with all the requirements of chapter 11 as stated in Code § 1129(a)(1).").

The legislative history of section 1129(a)(a) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of the Plan, respectively.  *See* S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 (1978); HR Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5962, 6368 (1977).

Section 1122 of the Bankruptcy Code provides:

> (a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

The Plan separately classifies claims asserted by Fifth Third Bank ("Fifth Third") as an allowed secured claim (Class 1), creditors holding other "Allowed Secured Claims" (Class 2), claimants asserting Allowed Non-Tax Priority Claims (Class 3), and claimants asserting Allowed

General Unsecured Claims (Class 4). These classifications are appropriate under the facts and applicable law.

Section 1123(a) of the Bankruptcy Code identifies seven requirements for the contents of a Chapter 11 plan. The classifications of claims and interests in the Plan fully comply with each requirement of Section 1123(a) described above. As previously noted with respect to the Plan's compliance with Section 1122, Article IV of the Plan designates Classes of Claims and Interests, as required by Section 1123(a)(1) of the Bankruptcy Code, and Articles IV and V of the Plan specify the Classes of Claims and Interests that are not impaired under the Plan, as required by Section 1123(a)(2) of the Bankruptcy Code. Article IV of the Plan specifies the treatment of each Class of Claims and Interests that is impaired in accordance with Section 1123(a)(3) of the Bankruptcy Code. Further, as required by Section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim of Interest within a Class is the same as the treatment of each other Claim or Interest in such Class, unless the holder of a Claim or Interest agrees to less favorable treatment on account of its Claim or Interest. No creditor has objected to the Plan's specification of classes.

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. The "Introduction" (pp. 1 – 2) and Article VI of the Plan detail the means of execution of the Plan, including the proposed settlement with Fifth Third (the "Fifth Third Settlement") that is a centerpiece of the Plan.

> **2.** **Section 1129(a)(2) – The Proponents of the Plan Has Complied with the Applicable Provisions of Title 11 as required by 11 U.S.C. § 1129(a)(2)**

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply with applicable provisions of the Bankruptcy Code. The legislative history to Section 1129(a)(2) reveals that the principal purpose of this section is to ensure compliance with the disclosure and

solicitation requirements set forth in Section 1125 of the Bankruptcy Code.  *See In re Texaco Inc.*, 84 B.R. 893, 906-907 (Bankr. S.D.N.Y. 1988) (holding that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan").  The Trustee has complied with the applicable provisions of Title 11, including the provisions of Section 1125 regarding disclosure and plan solicitation.

By the Disclosure Statement Order, the Court established a schedule for confirmation, procedures for the solicitation and tabulation of votes and approved the ballots, and solicitation materials.  Thereafter, the Trustee and his agents transmitted the Solicitation Package in accordance with the Disclosure Statement Order.  The Trustee thus has complied with the applicable provisions of Title 11, including Section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and, as a result, the Plan meets the requirements of Section 1129(a)(2) of the Bankruptcy Code.

### 3.      Section 1129(a)(3) – The Plan Was Proposed in Good Faith

Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  "Through the term 'good faith', as used in section 1129(a)(3), is not in the Bankruptcy Code … the term is generally interpreted to mean that there exists a 'reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'"  *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-25 (7th Cir. 1984).  *See also In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (the good faith standard in section 1129(a)(3) requires that there must be "some relation" between the chapter 11 plan and the "reorganization-related purposes" that chapter 11 was designed to serve).

9

In determining whether a Plan will succeed and accomplish goals consistent with the Bankruptcy Code, the court should look to the terms of the Plan itself. *See In Re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good faith test provides the court with significant flexibility and is focused on an examination of the plan itself, rather than the other, external factors), *aff'd in part and remanded in part on other grounds*, 103 B.R. 521 (D.N.J 1989), *aff'd*, 908 P.2d 964 (3d Cir, 1990). The Trustee must show, therefore, that the Plan has not been proposed by any means forbidden by law and that the Plan has a reasonable likelihood of success. *See In re Century Glove, Inc.*, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993).

