**SO ORDERED: December 17, 2012.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020**
**CONFIRMING TRUSTEE'S FIRST AMENDED CHAPTER 11**
**PLAN OF LIQUIDATION AS IMMATERIALLY MODIFIED**

This matter is before the Court for the entry of an order confirming the Trustee's

First Amended Chapter 11 Plan of Liquidation, dated October 26, 2012 (the "Plan") [Docket No.

1490], as it may be immaterially modified, filed by James A. Knauer, trustee ("Trustee") of the

estate ("Estate") of Eastern Livestock Co., LLC ("ELC" or "Debtor") in the above captioned case

("Chapter 11 Case").  The Plan is attached as Exhibit A to this Order.   Any capitalized term not

defined in this Order has the definition given it in the Plan.

In making the following findings of fact and conclusions of law and confirming

the Plan, this Court considered, evaluated, and weighed the following:

DMS_US 51174423v5

(i) *Brief in Support of Confirmation of Trustee's First Amended Chapter 11 Plan of Liquidation* ("Brief") and the *Affidavit Of James A. Knauer In Support Of Confirmation Of Trustee's First Amended Chapter 11 Plan of Liquidation* ("Trustee Affidavit") attached as Exhibit A to the Brief [Docket No. 1600];

(ii) *Declaration of Noticing and Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection With Trustee's First Amended Chapter 11 Plan of Liquidation* filed by Varouj Bakshian of the BMC Group, Inc., the Trustee's approved noticing, claims, and balloting agent in the Chapter 11 Case ("BMC Declaration") [Docket No. 1582];

(iii) *Trustee's Report of Provisional Ballots* ("Provisional Ballot Report") [Docket No. 1581];

(iv) *Notice of Change of Ballot Regarding Trustee's First Amended Chapter 11 Plan of Liquidation* filed on December 6, 2012 by Joplin Regional Stockyards, Inc. [Docket No. 1601];

(v) *Notice of Change of Ballot Regarding Trustee's First Amended Chapter 11 Plan of Liquidation* filed on December 7, 2012 by AB Livestock, LLC [Docket No. 1603];

(vi) The following objections, letters, and reservations of rights:

    a.    *Reservation of Rights in Connection With Trustee's First Amended Chapter 11 Plan of Liquidation* filed December 4, 2012 by Bluegrass Stockyards, LLC, Bluegrass Stockyards of Campbellsville, LLC, Bluegrass Stockyards East, LLC, Bluegrass-Maysville Stockyards, LLC, Bluegrass Stockyards of Richmond, LLC, Bluegrass South Livestock Market, LLC, Alton Darnell, East Tennessee Livestock Center, Inc., Mosely Cattle Auction, LLC, Piedmont Livestock Company, Inc., and Southeast Livestock Exchange, LLC ("Bluegrass Et Al. Objection") [Docket No. 1575],

b.      *Objection To Confirmation of Trustee's Chapter 11 Plan of Liquidation* filed December 4, 2012 by Taylor Reed and Ron Reed ("Reed Objection") [Docket No. 1574],

c.      *Reservation of Rights Related to Trustee's First Amended  Chapter 11 Plan of Liquidation* filed December 4, 2012 by Joplin Regional Stockyards, Inc. ("Joplin Objection") [Docket No. 1576],

d.      *Objection and Joinder in Reservation of Rights Related To the Trustee's First Amended Chapter 11 Plan of Liquidation* filed December 4, 2012 by Alabama Livestock Auction, Inc., Sealy And Sons Livestock, LLP, Athens Stockyard, LLC, CPC Livestock, LLC, Edwin A. Strickland, and Strickland Farms ("Alabama Et Al. Objection") [Docket No. 1577], and

e.      *Letter* dated December 3, 2012 from Tim Starks, President of the Livestock Marketing Association to this Court filed on December 4, 2012 ("LMA Letter") [Docket No. 1573].

(v)      Other evidence admitted and arguments of counsel made at the hearing held on November 7, 2012 to consider confirmation of the Plan ("Confirmation Hearing"); and

(vi)      The entire record of this Chapter 11 Case.

After due deliberation and finding good and sufficient cause, this Court makes the following findings of fact, conclusions of law, and enters this Order confirming the Plan.

THIS COURT FINDS AND CONCLUDES:

A.      Filing Of First Amended Plan.  On July 26, 2012, the Trustee filed the *Trustee's Chapter 11 Plan of Liquidation* [Docket No. 1255] and the *Trustee's Disclosure Statement With Respect To The Trustee's Chapter 11 Plan Of Liquidation* [Docket No. 1256].  On October 26,

2012, the Trustee filed the *Trustee's First Amended Disclosure Statement With Respect to the Trustee's Chapter 11 Plan of Liquidation* [Docket No. 1489] ("Disclosure Statement") and the *Trustee's First Amended Chapter 11 Plan of Liquidation* [Docket No. 1490].

      B.       Order Approving Disclosure Statement.  Following a duly noticed hearing held on October 31, 2012, the Court entered its order approving the Disclosure Statement ("Disclosure Statement Order") as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 [Docket No. 1516].  The Disclosure Statement Order (i) fixed December 7, 2012 as the date for the Confirmation Hearing, (ii) established voting and objection deadlines with respect to the Plan and the Confirmation Hearing, and (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.

      C.       Classes of Claims Under the Plan.  The Plan provides for five classes of Claims: Class 1 consists of the Allowed Secured Claim of Fifth Third Bank.  Class 2 consists of Allowed Other Secured Claims.  Class 3 consists of Allowed Non-Tax Priority Unsecured Claims.  Class 4 consists of Allowed General Unsecured Claims.  Class 5 consists of the equity interests in the Debtor.  Classes 1 and 4 were identified as impaired classes.  Classes 2 and 3 were identified as unimpaired classes and deemed to accept the Plan.  The equity interests in Class 5 were cancelled and Class 5 was deemed to reject the Plan.

      D.       Transmittal Of Solicitation Package.  Pursuant to the Disclosure Statement Order, a "solicitation" packet consisting of (1) a notice of the voting deadlines, the date of the Confirmation Hearing, and the deadline for objections; (2) the Disclosure Statement and Plan; (3) Disclosure Statement Order; and (4) a ballot and return envelope for voting on the Plan ("Ballot") was transmitted to Classes 1 and 4 (collectively, the "Voting Classes") in accordance with Fed. R. Bankr, P. 3017(d), all as set forth in the BMC Declaration ("Solicitation Packet").

Also pursuant to the Disclosure Statement Order, the holders of claims in Classes 2, 3, and 5 (the "Non-Voting Classes"), contract counter-parties that did not assert a Class 4 Claim, all parties listed on the Bankruptcy Rule 2002 service list and all creditors listed on the Creditors' Matrix were served with a copy of the Disclosure Statement Order and a Notice Of Approval Of Disclosure Statement, Solicitation Of Votes On The Plan, And Confirmation Hearing – Non-Voting ("Non-Voting Transmittal").  The Non-Voting Transmittal provided information to the recipients of the dates established for the Confirmation Hearing, the deadlines to vote and to object, how to receive a copy of the Disclosure Statement and Plan and how to get a Ballot if they believed they were entitled to vote.  All attorneys who entered an appearance or requested notice in the Chapter 11 Case were served with a complete Solicitation Packet including a Ballot.

E.    Provisional Ballots.  On November 21, 2012 following the monthly omnibus hearing held on November 19, 2012 and at the suggestion of this Court, the Trustee mailed a Solicitation Packet to the parties receiving a Non-Voting Transmittal with a Ballot marked "Provisional" ("Provisional Ballot") to persons whose filed claims asserted a claim in Class 2 or Class 3 under the Plan ("Provisional Ballot Claims").  By written notice, the Trustee informed the holders of the Provisional Ballot Claims that the Trustee may object to the asserted characterization of their claim as a secured claim in Class 2 or a priority unsecured claim in Class 3 and provided the creditor the opportunity to submit a Provisional Ballot in Class 4 without prejudice to their asserted position as a secured or priority unsecured creditor. Provisional Ballots were to be returned to the Trustee postmarked no later than November 28, 2012.  The Trustee filed a notice of the transmittal of the Provisional Ballots, with all documents transmitted attached as an exhibit thereto, on November 21, 2012 [Docket No. 1553].  A total of fourteen Provisional Ballots were returned indicating a vote to accept or reject the Plan.

F.     <u>Voting Reports</u>.  On December 5, 2012, the Trustee filed the BMC Declaration certifying the method and results of the Ballot tabulation by BMC for each of the Voting Classes voting to accept or reject the Plan (*See BMC Declaration*, Exhibit 1 [Docket No. 1582]).  On December 5, 2012, the Trustee filed the Provisional Ballot Report, reporting the Provisional Ballots received and the votes cast to accept or reject the Plan [Docket No. 1581].  The BMC Declaration indicated that the Voting Classes (Classes 1 and 4) under the Plan voted to accept the Plan by more than half in number and two-thirds in dollar amount of the valid Ballots returned. The BMC Declaration reported Class 1 as accepting 100% in number and value.  The BMC Declaration reported Class 4 accepted by 80.3% in number and 71.01% in value of the valid Ballots voted.  The Provisional Ballot Report identifying the Provisional Ballots cast for and against the Plan under Class 4, when added to the totals reported in the BMC Declaration for Class 4 showed that Class 4 continued to accept the Plan by more than half in number (75%) and two-thirds in dollar amount (69.15%).  On December 6, 2012, Joplin Regional Stockyards, Inc. ("<u>Joplin</u>") filed a *Notice of Change of Ballot Regarding Trustee's First Amended Chapter 11 Plan of Liquidation* [Docket No. 1601] withdrawing its Ballot as a Class 4 creditor in the amount of $1,276,905.75 against the Plan and submitting a revised Ballot in the same amount voting in favor of the Plan as a Class 4 creditor.  On December 7, 2012, prior to the Confirmation Hearing, AB Livestock, LLC ("<u>AB Livestock</u>") filed its *Notice of Change of Ballot Regarding Trustee's First Amended Chapter 11 Plan of Liquidation* [Docket No. 1603] withdrawing its Ballot as a Class 4 creditor in the amount of $2,042,357.52 against the Plan and submitting a revised Ballot in the same amount voting in favor of the Plan as a Class 4 creditor.  The votes of Joplin and AB Livestock in favor of the Plan resulted in a yet still higher percentage of acceptance of the Plan by the Class 4 creditors both in number and amount.  No party objected to the BMC Declaration,

the Trustee's Provisional Ballot Report or the revised Ballots submitted by Joplin or AB

Livestock, and the BMC Declaration, the Trustee's Provisional Ballot Report, the revised Ballots

submitted by Joplin and AB Livestock were admitted into evidence without objection at the

Confirmation Hearing.  No party objected to the Court's observation that the Plan had been

accepted by the Voting Classes pursuant to the proferred and admitted evidence.

G.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. § 157(b)(2) And

1334(a)).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is

a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.

H.      Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11

Case and all related cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered, and all

evidence and arguments made, proffered or admitted at the hearings held before the Court during

the pendency of the Chapter 11 Case.

I.      Transmittal And Mailing Of Materials: Notice.  Due, adequate and sufficient

notice of the Disclosure Statement and Plan and of the Confirmation Hearing, along with all

deadlines for voting on or filing objections to the Plan, has been given to all known holders of

Claims in accordance with the procedures set forth in the Disclosure Statement Order.  The

Disclosure Statement, Plan, Ballots, Disclosure Statement Order, and notice of the date of the

Confirmation Hearing and the deadlines for voting and objecting were transmitted and served in

substantial compliance with the Disclosure Statement Order, the Federal Rules of Bankruptcy

Procedure ("Bankruptcy Rules") and the local rules applicable to the Bankruptcy Court for the southern District of Indiana ("Local Rules"), and such transmittal and service were adequate and sufficient and no other or further notice is or shall be required.

J.       Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Trustee and his agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order and all other applicable rules, laws, and regulations. The Trustee and his agents, representatives, attorneys, and advisors are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article 11.8 of the Plan as Article 11.8 as modified by this Order.

K.       Ballots.  All procedures used to distribute solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

L.       Impaired Classes Voted To Accept The Plan.  As evidenced by the Voting Report, which certified both the method and results of the voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code, at least one impaired Class of claims, determined without including any acceptance by an insider of the Debtor, has voted to accept the Plan.  Impaired Classes 1 and 4 accepted the Plan by more than half in number and two-thirds in amount of the valid Ballots returned, including all Provisional Ballots returned and including the Joplin and AB Livestock Ballots voting to accept the Plan.

M.       Class 5 Deemed To Have Rejected The Plan.  Holders of Interests in Class 5 are not entitled to receive any distribution under the Plan on account of their Interests.  Since none of

the holders of Interests in Class 5 are unconditionally entitled to receive a distribution under the

Plan, pursuant to section 1126(g) of the Bankruptcy Code, this Class is conclusively presumed to

have rejected the Plan, and the votes of holders of Interests in this Class therefore were not

required to be solicited.

N.    <u>Presumed Acceptances by Unimpaired Classes</u>.  Claims in Classes 2 and 3 are

unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code and/or the

Disclosure Statement Order, holders of Claims in Classes 2 and 3 are conclusively presumed to

have accepted the Plan, and the votes of holders of Claims in Classes 2 and 3 were not required

to be solicited.  The Trustee's solicitation of the holders of Claims in Classes 2 and 3 and the

return of Provisional Ballots indicating a vote in Class 4 by those holders and the votes recorded

on the Provisional Ballots recognized in this Order is not a determination by this Court of the

validity of or the secured, unsecured, priority or non-priority status of the claims held by

creditors who returned Provisional Ballots.  The inclusion of the Provisional Ballots in the

analysis of Class 4 votes does not change the result that Class 4 accepted the Plan by more than

half in number and two-thirds in value of the valid Ballots returned.

O.    <u>Burden Of Proof</u>.  The Trustee Affidavit was admitted into evidence without

objection at the Confirmation Hearing.  The Trustee has met his burden of proving the elements

of sections 1129(a) and (b) of the Bankruptcy Code.

P.    <u>Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan

complies with the applicable provisions of the Bankruptcy Code, thereby satisfying

section 1129(a)(1) of the Bankruptcy Code as follows:

1.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition
to Administrative Claims and Priority Tax Claims (which are not required to be
classified), Article 4 of the Plan designates four (4) Classes of Claims and one (1) Class
of Interests.  The Claims and Interests placed in each Class are substantially similar to

other Claims or Interests in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Specification Of Treatment Of Impaired Classes (11 U.S.C. 1123(a)(3)). The Plan specifies the Classes of Claims and Interests that are impaired under the Plan and the treatment of impaired Claims and Interests in all such Classes. Thus, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

3.      No Impermissible Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim or the law allows for a different treatment, for example with respect to the Plan's provisions for treatment of certain secured Claims and mechanic's liens. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

4.      Implementation Of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including, without limitation, (a) a means to distribute the assets to Allowed Claims and to reserve for Disputed Claims; and (b) the means to fund the completion of litigation and claims reconciliation. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

5.      Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6)). No securities are issued under the Plan and section 1123(a)(6) is not applicable.

6.      Selection Of Officers And Directors (11 U.S.C. § 1123(a)(7)). The Trustee informed the Creditors that the Trustee will continue in his capacity as Trustee subject to the oversight of this Court. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied to the extent that Creditors are entitled to notice and opportunity to object to the persons intended to implement the Plan.

7.      Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Allowed Claims, (b) the disposition of executory contracts and unexpired leases, (c) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of disputed Claims, (e) allowance of certain Claims, (f) injunction binding creditors to a treatment under the Plan, and (g) exculpation.

8.      Fed. R. Bankr. P. 3016(a). The Plan is dated October 26, 2012, and identifies the Trustee as submitting it, thereby satisfying Fed R. Bankr. P. 3016(a).

Q.    The Trustee's Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The

Trustee has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code.  Specifically, the Debtor is a proper debtor under

section 109 of the Bankruptcy Code and the Trustee is the proper proponent of the Plan under

section 1121(a) of the Bankruptcy Code.  The Trustee has complied with the applicable

provisions of the Bankruptcy Code, including as provided or permitted by Orders of this Court,

the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the

Plan, the Disclosure Statement, the Ballots and related documents and notices, and in soliciting

and tabulating votes on the Plan.

R.    Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3)).  Following arms-length

and good faith negotiations among the Trustee and other parties in interest, the Trustee has

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in

good faith, the Court has examined the totality of the circumstances surrounding the filing of the

Chapter 11 Case, the pleadings filed in the Chapter 11 Case and its related proceedings,

statements and arguments made at hearings before this court, and the formulation and provisions

of the Plan.  *See* Bankruptcy Rule 3020(b).  The Court finds that the Plan was proposed with the

legitimate and honest purpose of maximizing the value of the recovery to the holders of Allowed

Claims under the complex and unique circumstances of this Chapter 11 Case.

