UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA

IN RE:                          .    Case No. 10-93904-BHL-11
                                .
EASTERN LIVESTOCK CO., LLC,     .
                                .    110 U.S. Courthouse
                                .    121 West Spring Street
                                .    New Albany, IN  47150
          Debtor.              .
                                .    December 7, 2012
. . . . . . . . . . . . . . .   .    10:29 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE BASIL H. LORCH, III
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For James A. Knauer,      Kroger Gardis & Regas, LLP
Trustee:                  By:  JAMES A. KNAUER, ESQ.
                          111 Monument Circle, Suite 900
                          Indianapolis, IN  46204-5125

                          Faegre, Baker, Daniels, LLP
                          By:  KEVIN M. TONER, ESQ.
                               TERRY E. HALL, ESQ.
                          300 N. Meridian St., Suite 2700
                          Indianapolis, IN  46204-1750

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  CHARLES R. WHARTON, ESQ.
                          101 W. Ohio St. Ste. 1000
                          Indianapolis, IN  46204

Audio Operator:           Amy Massey

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311      Fax No. (609) 587-3599**

```
APPEARANCES (Cont'd):

For Fifth Third Bank:        Vorys, Sater, Seymour and Pease, LLP
                             By:  RANDALL D. LaTOUR, ESQ.
                             52 East Gay Street, P.O Box 1008
                             Colombus, OH  43216-1008


                             Frost Brown Todd, LLC
                             By:  EDWARD M. KING, ESQ.
                             400 West Market Street, 32nd Floor
                             Louisville, KY  40202

For Joplin Regional          Greenebaum, Doll & McDonald
Livestock, et al.:           By:  C.R. BOWLES, JR., ESQ.
                                  JOHN W. AMES, ESQ.
                                  IVANA B. SHALLCROSS, ESQ.
                             1010 South 5th Street
                             Louisville, KY  40202

For Cactus Growers:          Lovell, Lovell, Newson & Isern, LLP
                             By:  JOHN HUNT LOVELL, ESQ.
                             112 West 8th Avenue, Suite 1000
                             Amarillo, TX  79101

TELEPHONIC APPEARANCES:

For Blue Grass               BelCotto Law Group, PLLC
Stockyards, et al.:          By:  LAURA DAY DELCOTTO, ESQ.
                             200 North Upper Street
                             Lexington, KY  40507-1017

For First Bank and           Ayres, Carr & Sullivan, P.C.
Trust Company:               By:  JOHN R. CARR, III, ESQ.
                             251 East Ohio Street, Suite 500
                             Indianapolis, IN  46204-2186

For Joplin Regional          Rubin & Levin, P.C.
Stockyards:                  By:  JOHN M. ROGERS, ESQ.
                             500 Marott Center
                             342 Massachusetts Avenue
                             Indianapolis, IN  46204-2161

For Friona Industries        Sprouse, Shrader, Smith, P.C.
LLP.:                        By:  JOHN FREDERICK MASSOUH, ESQ.
                             701 South Taylor, Suite 500
                             Amarillo, TX  79101

For J&F Oklahoma             Naman, Howell, Smith & Lee, PLLC
Holdings, Inc.:              By:  DAVID L. LeBAS, ESQ.
                             8310 N. Capital of Texas Highway
                             Suite 490
                             Austin, TX  78731
```

TELEPHONIC APPEARANCES (Cont'd):

For Alabama Livestock        W. Scott Newbern, PL
Auction, Inc., et al.:       By:  WALTER SCOTT NEWBERN, III, ESQ.
                             2982 East Gevemy
                             Tallahassee, FL  32309

For Agri Beef:               Givens Pursley, LLP
                             By:  KELLY GREENE McCONNELL, ESQ.
                             401 West Bannock Street
                             Boise, ID  83702

For Peoples Bank of          Moye White, LLP
Coldwater Kansas:            By:  DAVID A. LAIRD, ESQ.
                             16 Market Square, 6th Floor
                             1400 16th Street
                             Denver, CO  80202

For Blue Grass               DelCotto Law Group, PLLC
Stockyards, et al.:          By:  AMELIA MARTIN ADAMS, ESQ.
                             200 North Upper Street
                             Lexington, KY  40507

                     - - -

## **I N D E X**

|                | PAGE |
| -------------- | ---- |
| **EXHIBIT**    | **EVD.** |
| Affidavit      | 20   |

1          THE COURT:  All right.  We're on the record in the

2    matter of Eastern Livestock Company, LLC.  I have the

3    appearances that the courtroom deputy has from those on the

4    phone.  I'd remind all of you to please keep your phone on mute

5    and don't put us on hold, please.  Would the attorneys present

6    in the courtroom state the appearances please?

