UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |
| _____ | ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE | ) | |
| OF EASTERN LIVESTOCK CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. 12- |
| v. | ) | |
| | ) | |
| GARY S. BELL, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO (I) AVOID LIEN; (II) AVOID PREFERENTIAL AND FRAUDULENT TRANSFERS AND TO RECOVER PROPERTY PURSUANT TO 11 U.S.C. §§ 544, 547, 548 AND 550; AND (III) DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502(d) (INCLUDING OBJECTION TO ALLOWANCE OF PROOF OF CLAIM)**

James A. Knauer, as Chapter 11 Trustee for Eastern Livestock Co., LLC, by counsel, for his complaint against Gary S. Bell, states as follows:

**Jurisdiction & Parties**

1. The above-captioned adversary proceeding (the "Adversary Proceeding") arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court"), presided over by the Honorable Basil H. Lorch III (the "Bankruptcy Judge").

2. This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3. This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6. Pursuant to S.D.Ind. B-7008-1, the Trustee hereby consents to entry of final orders or judgments by the Bankruptcy Judge.

7. Eastern Livestock Co., LLC ("Debtor" or "ELC") was one of the largest cattle dealers in the United States, with operations and assets located in at least eleven states. ELC was headquartered in New Albany, Indiana, with branch locations across several states.

8. Certain petitioning creditors commenced the Chapter 11 Case on December 6, 2010 (the "Petition Date"), by filing an involuntary petition for relief under the Bankruptcy Code. The Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

9. On December 27, 2010, James A. Knauer ("Plaintiff" or "Trustee") was appointed as the Chapter 11 Trustee for ELC.

10. Defendant Gary S. Bell ("Defendant") is a "person" as defined in Section 101(41) of the Bankruptcy Code residing in and/or conducting business in the United States. Defendant resides in Edmonton, Kentucky.

11. At all relevant times material hereto, Defendant was a vendor, supplier, customer, or otherwise maintained a business relationship with ELC or its affiliates.

**Allegations Common to All Counts**

12. Defendant filed a claim in the Chapter 11 Case as proof of claim number 270 (the "Bell Proof of Claim"), in which Defendant asserted a secured claim in the amount of $14,289.74 (the "Bell Claim") and identified the basis for the Bell Claim as "Purchase money claim under this Court's 1/24/11 Order for cattle sold to Eastern Livestock."

13. A copy of the Bell Proof of Claim, as filed with the Court, is attached hereto as Exhibit A.

14. Upon information and belief, and as set forth in the Bell Proof of Claim, (i) Defendant sold cattle to ELC on November 2, 2010; (ii) ELC delivered Check No. F016272 in the amount of $14,289.74 in payment for the purchased cattle; (iii) Check No. F016272 was subsequently dishonored and returned for insufficient funds; and (iv) Defendant "reclaimed" the cattle from ELC after learning of the dishonored check.

15. Defendant's purported security interest in the cattle was allegedly perfected by the filing of three UCC Financing Statements with the Kentucky Secretary of State on November 24, 2010 (the "Bell Filings").

16. The Bell Filings purport to cover "all feeder cattle sold to Eastern Livestock Co., LLC on 11-2-2010 including 9 steers weighing average of 732 lbs., 1 weighing 595 lbs., 5 weighing 655 lbs., 1 weighing 540 lbs. & 4 weighing 576 lbs.  These calves tagged with small Y-Tek tags in the right ears in the color of red, yellow and green.  2 calves were red, 15 black, 1 red neck baldie & 2 charolois crosses" (collectively, the "Reclaimed Cattle").

## Count I
## Avoidance of Lien

17. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 16, as if fully set forth herein.

18. On November 10, 2010, the Court of Common Pleas of Hamilton County, Ohio entered its order (the "Receivership Order") appointing Elizabeth M. Lynch of Development Specialists, Inc. as receiver (the "Receiver") for "all real and personal property, general intangibles, and all other assets of Eastern Livestock of whatever kind or nature." The Receivership Order provides,

> All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against Eastern Livestock or its Books and Records or Property, or against the Receiver in any court. The parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any property owned by or in the possession of Eastern Livestock or the Receiver, and from doing in these proceedings, or with the exclusive jurisdiction of this Court over Eastern Livestock, its Books and Records and Property and the said Receiver. . . . Except as directed by the Receiver, Eastern Livestock, its . . . creditors, and all other persons or entities, are hereby prohibited from . . . interfering in any way with the acts of the Receiver, and from in any way, manner, or means, wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Property.

