UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Bankruptcy Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE | ) | |
| OF EASTERN LIVESTOCK CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 12-_____ |
| v. | ) | |
| | ) | |
| MONTY KOLLER a/k/a/ | ) | |
| MONTY LARRY KOLLER a/k/a | ) | |
| MONTY L. KOLLER, individually, | ) | |
| and d/b/a KOLLER LIVESTOCK, | | |
| | | |
| Defendant. | | |

**COMPLAINT TO AVOID FRAUDULENT TRANSFERS AND
RECOVER PROPERTY PURSUANT TO 11 U.S.C. §§ 544, 548, AND 550, AND
DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

James A. Knauer, as chapter 11 trustee for Eastern Livestock Co., LLC, for his amended complaint against Monty Koller a/k/a Monty Larry Koller a/k/a Monty L. Koller, individually, and d/b/a Koller Livestock, states:

**Jurisdiction and Parties**

1.  This adversary proceeding (the "Adversary Proceeding") arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court") presided over by the Honorable Basil H. Lorch III (the "Bankruptcy Judge").

2. This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. The Adversary Proceeding includes objections to the allowance of proofs of claim pursuant to Rule 3007(b) of the Federal Rules of Bankruptcy Procedure.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6. Pursuant to S.D. Ind. B-7008-1, the Trustee hereby consents to entry of final orders or judgments by the Bankruptcy Judge.

7. Eastern Livestock Co., LLC ("Debtor" or "ELC") was one of the largest cattle dealers in the United States. ELC was headquartered in New Albany, Indiana, with operations and assets located in several states.

8. Certain petitioning creditors of ELC commenced the Chapter 11 Case on December 6, 2010, (the "Petition Date") by filing an involuntary petition for relief under the Bankruptcy Code. The Bankruptcy Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

9. On December 27, 2010, James A. Knauer ("Trustee") was appointed as the chapter 11 trustee for ELC.

10. Defendant Monty Koller a/k/a Monty Larry Koller a/k/a Monty L. Koller, individually, and d/b/a Koller Livestock ("Koller") is a Texas resident, residing at 4603 Ashville Pl., Amarillo. Texas 79119

- 2 -

DMS_US 51284627v4

11. All of the following allegations of facts are made as of all times relevant to the facts, acts, transactions and circumstances that give rise to this Adversary Proceeding.

### Allegations Applicable to All Counts

12. Thomas P. Gibson ("Tommy") was the principal owner of ELC. Tommy served as a Manager of ELC. In exchange for his service to ELC, Tommy received compensation from ELC (collectively, "Tommy Wages").

13. As a Manager of ELC, Tommy was entrusted with the management of ELC. As a Manager of ELC, Tommy owed fiduciary obligations of honesty and fair dealing to ELC.

14. Tommy also owned, bought, and sold cattle for himself, on his own account. These transactions included purchases from and sales to ELC of certain cattle (the "Actual Tommy/ELC Cattle Transactions"). In connection with the Actual Tommy/ELC Cattle Transactions, and in those circumstances when ELC purchased cattle from Tommy, ELC paid Tommy (the "Actual Tommy Cattle Sales to ELC").

15. Fifth Third Bank ("Fifth Third") provided a revolving secured lending facility which ELC used to finance ELC's business operations as a cattle dealer. Fifth Third extended loan availability to ELC based, in part, upon a "Borrowing Base" consisting of ELC's changing daily level of eligible accounts receivable and inventory of cattle.

16. Tommy, his son Grant P. Gibson ("Grant"), and various other individuals affiliated with Tommy in various ways conducted a large-scale check kiting scheme utilizing their personal bank accounts and ELC's bank accounts at Fifth Third (the "Kite Scheme"). In addition, Tommy, Grant and Michael Steven McDonald ("McDonald"), along with other ELC insiders, orchestrated and participated in a large scale accounts receivable and cattle inventory

scheme designed to falsely inflate ELC's purported Borrowing Base to appear to create loan availability.  In furtherance of this scheme, beginning likely in 2009 and no later than 2010, Tommy, Grant, McDonald or other ELC insiders, caused tens of millions of dollars to be transferred from ELC to Tommy.

17. The scheme involved almost daily bogus purchases and sales of non-existent cattle (the "False Cattle Transactions").  The False Cattle Transactions included falsifying and churning bogus sales of non-existent cattle by Tommy to ELC for which ELC paid Tommy from funds drawn against it credit facility at Fifth Third (the "False Tommy Cattle Sales").  In addition to the False Tommy Cattle Sales, ELC paid Tommy for false and bogus expenses, typically characterized as trucking, feed or yardage expenses (the "False Tommy Expenses").

