UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JAMES A. KNAUER, CHAPTER 11 | ) | |
| TRUSTEE OF EASTERN LIVESTOCK CO., | ) | |
| LLC | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. |
| | ) | |
| v. | ) | |
| | ) | |
| ERNEST ELDER a/k/a ERNIE ELDER d/b/a | ) | |
| ECF FARMS, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

James A. Knauer, as Chapter 11 Trustee for Eastern Livestock Co., LLC, by counsel, for his complaint against Ernest Elder a/k/a Ernie Elder d/b/a ECF Farms, states as follows:

### **Jurisdiction and Parties**

1.      The above-captioned adversary proceeding (the "Adversary Proceeding") arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").

2.      This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.     This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), (e), (f), and (h).

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(b).

6.     Pursuant to S.D. Ind. B-7008-1, the Trustee hereby consents to entry of final orders or judgments by the Bankruptcy Judge.

7.     Eastern Livestock Co., LLC ("ELC" or "Debtor") was one of the largest cattle dealers in the United States, with operations and assets located in at least eleven states.  ELC was headquartered in New Albany, Indiana, with branch locations across several states.

8.      Certain petitioning creditors commenced the Chapter 11 Case on December 6, 2010 (the "Petition Date"), by filing an involuntary petition for relief under the Bankruptcy Code.  The Bankruptcy Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

9.     On December 28, 2010, James A. Knauer ("Plaintiff" or "Trustee") was appointed as the Chapter 11 Trustee for ELC.

10.     Defendant Ernest Elder a/k/a Ernie Elder d/b/a ECF Farms ("Elder", "ECF Farms", or "Defendant") is a "person" as defined in Section 101(41) of the Bankruptcy Code residing in and/or conducting business in the United States.

11.     At all relevant times material hereto, Defendant was a vendor, supplier or otherwise maintained a business relationship with ELC or its affiliates.

12.     At all relevant times material hereto, Elder did business under the name "ECF Farms."

13.     Defendant is an insider within the meaning of Section 101(31) of the Bankruptcy Code.

**Background**

14.     ELC is a Kentucky limited liability company.  It was one of the largest cattle dealers in the United States until its closure on and around November 2, 2010, processing cattle sales and operating branch facilities in eleven states.  The company's principal office is located in New Albany, Indiana.

15.     Thomas P. Gibson ("Gibson") and Grant P. Gibson, were involved in a large-scale check-kiting scheme between each of their personal bank accounts and ELC's bank account.  In addition, Gibson, Grant P. Gibson, and Michael Steven McDonald ("McDonald"), along with other ELC insiders, orchestrated and participated in a large-scale accounts receivable and cattle-inventory accounting scheme designed to inflate Borrowing Base lending capacity with bogus purchases and sales of non-existent cattle.  Gibson, McDonald, Grant P. Gibson, and Darren Brangers have pled guilty to counts of criminal syndication, engaging in organized crime, and theft.

16.     In order to facilitate its daily business operations, ELC entered into credit and security agreements with Fifth Third Bank ("Fifth Third") on August 9, 2004.  Under the terms of these agreements, Fifth Third extended a revolving line of credit to ELC ("Line of Credit").

17.     Initially, the Line of Credit was in the amount of $22.5 million, which Fifth Third secured by receiving security interests in assets owned by ELC, including its bank

accounts, equipment, livestock, and accounts receivable. In or about 2008, Wells Fargo came in as a participant in Fifth Third's loan to ELC and the Line of Credit was increased from $22.5 million to $32.5 million, with Wells Fargo Bank assuming the benefit and liability of $10 million of the $32.5 million Line of Credit extended to ELC. Accessing funds from the Line of Credit on a daily basis was essential to the operation of ELC because the monies were needed by ELC to make timely payments for cattle it purchased on a daily basis.  ELC represented that it purchased, on average, $10 to $20 million worth of cattle every day.  The reality was that ELC was purchasing on average approximately $3.5 million worth of cattle per day, with the remainder of the purported volume being bogus cattle transactions.

18.     Under the terms of its credit agreement with Fifth Third, funds were extended to ELC based, in part, on the value of ELC's outstanding accounts receivable, which were reported by ELC to the bank on a daily basis through submission of a Borrowing Base Certificate.

19.     Also under the terms of its credit agreement with Fifth Third, ELC maintained a Cash Collateral Account with Fifth Third, into which ELC deposited, on a daily basis, receipts from operation of its business, which were principally derived from ELC's sale of cattle.   Funds deposited into the Cash Collateral Account were automatically transferred by Fifth Third to make payments against ELC's $32.5 million Line of Credit.   These payments reduced the balance owed on the Line of Credit, thereby increasing the amount of available funds for use by ELC.  ELC used the funds from the Line of Credit on a daily basis to fund checks being presented for payment to ELC and to conduct its daily business as a cattle dealer.   The availability of

approximately $10 to $20 million in cash on a daily basis from the Line of Credit was essential to the operation of ELC's business.

