UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Bankruptcy Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| ─────────────────────── | ) | |
| | ) | |
| JAMES A. KNAUER, CHAPTER 11 | ) | |
| TRUSTEE OF EASTERN LIVESTOCK | ) | |
| CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. _____ |
| | ) | |
| -v.- | ) | |
| | ) | |
| TAMMY GIBSON; GIBSON CATTLE | ) | |
| COMPANY, L.L.C; GP CATTLE | ) | |
| COMPANY, LLC; GRANT GIBSON, | ) | |
| individually, and d/b/a GP CATTLE | ) | |
| COMPANY and d/b/a GP CATTLE; and | ) | |
| ATKINSON LIVESTOCK MARKET, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

James A. Knauer, as Chapter 11 Trustee for Eastern Livestock Co., LLC, for his

Complaint against defendants Tammy Gibson, Gibson Cattle Company, L.L.C., GP Cattle

Company, LLC, and Grant Gibson (individually and d/b/a GP Cattle Company and d/b/a GP

Cattle) states the following:

### Jurisdiction and Parties

1.      The above-captioned adversary proceeding (the "Adversary Proceeding")

arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is

currently pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").

2.      This Adversary Proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.      This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6.      Eastern Livestock Co., LLC ("Debtor" or "Eastern") was one of the largest cattle dealers in the United States.  Eastern was headquartered in New Albany, Indiana, with branch locations across several states.  Certain petitioning creditors commenced the Chapter 11 Case on December 6, 2010, (the "Petition Date") by filing an involuntary petition for relief under the Bankruptcy Code.  The Bankruptcy Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

7.      James A. Knauer ("Trustee") was appointed as the Chapter 11 Trustee for Eastern.

8.      Pursuant to S.D. Ind. B-7008-1, the Trustee hereby consents to entry of final orders or judgments by the Court.

9.      Defendant Tammy Gibson ("Tammy") is an individual domiciled at 7827 Tandy Road, Lanesville, IN 47136.

10.      Defendant Gibson Cattle Company, L.L.C. ("Gibson Cattle Company") is a limited liability company organized under Indiana law with its principal place of business in

- 2 -

New Albany, Indiana.  Its registered agent is Grant Gibson c/o Barbara Clark 1031 N. Graham

Ave., Indianapolis IN 46219.  Grant Gibson is Gibson Cattle Company's most recent president.

11.      Defendant Grant Gibson ("Grant") is domiciled at 7827 Tandy Road,

Lanesville, IN 47136.  Grant also did business as GP Cattle and as GP Cattle Company.  Grant

was the vice president of Eastern.

12.      Defendant GP Cattle, LLC is a limited liability company organized under

Indiana law.  GP Cattle, LLC was formed on or about September 24, 2010.  Grant is GP Cattle,

LLC's registered agent.  Hereinafter, "GP Cattle" refers to Grant d/b/a GP Cattle and GP Cattle

Company as well as GP Cattle, LLC, where appropriate.

13.      Defendant Atkinson Livestock Market, LLC ("Atkinson") is a limited

liability company organized under Illinois law.

### General Allegations

14.      Section 101(54) of the Bankruptcy Code defines "transfer" as, "every

mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or

parting with property or with an interest in property, including retention of title as a security

interest and foreclosure of the debtor's equity of redemption."

15.      Eastern transferred no less than $258,775.22 to Tammy (the

"Eastern/Tammy Transfers"), including those transfers made on the dates and in the form of

payment shown on Exhibit A, incorporated herein by reference.

16.      Tammy was not employed by Eastern and was not under contract with

Eastern on or about the time of the Eastern/Tammy Transfers.

17.      Eastern received no consideration from Tammy in exchange for the

Eastern/Tammy Transfers.

18.     Eastern transferred no less than $385,517.59 to Gibson Cattle Company (the "Eastern/Gibson Cattle Company Fraudulent Transfers"), including those transfers made on the dates and in the form of payment shown on Exhibit B.

19.     Based on available information in Eastern's remaining books and records, Eastern did not owe the payments identified in preceding paragraph to Gibson Cattle Company.

20.     Eastern received no consideration from Gibson Cattle Company in exchange for the Eastern/Gibson Cattle Company Fraudulent Transfers.

