UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Bankruptcy Case No. 10-93904-BHL-11 |
| | ) | |
| _____ Debtor. | ) | Chapter 11 |
| | ) | |
| JAMES A. KNAUER, CHAPTER 11 | ) | |
| TRUSTEE OF EASTERN LIVESTOCK | ) | |
| CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 12- |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS SCOTT GIBSON a/k/a SCOTT | ) | |
| GIBSON, LISA GIBSON and ROYAL | ) | |
| BEEF FEED YARD, a division of IRSIK | ) | |
| AND DOLL FEED SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

James A. Knauer, as Chapter 11 Trustee for Eastern Livestock Co., LLC, for his

Adversary Complaint (the "Complaint") against Thomas Scott Gibson a/k/a Scott Gibson, Lisa

Gibson and Royal Beef Feed Yard, a division of Irsik and Doll Feed Services, Inc., states as

follows:

### Preliminary Statement

Among other things, this Complaint seeks payment or recovery of certain

property identified herein as the "Unpaid Delivered Cattle AR" and the "Delivered Cattle

Equity." The Trustee recognizes that the Counts that assert claims for payment or recovery of

the "Unpaid Delivered Cattle AR" and the "Delivered Cattle Equity" reflect alternative theories

or causes of action on which such demand for payment or recovery is based and that the Trustee is only entitled to a single recovery with respect to such claims. To the extent the Trustee succeeds on his claims for payment of the Unpaid Delivered Cattle AR from either Royal Beef or Scott, the Trustee will not have any claims to the Delivered Cattle Equity.

### Jurisdiction and Parties

1.      The above-captioned adversary proceeding (the "Adversary Proceeding") arises in and is related to the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court") presided over by the Honorable Basil H. Lorch III (the "Bankruptcy Judge").

2.      This Adversary Proceeding is filed pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.      This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6.      Eastern Livestock Co., LLC ("Debtor" or "ELC") was one of the largest cattle dealers in the United States. ELC was headquartered in New Albany, Indiana, with branch locations across several states. Certain petitioning creditors commenced the Chapter 11 Case on December 6, 2010 (the "Petition Date") by filing an involuntary petition for relief under the Bankruptcy Code. The Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

DMS_US 51300076v4

7.      James A. Knauer ("Trustee") was appointed as the Chapter 11 Trustee for ELC.

8.      The Trustee consents to the entry of final orders or judgments by the Bankruptcy Judge.

9.      Defendant Thomas Scott Gibson a/k/a Scott Gibson ("Scott") is an individual residing at 4906 Prall Hill Road, Henryville, Indiana 47126.  Scott was the Manager of ELC Branch 35 located in Henryville, Indiana ("Branch 35") that reported to Thomas P. Gibson.

10.      Defendant Lisa Gibson is an individual residing at 4906 Prall Hill Road, Henryville, Indiana 47126 and is married to Scott.  Lisa Gibson is named as a defendant in this Adversary to assert any claim she may have to the cattle and proceeds at issue herein.

11.      Defendant Royal Beef Feed Yard ("Royal Beef") is a division of Irsik & Doll Feed Services, Inc., a corporation organized under the laws of the State of Kansas with a principal place of business located at 200 South Main Street, Cimarron, Kansas 67835.

12.      Scott is an insider within the meaning of Section 101(31) of the Bankruptcy Code.  Scott is the son of Thomas P. Gibson ("TPG") and Patsy M. Gibson ("PMG").  TPG is the President of ELC.  Further, TPG and PMG are the managers of ELC.  TPG owns approximately 66.67% of ELC's Class A membership units and approximately 61% of ELC's Class B membership units.  Patsy owns 0.04% of the Class B membership units.

13.      Further, Scott was a cattle buyer for ELC and a branch manager for Branch 35 and thereby had authority to make business decisions for ELC and had access to insider information.  As branch manager, Scott was entrusted by ELC with field checks that he

could complete and sign on ELC's behalf.  Transactions between ELC and Scott were not conducted at arms length.

