**GROUP EXHIBIT B**



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

# IRSIK & DOLL FEED SERVICES, INC.

### PROMISSORY NOTE AGREEMENT

| FEED YARD PEN NUMBER | NOTE NUMBER | CUST. NO. |
|---|---|---|
| RB#513-9617 | 17379 | 1787 |

| DEBTOR'S NAME & ADDRESS | PRINCIPAL AMOUNT | DATE OF NOTE |
|---|---|---|
| Thomas S & Lisa Gibson<br>4906 Prall Hill<br>Henryville, IN 47126 | $**24,683.27 | 8/28/2010 |
| | MATURITY DATE<br>2/14/2011 | INTEREST RATE PER ANNUM<br>6.00% |

On or before February 14, 2011    , I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above.  This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group.  Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**                    **DEBTOR SIGNATURES**

| IRSIK & DOLL FEED SERVICES, INC.<br><br>BOX 847<br><br>CIMARRON, KS 67835<br><br>PAID __2-23-11__<br>LOT # __9617__<br>PRINCIPAL __24,683.27__<br>INTEREST __722.24__ | I (We) agree to the terms of this Promissory Note.  I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose.<br><br>X _Thomas S. Gibson_ ........ _9/24/10_<br>(name)        (title)        (date)<br><br>X _Lisa Gibson_ ........ _9/24/10_<br>(name)        (title)        (date)<br><br>X ...............................................<br>(name)        (title)        (date) |

## SECURITY AGREEMENT

Date August 28, 2010

| | |
|---|---|
| Thomas S & Lisa Gibson | 4906 Prall Hill |
| (Name) | (Street Address) |
| Henryville | Indiana |
| (City)                    (County) | (State) |

hereinafter call "Debtor," hereby grants to Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS  67835 hereinafter called "Secured Party," a security interest in the following described property:

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls; Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott  Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated August 28, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**24,683.27 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES.  Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.  The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS.  No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party.  In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE.  Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard.  The parties acknowledge that costs of such Insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE.  Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party.  Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES.  At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon.  Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL.  Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW.  The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas.  The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

EBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   - ☐ Personal, family or household purposes
   - ☑ Farming operations
   - ☐ Business other than farming operations

2. The Collateral is

☐ Now owned by the Debtor

■ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is

☐ At the address shown above

■ At     4906 Prall Hill            Henryville         Indiana
          (Street Number)                (City)          (State)

4. The Collateral will be kept at

☐ Debtor's residence as shown above

■ At     11060 N Falcon Road        Scott City         Kansas
          (Street Number)                (City)          (State)

5. Debtor's chief place of business is

☐ In the county of Debtor's residence

■ At     4906 Prall Hill            Henryville         Indiana
          (Street Number)                (City)          (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is: ___ Indiana ___ .

EVENTS OF DEFAULT. Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES. Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to: 1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.
By _____
     (Name)           (Title)

DEBTOR:
X _Thom S. Gil_____
      (Name)
X _Lisa Gibson_____
      (Name)

_____
(Corporate or partnership name)

By _____
    ( Name)             (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

# IRSIK & DOLL FEED SERVICES, INC.

| PROMISSORY NOTE AGREEMENT | | |
|---|---|---|
| FEED YARD PEN NUMBER RB#24-9607-40-9613 | NOTE NUMBER 17302 | CUST. NO. 1787 |

| DEBTOR'S NAME & ADDRESS | PRINCIPAL AMOUNT $**44,286.76 | DATE OF NOTE 8/25/2010 |
|---|---|---|
| Thomas S & Lisa Gibson 4906 Prall Hill Henryville, IN 47126 | MATURITY DATE 4/02/2011 | INTEREST RATE PER ANNUM 6.00% |

On or before April 02, 2011, I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above. This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group. Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**                    **DEBTOR SIGNATURES**

IRSIK & DOLL FEED SERVICES, INC.    PAID  3.31.11

BOX 847                                              LOT #  9607
                                                           PRINCIPAL 21,342.94
CIMARRON, KS 67835                       INTEREST  740.03

PAID  2.7-11
LOT #  9613
PRINCIPAL  22,943.87
INTEREST  625.99

I (We) agree to the terms of this Promissory Note. I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose.

