UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Case No. 10-93904-BHL-11 |
| | ) | |
| Debtor. | ) | Hon. Basil H. Lorch III |
| ———————————————————— | ) | |
| JAMES A. KNAUER, CHAPTER 11 TRUSTEE | ) | |
| OF EASTERN LIVESTOCK CO., LLC | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| STOCKMAN OKLAHOMA LIVESTOCK | ) | |
| MARKETING, INC., SOUTHEAST | ) | |
| LIVESTOCK EXCHANGE, LLC, ROBERT | ) | |
| NICHOLS, individually, ROBERT and JANE | ) | |
| NICHOLS d/b/a NICHOLS LIVESTOCK, | ) | |
| NICHOLS LIVESTOCK, INC., WILLIAM | ) | |
| BUSH, and DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **<u>COMPLAINT</u>**

James A. Knauer, as Chapter 11 trustee ("Trustee") for Eastern Livestock Co., LLC

("ELC"), for the Trustee's complaint against Stockman Oklahoma Livestock Marketing, Inc.,

Southeast Livestock Exchange, LLC, Robert Nichols individually, Robert and Jane Nichols d/b/a

Nichols Livestock, Nichols Livestock, Inc., William Bush, and Does 1-5, states as follows:

### **Jurisdiction and Parties**

1.      This adversary proceeding (the "Adversary Proceeding") arises in and is related to

the above-captioned bankruptcy case (the "Chapter 11 Case"), which is currently pending in the

United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").

2.      This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.      This Court has jurisdiction over the parties and subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(b).

6.      Pursuant to S.D. Ind. B-7008-1, the Trustee hereby consents to entry of final orders or judgments by the Court.

7.      On November 9, 2010, Elizabeth M. Lynch was appointed as ELC's receiver (the "Receiver") pursuant to an order (the "Receivership Order") entered by the Court of Common Pleas in Hamilton County, Ohio in an action styled as *Fifth Third Bank v. Eastern Livestock Co., LLC*, Cause No. A1010267.

8.      The Receivership Order granted the Receiver immediate control and management of ELC and possession of all of ELC's property (including the authority to govern ELC and operate and manage ELC's business).  The Receivership Order granted the Receiver the authority to perform or reject ELC's contracts.  The Receivership Order also prohibited all persons and entities from interfering in any way with the acts of the Receiver and from in any way wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of ELC's property.

9.      On December 6, 2010 (the "Petition Date"), certain petitioning creditors commenced the Chapter 11 Case by filing an involuntary petition for relief as to ELC under

2

Chapter 11 of the Bankruptcy Code. The Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

10. On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee.

11. Defendant Stockman Oklahoma Livestock Marketing, Inc. ("SOLM") is a corporation organized under Oklahoma law with a principal place of business in Apache, Oklahoma. SOLM operates as a live and video sales auction offering consigned feeder cattle from producers in Arkansas, Kansas, Oklahoma, and Texas. SOLM also does business as and is commonly known as Apache Auction Market and as Apache Video Sales.

12. Southeast Livestock Exchange, LLC ("Southeast Livestock") is a North Carolina limited liability company with its principal office located at 474 Stock Drive, Canton, North Carolina 28716. Southeast Livestock's registered agent is Frank G. Queen with an address of 370 N. Main Street, Suite 300, Waynesville, NC 28786.

13. Robert Nichols is an Oklahoma resident, domiciled at 21767 E. 1580 Road, Mountain Park, Oklahoma 73559.

14. Jane Nichols is an Oklahoma resident, domiciled at 21767 E. 1580 Road, Mountain Park, Oklahoma 73559.

15. Defendant Nichols Livestock, Inc. ("Nichols Livestock") is a corporation organized under Oklahoma law with a principal place of business in Mountain Park, Oklahoma. Nichols Livestock's Registered Agent is Robert Nichols with an address of 21767 E. 1580 Road, Mountain Park, Oklahoma.

16. William Bush is an Oklahoma resident, domiciled at 16660 N. 2320 Road, Snyder, Oklahoma 73566.

3

17.     Does 1-5 are persons or entities who have outstanding account receivable balances due and owing to ELC for cattle received through Robert Nichols.  As the time of this filing, the Trustee does not know the true identities of Does 1-5.

18.     SOLM, Southeast Livestock, Robert and Jane Nichols, Nichols Livestock, William Bush, and Does 1-5 are each a "person" as defined in Section 101(41) of the Bankruptcy Code residing in and/or conducting business in the United States.

## SOLM

19.     At all times relevant to this Adversary Proceeding, SOLM operated as a market agency selling cattle on commission for ranchers and other producers of cattle (the "Producers").

20.     At all times relevant to this Adversary Proceeding, SOLM marketed certain Producers' cattle for sale to buyers such as ELC either for immediate delivery or under contracts for future delivery ("Buy Contracts").

21.     For cattle sales that called for a Producer to make a future delivery of cattle, ELC paid SOLM a down payment ("Down Payment") to be credited against the purchase price of the cattle upon delivery.

