# EXHIBIT "B"

# SECURITY AGREEMENT

**Date**: August 28, 2007

**Debtor**: Brian Robert McAllister, Individually
275 Scotts Ridge
Rising Sun, IN 47040

**Secured Party**: Eastern Livestock Co., LLC
135 West Market
New Albany, IN 47150-3561

1. **Security Interest.** For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Debtor (hereinafter, whether one or more, called "Debtor," and if more than one the expression "Debtor" shall mean each debtor individually or each of them jointly and severally, as may be applicable) assigns and grants to the Secured Party a security interest and lien in the Collateral (hereinafter defined) to secure the payment and the performance of the Obligation (hereinafter defined).

2. **Collateral.** A security interest is granted in the following collateral described in this Item 2 (the "Collateral"):

   (a) **Description of Collateral.**

   - All cattle and any interest in any cattle (now owned or acquired later) and all offspring, increase and unborn young (wherever located and whether branded or unbranded) including, but not limited to approximately 45 Angus bull and heifer calves; all interests in any partnership, joint venture or other entity that owns any cattle, all inventories of feed, feed supplements and additives and veterinary medicines and supplies (and all warehouse receipts evidencing the ownership of grain and feed); contracts for the future purchase or sale or delivery of cattle or grain (including all commodities futures contracts entered through brokerage firms for the future sales or purchase, together with rights in margin accounts, as well as rights to performance of the contracts;

   - Any and all of Debtor's goods held as inventory, whether now owned or hereafter acquired, including without limitation, any and all such goods held for sale or lease or being processed for sale or lease, including all materials, goods and work in process, finished goods and other tangible property held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Debtor's business, along with all documents (including documents of title) covering such inventory.

   - All farm products of Debtor.

- Any and all of Debtor's crops whether now growing or hereafter grown, harvested or severed.

(b) **Substitutions, Proceeds and Related Items.** Any and all substitutes and replacements for, accessions, attachments and other additions to, tools, parts and equipment now or hereafter added to or used in connection with, and all cash or non-cash proceeds and products of, the Collateral (including, without limitation, all income, benefits and property receivable, received or distributed that results from any of the Collateral, such as dividends payable or distributable in cash, property or stock; insurance distributions of any kind related to the Collateral, including, without limitation, returned premiums, interest, premium and principal payments; redemption proceeds and subscription rights; and shares or other proceeds of conversions or splits of any securities in the Collateral); any and all choses in action and causes of action of Debtor, whether now existing or hereafter arising, relating directly or indirectly to the Collateral (whether arising in contract, tort or otherwise and whether or not currently in litigation); all certificates of title, manufacturer's statements of origin, other documents, accounts and chattel paper, whether now existing or hereafter arising directly or indirectly from or related to the Collateral; all warranties, wrapping, packaging, advertising and shipping materials used or to be used in connection with or related to the Collateral; all of Debtor's books, records, data, plans, manuals, computer software, computer tapes, computer systems, computer disks, computer programs, source codes and object codes containing any information, pertaining directly or indirectly to the Collateral and all rights of Debtor to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties, whether now existing or hereafter arising; and all returned, refused, stopped in transit, or repossessed Collateral, any of which, if received by Debtor, upon request will be delivered immediately to Secured Party.

3. **Description of Obligation(s).** The following obligations ("**Obligation**" or "**Obligations**") are secured by this Agreement: (a) All debts, obligations, liabilities and agreements of Debtor to Secured Party, now or hereafter existing, arising directly or indirectly between Debtor and Secured Party whether absolute or contingent, joint or several, secured or unsecured, due or not due, contractual or tortious, liquidated or unliquidated, arising by operation of law or otherwise, and all renewals, extensions or rearrangement of any of the above; (b) all costs incurred by Secured Party to obtain, preserve, perfect and enforce this Agreement and maintain, preserve, collect and realize upon the Collateral; and (d) all other costs and attorney's fees incurred by Secured Party for which Debtor is obligated to reimburse Secured Party in accordance with the terms of the Loan Documents (hereinafter defined), together with interest at the maximum rate allowed by law. If Debtor is not the obligor of the Obligation, and in the event any amount paid to Secured Party on any Obligation is subsequently recovered from Secured Party in or as a result of any bankruptcy, insolvency or fraudulent conveyance proceeding, Debtor will be liable to Secured Party for the amounts so recovered up to the fair market value of the Collateral whether or not the Collateral has been released or the security interest terminated. In the event the Collateral has been released or the security interest terminated, the fair market value of the Collateral will be determined, at Secured Party's option, as of the date the Collateral was released, the security interest terminated, or the amounts were recovered.

