Exhibit A

**Settlement Agreement**

This Settlement Agreement is made as of July 30, 2013 by and between James A. Knauer as chapter 11 trustee (the "Trustee") for Eastern Livestock Co., LLC (the "Debtor") and Irsik & Doll Feed Services, Inc. d/b/a Royal Beef Feed Yard ("Irsik & Doll").  The Trustee and Irsik & Doll shall collectively be referred to herein as the "Parties."

**Recitals**

A. Certain petitioning creditors commenced a chapter 11 case (the "Chapter 11 Case") against the Debtor on December 6, 2010 by filing an involuntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court").  The Court entered the *Order For Relief in An Involuntary Case and Order to Complete Filing* [Dock. No. 110] on December 28, 2010.

B. Irsik & Doll filed two proofs of claim (the "POCs") in the Chapter 11 Case.  The POCs are designated on the official claims register maintained by The BMC Group, Inc. as claim nos. 312 and 366 and assert unsecured claims totaling $514,889.40.  The Trustee filed an objection (the "Objection") to the POCs.

C. The Trustee filed the *Trustee's Chapter 11 Plan of Liquidation* on July 23, 2012 [Docket No. 1255] and the *First Amended Chapter 11 Plan of Liquidation* on October 26, 2012 [Dock. No. 1490] (as it may be subsequently amended or modified, the "Plan").  The Court entered an Order on December 17, 2012 [Dock. No. 1644] (the "Confirmation Order") confirming the Plan.  Pursuant to the Plan and the Confirmation Order, general unsecured creditors of Debtor's estate may choose to "opt in" and receive a distribution from the "Fifth Third Claim Settlement Fund" (as that term is defined in the Plan). Choosing to "opt-in" affects such creditor's rights to and amount of distributions under the Plan, waives certain of the creditor's claims against non-Debtor entities and has other and further effects that are more particularly described in the Plan and the Confirmation Order.  Irsik & Doll submitted an "opt-in" agreement.

D. Debtor delivered to Irsik & Doll those certain cattle constituting "Delivered Cattle" as defined in paragraph 17 of the Complaint with respect to which the Trustee seeks recovery of the "Unpaid Delivered Cattle AR" or the "Delivered Cattle Equity" as defined respectively in paragraphs 19 and 24 of the Complaint (the "Subject Cattle").  Debtor's records indicated that the Subject Cattle were sold outright to Irsik & Doll.  However, documents produced in response to a subpoena revealed that, at least in some instances, Irsik & Doll may have been financing Thomas Scott Gibson's purported purchases of the Subject Cattle from Debtor.  Other documents revealed that Irsik & Doll may have financed alleged purchases of Debtor's cattle by Ed Edens (including E4 Cattle, "Edens") and/or McGib Cattle, respectively.

E. Because Debtor was not paid in full for the Subject Cattle, the Trustee initiated Adv. Proc. No. 12-59159 (the "Adversary") by filing a complaint (the "Complaint") against Irsik & Doll, Thomas Scott Gibson ("Scott") and Lisa Gibson on December 27, 2012.  The Complaint asserts alternative theories of recovery against Irsik & Doll and Scott relating to the delivery of the Subject Cattle.  The Trustee had already filed an adversary proceeding against Edens and is currently exploring the merits of litigation against McGib Cattle.

F. The Trustee served discovery on Irsik & Doll after the filing of the Complaint in order to better understand the party responsible for remaining payments owed on the Subject Cattle.  Irsik & Doll produced documents in response to the Trustee's discovery requests accounting for the proceeds of all Subject Cattle.  Irsik & Doll's document production demonstrates that certain of the Subject Cattle were

1

sold outright to Irsik & Doll (for itself or as part of a joint venture in which Irsik & Doll participated) while certain of the Subject Cattle were purportedly purchased by Scott, Edens or McGib Cattle with financing provided by Irsik & Doll.  For the Subject Cattle that were sold outright to Irsik & Doll, Irsik & Doll produced documentation to evidence that Irsik & Doll paid for the Subject Cattle in full at the time of delivery.  For the Subject Cattle that were purportedly sold to Scott, Edens or McGib Cattle, Irsik & Doll produced documentation to evidence the financing provided by Irsik & Doll, the costs of caring for the Subject Cattle while they were located with Irsik & Doll, the sale price of the Subject Cattle and the "equity" checks that were delivered to Scott, Edens or McGib Cattle upon the re-sale of the Subject Cattle.

