# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WELLS FARGO BANK, N.A.,                           Case No. 1:12-cv-794

        Plaintiff,                              Beckwith, J.
                                                  Bowman, M.J.
  v.

FIFTH THIRD BANK,

        Defendant.


## MEMORANDUM ORDER

### I. Background

Plaintiff initiated this litigation against Fifth Third Bank in October 2012, seeking money damages for alleged breach of contract and gross negligence, arising out of Fifth Third's administration of a $32.5 million dollar line of credit to a non-party, Eastern Livestock Co., LLC, ("Eastern"), described as a large cattle broker headquartered in New Albany, Indiana. (Doc. 1). The allegations of the complaint were previously summarized by this Court on March 14, 2013 in the context of the Court's Order dismissing the claim of gross negligence. (Doc. 27). In light of that dismissal, only Wells Fargo's breach of contract claim remains pending.

According to the complaint, in 2005 after Eastern sought to increase its line of credit, Fifth Third and Wells Fargo "entered into a 'Participation Agreement'…, whereby Wells Fargo purchased a $10 million interest in the Eastern line of credit, increasing the limit on Eastern's account to 32.5 million." (Doc. 27 at 2, citing Doc. 1 at ¶14). Early in

2010, Eastern sought a second increase in its line of credit. (*Id.* at 3; Doc. 1 at ¶29). Fifth Third conducted an audit in response. Upon reviewing the audit results provided by Fifth Third, Wells Fargo expressed concerns and stated it "wanted out" of the line of credit. (Doc. 1 at ¶34). "Ultimately, Wells Fargo consented to an extension of the maturity date on the line of credit to October 18, 2010, based on Fifth Third's representation that it would conduct a second audit that would 'put to rest the affiliate activity.'" (Doc. 27 at 3-4; Doc. 1 at ¶36). The line of credit matured on October 18, 2010, but Wells Fargo alleges that Fifth Third did not apply funds deposited by Eastern to the line of credit. (Doc. 27 at 4).

In November 2010, "Fifth Third informed Wells Fargo that it had identified apparent check kiting activity on Eastern's account and that the account was frozen." (Doc. 27 at 4; Doc. 1 at ¶42). In December, 2010, Eastern's unsecured creditors forced it into an involuntary Chapter 11 Bankruptcy. (Doc. 1 at ¶46). On September 30, 2011, the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, issued an Order in that case adopting the parties' Stipulated Confidentiality Agreement. Wells Fargo was not a party in that bankruptcy proceeding.

Meanwhile, in its complaint in this Court, Wells Fargo alleged that it suffered damages in an amount of not less than $10 million. (Doc. 1 at ¶¶57,62). On March 14, 2013, the Court granted Fifth Third's motion to dismiss, with prejudice, Wells Fargo's claim of gross negligence. The Court held that the tort claim was duplicative of Wells Fargo's breach of contract claim, and that the claim was barred by Ohio's economic loss doctrine. (Doc. 27). Shortly after the Court's decision, Wells Fargo moved to amend its complaint. Fifth Third filed a response in opposition, to which Wells Fargo filed a reply

memorandum on April 26, 2013. The contents of Wells Fargo's reply memorandum generated a motion for a protective order by Fifth Third, which motion remains pending before the undersigned. On May 16, 2013, the Court granted Wells Fargo's motion to amend its complaint to add allegations to support its breach of contract claim.

## II. Analysis of Pending Motion For Protective Order

The single motion for protective order/motion to seal filed by Fifth Third has been extensively briefed to date. In fact, the Court has reviewed a total of 171 pages of motions and attached exhibits filed in the record, including a surreply filed by Wells Fargo, but not counting additional pages not filed of record but transmitted to the undersigned in preparation for the Court's July 18, 2013 scheduled discovery conference.[1] For the reasons that follow, Fifth Third's motion will be granted, with the disputed documents to remain with a Confidential designation and under seal, until review of the same documents by the United States Bankruptcy Court that issued the protective order.

