UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-93904 |
| EASTERN LIVESTOCK CO., LLC, | CHAPTER 11 |
| DEBTOR | JOINTLY ADMINISTERED |

**JOINT OBJECTION TO FIFTH THIRD BANK'S MOTION FOR A PROTECTIVE ORDER AND REQUEST FOR MODIFICATION OF ORDER GRANTING MOTION FOR ENTRY OF STIPULATED CONFIDENTIALITY AGREEMENT**

Come East Tennessee Livestock Center, Inc., Southeast Livestock Exchange, LLC, Moseley Cattle Auction, Inc., Piedmont Livestock Company, Inc., Alton Darnell, CPC Livestock, LLC, Alabama Livestock Auction, Inc., Sealy and Sons Livestock, LLP, Ashville Stockyard, Inc., Athens Stockyard, LLC, Billingsley Auction Sales, Inc., Carroll County Livestock Sales Barn, Inc., Macon Stockyards, Inc., Edwin E. Strickland d/b/a Strickland Farms, Roberts Rawls d/b/a Robert Rawls Livestock, and Glen Franklin (collectively, the "Moving Creditors"), creditors and parties in interest herein, by counsel, and respectfully request that the Court deny Fifth Third Bank's Motion for a Protective Order [Doc. 2285] (the "Protective Order Motion") and that the Court modify its Order Granting Motion for Entry of Stipulated Confidentiality Agreement [Doc. 731] (the "Confidentiality Agreement Order") as requested below. In support of this Motion, the Moving Creditors respectfully state as follows:

**BACKGROUND**

1. On September 28, 2011, Superior Livestock Auction, Inc. ("Superior") and Eastern Livestock Co., LLC ("Eastern") filed a Joint Motion for Entry of Stipulated Confidentiality Agreement [Doc. 722] (the "Confidentiality Agreement Motion"), seeking entry

of a Stipulated Confidentiality Agreement (the "Confidentiality Agreement") in all matters related to these jointly administered Chapter 11 bankruptcy proceedings. According to the Confidentiality Agreement Motion, the Confidentiality Agreement sets forth an "agreed protocol for exchanging confidential documents, testimony, and information." Confidentiality Agreement Motion, p. 1.

2.  The purported purpose of the Confidentiality Agreement was "to assist the parties with discovery and with informal exchange of information and records" in "all matters related to this chapter 11 case." *Id.*

3.  On September 30, 2011, the Confidentiality Agreement Order was entered, granting the Confidentiality Agreement Motion on just two (2) days' notice—and without a hearing—and ordering that the Confidentiality Agreement be entered in all matters relating to this Chapter 11 case.

4.  The Confidentiality Agreement allows a "Disclosing Party" to unilaterally designate a document or testimony as "confidential," but also provides that if a party challenges a Disclosing Party's "confidential" designation, the Disclosing Party bears the burden to "demonstrate that there is good cause for the document to have such protection pursuant to the Federal Rules of Civil Procedure." Confidentiality Agreement, ¶¶ 2-3; 8. The Confidentiality Agreement also states that any "failure to challenge the classification of any material designated as Confidential Material shall not be deemed a waiver or admission that any such classification is proper." *Id.* at ¶ 12.

5.  On December 14, 2011, the Court ordered Hoover Hull LLP ("Hoover Hull") "to submit a preliminary report within 90 days as to equitable subordination and/or any other causes

2

of action" against Fifth Third Bank ("Fifth Third").  December 14, 2011 Minute Entry Order [Doc. 910].  Hoover Hull was employed in this Chapter 11 case to "serve as Trustee's special counsel with respect to the investigation and prosecution of any and all claims or objections that may be asserted by the Trustee against Fifth Third … or with respect to any claim that may be asserted herein by Fifth Third."  Hoover Hull Employment Application, introductory paragraph [Doc. 219].

