Exhibit A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made by and among James A. Knauer, in his capacity as chapter 11 trustee ("Bankruptcy Trustee") for the bankruptcy estate ("Estate") of Eastern Livestock Co., LLC ("Debtor"); James A. Knauer, in his capacity as trustee ("Bond Trustee") of the Bond No. 785636 established with Capitol Indemnity Corp. pursuant to 7 U.S.C. § 204 and 9 C.F.R. § 201.29 ("Bond"); and Superior Livestock Company, Inc., now known as SLAI, Inc. ("SLAI").  The Bankruptcy Trustee, the Bond Trustee and SLAI are collectively referred to as the "Parties" or individually as a "Party."

## Recitals

(a)   On or about December 19, 2011, the Bond Trustee commenced a civil action styled <u>James A. Knauer, as Trustee for All Persons Making Claims Against Capitol Indemnity Corp. Bond No. 785636 v. T. Harold Martin, et al.</u>, United States District Court for the Southern District of Indiana ("Bond Litigation Court"), Case No. 4:11-CV-0144 SEB-WGH ("Bond Litigation").  The Bond Litigation was filed by the Bond Trustee to resolve outstanding claims against the Bond, including SLAI's claim against the Bond ("SLAI Bond Claim").

(b)   Except for the SLAI Bond Claim, all claims and issues asserted in the Bond Litigation by other claimants have been adjudicated.

(c)   On December 6, 2010 ("Bankruptcy Petition Date"), certain petitioning creditors commenced a chapter 11 case (the "Chapter 11 Case") against Debtor by filing an involuntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division ("Bankruptcy Court").

(d)   On or about April 12, 2011, SLAI, then Superior Livestock Company, Inc., commenced an adversary proceeding 11-59088 ("Superior Adversary"), seeking a declaratory judgment as to legal issues involving potential avoidance actions of the Bankruptcy Estate.

(e)   On or about November 13, 2012, the Debtor, through the Bankruptcy Trustee, and SLAI, filed a motion to approve the compromise and settlement of claims between the Debtor, the Debtor's Bankruptcy Estate and SLAI [Docket No. 1524] ("9019 Motion").  The 9019 Motion and Settlement Agreement were approved by the Bankruptcy Court on November 21, 2012 [Docket No. 1550] ("9019 Order").

(f)   In the Bond Litigation, the Parties to this Settlement Agreement participated in a Settlement Conference before Judge William G. Hussmann, Jr. on November 1, 2013 in New Albany, Indiana.  The Parties have agreed to settle their disputes as more fully set forth below.

NOW THEREFORE, incorporating the foregoing Recitals and based upon the mutual promises contained in this Settlement Agreement and other valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. <u>Bankruptcy Court Approval of the Settlement Agreement.</u>  This Settlement Agreement is subject to the approval of the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9019.  Within three (3) business days following execution of this Settlement Agreement, the Bankruptcy Trustee shall file with the Bankruptcy Court a motion, in a form acceptable to the Parties, requesting the Bankruptcy Court's approval of this Settlement Agreement (the "Bankruptcy Settlement Motion") and a proposed order approving the Settlement Agreement and Bankruptcy Settlement Motion in a form acceptable to the Parties (the "Bankruptcy Settlement Order").  The effectiveness of this Settlement Agreement is contingent upon the Bankruptcy Court's entry of the Bankruptcy Settlement Order.  The Parties shall file such additional information as the Bankruptcy Court may request in an effort to obtain the Bankruptcy Court approval of the Bankruptcy Settlement Motion.  The Parties, shall, in good faith, use all reasonable efforts to obtain approval of the Bankruptcy Settlement Motion.

2. <u>Bond Court Approval of the Settlement Agreement.</u>  This Settlement Agreement is subject to the approval of the Bond Litigation Court.  Within three (3) business days following execution of this Settlement Agreement, the Bond Trustee shall file with the Bond Litigation Court a motion, in a form acceptable to the Parties, requesting the Court's approval of this Settlement Agreement (the "Bond Settlement Motion") and a proposed order approving the Settlement Agreement and Bond Settlement Motion in a form acceptable to the Parties (the "Bond Settlement Order").  The effectiveness of this Settlement Agreement is contingent upon the Bond Litigation Court's entry of the Bond Settlement Order. The Parties shall file such additional information as the Bond Litigation Court may request in an effort to obtain Bond Litigation Court approval of the Bond Settlement Motion.  The Parties, shall, in good faith, use all reasonable efforts to obtain approval of the Bond Settlement Motion.

