UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE:                                  )
                                        )
EASTERN LIVESTOCK CO., LLC,             )          Case No. 10-93904-BHL-11
                                        )
            Debtor.                     )          Hon. Basil H. Lorch III

### EASTERN LIVESTOCK TRUSTEE'S OBJECTION TO
### FIRST BANK'S MOTION TO MODIFY PLAN INJUNCTION

James A. Knauer, as Chapter 11 trustee ("Trustee") for the debtor, Eastern Livestock Co.,

LLC ("Debtor" or "ELC"), by counsel, respectfully objects for the reasons stated below to the

*Motion To Modify Plan Injunction To Permit Naming Debtor As A Defendant In Complaint To*

*Determine Validity, Extent, And Priority Of Liens And For Order Directing Payment Of*

*Commodities Account Proceeds To The First Bank And Trust Company For Purposes Of*

*Asserting Debtor's Interest, If Any, Therein* ("Motion") [Docket #2476] filed by The First Bank

and Trust Company ("First Bank") on January 31, 2014.

### PRELIMINARY STATEMENT

First Bank is not entitled to the relief it requests for at least four reasons.  First, under

Section 1127 of Title 11 United States Code (11 U.S.C. §101 *et. seq*, the "Bankruptcy Code"),

only a plan proponent or the reorganized debtor is eligible to seek modification of a confirmed

chapter 11 plan where the debtor is not an individual.  First Bank plainly is neither the proponent

of the Plan, nor the reorganized debtor.  Moreover, contrary to First Bank's contention, the Plan

does not provide for the filing of a motion such as First Bank's here.  Second, and perhaps most

disturbingly to the Trustee, First Bank, by filing the Motion, has breached the terms of the

comprehensive Settlement between First Bank and the Trustee and opened itself to liability for

the Trustee's fees.  The Motion exemplifies First Bank's litigious mindset and underscores why

the Trustee was justified in paying substantial settlement dollars to prevent further First Bank filings in this case. Third, First Bank's argument that the Trustee is required within two years to have sued the Gibson Estate to assert a claim or interest in the Account Funds is misplaced, because First Bank fails to recognize the legal import of the Trustee's proof of claim filed in the Gibson Case. Fourth, under Sections 542 and 543 of the Bankruptcy Code, among other things, the Gibson Trustee serves as a possessor and/or "custodian" of the Debtor's property with full knowledge of this Chapter 11 Case. She has a fiduciary duty to deliver to the Debtor's estate property that belongs to the Debtor's estate. First Bank's Motion fails to apprehend the obligations of the Gibson Trustee or her arrangements and negotiations with the Debtor's Trustee. Accordingly, the Court should reject First Bank's maneuver. First Bank seeks to burden both estates with litigation in order to increase settlement leverage with the trustees.

## BACKGROUND

1.      ELC was one of the largest cattle dealers in the United States, with operations and assets located in at least eleven states. Certain petitioning creditors commenced this bankruptcy proceeding (the "Chapter 11 Case") on December 6, 2010 (the "ELC Petition Date"), by filing in this Court an involuntary petition for relief. The Court entered the Order for Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

2.      On December 1, 2010 ("Gibson Petition Date"), Thomas P. and Patsy M. Gibson ("Gibsons") filed in this Court a voluntary petition for relief under chapter 7 of the Bankruptcy Code, which was designated as Case Number 10-93867 ("Gibson Case"). Thomas P. Gibson was the principal owner and the Manager of ELC. Kathryn Pry serves as chapter 7 trustee in the Gibson Case ("Gibson Trustee"), administering the Gibsons' chapter 7 estate ("Gibson Estate").

3.      On April 9, 2011, First Bank filed a proof of claim in the Gibson Case asserting a secured claim of $8,111,669.40 ("First Bank/ Gibson Claim") [Gibson Case, Claims Docket,

2

Claim #11-1].  As the bases for First Bank's purported perfection of its secured claim, the First Bank/Gibson Claim references "Recorded mortgage, filed UCCs/title liens/credit assignment/control agreement."  The action First Bank now proposes to bring against the Trustee seeks a determination of the purported first and prior interest of First Bank in and to certain funds (the "Account Funds") held in two commodities brokerage accounts as of the Gibson Petition Date.

