# EXHIBIT "A"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is made as of April 22, 2014 by and among James A. Knauer, individually and in his capacity as chapter 11 trustee ("Trustee") for the bankruptcy estate of Eastern Livestock Co., LLC ("Debtor") and on behalf of his counsel ("Trustee's Counsel"); and Bradbury & York and Mike Bradbury (collectively "B&Y"). The Debtor, the Estate, the Trustee, Bradbury & York, and Mike Bradbury shall collectively be referred to herein as the "Parties," and each, a "Party".

### Recitals

A.  On December 6, 2010, certain petitioning creditors commenced a chapter 11 case against Debtor by filing an involuntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "Court") as Case No. 10-93904-BHL (the "Chapter 11 Case"). The Court entered the Order For Relief in An Involuntary Case and Order to Complete Filing [Doc. No. 110] on December 28, 2010.

B.  On December 27, 2010, the Court entered the Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [Doc. No. 102] approving the United States Trustee's Application for an Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee [Doc. No. 98] pursuant to 11 U.S.C. § 1104.

C.  The Trustee's First Amended Chapter 11 Plan of Liquidation was filed in the Bankruptcy Case on October 26, 2012 [Doc. No. 110] (the "Chapter 11 Plan"), which Chapter 11 Plan was confirmed on December 17, 2012 [Doc. No. 1644].

D.  In the ninety (90) day period prior to the commencement of the Chapter 11 Case, the Trustee alleges B&Y received not less than $241,597.74 in transfers from the Debtor (collectively, the "Transfers").

E.  On December 20, 2012, the Trustee initiated an adversary proceeding against B&Y in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division as adversary proceeding number 12-59136, asserting that such Transfers may be avoided and recovered by the Trustee pursuant to, among other things, sections 547 and 550 of the Bankruptcy Code (the "Preference Claim"), subject to the defenses provided under section 547(c) of the Bankruptcy Code.

F.  The Parties have negotiated with regard to settlement of this matter and have agreed to a settlement amount of $15,000.00, subject to approval by the Court.

G.  The Trustee has concluded this Settlement Agreement is in the best interests of the Debtor's estate, and in reaching this conclusion, the Trustee has considered the cost, expense, and delay of litigating the dispute, and the inherent uncertainty in any litigated matter.

H.  B&Y desires to enter into the Settlement Agreement to avoid the costs, delay, expense and inherent uncertainty in any litigated matter.

1

NOW THEREFORE, incorporating the foregoing Recitals and based upon the mutual promises contained in this Settlement Agreement and other valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. <u>Payment.</u> Bradbury & York and Mike Bradbury, jointly and severally, shall pay to the Trustee for the benefit of the Estate the total sum of $15,000.00 (the "<u>Settlement Amount</u>"). The Settlement Amount shall become part of the Recovery Fund (as that term is defined in the Debtor's Plan). The payment shall be made payable to "Kroger, Gardis & Regas, LLP Trust Account" and shall be delivered, together with an executed copy of this Settlement Agreement, to the Trustee's counsel of record, Jay P. Kennedy, Kroger, Gardis & Regas, LLP, 111 Monument Circle, Suite 900, Indianapolis, Indiana 46204-5125.

2. <u>Court Approval of Settlement; Effective Date</u>. This Settlement Agreement is subject to Court approval under Federal Rule of Bankruptcy Procedure 9019. Within ten (10) business days of the Trustee's receipt of the Settlement Amount and an executed copy of this Settlement Agreement from B&Y, the Trustee shall file with the Court a motion requesting the Court's approval of this Settlement Agreement (the "<u>Settlement Motion</u>"). The effectiveness of this Settlement Agreement is contingent upon the Court's entry of a final order approving the Settlement Motion (the "<u>Settlement Order</u>"). The date the Settlement Order becomes a final, non-appealable Order shall be referred to herein as the "<u>Effective Date</u>." The Parties shall file such additional information as the Court may request in an effort to obtain Court approval of the Settlement Motion. The Parties shall, in good faith, use all reasonable efforts to obtain approval of the Settlement Motion. In the event that the Bankruptcy Court refuses to approve this Settlement Agreement, the Trustee will promptly return the Settlement Amount to B&Y within five (5) business days of the entry of an order denying the Settlement Motion.

