Exhibit A

Case 10-93904-BHL-11 Doc 2595-1 Filed 06/16/14 EOD 06/16/14 16:16:32 Pg 1 of 6

Mail

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release ("Settlement Agreement") is made as of the date below by and between James A. Knauer as chapter 11 trustee ("Trustee") for the bankruptcy estate of Eastern Livestock Co., LLC ("Debtor") and Gene Shipman ("Shipman"). The Trustee and Shipman are collectively referred to herein as the "Parties."

### Recitals

A.   Certain petitioning creditors commenced a chapter 11 case ("Chapter 11 Case") against the Debtor on December 6, 2010 by filing an involuntary petition for relief under chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division ("Court"). The Court entered the *Order For Relief in An Involuntary Case and Order to Complete Filing* [Dock. No. 110] on December 28, 2010.

B.   On December 27, 2010, the Court entered the *Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee* [Dock. No. 102] approving the *United States Trustee's Application for an Order Approving the Appointment of James A. Knauer as Chapter 11 Trustee* [Dock. No. 98] pursuant to 11 U.S.C. § 1104.

C.   The Trustee filed the *Trustee's Chapter 11 Plan of Liquidation* on July 23, 2012 [Docket No. 1255] and the *First Amended Chapter 11 Plan of Liquidation* on October 26, 2012 [Dock. No. 1490] ("Plan"). The Court entered an Order on December 17, 2012 [Dock. No. 1644] ("Confirmation Order") confirming the Plan.

D.   The Trustee contends that prior to the Chapter 11 Case, Debtor purchased 71 head of cattle (the "Shipman Cattle") from or through Shipman pursuant to contract. The Shipman Cattle were delivered to Cactus Growers, Inc. ("Cactus") on or around November 1, 2010. According to Shipman, Cactus rejected 25 head ("Rejected Cattle") of the Shipman Cattle.

E.   Friona interpled $31,906.68, representing the proceeds of the Shipman Cattle minus the Rejected Cattle ("Interpled Funds"), with the Court in connection with Adversary Proceeding No. 11-59093 (the "Adversary").

F.   Shipman filed an Amended Answer of Defendant Gene Shipman to Intervenor Cactus Growers, Inc.'s First Amended Complaint in Intervention in the Nature of Interpleader, Counter-Claim Against Cactus Growers, Inc. and Cross-Claims Against Eastern Livestock, Inc. and Fifth Third Bank (the "Shipman Answer") as Docket No. 155 in the Adversary, asserting claims to the Interpled Funds.

G.   The Trustee contends that the Interpled Funds are property of Debtor's bankruptcy estate.

H.   On March 11, 2011, Shipman filed a proof of claim (the "Shipman POC") in the Chapter 11 Case. The Shipman POC is designated on the official claims register maintained by The BMC Group, Inc. as claim no. 98. The Shipman POC asserts a total claim against Debtor in the amount of $47,848.50.

1

dms.us.53109036.01

I.  The Parties desire to resolve and settle all issues, disputes, claims and causes of actions relating to the Interpled Funds without further litigation and without admission of any fault or liability. The Parties have engaged in good faith settlement negotiations through their respective counsel and have agreed to settle and resolve all issues, disputes, claims, and causes of action related to the Interpled Funds on the terms set forth below.

NOW THEREFORE, incorporating the foregoing Recitals and based upon the mutual promises contained in this Settlement Agreement and for other valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. Court Approval of Settlement Agreement. This Settlement Agreement is subject to Court approval under Federal Rule of Bankruptcy Procedure 9019. Within five business days following execution of this Settlement Agreement, the Trustee shall file with the Court a motion, in a form acceptable to the Parties, requesting the Court's approval of this Settlement Agreement ("Settlement Motion") and shall tender to the Court a proposed order approving the Settlement Agreement ("Settlement Order"). This Settlement Agreement is contingent upon the Court's entry of the Settlement Order in form acceptable to the Parties. The date the Settlement Order is entered by the Court shall be referred to herein as the "Effective Date." The Parties shall file such additional information as the Court may request to obtain the Court's approval of the Settlement Motion. The Parties shall, in good faith, use all reasonable efforts to obtain approval of the Settlement Motion.

2. Settlement. The Parties agree that this Settlement Agreement resolves any and all claims, counterclaims, and cross-claims with respect to the Interpled Funds, including those asserted in the Shipman Answer. Within five business days of the Effective Date, the Trustee and Shipman shall file a joint motion in the Adversary, substantially in the form attached hereto as **Schedule A**, requesting that the Court transfer $3,200 of the Interpled Funds (the "Settlement Payment") to Shipman by check delivered to Shipman's counsel, Kirk Crutcher, P.O. Box 50787 Amarillo, TX 79159, and the remainder of the Interpled Funds to the Trustee. The date that Shipman's counsel receives the Settlement Payment shall be referred to herein as the "Payment Date".

