Exhibit A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE BETWEEN GIBSON TRUSTEE, ELC TRUSTEE AND MONTY KOLLER

This Settlement Agreement ("**Agreement**") is entered into this ___ day of June, 2014 ("**Effective Date**"), by and among Kathryn L. Pry, as Chapter 7 Trustee of the bankruptcy estate of Thomas P. and Patsy M. Gibson (the "**Gibson Trustee**"), Case No. 10-93867-BHL-7A, James A. Knauer, as Chapter 11 Trustee for the bankruptcy estate of Eastern Livestock Co., L.L.C. (the "**ELC Trustee**"), Case No. 10-93904 (the ELC Trustee and the Gibson Trustee are referred to collectively here as the "**Trustees**"), and Defendant Monty Koller a/k/a Monty Larry Koller a/k/a Lamont Koller a/k/a Lamont L. Koller a/k/a Lamont Larry Koller a/k/a Monty L. Koller, Individually, and d/b/a Koller Livestock ("**Koller**") (collectively herein the Trustees and Koller are referred to as the "**Parties**" and individually referred to as "Party"). The Parties agree as follows:

## I. RECITALS

1. Thomas P. Gibson and Patsy M. Gibson, (the "**Gibson Debtors**") filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") on December 1, 2010.

2. Eastern Livestock Co., L.L.C. ("**ELC**") was one of the largest cattle dealers in the United States. Certain petitioning creditors commenced a Chapter 11 Case against ELC on December 6, 2010, by filing an involuntary petition for relief under the Bankruptcy Code. The United States Bankruptcy Court for the Southern District of Indiana (the "**Bankruptcy Court**") entered the Order for Relief in An Involuntary Case and Order to Complete Filing on December 28, 2010.

3. Koller is an individual who resides in Amarillo, Texas.

4. On November 30, 2012, the Gibson Trustee commenced Adversary Proceeding No. 12-59104 in the Bankruptcy Court by filing a complaint against Koller to avoid and recover certain transfers. The District Court for the Southern District of Indiana (the "**District Court**") granted Koller's Motion to Withdraw the Reference, where the case is currently pending as Case No. 4:13-cv-00028-RLY-WGH (the "**Gibson/Koller Adversary Proceeding**").

5. On December 22, 2012, the ELC Trustee commenced Adversary Proceeding No. 12-59150 in the Bankruptcy Court by filing a complaint against Koller to avoid and recover certain transfers. The District Court granted Koller's Motion to Withdraw the Reference, where the case was pending as Case No. 4:14-cv-00002-TWP-TAB (the "**ELC/Koller Adversary Proceeding**"). The District Court consolidated the Gibson/Koller Adversary Proceeding and the ELC/Koller Adversary Proceeding and closed Case No. 4:14-cv-00002-TWP-TAB (collectively, the "**Consolidated Koller Litigation**"). *See* Case No. 4:14-cv-00002-TWP-TAB, Doc# 10; *see also* Case No. 4:13-cv-00028-RLY-WGH, Doc# 28.

6. The effectiveness and enforcement of this Agreement is subject to approval by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019(b).

**THEREFORE**, for and in consideration of the mutual covenants, obligations, agreements and releases contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all Parties, the Parties agree that:

## II. AGREEMENT

A. The recitals stated above are incorporated into this Agreement by reference as if fully set forth herein.

B. Koller shall:

1. Pay the Trustees $30,000.00 ("**First Payment**") within seven (7) days of entry of an order or orders by the Bankruptcy Court approving the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(b);

2. Pay the Trustees $30,000.00 ("**Second Payment**") on or before December 29, 2014, as long as the Bankruptcy Court has entered an order or orders approving the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(b) prior to that date;

3. Execute and deliver an agreed judgment against Koller and in favor of the Trustees in the amount of $30,000.00 ("**Agreed Judgment**") which document will be held by counsel for the ELC Trustee and will not be filed with the Bankruptcy Court or recorded in any county unless and until Koller fails to pay in full the Second Payment as set forth in Paragraph II.B.2;

4. Waive any and all claims and withdraw all claims filed in the Gibson Estate; and

5. Waive any and all claims and withdraw all claims filed in the ELC Estate.

C. Within seven (7) days of the delivery of the First Payment and the executed Agreed Judgment, the Trustees shall file pleadings required to cause the dismissal with prejudice of the Consolidated Koller Litigation, the ELC/Koller Adversary Proceeding, and the Gibson/Koller Adversary Proceeding.

