Exhibit A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

## I.     PARTIES

This Settlement Agreement and Mutual Release (this "Agreement") is entered into by and among the following parties (individually a "Party" and collectively the "Parties"):

1. Kathryn L. Pry, as the Chapter 7 Trustee (the "Gibson Trustee") for the bankruptcy estate (the "Gibson Estate") of Thomas P. Gibson and Patsy M. Gibson (together, the "Gibsons") under Case No. 10-93867-BHL-7 (the "Gibson Case") in the United States Bankruptcy Court, Southern District of Indiana, New Albany Division (the "Bankruptcy Court");

2. James A. Knauer, as the Chapter 11 Trustee (the "ELC Trustee") for the bankruptcy estate (the "ELC Estate") of Eastern Livestock Co., LLC ("ELC") under Case No. 10-93904-BHL-11 (the "ELC Case") in the Bankruptcy Court;

3. Intrust Bank, NA ("Intrust");

4. The First Bank and Trust Company ("First Bank"); and

5. Fifth Third Bank ("Fifth Third").

## II.     RECITALS

1. On December 1, 2010 (the "Gibson Petition Date"), the Gibsons initiated the Gibson Case by filing a voluntary Chapter 7 bankruptcy petition.

2. The Gibson Trustee is the duly appointed, qualified and acting Chapter 7 Trustee in the Gibson Case.

3. On December 6, 2010 (the "ELC Petition Date"), the ELC Case was initiated by certain petitioning creditors filing an involuntary Chapter 11 bankruptcy petition.

4. The ELC Trustee is the duly appointed, qualified and acting Chapter 11 Trustee in the ELC Case.

5. On the Gibson Petition Date, the Gibsons had an interest in several commodity accounts held by ADM Investor Services, Inc. and/or its affiliates ("ADM") and MF Global, Inc. ("MF Global").

6. On January 12, 2011, in the Gibson Case, the Bankruptcy Court entered the *Order on Trustee's Motion for Immediate Turnover of the Debtors' Non-Exempt Financial Accounts Held by ADM Investors Services, Inc. and/or its Affiliates* (the "ADM Turnover Order") [Doc. No. 71], requiring the Gibsons to immediately turn over to the Gibson Trustee all funds in non-exempt financial accounts held by ADM.

7.  On January 14, 2011, in the Gibson Case, the Bankruptcy Court entered the *Order on Turnover of Cash, Securities, Funds in Bank/Credit Union Accounts, Any Investment Accounts and Other Non Exempt Financial Accounts* (the "Financial Account Turnover Order") [Doc. No. 74], requiring the Gibsons to turn over to the Gibson Trustee all cash, securities, funds in bank/credit union accounts, investment accounts, and other nonexempt financial accounts within ten (10) days of the Financial Account Turnover Order.

8.  On January 19, 2011, pursuant to the ADM Turnover Order, the Gibson Trustee successfully liquidated all of the Gibsons' interests in financial accounts held by ADM in the sum of $1,234,267.68 (the "ADM Funds").

9.  On January 25, 2011, pursuant to the Financial Account Turnover Order, the Gibson Trustee successfully liquidated all of the Gibsons' interests in financial accounts held by MF Global in the sum of $66,275.97 (the "MF Global Funds") (the ADM Funds and MF Global Funds shall be collectively referred to herein as the "Commodity Account Funds").

10. Prior to the Gibson Petition Date, the Gibsons entered into Promissory Notes and Security Agreements dated December 17, 2009 and June 17, 2010, pursuant to a Loan Commitment dated December 17, 2009 with First Bank (collectively referred to as the "First Bank Loan Documents"), evidencing the renewal of a line of credit for the purpose of financing the purchase of cattle.  First Bank alleges that the monies owed under the First Bank Loan Documents are secured by a perfected security interest in certain assets of the Gibsons, including commodity accounts related to farm products, by the filing of its UCC-1 financing statement on January 2, 2006 with the Indiana Secretary of State, as Instrument No. 200600000011070.

11. Prior to the ELC Petition Date, ELC entered into a secured borrowing agreement with Fifth Third.  Fifth Third alleges that the sums owed to Fifth Third by ELC are secured by substantially all of ELC's prepetition assets and proceeds thereof pursuant to various UCC-1 financing statements and security agreements.

