REVISED and CORRECTED

FRANKLIN

**Victim Impact Statement**

| *United States v. Thomas Gibson, et al.* | **Court Docket: 3:11CR-123-R** | **AUSA: James R. Lesousky, Jr./Marisa A. Ford** |
|---|---|---|

### A.  Initial Crime Related Loss    GLEN FRANKLIN

**NET FINAL LOSSES**

The total amount of crime related loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **$340,327.16**

On a separate page, please list the individual losses or expenses. If possible, please attach any supporting documents you have such as receipts, repair bills, etc.  **SEE ATTACHED EXHIBIT:** *Revised and Corrected Amended Proof Of Claim*

### B.  Recovered Losses

Please list any property or money that you have recovered or is being held by law enforcement officials :

**NONE**

If you received any payments or benefits as a result of the crime, please list below the amounts received and information on the company who provided the payments:

Name:

Address:

Phone:                                                             Tax ID No. (EIN):

Contact:                                                          Claim No.:

Amount received:                                              Amount of Claim:

Amount of Recovered Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **$0.00**

### C.  Total Crime Related Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **$340,327.16**

I declare under penalty of law that the above information I have provided is true:

Signature:                                                                                        Date:    4 22 2016

W. Scott Newbern, PL
Counsel For Glen Franklin

If restitution is ordered, please provide us with an address where restitution payments should be mailed:

| Name: | GLEN FRANKLIN | | | | |
|---|---|---|---|---|---|
| Address: | c/o W. Scott Newbern, PL, 2982 Giverny Circle | | | | |
| City: | Tallahassee | State: | Florida | Zip: | 32309 |

Phone Number:    850.591.1707

Last 4 numbers of Social Security number:    7020

**Victim Impact Statement**

In addition to finances, crimes can also have an emotional impact and you and those close to you. The emotional impact of a crime has had on its victims is also important for the Court to know. The following questions are designed to help individuals who are having difficulty expressing their emotions. Feel free to answer the questions below or write up your own statement.  If needed, you can attach additional pages.

1. How has this crime affected you and those close to you? Has the crime caused you to suffer any type of physical or emotional injuries?

> See Attached. Fifth Third Bank dishonored Eastern Livestock Co. checks issued in payment for livestock at our Stockyard in amounts that, absent the recovery of cattle and payments as outlined here, the business would have folded. At the same time, we were pursued by the Trustee for actually following the Packer & Stockyards federal law in recovering unpaid amounts on all cattle sold.

2. Have you or members of your family received counseling or therapy as a result of the crime?

> n/a

3. How has this crime affected your ability to perform daily tasks such as working, taking care of your family, going to school? How has the crime impacted events that you routinely enjoyed doing prior to the crime?

> Absent recovery the business would have gone under. The Eastern matter put a strain on the entire cattle industry, but especially on the small producers, backgrounders, and stockyards to whom a large portion of the dishonored checks were issued and were targeted for collecting on unpaid cattle sales as required by the Packers & Stockyards Act.

4. What would you like to see happen to the defendant(s)?

> n/a

5. Is there anything else you would like the Court to know prior to sentencing the defendant?

> n/a

**Fill in this information to identify the case:**

Debtor 1  In Re: Eastern Livestock Co., LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Southern District of Indiana

Case number  10-93904-BHL-11

---

Official Form 410

## Proof of Claim

## REVISED and CORRECTED AMENDED CLAIM
## See attached Exhibit 18 and Summary

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:  Identify the Claim

| | | | |
|---|---|---|---|
| 1. Who is the current creditor? | Glen Franklin<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor   Glen Franklin Cattle Co., Inc. | | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>W. Scott Newbern, LC<br>Name<br><br>2982 Giverny Circle<br>Number      Street<br><br>Tallahassee      FL      32309<br>City      State      ZIP Code<br><br>Contact phone<br><br>Contact email<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>– – – – – – – – – – – – – – – – – – – – – – – – – – – | Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number      Street<br><br>City      State      ZIP Code<br><br>Contact phone<br><br>Contact email | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) Nos. 538,539<br>Revised, Corrected, and Updated Claims : 151 (BMC 353) | Revised and Corrected<br>Filed on  01/11/2016<br>MM / DD / YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? | | |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

6.  **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7.  **How much is the claim?**  $_____ 340,327.16 . **Does this amount include interest or other charges?**

☑ No

**See Attached Exhibit A and Exhibit 18**

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8.  **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Unpaid sales of cattle and adjustments

9.  **Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/14/2016
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | W. Scott Newbern | | |
| | First name | Middle name | Last name |
| Title | Managing Member | | |
| Company | W. Scott Newbern, PL | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2982 Giverny Circle | | |
| | Number        Street | | |
| | Tallahassee | FL | 32309 |
| | City | State | ZIP Code |
| Contact phone | 850-591-1707 | Email | wsnewbern@msn.com |

| **Franklin Revised And Amended Claim Summary** | |
|---|---:|
| Dishonored Check No. F35493 | ($501,030.00) |
| Setoff for G. Gibson Cattle | $125,602.22 |
| Adjusted Costs For G. Gibson Cattle | ($71,604.09) |
| | |
| **NET Dishonored Checks & Cattle** | **($447,031.87)** |
| | |
| **NET Total Recoveries from Bond & Settlement Collections/Payments** | **$106,704.71** |
| | |
| **NET Revised & Amended Claim** | **($340,327.16)** |

# **Exhibit A**

## VERIFICATION

Under penalties of perjury I, GLEN FRANKLIN, individually and as principal of Glen

Franklin Cattle Co., Inc., declare that the allegations in foregoing *Revised and Corrected*

*Amended Proof Of Claim*, together with attached exhibits, are based upon my personal

knowledge and are true and correct to the best of my knowledge, information, and belief.

GLEN FRANKLIN
Glen Franklin Cattle Co., Inc.
House, New Mexico

April 20, 2016

Date

Fill in this information to identify the case:

Debtor 1    In Re: Eastern Livestock Co., LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of Indiana

Case number    10-93904-BHL-11

## Official Form 410

## Proof of Claim

### REVISED and CORRECTED AMENDED CLAIM
### See attached Exhibit 18 and Summary

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

**1. Who is the current creditor?**
Glen Franklin
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor   Glen Franklin Cattle Co., Inc.

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
W. Scott Newbern, LC
Name
2982 Giverny Circle
Number    Street
Tallahassee    FL    32309
City    State    ZIP Code

Contact phone
Contact email

Where should payments to the creditor be sent? (if different)
Name
Number    Street
City    State    ZIP Code

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☐ No
☑ Yes. Claim number on court claims registry (if known) Nos. 538,539    Revised and Corrected    Filed on 01/11/2016
MM / DD / YYYY
Revised, Corrected, and Updated Claims : 151 (BMC 353)

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410    Proof of Claim    page 1

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. How much is the claim?    $ _____ **340,327.16** . Does this amount include interest or other charges?
    ☑ No
    **See Attached Exhibit A and Exhibit 18**    ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__Unpaid sales of cattle and adjustments_____

9. Is all or part of the claim secured?

☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                                 $ _____
Amount of the claim that is secured:               $ _____
Amount of the claim that is unsecured:  $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed) _____ %
☐ Fixed
☐ Variable

10. Is this claim based on a lease?

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

11. Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:                                                                    Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/14/2016

_Signature_

Print the name of the person who is completing and signing this claim:

Name        W. Scott Newbern
            First name        Middle name        Last name

Title        Managing Member

Company     W. Scott Newbern, PL
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     2982 Giverny Circle
            Number    Street
            Tallahassee                    FL        32309
            City                          State     ZIP Code

Contact phone    850-591-1707              Email    wsnewbern@msn.com

| Franklin Revised And Amended Claim Summary | |
|---|---|
| Dishonored Check No. F35493 | ($501,030.00) |
| Setoff for G. Gibson Cattle | $125,602.22 |
| Adjusted Costs For G. Gibson Cattle | ($71,604.09) |
| **NET Dishonored Checks & Cattle** | **($447,031.87)** |
| **NET Total Recoveries from Bond &** | |
| **Settlement Collections/Payments** | **$106,704.71** |
| **NET Revised & Amended Claim** | **($340,327.16)** |

# **Exhibit A**



# Exhibit 18

## Glen Franklin

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-93904-BHL-11 |
| | ) | |
| EASTERN LIVESTOCK CO., LLC, | ) | Hon. Basil H. Lorch, III |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JAMES A. KNAUER, CHAPER 11 TRUSTEE | ) | Adv. Pro. No. 13-59070 |
| OF EASTERN LIVESTOCK CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLEN FRANKLIN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GLEN FRANKLIN'S NOTICE OF
CORRECTED AMENDED PROOF OF CLAIM NUMBER 353**

COMES NOW Defendant GLEN FRANKLIN ("Franklin" or "Defendant"), by and through undersigned counsel, and gives notice of amending Claim No. 353 to the amount of FOUR HUNDRED FORTY-SEVEN THOUSAND THIRTY-ONE AND 87/100 DOLLARS ($447,031.87) as attached hereto and more particularly described below:

1. In early November Franklin purchased a total of 232 head from Grant Gibson for a total of $125,602.22 for which payment was withheld as a setoff in Claim 353 against the

1

dishonored check no. F35493 in the amount $501,030.00.[1] Exhibit A. This reduced claim no. 353 to the amount of $375,427.78 as filed originally April 26, 2011 ($501,030.00 less $125,602.22).