The Plan has been proposed by the Trustee in good faith, with legitimate and honest purposes of maximizing the recoveries by holders of Allowed Claims under the circumstances of this Chapter 11 Case. It has been held that good faith in proposing a plan "also requires a fundamental fairness in dealing with one's creditors." *Stolrow v. Stolrow's. Inc. (In re Stolrow's. Inc.)*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988). The Plan reflects the end product of the months of hard work by the Trustee that will likely result in sizeable recoveries by all creditors. .

The strong support by the primary creditor constituencies that cast ballots reflects the overall fairness of the Plan and the acknowledgment by holders of Claims that the Plan has been proposed in good faith and for proper purposes. *See In re Eagle-Picher Ind. Inc.*, 203 B.R. 256, 274 (Bankr. E.D. Pa. 1999) (finding that a plan of reorganization was proposed in good faith when, among other things, it was based on extensive arms length negotiations among the plan proponent and other parties in interest). Accordingly, the requirements of Section 1129(a)(3) of the Bankruptcy Code have been fully satisfied.

DMS_US 51188577v3

**4.      All Payments to Be Made by the Trustee in Connection with the Chapter 11 Case Are Subject to the Approval of the Court as Required by 11 U.S.C. § 1129(a)(4)**

Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). In essence, this subsection requires that any and all fees promised or received from the Estate case must be disclosed and subject to the Court's review. *See In re Johns-Manville Corp.*, 68 BR. 618, 632 (Bankr. S.D.NY. 1986) (concluding that a court must be permitted to review and approve reasonableness of professional fees made from estate assets), *aff'd*, 78 B.R. 407 (S.D.NY. 1987), *aff'd sub nom, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

All payments made or to be made by the Trustee for services or for costs or expenses in connection with the Chapter 11 Case, including all Professional Fee Claims, are subject to fee application, notice and hearing, and approval of the Court. Section 3.1 of the Plan provides for the payment only of Administrative Claims that are allowed by that process.

**5.      11 U.S.C. § 1129(a)(5) Is Inapplicable.**

Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the proponent discloses the identify of those individuals who will serve as management of the reorganized debtor, the identity of any inside to be employed or retained by the reorganized debtor, and the compensation proposed to be paid to such inside. In addition, under section 1129(a)(5)(A)(ii), the appointment or continuation in office of existing management must be considered with the interests of creditors, equity security holders and public policy.

11

Because the Plan provides for a liquidation of the Debtor's assets and the distribution of proceeds by the Trustee, Section 1129(a)(5) is inapplicable.

### 6. 11 U.S.C. § 1129(a)(6) Is Inapplicable.

Bankruptcy Code Section 1129(a)(6) generally mandates that any regulatory commission with jurisdiction over the rates of a debtor after plan confirmation approve any rate changes contained in the plan. That statute is not applicable because the Trustee in liquidating the ELC assets is not subject to the review of any regulatory commission.

### 7. The Plan Meets the "Best Interests of Creditors" Test of 11 U.S.C. § 1129(a)(7).

Bankruptcy Code Section 1129(a)(7) requires that a chapter 11 plan meet the "best interest of creditors" test. Under that test, each holder of a claim or interest must either accept the plan or receive in terms of present value no less under the plan than what such person would have received in a chapter 7 liquidation. *Kane vs. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *In re Cassis Bistro, Inc.*, 188 B.R. 472, 475 (Bankr. S.D. Fla. 1995). Such an analysis requires a determination of the value of the plan distributions in order to analyze whether creditors are receiving at least the equivalent of what they would receive in a chapter 7 case. *In re Mortgage Inv. Co. of El Paso*, 111 B.R. 604, 615 (Bankr. W.D. Tex. 1990) (citing *In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985), *aff'd*, 785 F.2d 1033 (5th Cir. 1986)).