S.    Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4)).  Any

payment made or to be made by the Estate for services or for costs and expenses in connection

with the Chapter 11 Case, including all administrative expense under sections 503 and 507 of the

Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Case, has been

approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

       T.       <u>Directors, Officers And Insiders (11 U.S.C. § 1129(a)(5))</u>.  Not applicable.

       U.       <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Not applicable.

       V.       <u>Best Interests Test (11 U.S.C. 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation discussion in the Disclosure Statement, and evidence admitted at the Confirmation Hearing (1) are persuasive and credible as of the dates such evidence was prepared, presented, or proffered, (2) have not been controverted by other persuasive evidence or have not been challenged, (3) are based upon reasonable and sound assumptions of the effect on distributions from the Estate upon conversion to a case under chapter 7 of the Bankruptcy Code, and (4) reasonably establishes that each holder of a Claim in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Estate were liquidated under chapter 7 of the Bankruptcy Code on such date.   The Court approved an immaterial modification at the Confirmation Hearing to the Plan in resolving the Reed Objection as follows:  (i) in Article (section) 4.4 of the Plan after the words" Allowed Fifth Third Deficiency Claim," include the words "any other Allowed Deficiency Claims allowable as unsecured claims under Bankruptcy Code §§ 502 and 506" will be added; and (ii) at the end of Article (section) 4.2 of the Plan, the following words will be added: "To the extent a Class 2 Allowed Claim is determined under Bankruptcy Code §§502 and 506 to be only partially secured, any unsecured portion shall be allowable as a Class 4 Claim."   This immaterial modification is consistent with finding that the Plan is in the best interests of creditors and satisfies section 1129(a)(7) of the Bankruptcy Code.

W.     Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8)).  The Court finds that all Voting Classes as set forth on the ballot reports attached as the Exhibits to the BMC Declaration voted to accept the Plan.  The change of ballots submitted by Joplin and AB Livestock increase the acceptance percentages.  The Plan remains accepted by all impaired classes when the Provisional Ballots are included in the totals.  The Plan continues to remain accepted by all impaired classes even when any Ballots that were late filed, unsigned, or otherwise excluded under the approved tabulation procedures as set forth in the BMC Declaration (other than creditors who attempted to vote claims that had been settled and waived pursuant to Orders of this Court or who had not filed a proof of claim) are included in the voting totals.  Classes 2 and 3 are not impaired and are deemed to have accepted the Plan. The Plan is confirmable under 1129(a) as to Classes 1, 2, 3, and 4.  Class 5 is deemed to have rejected the Plan and, accordingly, confirmation as to that Class is determined pursuant to 11 U.S.C. § 1129(b).

X.      Treatment Of Administrative And Priority Tax Claims And Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

Y.      Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  Impaired Classes 1 and 4 voted to accept the Plan without counting the vote of any insider of the Debtor.  Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

Z.      Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The Plan is feasible and adequately provides for the liquidation and

distribution of the assets of the Estate.  Upon the Effective Date, the Trustee projects he will have sufficient operating cash and liquidity to meet his fiduciary duties under the Plan, to fund the liquidation, fund his continuing efforts to recover assets and adjudicate claims, and to pay anticipated Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.  No objections to the feasibility of the Plan was raised by any creditor or party-in-interest.

AA.    <u>Payment Of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Estate has paid or will pay the fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

BB.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 1129(a)(13) of the Bankruptcy Code requires that, following the Effective Date of the Plan, the payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code), <u>if any</u>, will continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the duration of the period the debtors have obligated themselves to provide such benefits.  The Trustee is not aware of any funded or maintained retiree benefits plans, funds, or programs as defined in section 1114 of the Bankruptcy Code, and therefore, section 1129(a)(13) is either not applicable or is satisfied.

CC.    <u>Section 1129(b) Confirmation of the Plan Over Nonacceptance Of Impaired Classes</u>.  Class 5 "Equity Interests" is impaired under the Plan and is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed and the Trustee requested, that notwithstanding the fact that not all impaired Classes have voted to accept the Plan that the plan be confirmed under section 1129(b).  All of the requirements of section 1129(a) of the Bankruptcy Code, other than section

1129(a)(8), with respect to Class 5, have been met.  With respect to Class 5, no holders of Interests junior to the holders of Interests in this Class will receive or retain any property under the Plan on account of such Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, all as required by section 1129(b) of the Bankruptcy Code and the Plan is able to be confirmed under section 1129(b) as to Class 5.

DD.    <u>Principal Purpose Of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e) and no governmental unit that is a party in interest in this Chapter 11 Case has asserted any such claim.

EE.    <u>Settlement with Fifth Third Bank</u>.  The Plan is premised on the approval of the settlement reached between the Trustee and Fifth Third Bank settling the Estate's claims against Fifth Third in consideration of Fifth Third agreeing to accept a pro rata charge and assessment of reasonable administrative fees and expenses against its collected collateral and the contribution of ten percent of its collected collateral to the payment of Allowed Class 4 Claims of general unsecured creditors ("<u>Settlement</u>").  The Trustee's explanation and analysis of the Estate's claims against Fifth Third was set forth in lengthy legal analysis and factual detail in the Disclosure Statement, and the Trustee's conclusion to reach the Settlement with Fifth Third is a reasonable exercise of the Trustee's business judgment.  The Trustee has estimated that the Settlement may result in an approximate 25% return to general unsecured creditors while contributing to funding the Chapter 11 Case to allow the Trustee to continue collecting assets for distribution.  The Trustee reached the Settlement at arms-length and in good faith negotiations.  The negotiation and the proposed Settlement and the Trustee's reasoning has been contested before this Court in prior pleadings, though not specifically determined by this Court prior to the Confirmation

Hearing.  The Settlement and has now been put to a vote of the creditors and has been accepted

within the Plan by those creditors.  The Court finds the proposed settlement to be reasonable, a

reasonable exercise of the Trustee's business judgment, and in the best interests of creditors of

the Estate.

FF.    <u>Modifications To The Plan</u>.  The following immaterial modifications to the Plan

proposed by the Trustee constitute immaterial modifications with respect to the treatment of

particular Claims, and do not materially adversely affect or change the treatment of any Claims

or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require

additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under

section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be

afforded an opportunity to change previously cast votes to accept or reject the Plan.  The

modifications are:  (1)  In Article 4.4 of the Plan after the words "Allowed Fifth Third

Deficiency Claim," the words "any other Allowed Deficiency Claims allowable as unsecured

claims under Bankruptcy Code §§ 502 and 506" will be added; (2) At the end of Article 4.2 of

the Plan, the following words will be added: "To the extent a Class 2 Allowed Claim is

determined under Bankruptcy Code §§ 502 and 506 to be only partially secured, any unsecured

portion of the Claim shall be Allowable as a Claim 4 Claim."; (3) At the end of Article 7.3 of the

Plan, the following words will be added: "If and to the extent the Joplin Settlement is approved

by the Court pursuant to Bankruptcy Rule 9019, the Joplin Defendants will be included as parties

being released as third parties in Article 7.3 of the Plan."; and (4) At the end of Article 6.1 B. of

the Plan and in the Opt In Instructions and as part of the Opt In Agreement, the following words

will be added: **"NOTE: any transfer or sale of a creditor's claim must include a fully**

**executed written assignment of all claims and causes of action that the creditor may have**

**against Fifth Third in order for the transferee to opt in and execute an Opt In Agreement. Evidence of the executed written assignment of claims and causes of action against Fifth Third from the transferor of the Claim must accompany the Opt In Agreement if the Opt In Agreement is executed and submitted by a transferee of a Claim."**

GG.    <u>Executory Contracts</u>.  The Trustee has exercised reasonable business judgment in determining whether to assume or assume and assign or reject each of the Executory Contracts as set forth in the Plan.  The rejection of any Executory Contract shall not affect the ability of the Trustee to continue to prosecute the Estate's recovery under any such rejected contract or lease and the effect of any rejection shall not foreclose any claim that the Trustee has asserted or may assert on such rejected contract or lease.

HH.    <u>Injunction</u>.  The injunction described in section 7.5 of the Plan constitutes a necessary means of implementing the Plan.  The injunction in the Plan: (1) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interest of, the Estate and its creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor and the Estate; and (6) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

II.    <u>Exculpation</u>.  The exculpation provision described in section 7.4 of the Plan constitutes a means of implementing the Plan by reducing tactics that could affect the efficiency with which the Trustee and his professionals may implement the Plan, distribute the assets, and bring the Chapter 11 Case to closure.  The Plan was accepted by a majority of the creditors who

voted and was rejected primarily by parties who are in litigation with the Trustee.  Section 1123

(b)(6) permits a court to "include any other appropriate provision not inconsistent with the

applicable provisions of this title."  The exculpation provision shall be modified to add the

following phrase at the conclusion of section 7.4: "except with respect to any willful misconduct

or gross negligence by the Trustee, his agents, or his Professionals."  The exculpation provision

as modified by this Order is reasonable, is within the jurisdiction of this Court to grant, and will

benefit the Estate and its creditors by limiting litigation and the time and costs of the same as to

matters that have preceded the confirmation of the Plan.

    JJ.    <u>Releases</u>.  The Trustee Release by the Trustee of the Estate's causes of action

against Fifth Third Bank contained in section 7.2 of the Plan as part of the Settlement is

reasonable and necessary for the implementation of the Plan.  The Third Party Release set forth

in section 7.3 of the Plan and on Plan Exhibits A & B ("<u>Opt In Instructions and Opt In

Agreement</u>") is a voluntary release by creditors who agree to opt in and settle any claims they

may hold in their own right against Fifth Third in consideration for an additional payment by

Fifth Third as set forth in the Plan.  The Court finds that the Third Party release, as immaterially

modified as set forth in paragraph FF of this Order is not inconsistent with the provisions of the

Bankruptcy Code.

    KK.    <u>No Vesting of Assets in the Debtor and Continuation of the Trustee</u>.  As the

Equity Interests have been cancelled and the Debtor's business ceased prior to the

commencement of this Chapter 11 Case, no assets of the Estate shall vest in the Debtor and the

Trustee shall continue to hold, recover, and distribute the assets of the Estate pursuant to his

fiduciary duty as the appointed Chapter 11 Trustee.  The Trustee shall retain and have the power

to assert all causes of action and claims of the Estate, except those that are expressly released by

the Plan or other orders of this Court, and such rights shall not be terminated by the Effective

Date.

LL.    <u>Conditions To Consummation</u>.  Each of the conditions to the Effective Date, as

set forth in section 7.9 of the Plan, is reasonably likely to be satisfied and the Trustee may in his

sole discretion waive any condition other than the entry of this Order and the filing of the Notice

of the Effective Date.

MM.    <u>Retention of Jurisdiction</u>.  The Court properly may retain jurisdiction over the

matters set forth in 9.1 of the Plan.

NN.    <u>Preservation Of Causes Of Action</u>.  It is in the best interests of the holders of

Claims and Interests that the Retained Actions and all Causes of Action that are not expressly

released under the Plan be retained by the Trustee and the Estate pursuant to 6.4 E of the Plan in

order to maximize the value of the Estate.

ACCORDINGLY, IT IS ORDERED:

1.    <u>Confirmation</u>.  The Plan, including all immaterial modifications or as

modified or amended by this Order, is APPROVED and CONFIRMED under section 1129 of

the Bankruptcy Code.  The modifications set forth in paragraph FF of this Order are immaterial

to the Plan and do not adversely affect or change the treatment of any Claim or Interest.  The

terms of the Plan and the Exhibits to the Plan, as amended or immaterially modified herein are

incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

The Plan constitutes a motion to approve a settlement and compromise under Bankruptcy Rule

9019.  In considering the Trustee's Affidavit and his brief and all the circumstances of this

Chapter 11 Case the Court legally concludes that the Settlement is reasonable, is a reasonable

exercise of the Trustee's business judgment and is in the best interests of the creditors of the

Estate. "[C]ompromises are favored in bankruptcy." *John S. Marandas, P.C. v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)). Deciding whether to approve a compromise under Rule 9019 is committed to the court's sound discretion, which must determine if the compromise is fair, reasonable, and in the interest of the estate. *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585-86 (7th Cir. 1994) and *In re Doctors Hospital of Hyde Park, Inc.*, 474 F.3d 421 (7th Cir. 2007)). The "best interests" test requires a showing that the settlement is "fair and equitable." *Id.* at 586; *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). A settlement is fair and equitable, if a court determines that it represents a reasonable judgment after considering the facts necessary to reach "an intelligent and objective opinion of the probabilities of success should the claim be litigated.'" *Depoister*, 36 F. 3d at 586 (quoting *TMT Trailer Ferry*, 390 U.S. at 424). The Settlement is a comprehensive resolution of all disputes between the Estate and Fifth Third and provides the framework for resolving the claims of other Estate creditors. The various pieces and analytical bases for the Settlement are described in detail in the Trustee Report and Articles II, VI and VII of the Disclosure Statement. In the opinion of this Court, the Settlement eliminates the likelihood of large, expensive, complex and time consuming litigation and allows the Trustee to proceed towards distribution of Estate assets to creditors. The Settlement and the Plan are the result of arms' length negotiations between the Trustee, Fifth Third, and other creditors with whom the trustee has settled during in the chapter 11 case. The Plan, inclusive of the Settlement, was accepted by the holders of claims against the Estate and any direct or indirect objection or reservation, if any, to the Settlement is expressly overruled.

       2.    <u>Objections</u>. The Joplin Objection was withdrawn at the Confirmation Hearing with prejudice. The Reed Objection was resolved by the proposed immaterial

modification to the language in the descriptions of Classes 2 and 4 as set forth in paragraph FF of this Order.  The LMA Letter is overruled without prejudice as the Court determines that its concerns are premature in complaining of the terms and conditions of a settlement that remains in negotiation between the Trustee and the United States Attorney in Kentucky and such objection, to the extent the Court holds that the LMA is a party in interest in this Chapter 11 Case with standing, may be reserved and asserted when approval of such settlement is presented to this Court.  The Bluegrass Et Al. Objection and the Alabama Et Al. Objection are granted only to the extent that the exculpation clause in section 7.4 of the Plan is modified as set forth in paragraph II of this Order and are otherwise overruled in their entirety including all reservations of rights therein to the extent any such reservation purports or is intended to exempt the party so reserving from the terms and conditions of the Plan, the Bankruptcy Code, the Bankruptcy Rules or this Order.

3. <u>Provisions Of Plan And Order Nonseverable And Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4. <u>Plan Classification Controlling</u>.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims against, or Interests in, the Debtor in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such

Claims or Interests under the Plan for distributions purposes, and (d) shall not be binding on the Estate.

5.     Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns.  The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  Subject to the applicable provisions of the Plan, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Exhibits and all documents and agreements executed pursuant to the Plan) and this Confirmation Order are deemed binding upon (a) the Estate, (b) all holders of Claims against and Interests in the Debtor, whether or not Impaired under the Plan and whether or not, if Impaired, such holders voted, or voted to accept or reject the Plan, (c) each Person acquiring property under the Plan, (d) any and all other parties-in-interest, (e) any Person making an appearance in this Chapter 11 Case, and (f) the respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians of each of the foregoing.

6.     Trustee.  The Trustee shall continue in his capacity as Chapter 11 Trustee to collect, liquidate, and distribute the assets of the Estate in accord with the Plan.

7.     Treatment of Claims Classes.  The treatments of the classified claims (Classes 1 through 5) as set forth in section 4 are approved and distributions made in accordance with those treatments shall be in full and final satisfaction of any and all of the Allowed Claims in Classes 1 through 5.

8.     Exculpation.  The exculpation provision set forth in section 7.4 of the Plan, as modified by this Order is incorporated in this Order as if set forth in full herein and is approved and enforceable as modified.

9.     <u>Injunction</u>.  The injunction set forth in the Plan at section 7.5 is incorporated in this Order in its entirety as if fully set forth herein, and except as otherwise specifically provided in the Plan or ordered by this Court, from and after the Confirmation Date and subject to the Effective Date, all Persons and/or Entities are bound by this injunction.

10.     <u>Automatic Stay</u>.  The stay in effect in this Chapter 11 Case pursuant to section 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Chapter 11 Case is closed or dismissed, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in this Order, the Plan and/or sections 524 and 1141 of the Bankruptcy Code.