7          MS. HALL:  Terry Hall and Kevin Toner for the Trustee

8    Jim Knauer of Eastern Livestock, and Mr. Knauer is with us, as

9    well.

10          MR. WHARTON:  Chuck Wharton for the United States

11    Trustee.

12          MR. LATOUR:  Good morning, Your Honor, Randall LaTour

13    representing Fifth Third Bank.

14          MS. SHALLCROSS:  Good morning, Your Honor, Ivana

15    Shallcross here with John Ames and Chip Bowles, representing

16    Joplin Regional Stockyards and Ron Reed and Taylor Reed.

17          MR. LOVELL:  John Lovell, Cactus Growers.

18          THE COURT:  All right.  I've -- I'm referring to a

19    proposed agenda that was submitted by the trustee.  Would --

20    who wants to take me through the agenda?

21          MS. HALL:  I will, Your Honor.  There are two items

22    on the agenda.  One is the confirmation -- proposed

23    confirmation of the plan proposed by the trustee.  And the

24    second item is the settlement among the Texas feeds yards, and

25    the trust, and the estate.  We can start with confirmation or

1  we can start with the settlement?

2           UNIDENTIFIED ATTORNEY:  The settlement is shorter.

3           MS. HALL:  The settlement might be short.  Would you

4  like to do that?

5           THE COURT:  All right, let's do the settlement first

6  then.

7           MR. TONER:  All right.  Thank you, Your Honor, Kevin

8  Toner for the trustee.  The settlement Ms. Hall just described

9  is between the Texas feed yards, Friona, Cactus, and J&F, the

10 estate and Fifth Third Bank.

11          There have been no objections filed within the time

12 period, but there is a corrected settlement agreement that the

13 parties have now executed.  I think one more signature is going

14 to come today or tomorrow -- or today or Monday.  That

15 correction, we believe, is immaterial.  It refers to

16 approximately $37,000 of additional funds that were

17 interpleaded to the Court in response to Your Honor's order to

18 make sure that out of an abundance of caution there was

19 sufficient funds for all potential claims.

20          At this point, we believe there is no one claiming

21 anything close to that $37,000 as to those funds.  Certainly,

22 the trustee does not claim the funds.  Fifth Third Bank does

23 not claim those particular funds.  I believe the only thing

24 that might be at issue to a piece of them would be Robert

25 Nichols.

 1          MR. LOVELL:  Nichols.  And Nichols isn't actually

 2 claiming the mistake, anything for mistake.  Nichols is

 3 claiming an additional $5300, and there's 37,000 extra in

 4 interpleading.

 5          THE COURT:  Okay.

 6          MR. TONER:  Well, I stand corrected then.  Given

 7 that, the settlement agreement that was attached to the Rule

 8 9019 motion has been modified to the -- by the parties.  If

 9 Your Honor would agree that it is an immaterial change, we

10 could go forward and upload the order and have that part of the

11 case resolved.

12          THE COURT:  Does anyone else want to be heard on ths

13 matter?

14                    (No audible response)

15          THE COURT:  The Court will make a finding that that

16 modification is immaterial, will approve the settlement, and

17 sign the order once you upload it.

18          MR. TONER:  Thank you.

19          THE COURT:  Thank you.

20          MR. LOVELL:  Thank you, Judge.

21          THE COURT:  Thank you.

22          MS. HALL:  That places with the other item on the

23 agenda, Your Honor, which is the proposed confirmation of the

24 trustee's plan.  The trustee has filed a brief in support of

25 the plan, an affidavit of Mr. Knauer supporting the plan.

1  There have been four objections filed to the plan.  I believe

2  that we've reached an agreement with Joplin and with the Reeds

3  to resolve those objections, which leaves two remaining --

4         THE COURT:  Well, as to the -- yes, as I read through

5  the objections and reservations, I mean, basically as to all

6  the reservations insofar as they stated that if they did not

7  opt in they had the right to sue the bank, no one is disputing

8  that, right?  I mean, that's -- that's what it says and that's

9  everyone's understanding?