A true and accurate copy of the Receivership Order is attached hereto as Exhibit B.

19. Defendant does not hold a valid properly perfected security interest in and against the Reclaimed Cattle or the proceeds thereof. Defendant's asserted security interest did not

properly attach to the Reclaimed Cattle or the proceeds thereof.  ELC did not execute a security agreement as to the Reclaimed Cattle, and the Reclaimed Cattle is not in the possession of Defendant pursuant to a security agreement with ELC.

20. In fact, Defendant's seizure of the Reclaimed Cattle was not only nonconsensual, but such seizure of ELC's property after appointment of the Receiver violated the express terms of the Receivership Order.

21. Accordingly, Defendant does not have a valid security interest in the Reclaimed Cattle or its proceeds.  Pursuant to 11 U.S.C. § 544, the Trustee is entitled to avoid Defendant's security interest in the Reclaimed Cattle.

WHEREFORE, Plaintiff requests that the Bankruptcy Court enter judgment in its favor and against Defendant as follows:

A. Declaring Defendant's security interest in the Reclaimed Cattle and its proceeds to be avoidable by Plaintiff; and

B. Such other and further relief as is necessary and proper.

### Allegations Common to Counts II - IV

22. On at least one occasion and/or from time to time and occurring within ninety (90) days prior to the Petition Date, Defendant sold one or more head of cattle to ELC or its affiliates either directly to ELC as the owner of the cattle or through the terms of a consigned sale.

23. Section 101(54) of the Bankruptcy Code applicable to this Adversary Proceeding defines "transfer" as, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

24. Defendant's seizure of the Reclaimed Cattle constituted the transfer of interests of ELC's property and occurred within ninety (90) days of the Petition Date, that is between September 7, 2010 and December 5, 2010, inclusive (the Preference Period Transfer").

25. Upon information and belief, the value of the Reclaimed Cattle is $14,289.74.

26. The Preference Period Transfer is not subject to the defenses to avoidance as set forth in 11 U.S.C. § 547(c).

27. The Preference Period Transfer was made while ELC was insolvent.

## Count II
## Avoidance of Transfers As Preferential Transfers (11 U.S.C. § 547(b))

28. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27, inclusive, as if fully set forth herein.

29. Plaintiff is informed and believes and, based thereon, alleges that the Preference Period Transfer was made for the benefit of Defendant, who was a creditor of Debtor at the time of the Preference Period Transfer, respectively, as the term creditor is defined by Section 101(10) of the Bankruptcy Code.

30. Plaintiff is informed and believes and, based thereon, alleges that the Preference Period Transfer was a transfer of interests of Debtor in property.

31. Plaintiff is informed and believes and, based thereon, alleges that the Preference Period Transfer was made for or on account of one or more antecedent debts owed by Debtor to Defendant prior to the date on which the Preference Period Transfer was made.

32. Plaintiff is informed and believes and, based thereon, alleges at the time of the Preference Period Transfer, Defendant had a right to payment on account of an obligation owed to Defendant by Debtor.

33. As of the Petition Date, Plaintiff is informed and believes, and based thereon, alleges the Preference Period Transfer was made while ELC was insolvent because the value of ELC's assets at a fair valuation was less than the sum of its debts.  As a result of the Preference Period Transfer, Defendant received more than it would have received if (a) Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the Preference Period Transfer had not been made; and (c) Defendant had received payment on such debt owed to it by Debtor to the extent provided by chapter 7 of the Bankruptcy Code.

34. Plaintiff is entitled to an order and judgment under Section 547(b) of the Bankruptcy Code avoiding the Transfers.

## Count III
### Avoidance of Transfers as Fraudulent Transfers (11 U.S.C. § 548(a)(1)(B))

35. This Count III is in the alternative to Count II.

36. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 34, inclusive, as if fully set forth herein.