18. Tommy, Grant, McDonald, and Darren Brangers have pled guilty to charges made by a Kentucky prosecutor and were convicted by a Kentucky court of criminal syndication, engaging in organized crime, and theft.  Tommy and McDonald are also under federal indictment for mail fraud.

19. On information and belief, Koller worked for or on behalf of Cactus Growers, Inc. ("Cactus"), where his responsibilities included cattle procurement.

20. In the month of January 2010, ELC transferred to Tommy the aggregate sum of $27,962,725.68 via transfers identified and set forth on Exhibit A attached hereto and made part hereof (collectively, the "January 2010 Transfers").

21. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $6,429.02, the January 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC.  Upon information and belief,

- 4 -

exclusive of the sum of $6,429.02, the January 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales or False Tommy Expenses.

22. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the January 2010 Transfers into a personal bank account that Tommy controlled at Your Community Bank, account number xxxxx1841 (the "YCB Account"). Upon information and belief, the January 2010 Transfers constitute not less than approximately 89.36% of all deposits in January 2010 to the YCB Account.

23. In the month of February 2010, ELC transferred to Tommy the aggregate sum of $42,962,969.84 via transfers identified and set forth on Exhibit B attached hereto and made part hereof (collectively, the "February 2010 Transfers").

24. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $6,429.02, the February 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC. Upon information and belief, exclusive of the sum of $6,429.02, the February 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales or False Tommy Expenses.

25. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the February 2010 Transfers into the YCB Account. Upon information and belief, the February 2010 Transfers constitute not less than approximately 98% of all deposits in February 2010 to the YCB Account.

26. In the month of March 2010, ELC transferred to Tommy the aggregate sum of $61,375,852.98 via transfers identified and set forth on Exhibit C attached hereto and made part hereof (collectively, the "March 2010 Transfers").

27. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $11,174.10, the March 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC.  Upon information and belief, exclusive of the sum of $11,174.10, the March 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses.

28. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the March 2010 Transfers into the YCB Account.  Upon information and belief, and relying on estimates on account of presently unobtained data for the first half of March 2010, the March 2010 Transfers constitute not less than approximately 90.78% of all deposits in March 2010 to the YCB Account.

29. In the month of April 2010, ELC transferred to Tommy the aggregate sum of $90,899,313.16 via transfers identified and set forth on <u>Exhibit D</u> attached hereto and made part hereof (collectively, the "<u>April 2010 Transfers</u>").

30. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $88,111.87, the April 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC.  Upon information and belief, exclusive of the sum of $88,111.87, the April 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses.

31. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the April 2010 Transfers into the YCB Account.  Upon information and belief, the April 2010 Transfers constitute not less than approximately 95.4% of all deposits in April 2010 to the YCB Account.

32. In the month of May 2010, ELC transferred to Tommy the aggregate sum of $90,122,164.49 via transfers identified and set forth on <u>Exhibit E</u> attached hereto and made part hereof (collectively, the "<u>May 2010 Transfers</u>").

33. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $163.43, the May 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC. Upon information and belief, exclusive of the sum of $163.43, the May 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses.

34. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the May 2010 Transfers into the YCB Account. Upon information and belief, the May 2010 Transfers constitute not less than approximately 94.1% of all deposits in May 2010 to the YCB Account.

35. In the month of June 2010, ELC transferred to Tommy the aggregate sum of $81,987,015.54 via transfers identified and set forth on <u>Exhibit F</u> attached hereto and made part hereof (collectively, the "<u>June 2010 Transfers</u>").

36. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $39,287.04, the June 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC. Upon information and belief, exclusive of the sum of the $39,287.04, the June 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses.

37. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the June 2010 Transfers into the YCB

- 7 -

Account. Upon information and belief, the June 2010 Transfers constitute not less than approximately 100% of all deposits in June 2010 to the YCB Account.

38. In the month of July 2010, ELC transferred to Tommy the aggregate sum of $102,124,650.22 via transfers identified and set forth on Exhibit G attached hereto and made part hereof (collectively, the "July 2010 Transfers").

39. Plaintiff is informed and believes and, based thereon, alleges with the exception of the sum of $15,608.54, the July 2010 Transfers are not Tommy Wages or the purported proceeds of Actual Tommy Cattle Sales to ELC. Upon information and belief, exclusive of the sum of $15,608.54, the July 2010 Transfers are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses.

40. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the July 2010 Transfers into the YCB Account. Upon information and belief, the July 2010 Transfers constitute not less than approximately 94.47% of all deposits in July 2010 to the YCB Account.

41. Plaintiff is informed and believes and, based thereon, alleges, prior to 2010 and beginning no later than in or around October 2009, ELC made transfers aggregating several million dollars to Tommy which also are the purported proceeds of the Kite Scheme, certain of the False Tommy Cattle Sales to ELC or False Tommy Expenses (the "2009 Transfers").

42. Plaintiff is informed and believes and, based thereon, alleges Tommy deposited the funds that ELC transferred to Tommy as the 2009 Transfers into the YCB Account.

43. Hereafter, exclusive of the aggregate sum of $167,203.02, the 2009 Transfers, January 2010 Transfers, February 2010 Transfers, March 2010 Transfers, April 2010

- 8 -

Transfers, May 2010 Transfers, June 2010 Transfers and July 2010 Transfers sometimes collectively shall be referred to as the "ELC Transfers."

44. Plaintiff is informed and believes and, based thereon, alleges, in 2009 Tommy wrote checks drawn on the YCB Account payable to Koller aggregating not less than the sum of $300,000, including, without limitation: i) Check no. 2863, dated February 4, 2009, in the sum of $100,000; (ii) Check no. 28787, dated May 12, 2009, in the sum of $100,000; and (iii) Check no. 29067, dated October 8, 2009, in the sum of $100,000.00 (collectively, the "2009 Koller Payment Transfers"; each individually, a "2009 Koller Payment Transfer").

45. Plaintiff is informed and believes and, based thereon, alleges, in 2010 Tommy wrote checks drawn on the YCB Account payable to Koller aggregating the sum of $546,000, as follows: (i) Check no. 29375, dated January 8, 2010, in the sum of $100,000.00; (ii) Check no. 29390, dated January 15, 2010, in the sum of $100,000.00; (iii) Check no. 29418, dated January 22, 2010, in the sum of $100,000.00; (iv) Check no. 29917 dated May 10, 2010, in the sum of $100,000.00; (v) Check no. 29918, dated May 10, 2010, in the sum of $100,000.00; and (vi) Check no. 30462, dated July 30, 2010, in the sum of $46,000.00 (collectively, the "2010 Koller Payment Transfers"; each individually, a "2010 Koller Payment Transfer"). True and correct copies of the checks evidencing each of the 2010 Koller Payment Transfers are attached as Group Exhibit H. Hereafter, the 2009 Koller Payment Transfers and 2010 Koller Payment Transfers collectively sometimes shall be referred to as the "Koller Payment Transfers."

46. Plaintiff is informed and believes and, based thereon, alleges Tommy used a portion of the funds received through the ELC Transfers deposited into the YCB Account to fund payment to Koller of the Koller Payment Transfers.

DMS_US 51284627v4

47. By this Complaint, the Trustee seeks to avoid that portion of the ELC Transfers in the aggregate principal sum of not less than $846,000.00 that funded payment by Tommy of the Koller Payment Transfers.

### COUNT I - Fraudulent Transfer (11 U.S.C. §548(a))

48. The Trustee incorporates by reference the allegations contained in paragraphs 1 through 47, inclusive, as if fully set forth herein.

49. Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of the ELC Transfers that were made by ELC with actual intent to hinder, delay, or defraud any entity to which ELC was or became indebted, on or after the date that each of such ELC Transfers was made.

50. Acting with actual intent to hinder, delay or defraud, Tommy directed and caused ELC to make the ELC Transfers. The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the ELC Transfers. The ELC Transfers were transfers of property of ELC by ELC directed by Tommy purportedly on account of the Kite Scheme, certain of the False Tommy Cattle Sales or False Tommy Expenses. Upon information and belief, ELC received no consideration in exchange for the ELC Transfers.

51. Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of the ELC Transfers if ELC received less than reasonably equivalent value in exchange for the ELC Transfers and (i) was insolvent at the time of each of the ELC Transfers or became insolvent as a result of the ELC Transfers, (ii) was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with ELC was an unreasonably small capital, (iii) intended to incur or believed that ELC would incur debts that would be beyond ELC's ability to pay as they matured, or (iv) made

- 10 -

such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

52. ELC received less than reasonably equivalent value in exchange for each of the ELC Transfers.

53. ELC was insolvent when ELC made each of the ELC Transfers.

54. Tommy transferred a portion of the funds received through the ELC Transfers to Koller as the Koller Payment Transfers.