20.     On information and belief, Defendant, doing business as ECF Farms, assisted in the artificial inflation of ELC's cattle inventory through bogus cattle transactions.

21.     On information and belief, the Defendant sold cattle to ELC and ELC then resold the cattle to a third party. However, the cattle purchased by ELC from the Defendant and then resold to a third party were not real cattle purchases, but, instead, were bogus cattle purchases intended to artificially inflate ELC's cattle inventory.

### Transfers – ECF Farms

22.     On at least one occasion and/or from time to time and occurring within two years prior to the Petition Date, ELC and the Defendant, doing business as ECF Farms, entered into multiple business transactions, whereby the Defendant sold cattle to ELC or its affiliates and/or provided other goods or services to ELC or its affiliates.

23.     Section 101(54) of the Bankruptcy Code applicable to this Adversary Proceeding defines "transfer" as, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

24.     Plaintiff is informed and believes and, based thereon, alleges, that ELC made transfers of property to the Defendant or caused to be made transfers of property of ELC to the Defendant within one year on or before the Petition Date, that is between December 6, 2009 and December 6, 2010, inclusive, in the aggregate sum of no less

than $3,316,816.21 (the "ECF One Year Transfers").  Applicable ECF One Year Transfers for September through October 2010 are reflected on Exhibit "A" attached hereto and made part hereof, and as such exhibit may hereafter be amended, supplemented, or replaced to include additional ECF One Year Transfers.

25.     Plaintiff is informed and believes and, based thereon, alleges, that ELC made transfers of property to the Defendant or caused to be made transfers of property of ELC to the Defendant within two years on or before the Petition Date, that is between December 6, 2008 and December 6, 2010, inclusive, in the aggregate sum of no less than $3,316,816.21 (the "ECF Transfers").  Applicable ECF Transfers for September through October 2010 are reflected on Exhibit "A" attached hereto and made part hereof, and as such exhibit may hereafter be amended, supplemented, or replaced to include additional ECF Transfers made within the two year period prior to the Petition Date.

26.     The ECF Transfers are not subject to the defenses to the avoidance of the ECF Transfers as set forth in 11 U.S.C. § 547 (c).

27.     The ECF Transfers were transfers of interests of ELC's property.

28.     Plaintiff is informed and believes and, based thereon, alleges that the ECF Transfers were made to the Defendant while ELC was insolvent.

**Transfers – Ernie Elder**

29.      On at least one occasion and/or from time to time and occurring within two years prior to the Petition Date, Defendant provided goods or services to ELC or its affiliates.

6

30.     Section 101(54) of the Bankruptcy Code applicable to this Adversary Proceeding defines "transfer" as, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

31.     Plaintiff is informed and believes and, based thereon, alleges that ELC made transfers of property to Defendant or caused to be made transfers of property of ELC by a third party to Defendant, on or within one year before the Petition Date, that is between December 6, 2009 and December 6, 2010, inclusive, in the aggregate sum of no less than $17,750.00 (the "Elder One Year Transfers").  Applicable Elder One Year Transfers for July 2010 to Defendant are reflected on Exhibit "B" attached hereto and made part hereof, and as such exhibit may hereafter be amended, supplemented, or replaced to include additional Elder One Year Transfers.

32.     Plaintiff is informed and believes and, based thereon, alleges that ELC made transfers of property to Defendant or caused to be made transfers of property of ELC by a third party to Defendant, on or within two years before the Petition Date, that is between December 6, 2008 and December 6, 2010, inclusive, in the aggregate sum of no less than $31,565.60 (the "Elder Transfers").  Applicable Elder Transfers for November, 2009 through July, 2010 to Defendant are reflected on Exhibit "B" attached hereto and made part hereof, and as such exhibit may hereafter be amended, supplemented, or replaced to include additional Elder Transfers made within the two year period prior to the Petition Date.

33.     The Elder Transfers are not subject to the defenses to the avoidance of the Elder Transfers as set forth in 11 U.S.C. § 547 (c).

34.     The Elder Transfers were transfers of interests of ELC's property.

35.     Plaintiff is informed and believes and, based thereon, alleges that the Elder Transfers were made to the Defendant while ELC was insolvent.

**528K Note**

36.     On or about January 22, 2007, Defendant executed and delivered to ELC a Promissory Note whereby Defendant promised to pay to ELC the original principal sum of $528,535.92 with interest thereon from the date of execution until paid at a rate of one and ¾ percent (1.75%) above the Prime rate as published in the Wall Street Journal per annum ("528K Note").  A true and accurate copy of the 528K Note is attached hereto as Exhibit "C".