21.     Gibson Cattle Company is an affiliate entity closely related to Eastern and its principals.  Grant, Eastern's vice president, is the most recent president of Gibson Cattle Company, and Eastern president Thomas P. Gibson ("Tommy") is the most recent Gibson Cattle Company secretary.  All of the payments identified above in paragraph 18  appear on Eastern's books as payments out of Grant's and John Gibson's accrued commissions.

22.     Eastern's records do not reflect any discernible legitimate business purpose for the Eastern/Gibson Cattle Company Fraudulent Transfers.  The dealings between Eastern and Gibson Cattle Company were not arms length.

23.     During the year prior to the Petition Date, Eastern made transfers of property totaling not less than $915,152.65, including those identified in Exhibit C, from Eastern deposit accounts and/or accounts under the control of Eastern to GP Cattle (the "Eastern/Gibson Cattle Preferential Transfers").  The Eastern/Gibson Cattle Preferential Transfers were made in the sums, form of payment, and on or around the dates reflected on Exhibit C, incorporated herein by reference.

24.     The Eastern/Gibson Cattle Preferential Transfers were made by Eastern to GP Cattle for goods and services provided by Gibson Cattle Company related to the business

- 4 -

dealings between Eastern and Gibson Cattle Company, including, for example, feed costs and cattle purchases/sales.

25.     The Eastern/Gibson Cattle Company Preferential Transfers are not subject to the defenses to the avoidance of transfers as set forth in 11 U.S.C. § 547(c).

26.     On or about September 3, 2010, Eastern transferred $500,000 to Grant (the "$500,000 Transfer").  On Eastern's books, this payment was charged against "notes receivable." On information and belief, no promissory note was executed relating to the $500,000 Transfer, and Eastern received no consideration in exchange for the funds.

27.     Grant and GP Cattle both have close relationships with Eastern.  Grant was Eastern's vice president and is a principal of GP Cattle.  GP Cattle's bank account at Your Community Bank was used in the borrowing base fraud perpetrated against Fifth Third Bank ("Fifth Third") by Eastern and others, including Grant.  The transactions and dealings between and among Eastern and Grant and GP Cattle were not arms length.

28.     During the year prior to the Petition Date, Eastern made transfers of property totaling not less than $899,606.46, including those identified in Exhibit D, from Eastern deposit accounts and/or accounts under the control of Eastern to GP Cattle (the "Eastern/GP Cattle Preferential Transfers").  The Eastern/GP Cattle Preferential Transfers include the transfers made in the sums, form of payment, and on or around the dates reflected on Exhibit D, incorporated herein by reference.

29.     The Eastern/GP Cattle Preferential Transfers were made by Eastern to GP Cattle for goods and services provided by Edens related to the business dealings between Eastern and GP Cattle, including the purchase and sale of cattle.

30.     The Eastern/GP Cattle Preferential Transfers are not subject to the defenses to the avoidance of transfers as set forth in 11 U.S.C. § 547(c).

31.     On information and belief, unlike many other transfers into GP Cattle's bank account from Eastern, the Eastern/GP Cattle Preferential Transfers were made in connection with legitimate business dealings relating to the actual purchase and sale of real cattle and were unrelated to any check-kiting or borrowing base fraud.

32.     Fifth Third provided a revolving secured lending facility which Eastern used to finance Eastern's business operations as a cattle dealer.  Fifth Third extended loan availability to Eastern based, in part, upon a "Borrowing Base" consisting of Eastern's changing daily level of eligible accounts receivable and inventory of cattle.

33.     Tommy, Grant, and other individuals affiliated with Tommy conducted a large-scale check-kiting scheme utilizing their personal bank accounts, their livestock business bank accounts, and Eastern's bank accounts at Fifth Third.  In addition, Tommy, Grant, Michael Steven McDonald ("McDonald"), and Darren Brangers orchestrated and participated in a large-scale accounts receivable and cattle inventory scheme designed to falsely inflate Eastern's purported Borrowing Base to create loan availability.  In furtherance of this scheme, Tommy, Grant, McDonald or other Eastern insiders, caused tens of millions of dollars to be transferred from Eastern to Grant.