### Background Facts Applicable to All Counts

14.     In his capacity as branch manager for ELC Branch 35, Scott bought and sold cattle on ELC's behalf.  He was compensated by payment of a commission on the cattle bought and sold on ELC's account.  He was also compensated by a salary for his duties as Manager of Branch 35.

15.     As a branch manager, Scott was entrusted by ELC with responsibility for buying and selling cattle on behalf of ELC.  Scott owed fiduciary obligations to ELC in the proper exercise of the right to buy and sell cattle on behalf of ELC.  Reconciliation of ELC's records and the Branch 35 accounts in particular show approximately $361,592.89 worth of real cattle in the Branch 35 inventory, for which Scott was responsible, that remain missing and for which ELC never received payment (the "Missing Cattle"). A chart detailing the Missing Cattle is attached hereto as **Exhibit A**.

16.     Scott also bought and sold cattle for himself, on his own account.  These transactions included purchases from ELC.

17.     Upon information and belief, and at Scott's request, ELC delivered cattle to Royal Beef (the "Delivered Cattle") and sent invoices to Royal Beef for payment of the Delivered Cattle.

18.     Pursuant to the Trustee's review of relevant books and records, the Trustee understands that Royal Beef would customarily pay ELC only a portion of the invoiced amounts for the Delivered Cattle.  The remaining amounts owed, pursuant to the customary course of dealing, would either be credited off by ELC or paid at a later date by Scott.

DMS_US 51300076v4

19.     To date, the Trustee has discovered that ELC delivered at Scott's direction no less than $580,107.61 worth of Delivered Cattle to Royal Beef in the year prior to the Petition Date.  The Trustee has only been able to substantiate ELC's receipt of $330,600.48 in payments made to ELC on account of the Delivered Cattle.  Accordingly, the Trustee believes, and therefore alleges, that no less than $249,506.83 remains due and owing to ELC on account of ELC's delivery of the Delivered Cattle per Scott's direction (plus any other unpaid amounts discovered after the filing of this Complaint, the "Unpaid Delivered Cattle AR").

20.     Although ELC's delivery of Delivered Cattle to Royal Beef per Scott's direction appears to have been invoiced as a sale to Royal Beef, the Trustee has discovered documentation indicating that the Delivered Cattle were actually transferred to Scott before being delivered to Royal Beef.

21.     The documentation evidences that Scott borrowed funds from Irsik & Doll Feed Services, Inc. (the parent company of Royal Beef) pursuant to loan agreements executed by and between Scott and Irsik & Doll Feed Services, Inc. (the "Scott/Royal Beef Loan Documents") and used the loan proceeds to make partial payments on the Delivered Cattle to ELC.  Pursuant to the Scott/Royal Beef Loan Documents, Scott purported to grant Royal Beef a security interest in the Delivered Cattle.  Royal Beef fed and cared for the Delivered Cattle – its collateral – until such time as the Delivered Cattle were resold to a subsequent buyer.  Copies of the Scott/Royal Beef Loan Documents available to the Trustee are attached hereto as **Group Exhibit B** and are incorporated by reference herein.

22.     By his execution of the Scott/Royal Beef Loan Documents, Scott represented that he owned the Delivered Cattle.

- 5 -

23. Upon information and belief, Royal Beef took possession of the Delivered Cattle, fed the Delivered Cattle, and subsequently sold the Delivered Cattle, resulting in proceeds (the "Delivered Cattle Proceeds") sufficient to pay at least Royal Beef's feed bills, the costs of caring for the Delivered Cattle and all principal and interest on Scott's loan obligations to Royal Beef.

24. Upon information and belief, the sale of the Delivered Cattle resulted in additional Delivered Cattle Proceeds after payment of Royal Beef's feed bills, the costs of caring for the Delivered Cattle and all principal and interest on Scott's loan obligations to Royal Beef (the "Delivered Cattle Equity").