X  _Thomas GD_ ........  9/5/10
(name)          (title)          (date)

X  _Lisa Gibson_ ........  9-5-10
(name)          (title)          (date)

X ............................................................
(name)          (title)          (date)

## SECURITY AGREEMENT

Date August 25, 2010

| Thomas S & Lisa Gibson | | 4906 Prall Hill | |
| (Name) | | (Street Address) | |
| Henryville | | Indiana | |
| (City) | (County) | (State) | |

hereinafter call "Debtor," hereby grants to Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS  67835 hereinafter called "Secured Party," a security interest in the following described property:

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls, Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott  Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral."  Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated August 25, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**44,286.76 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES.  Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.  The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS.  No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party.  In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE.  Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard.  The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE.  Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party.  Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES.  At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon.  Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL.  Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW. The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas.  The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

## DEBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   ☐ Personal, family or household purposes
   ■ Farming operations
   ☐ Business other than farming operations

2. The Collateral is
   ☐ Now owned by the Debtor
   ☑ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is
   ☐ At the address shown above
   ☑ At ___4906 Prall Hill___         ___Henryville___        ___Indiana___
      (Street Number)                  (City)                  (State)

4. The Collateral will be kept at
   ☐ Debtor's residence as shown above
   ☑ At ___11060 N Falcon Road___     ___Scott City___        ___Kansas___
      (Street Number)                  (City)                  (State)

5. Debtor's chief place of business is
   ☐ In the county of Debtor's residence
   ☑ At ___4906 Prall Hill___         ___Henryville___        ___Indiana___
      (Street Number)                  (City)                  (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is: ___Indiana___

EVENTS OF DEFAULT. Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES. Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to: 1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.

By _____  _____
      (Name)                        (Title)

DEBTOR:

X _____
      (Name)

_____
      (Name)

_____
(Corporate or partnership name)

By _____  _____
      ( Name)                      (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

## IRSIK & DOLL FEED SERVICES, INC.

### PROMISSORY NOTE AGREEMENT

| FEED YARD/PEN NUMBER RB#544-9598 | NOTE NUMBER 17289 | CUST. NO. 1787 |
|---|---|---|

| DEBTOR'S NAME & ADDRESS | PRINCIPAL AMOUNT $**24,059.74 | DATE OF NOTE 8/20/2010 |
|---|---|---|
| Thomas S & Lisa Gibson 4906 Prall Hill Henryville, IN  47126 | MATURITY DATE 2/02/2011 | INTEREST RATE PER ANNUM 6.00% |

On or before February 02, 2011    , I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above.  This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group.  Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**                        **DEBTOR SIGNATURES**

| IRSIK & DOLL FEED SERVICES, INC. BOX 847 CIMARRON, KS 67835 PAID 2-1-11 LOT # 9598 PRINCIPAL 24,059.74 INTEREST 65654 | I (We) agree to the terms of this Promissory Note.  I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose. X _Thomas S. Gib_ 8/31/10 (name)        (title)        (date) X _Lisa Gibson_ 8/31/10 (name)        (title)        (date) X ................................................ (name)        (title)        (date) |
|---|---|

**SECURITY AGREEMENT**

**Date** August 20, 2010

| | |
|---|---|
| Thomas S & Lisa Gibson | 4906 Prall Hill |
| (Name) | (Street Address) |
| Henryville | Indiana |
| (City) | (County)                      (State) |

hereinafter call "Debtor," hereby grants to Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS  67835 hereinafter called "Secured Party," a security interest in the following described property:

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls; Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott  Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated August 20, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**24,059.74 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES.  Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.  The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS.  No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party.  In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE.  Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard.  The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE.  Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party.  Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES.  At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon.  Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL.  Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW.  The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas.  The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

## DEBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for

☐ Personal, family or household purposes

☑ Farming operations

☐ Business other than farming operations

2. The Collateral is

☐ Now owned by the Debtor

■ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is

☐ At the address shown above

■ At _____4906 Prall Hill_____  _____Henryville_____  _____Indiana_____
        (Street Number)        (City)        (State)

4. The Collateral will be kept at

☐ Debtor's residence as shown above

■ At _____11060 N Falcon Road_____  _____Scott City_____  _____Kansas_____
        (Street Number)        (City)        (State)

5. Debtor's chief place of business is

☐ In the county of Debtor's residence

■ At _____4906 Prall Hill_____  _____Henryville_____  _____Indiana_____
        (Street Number)        (City)        (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is: _____Indiana_____.

EVENTS OF DEFAULT.  Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES.  Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made.  The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to:  1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.
By _____
    (Name)        (Title)

DEBTOR:
X _Thomas L. Gibson_
    (Name)

X _Lisa Gibson_
    (Name)

_____
(Corporate or partnership name)

By _____
    ( Name)        (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

# IRSIK & DOLL FEED SERVICES, INC.

## PROMISSORY NOTE AGREEMENT

| FEED YARD PEN NUMBER<br>RB#546-9500 | NOTE NUMBER<br>16995 | | CUST. NO.<br>1787 |
|---|---|---|---|
| DEBTOR'S NAME & ADDRESS<br><br>Thomas S & Lisa Gibson<br>4906 Prall Hill<br>Henryville, IN  47126 | PRINCIPAL AMOUNT<br>$**43,509.41 | | DATE OF NOTE<br>5/26/2010 |
| | MATURITY DATE<br>10/26/2010 | | INTEREST RATE<br>PER ANNUM<br>6.00% |

On or before <u>October 26, 2010</u>, I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above.  This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group.  Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**                    **DEBTOR SIGNATURES**

| IRSIK & DOLL FEED SERVICES, INC.<br><br>BOX 847<br><br>CIMARRON, KS 67835<br><br>PAID___9-16-10___<br>LOT #___9509___<br>PRINCIPAL-43,509.41<br>INTEREST----815.36 | I (We) agree to the terms of this Promissory Note.  I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose.<br><br>X..._(signature)_...   ...   7/27/10<br>(name)        (title)        (date)<br><br>X..._Lisa Gibson_...   ...   7/27/10<br>(name)        (title)        (date)<br><br>X...................................................<br>(name)        (title)        (date) |

**SECURITY AGREEMENT**

**Date** May 26, 2010

Thomas S & Lisa Gibson      4906 Prall Hill
(Name)      (Street Address)
Henryville      Indiana
(City)      (County)      (State)

hereinafter call "Debtor," hereby grants to Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS  67835 hereinafter called "Secured Party," a security interest in the following described property:

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls; Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated May 26, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**43,509.41 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES. Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein. The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS. No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party. In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE. Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard. The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE. Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party. Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES. At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon. Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL. Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW. The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas. The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

**DEBTOR FURTHER WARANTS AND COVENANTS:**

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   ☐ Personal, family or household purposes
   ■ Farming operations
   ☐ Business other than farming operations

2. The Collateral is
   ■ Now owned by the Debtor
   ☐ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is
   ☐ At the address shown above
   ■ At    4906 Prall Hill            Henryville              Indiana
           (Street Number)           (City)                  (State)

4. The Collateral will be kept at
   ☐ Debtor's residence as shown above
   ■ At    11060 N Falcon Road        Scott City              Kansas
           (Street Number)           (City)                  (State)

5. Debtor's chief place of business is
   ☐ In the county of Debtor's residence
   ■ At    4906 Prall Hill            Henryville              Indiana
           (Street Number)           (City)                  (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is:    Indiana    .