## Eastern's Proceeds

22.     For the cattle transactions identified in Exhibit A to this Complaint, ELC issued and delivered to SOLM three checks drawn on an ELC account maintained at Fifth Third Bank in payment for the cattle identified in Exhibit A.  The "Checks" are as follows: (i) check number 33699 dated November 1, 2010, in the amount of $516,569.22; (ii) check number 33701 dated November 2, 2010, in the amount of $358,448.46; and (iii) check number 35363 dated November 8, 2010, in the amount of $151,170.00.

4

23.     With respect to the transactions summarized in Exhibit A, ELC took delivery of the cattle and the cattle were immediately shipped at ELC's direction to ELC's buyers ("ELC Buyers") pursuant to contracts between ELC and the ELC Buyers ("Sell Contracts").

24.     The Checks were returned by Fifth Third "Refer to Maker."

25.     SOLM claims an interest in and has asserted rights to all or part of the proceeds arising from ELC's sale of the cattle to the ELC Buyers (the "Proceeds").  SOLM has collected a portion of the Proceeds from ELC Buyers and asserts a claim to the remaining Proceeds, portions of which are currently held by the Trustee and other portions of which are held by the Court in connection with interpleader actions pending as adversary proceedings in this Court.

26.     SOLM asserted control over and is in possession of no less than $179,168.53 in Proceeds.  Despite demand, SOLM has refused to turn over this portion of the Proceeds to the Trustee.

27.     All Proceeds are property of ELC's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

28.     SOLM has not taken the Proceeds for the payment of any tax, assessment, or fine levied by virtue of any law or statute, nor has SOLM seized the Proceeds under any execution of attachment against the property of ELC.

29.     SOLM's continued possession of the Proceeds is wrongful as to ELC and the Trustee.

**ELC's Purported Assignment of Buy Contracts to SOLM**

30.     ELC entered into Buy Contracts to buy cattle sold by SOLM as agent for certain Producers.

31.    SOLM claims rights in or to certain of the Buy Contracts pursuant to the document attached hereto as Exhibit B (the "Assignment").  The Assignment states, in its entirety: "Eastern Livestock Co., LLC hereby assigns its rights and responsibilities under [Invoice No./Contract No.] (See Attached) to SOLM Inc., Apache, Okla.  This Assignment applies specifically to the livestock contracts listed on the attached."

32.    The Assignment purports to be signed by Thomas P. Gibson on behalf of ELC.

33.    SOLM claims that the Assignment clarified an earlier assignment by ELC to SOLM that SOLM asserts it obtained from Gibson as of November 4, 2010.

34.    The facsimile time stamp located at the bottom of the Assignment confirms that the Assignment was delivered to SOLM on November 11, 2010.

35.    Gibson had no authority to act on behalf of ELC after the Receivership Order was entered on November 9, 2010.

36.    The Assignment does not describe, identify, or acknowledge any consideration paid, received, or to be paid by SOLM for the Buy Contracts.

37.    The Assignment makes no reference to the Down Payments that ELC paid to SOLM toward the purchase price of the cattle that were identified to the ELC Buy Contracts.

38.    The Assignment does not purport to assign and makes no reference to (i) the cattle that were the subjects of the Buy Contracts, (ii) the Sell Contracts that ELC had entered into to sell the cattle to third parties, or (iii) the proceeds or receivables from ELC's sales of the cattle pursuant to the Sell Contracts (the "ELC Proceeds/Receivables").

39.    Prior to the delivery of the Assignment, cattle that were the subjects of the Buy Contracts had been identified to those contracts and ELC has paid all required Down Payments.

40.     ELC had sufficient rights in or to all or part of the cattle that were the subjects of the Buy Contracts to transfer good title and ELC did transfer title to third-party purchasers prior to delivery of the Assignment.

41.     The Assignment was ineffective to assign, transfer, or otherwise grant any rights or interests to SOLM in the cattle that were the subjects of the Buy Contracts, the Sell Contracts, or ELC Proceeds/Receivables.

42.     ELC was insolvent at the time of execution and delivery of the Assignment.

43.     SOLM exerted wrongful possession and/or control over all or part of the cattle that were the subjects of the Buy Contracts and the ELC Proceeds/Receivables.  SOLM also wrongfully asserts rights to the ELC Proceeds/Receivables that SOLM has not received.

44.     SOLM did not pay to ELC the reasonably equivalent value of what was purportedly assigned to SOLM pursuant to any purported assignment.

45.     Despite demand, SOLM has refused to turn over to the Trustee the cattle and Proceeds/Receivables under SOLM's control.

46.     Despite demand, SOLM has failed to account for or return to the Trustee the Down Payments.

47.     The ELC Buy Contract Cattle, the Down Payments associated therewith, and the ELC Proceeds/Receivables are property of ELC's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

48.     SOLM has not taken the ELC Buy Contract Cattle or the ELC Proceeds/Receivables for the payment of any tax, assessment, or fine levied by virtue of any law or statute, nor have the ELC Buy Contract Cattle or the ELC Buy Contract Cattle Proceeds been seized under any execution of attachment against the property of ELC.

**Additional Cattle and Proceeds Collected by SOLM**

49.     There are additional Buy Contracts by which ELC purchased cattle from or through SOLM in the months preceding the Chapter 11 Case that were not identified in the list attached to the Assignment.