8/28/2007                                              2

4.   **Debtor's Warranties.**   Debtor hereby represents and warrants to Secured Party as follows:

(a)   **Financing Statements.**   Except as may be noted by schedule attached hereto and incorporated herein by reference, no financing statement covering the Collateral is or will be on file in any public office, except the financing statements relating to this security interest, and no security interest, other than the one herein created, has attached or been perfected in the Collateral or any part thereof.

(b)   **Ownership.**   Debtor owns, or will use the proceeds of any loans by Secured Party to become the owner of, the Collateral free from any setoff, claim, restriction, lien, security interest or encumbrance except liens for taxes not yet due and the security interest hereunder.

(c)   **Fixtures and Accessions.**   None of the Collateral is affixed to real estate or is an accession to any goods, or will become a fixture or accession, except as expressly set out herein.

(d)   **Claims of Debtors on the Collateral.**   All account debtors and other obligors whose debts or obligations are part of the Collateral have no right to setoffs, counterclaims or adjustments, and no defenses in connection therewith.

(e)   **Environmental Compliance.**   The conduct of Debtor's business operations and the condition of Debtor's property does not and will not violate any federal laws, rules or ordinances for environmental protection, regulations of the Environmental Protection Agency and any applicable local or state law, rule, regulation or rule of common law and any judicial interpretation thereof relating primarily to the environment or any materials defined as hazardous materials or substances under any local, state or federal environmental laws, rules or regulations, and petroleum, petroleum products, oil and asbestos ("**Hazardous Materials**").

(f)   **Power and Authority.**   Debtor has full power and authority to make this Agreement, and all necessary consents and approvals of any persons, entities, governmental or regulatory authorities and securities exchanges have been obtained to effectuate the validity of this Agreement.

5.   **Debtor's Covenants.**   Until full payment and performance of all of the Obligation and termination or expiration of any obligation or commitment of Secured Party to make advances or loans to Debtor, unless Secured Party otherwise consents in writing:

(a)   **Obligation and This Agreement.**   Debtor will perform all of its agreements herein and in any other agreements between it and Secured Party.

(b)   **Ownership and Maintenance of the Collateral.**   Debtor will keep all tangible Collateral in good condition. Debtor will defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Secured Party. Debtor will keep the Collateral free from all liens and security interests except those for taxes not yet due and the security interest hereby created. Debtor will furnish to Secured Party proof of payment of ad valorem taxes payable on the Collateral.

(c) **Insurance.** Debtor will insure the Collateral with companies acceptable to Secured Party. The insurance will be in an amount not less than the fair market value of the Collateral and will be against the casualties, with such deductible amounts as Secured Party will approve. All insurance policies will be written for the benefit of Debtor and Secured Party as their interests may appear, payable to Secured Party as loss payee, or in other form satisfactory to Secured Party, and the policies or certificates evidencing the same will be furnished to Secured Party. All policies of insurance will provide for written notice to Secured Party at least thirty (30) days prior to cancellation. Risk of loss or damage is Debtor's to the extent of any deficiency in any effective insurance coverage.

(d) **Secured Party's Costs.** Debtor will pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement, collect the Obligation, and preserve, defend, enforce and collect the Collateral, including but not limited to taxes, assessments, insurance premiums, repairs, rent, storage costs and expenses of sales, legal expenses, reasonable attorney's fees and other fees or expenses for which Debtor is obligated to reimburse Secured Party in accordance with the terms of the Loan Documents. Whether the Collateral is or is not in Secured Party's possession, and without any obligation to do so and without waiving Debtor's default for failure to make any such payment, Secured Party at its option may pay any such costs and expenses, discharge encumbrances on the Collateral, and pay for insurance of the Collateral, and the payments will be a part of the Obligation and bear interest at the rate set out in the Obligation. Debtor agrees to reimburse Secured Party on demand for any costs so incurred.