G. Irsik and Doll retains possession of $141, 254.64 of the proceeds of the Subject Cattle (the "Outstanding Proceeds") which consists, in part, of $11,522.62 in proceeds which were represented by checks payable to and delivered to Scott and $66,036.46 in proceeds which were represented by checks payable to and delivered to McGib.  None of these checks were ever presented by Scott or McGib to Irsik and Doll's bank account and Irsik and Doll ultimately stopped payment on these checks in the event they were lost, stolen, or destroyed.  Edens asserts rights to a portion of the Outstanding Proceeds in the aggregate sum of $63,695.56, which the Trustee disputes (the "Purported Edens Proceeds"), and which Irsik and Doll has been holding and awaiting further order of the Court.   The Trustee claims that the entirety of the Outstanding Proceeds are owed to Debtor's estate.

H. The Parties now desire to resolve and settle all issues, disputes, claims and causes of actions between the Trustee and Irsik & Doll without further litigation and without admission of any fault or liability and, as a result of good faith settlement negotiations, have agreed to settle and resolve all such issues, disputes, claims and causes of action on the terms set forth below.

NOW THEREFORE, incorporating the foregoing Recitals and based upon the mutual promises contained in this Settlement Agreement and other valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. Court Approval of Settlement Agreement.  This Settlement Agreement is subject to Court approval under Federal Rule of Bankruptcy Procedure 9019.  Within five (5) business days following execution of this Settlement Agreement, the Trustee shall file with the Court a motion, in a form acceptable to the Parties, requesting the Court's approval of this Settlement Agreement (the "Settlement Motion") and a proposed order approving the Settlement Agreement and Settlement Motion in a form acceptable to the Parties (the "Settlement Order").  The effectiveness of this Settlement Agreement is contingent upon the Court's entry of the Settlement Order. The date the Settlement Order is entered by the Court, shall be referred to herein as the "Effective Date."  The Parties shall file such additional information as the Court may request in an effort to obtain Court approval of the Settlement Motion.  The Parties shall, in good faith, use all reasonable efforts to obtain approval of the Settlement Motion.

2. Settlement.  Within five (5) days of the Effective Date, Irsik & Doll shall deliver the Outstanding Proceeds to the Trustee via immediately available funds.  The Trustee shall hold the Purported Edens Proceeds in escrow until the earlier of the Court's determination of relative rights in and to the Purported Edens Proceeds and agreement between the Trustee and Edens as to the respective rights of the Debtor's estate and Edens in and to the Purported Edens Proceeds.  Irsik & Doll releases, waives and shall not assert any rights in and to the Outstanding Proceeds.  As of the Effective Date,(i)  the Trustee agrees not to further contest the POCs, and (ii) the POCs shall be allowed as a single unsecured, "opt-in" claim in the total amount of $265,000 (the "Allowed Claim").

2

3. <u>Dismissal from Adversary; Withdrawal of Objection</u>.  Within five (5) business days of the Effective Date, the Trustee shall (a) file a motion to dismiss with prejudice his claims against Irsik & Doll in the Adversary and (b) withdraw the Objection.