### A. Fifth Third's Argument

Fifth Third's pending motion seeks "immediate entry of an order sealing the Reply Memorandum" filed by Wells Fargo in favor of its motion to amend its complaint, asserting that the memorandum and the affidavit of counsel, Suzanne M. Shehan, attached as an exhibit to that affidavit, are "replete with quotes from and references to Fed. Bank R. 2004 transcripts that are protected from disclosure by a stipulated

---

[1]Regrettably, among those many pages is evidence of argument that is both personal and vitriolic in nature. It is one thing to zealously represent one's client, but quite another to confuse zealous representation with a "no holds barred" attack that includes personal disparagement. Finding evidence of overly rancorous argument by both parties, the undersigned can only plead for significantly greater restraint in the future. If the position of any party is so insincere that it could be described as "scurrilous" or as "reek[ing] of bad faith," one would hope that this Court will easily ascertain that fact without the necessity of opposing counsel using up additional paper to point it out.

confidentiality agreement and order approving the same" entered in Eastern's prior bankruptcy case." (Doc. 32). The same motion seeks an order "preventing Wells Fargo from further using or filing such materials designated as "Confidential" under the Bankruptcy Court's Confidentiality Agreement and Order until Wells Fargo has obtained relief from the bankruptcy court to do so." (Doc. 32 at 2).

Fifth Third represents that, pursuant to the Bankruptcy Court's September 30, 2011 Order Granting Motion for Entry of Stipulated Confidentiality Agreement ("Bankruptcy Agreement"), Fifth Third produced approximately 30,000 pages of documents that Fifth Third designated as "Confidential Materials." Third parties also produced materials, and thirteen witnesses offered testimony that was, at least in part, designated as "Confidential." According to Fifth Third, it timely designated the Rule 2004 examinations of Fifth Third representatives and of Wayne Stoffel as "Confidential." (*See* Doc. 32-1 at 3, ¶7 and at 18-29; Doc. 32-2). Fifth Third contends that use of any materials designated as "Confidential" under the Bankruptcy Agreement was and is restricted to the bankruptcy proceedings alone.

There is no dispute that Special Counsel for the Bankruptcy Trustee provided Wells Fargo with access to twelve Rule 2004 transcripts at the request of Plaintiff's counsel (Doc. 31-1 at 2, ¶¶3-4; Doc. 32 at 6; Doc. 32-1 at ¶5). At the time the transcripts were provided to Wells Fargo, Special Counsel for the Bankruptcy Trustee did not advise Wells Fargo that their use was restricted as Confidential per the Bankruptcy Agreement. Wells Fargo asserts that the delivery of the materials was "unrestricted and unconditional." (Doc. 33 at 4). The transcripts do not on their face bear a "Confidential" marking. However, a Declaration from Special Counsel attests

that he did not *expressly* authorize use of the Rule 2004 transcripts in this litigation by Wells Fargo.  (Doc. 32-1 at ¶¶7-9).

Notwithstanding the lack of any Confidential marking, Fifth Third notified Wells Fargo both verbally and in writing, shortly before the April 26 filing of the disputed reply memorandum, that the Rule 2004 transcripts were in fact Confidential, with their use restricted under the Bankruptcy Agreement.[2]  While not included in Fifth Third's motion, a closely related dispute later arose and formed part of the subject matter of the telephonic discovery conference held on July 18, 2013.  In that conference, Wells Fargo sought to compel Fifth Third to produce four additional Rule 2004 transcripts, which Fifth Third has declined to do on grounds that the prior transcripts, produced by Special Counsel, had been misused by Wells Fargo.   During the discovery conference, Fifth Third conceded the relevancy of the transcripts, and counsel represented that he had "no problem" with the production of the same to Wells Fargo, so long as Wells Fargo abided by the Bankruptcy Agreement.  On the record presented, based upon the prior knowledge of Wells Fargo that Fifth Third believed the disputed materials to be Confidential, Fifth Third seeks an award of costs and fees.