6. On February 3, 2012, Fifth Third filed a Motion of Fifth Third Bank, N.A. to Limit Discovery or, Alternatively, for a Protective Order [Doc. 1005] (the "Fifth Third Discovery Motion").  By the Fifth Third Discovery Motion, Fifth Third requested that "the Court limit the number of depositions and deposition hours to which its [Fifth Third's] witnesses will be subjected in the Eastern Livestock Litigation, so as to prevent expensive, oppressive, and duplicative investigations of the same subject matter, and the potential harassment of the witnesses."  Memorandum in Support of Fifth Third Discovery Motion, p. 3 [Doc. 1005].  Back in February 2012, Fifth Third argued to this Court that "[s]uch redundant depositions are precisely the sort of costly and burdensome discovery that the Federal Rules are designed to avoid and that this Court has the power to prevent." *Id.*

7. By notices filed on February 21, March 5, April 26, and April 30 of 2012 [Doc. 1052, 1071, 1143, and 1144], the Trustee's special counsel noticed Rule 2004 examinations of various current and former Fifth Third employees and Wayne Stoffel.  Each of the aforementioned notices filed in the public record of this Bankruptcy Case contained toll free call-in information for unrestricted telephonic access to the testimony given during all such examinations.

3

8. On June 6, 2012, Fifth Third filed Fifth Third Bank's Motion for Contempt (the "First Bank Contempt Motion") [Doc. 1171], seeking an order holding the First Bank and Trust Company ("First Bank") and its counsel in contempt for violating a "Confidentiality Order" entered by this Court. The First Bank Contempt Motion referred to the Confidentiality Agreement Order as a "Confidentiality Order" and referenced "confidential documents and testimony" which Fifth Third alleged that First Bank and its attorneys improperly disclosed in a case pending the Hamilton County Common Pleas Court, Hamilton County, Ohio, styled *First Bank and Trust Company v. Fifth Third Bank, et al.*, Case No. A1203855 (the "First Bank Action"). *See generally* First Bank Contempt Motion. Fifth Third ultimately withdrew the First Bank Contempt Motion.

9. On November 2, 2012, the Moving Creditors and other parties commenced a civil action against Fifth Third and other defendants in the Allen Circuit Court, Allen County, Kentucky (the "Allen Circuit Court"), styled *CPC Livestock, LLC, et al. v. Fifth Third Bank, Inc., et al.*, Case No. 12-CI-00462 (the "Allen Circuit Action"). The resolution of the Protective Order Motion will impact the Moving Creditors in the Allen Circuit Action.

10. On May 1, 2013, Fifth Third moved for a protective order in a federal civil case brought by Wells Fargo Bank, N.A. ("Wells Fargo") in the United States District Court for the Southern District of Ohio, styled *Wells Fargo Bank, N.A. v. Fifth Third Bank*, Case No. 12-cv-00794 (the "Wells Fargo Action"). *See* Wells Fargo Action Doc #: 32. On July 29, 2013, a magistrate judge in the Wells Fargo Action ordered Fifth Third to file the instant Protective Order Motion. *See* Wells Fargo Action Doc #: 50, p. 14.

4

## ARGUMENT

By its Protective Order Motion, Fifth Third now asks the Court to enter a protective order prohibiting the use outside of this Bankruptcy Case of the transcripts of sixteen Rule 2004 examinations taken of current or former Fifth Third employees and Wayne Stoffel ("Transcripts"). Protective Order Motion, ¶ 14. In doing so, Fifth Third distorts the nature and effect of the Confidentiality Agreement Order and incorrectly presupposes the confidentiality of hundreds of pages of Transcripts unilaterally designated by Fifth Third as "confidential," while attempting to dodge its burden of showing "good cause" for a protective order under Fed. R. Civ. P. 26(c)(1). More importantly, though, Fifth Third is improperly asking this Court to make a "good cause" determination to be applied in state and federal lawsuits in which Fifth Third has been sued on causes of action related to the massive check kiting scheme that it participated in for years with Eastern Livestock Company, LLC (the "Debtor").