3. <u>SLAI Bond Claim.</u>  The Parties agree that SLAI's Amended Bond Claim shall be set at Three Million Six Hundred Thousand Dollars ($3,600,000) and shall be deemed a "Fully Approved Claim" in that amount (the "SLAI Settled Bond Claim").  Any SLAI Bond Claim, as set forth in its Amended Bond Claim, over and above this amount shall be considered a "Denied Claim." The SLAI Settled Bond Claim will result in an approximately 21.03% pro rata share in the Bond Proceeds that are available for distribution to claimants (the "SLAI Share").

    (a) <u>Payment of Bond Proceeds to SLAI.</u>  The Bond Trustee agrees to pay SLAI $100,000.00 from the SLAI Share at the same time as the distribution of the Bond Proceeds to the approved Bond Claimants.

    (b) <u>Assignment of Balance of SLAI Share.</u>  Except for the amounts referred to in paragraph 3(a) herein, SLAI assigns the balance of the SLAI Share to the Bankruptcy Trustee.

4. <u>Release of Claims by Bankruptcy Trustee.</u>  In consideration of the assignment in paragraph 3(b) herein, the Bankruptcy Trustee agrees to release any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement, he may have against the entities and/or individuals listed in Exhibit A hereto, as well as the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies, agents, past present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of those entities and/or individuals listed in Exhibit A hereto.

In addition to the entities and/or individuals listed in Exhibit A, the Bankruptcy Trustee also agrees to following:

(a) With the exception of the claims asserted against and agreements made with Robert Nichols and Jane Nichols d/b/a Nichols Livestock, and Nichols Livestock, Inc. (collectively "Nichols") in <u>Cactus Growers, Inc. v. Nichols, et al.</u>, Adversary Proceeding No. 11-59087 of <u>In re Eastern Livestock Co., LLC</u>, United States Bankruptcy Court of the Southern District of Indiana, Case No. 10-93904-BHL-11; <u>Friona Industries, LP v. Eastern Livestock Co., LLC, et al.</u>, Adversary Proceeding No. 11-59093 of <u>In re Eastern Livestock Co., LLC</u>, United States Bankruptcy Court of the Southern District of Indiana, Case No. 10-93904-BHL-11;  <u>Knauer v. Stockman Oklahoma Livestock Marketing, Inc., et al</u>, Adversary Proceeding No. 12-59161 of <u>In re Eastern Livestock Co., LLC</u>, United States Bankruptcy Court of the Southern District of Indiana, Case No. 10-93904-BHL-11, the Bankruptcy Trustee agrees to release any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement, he may have against Nichols, as well as the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies, agents, past, present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of Nichols.

(b) With the exception of the claims asserted against and agreements made with Rick Beard and/or Beard Farms (collectively "Beard") in <u>Knauer v. Beard</u>, Adversary Proceeding No. 12-59120 of <u>In re Eastern Livestock Co., LLC</u>, United States Bankruptcy Court of the Southern District of Indiana, Case No. 10-93904-BHL-11, the Bankruptcy Trustee agrees to release any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement, he may have against Beard, as well as the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies,

agents, past, present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of Beard.

      (c)    The Bankruptcy Trustee agrees to release any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement, he may have against Fousek Farm and Ranch, LLC and/or Sam Fousek (collectively "Fousek") arising from or directly related to the sale of a lot of cattle from the Debtor to Fousek occurring on or about November 3, 2010 in the amount of Fifty Three Thousand Six Hundred Fifteen and 70/100 Dollars ($53,615.70) which was purchased by the Debtor at an auction conducted by Superior Livestock Auction and identified as Superior Lot #7593B, as well as related claims against the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies, agents, past, present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of Fousek.

      5.    <u>Mutual Releases.</u>  In exchange for the promises contained herein:

      (a)    SLAI and its officers, directors, employees, shareholders, attorneys, insurers, bond companies, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto (the "SLAI Releasing Parties") forever RELEASE AND DISCHARGE the Bond Trustee individually and in his capacity as the trustee for the Eastern Bond, Bond Trustee's Counsel, and the respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies, agents, past present and future parents or subsidiaries, affiliates, predecessors, successors and assigns of the Bond Trustee and Bond Trustee's Counsel (the "SLAI Released Parties") from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement (the "SLAI Released Claims").  The SLAI Released Claims do not and shall not be deemed to release the administrative claim that one of SLAI's attorneys, Bingham Greenebaum Doll LLP, had against the Estate of the Debtor, approved by the Bankruptcy Court on March 30, 2011 in Docket No. 503.