4.      First Bank was a lender to the Gibsons, but not to the Debtor.  Nevertheless, counsel for First Bank appeared in this Chapter 11 Case in December 2010 and immediately became active in nearly all instances as an objector or detractor to actions or undertakings initiated by the Trustee.[1]  The disputes between the Trustee and First Bank included the commencement of an adversary proceeding against First Bank on or around September 17, 2012, asserting fraudulent transfer and other claims seeking to recover from First Bank approximately $1.694 Million ("Adversary") [Chapter 11 Case, AP #12-59077], as well as First Bank's efforts to remove the Trustee, culminating in a Notice of Appeal filed on September 13, 2013 by First Bank from an order of the Court denying a motion filed by First Bank to remove the Trustee. ("Appeal") [Docket #1415].

---

[1]   On behalf of First Bank's lead outside counsel First Bank's local counsel filed the *Motion to Admit Foreign Attorney Pro Hac Vice* [Docket #56] on December 13, 2010, which drew a deficiency notice (the motion should have been filed by lead counsel).  On December 21, 2010, lead counsel filed his *Motion to Appear Pro Hac Vice* [Docket #96], which was approved by the Court on December 28, 2010 [Docket #103].  Within a few weeks thereafter, First Bank had both objected to the Trustee's retention of counsel and to the Trustee's motion to approve use of cash collateral. *See Objection of The First Bank and Trust Company to Application to Employ Baker & Daniels LLP as Counsel to Chapter XI Trustee,* filed on January 10, 2011 [Docket #181] (subsequently withdrawn on January 27, 2011 [Docket #241]); *Objection to Motion to Approve Trustee's Borrowing and Use of Cash Collateral, Modify the Automatic Stay, Provide Adequate Protection Payments, Protect Confidential Information, and Schedule Final Hearing,* filed March 3, 2011 [Docket #324].  The Trustee respectfully refers the Court to the docket in this Chapter 11 Case for a complete list of First Bank's filings.

5.    On April 26, 2011, the Trustee filed a proof of claim in the Gibson Case (the "ELC/Gibson Claim") [Gibson Case, Claims Docket, Claim #48-1].  Among other allegations set forth in the ELC/Gibson Claim, the Trustee asserts "significant claims against the Gibsons, including without limitation, claims for preferential and/or fraudulent transfers" and alleges that "Thomas P. Gibson ("Mr. Gibson") wrongfully converted…from ELC large amounts of money…". Specific sums referenced by the Trustee in the ELC/Gibson Claim as recoverable by the Trustee under Sections 542, 544, 547, 548 and 549 of the Bankruptcy Code include monies in the Gibsons' account at Your Community Bank ("no less than $4.7 million") and transfers received by the Gibsons from ELC within one year prior to the ELC Petition Date, totaling no less than $1,135,045,763.83.

6.    In October 2012, the Trustee and First Bank reached a settlement of the innumerable disputes between the parties that had been in issue in the Debtor's case for well over one and one-half years, including the Adversary and the Appeal ("Settlement").[2]  This Court approved the Settlement on December 5, 2012 by its *Order Granting Motion To Approve Compromise Of Controversy Between Eastern Livestock Co., LLC and First Bank And Trust Company* ("Settlement Order") [Docket #1579].

7.    On October 26, 2012, the Trustee filed his *Trustee's First Amended Chapter 11 Plan of Liquidation* [Docket #1490] ("Plan").  On December 17, 2012 ("Confirmation Date"), this Court entered *Findings of Fact, Conclusions of Law, And Order Under 11 U.S.C. § 1129(A) And (B) And Fed. R. Bankr. P. 3020 Confirming Trustee's First Amended Chapter 11 Plan Of Liquidation As Immaterially Modified* ("Confirmation Order") [Docket #1490].  The Plan

---

[2]    See the Trustee's *Motion to Approve Compromise of Controversy Between Eastern Livestock Co., LLC and First Bank and Trust Company,* filed October 30, 2012 [Docket #1498].

became effective on December 20, 2012 ("Effective Date").  *See Notice of Entry of Confirmation Order, Occurrence of Effective Date and Notice of Other Information* [Docket #1675].

## ARGUMENT

### I.    First Bank is not Eligible to Seek Modification of the Plan Injunction.

First Bank's proposed modification of the Plan Injunction (as defined below) would modify the confirmed Plan in this Chapter 11 Case.  Section 1127 of the Bankruptcy Code governs plan modification, providing in relevant part that where the debtor is not an individual:

> (a)    The proponent of a plan may modify such plan at any time before the confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of section 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

> (b)    The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. §1127(a) and (b).  These two provisions of the Bankruptcy Code are controlling as to First Bank's requested modification.[3]  Only two entities have standing to seek such relief—the proponent of the approved plan or the reorganized debtor.  First Bank is neither.