3. <u>Stipulation of Dismissal</u>. Within ten (10) business days from the Effective Date, the Parties, by their respective counsel, shall file with the Court a Stipulation of Dismissal in the Adversary Proceeding, dismissing all claims against B&Y with prejudice.

4. <u>Mutual Release</u>. In exchange for the promises contained herein, and conditioned upon the occurrence of the Effective Date and B&Y's payment of the Settlement Amount:

    (a) Bradbury & York and its officers, partners, directors, employees, shareholders, attorneys, insurers, agents, affiliates, predecessors, successors, past and present parents, subsidiaries, assigns, heirs, and designees hereto forever **RELEASE AND DISCHARGE** each of the Debtor, the Estate, the Trustee individually and in his capacity as Chapter 11 trustee for the Estate, and Trustee's Counsel, and the respective officers, directors, employees, shareholders, attorneys, insurers, agents, affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns, heirs, and designees each of the Debtor, the Estate, the Trustee individually and in his capacity as Chapter 11 trustee for the Estate, and Trustee's Counsel from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct,

2

indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement.

(b) Mike Bradbury and his attorneys, insurers, agents, affiliates, predecessors, successors, past and present partners, assigns, heirs, and designees hereto forever **RELEASE AND DISCHARGE** each of the Debtor, the Estate, the Trustee individually and in his capacity as Chapter 11 trustee for the Estate, and Trustee's Counsel, and the respective officers, directors, employees, shareholders, attorneys, insurers, agents, affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns, heirs, and designees each of the Debtor, the Estate, the Trustee individually and in his capacity as Chapter 11 trustee for the Estate, and Trustee's Counsel from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement.

(c) The Debtor, the Estate, Trustee and Trustee's Counsel and also solely in their capacity as representatives of these parties, the respective officers, directors, employees, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors, past and present parents, subsidiaries, assigns, heirs, and designees hereto forever **RELEASE AND DISCHARGE** Bradbury & York and Mike Bradbury and also solely and in their representative capacities, its officers, partners, directors, employees, shareholders, attorneys, professionals, insurers, agents, past and present parents, subsidiaries, affiliates, predecessors, successors and assigns from any and all actions, suits, objections, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether direct, indirect or derivative, whether known or unknown, discovered or discoverable, accrued or unaccrued, as of the date of this Settlement Agreement.

5. <u>Effect of Releases and Satisfaction of Claims</u>. Consistent with the releases set forth in Section 3 hereof, and in consideration of such releases and the payments contemplated pursuant to this Settlement Agreement, on the Effective Date, B&Y shall be deemed to withdraw, waive and release, any and all claims or assertions of interest to assert a claim under Section 502(h) of the Bankruptcy Code. Notwithstanding any of the releases set forth herein however, nothing in this Settlement Agreement shall release a) the Parties from their obligations under the Settlement Agreement, b) any proof of claim filed by B&Y against the Debtor or the estate prior to December 20, 2012, pursuant to Paragraph 6 herein, or c) any claims by B&Y against third parties, including but not limited to Fifth Third Bank, NA and affiliates.

3

6.  Allowance of Claim. On or about March 14, 2011, B&Y filed its proof of claim in the amount of $98,725.23, as court claim number 102 ("Claim No. 102"). The Parties agree that Claim No. 102 shall be allowed in part and disallowed in part. Specifically, B&Y shall have an allowed Opt Out Claim (as that term is defined Article 2.74 of the Chapter 11 Plan) in the amount of $94,414.82 ("Allowed Opt Out Claim"), and the remaining amount of Claim No. 102 shall be disallowed. The Allowed Opt Out Claim shall remain subject to reduction if and to the extent B&Y receives any recovery on account of the claims asserted in Claim No. 102 from restitution payments, from other third parties, or from additional bond monies. Any and all dividends payable pursuant to the Allowed Opt Out Claim shall be paid in accordance with the Chapter 11 Plan.