3. Shipman POC. As of the Payment Date, the Shipman POC shall be deemed to have been amended, without further action by the Parties, to assert an unsecured claim in the total amount of $44,648.50 (the "Shipman Allowed Claim"). The Trustee agrees not to contest the validity of the Shipman Allowed Claim and shall withdraw any objections thereto within five business days of the Payment Date. However, the Trustee may later object to the total amount of the Shipman Allowed Claim if and to the extent Shipman receives distributions from alterantive sources such as Debtor's GIPSA Bond.

4. Adversary. Within five business days of the Payment Date, Shipman and the Trustee shall file such further pleadings as necessary to dismiss Shipman from the Adversary with prejudice.

2

5. <u>Release</u>. Conditioned upon the occurrence of the Payment Date, but effective as of the Effective Date, and except as otherwise expressly reserved herein, each of the Parties and their officers, directors, employees, professionals, shareholders, attorneys, insurers, agents and affiliates, predecessors, successors, past, present and future parents, subsidiaries, assigns and heirs hereto forever **RELEASE AND DISCHARGE** each other and each of the Parties' respective officers, directors, employees, shareholders, professionals, attorneys, insurers, agents and affiliates, predecessors, successors and assigns from any and all actions, suits, claims (whether in tort or contract), causes of action, administrative proceedings, damages (including actual, consequential and punitive damages), losses, costs, liabilities, expenses and penalties, whether known or unknown, discovered or discoverable, which relate to the Shipman Cattle. The Parties expressly release any and all claims, counterclaims, and cross-claims which relate to the Interpled Funds. Nothing contained herein shall release the Shipman Allowed Claim.

6. <u>Cooperation</u>. The Parties agree and covenant that they will cooperate and take all reasonable actions necessary to implement this Settlement Agreement.

7. <u>Qualification; Authority</u>. Each individual executing this Settlement Agreement on behalf of a party represents and warrants that he is duly authorized to execute and deliver this Settlement Agreement on behalf of such party and that no additional consents or signatures on behalf of such party are required in order for this Settlement Agreement to be binding and enforceable upon and against said party.

8. <u>Each of the Parties Bears Own Costs</u>. Each of the Parties agrees that he or it shall bear its own attorneys' fees and other costs incurred in connection with the negotiation and preparation of this Settlement Agreement and the procurement of the Settlement Order, including the preparation and filing of, and hearings for, all related motions.

9. <u>Successors and Assigns</u>. This Settlement Agreement shall inure to the benefit of the Parties and their respective heirs, affiliates, assigns and successors in interest.

10. <u>Court Jurisdiction</u>. The Court shall retain exclusive jurisdiction to hear, decide and enter a final order on any and all claims or disputes arising out of the execution and performance of this Settlement Agreement.

11. <u>Governing Law</u>. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Indiana except to the extent superseded by the Federal bankruptcy law applicable to the Chapter 11 Case.

12. <u>Merger of Prior Agreements</u>. This Settlement Agreement constitutes the entire agreement between the Parties, and any and all prior or contemporaneous agreements, whether oral or written, related thereto are merged into this Settlement Agreement and are of no further force or effect.

3

dms.us.53109036.01

13. <u>Counterparts; Facsimile Delivery</u>. This Settlement Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all Parties. Signatures may be delivered by facsimile and such signatures shall be binding upon the party delivering same as if they were originals.

14. <u>Agreement Nonseverable and Mutually Dependent</u>. All provisions of this Settlement Agreement are to be read in conjunction with each other. Each and every provision contained in this Settlement Agreement is nonseverable and mutually dependent on each and every other provision contained herein. Provisions should be read together so as to harmonize the whole.

15. <u>Amendment</u>. This Settlement Agreement may not be amended, changed, modified, released or discharged except by a writing executed by duly authorized representatives of each of the Parties and signatories hereto.

16. <u>No Admission of Fault or Liability</u>. This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability or wrongdoing on the part of either party.

17. <u>No Presumption Against Drafter</u>. This Settlement Agreement was jointly drafted and there shall be no presumption against or burden placed on one party for its role in the drafting of the Agreement.

*[Remainder of page intentionally left blank. Signature page to follow.]*

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates indicated below.

Gene Shipman

_Gene Shipman_  3/27/14
                              Date

James A Knauer as Chapter 11 Trustee for the Esate of Eastern Livestock Co., LLC

_[signature]_  5/31/14
                              Date

5