D. The Parties agree to the following mutual releases on the terms as defined and set forth below:

1. **Definitions**. As used herein, the following terms shall have the following meanings:

a. "**Claims**" mean and include any and all agreements, causes of action, claims, commitments, contracts, controversies, covenants, indebtedness, debts, damages, demands, disputes, obligations, liabilities, rights and suits of every kind and nature, whether in law or equity, whether known or unknown, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, asserted or unasserted, fixed or contingent, and

whether sounding in contract, statute, tort, fraud, misrepresentation or other legal theory.

b. "**Releasee**" means Koller and his (1) successors and assigns, (2) predecessors, successors, executors, administrators, trusts, spouse, heirs and estate, (3) past, present and future assigns, agents and representatives, and (4) any entity of which Koller now owns, directly or indirectly, a majority of the outstanding equity, beneficial, proprietary, ownership or voting interests, such as Koller Cattle Company LLC.

c. "**Released Claims**" means:

(i) With respect to Paragraph II.D.2, and its subsections, below, Claims that the Gibson Trustee has had or claims to have had against Releasee by reason of any matter, cause or thing whatsoever, including but not limited to any matter arising from, connected with, or in any way relating to or resulting from the Gibson/Koller Adversary Proceeding or the Consolidated Koller Litigation;

(ii) With respect to Paragraph II.D.3, and its subsections, below, Claims that Koller has had or claims to have had against the Gibson Trustee by reason of any matter, cause or thing whatsoever, including but not limited to any matter arising from, connected with, or in any way relating to or resulting from the Gibson/Koller Adversary Proceeding or the Consolidated Koller Litigation;

(iii) With respect to Paragraph II.D.4, and its subsections, below, Claims that the ELC Trustee has had or claims to have had against Releasee by reason of any matter, cause or thing whatsoever, including but not limited to any matter arising from, connected with, or in any way relating to or resulting from the ELC/Koller Adversary Proceeding or the Consolidated Koller Litigation;

(iv) With respect to Paragraph II.D.5, and its subsections, below, Claims that Koller has had or claims to have had against the ELC Trustee by reason of any matter, cause or thing whatsoever, including but not limited to any matter arising from, connected with, or in any way relating to or resulting from the ELC/Koller Adversary Proceeding or the Consolidated Koller Litigation;

(v) None of the releases set forth in this Agreement apply to, and shall not relieve any of the Parties hereto from, his, her or its obligations under this Agreement.

2. **Release By the Gibson Trustee as to Koller**: As of the Effective Date, the Gibson Trustee in her capacity as the Trustee of the Gibson Estate, on behalf

of herself, and subject to approval of this Agreement by the Bankruptcy Court through the entry of a final, non-appealable order:

    a.    Releases and forever discharges each Releasee from each of the Released Claims;

    b.    Waives the benefits of, and any rights arising under, any statute or common law principle that would provide that the foregoing release does not extend to claims that the Gibson Trustee does not know or suspect to exist at the time of executing this Agreement; and

    c.    Represents and warrants that (1) the Gibson Trustee has not assigned, transferred, or purported to assign or transfer, to any person any of the Released Claims, (2) to her best knowledge, no other person or entity has any interest in any of the Released Claims, (3) this Agreement has been duly and validly executed and delivered by the Gibson Trustee, solely in her capacity as a Chapter 7 Trustee, (4) this Agreement is a valid and binding obligation of the Gibson Trustee, and is enforceable against the Gibson Trustee in accordance with its terms.

3.    **Release By Koller as to the Gibson Trustee**: As of the Effective Date, Koller, subject to approval of this Agreement by the Bankruptcy Court through the entry of a final, non-appealable order:

    a.    Releases and forever discharges the Gibson Trustee of and from each of the Released Claims;

    b.    Waives the benefits of, and any rights arising under, any statute or common law principle that would provide that the foregoing release does not extend to claims that Koller does not know or suspect to exist at the time of executing this Agreement; and

    c.    Represents and warrants that (1) Koller has not assigned, transferred, or purported to assign or transfer, to any person any of the Released Claims, (2) to his best knowledge, no other person or entity has any interest in any of the Released Claims, (3) this Agreement has been duly and validly executed and delivered by Koller; and (4) this Agreement is a valid and binding obligation of Koller, in accordance with its terms.