12. On the Gibson Petition Date, the Gibsons solely-owned entity, Olim, LLC ("Olim"),[1] owned two (2) life insurance policies with Prudential Life Insurance Company of America ("Prudential"), naming Patsy M. Gibson as the insured and Olim as the beneficiary:  (a) Policy No. V0001332, with a death benefit in the sum of $5,000,000.00; and (b) Policy No. V0003473, with a death benefit in the sum of $10,000,000.00 (collectively referred to herein as the "Prudential Policies").

13. Prior to the Gibson Petition Date, on October 23, 2009, Intrust obtained an assignment of the Prudential Policies from Olim (the "Intrust Assignment").  Additionally, prior to the Gibson Petition Date, on June 17, 2010, First Bank also obtained an assignment of the Prudential Policies from Olim (the "First Bank Assignment").

14. The Intrust Assignment and the First Bank Assignment were executed by Olim to secure various loan obligations of ELC and the Gibsons to Intrust and First Bank respectively.

---

[1] Olim, LLC was administratively dissolved, prior to the Gibson Petition Date, on November 1, 2008.

15. During the course of the Gibson Case, the Gibson Trustee was notified that the Prudential Policies were due to terminate if certain fees were not paid. Due to the fact that the Gibson Trustee was still in the process of investigating whether there was value in the Prudential Policies, and at the request of Intrust and First Bank, the Gibson Trustee obtained authority from the Bankruptcy Court to pay the outstanding fees owed to Prudential in the total sum of $95,634.81 (the "Prudential Fees").

16. On November 9, 2011, in the Gibson Case, the Bankruptcy Court entered the *Order on Emergency Motion for Authority to Pay Reinstatement Fee and Premium Payment for Prudential Life Insurance Policies* (the "Prudential Order") [Doc. No. 409], authorizing the Gibson Trustee to pay the Prudential Fees. Additionally, pursuant to the Prudential Order, in the event the Prudential Policies were abandoned from the Gibson Estate and/or the Gibson Estate disclaimed any interest in the Prudential Policies, Intrust and First Bank were to be surcharged for the Prudential Fees and such surcharge was to be allocated between Intrust and First Bank as they may agree or otherwise as their respective interests in the Prudential Policies may appear.

17. On November 9, 2011, pursuant to the Prudential Order, the Gibson Trustee paid the Prudential Fees.[2]

18. On July 23, 2012, after determining that the Gibsons' ownership interests in Olim and the Prudential Policies were burdensome, over-encumbered, of inconsequential value to the Gibson Estate, or otherwise not suitable for administration, the Gibson Trustee filed, in the Gibson Case, her *Notice of Abandonment* (the "Notice of Abandonment") [Doc. No. 616], abandoning the Gibsons' ownership interest in Olim and any interest the Gibson Estate held in the Prudential Policies. Pursuant to the Notice of Abandonment, the Gibson Trustee reserved her right to enforce the surcharge provision contained in the Prudential Order and notified the Bankruptcy Court that she would attempt to reach an agreement with Intrust and First Bank with respect to each bank's responsibility to reimburse the Gibson Estate for the Prudential Fees paid by the Gibson Estate.

19. During the course of the Gibson Case, pursuant to duly served discovery requests by First Bank, the Gibson Trustee sought authority to pay certain expenses related to scanning and copying of documents located at ELC's primary office. On January 3, 2012, in the Gibson Case, the Bankruptcy Court entered the *Order Approving Application for Authority to Pay Page One Louisville, LLC* (the "Page One Order") [Doc. No. 455], authorizing the Gibson Trustee to pay the sum of $30,776.71 (the "Page One Expense") to Page One Louisville, LLC for its services rendered in connection with the Gibson Estate, and directing that payment of the Page One Expense be made from the ADM Funds.

20. On January 3, 2012, pursuant to the Page One Order, the Gibson Trustee paid the Page One Expense from the ADM Funds.

---

[2] On January 5, 2012, $42,603.27 of the Prudential Fees was returned by mistake to the Gibson Trustee. The Gibson Trustee resent the sum of $42,603.27 to Prudential on February 1, 2012.