2.      However, because of the 232 head were stale and unhealthy, Franklin was forced to incur significant health recovery costs and maintenance costs from the lost time because of the health recovery that eliminated the winter wheat pasture cycle for these cattle.  These additional costs totaling $71,604.09, include a very significant 25.1% death loss of 58 of the original 232 head totaling $31,400.04.[2]

3.      November 2nd Franklin purchased a single load of 115 steers from Grant Gibson for $63,502.74 under invoice 315257 and another load of 117 steers on November 3rd for $62,099.48 under invoice 316529 for a total of 232 head at $125,602.22. Exhibit A

| Expenses & Death Loss At Rocking F Cattle Co. | Lot 60 | | Lot 61 | | Total | |
|---|---|---|---|---|---|---|
| | No. Hd. | Amount | No. Hd. | Amount | No. Hd. | Amount |
| Delivered | 115 | $63,502.74 | 117 | $62,099.48 | 232 | $125,602.22 |
| Nov 3 - Dec 17, 2010 | | | | | | |
| Processing | | ($4,191.28) | | ($4,264.17) | | ($8,455.45) |
| Medicine | | ($5,800.00) | | ($4,632.00) | | ($10,432.00) |
| Death Loss        $541.38 | (31) | ($16,782.78) | (23) | ($12,451.74) | (54) | ($29,234.52) |
| Total Cost to Dec 17 '10 | (31) | ($26,774.06) | (23) | ($21,347.91) | (54) | ($48,121.97) |
| Percent Death Losses | (27.0%) | | (19.7%) | | (23.3%) | |
| Dec 17 - Feb 15, 2011 | | | | | | |
| Yardage | | | | | | ($3,184.20) |
| Medicine | | | | | | ($1,150.00) |
| Feed | | | | | | ($16,982.40) |
| Death Loss        $541.38 | | | | | (4) | ($2,165.52) |
| Total Cost to Feb 15 '11 | | | | | (4) | ($23,482.12) |
| Total Costs Incurred Nov 3 - Feb 15, 2011 | | | | | (58) | ($71,604.09) |
| Percent Death Loss | | | | | (25.1%) | |
| Adjusted Claim Setoff | | | | | 174 | $53,998.13 |

[1]      The cattle for which check no. F35493 was dishonored were financed through the Farm Credit Bank of New Mexico. Exhibit B.

[2]      This is based on the average per head cost of $541.38 from the combined 232 head at a total of $125,602.22.

4.      The two (2) loads of 115 head and 117 head cattle were delivered to Rockin F Cattle Co., Farwell, TX, arriving on November 3rd and 4th and placed in pre-conditioning pens comprising Lots 60 and 61, respectively. Exhibit C.

5.      Franklin incurred $71,604.09 in total additional costs to bring the cattle back to health, feed, and prepare for sale. This amount reduced the set off of his original dishonored claim from $125,602.22 to $53,998.13. Exhibit C.

WHEREFORE Claim No. 353 is amended to the amount of **FOUR HUNDRED FORTY-SEVEN THOUSAND THIRTY-ONE AND 87/100 DOLLARS** ($501,030.00 less $53,998.13 or **$447,031.87**).

Respectfully submitted this 21st day of October 2014,

W. SCOTT NEWBERN, PL

/s/ W. Scott Newbern
W. Scott Newbern
2982 East Giverny
Tallahassee, FL 32309
(T) 850.591.1707
(F) 850.894.0871
wsnewbern@msn.com

COUNSEL FOR GLEN FRANKLIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

/s/ W. Scott Newbern
W. SCOTT NEWBERN

CORRECTED Amended Claim No. 353 - Franklin, Glen

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Southern District of Indiana | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br>EASTERN LIVESTOCK COMPANY, LLC | Case Number:<br>10-93904-BHL-11 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**GLEN FRANKLIN**

<table>
<tr><td>Name and address where notices should be sent:<br>c/o W. Scott Newbern, Esq<br>2982 East Giverny Circle<br>Tallahassee, FL 32309<br><br>Telephone number: (850) 591-1707    email: wsnewbern@msn.com</td><td><b>COURT USE ONLY</b><br>❏ Check this box if this claim amends a previously filed claim.<br><br><b>Court Claim Number:</b>_____<br>(<i>If known</i>)<br><br>Filed on:_____</td></tr>
<tr><td>Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:   email:</td><td>❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.</td></tr>
</table>

**1. Amount of Claim as of Date Case Filed:** $ $447,031.87 before interest, fees, and costs of recovery

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Please see attached
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim** (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of property or right of setoff:** ❏ Real Estate ❏ Motor Vehicle ❏ Other<br>**Describe:**<br><br>**Value of Property:** $_____ | Amount of arrearage and other charges, ~~as of the time case was filed~~ ~~included in secured claim, if any:~~<br>tortious conduct int. and est. fees $319,709.20<br>**Basis for perfection:** Security Agreement with Farm Credit New Mexico<br><br>TOTAL CLAIM ..... **Amount of Secured Claim:** $ $447,031.87 |
|---|---|

**Annual Interest Rate** _____% ❏ Fixed or ❏ Variable
(when case was filed)

~~TOTAL CLAIM~~ ~~as of date case was filed~~ $_____

TOTAL CLAIM with recovery costs ........ $766,741.07

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | |
|---|---|---|---|
| ❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | **Amount entitled to priority:**<br>$_____ |

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☒ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: W. Scott Newbern
Title: Attorney for Glen Franklin
Company: W. Scott Newbern, PL
Address and telephone number (if different from notice address above): 2982 East Giverny Circle
Tallahassee, Florida 32309

(Signature)   W. Scott Newbern, Esq.   (Date) 10 21 14

Telephone number: (850) 591-1707   email: wsnewbern@msn.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# Exhibit A

## WachoviaBk,div,WellsFargoBk,NA

**WACHOVIA**
Date: Nov 8, 2010   Advice D=241164

Acct:   50 ⬛⬛⬛ 597545       Sub: 142101

A fee associated with this service will
be reflected in your current account
analysis statement. The listed items
are enclosed. You may obtain payment
from the maker.

**Additional Information**
20101103

**SEQ#**   **ITEM AMOUNT**
10615      501,030.00



AG NEW MEXICO FCS ACA
233 FAIRWAY TER N
CLOVIS NM 881013064

1 Item charged totaling $501,030.00

Advice Total $501,030.00

*031200730*
11/08/2010
000000000010615

This is a LEGAL COPY of your
check. You can use it the same
way  you would use the original
check.

RETURN REASON-S
REFER TO MAKER

Document Seq *
110811581361898600573
KNDMIOND
11/08/10

## REFER TO MAKER

003807

11/03/2010  11/08/2010  116514633011030110000165147301001312007301100031201031
0031200730

**NO. F 35495**

135 West Market
New Albany, IN 47150
812-949-9035

73-21
421

EASTERN
LIVESTOCK CO., LLC

Oct 25   20 10

PAY to the
order of  Glenn Franklin + ACA of Eastern New Mexico   $ 501,030 oo

FIVE HUNDRED One THOUSAND Thirty + /oo   **DOLLARS**

**Fifth Third Bank**
Medium Country

Eastern Livestock Co., LLC
[signature]

⑆035495⑆ ⑆042100272⑆ 7480493837⑈

5-70,

I Do not endorse or write below this line I

**Frank 000056**

# Exhibit B

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2 Pages (2)(1) $2000

2001071100321

07/11/01  8:14
NMSJSYD

A. NAME & PHONE OF CONTACT AT FILER
[optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Ag New Mexico, FCS, PCA
P.O. Box 1328
Clovis, New Mexico 88102-1328

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR Glen Franklin Cattle Company, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE \| POSTAL CODE | COUNTRY |
| Box 703 | House | | NM \| 88121 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Incorporation | NM | 1014760 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE \| POSTAL CODE | COUNTRY |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR Ag New Mexico, FCS, PCA | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE \| POSTAL CODE | COUN- |
| P.O. Box 1328 | Clovis | | NM \| 88102-1328 | TRY USA |

4. This FINANCING STATEMENT covers the following collateral:

Continuation of Previously filed Financing Statement #03895    09/25/91 De Baca County
Continuation of Previously filed Financing Statement #4429     09/25/91 Roosevelt County
Continuation of Previously filed Financing Statement #910493 09/25/91 Curry County
All livestock branded or unbranded or in the possession of debtor or hereafter acquired by
way of replacement, subsitution, increase of addition and all livestock that is inventory.
All farm and ranch machinery and equipment of every kind whether now in the possession of
the debtor, or hereafter acquired by way of replacement, substitution or addition.  All
annual and perennial crops of whatever kind and description grown, growing,or to be planted
on land owned, rented, or lessed described as follows:

SEE ATTACHMENTS

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| Glen Franklin and Jimmie Gayle Franklin        #122100263 | | | | | | |

FILING OFFICE COPY -- NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Reorder from Uniform Information Services, Inc.
800-382-2424 (1160157/98)

Frank 000059

**ATTACHMENT**

Glen Franklin Cattle Company, Inc.

```
Acres  Sec TWN RNG Owner County State
6,070 West and East of House, Glen Franklin, Quay Co.-NM.
3,960 8m SW of House, Leta Harvey, Quay Co.-NM.
320   1m NE of House, Leta Harvey, DeBaca Co.-NM.
160   Sec 6 T5N R29E, Maurice Runyan, Quay Co.-NM.
Land located South of Portales, Lanny Gresham-Roosevelt Co.-NM.
Land North of Bethal, Leland Pool, Roosevelt Co.-NM.
Land S of Dora, Dave Pruitt, Roosevelt Co.-NM.
Land located North of Roswell, Charleson Steinbock, Chaves Co.-NM
Land located South of Portales, Carthel, Roosevelt Co.-NM.
Land Located South of Clovis, Charles Petty, Curry Co.-NM.
Land located Airbase Road, Terral Roberts, Curry Co.-NM.

  6,070 acres West and East of House-Owned-Quay Co.-NM.
  3,960 acres East of Lubbock-Leased-City of Lubbock-Lubbock TX.
  Lanny Gresham lease South of Portales-Roosevelt Co.-NM
  Leland Pool lease North of Bethal-Roosevelt Co.-NM
  Phillip Smith lease North East of Floyd-Roosevelt Co.-NM
  Dave Pruitt lease South of Dora-Roosevelt Co.-NM
  Township     Range  Sec.  Desc.
  T5N          R28E   Sec 16: All-Leased-Leta Harvey-Quay Co.-NM
  T4N          R28E   Sec 8: E/2-Leased-DeBaca Co.-NM-Leta Harvey
  T5N          R29E   Sec 6: SW/4-Leased-Maurice Runyan-Quay Co.-NM
  T5N          R28E   Sec 17: All-Leased-Leta Harvey-Quay Co.-NM
```

Frank 000061



7/11/06

2 pages 20.—(1)(1)
200212163834
12/16/02 8:53
NM5/5 YD

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]

B SEND ACKNOWLEDGEMENT TO (Name and Address)

Ag New Mexico, FCS, PCA
P. O. Box 1328
Clovis, NM 88102-1328

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a INITIAL FINANCING STATEMENT FILE # <br> # 2001071100321 dated 7/11/01 | 1b ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|

2 ☐ TERMINATION   Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3 ☐ CONTINUATION   Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4 ☐ ASSIGNMENT (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9

5 AMENDMENT (PARTY INFORMATION) This Amendment affects ☐ Debtor or ☒ Secured Party of record Check only one of these two boxes
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

☐ CHANGE name and/or address Give current record name in item 6a or 6b, also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name Give record name to be deleted in item 6a or 6b.    ☐ ADD name Complete item 7a or 7b, and also item 7c, also complete items 7d-7g (if applicable)

**6 CURRENT RECORD INFORMATION**

| 6a ORGANIZATION'S NAME |
|---|
| Glen Franklin Cattle Co , Inc Box 703 House,NM 88121 |

| OR | 6b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

**7 CHANGED (NEW) OR ADDED INFORMATION**

| | 7a ORGANIZATION'S NAME |
|---|---|
| | |

| OR | 7b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e TYPE OF ORGANIZATION | 7f JURISDICTION OF ORGANIZATION | 7g ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE) check only one box.