As set forth in Section II, pages 17 to 18, of the Disclosure Statement, the Trustee estimates that dividends payable to holders of Allowed General Unsecured Claims will be in the range of 25% for "Opt Out" creditors to 36% for "Opt In" creditors. The detailed factual and legal analyses contained in the Trustee's report regarding his investigation and analysis of potential Estate claims against Fifth Third [Docket No. 1166] (the "Trustee Report") and the Disclosure Statement (at pages 48-94) support the Trustee's professional opinion that unsecured

creditors would fare much worse if litigation were prosecuted against Fifth Third to conclusion by a chapter 7 trustee than creditors will realize under the Fifth Third Settlement and the Plan. Accordingly, the distribution of value to holders of Allowed General Unsecured Claims under the Plan is greater than those creditors would receive in a chapter 7 liquidation of ELC, and the Plan satisfies the requirements of Section 1129(a)(7).

**8.      The Plan Has Been Accepted by All Required Creditor Constituencies in Accordance with 11 U.S.C. § 1129(a)(8).**

Bankruptcy Code Section 1129(a)(8) requires that, with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan.  Except for Other Secured Claims in Class 2, all Claims are impaired under the Plan.  As detailed in the Agent Declaration, all impaired Classes of Claims voted to accept the Plan, and therefore, the requirements of Bankruptcy Code Section 1129(a)(8) are satisfied.  Alternatively, to the extent the requirements of Section 1129(a)(8) have not been satisfied, the Plan meets the cramdown requirements of Section 1129(b)(2)(A) with respect to Class 2 if that class is deemed to have been impaired and to have rejected the Plan pursuant to Bankruptcy Code Section 1126(g). Moreover, the cramdown requirements of section 1129(b) are satisfied as to Class 4, if that class were somehow deemed not to have accepted, because the Plan does not provide a distribution to Class 5 Allowed Interests, and there is no other class junior to Class 4 that is receiving a distribution or retaining any property under the Plan.

**9.      The Plan Treats the Holders of Priority and Tax Claims in Accordance with 11 U.S.C. § 1229(a)(9).**

Bankruptcy Code Section 1129(a)(9) provides guidelines for the treatment of claims entitled to priority under Sections 507(a)(1)-(8).  Under Section 1129(a)(9)(A), holders of Section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim. Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise

13

agreed to a different treatment, holders of Section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the Plan or, if not, cash equal to the allowed amount of such claim.  Under Article 3.2 of the Plan, holders of Allowed Priority Tax Claims will receive  the treatment consistent with Section 1129(a)(9)(C).

### 10.    At Least One Impaired Class Has Accepted the Plan as Required by 11 U.S.C. § 1129(a)(10).

Bankruptcy Code Section 1129(a)(10) provides that if one or more classes of claims is impaired under a plan, at least one class must have accepted the plan, without including any votes of insiders.  Class 1 (the Allowed Secured Claim of Fifth Third) and Class 4 (Allowed General Unsecured Claims) are impaired under the Plan and voted to accept the Plan.  Without including any acceptance of the Plan by any insider, Class 4 voted to accept the Plan.  The Plan therefore satisfies the requirements of Section 1129(a)(10).

### 11.    11 U.S.C. § 1129(a)(11) is Inapplicable.

Bankruptcy Code Section 1129(a)(11) provides that the Court must determine confirmation of the Plan is "not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor." 11 U.S.C. §1129(a)(11).  As the Plan is itself a plan of liquidation, Section 1129(a)(11) of the Bankruptcy Code is not applicable.  In order to establish feasibility, a plan does not have to be a guarantee of success but only provide a reasonable assurance of success.  *In re Haas*, 162 F.3d 1087, 1090 (11th Cir. 1998) ("The Plan itself must offer a reasonable prospect of success and be workable."); *In re New Midland Plaza Assocs.*, 247 B.R. 877, 884 (Bankr. S.D. Fla. 2000); *In re Di Maria*, 202 B.R. 634, 639 (Bankr. S.D. Fla. 1996).