11.     <u>Matters Relating To Implementation Of The Plan: General Authorizations</u>. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Trustee to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  In addition to the authority to execute and deliver, adopt, assign, or amend, as the case may be, the contracts, leases, instruments, releases and other agreements specifically granted in this Confirmation Order, the Trustee is authorized and empowered, to take any and all such actions as he may determine is necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including: (a) enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, leases, instruments, releases and other agreements or documents and plans to be entered into, executed and delivered, adopted or amended in connection with the Plan.  The Trustee, or his respective designees, are authorized to execute, deliver, file, or record such contracts, instruments, releases,

and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order and any and all documents or transactions contemplated by the Plan or this Confirmation Order, all without further application to or order of the Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Disclosure Statement Order, this Confirmation Order or the exhibits or appendices to any of the foregoing, and the signature of the Trustee on a document shall be conclusive evidence of the Trustee's determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Plan, this Confirmation Order or other documents or transactions contemplated by the Plan or this Confirmation Order.

12.     No Re-vesting of Property.  All assets of the Estate shall not revest in the Debtor and the Trustee shall continue to administer the assets of the Estate and implement the Plan.

13.     Preservation Of Causes Of Action.  The Trustee shall retain and may (but is not required to) enforce all Retained Actions and other similar claims arising under applicable state laws, including, without limitation, preference actions, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in possession under the Bankruptcy Code including but not limited to those actions set forth on Plan Exhibit C.  The Trustee may determine, whether to bring, settle, release, compromise, or enforce any such rights (or decline to do any of the foregoing).  The failure of the Trustee to specifically list any claim, right of action, suit or proceeding on Plan Exhibit C or otherwise does not, and will not be deemed to, constitute a waiver or release by the Trustee or the Estate of such claim, right of action, suit or proceeding, and the Trustee will retain the right to pursue such claims, rights of action, suits or proceedings

in his sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit or proceeding upon or after the confirmation or consummation of the Plan; provided, however, that notwithstanding the payment on account of an Allowed Claim, the Trustee shall retain the right to assert and/or pursue any Retained Actions against the holder of the Allowed Claim, including the right to collect judgments thereon.

          14.    <u>Exemption From Certain Taxes And Recording Fees</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax.  Furthermore, and without limiting the foregoing, any transfers from the Estate to any other Person pursuant to the Plan, as contemplated by the Plan, or pursuant to any agreement regarding the transfer of title to or ownership of any of the Estate's property in the United States will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Court shall retain specific jurisdiction with respect to these matters.

15.     <u>Executory Contracts</u>.  Except as otherwise provided in the Plan, or this Confirmation Order or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan or in connection with the assumption or assumption and assignment of an Executory Contract, each Executory Contract of the Estate shall be deemed automatically rejected as of the Confirmation Date  unless it (i) shall have been previously assumed or rejected by the Estate by order of the Court, or (ii) shall have previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume or reject pending on or before the Confirmation Date.  The rejection of any Executory Contract pursuant to the Bankruptcy Code shall not affect the rights or claims of the Trustee, including without limitation the Trustee's rights or claims to or against any purported "assignment" or "termination" of the Executory Contract,  to continue with or to bring claims or actions against a contract counterparty or a third party associates with such rejected executory contract or unexpired lease.

16.     <u>Professional Claims And Final Fee Applications</u>.  Approval of Professional Fee Claims shall remain subject to the approval of this Court and on notice with opportunity to object on and after the Effective Date.  Professionals employed in the Chapter 11 Case may file a final fee application at any time until the Chapter 11 Case is closed or dismissed.

17.     <u>Resolution Of Claims And Interests</u>.  Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan.

18.     <u>Payment Of Fees</u>.  All fees payable by the Estate under 28 U.S.C. § 1930 shall be paid on or before the date due that come due until the Chapter 11 Case is closed, converted or dismissed.

19.    <u>Authorization To Consummate Plan</u>.  The Court authorizes the Trustee to consummate the Plan on and after the entry of this Confirmation Order.  The Trustee is authorized to take any and all such actions as may be necessary to perform the terms and provisions of the Plan, all transactions and distributions contemplated by the Plan, and all other agreements related thereto.

20.    <u>Retention Of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law and as set forth in the Plan.

21.    <u>References To Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety as immaterially modified.  The provisions of the Plan and of this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; however, if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.

22.    <u>Filing And Recording</u>.  This Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date are limited to the treatments set forth in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required, by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any document or

instruments.  Each and every federal, state and local government agency is hereby directed to

accept any and all documents and instruments necessary, useful or appropriate (including

Uniform Commercial Code financing statements) to effectuate, implement and consummate the

transactions contemplated by the Plan and this Confirmation Order without payment of any

recording tax, stamp tax, transfer tax or similar tax imposed by state or local law.

      23.   <u>Notice Of Confirmation Order And Occurrence Of Effective Date</u>.  Other

than the entry of this Order and the filing of a Notice of Effective Date, the Trustee may waive,

in his sole discretion, any other conditions to the occurring of the Effective Date.  On or before

the fifth (5th) Business Day following the occurrence of the Effective Date, the Trustee shall

serve notice of this Confirmation Order and of the Effective Date pursuant to Bankruptcy Rules

2002(f)(7), 2002(k), and 3020(c), on all holders of claims, the United States Trustee, the

Committee, and other parties-in interest, by causing a notice of this Confirmation Order and of

the Effective Date (the "Notice of Effective Date"), to be delivered to such parties by electronic

mail or first class mail, postage prepaid, provided, however, that notice need not be given or

served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any

Person to whom the Trustee mailed a notice of the Bar Date or Confirmation Hearing, but

received such notice returned marked "undeliverable as addressed," "moved-left no forwarding

address," "forwarding order expired," or similar reason, unless the Trustee was informed in

writing by such Person of that Person's new address.  The notice described herein is adequate

under the particular circumstances of the Chapter 11 Case, and no other or further notice is

necessary.  The Notice of Effective Date shall include the explanation and instructions for

Persons that want to continue to receive broad notice in this Chapter 11 Case on and after the

Effective Date as set forth in section 10.4 of the Plan.

24.     28 U.S.C. § 157(d).  Nothing in this Confirmation Order or the Plan is

intended to modify or violate 28 U.S.C. § 157(d).

25.     If in this Order any finding of fact is more properly a conclusion of law or

if any conclusion of law is more properly a finding of fact, the Court so finds and concludes.

Requested by:

FAEGRE BAKER DANIELS LLP            Wendy W. Ponader (#14633-49)
James M. Carr (#3128-49)            600 East 96th Street, Suite 600
Terry E. Hall (#22041-49)           Indianapolis, IN 46240
Kevin M. Toner (#11343-49)          Telephone: (317) 569-9600
Harmony Mappes (#27237-49)          Facsimile: (317) 569-4800
Dustin R. DeNeal (#27535-49)        wendy.ponader@faegrebd.com
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782         *Attorneys for the Trustee*
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com

###

Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |

## **TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**


Proposed by:  James A. Knauer, Chapter 11 Trustee for Eastern Livestock Co., LLC

Date:   October 26, 2012

Counsel for James A. Knauer, Chapter 11 Trustee:

FAEGRE BAKER DANIELS, LLP
James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)
Harmony Mappes (#27237-49)
Dustin R. DeNeal (#27535-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
jim.carr@faegrebd.com
kevin.toner@faegrebd.com
terry.hall@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com

Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

HOOVER HULL LLP
John David Hoover (#7945-49)
Sean T. White (#20428-49)
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400
Facsimile: (317) 822-0234
jdhoover@hooverhull.com
swhite@hooverhull.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

**ARTICLE I** Rules of Interpretation and Computation of Time ................................. 2

**ARTICLE II** Definitions ........................................................................................... 3

**ARTICLE III** Payment of Non-Voting Administrative Claims and Priority Tax Claims ...... 13

**ARTICLE IV** Classification and Treatment of Voting Claims and Interests.......................... 13

**ARTICLE V** Voting on the Plan ............................................................................. 15

**ARTICLE VI** Implementation of the Plan .............................................................. 15

**ARTICLE VII** Effects of Plan Confirmation and the Occurrence of the Effective Date ....... 21

**ARTICLE VIII** Treatment of Executory Contracts ................................................ 23

**ARTICLE IX** Retention of Jurisdiction ................................................................ 24

**ARTICLE X** Miscellaneous Issues......................................................................... 24

## INTRODUCTION

James A. Knauer, as the chapter 11 trustee ("Trustee"), proposes this chapter 11 plan (the "Plan") providing for the liquidation of the assets of the estate of Eastern Livestock Co., LLC ("ELC" or "Debtor"), resolution of claims by and against ELC, and distributions to allowed claims. The Trustee is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

The Plan distributes to the holders of allowed claims the sum of (1) the liquidated value of the property of the estate and (2) monies paid by Fifth Third Bank in settlement of the estate's claims against it. The Plan further offers to the holders of allowed unsecured claims, the option of settling their individual claims, if any, against Fifth Third and sharing in a pro rata distribution of additional funds payable by Fifth Third to the settling creditors. The Plan further provides for the payment of the administrative expenses to liquidate and distribute the assets of the Debtor's estate.

Since the filing of the first Disclosure Statement on July 23, 2012, the Trustee has negotiated settlements with certain parties that have asserted large claims in the chapter 11 case, specifically, Superior Livestock Auction LLC ("Superior"), The First Bank & Trust ("First Bank") and certain Texas feedlots ("Texas Feedlots"). These settlements result in the reduction of total claims against the estate as well as resolution of expensive litigation that will allow the chapter 11 case to move forward to distributions sooner. These proposed settlements are described in more detail in the First Amended Disclosure Statement For Trustee's First Amended Chapter 11 Plan of Liquidation accompanying this Plan. To the extent that the respective Settlement Agreements differ from the summaries herein or in the Disclosure Statement, the Settlement Agreements control.

The proposed settlement with Superior resolves Superior's claims against the Estate and the Trustee's claims against Superior. In addition Superior and Fifth Third will mutually release each other. Under the settlement, the Trustee will release the Estate's claims against Superior and Superior shall be allowed to retain certain monies that Superior collected prior to the Petition Date that the Trustee disputed and shall receive a final payment of $279,000 from the collateral funds claimed by Fifth Third. In consideration of the Trustee's release and payment, Superior shall withdraw all of its objections in the Chapter 11 Case and release and waive all of its claims and defenses asserted or assertable in the Chapter 11 Case and release and waive all of its claims against Fifth Third. This settlement will allow significant monies held by the Trustee or that are subject of interpleader actions to become available for distribution as proposed in the Plan. In further consideration, Superior shall also receive the benefit of the releases given by creditors that choose to "opt in".

The proposed settlement with First Bank resolves First Bank's claims against the Estate for a payment to First Bank of $350,000 and a mutual release of claims by the Trustee and First Bank. Upon the approval of the proposed settlement, First Bank will assign its claims to the Trustee and will withdraw its objections and claims. In addition, First Bank and the Trustee will work towards an agreement with the US Attorney's office to distribute the monies seized from a bank account of Tommy Gibson (see below) to the creditor/victims of the ELC Estate and the chapter 7 estate of Tommy Gibson.

The settlement with the Texas Feedlots allows the setoff of certain claims by the plaintiffs in the interpleader actions discounted by five percent against funds in the interpleaders and allows a general unsecured claim against the estate for the discount.

Some of the money projected to be distributed under the Plan is in the possession of the United States Attorney's Office for the District of Kentucky (the "US Attorney") under a seizure order issued against an account held in the name of Thomas and Patsy Gibson at Your Community Bank.  These funds total approximately $4.7 million.  The Trustee is in the process of securing an agreement with the bankruptcy trustee for the Gibsons and the US Attorney for the distribution of the seized funds to creditors of ELC and of Tommy Gibson that were victims of the fraud perpetrated by Tommy Gibson.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a claim until such time as the Disclosure Statement has been approved by the Court and distributed to holders of claims entitled to vote on the Plan.  ALL SUCH HOLDERS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Trustee reserves the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

## **ARTICLE I**

### Rules of Interpretation and Computation of Time

1.1    <u>General</u>.  For purposes of this Plan, except as expressly provided, all capitalized terms not otherwise defined shall have the meanings given them in Article II of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (f) all references in this Plan to Articles and Exhibits are references to Articles and Exhibits of or to this Plan; (g) the words "herein," "hereof," "hereunder" and "hereto" unless limited by further reference refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles are inserted for convenience of reference only and are not

intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. A period described as a number of "days" (as opposed to "Business Days") means calendar days.

All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not attached hereto, such Exhibits shall be filed with the Court on or before the Exhibit Filing Date. After the Exhibit Filing Date, copies of Exhibits may be obtained upon request to Trustee's counsel or by downloading such exhibits from the Court's website (http://www.insb.uscourts.gov) or the Trustee's Blog. To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-Exhibit portion of the Plan shall control.

## **ARTICLE II**

### Definitions

2.1     "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to order of the Court or Section 507(a)(1), 507(b) or 1114 (e)(2) of the Bankruptcy Code and includes, without limitation, (a) Fifth Third's Claim for repayment of the Trustee Loan, (b) Professional Fee Claims, (c) the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate, liquidating assets and prosecuting causes of action, including without limitation wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case and (d) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

2.2     "Affiliates" has the meaning given such term by Section 101(2) of the Bankruptcy Code.

2.3     "Allowed" means, with respect to a Claim, any Claim, proof of which was timely and properly filed as to which no objection to allowance has been filed on or before any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Court, or as to which any objection has been determined by a Final Order determining the amount and characterization of the Claim. If no objection to a Claim has been filed not less than five (5) business days before the Voting Deadline, then the Claim will be Allowed solely for purposes of voting on the Plan but without prejudice to any later filed objection. Unless otherwise specified in the Plan, the Bankruptcy Code or by order of the Court, an "Allowed

3

Claim" shall not, for purposes of computation and distributions under the Plan, include any interest on such Claim from and after the Petition Date.

2.4      "Allowed Class . . . Claim" or "Allowed Class . . . Interest" means an Allowed Claim or an Allowed Interest in the specified Class.

2.5      "Allowed Secured Claim of Fifth Third" means that portion of the Fifth Third Allowed Claim that is Allowed as Secured under paragraph 10.C of the Financing Order.

2.6      "Ballot" means the forms mailed to the Holders of Claims for the purpose of voting to accept or reject the Plan.

2.7      "Bank" means Fifth Third Bank.

2.8      "Bankruptcy Causes of Action" means all turnover, avoidance and/or preference actions arising under Sections 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

2.9      "Bankruptcy Code" means title 11 of the United States Code as amended from time to time and as applicable to the Chapter 11 Case.

2.10      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as amended from time to time as applicable to the Chapter 11 Case, including the local orders of the Court.

2.11      "Bar Date Order" means the order entered by the Court on March 31, 2011, establishing the Bar Date(s).

2.12      "Bar Date(s)" means the deadlines set by the Court under the Bar Date Order for filing proofs of Claim or Interests in the Chapter 11 Case.  The Bar Date for all non-governmental claims was May 2, 2011.  The Bar Date for governmental claims was June 30, 2011.

2.13      "Bond Monies" means the proceeds of that certain GIPSA bond administered by James A. Knauer as trustee on behalf of the United States.

2.14      "Business Day" means any day, excluding Saturdays, Sundays and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are generally open for business in New Albany, Indiana.

2.15      "Cash" means cash and cash equivalents and other readily marketable securities or instruments.

2.16      "Cattlemen's Purchased Interests" means the assets purchased by Cattlemen's Feedlot Ltd. from Okie Farms, LLC pursuant to that certain Partnership Interest Purchase Agreement executed on or around January 6, 2012.

2.17    "Causes of Action" means any and all claims, counter-claims, demands, rights, actions, suits obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever acquired by Debtor, the Estate and/or the Trustee, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on or after the Petition Date or in tort, in law or in equity, or under any theory of law and includes Bankruptcy Causes of Action.

2.18    "Chapter 11 Case" means the Chapter 11 Case of the Debtor pending in the Court and captioned as In re Eastern Livestock Co., LLC, Case No. 10-93904-BHL-11.

2.19    "Claim" has the definition given it in Section 101(5) of the Bankruptcy Code.

2.20    "Claims Objection Deadline" means the later of (a) one hundred twenty (120) days after the Effective Date and (b) within sixty (60) days after such Claim is deemed timely filed and served on counsel for Trustee.  The Trustee may request and the Court may order the extension of any Claims Objection Deadline.

2.21    "Class" means any group of substantially similar Claims or Interests classified by the Plan pursuant to Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

2.22    "Collateral Fund" means the proceeds of the Trustee's collection, sale or other disposition of all Fifth Third Collateral.

2.23    "Confirmation" means the entry of the Confirmation Order.

2.24    "Confirmation Date" means the date of entry on the Court's docket of the Confirmation Order.

2.25    "Confirmation Hearing" means the hearing before the Court held to consider confirmation of the Plan and related matters under Section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.26    "Confirmation Order" means the order entered by the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.27    "Court means the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division.

2.28    "Debtor" means Eastern Livestock Co., LLC.