10         MR. LATOUR:  Your Honor, not only is that what it

11 says, they've already sued my client, so --

12         THE COURT:  Right.  At least a couple of them --

13         MR. LATOUR:  It's fait accompli --

14         THE COURT:  -- have already sued, so yes.  So I

15 didn't really that -- I mean, I understood why as a -- in an

16 abundance of caution people would want to put that on the

17 record, but I didn't think that was an issue.  The -- so let's

18 talk about some of the substantive issues to confirmation.

19         MS. HALL:  Well, I guess, first Your Honor the ballot

20 certification that was filed shows that the plan was accepted

21 by the two impaired classes, Class 1 and Class 4.  There were

22 also two notice of changes of ballots that were filed, one

23 yesterday and one today, relating to Ballot 3 and .4 million

24 dollars worth of Class 4 claims that were switched from

25 rejecting to accepting the plan.

1          THE COURT:  I saw that.

2          MS. HALL:  And --

3          THE COURT:  And is it also -- and I know that we have

4    a representative from BMC on the phone, but it's my

5    understanding from the review of the reports that the classes

6    have accepted, including provisional votes.  Even with the

7    provisional votes included they are over the two-thirds in

8    amount and 50 percent in number.

9          MS. HALL:  Yes, Your Honor.  And, in fact, if you go

10   back and you add all of the ballots that were properly excluded

11   by the --

12         UNIDENTIFIED ATTORNEY:  BMC.

13         MS. HALL:  -- by BMC -- sorry -- by BMC, except for

14   those ballots that were cast by creditors who had actually

15   settled and waived their claims.  But if you counted all the

16   ballots that came in that were excluded by BMC, the plan still

17   passes by more than two-thirds in amount and more by half in

18   number.  So under any scenario the plan has been consensually

19   accepted.

20         THE COURT:  Does anyone wish to explore or question

21   anyone concerning -- since we have a representative from BMC on

22   the line -- concerning the balloting in this case?

23                    (No audible response)

24         THE COURT:  Okay.  I hear nothing.  Just to make sure

25   because I have had this happen before, are all you on the phone

1  hearing me?

2          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

3          THE COURT:  Okay.  Good.  I went -- I did a long case

4  one time or at least went into it for a while and then I

5  realized we had no connection.  I always try to remember to do

6  that now.  All right.

7          All right, so the Court will accept the report of

8  BMC, and -- as to the results of the balloting in this case and

9  will make the finding that the impaired classes -- all impaired

10 classes have accepted the plan.

11         MS. HALL:  That leaves us only, Your Honor, with the

12 two -- the two remaining objections to the plan and I think

13 Your Honor started with clarifying what the actual reservations

14 of rights were.  As far as the --

15         THE COURT:  Let's talk about the -- let's talk about

16 one of the substantive objections, and that is the release of

17 the attorneys and the trustee.

18         MS. HALL:  As --

19         THE COURT:  Go ahead.

20         MS. HALL:  As to the exculpation provision, is that

21 what you're talking about?

22         THE COURT:  The exculpation, yes.  I shouldn't have

23 used the word release.  Tell me what -- refresh my memory and

24 put on the record, what the scope of what you're seeking in

25 that is.

1          MS. HALL:  Essentially, Your Honor, what we're asking

2    for is that the trustee and his professionals be exculpated

3    from any act or omission taken in connection with negotiation,

4    the development of the plan, the disclosure statement, the

5    negotiations related to that, the negotiations related to the

6    implement -- not the implementation, but up through the

7    confirmation of the plan.

8          This is a fairly standard provision that goes in

9    plans.  It's to allow us to go forward and implement the plan

10   as confirmed by the Court and as accepted by all the -- by the

11   impaired classes without potentially litigation tactics or

12   causes of action being raised against the trustee and his

13   professionals for the acts that they've done in order to

14   negotiate the plan and see it through.

15          THE COURT:  So would you say that -- I mean, you say

16   it's fairly common, and of course I have seen it, but the

17   question that I would ask you then is, I mean, do you think

18   it's part and parcel of every 11 now that the attorneys for the

19   debtor and/or trustee are going to want this language in the

20   confirmation order and should that be something that you

21   routinely get?

22          I note you cite to me Aerodyne and -- but that's a

23   little bit different in terms of it being a related entity and

24   I have included release language for related entities in cases

25   before.  I think one Mr. Ames was involved in.  Mr. Bowles in

1   AG, but that was a parent company that was funding the plan and

2   I thought that that precedent was important.  And I think also

3   in a case of theirs I included a release for the attorneys in

4   Brill, did I not?  But that was after the debtor -- well, not

5   really the debtor -- the principal of the debtor had already

6   tried to sue them and I had determined that that suit was

7   meritless, and I told him not to keep bringing this frivolous

8   lawsuit.  So that was, in at least in my mind, an unusual

9   exceptional situation.  But I guess I'm wondering if it's

10  appropriate and legal as a broader -- has broader applications.