37. Under Section 548(a)(1)(B) of the Bankruptcy Code, Plaintiff may avoid the value of the Preference Period Transfer made if Debtor received less than reasonably equivalent value in exchange for the Preference Period Transfer and Debtor (i) was insolvent at the time of the Preference Period Transfer or became insolvent as a result of the Preference Period Transfer, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with Debtor was unreasonably small capital; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

38. ELC received less than reasonably equivalent value in exchange for the Preference Period Transfer.

39. Debtor was insolvent on the date Defendant effected the Preference Period Transfer.

40. The Preference Period Transfer was made within two (2) years of the Petition Date.

41. Plaintiff is entitled to avoid the Preference Period Transfer and recover the value of the Preference Period Transfer from Defendant under Section 548(a)(1)(B) of the Bankruptcy Code.

## Count IV
## Recovery of Avoided Transfers (11 U.S.C. § 550)

42. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41, inclusive, as if fully set forth herein.

43. Plaintiff is informed and believes and, based thereon, alleges that Plaintiff is entitled to avoid the Preference Period Transfer under Sections 544, 547(b), or 548(a)(1)(B) of the Bankruptcy Code, and recover for the benefit of Debtor's estate, the proceeds or the value of the Preference Period Transfer from Defendant or any immediate or mediate transferee of the Defendant, or any of them, under Section 550(a)(1) of the Bankruptcy Code.

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor and against Defendant as follows:

### ON COUNTS II AND III

A. Declaring that the Preference Period Transfer identified herein is avoided and set aside as a preference under Section 547 of the Bankruptcy Code, or as a fraudulent transfer under Sections 544 and 548(a)(1)(B);

## ON COUNT IV

B.  Directing and ordering that Defendant, or any immediate or mediate transferee of Defendant, turn over to Plaintiff the full sum of the proceeds or value of the Preference Period Transfer (and any other avoided transfers within the meaning of Section 101(54) of the Bankruptcy Code discovered after the date of this Complaint and avoided) pursuant to Section 550 of the Bankruptcy Code;

C.  Awarding judgment against Defendant and in favor of Plaintiff in an amount of not less than $14,289.74;

## ON COUNTS II THROUGH IV

D.  Pre-judgment interest at the maximum legal rate running from the time of the Preference Period Transfer until the date of judgment herein;

E.  Post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full;

F.  Fees and costs incurred by Plaintiff in this suit; and

G.  Such other and further relief as is necessary and proper.

### Count V
### Objection to the Allowance of Claim Pursuant to 11 U.S.C. § 502(b) and (d) and Rule 3007(b) of the Federal Rules of Bankruptcy Procedure

44.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 43, inclusive, as if fully set forth herein.

45.  Defendant asserts and has filed a purportedly secured claim against Debtor's estate by the Bell Proof of Claim.

46.  Based upon the foregoing and pursuant to 11 U.S.C. §502(d) of the Bankruptcy Code, the Bell Claim and any and all other claims against Debtor's estate that may be asserted by

Defendant must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the Preference Period Transfer, plus interest thereon and costs.

47. Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiff requests that the Bell Claim, as may be amended, and any other claim that may be asserted by Defendant be disallowed for the failure to repay the Transfers.

48. Pursuant to Section 502(b) of the Bankruptcy Code, the Bell Claim should be disallowed because Defendant's claim against Debtor's estate was fully satisfied when he seized the Reclaimed Cattle.

49. To the extent that Defendant pays to Plaintiff an amount equal to the Preference Period Transfer plus interest thereon and costs, the Bell Claim should be reclassified as a general unsecured claim, subject to any additional objections the Trustee may file pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor and against Defendant as follows:

A. Disallowing the Bell Claim and any and all claims of Defendant against Debtor's estate under Section 502(d) of the Bankruptcy Code until Defendant pays Plaintiff an amount equal to the Preference Period Transfer, plus interest thereon and costs;

B. Disallowing under Section 502(b)(1) of the Bankruptcy Code the Bell Claim in its entirety until Defendant pays Plaintiff an amount equal to the Preference Period Transfer, plus interest thereon and costs, and then at such time reclassifying the Bell Claim as a general unsecured claim subject to the Trustee's additional objections; and

C. Such other and further relief as is necessary and proper.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By: /s/ Kayla D. Britton

Wendy W. Ponader (#14633-49)　　　*Counsel for James A. Knauer, Chapter 11 Trustee*
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569.9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

Kayla D. Britton (#29177-06)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kayla.britton@faegrebd.com

DMS_US 51266959v1

11