55. Each of the ELC Transfers was made within two (2) years of the Petition Date.

56. Pursuant to §§ 548 and 550 of the Bankruptcy Code, the Trustee can avoid that portion of the ELC Transfers transferred to Koller as the Koller Payment Transfers and recover from Koller the value of the ELC Transfers transferred to Koller as the Koller Payment Transfers.

### Count II – Fraudulent Transfer (I.C. § 32-18-2 et seq.)

57. This Count II is in the alternative to Count I.

58. The Trustee incorporates by reference the allegations contained in paragraphs 1 through 56, inclusive, as if fully set forth herein.

59. The funds Tommy received as each of the ELC Transfers were ELC's property and such funds were transferred for less than reasonably equivalent value under I.C. § 32-18-2-15 and in violation of I.C. § 32-18-2-14, because Tommy received the property with the intent to hinder, delay, or defraud ELC's creditors.

60. Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder,

- 11 -

delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

61. Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

62. Acting with actual intent to hinder, delay or defraud, Tommy caused ELC to make the ELC Transfers to himself. The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the ELC Transfers. Each of the ELC Transfers was a transfer of property of ELC by ELC directed by Tommy purportedly on account of the Kite Scheme, certain of the False Tommy Cattle Sales or False Tommy Expenses, premised on a scheme of fabricated transactions intended to defraud ELC's bank, Fifth Third. Upon information and belief ELC received no consideration in exchange each of the ELC Transfers.

63. ELC received less than reasonably equivalent value in exchange for each of the ELC Transfers.

64. ELC was insolvent when ELC made each of the ELC Transfers.

65. Tommy transferred a portion of the funds received through the ELC Transfers to Koller as the Koller Payment Transfers.

66. Each of the ELC Transfers was made within four (4) years of the Petition Date.

67. Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid that portion of the ELC Transfers transferred to Koller as the Koller Payment Transfers and recover from Koller the value of the ELC Transfers transferred to Koller as the Koller Payment Transfers.

68. All conditions precedent to the actions set forth in Counts II herein have been performed or excused.

### Count III
### Recovery of Avoided Transfers (11 U.S.C. § 550)

69. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 68, inclusive, as if fully set forth herein.

70. Plaintiff is informed and believes and, based thereon, alleges that the Plaintiff is entitled to avoid the ELC Transfers under Sections 544, 547(b), 548(a)(1)(A) or 548(a)(1)(B) of the Bankruptcy Code, and recover for the benefit of the Debtor's estate the proceeds or value of that portion of the funds received through the ELC Transfers as the Koller Payment Transfers from Defendant or any immediate or mediate transferee of the Defendant, or any of them, under Section 550(a)(1) of the Bankruptcy Code.

WHEREFORE, the Trustee requests that the Court enter judgment on Counts I and II in the Trustee's favor and against Koller as follows:

(a) Declaring that portion of the ELC Transfers transferred to Koller as the Koller Payment Transfers are avoided and set aside (and any other transfers within the meaning of §101(54) of the Bankruptcy Code discovered after the date of this Complaint);

(b) Awarding the Trustee a money judgment based upon Counts I and II above (and any other transfers within the meaning of §101(54) of the Bankruptcy Code discovered after the date of this Complaint and avoided);

(c) Awarding the Trustee prejudgment interest on the amounts determined to be owed under Counts I and II above at the appropriate statutory rate;

(d) Awarding the Trustee reasonable attorneys' fees; and

(e) Awarding the Trustee all other just and appropriate relief.

### Count IV
### For Disallowance of Claim Pursuant to 11 U.S.C. § 502(d)

71. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 70, inclusive, as if fully set forth herein.

72. Plaintiff is informed and believes, and based thereon, alleges that Defendant may assert a claim against Debtor's estate.

73. Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiff requests that any claim asserted by Defendant be disallowed for the failure to repay that portion of the ELC Transfers transferred to Koller as the Koller Payment Transfers that are avoided and set aside.

WHEREFORE, Plaintiff requests that the Bankruptcy Court enter judgment in its favor and against Defendant as follows:

(a) Disallowing any and all claims of Defendant against Debtor's estate under Section 502(d) of the Bankruptcy Code; and

(b) Such other and further relief as is necessary and proper.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

/s/ Wendy W. Ponader

*Counsel for James A. Knauer, Chapter 11 Trustee*

Wendy Wright Ponader (#14633-49)
600 E. 96th Street, Suite 600
Indianapolis, Indiana 46240-3789
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)
Harmony Mappes (#27237-49)
Dustin R. DeNeal (#27535-49)
Kayla D. Britton (#29177-06)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
james.carr@faegrebd.com
terry.hall@faegrebd.com
kevin.toner@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com