37.     The Trustee is entitled to enforce the payment of the 528K Note on behalf of the bankruptcy estate of ELC.

38.     The 528K Note is payable "On Demand", and the Trustee hereby demands payment of the 528K Note with interest.

39.     Pursuant to the demand, the 528K Note has matured and the entire 528K Note Balance (as defined below) is immediately due and payable.

40.     As of December 6, 2012, the amount due and owing to ELC under the 528K Note is as follows:

| | |
|---|---|
| Current Principal: | $528,535.92 |
| Accrued Interest: | $188,688.50 |
| **TOTAL DUE:** | **$717,224.42** |

plus all interest accruing after December 6, 2012, and all expenses and attorneys' fees incurred by the Trustee (the "528K Note Balance").

**225K Note**

41.    On or about January 22, 2007, Defendant executed and delivered to ELC a Promissory Note whereby Defendant promised to pay to ELC the original principal sum of $225,392.89 with interest thereon from the date of execution until paid at a rate of one and ¾ percent (1.75%) above the Prime rate as published in the Wall Street Journal per annum ("225K Note").   A true and accurate copy of the 225K Note is attached hereto as Exhibit "D".

42.    The Trustee is entitled to enforce the payment of the 225K Note on behalf of the bankruptcy estate of ELC.

43.    The 225K Note is payable "On Demand", and the Trustee hereby demands payment of the 225K Note with interest.

44.    Pursuant to the demand, the 225K Note has matured and the entire 225K Note Balance (as defined below) is immediately due and payable.

45.    As of December 6, 2012, the amount due and owing to ELC under the 225K Note is as follows:

| | |
|---|---|
| Current Principal: | $225,392.89 |
| Accrued Interest: | $80,460.21 |
| **TOTAL DUE:** | **$305,853.10** |

plus all interest accruing after December 6, 2012, and all expenses and attorneys' fees incurred by the Trustee (the "225K Note Balance").

### COUNT I – COMPLAINT ON 528K NOTE

46.    The Trustee incorporates the preceding paragraphs by reference.

9

47.    Defendant is in default of payment of the 528K Note for failure to pay upon demand as described above.

48.    The Trustee demands immediate payment in full.

49.    Defendant has failed or neglected to pay the indebtedness as evidenced by the 528K Note.

50.    As a result of Defendant's default, ELC has suffered damages.

## COUNT II – COMPLAINT ON 225K NOTE

51.    The Trustee incorporates the preceding paragraphs by reference.

52.    Defendant is in default of payment of the 225K Note for failure to pay upon demand as described above.

53.    The Trustee demands immediate payment in full.

54.    Defendant has failed or neglected to pay the indebtedness as evidenced by the 225K Note.

55.    As a result of Defendant's default, ELC has suffered damages.

## COUNT III – AVOIDANCE OF TRANSFERS AS PREFERENTIAL TRANSFERS ( 11 U.S.C. § 547(b))

56.    The Trustee incorporates the preceding paragraphs by reference.

57.    Plaintiff is informed and believes and, based thereon, alleges that the ECF One Year Transfers and the Elder One Year Transfers (collectively "One Year Transfers") were made to the Defendant for the benefit of the Defendant, who was an "Insider" and a creditor of Debtor at the time of the One Year Transfers, respectively, as the term creditor is defined by Section 101(10) of the Bankruptcy Code.

58.     Plaintiff is informed and believes and, based thereon, alleges that the One Year Transfers were transfers of interests of the Debtor in property.

59.     Plaintiff is informed and believes and, based thereon, alleges that the One Year Transfers were made for or on account of one or more antecedent debts owed by the Debtor to Defendant prior to the date on which the One Year Transfers respectively were made.

60.     At the time of each of the One Year Transfers, Defendant had a right to payment on account of an obligation owed to the Defendant by the Debtor.

61.     As of the Petition Date, Plaintiff is informed and believes, and based thereon, alleges the One Year Transfers were made while ELC was insolvent because the value of ELC's assets at a fair valuation was less than the sum of its debts.  As a result of the One Year Transfers, the Defendant received more than he would have received if (a) the Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code; (b) the respective One Year Transfers had not been made; and (c) Defendant had received payment on such debt owed to him by Debtor to the extent provided by Chapter 7 of the Bankruptcy Code.

62.     Plaintiff is entitled to an order and judgment under Section 547(b) of the Bankruptcy Code avoiding the One Year Transfers.

## COUNT IV – AVOIDANCE OF TRANSFERS AS FRAUDULENT TRANSFERS (11 U.S.C. § 548(a)(1)(A))

63.     This Count IV is in the alternative to Count III.

64.     The Trustee incorporates the preceding paragraphs by reference.

65.     Plaintiff is informed and believes and, based thereon, alleges that the Debtor made the ECF Transfers and the Elder Transfers (collectively "Transfers") to

Defendant with the actual intent to hinder, delay, or defraud on or more of Debtor's creditors.