34.     The schemes involved almost daily bogus purchases and sales of non-existent cattle.  In addition to the false cattle purchases/sales, the participants paid false and bogus expenses, typically characterized as trucking, feed or yardage expenses.

35.     Tommy, Grant, McDonald, and Brangers have pled guilty to charges made by a Kentucky prosecutor and were convicted by a Kentucky court of criminal syndication,

- 6 -

engaging in organized crime, and theft.  Tommy and McDonald are also under federal indictment for mail fraud.

36.    At the beginning of calendar year 2010, GP Cattle had a balance of $1,832,406.62. in a bank account ending XXXXX3974 at Your Community Bank ("YCB Account").  This bank account was in the name of "Grant Gibson DBA GP Cattle Company." On information and belief, most, if not all, of this balance had accrued from the result of transfers from Eastern as part of the Borrowing Base fraud and check-kiting schemes described in paragraphs 32-34.

37.    During 2010 Eastern transferred $928,829,486.70 to GP Cattle, which GP Cattle deposited in the YCB Account.  During 2010, GP Cattle transferred $921,818,377.47 from the YCB Account to Eastern.  These transfers are identified on Exhibit E, incorporated herein by reference.  On information and belief, these transfers between GP Cattle and Eastern were not related to legitimate business dealings.  On information and belief, these transfers were part of the Borrowing Base fraud and check-kiting schemes described in paragraphs 32-34.

38.    During 2010, GP Cattle deposited only $1,487,675.83 in the YCB Account from sources other than Eastern, of which $221,000,000.00 was from Tommy.

39.    In 2010, GP Cattle disbursed $7,352,948.43 from its YCB Account to Atkinson.  *See* Exhibit E.  Atkinson in turn transferred  $7,307,971.59 of those funds to Eastern. On information and belief, the transfers from GP Cattle to Atkinson and Atkinson to Eastern were part of the Borrowing Base fraud and check-kiting schemes described in paragraphs 32-34. For instance, each transfer from Atkinson to Eastern was for an amount that Eastern invoiced to Atkinson as though it were a cattle sale/purchase.  On information and belief, these invoices were bogus; no actual cattle were purchased or sold.

- 7 -

40.    The activity described above resulted in transfers of real dollars from Eastern to GP Cattle (the "Eastern/GP Cattle Fraudulent Transfers") for which Eastern received no consideration – in the form of a transfer from GP Cattle, a transfer from Atkinson, or otherwise.  GP Cattle subsequently transferred the funds received from Eastern to Atkinson.  The transfers to Atkinson also resulted in a transfer of real dollars to Atkinson (the "Atkinson Transfers").

41.    Checks also issued from GP Cattle's YCB Account to Grant totaling $55,500.00, Gibson Cattle Co., L.L.C. totaling $41,430.42 (the "GP Cattle/Gibson Cattle Company Transfers"), to Tammy totaling $106,000 (the "GP Cattle/Tammy Transfers") and to "cash" totaling $62,400.00.  *See* Exhibit E.

### Count I - Preferential Transfer – Gibson Cattle Company
### (The Eastern/Gibson Cattle Company Preferential Transfers)

42.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 41, inclusive, as if fully set forth herein.

43.    The Eastern/Gibson Cattle Company Preferential Transfers were transfers of interests of Eastern's property to Gibson Cattle Company.

44.    The Eastern/Gibson Cattle Company Preferential Transfers were made in satisfaction of one or more antecedent debts owed by Eastern to Gibson Cattle Company on account of business dealings between Eastern and Gibson Cattle Company prior to the date on which the Eastern/Gibson Cattle Company Preferential Transfers were made.

45.    The Eastern/Gibson Cattle Company Preferential Transfers were made while Eastern was insolvent.

46.    The Eastern/Gibson Cattle Company Preferential Transfers were made on or within one year before the Petition Date.

- 8 -

47.     Gibson Cattle Company is an Eastern insider as that term is used in §101 and §547 of the Bankruptcy Code.

48.     The Eastern/Gibson Cattle Company Preferential Transfers were to or for the benefit of a creditor, which enables such creditor to recover more than it would have received if: (i) the Bankruptcy Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the creditors had received payment of the debt to the extent provided by the Bankruptcy Code.