25. Upon information and belief, Royal Beef transferred the Delivered Cattle Equity to Scott by one or more checks delivered to Scott and cashed by Scott on or within two years of the Petition Date. Some of the Delivered Cattle Equity was transferred to ELC and applied, pursuant to Scott's direction, to reduce the Unpaid Delivered Cattle AR. Other Delivered Cattle Equity was never transferred to ELC.

26. Upon information and belief, Royal Beef transferred no less than $18,582.03 in Delivered Cattle Equity to Scott within two years of the Petition Date that was never transferred to ELC.

27. Upon information and belief, and based upon the parties' prior course of dealings, the Trustee believes and therefore alleges that neither Royal Beef nor Scott has remitted the Unpaid Delivered Cattle AR or the Delivered Cattle Equity to ELC.

28. Upon information and belief, and at or around the time that a receiver was appointed to operate ELC's business, Scott removed, altered and/or destroyed certain records and documents that belonged to ELC.

- 6 -

**Count I**
**(Breach of Contract for Unpaid Delivered Cattle AR)**

29.    The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.    Upon information and belief, ELC delivered the Delivered Cattle to Scott or Royal Beef per Scott's direction.

31.    Despite receiving the Delivered Cattle, Royal Beef and Scott have refused to pay ELC or the Trustee for the full amounts due and owing to ELC for the Delivered Cattle.

32.    Royal Beef or Scott is in breach of contract between the parties for failing to pay the Unpaid Delivered Cattle AR in the amount of no less than $225,506.83 plus accruing interest.

33.    All conditions precedent to the Trustee's recovery of the Unpaid Delivered Cattle AR from Royal Beef or Scott have been performed, are excused or have been waived.

34.    ELC's estate has been damaged as a direct result of Royal Beef or Scott's failure to pay the Unpaid Delivered Cattle AR.

**Count II**
**(Conversion of Delivered Cattle Equity)**

35.    This Count II is in the alternative to Count I.

36.    The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.    To the extent ELC retained title to the Delivered Cattle after their delivery to Scott or Royal Beef, ELC is entitled to the Delivered Cattle Equity.

38.    Upon information and belief, Scott and/or Royal Beef knowingly and intentionally exerted unauthorized control over the Delivered Cattle Equity (and any other assets

- 7 -

of ELC discovered after the filing of this Complaint to have been converted by Scott), all to the detriment of ELC's estate by the value of the Delivered Cattle Equity in an amount not less than $18,582.03 (and any other assets of ELC discovered after the filing of this Complaint to have been converted by Scott or Royal Beef), trebled to the extent possible under Indiana's Civil Damages for Criminal Conduct Statute, § 34-24-3-1, *et seq.*, and under statutes in other states where applicable.

### Count III
### (Conversion of Missing Cattle)

39.     The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     Upon information and belief, Scott knowingly and intentionally exerted unauthorized control over the Missing Cattle and/or any proceeds of the Missing Cattle (and any other assets of ELC discovered after the filing of this Complaint to have been converted by Scott), all to the detriment of ELC's estate by the value of the Missing Cattle in an amount not less than $361,718.68 (and any other assets of ELC discovered after the filing of this Complaint to have been converted by Scott), trebled to the extent possible under Indiana's Civil Damages for Criminal Conduct Statute, § 34-24-3-1, *et seq.*, and under statutes in other states where applicable.

### Count IV
### (Liability of Bailee (Scott) for Missing Cattle)

41.     The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     Upon information and belief, ELC purchased the Missing Cattle and entrusted them to Scott as manager of Branch 35.

- 8 -

43.     Scott received the Missing Cattle, which were actual ELC cattle, at Branch 35 for which he failed to account in the amount of not less than $361,718.68.

44.     Scott was in charge of the Missing Cattle (and/or any cattle of ELC discovered after the filing of this Complaint to have been located at Branch 35 and/or entrusted to Scott) as manager of Branch 35.  Scott is liable to the Trustee for the value of the Missing Cattle.