EVENTS OF DEFAULT.   Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES.  Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made.  The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to:  1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:                              DEBTOR:
Irsik & Doll Feed Services, Inc.
                                            X _Warren E 7?_
                                                (Name)
                                            X _Lisa Gibson_
X _____  _____                      (Name)
   (Name)        (Title)
                                            _____
                                            (Corporate or partnership name)

                                            By _____
                                               ( Name)                (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

## IRSIK & DOLL FEED SERVICES, INC.

### PROMISSORY NOTE AGREEMENT

| FEED YARD PEN NUMBER RB#H10-9495 | NOTE NUMBER 16955 | CUST. NO. 1787 |
|---|---|---|

| DEBTOR'S NAME & ADDRESS | | |
|---|---|---|
| Thomas S & Lisa Gibson 4906 Prall Hill Henryville, IN 47126 | PRINCIPAL AMOUNT $**23,474.52 | DATE OF NOTE 5/05/2010 |
| | MATURITY DATE 10/02/2010 | INTEREST RATE PER ANNUM 6.00% |

On or before <u>October 02, 2010</u>, I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above. This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group. Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**          **DEBTOR SIGNATURES**

| IRSIK & DOLL FEED SERVICES, INC. BOX 847 CIMARRON, KS 67835 PAID 9·30·10 LOT # 9495 PRINCIPAL 23,474.52 INTEREST 571.11 | I (We) agree to the terms of this Promissory Note. I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose. X *Thomas S. Gibson* 5/17/10 (name) (title) owner (date) X *Lisa Gibson* 5/17/10 (name) (title) owner (date) X............................................ (name) (title) (date) |

### SECURITY AGREEMENT

Date May 05, 2010

| Thomas S & Lisa Gibson | | 4906 Prall Hill | |
| (Name) | | (Street Address) | |
| Henryville | | | Indiana |
| (City) | (County) | | (State) |

**hereinafter call "Debtor," hereby grants to** Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS 67835 **hereinafter called "Secured Party," a security interest in the following described property:**

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls; Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated May 05, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**23,474.52 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES. Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein. The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS. No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party. In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE. Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard. The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE. Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party. Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES. At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon. Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL. Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW. The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas. The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

## DEBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   - ☐ Personal, family or household purposes
   - ☑ Farming operations
   - ☐ Business other than farming operations

2. The Collateral is
☐ Now owned by the Debtor
☑ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is
☐ At the address shown above
☑ At ___4906 Prall Hill___ ___Henryville___ ___Indiana___
(Street Number)        (City)        (State)

4. The Collateral will be kept at
☐ Debtor's residence as shown above
☑ At ___11060 N Falcon Road___ ___Scott City___ ___Kansas___
(Street Number)        (City)        (State)

5. Debtor's chief place of business is
☐ In the county of Debtor's residence
☑ At ___4906 Prall Hill___ ___Henryville___ ___Indiana___
(Street Number)        (City)        (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is: ___Indiana___.

EVENTS OF DEFAULT.  Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES.  Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made.  The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to:  1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.

X _____
By _____   _____
   (Name)      (Title)

DEBTOR:

X ___Thomas J Sibr___
   (Name)

X ___Lisa Gibson___
   (Name)

_____
(Corporate or partnership name)

By _____
   ( Name)                    (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

# IRSIK & DOLL FEED SERVICES, INC.

| PROMISSORY NOTE AGREEMENT | | |
|---|---|---|
| FEED YARD PEN NUMBER RB#53-7291 | NOTE NUMBER 17050 | CUST. NO. 1787 |

| DEBTOR'S NAME & ADDRESS | PRINCIPAL AMOUNT $**41,140.95 | DATE OF NOTE 6/14/2010 |
|---|---|---|
| Thomas S & Lisa Gibson 4906 Prall Hill Henryville, IN 47126 | MATURITY DATE 11/13/2010 | INTEREST RATE PER ANNUM 6.00% |

On or before <u>November 13, 2010</u>, I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above.  This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group.  Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

| LENDER & SECURED PARTY | DEBTOR SIGNATURES |
|---|---|
| IRSIK & DOLL FEED SERVICES, INC.<br><br>BOX 847<br><br>CIMARRON, KS 67835<br><br>PAID __9.23.10__<br>LOT # __7291__<br>PRINCIPAL __41,140.95__<br>INTEREST __676.29__ | I (We) agree to the terms of this Promissory Note.  I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose.<br><br>X _Thos S Gib_ _____ __6/16/10__<br>(name)         (title)         (date)<br><br>X _Lisa Gibson_ _____ __6/16/10__<br>(name)         (title)         (date)<br><br>X ........................................................<br>(name)         (title)         (date) |