50.     Attached hereto as Exhibit C is a chart summarizing those additional ELC Buy Contracts.

51.     Upon information and belief, SOLM has collected or received, directly or indirectly, no less than $649,280.37 of ELC's accounts receivable for the cattle that that are identified to the Buy Contracts.

52.     Upon information and belief, SOLM has taken possession of, or assisted others in taking possession of, cattle and/or cattle proceeds that were identified to these additional Buy Contracts.

53.     SOLM exerted unauthorized control over these cattle and proceeds identified in the attached exhibit.  SOLM asserts a claim to the remaining cattle and proceeds, some of which is currently held by the Trustee.

54.     SOLM did not pay ELC the reasonably equivalent value of the cattle and cattle proceeds SOLM collected.

55.     Despite demand, SOLM has refused to turn over to the Trustee the cattle or cattle sale proceeds in SOLM's possession, custody or control relating to these Buy Contracts.

56.     SOLM also has failed to account for or return any Down Payments that ELC made toward the purchase price of these cattle.

57.     These cattle and cattle sale proceeds are property of ELC's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

58.     SOLM has not taken the cattle or proceeds for the payment of any tax, assessment, or fine levied by virtue of any law or statute, nor have the cattle or proceeds been seized under any execution of attachment against the property of ELC.

### Nichols' Activity as ELC Branch 14 Manager

59.     At all times relevant to this dispute, Robert Nichols was the Manager of ELC Branch 14 located in Snyder, Oklahoma ("Branch 14").  ELC's New Albany, Indiana, office was primarily responsible for processing Branch 14 transactions.

60.     ELC paid Nichols commissions on cattle bought and sold on ELC's account.

61.     ELC also paid Nichols a salary for his duties as Manager of Branch 14.

62.     As a Branch Manager, Nichols was entrusted by ELC with ELC checks that he could complete and sign on ELC's behalf.  These checks were referred to as "Field Checks."

63.     Field Checks were primarily used to pay cattle producers for ELC's purchase of cattle.  Nichols owed fiduciary obligations to ELC in this proper use of Field Checks for ELC.

64.     As a Branch Manager, Nichols was entrusted by ELC with responsibility for buying and selling cattle on behalf of ELC.

65.     Nichols owed fiduciary obligations to ELC in the proper exercise of his duties to buy and sell cattle on ELC's behalf.

66.     At all times relevant to this dispute, Robert Nichols also purchased cattle on his own account used in the operation of his personal business.

67.     At all times relevant to this dispute, Robert and Jane Nichols did business as Nichols Livestock ("Nichols DBA"), purchasing cattle on its own account.

68.     On or about December 29, 2011, Robert Nichols incorporated Nichols Livestock. Nichols Livestock is named as a party to this litigation as the continuation of Nichols DBA, and

to the extent that Nichols Livestock received Nichols DBA's assets. For the purpose of this Complaint, Robert Nichols, Nichols DBA, and Nichols Livestock will be collectively referred to as the "Nichols Defendants."

### ELC Paid Cattle

69.    Reconciliation of ELC's records and the ELC Branch 14 accounts in particular show no less than $428,475.67 worth of real cattle in the Branch 14 inventory for which Robert Nichols was responsible, that remain unaccounted for (the "ELC Paid Cattle"). See Exhibit E, incorporated herein by reference.

70.    The ELC Paid Cattle include cattle purchased from SOLM and River Bend Cattle, and one transfer from ELC Branch 2 located in Providence, Kentucky ("Branch 2").

71.    ELC paid SOLM, River Bend Cattle, and Branch 2 in full upon delivery of the ELC Paid Cattle.

72.    On information and belief, Nichols, as branch manager and agent for ELC, sold the ELC Paid Cattle to certain unidentified ELC customers ("Does 1-3").

73.    Doe 1 was legally obligated to pay ELC the amount due and owing for the ELC Paid Cattle it received through Nichols (the "Doe 1 Receivable").

74.    Doe 2 was legally obligated to pay ELC the amount due and owing for the ELC Paid Cattle it received through Nichols (the "Doe 2 Receivable").

75.    Doe 3 was legally obligated to pay ELC the amount due and owing for the ELC Paid Cattle it received through Nichols (the "Doe 3 Receivable").

76.    On information and belief, Nichols retained ELC's proceeds paid by Does 1-3 for the ELC Paid Cattle.

**ELC Unpaid Cattle**

77.     ELC records show at least $215,126.48 worth of real cattle in the Branch 14 inventory for which Nichols was responsible, that remains unaccounted for (the "ELC Unpaid Cattle").  See Exhibit F, incorporated herein by reference.

78.     The ELC Unpaid Cattle include three lots purchased from SOLM and one lot purchased from Southeast Livestock.

79.     On information and belief, Nichols directed certain unknown ELC customers ("Does 4-5") to pay him for the ELC Unpaid Cattle.

80.     On information and belief, Nichols in turn paid SOLM the amount due and owing from ELC for the Doe 5 transactions.

81.     On or about November 9, 2010, Nichols paid Southeast Livestock $51,212.65, representing the amount due and owing from ELC for the Doe 4 transaction (the "Southeast Transfer").  Said Transfer was made in the form of Nichols DBA check #7257, dated November 9, 2010, a copy of which is attached hereto as Exhibit G.