(e) **Information and Inspection.** Debtor will (i) promptly furnish Secured Party any information with respect to the Collateral requested by Secured Party; (ii) allow Secured Party or its representatives to inspect the Collateral, at any time and wherever located, and to inspect and copy, or furnish Secured Party or its representatives with copies of, all records relating to the Collateral and the Obligation; (iii) promptly furnish Secured Party or its representatives such information as Secured Party may request to identify the Collateral, at the time and in the form requested by Secured Party; and (iv) deliver upon request to Secured Party shipping and delivery receipts evidencing the shipment of goods and invoices evidencing the receipt of, and the payment for, the Collateral.

(f) **Additional Documents.** Debtor will sign and deliver any papers deemed necessary or desirable in the judgment of Secured Party to obtain, maintain, and perfect the security interest hereunder and to enable Secured Party to comply with any federal or state law in order to obtain or perfect Secured Party's interest in the Collateral or to obtain proceeds of the Collateral.

(g) **Parties Liable on the Collateral.** Debtor will preserve the liability of all obligors on any Collateral, will preserve the priority of all security therefor, and will deliver to Secured Party the original certificates of title on all motor vehicles or other titled vehicles constituting the Collateral. Secured Party will have no duty to preserve such liability or security, but may do so at the expense of Debtor, without waiving Debtor's default.

(h)     **Records of the Collateral.**  Debtor at all times will maintain accurate books and records covering the Collateral. Debtor immediately will mark all books and records with an entry showing the absolute assignment of all Collateral to Secured Party, and Secured Party is hereby given the right to audit the books and records of Debtor relating to the Collateral at any time and from time to time. The amounts shown as owed to Debtor on Debtor's books and on any assignment schedule will be the undisputed amounts owing and unpaid.

(i)     **Disposition of the Collateral.**  If disposition of any Collateral gives rise to an account, chattel paper or instrument, Debtor immediately will notify Secured Party, and upon request of Secured Party will assign or indorse the same to Secured Party. No Collateral may be sold, leased, manufactured, processed or otherwise disposed of by Debtor in any manner without the prior written consent of Secured Party.

(j)     **Accounts.**  Each account held as Collateral will represent the valid and legally enforceable obligation of third parties and will not be evidenced by any instrument or chattel paper.

(k)     **Notice/Location of the Collateral.**  Debtor will give Secured Party written notice of each office of Debtor in which records of Debtor pertaining to accounts held as Collateral are kept, and each location at which the Collateral is or will be kept, and of any change of any such location. If no such notice is given, all records of Debtor pertaining to the Collateral and all Collateral of Debtor are and will be kept at the address marked by Debtor above.

(l)     **Change of Name/Status and Notice of Changes.**  Without the written consent of Secured Party, Debtor will not change its name, change its corporate status, use any trade name or engage in any business not reasonably related to its business as presently conducted. Debtor will notify Secured Party immediately of (i) any material change in the Collateral, (ii) a change in Debtor's residence or location, (iii) a change in any matter warranted or represented by Debtor in this Agreement, or in any of the Loan Documents or furnished to Secured Party pursuant to this Agreement, and (iv) the occurrence of an Event of Default (hereinafter defined).

(m)     **Use and Removal of the Collateral.**  Debtor will not use the Collateral illegally. Debtor will not, unless previously indicated as a fixture, permit the Collateral to be affixed to real or personal property without the prior written consent of Secured Party. Debtor will not permit any of the Collateral to be removed from the locations specified herein without the prior written consent of Secured Party, except for the sale of inventory in the ordinary course of business.

(n)     **Possession of the Collateral.**  Debtor will deliver all investment securities and other instruments, documents and chattel paper that are part of the Collateral and in Debtor's possession to Secured Party immediately, or if hereafter acquired, immediately following acquisition, appropriately indorsed to Secured Party's order, or with appropriate, duly executed powers. Debtor waives presentment, notice of acceleration, demand, notice of dishonor, protest, and all other notices with respect thereto.

(o)     **Consumer Credit.**  If any Collateral or proceeds includes obligations of third parties to Debtor, the transactions giving rise to the Collateral will conform in all respects to the

applicable state or federal law including but not limited to consumer credit law. Debtor will hold harmless and indemnify Secured Party against any cost, loss or expense arising from Debtor's breach of this covenant.