4. <u>Indemnification</u>.  The Trustee agrees to indemnify, defend and hold Irsik & Doll harmless against any and all claims, liabilities, losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) which may be incurred by, asserted against, or imposed on Irsik & Doll by any person making a claim to the Outstanding Proceeds delivered to the Trustee.  The Trustee's indemnification obligation shall be limited to the amount of the Outstanding Proceeds and shall only arise if Irsik & Doll provides the Trustee with written notice of the commencement of formal litigation regarding any such claims, losses, damages costs or expenses with sufficient time for the Trustee to appear and defend any such cause of action.  The Trustee shall not be responsible for Irsik & Doll's voluntary payment to a third party of any such claims, liabilities, losses, costs or expenses.

5. <u>Release of Liability</u>.  The Trustee hereby releases and forever discharges Irsik & Doll, and its employees, officers and successors and assigns, from any and all claims and causes of action of every kind that now exist or may subsequently arise on account of and particular to the Subject Cattle or the Oustanding Proceeds.   This release of liability applies to all claims, actions, demands, costs, losses, damages, expenses, claims for attorney fees, claims for punitive damages, and causes of action of every kind which the Trustee now has or which may subsequently arise, whether known or unknown, arising out of and particular to the Subject Cattle or the Outstanding Proceeds.

6. <u>Cooperation</u>.  The Parties agree and covenant that they will cooperate and take all reasonable actions to assist one another in resolving competing claims to the Outstanding Proceeds.  The Parties further agree and covenant to execute further documents that may be necessary to implement this Settlement Agreement.

7. <u>Qualification; Authority</u>.  Each individual executing this Settlement Agreement on behalf of a party represents and warrants that he or she is duly authorized to execute and deliver this Settlement Agreement on behalf of such party and that no additional consents or signatures on behalf of such party are required in order for this Settlement Agreement to be binding and enforceable upon and against said party.

8. <u>Each of the Parties Bears Own Costs</u>.  Each of the Parties agrees that it shall bear its own attorneys' fees and other costs incurred in connection with the negotiation and preparation of this Settlement Agreement and the procurement of the Settlement Order, including the preparation and filing of, and hearings for, all related motions.

9. <u>Successors and Assigns</u>.  This Settlement Agreement shall inure to the benefit of the Parties and their respective heirs, affiliates, assigns and successors in interest.

10. <u>Court Jurisdiction</u>.  The Court shall retain exclusive jurisdiction to hear, decide and enter a final order on any and all claims or disputes arising out of the execution and performance of this Settlement Agreement.

11. <u>Governing Law</u>.  This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana except to the extent superseded by the Federal bankruptcy law applicable to the Chapter 11 Case.

12. <u>Merger of Prior Agreements</u>.  This Settlement Agreement constitutes the entire agreement between the Parties, and any and all prior or contemporaneous agreements, whether oral or written, related thereto are merged into this Settlement Agreement and are of no further force or effect.

13. <u>Counterparts; Facsimile Delivery</u>.  This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all Parties.  Signatures may be delivered by facsimile and such signatures shall be binding upon the party delivering same as if they were originals.

14. <u>Agreement Nonseverable and Mutually Dependent</u>.  All provisions of this Settlement Agreement are to be read in conjunction with each other.  Each and every provision contained in this Settlement Agreement is nonseverable and mutually dependent on each and every other provision contained herein.  Provisions should be read together so as to harmonize the whole.

15. <u>Amendment</u>.  This Settlement Agreement may not be amended, changed, modified, released or discharged except by a writing executed by duly authorized representatives of each of the Parties and signatories hereto.

16. <u>No Admission of Fault or Liability</u>.  This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of either party.

17. <u>No Presumption Against Drafter</u>.  This Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Agreement.

*[Remainder of page left blank.  Signature page to follow.]*

4

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates indicated below.

Irsik & Doll Feed Services, Inc. d/b/a Royal Beef Feed Yard

By:_____

Printed Name:_____

Title: _____

Date: _____

James A Knauer as Chapter 11 Trustee for the Debtor, Eastern Livestock., LLC

_____
                                                           Date