### B.  Wells Fargo's Response

On a procedural level, Wells Fargo argues that Fifth Third's motion for a protective order should be summarily denied because it was filed in violation of LR 7.2(a)(1), which requires parties to include with any motion a memorandum that includes a "citation of authorities" in support.  Fifth Third's original motion to seal did not

---

[2]Correspondence by counsel for Fifth Third to counsel for Wells Fargo, dated April 11, 2013, states that the "2004 examination transcripts …were disclosed to Wells Fargo in violation of a court order."  (Doc. 32-3 at 10).  After the reply memorandum was filed, Fifth Third requested it be withdrawn or, alternatively, designated to be filed under seal.  (Doc. 32-3 at 14).

include citation to legal authority other than the Bankruptcy Agreement, but the undersigned concludes that is sufficient to satisfy LR 7.2.

Turning to more substantive and fact-based arguments, Wells Fargo acknowledges the prior notice by Fifth Third's counsel, but challenges the Confidential designation and/or the applicability of the Bankruptcy Agreement to Wells Fargo, a non-party to that Agreement.[3]  Wells Fargo argues that Fifth Third did not provide any real *evidence*, prior to April 26, to support counsel's assertion that the materials had properly been designated as "Confidential" in the prior bankruptcy proceedings.  However, Wells Fargo did not ask for such proof.  Moreover, Wells Fargo acknowledges that on or about April 30, 2013, a few days *after* it filed the disputed materials, it received a letter from Special Counsel for the Trustee, "for the first time advising Wells Fargo [that] 'any use of the 2004 exams is subject to' the stipulated [Bankruptcy] agreement and order and, also for the first time, providing copies of letters in which Fifth Third allegedly 'designated' portions of the 2004 examinations confidential."  (Doc. 33 at 6).[4]

Wells Fargo challenges that designation on grounds that the materials do not qualify as trade secrets or other information that can be protected by Rule 26, under Sixth Circuit case law.  Wells Fargo explains its disregard for the representation of Fifth

---

[3]Despite being a non-party to the bankruptcy proceedings, Wells Fargo acknowledges that it did produce documents in the course of those proceedings, which Wells Fargo itself designated "Confidential."  In light of that designation, Fifth Third argues that Wells Fargo has availed itself of the same Bankruptcy Agreement it now seeks to avoid.  However, Wells Fargo protests that it used a "generic confidential watermark" due to time constraints that precluded more exhaustive review prior to production.  After First Bank objected to its blanket designation, Wells Fargo states that it chose not to pursue a motion for protective order in bankruptcy court, as would have been required to maintain the disputed Confidential designation under the Bankruptcy Agreement.

[4]Fifth Third's attorney attests that the Rule 2004 examinations were properly designated "Confidential" under ¶3 of the Bankruptcy Agreement, which on its face pertains only to "depositions."  Wells Fargo terms the Rule 2004 transcripts as "depositions" or at least equivalent to depositions based on the underlying bankruptcy record, but Fifth Third (despite the reference to ¶3 of the Bankruptcy Agreement) does not.  As further explained below, it is precisely this type of dispute that the Bankruptcy Court is best equipped to resolve.

Third's counsel that the materials were "Confidential" by explaining: "In light of the further fact Fifth Third had also designated every document as "Confidential" in its production of approximately 18,000 documents to Wells Fargo, even though those same documents had already been made public over one year earlier on December 22, 2011 in Kentucky criminal proceedings, Wells Fargo had reason to believe Fifth Third's after-the-fact, informal assertions of confidentiality with regard to the 2004 examination transcripts – without any proof – were equally as unreliable." (Doc. 33 at 5). Wells Fargo additionally argues that it was justified in using the materials based on Fifth Third's "scurrilous" accusation that, under Rule 11, Wells Fargo lacked sufficient knowledge of the facts to include the new allegations contained in the proposed Amended Complaint.