**I.  Fifth Third's Protective Order Motion distorts the nature and effect of the Confidentiality Agreement Order.**

Contrary to Fifth Third's assertions, the Confidentiality Agreement was not "adopted" by the Court in the Confidentiality Agreement Order. *See* Confidentiality Agreement Order [Doc. 731]. Rather, the Court simply directed the filing of the Confidentiality Agreement in the Bankruptcy Case and related adversary proceedings "to assist the parties with discovery and with the informal exchange of information and records." *Id.* The Confidentiality Agreement Order did not make any determination as to the confidentiality of the Transcripts or any other document or testimony unilaterally designated as "confidential" by a party like Fifth Third. *Id.* Nor has the Court since made any such determination with respect to the Transcripts or any other document or testimony.

5

Yet, since its entry, Fifth Third has repeatedly used the Confidentiality Agreement Order as a shield in state and federal litigation by misrepresenting that the Transcripts have been deemed confidential by this Court and thus cannot be used in any manner in those lawsuits. The practical result of Fifth Third's position is that the plaintiffs in those lawsuits—including the Moving Creditors—are now forced to depose all Fifth Third witnesses again in each respective lawsuit. Interestingly, Fifth Third is now the one causing the "redundant depositions" and "costly and burdensome discovery" of its current and former employees that it fought so hard to prevent in this Court back in February 2012. Memorandum in Support of Fifth Third Discovery Motion, Doc 1005, p. 3. It appears that Fifth Third is concerned about protecting its employees from "annoyance, embarrassment, oppression, or undue burden or expense" (*Id.* at p. 7) only when it helps Fifth Third gain a strategic advantage in litigation.

The greater risk to the Moving Creditors (and similar plaintiffs in other lawsuits), however, is that as time passes and Fifth Third witnesses are deposed multiple times, such Fifth Third witnesses may lack specific recollection, or have changed recollection, about Fifth Third's conduct *vis-à-vis* the Debtor back in 2009, 2010, and 2011. If the Moving Creditors and other parties are unable to use the Transcripts to impeach or refresh the memory of Fifth Third witnesses, Fifth Third would gain a litigation advantage by having its witnesses deposed without being subjected to legally permitted challenges to their credibility, despite the existence of sworn testimony (*i.e.*, the Transcripts) with which to do so. This could not have been the result intended by the Court when it entered the Confidentiality Agreement Order, and Fifth Third's distortion of that Order must end now, once and for all.

**II.     Fifth Third has not even attempted to made the "good cause" showing required for a protective order under Fed. R. Civ. P. 26(c)(1).**

In both the First Bank Action and the Wells Fargo Action, Fifth Third has proceeded under the presupposition that its unilateral designation of the Transcripts as "confidential" is all that is required to entitle the Transcripts to the protections of Fed. R. Civ. P. 26(c)(1).  But to date, Fifth Third has neither attempted nor been required by any court to show that the Transcripts—or anything else Fifth Third has designated as "confidential" over the last year and a half—are *actually* confidential and entitled to protection under Fed. R. Civ. P. 26(c)(1). Initially, it is questionable whether the Transcripts or any part thereof could ever be considered confidential.  First, as stated above, the notices filed by the Trustee's special counsel noticing the Rule 2004 examinations of Fifth Third witnesses and Wayne Stoffel contained toll free call-in information for unrestricted telephonic observation of the examinations at issue.  *See* Doc Nos. 1052, 1071, 1143, 1144.  Further, the notices of the 2004 examinations were also uploaded to the Trustee's Eastern Livestock Bankruptcy blog, meaning the information needed to telephonically observe the 2004 examinations was available online for anyone who visited the Trustee's blog. If observation of the examinations was open to anyone who could access the internet (*i.e.*, through PACER or the Trustee's blog), it is difficult to imagine how any part of the Transcripts could ever be deemed confidential and *not* already in the public domain.[1]  Second, in state and federal lawsuits, Fifth Third has freely quoted from the Transcripts, only to later say that the portions of the Transcripts *it* quotes have been "de-designated" as confidential.  *See*, *e.g.*, Wells Fargo Action, Doc #: 36, pp. 9-10.  If this is not altogether a waiver of any designation of the

---

[1] Moreover, 2004 examinations have historically been viewed as "public proceedings" since "public access plays a significant role in the bankruptcy process." *In re Symington*, 209 B.R. 678, 681 (Bankr. D. Md. 1997).