      (b)    Bond Trustee and Bond Trustee's Counsel and their respective officers, directors, employees, shareholders, attorneys, insurers, bond companies, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto (the "Bond Trustee Releasing Parties") forever RELEASE AND DISCHARGE the SLAI and its respective officers, directors, employees, shareholders, attorneys, professionals, insurers, bond companies, agents, past present and future parents (including, but not limited to Farm Credit West PCA) or subsidiaries, affiliates, predecessors, successors and assigns of SLAI (the "Bond Trustee Released Parties") from any and all actions, suits, objections, claims (whether in tort or contract),

Page 4 of 7

Case 10-93904-BHL-11 Doc 2463-1 Filed 01/13/14 EOD 01/13/14 16:08:05 Pg 6 of 10

causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement (the "Bond Trustee Released Claims").

6. **Cooperation.** The Parties agree and covenant that they will cooperate and take reasonable actions necessary to execute further documents that may be necessary to implement this Settlement Agreement.

7. **Qualification; Authority.** Each individual executing this Settlement Agreement on behalf of a Party represents and warrants that he or she is duly authorized to execute and deliver this Settlement Agreement on behalf of such Party, that no additional consents or signatures on behalf of such Party, that no additional consents or signatures on behalf of such Party are required in order for this Settlement Agreement to be binding and enforceable upon and against said Party, and that no Party has sold, transferred, assigned, conveyed or otherwise disposed of any claims, demands or rights surrendered by virtue of this Settlement Agreement.

8. **Successors and Assigns.** This Settlement Agreement shall inure to the benefit of the Parties and their respective, heirs, affiliates, and successors in interest.

9. **Court Jurisdiction.** The Bond Litigation Court shall retain exclusive jurisdiction to hear, decide and enter a final order on any and all claims or disputes arising out of the execution and performance of this Settlement Agreement.

10. **Governing Law.** The Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana.

11. **Counterparts; Facsimile or E-mail Delivery.** This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all the Parties. Signatures may be delivered by facsimile or electronic mail and such signatures shall be binding upon the Party delivering same as if they were originals.

12. **Severability.** All provisions of this Settlement Agreement are to be read in conjunction with each other. Every provision contained in this Settlement Agreement is nonseverable and mutually dependent on all other provisions contained herein. Provisions should be read together so as to harmonize the whole.

13. **Amendment.** This Settlement Agreement may not be amended, changed, modified, released or discharged except by a writing executed by duly authorized representatives of each of the Parties and signatories hereto.

14. **No Admission of Fault or Liability.** This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of any of the Parties.

15. <u>No Presumption Against Drafter.</u>  The Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Settlement Agreement.

THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the dates below each signature.

SLAI, INC. FORMERLY SUPERIOR LIVESTOCK AUCTION, INC.

By: *Chris Brumfield*

Printed Name: CHRIS BRUMFIELD

Title: VICE PRESIDENT

Date: 1/10/14

---

JAMES A. KNAUER AS CHAPTER 11 TRUSTEE FOR EASTERN LIVESTOCK CO., LLC

Date:

---

JAMES A. KNAUER AS TRUSTEE FOR THE BOND OF EASTERN LIVESTOCK CO., LLC

Date:

14948871_1.docx

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the dates below each signature.

SLAI, INC. FORMERLY SUPERIOR LIVESTOCK AUCTION, INC.

By: _____

Printed Name: _____

Title: _____

Date: _____

_____
JAMES A. KNAUER AS CHAPTER 11 TRUSTEE FOR EASTERN LIVESTOCK CO., LLC

Date: Jan 10, 2014

_____
JAMES A. KNAUER AS TRUSTEE FOR THE BOND OF EASTERN LIVESTOCK CO., LLC

Date: Jan 10, 2014

14948871_1.docx

# **EXHIBIT A TO THE SETTLEMENT AGREEMENT AND RELEASE**

1. Terry Baber Farm; Terry Baber; Pam Baber

2. Clay Carter Farm; Clay Carter

3. Gary Carter Farm; Gary Carter

4. Stephen L. Dilks

5. Robert M. Dobbs; Vickie Dobbs

6. Stephen L. Fletcher; Marilyn Fletcher

7. Foote Cattle Company, LLC; Bob Foote

8. Gibson Farms; Ben Gibson

9. Hagedorn Feedyards; Tom Hagedorn; David Peterson

10. David Hilbert; Karolyn Hilbert

11. JVCO LLC

12. Leverett Hickman Leverett A Partnership

13. Mull Farms and Feeding, Inc.; Keith Mull

14. John Ross Farms; John Ross

15. Kevin Smith

16. Supreme Cattle Feeders, LLC

17. Jerry Thompson; Loessa Thompson

18. Joe Thompson; Danna Thompson

19. Wheeler Brothers Feedyeard