Prevented under the Bankruptcy Code from seeking modification of the Plan, First Bank erroneously argues authority for granting the Motion is found in the Plan's terms.  While First

---

[3]    Not only is First Bank not a property party but its proposed modification of the Plan is disallowed because substantial consummation of the Plan has occurred.  The Trustee has, for example, repaid the estate's $2 million initial financing obligation and has made distributions from the Plan's Collateral Fund to both secured and "opt-in" creditors.

Bank acknowledges that the injunction established in Article 7.5 of the Plan ("Plan Injunction") operates to bar the relief it seeks, it nevertheless claims that Article 7.6 of the Plan contemplates its right to seek a modification of the Plan Injunction. *See Motion*, ¶¶6, 7, 11 and prayer for relief.

This argument fails because First Bank misreads (and misrepresents) Articles 7.5 and 7.6 of the Plan. Article 7.5 of the Plan, "Injunction," provides:

> *On and after the Effective Date*, and except as otherwise provided in this Plan or the Confirmation Order, all Persons and/or Entities are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, interest or right of Debtor and any Cause of Action or Bankruptcy Cause of Action that the Trustee retains sole and exclusive authority to pursue in accordance with this Plan. This injunction applies to any action or proceeding that affects or seeks possession of Property of the Estate. If there is a dispute that any particular asset is Property of the Estate, such dispute is not affected by this injunction until such dispute is resolved. However, any dispute over whether an asset is Property of the Estate shall be brought and prosecuted only in the Bankruptcy Court, subject to any jurisdictional limitations. (italics added).

Article 7.6 of the Plan, "Term of Injunction or Stays" provides:

> Unless otherwise provided herein or by an order of the Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and *in existence on the Confirmation Date*, shall remain in full force and effect until all distributions required to be made under this Plan have been made. *The injunction provided in Section 7.5 of this Plan shall not terminate and shall continue in existence notwithstanding this Section 7.6.* (italics added).

By its terms, the provision for possible termination of any injunction or stay in Article 7.6 is limited to those injunctions or stays in existence on the Confirmation Date. The Plan Injunction under Article 7.5 expressly arises on the Effective Date, falling outside any application of Article 7.6. Importantly, Article 7.6 provides that the Plan Injunction is to be unaffected by Article 7.6. Article 7.6, therefore, has no application to the Plan Injunction under Article 7.5.

Neither the Bankruptcy Code nor the terms of the confirmed Plan support First Bank's contentions that it is entitled to modification of the Plan Injunction to sue the Trustee. First Bank's Motion therefore should be denied.

## II.    The Motion Violates the Terms First Bank Agreed to in its Settlement with The Trustee.

The Settlement between the Trustee and First Bank was designed to be as comprehensive as possible. As part of the Settlement, the Trustee bargained for a number of benefits for which First Bank received ample consideration, not the least of which was a payment by the Trustee to First Bank in the sum of $350,000. Among the most critical benefits to the Trustee and the ELC estate contained in the Settlement, with all due respect to First Bank, was getting free of First Bank, its claims, and its "scorched earth" litigiousness, all of which had been borne by the ELC estate at considerable cost to ELC creditors and parties in interest. To this end, Section 5 of the Settlement includes the following solemn commitment by First Bank:

> First Bank agrees that neither First Bank nor its successors or assigns shall appear or otherwise participate in the Chapter 11 case, including but not limited to the Appeal and the Adversary, from and after the Effective Date[4] other than as necessary to fully implement this Settlement Agreement.

The Motion is not "a filing necessary to fully implement the Settlement Agreement." First Bank's proposed breach of a final, Court-approved Settlement should not be permitted and the Trustee should be allowed to recover damages and fees from First Bank.

The equitable interests of the creditors of the ELC estate likewise support denying the Motion for the same reasons that motivated the Trustee to settle with First Bank. First Bank's Motion and proposed complaint are destined to increase administrative expenses most likely in

---

[4]    Reference to "Effective Date" in the Settlement is to the date the Settlement Order becomes final and non-appealable.

the hope of gaining First Bank leverage in the treatment of the First Bank/Gibson Claim in the Gibson Case to the detriment of the ELC/Gibson Claim (and claims of other creditors against the Gibson Estate). Granting the Motion therefore inevitably will exact an unjustified burden on ELC creditors and undercut what the Trustee achieved in the Settlement and in the Plan. The Motion should be denied in order to preserve the finality of settlements and conserve resources in this case.