7.  Cooperation. The Parties agree and covenant that they will cooperate and take all reasonable actions necessary to execute further documents that may be necessary to implement this Settlement Agreement.

8.  Qualification; Authority. Each individual executing this Settlement Agreement on behalf of a Party represents and warrants that he or she is duly authorized to execute, deliver, and perform this Settlement Agreement on behalf of such party, that no additional consents or signatures on behalf of such party are required in order for this Settlement Agreement to be binding and enforceable upon and against said party, and that no Party has sold, transferred, assigned, conveyed or otherwise disposed of any claims, demands or rights surrendered by virtue of this Settlement Agreement.

9.  Each of the Parties Bears Own Costs. Each of the Parties agrees that it or he shall bear its or his own attorneys' fees and other costs incurred in connection with the negotiation and preparation of this Settlement Agreement, the procurement of the Settlement Order, and any other or further orders or pleadings required under this Settlement Agreement, including the preparation and filing of, and hearings for, all related motions.

10. Successors and Assigns. This Settlement Agreement shall inure to the benefit of the Parties and their respective heirs, affiliates, assigns and successors in interest.

11. Court Jurisdiction. The Court shall retain exclusive jurisdiction to hear, decide and enter a final order on any and all claims or disputes arising out of the execution and performance of this Settlement Agreement.

12. Governing Law. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana, except to the extent superseded by the Bankruptcy Code, as applicable to the Chapter 11 Case.

13. Merger of Prior Agreements. This Settlement Agreement constitutes the entire agreement between the Parties, and any and all prior or contemporaneous agreements, whether oral or written, related thereto are merged into this Settlement Agreement and are of no further force or effect.

14. Counterparts; Facsimile Delivery. This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all Parties.

Signatures may be delivered by facsimile and such signatures shall be binding upon the party delivering same as if they were originals.

16. <u>Severability</u>. All provisions of this Settlement Agreement are to be read in conjunction with each other. Each and every provision contained in this Settlement Agreement is nonseverable and mutually dependent on each and every other provision contained herein. Provisions should be read together so as to harmonize the whole.

16. <u>Amendments</u>. This Settlement Agreement may not be amended, supplemented, changed, modified, released or discharged except by a writing executed by duly authorized representatives of each of the Parties and signatories hereto.

17. <u>No Admission of Fault or Liability</u>. This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of any of the Parties.

18. <u>No Presumption Against Drafter</u>. This Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Agreement.

19. **THE PARTIES HAVE: (A) READ THIS SETTLEMENT AGREEMENT CAREFULLY; (B) OBTAINED THE ADVICE OF LEGAL COUNSEL, OR HAVE VOLUNTARILY ELECTED NOT TO DO SO; AND (C) ARE FULLY INFORMED OF THE CONTENT AND MEANING OF THIS SETTLEMENT AGREEMENT. THE PARTIES ARE EXECUTING THIS NEGOTIATED SETTLEMENT AGREEMENT VOLUNTARILY AND NOT UNDER DURESS OF ANY KIND.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;<br>SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates indicated below.

**BRADBURY & YORK**

*[signature: Jack D. York]*

Printed: Jack D. York

Title: Partner

Date: 4/28/14

**COUNSEL FOR BRADBURY & YORK**

By: *[signature]*

Printed: Amelia M. Adams

Title: Attorney

Date: April 28, 2014

**MIKE BRADBURY**

*[signature: Mike Bradbury]*

Printed: Mike Bradbury

Date: 4/28/14

**COUNSEL FOR MIKE BRADBURY**

By: *[signature]*

Printed: Amelia M. Adams

Title: Attorney

Date: April 28, 2014

6

**JAMES A KNAUER AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF EASTERN LIVESTOCK CO., LLC, AND INDIVIDUALLY**

By: _____
      James A. Knauer

Date: 4/28/14

**TRUSTEE'S COUNSEL**

By: _____
      Jay P. Kennedy, Partner

Date: 4/28/14

7