4.    **Release By the ELC Trustee as to Koller**: As of the Effective Date, the ELC Trustee in his capacity as the Trustee of the ELC Estate, and subject to approval of this Agreement by the Bankruptcy Court through the entry of a final, non-appealable order:

    a.    Releases and forever discharges each Releasee of and from each of the Released Claims;

  b. Waives the benefits of, and any rights arising under, any statute or common law principle that would provide that the foregoing release does not extend to claims that the ELC Trustee does not know or suspect to exist at the time of executing this Agreement; and

  c. Represents and warrants that (1) the ELC Trustee has not assigned, transferred, or purported to assign or transfer, to any person any of the Released Claims, (2) to his best knowledge, no other person or entity has any interest in any of the Released Claims, (3) this Agreement has been duly and validly executed and delivered by the ELC Trustee, solely in his capacity as a Chapter 11 Trustee, and (4) this Agreement is a valid and binding obligation of the ELC Trustee, and is enforceable against the ELC Trustee in accordance with its terms.

 5. **Release By Koller as to the ELC Trustee**: As of the Effective Date, Koller, and subject to approval of this Agreement by the Bankruptcy Court through the entry of a final, non-appealable order:

  a. Releases and forever discharges the ELC Trustee of and from each of the Released Claims;

  b. Waives the benefits of, and any rights arising under, any statute or common law principle that would provide that the foregoing release does not extend to claims that Koller, does not know or suspect to exist at the time of executing this Agreement; and

  c. Represents and warrants that (1) Koller has not assigned, transferred, or purported to assign or transfer, to any person any Released Claim, (2) to his best knowledge, no other person or entity has any interest in any of the Released Claims, (3) this Agreement has been duly and validly executed and delivered by Koller; and (4) this Agreement is a valid and binding obligation of Koller, in accordance with its terms.

E. The Parties hereto acknowledge, covenant and agree that each of them has read this Agreement and understand its terms, including the legal consequences thereof, and that in offering to make, and in making, executing and delivering this Agreement, none of them was acting under any duress, undue influence, misapprehension or misrepresentation by any Party hereto or any agent, attorney or representative of any Party and that this Agreement was made, executed and delivered as the free and voluntary act of each Party and was given in good-faith on the part of each Party with full knowledge of all relevant facts and circumstances.

F. The Parties further agree that they shall take any action necessary to ensure the effectiveness of this Agreement.

G. **Application for Approval of the Settlement Agreement.** Within fourteen (14) calendar days from the execution of this Agreement by all Parties hereto, the Trustees shall file, with the Bankruptcy Court for each respective bankruptcy estate, a motion for an order approving this Agreement and authorizing the Trustee to enter into this Agreement ("**Motion**").

  H. **Non-Payment of the Second Payment.** In the event that the full Second Payment is not paid to the Trustees in accordance with the terms set forth in Paragraph II.B above, the ELC Trustee and the Gibson Trustee may re-open the Consolidated Koller Litigation, file and/or record the Agreed Judgment, and seek to collect the unpaid amount of the Second Payment.

  I. **Acknowledgment of Bankruptcy Court Approval of the Agreement.** The Parties acknowledge that the effectiveness of this Agreement is expressly conditioned upon its approval by the Bankruptcy Court through the entry of a final, non-appealable order.

  J. **Denial of the Agreement.** If the Bankruptcy Court does not approve this Agreement through the entry of a final, non-appealable order, this Agreement and the releases and discharges contained herein shall be null and void.

  K. **No Admission of Liability**. Each Party hereof acknowledges and agrees that this Agreement is a compromise of disputed claims, and neither this Agreement, nor any consideration provided pursuant to this Agreement, shall be taken or construed to be an admission or concession by either any of the Parties with respect to any fact, liability or fault of any kind.