21. On May 2, 2011, the Gibson Trustee, on behalf of the Gibson Estate, filed a proof of claim in the ELC Case, as ELC Estate Claim No. 222, asserting an unsecured claim in the sum of no less than $18,075,872.64 (the "Gibson Trustee POC").

22. On April 19, 2011, First Bank filed a proof of claim in the Gibson Case, as Gibson Estate Claim No. 11, asserting a secured claim in the sum of $8,111,669.40 (the "First Bank POC").

23. On April 22, 2011, Intrust filed a proof of claim in the Gibson Case, as Gibson Estate Claim No. 14, asserting a secured claim in the sum of $9,029,203.24 (the "Intrust POC").

24. On April 23, 2011, Fifth Third filed a proof of claim in the Gibson Case, as Gibson Estate Claim No. 16, asserting a secured claim in the sum of $496,532.64 (the "Fifth Third 1st POC"). Additionally, on April 25, 2011, Fifth Third filed a proof of claim in the Gibson Case, as Gibson Estate Claim No. 37, asserting a secured claim in the sum of $500,000.00 and an unsecured claim in the sum of $35,829,941.67 (the "Fifth Third 2nd POC").

25. On April 25, 2011, the ELC Trustee, on behalf of the ELC Estate, filed a proof of claim in the Gibson Case, as Gibson Estate Claim No. 48, asserting an unsecured claim in the sum of no less than $1,135,045,746.83 (the "ELC Trustee POC").

26. On October 18, 2013, in the Gibson Case, the Gibson Trustee filed her *First Omnibus Objection to Claims and Notice of Response Deadline* (the "Omnibus Objection")[Doc. No. 821], objecting to certain claims filed in the Gibson Case, including the Intrust POC on the grounds that Intrust was not entitled to a secured claim.[3]

27. On November 1, 2013, in the Gibson Case, Intrust filed its *Reply to Trustee's First Omnibus Objection to Claims and Request for Hearing* (the "Intrust Response") [Doc. No. 837], stating that its claim was appropriate.

28. On January 23, 2014, after conferring with the Gibson Trustee's counsel, Intrust amended the Intrust POC to assert an unsecured claim in the sum of $8,952,274.44 (the "Intrust Amended POC").

29. On September 2, 2014, in the Gibson Case, the Bankruptcy Court entered the *Order on Trustee's First Omnibus Objection to Claims* (the "Omnibus Order") [Doc. No. 905]. Pursuant to the Omnibus Order, the Intrust Amended POC was allowed as amended, subject to a determination of the allocation of the refund to the Gibson Estate of the Prudential Fees between Intrust and First Bank, pursuant to the Prudential Order.

30. Throughout the duration of the Gibson Case, First Bank has asserted a secured interest in the Commodity Account Funds.

---

[3] The filing of the Omnibus Objection did not waive the Gibson Trustee's right to object, at a later time, to the First Bank POC, the Fifth Third 1st POC, the Fifth Third 2nd POC and the ELC Trustee POC.

Page 4 of 14

31. Additionally, throughout the duration of the Gibson Case, Fifth Third has also asserted a secured interest in the Commodity Account Funds, alleging that the Commodity Account Funds were proceeds of assets of ELC, as to which Fifth Third maintained a secured claim.

32. Further, throughout the duration of the Gibson Case, the ELC Trustee, on behalf of the ELC Estate, has asserted a claim to the Commodity Account Funds, alleging that such funds were proceeds of assets of ELC.

33. The Gibson Trustee disputes the alleged claims of First Bank, Fifth Third and the ELC Trustee as to the Commodity Account Funds.

34. Intrust has not asserted any claims as to the Commodity Account Funds.

35. The Gibson Trustee, Intrust, First Bank, Fifth Third and the ELC Trustee, subject to the terms herein, in the interest of avoiding the time, expense and uncertainty of further litigation and without admitting or denying any responsibility or liability, desire to fully, completely and permanently resolve, compromise and settle all issues and disputes that now exist or may exist in the future between and among the Gibson Trustee, the Gibson Estate, Intrust, First Bank, Fifth Third, the ELC Trustee and the ELC Estate with respect to the Commodity Account Funds, the repayment of the Prudential Fees, the First Bank POC, the Fifth Third 1st POC, the Fifth Third 2nd POC, the Intrust Amended POC, the Gibson Trustee POC and the ELC Trustee POC (collectively referred to herein as the "Matters").