Describe collateral ☐ deleted or   ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned

Legal Description to be replaced with attachment

9 NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment) If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a ORGANIZATION'S NAME |
|---|
| Ag New Mexico, FCA, PCA |

| OR | 9b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

10 OPTIONAL FILER REFERENCE DATA

Glen Franklin Cattle Co ,Inc #122100263

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Frank 000063

## Legal Documentation for Glen Franklin Cattle Co., Inc.

| Acres | Section | TWP | RNG | Owner | County | State |
|---|---|---|---|---|---|---|
| 6070 | W and E of House | | | Glen Franklin | Quay | NM |
| 3960 | 16,17 | T5N | R28E | Leta Harvey | Quay | NM |
| 320 | 8 | T4N | R28E | Leta Harvey | DeBaca | NM |
| 160 | 6 | T5N | R29E | Maurice Runyan | Quay | NM |
| 3680 | S of Portales | | | Lanny Gresham | Roosevelt | NM< |
| 640 | N of Bethal | | | Leland Pool | Roosevelt | NM |
| 160 | NE of Portales | | | Waldo Davis | Roosevelt | NM |
| 480 | SE and E of Muleshoe | | | Kelley Harrison | Bailey/ Lamb | TX |
| 640 | SE of Elida | | | Justin Mullins | Roosevelt | NM |
| 3960 | E of Lubbock | | | City of Lubbock | Lubbock | TX |
| 2760 | Wilson, TX | | | City of Lubbock | Lubbock | TX |
| 480 | Lazbuddie, TX | | | Dennis Schilling | Parmer | TX |
| 160 | Lazbuddie | | | L.M. Smith | Parmer | TX |
| 320 | Lazbuddie | | | Vernon Turner | Parmer | TX |
| 160 | Lazbuddie | | | Mike Miller | Parmer | TX |
| 320 | Dimmit, TX | | | Greg Sides | Castro | TX |
| 160 | Littlefeild, TX | | | Brad Wilson | Lamb | TX |
| 480 | 6 miles N of Herford | | | Don Rhodes | Deaf Smith | TX |
| 330 | Lazbuddie | | | Royce Barnes | Parmer | TX |
| 1280 | NW of Muleshoe | | | Barrier Farms | Bailey/ Lamb | TX |
| 160 | 6 miles SE of Portales | | | | Roosevelt | NM |
| 320 | S of Portales | | | | Roosevelt | NM |

Frank 000065

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Renewed every 5 yrs.

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Ag New Mexico, FCS, PCA
P.O. Box 1328
Clovis, New Mexico 88102-1328

2 Pages (2) (1) $20.00
2001071100321
07/11/01   8:14
NMSSSYD

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)- do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Glen Franklin Cattle Company, Inc. | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Box 703 | House | NM | 88121 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 85-0274955 | | Incorporation | NM | 1014760 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Ag New Mexico, FCS, PCA | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 1328 | Clovis | NM | 88102-1328 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Continuation of Previously filed Financing Statement #03895  09/25/91 De Baca County
Continuation of Previously filed Financing Statement #4429   09/25/91 Roosevelt County
Continuation of Previously filed Financing Statement #910493 09/25/91 Curry County
All livestock branded or unbranded or in the possession of debtor or hereafter acquired by
way of replacement, subsitution, increase of addition and all livestock that is inventory.
All farm and ranch machinery and equipment of every kind whether now in the possession of
the debtor, or hereafter acquired by way of replacement, substitution or addition.  All
annual and parennial crops of whatever kind and description grown, growing, or to be planted
on land owned, rented, or leased described as follows:

SEE ATTACHMENTS

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC
6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2
8. OPTIONAL FILER REFERENCE DATA
Glen Franklin and Jimmie Gayle Franklin     #122100263

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)     Reorder from Uniform Information Services, Inc.

**ATTACHMENT**

Glen Franklin Cattle Company, Inc.

Acres  Sec TWN RNG Owner County State
6,070 West and East of House, Glen Franklin, Quay Co.-NM.
3,960 8m SW of House, Leta Harvey, Quay Co.-NM.
320   1m NE of House, Leta Harvey, DeBaca Co.-NM.
160   Sec 6 T5N R29E, Maurice Runyan, Quay Co.-NM.
Land located South of Portales, Lanny Gresham-Roosevelt Co.-NM.
Land North of Bethal, Leland Pool, Roosevelt Co.-NM.
Land S of Dora, Dave Pruitt, Roosevelt Co.-NM.
Land located North of Roswell, Charleson Steinbock, Chaves Co.-NM
Land located South of Portales, Garthel, Roosevelt Co.-NM.
Land Located South of Clovis, Charles Petty, Curry Co.-NM.
Land located Airbase Road, Terrel Roberts, Curry Co.-NM.

6,070 acres West and East of House-Owned-Quay Co.-NM.
3,960 acres East of Lubbock-Leased-City of Lubbock-Lubbock TX.
Lanny Gresham lease South of Portales-Roosevelt Co.-NM
Leland Pool lease North of Bethal-Roosevelt Co.-NM
Phillip Smith lease North East of Floyd-Roosevelt Co.-NM
Dave Pruitt lease South of Dora-Roosevelt Co.-NM

| Township | Range | Sec. Desc. |
|----------|-------|------------|
| T5N | R28E | Sec 16: All-Leased-Leta Harvey-Quay Co.-NM |
| T4N | R28E | Sec 8: E/2-Leased-DeBaca Co.-NM-Leta Harvey |
| T5N | R29E | Sec 6: SW/4-Leased-Maurice Runyan-Quay Co.-NM |
| T5N | R28E | Sec 17: All-Leased-Leta Harvey-Quay Co.-NM |

EFS 1 • EFFECTIVE FINANCING STATEMENT (EFF-.   · (o/94)

EFS

## EFFECTIVE FINANCING STATEN

**File Number: 20060000265B**

**Date Filed: 01/05/2006 08:00 AM**

This statement must be typed or printed. Illegible statements will

**Rebecca Vigil-Giron**

**Secretary of State**

| 1. DEBTOR NAME (LAST, FIRST) | 2. ADDITIONAL DEBTOR NAMES (LAST, FIRST) | | | | NAME (LAST, FIRST) | | |
|---|---|---|---|---|---|---|---|
| Glen Franklin Cattle Co., Inc. | | | | | | | |
| MAILING ADDRESS Box 703 | MAILING ADDRESS | | | | MAILING ADDRESS | | |
| CITY STATE ZIP CODE House. NM 88121 | CITY | STATE | ZIP CODE | | CITY | STATE | ZIP CODE |
| Soc. Sec. No. or Fed. Tax. I.D. No. 85-0274955 | Soc. Sec. No. or Fed. Tax I.D. No. | | | | Soc. Sec. Nr. or Fed. Tax I.D. No. | | |

| 4. ADDITIONAL DEBTOR NAME (LAST, FIRST) | 5. PRIMARY SECURED PARTY NAME (LAST, FIRST) | | | 6. SECONDARY SECURED PARTY NAME (LAST, FIRST) | | |
|---|---|---|---|---|---|---|
| | Ag New Mexico, FCS, PCA | | | | | |
| MAILING ADDRESS | MAILING ADDRESS P.O. Box 1328 | | | MAILING ADDRESS | | |
| CITY STATE ZIP CODE | CITY STATE ZIP CODE Clovis, NM 88102-1328 | | | CITY | STATE | ZIP CODE |
| SS# OR FED. TAX ID# | SS# OR FED. TAX ID# 85-0098318 | | | SS# OR FED. TAX ID# | | |

**7. PRODUCTS SUBJECT TO SECURITY INTERESTS**   A separate line must be used for each product, year and county.
The secured party has a security interest in the following farm products and proceeds of the Debtor.

| PRODUCT CODE | PRODUCT NAME | CROP YEAR CODE | COUNTY NAME | PRODUCT DESCRIPTION WHEN LESS THAN ALL OF PRODUCT IS COVERED BY SECURITY INTEREST. |
|---|---|---|---|---|
| 101 | Cattle-beef | 21 | Quay | |
| 101 | Cattle-beef | 07 | De Baca | |
| 101 | Cattle-beef | 23 | Roosevelt | |
| 101 | Cattle- beef | 03 | Chaves | |
| | | | | |
| | | | | |

Check here if this filing is for all crop years: __XXXX__

**FOR OFFICE USE ONLY**

All amounts/quantities of farm products listed, unless otherwise designated above, located or produced in the counties designated above, are subject to the secured party's interest; unless a specific crop year is indicated, this statement is applicable for every crop year for the duration of this statement and any continuation thereof.

Signature(s) of Debtor(s) below:

_Glen Richard Franklin_
Glen Richard Franklin , PRes

_Jimmie Gayle Franklin_
Jimmie Gayle Franklin, Sec./Trea.