14

**12.** **The Plan Provides for Payment of all Bankruptcy Fees in Accordance with 11 U.S.C. § 1129(a)(12).**

Bankruptcy Code Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the court at the hearing on confirmation of the plan, have been paid, or the plan provides for the payment of all such fees on the effective date of the plan. Section 3.1 of the Plan provides that all fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by the Trustee. Accordingly, the Plan complies with the requirements of section 1129(a)(12).

**13.** **11 U.S.C. § 1129 (a)(13) Governing Retiree Benefits as Defines under the Code Does Not Apply to the Plan.**

Bankruptcy Code Section 1129(a)(13) does not apply because neither ELC nor the Trustee maintains a retirement plan as defined by Bankruptcy Code Section 1114, and therefore the Plan does not require the payment of retiree benefits. Accordingly, Section 1129(a)(13) is not applicable.

**14.** **11 U.S.C. § 1129(a)(14): Domestic Support Obligations.**

Bankruptcy Code Section 1129(a)(14) imposes certain requirements on debtors who have domestic support obligations mandated by judicial or administrative order or by statute. Neither the Trustee nor the Debtor is not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore Section 1129(a)(14) is inapplicable.

**15.** **11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim**

Bankruptcy Code Section 1129(a)(15) dictates certain requirements that must be met when the holder of an allowed unsecured claim objects to confirmation of a chapter 11 plan filed by an individual debtor. Neither the Debtor nor the Trustee are an individual, and therefore Section 1129(a)(15) is inapplicable.

DMS_US 51188577v3

**16.     11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities**

Bankruptcy Code Section 1129(a)(16) conditions plan confirmation on the fact that all transfers under the plan will be made in accordance with applicable "nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a money, business, or commercial corporation or trust." Although the wording is arguably imprecise, Congress was clear this provision was meant to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust." H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 145 (2005). The thrust of the provision is to limit the permissible transfers by nonprofit entities. Because the Debtor was a moneyed business, Section 1129(a)(16) is inapplicable.

**III.     THE PLAN MEETS THE STANDARDS OF 11 U.S.C. § 1129(d) BECAUSE THE PRINCIPAL PURPOSE OF THE PLAN IS NOT THE AVOIDANCE OF TAXES OR SECTION 5 OF THE SECURITIES ACT OF 1933.**

Bankruptcy Code Section 1129(d) states that on the request of a governmental unit, "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933." The principal purpose of the Plan is not the avoidance of taxes or the avoidance of Section 5 of the Securities Act of 933. Therefore, no governmental unit can meet its burden under Section 1129(d), and the Plan should be confirmed.

**IV.     THE FIFTH THIRD SETTLEMENT SHOULD BE APPROVED.**

The Plan reflects the terms and conditions of a settlement and compromise—the Fifth Third Settlement—between the ELC Estate and Fifth Third.[5] The Plan constitutes a motion to approve a settlement and compromise under Bankruptcy Rule 9019. The Trustee believes that

---

[5]     The terms and conditions of the Fifth Third Settlement are described on pages 94 through 95 of the Disclosure Statement.

DMS_US 51188577v3

the Fifth Third Settlement is fair and equitable and is in the best interests of the ELC Estate and

its creditors, and therefore should be approved.

It is well settled that "compromises are favored in bankruptcy." *John S. Marandas, P.C.*

*v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)).  Moreover, the judge is not to

substitute his or her judgment for that of the debtor or trustee.  *In re Edwards*, 228 B.R. 552, 569

(Bankr. E.D. Pa. 1998).

In addition, the decision whether to approve a compromise under Rule 9019 is committed

to the sound discretion of the Court, which must determine if the compromise is fair, reasonable,

and in the interest of the estate.  *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585-86

(7th Cir. 1994) and *In re Doctors Hospital of Hyde Park, Inc.*, 474 F.3d 421 (7th Cir. 2007)).