2.29    "Disallowed Claim" or "Disallowed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date applies but no proof of claim or interest was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Court, (c) is not Scheduled and as to which a Bar Date applies but no proof of claim or interest has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court, or (d) the

5

Holder of the Claim has property that is recoverable or is the transferee of a transfer that is avoidable under Section 502(d).

2.30 "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, modified or supplemented from time to time.

2.31 "Disputed Claim" or "Disputed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest or a Disallowed Interest, as the case may be, and includes, without limitation, Claims or Interests that are the subject of an objection filed with the Court, which has not been withdrawn or overruled by a Final Order of the Court.

2.32 "Disputed Claims Reserve" means the account to be established by the Trustee as of the Effective Date to hold Cash reserved for the payment of Disputed Claims.

2.33 "Distribution Date(s)" means each of January 1, April 1, July 1 and October 1 on and after the Effective Date when there is no less than $500,000 in Distribution Funds in the Trustee's operating account. The Final Distribution shall not be subject to the $500,000 floor.

2.34 "Distribution Funds" means the Net Collateral Fund and the Net Recovery Fund.

2.35 "Escrow Fund" means certain monies derived from the sale of cattle and held by the Trustee pursuant to an order of the Court that are subject to unresolved disputes asserted by Other Creditors. When such disputes are resolved, the monies will be transferred to the Operating Account for Distribution.

2.36 "Effective Date" means the date set forth in a "Notice of Effective Date" filed with the Court by the Trustee on or after the Confirmation Date.

2.37 "ELC" means Eastern Livestock Company, LLC, the Debtor.

2.38 "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

2.39 "Estate" means the bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

2.40 "Executory Contracts" means all contracts and leases of both real and personal property existing as of the Petition Date which have not expired or been terminated as of the Effective Date by their own terms or, actions of either party to the contract, and performance, in whole or in part, remains by both parties.

2.41 "Exhibit Filing Date" means the date on which Exhibits to the Plan shall be filed with the Court, which date shall be no fewer than ten (10) days prior to the Voting Deadline, unless a later date is approved by the Court.

2.42 "Exhibit" means an exhibit annexed or to be annexed to this Plan, as it may be amended.

2.43    "Face Amount" means the amount of a filed Proof of Claim or if no Proof of Claim has been filed, the amount scheduled in the Schedules and is not marked contingent, unliquidated and/or disputed.

2.44    "Fifth Third" means Fifth Third Bank.

2.45    "Fifth Third Allowed Claim" means the Claim asserted by Fifth Third against the Estate in the amount of $35,833,415.02, as allowed in the Financing Order at paragraph 10.c.

2.46    "Fifth Third Collateral" means all property of the Estate determined to be subject to a valid security interest or lien securing the Allowed Secured Claim of Fifth Third and further including, without limitation, any Property, the cash proceeds thereof or the value thereof of any transfers avoided or recovered via Sections 542, 543, 544, or 548 of the Bankruptcy Code, but only as provided in paragraph 10 of the Financing Order.

2.47    "Fifth Third Deficiency Claim" means that portion of the Fifth Third Allowed Claim that remains unpaid after crediting all distributions to Fifth Third of Net Collateral Fund and all non-Estate Property recovered by Fifth Third from third parties on account of the Fifth Third Allowed Claim (including without limitation net insurance proceeds received by Fifth Third from policies on the life of Thomas Gibson or others collaterally assigned to Fifth Third).

2.48    "Fifth Third Claim Settlement Fund" means that portion of the Net Collateral Fund payable Pro Rata to the Holders of Allowed Class 4 Claims who are Opt In Creditors.  The Fifth Third Claim Settlement Fund is calculated by multiplying the Net Collateral Fund by the Fifth Third Claim Settlement Percentage.

2.49    "Fifth Third Estate Settlement Fund" means that portion of the Net Collateral Fund multiplied by the Fifth Third Estate Settlement Percentage and payable Pro Rata to the Holders of Allowed Class 4 Claims.

2.50    "Fifth Third Claim Settlement Percentage" means, (a) ten percent (10 %) multiplied by (b) a fraction (i) whose numerator is the total dollar amount of Allowed Opt In Claims and (ii) whose denominator is the total dollar amount of Allowed Class 4 Claims excluding the Fifth Third Deficiency Claim.

2.51    "Fifth Third Estate Settlement Percentage" means ten percent (10%).

2.52    "Final Distribution" means the distribution of all remaining Property on the Termination Date pursuant to Section 6.4 of the Plan.

2.53    "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing or move for a new trial has expired, and as to which no appeal or petition for review, reargument, rehearing or proceeding for a new trial was timely filed or, if timely filed, remains pending.

2.54    "Financing Order" means the Financing Order (I) Approving Chapter 11 Trustee Financing; (II) Authorizing Use Of Cash Collateral And Obtaining Credit Pursuant To Sections

361, 363 and 364 Of The Bankruptcy Code; (III) Modifying The Automatic Stay; (IV) Providing Adequate Protection; And (V) Sealing Certain Documents entered by the Court as Docket Number 400 on March 18, 2011.

2.55    "General Unsecured Claim" means a Claim against the Debtor that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Non-Tax Priority Claim.

2.56    "GIPSA" means the Grain Inspection and Packers and Stockyards Administration of the United States Department of Agriculture.

2.57    "Holder" means a Person or Entity having an Interest or Claim.

2.58    "Impaired" refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.59    "Initial Distribution" means a partial distribution to be made pursuant to and as provided by the Plan on or before first Distribution Date to occur after one hundred twenty (120) days following the Effective Date, in amounts as large as is reasonably feasible (within the Trustee's reasonable discretion)  while still maintaining adequate reserves to administer the remainder of the Chapter 11 Case, reserves for Disputed Claims, and allow for the "true up" of distributions as described in the Plan.

2.60    "Initial Estimates" means the estimates filed with the Court by the Trustee no later than sixty (60) days after the Effective Date that estimate the total dollar amounts of the Allowed Opt In Claims, the Allowed Opt Out Claims, the Allowed Fifth Third Deficiency Claim, the Fifth Third Settlement Percentage, and the Recovery Expenses Pro Rata Application percentages, as such estimates may be updated and amended by subsequent filings.  The Initial Estimates shall be subject to the Disputed Claims Reserve.

2.61    "Initial Recovery Expense Percentage" means the initial Recovery Expense Pro Rata Application percentage proposed by the Trustee as part of the Initial Estimates.  The Initial Recovery Expense Percentage shall apply to calculate the percentage of Allowed Recovery Expenses to be charged to each of the Collateral Fund and Recovery Fund from and after the Effective Date until a change in percentage is proposed to the Court by the Trustee on a "true up" basis.  Changes may be proposed by the Trustee from time to time to reflect the updated projections and calculations of the relative pro rata shares to be charged to the Collateral Fund and the Recovery Fund.

2.62    "Interpleader Actions" means the adversary proceedings filed in the chapter 11 case under Adversary Proceeding Nos. 11-59093 (Texas), 11-59108 (Colorado), 11-59098 (Kansas), and 11-59104 (Wisconsin) that originated as interpleader actions in Texas, Colorado, Kansas, and Wisconsin and were the result of certain buyers of cattle from ELC interpleading the payments due on the cattle purchases on and after the cessation of business by ELC.

2.63    "Interest" means the rights and interests of the Holder of any equity security, including options or warrants to purchase equity securities, stock appreciation rights or other rights to purchase or deliver in exchange for equity securities, including preferred stock, options

or warrants to purchase or otherwise acquire the same and any Claims arising out of the purchase and sale of any such securities.

2.64   "Net Collateral Fund" means monies distributable from time to time from the Collateral Fund after payment of its portion of the Pro Rated Recovery Expenses.

2.65   "Net Recovery Fund" means monies distributable from time to time from the Recovery Fund after the Recovery Fund has paid the Trustee Loan and its portion of Pro Rated Recovery Expenses.

2.66   "Non-Tax Priority Claim" means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than a Priority Tax Claim, a Professional Fee Claim, or an Administrative Claim.

2.67   "Okie Purchase Proceeds" means the sale proceeds received by Okie from the sale of the Cattlemen's Purchased Interests.

2.68   "Okie" means Okie Farms, LLC.

2.69   "Opt In Agreement" means the agreement in substantially the form attached to the Plan as Exhibit A that must be executed by an Other Creditor and delivered to the Trustee on or before the Opt In Deadline in order for the Other Creditor to become an Opt In Creditor and therefore eligible to receive distributions from the Fifth Third Settlement Monies.  Pursuant to the Opt In Agreement, and as consideration for the Fifth Third Settlement Monies, the Other Creditor agrees to release Fifth Third as described in Section 7.3 of the Plan.

2.70   "Opt In Agreement Instructions" means the instructions to accompany the Opt In Agreement for mailing to all Class 4 Creditors and attached to the Plan as Exhibit B.

2.71   "Opt In Claims" means the total of the Allowed Claims of Opt In Creditors.  Opt In Claims will be reduced to the extent the applicable Opt In Creditor(s) has received Bond Monies or Restitution Payments.

2.72   "Opt In Creditor" means each of the Other Creditors who executes and delivers an Opt In Agreement to the Trustee on or before the Opt In Deadline and thereby voluntarily elects to release, discharge and waive Third Party Claims against Fifth Third in exchange for the right to receive distributions from the Fifth Third Settlement Monies, all as described in Sections 5.1 and 6.2 of the Plan.

2.73   "Opt In Deadline" means thirty (30) days following the Confirmation Date.

2.74   "Opt Out Claims" means the total of Allowed Claims of Other Creditors who are not Opt In Creditors.  Opt Out Claims will be reduced if and to the extent the applicable Opt Out Creditor receives Bond Monies or Restitution Payments.

2.75   "Opt Out Creditors" means each of the Other Creditors who are not Opt In Creditors.

2.76    "Other Creditor" means each of the creditors that hold an unsecured Allowed Class 4 Claim against the Estate and/or Property of the Estate that is not Fifth Third.

2.77    "Person" has the meaning ascribed to it by Section 101(41) of the Bankruptcy Code.

2.78    "Petition Date" means December 6, 2010.

2.79    "Plan" means this chapter 11 plan, including all Exhibits, supplements, amendments, appendices and schedules hereto, either in their present form or as the same may be later filed or further altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

2.80    "Priority Tax Claim" means a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.81    "Pro Rata" means, at any time, the proportion which the amount of an Allowed Claim bears to the sum of the amounts of all Allowed Claims in the relevant group.

2.82    "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred, relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

2.83    "Professional" means those Persons retained in the Chapter 11 Case by separate Court orders pursuant to Sections 327 and 1103 of the Bankruptcy Code or otherwise.

2.84    "Property" subject to the Plan means all property of the Estate as contemplated by Section 541 of the Bankruptcy Code, including all Retained Actions.  For purposes of determining distributions under the Plan, Property shall include, without limitation, the Okie Purchase Proceeds and YCB Monies.

2.85    "Recovery Expenses" means all Administrative Claims net of the Trustee Loan and the Carve-Out.

2.86    "Recovery Expenses Pro Rata Application" means the percentage charged to each of the Collateral Fund and the Recovery Fund for the payment of Allowed Recovery Expenses. Each such percentage is calculated by dividing each of the Collateral Fund and the Recovery Fund by the sum of the Collateral Fund plus the Recovery Fund.

2.87    "Recovery Fund" means any Property, cash proceeds thereof or value thereof of any Property that is not Collateral Fund property, including without limitation, YCB Monies and any transfers avoided or recovered via Sections 545, 547, or 553(b) of the Bankruptcy Code, and any recoveries that are not deemed to be part of the Bank Collateral pursuant to paragraphs 7c.(i) and 10.c. of the Financing Order.

2.88    "Restitution Payments" means payments to certain Holders of Allowed Class 4 Claims from persons convicted of crimes and pursuant to restitution orders.

2.89    "Retained Actions" means all Causes of Action which the Estate may hold against any Person (other than Fifth Third), including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (c) any Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, and (e) all Bankruptcy Causes of Action.

2.90    "Schedules" means the schedule of assets and liabilities and the statement of financial affairs filed in the Chapter 11 Case by the Trustee as such schedule or statement has been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Court.

2.91    "Secured Claim" means an Allowed Claim secured by a binding, enforceable, perfected security interest in or lien upon Property of the Estate to the extent of the value of such security interest or lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Trustee and the Holder of such Claim.

2.92    "Superior" means Superior Livestock Auction, LLC.

2.93    "Superior Settlement" means the agreement among Superior, the Trustee and Fifth Third, as approved by the Court, described in the Introduction and in the Disclosure Statement more particularly described in a formal Settlement Agreement.

2.94    "Termination Date" means the date upon which the Trustee makes the Final Distribution pursuant to the terms of the Plan and files a notice of same.

2.95    "Third Party Claim" is a claim held by an Other Creditor against Fifth Third, Superior and/or the Trustee that is independent of, and not held by, the Trustee or the Estate.  It does not include an asserted and filed claim that an asset is not property of the Estate.

2.96    "Third Party Release" means the written and fully executed release, discharge and waiver by an Other Creditor of any and all Third Parties Claims against the Trustee, Fifth Third and Superior.  Any Opt In Creditor asserting that an asset is not property of the Estate shall formally assert such claim prior to the deadline for executing and delivering an Opt In Agreement.  If such claim is not timely and formally filed, any such claim is waived and released against the Estate.

2.97    "Trustee Blog" means the website established by the Trustee for the benefit of creditors and parties in interest of this Chapter 11 Case and maintained at www.easternlivestockbkinfo.com

2.98    "Trustee Carve-Out" means the payment of up to $2 million from the liens securing the Secured Claim of Fifth Third allowed to be used by the Trustee for costs of administering the Estate, including paying Professional Fee Claims, pursuant to the Financing Order.

2.99    "Trustee Loan" means the obligation of the Estate to repay from the Recovery Fund two million dollars ($2,000,000.00) to Fifth Third pursuant to the Financing Order.  Such repayment obligation is in addition to the payment obligations regarding the Fifth Third Allowed Claim.

2.100   "Trustee Release" means the release, discharge and waiver by the Trustee, for himself, as chapter 11 trustee, and on behalf of the Debtor and/or the Estate of any and all claims against Fifth Third.

2.101   "Unclaimed Distribution Reserve" means the fund holding the returned Distribution(s) to an Allowed Claim under this Plan administered under Section 6.3(F).

2.102   "Voting Class" means a Class of Claims or Interests under this Plan that is entitled to vote to accept or reject the Plan.

2.103   "Voting Deadline" means _____ __, 2012, the date and time established by order of the Court for parties to submit their Ballots to accept or reject the Plan.

2.104   "YCB Monies" means Cash that is the subject of a civil forfeiture action commenced by the United States Attorney ("US Attorney") regarding funds in the Gibsons' account at Your Community Bank, Case No. 3:11CV-233-H, pending in the United States District Court, Western District of Kentucky at Louisville.  Under an agreement currently being negotiated with the United States Attorney, approximately $4 million of the YCB Monies will be cooperatively distributed to the Allowed Claims in Class 4 that are determined to be victim/creditors under the pending agreement.

## ARTICLE III

### Payment of Non-Voting Administrative Claims and Priority Tax Claims

3.1     Administrative Claims.  After repayment of the Trustee Loan from the Recovery Fund, each Holder of an unpaid Allowed Administrative Claim shall receive Cash from the Collateral Fund and the Recovery Fund according to the Recovery Expenses Pro Rata Application in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim.  If an Allowed Administrative Claim is a Professional Fee Claim, obligations of the Estate to pay such Allowed Professional Fee Claim shall not be released unless and until there is a Final Order determining all Professional Fee Claims of the professional.  On and after the Confirmation Order no Professional Fee Claims, Recovery Expenses, or Allowed Administrative Claims shall need to be classified in the "May Do/Must Do" categories required by the Financing Order.  Allowed Administrative Claims will be paid from the Trustee's operating account as authorized by the Court approving the Allowed Administrative Claim.

3.2     Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash on the Effective Date equal to the unpaid portion of such Allowed Priority Tax Claim, or (ii) such other treatment to which such Holder and the Trustee have agreed in writing.  The Trustee is not aware of any Priority Tax Claim that would become an Allowed Priority Tax Claim.

## ARTICLE IV

### Classification and Treatment of Voting Claims and Interests

4.1     Class 1:  Allowed Secured Claim of Fifth Third.  Class 1 consists of the Allowed Secured Claim of Fifth Third.

> Plan Treatment:  The Class 1 Allowed Secured Claim of Fifth Third shall be Allowed, settled, compromised and satisfied in full by payment to Fifth Third, as soon as reasonably practical and from time to time considering the Trustee's reasonable estimation of reserves, of all the Net Collateral Fund remaining after payment of the Fifth Third Settlement Monies to the Opt In Creditors through the Final Distribution.  Payment of the Allowed Class 1 Claim shall not exceed the Fifth Third Allowed Claim Amount less the Trustee Carve-Out.  The Holder of the Class 1 Claim shall retain its liens in the Fifth Third Collateral, other than Fifth Third Collateral liquidated and paid as part of the Fifth Third Settlement Monies and Allowed Administrative Expense Claims.  Class 1 is Impaired under the Plan and the Holder of the Class 1 Claim is entitled to vote on the Plan.