11  Toner, you want to address that?

12          MR. TONER:  I'd be happy to.  Thank you, Judge.  As

13  you say, it is common, but the law says it should only happen

14  where it's appropriate.  It is appropriate in this case because

15  it's limited as to time.  It will only go through Your Honor's

16  confirmation order that's issued.  It's appropriate as to your

17  jurisdiction because it only covers this Chapter 11 case.  It

18  doesn't try to go beyond that.  It's also appropriate because

19  it deals with liability of the trustee, liability of the

20  professionals, not a motion like we have seen to remove them

21  from their office as the trustee or the professionals.  You

22  could, I suppose, remove someone and then have liability in the

23  future in this case.

24          It's appropriate because it's necessary in this

25  particular case.  We've seen how litigation tactics have been

1  used.  For the trustee to have certainty, for his professionals

2  to have certainty as they go forward to execute this plan, it's

3  important to be able to cut off liability for what has occurred

4  because -- here's another example of an objection that really

5  doesn't say anything.  No one has articulated a cause of action

6  against the trustee or against the trustee's professionals.

7  They just want the opportunity maybe to do that as we get into

8  the collecting of money for the plan.  So I think it's -- it is

9  not a blanket exculpation, but an appropriate exculpation for

10 this particular case.

11         THE COURT:  All right.  Who wants to speak in

12 opposition to that provision in the plan?

13         MS. DAY DELCOTTO:  Your Honor, this is Laura Day

14 Delcotto.  Good morning.  Again, out of an abundance of caution

15 because what I consider the case law sort of undecided and all

16 over the place about third party releases and exculpation

17 clauses.  In general, because we -- my clients are not

18 consenting, they take the position it doesn't apply to them

19 anyway.

20         However, there's really no law, Your Honor, that says

21 that this should not have the standard proviso or carve out

22 that it does not cover willful misconduct and gross negligence.

23 So at the very least, Your Honor, I would submit that it needs

24 to have that proviso because that it what a hundred percent of

25 the case law says.  The trustee and the professionals cannot

1  exculpate themselves from gross and negligent conduct or

2  willful misconduct, so I would request that that proviso be

3  added.

4         MR. NEWBERN:  Your Honor, this is Scott Newbern.  I

5  would second Ms. DelCotto's request.  I also want to point out

6  that law elsewhere, federal law, state law, basically does not

7  allow a trustee to exculpate themselves with their own language

8  in a document that they draft from gross negligence and willful

9  misconduct.  And then normally, a Court looking at those

10 clauses will just allow those provisions that do not carve out

11 what Ms. DelCotto has stated; gross negligence and willful

12 misconduct.

13        I would also like to point out that there is a

14 question of both parties that may have claims that aren't the

15 actual claimants in this action, may have claims against the

16 trustee, and counterclaims, for instance, in adversary

17 proceedings or other proceedings that the trustee may bring.

18 As long as they do not opt-in, I would think that this

19 provision should not apply to them or anyone else.

20        THE COURT:  Anyone else want to be heard on that

21 matter?

22        MS. SHALLCROSS:  Your Honor, Ivana Shallcross on

23 behalf of Joplin Regional Stockyards.  We don't necessarily

24 want to speak in opposition of this because we have reached a

25 deal, and we have a term sheet that Mr. Toner's going to read

1  into the record later, but I just wanted to formally on the

2  record withdraw our reserve of rights.

3       MS. HALL:  Your Honor, I would like to make a couple

4  of comments related to what Mr. DelCotto and Mr. Newbern said,

5  and that is there -- the idea that this plan is not going to

6  bind everyone whether you voted for or against it, is -- that's

7  not the way confirmation works.

8       The only provision that is not going to bind anyone

9  is the opt-in provision and the third party release that would

10 be given by the opt-in creditors.  Everything else in the plan

11 is binding on all the parties to the creditors to the estate.