66.    Plaintiff is entitled to avoid the Transfers and recover the value of the Transfers from Defendant under Sections 544 and 548(a)(1)(A) of the Bankruptcy Code.

## COUNT V – AVOIDANCE OF TRANSFERS AS FRAUDULENT TRANSFERS
### (11 U.S.C. § 548(a)(1)(B))

67.    This Count V is in the alternative to Counts III and IV.

68.    The Trustee incorporates the preceding paragraphs by reference.

69.    Under Section 548(a)(1)(B) of the Bankruptcy Code, the Plaintiff may avoid the value of Transfers made if the Debtor received less than reasonably equivalent value in exchange for the Transfers and Debtor (i) was insolvent at the time of the Transfers or became insolvent as a result of any of the Transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

70.    ELC received less than reasonably equivalent value in exchange for the Transfers.

71.    Debtor was insolvent on the date Defendant received each of the Transfers.

72.    The Transfers were made within two (2) years of the Petition Date.

73.    Plaintiff is entitled to avoid the Transfers and recover the value of the Transfers from Defendant under Section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT VI – RECOVERY OF AVOIDED TRANSFERS (11 U.S.C. § 550)

74.    The Trustee incorporates the preceding paragraphs by reference.

75.    Plaintiff is informed and believes and, based thereon, alleges that the Plaintiff is entitled to avoid the Transfers under Sections 544, 547(b), 548(a)(1)(A), and 548(a)(1)(B) of the Bankruptcy Code, and recover for the benefit of the Debtor's estate, the proceeds or the value of the Transfers from Defendant or any immediate or mediate transferee of Defendant, or any of them, under Section 550(a)(1) of the Bankruptcy Code.

## COUNT VII – DISALLOWANCE OF CLAIM PURSUANT TO 11 U.S.C. § 502(D)

76.    The Trustee incorporates the preceding paragraphs by reference.

77.    Plaintiff is informed and believes, and based thereon, alleges that Defendant has or may assert a claim against the Debtor's estate.

78.    Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiff requests that any claim asserted by Defendant be disallowed for the failure to repay the Transfers.

THEREFORE, the Plaintiff requests that the Bankruptcy Court enter judgment in its favor and against Defendant as follows:

## ON COUNT I

A.    Enter judgment against Defendant in the amount of the 528K Note Balance of $717,224.42 as of December 6, 2012, plus all additional accrued and accruing interest, charges and other fees and expenses, all as provided for under the 528K Note;

B.    Award the Trustee costs and attorneys' fees as provided in the 528K Note and by law;

13

**ON COUNT II**

C.      Enter judgment against Defendant in the amount of the 225K Note Balance of $305,853.10 as of December 6, 2012, plus all additional accrued and accruing interest, charges and other fees and expenses, all as provided for under the 225K Note;

D.      Award the Trustee costs and attorneys' fees as provided in the 225K Note and by law;

**ON COUNTS III, IV, AND V**

E.      Declaring that the One Year Transfers  (and any other transfers within the meaning of 11 U.S.C. § 101(54) discovered after the date of this Complaint and avoided) are avoided and set aside as preferences under Section 547 of the Bankruptcy Code, and/or that the Transfers (and any other transfers within the meaning of 11 U.S.C. § 101(54) discovered after the date of this Complaint and avoided) are avoided as fraudulent conveyances under Sections 544 and 548(a)(1)(A) and (B) of the Bankruptcy Code;

**ON COUNT VI**

F.      Directing and ordering that the Defendant, or any immediate or mediate transferee of the Defendant, turn over to the Plaintiff the full sum of the proceeds or value of the Transfers (and any other avoided transfers discovered after the date of this Complaint) pursuant to Section 550 of the Bankruptcy Code;

G.      Awarding judgment against the Defendant and in favor of the Plaintiff in an amount not less than $3,348,381.81;

**ON COUNT VII**

H.     Disallowing any and all claims of the Defendant against the ELC bankruptcy estate under Section 502(d) of the Bankruptcy Code;

**ON ALL CLAIMS FOR RELIEF**

I.     Pre-judgment interest at the maximum legal rate running from the time of the Transfers until the date of judgment herein;

J.     Post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

K.     Fees and costs incurred by the Plaintiff in this suit;

L.     Such other and further relief as is necessary and proper.

Respectfully submitted,

KROGER, GARDIS & REGAS, LLP


By:   /s/ Jay P. Kennedy
Jay P. Kennedy, Attorney No. 5477-49
Amanda D. Stafford, Attorney No. 30869-49
Counsel for James A. Knauer, Trustee
111 Monument Circle, Suite 900
Indianapolis, Indiana  46204-5125
(317) 692-9000