49.     The Eastern/Gibson Cattle Company Preferential Transfers are not subject to the defenses to the avoidance of the Transfers as set forth in 11 U.S.C. § 547(c).

50.     Pursuant to §§ 547 and 550 of the Bankruptcy Code, the Trustee, on behalf of the estate, is entitled to avoid the Preferential Transfers and to recover the value of the Eastern/Gibson Cattle Company Preferential Transfers from Gibson Cattle Company.

### Count II - Preferential Transfer – GP Cattle
### (Eastern/GP Cattle Preferential Transfers)

51.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 50, inclusive, as if fully set forth herein.

52.     The Eastern/GP Cattle Preferential Transfers were transfers of interests of Eastern's property to GP Cattle.

53.     The Eastern/GP Cattle Preferential Transfers were made in satisfaction of one or more antecedent debts owed by Eastern to GP Cattle on account of business dealings between Eastern and GP Cattle prior to the date on which the Eastern/GP Cattle Preferential Transfers were made.

54.     The Eastern/GP Cattle Preferential Transfers were made while Eastern was insolvent.

- 9 -

55.     The Eastern/GP Cattle Preferential Transfers were made on or within one year before the Petition Date.

56.     GP Cattle is an Eastern insider as that term is used in §101 and §547 of the Bankruptcy Code.

57.     The Eastern/GP Cattle Preferential Transfers were to or for the benefit of a creditor, which enables such creditor to recover more than it would have received if:  (i) the Bankruptcy Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the creditors had received payment of the debt to the extent provided by the Bankruptcy Code.

58.     Eastern/GP Cattle Preferential Transfers are not subject to the defenses to the avoidance of the Transfers as set forth in 11 U.S.C. § 547(c).

59.     Pursuant to §§ 547 and 550 of the Bankruptcy Code, the Trustee, on behalf of the estate, is entitled to avoid the Preferential Transfers and to recover the value of the Eastern/GP Cattle Preferential Transfers from GP Cattle.

**Count III – Fraudulent Transfer (Bankruptcy Code) – Grant Gibson**
**(The $500,000 Transfer)**

60.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 59, inclusive, as if fully set forth herein.

61.     The $500,000 Transfer was a transfer of Eastern's property to Grant.

62.     Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers that were made by the debtor with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

- 10 -

63. Acting with actual intent to hinder, delay or defraud, Eastern made the $500,000 Transfer to Grant. Eastern's intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions. The $500,000 Transfer took place outside the usual mode of business. The $500,000 Transfer was made for no consideration.

64. Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers made if the debtor received less than reasonably equivalent value in exchange for the transfers and (i) was insolvent at the time of the transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iii) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

65. Eastern received less than reasonably equivalent value in exchange for the $500,000 Transfer.

66. Eastern was insolvent on the date of the $500,000 Transfer.

67. Pursuant to §§548 and 550 of the Bankruptcy Code, the Trustee can avoid and recover the value of the $500,000 Transfer from Grant.

### Count IV – Fraudulent Transfer (State Law) – Grant Gibson
### (The $500,000 Transfer)

68. The Trustee incorporates by reference the allegations contained in paragraphs 1 through 67, inclusive, as if fully set forth herein.

69. Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to

- 11 -

the business or transaction or (ii) intended to incur or believed or reasonably should have

believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became

due.

70.     Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent

as to present creditors if the debtor made the transfer without receiving a reasonably equivalent

value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became

insolvent as a result of the transfer.

71.     Acting with actual intent to hinder, delay or defraud, Eastern made the

$500,000 Transfer to Grant.  The $500,000 Transfer took place outside the usual mode of

business.  The $500,000 Transfer was made for no consideration.

72.     Eastern received less than reasonably equivalent value in exchange for the

$500,000 Transfer.

73.     Eastern was insolvent on the date of the $500,000 Transfer.

74.     Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid

and recover the value of the $500,000 Transfer from Grant.

### Count V – Fraudulent Transfer (Bankruptcy Code) – Tammy Gibson (The Eastern/Tammy Transfers)

75.     The Trustee incorporates by reference the allegations contained in

paragraphs 1 through 74, inclusive, as if fully set forth herein.