## Count V
### (Breach of Fiduciary Duties Owed ELC by Scott)

45.     The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.     Based upon his position of trust as Manager of Branch 35 and his authority to buy and sell cattle on behalf of ELC, Scott owed fiduciary obligations to ELC.

47.     Upon information and belief, without authority and contrary to his fiduciary obligations to ELC, Scott converted ELC assets to the detriment of ELC.

48.     Upon information and belief, without authority and contrary to his fiduciary obligations to ELC, Scott removed, altered and/or destroyed books and records of ELC, all to the detriment of ELC.

49.     Upon information and belief, without authority and contrary to his fiduciary obligations to ELC, Scott diverted and/or misappropriated certain payments on accounts receivable owed to ELC and used the money for unauthorized purposes.

50.     Scott is liable to the Trustee for the damages caused by his breach of fiduciary duty to ELC.

DMS_US 51300076v4

**Allegations Common to Counts VI, VII and VIII**

51.     Within two years prior to the Petition Date, Scott received the transfers set forth in **Exhibit C** hereto (collectively, the "Peoples Bank Transfers").  The Peoples Bank Transfers total no less than $61,450.57.

52.     Upon information and belief, the Peoples Bank Transfers were used by Scott to repay certain obligations owing to Peoples Bank & Trust of Pickett County by Scott individually.

53.     Upon information and belief, ELC received no consideration for the Peoples Bank Transfers.

54.     Within two years prior to the Petition Date, and upon information and belief, Scott also received transfers of the Missing Cattle, the Delivered Cattle and/or the Delivered Cattle Equity (the "Other Transfers").

**Count VI**
**(Avoidance of Fraudulent Transfers (11 U.S.C. § 548(a)(1)(A)) from Scott)**

55.     The Trustee hereby incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.     To the extent Scott received the Other Transfers, Scott received property of ELC for less than reasonably equivalent value that the Trustee may avoid and recover under Bankruptcy Code §§ 548 and 550.

57.     Further, Scott received the Peoples Bank Transfers for less than reasonably equivalent value that the Trustee may avoid and recover under Bankruptcy Code §§ 548 and 550.

58.     Under §§ 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers that were made by the Debtor with actual intent to hinder, delay, or defraud

- 10 -

any entity to which the Debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

59.     The Trustee is informed and believes and, based thereon, alleges that ELC made the Peoples Bank Transfers or caused the Peoples Bank Transfers to be made with the actual intent to hinder, delay, or defraud one or more of the Debtor's creditors.

60.     The Trustee is informed and believes and, based thereon, alleges that Scott, as an agent of ELC and/or in his individual capacity, caused the Other Transfers to be made to or for the benefit of Scott with the actual intent to hinder, delay, or defraud one or more of Debtor's creditors.

61.     The Trustee is entitled to avoid and recover the value of the Peoples Bank Transfers and the value of the Other Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott under Sections 544 and 548(a)(1)(A) of the Bankruptcy Code.

## Count VII
## (Avoidance of Transfers as Fraudulent Transfers (11 U.S.C. § 548(a)(1)(B)) from Scott)

62.     This Count VII is in the alternative to Count VI.

63.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 62 of this Complaint, inclusive, as if fully set forth herein.

64.     Under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid the value of transfers made by or on account of Debtor if Debtor received less than reasonably equivalent value in exchange for the transfers and Debtor (i) was insolvent at the time of the transfers or became insolvent as a result of any transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with Debtor was unreasonably small; (iii) intended to incur or believed that it would

- 11 -

incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

65.     ELC received less than reasonably equivalent value in exchange for the Peoples Bank Transfers and the Other Transfers to Scott.

66.     ELC was insolvent on the date Scott received each of the Peoples Bank Transfers and the Other Transfers because the value of ELC's assets at a fair valuation was less than the sum of its debts on the date of each of the transfers.

67.     The Peoples Bank Transfers and the Other Transfers were transferred to Scott within two (2) years of the Petition Date.

68.     The Trustee is entitled to avoid and recover the value of the Peoples Bank Transfers and the Other Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott under Section 548(a)(1)(B) of the Bankruptcy Code.