## SECURITY AGREEMENT

Date June 14, 2010

| Thomas S & Lisa Gibson | | 4906 Prall Hill | |
|---|---|---|---|
| (Name) | | (Street Address) | |
| Henryville | | | Indiana |
| (City) | (County) | | (State) |

**hereinafter call "Debtor," hereby grants to** Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS 67835 **hereinafter called "Secured Party," a security interest in the following described property:**

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls, Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated June 14, 2010, executed and delivered by Debtor to Secured Party in the principal sum of $**41,140.95 plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES. Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein. The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS. No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party. In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE. Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard. The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE. Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party. Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES. At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon. Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL. Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW. The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas. The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

## DEBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   - ☐ Personal, family or household purposes
   - ☒ Farming operations
   - ☐ Business other than farming operations

2. The Collateral is

☑ Now owned by the Debtor

☐ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is

☐ At the address shown above

☑ At    4906 Prall Hill                Henryville              Indiana
         (Street Number)                 (City)                 (State)

4. The Collateral will be kept at

☐ Debtor's residence as shown above

☐ At    11060 N Falcon Road            Scott City              Kansas
         (Street Number)                 (City)                 (State)

5. Debtor's chief place of business is

☐ In the county of Debtor's residence

☑ At    4906 Prall Hill                Henryville              Indiana
         (Street Number)                 (City)                 (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is:    Indiana    .

EVENTS OF DEFAULT.  Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES.  Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made.  The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

This document takes precedence over any and all verbal agreements.

In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to:  1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.

Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.

By _____    President
      (Name)              (Title)

DEBTOR:

X _Thomas S Gibson_
      (Name)

X _Lisa Gibson_
      (Name)

_____
(Corporate or partnership name)

By _____
      (Name)                (Title)



P.O. Box 847
Cimarron, KS 67835

Phone 620-855-3111
www.irsikanddoll.com

## IRSIK & DOLL FEED SERVICES, INC.

### PROMISSORY NOTE AGREEMENT

| FEED YARD PEN NUMBER<br>RB#261-9246-43-9279-254-9330 | NOTE NUMBER<br>16426 | CUST. NO.<br>1787 |
|---|---|---|
| DEBTOR'S NAME & ADDRESS<br><br>Thomas S & Lisa Gibson<br>4906 Prall Hill<br>Henryville, IN 47126 | PRINCIPAL AMOUNT<br>$**117,070.98 | DATE OF NOTE<br>11/2/2009 |
| | MATURITY DATE<br>4/29/2010 | INTEREST RATE<br>PER ANNUM<br>6.00% |

On or before April 29, 2010, I (We) promise to pay Irsik & Doll Feed Services, Inc. ("Lender") with offices in Cimarron, Gray County, KS, the principal amount together with interest accrued, on or before the maturity date, as set forth above. This note is secured by a Security Agreement, together with all other collateral heretofore and hereafter given to "Lender".

The expressed purpose of this note is to finance cattle on feed at commercial feed yards operated by Irsik & Doll Group.  Specifically, Ingalls Feed Yard and Gray County Feed Yard located in Gray County, KS., Beefland and Irsik & Doll Feed Yard located in Finney County, KS., and Royal Beef located in Scott County, KS and Sunbelt Feed Yard, located in Stevens County, KS.

It is understood and agreed that payment of this note and interest accrued thereon will, at the option of the Lender, be deducted from the proceeds of the sale of cattle described on the accompanying security agreement. The makers hereby waive presentment, demand, notice and protest.

By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related security agreement.

This document takes precedence over any and all verbal agreements.