82.     On information and belief, Nichols and/or SOLM and/or Southeast Livestock retained any markup or profit due to ELC.

83.     Doe 4 was legally obligated to pay ELC the amount due and owing for the ELC Unpaid Cattle it received from Nichols (the "Doe 4 Receivable").

84.     Doe 5 was legally obligated to pay ELC the amount due and owing for the ELC Unpaid Cattle it received from Nichols (the "Doe 5 Receivable").

**Bush Cattle**

85.     On or about October 29, 2010, Nichols, as branch manager and agent for ELC, took delivery of 282 steers pursuant to a Buy Contract with a Producer who had consigned cattle to SOLM .

86.     Pursuant to a Sell Contract, Nichols, as ELC agent, sold the 282 steers to ELC customer William Bush.

87.     Bush received delivery of the cattle.

88.     Bush was legally obligated to pay ELC for the Bush Cattle when he received them (the "Bush Receivable").

89.     On information and belief, Nichols directed Bush to pay SOLM directly in the amount of $189,827.00.

90.     On information and belief Nichols and/or Nichols DBA and/or SOLM has possession of ELC proceeds in connection with the Bush Receivable.

91.     On information and belief, Nichols and/or Nichols DBA received additional payments of $15,694.25 from Bush in the transaction.

**SOLM Cattle Sales**

92.     On at least one occasion and/or from time to time and occurring within ninety days prior to the Petition Date, SOLM sold one or more head of cattle to ELC or its affiliates either directly to ELC as the owner of the cattle or through the terms of a consigned sale (the "SOLM Cattle Sales").

93.     As and when the SOLM Cattle Sales occurred, SOLM always or nearly always transacted business with ELC through ELC Branch 14.

94.     Section 101(54) of the Bankruptcy Code defines "transfer" as, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

95.     Plaintiff is informed and believes and, based thereon, alleges that ELC made transfers of property to SOLM or caused to be made transfers of property of ELC to SOLM on or within ninety days on before the Petition Date, that is between September 7, 2010 and December 5, 2010, inclusive, in the aggregate sum not less than $8,126,556.79 (the "SOLM Transfers"), including those transfers identified on Exhibit D, incorporated herein by reference.

96.     On information and belief, in the three SOLM Transfers identified in Exhibit F, SOLM received payment from Nichols personally or on behalf of Nichols DBA, rather than payment from ELC.

97.     On information and belief, in the SOLM Transfer identified in Exhibit H, SOLM received payment from William Bush directly, rather than payment from ELC.

98.     The SOLM Transfers are not subject to the defenses to the avoidance of the Transfers as set forth in 11 U.S.C. § 547(c).

99.     The SOLM Transfers were transfers of ELC's property interests.

100.    The SOLM Transfers were made while ELC was insolvent.

### Count I (Avoidance of any SOLM Security Interest)

101.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 100, inclusive, as if fully set forth herein.

102.    An actual and genuine controversy exists with respect to any security interest ELC purportedly granted to SOLM.

103.    SOLM did not perfect any security interest in ELC's property.

104.     Any security interest that SOLM claims is avoidable by the Trustee pursuant to the Trustee's strong arm powers under Section 544 of the Bankruptcy Code.

105.     Pursuant to 28 U.S.C. § 2201, the Trustee requests the Court to declare the rights and other legal relations of the parties.  The Trustee requests that Court to grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

### Count II (Turnover – SOLM)

106.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 105, inclusive, as if fully set forth herein.

107.     An actual and genuine controversy exists with respect to whether SOLM had and properly exercised rights to take possession or control of and/or maintain possession or control of ELC's property.

108.     SOLM did not timely or effectively exercise any right to take possession or control of ELC's property.

109.     Any right that SOLM might have had to take possession or control of ELC's property is subject to the superior rights of the Trustee, prior lienholders, and/or third-party good-faith purchasers for value.

110.     Pursuant to 28 U.S.C. § 2201, the Trustee requests the Court to declare the rights and other legal relations of the parties as to the cattle, proceeds, receivables and any other property.  The Trustee requests the Court to grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

### Count III (UCC 2-401 and 2-403 – SOLM)

111.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 110, inclusive, as if fully set forth herein.

112.    An actual and genuine controversy exists regarding whether the Assignment transferred any rights to any Buy Contracts, cattle, Sell Contracts, ELC Proceeds/Receivables, or Down Payments.

113.    Pursuant to UCC §§ 2-401 and 2-403 and equivalent state statutes applicable here, the Assignment was ineffective by its terms to assign, transfer, or otherwise grant any rights or interests to SOLM.

114.    Pursuant to 28 U.S.C. § 2201, the Trustee requests the Court to declare the rights and other legal relations of the parties.  The Trustee requests the Court to grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

**Count IV (SOLM Assignment Void for Lack of Consideration)**

115.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 114, inclusive, as if fully set forth herein.

116.    An actual and genuine controversy exists with respect to the Assignment.

117.    The Assignment does not recite and ELC did not receive any valuable consideration in exchange for any assignment of rights or property from ELC to SOLM.