(p) **Power of Attorney.** Debtor appoints Secured Party and any officer thereof as Debtor's attorney-in-fact with full power in Debtor's name and behalf to do every act Debtor is obligated to do or may be required to do hereunder; however, nothing in this paragraph will be construed to obligate Secured Party to take any action hereunder nor will Secured Party be liable to Debtor for failure to take any action hereunder. This appointment will be deemed a power coupled with an interest and will not be terminable as long as the Obligation is outstanding and will not terminate on the disability or incompetence of Debtor. This power includes but is not limited to the power to indorse Debtor's name on checks made payable to Debtor that relate to any Collateral.

(q) **Waivers by Debtor.** Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligation; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligation outstanding at any time, notice of any change in financial condition of any person liable for the Obligation or any part thereof, notice of any Event of Default, and all other notices respecting the Obligation; and agrees that maturity of the Obligation and any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its discretion, without notice to Debtor. Debtor waives any right to require that any action be brought against any other person or to require that resort be had to any other security or to any balance of any deposit account. Debtor further waives any right of subrogation or to enforce any right of action against any other Debtor until the Obligation is paid in full.

(r) **Other Parties and Other Collateral.** No renewal or extension of or any other indulgence with respect to the Obligation or any part thereof, no release of any security, no release of any person (including any maker, indorser, guarantor or surety) liable on the Obligation, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligation or any security therefor or guaranty thereof or under this Agreement will in any manner impair or affect the rights of Secured Party under the law, hereunder, or under any other agreement pertaining to the Collateral. Secured Party need not file suit or assert a claim for personal judgment against any person for any part of the Obligation or seek to realize upon any other security for the Obligation, before foreclosing or otherwise realizing upon the Collateral. Debtor waives any right to the benefit of or to require or control application of any other security or proceeds thereof, and agrees that Secured Party will have no duty or obligation to Debtor to apply to the Obligation any such other security or proceeds thereof.

(s) **Collection and Segregation of Accounts and Right to Notify.** Secured Party hereby authorizes Debtor to collect the Collateral, subject to the direction and control of Secured Party, but Secured Party may, without cause or notice, curtail or terminate the authority at any time. Upon notice by Secured Party, whether oral or in writing, to Debtor, Debtor will forthwith upon receipt of all checks, drafts, cash, and other remittances in payment of or on account of the Collateral, deposit the same in one or more special accounts maintained with Secured Party over

which Secured Party alone will have the power of withdrawal. The remittance of the proceeds of the Collateral will not, however, constitute payment or liquidation of the Collateral until Secured Party will receive good funds for the proceeds. Funds placed in the special accounts will be held by Secured Party as security for all Obligations secured hereunder. These proceeds will be deposited in precisely the form received, except for the indorsement of Debtor where necessary to permit collection of items, which indorsement Debtor agrees to make, and which indorsement Secured Party is also hereby authorized, as attorney-in-fact, to make on behalf of Debtor. In the event Secured Party has notified Debtor to make deposits to a special account, pending the deposit, Debtor agrees that it will not commingle any such checks, drafts, cash or other remittances with any funds or other property of Debtor, but will hold them separate and apart therefrom, and upon an express trust for Secured Party until deposit thereof is made in the special account. Secured Party will, from time to time, apply the whole or any part of the Collateral funds on deposit in this special account against the Obligations as are secured hereby as Secured Party may in its sole discretion elect. At the sole election of Secured Party, any portion of the funds on deposit in the special account that Secured Party elects not to apply to the Obligations may be paid over by Secured Party to Debtor. At any time, whether Debtor is or is not in default hereunder, Secured Party may notify persons obligated on any Collateral to make payments directly to Secured Party and Secured Party may take control of all proceeds of any Collateral. Until Secured Party elects to exercise such rights, Debtor, as agent of Secured Party, will collect and enforce all payments owed on the Collateral.

(t) **Compliance with State and Federal Laws.** Debtor will maintain its existence, good standing and qualification to do business, where required, and comply with all laws, regulations and governmental requirements, including without limitation, environmental laws applicable to it or any of its property, business operations and transactions.