In support of its Rule 26 argument, Wells Fargo relies on the seminal cases of *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983) and *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996), as well as subsequent case law, to advocate for public access to the documents. Under that authority, the burden of establishing good cause for a protective order rests on Fifth Third. As stated in *United States v. Contents of Nationwide Life Ins. Co., Account No. X0961 in name of Warshak*, 1:05-cv-196, 2006 WL 971978, at *4 (S.D. Ohio, Apr. 12, 2006), the Sixth Circuit has "emphasized that where company records are at issue, sensitive information should ordinarily rise to the level of privileged 'trade secrets' before it may be sealed." Wells Fargo asserts that the subject documents not only do not rise to that level, but Fifth Third has failed to even argue that public access to the documents "would result in serious competitive or financial harm." *Salling v. Budget Rent-A-Car*

*Sys., Inc.*, No. 1:09-cv-2160, 2010 WL 446073 at *2 (N.D. Ohio Feb. 2, 2010). Wells Fargo offers examples of several facts, included in the alleged "Confidential" materials, that are already of public record, either because they are readily found on the internet or in other public documents and pleadings. However, Fifth Third represents that the limited examples provided by Wells Fargo misrepresent the Confidential designations for the vast majority of the Rule 2004 transcripts, which Fifth Third strenuously argues do contain highly sensitive bank information of a non-public nature.

Wells Fargo also relies on a type of estoppel argument, based upon Fifth Third's prior withdrawal of a similar motion to seal the same materials, in the context of a different case currently proceeding in the Hamilton County, Ohio Court of Common Pleas (the "First Bank" case). Wells Fargo points out that Fifth Third filed a "virtually identical" motion to seal the same materials in May 2012 in the First Bank action, citing the same 2004 examination testimony. However, following First Bank's opposition, Fifth Third withdrew its motion to seal, acknowledging after mediation on the issue that the information had already been "generally disseminated in the public realm." (Doc. 33 at 7). Fifth Third distinguishes between First Bank's actions and the actions of Wells Fargo, arguing that First Bank only improperly quoted from some Confidential portions, versus Wells Fargo's action in attaching partial transcripts. In addition, Fifth Third explains that it sought an order of contempt against First Bank, and only after mediation of that motion did it withdraw the motion, in exchange for First Bank's agreement to strictly abide by the Bankruptcy Agreement in the future. Finally, Fifth Third argues that it did not take any action to waive the right to confidentiality but "simply recognized that First Bank's complaint had already been published in the media and linked by several

websites, thus preventing Fifth Third from putting the genie back in the bottle." (Doc. 36 at 12).

Wells Fargo asserts that Fifth Third later quoted from some of the same 2004 exam testimony in documents that Fifth Third publicly filed. Wells Fargo additionally argues waiver based upon Fifth Third's prior production of some of the "Confidential" portions of the 2004 examinations in open court in the First Bank action. However, Fifth Third denies having quoted from Confidential portions of the transcripts or having referenced any of the instant disputed materials in open court in the First Bank action. Fifth Third protests that it referred only to portions that were non-confidential. Nevertheless, based upon Fifth Third's alleged disclosure in the First Bank action, Wells Fargo also requests an award of costs and fees "to redress Fifth Third's improper motion practice." (Doc. 33 at 19).