7

Transcripts as "confidential," then it is at least a severe double standard.

In any event, Fifth Third has yet to even attempt to meet its burden of showing "good cause" required before a protective order can be entered. The Seventh Circuit has continually held that generally, discovery "must take place in the [sic] public unless compelling reasons exist for denying the public access to proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th Cir. 1994) (quoting *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied*, 440 U.S. 971 (1979)). Rule 26(c) of the Federal Rules of Civil Procedure permits a court "for good cause" to issue a protective order to protect "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(H). But parties cannot stipulate to good cause for a protective order, such as by the entry of the Confidentiality Agreement. Rather, in *Jepson*, the Seventh Circuit indicated that a court "**must** independently determine if 'good cause' exists" before entering a protective order. *Jepson*, 30 F.3d at 858 (emphasis added).[2] Indeed, the very Confidentiality Agreement Fifth Third now hides behind *requires* that Fifth Third "demonstrate that there is good cause for the document to have such protection pursuant to the Federal Rules of Civil Procedure" if a dispute arises about Fifth Third's designation of any material as "confidential." Confidentiality Agreement at ¶ 8.

---

[2] Even in the event Fifth Third were to argue that *Jepson* does not control here, Fifth Third cannot escape the plain language of paragraph 8 of the Confidentiality Agreement. Now that Fifth Third has filed a motion seeking a protective order for material it has designated "confidential," paragraph 8 of the Confidentiality Agreement requires that Fifth Third prove that "good cause" exists under the Federal Rules of Civil Procedure to maintain the "confidential" designation it has put on over 82,000 lines of the testimony contained in the Transcripts. Fifth Third cannot seek to hold every other party to the Confidentiality Agreement, yet argue that it does not have to comply with the clear requirement in paragraph 8 that it show "good cause" for a protective order here. And even if this Court were to conclude that 11 U.S.C. § 107(b) and Fed. R. Bankr. P. 9018 govern the instant motion, Fifth Third would still bear the burden of showing that the material for which the protective order is sought actually falls into one of the categories protected in § 107(b) and Rule 9018. *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 194 (3d Cir. 2001); *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).

Without making even the slightest showing that the Transcripts, or any portion thereof, are entitled to protection under Fed. R. Civ. P. 26(c)(1) or any other rule or statute, Fifth Third now asks this Court to bend the Federal Rules of Civil Procedure and give unprecedented protection to the Transcripts simply because Fifth Third alone says they are "confidential." According to the Seventh Circuit in *Jepson*, a protective order cannot be issued under such circumstances. Rather, Fifth Third must be required to show legal justification as to why the Transcripts are entitled to the protections of Fed. R. Civ. P. 26(c)(1) or any other rule or statute. Yet, even if Fifth Third attempted to make such a showing here, it is asking the wrong court to make that determination.

**III.   The "good cause" determination with respect to the Transcripts should be left to trial courts presiding over cases in which the Transcripts are actually being or will likely be used.**

The purpose of the Confidentiality Agreement Order—"to assist the parties with discovery and with the informal exchange of information and records"—seems to have little application left in this confirmed Chapter 11 case or in the various related adversary proceedings. This Court has not and may not ever be called upon to determine whether "good cause" exists for protection of the Transcripts in connection with these proceedings. There is no need, then, for this Court to review the 82,000 lines of testimony in the Transcripts (and likely thousands of additional pages of other documents designated "confidential") in order to make a "good cause" determination here that is unlikely to any impact on this confirmed Chapter 11 case or any related proceeding. This is particularly so given the fact that there are state and federal courts presiding over at least four lawsuits (which are in the discovery phase and in which the Transcripts are actually being or will likely be used) that are just as well-situated, if not better

9

situated, to determine whether "good cause" exists for the protection of the Transcripts from public dissemination in *those lawsuits*.