**III.    The ELC Trustee has Satisfied the Applicable Statute of Limitations with Respect to the Estate's Interest in the Account Funds.**

First Bank argues that "Debtor has no right to payment from the Gibson estate due to its failure to bring any action to avoid any transfer alleged to be a fraudulent and/or preferential transfer within the time limits set forth in Section 546(b) of the Code." *Motion*, ¶ 5. First Bank tries to make the case that in the absence of having initiated an adversary proceeding against the Gibson Estate, the ELC Trustee cannot have an interest in the Account Funds. First Bank's argument is inconsistent with claims procedures and rights basic to the Bankruptcy Code.

As stated above, in the ELC/Gibson Claim, the Trustee asserts fraudulent transfer, preferential transfer, conversion, turnover and other claims against the Gibson Estate. The Trustee filed the ELC/Gibson Claim more than a year prior to any statute of limitations applicable to fraudulent transfer or preferential transfer claims, including the statute of limitations contained in Section 546(b) of the Bankruptcy Code. Despite First Bank's contentions to the contrary, the filing of the ELC/Gibson Claim satisfies any applicable statute of limitations in establishing the Trustee's rights and interest in the Account Funds.

"The filing of a claim has been said to be tantamount to the filing of a complaint in a civil action." *Smith v. Dowden*, 47 F.3d 940, 942 (8th Cir. 1996) ("Courts have traditionally analogized a creditor's claim to a civil complaint, a trustee's objection to an answer, and an

adversarial proceeding to a counterclaim"); *see also Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir. 1962). The filing of a proof of claim is prima facie evidence of the validity of the claim. Bankruptcy Rule 3001(f). Just as importantly, neither the Gibson Trustee, nor any other party, has objected to the ELC/Gibson Claim. Accordingly, the ELC/Gibson Claim is deemed allowed. 11 U.S.C. § 502(a).

First Bank's position ignores these fundamental tenets. The Trustee in fact has asserted the ELC estate's claims against the Gibson Estate just as the Bankruptcy Code allows. If First Bank's contentions were accurate, the Trustee would have been required to seek relief from stay to file a fraudulent transfer complaint against the Gibson Estate to reassert the substance of the ELC/Gibson Claim and then litigate that complaint. Such a result would effectively nullify the Bankruptcy Code's claim filing and allowance provisions. Moreover, prior to the passing of the bar date, the Gibson Estate filed a claim in this Chapter 11 Case and the Trustee filed a claim on behalf of the Debtor against the Gibson Estate. The Trustees and their counsel have been negotiating the treatment of those claims and are hopeful that the claims can be settled and resolved without initiating additional proceedings. In light of the pending negotiations and the broad scope of their respective claims against one another's estates, the Trustees have not commenced any additional actions nor have they released, waived or modified their claims. The filing of the ELC/Gibson Claim satisfies Section 546(b) of the Bankruptcy Code for the purposes of asserting (and preserving) the Trustee's interests and right to payment from the Gibson Estate.

## IV.    The Gibson Trustee's Possession and Custody of the Debtor's Property also Precludes First Bank's Foreshadowed Limitations Defense.

Section 542 of the Bankruptcy Code requires a person in possession of estate property to deliver it, or the value thereof, to the trustee. Section 543 of the Bankruptcy Code requires a custodian with knowledge of a bankruptcy case to deliver to the trustee and to account for the

property that has come into his or her possession, custody, or control as a custodian. "Property of the debtor" for the purposes of Section 543 includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian. *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 554 (7th Cir. 1985), *cert. denied*, *Fryzel v. Cash Currency Exchange, Inc.*, 474 U.S. 904, 106 S.Ct. 233 (1985); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 370 (1977). Application of Section 543 is "self-executing" by its terms. 11 U.S.C § 543(b); *see also*, *In re U.S. Advertising Inc.*, 131 B.R. 537, 540 (Bankr. D.R.I. 1991). The legislative history of Section 543 is consistent and provides, in pertinent part, that:

> This section requires a custodian appointed [**39] before the bankruptcy case to deliver to the trustee and to account for property that has come into his possession, custody, or control as a custodian. *"Property of the debtor" in section (a) includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian.*

H.R. Rep. No. 595, 95th Cong., 1st Sess. 370 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 84 (1978) (emphasis added).