  L. **Titles and Headings.** The Parties acknowledge that the titles and headings set forth in bold type in this Agreement are included solely for the convenience of the Parties to the Agreement and shall not in any manner limit the construction of the Agreement which shall be considered as a whole. All additions and deletions of provisions from and all drafts of the Agreement shall be of no force or effect in interpreting the terms of the Agreement or the intentions of the parties hereto.

  M. **Capacity.** The undersigned Parties, if executing this Agreement in a representative capacity or as a Trustee, certify that they are duly appointed and are authorized and empowered to sign and bind their respective entities or principals and that said entity and/or principal has full capacity to release the Parties identified above and that all necessary entity actions or principal approval for making and effectuating this Agreement have been taken and obtained.

  N. **Notices:** All notices and other communications required or permitted under this Agreement shall be in writing and shall be effective only if it is delivered by personal service (which shall include delivery by delivery service, express mail delivery service, telecopy or telefax) or mailed, by United States certified mail, postage prepaid, and addressed as follows:

  **<u>If to the Gibson Trustee:</u>**
  Ms. Kathryn L. Pry, Trustee of Estate of Thomas P. Gibson and Patsy M. Gibson
  c/o Ms. Elizabeth M. Lally
  RUBIN & LEVIN, P.C.
  500 Marott Center
  342 Massachusetts Ave., Suite 500
  Indianapolis, IN 46204

**If to the ELC Trustee:**
James A. Knauer, Trustee of the Estate of Eastern Livestock Co., L.L.C.
c/o Ms. Wendy Ponader
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204

**If to Koller:**
Brian H. Meldrum
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202

Such communications, when personally delivered, shall be effective upon receipt, but, if sent by certified mail, shall be effective three (3) business days following deposit with the United States Postal Service. Any Party or agent of such may change its address or give notice that it is no longer able to accept notice on behalf of a Party for such communications by giving notice thereof to the other Parties in accordance with the requirements of this section.

O.   **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana and applicable federal laws.

P.   **Entire Agreement.** This Agreement constitutes the entire agreement among the Parties to it and supersedes any prior or contemporaneous understanding or agreement with respect to the transactions contemplated.

Q.   **Modification.** No waiver or modification of a term or condition of this Agreement shall be valid or binding unless it is in writing and executed by each of the Parties to this Agreement. No material waiver or material modification of a term or condition of this Agreement shall be valid or binding unless it is in writing and executed by each of the Parties to this Agreement and approved by the Bankruptcy Court by the entry of a final, non-appealable order.

R.   **Non-severability.** If any provision of this Agreement or any stipulations of the Parties under this Agreement or any right arising under this Agreement is declared void or unenforceable, then the entire Agreement is void and of no effect to all Parties to this Agreement.

S.   **Miscellaneous.** Because each of the Parties to this Agreement has contributed to the preparation and drafting hereof, has read the Agreement, and has reviewed the Agreement with counsel and understands its terms and contents, the terms and provisions of this Agreement shall be interpreted and construed without any presumption or inference based upon the Party or Parties causing this Agreement to be drafted in fact.

T.   **Retention of Jurisdiction.** The Parties agree that the Court shall retain jurisdiction to enforce the terms of this Agreement.

U.   **Counterparts.** This Agreement may be executed in multiple counterparts, all of which when combined constitute one original document. This Agreement may be transmitted for

execution by electronic mail exchange (e-mail) or electronic facsimile (fax) transmission. The Parties intend that e-mailed or faxed signatures and an e-mailed or faxed Agreement containing the signatures (original, e-mail or fax) of all the Parties shall be binding on them.

[Signatures on next page.]

**IN WITNESS WHEREFORE**, the undersigned have duly executed this Agreement on the dates set forth below however the Effective Date is the date set forth in the first paragraph of this Agreement.

**GIBSON TRUSTEE**

By: _____  Date: _____
Kathryn L. Pry, solely in her capacity as the Trustee of the Estate of Thomas P. Gibson and Patsy M. Gibson and not individually

**ELC TRUSTEE**

By: _____*[signed]*_____  Date: June 9, 2014
James A. Knauer, solely in his capacity as the Trustee of the Estate of Eastern Livestock Co., L.L.C. and not individually

**MONTY KOLLER, INDIVIDUALLY**

_____  Date: _____
Monty Koller