### III.     TERMS

NOW THEREFORE, for and in consideration of the mutual promises and other good and valuable consideration set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, each of the Parties, intending to be legally bound, agrees as follows:

1. **Incorporation of Recitals.** The above Recitals are hereby incorporated into and made a part of this Agreement.

2. **Bankruptcy Court Approval.** This Agreement shall be subject to the entry of non-appealable Orders approving this Agreement entered by the Bankruptcy Court in both the Gibson Case and the ELC Case. The Gibson Trustee shall file a motion in the Gibson Case for approval of this Agreement. The ELC Trustee shall also file a similar motion in the ELC Case for approval of this Agreement.

3. **Effective Date.** This Agreement shall be deemed effective on the first business day on which the Bankruptcy Court's Orders approving this Agreement, in both the Gibson Case and the ELC Case, are no longer appealable (the "Effective Date").

4. **Resolution of the Commodity Account Funds.** The Parties agree, subject to the other terms contained in this Agreement, to resolve the various claims to the Commodity Account Funds as follows:

Page 5 of 14

a) The total amount available for distribution from the Commodity Account Funds is $1,098,169.99 (the "Commodity Account Settlement Payment"). The Commodity Account Settlement Payment was determined by subtracting the following from the gross sum of the Commodity Account Funds ($1,300,543.65):

i) The total bank fees assessed against the Gibson Trustee's bank account containing the Commodity Account Funds as of December 31, 2014, in the sum of $102,446.17;

ii) The Page One Expense in the sum of $30,161.18;

iii) The estimated bank fees to be assessed before receiving Bankruptcy Court approval of this Agreement, in the sum of $7,500.00; and

iv) The estimated statutory fees the Gibson Trustee is entitled to under 11 U.S.C. § 326 for the liquidation of the Commodity Account Funds, in the sum of $62,266.31.

b) First Bank and Fifth Third shall split the Commodity Account Settlement Payment equally.

c) The ELC Trustee, on behalf of the ELC Estate, waives any right to receive any payment from the Commodity Account Settlement Payment.

d) Intrust did not assert a claim to the Commodity Account Funds and shall not receive any payment directly from the Commodity Account Settlement Payment.

e) The Commodity Account Settlement Payment shall be paid as follows: within five (5) business days of the Effective Date, the Gibson Trustee, on behalf of the Gibson Estate, shall pay First Bank and Fifth Third each the sum of $549,084.99, from the Gibson Trustee's bank account containing the Commodity Account Funds.

**5. Resolution of the Repayment of the Prudential Fees.** The Parties agree, subject to the other terms contained in this Agreement, to resolve the repayment of the Prudential Fees as follows:

a) Intrust shall be responsible for $60,000.00 of the repayment obligation of the Prudential Fees to the Gibson Estate.

b) First Bank shall be responsible for $35,634.81 of the repayment obligation of the Prudential Fees to the Gibson Estate.

c) In lieu of Intrust submitting payment in the sum of $60,000.00 to the Gibson Estate, within five (5) business days of the Effective Date, Intrust shall file an amended proof of claim, in the Gibson Case, in the unsecured, reduced amount of

$6,485,674.54 (the "Intrust Second Amended POC"), in form and substance acceptable to the Gibson Trustee, which, upon its filing, shall be deemed allowed pursuant to 11 U.S.C. § 502(a). The Intrust Second Amended POC shall supersede and replace the Intrust Amended POC. With the sole exception of the Intrust Second Amended POC, Intrust is prohibited from asserting further claims in the Gibson Case.

        d)       In lieu of First Bank submitting payment in the sum of $35,634.81 to the Gibson Estate, First Bank, as described in Section III paragraph 6 of this Agreement, shall not receive any distribution from the Gibson Estate on account of the First Bank POC, other than one-half of the Commodity Account Settlement Payment, as described in Section III paragraph 4. First Bank is barred from asserting any further claims in the Gibson Case.