Signatures of Secured Party below:
Ag New Mexico, FCS, PCA

by: _____

State of New Mexico
Effective Financial Statement 1 Page(s)

White & Canary–To be filed with the Office of the Secretary of State. Pl
Filing Fee $11.50

VALIANT ENTERPRISES, INC. • ALBUQUERQUE, NEW MEXICO • 11/89

T0600603002



7/11/00

2 pages 20.—(1)(1)
200212163383 4
12/16/02   8:53
NMS/S YD

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A NAME & PHONE OF CONTACT AT FILER [optional]

B SEND ACKNOWLEDGEMENT TO (Name and Address)

Ag New Mexico, FCS, PCA
P. O. Box 1328
Clovis, NM 88102-1328

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a INITIAL FINANCING STATEMENT FILE #<br>#2001071100321 dated 7/11/01 | 1b ☐ This FINANCING STATEMENT AMENDMENT is<br>to be filed [for record] (or recorded) in the<br>RBAL ESTATE RECORDS |

2 ☐ TERMINATION   Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3 ☐ CONTINUATION   Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4 ☐ ASSIGNMENT (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9

5 AMENDMENT (PARTY INFORMATION) This Amendment affects ☐ Debtor or ☒ Secured Party of record Check only one of these two boxes
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7
☐ CHANGE name and/or address  ☐ DELETE name Give record name  ☐ ADD name Complete item 7a or 7b, and also

6 CURRENT RECORD INFORMATION
6a ORGANIZATION'S NAME
Glen Franklin Cattle Co , Inc  Box 703  House,NM 88121
OR 6b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7 CHANGED (NEW) OR ADDED INFORMATION
7a ORGANIZATION'S NAME
OR 7b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY
7d TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e TYPE OF ORGANIZATION | 7f JURISDICTION OF ORGANIZATION | 7g ORGANIZATIONAL ID #, if any ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE) check only one box.
Describe collateral ☐ deleted or  ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned

Legal Description to be replaced with attachment

9 NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment)  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here. ☐ and enter name of DEBTOR authorizing this Amendment
9a ORGANIZATION'S NAME
Ag New Mexico, FCA, PCA
OR 9b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10 OPTIONAL FILER REFERENCE DATA
Glen Franklin Cattle Co ,Inc #122100263

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Frank 000067

Legal Documentation for Glen Franklin Cattle Co., Inc.

| Acres | Section | TWP | RNG | Owner | County | State |
|-------|---------|-----|-----|-------|--------|-------|
| 6070 | W andE of House | | | Glen Franklin | Quay | NM |
| 3960 | 16,17 | T5N | R28E | Leta Harvey | Quay | NM |
| 320 | 8 | T4N | R28E | Leta Harvey | DeBaza | NM |
| 160 | 6 | T5N | R29E | Maurice Runyan | Quay | NM |
| 3680 | S of Portales | | | Lanny Gresham | Roosevelt | NM< |
| 640 | N of Bethal | | | Leland Pool | Roosevelt | NM |
| 160 | NE of Portales | | | Walde Davis | Roosevelt | NM |
| 480 | SE and E of Muleshoe | | | Kelley Harrison | Bailey/ Lamb | TX |
| 640 | SE of Elida | | | Justin Mullins | Roosevelt | NM |
| 3960 | E of Lubbock | | | City of Lubbock | Lubbock | TX |
| 2760 | Wilson, TX | | | City of Lubbock | Lubbock | TX |
| 480 | Lazbuddie, TX | | | Dennis Schilling | Parmer | TX |
| 160 | Lazbuddie | | | L.M. Smith | Parmer | TX |
| 320 | Lazbuddie | | | Vernon Turner | Parmer | TX |
| 160 | Lazbuddie | | | Mike Miller | Parmer | TX |
| 320 | Dimmit, TX | | | Greg Sides | Castro | TX |
| 160 | Littlefeild, TX | | | Brad Wilson | Lamb | TX |
| 480 | 6 miles N of Herford | | | Don Rhodes | Deaf Smith | TX |
| 320 | Lazbuddie | | | Royce Barnes | Parmer | TX |
| 1280 | NW of Muleshoe | | | Barrier Farms | Bailey/ Lamb | TX |
| 160 | 6 miles SE of Portales | | | | Roosevelt | NM |
| 320 | S of Portales | | | | Roosevelt | NM |

Frank 000069

EFS 1 • EFFECTIVE FINANCING STATEMENT (EFF- .   . (o/94)

EFS

**EFFECTIVE FINANCING STATEN** File Number: 20060000265B

This statement must be typed or printed. Illegible statements will

Date Filed: 01/05/2006 08:00 AM

Rebecca Vigil-Giron
Secretary of State

| 1. DEBTOR NAME (LAST, FIRST) | 2. ADDITIONAL DEBTOR NAME (LAST, FIRST) | NAME (LAST, FIRST) |
|---|---|---|
| Glen Franklin Cattle Co., Inc. | | |

MAILING ADDRESS: Box 703

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|
| House. NM 88121 | | | | | | | | |

Soc. Sec. No. or Fed. Tax I.D. No. 85-0274955

| 4. ADDITIONAL DEBTOR NAME (LAST, FIRST) | 5. PRIMARY SECURED PARTY NAME (LAST, FIRST) Ag New Mexico, FCS, PCA | 6. SECONDARY SECURED PARTY NAME (LAST, FIRST) |
|---|---|---|

MAILING ADDRESS P.O. Box 1328

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|---|
| | | | Clovis, NM 88102-1328 | | | | | |

SS# OR FED. TAX ID# 85-0098318

7. PRODUCTS SUBJECT TO SECURITY INTERESTS   A separate line must be used for each product, year and county.
The secured party has a security interest in the following farm products and proceeds of the Debtor.

| PRODUCT CODE | NAME | CROP YEAR CODE | COUNTY NAME | PRODUCT DESCRIPTION WHEN LESS THAN ALL OF PRODUCT IS COVERED BY SECURITY INTEREST. |
|---|---|---|---|---|
| 101 | Cattle-beef | 21 | Quay | |
| 101 | Cattle-beef | 07 | De Baca | |
| 101 | Cattle-beef | 23 | Roosevelt | |
| 101 | Cattle- beef | 03 | Chaves | |

Check here if this filing is for all crop years: __XXXX__

FOR OFFICE USE ONLY

All amounts/quantities of farm products listed, unless otherwise designated above, located or produced in the counties designated above, are subject to the secured party's interest; unless a specific crop year is indicated, this statement is applicable for every crop year for the duration of this statement and any continuation thereof.

Signature(s) of Debtor(s) below:
Glen Richard Franklin , Pres
Jimmie Gayle Franklin, Sec./Trea.

Signatures of Secured Party below:
Ag New Mexico, FCS, PCA
by:

State of New Mexico
Effective Financial Statement 1 Page(s)

White & Canary–To be filed with the Office of the Secretary of State. Pi
Filing Fee $11.50

VALLIANT ENTERPRISES, INC. • ALBUQUERQUE, NEW MEXICO • 11/89

# Uniform Commercial Code Filing Preview

## FILER INFORMATION

### CONTACT INFORMATION FOR FILER:

| CONTACT EMAIL<br>linda.tapia@farmcreditnm.com | CONTACT NAME<br>Tapia, Linda | CONTACT PHONE<br>(575) 461-3020 | CONTACT FAX<br>(575) 461-4655 |
|---|---|---|---|

### SEND ACKNOWLEDGEMENT TO:

| MY INTERNAL TRACKING #<br>2664921/Franklin,G | | CLIENTS ACCOUNT #<br>5089 | |
|---|---|---|---|
| ORGANIZATION'S NAME<br>Farm Credit | | | |
| MAILING ADDRESS<br>P.O. Box 1285 | CITY<br>Tucumcari | STATE<br>NM | POSTAL CODE<br>88401-1285 |
| COUNTY | COUNTRY | | |

## FILE RECORD

### RECORD DATA (UNIQUE SEQUENTIAL ID: 0001):

| FILING TYPE<br>Initial | | |
|---|---|---|
| FILERS UNIQUE ID | ALTERNATE NAME DESIGNATION<br>Debtor-Secured Party | ALTERNATE FILING TYPE<br>UCC |
| ADDITIONAL INFORMATION | | |

### DEBTOR DATA (UNIQUE SEQUENTIAL ID: 0001):

| ORGANIZATION'S NAME<br>Glen Franklin Cattle Company Inc, a New Mexico Corporation | | | |
|---|---|---|---|
| TYPE OF ORGANIZATION<br>Corporation | ORGANIZATION'S STATE OR COUNTRY OF<br>ORGANIZATION<br>New Mexico | ENTITY'S ORGANIZATIONAL I.D. #<br>None | |
| MAILING ADDRESS<br>Box 703 | CITY<br>House | STATE<br>NM | POSTAL CODE<br>88121 |
| COUNTY<br>Quay | COUNTRY<br>USA | | |
| ALTERNATIVE CAPACITY OF DEBTOR PROPERTY | | | |

### DEBTOR DATA (UNIQUE SEQUENTIAL ID: 0002):

| INDIVIDUAL'S LAST NAME<br>Franklin | FIRST NAME<br>Glen | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MAILING ADDRESS<br>Box 703 | CITY<br>House | STATE<br>NM | POSTAL CODE<br>88121 |
| COUNTY<br>Quay | COUNTRY<br>USA | | |
| ALTERNATIVE CAPACITY OF DEBTOR PROPERTY | | | |

### DEBTOR DATA (UNIQUE SEQUENTIAL ID: 0003):

| INDIVIDUAL'S LAST NAME<br>Franklin | FIRST NAME<br>Jimmie | MIDDLE NAME<br>Gayle | SUFFIX |
|---|---|---|---|

Frank 000075
4/16/2013

| MAILING ADDRESS<br>**Box 703** | CITY<br>**House** | STATE<br>**NM** | POSTAL CODE<br>**88121** |
|---|---|---|---|
| COUNTY<br>**Quay** | COUNTRY<br>**USA** | | |
| ALTERNATIVE CAPACITY OF DEBTOR PROPERTY | | | |

**SECURED PARTY DATA** (UNIQUE SEQUENTIAL ID: **0001**):

| ORGANIZATION'S NAME<br>**PRODUCTION CREDIT ASSOCIATION OF SOUTHERN NM, a wholly owned subsidiary of Farm Credit of NM, ACA** | | | |
|---|---|---|---|
| MAILING ADDRESS<br>**PO Box 1285** | CITY<br>**Tucumcari** | STATE<br>**NM** | POSTAL CODE<br>**88401** |
| COUNTY | COUNTRY<br>**USA** | | |

**COLLATERAL DATA** (UNIQUE SEQUENTIAL ID: **0001**):

COLLATERAL COVERED BY FINANCE STMT

All personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto, instruments (including promissory notes), documents, accounts, chattel paper (whether tangible or electronic), deposit accounts, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, all general intangibles (including all payment intangibles) and farm products (including all annual and perennial crops of whatever kind and description grown, growing or to be planted or produced, all livestock branded or unbranded, all processed and unprocessed feed, peanuts, cotton, grain and harvested crops located on the Borrower's farm(s) or stored by Borrower off said premises or in a public or private warehouse to Borrower's account, and any contract rights or sales contracts for any such commodities, milk or products of livestock, all marketing rights, all capital retains, and/or all milk assignments, all governmental subsidies, incentives and/or ASCS payments and all patronage allocations and certificates).