The "best interests" test requires a debtor to show that the settlement is "fair and equitable." *Id.*

at 586; *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

*Anderson*, 390 U.S. 414, 424 (1968).

In determining whether a proposed settlement is fair and equitable, the Court should

"apprise [itself] 'of all facts necessary for an intelligent and objective opinion of the probabilities

of success should the claim be litigated.'"  *Depoister*, 36 F. 3d at 586 (quoting *TMT Trailer*

*Ferry*, 390 U.S. at 424).

The Fifth Third Settlement is a comprehensive resolution of all disputes and is the

framework for resolving the claims of other creditors.  The various pieces and analytical bases

for the Fifth Third Settlement are described in detail in the Trustee Report and Articles II, VI

and VII of the Disclosure Statement.  The Court is already familiar with the terms and conditions

of the Fifth Third Settlement.  The Fifth Third Settlement also provides the means for funding

distributions under the Plan.  For reasons detailed in the Trustee Report, the Disclosure

Statement and in the James A. Knauer Affidavit, the Trustee believes that the Fifth Third

Settlement is in the best interests of the ELC Estate and creditors. The Fifth Third Settlement

eliminates the likelihood of enormous, expensive, time consuming litigation and allows the

Trustee to proceed towards the confirmation of a chapter 11 plan that is supported by the major

creditor constituencies. The terms of the Plan are the result of arms' length negotiations between

the Trustee, Fifth Third, and other creditors with whom the trustee has settled during in the

chapter 11 case. The Trustee believes that the Fifth Third Settlement and the Plan fairly resolve

all of the significant claims and issues between the Estate and Fifth Third.

As described in the Disclosure Statement and in the Knauer Affidavit, there is more than

sufficient justification for the Estate to enter into Fifth Third Settlement. The Trustee therefore

requests that the Court approve the Fifth Third Settlement as part of the order confirming the

Plan.

## V.    EXCULPATION PROVISION IN THE PLAN SHOULD BE APPROVED.

The Plan contemplates exculpation of the Trustee and his professionals from suit by

disgruntled parties. The exculpation of the Trustee and his professionals is provided in Article

7.4 of the Plan.

The release/exculpation provisions of the Plan are permitted under the Bankruptcy Code

and applicable case law. Bankruptcy Code Section 524(e) provides that "[e]xcept as provided in

subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of

any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The

exculpation of the Trustee and his professionals through the Plan is authorized by the Bankruptcy

Code and is appropriate. *See* 11 U.S.C. §§ 524 and 1141(d).

While courts are split on the issue of whether Section 524(e) prohibits the inclusion of

release and/or exculpation provisions for non-debtor third parties in a chapter 11 plan, the

18

majority of courts (including the Seventh Circuit) hold that bankruptcy courts may use their equitable powers under Bankruptcy Code Section 105(a) to approve third party release/exculpation provisions under appropriate factual circumstances.[6] *See In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (noting that a *per se* rule prohibiting all non-debtor releases in a chapter 11 plan would be unwarranted and a misreading of Section 524(e)); *In re Dow Corning Corp.*, 280 F.3d 648, 657 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (outlining the "hallmarks of permissible non-consensual releases— fairness, necessity to the reorganization, and specific factual finding to support these conclusions"); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292-93 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993) (approving the terms of a settlement agreement that enjoined a group of securities claimants from bringing any future actions against the debtor's directors and officers); *In re A.H. Robins Co. Inc.*, 880 F.2d 694, 701-02 (4th Cir. 1989) (permitting injunction in chapter 11 plan that prevented tort claimants from seeking recovery from non-debtor insurers and medical malpractice providers that contributed to settlement arrangement provided through the plan).