4.2     <u>Class 2:  Other Allowed Secured Claims</u>.  Class 2 consists of all Allowed Secured Claims other than the Allowed Secured Claim of Fifth Third.

> Plan Treatment:  In full and complete satisfaction and release of a Class 2 Claim, the Holder of an Allowed Class 2 Claim, shall receive, at the option of the Trustee, either  (i) the proceeds of the sale or disposition of the collateral securing the Allowed Class 2 Claim to the extent of the value of the Holder's Secured Claim in such collateral, net of the costs of disposition of such collateral, (ii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral, or (iii) such other treatment as the Trustee and the Holder of an Allowed Class 2 Claim may agree.  Class 2 is not Impaired under the Plan, is deemed to have accepted the Plan and is therefore not entitled to vote on the Plan.  To the extent a Class 2 Allowed Claim is determined under Bankruptcy Code §§ 502 and 506 to be only partially secured, any unsecured portion of the Claim shall be Allowable as a Claim 4 Claim.

4.3     <u>Class 3:  Allowed Non-Tax Priority Claims</u>.  Class 3 consists of all Allowed Non-Tax Priority Claims.

> Plan Treatment: Each Holder of an Allowed Class 3 Non-Tax Priority Claim shall be paid in full by the Trustee from the Recovery Fund pursuant to Section 507(a) of the Bankruptcy Code, but without interest, as soon as practicable following the Effective Date or the date such Claim becomes an Allowed Class 3 Claim.  Class 3 is not Impaired under the Plan, is deemed to have accepted the Plan, and is therefore not entitled to vote on the Plan. The Trustee is not aware of any Class 3 Claims that may become an Allowed Class 3 Claim.

4.4     <u>Class 4:  Allowed General Unsecured Claims</u>.  Class 4 consists of all Allowed General Unsecured Claims, including the Allowed Fifth Third Deficiency Claim, any other Allowed Deficiency Claims allowable as unsecured claims under Bankruptcy Code §§ 502 and 506, Allowed Opt In Claims and Allowed Opt Out Claims.

> Plan Treatment:  In full and complete satisfaction and release of a Class 4 Claim, the Holder of an Allowed Class 4 Claim shall receive its Pro Rata share of the Net Recovery Fund and its Pro Rata share of the Fifth Third Estate Settlement Fund.  Each Holder of an Allowed Class 4 Claim (except Fifth Third) that chooses to have its Allowed Claim treated as an Opt In Claim by timely returning an executed Option Agreement by the Opt In Deadline, shall also receive a Pro Rata share of the Fifth Third Claim Settlement Fund.  Payments to Allowed Class 4 Claims (whether an Opt In Claim or not) shall be made on each Distribution Date,

14

with the first payment to commence on the Distribution Date that is no less than one hundred twenty (120) days after the Effective Date.  Class 4 is impaired under the Plan and Holders of Allowed Class 4 Claims are entitled to vote on the Plan.

4.5     Class 5:  Allowed Interests.  Class 5 consists of the Interests in the Debtor.

Plan Treatment:  Nothing shall be distributed to holders of Interests in the Debtor.  Holders of Class 5 Claims shall not receive any distribution on account of their Interests.  Class 5 is impaired under the Plan and is deemed to reject the Plan.

## ARTICLE V

### Voting on the Plan

5.1     Classes Entitled to Vote.  The Holders of Claims in Classes 1, 2, 4, and 5 are entitled to vote on the Plan.

5.2     Delivery of Ballots.  Each Holder of an Allowed Claim in a Voting Class shall receive by U.S. first class mail, postage prepaid, a copy of the Disclosure Statement, the Order Approving the Disclosure Statement, the Plan, and a Ballot within ten (10) days of the entry of an order approving the Disclosure Statement.

5.3     Class Acceptance Requirement.  A Voting Class of Claims shall have accepted the Plan if at least two-thirds in amount and more than one-half in number of the Allowed Claims of the Voting Class that actually timely returned a valid Ballot voted to accept the Plan.

5.4     1129(b).  In the event that an Impaired Class eligible to vote does not accept the Plan, the Trustee reserves the right to request that the Court confirm the Plan in accordance with the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

### Implementation of the Plan

6.1     Funding and Distribution.

A.     The Plan will be funded by the distribution of Net Collateral Fund, Fifth Third Estate Settlement Fund, Fifth Third Claim Settlement Fund, and Net Recovery Fund to the Holders of the applicable Allowed Claims.

B.     Within five business days of the entry of the Confirmation Order, the Trustee shall mail to the Holder of each Class 4 Claim (with a courtesy copy to counsel, if any) a copy of the Opt In Agreement, the Opt In Agreement Instructions and a return self-addressed stamped envelope.  Any Holder of a Class 4 Claim may choose to Opt In by returning the executed Opt In Agreement by the Opt In Deadline, whether such Holder voted to accept the Plan, voted to reject the Plan, or did not vote.  **NOTE: any transfer**

**or sale of a creditor's claim must include a fully executed written assignment of all claims and causes of action that the creditor may have against Fifth Third in order for the transferee to opt in and execute an Opt In Agreement. Evidence of the executed written assignment of claims and causes of action against Fifth Third from the transferor of the Claim must accompany the Opt In Agreement if the Opt In Agreement is executed and submitted by a transferee of a Claim.**

C.     Within sixty (60) days after the Effective Date, the Trustee shall file with the Court by "Notice of Submission" a list of all the Class 4 Claims, identifying each Claim as Allowed or Disputed and as Opt In Claims or Opt Out Claims and setting forth the Trustee's Initial Estimates.  The Initial Estimates shall be updated from time to time in the Trustee's discretion and such updates will be filed with the Court.  The Notice of Submission may be amended from time to time as Disputed Claims become Allowed Claims or Disallowed Claims.

D.     The Trustee shall distribute the Net Collateral Fund, the Fifth Third Estate Settlement Fund, the Fifth Third Claim Settlement Fund and the Net Recovery Fund to the Holders of Allowed Claims pursuant to the Plan.  Unclaimed Distributions shall be reallocated to the Final Distribution.  Any unclaimed Distributions existing after the Final Distribution shall be disposed of as determined by further order of the Court, except that unclaimed Distributions of Fifth Third Claim Settlement Fund remaining after the Final Distribution shall be returned to Fifth Third.

E.     Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, (i) post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, and (ii) interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

6.2     Calculation of Net Collateral Fund, Fifth Third Estate Settlement Fund, Fifth Third Claim Settlement Fund, and Recovery Fund.

A.     The Trustee will identify all funds in the possession of the Trustee that are included in the Collateral Fund or the Recovery Fund and file this identification with the Initial Estimates.  Funds currently subject to contested matters and in the Trustee's Escrow Fund shall be identified in the Initial Estimates.  Funds in the Trustee's Escrow Fund that are not the subject of a specific objection shall be transferred to the Trustee's operating fund on the Effective Date.  From time to time in the Trustee's discretion, the Trustee will file with the Court an updated summary of monies collected from recovered assets or resolution of disputes and whether the Trustee has identified the monies as being included in the Collateral Fund or the Recovery Fund.  Any party in interest may file an objection to the Trustee's designation.  While an objection is unresolved the Trustee will treat the proceeds as not part of the Distribution Funds for calculation of any distributions from the Distribution Funds.  Any hearing on such

16

an objection shall be set not more than sixty (60) days from the date the objection is filed.

B.      Subject to establishing reasonable reserves for Disputed Claims, the Trustee will calculate the Fifth Third Claim Settlement Fund payable to Opt In Creditors by multiplying the Fifth Third Claim Settlement Percentage by the amount of the Net Collateral Fund.

C.      Subject to establishing reasonable reserves for Disputed Claims, the Trustee will calculate the Fifth Third Estate Settlement Fund payable to the holders of Allowed Class 4 Claims.

6.3     Initial and Subsequent Distributions; Creation of Disputed Claims Reserve.

A.      Initial Estimates. Within sixty (60) days of the Effective Date, the Trustee shall file with the Court the Initial Estimates. The Initial Estimates will be revised and adjusted as the amounts of Allowed Opt In Claims, Allowed Opt Out Claims, the Fifth Third Deficiency Claim, the Fifth Third Estate Settlement Percentage, the Fifth Third Claim Settlement Percentage and the Recovery Expense Pro Rata Application Percentages are refined and ultimately become final.

B.      Initial Distribution. The Trustee shall make the Initial Distribution based on the Initial Estimates (as they may have been subsequently revised) on the first Distribution Date to occur more than one hundred twenty (120) days after the Effective Date.

C.      Disputed Claim Reserve. Concurrently with the Initial Distribution and continuing for each distribution thereafter until the Disputed Claims become either Allowed Claims or Disallowed Claims, the Trustee shall deposit in the Disputed Claims Reserve sufficient Cash to pay each Disputed Claim's share of each distribution in full. When a Disputed Claim has become either an Allowed Claim or a Disallowed Claim, the Trustee shall, as applicable, either transfer the applicable portion of the Disputed Claims Reserve to the Holder of the Allowed Claim or transfer the applicable portion to the Trustee's operating account for distribution on the next Distribution Date.

D.      Final Distribution. The Trustee shall make the Final Distribution when, in the reasonable judgment of the Trustee all assets of the Estate have been liquidated and there are no potential sources of additional Cash for distribution, there remain no Disputed Claims, and the Trustee is in a position to make the Final Distribution in accordance with applicable law. The date on which the Final Distribution is made is referred to as the "Termination Date." The Trustee shall provide at least thirty (30) days prior notice of the Termination Date to Holders of all Claims, except to the extent such Claims have been disallowed, withdrawn, paid or satisfied in full or otherwise settled as to payment as of the time the notice is provided. On the Termination Date, the Trustee shall distribute all remaining Cash to Holders of Allowed Claims in accordance with the Plan and promptly thereafter, request that the Court enter an order closing the Chapter 11

17

Case.  The order closing the Chapter 11 Case shall include a provision directing as to the final disposition of any Distributions returned following the Final Distribution.

      E.      <u>True-up of Distributions</u>.  As a general matter the projection and calculations of various dollar amounts (including the Initial Estimates) that are material to the amounts payable to Holders of Allowed Claims under the Plan become more refined the Trustee will adjust distributions to achieve a "true up" of the amounts to be distributed and to account for perceived "over" and "under" distributions in the past.  The goal of such "true up" will be to produce as of the Final Distribution total distributions to various Holders of Allowed Claims as provided in the Plan.  Even though certain monies distributed including the YCB Monies, Bond Monies and Restitution Payments may be distributed in accordance with the rules or orders of Courts or agencies other than the Court, such distributions will be credited to reduce the amount of Allowed Class 4 Claims (and will in the case of YCB Monies count toward a Holder's Class 4 pro rata distribution).

      F.      <u>Unclaimed Distributions</u>.  Distributions to Holders of Allowed Claims shall be made directly to the Holders of such Claims at the address of each such Holder as set forth on the proofs of claim filed by such Holders.  If any Holder's distribution is returned as undeliverable, the Trustee shall deposit the returned distribution into the Unclaimed Distributions Reserve and no further distributions to such Holder shall be made unless the Trustee is made aware of such Holder's then current address, at which time the undelivered distribution shall be made to such Holder, without interest.  Upon the expiration of ninety (90) days following the original mailing date of a distribution or the Termination Date, whichever is earlier, the Holder of the Allowed Claim entitled to such unclaimed distribution shall cease to be entitled thereto, such creditor's Claim shall be deemed a Disallowed Claim and the unclaimed distribution will be transferred from the Unclaimed Distributions Reserve to the Trustee's general operating account and made available for distribution or disposal in accordance with the Plan.

      G.      <u>Procedures for Treating and Resolving Disputed Claims</u>.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  All objections to Claims must be filed on or before the Claims Objection Deadline.

      H.      <u>De Minimis Distributions</u>.  Any other provision of the Plan notwithstanding, the Trustee may but is not required to make interim distributions to any Claim when the amount to be distributed is in an amount less than $50.00.  On the Final Distribution, the Trustee may but is not required to make any Final Distribution under the final true-up to the Holder of an Allowed Claim when the amount to be distributed is less than $25.00.  The payment that would have been distributed in the Final Distribution but for this subsection shall be reallocated Pro Rata to those Holders of Allowed Claims that are receiving a distribution of $25 or more.

I.     Preconditions to Distribution.  Notwithstanding any provision of this Plan specifying a date or time for distribution, distributions in respect of any Claim, (i) that at such time is subject to a pending objection, (ii) for which the Holder of such Claim is subject to a pending Cause of Action in favor of the Estate, or (iii) for which the Holder of such Claim has outstanding an unsatisfied judgment or order from a Cause of Action in favor of the Estate, shall not be made until all such objections or pending actions have been resolved and all judgments or payment orders against such Holder have been satisfied.  Upon resolution or satisfaction, the Trustee shall promptly make such distribution to the Holder of such Claim as would provide that Holder with a total distribution based upon the amount of that Holder's Allowed Claim that is equal to the Pro Rata distribution made to Holders of other Claims of the same Class or priority.  If any distribution is made on a Claim prior to the timely filing of an objection or a Cause of Action, and the Court subsequently grants the objection, in whole or in part, or enters judgment against the creditor in the Cause of Action, the Trustee may take appropriate actions to recover the overpayment portion of such distribution or to net such overpayment against any further distribution or distributions to the creditor from the Trustee under the Plan.

6.4     Trustee as Plan Agent.

A.     Continuation of Trustee's duties post-Effective Date.  The principal function of the Trustee after the Effective Date is to liquidate and collect the Property (including the prosecution of Retained Actions) and make distributions in respect of Allowed Claims in accordance with the terms of this Plan.  The Trustee shall perform this purpose in a manner consistent with the nature of the assets to be administered, obligations to be satisfied, claims to be disputed, and Causes of Action to be pursued. The Trustee will comply with all of his obligations, including, but not limited to, obligations arising by operation of the Bankruptcy Code, Bankruptcy Rules and the terms of the Plan.

B.     Effectuating Documents; Further Transactions.  The Trustee shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

C.     Powers and Duties of Trustee.  Pursuant to the terms and provisions of this Plan, the Trustee (utilizing his Professionals) shall be the sole and official distribution agent to make distributions to the Holders of Allowed Claims.  The Trustee shall carry out the implementation of this Plan and shall have all duties, powers, and standing and authority necessary to implement the Plan and to administer and liquidate the assets of the Estate for the benefit of Holders of Allowed Claims.  The Trustee's powers shall include, without limitation, the following:

i)     Maintaining the books and records of the Estate and providing for storage and destruction of records as deemed appropriate;

19

ii)    Liquidating any remaining unliquidated assets of the Estate and selling or otherwise transferring for value any non-cash Property;

iii)    Litigating or settling any Claims, Causes of Action and Retained Actions asserted by or against the Debtor or the Trustee, subject to approval from the Court using all commercially reasonable efforts to cooperate with other parties in such litigation, and retaining such Professionals with the approval of the Court as the Trustee may in his discretion deem necessary with respect to the Trustee's prosecution of various Causes of Action (including Retained Actions);

iv)    Abandoning any Property that cannot be sold or otherwise disposed of for value and whose distribution to Holders of Allowed Claims would not be feasible or cost-effective in the reasonable judgment of the Trustee, and subject to approval from the Court;

v)    Administering the Disputed Claims Reserve, which shall be maintained as a separate, segregated fund;

vi)    Administering the Distribution Funds;

vii)    Making interim and final distributions of Estate funds as provided in this Plan;

viii)    Filing with the Court the reports and other documents required by the Plan or otherwise required to close the Chapter 11 Case and preparing and filing any tax or informational returns that may be required;

ix)    Incurring, at the expense of the Estate, such charges, costs and fees as are necessary and appropriate in connection with the performance of its duties;

x)    Taking any other actions that the Trustee determines to be in the best interests of the Debtor's creditors and consistent with the purposes of this Plan.

D.    <u>Reporting Requirements</u>.  The Trustee shall prepare and file with the Court quarterly reports, as soon as practicable after the end of each calendar quarter showing in reasonable detail all amounts received by the Trustee and all distributions and the amounts and recipients thereof during the period of time covered in the report.