12 So I'm not sure if there's a misunderstanding in the law here.

13 The other thing is, I --

14      THE COURT:  Isn't she right though as to the ususal

15 exclusion for willful misconduct and -- I mean, you know,

16 willful misconduct --

17      MS. HALL:  I have not found that.

18      THE COURT:  -- and gross negligence?

19      MS. HALL:  I have not found that in the case law that

20 that's the usual standard issue.  The Aerodyne case that she

21 cites for that does not -- is -- does not cite that.

22      THE COURT:  I am going to include that exception in

23 the exculpation in order to confirm the plan.  I mean, I don't

24 think a trustee can be -- or attorney can be ever protected

25 against willful misconduct, so at a -- I don't think that

1  anyone -- I haven't seen any willful misconduct or gross

2  negligence, but --

3           UNIDENTIFIED ATTORNEY:  And that's why we're asking

4  Your Honor to exculpate --

5           THE COURT:  Well --

6           UNIDENTIFIED ATTORNEY:  -- through the date of

7  confirmation.

8           THE COURT:  I don't know everything.  You know, I see

9  so little of what goes on in these cases, but I don't think

10 that that's -- I don't think that that's an unreasonable

11 exception to the exculpation clause.

12          MR. NEWBERN:  Your Honor --

13          THE COURT:  Yes?

14          MR. NEWBERN:  -- this is Scott Newbern again.  I

15 would like to point the Court to the Restatement Second Trust

16 Section 222 --

17          THE COURT:  Well, I just -- I just went your way.

18          MR. NEWBERN:  I understand that, Your Honor, but

19 there's a question of authority and I'm offering that up, Your

20 Honor.

21          THE COURT:  All right, go ahead.

22          MR. NEWBERN:  I would just point the Court to the

23 Overt and Trust Section 94, and the Restatement Second of Trust

24 222.

25          THE COURT:  All right.  Thank you.  All right, what

1  else did we have in the way of substantive objections to the

2  plan?

3          MS. HALL:  The only other issue brought up I think,

4  Your Honor, was the letter by the Livestock Marketing

5  Association concerned -- related to the seized funds that the

6  trustee is continuing to negotiate with the U.S. Government and

7  --

8          THE COURT:  Yes.  That letter, as I recall, raised

9  the issue that those funds should not be subject to any

10 administrative -- no fees should be paid out of those funds.

11         MS. HALL:  And we just believe, Your Honor, that that

12 -- (a) the Livestock Marketing Association is not a party in

13 interest in this case --

14         THE COURT:  Right.

15         MS. HALL:  -- and, (b) we're continuing to negotiate

16 with the U.S. Government on that.  We will provide the Court

17 with an opportunity and others to object to the potential -- to

18 the settlement related to administration of those funds.

19         THE COURT:  Well, that was my first question.  That

20 was my first question.  Has there been a deal cut yet?

21         MS. HALL:  We are 90 percent of the way there and if

22 somebody wants to object -- if a party in interest wants to

23 object to the terms of the settlement at that time then that's

24 more appropriate than at this point in time --

25         THE COURT:  Yes.

1        MS. HALL:  -- to enter into negotiations or restrict

2   them in any way at this point.

3        THE COURT:  Yes.  One of the avenues of -- and I

4   don't know if this is the way you're still going, but one of

5   the things you described to me at one point was that if the

6   parties covered by that received certain funds that will be

7   kind of like an offset for what they would receive under the

8   distributions out of the plan.  And so -- yes, I think it's

9   premature to object to the distribution of those funds or any

10  settlement related to the distribution of those funds because

11  we're not there yet.  And now do you with to -- all right.

12       MS. SHALLCROSS:  Your Honor, we also filed an

13  objection on behalf of Taylor Reed and Ron Reed.  We believe

14  that the trustee is taking care of our concerns, and we were

15  concerned with the treatment of Class 2 claims.  We didn't know

16  whether they were going to be paid in full and we didn't know

17  what was going to happen to a deficiency.  So the trustee has

18  agreed to make two immaterial modifications to the claim to

19  address our concerns so now we know what the mechanism is.  So

20  we will withdraw our objection at this time.

21       THE COURT:  All right.  I show that that's objection

22  is withdrawn in open court.

23       MS. SHALLCROSS:  Thank you, Your Honor.

24       THE COURT:  All right --

25       MS. HALL:  We will be making three immaterial

1 modifications to the plan, Your Honor; two to address the

2 language in Class 2 and Class 4 that just simply clarifies that

3 if you have a secured claim and it's -- and you have a

4 deficiency claim or part of your claim is not secured, then you

5 get to vote.  You get to be paid in Class 4 for that extra

6 portion.  And then there's a small immaterial modification

7 related to the Joplin settlement that I think you guys are

8 going to present.