76.     Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover

the value of the Eastern/Tammy Transfers that were made by the debtor with actual intent to

hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that

such transfer was made or such obligation was incurred, indebted.

- 12 -

77.    Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/Tammy Transfers to Tammy.  Eastern's intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  The Eastern/Tammy Transfers took place outside the usual mode of business.  The Eastern/Tammy Transfers were made for no consideration.

78.    Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of Eastern/Tammy Transfers made if the debtor received less than reasonably equivalent value in exchange for the Eastern/Tammy Transfers and (i) was insolvent at the time of the Eastern/Tammy Transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iii) made such Eastern/Tammy Transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

79.    Eastern received less than reasonably equivalent value in exchange for the Eastern/Tammy Transfers.

80.    Eastern was insolvent on the dates of the Eastern/Tammy Transfers

81.    Pursuant to §§548 and 550 of the Bankruptcy Code, the Trustee can avoid and recover the value of the Eastern/Tammy Transfers from Tammy.

**Count VI – Fraudulent Transfer (State Law) – Tammy Gibson**
**(The Eastern/Tammy Transfers)**

82.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.    Under Ind. Code § 32-18-2-14,  transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for

- 13 -

the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

84.     Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

85.     Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/Tammy Transfers to Tammy.  The Eastern/Tammy Transfers took place outside the usual mode of business and in a manner different than ordinary methods.  The Eastern/Tammy Transfers were made for no consideration.

86.     Eastern received less than reasonably equivalent value in exchange for the Eastern/Tammy Transfers.

87.     Eastern was insolvent on the dates of the Eastern/Tammy Transfers.

88.     Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid and recover the value of the Eastern/Tammy Transfers from Tammy.

**Count VII--Fraudulent Transfer (Bankruptcy Code) – Gibson Cattle Company**
**(The Eastern/Gibson Cattle Company Fraudulent Transfers)**

89.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.     Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of Eastern/Gibson Cattle Company Fraudulent Transfers that were made by the debtor

- 14 -

with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

91.    Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/Gibson Cattle Company Fraudulent Transfers to Eastern Cattle Company.  Eastern's intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  The Eastern/Gibson Cattle Company Fraudulent Transfers took place outside the usual mode of business.  The Eastern/Gibson Cattle Company Fraudulent Transfers were made for no consideration.

92.    Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of Eastern/Gibson Cattle Company Fraudulent Transfers made if the debtor received less than reasonably equivalent value in exchange for the Eastern/Gibson Cattle Company Fraudulent Transfers and (i) was insolvent at the time of the Eastern/Gibson Cattle Company Fraudulent Transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iii) made such Eastern/Gibson Cattle Company Fraudulent Transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

93.    Eastern received less than reasonably equivalent value in exchange for the Eastern/Gibson Cattle Company Fraudulent Transfers.

94.    Eastern was insolvent on the dates of the Eastern/Gibson Cattle Company Fraudulent Transfers.

95.    Pursuant to §§548 and 550 of the Bankruptcy Code, the Trustee can avoid and recover the value of the Eastern/Gibson Cattle Company Fraudulent Transfers from Gibson Cattle Company.

DMS_US 51283905v1

### Count VIII – Fraudulent Transfer (State Law) –Gibson Cattle Company
### (The Eastern/Gibson Cattle Company Fraudulent Transfers)

96. The Trustee incorporates by reference the allegations contained in paragraphs 1 through 95, inclusive, as if fully set forth herein.

97. Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

98. Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

99. Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/Gibson Cattle Company Fraudulent Transfers to Gibson Cattle Company. The Eastern/Gibson Cattle Company Fraudulent Transfers took place outside the usual mode of business and in a manner different than ordinary methods. The Eastern/Gibson Cattle Company Fraudulent Transfers were made for no consideration.

100. Eastern received less than reasonably equivalent value in exchange for the Eastern/Gibson Cattle Company Fraudulent Transfers.

- 16 -

101.    Eastern was insolvent on the dates of the Eastern/Gibson Cattle Company Fraudulent Transfers.

102.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid and recover the value of the Eastern/Gibson Cattle Company Fraudulent Transfers from Gibson Cattle Company.