**Count VIII**
**(Fraudulent Transfer (Indiana Code))**

69.     This Count VIII is in the alternative to Counts VI and VII.

70.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 69 of this Complaint, inclusive, as if fully set forth herein.

71.     To the extent Scott received the Peoples Bank Transfers and/or the Other Transfers, he received property for less than reasonably equivalent value under I.C. § 32-18-2-15 and potentially in violation of I.C. § 32-18-2-14 if received with the intent to hinder delay or defraud creditors.

72.     Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

73.     Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

74.     Upon information and belief, acting with actual intent to hinder, delay or defraud, Scott caused ELC to transfer the Peoples Bank Transfers and/or the Other Transfers to him or to others at his direction.

75.     The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  Upon information and belief, Scott destroyed many books and records relating to the Peoples Bank Transfers and/or the Other Transfers in order to make the transactions secret and difficult to trace.

76.     Upon information and belief, the Peoples Bank Transfers were made for no consideration and the Other Transfers were made for little or insufficient consideration.

77.     ELC received less than reasonably equivalent value in exchange for the Peoples Bank Transfers and/or the Other Transfers.

78.     Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid and recover the value of the Peoples Bank Transfers and/or the Other Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott.

**Count IX**
**(Avoidance of Transfers as Fraudulent Transfers (11 U.S.C. § 548(a)(1)(B)) from Royal Beef)**

79.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 78 of this Complaint, inclusive, as if fully set forth herein.

80.     Under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid the value of transfers made by or on account of Debtor if Debtor received less than reasonably equivalent value in exchange for the transfers and Debtor (i) was insolvent at the time of the transfers or became insolvent as a result of any transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with Debtor was unreasonably small; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

81.     To the extent the transfers of the Delivered Cattle were sales to Royal Beef, Royal Beef received transfers of the Delivered Cattle within two years prior to the Petition Date (the "Royal Beef Transfers").

82.     ELC received less than reasonably equivalent value in exchange for the Royal Beef Transfers to Royal Beef.

- 14 -

83.    ELC was insolvent on the date Royal Beef received each of the Royal Beef Transfers because the value of ELC's assets at a fair valuation was less than the sum of its debts on the date of each of the transfers.

84.    The Trustee is entitled to avoid and recover the value of the Royal Beef Transfers (and any other avoidable transfers to Royal Beef discovered after the date of the filing of this Complaint) from Royal Beef under Section 548(a)(1)(B) of the Bankruptcy Code.

### Allegations Common to Counts X -- XV

85.    On at least one occasion and/or from time to time and occurring within one year prior to the Petition Date, Scott (i) sold one or more head of cattle to ELC or its affiliates either directly to ELC as the owner of the cattle or through the terms of a consigned sale, and (ii) provided other goods and services to ELC or its affiliates.

86.    Section 101(54) of the Bankruptcy  Code applicable to this Adversary Proceeding defines "transfer" as, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

87.    The Trustee is informed and believes and, based thereon, alleges that in satisfaction of ELC obligations to Scott, ELC made transfers of property from ELC deposit accounts and/or accounts under the control of ELC and/or the transfer of cattle or other personal property to Scott on or within one year prior to the Petition Date, that is between December 6, 2009 and December 5, 2010, inclusive, in the aggregate sum of $94,414.52 (the "Preference Period Transfers") in the sums, form of payment, and on or around the dates as reflected on **Exhibit D**, attached hereto and made part hereof.

- 15 -

88.     The Trustee is unable to determine if the Preference Period Transfers are subject to the defenses to the avoidance of transfers as set forth in 11 U.S.C. § 547(c).

89.     The Preference Period Transfers were transfers of interests of ELC's property.

90.     The Preference Period Transfers to Scott were made while ELC was insolvent.

## Count X
## (Avoidance of Preference Period Transfers As Preferential Transfers (11 U.S.C. § 547(b)))

91.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 90, inclusive, as if fully set forth herein.