**LENDER & SECURED PARTY**          **DEBTOR SIGNATURES**

| IRSIK & DOLL FEED SERVICES, INC.<br><br>BOX 847<br><br>CIMARRON, KS 67835<br><br>See back<br>for paid<br>amounts | I (We) agree to the terms of this Promissory Note.  I (We) affirm that the proceeds of this loan will be used to finance cattle in Irsik & Doll yards and for no other purpose.<br><br>X _Thomas S Gb_____ 11/3/09<br>(name)        (title)        (date)<br><br>X _Lisa C Gibson_____ 11.2.09<br>(name)        (title)        (date)<br><br>X _____<br>(name)        (title)        (date) |

## SECURITY AGREEMENT

**Date** November 2, 2009

| Thomas S & Lisa Gibson | | 4906 Prall Hill | |
|---|---|---|---|
| (Name) | | (Street Address) | |
| Henryville | | | Indiana |
| (City) | (County) | | (State) |

**hereinafter call "Debtor," hereby grants to** Irsik & Doll Feed Services, Inc., Box 847 Cimarron, KS  67835 **hereinafter called "Secured Party," a security interest in the following described property:**

Any and All livestock now owned or hereafter acquired and located at either Ingalls Feed Yard Ingalls; Gray County Feed Yard, Cimarron, Gray Co., KS., Beefland, Garden City, Irsik & Doll Feed Yard, Garden City, Finney Co., KS., Royal Beef, Scott City, Scott  Co., KS., and Sunbelt Feed Yard, Hugoton, Stevens, Co., KS., and all cattle in the control of the above referenced locations, including but not limited to cattle and the proceeds thereof and including all increases, additions, substitutions or replacements thereof or thereto.

together with all additions, accessions and substitutions thereto or therefore, and all similar property hereafter acquired, hereinafter called "Collateral." Proceeds of Collateral are also covered but this shall not be construed to mean that Secured Party consents to any sale of such Collateral.

If Collateral includes livestock, Debtor hereby grants a security interest in all increase thereof, all feed, both hay and grain, owned by Debtor.

This security interest is given to secure: (1) Payment of a note dated November 2, 2009 executed and delivered by Debtor to Secured Party in the principal sum of $**117,070.98, plus accrued interest, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Secured Party to Debtor at Secured Party's option; (3) all expenditures by Secured Party for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Secured Party in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Secured Party now existing or hereafter incurred, mature or immature, direct or contingent, and any renewals and extensions thereof and substitutions therefore.

## DEBTOR EXPRESSLY WARRANTS AND COVENANTS:

OWNERSHIP FREE OF ENCUMBRANCES.  Except for the security interest granted hereby, Debtor now owns or will use the proceeds of the advances hereunder to become the owner of the Collateral free from any other prior lien, security interest or encumbrance, and Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein.  The debtor agrees to do such acts and things as the secured party may from time to time request to maintain a valid security interest on the part of the secured party in the collateral (free of all other liens and claims whatsoever) to secure the payment of the liabilities.

FINANCING STATEMENTS.  No financing statement covering the Collateral or any proceeds thereof is on file in any public office and Debtor will join with Secured Party in executing one or more financing statements in form satisfactory to Secured Party.  In addition, debtor expressly authorizes secured party to prepare and to file financing statements in such place or places as secured party shall deem advisable in order to give notice of this security agreement.

INSURANCE.  Cattle located in one of the Secured Parties feedyards shall be covered by the applicable mortality insurance package currently then in effect at the feed yard.  The parties acknowledge that costs of such insurance will be paid by the Debtor. All insurance proceeds shall be paid first to Secured Party to be applied to Debtors obligation.

MAINTENANCE.  Debtor will keep the Collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the Collateral illegally or encumber the same and will not permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party.  Secured Party may examine and inspect the Collateral at any time, wherever located.

REIMBURSEMENT FOR EXPENSES.  At its option, Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, the maintenance and preservation thereof and for insurance thereon.  Debtor agrees to reimburse Secured Party on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at a rate equal to the related promissory note agreement or, if applicable, the default rate, from date of payment until reimbursement, shall be added to the indebtedness owed by Debtor and shall be secured by this security agreement.