118.    The Assignment is invalid, void and unenforceable.

119.    Pursuant to 28 U.S.C. § 2201, the Trustee requests the Court to declare the rights and other legal relations of the parties.  The Trustee requests the Court to grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

**Count V (SOLM Assignment Void for Lack of Authority)**

120.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 119, inclusive, as if fully set forth herein.

121.    An actual and genuine controversy exists with respect to the execution, delivery and legal authority of Thomas P. Gibson regarding the Assignment.

15

122.    Thomas P. Gibson was not authorized to execute or deliver the Assignment on behalf of ELC.

123.    Thomas P. Gibson's actions as to the Assignment and the Buy Contracts described herein were ultra vires.

124.    The Assignment violates the Receivership Order.

125.    The Assignment is invalid, void and unenforceable.

126.    Pursuant to 28 U.S.C. § 2201, the Trustee requests the Court to declare the rights and other legal relations of the parties.  The requests the Court to grant further necessary or proper relief based on its declaratory judgment in this action pursuant to 28 U.S.C. § 2202.

**Count VI (Fraudulent Transfer under the Bankruptcy Code – the SOLM Assignment)**

127.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 126, inclusive, as if fully set forth herein.

128.    Under Sections 548 and 550 of the Bankruptcy Code, the Trustee can recover the value of transfers that were made by ELC with actual intent to hinder, delay, or defraud any entity to which ELC was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

129.    The Assignment was executed with the intent to hinder, delay, or defraud.  The Assignment was outside the ordinary course of business between ELC, SOLM, and the Producers and in a manner different than ordinary methods, and the purported transfer was made for no valuable consideration.

130.    Alternatively, under Sections 548 and 550 of the Bankruptcy Code, the Trustee can recover the value of transfers made to SOLM because ELC received less than reasonably equivalent value in exchange for the transfers and (i) was insolvent at the time of the transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay

as they matured, or (iii) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

131.    SOLM claims ELC transferred certain Buy Contracts to SOLM pursuant to the Assignment.

132.    The Buy Contracts are assets of ELC.

133.    ELC was insolvent at the time the Assignment was executed and delivered.

134.    ELC received less than reasonably equivalent value for its alleged assignment to SOLM.

135.    Pursuant to Section 548 and 550 of the Bankruptcy Code, the Trustee can avoid the transfer of ELC's interests as reflected in the Assignment and recover the value from SOLM.

**Count VII (Fraudulent Transfer under State Law – the SOLM Assignment)**

136.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 135, inclusive, as if fully set forth herein.

137.    Under Ind. Code § 32-18-2-14, and/or other states' fraudulent transfer statutes applicable here, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

138.    Under Ind. Code §32-18-2-15, and/or other states' fraudulent transfer statutes applicable here, transfers made by a debtor are fraudulent as to present creditors if the Debtor

17

made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

139.    The Assignment was executed with the intent to hinder, delay, or defraud.  The Assignment took place outside the ordinary course of business between ELC, SOLM, and the Producers and in a manner different than ordinary methods, and the transfer was made for no valuable consideration.

140.    SOLM claims ELC transferred certain Buy Contracts to SOLM pursuant to the Assignment.

141.    The Buy Contracts are assets of ELC.

142.    ELC was insolvent at the time the Assignment was executed and delivered.

143.    ELC received less than reasonably equivalent value for its alleged assignment to SOLM.

144.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, and/or other states' fraudulent transfer statutes applicable here, the Trustee can avoid the transfer of ELC's interests and recover the value from SOLM.

### Count VIII (Fraudulent Transfer under the Bankruptcy Code – the Down Payments to SOLM)

145.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 144, inclusive, as if fully set forth herein.

146.    Under Sections 548 and 550 of the Bankruptcy Code, the Trustee can recover the value of transfers made to SOLM because ELC received less than reasonably equivalent value in exchange for the transfers and (i) was insolvent at the time of the transfers, (ii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or

(iii) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

147.    ELC transferred no less than $199,110 in Down Payments to SOLM in connection with Buy Contracts.

148.    The Down Payments are assets of ELC.

149.    ELC was insolvent at the time the Down Payments were made.

150.    ELC received less than reasonably equivalent value in exchange for the Down Payments.

151.    Pursuant to Section 548 and 550 of the Bankruptcy Code, the Trustee can avoid the transfer of the Down Payments and recover the value of the Down Payments from SOLM.

**Count IX (Fraudulent Transfer under State Law – the SOLM Down Payments)**

152.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 151, inclusive, as if fully set forth herein.

153.    Under Ind. Code § 32-18-2-14, and/or other states' fraudulent transfer statutes applicable here, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

154.    Under Ind. Code §32-18-2-15, and/or other states' fraudulent transfer statutes applicable here transfers made by a debtor are fraudulent as to present creditors if the Debtor

made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

155.    ELC transferred no less than $199,110 in Down Payments to SOLM in connection with the Buy Contracts.

156.    The Down Payments are assets of ELC.

157.    ELC was insolvent at the time the Down Payments were made.

158.    ELC received less than reasonably equivalent value for its Down Payments to SOLM.

159.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, and/or other states' fraudulent transfer statutes applicable here, the Trustee can avoid the transfer of the Down Payments and recover the value from SOLM.