(u) **Environmental Covenants.** Debtor will immediately advise Secured Party in writing of (i) any and all enforcement, cleanup, remedial, removal, or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state, or local laws, ordinances or regulations relating to any Hazardous Materials affecting Debtor's business operations; and (ii) all claims made or threatened by any third party against Debtor relating to damages, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Materials. Debtor will immediately notify Secured Party of any remedial action taken by Debtor with respect to Debtor's business operations. Debtor will not use or permit any other party to use any Hazardous Materials at any of Debtor's places of business or at any other property owned by Debtor except such materials as are incidental to Debtor's normal course of business, maintenance and repairs and that are handled in compliance with all applicable environmental laws. Debtor agrees to permit Secured Party, its agents, contractors and employees to enter and inspect any of Debtor's places of business or any other property of Debtor at any reasonable times upon three (3) days prior notice for the purposes of conducting an environmental investigation and audit (including taking physical samples) to insure that Debtor is complying with this covenant and Debtor will reimburse Secured Party on demand for the costs of any such environmental investigation and audit. Debtor will provide Secured Party, its agents, contractors, employees and representatives with access to and copies of any and all data and

documents relating to or dealing with any Hazardous Materials used, generated, manufactured, stored or disposed of by Debtor's business operations within five (5) days of the request therefor.

6.  **Rights and Powers of Secured Party.**

    (a)  **General.** Secured Party, before or after default, without liability to Debtor may: obtain from any person information regarding Debtor or Debtor's business, which information any such person also may furnish without liability to Debtor; require Debtor to give possession or control of any Collateral to Secured Party; indorse as Debtor's agent any instruments, documents or chattel paper in the Collateral or representing proceeds of the Collateral; contact account debtors directly to verify information furnished by Debtor; take control of proceeds, including stock received as dividends or by reason of stock splits; release the Collateral in its possession to any Debtor, temporarily or otherwise; require additional Collateral; reject as unsatisfactory any property hereafter offered by Debtor as Collateral; set standards from time to time to govern what may be used as after acquired Collateral; designate, from time to time, a certain percent of the Collateral as the loan value and require Debtor to maintain the Obligation at or below such figure; take control of funds generated by the Collateral, such as cash dividends, interest and proceeds or refunds from insurance, and use same to reduce any part of the Obligation and exercise all other rights that an owner of the Collateral may exercise, except the right to vote or dispose of the Collateral before an Event of Default; at any time transfer any of the Collateral or evidence thereof into its own name or that of its nominee; and demand, collect, convert, redeem, receipt for, settle, compromise, adjust, sue for, foreclose or realize upon the Collateral, in its own name or in the name of Debtor, as Secured Party may determine. Secured Party will not be liable for failure to collect any account or instruments, or for any act or omission on the part of Secured Party, its officers, agents or employees, except for its or their own willful misconduct or gross negligence. The foregoing rights and powers of Secured Party will be in addition to, and not a limitation upon, any rights and powers of Secured Party given by law, elsewhere in this Agreement, or otherwise. If Debtor fails to maintain any required insurance, to the extent permitted by applicable law Secured Party may (but is not obligated to) purchase single interest insurance coverage for the Collateral, which insurance may at Secured Party's option (i) protect only Secured Party and not provide any remuneration or protection for Debtor directly and (ii) provide coverage only after the Obligation has been declared due as herein provided. The premiums for any such insurance purchased by Secured Party will be a part of the Obligation and will bear interest as provided in 5((d)) hereof.

    (b)  **Convertible Collateral.** Secured Party may present for conversion any Collateral that is convertible into any other instrument or investment security or a combination thereof with cash, but Secured Party will not have any duty to present for conversion any Collateral unless it will have received from Debtor detailed written instructions to that effect at a time reasonably far in advance of the final conversion date to make the conversion possible.

7.  **Default.**

    (a)  **Event of Default.** An event of default ("**Event of Default**") will occur if: (i) there is a loss, theft, damage, or destruction of any material portion of the Collateral for which there is no insurance coverage or for which, in the opinion of Secured Party, there is insufficient