Last, Wells Fargo argues that even if this Court looks only to the terms of the Bankruptcy Agreement, the subject materials do not, merely by Fifth Third's designation, qualify as Confidential material. Wells Fargo denies that it can be bound by the Bankruptcy Agreement, given that it was not a party to that Agreement. Yet, Wells Fargo notes that it is "currently reviewing whether it would have standing" to seek relief from the Bankruptcy Agreement directly in the bankruptcy court. (Doc. 33 at 20, n.13).[5] Alternatively, Wells Fargo argues that the materials do not fall within the Agreement's definition of "Confidential Material" as "trade secret or other confidential research, development agreement, financial information or commercial document,

---

[5]In its surreply, Wells Fargo more strongly opposes referral of this issue to the bankruptcy court, on grounds that Wells Fargo "has no independent interest in the bankruptcy matter and it is far from clear Wells Fargo has standing to pursue such relief or that the bankruptcy court has jurisdiction to grant such relief." (Doc. 39-1 at 9).

information or other material as used in Rules 26(c)(1)(g) and 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure ….and which is designated as 'Confidential' under this Agreement." Primarily, Wells Fargo argues that the Bankruptcy Agreement amounted to a blanket adoption of the parties' Stipulated Confidentiality Agreement for purposes of discovery in that proceeding, in contrast to an "actual protective order." Wells Fargo asserts that, to qualify as a formal protective order, the parties and the Bankruptcy Court would have had to proceed under Federal Rule of Bankruptcy Procedure 9037.[6] Based in part on its view that the Bankruptcy Agreement is entitled to less deference than would be accorded a more closely reviewed protective order, Wells Fargo asserts that this Court should not defer to that agreement without close examination of the disputed "Confidential" materials. Given the strong policy reasons for public access, and looking to Fifth Third's alleged failure to prove the Confidential nature of the materials on the record presented, Wells Fargo urges this Court to open the materials to the public.

### C. Additional Arguments in Reply and Surreplay – Which Court to Decide

In its reply, Fifth Third argues that this Court should respect and defer to the Bankruptcy Court for a determination of whether the materials are properly designated, since that court is presumed to be in the best position to review its own order, which, after all, contains a provision for seeking relief from a contested Confidentiality designation.[7] Fifth Third accuses Wells Fargo of making "a clear end-run around the Bankruptcy Court." (Doc. 36 at 8). The Bankruptcy Agreement by its terms precludes

---

[6] Although Wells Fargo vigorously argues that the Bankruptcy Agreement is not a true protective order, the referenced document clearly is an order entered by the Bankruptcy Court. The precise nature of that order is best left to the issuing court to determine.

[7] Wells Fargo argues that it is Fifth Third (as the party seeking to preserve the Confidential designation after it has been disputed) that has the burden of filing any motion for protective order in Bankruptcy Court.

disclosure of disputed Confidential materials unless/until the Bankruptcy Court has made a determination. Determination by the Bankruptcy Court, rather than by this Court, also has the advantage of avoiding the possibility of inconsistent orders. At oral argument at the July 18 informal discovery conference, counsel for Fifth Third represented to this Court that two other courts have already indicated that they would defer very similar issues to the Bankruptcy Court. In further support of its argument that the Bankruptcy Court is better positioned than this Court to determine whether Fifth Third's assertion of Confidentiality under the Bankruptcy Agreement should stand, Fifth Third cites an unpublished 2011 decision, *Ohio Willow Wood Co. v. ALPS South LLC*, Case No. 2:06-cv-1039 (S.D. Ohio Mar. 18, 2011)(Sargus, J.), in which a court in this district refused to modify the protective order of a different court.

Wells Fargo argues that factual and procedural differences in this case make the unpublished *Ohio Willow Wood* case particularly unpersuasive. Instead, Wells Fargo urges this Court to make the necessary determination based on the record presented, for reasons of judicial economy. Based again in part upon its assertion that the Bankruptcy Court's adoption of the parties' Stipulated Confidentiality Agreement is entitled to less deference than an "actual protective order," Wells Fargo contends that this Court is at least as qualified as the Bankruptcy Court to ascertain whether materials meet the Rule 26 standard. Wells Fargo relies heavily on *Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*, 2012 WL 5472089 (S.D. Ind. Nov. 8, 2012) to encourage this Court to take the lead on resolving the Confidentiality issues presented. However, like *Ohio Willow Wood*, the undersigned finds factual and procedural

differences exist between the underlying facts of the *Franklin* case and the instant case, which differences merit greater deference to the Indiana Bankruptcy Court.