The Moving Creditors request that the Court defer any such "good cause" determination with regard the confidentiality of the Transcripts to the trial courts, such as the Allen Circuit Court, presiding over cases in which the Transcripts are actually being used or will likely be used in the future. Such a course of action would leave adequately preserved Fifth Third's right to seek protection of the Transcripts and any other document or testimony it designates as "confidential." The Moving Creditors, and any other party who has gained access to the Transcripts, would still be bound by the Confidentiality Agreement, but any unresolved dispute as to Fifth Third's "confidential" designations would simply be addressed to the presiding trial court by way of a motion for protective order to that court accompanied by the requisite showing of "good cause."

Accordingly, the Moving Creditors respectfully request that the Court enter an order modifying the Confidentiality Agreement Order to provide that: notwithstanding a Disclosing Party's unilateral designation of a document or testimony as "confidential" pursuant to the Confidentiality Agreement, any such document or the transcript of any such testimony may be used, subject to the terms of the Confidentiality Agreement, in any state or federal court proceeding for any purpose allowed by applicable law; and in accordance with paragraph 8 of the Confidentiality Agreement, any dispute as to the propriety of a Disclosing Party's designation of a document or testimony as "Confidential" in a proceeding shall be addressed to the state or federal court presiding over such proceeding by the Disclosing Party (or other party seeking protection of the document or testimony) filing a motion for protective order and

10

establishing good cause for the document or testimony to have the protection of Fed. R. Civ. P. 26(c)(1) or any corresponding state court rule of civil procedure.

WHEREFORE, the Moving Creditors respectfully request that the Court enter an order (i) denying the Protective Order Motion and (ii) modifying the Confidentiality Agreement Order to provide that: notwithstanding a Disclosing Party's unilateral designation of a document or testimony as "confidential" pursuant to the Confidentiality Agreement, any such document or the transcript of any such testimony may be used, subject to the terms of the Confidentiality Agreement, in any state or federal court proceeding for any purpose allowed by applicable law; and in accordance with paragraph 8 of the Confidentiality Agreement, any dispute as to the propriety of a Disclosing Party's designation of a document or testimony as "Confidential" in a proceeding shall be addressed to the state or federal court presiding over such court proceeding by the Disclosing Party (or other party seeking protection of the document or testimony) filing a motion for protective order and establishing good cause for the document or testimony to have the protection of Fed. R. Civ. P. 26(c)(1) or any corresponding state court rule of civil procedure.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
ldelcotto@dlgfirm.com
COUNSEL FOR EAST TENNESSEE LIVESTOCK CENTER, INC., SOUTHEAST LIVESTOCK EXCHANGE, LLC, MOSELEY CATTLE AUCTION, INC., PIEDMONT LIVESTOCK COMPANY, INC., AND ALTON DARNELL

and

W. SCOTT NEWBERN, PL

/s/ W. Scott Newbern, Esq.
W. Scott Newbern, Esq.
2982 East Giverny
Tallahassee, FL 32309
(T) 850.591.1707
(F) 850.894.0871
wsnewbern@msn.com
COUNSEL FOR CPC LIVESTOCK, LLC, ALABAMA LIVESTOCK AUCTION, INC., SEALY AND SONS LIVESTOCK, LLP; ASHVILLE STOCKYARD, INC., ATHENS STOCKYARD, LLC, BILLINGSLEY AUCTION SALES, INC., CARROLL COUNTY LIVESTOCK SALES BARN, INC., MACON STOCKYARDS, INC., EDWIN E. STRICKLAND D/B/A STRICKLAND FARMS, ROBERTS RAWLS D/B/A ROBERT RAWLS LIVESTOCK, AND GLEN FRANKLIN

**CERTIFICATE OF SERVICE**

       I hereby certify that on August 14, 2013, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| David L. Abt | davidabt@mwt.net |
| Amelia Martin Adams | aadams@dlgfirm.com |
| John W. Ames | james@bgdlegal.com |
| Jerald I. Ancel | jancel@taftlaw.com; krussell@taftlaw.com |
| | ecfclerk@taftlaw.com |
| T. Kent Barber | kbarber@dlgfirm.com;dlgecf@dlgfirm.com |
| | dlgecfs@gmail.com |
| Robert A. Bell | rabell@vorys.com |
| C. R. Bowles, Jr. | cbowles@bgdlegal.com |
| Lisa Koch Bryant | courtmail@fbhlaw.com |
| Steven A. Brehm | sbrehm@bgdlegal.com |
| Kent A. Britt | kabritt@vorys.com |
| John R. Carr, III | jrciii@acs-law.com; sfinnerty@acs-law.com |
| Deborah Caruso | dcaruso@daleeke.com; lharves@daleeke.com |
| | mthomas@daleeke.com |
| Bret S. Clement | bclement@acs-law.com; sfinnerty@acs-law.com |
| Joshua E. Clubb | joshclubb@gmail.com |
| Jason W. Cottrell | jwc@stuartlaw.com |
| Kirk Crutcher | kcrutcher@mcs-law.com;jparson@mcs-law.com |
| | cmarshall@mcs-aw.com |
| Laura Day DelCotto | ldelcotto@dlgfirm.com; dlgecf@dlgfirm.com |
| | dlgecfs@gmail.com |
| Dustin R. DeNeal | dustin.deneal@faegrebd.com |
| | Patricia.moffit@bakerd.com |
| David Alan Domina | dad@dominalaw.com; KKW@dominalaw.com |
| | efiling@dominalaw.com |
| Daniel J. Donnellon | ddonnellon@ficlaw.com; knorwich@ficlaw.com |
| Jesse Cook-Dubin | jcookdubin@vorys.com; vdarmstrong@vorys.com |
| Trevor L. Earl | tearl@rwsvlaw.com |
| Shawna M. Eikenberry | shawna.eikenberry@faegrebd.com |
| Jeffrey R. Erler | jeffe@bellnunnally.com |
| Robert Hughes Foree | robertforee@bellsouth.net |
| Sandra D. Freeburger | sfreeburger@dsf-atty.com; smattingly@dsf-atty.com |
| Darla J. Gabbitas | Darla.gabbitas@moyewhite.com |
| Melissa S. Giberson | msgiberson@vorys.com |
| Jeffrey J. Graham | jgraham@taftlaw.com |
| Terry E. Hall | terry.hall@faegrebd.com |
| John David Hoover | jdhoover@hooverhull.com |

| | |
|---|---|
| John Huffaker | john.huffaker@sprouselaw.com |
| | lynn.acton@sprouselaw.com |
| | rhonda.rogers@sprouselaw.com |
| Jeffrey L. Hunter | Jeff.Hunter@usdoj.com |
| Jay Jaffee | jay.jaffe@faegrebd.com |
| James Bryan Johnston | bjtexas59@hotmail.com; bryan@ebs-law.net |
| Todd J. Johnston | tjohnston@mcjllp.com |
| David Jones | david.jones@sprouselaw.com |
| Jill Z. Julian | Jill.Julian@usdoj.com |
| Edward M. King | tking@fbtlaw.com; dgioffe@fbtlaw.com |
| James A. Knauer | jak@kgrlaw.com; hns@kgrlaw.com |
| Erick P. Knoblock | eknoblock@daleeke.com |
| Theodore A. Konstantinopoulos | ndohbky@jbandr.com |
| David A. Laird | david.laird@moyewhite.com;lisa.oliver@moyewhite.com |
| | deanne.stoneking@moyewhite.com |
| Randall D. LaTour | rdlatour@vorys.com; khedwards@vorys.com |
| David L. LeBas | dlebas@namanhowell.com; koswald@namanhowell.com |
| Elliott D. Levin | robin@rubin-levin.net;edl@trustesolutions.com; |
| | atty_edl@trustesolutions.com |
| Kim Martin Lewis | kim.lewis@dinslaw.com;lisa.geeding@dinslaw.com |
| | patrick.burns@dinslaw.com |
| James B. Lind | jblind@vorys.com |
| Karen L. Lobring | lobring@msn.com |
| John Hunt Lovell | john@lovell-law.net; sabrina@lovell-law.net |
| Harmony A. Mappes | harmony.mappes@faegrebd.com |
| John Frederick Massouh | john.massouh@sprouselaw.com |
| Michael W. McClain | mike@kentuckytrial.com |
| Kelly Greene McConnell | lisahughes@givenspursley.com |
| James E. McGhee, III | mcghee@derbycitylaw.com |
| William Robert Meyer, II | rmeyer@stites.com |
| Christie A. Moore | cmoore@bgdlegal.com |
| Allen Morris | amorris@stites.com; dgoodman@stites.com |
| Judy Hamilton Morse | judy.morse@crowedunlevy.com; ecf@crowedunlevy.com |
| | donna.hinkle@crowedunlevy.com; |
| | karol.brown@crowedunlevy.com |
| Walter Scott Newbern | wsnewbern@msn.com |
| Matthew J. Ochs | matt.ochs@moyewhite.com; kim.maynes@moyewhite.com |
| Shiv G. O'Neill | shiv.oneill@faegrebd.com |
| Michael W. Oyler, Esq. | moyler@rwsvlaw.com |
| Ross A. Plourde | ross.plourde@mcafeetaft.com |
| | erin.clogston@mcafeetaft.com |
| Wendy W. Ponader | wendy.ponader@faegrebd.com |
| | Sarah.henderson@bakerd.com |
| Timothy T. Pridmore | tpridmore@mcjllp.com; lskibell@mcjllp.com |

14

| | |
|---|---|
| Anthony Raluy | traluy@fbhlaw.net |
| Eric W. Richardson | ewrichardson@vorys.com |
| Mark A. Robinson | mrobinson@vhrlaw.com; dalbers@vhrlaw.com |
| Jeremy S. Rogers | Jeremy.Rogers@dinslaw.com; Joyce.jenkins@dinslaw.com |
| John M. Rogers | johnr@rubin-levin.net; susan@rubin-levin.net |
| James E. Rossow, Jr | jim@rubin-levin.net |
| Ashley S. Rusher, Esq. | asr@blancolaw.com |
| Thomas C. Scherer, Esq. | tscherer@binghammchale.com |
| Ivana B. Shallcross | ishallcross@bgdlegal.com |
| James E. Smith | jsmith@smithakins.com |
| William E. Smith, III | wsmith@k-glaw.com |
| Robert K. Stanley | robert.stanley@faegrebd.com |
| Meredith R. Thomas | mthomas@daleeke.com; kmark@daleeke.com |
| Kevin Toner | kevin.toner@faegrebd.com |
| Christopher M. Trapp | ctrapp@rubin-levin.net |
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Jennifer Watt | jwatt@kgrlaw.com |
| Stephen A. Weigand | sweigand@ficlaw.com |
| Charles R. Wharton | Charles.R.Wharton@usdoj.gov |
| Sean T. White | swhite@hooverhull.com |
| James T. Young | james@rubin-levin.net; ATTY_JTY@trusteesolutions.com |
| | kim@rubin-levin.com; lemerson@rubin-levin.com |

I further certify that on August 14, 2013, a copy of the foregoing pleading was served by first-class U.S. mail, postage prepaid, or by electronic mail as indicated, to the following:

Bovine Medical Associates, LLC
1500 Soper Road
Carlisle, KY 40311
*VIA U.S. MAIL*

National Cattlemen's Beef Assoc.
c/o Allie Devine, Esq.
*VIA EMAIL:* allie@devineanddonley.com

Tennessee Department of Revenue
c/o TN Attorney General's Office
Bankruptcy Division
P. O. Box 20207
Nashville, TN  37202-0207
*VIA U.S. MAIL*

/s/ Laura Day DelCotto, Esq.
COUNSEL FOR MOVING CREDITORS

ELC-Gibson\Bankr 10-93904 Eastern Livestock\Pleadings\Drafts\Obj Fifth Third Mtn Protective Ord - FV 20130814.doc

15