Concurrent with the filing of this Chapter 11 Case and with indisputable knowledge of its commencement, the Gibson Trustee became a custodian of the property of ELC within her control and possession. Likewise, concurrent with the filing of the Gibson Case, the receiver, who was then appointed over the property of ELC and succeeded by the Trustee, became custodian of the property of the Gibsons within the receiver's, then Trustee's, control and possession. Since then, the Trustee and the Gibson Trustee have cooperated and worked together, understanding it was the position of each that the other was the custodian of property belonging to the estate of the other debtor with attendant fiduciary duties, have undertaken to

reach a fair and equitable agreement as to the turnover of such property.[5]  The Gibson Trustee's obligations to the ELC estate as possessor of Debtor's property under Section 542 or as custodian under Section 543 necessarily extend to all monies and other assets that constitute property of ELC, including, as may be the case, the Account Funds.  Whatever allowed secured claims First Bank may have or be entitled to against the Gibson Estate, such claims exist as a matter of law and are not in jeopardy on account of the passage of time.  First Bank should not be permitted to file the proposed complaint which appears destined to destabilize a final resolution between the trustees for turnover regarding the property for which each is a custodian of the other.

## CONCLUSION

For all of these reasons, the Trustee respectfully objects and requests the Court to deny the Motion and to grant the Trustee all just and proper relief.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP


By: /s/ Kevin M. Toner
    *Counsel for James A. Knauer, Chapter 11 Trustee*

Terry E. Hall (#22041-49)
Kevin M. Toner (#11343-49)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
terry.hall@faegrebd.com
kevin.toner@faegrebd.com


Wendy W. Ponader (#14633-49)
600 East 96th Street, Suite 600

---

[5]    Both trustees have filed proofs of claims in the bankruptcy case of the other.  On May 2, 2011, the Gibson Trustee filed her claim on behalf of the Gibson Estate against the ELC estate in the sum of "not less than $18,025,872.64."

Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
wendy.ponader@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2014, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

David L. Abt
davidabt@mwt.net

Mark A. Robinson
mrobinson@vhrlaw.com

Randall D. LaTour
rdlatour@vorys.com

Daniel J. Donnellon
ddonnellon@ficlaw.com

John W. Ames
james@bgdlegal.com

Jeremy S Rogers
Jeremy.Rogers@dinslaw.com

Meredith R. Thomas
mthomas@daleeke.com

Charles R. Wharton
Charles.R.Wharton@usdoj.gov

David L. LeBas
dlebas@namanhowell.com

Suzanne M Shehan
suzanne.shehan@kutakrock.com

Laura Day Delcotto
ldelcotto@dlgfirm.com

Ross A. Plourde
ross.plourde@mcafeetaft.com

Todd J. Johnston
tjohnston@mcjllp.com

Karen L. Lobring
lobring@msn.com

Elliott D. Levin
edl@rubin-levin.net

Sean T. White
swhite@hooverhull.com

Michael W. McClain
mike@kentuckytrial.com

James Edwin McGhee
mcghee@derbycitylaw.com

C. R. Bowles, Jr
cbowles@bgdlegal.com

Jeffrey R. Erler
jerler@ghjhlaw.com

John R. Carr, III
jrciii@acs-law.com

Stephen A. Weigand
sweigand@ficlaw.com

Robert Hughes Foree
robertforee@bellsouth.net

Ivana B. Shallcross
ishallcross@bgdlegal.com

William Robert Meyer, II
rmeyer@stites.com

James Bryan Johnston
bjtexas59@hotmail.com

Judy Hamilton Morse
judy.morse@crowedunlevy.com

John Huffaker
john.huffaker@sprouselaw.com

Kelly Greene McConnell
lisahughes@givenspursley.com

Walter Scott Newbern
wsnewbern@msn.com

Timothy T. Pridmore
tpridmore@mcjllp.com

Sandra D. Freeburger
sfreeburger@dsf-atty.com

John M. Rogers
johnr@rubin-levin.net

Jay P. Kennedy
jpk@kgrlaw.com

William E Smith
wsmith@k-glaw.com

Thomas C Scherer
tscherer@bgdlegal.com

John Hunt Lovell
john@lovell-law.net

Edward M King
tking@fbtlaw.com

Bret S. Clement
bclement@acs-law.com

John Frederick Massouh
john.massouh@sprouselaw.com

Kim Martin Lewis
kim.lewis@dinslaw.com

Deborah Caruso
dcaruso@daleeke.com

Allen Morris
amorris@stites.com

James T. Young
james@rubin-levin.net

John M. Thompson
john.thompson@crowedunlevy.com

Matthew J. Ochs
kim.maynes@moyewhite.com

Andrew James Vandiver
avandiver@aswdlaw.com

Kirk Crutcher
kcrutcher@mcs-law.com

Theodore A Konstantinopoulos
ndohbky@jbandr.com

Lisa Koch Bryant
courtmail@fbhlaw.net

John David Hoover
jdhoover@hooverhull.com

John R. Burns
john.burns@faegrebd.com

Kayla D. Britton
kayla.britton@faegrebd.com

David A. Laird
david.laird@moyewhite.com

12

Amanda Dalton Stafford
ads@kgrlaw.com

David Alan Domina
dad@dominalaw.com

Jill Zengler Julian
Jill.Julian@usdoj.gov

Michael Wayne Oyler
moyler@rwsvlaw.com

James E. Rossow
jim@rubin-levin.net

Steven A. Brehm
sbrehm@ bgdlegal.com

Patrick B Griffin
pat.griffin@kutakrock.com

Shawna M. Eikenberry
shawna.eikenberry@faegrebd.com

James A. Knauer
jak@kgrlaw.com

Jessica Lynn Olsheski
jessica.olsheski@justice-law.net

Niccole R. Sadowski
nsadowski@thbklaw.com

Joseph H. Rogers
jrogers@millerdollarhide.com

Andrew D. Stosberg
astosberg@lloydmc.com

Christopher M. Trapp
ctrapp@rubin-levin.net

Jennifer Watt
jwatt@kgrlaw.com

William K. Flynn
wkflynn@strausstroy.com

Michael Benton Willey
michael.willey@ag.tn.gov

Chrisandrea L. Turner
clturner@stites.com

Scott R. Leisz
sleisz@bgdlegal.com

Terrill K. Moffett
kendalcantrell@moffettlaw.com

Matthew Daniel Neumann
mneumann@hhclaw.com

Chad Duane Wuertz
chad@wuertzlaw.com

Matthew R. Strzynski
mstrzynski@kdlegal.com

Kent A Britt
kabritt@vorys.com

Jeffrey L Hunter
jeff.hunter@usdoj.gov

Jason W. Cottrell
jwc@stuartlaw.com

James B. Lind
jblind@vorys.com

Anthony G. Raluy
traluy@fbhlaw.net

Jack S. Dawson
jdawson@millerdollarhide.com

Terry E. Hall
terry.hall@faegrebd.com

Erick P. Knoblock
eknoblock@daleeke.com

Shiv Ghuman O'Neill
shiv.oneill@faegrebd.com

Eric C. Redman
ksmith@redmanludwig.com

James E. Smith
jsmith@smithakins.com

Kevin M. Toner
kevin.toner@faegrebd.com

Eric W. Richardson
ewrichardson@vorys.com

Joe Lee Brown
Joe.Brown@Hardincounty.biz

Thomas P. Glass
tpglass@strausstroy.com

Kay Dee Baird
kbaird@kdlegal.com

Paul M. Hoffman
phoffman@stinson.com

Brian H. Meldrum
bmeldrum@stites.com

Natalie Donahue Montell
nmontell@bgdlegal.com

Brian Robert Pollock
bpollock@stites.com

Trevor L. Earl
tearl@rwsvlaw.com

Joshua N. Stine
kabritt@vorys.com

Amelia Martin Adams
aadams@dlgfirm.com

Robert A. Bell
rabell@vorys.com

Melissa S. Giberson
msgiberson@vorys.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Dustin R. DeNeal
dustin.deneal@faegrebd.com

Jay Jaffe
jay.jaffe@faegrebd.com

Harmony A. Mappes
harmony.mappes@faegrebd.com

Wendy W. Ponader
wendy.ponader@faegrebd.com

Joe T. Roberts
jratty@windstream.net

Christopher E. Baker
cbaker@thbklaw.com

Andrea L. Wasson
andrea@wassonthornhill.com

Joshua Elliott Clubb
joshclubb@gmail.com

Ben T. Caughey
ben.caughey@icemiller.com

Stephen E. Schilling
seschilling@strausstroy.com

David W. Brangers
dbrangers@lawyer.com

Martha R. Lehman
mlehman@kdlegal.com

Kevin J. Mitchell
kevin.mitchell@faegrebd.com

Erin Casey Nave
enave@taftlaw.com

Steven Eric Runyan
ser@kgrlaw.com

/s/ Kevin M. Toner