      **6.**       **Resolution of Proofs of Claims.** The Parties agree, subject to the other terms contained in this Agreement, to resolve the various proofs of claims filed by the Parties as follows:

        a)       Other than splitting the Commodity Account Settlement Payment, First Bank and Fifth Third shall not receive any other distribution from the Gibson Estate on account of the First Bank POC, the Fifth Third 1st POC, or the Fifth Third 2nd POC, and the remaining balance of such claims shall be disallowed only for the purposes of this Agreement and the Gibson Case and are not disallowed for purposes of the Forfeiture Action, described below in Section III, paragraph 10. Further, First Bank and Fifth Third are barred from asserting any further claims in the Gibson Case.

        b)       The Intrust Amended POC shall be reduced to and irrevocably allowed in the sum of $6,485,674.54 effective upon the filing of the Intrust Second Amended POC, as described in Section III paragraph 5(c) of this Agreement. Intrust is barred from asserting further claims in the Gibson Case, and shall only be entitled to distribution on account of the Intrust Second Amended POC.

        c)       The ELC Trustee, on behalf of the ELC Estate, shall not receive any distribution from the Gibson Estate on account of the ELC Trustee POC, which shall be disallowed only for the purposes of this Agreement and the Gibson Case and is not disallowed for purposes of the Forfeiture Action, described below in Section III, paragraph 10. For clarification, nothing contained herein shall waive or impair the ELC Trustee's rights in and to other creditors' claims in the Gibson Case which have been, or will be, assigned to the ELC Trustee as part of settlements reached in the ELC Case.

        d)       The Gibson Trustee, on behalf of the Gibson Estate, shall not receive any distribution from the ELC Estate on account of the Gibson Trustee POC, which shall be disallowed only for the purposes of this Agreement and the ELC Case and is not disallowed for purposes of the Forfeiture Action, described below in Section III, paragraph 10.

      **7.**    **Releases.** As of the Effective Date and except as otherwise expressly provided in this Agreement, and subject to (a) final non-appealable Orders of the Bankruptcy Court approving this Agreement in both the Gibson Case and the ELC Case, and (b) payment of the Commodity Account Settlement Payment, all as provided in this Agreement, the Parties hereby release each other only as follows:

      **a)**    **The Gibson Estate Releases.** The Gibson Trustee and the Gibson Estate, and each of their respective employees, affiliates, predecessors, successors, assigns, estates, agents, trustees, representatives, attorneys and insurers, past and present, and all persons acting by, through, under or in concert with any of them (collectively referred to as the "Gibson Estate & Agents"), and each of them, hereby release, acquit and forever discharge the following:

    i.    The ELC Trustee and the ELC Estate, and each of their respective employees, affiliates, predecessors, successors, assigns, estates, agents, trustees, representatives, attorneys and insurers, past and present, and all persons acting by, through, under or in concert with them (collectively referred to as the "ELC Estate & Agents");

    ii.    Intrust and each of its respective owners, investors, partners, shareholders, directors, members, officers, employees, divisions, subsidiaries, affiliates, predecessors, successors, assigns, estates, agents, trustees, representatives, attorneys and insurers, past and present, and all persons acting by, through, under or in concert with any of them (collectively referred to as "Intrust & Agents");

    iii.    First Bank and each of its respective owners, investors, partners, shareholders, directors, members, officers, employees, divisions, subsidiaries, affiliates, predecessors, successors, assigns, estates, agents, trustees, representatives, attorneys and insurers, past and present, and all persons acting by, through, under or in concert with any of them (collectively referred to as "First Bank & Agents");

    iv.    Fifth Third and each of its respective owners, investors, partners, shareholders, directors, members, officers, employees, divisions, subsidiaries, affiliates, predecessors, successors, assigns, estates, agents, trustees, representatives, attorneys and insurers, past and present, and all persons acting by, through, under or in concert with any of them (collectively referred to as "Fifth Third & Agents");

and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), the Gibson Estate and the ELC Estate, except for the obligations of the Parties under this Agreement. This release does not include any and all claims of the

Gibson Trustee, on behalf of the Gibson Estate, related to the Forfeiture Action, including the obligations of the ELC Estate under any tolling agreements, described below in Section III, paragraph 10.

      **b)**    **The ELC Estate Releases.** The ELC Estate & Agents, and each of them, hereby release, acquit and forever discharge Intrust & Agents, First Bank & Agents, and Fifth Third & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), except for the obligations of the Parties under this Agreement. Additionally, ELC Estate & Agents, and each of them, hereby release, acquit and forever discharge the Gibson Estate & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), the Gibson Estate and the ELC Estate, except for the obligations of the Gibson Estate & Agents under this Agreement. This release does not include any and all claims of the ELC Trustee, on behalf of the ELC Estate related to the Forfeiture Action, including the obligations of the Gibson Estate under any tolling agreements, described below in Section III, paragraph 10. Additionally, this release does not include any obligations or duties imposed by that certain Settlement Agreement and Release between the ELC Estate and Intrust relating to Adversary No. 12-59149 in the Bankruptcy Court.

      **c)**    **Intrust Releases.** Intrust & Agents, and each of them, hereby release, acquit and forever discharge the ELC Estate & Agents, First Bank & Agents, and Fifth Third & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), except for the obligations of the Parties under this Agreement. Additionally, Intrust & Agents, and each of them, hereby release, acquit and forever discharge the Gibson Estate & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), the Gibson Estate and the ELC Estate, except for the obligations of the Gibson Estate & Agents under this Agreement, including Intrust's right to a distribution on account of the Intrust Second Amended POC, as described in Section III paragraph 5(c) of this Agreement. Additionally, this release does not include any obligations or duties imposed by that certain Settlement Agreement and Release between the ELC Estate and Intrust relating to Adversary No. 12-59149 in the Bankruptcy Court.

      **d)**    **First Bank Releases.**  First Bank & Agents, and each of them, hereby release, acquit and forever discharge the ELC Estate & Agents, Intrust & Agents, and Fifth Third & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), except for the obligations of the Parties under this Agreement.  Additionally, First Bank & Agents, and each of them, hereby release, acquit and forever discharge the Gibson Estate & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them arising out of or related to the Matters (as defined in Section II, paragraph 35), the Gibson Estate and the ELC Estate, except for the obligations of the Gibson Estate & Agents under this Agreement.  This release does not include any and all claims of First Bank related to the Forfeiture Action, described below in Section III, paragraph 10.

      **e)**    **Fifth Third Releases.**  Fifth Third & Agents, and each of them, hereby release, acquit and forever discharge the ELC Estate & Agents, Intrust & Agents, and First Bank & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them, arising out of or related to the Matters (as defined in Section II, paragraph 35), except for the obligations of the Parties under this Agreement.  Additionally, Fifth Third & Agents, and each of them, hereby release, acquit and forever discharge the Gibson Estate & Agents, and each of them, of and from any and all obligations, claims, actions, causes of action, suits, proceedings, demands, damages, liabilities, costs and expenses (including attorneys' fees) of any kind or nature whatsoever, whether known or unknown, against any or all of them arising out of or related to the Matters (as defined in Section II, paragraph 35), the Gibson Estate and the ELC Estate, except for the obligations of the Gibson Estate & Agents under this Agreement.  This release does not include any and all claims of Fifth Third related to the Forfeiture Action, described below in Section III, paragraph 10.

**8.**    **Time is of the Essence.**  The Parties understand and agree that time is of the essence for all obligations under this Agreement.

**9.**    **No Admission of Liability.**  The Parties understand and acknowledge that this Agreement constitutes a compromise of disputed claims and is not to be construed as an admission of liability on the part of any of them and that they expressly deny any and all liability.

**10.**    **No Effect Upon Forfeiture Action.**  Notwithstanding anything herein that could be construed to the contrary, no portion of this Agreement shall be construed to affect any of the claims, or potential resolution of the claims of the Gibson Trustee, on behalf of the Gibson Estate, First Bank, Fifth Third or the ELC Trustee, on behalf of the ELC Estate, in the

government seizure action styled *United States of America v. Contents of Account in the Name of Eastern Livestock and Thomas P. Gibson, held by MF Global, Inc., et al.*, Case No. 3:11CV-233-R, pending in the United States District Court of Western District of Kentucky, Louisville Division (the "Forfeiture Action").

      **11.** **Gibson Estate's Interest in Forfeiture Action.**  In the event the Gibson Trustee makes a determination to close the Gibson Estate before a resolution is reached regarding the Gibson Estate's interest in the Forfeiture Action, the Gibson Estate will assign any and all claims, rights and interests the Gibson Estate has in the Forfeiture Action to the ELC Estate prior to closing the Gibson Estate.  Such assignment shall not affect any and all claims, rights and interests of First Bank in the Forfeiture Action.

      **12.** **Attorneys' Fees.**  The Parties shall pay their own respective attorneys' fees, costs and expenses incurred in connection with the Matters.  However, the parties acknowledge and agree that the Gibson Trustee and the ELC Trustee may be entitled to statutory fees in their respective cases under 11 U.S.C. § 326, and that the Gibson Trustee and the ELC Trustee may seek payment of their attorneys' fees and expenses in their respective cases under 11 U.S.C. § 330, all subject to the approval of the Bankruptcy Court.

      **13.** **Entire Agreement.**  This Agreement (specifically including all of the Recitals) represents the sole and entire agreement between the Parties and supersedes all prior agreements, negotiations and discussions between the Parties and/or their representative counsel with respect to the subject matter covered herein.  The terms of this Agreement are contractual and are not mere recitals.

      **14.** **Construction and Invalidity.**  The Parties agree that there shall be no presumption that this Agreement should be construed against any Party merely because of the involvement of any Party or any Party's counsel in its drafting.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the remaining provisions of this Agreement, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

      **15.** **Controlling Law and Jurisdiction.**  This Agreement shall be deemed to have been entered into and shall be construed and enforced in accordance with the laws of the State of Indiana as applied to contracts made and to be performed entirely within Indiana, notwithstanding any state's choice of law rules to the contrary.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce this Agreement, including after the Gibson Case and/or ELC Case is dismissed, closed or converted to another chapter of the Bankruptcy Code.

      **16.** **Voluntary Actions of the Parties.**  The Parties represent that they have read this Agreement; that they have sought the advice of counsel prior to executing this Agreement; that counsel has fully explained each and every provision of this Agreement; that they fully understand each and every provision of this Agreement; that they have not relied upon any representation or statement made by any other Party or any other Party's agents, representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement; and that they have voluntarily executed this Agreement.

**17.** **Authority to Execute.**  The undersigned persons executing this Agreement for and on behalf of their respective Party represents and certifies that he or she is fully empowered to execute and deliver this Agreement for and on behalf of their respective Party and to bind their respective Party to the provisions of this Agreement.

**18.** **Amendment or Modification.**  This Agreement may not be modified, amended or supplemented in any respect except by written instrument executed by all of the Parties or by their respective attorneys.

**19.** **Successors and Assigns.**  This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives, successors and assigns.

**20.** **Headings.**  The headings in his Agreement have been inserted solely for ease of reference and should not be considered in the interpretation or construction of this Agreement.

**21.** **Counterparts.**  This Agreement may be executed by the Parties in separate counterparts by means of original and/or facsimile and/or electronically transmitted signatures, each of which counterparts shall be deemed an original, but all of which shall constitute a single and entire document when taken together.

[SIGNATURE PAGES TO FOLLOW]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the Effective Date.

Date:_____          _____
                                      Kathryn L. Pry, as the Chapter 7 Trustee for the bankruptcy estate of Thomas P. Gibson and Patsy M. Gibson, under Case No. 10-93867-BHL-7 in the U.S. Bankruptcy Court, Southern District of Indiana, New Albany Division

Date:_____          _____
                                      James A. Knauer, as the Chapter 11 Trustee for the bankruptcy estate of Eastern Livestock Co., LLC, under Case No. 10-93904-BHL-11 in the U.S. Bankruptcy Court, Southern District of Indiana, New Albany Division


INTRUST BANK, NA

Date:_____          By:_____

                                      Printed Name:_____

                                      Its:_____


THE FIRST BANK AND TRUST COMPANY

Date:_____          By:_____

                                      Printed Name:_____

                                      Its:_____

FIFTH THIRD BANK

Date:_____  By:_____

Printed Name:_____

Its:_____