Frank 000077
4/16/2013

File Number: 20060009841A
Date Filed: 05/18/2006 03:57 PM
Rebecca Vigil-Giron
Secretary of State

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Eichem, Connie          (505) 762-3828

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Ag New Mexico FCS FLCA
PO Box 1328
Clovis NM 88102-1328
EMail: connie.eichem@farmcreditbank.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|
| 2001071100321 | | |

2. ☐ TERMINATION. Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ CONTINUATION. Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial)

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record
☐ CHANGE name and/or address          ☐ DELETE name          ☐ ADD name

6. CURRENT RECORD INFORMATION:

OR
| 1a. ORGANIZATION'S NAME |
|---|
| Glen Franklin Cattle Co., Inc |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

8. AMENDMENT (COLLATERAL CHANGE)

Describe collateral  ☐ deleted or  ☐ added, or give entire  ☐ restated collateral description, or describe collateral  ☐ assigned

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT     ☐ DEBTOR authorizing this amendment

OR
| 9a. ORGANIZATION'S NAME |
|---|
| |

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
Glen Franklin Cattle Co., Inc

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| Glen Franklin Cattle Company, Inc., Box 703, House, NM 88121; | Ag New Mexico, FCS, PCA whose address is P.O. Box 1328, Clovis, NM 88102-1328 |

Type: ☐ individual ☐ decedent estate ☐ partnership ☐ corporation ☐ limited partnership ☐ limited liability company
☐ trust ☐ limited liability partnership     State of organization/registration (if applicable) NM ____

☐ If checked, refer to addendum for additional Debtors and signatures.

Loan No.: 122100263

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 02/10/11.

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and payment and performance of the following described Secured Debts owed to Secured Party by: Glen Franklin Cattle Company, Inc., Glen Richard Franklin, Jimmie Gayle Franklin.

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ All Debts. All present and future debts, regardless of whether this Agreement is referenced, such debts are secured by other collateral, or whether the future debt is unrelated to or of a different type than the current debt, and including those debts owed by Debtor or Borrower to any of Secured Party's affiliated or subsidiary institutions, including but not limited to Ag New Mexico, FCS, ACA and/or to Ag New Mexico, FCS, FLCA, or their respective successors or assigns. Any lien created hereby for an Affiliate or subsidiary shall be inferior and secondary to the lien created in favor of Secured Party. Secured Party and/or its Affiliates or subsidiaries may make future advances to Debtor or Borrower and/or may transfer the debt instruments from one Affiliate or subsidiary to another and this Security Agreement shall further secure the payment to Secured Party or to Affiliates or subsidiaries of all such future advances. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; and original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

☐ Debtor expressly acknowledges a purchase money security interest in the Property as security for the Secured Debts secured by this security agreement, which represents funds advanced by Secured Party at Debtor's request and used in the payment of the purchase price of the Property.

**PROPERTY DESCRIPTION.** All of Debtor's interest in stock, participation certificates and/or other equity interests in Secured Party, including but not limited to all Debtor's interest in dividends, whether paid in cash or in stock or participation certificates, and in all allocated surplus or allocated equity in Secured Party, including but not limited to exchanged or converted equity, and all proceeds thereof to which Debtor may be entitled to receive on account of said property.

All accounts and general intangibles now owned or hereafter acquired by the debtor including but not limited to all accounts receivable, and all FSA government payments such as deficiency, diversion, incentives, payment in kind, and conservation reserve programs payments.

All annual and perennial crops of whatever kind and description grown, growing or to be planted or produced on land owned, rented, leased or hereafter purchased, specifically including, but not limited to the hereinafter described land.

All equipment including, but not limited to, machinery, vehicles, furniture, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The property includes any equipment described in a list or schedule Debtor gives to secured Party, but such a list is not necessary to create a valid security interest in all Debtor's equipment.

All livestock now owned and hereafter acquired including but not limited to: 151 2-10yrs cows, 7 2-5 yrs bulls, 60 calves, and 4,265 stocker cattle.

To include without limitation all livestock branded with the following registered State of New Mexico brand:

Registered Name: _Glen Franklin Cattle Co._

Brand/Location: _____

INITIAL _G F_
_JDF_

**GENERAL PROVISIONS.** Each debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the law of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue so long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's own property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products and Debtor consents to the use of Debtor's Social Security or Tax Identification Number when notice of Secured Party's security interest is given to them. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party free of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which include reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on Property.



INITIAL G F
747

Fonives Copyrighted ©2004 by Bankers Systems, Inc.

Loan No.: 122100263
Borrower: Glen Franklin Cattle Company, Inc.
Assn:     Ag New Mexico, FCS, PCA
Branch:   Clovis Branch Office

☒ **Specific Property Description.** The Property includes, but is not limited by, the following (if required, provide real estate
description):

2 - Overhead Cake Bins
1 - Hamby Cultivator
1 - 40Ft Crustbuster Drill
2 - Wheat Drills
3 - Feeder Box
2 - Horse Trailers
Misc. Tools and Equipment
1 - Plow
1 - Toolbar with Attachments
1 - G N Trailer
1 - Case 2290 Tractor
1 45' trailer 2008

Vehicles
2010 Tahoe
97 Ford F-250 4x4 feed truck @ Logan
2010 Ford Dually

**USE OF PROPERTY.**     The Property will be used for

☐ personal     ☐ business     ☒ agricultural     ☐ other purposes; specify:

**Signatures.**  Debtor agrees to the terms on pages 1, 2, and 3 of this Agreement and acknowledges receipt of a copy of this
Agreement.

**DEBTOR**

Glen Franklin Cattle Company, Inc.

● _Glen Franklin_ 2/14/11
Glen Richard Franklin, President     (Date)

● _Jimmie Gayle Franklin_  2/14/11
Jimmie Gayle Franklin, Secretary     (Date)

● _Glen Franklin_ 2/14/11
Glen Richard Franklin, Individual     (Date)

_Jimmie Gayle Franklin_ 2/14/11
Jimmie Gayle Franklin, Individual     (Date)

File Number: 20110006106J
Date Filed: 04/18/2011 08:28 AM
Dianna J. Duran
Secretary of State

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Bartlett, Laurie          (575) 762-3828

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Ag New Mexico FCS FLCA
PO Box 1328
Clovis NM 88102-1328
EMail: laurie.bartlett@farmcreditbank.com  Fax: (575) 762-5816

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
2001071100321

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial)

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record
☐ CHANGE name and/or address    ☐ DELETE name    ☐ ADD name

6. CURRENT RECORD INFORMATION:
1a. ORGANIZATION'S NAME

OR
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Franklin | Glen | | |

8. AMENDMENT (COLLATERAL CHANGE)
Describe collateral  ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

9. NAME of SECURED PARTY of RECORD AUHTORIZING THIS AMENDMENT  ☑ DEBTOR authorizing this amendment
9a. ORGANIZATION'S NAME

OR
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Franklin | Glen | | |

10. OPTIONAL FILER REFERENCE DATA
Glen Franklin

Frank 000073

**FARM CREDIT**
OF NEW MEXICO

# SECURITY AGREEMENT

Glen Franklin Cattle Company Inc, A New Mexico Corporation
Loan No. 2664921

**Date**

This Security Agreement is made on this **15th day of April, 2013**.

This Security Agreement ("Agreement") is entered into by the undersigned "Borrower(s)":

| | |
|---|---|
| Glen Franklin Cattle Company Inc, A New Mexico Corporation | Box 703, House, NM 88121 |
| Glen Franklin | Box 703, House, NM 88121 |
| Jimmie G Franklin | Box 703, House, NM 88121 |
| Glen and Jimmie Franklin Trust | Box 703, House, NM 88121 |

and Production Credit Association of Southern New Mexico, a wholly owned subsidiary of Farm Credit of New Mexico, ACA ("Lender") Borrower and Lender agree as follows:

1.     **DEFINITIONS.** All terms in this Agreement that are defined in the Uniform Commercial Code, as enacted in the State in which the Collateral (defined below) is located and as amended from time to time ("UCC"), shall have the meanings set forth in the UCC and such meanings shall automatically change at the time that any amendment to the UCC becomes effective. The term "Secured Obligations," as used in this Agreement, means all of the indebtedness, obligations and liabilities of any kind of Borrower to Lender, individually or collectively, whenever and however incurred, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising.

2.     GRANT OF SECURITY INTEREST; COLLATERAL. Borrower grants to Lender, to secure the payment and performance in full of all of the Secured Obligations, a security interest in and so pledges and assigns to Lender the following properties, assets and rights of Borrower, wherever located, whether now owned or hereafter acquired or arising, and all proceeds, products, additions, accessions, replacements, substitutions thereof (collectively, "Collateral"): all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper (whether tangible or electronic), deposit accounts, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, all general intangibles (including all payment intangibles) and farm products (including all annual and perennial crops of whatever kind and description grown, growing or to be planted or produced, all livestock branded or unbranded, all processed and unprocessed feed, peanuts, cotton, grain and harvested crops located on the Borrower's farm(s) or stored by Borrower off said premises or in a public or private warehouse to Borrower's account, and any contract rights or sales contracts for any such commodities, milk or products of livestock, all marketing rights, all capital retains, and/or all milk assignments, all governmental subsidies, incentives and/or ASCS payments and all patronage allocations and certificates), including but not limited to items described in Exhibit "A" attached to this Agreement.

3.  ☐  **FEEDLOT LOAN.**  If checked, this security agreement secures a loan to a feedlot.

4.  ☐  **FARM SERVICE AGENCY (FSA) GUARANTEE LOAN.** If checked, it is an Event of Default (defined below) if all or part of the Secured Obligations is used for a purpose that shall contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

5     **AUTHORIZATION TO FILE FINANCING STATEMENTS.**  Borrower irrevocably authorizes Lender at any time and from time to time to file in any filing office in any jurisdiction any initial financing statements, amendments, and continuations thereto that: (a) indicate the Collateral: (i) as all assets of Borrower or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of the UCC; or (ii) as being of, and equal or lesser scope, or with greater detail; (b) provide any other information required by the UCC, or any other applicable law or regulation, for the sufficiency or filing office acceptance of any financing statement, amendment, and continuation, including: (i) whether Borrower is an organization, the type of organization, and any organization identification number issued to Borrower; and (ii) in the case of a financing statement filed as a fixture filing or indicating the Collateral as extracted collateral, or timber to be cut, a sufficient description of real estate to which the Collateral relates.  Borrower agrees to furnish such information to Lender promptly upon Lender's request.  Borrower also ratifies its authorization for Lender to have filed in any jurisdiction any like initial financing statements or amendments Lender filed prior to the date of this Agreement.  Borrower further authorizes Lender to file a financing statement describing any agricultural liens or other statutory liens held by Lender in any jurisdiction as Lender, in Lender's sole discretion, may determine. Borrower authorizes Lender to file all effective financing statements pursuant to 7 U.S.C.§1631 and any amendments thereto that section, as well as amendments to effective financing statement describing the Collateral in any jurisdiction as Lender, in its sole discretion, may determine.  If requested to do so by Lender, Borrower shall provide Lender with a list of the buyers, commission merchants and selling agents to, or through whom Borrower may sell farm products.  Borrower authorizes Lender to notify all such buyers, commission merchants and selling agents, or any other person of Lender's security interest in Borrower's farm products unless prohibited by law.

6.     **REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS.**  Borrower represents, warrants, covenants and agrees as follows:

     A.      The legal name of Borrower is as set forth in Borrower's signature block to this Agreement.  Borrower has not used any

Initials

Frank 000079

trade name, assumed name or other name except Borrower's name stated above. Borrower shall give Lender prior written notice of any change in its name or if Borrower uses any other name.

B.    If Borrower is not a natural person, Borrower is a C Corporation , organized under the laws of the State of New Mexico. Borrower shall not change its state of organization without the prior written consent of Lender.

C.    The address of Borrower's chief executive office is as indicated in this Agreement. Borrower shall give Lender prior written notice of any change in such address. Borrower has authority to execute and perform this Agreement.

D.    Borrower is the owner of the Collateral, shall be the owner of the Collateral hereafter acquired, or has sufficient rights in the Collateral to transfer an interest, free of all security interests, liens and encumbrances other than security interests, liens and encumbrances in favor of Lender. Borrower shall not permit any security interest, lien or encumbrance, other than security interests, liens and encumbrances in favor of Lender, to attach to any Collateral without the prior written consent of Lender. Borrower shall defend the Collateral against the claims and demands of all persons other than Lender, and shall promptly pay all taxes, assessments and other government charges upon or against Borrower, any Collateral and the security interests created in this Agreement. No financing statement covering any Collateral is on file in any public office. If any Collateral is or shall become a fixture, Borrower, at the request of Lender, shall furnish Lender with a statement or statements executed by all persons who have or claim an interest in the real estate, in form acceptable to Lender, which statement or statements shall provide that such persons consent to the security interests created in this Agreement.

E.    Borrower shall not sell or otherwise dispose of any Collateral or any interest in the Collateral without the prior written consent of Lender, except that, until the occurrence of any Event of Default or the revocation by Lender of Borrower's right to do so, and subject to the provisions of this Agreement, Borrower may: (i) sell or lease any Collateral constituting inventory or farm products in the ordinary course of business at prices constituting the fair market value thereof; and (ii) use feed, seed, fertilizer, chemicals, medicines and other supplies used or produced in Borrower's farming operations in the ordinary course of business. For purposes of this Agreement, a transfer in partial or total satisfaction of a debt, obligation or liability shall not constitute a sale or lease in the ordinary course of business.

F.    Borrower shall deposit all proceeds of the Collateral into the deposit account established and maintained by Borrower with Lender, or in such other deposit account as required by Lender. Borrower shall not grant any other person a security interest, lien or other encumbrance in such deposit account.

G.    Borrower shall execute and deliver to Lender all assignments, transfers and other documents required by Lender to transfer, convey and assign to Lender all federal and state government program payments, rights to payment whether or not earned by performance, accounts, general intangibles and benefits.

H.    Borrower shall not store, transfer, or consign any farm products without the prior written consent of Lender and without first obtaining a written acknowledgment from any person to whom physical possession of any such farm products are delivered: (i) of Lender's security interest in such farm products; (ii) that it holds possession of such farm products for Lender's benefit; (iii) that it shall not issue negotiable documents with respect to such farm products; and (iv) that it agrees to follow Lender's instructions as to disposition of the farm products upon its receipt of such instructions. All chattel paper, contracts, warehouse receipts, documents of title, or other documents or agreements, and all other non-cash proceeds of such farm products shall be endorsed, assigned and delivered immediately to Lender.

I.    Each account, instrument, chattel paper, other right to payment and general intangible constituting Collateral is, or shall be when acquired, the valid, genuine and legally enforceable obligation of the account debtor or other obligor named therein or in Borrower's records pertaining thereto as being obligated to pay such obligation, subject to no defense, setoff or counterclaim. Borrower shall not, without the prior written consent of Lender, agree to any material modification or amendment of any such obligation or agree to any subordination or cancellation of any such obligation.

J.    All tangible Collateral shall be located at Borrower's address so long as the Secured Obligation remains unpaid, at Lender's request Borrower shall promptly provide Lender with a list of the location(s) of the Collateral as indicated in this Agreement or as disclosed in writing to Lender. No such Collateral shall be located at any other address without the prior written consent of Lender. Borrower shall provide Lender with the location of all farm products, machinery, inventory and equipment as requested by Lender so long as the Secured Obligations remain unpaid.

K.    Borrower shall: (i) keep all tangible Collateral in good condition and repair, normal depreciation excepted; (ii) from time to time replace any worn, broken or defective parts thereof; (iii) promptly notify Lender of any loss of or material damage to any Collateral or of any adverse change in the prospect of payment of any account, instrument, chattel paper, other right to payment or general intangible constituting Collateral; (iv) not permit any Collateral to be used or kept for any unlawful purpose or in violation of any federal, state or local law; (v) keep all tangible Collateral insured in such amounts, against such risks and in such companies as shall be acceptable to Lender, with loss payable clauses in favor of Lender to the extent of Lender's interest in form acceptable to Lender (including without limitation a provision for at least ten (10) days' prior written notice to Lender of any cancellation or modification of such insurance), and deliver polices or certificates of such insurance to Lender; (vi) at Borrower's chief executive office, keep accurate and complete records pertaining to the Collateral and Borrower's financial condition, business and property, and submit to Lender such periodic reports concerning the Collateral and Borrower's financial condition, business and property as Lender may from time to time request; (vii) at all reasonable times permit Lender and its representatives to examine and inspect any Collateral, and to examine, inspect and copy Borrower's records pertaining to the

Initials ___

Frank 000080

Collateral and Borrower's financial condition, business and property; (vii) at Lender's request, promptly execute, endorse and deliver such financing statements and other instruments, documents, chattel paper and writings and take such other actions deemed by Lender to be necessary or desirable to establish, protect, perfect or enforce the security interests created in this Agreement and the rights of Lender under this Agreement and applicable law, and pay all costs of filing financing statements and other writings in all public offices where filing is deemed by Lender to be necessary or desirable; (viii) care for the Collateral in accordance with good farming and/or husbandry practices and

not permit the value of the Collateral to be impaired; (ix) not permit the Collateral to become a fixture or an accession to other goods except as Lender specifically authorizes in writing; (x) comply with the provisions of all federal or state government programs, agreements and contracts to which it is a party; and (xi) not engage in activities which contribute to excessive erosion of highly erodible land or the conversion of wetlands to produce an agricultural commodity.

L.    Borrower shall cooperate with Lender in obtaining control with respect to Collateral consisting of deposit accounts, investment property and electronic chattel paper. Borrower shall not create any chattel paper without placing a legend on the chattel paper acceptable to Lender indicating that Lender has a security interest in the chattel paper.

M.    Borrower shall pay, when due, all installments of rents due or to become due on leased land held by Borrower and used for pasture of any of the livestock or for any agricultural purpose and shall renew all such leases and keep them in force until the Secured Obligations is paid in full. Borrower shall pay all charges for permits held by Borrower for grazing any of the above described livestock in National Forests and Public Domains and keep such permits in force until the Secured Obligations are paid in full.

N.    **LENDER MAY REQUEST ADDITIONAL COLLATERAL TO SECURE THE SECURED OBLIGATIONS FROM TIME TO TIME. BORROWER AGREES TO DELIVER ADDITIONAL COLLATERAL AS LENDER MAY, IN GOOD FAITH, REQUIRE.**

O.    Borrower agrees that all livestock, either used in a farming or ranching operation or in any other business in which the Borrower is engaged, shall be classified as farm products for purposes of the UCC unless, the FEEDLOT LOAN box is checked on the first page of the Agreement.

P.    If the FEEDLOT Loan box is checked on the first page of this Agreement or the Secured Obligations are an agribusiness loan: (i) Borrower warrants that each pledged receivable is a good and valid obligation representing an undisputed debt incurred by Borrower's account debtor for a fixed sum, as set forth by invoice, for goods delivered or services rendered; (ii) Borrower warrants that no pledged receivable is subject to any defense, offset, or counterclaim and shall be paid in full when due; (iii) Borrower shall promptly notify Lender in writing of any claims or defenses raised by account Borrowers; (iv) Borrower shall have the right, in the regular course of business, to purchase and sell all feed and supplies used in fattening, producing or maintaining livestock covered by the terms of Agreement; (v) Borrower shall, at intervals and in form and manner established solely by Lender from time to time, submit to Lender a confirmatory assignment of accounts receivable and inventory listing collateral; (vi) Lender shall have the right to notify Borrower's account debtors of the assignment of Borrower's receivables to Lender and require them to make payment directly to Lender; and (vii) Lender may enforce collection of, settle, compromise extend, or renew the indebtedness of Borrower's account debtors on Borrower's assignment of accounts to Lender.

Q.    Borrower shall furnish to Lender a list in writing of buyers, commission merchants and selling agents to or through whom Borrower may sell farm products and shall notify Lender in writing of any previously unlisted buyer, commission merchant or selling agent at least seven (7) days prior to any sale of farm products to or through such previously unlisted persons. A sale of farm products to or through any person not listed with Lender may subject the borrower to a fine of five thousand and n0/100s dollars ($5,000) or fifteen percent (15%) of the value or benefit received from such sale in the event proceeds from sale are not forwarded to Lender within ten (10) days of sale.

R.    If Borrower fails to act as required by this Agreement, Lender is authorized, in Borrower's name or otherwise, to take any such action, including without limitation signing Borrower's name or paying any amount so required. Lender may, at its option, pay for taxes, water or ditch assessments, insurance premiums, satisfaction of mechanic or materialman's liens with respect to labor, materials or supplies furnished or delivered in connection with ownership, use or operation of collateral, feed liens and all other liens which are, or might be, prior to the lien of any security instruments given by Borrower to Lender. Such costs and expenses shall be added to the Secured Obligations, shall be payable by Borrower on demand by Lender and shall accrue interest from the date of payment by Lender at the highest rate of interest being charged by Lender on the Secured Obligations.

7.    **OTHER ACTIONS AS TO THE COLLATERAL.** Borrower further agrees, at the request and option of Lender, to take any and all other actions Lender may determine to be necessary or useful for the attachment, perfection and first priority of, and the ability of Lender to enforce, Lender's security interest in any and all of the Collateral, including, without limitation: (i) causing Lender's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of Lender to enforce, Lender's security interest in such Collateral; (ii) complying with any provision of any statute, regulation or treaty of the United States as to any of the Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Lender to enforce, Lender's security interest in such Collateral; (iii) obtaining governmental and other third party waivers, consents and approvals in form and substance satisfactory to Lender, including, without limitation, any consent of any licensor, lessor or other person obligated on the Collateral; (iv) obtaining waivers from mortgagees and landlords in form and substance satisfactory to Lender; and (v) taking all actions under any earlier versions of the UCC or under any other law, as reasonably determined by Lender to be applicable in New Mexico or in any other applicable jurisdiction, including any foreign jurisdiction. Borrower further agrees that at any time before or after an Event of

Initials

Frank 000081

Default, Lender may, and at the request of Lender Borrower shall, promptly notify any account debtor or obligor of any account, instrument, chattel paper, other right to payment or general intangible constituting Collateral that the same has been assigned to Lender and shall direct such account debtor or obligor to make all future payments to Lender.

8.      **EVENTS OF DEFAULT.** The occurrence of any of the following events shall constitute an "Event of Default": (a) any default in the payment or performance of any of the Secured Obligations; (b) any default under the terms of this Agreement or any other note, obligation, agreement, mortgage, or other writing heretofore, herewith or hereafter given to or acquired by Lender to which Borrower or any maker, endorser, guarantor, or surety of any of the Secured Obligations or any other person providing security for any of the Secured Obligations or for any guaranty of any of the Secured Obligations is a party; (c) the insolvency, death, dissolution, liquidation, merger, or consolidation of Borrower or any maker, endorser, guarantor, surety, or other person; or (d) any appointment of a receiver, trustee, or similar officer of any property of Borrower or any such maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; (e) any assignment for the benefit of creditors of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; (f) any commencement of any proceeding under any bankruptcy, insolvency, dissolution, liquidation, or similar law by or against Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; (g) the sale, lease or other disposition (whether in one transaction or in a series of transactions) to one or more persons other than in the ordinary course of business of all or a substantial part of the assets of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; (h) the death, dissolution, or liquidation of any partner, member, shareholder or owner of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; or (i) the entry of any judgment against Borrower or any maker, endorser, guarantor, surety, or any other person liable for the Secured Obligations which is not discharged in a manner acceptable to Lender within thirty (30) days after such entry; (j) the issuance of levy of any writ, warrant, attachment, garnishment, execution, or other process against any property of Borrower or any maker, endorser, guarantor, surety, or any other person liable for the Secured Obligations; (k) the attachment of any tax lien to any property of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; (l) any statement, representation, or warranty made by Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations (or any representative of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations) to Lender at any time shall be incorrect or misleading in any material respect when made; (m) there is a material adverse change in the condition (financial or otherwise), business, or property of Borrower or any maker, endorser, guarantor, surety, or other person liable for the Secured Obligations; or (n) Lender shall in good faith believe that the prospect for due and punctual payment or performance of any of the Secured Obligations, this Agreement or any other note, obligation, agreement, or mortgage heretofore, herewith or hereafter given to or acquired by Lender in connection with any of the Secured Obligations is impaired.

9.      **REMEDIES.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies: (a) declare all Secured Obligations to be immediately due and payable, and the Secured Obligations shall thereupon be immediately due and payable, without presentment or other notice or demand, all of which are waived by Borrower; (b) require Borrower to assemble all or any part of the Collateral and make it available to Lender at a place to be designated by Lender which is reasonably convenient to both parties; (c) exercise and enforce any and all rights and remedies available upon default under this Agreement, the UCC, and any other applicable agreements and laws. If notice to Borrower of any intended disposition of Collateral or other action is required, such notice shall be deemed reasonably and properly given if mailed by regular or certified mail, postage prepaid, to Borrower at the address as indicated in this Agreement or at the most recent address shown in Lender's records, at least ten (10) days prior to the action described in such notice. In lieu of, addition to, conjunction with, or substitution for these rights and remedies the secured Lender may enter upon Borrower's premises at any reasonable time to inspect Collateral and, in the event of Borrower's default, to take possession of or to complete the growing, grazing, fattening or other farming operations in connection with the collateral preparatory to its disposition, and for these purposes, the secured Lender may require Borrower to assemble the collateral and make it available to the secured Lender at a place reasonably convenient to both parties. Taking this Security Agreement shall not waive or impair any other security Lender may have or hereafter acquire for payment of the above indebtedness, nor shall taking any additional Collateral waive or impair this Security Agreement. The secured Lender may resort to any security it may have, in the order it may deem proper, and notwithstanding any collateral security, secured Lender shall retain its rights of setoff against Borrower. When Collateral is livestock, it is agreed that a commercially reasonable means of disposing of the Collateral shall include sale through a livestock market or through a licensed livestock sales company. Lender may enter on Borrower's premises without being liable for damages and take possession of the Collateral without judicial process and may use and occupy the premises and pasturage, feed pens, feed troughs and water privileges of Borrower for the purpose of feeding or caring for any livestock. It is agreed that crops shall be considered as perishable and may decline speedily in value. Lender may protect, cultivate, care for, harvest or thresh or combine the crops at the Borrower's expense and may sell and dispose of the crops at private sale if the same are mature or are harvested at the best available price.

10.     **STANDARDS FOR EXERCISING RIGHTS AND REMEDIES.** To the extent that applicable law imposes duties on Lender to exercise remedies in a commercially reasonable manner, Borrower acknowledges and agrees that it is not commercially unreasonable for Lender: (a) to fail to incur expenses reasonably deemed significant by Lender to prepare the Collateral for disposition or otherwise to fail to complete raw material or work in process into finished goods or other finished products for disposition; (b) to fail to obtain third party consents for access to the Collateral to be disposed of, or to obtain, or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of the Collateral to be collected or disposed of; (c) to fail to exercise collection remedies against account debtors or other persons obligated on the Collateral or to fail to remove liens or encumbrances on or any adverse claims against the Collateral; (d) to exercise collection remedies against account debtors and other persons obligated on the Collateral directly or through the use of collection agencies and other collection specialist; (e) to advertise dispositions of the Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature; (f) to contact other persons, whether or not in the same business as Borrower, for expressions of interest in acquiring all or any portion of the Collateral; (g) to hire one or more professional

Initials ___

Frank 000082

auctioneers to assist in the disposition of the Collateral, whether or not the collateral is of a specialized nature; (h) to dispose of the Collateral by utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets; (i) to dispose of assets in wholesale rather than retail market; (j) to disclaim disposition warranties; (k) to purchase insurance or credit enhancements to insure Lender against risks of loss, collection or disposition of the Collateral or to provide to Lender a guaranteed return from the collection or disposition of the Collateral; or (l) to the extent deemed appropriate by Lender, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist Lender in the collection or disposition of any of the Collateral. Borrower acknowledges that the purpose of this paragraph is to provide non-exhaustive indications of what actions or omissions by Lender would fulfill Lender's duties under the UCC or other law of New Mexico or any other applicable jurisdiction in Lender's exercise of remedies against the Collateral and that other actions or omissions by Lender shall not be deemed to fail to fulfill such duties solely on account of not being indicated in this paragraph. Without limiting the foregoing, nothing contained in this paragraph shall be construed to grant any rights to Borrower or to impose any duties on Lender that would not have been granted or imposed by this Agreement or by applicable law in the absence of this paragraph.

11. **POWER OF ATTORNEY.** Borrower irrevocably constitutes and appoints Lender and any officer or agent of Lender, with full power of substitution, as Borrower's true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Borrower or in Lender's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, gives said attorneys the power and right, on behalf of Borrower, without notice to or assent by Borrower, to do the following:

A.       Upon the occurrence and during the continuance of an Event of Default, generally to sell, transfer, pledge, make any agreement with respect to or otherwise dispose of or deal with any of the Collateral in such manner as is consistent with the UCC or any other applicable law and as fully and completely as though Lender where the absolute owner thereof for all purposes, and to do, at Borrower's expense, at any time, or from time to time, all acts and things which Lender deems necessary or useful to protect, preserve or realize upon the Collateral and Lender's security interest in the Collateral, in order to effect the intent of this Agreement, all at least as fully and effectively as Borrower might do, including, without limitation: (i) the filing and prosecuting of registration and transfer applications with the appropriate federal, state, local or other agencies or authorities with respect to trademarks, copyrights and patentable inventions and process; (ii) upon written notice to Borrower, the exercise of voting rights with respect to voting securities, which rights may be exercised, if Lender so elects, with a view to causing the liquidation of assets of the issuer of any such securities; and (iii) the execution , delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral; and

B.       To the extent that Borrower's authorization, given above is not sufficient to file such financing statements with respect to this Agreement, with or without Borrower's signature, or a photocopy of this Agreement in substitution for a financing statement, as Lender may deem appropriate, and to execute in Borrower's name such financing statements and amendments thereto and continuation statements which may require Borrower's signature.

To the extent permitted by law, Borrower ratifies all that said attorneys shall lawfully do or cause to be done by virtue of the power of attorney granted in this Agreement. The power of attorney granted in this Agreement is coupled with an interest and is irrevocable. The powers conferred on Lender under this Agreement are solely to protect Lender's interests in the Collateral and shall not impose any duty upon it to exercise any such powers. Lender shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither Lender nor any of its officers, directors, employees or agents shall be responsible to Borrower for any act or failure to act, except for Lender's own gross negligence or willful misconduct.

12. **PRODUCTS, PROCEEDS AND AFTER ACQUIRED PROPERTY.** Lender's security interest in the Collateral extends to all property of similar type or kind now owned or hereafter acquired by Borrower and used or bought for personal, family or household purposes, farming or ranching operations, or in any other business in which Borrower may be engaged, including, but not limited to all additions, accessions, replacements, substitutions, proceeds and products from livestock, harvested crops, feed, seed and ginned cotton; all replacements, additions and accessions to and spare and repair parts, special tools and equipment; all conceived but yet unborn offspring, all natural increases, additions to and replacements and substitutions of livestock and poultry, all trading cattle, commissioned cattle, whether branded or marked in one or more of the above brands or marks or branded or marked in a different brand or mark, or unbranded or unmarked; all wool growing or to be grown on sheep or mohair on goats, both before and after shearing; all milk produced by any cows and all milk assignments; all feed to be used in the feeding, maintaining or fattening of livestock; all capital retains; all warehouse receipts, documents, storage contracts (including but not limited to CCC contracts), deficiency payments, all governmental subsidies and/or incentives, all marketing rights and all other contract rights arising from sale or other disposition of collateral and all replacements of, proceeds of, and additions to other personal property above described.

13. **MISCELLANEOUS.** This Agreement cannot be waived, modified, amended, abridged, supplemented, terminated, or discharged, and the security interests created in this Agreement cannot be released or terminated, except by a writing duly executed by Lender. A waiver shall be effective only in the specific instance and for the specific purpose given. No delay or failure to act shall preclude the exercise or enforcement of any of Lender's rights or remedies. All rights and remedies of Lender shall be cumulative and may be exercised singularly, concurrently, or successively at Lender's option, and the exercise or enforcement of any one such right or remedy shall not be a condition to or bar the exercise or enforcement of any other. This Agreement shall be binding upon and inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of Lender and shall bind all persons and parties who become bound as a debtor to this Agreement. If any provision or application of this Agreement is held unlawful or unenforceable in any respect, such illegality or

Initials ____

**Frank 000083**
Page 5 of 7

unenforceability shall not affect other provisions or applications which can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provision or application had never been contained in this Agreement. All representations and warranties contained in this Agreement shall survive the execution, delivery, and performance of this Agreement and the creation, payment, and performance of the Secured Obligations. Except to the extent the laws of another jurisdiction govern the creation, perfection and enforcement of the liens and security interests created in this Agreement, this Agreement shall be governed by and construed in accordance with the laws of the State of New Mexico. If there is more than one Borrower all their representations, warranties, covenants, agreements and undertakings hereunder shall be deemed joint and several. Whenever the context requires (but without derogation of the joint and several nature of the parties' liability under this Agreement), the representations, warranties, liabilities, covenants, agreements and undertakings contained in this Agreement shall be deemed to have been individually given by each of the parties comprising Borrower. The headings of each paragraph of this Agreement are for convenience only and shall not define or limit the provisions thereof.

14. **WAIVER OF JURY TRIAL.** BORROWER WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, REMEDIES, OBLIGATIONS, OR DUTIES UNDER THIS AGREEMENT, OR THE PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF. Except as prohibited by law, Borrower waives any right which it may have to claim or recover in any litigation referred to in the preceding sentence any special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages. Borrower: (a) certifies that neither Lender nor any representative, agent or attorney of Lender has represented, expressly or otherwise, that Lender would not, in the event of litigation, seek to enforce the foregoing waivers or other waivers contained in this Agreement, and (b) acknowledges that, in entering into this Agreement, Lender is relying upon, among other things, the waivers and certifications contained in this paragraph.

15. **MERGER.** This Agreement supersedes all prior oral negotiations, representations, and promises which are merged into this Agreement. This Agreement, and any amendments, renewals or extensions to it constitutes the entire agreement between Borrower and the Lender.

BORROWER, BY SIGNING THIS AGREEMENT, ACKNOWLEDGES THAT HE OR SHE HAS READ ALL OF THE PROVISIONS OF THIS AGREEMENT AND HAS RECEIVED A COPY OF THIS AGREEMENT.

[signatures]

FCNM-2040 Rev. 3/2013

Frank000084

# Exhibit C

**DATE** 11-2-10

**INVOICE NO.** 315257

# Eastern Livestock Co., LLC

SOLD TO Glenn Franklin    SHIP TO _____

Address _____    Address _____

City-State-Zip House, NM    City-State-Zip Farwell TX

Specifically subject to all terms, conditions, and provisions
appearing upon the reverse side of this instrument.

| Number Head | Kind | Weight | Averages | Amount |
|---|---|---|---|---|
| 115 | Strs | 50395 | 438/126.01 | 63502.74 |

I attest that all livestock referenced by this document and
transferred are of A.P.H.I.S. Origin (exclusively born
and raised in the U.S.) B.☐ Canadian, Mexican origin.

Signature _____    Date 11-2-10

CERTIFICATION OF NON-PRODUCER STATUS
FOR THE SELLER
Claimed on # 115 cattle pursuant to
7CFR § 1250.315 and 1260.314
DO NOT DEDUCT the
$1.00 per head Beef Promotion Assessment
BEEF COUNCIL REGISTERED No. KY-921
Signature _____ Date 11-2-10

**TOTALS**

TRUCKER: Ellis
Marion, Ky

FROM: Grant Gibson

COMMISSION 115 - 6350 2.74
VETERINARY 117 - 62099.48
TRUCKING 232 - $125,602.22
OTHER Pd 11/8/10 *
TOTAL 2

Please Remit to: EASTERN LIVESTOCK CO., LLC
139 West Market
New Albany, IN 47150
812-946-0015

* check was written, but never mailed.



№ 104226

135 West Market
New Albany, IN 47150
812-949-9035

EASTERN LIVESTOCK CO., LLC

Fifth Third Bank
Northern Kentucky

PAY TO THE ORDER OF

| DATE | CHECK No. | | AMOUNT |
|---|---|---|---|
| 10/01/15 | 104226 | | ***90,000.00 |

GLENN FRANKLIN
PCA OF EASTERN NEW MEXICO
BOX 703
HOUSE, NM 88121

SIGNATURE

Down Payment
2/20 - 3/15 delivery

FARM CREDIT SERVICES, ACA

ANY BANK OR BANKER
FOR DEPOSIT ONLY
AG NEW MEXICO

| Item Amount | Item Serial | Item R/T | Item Account | Item Sequence | Date | Item Type |
|---|---|---|---|---|---|---|
| $90,000.00 | 000000000104226 | 004210027 | 000000007480493779 | 0000751681310 | 1/22/2010 | Transit |

Wells Fargo Bank certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wells Fargo, its predecessors or successors.

Page 1

**INVOICE AND SECURITY AGREEMENT**

DATE __11-3-10__   INVOICE NO. 316529

# Eastern Livestock Co., LLC

SOLD TO __Glenn Franklin__   SHIP TO _____

Address _____   Address _____

City-State-Zip __House NM__   City-State-Zip __Farwell TX__

Specifically subject to all terms, conditions, and provisions
appearing upon the reverse side of this instrument.

| Number Head | Kind | Weight | Averages | Amount |
|---|---|---|---|---|
| 117 | Strs | 48805 | 417 / 12724 | 62099.48 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

I attest that all livestock referenced by this document and
transferred are of: A.☐ U.S. Orgin (exclusively born
and raised in the U.S.) B.☐ Canadian, Mexican orgin.

Signature _____   Date __1-3-10__

**CERTIFICATION OF NON-PRODUCER STATUS
FOR THE SELLER**
Claimed on # ____112____ cattle pursuant
7CFR § 1260.118 and 1260.314
DO NOT DEDUCT the
$1.00 per head Beef Promotion Assessment
BEEF COUNCIL REGISTERED No. KY024

Signature _____   Date __11-3-10__

TOTALS

TRUCKER: __Weber__
__Marion, Ky__

FROM: __Grant Gibson__

COMMISSION _____

VETERINARY _____

TRUCKING _____

OTHER _____

TOTAL _____

Please Remit to:  EASTERN LIVESTOCK CO., LLC
135 West Market
New Albany, IN 47150
812-949-9035

Cattle - not pai

115 steers @ $63,502.74

11/3 Invoice #316529
   117 steers @ $62,099.48
   _____
   232 steers   $125,602.22


$\zeta$ (death loss) 54 steers = $48,121.97
   ( + Precondition )    $ 77,480.25
        + medicine

✳ See the attached invoice from pre-conditioning
   pens.


   232 slrs
   - 54 deads
   _____
   178 hd as of Dec. 17


                              Dec. 17, 2010

# Rockin F Cattle Company

**Invoice No.**     **1000**

154 FM 3125
Farwell, TX  79325

## INVOICE

**Customer**

| | | | | |
|---|---|---|---|---|
| Name | Glen Franklin | | | |
| Address | PO Box 703 | | | |
| City | House | State NM | ZIP 88121 | |
| Phone | | | | |

| | |
|---|---|
| Date | 12/17/2010 |
| Order No. | |
| Rep | |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 115 | Lot 60 11/3/2010 -12/17/2010 | | $0.00 |
| 1 | Processing Lot 60 | $4,191.28 | $4,191.28 |
| 1 | Medicine Lot 60 | $5,800.00 | $5,800.00 |
| 31 | Deads | $541.38 | $16,782.78 |
| 117 | Lot 61 11/4/2010 - 12/17/2010 | | $0.00 |
| 1 | Processing Lot 61 | $4,264.17 | $4,264.17 |
| 1 | Medicine Lot 61 | $4,632.00 | $4,632.00 |
| 23 | Deads | $541.38 | $12,451.74 |

Cattle were stale upon arrival. Most cattle infectected
with pnuemonia when unloaded from truck.

*Glen Franklin*

| | |
|---|---|
| SubTotal | $48,121.97 |

**Payment Details**

- ● Cash
- ○ Check
- ○ Credit Card

Name
CC #
            Expires

| | | |
|---|---|---|
| Shipping & Handling | | $0.00 |
| Taxes | State | |
| **TOTAL** | | $48,121.97 |

Office Use Only

*Glen owes eastern $77,48 25*

*Insert Fine Print Here*

*Insert Farewell Statement Here*

Feb 15, 2011

Rocking F Foodyard

Eastern Livestock Cattle   174 head total

Dec 17 → Feb.15   = 61 Days total

yardage $ 3184.20
medicine $ 1150.00

Feed   $ 16982.40

Total Bill $ 21,316.60

4 hd Total Dead
541.38 per Calf

2165.52

Dead $ 2165.52

= $ 23,482.12

Shawn F____