The Bluegrass Creditors cite the Seventh Circuit's decision in *In re Airadigm Communications Inc.* 519 F.3d 640 (7th Cir. 2008) as authority for the invalidity of the exculpation provisions of the Plan. *Airadigm* is actually strong authority supporting those provisions. In that case the Seventh Circuit upheld a chapter 11 plan's release of a party ("TDS")

---

[6]   The majority's position is buttressed by the legislative history of Section 524. As part of the Bankruptcy Reform Act of 1994, Congress added subsection (g) to Bankruptcy Code Section 524, which authorizes the release of third parties in connection with chapter 11 cases involving asbestos liability, provided that certain conditions are met. See 11 U.S.C. § 524(g). Although subsection (g) provides that it operates "[n]otwithstanding the provisions of section 524(e)," the legislative history indicates that Congress declined to take a position that other third party releases were not enforceable:

DMS_US 51188577v3

that provided financing to the chapter 11 debtor for any claim "in connection with" the reorganization except for "willful misconduct".  *See Airadigm* at 655.  The Seventh Circuit held that a bankruptcy court has broad discretion under its broad "all writs" Bankruptcy Code § 105 equitable powers to approve the release of third parties under a chapter 11 plan.  The Seventh Circuit explained that "[u]ltimately, whether a release is 'appropriate' for the reorganization is fact intensive and depends on the nature of the reorganization."  519 F.3d at 657.

Here the exculpation of the Trustee and his professionals is with respect to matters played out in front of the Court that have led to the proposal and confirmation of the Plan.  The Court is charged as the "gate keeper" to allow or disallow the types of potential claims by disgruntled creditors covered by the exculpation provisions under the "Barton Doctrine."  *See In re Linton* 136 F.3d 544 (7th Cir. 1998).  The exculpation provision of Article 7.4 is precisely the type of release that is related directly to the chapter 11 case, that the Seventh Circuit approved in *Airadigm*.  Under the exculpation provided by the Plan, the Trustee and his professionals may proceed to seek recoveries on behalf of the Estate without fear of the assertion of baseless counterclaims by the targets of the Trustee's claims.  Without the exculpation, those types of counterclaims might be asserted as litigation tactics.  Under the exculpation provisions, the Estate will be spared the delay and cost of the defense of such claims by the Trustee and his professionals.

## **CONCLUSION**

Based on the foregoing, the Trustee respectfully submits that the Plan fully complies with and satisfies all applicable requirements of the Bankruptcy Code necessary for the Plan to be confirmed.  The Trustee therefore requests that the Court overrule all objections and confirm the Plan.

20

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By:   /s/ Terry E. Hall

James M. Carr (#3128-49)                    *Counsel for James A. Knauer, Chapter 11 Trustee*
Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)
Harmony Mappes(#27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com

Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile:  (317) 569-4800
wendy.ponader@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| David L. Abt<br>davidabt@mwt.net | C. R. Bowles, Jr<br>cbowles@ bgdlegal.com | John Hunt Lovell<br>john@lovell-law.net |
| Mark A. Robinson<br>mrobinson@vhrlaw.com | Jeffrey R. Erler<br>jeffe@bellnunnally.com | Edward M King<br>tking@fbtlaw.com |
| Randall D. LaTour<br>rdlatour@vorys.com | John R. Carr, III<br>jrciii@acs-law.com | Bret S. Clement<br>bclement@acs-law.com |
| Daniel J. Donnellon<br>ddonnellon@ficlaw.com | Stephen A. Weigand<br>sweigand@ficlaw.com | John Frederick Massouh<br>john.massouh@sprouselaw.com |
| John W. Ames<br>james@bgdlegal.com | Robert Hughes Foree<br>robertforee@bellsouth.net | Kim Martin Lewis<br>kim.lewis@dinslaw.com |

21

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Meredith R. Thomas
mthomas@daleeke.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

David L. LeBas
dlebas@namanhowell.com

Jessica E. Yates
jyates@swlaw.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Todd J. Johnston
tjohnston@mcjllp.com

Karen L. Lobring
lobring@msn.com

Elliott D. Levin
edl@rubin-levin.net

Sean T. White
swhite@hooverhull.com

Michael W. McClain
mike@kentuckytrial.com

James Edwin McGhee
mcghee@derbycitylaw.com

Jerald I. Ancel
jancel@taftlaw.com

David Alan Domina
dad@dominalaw.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Michael Wayne Oyler
moyler@rwsvlaw.com

James E. Rossow
jim@rubin-levin.net

Steven A. Brehm
sbrehm@bgdlegal.com

James M. Carr
james.carr@faegrebd.com

Shawna M. Eikenberry
shawna.eikenberry@faegrebd.com

James A. Knauer
jak@kgrlaw.com

Christie A. Moore
cm@gdm.com

Peter M. Gannott
pgannott@gannottlaw.com

Ivana B. Shallcross
ishallcross@ bgdlegal.com

William Robert Meyer, II
rmeyer@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John Huffaker
john.huffaker@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Walter Scott Newbern
wsnewbern@msn.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

John M. Rogers
johnr@rubin-levin.net

Jay P. Kennedy
jpk@kgrlaw.com

William E Smith
wsmith@k-glaw.com

Thomas C Scherer
tscherer@bgdlegal.com

Jeffrey J. Graham
jgraham@taftlaw.com

Kent A Britt
kabritt@vorys.com

Jeffrey L Hunter
jeff.hunter@usdoj.gov

Jason W. Cottrell
jwc@stuartlaw.com

James B. Lind
jblind@vorys.com

Anthony G. Raluy
traluy@fbhlaw.net

Jack S. Dawson
jdawson@millerdollarhide.com

Terry E. Hall
terry.hall@faegrebd.com

Erick P. Knoblock
eknoblock@daleeke.com

Shiv Ghuman O'Neill
shiv.oneill@faegrebd.com

Eric C. Redman
ksmith@redmanludwig.com

Deborah Caruso
dcaruso@daleeke.com

Allen Morris
amorris@stites.com

James T. Young
james@rubin-levin.net

John M. Thompson
john.thompson@crowedunlevy.com

Matthew J. Ochs
kim.maynes@moyewhite.com

T. Kent Barber
kbarber@dlgfirm.com

Kirk Crutcher
kcrutcher@mcs-law.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Lisa Koch Bryant
courtmail@fbhlaw.net

John David Hoover
jdhoover@hooverhull.com

John R. Burns
john.burns@faegrebd.com

Kayla D. Britton
kayla.britton@faegrebd.com

David A. Laird
david.laird@moyewhite.com

Trevor L. Earl
tearl@rwsvlaw.com

Joshua N. Stine
kabritt@vorys.com

Amelia Martin Adams
aadams@dlgfirm.com

Robert A. Bell
rabell@vorys.com

Melissa S. Giberson
msgiberson@vorys.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Dustin R. DeNeal
dustin.deneal@faegrebd.com

Jay Jaffe
jay.jaffe@faegrebd.com

Harmony A. Mappes
harmony.mappes@faegrebd.com

Wendy W. Ponader
wendy.ponader@faegrebd.com

Joe T. Roberts
jratty@windstream.net

22

DMS_US 51188577v3

Joseph H. Rogers
jrogers@millerdollarhide.com

James E. Smith
jsmith@smithakins.com

Robert K. Stanley
robert.stanley@faegrebd.com

Andrew D. Stosberg
astosberg@lloydmc.com

Kevin M. Toner
kevin.toner@faegrebd.com

Andrea L. Wasson
andrea@wassonthornhill.com

Christopher M. Trapp
ctrapp@rubin-levin.net

Eric W. Richardson
ewrichardson@vorys.com

Joshua Elliott Clubb
joshclubb@gmail.com

Jennifer Watt
jwatt@kgrlaw.com

I further certify that on December 6, 2012, a copy of the foregoing pleading was served via electronic mail transmission on the following:

Ashley S. Rusher
asr@blancolaw.com

Darla J. Gabbitas
darla.gabbitas@moyewhite.com

/s/ Terry E. Hall

DMS_US 51188577v3