E.    <u>Retained Actions</u>.  In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Trustee will retain and may (but is not required to) prosecute and enforce all Retained Actions and all other similar Causes of Action or claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee or a debtor-in-possession under the Bankruptcy Code except any that are expressly released hereunder.  <u>Exhibit C</u> to the Plan sets forth, without limitation, a more detailed description of the Retained Actions.  The Estate is not reorganizing and the post confirmation estate shall continue to be the Estate.  None of the Causes of Action that is

20

not listed on Exhibit C shall be lost or waived by reason of the entry of the Confirmation Order or the occurrence of the Effective Date.

       F.      <u>Retention of Professionals</u>.  The Trustee may rely upon any Professional appointed in this Chapter 11 Case for guidance in the performance of his duties and may employ other Professionals as he deems appropriate and as approved by the Court.  All Professionals who perform services for the Trustee from and after the Confirmation Date shall continue to have the right to file fee applications and expense reimbursement requests and obtain payment of such allowed fees and expenses from the Estate promptly upon their approval by the Court.

       G.      <u>Final Report</u>.  Within thirty (30) days of the Termination Date, the Trustee shall file with the Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Trustee shall have no further duties under the Plan.

## <u>ARTICLE VII</u>

<u>Effects of Plan Confirmation and the Occurrence of the Effective Date</u>

       7.1     <u>Continuance of Estate</u>.  As of and after the Effective Date and through the Final Distribution, the Estate will remain in existence and all Property (including Retained Actions) will remain Property of the Estate.  There will be no vesting of property of the Estate in the Debtor as would otherwise be provided by Bankruptcy Code Section 1141(b).  All Causes of Action that are not expressly released pursuant to the Plan will vest in, be retained by, and be assertable by the Trustee as Retained Actions.  None of the Causes of Action shall be lost solely by reason of the entry of the Confirmation Order or the occurrence of the Effective Date.  The Estate shall remain and retain all of its Property, including all Causes of Action not expressly released hereunder from and after the Effective Date.  The failure to expressly described any of the Causes of Action on Exhibit C shall not constitute a waiver by the Trustee or estop the Trustee from prosecuting such Cause of Action.

       7.2     <u>Trustee Release</u>.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, and in consideration for the obligations of Fifth Third set forth in this Plan and, if applicable, the Cash and other agreements or documents to be delivered in connection with this Plan, the Trustee and his successors and assigns for and on behalf of himself and the Estate, shall be deemed to have forever waived, released and discharged Fifth Third and its officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise arising on or prior to the Effective Date relating to the Debtor or any Affiliates of the Debtor, the Chapter 11 Case or this Plan.  The foregoing Trustee Release does not release or discharge any claim of a creditor who fails to opt-in or of any non-creditor.

7.3     Third Party Release.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of Fifth Third and the Trustee set forth in this Plan and, if applicable, the Cash and other agreements or documents to be delivered in connection with this Plan, and the waiver and release of Claims by Superior pursuant to the Superior Settlement, each Holder of an Opt In Claim and any affiliate of such Holder shall be deemed to have forever waived, released and discharged Fifth Third, the Trustee, and Superior and each of their respective officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise held by such Holder arising on or prior to the Effective Date relating to the Debtor or any Affiliates of the Debtor, the Chapter 11 Case, Property of the Estate or this Plan.  This release shall not affect any claim held by the Holder of an Opt In Claim that certain property is not Property of the Estate if such claim is formally asserted and filed in the Interpleader Actions or otherwise prior to the deadline for the execution and delivery of the Opt In Agreement.  The foregoing Third Party Release does not release or discharge any claim of a creditor who fails to opt-in or of any non-creditor.  If and to the extent the Joplin Settlement is approved by the Court pursuant to Bankruptcy Rule 9019, the Joplin Defendants will be included as parties being released as third parties in Article 7.3 of the Plan.

7.4     Exculpation.  The Trustee and his agents and Professionals (acting in such capacity) shall neither have nor incur any liability to any Person or Entity for any prepetition or postpetition act taken, or omitted to be taken, in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, release or any other agreement or document created, or entered into, in connection with the Plan, or any other prepetition or postpetition act taken, or omitted to be taken, in connection with, or in contemplation of the Chapter 11 Case.

**7.5     Injunction.  On and after the Effective Date, and except as otherwise provided in this Plan or the Confirmation Order, all Persons and/or Entities are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, interest or right of Debtor and any Cause of Action or Bankruptcy Cause of Action that the Trustee retains sole and exclusive authority to pursue in accordance with this Plan.  This injunction applies to any action or proceeding that affects or seeks possession of Property of the Estate.  If there is a dispute that any particular asset is Property of the Estate, such dispute is not affected by this injunction until such dispute is resolved.  However, any dispute over whether an asset is Property of the Estate shall be brought and prosecuted only in the Bankruptcy Court, subject to any jurisdictional limitations.**

**7.6     Term of Injunction or Stays.  Unless otherwise provided herein or by an order of the Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to**

**Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all distributions required to be made under this Plan have been made. The injunction provided in Section 7.5 of this Plan shall not terminate and shall continue in existence notwithstanding this Section 7.6.**

7.7    Binding Effect.  On and after the Confirmation Date and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against Debtor, the Trustee or the Estate and each's respective successors and assigns, whether or not the Claim was filed, deemed filed, or impaired under the Plan and whether or not such Holder has accepted the Plan.

7.8    Exemption From Certain Transfer Taxes and Recording Fees.  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor or the Trustee to any other Person or entity pursuant to the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or recording fee or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.9    Conditions Precedent to the Effective Date.  The occurrence of the Effective Date shall be conditioned on the following prerequisites:

A.    The Confirmation Order, in form and substance acceptable to the Trustee, shall have become a Final Order.

B.    The Trustee has filed a Notice of Effective Date with the Court.

## **ARTICLE VIII**

### Treatment of Executory Contracts

8.1    Rejection of all Executory Contracts.  As of the Effective Date, all Executory Contracts of Debtor that have not been assumed or are the subject of a pending motion to assume, shall be deemed rejected.  Any contract, to the extent it may be determined to have been executory on the Petition Date and is the subject of a contested matter or adversary proceeding (including any of the Interpleader Actions) shall not be deemed rejected by this Section 8.1 if so doing would prejudice the Estate.

8.2    Effect of Rejection.  Claims arising from the rejection of Debtor's Executory Contracts shall be included in Class 4 General Unsecured Claims.  Holders of such Claims shall file a proof of claim within thirty (30) days of the later of the Claims Bar Date and the date on which such contract is rejected.

## ARTICLE IX

### Retention of Jurisdiction

9.1     The Court shall retain jurisdiction over the Estate and this Chapter 11 Case for all purposes under the Bankruptcy Code, including matters under the Plan, until the Chapter 11 Case is closed by the entry of a final decree.

## ARTICLE X

### Miscellaneous Issues

10.1     Payment of U.S. Trustee's Fees.  All fees payable to pursuant to 28 U.S.C. Section 1930 shall be paid by the Trustee when due until the entry of a final decree.  Any delay after the entry of the final decree in administratively closing the Chapter 11 Case shall not cause the Estate to incur any fees payable under 28 U.S.C. Section 1930.

10.2     No Admission Against Error.  Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, shall be or be deemed an admission against interest.  In the event the Plan is not consummated, neither the Plan, the Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Court involving the Debtor and/or the Trustee. Nothing in this Plan or the Disclosure Statement shall be automatically deemed a waiver of any attorney-client privilege of any fact or conclusion simply by its inclusion in the Plan or Disclosure Statement.

10.3     No Waiver.  Nothing set forth in the Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than except as set forth specifically in the Plan.

10.4     Post-Effective Date Service and Notice.  Pursuant to Bankruptcy Rule 2002 and any other applicable Bankruptcy Rules, notice or service of all post- Effective Date matters and actions for which notice or service is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Trustee, and all persons on the service list maintained by the Trustee in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  With the exception of the Trustee, Fifth Third, and the U.S. Trustee, any Person desiring to remain on the Trustee's Bankruptcy Rule 2002 service list shall be required to file a request for continued service within ninety (90) days after the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list.

10.5     Plan Modification.  The Plan may be altered, amended or modified before or after the Confirmation Date in accordance with Section 1127 of the Bankruptcy Code.

10.6     Further Action.  The Trustee is authorized to take any action necessary or appropriate to execute and effectuate the provisions of the Plan.

24

10.7    <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Trustee shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

10.8    <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its businesses, the Trustee shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance by the Trustee if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings by the Trustee, and, if and where appropriate, an adequate reserve has been set aside on the books of the Trustee.

10.9    <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

10.10    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Indiana shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

10.11    <u>Notices</u>.  Any notice required or permitted to be provided to the Trustee or shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

> James A. Knauer
> Chapter 11 Trustee of Eastern Livestock Co., LLC
> Kroger, Gardis & Regas, LLP
> 111 Monument Circle, Suite 900
> Indianapolis, Indiana 46204-5125

with a copy to:

> Faegre Baker Daniels, LLP
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana 46204
> Attention:  Terry E. Hall

> Hoover Hull LLP
> 111 Monument Circle, Suite 4400
> P.O. Box 44989

Indianapolis, IN 46244-0989
Attention:  Sean T. White

Dated: Indianapolis, Indiana
       October 26, 2012

                             JAMES A. KNAUER, CHAPTER 11 TRUSTEE OF
                             EASTERN LIVESTOCK CO., LLC as PLAN
                             PROPONENT


                             /s/ James A. Knauer
                             James A. Knauer, Chapter 11 Trustee of Eastern Livestock
                             Co., LLC

EXHIBIT A

**FORM TO "OPT IN" TO FIFTH THIRD SETTLEMENT MONIES**

Please read the **OPT IN Instructions on the reverse side** before completing this form. Capitalized terms used below have the definitions given them in the OPT IN Instructions.

_____          $_____
Printed Name of Class 4 Creditor                Filed Claim Amount


    By signing below, _____ on behalf of itself and any affiliates (collectively referenced herein as "Creditor") chooses to OPT IN and share in the Fifth Third Settlement Monies under the confirmed Plan of Eastern Livestock Co., LLC ("ELC"). Creditor understands and agrees that in consideration for the obligations of Fifth Third Bank ("Fifth Third") and the Trustee as set forth in the Plan, that Creditor, to the fullest extent permitted under applicable law, hereby forever waives, releases and discharges Fifth Third Bank, the Trustee, Superior Livestock Auction LLC ("Superior") and each of their respective officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise held by Creditor or its affiliates and in any way arising from or related to the Debtor, any affiliates of the Debtor, the Chapter 11 Case, property of the Debtor's bankruptcy estate, the Plan, or the acts or omissions of Fifth Third, Superior or the Trustee related to the Debtor, any affiliates of the Debtor, the Chapter 11 Case, property of the Debtor's bankruptcy estate, or the Plan arising on or prior to the Confirmation Date.  This waiver and release is effective when executed, subject to the occurrence of the Effective Date. This waiver and release does not release or discharge any claim of a creditor who fails to opt-in or of any non-creditor.


NOTE: any transfer or sale of a creditor's claim must include a fully executed written assignment of all claims and causes of action that the creditor may have against Fifth Third in order for the transferee to opt in and execute an Opt In Agreement.  Evidence of the executed written assignment of claims and causes of action against Fifth Third from the transferor of the Claim must accompany the Opt In Agreement if the Opt In Agreement is executed and submitted by a transferee of a Claim.


*(Remainder of page intentionally left blank; signature page to follow)*


DMS_US 39399729v3

*Signature Page to "Opt In" To Fifth Third Settlement Monies*

_____
Signature
_____
Printed Name
_____
Position/Title:

Date: _____

Witnessed by: _____

_____
Printed Name and Address

EXHIBIT B

**INSTRUCTIONS FOR COMPLETING THE OPT IN FORM**

**(DEADLINE TO RETURN THE FORM IS POST MARK DATE _____.)**

You have received the Opt In Form printed on the reverse side of these instructions because you have asserted a claim as a general unsecured creditor against Eastern Livestock Co., Inc. ("ELC") in its chapter 11 bankruptcy case ("Chapter 11 Case"). The Bankruptcy Court confirmed the *Trustee's Chapter 11 Plan of Liquidation* [Dock. No. 255] (the "Plan") on _____ __, 201_ (the "Confirmation Date") by entering the *Order Approving Trustee's Chapter 11 Plan of Liquidation* [Dock. No. ___] (the "Confirmation Order"). Pursuant to the Plan and the Confirmation Order, you may now choose to "opt in" to receive a distribution from the "Fifth Third Settlement Monies" as that term is defined in the Plan. You may choose to "opt in" whether you voted for or against the Plan or if you did not vote. Not opting in will not affect your rights to distributions on your claim that are not funded from the Fifth Third Settlement Monies.

By "opting in" to receive a share of the Fifth Third Settlement Monies, you will be waiving any claims you may have against Fifth Third Bank or the Trustee. The release shall not affect any claim held by the Holder of an Opt In Claim that certain property is not Property of the Estate underlined provided that any such claim is formally asserted and filed in the Interpleader Actions or otherwise in the Chapter 11 Case prior to the execution of the Opt In Agreement. **YOU ARE STRONGLY ADVISED AND ENCOURAGED TO READ THE PLAN AND CONFIRMATION ORDER BEFORE MAKING A DECISION TO OPT IN. YOU MAY WANT TO CONSULT WITH AN ATTORNEYBEFORE MAKING A DECISION**.

As required by the Plan and Confirmation Order, the Opt In Form and these instructions have been sent to all persons that have asserted a general unsecured claim (a "Class 4 Claim" in the Plan) against ELC. YOUR RECEIPT OF THIS FORM DOES NOT NECESSARILY MEAN THAT YOUR CLAIM HAS BEEN ALLOWED and the Trustee may still object to your claim.

If you choose to Opt In under the Plan and receive distributions of the "Fifth Third Settlement Monies", you must execute and return an **original** of the Opt In Form on the reverse side no later than **_____, 2012 ("Deadline")**.

The Opt In Form may be mailed via the US postal service, hand delivered, or sent via courier service. If mailed or couriered, the post mark date must be NO LATER than the Deadline. Send the Form to: Faegre Baker Daniels LLP, Attention Terry Hall, 300 North Meridian Street Suite 2700, Indianapolis, IN 46204. An envelope with this address is enclosed. Faxed or scanned and emailed forms will be accepted if they are received by the Deadline and an original signature is received not later than three business days after the Deadline.

Additional copies of the Form and these instructions are available on the Trustee's blog (www.easternlivestockbkinfo.com). The Form does not need to be notarized, however, you will need to have someone witness your signature. If you have questions, please contact Terry Hall at 317-237-0300 (terry.hall@faegrebd.com).

The Effective Date of the Plan, as that term is used in the Opt In Form, refers to the date that the Trustee files a "Notice of Effective Date" with the Bankruptcy Court setting forth the date that the Plan has become effective.

NOTE: any transfer or sale of a creditor's claim must include a fully executed written assignment of all claims and causes of action that the creditor may have against Fifth Third in order for the transferee to opt in and execute an Opt In Agreement.  Evidence of the executed written assignment of claims and causes of action against Fifth Third from the transferor of the Claim must accompany the Opt In Agreement if the Opt In Agreement is executed and submitted by a transferee of a Claim.

**AMENDED**
**EXHIBIT C**

**NON-EXCLUSIVE LIST OF RETAINED ACTIONS**

---

ARTICLE VI OF THE PLAN PRESERVES AND RETAINS **ALL** CAUSES OF ACTION NOT EXPRESSLY WAIVED, RELINQUISHED, RELEASED, COMPROMISED, OR SETTLED PURSUANT TO THE PLAN OR A FINAL ORDER.  THE ATTACHED LIST IS A NONEXCLUSIVE LIST OF ENTITIES AGAINST WHOM THE DEBTOR AND THE TRUSTEE ON BEHALF OF THE ESTATE, PRE- AND POST-CONFIRMATION OF THE PLAN, AS APPLICABLE, SHALL RETAIN AND PROSECUTE CAUSES OF ACTION. FAILURE TO INCLUDE AN ENTITY ON THE ATTACHED LIST SHALL NOT CONSTITUTE A RELEASE OR WAIVER OF OR ESTOP THE TRUSTEE FROM PURSUING A RETAINED ACTION AGAINST SUCH ENTITY AND SHALL NOT INDICATE THAT CAUSES OF ACTION AGAINST SUCH ENTITY HAVE NOT BEEN RETAINED.

THE DEBTOR AND THE TRUSTEE ON BEHALF OF THE ESTATE, PRE- AND POST- CONFIRMATION OF THE PLAN, AS APPLICABLE, RETAIN ALL CAUSES OF ACTION OF ANY KIND WHATSOEVER AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.

FOR AVOIDANCE OF DOUBT, UNLESS EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH, ENTITIES NOT LISTED ON THE ATTACHED LIST ARE NOT RELEASED AND THE DEBTOR AND THE TRUSTEE ON BEHALF OF THE ESTATE, PRE- AND POST-CONFIRMATION OF THE PLAN, AS APPLICABLE, EXPRESSLY RETAIN ALL CAUSES OF ACTION OF ANY KIND WHATSOEVER AGAINST ALL SUCH ENTITIES, INCLUDING WITHOUT LIMITATION THE CATEGORIES OF CAUSES OF ACTION SET FORTH BELOW.

FAILURE TO ATTRIBUTE ANY SPECIFIC CAUSE OF ACTION TO A PARTICULAR ENTITY ON THE ATTACHED LIST SHALL NOT UNDER ANY CIRCUMSTANCE BE INTERPRETED TO MEAN THAT SUCH CAUSE OF ACTION IS NOT RETAINED AGAINST SUCH ENTITY.  ALL POSSIBLE CAUSES OF ACTION, INCLUDING CAUSES OF ACTION NOT LISTED BELOW, ARE RETAINED AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.

IN THE EVENT OF ANY APPARENT INCONSISTENCY BETWEEN THE RELEASES OF ENTITIES IN THEIR CAPACITIES AS SUCH PURSUANT TO THE PLAN OR A FINAL ORDER AND THE ATTACHED LIST, SUCH RELEASES GRANTED PURSUANT TO THE PLAN OR FINAL ORDER SHALL GOVERN.

FINALLY, THE TRUSTEE ADVISES THAT INCLUSION OF ANY ENTITY AS PART OF THIS EXHIBIT C DOES NOT MEAN THAT SUCH ENTITY WILL IN FACT BE SUED.

Categories:

1.  Causes of Action, and all parties to such Causes of Action except as expressly released pursuant to the Plan or a final order, as asserted or may be asserted in (i) any contested matter pending before the bankruptcy court, and/or (ii) ongoing litigation pending to which the Debtor, the Estate or the Trustee is a party in any court;

2.  Causes of Action against cattle sellers, vendors of goods or services, or other parties for damages or recovery of overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities; setoff; wrongful or improper termination, conversion, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations;

3.  Causes of Action against any party that owes or that may in the future owe money to the Debtor, the Estate or Trustee, pre- or post confirmation of the Plan, whether on account of accounts receivable, promissory note or otherwise, regardless of whether such entity is explicitly identified in this Exhibit C and any amendments thereto, and all Causes of Action against or related to all entities that assert or may assert that the Debtor of the Estate, pre- or post consummation of the Plan, owe money to them;

4.  Causes of Action against local, state, and federal taxing authorities for refunds of overpayments or other payments;

5.  Causes of Action against attorneys, accountants, consultants or other professional service providers relating to services rendered;

6.  Contract, tort or equitable Causes of Action that may exist or subsequently arise;

7.  Causes of Action of the Debtor arising under section 362 of the Bankruptcy Code;

8.  Equitable subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law; and

9.  Causes of Action arising under chapter 5 of the Bankruptcy Code, including those state law and any other actions which could be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 against any entity receiving a transfer of property of the Debtor during the four years prior to bankruptcy, including but not limited to, insiders, employees, officers, and equity holders of the Debtor.

DMS_US 39522464v3

# EXHIBIT C

Potential Parties to Retained Actions
(*Non-Released Parties*)

| *Non-Released Party* | *Non-Exhaustive Categories of Potential Causes of Action* |
|---|---|
| 4b Cattle | 2, 3, 6, 9 |
| AB Livestock, LLC | 2, 3, 6, 9 |
| ADM Investor Services, Inc. | 2, 3, 6, 9 |
| AgriBeef Co. | 2, 3, 6, 9 |
| Alabama Livestock Auction | 2, 3, 6, 9 |
| Alberto Olivas | 2, 3, 6, 9 |
| Alexander P. Gallo | 2, 3, 6, 9 |
| Allen Barry | 2, 3, 6, 9 |
| Amanda Mason | 2, 3, 6, 9 |
| Amos Kropf | 2, 3, 6, 9 |
| Anderson Cattle Company | 2, 3, 6, 9 |
| Andy Lolley | 2, 3, 6, 9 |
| Animal Profiling International | 2, 3, 6, 9 |
| Anna Gayle Gibson | 2, 3, 6, 7, 8, 9 |
| Arab Livestock Market, Inc. | 2, 3, 6, 9 |
| Archer Daniels Midland | 2, 3, 6, 9 |
| Arrowhead Cattle | 2, 3, 6, 9 |
| Ashville Stockyard | 2, 3, 6, 9 |
| Atkinson Livestock Market | 2, 3, 6, 9 |
| B&B Land and Livestock | 2, 3, 6, 9 |
| B&F Cattle Co. | 2, 3, 6, 9 |
| B&M Cattle Co. | 2, 3, 6, 9 |
| Baca County Feedyard | 2, 3, 6, 9 |
| Beef Marketing Group Co. | 2, 3, 6, 9 |
| Belleau Woods, LLC | 2, 3, 6, 7, 8, 9 |
| Ben Delworth | 2, 3, 6, 9 |
| Ben Rhodes | 2, 3, 6, 9 |
| Benjamin Gibson | 2, 3, 6, 7, 8, 9 |
| BGL Livestock Trucking | 2, 3, 6, 9 |
| Bill Chase | 2, 3, 6, 7, 8, 9 |
| Bill Crist | 2, 3, 6, 9 |
| Bill Eberle | 2, 3, 6, 9 |
| Bill Ward | 2, 3, 6, 9 |
| Billingsley Auction Sale, Inc. | 2, 3, 6, 9 |
| Billy Carver | 2, 3, 6, 9 |
| Blackjack Feeders LLC | 2, 3, 6, 9 |
| Blake Stewart | 2, 3, 6, 9 |
| Bluegrass South Livestock Market, LLC | 1 |
| Bluegrass Stockyards Co., Inc. | 2, 3, 6, 7, 8, 9 |
| Bluegrass Stockyards East, LLC | 1, 2, 3, 6, 7, 8, 9 |

| *Non-Released Party* | *Non-Exhaustive Categories of Potential Causes of Action* |
|---|---|
| Bluegrass Stockyards Internet | 2, 3, 6, 7, 8, 9 |
| Bluegrass Stockyards of Campbellsville, LLC | 1, 2, 3, 6, 7, 8, 9 |
| Bluegrass Stockyards of Richmond, LLC | 1, 2, 3, 6, 7, 8, 9 |
| Bluegrass Stockyards, LLC | 1, 2, 3, 6, 7, 8, 9 |
| Bluegrass-Maysville Stockyards, LLC | 1, 2, 3, 6, 7, 8, 9 |
| Bob Foote | 2, 3, 6, 9 |
| Brad Robinson | 2, 3, 6, 9 |
| Bradbury & York | 2, 3, 6, 9 |
| Brandon Farris | 2, 3, 6, 9 |
| Brandon Jones | 2, 3, 6, 9 |
| Brandon Maggard | 2, 3, 6, 9 |
| Brandon Zeisler | 2, 3, 6, 9 |
| Breitsprecher Livestock, LLC | 2, 3, 6, 9 |
| Brent Kuehny | 1 |
| Brian McAlester | 2, 3, 6, 9 |
| Brian Witt | 2, 3, 6, 9 |
| Buckhorn Cattle | 2, 3, 6, 9 |
| Bud Heine | 2, 3, 6, 9 |
| Buddy Jenkins / A.W. Jenkins | 2, 3, 6, 7, 8, 9 |
| Buffalo Feeders | 2, 3, 6, 9 |
| C Bar 4, Inc. | 2, 3, 6, 9 |
| C&L Cattle | 2, 3, 6, 9 |
| C&L Farms | 2, 3, 6, 9 |
| C&M Cattle | 2, 3, 6, 9 |
| Carroll Co. L/S Sale Barn, Inc. | 2, 3, 6, 9 |
| Cattleco | 2, 3, 6, 9 |
| Cattlemen's Feedlot II Ltd. | 2, 3, 6, 9 |
| Cattlement's Feedlot Ltd. | 2, 3, 6, 9 |
| Cav Excavation | 2, 3, 6, 9 |
| CB Gilbert | 2, 3, 6, 9 |
| CBA Pharma, Inc. | 2, 3, 6, 9 |
| Chad Baker | 2, 3, 6, 9 |
| Chad Houck | 2, 3, 6, 9 |
| Chad Schuchmann | 2, 3, 6, 7, 8, 9 |
| Chandler Burton | 2, 3, 6, 7, 8, 9 |
| Charles Anderson | 2, 3, 6, 9 |
| Charles E. Farris | 2, 3, 6, 9 |
| Charles W. Anderson | 2, 3, 6, 9 |
| Charlotte Hendricks | 2, 3, 6, 9 |
| Chastain Feeds | 2, 3, 6, 9 |
| Circle M Builders | 2, 3, 6, 9 |
| Clarence B. Gilbert | 2, 3, 6, 9 |
| Clark Christensen | 2, 3, 6, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Clay Carter | 2, 3, 6, 9 |
| Coffeyville Livestock Market, LLC | 1 |
| Corey Kay | 2, 3, 6, 9 |
| Cornelison Farm Service, LLC | 2, 3, 6, 7, 8, 9 |
| Cornelison Farms, FLP | 2, 3, 6, 9 |
| CPC Livestock | 2, 3, 6, 9 |
| Crow Hollow, LLC | 2, 3, 6, 9 |
| Dallas McPhail | 2, 3, 6, 9 |
| Dan Werne | 2, 3, 6, 9 |
| Danny Stewart | 2, 3, 6, 9 |
| Darrell Beauchamp | 2, 3, 6, 7, 8, 9 |
| Darrell Moore Farm | 2, 3, 6, 9 |
| Darren Berg | 2, 3, 6, 7, 8, 9 |
| David Hatcher | 2, 3, 6, 9 |
| David Hilbert | 2, 3, 6, 9 |
| David Peterson | 2, 3, 6, 9 |
| David Phillips | 2, 3, 6, 9 |
| Delbert Hawkins | 2, 3, 6, 9 |
| Demaio Farm & Ranch | 2, 3, 6, 9 |
| Diesel Dawg Enterprises | 2, 3, 6, 9 |
| DJ Foods | 2, 3, 6, 9 |
| Dollar K Cattle Co. | 1 |
| Don Garrett | 2, 3, 6, 9 |
| Donnie Gibson | 2, 3, 6, 7, 8, 9 |
| Doug Sunderman | 2, 3, 6, 9 |
| Dr. James M. Boyer | 2, 3, 6, 9 |
| Dusty Spressor | 2, 3, 6, 9 |
| E4 Cattle Co. | 2, 3, 6, 9 |
| East Tennesee Livestock Center, Inc. | 1 |
| Eastern Cattle Co., LLC | 2, 3, 6, 7, 8, 9 |
| East-West Trucking, LLC | 2, 3, 6, 7, 8, 9 |
| Eben Bailey Ranch | 2, 3, 6, 9 |
| ECF Farms | 2, 3, 6, 7, 8, 9 |
| Ed Edens Farms | 2, 3, 6, 7, 8, 9 |
| Ed Edens IV | 2, 3, 6, 7, 8, 9 |
| Ed Hoover | 2, 3, 6, 9 |
| Edmonton Cattle Co., LLC | 2, 3, 6, 7, 8, 9 |
| Edwin Riley | 2, 3, 6, 9 |
| Eric Barber | 2, 3, 6, 9 |
| Ernie Elder | 2, 3, 6, 7, 8, 9 |
| Estate of Thomas P. Gibson and Patsy M. Gibson, Case No. 10-93867 U.S. Bankruptcy Court for the Southern District of Ind. | 2, 3, 6, 7, 8, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Eugene Barber & Sons, Inc. | 2, 3, 6, 7, 8, 9 |
| Eugene Barber and Sons Livestock Company, Inc. | 2, 3, 6, 7, 8, 9 |
| F.C. Felhaber & Company, Inc. | 2, 3, 6, 9 |
| Faith Cattle Co. | 2, 3, 6, 9 |
| Farm Credit Services of Mid-America, ACA | 2, 3, 6, 9 |
| First Bank and Trust | 1, 2, 3, 6, 9 |
| Five Rivers (Gilcrest) | 2, 3, 6, 9 |
| Five Rivers (Kuner) | 2, 3, 6, 9 |
| Five Rivers (Malta) | 2, 3, 6, 9 |
| Five Rivers (XIT Feeders) | 2, 3, 6, 9 |
| Five Rivers (Yuma) | 2, 3, 6, 9 |
| Flying M Ranch | 2, 3, 6, 9 |
| Fort Payne Stockyards | 2, 3, 6, 9 |
| Francis J. Madison | 2, 3, 6, 9 |
| Fred Smith | 2, 3, 6, 9 |
| Fritz Gettlefinger | 2, 3, 6, 9 |
| Frontera Feedyard | 2, 3, 6, 9 |
| Gallo Feeders | 2, 3, 6, 9 |
| Ganado, Inc. | 2, 3, 6, 9 |
| Garr Construction | 2, 3, 6, 9 |
| Garr Trucking | 2, 3, 6, 9 |
| Gary Bell | 2, 3, 6, 9 |
| Gary Carter | 2, 3, 6, 9 |
| Gary Krantz | 2, 3, 6, 9 |
| Gary Laib | 2, 3, 6, 9 |
| Gary Riggs | 2, 3, 6, 9 |
| Gary Seals | 3 |
| Gary Thompson | 2, 3, 6, 9 |
| Gary Thompson & Sons | 2, 3, 6, 9 |
| Gene Stoops | 2, 3, 6, 9 |
| Gibson Cattle Co., LLC | 2, 3, 6, 7, 8, 9 |
| Gibson Family Investments, Ltd. | 2, 3, 6, 7, 8, 9 |
| Gibson Farms, LLC | 2, 3, 6, 7, 8, 9 |
| Gibson Trucking, Inc. | 2, 3, 6, 7, 8, 9 |
| Glenn Franklin | 2, 3, 6, 9 |
| Glover Farms | 2, 3, 6, 9 |
| Golden Belt Feeders, Inc. | 2, 3, 6, 9 |
| GP Cattle Company | 2, 3, 6, 7, 8, 9 |
| Grant Gibson | 2, 3, 6, 7, 8, 9 |
| Green Valley | 2, 3, 6, 9 |
| Gregory Franklin Hendricks | 2, 3, 6, 9 |
| Gregory T. Gibson | 2, 3, 6, 7, 8, 9 |
| Grove Livestock Sales, Inc. | 2, 3, 6, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Haegedorn Feedlot | 2, 3, 6, 9 |
| Hazel Hume | 2, 3, 6, 9 |
| HHH Cattle Co. | 2, 3, 6, 9 |
| Hodge Livestock Network | 2, 3, 6, 9 |
| Hohenberger Cattle | 2, 3, 6, 9 |
| Hoover Trucking | 2, 3, 6, 9 |
| Hope Breitsprecher | 2, 3, 6, 9 |
| Humphries Farms | 2, 3, 6, 9 |
| Hurstbourne Landings Development Co., LLC | 2, 3, 6, 7, 8, 9 |
| Intrust Bank | 2, 3, 6, 9 |
| J Bar H Cattle | 2, 3, 6, 9 |
| J&F Oklahoma Holdings, Inc. | 2, 3, 6, 9 |
| J&L Cattle Co. | 2, 3, 6, 9 |
| J&L Farms | 2, 3, 6, 9 |
| J&S Feedlots, Inc. | 2, 3, 6, 9 |
| Jackie Young | 2, 3, 6, 9 |
| Jacob Larson | 2, 3, 6, 9 |
| James Ed Edens | 2, 3, 6, 7, 8, 9 |
| Janousek Farms | 2, 3, 6, 9 |
| Jeffrey Madison | 2, 3, 6, 9 |
| Jennifer Berg | 2, 3, 6, 9 |
| Jenny-Ann Enterprises | 2, 3, 6, 9 |
| Jeremy Coffey | 2, 3, 6, 9 |
| Jerry Seely | 2, 3, 6, 9 |
| Jerry Shelton | 2, 3, 6, 9 |
| Jerry Thompson | 2, 3, 6, 9 |
| Jerry Wolfe | 2, 3, 6, 7, 8, 9 |
| Jim Byrd | 2, 3, 6, 7, 8, 9 |
| JL Farms | 2, 3, 6, 9 |
| Joe Schmucker | 2, 3, 6, 9 |
| Joe Thompson | 2, 3, 6, 9 |
| John D. Short | 2, 3, 6, 9 |
| John F. Gibson | 2, 3, 6, 7, 8, 9 |
| John Hoover | 2, 3, 6, 9 |
| John Ross | 2, 3, 6, 9 |
| John S. Gibson | 2, 3, 6, 7, 8, 9 |
| John S. Gibson, Jr. | 2, 3, 6, 7, 8, 9 |
| Joplin Regional Stockyard | 1, 2, 3, 6, 9 |
| Joplin Stockyards Video | 2, 3, 6, 9 |
| JR Byars | 2, 3, 6, 9 |
| JSW Feedlot | 2, 3, 6, 9 |
| JT Nuckols | 2, 3, 6, 9 |
| JVCO, LLC | 2, 3, 6, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| K & S Livestock | 2, 3, 6, 9 |
| Kenny Plowman | 2, 3, 6, 7, 8, 9 |
| Kenny Winningham | 2, 3, 6, 9 |
| Kent Christenson | 2, 3, 6, 9 |
| Kevin Manthey | 2, 3, 6, 9 |
| Kevin Smith | 2, 3, 6, 9 |
| Koller Livestock | 2, 3, 6, 9 |
| Lance Mason | 2, 3, 6, 9 |
| Lance Thornberry | 2, 3, 6, 9 |
| Larry Donnell | 2, 3, 6, 9 |
| Larry Zeien, Jr. | 2, 3, 6, 9 |
| Las Animas Transfer | 2, 3, 6, 9 |
| Laurel Livestock | 2, 3, 6, 9 |
| Lee Porter Gibson | 2, 3, 6, 7, 8, 9 |
| Leroy Saylor | 2, 3, 6, 9 |
| LHL Partnership | 2, 3, 6, 9 |
| Lone Oak Feeders, Inc. | 2, 3, 6, 9 |
| Loveland Farms | 2, 3, 6, 9 |
| M.Y.C. | 2, 3, 6, 9 |
| Macon Stockyard | 2, 3, 6, 9 |
| Mark Freeman | 2, 3, 6, 9 |
| Mark Freeman IV | 2, 3, 6, 9 |
| Marsha Hoover | 2, 3, 6, 9 |
| Martin, Pringle, Oliver, Wallace | 2, 3, 6, 9 |
| Matt Eller | 2, 3, 6, 9 |
| Matt Junneman | 2, 3, 6, 9 |
| Matthew Parrish Gibson | 2, 3, 6, 7, 8, 9 |
| McPhail Land & Cattle | 2, 3, 6, 9 |
| Melanie Gibson | 2, 3, 6, 7, 8, 9 |
| Melvin Mott | 2, 3, 6, 9 |
| Michael H. Hume | 2, 3, 6, 9 |
| Mike Bradbury | 2, 3, 6, 9 |
| Mike Massey | 2, 3, 6, 9 |
| Mike Wilson | 2, 3, 6, 7, 8, 9 |
| Monte Haiar | 2, 3, 6, 7, 8, 9 |
| Monte Koller | 2, 3, 6, 9 |
| Mull Farms & Feeding | 2, 3, 6, 9 |
| Musick Farms, Inc. | 2, 3, 6, 9 |
| Nancy Gibson | 2, 3, 6, 7, 8, 9 |
| Nancy Gibson McDonald | 2, 3, 6, 7, 8, 9 |
| Nathan Hendricks | 2, 3, 6, 9 |
| Nathan Nichols | 2, 3, 6, 9 |
| Nichols Livestock | 2, 3, 6, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Northwest Alabama Livestock Auction | 2, 3, 6, 9 |
| Nu Technologies | 2, 3, 6, 9 |
| Nunn Brothers | 2, 3, 6, 9 |
| Olim, LLC | 2, 3, 6, 7, 8, 9 |
| Oman Cattle Feeders | 2, 3, 6, 9 |
| Otto D. Hendricks | 2, 3, 6, 9 |
| P&R Livestock | 2, 3, 6, 9 |
| Paint Rock Cattle Company, LP | 2, 3, 6, 9 |
| Paint Rock Cattle Management, LLC | 2, 3, 6, 9 |
| Pam Gibson | 2, 3, 6, 7, 8, 9 |
| Pat Padilla | 2, 3, 6, 9 |
| Patsy Gibson | 2, 3, 6, 7, 8, 9 |
| PBI Bank | 2, 3, 6, 9 |
| Penner Cattle | 2, 3, 6, 9 |
| Peoples Bank of Kentucky, Inc. | 2, 3, 6, 7, 8, 9 |
| Peoples Livestock Auction | 2, 3, 6, 9 |
| Pesetsky Land & Cattle | 2, 3, 6, 9 |
| Phillip Martin Livestock | 2, 3, 6, 9 |
| Piedmont Livestock Company, Inc. | 1, 2, 3, 6, 9 |
| Planteau Production Company | 2, 3, 6, 9 |
| Producers Cattle Auction | 2, 3, 6, 9 |
| Producers Livestock Marketing | 2, 3, 6, 9 |
| Providence Property Management | 2, 3, 6, 9 |
| Pulaski Livestock | 2, 3, 6, 9 |
| R & T Trucking | 2, 3, 6, 9 |
| R&R Farms | 2, 3, 6, 9 |
| Rafter K Farms / Rafter K Feedyard | 2, 3, 6, 9 |
| Randy Hoover and Son | 2, 3, 6, 9 |
| Randy Lloyd | 2, 3, 6, 9 |
| Rayburn Smith | 2, 3, 6, 9 |
| Rena Jo Gallo | 2, 3, 6, 9 |
| Rex Mooney | 2, 3, 6, 9 |
| Rex Stanley Feed Yard | 2, 3, 6, 9 |
| Richard Gallo | 2, 3, 6, 9 |
| Ricky Beard | 2, 3, 6, 9 |
| Ritter Feedyard | 2, 3, 6, 9 |
| River Bend Cattle Co. | 2, 3, 6, 9 |
| RM Livestock | 2, 3, 6, 9 |
| Robert Brown | 2, 3, 6, 7, 8, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Robert D. Rufenacht | 2, 3, 6, 7, 8, 9 |
| Robert Nichols | 2, 3, 6, 7, 8, 9 |
| Robert Rawls Livestock | 2, 3, 6, 9 |
| Ron Shephard | 2, 3, 6, 9 |
| Ronald Stahl | 2, 3, 6, 9 |
| Royal Beef | 2, 3, 6, 9 |
| Royce Stallcup | 2, 3, 6, 9 |
| Rufenacht Commodities Inc. | 2, 3, 6, 9 |
| Rusty Rat Cattle Co. | 2, 3, 6, 9 |
| S & B Cattle Company | 2, 3, 6, 7, 8, 9 |
| S B & B Farm, Inc. | 2, 3, 6, 7, 8, 9 |
| S&S Cattle | 2, 3, 6, 9 |
| Sage Construction | 2, 3, 6, 9 |
| Sage Livestock | 2, 3, 6, 9 |
| Salem Livestock | 2, 3, 6, 9 |
| Salt Fork Ranch | 2, 3, 6, 9 |
| Sam Fousek | 2, 3, 6, 9 |
| Sammy Monroe | 2, 3, 6, 9 |
| Sand Mountain Stockyard | 2, 3, 6, 9 |
| Schroeder Feeders Starter Yard, LLC | 2, 3, 6, 9 |
| Schuchmann Farm | 2, 3, 6, 9 |
| Schuchmann Transport | 2, 3, 6, 7, 8, 9 |
| Scott Bucher | 2, 3, 6, 9 |
| Scott Dean | 2, 3, 6, 7, 8, 9 |
| Scott Gibson | 2, 3, 6, 7, 8, 9 |
| Scott Weeks | 2, 3, 6, 9 |
| Scotts Hill Stockyard | 2, 3, 6, 9 |
| Shasta Livestock Auction Yard | 2, 3, 6, 9 |
| Shawn Breitsprecher | 2, 3, 6, 9 |
| Sheree Baumgart | 2, 3, 6, 9 |
| Shirley Gibson | 2, 3, 6, 7, 8, 9 |
| Sinking Springs Land and Cattle, Inc. | 2, 3, 6, 9 |
| South Coffeyville Stockyard | 2, 3, 6, 9 |
| Southeast Livestock Exchange, LLC | 1, 2, 3, 6, 9 |
| Stephen Dilks | 2, 3, 6, 9 |
| Steve Fletcher | 2, 3, 6, 9 |
| Steve McDonald | 2, 3, 6, 7, 8, 9 |
| Steve Wilonberg / Steve Willonberg | 2, 3, 6, 9 |
| Steven Blanton | 2, 3, 6, 9 |
| Stierwalt Ranch | 2, 3, 6, 9 |
| Stockman Oklahoma Livestock Marketing, Inc. (SOLM) | 1, 2, 3, 6, 9 |
| Superior Livestock Auction | 2, 3, 6, 9 |
| Supreme Cattle Feeders, LLC | 2, 3, 6, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Tate Ranch | 2, 3, 6, 9 |
| Taylor County Stockyard | 2, 3, 6, 9 |
| Tennessee Valley Livestock | 2, 3, 6, 9 |
| Terry Baber | 2, 3, 6, 9 |
| Texas Brand Ribs, Inc. | 2, 3, 6, 9 |
| TGJ Corp. | 2, 3, 6, 9 |
| The Animal Hospital | 2, 3, 6, 9 |
| The Bank of Kremlin | 1 |
| The Stockman's Market, Inc. | 2, 3, 6, 9 |
| Thomas Allen Gibson | 2, 3, 6, 7, 8, 9 |
| Thomas Gibson | 2, 3, 6, 7, 8, 9 |
| Thomas P. Gibson | 2, 3, 6, 7, 8, 9 |
| Thomas Parrish Gibson | 2, 3, 6, 7, 8, 9 |
| Thomas S. Gibson | 2, 3, 6, 7, 8, 9 |
| Thompson Farm | 2, 3, 6, 9 |
| Thompson Feed | 2, 3, 6, 9 |
| Thoreson Enterprises | 2, 3, 6, 9 |
| Tim White | 2, 3, 6, 9 |
| TJG Corporation | 2, 3, 6, 7, 8, 9 |
| Tobin M. Parker Interests | 2, 3, 6, 9 |
| Tobin Parker | 2, 3, 6, 9 |
| Todd Gibson | 2, 3, 6, 7, 8, 9 |
| Todd Rosenbaum | 2, 3, 6, 9 |
| Tom Freeman | 2, 3, 6, 9 |
| Tom Herrmann | 2, 3, 6, 9 |
| Tom Svoboda | 2, 3, 6, 9 |
| Torrington Livestock / Cattle Country Video | 2, 3, 6, 9 |
| TPG Realty Co., LLC | 2, 3, 6, 7, 8, 9 |
| Travis Dicke | 2, 3, 6, 9 |
| Tulsa Stockyards | 2, 3, 6, 9 |
| Twin Calf Farm | 2, 3, 6, 9 |
| University Woods | 2, 3, 6, 9 |
| Vermillion Ranch / Northern Livestock Video | 2, 3, 6, 9 |
| Vernan Inman | 2, 3, 6, 7, 8, 9 |
| Vicky Reilly | 2, 3, 6, 9 |
| Walco International | 2, 3, 6, 9 |
| Weborg Feeding | 2, 3, 6, 9 |
| West Kentucky Livestock Market | 2, 3, 6, 7, 8, 9 |
| West Kentucky Steel Marketing | 2, 3, 6, 9 |
| William Bush | 2, 3, 6, 9 |
| William O. Downs | 2, 3, 6, 7, 8, 9 |
| Williams Farm | 2, 3, 6, 9 |
| Willie Downs | 2, 3, 6, 7, 8, 9 |

| Non-Released Party | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Willie Downs Livestock Inc. | 2, 3, 6, 7, 8, 9 |
| Winter Livestock | 2, 3, 6, 9 |
| Winter Video Auction | 2, 3, 6, 9 |
| WK Farms | 2, 3, 6, 9 |

# EXHIBIT C

Potential Parties to Retained Actions

*(Non-Released Parties)*

| *All Parties to These Pending Actions Except  As Expressly Released Pursuant to the Plan or a Final Order* **(Actions Pending in the United States Bankruptcy Court for the Southern District of Indiana unless otherwise indicated)** | *Non-Exhaustive Categories of Potential Causes of Action* |
|---|---|
| Knauer v. Downs Case No. 11-59086 | 1 |
| Cactus Growers, Inc. v. Nichols Case No. 11-59087 | 1 |
| Superior Livestock Auction, Inc. v. Eastern Livestock Co., LLC, Case No. 11-59088 | 1 |
| Friona Industries, LP v. Eastern Livestock Co., LLC Case No. 11-59093 | 1 |
| Knauer v. Atkinson Livestock Market, LLC, Case No. 11-59094 | 1 |
| Innovative Livestock Services, Inc. v. Eastern Livestock Co., LLC, Case No. 11-59098 | 1 |
| Rush Creek Ranch, LLP v. Knauer, Case No. 11-59104 | 1 |
| Fredin Brothers, Inc. v. Bankers Bank, Case No. 11-59108 | 1 |
| Knauer v. Kay, Case No. 12-59010 | 1 |
| Knauer v. Demaio Farms and Ranches, Inc., Case No. 12-59011 | 1 |
| Knauer v. Barry, Case No. 12-59012 | 1 |
| Knauer v. Pesetsky Land & Cattle, Case No. 12-59014 | 1 |
| Knauer v. Shephard, Case No. 12-59015 | 1 |
| Knauer v. Salem Livestock Auction, Case No. 12-59025 | 1 |
| Knauer v. Tennessee Valley Livestock, Case No. 12-59027 | 1 |
| Knauer v. Sand Mountain Stockyard, Case No. 12-59028 | 1 |
| Knauer v. Stoops, Case No. 12-59029 | 1 |

| *All Parties to These Pending Actions Except  As Expressly Released Pursuant to the Plan or a Final Order* <br> *(Actions Pending in the United States Bankruptcy Court for the Southern District of Indiana unless otherwise indicated)* | *Non-Exhaustive Categories of Potential Causes of Action* |
|---|---|
| Knauer v. Edens, <br> Case No. 12-59036 | 1 |
| Knauer v. River Bend Cattle Co., <br> Case No. 12-59046 | 1 |
| Knauer v. Robert Rawls Livestock, <br> Case No. 12-59047 | 1 |
| Knauer v. Freeman, <br> Case No. 12-59048 | 1 |
| Knauer v. Macon Stockyard, <br> Case No. 12-59049 | 1 |
| Knauer v. Billingsley Auction Sale, Inc., <br> Case No. 12-59050 | 1 |
| Knauer v. Hoover, <br> Case No. 12-59051 | 1 |
| Knauer v. Krantz, <br> Case No. 12-59052 | 1 |
| Knauer v. Peterson, <br> Case No. 12-59058 | 1 |
| Knauer v. Dicke, <br> Case No. 12-59059 | 1 |
| Knauer v. Nuckols, <br> Case No. 12-59060 | 1 |
| Knauer v. Smith, <br> Case No. 12-59061 | 1 |
| Knauer v. Carroll Co L/S Sale Barn, Inc., <br> Case No. 12-59072 | 1 |
| Knauer v. Scotts Hill Stockyard, <br> Case No. 12-59073 | 1 |
| Knauer v. Zeisler, <br> Case No. 12-59074 | 1 |
| Knauer v. Manthey, <br> Case No. 12-59075 | 1 |
| Knauer v. First Bank and Trust Co., <br> Case No. 12-59077 | 1 |
| Knauer v. Northwest Alabama Livestock Auction, <br> Case No. 12-59081 | 1 |
| Knauer v. Grove Livestock Sales, Inc., <br> Case No. 12-59082 | 1 |

| All Parties to These Pending Actions Except  As Expressly Released Pursuant to the Plan or a Final Order (Actions Pending in the United States Bankruptcy Court for the Southern District of Indiana unless otherwise indicated) | Non-Exhaustive Categories of Potential Causes of Action |
|---|---|
| Knauer v. B&B Land and Livestock, Case No. 12-59083 | 1 |
| Knauer v. South Coffeyville Stockyards, Case No. 12-59084 | 1 |
| Knauer v. Christenson, Case No. 12-59085 | 1 |
| Bluegrass Stockyards, LLC, et al. v. Knauer Case No. 4:12-cv-126-TWP-WGH U.S. District Court for the Southern District of Indiana | 1 |
| The First Bank and Trust Co. v. Knauer Case No. 4:12-cv-127-TWP-DML U.S. District Court for the Southern District of Indiana | 1 |
| Alabama Livestock Auction, Inc., et al. v. Knauer Case No. 4:12-cv-128-TWP-WGH U.S. District Court for the Southern District of Indiana | 1 |
| Superior Livestock Auction, Inc. v. Knauer Case No. 4:12-cv-120-TWP-WGH U.S. District Court for the Southern District of Indiana | 1 |
| Knauer v. Phillips, Case No. 88C01-1210-MF-000740 Washington Circuit Court | 1 |
| Eastern Livestock, LLC v. Hawkins, Case No. 09CV262, Circuit Court for Hamblen County, Tennessee at Morristown | 1 |