9 　　　　　THE COURT:  Mr. Toner, you want to put that on the

10 record?

11 　　　　　MR. TONER:  I'd be happy to.  As to Joplin, Your

12 Honor, the parties have a term sheet, but not a final

13 settlement agreement and Rule 19 -- 9019 motion to present you

14 yet.  But as part of the terms, there's an agreement that

15 Joplin will be treated very similar to Superior in terms of

16 third-party releases against those who opt-in, in favor of the

17 plan.  And the language we would add would say, if and to the

18 extent the Joplin settlement is approved by the Court pursuant

19 to Bankruptcy Rule 9019 the Joplin defendants will be included

20 as parties being released as third parties in Article 7.3 of

21 the plan.

22 　　　　　MS. HALL:  7.3 is the opt-in release.

23 　　　　　MR. TONER:  Correct.

24 　　　　　MS. SHALLCROSS:  That's correct, Your Honor.

25 　　　　　THE COURT:  All right.  Very good.  Now do you --

1   then is the -- is the trustee satisfied then that all the other

2   elements of confirmation, the code, and the affidavit?

3           MS. HALL:  We are, Your Honor.

4           THE COURT:  Yes.  All right.  I'll show that the

5   affidavit is officially admitted into evidence in support of

6   confirmation.  It's already on the docket, but we'll make it a

7   part of this confirmation hearing record, also.  Anything

8   further?

9                   (No audible response)

10          THE COURT:  All right.  Let the record show that this

11  matter came before the Court on -- for a confirmation of the

12  Chapter 11 plan of liquidation, the trustee's first amended

13  Chapter 11 plan of liquidation.  The Court, having reviewed the

14  affidavit of the trustee, having reviewed the report of

15  balloting, having heard the objections and the resolution

16  thereof, and having sustained a portion of the objection in

17  terms of the provision -- the exculpation provision as it

18  relates to willful misconduct and gross negligence, finds that

19  the plan, as proposed by the trustee, satisfies the

20  requirements of Section 1129 and should be confirmed under the

21  provisions of Section 1129(a) insofar as all classes have

22  accepted the plan, including the impaired classes, by the

23  required two-thirds in amount and one half in number, as

24  provided in Section 1126 of the code.

25          I would ask that the debtor's counsel submit a

1  proposed order of confirmation for a review by the Court and

2  include in there findings of tracking the confirmation

3  requirements of 1129 as covered by the affidavit submitted by

4  the trustee.

5       MS. HALL:  Your Honor, one clarification.  Class 5,

6  the interests were cancelled and are deemed to have rejected

7  the plan.

8       THE COURT:  That's exactly right.  Class 5 interests

9  are deemed rejected.

10       MS. HALL:  So to the extent that we need to -- they

11  of course didn't accept the plan and they are an impaired

12  class, to the extent that it's necessary it's confirmed over

13  their deemed rejection.

14       THE COURT:  Should we then -- are we going to confirm

15  under (a) or (b) then?

16       MS. HALL:  Well, that's -- I'm trying to get

17  clarification.  They were not entitled to vote.  They were

18  deemed to reject the plan --

19       THE COURT:  They're deemed to have rejected as a

20  class in interest, and their interest has been extinguished.

21       MS. HALL:  And no class below them is receiving or

22  retaining anything, so they've -- as of -- I would think that

23  it would still be confirmable under 1129(b) as to Class 5.

24       THE COURT:  All right.  So we'll confirm it under

25  1129(b) since there is an impaired class that has deemed to

1 have rejected.  And we'll find that it's fair and equitable as

2 to the treatment of the classes and that the -- there is no

3 class below Class 5 that's receiving anything of value under

4 the plan.  All right, anything else?  Anything?

5                    (No audible response)

6          THE COURT:  All right.  Congratulations.  We're

7 adjourned.

8                    *  *  *  *  *

9          **C E R T I F I C A T I O N**

10          I, WENDY ANTOSIEWICZ, court approved transcriber,

11 certify that the foregoing is a correct transcript from the

12 official electronic sound recording of the proceedings in the

13 above-entitled matter, and to the best of my ability.

14

15 /s/ Wendy Antosiewicz

16 WENDY ANTOSIEWICZ

17 J&J COURT TRANSCRIBERS, INC.          DATE:  December 18, 2012

18

19

20

21

22

23

24

25