### Count IX--Fraudulent Transfer (Bankruptcy Code) – GP Cattle
### (The Eastern/GP Cattle Fraudulent Transfers)

103.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.    Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of Eastern/GP Cattle Fraudulent Transfers that were made by the debtor with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

105.    Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/GP Cattle Fraudulent Transfers to GP Cattle.  Eastern's intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  The Eastern/GP Cattle Fraudulent Transfers took place outside the usual mode of business.  The Eastern/GP Cattle Fraudulent Transfers were made for no consideration.

106.    Alternatively, under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of Eastern/GP Cattle Fraudulent Transfers made if the debtor received less than reasonably equivalent value in exchange for the Eastern/GP Cattle Fraudulent Transfers and (i) was insolvent at the time of the Eastern/GP Cattle Fraudulent Transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iii) made such Eastern/GP Cattle Fraudulent Transfers to or for the benefit of an insider under

- 17 -

an employment contract and not in the ordinary course of business.

107.    Eastern received less than reasonably equivalent value in exchange for the Eastern/GP Cattle Fraudulent Transfers.

108.    Eastern was insolvent on the dates of the Eastern/GP Cattle Fraudulent Transfers.

109.    GP Cattle transferred a portion of the funds received from Eastern to Atkinson, Gibson Cattle Company, and Tammy through the Atkinson Transfers, the GP Cattle/Gibson Cattle Company Transfers, and the GP Cattle/Tammy Transfers.

110.    Pursuant to §§548 and 550 of the Bankruptcy Code, the Trustee can avoid and recover the value of the Eastern/Gibson Cattle Company Fraudulent Transfers from GP Cattle and the value of the Atkinson Transfers, the GP Cattle/Gibson Cattle Company Transfers, and the GP Cattle/Tammy Transfers from Atkinson, Gibson Cattle Company, and Tammy, respectively.

### Count X – Fraudulent Transfer (State Law) – GP Cattle
### (The Eastern/GP Cattle Fraudulent Transfers)

111.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 110, inclusive, as if fully set forth herein.

112.    Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became

- 18 -

due.

113.    Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

114.    Acting with actual intent to hinder, delay or defraud, Eastern made the Eastern/GP Cattle Fraudulent Transfers to GP Cattle.  The Eastern/GP Cattle Fraudulent Transfers took place outside the usual mode of business and in a manner different than ordinary methods.  The Eastern/GP Cattle Fraudulent Transfers were made for no consideration.

115.    Eastern received less than reasonably equivalent value in exchange for the Eastern/GP Cattle Fraudulent Transfers.

116.    Eastern was insolvent on the dates of the Eastern/GP Cattle Fraudulent Transfers.

117.    GP Cattle transferred a portion of the funds received from Eastern to Atkinson, Gibson Cattle Company, and Tammy through the Atkinson Transfers, the GP Cattle/Gibson Cattle Company Transfers, and the GP Cattle/Tammy Transfers.

118.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid and recover the value of the Eastern/GP Cattle Fraudulent Transfers from GP Cattle and the value of the Atkinson Transfers, the GP Cattle/Gibson Cattle Company Transfers, and the GP Cattle/Tammy Transfers from Atkinson, Gibson Cattle Company, and Tammy, respectively.

### Count XI – Disallowance of Claim Pursuant to 11 U.S.C. § 502(d)

119.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 118, inclusive, as if fully set forth herein.

120.    Gibson and GP Cattle have asserted claims against Eastern's estate.

121.     Pursuant to Section 502 (d) of the Bankruptcy Code, the Trustee requests that any claim asserted by the Defendants be disallowed for the failure to repay the avoidable transfers from Eastern to the Defendants.

WHEREFORE, the Trustee requests that the Court enter judgment in the Trustee's favor and against the defendants, and specifically award the Trustee:

(a)     damages based on the above counts;

(b)     prejudgment interest on the amounts of the transfers at the appropriate statutory rate;  and

(e)     all other appropriate relief.

- 20 -

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

/s/Harmony Mappes

*Counsel for James A. Knauer, Chapter 11 Trustee*

Kevin M. Toner (#11343-49)
Harmony Mappes (#27237-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kevin.toner@faegrebd.com
harmony.mappes@faegrebd.com

- 21 -