92.     The Trustee is informed and believes and, based thereon, alleges that the Preference Period Transfers were made to Scott for the benefit of Scott, who was a creditor of Debtor at the time of the Preference Period Transfers, respectively, as the term creditor is defined by Section 101(10) of the Bankruptcy Code.

93.     The Trustee is informed and believes and, based thereon, alleges that the Preference Period Transfers were transfers of interests of Debtor in property.

94.     The Trustee is informed and believes and, based thereon, alleges that the Preference Period Transfers were made for or on account of one or more antecedent debts owed by Debtor to Scott prior to the date on which the Preference Period Transfers respectively were made.

95.     The Trustee is informed and believes and, based thereon, alleges at the time of each of the Preference Period Transfers, Scott had a right to payment on account of an obligation owed to Scott by Debtor.

- 16 -

96.     The Trustee is informed and believes, and based thereon, alleges that the Preference Period Transfers were made while ELC was insolvent because the value of ELC's assets at a fair valuation was less than the sum of its debts.  As a result of the Preference Period Transfers, Scott received more than Scott would have received if (a) Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the respective Preference Period Transfers had not been made; and (c) Scott had received payment to the extent provided by chapter 7 of the Bankruptcy Code.

97.     The Trustee is entitled to an order and judgment under Section 547(b) of the Bankruptcy Code avoiding the Preference Period Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint).

**Count XI**
**(Avoidance of Preference Period Transfers as Fraudulent Transfers (11 U.S.C. §**
**548(a)(1)(A)))**

98.     This Count XI is in the alternative to Count X.

99.      The Trustee incorporates by reference the allegations contained in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    The Trustee is informed and believes and, based thereon, alleges that Debtor made the Preference Period Transfers to Scott or caused the Preference Period Transfers to be made to Scott with the actual intent to hinder, delay, or defraud one or more of Debtor's creditors.

101.    The Trustee is entitled to avoid and recover the value of the Preference Period Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott under Sections 544 and 548(a)(1)(A) of the Bankruptcy Code.

- 17 -

DMS_US 51300076v4

**Count XII**
**(Avoidance of Preference Period Transfers as Fraudulent Transfers (11 U.S.C. §**
**548(a)(1)(B)))**

102.   This Count XII is in the alternative to Counts X and XI.

103.   The Trustee incorporates by reference the allegations contained in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.   Under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid the value of Preference Period Transfers made if Debtor received less than reasonably equivalent value in exchange for the Preference Period Transfers and Debtor (i) was insolvent at the time of the Preference Period Transfers or became insolvent as a result of any of the Preference Period Transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with Debtor was unreasonably small; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

105.   ELC received less than reasonably equivalent value in exchange for the Preference Period Transfers.

106.   Debtor was insolvent on the date Scott received each of the Preference Period Transfers.

107.   The Preference Period Transfers were made within two (2) years of the Petition Date.

108.   The Trustee is entitled to avoid and recover the value of the Preference Period Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott under Section 548(a)(1)(B) of the Bankruptcy Code.

- 18 -

## Count XIII
## (Fraudulent Transfer (Indiana Code))

109.    This Count XIII is in the alternative to Counts X, XI and XII.

110.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 109 of this Complaint, inclusive, as if fully set forth herein.

111.    To the extent Scott received the Preference Period Transfers, he received property for less than reasonably equivalent value under I.C. § 32-18-2-15 and potentially in violation of I.C. § 32-18-2-14 if received with the intent to hinder delay or defraud creditors.

112.    Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

113.    Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

114.    Upon information and belief, acting with actual intent to hinder, delay or defraud, Scott caused ELC to transfer the Preference Period Transfers to him or to others at his direction.

115.    The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions.  Upon information and belief, Scott destroyed many books and records relating to the Preference Period Transfers in order to make the transactions secret and difficult to trace.

116.    Upon information and belief, the Preference Period Transfers were made for minimal or no consideration.

117.    ELC received less than reasonably equivalent value in exchange for the Preference Period Transfers.

118.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid and recover the value of the Preference Period Transfers (and any other avoidable transfers to Scott discovered after the date of the filing of this Complaint) from Scott.

**Count XIV**
**(Recovery of Avoided Transfers (11 U.S.C. § 550)**

119.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 118, inclusive, as if fully set forth herein.

120.    The Trustee is informed and believes and, based thereon, alleges that the Trustee is entitled to avoid the Peoples Bank Transfers, the Other Transfers and the Preference Period Transfers from Scott and/or the Royal Beef Transfers from Royal Beef under Sections 544, 547(b), 548(a)(1)(A) or 548(a)(1)(B) of the Bankruptcy Code, and recover for the benefit of Debtor's estate, the proceeds or the value of the Peoples Bank Transfers, the Other Transfers and the Preference Period Transfers from Scott and/or the Royal Beef Transfer from Royal Beef, or any immediate or mediate transferee of Scott or Royal Beef, or any of them, under Section 550(a)(1) of the Bankruptcy Code.

DMS_US 51300076v4

**Count XV**
**(For Disallowance of Claims Pursuant to 11 U.S.C. § 502(d))**

121.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 120, inclusive, as if fully set forth herein.

122.    The Trustee is informed and believes, and based thereon, alleges that Scott and Royal Beef may assert claims against Debtor's estate.

123.    Pursuant to Section 502(d) of the Bankruptcy Code, the Trustee requests that any claims asserted by Scott and Royal Beef be disallowed for the failure to repay the Peoples Bank Transfers, the Other Transfers, the Preference Period Transfers and/or the Royal Beef Transfers and/or turn over the Delivered Cattle Equity to the Trustee.

WHEREFORE, the Trustee requests that the Court enter judgment in the Trustee's favor and against Scott and/or Royal Beef as follows:

A.    a money judgment against Royal Beef for the Unpaid Delivered Cattle AR based upon Count I above to the extent the delivery of the Delivered Cattle were sales to Royal Beef or a money judgment against Scott for the Unpaid Delivered Cattle AR to the extent the delivery of the Delivered Cattle were sales to Scott or a money judgment against Scott and/or Royal Beef for the value of the Delivered Cattle Equity to the extent ELC retained title to the Delivered Cattle after their delivery to Royal Beef;

B.    a money judgment against Scott for the value of the Missing Cattle;

C.    a money judgment against Scott in an amount to be determined at trial on account of Count V;

D.    prejudgment interest on the amounts determined to be owed at the appropriate statutory rate;

- 21 -

E.      attorneys' fees and costs;

F.      punitive or treble damages where appropriate;

G.      disallowing any and all claims of Scott and Royal Beef against Debtor's estate under Section 502(d) of the Bankruptcy Code;

H.      declaring that the transfers identified herein are avoided and set aside as preferences under Section 547 of the Bankruptcy Code or as fraudulent transfers under Sections 544 and 548(a)(1)(A) and (B);

I.      directing and ordering that Scott or Royal Beef, or any immediate or mediate transferee of Scott or Royal Beef, turn over to the Trustee the full sum of the proceeds or value of the transfers identified herein (and any other avoided transfers within the meaning of Section 101(54) of the Bankruptcy Code discovered after the date of this Complaint and avoided) pursuant to Section 550 of the Bankruptcy Code;

J.      post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

K.      Such other and further relief as is necessary and proper.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP


By: /s/ Dustin R. DeNeal

Wendy W. Ponader (#14633-49)              *Counsel for James A. Knauer, Chapter 11 Trustee*
600 E. 96th Street, Suite 600
Indianapolis, Indiana 46240
Telephone: (317) 569.9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)

Harmony Mappes (#27237-49)
Dustin R. DeNeal (#27535-49)
Kayla D. Britton (#29177-06)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
terry.hall@faegrebd.com
kevin.toner@faegrebd.com
harmony.mappes@faegrebd.com
dustin.deneal@faegrebd.com
kayla.britton@faegrebd.com

DMS_US 51300076v4