CHANGE OF RESIDENCE OR LOCATION OF COLLATERAL.  Debtor will immediately notify Secured Party in writing of any change in Debtor's residence, and Debtor will not permit any of the Collateral to be removed from the location specified herein without the written consent of Secured Party.

CHOICE OF LAW. The parties agree that this agreement has been negotiated in the State of Kansas and that this agreement shall be interpreted and enforced under and in accordance with the laws of the State of Kansas.  The parties do, for all purposes hereunder, acknowledge, agree, and consent that any action arising out of or under this agreement shall be brought under the laws of the State of Kansas, and all of the parties to this action hereby consent and submit to the jurisdiction of the courts of the State of Kansas and further consent and agree that venue for any action arising out of or under this agreement shall be proper in Gray County, Kansas.

DEBTOR FURTHER WARANTS AND COVENANTS:

1. The Collateral covered by this agreement is to be used by Debtor primarily for
   - ☐ Personal, family or household purposes
   - ☒ Farming operations
   - ☐ Business other than farming operations

2. The Collateral is
   - ☑ Now owned by the Debtor
   - ☐ Being acquired with the proceeds of the advance evidenced by this agreement.

3. Debtor's residence is
   - ☐ At the address shown above
   - ☑ At ___4906 Prall Hill___ ___Henryville___ ___Indiana___
     (Street Number) (City) (State)

4. The Collateral will be kept at
   - ☐ Debtor's residence as shown above
   - ☑ At ___11060 N Falcon Road___ ___Scott City___ ___Kansas___
     (Street Number) (City) (State)

5. Debtor's chief place of business is
   - ☐ In the county of Debtor's residence
   - ☑ At ___4906 Prall Hill___ ___Henryville___ ___Indiana___
     (Street Number) (City) (State)

6. If a corporation, limited liability company, limited partnership, limited liability partnership, or other form of business organized under state law and registered under the law of a state, the state in which the business entity is organized and registered, is:___Indiana___.

   EVENTS OF DEFAULT. Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

   1. Default in the payment or performance of any obligation, covenant or liability contained or referred to herein;

   2. Any warranty, representation or statement made or furnished to Secured Party by or in behalf of Debtor proves to have been false in any material respect when made or furnished;

   3. Any event that results in the acceleration of the maturity of the indebtedness of Debtor to others under any indenture, agreement or undertaking;

   4. Loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon;

   5. Any time the Secured Party believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

   6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

Deficiency. If the proceeds of sale, collection or other realization of or on the Collateral are insufficient to cover the cost and expense of such sale and realization, and the payment in full of all the indebtedness secured hereby, Borrower will remain liable for any deficiency.

If any Event of Default or Deficiency shall have occurred and be continuing thirty days (30) from sale, collection or other realization of or on the Collateral, Borrower promises to pay interest at the rate equal to the related promissory note agreement, plus five percent (5%) upon the outstanding principal and interest balance.

REMEDIES. Upon such default and at any time thereafter Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Secured Party. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this agreement at least ten days before the time of sale or disposition.

   No waiver by secured party of any default shall operate as a waiver of any other default or the same default on a future occasion and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

   By presenting the loan proceeds for payment, debtor acknowledges and agrees to the terms and conditions of this document and the related promissory note agreement.

   This document takes precedence over any and all verbal agreements.

   In the event of adverse market fluctuations which diminish Debtors equity in the cattle covered under this security agreement, Lender reserves the right, at its option, to: 1) Obtain additional collateral from Debtor, or 2) Seek market price protection at Debtors' expense, or 3) Sell or otherwise dispose of and apply the proceeds to a) the expenses of sale, and b) to any sum due to Irsik & Doll Feed Services, Inc. and c) with balance due to Debtor.
Signed and delivered the day and year first above written.

SECURED PARTY:
Irsik & Doll Feed Services, Inc.

By _____
   (Name)          (Title)

DEBTOR:

X _____
   (Name)

X _____
   (Name)

_____
(Corporate or partnership name)

By _____
   ( Name)          (Title)