### Count X (Conversion – SOLM)

160.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 159, inclusive, as if fully set forth herein.

161.    The Buy Contracts, cattle, cattle sale proceeds, and Down Payments in SOLM's possession, custody or control are property of ELC's bankruptcy estate.

162.    SOLM tortiously and unlawfully converted ELC's property to the detriment of ELC.

163.    SOLM exerted unauthorized control over and continues to possess ELC's property.

164.    Despite demand, SOLM has refused to return ELC's property.

165.    SOLM has converted ELC's property in violation of Indiana Code § 35-43-4-3 and/or other states' conversion statutes and common law, trebled under Indiana's Crime Victims

20

Statute, § 34-24-3-1, *et seq.*, and under similar statutes and common law in other states where applicable.

## Count XI (Avoidance of Preferences – SOLM)

166.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 165, inclusive, as if fully set forth herein.

167.     ELC made transfers of property from ELC deposit accounts to SOLM on or within ninety days before the Petition Date, that is between September 7, 2010 and December 5, 2010, including the SOLM Transfers.

168.     Thomas P. Gibson attempted to or did transfer ELC's valuable contracts and receivables to SOLM pursuant to the Assignment.

169.     To the extent SOLM's reclamations of cattle and/or cattle proceeds were at the direction of ELC, these were also transfers from ELC to SOLM.

170.     The transfers to SOLM were transfers of interests of ELC's property.

171.     The transfers to SOLM were for the benefit of SOLM, who was a creditor of ELC at the time of the transfers, as the term creditor is defined by Section 101(10) of the Bankruptcy Code.

172.     The transfers were made for or on account of one or more antecedent debts owed by ELC to SOLM.

173.     At the time of each of the transfers, SOLM had a right to payment on account of an obligation owed to SOLM by ELC.

174.     The transfers to SOLM were made while ELC was insolvent.

175.     As a result of the transfers, SOLM received more than it would have received if (a) the Chapter 11 Case were instead a case under chapter 7 of the Bankruptcy Code; (b) the

transfers had not been made; and (c) SOLM had received payment on such debt owed to it by ELC to the extent provided by chapter 7 of the Bankruptcy Code.

176.    Pursuant to §§ 547 and 550 of the Bankruptcy Code, the Trustee, on behalf of the estate, is entitled to avoid the transfers and to recover the value of the transfers from SOLM.

**Count XII  (Disallowance of Claim Pursuant to 11 U.S.C. § 502(d) – All Defendants)**

177.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 176, inclusive, as if fully set forth herein.

178.    SOLM, Southeast Livestock Exchange, LLC, Robert Nichols, and Nichols Livestock have asserted a claim against ELC's estate.

179.    Pursuant to Section 502 (d) of the Bankruptcy Code, the Trustee requests that any claim asserted by the Defendants be disallowed for the failure to repay the avoidable transfers from ELC to the Defendants.

**Count XIII (Breach of Fiduciary Duty – Nichols)**

180.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 179, inclusive, as if fully set forth herein.

181.    Based upon (1) his position of trust as Manager of Branch 14, (2) his authority to issue Field Checks on behalf of ELC, and (3) his authority to buy and sell cattle on behalf of ELC, Robert Nichols owed fiduciary obligations to ELC.

182.    Nichols had a duty to hold and preserve the ELC Paid Cattle, ELC Unpaid Cattle, and Bush Cattle in the Branch 14 inventory pending sale to customers as authorized by ELC.

183.    Nichols failed to account for the ELC Paid Cattle, ELC Unpaid Cattle, and Bush Cattle.

184.    Nichols' conduct is a breach of his fiduciary duty to ELC.

185.    ELC has been damaged by Nichols' conduct.

**Count XIV (Conversion – Nichols)**

186.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 185, inclusive, as if fully set forth herein.

187.    Count XIV is in the alternative to Count XIII.

188.    Nichols had a duty to hold the ELC Paid Cattle, ELC Unpaid Cattle, and Bush Cattle in the Branch 14 inventory pending sale to customers as authorized by ELC.

189.    Nichols failed to account for the ELC Paid Cattle, ELC Unpaid Cattle, and Bush Cattle.

190.    On information and belief, Nichols misappropriated the ELC Paid Cattle for his own purposes, including but not limited to sale to Does 1-3.

191.    On information and belief, Nichols misappropriated the ELC Unpaid Cattle for his own purposes, including but not limited to sale to Does 4-5.

192.    Nichols misappropriated the Bush Cattle for his own purposes by selling them to Bush for his own benefit.

193.    Nichols has converted ELC's property in violation of Indiana Code § 35-43-4-3 and/or other states' conversion statutes and common law, trebled under Indiana's Crime Victims Statute, § 34-24-3-1, *et seq.*, and under similar statutes and common law in other states where applicable.

**Count XV (Breach of Contract – Does 1-5 and William Bush)**

194.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 193, inclusive, as if fully set forth herein.

195.    Doe 1 had a duty to pay ELC for the Doe 1 Receivable, but failed to do so.

196.    ELC's estate has been damaged as a direct result of Doe 1's breach.

197.   Doe 2 had a duty to pay ELC for the Doe 2 Receivable, but failed to do so.

198.   ELC's estate has been damaged as a direct result of Doe 2's breach.

199.   Doe 3 had a duty to pay ELC for the Doe 3 Receivable, but failed to do so.

200.   ELC's estate has been damaged as a direct result of Doe 3's breach.

201.   Doe 4 had a duty to pay ELC for the Doe 4 Receivable, but failed to do so.

202.   ELC's estate has been damaged as a direct result of Doe 4's breach.

203.   Doe 5 had a duty to pay ELC for the Doe 5 Receivable, but failed to do so.

204.   ELC's estate has been damaged as a direct result of Doe 5's breach.

205.   Bush had a duty to pay ELC for the Bush Receivable, but failed to do so.

206.   ELC's estate has been damaged as a direct result of Bush's breach.

207.   All conditions precedent to the Trustee's claims have been performed, have occurred, or have been excused.

**Count XVI (Avoidance of Preferential Transfer – Southeast Livestock)**

208.   The Trustee incorporates by reference the allegations contained in paragraphs 1 through 207, inclusive, as if fully set forth herein.

209.   ELC made the Southeast Transfer within 90 days before the Petition Date, that is between September 7, 2010 and December 5, 2010.

210.   The Southeast Transfer was a transfer of ELC's property interests.

211.   The Southeast Transfer was made to Southeast Livestock for the benefit of Southeast Livestock, who was a creditor of ELC at the time of the transfer, as the term "creditor" is defined by Section 101(10) of the Bankruptcy Code.

212.   The Southeast Transfer was made for or on account of one or more antecedent debts owed by ELC to Southeast Livestock prior to the date on which the transfer was made.

213.   At the time of payment, Southeast Livestock had a right to payment on account of an obligation owed to Southeast Livestock by ELC.

214.   The Southeast Transfer was made while ELC was insolvent.

215.   As a result of the Transfer, Southeast Livestock received more than it would have received if (a) ELC's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the respective transfers had not been made; and (c) Southeast Livestock had received payment on such debt owed to it by ELC to the extent provided by chapter 7 of the Bankruptcy Code.

216.   The Southeast Transfer is not subject to the defenses to the avoidance of the transfers as set forth in 11 U.S.C. § 547(c).

217.   The Trustee is entitled to an order and judgment under sections 547(b) and 550 of the Bankruptcy Code avoiding the Southeast Transfer and any other unauthorized transfers and recovering their value from Southeast Livestock.

**Count XVII (Fraudulent Transfer under Bankruptcy Code – Southeast Livestock)**

218.   Count XVII is in the alternative to Count XVI.

219.   The Trustee incorporates by reference the allegations contained in paragraphs 1 through 217, inclusive, as if fully set forth herein.

220.   Under Section 548(a)(1)(B) of the Bankruptcy Code, the Plaintiff may avoid the value of Transfers made during the Preference Period if the Debtor received less than reasonably equivalent value in exchange for the transfers and Debtor (i) was insolvent at the time of the transfers or became insolvent as a result of any of the transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such

25

transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

221.    ELC received less than reasonably equivalent value in exchange for the $51,212.65 Transfer.

222.    Debtor was insolvent on the date Southeast Livestock received the Transfer.

223.    The Transfer was made within two years of the Petition Date.

224.    Plaintiff is entitled to avoid the Southeast Transfer and any other unauthorized transfers and recover that sum from Nichols under Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

**Count XVIII (Fraudulent Transfer under State Law – Southeast Livestock)**

225.    Count XVIII is in the alternative to Counts XVI and XVII.

226.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 224, inclusive, as if fully set forth herein.

227.    Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

228.    Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value

in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

229.    The Southeast Transfer is an asset of ELC's estate.

230.    ELC was insolvent at the time of the Transfer.

231.    ELC received less than reasonably equivalent value for the Transfer.

232.    Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid said transfers and recover the value of the Southeast Transfer and any other unauthorized transfer.

**Count XIX (Avoidance of Preferential Transfers – Nichols Defendants)**

233.    The Trustee incorporates by reference the allegations contained in paragraphs 1 through 232, inclusive, as if fully set forth herein.

234.    Robert Nichols is an ELC insider as the term is used in sections 101 and 547 of the Bankruptcy Code.

235.    ELC made transfers to the Nichols Defendants identified on Exhibit I ("Nichols Transfers") within one year before the Petition Date.

236.    The Nichols Transfers were transfers of interests of ELC property.

237.    The Nichols Transfers were for the benefit of the Nichols Defendants, who, at the time of the Transfers, were creditors of ELC, as the term "creditor" is defined by Section 101(10) of the Bankruptcy Code.

238.    The Nichols Transfers were made for or on account of one or more antecedent debts owed by ELC to the Nichols Defendants prior to the date on which the Transfers were made.

239.     At the time of each of the Transfers identified on Exhibit I, the Nichols Defendants had a right to payment on account of an obligation owed to the Nichols Defendants by ELC.

240.     The Transfers were made while ELC was insolvent.

241.     As a result of the Transfers, the Nichols Defendants received more than they would have received if (a) ELC's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (b) the respective transfers had not been made; and (c) the Nichols Defendants had received payment on such debt owed to it by ELC to the extent provided by chapter 7 of the Bankruptcy Code.

242.     The Nichols Transfers are not subject to the defenses to avoidance set forth in section 547(c) of the Bankruptcy Code.

243.     The Trustee is entitled to an order and judgment under sections 547(b) and 550 of the Bankruptcy Code avoiding the Nichols Transfers and any other unauthorized transfers and recovering their value from the Nichols Defendants.

**Count XX (Fraudulent Transfers under Bankruptcy Code – Nichols Defendants)**

244.     Count XXIII is in the alternative to Count XXII.

245.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 243, inclusive, as if fully set forth herein.

246.     Under sections 548 and 550 of the Bankruptcy Code, the Trustee may recover the value of transfers that were made by the debtor with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

247.     Acting with actual intent to hinder, delay or defraud, Nichols caused ELC customers to pay the sum of $849,123.40 (Exhibits E, F, and H), to him or to others at his direction for the ELC Paid Cattle, ELC Unpaid Cattle, and Bush Cattle.  The intent to hinder, delay, or defraud, is evidenced by the nature and circumstances of the transactions and the Nichols Defendants' conduct outside the normal course of business with ELC.

248.     ELC transferred no less than $2,856,569.72 in the Nichols Transfers to the Nichols Defendants.

249.     ELC was insolvent at the time the Transfers were made.

250.     Plaintiff is entitled to avoid the Nichols Transfers and recover the value of the Transfers from the Nichols Defendants under Sections 548 and 550 of the Bankruptcy Code.

251.     Alternatively, under Section 548(a)(1)(B) of the Bankruptcy Code, the Plaintiff may avoid the value of transfers made during the Preference Period if the Debtor received less than reasonably equivalent value in exchange for the transfers and Debtor (i) was insolvent at the time of the transfers or became insolvent as a result of any of the transfers, (ii) was engaged in business or a transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital; (iii) intended to incur or believed that it would incur debts that would be beyond its ability to pay as they matured, or (iv) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

252.     In exchange for the Nichols Transfers, ELC received less than reasonably equivalent value.

253.     The Transfers were made within two (2) years of the Petition Date.

254.     Plaintiff is entitled to avoid the Nichols Transfers and any other unauthorized transfers and recover that sum from Nichols under Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

### Count XXI (Fraudulent Transfers under State Law – Nichols Defendants)

255.     Count XXIV is in the alternative to Counts XXII and XXIII.

256.     The Trustee incorporates by reference the allegations contained in paragraphs 1 through 254, inclusive, as if fully set forth herein.

257.     Under Ind. Code § 32-18-2-14, transfers made by a debtor are fraudulent as to present and future creditors if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (ii) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

258.     Under Ind. Code § 32-18-2-15, transfers made by a debtor are fraudulent as to present creditors if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor (i) was insolvent at that time or (ii) became insolvent as a result of the transfer.

259.     The Nichols Transfers are assets of ELC's estate.

260.     ELC was insolvent at the time of the Transfers.

261.     ELC received less than reasonably equivalent value for the Transfers.

262.     Pursuant to Indiana Code §§ 32-18-2-14 and -15, the Trustee can avoid said transfers and recover the value of the Nichols Transfers and any other unauthorized transfers.

## Requested Relief

WHEREFORE, the Trustee requests that the Court enter judgment in the Trustee's favor and against Defendants and award to the Trustee the following:

(a) a declaration finding that the Defendants do not have any rights or interests in ELC property, including the property identified in the attached exhibits, or, in the first alternative, to the extent the Defendants had such rights, the rights were not timely or effectively exercised, or, in the second alternative, if such rights were timely and effectively exercised, such rights are subject to the superior rights of the Trustee and any third-party, good-faith purchasers for value;

(b) an order requiring that the Defendants turn over to the Trustee all ELC property, including cattle, proceeds, and contracts identified in the attached exhibits now in the Defendants' possession, custody or control, and that the Defendants be ordered to return the Down Payments and immediately cease and desist all efforts to collect or reclaim any ELC estate property;

(c) a judgment awarding the Trustee damages according to proof and all treble or punitive damages as appropriate as a result of the unlawful conversion of the estate's property;

(d) a declaration finding that the foregoing transfers of ELC property are avoided and set aside as preferences under Section 547 or fraudulent transfers under Section 548 of the Bankruptcy Code, or, fraudulent transfers under state law;

(e) an order that Defendants, or any immediate or mediate transferee, turn over to the Trustee the full sum of the proceeds or value of the transfers pursuant to Section 550 of the Bankruptcy Code;

(f)  an order disallowing any and all claims of the Defendants against ELC's estate under

Section 502(d) of the Bankruptcy Code;

(g)  all other damages according to proof and all prejudgment interest allowed thereon;

and

(h) all other appropriate relief.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By: /s/ Harmony Mappes
    *Counsel for James A. Knauer, Chapter 11 Trustee*

Kevin M. Toner (#11343-49)
Harmony Mappes (# 27237-49)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kevin.toner@FaegreBD.com
harmony.mappes@FaegreBD.com

John R Burns (#3016-02)
Kevin J. Mitchell (#27258-02)
Faegre Baker Daniels LLP
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700
john.burns@FaegreBD.com
kevin.mitchell@FaegreBD.com

DMS_US 51311216v1