8/28/2007                                                                 8

insurance coverage; (ii) Debtor or any other obligor on all or part of the Obligation fails to timely and properly pay or observe, keep or perform any term, covenant, agreement or condition in this Agreement or in any other agreement between Debtor and Secured Party or between Secured Party and any other obligor on the Obligation that concerns or relates to the Obligation, including, but not limited to, any other note or instrument, loan agreement, security agreement, deed of trust, mortgage, promissory note, guaranty, certificate, assignment, instrument, document or other agreement concerning or related to the Obligation (collectively, the "**Loan Documents**"); (iii) there is an Event of Default under any loan agreement between Debtor and Secured Party; (iv) Debtor or such other obligor fails to timely and properly pay or observe, keep or perform any term, covenant, agreement or condition in any lease agreement between such party and any lessor pertaining to premises at which any Collateral is located or stored; (v) Debtor or such other obligor abandons any leased premises at which any Collateral is located or stored and the Collateral is either moved without the prior written consent of Secured Party or the Collateral remains at the abandoned premises; (vi) Debtor fails to timely and properly pay or observe, keep or perform any term, covenant, agreement, or condition contained in any other note, instrument, loan agreement, security agreement, deed of trust, mortgage, promissory note, guarantee, certificate, assignment, document, or other agreement between Debtor and the Secured Party; (v) the occurrence of a default or event of default by Debtor in connection with any Rate Management Transaction.

(b) **Rights and Remedies.** If any Event of Default will occur, then, in each and every such case, Secured Party may, without presentment, demand, or protest; notice of default, dishonor, demand, non-payment, or protest; notice of intent to accelerate all or any part of the Obligation; notice of acceleration of all or any part of the Obligation; or notice of any other kind, all of which Debtor hereby expressly waives, (except for any notice required under this Agreement, any other Loan Document or applicable law); at any time thereafter exercise and/or enforce any of the following rights and remedies at Secured Party's option:

(i) **Acceleration.** The Obligation will, at Secured Party's option, become immediately due and payable; and the obligation, if any, of Secured Party to permit further borrowings under the Obligation will at Secured Party's option immediately cease and terminate.

(ii) **Possession and Collection of the Collateral.** At its option: (1) take possession or control of, store, lease, operate, manage, sell, or instruct any Agent or Broker to sell or otherwise dispose of, all or any part of the Collateral; (2) notify all parties under any account or contract right forming all or any part of the Collateral to make any payments otherwise due to Debtor directly to Secured Party; (3) in Secured Party's own name, or in the name of Debtor, demand, collect, receive, sue for, and give receipts and releases for, any and all amounts due under such accounts and contract rights; (4) indorse as the agent of Debtor any check, note, chattel paper, documents, or instruments forming all or any part of the Collateral; (5) make formal application for transfer to Secured Party (or to any assignee of Secured Party or to any purchaser of any of the Collateral) of all of Debtor's permits, licenses, approvals, agreements, and the like relating to the Collateral or to Debtor's business; (6) take any other action Secured Party deems necessary or desirable to protect and realize upon its security interest in the Collateral; and (7) in addition to the foregoing, and not in substitution therefor, exercise

any one or more of the rights and remedies exercisable by Secured Party under any other provision of this Agreement, under any of the other Loan Documents, or as provided by applicable law (including, without limitation, the Uniform Commercial Code as in effect in Indiana (hereinafter referred to as the "**UCC**")). In taking possession of the Collateral Secured Party may enter Debtor's premises and otherwise proceed without legal process, if this can be done without breach of the peace. Debtor will, upon Secured Party's demand, promptly make the Collateral or other security available to Secured Party at a place designated by Secured Party, which place will be reasonably convenient to both parties.

Secured Party will not be liable for, nor be prejudiced by, any loss, depreciation or other damages to the Collateral, unless caused by Secured Party's willful and malicious act. Secured Party will have no duty to take any action to preserve or collect the Collateral.

       (iii)   **Receiver.**  Obtain the appointment of a receiver for all or any of the Collateral, Debtor hereby consenting to the appointment of such a receiver and agreeing not to oppose any such appointment.

       (iv)   **Right of Set Off.**  Without notice or demand to Debtor, set off and apply against any and all of the Obligation any and all deposits (general or special, time or demand, provisional or final) and any other indebtedness, at any time held or owing by Secured Party or any of Secured Party's agents or affiliates to or for the credit of the account of Debtor or any guarantor or indorser of Debtor's Obligation.

Secured Party will be entitled to immediate possession of all books and records evidencing any Collateral or pertaining to chattel paper covered by this Agreement and it or its representatives will have the authority to enter upon any premises upon which any of the same, or any Collateral, may be situated and remove the same therefrom without liability. Secured Party may surrender any insurance policies in the Collateral and receive the unearned premium thereon. Debtor will be entitled to any surplus and will be liable to Secured Party for any deficiency. The proceeds of any disposition after default available to satisfy the Obligation will be applied to the Obligation in such order and in such manner as Secured Party in its discretion will decide.

Debtor specifically understands and agrees that any sale by Secured Party of all or part of the Collateral pursuant to the terms of this Agreement may be effected by Secured Party at times and in manners that could result in the proceeds of the sale as being significantly and materially less than might have been received if the sale had occurred at different times or in different manners, and Debtor hereby releases Secured Party and its officers and representatives from and against any and all obligations and liabilities arising out of or related to the timing or manner of any such sale.

If, in the opinion of Secured Party, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Secured Party may offer and sell the Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Secured Party will be deemed "commercially reasonable."

8.   **General.**

(a)     **Parties Bound.**  Secured Party's rights hereunder will inure to the benefit of its successors and assigns. In the event of any assignment or transfer by Secured Party of any of the Obligation or the Collateral, Secured Party thereafter will be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Secured Party will retain all rights and powers hereby given with respect to any of the Obligation or the Collateral not so assigned or transferred. All representations, warranties and agreements of Debtor if more than one are joint and several and all will be binding upon the personal representatives, heirs, successors and assigns of Debtor.

(b)     **Waiver.**  No delay of Secured Party in exercising any power or right will operate as a waiver thereof; nor will any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Secured Party of any right hereunder or of any default by Debtor will be binding upon Secured Party unless in writing, and no failure by Secured Party to exercise any power or right hereunder or waiver of any default by Debtor will operate as a waiver of any other or further exercise of such right or power or of any further default. Each right, power and remedy of Secured Party as provided for herein or in any of the Loan Documents, or that will now or hereafter exist at law or in equity or by statute or otherwise, will be cumulative and concurrent and will be in addition to every other such right, power or remedy. The exercise or beginning of the exercise by Secured Party of any one or more of such rights, powers, or remedies will not preclude the simultaneous or later exercise by Secured Party of any or all other such rights, powers or remedies.

(c)     **Agreement Continuing.**  This Agreement will constitute a continuing agreement, applying to all future as well as existing transactions, whether or not of the character contemplated at the date of this Agreement, and if all transactions between Secured Party and Debtor will be closed at any time, will be equally applicable to any new transactions thereafter. Provisions of this Agreement, unless by their terms exclusive, will be in addition to other agreements between the parties. Time is of the essence of this Agreement.

(d)     **Definitions.**  Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, definitions in Article 9 of the UCC will apply.

(e)     **Notices.**  Notice will be deemed reasonable if mailed postage prepaid at least five (5) days before the related action (or if the UCC elsewhere specifies a longer period, that longer period) to the address of Debtor given above, or to such other address as any party may designate by written notice to the other party. Each notice, request and demand will be deemed given or made, if sent by mail, upon the earlier of the date of receipt or five (5) days after deposit in the U.S. Mail, first class postage prepaid, or if sent by any other means, upon delivery.

(f)     **Modifications.**  No provision hereof will be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Debtor and Secured Party. The provisions of the Agreement will not be modified or limited by course of conduct or usage of trade.

8/28/2007                                                                11

(g) **Applicable Law and Partial Invalidity.** This Agreement has been delivered in the State of Indiana and will be construed in accordance with the laws of that State. Wherever possible each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement will be prohibited by or invalid under applicable law, the provision will be ineffective to the extent of the prohibition or invalidity, without invalidating the remainder of the provisions or the remaining provisions of this Agreement. The invalidity or unenforceability of any provision of any Loan Document to any person or circumstance will not affect the enforceability or validity of the provision as it may apply to other persons or circumstances.

(h) **Financing Statement.** To the extent permitted by applicable law, a carbon, photographic or other reproduction of this Agreement or any financing statement covering the Collateral will be sufficient as a financing statement.

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly executed by their duly authorized representatives as of the date first above written.

**DEBTOR:**

_____
Brian Robert McAllister, Individually

**SECURED PARTY:**

Eastern Livestock Co., LLC
By: _____
Print Name: Thomas P. Gibson
Title: Manager