In short, while the undersigned appreciates Wells Fargo's confidence in its abilities, this Court finds it appropriate to permit the issuing court to determine whether the Rule 2004 transcripts are, or are not, entitled to remain Confidential under the terms of that court's prior order adopting the parties' Confidentiality Agreement. The intricacies of bankruptcy procedure, including but not limited to Rule 9037, as well as that court's familiarity with the facts of this case (i.e., whether the examinations were, or were not, taken in lieu of depositions, the subject matter of the disputed transcripts, and any other rulings concerning the same or similar information based upon referrals from other courts), make it uniquely situated to resolve the pending issues.

### D. This Court's Stipulated Protective Order

Although neither party has briefed the issue, this Court takes judicial notice of its own Stipulated Protective Order, filed on February 11, 2013 in this litigation. Pursuant to that Order, a party may designate materials as Confidential, meaning "trade secrets, financial or business information which are viewed as confidential by the producing party, or any other information entitled to protection under Fed. R. Civ. P. 26(c)." (Doc. 24 at ¶1). If so designated, the Confidential materials may be filed of record only under seal, subject to Court approval of filing under seal. If an opposing party objects to the designation and the parties are unable to resolve their differences concerning the Confidential designation, the objecting party "may file a motion with the Court requesting that the designated material not be treated as CONFIDENTIAL under this Stipulated Protective Order." (Doc. 24 at ¶9). However, during the pendency of any motion to

reclassify materials, the parties must continue to treat the designated materials as Confidential.

On the facts presented, Fifth Third notified Wells Fargo that the subject materials were viewed as confidential.   Special Counsel for the Trustee (technically the producing party in this case) affirmed that designation of confidentiality.   Given that Wells Fargo clearly opposed the designation and the parties were unable to resolve their differences, it was Wells Fargo who had the obligation – at least under this Court's order – to move for disclosure of the materials in this Court.   In the end, of course, it matters little which party moved for resolution.   This Court notes the existence of its own Protective Order primarily to support its preliminary determination that the disputed Reply memorandum and exhibit should remain under seal, with access permitted only to parties, until such time as the Bankruptcy Court can more fully review the Confidentiality designation of the disputed Rule 2004 examination transcripts.

### III. Conclusion

Accordingly, **IT IS ORDERED**:

1.   Fifth Third's motion for protective order (Doc. 32) is **GRANTED** until and unless such time that the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, resolves the dispute between Fifth Third and Wells Fargo concerning the Confidential designation for the disputed Rule 2004 transcripts. Pursuant to this Order, Docket Entries 31  and 31-1 (Wells Fargo reply memorandum and attached exhibits) shall remain sealed from public view, with electronic access restricted to case participants and Court personnel, absent further order;

2.  Because the 2004 transcripts are relevant and Fifth Third objects only to their

use in violation of the Bankruptcy Agreement, Fifth Third shall produce the remaining four disputed transcripts to Wells Fargo within ten (10) days of the date of this Order. However, Wells Fargo may not use those transcripts in any manner inconsistent with the Bankruptcy Agreement absent a ruling in its favor from the Bankruptcy Court;

3.  The request of Fifth Third, and the corresponding request by Wells Fargo, for an award of fees and costs in connection with the pending motion in this Court is **DENIED**;

4.  In order to speed resolution of the underlying dispute, in accord with the expressed intent of the Bankruptcy Agreement that the party seeking to preserve Confidentiality file an appropriate motion, and to assuage standing concerns expressed by Wells Fargo, Fifth Third shall file the same or a similar motion for protective order in the United States Bankruptcy Court for the Southern District of Indiana on or before **August 2, 2013**.  Fifth Third may be relieved from this obligation only upon agreement of Wells Fargo.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge